Filed date: 2/9/2023
Presiding Judge: Mary M. Rowland
Magistrate Judge: Sheila M. Finnegan
Lead Case No. 23-cv-818
PH

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 |

**TRANSFER ORDER**

**Before the Panel**: Plaintiffs in four actions pending in the Northern District of Illinois and the Northern District of California move under 28 U.S.C. § 1407 to centralize this litigation in the Northern District of Illinois. The litigation consists of nine actions pending in four districts, as listed on Schedule A. Since the filing of the motion, the Panel has been notified of 44 related federal actions pending in an additional fifteen districts.[1] Plaintiff in the Northern District of Illinois *Smith* action supports the motion. Plaintiffs in twenty-four potential tag-along actions filed briefs or Notices of Presentation or Waiver of Oral Argument supporting centralization and variously suggesting the Northern District of Illinois, the Western District of Missouri, the Southern District of Ohio, the Eastern District of New York, the Southern District of New York, the Central District of California, the Northern District of California, or the District of South Carolina as the transferee district. All of them, however, indicated in their filings or at oral argument that they support or do not oppose transfer to the Northern District of Illinois at least in the alternative. All responding defendants[2] oppose the motion but, in the event of centralization, request centralization in the Southern District of New York or, alternatively, in the Northern District of Illinois.

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization in the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. On October 17, 2022, a study led by the National Institutes of Health (NIH) reported findings that women who frequently used chemical hair straightening or hair relaxer products were

---

[1] These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

[2] Four sets of defendants responded to the motion: L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC, and SoftSheen-Carson (W.I.), Inc. (collectively, the L'Oréal defendants); Dabur International Ltd. and Namasté Laboratories, LLC; Strength of Nature, LLC, Strength of Nature Global, LLC, and Godrej SON Holdings, Inc.; and House of Cheatham. Two additional defendants named in certain of the actions, PDC Brands and Parfums de Coeur, Ltd., did not enter an appearance.

more than twice as likely to develop uterine cancer as women who did not use such products. These actions, filed shortly thereafter, share common questions of fact arising from allegations that defendants' hair relaxer products contain phthalates, including di-2-ethylhexylphthalate, or other endocrine-disrupting chemicals (EDCs), and that the use of such products caused or increased the risk of developing uterine, ovarian, or breast cancer, endometriosis, uterine fibroids, or other injuries to the reproductive system. All actions share common issues of fact regarding whether exposure to phthalates or other EDCs causes injury to the reproductive system, whether and when defendants knew or should have known of the alleged risks posed by hair relaxer products, and whether defendants engaged in adequate testing and post-market surveillance. Plaintiffs assert overlapping products liability claims and consumer protection claims.

Centralization will obviate the risk of duplicative discovery and inconsistent rulings on pretrial issues such as what level of exposure to phthalates or other EDCs poses a risk of reproductive injury, and what obligation, if any, defendants had to disclose the presence of such chemicals in their hair relaxer products. The parties in all actions are likely to use many of the same experts, particularly with respect to the risks of exposure to phthalates and other EDCs. Centralization will minimize duplication of this expert discovery as well as pretrial motion practice related to expert issues. It also will prevent inconsistent rulings with respect to class certification.[3]

Defendants argue that the actions involve numerous disparate questions of fact and that centralization will provide few efficiencies. They point out that the actions name multiple competing defendants who manufactured and sold different lines of hair relaxer products, and that plaintiffs allege multiple different injuries. They contend as well that plaintiffs have not identified a single EDC common to all hair relaxer products that is alleged to have caused the injuries at issue. We acknowledge that, to some extent, the claims against the various defendants may turn on facts specific to the defendants and their products, and that in some instances we have been hesitant to centralize litigation against competing defendants that marketed, manufactured, and sold similar products. In the circumstances presented here, however, we conclude that centralization will allow this litigation to be managed most efficiently and will best serve the convenience of the parties, witnesses, and courts. Since the filing of the motion, this litigation has grown from nine actions pending in four districts to 53 involved actions in nineteen districts. Most of the actions name multiple sets of defendants, and nearly all name the L'Oréal defendants. In addition, most plaintiffs allege exposure to multiple different product lines. According to movants, this is because women who use hair relaxers typically use different product lines over the course of their lives; hence, any future related actions are likely to involve multiple defendants and product lines as well. As such, declining to centralize this litigation would not resolve the complexities presented by managing cases involving multiple defendants and products; rather, judges in nineteen (or more) different districts would be required to manage such cases, while addressing overlapping parties, facts, and claims. *See In re January 2021 Short Squeeze Trading Litig.*, MDL No. 2989, 2021 WL 1258399, at *3 (J.P.M.L. Apr. 2, 2021) (noting that denying

