**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No. 23 C 818 <br><br> MDL No. 3060 <br><br> Judge Mary M. Rowland |

**CASE MANAGEMENT ORDER NO. 4**
**STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND**
**ELECTRONICALLY STORED INFORMATION**

I.      **SCOPE**

      A.      **PURPOSE**

This Stipulated Protocol for Producing Documents and Electronically Stored Information (the "Order") shall govern the production of documents and electronically stored information ("ESI") by the parties and their counsel of record, whether they currently are involved, or become so in the future (collectively, the "Parties") in the above captioned litigation (the "MDL"), and any and all cases consolidated or coordinated with it.

      B.      **GENERAL**

Nothing in this Order is intended to be an exhaustive list of or limitation on the discovery obligations or rights of a Party requested to produce documents or ESI ("Producing Party") or a Party requesting documents or ESI ("Requesting Party"). Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules. The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in an

1

efficient manner and in accordance with the Federal Rules. By stipulating to this Order and agreeing to produce documents in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

The procedures and protocols outlined in this Order govern the production of documents and ESI by all Parties. The Parties will take reasonable steps to comply with this Order. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order and, to the extent that a Party believes that compliance with this Order imposes an undue burden disproportionate to the needs of the case, the Party claiming such a burden shall inform all other Parties in writing of the asserted burden, describing it (and any potential solutions) with specificity, and the Parties shall thereafter promptly meet and confer in an effort to resolve the issue. All productions made pursuant to this Order are subject to any confidentiality, preservation, protective, and/or privilege orders entered in the MDL.

### C. APPLICABILITY

The production specifications in this Order apply to documents that are produced in the first instance in the MDL. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions served in the MDL that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree in writing. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules, Local Rules, or other applicable state and federal statutes, they shall be controlling.

###### D.    DOCUMENTS PRODUCED IN OTHER MATTERS

To the extent any Party is required or agrees to produce documents in the MDL that originally were collected or produced in other cases or government investigations, such documents shall be identified and produced to the extent possible in accordance with the production format described herein. Such documents may bear the original Bates numbers assigned to them in those other proceedings and shall also bear any additional bates-stamp required in this MDL.  To the extent any such documents are withheld from a production, the withholding Party shall identify the corresponding basis, including any impacted custodians, document categories, or other reason on which the document is being withheld, to enable the Parties to confer about the potential later production of such documents.

###### E.    THIRD PARTY SUBPOENAS AND THE PROCESSING OF NON-PARTY DOCUMENTS

A Requesting Party issuing a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the non-party produce documents in accordance with the specifications of this Order. The Issuing Party is responsible for producing to all other Parties any productions obtained in the same form in which the document(s) was/were produced by the non-party. Such non-party productions should be served by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-party's production to the Issuing Party.

If any such non-party productions are not Bates Numbered by the non-party producer, prior to any Party reproducing the non-party documents, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

### F.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate as discovery proceeds, and recognize and agree that an attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

### G.    LIAISON COUNSEL

Defendants and Plaintiffs' Leadership shall nominate counsel to serve as liaison(s) for ESI discovery matters (together, "Liaison Counsel"). The nomination of Liaison Counsel is for the convenience of the parties, to allow timely and documented communication regarding discovery disputes, and to expedite resolution of non-controversial ESI discovery matters. Accordingly, Plaintiffs and Defendants' Liaison Counsel retain the right, at their discretion, to require agreement by all parties for any issue deemed not appropriate for resolution through Liaison Counsel. Specific discovery disputes or binding discovery agreements unique to the discovery obligations of one Producing Party must be negotiated directly with counsel for that Producing Party. Additionally, at any meet and confer scheduled in the course of resolving any dispute about the production of documents, it is required that counsel for the Producing Party responsible for that document production and counsel for the Receiving Party will be in attendance.

The Parties will promptly exchange the names of their liaisons and each defendant shall provide the name of a dedicated discovery contact. Should they change during the course of this litigation, the Party who is changing liaison counsel or a contact shall notify all other Parties within seven (7) calendar days of such a change.

