**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No. 23 C 818<br><br>MDL No. 3060<br><br>Judge Mary M. Rowland |

**JOINT STATUS REPORT FOR
JULY 6, 2023 CASE MANAGEMENT CONFERENCE**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this joint status report in advance of the status conference scheduled for July 6, 2023.

1. *Rule 26 Conference*:

    The parties engaged in two meet and confers pursuant to Rule 26(f). The parties agreed that all defendants, except the Revlon defendants and any other defendants who have not yet appeared, will serve Initial Disclosures on or before August 7, 2023. The parties also agreed that all plaintiffs with cases filed as of June 30, 2023 would serve Initial Disclosures on or before August 7, 2023.

    The parties were not able to agree on an overall schedule of discovery. Defendants continue to propose a schedule that prioritizes the completion of fact and expert discovery on general causation, while simultaneously allowing broader discovery to continue, as set forth in the Memorandum of Defendants Regarding the Prioritization of the Resolution of General Causation ("Defendants' General Causation Memorandum"), dated June 5, 2023 [ECF 117]. The Plaintiffs Leadership Committee ("PLC") submits that discovery should be advanced consistently with the process employed in most product liability mass tort MDLs, and that adjudicating general causation first will result in undue delay, waste and inefficiency. *See* Plaintiffs' Submission Opposing Bifurcation of General Causation Discovery [ECF No. 116].

    The parties' more detailed and respective positions on discovery are set forth below.

2. *Discovery*:

    **Plaintiffs' Discovery Plan:**
    The PLC submits that discovery should proceed in the traditional mass tort MDL manner which generally is as follows:

        A.    Initial Disclosures to be provided – August 7, 2023.

1

    B.    Plaintiffs will propound Master discovery demands on Defendants[1] for all issues other than those specific to a Plaintiff for response in the time allotted under the FRCP, including:
- Interrogatories;
- Requests for Production of Documents; Requests for Admission; and
- Initial depositions, including depositions pursuant to Rule 30(b)(6).

    C.    Standardized Plaintiff Profile Form ("PPF") will be developed and required to be responded to by Plaintiffs (which, once developed will include the relevant initial disclosure information).

    D.    Duly executed authorizations for the release of relevant medical records to be provided by Plaintiffs (as well as relevant documents that are requested as part of the PPF).

    E.    Standardized Defense Profile Form ("DPF") will be developed and required to be responded to by Defendants following service of a PPF.[2]

    F.    Supplementation of any party's discovery responses as required under Fed.R.Civ.P. 26(e).

    G.    Fact Depositions of Defendant corporate/liability witnesses.

    H.    Supplemental discovery demands propounded by the PLC on Defendants and responded to by Defendants.

    I.    Development of a process and then selection of representative cases to serve as bellwether (or early trial case) plaintiffs.
- Initial discovery on the selected Bellwether cases[3]

---

[1] The PLC has served a preliminary set of targeted interrogatories and document demands on Defendants. This includes 16 Requests for Production, 11 Interrogatories, and three 30(b)(6) deposition notices (related to the following topics: Corporate organization/structure, ESI and Product and Brand Name identification). The PLC intends to serve a more robust master set of demands shortly, but in an effort to triage those requests and information that should be more easily producible, the PLC elected to serve these more basic requests first. Further, the PLC believes that prompt responses to the discovery served will allow them to further refine future discovery requests in a meaningful and efficient way.

[2] The necessity of a DPF is that none of the master discovery demands are designed to seek plaintiff specific discovery from Defendants. Some limited case/plaintiff-specific discovery is necessary for the parties to be able to make informed decisions about selecting representative bellwether or early trial case candidates, use of DPFs is standard in product liability MDLs.

[3] Often the bellwether process is split into two phases. A first phase where cases are selected, and in which limited discovery is conducted with the goal to winnow the phase one pool to a final set of cases to serve as Phase Two cases. The phase two pool is this smaller winnowed down group that include cases that

- ○ Selection of phase two/trial cases from the phase one bellwether pool – with additional trial preparation and discovery

G. Expert designations, expert reports and expert depositions for the trial case(s).

The PLC submits that in any large MDL, like this, the most prudent course is for the parties to engage in the master discovery process, the PPF and DPF process, and more specifically items A-G, above. The PLC submits that this process will take us through the early 2024. At that time, in early 2024, a bellwether process should have been designed and representative cases selected by the parties and Court (item I). Interwoven within this timeline will be the depositions of defense witnesses that the PLC will notice and take once responses to written discovery are provided by Defendants, as well as the meeting and conferring by both sides regarding adequacy to discovery responses of the other party. The PLC anticipates the bellwether discovery process (both phases) should last three to six months, followed by expert reports, expert discovery and dispositive motions. Given the above the PLC respectfully requests that a trial date be set for the Fall of 2024 pending the Court's calendar and schedule.

