**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Master Docket No. 1:23-cv-00818<br><br>MDL No. 3060<br><br>Hon. Mary M. Rowland |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION TO DISMISS**
**MASTER LONG FORM PERSONAL INJURY COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     RELEVANT FACTS ...........................................................................................8

    A.      Allegations of the Master Complaint ...........................................................8

    B.      Notable Omissions from the Master Complaint .........................................9

III.    LEGAL STANDARD ........................................................................................11

IV.     PLAINTIFFS' NON-PRODUCTS LIABILITY CLAIMS ARE PREEMPTED. ............13

V.      PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM. .........15

    A.      Plaintiffs' Negligence Claims Are Insufficiently Pled. ............................16

    B.      Plaintiffs' Design Defect Claim Is Insufficiently Pled. ...........................17

    C.      Plaintiffs' Failure To Warn Claim Is Insufficiently Pled.........................20

VI.     PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED............22

VII.    PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY
    PLED.................................................................................................................26

VIII.   THE CAUSES OF ACTION FOR UNJUST ENRICHMENT AND PUNITIVE
    DAMAGES FAIL TO STATE A CLAIM. ...........................................................29

IX.     THE WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF
    CONSORTIUM CLAIMS SHOULD BE DISMISSED..........................................31

X.      DABUR INTERNATIONAL AND DERMOVIVA MUST BE DISMISSED
    FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION.........................32

    A.      Background .................................................................................................32

    B.      Argument ....................................................................................................32

        1.      Plaintiffs Fail To Allege General Jurisdiction. ..............................33

        2.      Plaintiffs Fail To Allege Specific Jurisdiction...............................34

XI.     CONCLUSION..................................................................................................35

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008)....................................................................................13

*Allender v. Guardian Life Ins. Co. of Am.*,
592 F. Supp. 541 (N.D. Ill. 1984) .......................................................................7, 31

*Apperson v. E.I. du Pont de Nemours & Co.*,
41 F.3d 1103 (7th Cir. 1994) ...................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................3, 12

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) .........................................................................24

*Bastien v. AT&T Wireless Serv., Inc.*,
205 F.3d 983 (7th Cir. 2000) ...................................................................................15

*Batson v. Live Nation Entm't, Inc.*,
746 F.3d 827 (7th Cir. 2014) ...................................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................3, 12

*Boomer v. AT&T Corp.*,
309 F.3d 404 (7th Cir. 2002) ...................................................................................15

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ................................................................................3, 22

*Brechbill v. Home Invest LLC*,
No. 17-cv-7313, 2018 WL 4384297, at *4 (N.D. Ill. Sept. 14, 2018) .....................12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S 255, 264 (2017)......................................................................................35, 36

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .....................................................................29

*Bryant v. Muskin Co.*,
873 F.2d 714 (4th Cir. 1989) ...................................................................................31

# **TABLE OF AUTHORITIES**

**Page**

*Burkhart v. Allson Realty Tr.*,
   363 F. Supp. 1286 (N.D. Ill. 1973) ....................................................................8

*Cameron v. Battery Handling Sys., Inc.*,
   524 F. Supp. 3d 860 (C.D. Ill. 2021) ...............................................................28

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*,
   No. 02 C 8800, 2005 WL 782698 (N.D. Ill. Apr. 6, 2005).................................6, 26

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934, 943 (7th Cir. 2000) ..............................................................34, 35

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655, 674 (S.D. Miss. 2007)....................................................30

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019) ........................................................................23

*Corwin v. Conn. Valley Arms, Inc.*,
   74 F. Supp. 3d 883 (N.D. Ill. 2014) ...........................................................17, 27

*Critcher v. L'Oréal USA, Inc.*,
   959 F.3d 31 (2d Cir. 2020)..................................................................4, 13, 14, 15

*Daimler AG v. Bauman*,
   571 U.S. 117, 125 (2014)..............................................................................33

*Dassig v. Honeywell Int'l, Inc.*,
   No. 21-cv-485-SMY, 2022 WL 5169525 (S.D. Ill. Oct. 5, 2022).........................16

*Dent v. Nat'l Football League*,
   968 F.3d 1126, 1130 (9th Cir. 2020) ...............................................................16

*Edalatdju v. Guaranteed Rate, Inc.*,
   748 F. Supp. 2d 860 (N.D. Ill. 2010) ...............................................................23

*Fisher v. Ethicon, Inc.*,
   No. 1:20-cv-1365, 2021 WL 5889522 (C.D. Ill. Dec. 13, 2021).........................30

*Francis v. Gen. Motors, LLC*,
   504 F. Supp. 3d 659 (E.D. Mich. 2020)...........................................................27

*Giles v. Wyeth, Inc.*,
   500 F. Supp. 2d 1063 (S.D. Ill. 2007)..............................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Griffin v. Medtronic, Inc.*,
    No. 17-CV-927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017) .................................4, 18, 20, 21

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) .................................................................................................22

*Heisner ex rel. Heisner v. Genzyme Corp.*,
    No. 08-C-593, 2008 WL 2940811 (N.D. Ill. July 25, 2008) .........................................6, 27, 28

*Hutchison v. Fitzgerald Equip. Co., Inc.*,
    910 F.3d 1016, 1022 (7th Cir. 2018) .....................................................................................17

*Ibarolla v. Nutrex Rsch., Inc.*,
    No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) ..............................................5, 23

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017)...........................................................................30

*In re Hydroxycut Mktg. and Sales Prac. Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011).....................................................................................27

*In re McDonald's French Fries Litig.*,
    503 F. Supp. 2d 953 (N.D. Ill. 2007) ................................................................................28, 29

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015) ..........................................................................................22

*Indus. Hard Chrome. Ltd. v. Hetran, Inc.*,
    64 F. Supp. 2d 741 (N.D. Ill. 1999) .......................................................................................28

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310, 316 (1945)........................................................................................................34

*Karlinski v. Costco Wholesale Corp.*,
    616 F. Supp. 3d 753 (N.D. Ill. 2022) ..................................................................................6, 29

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................................................13, 22

*Lambert v. Dollar Gen. Corp.*,
    No. 16 C 11319, 2017 WL 2619142 (N.D. Ill. June 16, 2017) .........................................6, 28

*Lederman v. Pac. Indus., Inc.*,
    939 F. Supp. 619 (N.D. Ill. 1996) ..........................................................................................21

**TABLE OF AUTHORITIES**

**Page**

*Lolie v. Ohio Brass Co.*,
    502 F.2d 741 (7th Cir. 1974) ............................................................4, 18

*Marks v. CDW Comput. Ctrs, Inc.*,
    901 F. Supp. 1302 (N.D. Ill. 1995) .........................................................1

*McDowell v. Bos. Sci. Corp.*,
    No. 18-3007, 2018 WL 6182625 (C.D. Ill. Nov. 27, 2018) ..................16

*Mercado v. Bayer Healthcare Pharm. Inc.*,
    No. 14 C 6699, 2015 WL 3545238 (N.D. Ill. Jun. 5, 2015) ..................18

*Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*,
    No. 05 C 1698, 2005 WL 3159680 (N.D. Ill. Nov. 22, 2005)............7, 30

*Middaugh v. InterBank*,
    528 F. Supp. 3d 509, 552 (N.D. Tex. 2021) ..........................................29

*O'Connor v. Ford Motor Co.*,
    477 F. Supp. 3d 705 (N.D. Ill. 2020) .....................................................16

*Ocasio v. Village of N. Aurora*,
    No. 20 CV 4908, 2022 WL 16540198 (N.D. Ill. Oct. 28, 2022) ...........31

*Pershouse v. L.L. Bean, Inc.*,
    368 F. Supp. 3d 185 (D. Mass. 2019) ...............................................7, 30

*Pfitzer v. Smith & Wesson Corp.*,
    No. 4:13–CV–676–JAR, 2014 WL 636381 (E.D. Mo. 2014) ................22

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ...............................................................12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .....................................................12, 13, 22

*Polly v. Adtalem Glob. Educ., Inc.*,
    No. 16 CV 9754, 2019 WL 587409, at *4 (N.D. Ill. Feb. 13, 2019) ......24

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) .....................................................27

*Ritacca v. Storz Med., A.G.*,
    291 F.R.D. 176 (N.D. Ill. 2013)..........................................................5, 24

# TABLE OF AUTHORITIES

**Page**

*U.S. ex rel. Robinson v. Northrop Corp.*,
  149 F.R.D. 142 (N.D. Ill. 1993) ......................................................................22

*Rodriguez v. Glock, Inc.*,
  28 F. Supp. 2d 1064 (N.D. Ill. 1998) ..............................................................20

*Robin v. Arthur Young & Co.*,
  915 F.2d 1120, 1127 (7th Cir. 1990) ...............................................................23

*Smith v. Monaco Coach Corp.*,
  334 F. Supp. 2d 1065 (N.D. Ill. 2004) ........................................................26, 29

*Solvay USA v. Cutting Edge Fabrication, Inc.*,
  521 F. Supp. 3d 718 (N.D. Ill. 2021) ...............................................................27

*Spence v. ESAB Grp., Inc.*,
  623 F. 3d 212, 215 n. 2 (3d Cir. 2010) ............................................................16

*Stuve v. Kraft Heinz Co.*,
  No. 21-CV-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023) .........................25