---

[3] While there is only one putative class action included in the motion, there are eight class actions among the potential tag-along actions. All nine are on behalf of overlapping putative classes.

centralization would not alleviate trade secret or confidentiality concerns where multiple defendants are named in many of the involved cases); *In re ARC Airbag Inflators Prods. Liab. Litig.*, MDL No. 3051, 2022 WL 17843061, at *2 (J.P.M.L. Dec. 15, 2022) (same).

Our decision here is in keeping with past decisions in similar circumstances. For example, in *In re Androgel Products Liability Litigation*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014), we centralized actions against multiple competing manufacturers, noting that, "in the actions and potential tag-along actions already filed, a number of plaintiffs used more than one testosterone replacement therapy," and that centralization of only certain claims or the attempt to separate claims against separate manufacturers would "prove too procedurally complicated" and in any event "might result in a *de facto* industry-wide centralization as cases involving multiple drugs become part of the MDL." *Id.* at 1379. *See also In re Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345, 1346 (J.P.M.L. 2013) (centralizing actions against competing manufacturers of four similar diabetes drugs that allegedly caused pancreatic cancer where "[s]everal plaintiffs took more than one of the drugs at issue").[4]

We conclude that the Northern District of Illinois is an appropriate transferee district. Sixteen of the involved actions are pending there and the district is not opposed or is supported, at least in the alternative, by all responding plaintiffs and is supported, in the alternative, by all responding defendants. The Honorable Mary M. Rowland, to whom we assign the litigation, presides over two of the involved actions and is a highly capable jurist with the ability and willingness to manage the proceedings efficiently. We are confident that she will steer this matter on a prudent course.

---

[4] No party has suggested that the Panel create defendant-specific MDLs, nor would that appear to be a workable option. Plaintiffs assert indivisible claims against the defendants, and it would be impossible to sever the claims against the various defendants and transfer them to separate MDLs.

- 4 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of Illinois are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Mary M. Rowland for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| | |
|---|---|
| Nathaniel M. Gorton | Matthew F. Kennelly |
| David C. Norton | Roger T. Benitez |
| Dale A. Kimball | Madeline Cox Arleo |

IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION                MDL No. 3060

## SCHEDULE A

### Northern District of California

1:23-cv-821    BHONOPHA v. L'OREAL U.S.A., INC., ET AL., C.A. No. 3:22−06395

### Southern District of Georgia

1:23-cv-823    GAMBLE v. STRENGTH OF NATURE GLOBAL, LLC, ET AL., C.A. No. 4:22−00256
1:23-cv-825    LEE v. STRENGTH OF NATURE GLOBAL, LLC, ET AL., C.A. No. 4:22−00257

### Northern District of Illinois

MITCHELL v. L'OREAL USA, INC., ET AL., C.A. No. 1:22−05815
GORDON v. L'OREAL USA, INC., ET AL., C.A. No. 1:22−06033
SMITH v. L'OREAL USA, INC., C.A. No. 1:22−06047
WILLIAMS, ET AL. v. L'OREAL USA, INC., ET AL., C.A. No. 1:22−06110
GRANT v. L'OREAL USA, INC., C.A. No. 1:22−06113

### Southern District of New York

1:23-cv-827    TERRELL v. REVLON CONSUMER PRODUCTS CORP., ET AL., C.A. No. 1:22−09008