### H.    PRODUCTIONS SHALL BE MADE AVAILABLE TO ALL PARTIES

Any document production, excluding medical records, made by a Producing Party in this litigation shall be made available to all parties to this litigation by the Producing Party.  Prior to

the first production of documents, the Parties may meet and confer to explore the possibility of creating a central repository that the Parties may use to retrieve the document productions made in this MDL.

## II.     DISCOVERY CONCERNING PRESERVATION AND COLLECTION EFFORTS

If there is a dispute concerning the scope of a Party's preservation or collection efforts, before discovery about such efforts is initiated, the Parties or their counsel shall meet and confer to address the specific stated need for such discovery, its relevance to claims and defenses, its proportionality to the needs of the case, and the availability and suitability of any alternative, less burdensome means to obtain the information. The Party requesting the meet and confer shall provide the request in writing, and notice to Defendants' and Plaintiffs' Leadership Liaison Counsel must be provided in advance of any meet and confer. The meet and confer shall happen within fourteen (14) calendar days of the written request.

In order to facilitate the ability of the Parties to have a meaningful discussion regarding less burdensome or alternative means for preserving or collecting documents, the Party whose preservation or collection efforts are at issue shall explain in writing how the preservation or collection is burdensome as well as potential solutions to the issues raised at least three (3) calendar business days before the meet and confer between the Parties.

If an agreement cannot be reached, a Party may issue a written notice of their intention to seek the Court's intervention to resolve the dispute, after which, the Parties will have fourteen (14) calendar days to additionally meet and confer to resolve the issue, but if it is not resolved during these fourteen (14) calendar days, the parties may thereafter immediately submit the dispute to the Court or its designee for resolution.

## III.     LIMITATIONS AND NON-WAIVER

The Parties and their counsel intend by this Order to make the mutual disclosures discussed herein. The Parties and their counsel do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties preserve their attorney-client privileges, work product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Order shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

## IV.   RESERVATION OF RIGHTS

For the avoidance of doubt, the inclusion of any platform, program, application, or software as examples does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or software. The Parties reserve all rights to object to any demand to collect or produce ESI from any or all examples.

## V.   MODIFICATION BY AGREEMENT

Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Any Party added or joined to any complaint in the MDL and any Party to actions that may be consolidated into or coordinated with the MDL after the date of this Order that seeks to deviate from the terms of this Order must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

## VI.   IDENTIFICATION OF RESPONSIVE DOCUMENTS

### A.   PRESERVATION OBLIGATIONS

1. Consistent with the factors set forth in Fed. R. Civ. Rule 26, the Parties have taken and shall continue to take reasonable steps to ensure the preservation of documents, data, and tangible things relevant to claims or defenses in this Litigation.

2. The Parties have been advised by their respective counsel of their current and continuing obligations to preserve and not alter or destroy any potentially responsive documents or data in their possession, custody, and control.

3. The Parties' preservation obligations extend to relevant information generated on or after this date as well as to relevant information in existence on this date no matter when created.

5. By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

6. Nothing in this agreement shall affect any other obligations of the Parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

### B. ESI WHICH DOES NOT NEED TO BE PRESERVED

Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, the following categories of ESI need not be preserved:

1. Deleted data, fragmented data, unallocated/slack-space data, or other data only accessible by the data being rebuilt through forensic means.

2. Temporary data stored in a computer's random-access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. Online access data such as temporary Internet files, cache, and cookies.

4. Data in metadata fields that are updated automatically and frequently, such as last-opened dates.

5.      Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

6.      Server, system, or network logs.

7.      Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

8.      Data remaining from systems no longer in use that is unintelligible or that is duplicated on current systems.

9.      Other forms of ESI whose preservation the parties agree requires extraordinary affirmative measures that are not utilized in the ordinary course of business or standard ESI practices.  If a party intends to utilize this subsection, then the party must provide a written notice to the Parties, describing the information they are not preserving, the burden associated with the preservation as well as the reasons why it is believed the information or evidence is accessible by a different means.