The PLC appreciates the arguments taken by Defendants in the section below. To this end, there are three central themes to Defendants' counter-plan.

First, in their response, Defendants take issue with the PLC and the parties not agreeing to set caps and/or limits for discovery. This requirement and argument are flawed. Setting caps or limits in a massive MDL involving multiple defendants with claims that span decades; Defendants that have their individual own testing, research, regulatory, marketing and sales information; and many other nuances cannot be established by a one size fits all "cap", particularly at this early stage of litigation. Artificial caps in such a complicated and far-reaching MDL should not be used to "control" or unnecessarily limit discovery of relevant information; rather, if the discovery is indeed overbroad or too expansive, those issues should be dealt with in the context of an actual disputes before the Court, including at the Court's monthly status conferences or via motion practice if necessary.[4]

Secondly, Defendants also incorrectly assert that the Plaintiffs' more traditional plan outlined above is both too expeditious and imposes inequitable burdens on the parties. The PLC is focused on ensuring that this case moves efficiently and expeditiously toward a

---

would be selected to serve as the actual initial trial case(s). Moore robust trial readiness discovery is conducted on these phase two cases, followed typically by expert reports and expert discovery in the final trial selected case(s), as well as any dispositive motions before trial (e.g. summary judgment and/or *Daubert* challenges, if any).

[4] Of note, during one of the meet and confers, the PLC indicated that it would not be seeking the discovery that would be permitted as if these were all individually federally filed cases (i.e.. 25 interrogatories, 10 depositions etc..). So of course, the PLC is mindful of reasonableness, but the PLC also needs to serve demands for that which it believes is the relevant information without an artificial and arbitrarily pre-determined cap or limit.

3

resolution – be that by trials or settlement – and does not believe that production of substantive, relevant information should be delayed while the parties debate Defendants' hypothetical issues that may never come to pass. To that end, the PLC served targeted discovery asking for things that should be non-controversial such as product labels, instructions for use, correspondence with regulatory agencies about the Defendants' Hair Relaxer Products, and the scientific studies that Defendants themselves have conducted concerning the safety of their Hair Relaxer Products. The Defendants' responses to that narrow discovery will allow Plaintiffs to tailor their future requests, allowing those future requests to be tailored to the realities of the individual various defendants. This approach squarely addresses any potential challenges from Defendants about the over-breadth of discovery requests and reflects Plaintiffs commitment to an efficient prosecution of this litigation. Furthermore, far from being one-sided, the Plaintiffs' proposal contemplates that each Plaintiff will provide discovery responses by way of an agreed to Plaintiff Profile Form, something that the Plaintiffs are prepared to accelerate earlier than contemplated by the Defendants' schedule.

Thirdly, Defendants remaining argument concerning discovery is a rote regurgitation of their re-argument of their first-day MDL positions and recent formal briefing on the issues of general causation. Plaintiffs' position on these issues are fully set forth in [ECF 116]; in summary, the PLC believes that this concept should be rejected here, as it has been in many other MDL courts when it was presented by the defense.

**Defendants' Discovery Plan:**

Defendants disagree that the PLC's proposed discovery plan is "traditional" for a mass tort MDL, either in scope or in timing. Defendants are troubled that, as a threshold matter, Plaintiffs' proposed discovery plan and schedule results in the very bifurcation they opposed -- pushing all expert discovery, briefing, and hearing on the fundamental general causation issues at the heart of this case until after all other discovery has been concluded, and indeed until the bellwether selection process has been completed. The breadth of the discovery Plaintiffs contemplate—as evidenced not only by their discovery plan but also by the voluminous and duplicative discovery served in advance of initial disclosures[5]—will be expensive and time consuming, and thus contrary to the fundamental purpose of an MDL.

*At a minimum*, as described in Defendants' General Causation Memorandum, Defendants believe that a ruling on general causation will likely result in narrowing the issues and claims and streamlining remaining fact and expert discovery on specific causation. It will also significantly impact the bellwether selection process. For example, if the Court determines that the state of the science is insufficient to support causation between certain classes of chemicals and any of the more than a dozen health outcomes alleged so far in the case, the parties and the Court will save significant time and resources conducting

---

[5] Plaintiffs describe the recently served written discovery and deposition notices as "targeted" and "preliminary" - and state that they intend to serve "more robust" discovery shortly. The currently served discovery, to which responses are demanded before initial disclosures are due on August 7 is both duplicative of some of the very information due in initial disclosures and broad on its face.

massive discovery relating to those claims. Similarly, if the Court were to determine Plaintiffs' experts' opinions are inadmissible as to certain chemicals, claims involving products only including those chemicals may be dismissed. The issues at the heart of this case are expert issues, including the science underlying general causation. It will be highly inefficient to leave the science to the end of the case as Plaintiffs propose.