*Tillman v. Taro Pharm. Indus. Ltd.*,
  No. 10-cv-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011) ......................18

*Todd v. Societe Bic, S.A.*,
  21 F.3d 1402, 1409 (7th Cir. 1994) .................................................................. 19

*Tragarz v. Keene Corp.*,
  980 F.2d 411 (7th Cir. 1992) .....................................................................3, 4, 15

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ...........................................................................14

*Vanzant v. Hill's Pet Nutrition, Inc.*,
  934 F.3d 730 (7th Cir. 2019) ....................................................................6, 22, 29

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) ...........................................................................29

*Walden v. Fiore*,
  571 U.S. 277, 284 (2014) ............................................................................34, 35

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
  607 F. Supp. 2d 885 (N.D. Ill. 2009) ...............................................................23

# TABLE OF AUTHORITIES

**Page**

*Williams v. Tripp Lite*,
No. 93 C 3913, 1993 WL 408367 (N.D. Ill. 1993).....................................31

*Woodill v. Parke Davis & Co.*,
79 Ill. 2d 26, 35 (1980) .................................................................5

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286, 295 (1980)...............................................................35

*Yuhasz v. Brush Wellman, Inc.*,
341 F.3d 559, 566 (6th Cir. 2003) ......................................................19

## STATE CASES

*Cornstubble v. Ford Motor Co.*,
532 N.E.2d 884 (Ill. App. Ct. 1988) .....................................................16

*Kleinwort Benson N. Am. Inc. v. Quantum Fin. Servs., Inc.*,
181 Ill. 2d 214, 224 (Ill. 1998).........................................................7

*Kozak v. Armstrong World Indus., Inc.*,
213 Ill. App. 3d 1061, 1067 (1991) ......................................................19

*Lamkin v. Towner*,
563 N.E.2d 449 (1990)................................................................18, 19

*Lawler v. Uni. of Chi. Med. Ctr.*,
2016 IL App (1st) 143189................................................................7, 31

*N. Tr. Co. v. Upjohn Co.*,
572 N.E.2d 1030 (Ill. App. Ct. 1991) ...................................................20, 21

*Setliff v. E.I. Du Pont de Nemours & Co.*,
32 Cal. App. 4th 1525, 1529, 1535 (1995)................................................ 19

*Silver v. Horneck*,
2021 IL App (1st) 201044...............................................................33

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
371 Ill. App. 3d 759 (2007) ............................................................24

*Wiles v. Morita Iron Works Co.*,
125 Ill. 2d 144, 150 (1988) ...........................................................33

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

*Zimmer v. Celotex Corp.*,
    192 Ill. App. 3d 1088 (1989) ........................................................................3, 15

<u>**FEDERAL STATUTES**</u>

15 U.S.C. § 1454(a) ........................................................................14

21 U.S.C. § 371(a) ........................................................................14

21 U.S.C. § 379s(a) ........................................................................4, 13

21 U.S.C. § 379s(d) ........................................................................14

Food Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* .................................... *passim*

Magnuson-Moss Warranty Act ........................................................................ *passim*

<u>**RULES**</u>

Federal Rule of Civil Procedure Rule 8 ........................................................................3

Federal Rule of Civil Procedure Rule 9(b) ........................................................................ *passim*

Federal Rule of Civil Procedure Rule 12(b)(6).................................................................1, 12, 19

<u>**REGULATIONS**</u>

21 C.F.R. § 701.3(a) ........................................................................14

21 C.F.R. § 701.3(a), (l) ........................................................................4, 15

<u>**CONSTITUTIONAL PROVISIONS**</u>

U.S. Const. art. VI, cl. 2........................................................................13

Defendants L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; SoftSheen-Carson LLC; Revlon, Inc.; Revlon Consumer Products Corporation; Revlon Group Holdings LLC ("Revlon"); Strength of Nature, LLC; Godrej SON Holdings, Inc.; Dabur International Limited (Dabur International")[1]; Namasté Laboratories, LLC ("Namasté"); Dermoviva Skin Essentials Inc. ("Dermoviva"); AFAM Concept, Inc. d/b/a JF Labs, Inc.; Parfums de Coeur, Ltd. d/b/a PDC Brands; Avlon Industries, Inc.; Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc.; House of Cheatham LLC; and Luster Products, Inc. (collectively, "Defendants") submit this joint memorandum in support of their motion to dismiss the Master Long Form Personal Injury Complaint ("Master Complaint") filed by Plaintiffs in MDL No. 3060 ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## I.      PRELIMINARY STATEMENT

On October 17, 2022, the Journal of the National Cancer Institute published an article (the "Chang Article"), which was the first publication in scientific literature observing a purported "association" between the use of "hair straightening products" and uterine cancer.[3]  The article evaluated the alleged impact of regular use of "hair straightening products," including not only hair relaxers but also straighteners and pressing products.  *See* Chang Article at 1637.  The Chang Article did not identify any of the Defendants and did not purport to analyze any specific hair

---

[1] Plaintiffs also name "Dabur International USA Ltd." as a Defendant.  No such entity exists or ever has existed.  Agrawal Decl. ¶ 10.  Thus, Dabur International USA Ltd. is not a proper Defendant before this Court.

[2] Most of the arguments raised in this Motion are brought on behalf of the Defendants identified here.  Arguments that are unique to a particular defendant are discussed at the end of this Motion, and are indicated as such.  In addition, Revlon reserves all rights with respect to bankruptcy-related grounds for dismissal that may arise from or out of the post-emergence bankruptcy proceedings, e.g., the resolution of any objections regarding claimants' proofs of claim that have been filed in those proceedings.

[3] The Chang Article is available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9949582/.  This Court can take judicial notice of the Chang Article because it is referenced in the Master Complaint.  (*See* Dkt. No. 106 ¶¶ 85-88.)  *See also Marks v. CDW Comput. Ctrs, Inc.*, 901 F. Supp. 1302, 1309 (N.D. Ill. 1995) (taking judicial notice of document referenced in complaint).

straightener or relaxer brand, product line, or products. Nevertheless, within days of this publication, complaints were filed across the country exclusively against manufacturers of hair relaxer products, alleging various conditions and ailments far beyond uterine cancer including, but not limited to, ovarian cancer, breast cancer, fibroids, miscarriage and preterm delivery purportedly caused by use of Defendants' products. Notably, not a single one of these conditions is addressed in Chang.

On February 6, 2023, the Judicial Panel on Multidistrict Litigation created this MDL, which now includes 241 cases naming fourteen defendant groups, each of which is alleged to have distributed unspecified hair relaxer products during an unspecified time period over the last 50 years. On May 15, 2023, after declining Defendants' requests to meet and confer further regarding the scope of products at issue, Plaintiffs filed their Master Complaint. Like the complaints from which it borrows, the Master Complaint fails to identify a single product used by Plaintiffs, or how those products harmed them. Instead, Plaintiffs use the Master Complaint to provide their version of the history of hair straightening techniques over the last century, accusing Defendants of "taking advantage of centuries of racial discrimination and cultural coercion." (Dkt. No. 106 ¶ 6.) Nowhere in the over 77-page Master Complaint do Plaintiffs identify the specific products they were exposed to, or why they believe those (unidentified) products are defective. Plaintiffs identify only brand names of hair relaxer products the Defendants allegedly were responsible for marketing and distributing. (*See id.* ¶ 2) (identifying brands such as Optimum, Motions, and Africa's Best.)

This distinction and deficiency is not an attempt to "make a mountain out a mole hill," but rather to identify a real problem, as many of the identified brands carry several different hair straightening products as well as non-hair straightening products, which may or may not be in the

target of Plaintiffs' allegations. Defendants should not be forced to guess which products were used by Plaintiffs at any given time. Plaintiffs should be required—as are all other products liability plaintiffs—to identify the specific product they used that allegedly caused their condition. *See Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) (Plaintiffs "must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product.") (citing *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091 (1989)).

Given Plaintiffs' failure to identify specific products, formulations or compounds, and their alleged defect, none of the fifteen causes of action asserted in the Master Complaint states a claim based on the facts alleged within the "four corners of the complaint." Accordingly, Defendants respectfully request that the Court dismiss the Master Complaint for the reasons set forth below.

First, the Master Complaint fails to comply with the pleading requirements of Rule 8 and the plausibility requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In other words, the Master Complaint fails to provide "notice" to Defendants of the basis of Plaintiffs' claims. Similarly, it fails to satisfy the heightened pleading requirements of Rule 9 with respect to its fraud allegations, including those based on certain consumer protection statutes. Fed. R. Civ. P. 9(b) (In alleging fraud, "a party must state with particularity the circumstances constituting fraud …."); *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (holding that any claim that "sounds in fraud," even if not so labeled, triggers Rule 9(b)'s "heightened pleading requirements").