### C.      INACCESSIBLE ESI

The following categories of ESI are presumed to be inaccessible within the definition of Federal Rule of Civil Procedure 26(b)(2)(B):

1.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

2.      Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

3.      Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is saved elsewhere that is accessible (such as on a server, laptop, desktop computer, or "cloud" storage).

4.      Disaster-recovery backup data. Absent a showing of good cause, disaster-recovery backup data shall be considered to be not reasonably accessible.

5.      Data remaining from systems no longer in use that is unintelligible on systems in use and cannot be  accessed or restored by systems currently licensed or owned[1].

6.      Nothing herein is intended to suggest that any sources of information or data not specifically excluded here are otherwise discoverable or required to be searched.

Unless otherwise agreed to or ordered by the Court, the Parties are not required to obtain a forensic image of the preserved data as long as the native files and associated metadata are preserved. Further, and unless otherwise agreed to or ordered by the Court, the Parties are not required to collect data from foreign jurisdictions outside of the United States before exhausting domestic sources.

### D.      PLANNING FOR DISCOVERY

Consistent with the Parties' obligations under Rule 26(f) of the Federal Rules, the Parties will meet and confer regarding planning for discovery, including custodians, data sources, date ranges, and categories of documents or ESI that contain information relevant to this litigation. The Parties will disclose categories or sources of discoverable information that they have reason to believe have not been preserved or should not be preserved or produced and will explain with

---

[1] For example, data will not be deemed to be inaccessible if the system required to access the data requires the renewal or purchase of a license and/or subscription and/or installing and/or reinstalling of a program.

specificity the reasons to support such a belief in writing in accordance with Section A or B above. The Parties understand their preservation obligations and agree that steps taken to preserve potentially relevant ESI will be reasonable and proportionate. The Parties will take reasonable and proportional steps to preserve  potentially relevant ESI in their possession, custody, or control.

### E.      DISCLOSURE OF ARCHIVAL/BACKUP DATA

If a Party learns that potentially relevant and non-duplicative documents or information have been destroyed per a document retention policy, but that an archival/backup location contains an archival/backup copy of such documents, the Party will disclose the existence of this archival/backup data, regardless of whether such a location has been declared or deemed inaccessible. The Parties agree to meet and confer about this this archival/backup location, and the Producing Party will determine whether the the burden or expense of restoring and collecting this data outweighs its likely benefit.

## VII.   SEARCH METHODOLOGY

The Parties shall meet and confer regarding search methods used to identify responsive documents and ESI. The fact that a document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is protected from disclosure by applicable privilege or work-product protection.

The use of a search methodology does not relieve a party from its obligations under Federal Rules 34 and 26 to produce responsive documents, and accordingly documents or ESI known to be responsive to a discovery request or otherwise subject to production or relevant to the claims or defenses shall be produced without regard to whether it was returned by any search methodology used in accordance with this Order or otherwise agreed upon by the parties unless there is a claim

for privilege. Prior to a Party using a search methodology (if any) to identify documents for production, the search terms, keywords, date limitations, and custodians applied to the data searched will be disclosed by the Producing Party to the Requesting Party. Within fourteen (14) calendar days of such disclosure, the Parties must meet and confer regarding such terms, custodians, and date culling per VII (A) below.

Should a Party choose to use a search methodology to cull their review of documents, the methodology must be run against all electronic documents and data collected from custodial and non-custodial sources identified for potential production (except for per VII(D) – unsearchable documents), and subject to de-duplication and de-NISTing of such documents and data pursuant to paragraphs VIII(M) and VIII(P) below.

At all meet and conferrals where the topic is the validity of search methodologies to identify documents subject to production, the Producing Party shall be required to provide information regarding search terms hits reports recall and precision data for any predictive coding model, or other data points available to provide insight into the validity of the method used.

Should a Producing Party wish to use any method or methodology not specifically addressed by this Order to identify responsive documents or to exclude from any review or production, notice to the Receiving Party must be made prior to the use of any such method or methodology.