Defendants are equally concerned that Plaintiffs' proposed schedule is unrealistic, and appears to be designed to obtain early trial dates to use as leverage against Defendants. Briefing on Defendants' motion to dismiss (not even due to be filed until July 6) will not be complete until late August. The format for a short form complaint has not been finalized. The format for a never-before-discussed Plaintiff Profile Form and Defense Profile Form have not been provided, and it is unclear when Plaintiffs anticipate they would be submitted or how and when any disputes would be resolved. And yet Plaintiffs proposed discovery plan (which does not reference the short form complaints at all), suggests that a two-stage bellwether selection process can begin in early 2024 and that all expert discovery and motion practice could be completed in time for a trial date in Fall 2024.

With the exception of a trial date, much of the actual schedule Plaintiffs are proposing remains unclear. While Plaintiffs also propose that discovery begin in earnest immediately, they propose no interim dates leading up to a demand for a Fall 2024 trial date, and they have rejected any attempt to negotiate reasonable limits on discovery, including an agreed number of interrogatories, requests for admission, and depositions per party. Defendants disagree with Plaintiffs' "theme one" that reasonable limitations on discovery are unusual in complex MDLs, or that they would "control" or "unnecessarily limit" discovery. In a complex case, particularly one where Plaintiffs are urging an extremely limited timeframe for discovery and arguing for expedited trial dates, reasonable limits are needed. The Court can of course address requests to expand discovery beyond those reasonable limits for good cause. What is clear from Plaintiffs' proposal is that Defendants would be required to submit to extensive discovery in the next six months, and Plaintiffs would be required to do virtually nothing beyond submitting a Profile Form and authorizing the release of medical records. Plaintiffs' "theme two" attempts to justify this virtually one-sided discovery leading to the bellwether selection process by explaining why it needs quick discovery from Defendants. Defendants do not argue that they should not be subject to discovery, only that Plaintiffs should be subject to discovery, including document requests, interrogatories and depositions as well. Plaintiffs, however, fail to address the efficiencies of prioritizing general causation and the efficiencies for the Court and the parties of addressing the threshold question of general causation first. Such a schedule would be unrealistic in a science-heavy single-plaintiff case, and is simply impossible in a case of this size and scope where thousands of Plaintiffs still remain unidentified.

Defendants maintain that general causation discovery should be prioritized, so that the Court can address the threshold issue of general causation in a timely manner. Defendants reiterate that they do not seek to bifurcate or otherwise hamper Plaintiffs' ability to take discovery on other issues.

Defendants suggest the following schedule, consistent with that proposed in Defendants' Memorandum on General Causation, which Defendants believe would have initial bellwether cases ready for summary judgment briefing and/or trial by First Quarter or early Second Quarter 2025:

| | |
|---|---|
| Parties to exchange initial disclosures | August 7, 2023 |
| Plaintiffs to provide list of subject areas in which they propose to identify general causation experts | September 1, 2023 |
| Defendants to provide list of any additional areas in which they propose to designate general causation experts | October 1, 2023 |
| Format for Short Form Complaint and Plaintiff Fact Sheet Agreed or Ordered | October 1, 2023 |
| Short Form Complaints for all actions then pending in the MDL to be filed | November 1, 2023 |
| Plaintiff Fact Sheet for all actions pending in the MDL by October 1, 2023 to be filed | December 1, 2023 |
| Fact discovery relating to general causation closes | January 1, 2024 |
| Plaintiffs to serve Rule 26 expert reports on issues relating to general causation | February 1, 2024 |
| Defendants to serve Rules 26 expert reports on issues relating to general causation | March 1, 2024 |
| Science Day | March 2024 |
| Deposition of Plaintiffs' experts related to general causation to be concluded | April 1, 2024 |
| Deposition of Defendants' experts related to general causation to be concluded | May 1, 2024 |
| Motions to exclude experts to be filed | May 15, 2024 |
| Oppositions to motions to be filed | June 15, 2024 |
| Reply briefs in support of motions to be filed | July 15, 2024 |
| *Daubert* hearing | To be scheduled at the convenience of the Court |
| Remaining fact discovery (with exception of discovery regarding selected bellwether plaintiffs) to be concluded | July 31, 2024 |
| Bellwether selection process to be finalized | July 31, 2024 |
| Initial Selection of bellwethers | Withing 15 days of ruling on *Daubert* motions |

3. ***Pleadings/Amending Complaints:*** As requested by the Court at the April 18, 2023 Case Management Conference and memorialized in the Minute Order issued immediately following the conference [*See* ECF No. 77], the PLC filed their Long-Form Master non-class Complaint along with a Short Form Complaint on May 15, 2023 [*See* ECF No. 106].