Second, Plaintiffs' non-products liability claims are expressly preempted.[4] The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.* provides that "no State or political

---

[4] This applies to claims for: Negligent Misrepresentation (Second Cause of Action), Breach of Warranty (Sixth and Seventh Causes of Action), Fraud (Eighth and Ninth Causes Action), U.S. State and Territory Statutory Consumer Protection and Unfair or Deceptive Trade Practices (Tenth Cause Action), Unjust Enrichment (Eleventh Cause of Action) and Punitive Damages (Fifteenth Cause of Action).

subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a). While FDCA preemption does not apply to products liability claims, it bars all other claims that seek to impose labeling requirements that are not identical to those imposed by the FDCA and its regulations. *See Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020). Plaintiffs' fraud-based claims focus on Defendants' alleged failure to disclose the presence of as-yet identified ingredients in the fragrance component. (*See* Dkt. No. 106 ¶ 81 (alleging that consumers are defrauded because "regulations do not require the listing of the individual fragrance or flavor, or their specific ingredients.").) However, FDA regulations expressly do not require disclosure of fragrance component ingredients. 21 C.F.R. § 701.3(a), (l). Requiring Defendants to do something "that is different" than what is required by the FDCA is antithetical to the express provisions of that federal law and would frustrate its structure and purpose. Plaintiffs' non-product liability claims are therefore preempted. *See* 21 U.S.C. § 379s(a).

Third, Plaintiffs' products liability claims (First, Third, Fourth and Fifth Causes of Action), fail to provide Defendants with essential information related to any transaction or occurrence between them and Plaintiffs, as Plaintiffs have not identified the products they used, whether those products contained Endocrine Disrupting Chemicals ("EDCs"), or which EDCs plaintiffs were exposed to that caused their specific alleged injuries. *See Tragarz*, 980 F.2d at 418. Plaintiffs' formulaic allegation that unidentified "hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design," is insufficient to plead a claim for negligence or strict products liability. (Dkt. No. 106 ¶ 152.) *See Griffin v. Medtronic, Inc.*, No. 17-CV-927, 2017 WL 4417821, at *3 (N.D. Ill. Oct. 5,

-4-

2017) (dismissing design defect claim where plaintiff's allegations only used the "conclusory terms 'dangerous,' 'defective,' and 'imperfect,'" without any factual support). Plaintiffs' heavy reliance on the Chang Article exacerbates this fundamental pleading deficiency, as the first ever purported association between hair straightening products and uterine cancer did not occur until October 17, 2022—in some cases, decades after the distribution and sale of the unidentified products. *See Lolie v. Ohio Brass Co.,* 502 F.2d 741, 744 (7th Cir. 1974) ("To impose strict liability on defendant for the defective design of its product," plaintiff must allege facts showing "there existed an alternative design which would have prevented the injury" and "in terms of cost, practicality and technological possibility, the alternative design was feasible."); *Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 35 (1980) ("The inquiry becomes whether the manufacturer, because of the 'present state of human knowledge,' knew or should have known of the danger presented by the use or consumption of a product."). Plaintiffs' imprecise allegations fail to state a claim upon which relief can be granted, or even put Defendants on notice of the nature of the claims against them.

Fourth, the Master Complaint fails to allege any facts to support Plaintiffs' fraud-based claims (Second, Eighth, Ninth, and Tenth Causes of Action), which must be pled with specificity pursuant to Rule 9(b). Plaintiffs have not identified the products they used, let alone the purportedly false statements made about any particular product, when the statements were made, who made them, and when or how Plaintiffs relied on them. (*See* Dkt. No. 106 ¶ 219.) "Unless [a] [p]laintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation." *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012). *See also Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 179-80 (N.D. Ill. 2013) (dismissing consumer protection

claim sounding in fraud because complaint "leaves many serious and fundamental questions as to the 'who, what, when, where, and how' of the alleged fraud").

Fifth, the claims for Breach of Implied Warranty of Merchantability/Fitness for Particular Use (Sixth Cause of Action) and Express Warranty/Magnuson-Moss Warranty Act (Seventh Cause of Action) fail because Plaintiffs have not alleged facts showing privity with Defendants. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at *12 (N.D. Ill. Apr. 6, 2005) (contractual privity required for a warranty claim). Plaintiffs also have not identified any transaction or occurrence upon which their warranty claims are based, or any reliance on a warranty purportedly made by Defendants. *Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at *9 (N.D. Ill. July 25, 2008) (dismissing express warranty claim where "[p]laintiff has not specified any particular affirmation, promise, description, or sample that formed part of the basis of his bargain with [d]efendant"). Without identifying the products they used, Plaintiffs cannot allege facts showing that Defendants' products were not "fit for the ordinary purpose," or "were unfit for their particular purpose." *See, e.g., Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, *4-5 (N.D. Ill. June 16, 2017) (dismissing breach of implied warranty claim for failure to allege facts showing how the product failed in its intended purpose).[5]

Sixth, the Unjust Enrichment claim (Eleventh Cause of Action) is insufficiently pled, as several jurisdictions from which various MDL cases originate do not recognize unjust enrichment as an independent cause of action or do not allow recovery for unjust enrichment when the plaintiff has an adequate remedy at law. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th

---

[5] As Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim is derivative of their warranty claims, this claim fails, as well. *See Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 765 (N.D. Ill. 2022) (dismissing MMWA claim where "breach of warranty claims fail").

Cir. 2019) ("Under Illinois law, unjust enrichment is not a separate cause of action"); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (Unjust enrichment claim dismissed under Massachusetts law where plaintiff had an adequate remedy at law). At the very least, Plaintiffs should be required to identify in the Master Complaint those jurisdictions for which they are asserting this claim. Similarly, most jurisdictions do not recognize an independent claim for Punitive Damages (Fifteenth Cause of Action). *See, e.g.*, *Kleinwort Benson N. Am. Inc. v. Quantum Fin. Servs.*, *Inc.*, 181 Ill. 2d 214, 224 (Ill. 1998) ("Punitive damages are a type of relief, not an independent cause of action."). Even if some jurisdictions recognize punitive damages as an independent cause of action, Plaintiffs have not alleged facts sufficient to seek punitive damages. *See Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, No. 05 C 1698, 2005 WL 3159680, at *11 (N.D. Ill. Nov. 22, 2005) (plaintiff was required to "sufficiently allege willful and wanton conduct" to support recovery of punitive damages).

Seventh, Plaintiffs' claims for Wrongful Death (Twelfth Cause of Action), Survival Action (Thirteenth Cause of Action) and Loss of Consortium (Fourteenth Cause of Action) should be dismissed as they are derivative in nature and their viability depends upon the validity of the underlying claims, which, as discussed herein, are deficient. *See, e.g.*, *Allender v. Guardian Life Ins. Co. of Am.*, 592 F. Supp. 541, 544 (N.D. Ill. 1984) (dismissing loss of consortium claim "[b]ecause loss of consortium claims are derivative in nature and require that the defendant be liable for the injuries to the person whose spouse brings the action"); *Lawler v. Uni. of Chi. Med. Ctr.*, 2016 IL App (1st) 143189 (a wrongful death action is "derivative of the injury to the decedent and is grounded on the same wrongful act of defendant whether it was prosecuted by the injured party during [her] lifetime or by a representative of the estate").

Finally, Plaintiffs' Master Complaint has failed to make a prima facie showing that the

Court has personal jurisdiction over Defendants Dabur International or Dermoviva.[6]  As explained in the accompanying affidavits, Dabur International is a foreign company and Dermoviva is a holding company, neither of which has any involvement in the marketing, sale, or distribution of hair relaxers in the United States.  Accordingly, the Court should dismiss these entities for lack of personal jurisdiction.

Given the above, Defendants request that the Court dismiss the Master Complaint as currently pled.  Without the basic facts to support Plaintiffs' claims, the Master Complaint does not provide Defendants with sufficiently fair notice of Plaintiffs' claims that would be necessary to defend themselves against the Master Complaint's serious accusations.  *Burkhart v. Allson Realty Tr.*, 363 F. Supp. 1286, 1289 (N.D. Ill. 1973) ("The function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial").

## II.     RELEVANT FACTS

### A.     Allegations of the Master Complaint

Despite its length, the Master Complaint contains little detail regarding Plaintiffs' physical injuries and the products alleged to have caused them.  Instead, Plaintiffs delve into the history of slavery going back to the 1600's, followed by a discussion of chemical hair relaxers developed by Black inventors in the 1900's.  (*See* Dkt. No. 106 ¶¶ 33-52.)  Plaintiffs then accuse Defendants of exploiting "anti-Black standards of beauty" (*id*. ¶ 57), ignoring the fact that the entities they identify, including Johnson Products Company, SoftSheen, Namasté, and Luster, were founded and owned by Black families.  Plaintiffs provide images of various products allegedly sold by

---

[6] As noted above, the entity Dabur International USA Ltd. does not exist.  In any event, Plaintiffs' Master Complaint likewise fails to make a prima facie showing that the Court has personal jurisdiction over such an entity, and thus, Dabur International USA Ltd. should be dismissed for lack of personal jurisdiction.

Defendants, without ever contending that a single Plaintiff purchased or used any of those products. (*Id*. ¶ 59.) The Master Complaint then asserts that Defendants' current hair relaxer products contain "harmful, toxic and carcinogenic ingredients," including but not limited to, phthalates, parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, formaldehyde, and other toxic chemicals. (*Id*. ¶¶ 70-71.) According to Plaintiffs, these chemicals include EDCs, which "interfere with the normal activity of the endocrine system," are present in "some of Defendants' hair relaxer products under the guise of 'fragrance' and 'perfumes.'" (*Id*. ¶¶ 74, 76.) Plaintiffs allege that one EDC in particular, phthalates, "are known to interfere with natural hormone production and degradation and are harmful to human health." (*Id*. ¶ 77.) Plaintiffs admit that phthalates, which have been around for over a century, have "common uses," and may be referred to as "plasticizers." (*Id*. ¶ 78.) The Master Complaint also discusses the regulatory framework of the cosmetics market, acknowledging that federal regulations do not require manufacturers to identify the ingredients that comprise a fragrance or flavor. (*Id*. ¶ 81.)