A. **SEARCH TERMS**

Where the Parties agree that potentially responsive ESI shall be searched using search terms, the Parties shall meet and confer to provide reasonable assurances to the Requesting Party that the Producing Party's search terms and methodology used to apply them are reasonably

calculated to identify responsive documents and ESI. Prior to or during such meet and conferral, the Producing Party shall provide all associated information required by this Order.

If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet-and-confer process, a Requesting Party believes in good faith that the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the Requesting Party may object to the proposal and make prompt requests for different or additional search methods, parameters, or search terms. Such requests shall only be made after the Parties have met and conferred as to the alleged deficiencies identified by the Requesting Party. If the issue is not resolved within fourteen (14) calendar days after the objection, either Party may thereafter immediately submit the dispute to the Court or its designee for resolution.

Without prior agreement of the Parties per VII(C) below, Technology Assisted Review ("TAR") will not be applied before or after any application of search terms by any Party, unless TAR is used for review prioritization only.

## B.    HIT REPORTS

A hit report shall contain, for each custodian or data source in the document collection where the terms were applied, the following with respect to each proposed or modified search term in the collection:

a. The number of documents with hits for that term;

b. The number of unique documents, i.e., documents which do not have hits for any other term, for that term;

c. The number of family members requiring review in connection with all documents with hits; and

d. The number of unique family members of the documents with hits for that term.

The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application.

### C.     TECHNOLOGY-ASSISTED-REVIEW

The Parties agree that, with prior written notice to the Requesting Party, a Producing Party may also use other reasonable techniques to identify documents for responsiveness or relevance, including but not limited to predictive coding and other TAR methods, and the Parties will meet and confer regarding the same. Any Producing Party wishing to utilize TAR for document culling agrees to disclose written information to the Requesting Party concerning the TAR tool in use, as well as  agreed-upon metrics and data concerning recall, precision, and elusion.

The Requesting Party shall have fourteen (14) calendar days from the date of receipt of Producing Party's written disclosure to object in writing to the use of TAR for document culling. The Requesting Party's writing must reasonably describe any objections or disputes concerning the TAR tool and the metrics disclosed. If the Requesting Party objects to its use, then the Producing Party and Requesting Party shall meet and confer within fourteen (14) calendar days of receipt of the written objection to resolve the issue. If the issue is not resolved within the fourteen (14) calendar days after the objection, either Party may bring may thereafter immediately submit the dispute to the Court or its designee for resolution.

### D.     UNSEARCHABLE DOCUMENTS

If a Producing Party identifies non-duplicative and potentially responsive documents for which the enumerated search methodologies listed herein are fundamentally ineffective for culling on documents or data (such as images, , hard copy documents, or certain foreign language documents), the documents  must be reviewed without the aid of a search methodology if no alternative electronic search methodology can be identified.

If the Producing Party maintains that they have a reliable search methodology to cull the documents, then the Producing Party, prior to its use, must outline in writing to the Requesting Party the search methodology being sought to use and its reliability for use in the specific instance, which will include search terms hits, or recall and precision of any predictive coding model.  The Requesting Party shall have fourteen (14) calendar days to object, in writing, to its use. If the Requesting Party objects to its use, then the Producing Party and Requesting Party shall meet and confer within fourteen (14) calendar days of the objection to resolve the issue. If the issue is not resolved within the fourteen (14) days after the objection, either Party may bring may thereafter immediately submit the dispute to the Court or its designee for resolution.

## VIII.   FORM OF PRODUCTION

### A.      FILE TYPES AND FORMAT

1.      Emails shall be produced as TIFFs.

2.      All spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images.

3.      All PDF files shall be produced as TIFF files, except where the metadata field "Has Hidden Content" is a "Y" and no redaction is applied, in which case the document shall also be produced as a native file.

4.      All word processing (e.g., Microsoft Word) files shall be produced as TIFF files, except where the metadata field "HasHiddenContent" is "Y" and no redaction is applied, in which case the document shall also be produced as a native file.