### A. Long-Form Master Personal Injury Complaint

As discussed at the May 31, 2023 Case Management Conference and memorialized in the Minute Order issued [*See* ECF No. 114], Defendants shall file their omnibus motion to dismiss the Master Long Form Complaint of no more than 35 pages on or before July 6, 2023. Plaintiffs' response, also of no more than 35 pages, will be filed on or before August 4, 2023. Defendants' Reply of no more than 20 pages will be filed on or before August 25, 2023.

### B. Consolidated Class Action Complaint

As granted by the Court's June 15, 2023 Minute Order extending the previous deadline, Plaintiffs will file their class action complaint on or before July 31, 2023, which will not state claims for personal injury, or file a status report updating the Court on the status of the complaint and whether Court intervention is needed. As a result, the parties do not believe a separate case management order is needed with respect to the Consolidated Class Action Complaint, and the Court can set a deadline for response thereto at or before the next Status Conference, on August 23, 2023.

4. ***Science Day***: As discussed at the May 31, 2023 Case Management Conference and memorialized in the Court's Minute Order issued immediately following the conference [*See* ECF No. 114], the parties met and conferred on June 21, 2023 regarding a potential Science Day.

   While the PLC is not in favor of Science Day, it submits that to the extent the Court is inclined to conduct one, it should *not* be a quasi-*Daubert* hearing. Instead Science Day should be to apprise the Court of basic product information (including how the product works, the manner of use, the product label, and the differences, if any, among the various HRL products), basic medical information about the types of injuries alleged, and any other factual issues unique to the cases that might provide a more robust background on the products and injuries at issue. Thus, the PLC submits that if the Court is inclined to conduct Science Day, it should be after some initial master discovery is responded to and then the parties meet and confer over parameters of any Science Day and report to the Court at the October 4, 2023, Case Management Conference.

   The Defendants' maintain that the topics for a potential Science Day proposed by Plaintiffs (e.g, product use and labeling) are not the core science issues that should be the focus of the parties and Court for this exercise. Rather, Defendants believe that it would be highly informative and useful for the Court to get background information regarding the scientific causation issues central to the case, once expert reports have been exchanged.

5. ***Suggested FAQs for the Court's MDL webpage***: As discussed at the May 31, 2023 Case Management Conference and memorialized in the Court's Minute Order issued immediately following the conference [*See* ECF No. 114], the parties met and conferred initially on June 21, 2023 regarding suggestions for the potential FAQ section of Court's MDL webpage. Defendants have provided a proposed draft to the PLC for its review on

June 29, 2023. The PLC designee will work with the defense designees to have a report for the Court at the Case management Conference on July 6, 2023.

6. *General Causation*: As directed by the Court on April 18, 2023, the parties filed simultaneous briefs addressing general causation on June 5, 2023. See e.g. ECF 116 and 117]

7. *Federal and State Coordination:* As discussed at the May 31, 2023 Case Management Conference and memorialized in the Court's Minute Order issued immediately following the conference [*See* ECF No. 114], Defendants are to report the number and geographic areas of the state court proceedings every three months. The next report is due at the October 4, 2023 Case Management Conference. However, Defendants are prepared to provide the Court with an update on recent activities in the Illinois and Georgia state court actions at the July 6 conference.

8. **Revlon Bankruptcy Update**
   The PLC is submitting a status report related to Revlon's bankruptcy under separate cover and contemporaneously with this Joint Status Report.

Dated: June 30, 2023  Respectfully submitted,

*/s/ Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Ellis George Cipollone O'Brien Annaguey LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
nbegakis@egcfirm.com

Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500

9

F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC and SoftSheen-Carson (W.I.), Inc.*

Donna M. Welch
Michael F. LeFevour
Kirkland & Ellis, LLP
300 N. LaSalle
Chicago, IL 60654
T: (312) 862-2425
dwelch@kirkland.com
Michael.lefevour@kirkland.com

*Counsel for Defendant Namasté Laboratories, LLC*

Lori B. Leskin
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; Godrej SON Holdings Inc.*

R. Trent Taylor
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder

Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Beauty Bell Enterprises, LLC*
*f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*