## B. Notable Omissions from the Master Complaint

The Master Complaint reveals more by what it omits than by what it contains. For instance, Plaintiffs allege that "Defendants marketed their hair relaxer products without ever disclosing known health risks of the toxic chemicals contained in these products." (*Id*. ¶ 55.) Yet, rather than identifying specific products or their "toxic ingredients," Plaintiffs identify only general brands sold by Defendants, such as Dark & Lovely, Dr. Miracle's, Design Essentials and Affirm. (*See id*. ¶ 2.) None of these brand names refer to an actual product, let alone a product used by a Plaintiff. For instance, the two images below from the Master Complaint identify two different hair relaxer products sold under the Dark & Lovely brand.



The names of these products are: (1) Triple Nourished Silkening Relaxer – Regular and (2) Beautiful Beginnings No-Mistake Smooth Relaxer – For All Hair Types. (*Id.* ¶ 59 (j), (k).) The Master Complaint does not allege that any Plaintiff used either of these products. Instead, it unremarkably states that brands such as Dark & Lovely were distributed by Defendants in the past half-century. (*See id.* ¶ 57.) This is not a hypothetical problem. Many of the brands identified in the Master Complaint, including Dark & Lovely, carry more than one product that might be considered a "hair straightening product." In addition, many brands also carry products that are unequivocally not "hair straightening products." This problem is amplified by the fact that the Master Complaint also includes brands that are not even listed in Plaintiffs' Short Form Complaint ("SFC"). (*Compare* Dkt. No. 106 ¶ 54 (Gentle Treatment), ¶ 57(a) (Ultra Sheen) with Dkt. No. 106-1.) Defendants should not be required to guess as to which of their products were used by Plaintiffs and are claimed to be defective.

The Master Complaint also does not identify any specific product that contains an EDC, provide any details regarding the frequency or duration of their use, or describe when or where Plaintiffs used the products. Moreover, Plaintiffs have not identified any actionable misrepresentations. While Plaintiffs replicate images of product packaging (*see id.* ¶ 59), they do

not allege that any of these "representations" appeared on any of the undisclosed products they used during the undisclosed times they used them, or that they relied on such representations.

In addition, although Plaintiffs assert that "Scientific Studies Confirm – Hair Relaxer Products Cause Uterine and Ovarian Cancer" (*id*. at p. 35), the Master Complaint does not identify any such study. Indeed, the Chang Article and the White Article,[7] which Plaintiffs cite as key studies, do the opposite. Neither study claims to establish causation, as no single epidemiological study can do so. Rather, the authors of the Chang Article described their findings as "novel" and noted that "[b]rands or ingredients of hair products were not collected." (Chang Article, *supra* note 3, at 1638, 1641.) The article also expressly concluded that "[m]ore research is warranted to replicate [the] findings in other settings and to identify specific chemicals driving this observed association." (*Id*. at 1636.) The authors of the White Article analyzed the same data used in Chang and similarly described their study as "the first evidence of a possible relationship" between use of hair straightening products and ovarian cancer. The authors concluded that "more research is needed to confirm" the results to "better understand" any relationship that exists. (White Article, *supra* note 7, at 1195). Moreover, both articles are subject to significant limitations, as they are based on analyses of data from the so-called "Sister Study," which consisted of sisters of women who had previously been diagnosed with breast cancer, who therefore may have a genetic predisposition. The Master Complaint does not identify any study that confirms Plaintiffs' causation theory.

## III.   LEGAL STANDARD

Federal courts evaluating motions to dismiss follow the pleading requirements established

---

[7] *White, et al.*, "Use of hair products in relation to ovarian cancer risk," *Carcinogenesis*, 42:1189-1195 (2021) ("White Article"), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8561257/. (Dkt No. 106 ¶ 89, n. 43.)

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

A complaint that only pleads a "sheer possibility that a defendant has acted unlawfully" does not meet the standard, and a court is not required to "accept as true a legal conclusion couched as a factual allegation." *Id*. After stripping away conclusory statements from a complaint, a court can rely on its "experience and common sense," *id*. at 679, to determine whether the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In resolving Rule 12(b)(6) motions, courts must consider "not only 'the complaint itself,' but also 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

Claims sounding in fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This particularity requirement is "designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "In adding flesh to the bones of the word particularity," courts routinely hold that plaintiffs must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Id.* When a defendant is an entity, a plaintiff must also identify who within the entity made the alleged representation. *See Brechbill v. Home Invest LLC*, No. 17-cv-7313, 2018 WL 4384297, at *4 (N.D. Ill. Sept. 14, 2018)

-12-

(complaint must specify the identity of the person making the misrepresentation under Rule 9(b)). Rule 9(b) applies to all allegations of fraudulent conduct, regardless of how the claims are labeled. Accordingly, claims brought under state consumer protection statutes that sound in fraud are also subject to Rule 9(b). *See Pirelli*, 631 F.3d at 441 ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of [Rule] 9(b) applies."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (California consumer protection claims are subject to Rule 9(b), "which requires that allegations of fraud be pleaded with particularity").

## IV.  PLAINTIFFS' NON-PRODUCTS LIABILITY CLAIMS ARE PREEMPTED.

All of Plaintiffs' non-products liability claims are expressly preempted by the FDCA—the statutory scheme governing the mislabeling allegations at the heart of the Master Complaint. (*See* Dkt. No. 106 ¶¶ 97-109; *see also* 21 U.S.C. § 379s(a).) "The Supremacy Clause, U.S. Const. art. VI, cl. 2, 'invalidates state laws that 'interfere with, or are contrary to,' federal law.'" *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (citation omitted). "Express preemption arises when a federal statute expressly directs that state law be ousted," whereas implied preemption arises when "Congress intended the Federal Government to occupy a field exclusively, or when state law actually conflicts with federal law." *Id*. Implied preemption applies when the federal interest in a field is "sufficiently dominant" so it precludes "supplementation by the States … ." *Id*. at 221.

The FDCA's "broad preemption clause" prohibits any state from "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is *different from* or *in addition to*, or that is *otherwise not identical with*, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." *Critcher*, 959 F.3d at 35; 21 U.S.C.

§ 379s(a) (emphases added).[8] Thus, a plaintiff cannot seek to "impose labeling requirements that are additional to, or different from, those that federal law has established." *Critcher*, 959 F.3d at 38. Congress conferred authority to the agency to promulgate rules and regulations under the FDCA, 21 U.S.C. § 371(a), and the FPLA, 15 U.S.C. § 1454(a). Under those regulations, manufacturers are not required to identify constituent fragrance ingredients. 21 C.F.R. § 701.3(a).

The "sweeping preemptive force" of the FDCA led the Second Circuit to affirm the dismissal of analogous mislabeling claims in *Critcher*. There, plaintiffs asserted consumer protection, unjust enrichment and breach of warranty claims against L'Oréal USA, alleging its cosmetic products' labels were misleading because they did not disclose that consumers "will not be able to access or use a large percentage of the product… ." *Critcher*, 959 F.3d at 36. While the FDCA requires labels to contain an "accurate statement of the quantity of the [products'] contents in terms of weight, measure or numerical count," the FDA promulgated more "specific labeling requirements" consistent with the statute, and no statute or regulation required plaintiffs' desired disclosure. *Id.* at 35. Because the FDCA preempts "*any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations," the claims were found to be preempted. *Id.* at 35-36 (emphasis added); s*ee also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (holding that even when additional packaging disclaimers "would be a good thing" for the consumer, such disclaimers are "barred" when they are "not identical to the labeling requirements imposed . . . by federal law").

Express preemption applies here, as Congress' intent is clear. Plaintiffs allege that Defendants are defrauding consumers by failing to identify the constituent ingredients that compose the fragrance in their products. (Dkt. No. 106 ¶ 81.) According to Plaintiffs, "phthalates

---

[8] Products liability laws are the sole exception to this rule. *See* 21 U.S.C. § 379s(d).

and other EDCs evade listing when combined with a fragrance." (*Id.*) Yet, Plaintiffs acknowledge that FDA regulations do not require manufacturers to identify fragrance ingredients on product labels. (*Id.*) *See also* 21 C.F.R. § 701.3(a), (l). Defendants, therefore, cannot be deemed to have "evaded" any law or defrauded consumers. Like in *Critcher*, Plaintiffs are precluded from "us[ing] state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Critcher*, 959 F.3d at 36. As Defendants are not required to identify fragrance ingredients, and certainly cannot be required to identify ingredients that are nowhere in their products, Plaintiffs' non-products liability claims are preempted by the statutory scheme already in place, and should be dismissed.[9]

## V.    PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM.

Plaintiffs' failure to identify the products they used, much less the time period in which any particular product was used, is fatal to their products liability claims for Negligence (First and Third Causes of Action) and Strict Liability (Fourth and Fifth Causes of Action), as Defendants have no notice of the transaction or occurrence alleged to have caused Plaintiffs' injuries. As Defendants have stated repeatedly, "product identification" is a threshold requirement, and for Plaintiffs' claims to survive they "must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." *Tragarz*, 980 F.2d at 418 (citing *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091 (1989)); American Law of Products Liability 3d § 5:1 ("[A] threshold requirement for a products liability action is that the plaintiff identify the manufacturer or supplier responsible for placing the injury-causing product into the stream of commerce; this is the traditional requirement that plaintiff establish causation.").