5.      All presentation files (e.g., PowerPoint) shall be produced in speaker note view visible except where the metadata field "HasHiddenContent" is "Y"

and no redaction is applied, in which case the document shall also be produced as a native file.

6.     All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images.

7.     The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, data from messaging applications (e.g., Teams, Slack, Google Chat, et al.), CRM or ERP platforms, (SAP, Salesforce, et al.) etc., including with respect to non-standard metadata fields not already listed in Appendix A, below.

### B.    COLOR

Documents containing color need not be produced in color. The Producing Party will promptly produce a color image of a document upon request if the original document contains color, provided that the request is proportionate to the needs of the case.

### C.    REDACTIONS

No redactions for relevance may be made within a produced document or ESI item. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format so long as the original document is also preserved in an unredacted form.

### D. STRUCTURED DATA

If discoverable information from any Structured Data System can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format. Prior to producing the report, the Producing Party must provide in writing the various different report options available, including the data dictionary, if any exist. Within 14 (fourteen) days of receiving such report options, the Parties agree to meet and confer regarding any disputes about structured data production format. If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Structured Data System discoverable information in a format compatible with Microsoft Excel and may produce such information in that native format.

### E. HARD COPY DOCUMENTS

Collected and/or potentially responsive documents that exist in hardcopy will be scanned to TIFF image format and produced in accordance with the specifications set forth on Exhibit A. A Party's hard copy documents that are not text-searchable shall be made searchable by OCR prior to production at that Party's cost. In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

The Parties will make their best efforts to unitize the documents correctly. Within 14 calendar days (or as otherwise agreed) after notice from a requesting party that a document appears

to have been unitized incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.

### F.     NOTES AND ATTACHMENTS

If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible. The relationship between the version of the hard-copy document with the note or attachment, and the version without the note or attachment, shall be indicated by proper coding of the beginning and ending document and attachment fields (i.e., the "BegBates," "EndBates", "BegAttach", and "EndAttach" fields).

### G.     RESPONSIVE DOCUMENTS IN A CONTAINER

If, in the ordinary course of business, responsive documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege.

### H.     FAMILY GROUPS/RELATIONSHIPS.

Family relationships (e.g., the association between an attachment and its parent document, or between embedded documents, or linked internal or non-public documents and their parents) shall be preserved. Attachments should be consecutively produced with their parent such that the bates numbers for the attachment(s) is/are directly subsequent to the parent document.

### I.     PRODUCTION OF COMPLETE FAMILY GROUPS/RELATIONSHIPS

A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups. If any member of a

family group is produced, all members of that group must also be produced or else logged as privileged without breaking the grouping of these documents. Upon review of any document production, the Requesting Party may request that the Producing Party produce specific hyperlinked documents within the Producing Party's domain custody or control referenced within e-mails or other ESI. The Producing Party shall collect and produce the specific hyperlinked documents to the extent they exist, except that if it is not technically feasible or unduly burdensome to collect and produce such documents, they shall provide written notice to the receiving party of such technical difficulty or burden associated with the production. The receiving party may contest the asserted burden, and the parties will meet and confer within 7 days to resolve their dispute. If the parties are unable to resolve their dispute, they can submit it to the court for resolution.

### J. EXTRACTED TEXT (EMAILS, UNREDACTED NATIVE ESI, AND REDACTED SPREADSHEETS)

All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes, and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

### K. OCR (REDACTED NATIVE ESI, HARD COPY DOCUMENTS)

In the event a document, other than spreadsheets, e.g., Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-

redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

### L. INCLUSIVE EMAIL PRODUCTION

The Parties shall produce e-mail attachments sequentially after the parent e-mail. Email thread analysis[2] may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread, including attachments (regardless of their placement in the email thread) and bibliographic information. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Participants" field included in the data load file

---

[2] Where multiple email messages are part of a single email chain or "thread", a party is only required to produce the most inclusive messages ("Last in Time Email") and need not produce earlier, or less inclusive email messages or "thread messages" that are fully contained, including attachments, and including identical senders and recipients, including the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

(see Exhibit B). In the event that any person listed in the "All Participants" field is a deponent or witness, the Receiving Party may request the Producing Party to produce a copy of a reasonable number of specific unthreaded emails from that custodian/deponent's files at least five (5) business days before the deposition or testimony. The Producing Party shall promptly produce the unthreaded email or from that custodian/deponent's files within five (5) business days of the request.