---

[9] Plaintiffs' claims are also impliedly preempted both because the FDCA occupies the field and because Plaintiffs' demands conflict with the FDCA. *See Bastien v. AT&T Wireless Serv., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000); *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002).

Plaintiffs' negligence and strict liability claims are based on an alleged failure to warn and design defect, but their vague and conclusory allegations fail to state claims under any of these theories.

### A. Plaintiffs' Negligence Claims Are Insufficiently Pled.

Plaintiffs' claims for Negligence and/or Gross Negligence (First Cause of Action) and Negligence *per se* (Third Cause of Action) are deficient and should be dismissed. As a preliminary matter, many states do not recognize gross negligence or negligence *per se* as separate causes of action. *See, e.g., Dassig v. Honeywell Int'l, Inc.*, No. 21-cv-485-SMY, 2022 WL 5169525, at *2 n. 1 (S.D. Ill. Oct. 5, 2022) ("Illinois does not recognize gross negligence as an independent ground for recovery"); *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 215 n. 2 (3d Cir. 2010) (gross negligence does not exist under Pennsylvania law); *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (negligence *per se* not recognized in California).[10]

Furthermore, Plaintiffs have not pled sufficient facts to state a general negligence claim. To assert a negligence claim, Plaintiffs must allege facts showing "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 721 (N.D. Ill. 2020). A manufacturer has a "duty of reasonable care in manufacturing and selling a product that was not defective or unreasonably dangerous." *McDowell*, 2018 WL 6182625, at *6. A defendant may rebut Plaintiffs' negligence claim by showing its exercise of reasonable care through "evidence of its testing and inspection procedures" or "evidence that it complied with industry custom and practice." *Cornstubble v. Ford Motor Co.*, 532 N.E.2d 884, 886 (Ill. App. Ct. 1988).

While a manufacturer has a general duty to exercise reasonable care in manufacturing its

---

[10] To the extent Plaintiffs rely on the law of other jurisdictions to assert a claim for gross negligence or negligence *per se*, they should be required to identify in the Master Complaint those jurisdictions for which they assert these claims.

products so that they are reasonably safe for intended uses, it only has a duty to give warning of

dangers of which it has "actual or constructive knowledge." *See Hutchison v. Fitzgerald Equip.*

*Co., Inc.*, 910 F.3d 1016, 1022 (7th Cir. 2018) (a "duty to warn exists where there is unequal

knowledge, actual or constructive [of a dangerous condition], and the defendant[,] possessed of

such knowledge, knows or should know that harm might or could occur if no warning is given").

No such knowledge is alleged here based on the facts. Plaintiffs' Master Complaint relies heavily

on the Chang Article, *which was the first to associate hair straightening products with uterine*

*cancer*, published in October 2022. (Chang Article, *supra* note 3, at 1638.) Yet, relying on the

Chang Article and without alleging any facts showing that the use of phthalates in hair relaxers

was not reasonable and customary in the industry during the time periods in which they were using

the products, Plaintiffs fail to establish that Defendants breached their duty of care by failing to

warn of a known risk. Furthermore, Plaintiffs cannot allege facts showing that any purported

breach by Defendants caused Plaintiffs' alleged injuries, as they concede that they do not know

whether the unidentified products they used contain phthalates. (Dkt. No. 106 ¶ 81.) Accordingly,

the Court should dismiss this cause of action as currently pled.

### B.    Plaintiffs' Design Defect Claim Is Insufficiently Pled.

Plaintiffs' Design Defect claim (Fourth Cause of Action) fails because Plaintiffs have not

identified the specific products they used, let alone the defects in those products. To properly

maintain a design defect claim, a plaintiff "must plead facts that show how the [product] was so

defective in . . . its . . . design as to make it unreasonably dangerous." *Corwin v. Conn. Valley*

*Arms, Inc.*, 74 F. Supp. 3d 883, 890-91 (N.D. Ill. 2014). A plaintiff can establish a design defect

either by showing "that the product failed to perform as safely as an ordinary consumer would

expect when used in an intended or reasonably foreseeable manner," or "that the product's design

proximately caused his injury" and that "on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Lamkin v. Towner*, 563 N.E.2d 449, 457 (1990). This requires a plaintiff to allege facts showing that "there existed an alternative design which would have prevented the injury" and "in terms of cost, practicality and technological possibility, the alternative design was feasible." *Lolie*, 502 F.2d at 744. Courts routinely dismiss design defect claims at the pleading stage where a plaintiff fails to allege "any factual allegations at all relating to a particular condition, quality or attribute of the product that caused the injury." *Mercado v. Bayer Healthcare Pharm. Inc.*, No. 14 C 6699, 2015 WL 3545238, at *2 (N.D. Ill. Jun. 5, 2015) (dismissing design defect claim). *See also Griffin*, 2017 WL 4417821, at *3 (dismissing design defect claim where plaintiff's allegations only used the "conclusory terms 'dangerous,' 'defective,' and 'imperfect,'" without any factual support).

*Tillman v. Taro Pharmaceutical Industries Ltd.*, No. 10-cv-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011), is instructive. There, the plaintiff asserted a claim for design defect, alleging that the defendant's drug "was unreasonably dangerous and that an ordinary customer would not expect the danger," "the foreseeable risks exceeded the benefits associated with the design and formulation of the drug," and the drug "was more dangerous than alternative drugs available." *Id.* at *4 (citation and quotation marks omitted). The Court dismissed this claim, holding that the plaintiff's allegations amounted to nothing more than formulaic recitations of the elements of her cause of action. *Id.*

Similarly here, Plaintiffs have not alleged facts to support a design defect claim. Instead, they simply allege that unidentified "hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design." (Dkt. No. 106 ¶ 152.) Plaintiffs also do not tie these conclusions to a specific product

-18-

manufactured by any Defendant, nor do they identify the ingredients of any product, the quantity of those products, or how often the products were used—rendering it impossible to know what design flaw, if any, "proximately" caused Plaintiffs' alleged injuries. *See Lamkin*, 563 N.E.2d at 457. Plaintiffs' unsupported conclusions do nothing to show that the product(s) as designed posed a substantial likelihood of harm.

Plaintiffs may argue that these details regarding the specific products they used are forthcoming in the SFCs, Plaintiff Fact Sheets, or some other format. Setting aside the fact that Plaintiffs' proposed SFC does not provide these details (*see* Dkt. No. 106-1), basic details regarding the products at issue, even if it is an incomplete list, is required now. *See Kozak v. Armstrong World Indus., Inc.*, 213 Ill. App. 3d 1061, 1067 (1991) (affirming dismissal of complaints that listed generic names of some of the products manufactured by defendants, noting that these complaints did not apprise defendants "of the injury-producing product or products"); *Setliff v. E.I. Du Pont de Nemours & Co.*, 32 Cal. App. 4th 1525, 1529, 1535 (1995) (dismissing negligence claim where plaintiff was "unable to identify which of the products" he used, "the specific chemicals and toxics involved in his injury," or "which defendant manufactured the product or products responsible for his injury"). *See also Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1409 (7th Cir. 1994) (citing California law with approval, noting that California "pioneered" products liability law).

Indeed, Defendants are not only entitled, but required, to challenge the sufficiency of the allegations now, and not just "hope" further details will come forward in a later pleading or discovery. *See, e.g., Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of Fed. R. Civ. P. 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'"). The pleadings frame the litigation and

unless and until Defendants are put on notice as to the specific products the current Plaintiffs used, they are defending an action against an unknown product.

### C. Plaintiffs' Failure To Warn Claim Is Insufficiently Pled.

Plaintiffs cannot proceed on their Failure to Warn claim (Fifth Cause of Action), as they have not alleged facts to support any element of this claim. A failure-to-warn claim must allege facts showing that the manufacturer (1) had a duty to warn; (2) knew or should have known of the risk that the product could cause the injury; (3) that the failure to provide the information made the warning inadequate; and (4) that the failure to warn caused the plaintiff's injuries. *See Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1065 (S.D. Ill. 2007) (citing *N. Tr. Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1037 (Ill. App. Ct. 1991).) While a "manufacturer has a nondelegable duty to manufacture products that are reasonably safe," this does not mean that the manufacturer must provide the safest design possible or a design incapable of causing injury. *Rodriguez v. Glock, Inc.*, 28 F. Supp. 2d 1064, 1070 (N.D. Ill. 1998). Thus, "a duty to warn arises only when there is unequal knowledge with respect to the risk of harm." *Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1108 (7th Cir. 1994). Provided the manufacturer discloses adequately known risks of using the product to the consumer, no claim will lie. *See Griffin*, 2017 WL 4417821, at *3 (dismissing failure to warn claim where plaintiff did not "specifically allege [] why the warnings were inadequate").