### M. DE-DUPLICATION

A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity) or SHA-256 hash values. The Parties shall make reasonable efforts to not to produce Duplicate ESI. To the extent identical copies of documents appear in the files of a Custodian, the Producing Party shall attempt to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails (except for Paper Discovery). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Exhibit B. Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication will be populated in the All File Paths field. De-duplication shall be performed prior to application of the methodologies described in Appendix A.

### N. EMBEDDED FILES

Embedded files, except for images embedded in emails, are to be produced with family relationships preserved. Embedded files should be assigned Bates numbers that directly follow the

Bates numbers on the documents within which they are embedded and values in the "BegAttach" and "EndAttach" fields to indicate their family.

### O. COLLABORATION SOFTWARE

The Parties agree that potentially relevant ESI generated from collaboration software (e.g., Microsoft Teams, Onedrive, or Slack) is discoverable, and that the most efficient and cost-effective methods for collecting and producing such ESI may depend on the specific collaboration software in use. The parties further agree that it is helpful, where reasonably possible, to produce relevant individual chat messages with the context of prior-in-time and subsequent in-time chat messages. As a result, the Parties will meet and confer to discuss the methods to collect ESI generated by collaboration software, and the Parties agree to meet and confer regarding their preferred processing and production format for relevant communications in collaboration software prior to any production of chat messages.

### P. DeNIST

Each Party shall use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

### Q. PRODUCTION DELIVERY

Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format. If the data volume is such that electronic transmission of the production is impracticable the production will be delivered on an encrypted external hard drive to a location designated by the Requesting Party. Production media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered

consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of the MDL, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

## IX.  PROPRIETARY SOFTWARE, SYSTEMS AND DATA STORAGE LOCATIONS

### A.    SOFTWARE

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not), the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

During meet and conferral, the Producing Party shall have available a subject matter or technical expert to address questions regarding the capabilities and potential production formats for information retrieved from any such proprietary software. If the Producing Party identifies relevant information contained exclusively in proprietary software, the Producing Party shall be required to propose a retrieval methodology and production format for such information in writing, and the Parties agree to meet and confer within fourteen (14) days of such written disclosure to discuss any necessary adjustments to the proposal.

### B.    ELECTRONIC DATA STORAGE

To the extent that relevant ESI is stored in large databases or  file servers such as Network Attached Storage (NAS) or Storage Area Network (SAN), the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents located in those locations.

During meet and conferral, the Producing Party shall have available a technical expert to address questions regarding these databases and potential production formats for information retrieved from them. If the Producing Party identifies relevant information in these databases, the Producing Party shall be required to propose a retrieval methodology and production format for such information in writing, and the Parties agree to meet and confer within fourteen (14) days of such written disclosure to discuss any necessary adjustments to the proposal.

### C. HARDCOPY DOCUMENT STORAGE

To the extent that relevant documents and evidence are stored in hard copies in a storage facility, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents stored in those locations.

Prior to any meet and confer regarding hardcopy document storage, the Producing Party shall provide to the receiving Party either a table of contents or inventory listing what is stored in the physical storage location. If production or searching is not feasible, the Receiving Party shall be able to inspect the physical location in person.

### X. SOCIAL MEDIA

Any party producing information collected from social media should, if reasonable and proportionate, include document level OCR text files to accompany TIFF or other image format production and include (but not be limited to) the following metadata information: SOCIAL MEDIA PLATFORM, SOCIAL MEDIA USERNAME, and SOCIAL MEDIA CUSTODIAN(S).