*Griffin v. Medtronic, Inc.*, No. 17-cv-927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017), underscores this point. There, the plaintiff alleged that Medtronic, a medical device manufacturer, failed to warn him or his doctors of "the risk of adverse reactions or inefficacy of the device," and failed to "instruct them on the proper use of the device." *Id.* at 3. The court dismissed plaintiff's failure to warn claim because, *inter alia*, "the complaint [did] not specifically allege what warnings

-20-

were given, what [plaintiff's] doctors knew of the device, or why the warnings were inadequate." *Id*. at *4.

As in *Griffin*, Plaintiffs do not provide the basic facts to maintain a failure to warn claim. The Master Complaint does not identify what specific products were used, when they were used, or what warnings were given. These deficiencies render it impossible for Plaintiffs to allege when and how Defendants owed Plaintiffs a duty to warn, or how Defendants' warnings were inadequate. In addition, the Master Complaint is devoid of any facts showing that Defendants knew or should have known that some ingredient in their (unspecified) products could cause injury and that Defendants' labeling was thereby inadequate.

Plaintiffs also cannot allege that their injuries were "proximately" caused by Defendants. *See N. Tr. Co.*, 572 N.E.2d at 1037 (to prevail on failure to warn claim, "plaintiff was required to show that the omission of such information made the warning inadequate . . . and that this defect was the proximate cause of plaintiff's injuries."). *See also Lederman v. Pac. Indus., Inc*., 939 F. Supp. 619, 628 (N.D. Ill. 1996) aff'd, 119 F.3d 551 (7th Cir. 1997) (dismissing failure to warn claim where "[t]he existence of warning signs would have had no effect on the outcome, and the failure to issue warning signs cannot, as a matter of law, be a proximate cause of [plaintiff's] injuries"). Plaintiffs fail to allege any direct link between an ingredient contained in the unidentified products and the risk of developing uterine and/or ovarian cancer. Plaintiffs acknowledge there are no EDCs listed on Defendants' ingredient labels and concede that they are unable to determine from the labels if the product they used contained EDCs. (*See* Dkt. No. 106 ¶ 81.) Plaintiffs' conclusory and speculative allegations regarding unidentified products cannot satisfy their pleading burden. For these reasons, the claim should be dismissed as currently pled.

## VI.    __PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED.__

Plaintiffs' fraud-based claims (Second, Eighth, Ninth, and Tenth Causes of Action) are procedurally and substantively defective, as they are not pled with the requisite specificity, and they fail to provide sufficient facts to support Plaintiffs' serious charges of fraud. Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud … ." Fed. R. Civ. P. 9(b). This heightened pleading requirement applies to any claim sounding in fraud. *See Borsellino,* 477 F.3d at 507. (any claim that "sounds in fraud" triggers Rule 9(b)'s "heightened pleading requirements"). Hence, Rule 9(b) also applies to consumer protection claims alleging fraudulent and/or deceptive conduct. *See, e.g., Pirelli*, 631 F.3d at 441; *Vanzant*, 934 F.3d at 738.

Under Rule 9(b), Plaintiffs are required to plead with particularity the factual bases for averments of fraud, including "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006). Rule 9(b)'s requirement of greater specificity is intended "to protect defendants from the harm that results from charges of serious wrongdoing," and to give defendants notice of the conduct complained of, "enabling defendants to prepare a defense." *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 144 (N.D. Ill. 1993). Moreover, several jurisdictions, including Illinois, apply Rule 9(b)'s heightened pleading requirements to consumer protection claims sounding in fraud. *See, e.g., Vanzant*, 934 F.3d at 738 (Rule 9(b) applies to ICFA based on allegations of deceptive conduct).[11]

---

[11] *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (CLRA and UCL claims are subject to Rule 9(b), "which requires that allegations of fraud be pleaded with particularity."); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 432 (D.N.J. 2015) ("Rule 9(b) applies to [p]laintiffs' claims under the state consumer protection laws because they are premised on fraud"); *Pfitzer v. Smith & Wesson Corp.*, No. 4:13–CV–676-JAR, 2014 WL 636381, at *3 (E.D. Mo. 2014) ("Rule

Conclusory allegations of fraud are insufficient to satisfy Rule 9(b). *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) ("Plaintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement that the circumstances of the fraud be pleaded with particularity.").

Plaintiffs' allegations fall well short of what is sufficient to plead fraud under Rule 9(b). As a preliminary matter, the Master Complaint makes general allegations against Defendants without identifying any specific acts by any specific Defendant. (*See, e.g.*, Dkt. No. 106 ¶¶ 130-135, 214-227, 229-239.) *See also Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 893 (N.D. Ill. 2009) ("In a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud."); *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) ("[A] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes," does not satisfy Rule 9(b). Plaintiffs also do not identify who at each Defendant company made the alleged misrepresentations. *Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860, 863-64 (N.D. Ill. 2010) (dismissing fraud claim where allegations failed to specify who from defendant company made the statements, when they were made, and how they were made). Further, as noted above, Plaintiffs do not identify the products they purchased or used. "Unless [a] [p]laintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation." *Ibarolla*, 2012 WL 5381236, at *2. Plaintiffs also do not allege a single misrepresentation made by any Defendant which they relied on to their detriment. Lastly, because Plaintiffs do not allege any misrepresentation, they cannot allege intent. The Chang Article itself states it was the first to associate hair straightening products

---

9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.").

with uterine cancer, and thus the premise of this lawsuit belies the fact that Defendants have acted with fraudulent intent. *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771 (2007) (plaintiff must allege facts showing that defendant actually knew his statements to be false at the time he made them).

The same issues noted above plague Plaintiffs' state consumer protection claims (Tenth Cause of Action), as they are based on the same allegedly fraudulent conduct as the fraud claims—that Defendants made "false and misleading representations and omissions of material facts regarding the safety and potential risks of their [unidentified] hair relaxer products." (*Id.* ¶ 244.) *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim for failing to satisfy Rule 9(b) pleading "strictures" where complaint was "replete with allegations recounting vague, nonspecific statements made by 'Defendants' about Anatabloc's supposed benefits" but failed to identify "a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it"); *Ritacca*, 291 F.R.D. at 179-80 (dismissing consumer fraud allegations because complaint "leaves many serious and fundamental questions as to the 'who, what, when, where, and how' of the alleged fraud").[12]

Plaintiffs likely will rely again on the Master Pleading nature of this document, but this is insufficient. Even without the products, relying specifically on brands, Plaintiffs fail to provide a representative sample of the fraudulent representations made to them. *See Polly v. Adtalem Glob. Educ., Inc.*, No. 16 CV 9754, 2019 WL 587409, at *4 (N.D. Ill. Feb. 13, 2019) (dismissing claim

---

[12] To the extent Plaintiffs contend that their consumer protection claims are based solely on allegations of unfair conduct (notwithstanding the language in the Master Complaint), any such claim also would be subject to dismissal. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827 (7th Cir. 2014) (dismissing ICFA claim based on unfair conduct where plaintiff failed to adequately plead facts showing unfair conduct.) Without identifying specific products and the defects therein, Plaintiffs have not adequately pled facts showing how Defendants' conduct violates public policy, precluded consumers from purchasing alternative hair products, or caused substantial injury to consumers. *Id.* at 830-34.

for violation of state consumer protection statutes under Rule 9(b) where plaintiffs failed to provide representative samples of the fraudulent representations). Plaintiffs make no such attempt here. Instead, Plaintiffs call out random words from product packaging, such as "gentle" or "Botanicals" or ingredients such as "coconut milk, shea butter, vitamin e, and sunflower oil," without alleging that their reliance on these statements caused them harm. (*See* Dkt. No. 106 ¶ 59(a)-(q).) A court in this District recently rejected a similar attempt by plaintiffs to transform a defendant's advertising claims into misrepresentations about the safety of its products. In *Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *10 (N.D. Ill. Jan. 12, 2023), the plaintiffs asserted misrepresentation claims against Kraft, contending that Kraft misrepresented its Mac & Cheese product as safe, when it actually contained phthalates. To support their misrepresentation claims, the plaintiffs argued that the statements "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes" on product packaging "lead reasonable consumers to believe that the [p]roducts are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates." *Id.* at *10. The court disagreed and dismissed the misrepresentation claims. It explained, "[t]he alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities." *Id.* The court held that none of the challenged statements were misleading because no reasonable consumer would understand those statements to convey false information about the presence (or risk) of phthalates. *Id.*

As in *Kraft*, brand names like "Gentle Treatment" and phrases like "Triple Nourished" and "natural hair milk" to name a few, do not convey any false message, let alone a message of safety, and thus they cannot form the basis of Plaintiffs' fraud claims. More critically, Plaintiffs do not allege that any of these "representations" appeared on any of the unidentified products they used during the undisclosed times they used them. Plaintiffs' fraud claims are precisely the type of

claims that should be dismissed if Plaintiffs cannot allege basic facts to support them, and Defendants should not be forced to wait for the SFC or other information to fill in the gaps of this critically missing information.