E N T E R :

Dated: May 18, 2023

_____
MARY M. ROWLAND
United States District Judge

23

Respectfully Submitted,

/s/ Edward A. Wallace
Edward A. Wallace
WALLACE MILLER
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

/s/ Diandra "Fu" Debrosse Zimmermann
Diandra "Fu" Debrosse Zimmermann
DICELLO LEVITT LLC
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

/s/ Fidelma L. Fitzpatrick
Fidelma L. Fitzpatrick
MOTLEY RICE LLC
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

/s/ Michael A. London
Michael A. London
DOUGLAS & LONDON, P.C.
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

/s/ Benjamin L. Crump
Benjamin L. Crump
BEN CRUMP LAW FIRM
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

/s/ Dennis S. Ellis
Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Ellis George Cipollone O'Brien Annaguey LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
nbegakis@egcfirm.com

/s/ Jonathan Blakley
Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

/s/ Peter Siachos
Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Attorneys for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC and SoftSheen-Carson (W.I.), Inc.*

/s/ Donna M. Welch

Donna M. Welch
Michael F. LeFevour
Kirkland & Ellis, LLP
300 N. LaSalle
Chicago, IL 60654
T: (312) 862-2425
dwelch@kirkland.com
Michael.lefevour@kirkland.com

*Attorneys for Defendant Namaste Laboratories, LLC*

/s/ Lori B. Leskin
Lori B. Leskin
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019 T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

/s/ Rhonda R. Trotter
Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
*Attorneys for Defendants Strength of Nature LLC; Strength of Nature Global LLC; Godrej SON Holdings Inc.*

/s/ R. Trent Taylor
R. Trent Taylor (admitted pro hac vice)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

/s/ Patrick P. Clyder
Patrick P. Clyder
Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690

pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

/s/ Joseph P. Sullivan
Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Beauty Bell Enterprises, LLC f/k/a
House of Cheatham, Inc.*

/s/ Richard J. Leamy, Jr.
Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

<u>**APPENDIX A**</u>

<u>**TECHNICAL SPECIFICATIONS AND**</u>
<u>**REQUIRED METADATA FIELDS**</u>

1. **IMAGES:**

   o   Produce documents as single page, black and white, Group IV, TIFF files.

   o   Image Resolution 300 DPI

   o   File Naming Convention: Match Bates Number of the page.

   o   Insert placeholder image for files produced in Native Format

   o   Original document orientation shall be retained

2. **SPECIAL FILE TYPE INSTRUCTIONS:**

   o   Certain documents shall be produced in Native Format as required by Section VIII of this Protocol.

3. **FULL TEXT EXTRACTION/OCR:**

   o   Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content

   o   Produce OCR text for any hard copy document

   o   Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced)

   o   Produce OCR text for any redacted document

   o   Production format: Single text file for each document, not one text file per page

   o   File Naming Convention: Match BegBates Number

4. **LOAD FILES**

   a)   **Data Load File**

      o   The data load file should use standard Concordance delimiters:

      o   Comma - ¶ (ASCII 20)

      o   Quote - þ (ASCII 254)

A-1

- o Newline-® (ASCII174)

- o The first record should contain the field names in the order of the data;

- o All date fields should be produced in mm/dd/yyyy format;

- o Use carriage-return line-feed to indicate the start of the next record;

- o Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- o The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC00l.DAT);

- o The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

**b) Image Load File**

- o The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT)

- o The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- o There should be one row in the Load File per TIFF image.

- o Every image in the delivery volume should be contained in the image load file.

- o The image key should be named the same as Bates Number of the page.

- o Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

- o The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

**APPENDIX B**

**METADATA FIELDS**

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| Production Number Begin [ProdBeg] | Integer – Text | Beginning page production number – Starting Bates # | x | x | x |
| Production Number End [ProdEnd] | Integer – Text | Ending page production number – Ending Bates # | x | x | x |
| Attachment Begin [ProdBegAttach] | Integer – Text | Beginning page of attachment range [Starting bates # of document family] | x | x | x |
| Attachment End [ProdEndAttach] | Integer – Text | Ending page of attachment range Ending bates # of document family | x | x | x |
| Attachment Count | Integer – Text | Number of attachments. | x | x | |
| Custodian | Text | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| Source | Text | This is the source in which non-custodial data was collected from | x | x | x |
| All Custodians | Text – paragraph Separate entries with ";" | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| All Participants | Text – paragraph Separate entries with ";" | Lists all participants in lesser-included emails that, without email treading, would have been | x | x | |