As for the fraudulent concealment claim, Plaintiffs do not identify any material information concealed by Defendants that they had a duty to disclose. Instead, Plaintiffs recite boilerplate allegations that Defendants "obfuscat[ed] and fail[ed] to disclose [] material facts." (Dkt. No. 106 ¶ 231.) This is not sufficient, as it fails to identify the omissions, when the concealment occurred, or who concealed the information. Further, the Master Complaint does not allege that Defendants intended to conceal facts, or how Plaintiffs relied on Defendants' concealment. As noted above, to the extent Plaintiffs' injury and last use predate the 2022 publication date of the Chang Article, Defendants cannot have concealed or even intended to conceal information they did not know.

## VII.   **PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY PLED.**

Plaintiffs' claims for Breach of Implied Warranty of Merchantability/Fitness for Particular Use (Sixth Cause of Action) and Express Warranty/Magnuson-Moss Warranty Act (Seventh Cause of Action) also fail. As an initial matter, Plaintiffs fail to allege the requisite privity to maintain these claims. "Illinois law requires a plaintiff for breach of implied or express warranties to establish contractual privity." *Canadian Pac. Ry. Co.*, 2005 WL 782698, at *12. This requirement also applies to claims brought under the MMWA. *See Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1069 (N.D. Ill. 2004) (holding that the MMWA did not extend implied warranties to customers not protected by traditional state law due to absence of privity). Any privity exception Plaintiffs attempt to allege for personal injury would also fail because Plaintiffs cannot bring a viable claim without alleging pertinent facts that give rise to a breach of implied warranty. "While the Federal Rules of Civil Procedure allow for liberal notice pleading, conclusory allegations

regarding the [good's] merchantability and fitness are not sufficient to state a claim for breach of implied warranty of merchantability absent some factual support." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 726 (N.D. Ill. 2021). Here, Plaintiffs have not alleged any facts regarding the circumstances surrounding their purchases, whether they purchased the unidentified products directly from any Defendant or that they were otherwise in privity with Defendants. These fatal flaws undermine their warranty claims.[13]

Even without the privity requirement, Plaintiffs have failed to plead an express warranty claim. "To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Corwin*, 74 F. Supp. 3d at 891-92. Thus, "a claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods," and must "bec[o]me part of the basis of the bargain." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905-906 (N.D. Ill. 2013); *see also Heisner*, 2008 WL 2940811, at *8 (allegation that defendant stated "orally and in publications, package inserts, and other written materials" that product was "safe, effective, fit and proper for its intended use" was insufficient to support breach of express warranty claim).

Plaintiffs have not identified any language or terms of an alleged express warranty or reliance therefrom. The Master Complaint lacks basic detail, including the product(s) Plaintiffs

---

[13] Plaintiffs' failure to plead privity similarly precludes warranty claims brought under various other jurisdictions. *See, e.g., Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 677 (E.D. Mich. 2020) (requiring privity for implied warranty claims in Washington, Arizona, Connecticut, and North Carolina); *In re Hydroxycut Mktg. and Sales Prac. Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011) (requiring privity for implied and express warranty claims in Georgia and for implied warranty claims in Alabama, Florida, and New York). To the extent Plaintiffs argue that their warranty claims are limited to those jurisdictions where privity is not required, they should identify those jurisdictions in the Master Complaint, and limit the claim to individual plaintiffs that are residents thereof.

purchased and used, the statements they allegedly relied upon in making the purchases, when and where such statements were made, and the injury suffered as a result. Additionally, there is no claim from Plaintiffs that any of Defendants' products did not perform as intended. As in *Heisner*, Plaintiffs' generic allegation that "Defendants expressly represented and warranted to Plaintiffs . . . that their hair relaxer products were safe and effective for their reasonably expected and intended use—straightening hair" (Dkt. No. 106 ¶ 196) is far from the specific "affirmation of fact or promise" required to state an express warranty claim.

Plaintiffs also have not properly alleged a claim for breach of an implied warranty. An implied warranty is a guarantee by the seller that its goods are "fit for the ordinary purpose for which the goods are used." *Indus. Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999). An implied warranty for particular use, on the other hand, is a guarantee by the seller that the goods "were for a purpose other than [its] ordinary use." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007). "Thus, allegations that a manufacturer knew that a product would be put to its ordinary use . . . will not suffice to state a claim for breach of the implied warranty of fitness for a particular purpose." *Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 868 (C.D. Ill. 2021).

Because Plaintiffs do not identify the products at issue, they cannot demonstrate that any of Defendants' products were not "fit for the ordinary purpose," and their implied warranty claim should be dismissed accordingly. *See Lambert*, 2017 WL 2619142, at *4-5 (dismissing claim of breach of implied warranty of merchantability for failure to allege facts showing how product failed in its intended purpose). Plaintiffs also allege the unidentified products "were unfit for their particular purpose [of] safely straightening hair." (Dkt. No. 106 ¶ 179.) This particular purpose does not differ from the unidentified products' ordinary purpose and, as a result, the particular

purpose claim fails. *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d at 957. Plaintiffs' implied warranty claim should be dismissed.

Plaintiffs' MMWA claim is derivative of Plaintiffs' warranty claims and fails as well. "If the express warranty and implied warranty claims fail, the MMWA claim fails as well [because] [t]he MMWA depends on the existence of an underlying viable state-law warranty claim." *Karlinski*, 616 F. Supp. 3d at 765 (dismissing plaintiff's MMWA claim because his "breach of warranty claims fail"). *See also Smith*, 334 F. Supp. 2d at 1069 (holding that the MMWA did not extend implied warranties to customers not protected by traditional state law due to absence of privity). Moreover, to the extent Plaintiffs seek to recover for personal injuries, they cannot assert a warranty claim under the MMWA: "personal injury claims based on a breach of warranty are not cognizable under the Magnuson–Moss Act." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). Plaintiffs' MMWA claim should be dismissed.

## VIII. THE CAUSES OF ACTION FOR UNJUST ENRICHMENT AND PUNITIVE DAMAGES FAIL TO STATE A CLAIM.

Plaintiffs' Unjust Enrichment claim (Eleventh Cause of Action) should be dismissed as it is not properly pled. As a preliminary matter, not all jurisdictions recognize unjust enrichment as an independent cause of action. *See, e.g.*, *Vanzant*, 934 F.3d at 739 ("Under Illinois law, unjust enrichment is not a separate cause of action"); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) ("California does not recognize a separate cause of action for unjust enrichment"); *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 552 (N.D. Tex. 2021) (same). At the very least, Plaintiffs should be required to identify in the Master Complaint those jurisdictions for which this cause of action applies.

In addition, several jurisdictions do not allow recovery for unjust enrichment where the plaintiff has an adequate remedy at law. This is an exception to the general rule that causes of

action may be pled in the alternative.  *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (dismissing unjust enrichment claim because plaintiffs "have adequate remedies at law"); *Pershouse*, 368 F. Supp. 3d at 190 ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment."). As the unjust enrichment claim is based on the same factual premise as the causes of action for which Plaintiffs seek damages, it cannot be brought as a separate cause of action.

Similarly, Plaintiffs' claim for Punitive Damages (Fifteenth Cause of Action) should be dismissed, because punitive damages are a remedy, not an independent cause of action.  *See Fisher v. Ethicon, Inc.*, No. 1:20-cv-1365, 2021 WL 5889522, at *3 (C.D. Ill. Dec. 13, 2021) (dismissing cause of action for punitive damages; "punitive damages are a remedy"); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 674 (S.D. Miss. 2007) (same).  The Master Complaint appears to recognize this, stating that "[t]o the extent that punitive damages are an available remedy but not considered an independent cause of action in any Plaintiff[']s state, the allegations in this section are pled in support of punitive damages being an appropriate remedy for that Plaintiffs' other causes of action."  (Dkt No. 106 ¶ 280(f).)  If any jurisdiction allows a plaintiff to plead punitive damages as an independent cause of action, Plaintiffs should be required to identify in the Master Complaint those jurisdictions for which this cause of action applies.

More critically, however, Plaintiffs have not alleged facts sufficient to allow them to seek punitive damages.  To recover punitive damages, a plaintiff must show that a defendant acted willfully, wantonly or recklessly.  *See Mercury Skyline Yacht Charters*, 2005 WL 3159680, at *11. "Conduct is willful, wanton, or reckless when it is committed with a deliberate intention or in such a manner or under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights."  *Bryant v. Muskin Co.*, 873 F.2d 714, 714 (4th Cir. 1989).

No such conduct is alleged here. Instead, Plaintiffs allege a laundry list of "Defendants' willful, wanton, malicious, and/or reckless acts" (*id.* ¶ 280(a)-(e)), without setting forth any facts which might support such a claim. This is insufficient. *See Williams v. Tripp Lite*, No. 93 C 3913, 1993 WL 408367, at *2 (N.D. Ill. 1993) (dismissing request for punitive damages where plaintiff failed to plead any facts to establish a basis for an award of punitive damages). As noted above, Plaintiffs have not identified the products they used, what acts or omissions Defendants took concerning those products, or whether Defendants even knew or had reason to know that their (undisclosed) products were allegedly unsafe. Certainly, even if this was adequately alleged (it is not), a request for punitive damages cannot be based on what was first revealed by the Chang Article in 2022, long after Plaintiffs purchased or used the products. Plaintiffs have not offered any facts to allow them to seek punitive damages.