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| | | produced, or in the case of an attachment, would be included on a message with the attachment | | | |
| File Name | Text - Paragraph | File name of document (Original including Extension) | x | x | |
| File Extension | Text | File extension of original document | x | x | |
| Email Outlook Type | Text | Type of Outlook item, e.g., email, calendar item, note, task | x | | |
| Page Count | Integer – Text | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Text - Paragraph | Title field extracted from the Metadata of a non-Email document | | x | x |
| Author | Text - Paragraph Separate entries with "," | Document author of a non-Email document. | | x | x |
| Email Subject | Text - Paragraph | Subject of email | x | x | |
| From | Text - Paragraph | Email author | x | x | |
| To | Text - Paragraph Separate entries with ";" | Email recipients | x | x | |
| CC | Text - Paragraph Separate entries with ";" | Email copyees | x | x | |
| BCC | Text - Paragraph Separate entries with ";" | Email blind copyees | x | x | |

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| Date-Time Sent | Date/Time (mm/dd/yyyy hh:mm:ss) | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date/Time (mm/dd/yyyy hh:mm:ss) | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Date/Time (mm/dd/yyyy hh:mm:ss) | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Date/Time (mm/dd/yyyy hh:mm:ss) | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| File Path | Text | File/path of the location where the item was located during the normal course of business. | x | x | |
| All File Paths | Text | File Path that would have been provided for each version of the document that was not produced due to de-duplication. | x | x | |
| Filesize | Integer – Text | Size or volume of individual file | X | x | |
| PGcount | Integer – Text | Number of pages of document produced | X | x | |
| HasHiddenContent[3] | Y/N | Y if hidden content, otherwise N or empty | | x | |
| Physical Location | Text | The actual location where the Document is stored or preserved | | | x |
| Box Number or unique identifier | Integer – Text | The box number associated with archived documents. | | | x |

[3] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| Hash Value | MD5/Text | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Integer – Text | Production volume name, including a volume number and a prefix which indicates the producing party | x | x | x |
| Confidentiality | Text | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Text | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| Native Link | Text | Path to produced native file used for linking. | X | x | x |
| Text Link | Text | Path to produced text file used for database linking. | X | x | x |
| Social Media Platform | Text | The social media service, website, or app the data was created on | | X | |
| Social Media Username | Text | The username that generated the data on the social media service, website, or app | | X | |
| Social Media Custodian | Text | The custodian of the data on the social media service, website, or app | | X | |
| Shared Location Data | Text | This contains the access and shared data of a document created by an online repository such as Microsoft Onedrive or | | x | |

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| | | Sharepoint, Dropbox, Sharefile etc. For documents that are retrieved from a data source that permits the sharing of documents, this field shall be populated with the names of each individual that the document has been shared with. | | | |
| Other Regulatory/Related Productions BegBates | Integer – Text | Beginning Bates# (including Prefix) used when produced in the other legal matter | X | X | X |
| Other Regulatory/Related Productions EndBates | Integer – Text | Ending Bates# (including Prefix) used when produced in the other legal matter | X | X | X |
| Other Legal Matter BegAttach | Integer – Text | Beginning Bates number of the first document in an attachment range (only in emails with attachments) used when produced in the other legal matter | X | X | x |
| Other Regulatory/Related Productions EndAttach | Integer – Text | Ending Bates number of the last document in attachment range (only in emails with attachments) used when produced in the other legal matter | X | X | X |

| Field | Data Type | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|---|
| Other Regulatory/Related Productions Short Caption | Integer – Text | The case caption or other legal identifiable name of the other legal matter | X | X | X |
| Tracked Changes | Y/N | The yes/no indicator of whether tracked changes exist in the file. | x | x | x |