## IX.   THE WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF CONSORTIUM CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Wrongful Death, Survival Action and Loss of Consortium claims (Twelfth through Fourteenth Causes of Action) should be dismissed as they are derivative in nature and their viability depends on the validity of their underlying claims. *See Lawler*, 2016 IL App (1st) 143189 (a wrongful death action is "derivative of the injury to the decedent and is grounded on the same wrongful act of defendant whether it was prosecuted by the injured party during [her] lifetime or by a representative of the estate"); *Ocasio v. Village of N. Aurora*, No. 20 CV 4908, 2022 WL 16540198, at *3 (N.D. Ill. Oct. 28, 2022) (survival claim "tie[s] relief to an underlying state cause of action"); *Allender*, 592 F. Supp. at 544 (dismissing loss of consortium claim "[b]ecause loss of consortium claims are derivative in nature and require that the defendant be liable for the injuries to the person whose spouse brings the action"). As detailed above, Plaintiffs have failed to allege sufficient facts to maintain any of the claims upon which these causes of

action rely.  Accordingly, the causes of action for wrongful death, survival action, and loss of consortium should also be dismissed.

## X.  DABUR INTERNATIONAL AND DERMOVIVA MUST BE DISMISSED FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION.

Plaintiffs cannot establish that the Court has general or specific personal jurisdiction over Dabur International or Dermoviva; thus, these entities should be dismissed from this Action.

### A.  Background

Dabur International, which is incorporated in the Isle of Man and principally located in Dubai, UAE, has a sole United States office located in New Jersey where it conducts limited business related to its own products, none of which are hair relaxers.  Agrawal Decl. ¶¶ 3, 7.  It has no designated agent for service of process in Illinois and has no offices or employees in Illinois.  *Id.*  It has no involvement with any hair-relaxer products sold anywhere in the United States.  *Id.* ¶ 4.  It is legally distinct and operates separately from its direct and indirect subsidiaries (including Namasté, which does sell hair relaxers in Illinois), and does not finance or control the daily affairs of any subsidiary.  *Id.* ¶¶ 5-6.  Likewise, its books, tax records, and financial statements are kept separately from those of its subsidiaries.  *Id.* ¶ 6.

Dermoviva, which is incorporated in Delaware, is a holding company and has no employees or operations.  Mathur Decl. ¶¶ 3-4, 6.  It has no corporate filings with the Illinois Secretary of State, no designated agent for service of process in Illinois, no offices in Illinois, and conducts no business in Illinois.  *Id.* ¶ 6.  It has no involvement with any hair-relaxer products sold anywhere in the United States.  *Id.* ¶ 8.  It is legally distinct and operates separately from its subsidiary Namasté and does not finance or control the daily affairs of Namasté.  *Id.* ¶ 7.

### B.  Argument

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). To exercise personal jurisdiction over a foreign defendant, Illinois courts consider "whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Silver v. Horneck*, 2021 IL App (1st) 201044, ¶ 62. Accordingly, the issue is whether there are "certain minimum contacts with the forum State such that maintenance of the suit there does not offend traditional notions of fair play and substantial justice" under the due process clause. *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150 (1988) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Plaintiffs bear the burden of showing that a Court has personal jurisdiction over defendants. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Because Plaintiffs cannot satisfy their burden of showing that the Court has general or specific jurisdiction over either Dabur International or Dermoviva, both entities should be dismissed.

### 1. <u>Plaintiffs Fail To Allege General Jurisdiction.</u>

General jurisdiction exists over a foreign defendant only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG,* 571 U.S. at 118. Plaintiffs cannot establish general jurisdiction over Dabur International or Dermoviva.

Both Dabur International and Dermoviva are foreign entities that have had no *de minimis* contacts with Illinois related to this litigation, let alone continuous and systemic ones. *See* Agrawal Decl. ¶¶ 3, 7-8; Mathur Decl. ¶ 6. Plaintiffs also cannot point to Namasté's contacts with Illinois to establish jurisdiction over Dabur International or Dermoviva. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (holding that

"personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary"). Dabur is the corporate "grandparent" of Namasté that owns Dermoviva, and Dermoviva is the corporate holding company parent of Namasté. Both entities are distinct from Namasté, observe all corporate formalities, and maintain separate books, records, financial statements, and tax returns as appropriate, and neither asserts day-to-day management or an abnormal degree of control over Namasté. Agrawal Decl. ¶¶ 4-6; Mathur Decl. ¶¶ 4-6. Accordingly, Dabur and Dermoviva's corporate affiliations as parents of Namasté cannot be used to assert jurisdiction. *Cent. States*, 230 F.3d at 945.

Because neither Dabur International nor Dermoviva are "at home" in Illinois, they cannot be subject to general jurisdiction here. *Goodyear*, 564 U.S. at 919.

### 2. **Plaintiffs Fail To Allege Specific Jurisdiction.**

Plaintiffs cannot establish specific jurisdiction over Dabur International or Dermoviva. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The nonresident's forum-state activities must themselves "give rise to the liabilities sued on." *Int'l Shoe Co.*, 326 U.S. at 317. That is, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (citation omitted). General contacts with a forum are not sufficient; instead, specific jurisdiction is appropriate only where there is an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S 255, 264 (2017) (citation omitted).

Plaintiffs can point to no such relevant contacts here. Neither Dabur International nor

-34-

Dermoviva manufactured, marketed, distributed, sold, or made representations about any hair-relaxer products that underlie Plaintiffs' claims anywhere in the United States, let alone in Illinois. Agrawal Decl. ¶¶ 7-8; Mathur Decl. ¶¶ 6-7. Regarding Dabur International, its only U.S.-based operations comprise a small presence in New Jersey from which it develops marketing relationships for Dabur International products, none of which are hair relaxers. Agrawal Decl. ¶¶ 7-8. Thus, as a parent company with an existence wholly separate from its subsidiaries, Dabur International has not itself created any contacts with Illinois regarding hair relaxers. *See Walden*, 571 U.S. at 284; *Cent. States*, 230 F.3d at 944.[14] As for Dermoviva, the company is not even registered to do business in Illinois. Mathur Decl. ¶¶ 6. It is a holding company with no employees or operations. As a parent company with its existence wholly separate from its subsidiaries, Dermoviva has not itself created any contacts with Illinois. *See Walden*, 571 U.S. at 284; *Cent. States*, 230 F.3d at 944. Plaintiffs therefore cannot establish any activity in Illinois by Dermoviva from which jurisdiction could arise. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

Unable to satisfy even the first prong of the specific jurisdiction inquiry, Dabur International and Dermoviva must be dismissed.

## XI. CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court grant their motion to dismiss.

---

[14] To be sure, Dabur was registered to do business in Illinois on February 28, 2012 through July 9, 2021—but none of that business related to Namasté's hair relaxers, or any hair relaxer at all. Agrawal Decl. ¶ 8. Thus, while Dabur had a contact with Illinois, that contact was wholly unrelated to the Plaintiff's suit. *Bristol-Myers Squibb*, 582 U.S. at 264 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").

Dated: July 5, 2023     Respectfully submitted,

*/s/ Dennis S. Ellis*
Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Ellis George Cipollone O'Brien Annaguey LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
nbegakis@egcfirm.com

Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.;*
*L'Oréal USA Products, Inc.; SoftSheen-Carson*
*LLC and SoftSheen-Carson (W.I.), Inc.*

*/s/ Donna M. Welch*
Donna M. Welch, P.C.
Zachary A. Ciullo
Michael F. LeFevour
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
T: (312) 862-2000
dwelch@kirkland.com
zac.ciullo@kirkland.com
Michael.lefevour@kirkland.com

Jennifer G. Levy, P.C.
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington DC 20004
T: (202) 389-5000
jennifer.levy@kirkland.com
Sierra Elizabeth, P.C.
Kirkland & Ellis LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
T: (310) 552-4200
sierra.elizabeth@kirkland.com

*Counsel for Defendants Namasté
Laboratories, LLC and Specially Appearing
Defendants Dabur International Limited and
Dermoviva Skin Essentials Inc.*

*/s/ Lori B. Leskin*
Lori B. Leskin
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Counsel for Defendants Strength of Nature
LLC; Strength of Nature Global LLC; and
Godrej SON Holdings*

*/s/ R. Trent Taylor*
R. Trent Taylor
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

*/s/ Patrick P. Clyder*
Patrick P. Clyder
Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

*/s/ Joseph P. Sullivan*
Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises,
LLC f/k/a House of Cheatham, Inc.*

*/s/ Richard J. Leamy, Jr.*
Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

*/s/ James R. Williams*
James R. Williams (6276890)
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
Telephone:      (312) 704-0550

-38-

Facsimile:     (312) 704-1522
jim.williams@wilsonelser.com

*Counsel for Defendant Parfums de Coeur, Ltd.*
*d/b/a PDC Brands*

*/s/ Melissa Fallah*
Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

*/s/ Robert A. Atkins*
Robert A. Atkins
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ratkins@paulweiss.com

Randy Luskey
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
(628) 432-5112
rluskey@paulweiss.com

David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7348
dcole@paulweiss.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

<u>/s/ Robert D. Grossman</u>
Richard D. Grossman
Law Offices of Richard D. Grossman
211 West Wacker Drive, Suite 710
Chicago, IL 60606
(312) 750-9308
rgat135@gmail.com

*Counsel for Defendant AFAM Concept Inc. and JF Labs*