**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: HAIR RELAXER** | **)** | Master Docket No. 1:23-cv-00818 |
| **MARKETING SALES PRACTICES** | **)** | |
| **AND PRODUCTS LIABILITY** | **)** | MDL No. 3060 |
| **LITIGATION** | **)** | |
| _____ | **)** | Hon. Mary M. Rowland |

**PLAINTIFFS' EXECUTIVE COMMITTEE'S MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION**
**TO DISMISS MASTER LONG-FORM PERSONAL INJURY COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 4

I.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED. ................................. 4

  A.  Plaintiffs' Claims Are All Claims Under State Product Liability Law. ............... 5

  B.  Plaintiffs' Claims Parallel Defendants' Duties Under Federal Law and Thus Are Not Preempted. .................................................................... 6

II.  PLAINTIFFS' NEGLIGENCE CLAIMS ARE WELL-PLED. ....................................... 8

  A.  Plaintiffs Plausibly Plead Breach of a Duty of Care. ............................................ 9

  B.  Plaintiffs Plausibly Plead Proximate Cause. ...................................................... 12

  C.  Plaintiffs Plausibly Plead Gross Negligence (Cause of Action 1). ..................... 14

  D.  Plaintiffs Plausibly Plead Negligence Per Se (Cause of Action 3). .................... 15

III.  PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIMS ARE WELL-PLED. ........ 16

  A.  Plaintiffs Plausibly Plead Design Defect (Cause of Action 4). ........................... 16

  B.  Plaintiffs Plausibly Plead Failure to Warn (Cause of Action 5). ......................... 18

IV.  PLAINTIFFS' MISREPRESENTATION CLAIMS ARE WELL-PLED. .................... 20

  A.  Defendants' Common Omissions Are Sufficient to Support Plaintiffs' Misrepresentation Claims at This Stage. ............................................... 20

  B.  Plaintiffs Allege All Defendants Omitted the Same Warnings in Every Sale. ......................................................................................... 22

  C.  Plaintiffs Plausibly Allege that Defendants Knew of Their Products' Risks. ....................................................................................... 22

  D.  Plaintiffs Plausibly Plead Violations of States' Consumer Protection Statutes (Cause of Action 10). ............................................................ 23

V.  PLAINTIFFS' BREACH OF IMPLIED WARRANTY AND EXPRESS WARRANTY/MAGNUSON-MOSS ACT CLAIMS ARE PROPERLY PLED. .......... 25

  A.  Plaintiffs' Breach of Implied Warranty Claims Are Sufficiently Pled. ............... 25

  B.  Plaintiffs' Breach of Express Warranty Claims Are Sufficiently Pled. ............... 27

  C.  Even If Certain States' Laws *May* Require Privity, Dismissal Of *All* Plaintiffs' Warranty Claims Is Not Appropriate at this Stage. ............................. 28

  D.  Plaintiffs' Magnuson-Moss Warranty Act Claims Should Not Be Dismissed. ................................................................................... 30

VI.  UNJUST ENRICHMENT CLAIMS ARE PROPERLY INCLUDED IN THE MASTER COMPLAINT. .................................................................. 31

**TABLE OF CONTENTS**
**(continued)**

Page

VII.   PLAINTIFFS HAVE PROPERLY PLED PUNITIVE DAMAGES—
REGARDLESS OF HOW THAT MASTER COMPLAINT SECTION IS
TITLED.................................................................................................................. 32

VIII.  PLAINTIFFS' WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF
CONSORTIUM CLAIMS ARE PROPERLY PLED........................................................ 33

IX.    DABUR INTERNATIONAL'S PERSONAL JURISDICTION ARGUMENTS
CANNOT BE DECIDED ON AN MDL-WIDE BASIS................................................... 34

CONCLUSION.................................................................................................................... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abedrabbo v. Topps Meat Co.,*
  756 F. Supp. 2d 18 (D.D.C. 2010) ........................................... 31

*Adams v. BRG Sports, Inc.,*
  No. 17 C 8544, 2018 WL 4853130 (N.D. Ill. Oct. 5, 2018) ........................... 13, 14, 17

*Africano v. Atrium Med. Corp.,*
  No. 17-CV-7238, 2021 WL 2375994 (N.D. Ill. June 10, 2021) .......................... 18

*Alexander v. United States,*
  721 F.3d 418 (7th Cir. 2013) ........................................... 12, 17

*Baldwin v. Star Scientific, Inc.,*
  78 F. Supp. 3d 724 (N.D. Ill. 2015) ....................................... 23

*Barnes v. Unilever U.S. Inc.,*
  No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) ............................ 8

*Batson v. Live Nation Entertainment, Inc.,*
  746 F.3d 827 (7th Cir. 2014) ........................................... 24

*Bausch v. Stryker Corp.,*
  630 F.3d 546 (7th Cir. 2010) ........................................... 12, 13, 14

*Bloom v. Dubois Reg'l Med. Ctr.,*
  597 A.2d 671 (Pa. Super. Ct. 1991) ........................................ 15

*Boelens v. Redman Homes, Inc.,*
  748 F.2d 1058 (5th Cir. 1984) ........................................... 30, 31

*Bojko v. Pierre Fabre USA Inc.,*
  No. 22 C 6728, 2023 WL 4204663 (N.D. Ill. June 27, 2023) ........................... 6, 8

*Bourbonnais v. Ameriprise Fin. Servs. Inc.,*
  No. 14-C-966, 2015 WL 12991000 (E.D. Wis. Aug. 20, 2015) .......................... 20

*Brown v. Lee,*
  929 So. 2d 775 (La. Ct. App. 2006) ....................................... 14

*Bruce v. Home Depot, USA, Inc.,*
  308 F. Supp. 2d 72 (D. Conn. 2004) ....................................... 24

*Campbell v. Nat'l Union Fire Ins. Co.,*
  130 F. Supp. 3d 236 (D.D.C. 2015) ........................................ 24

*CBP Res. v. SGS Control Servs. Inc.,*
  394 F. Supp. 2d 733 (M.D.N.C. 2005) ..................................... 24

*Clark v. Am. Honda Motor Co.,*
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) ..................................... 14, 18

*Clark v. River Metals Recycling, LLC,*
  929 F.3d 434 (7th Cir. 2019) ........................................... 16

*Cline v. FitzMark Chi., Inc.,*
  No. 21 CV 04253, 2023 WL 2711615 (N.D. Ill. Mar. 30, 2023) ........................... 4

*Com. Park Assocs., LLC v. Robbins,*
  220 A.3d 86 (Conn. App. 2019) ......................................... 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Conley v. Birch*,
    796 F.3d 742 (7th Cir. 2015) ................................................................. 13

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) ..................................................................... 13

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ................................................................. 22

*Cornstubble v. Ford Motor Co.*,
    532 N.E.2d 884 (Ill. App. Ct. 1988) ..................................................... 10

*Critcher v. L'Oreal USA, Inc.*,
    959 F.3d 31 (2d Cir. 2020) ..................................................................... 8

*Daniels v. Gamma W. Brachytherapy, LLC*,
    221 P.3d 256 (Utah 2009) ..................................................................... 14

*Darwish v. Ethicon, Inc.*,
    No. 1:20 CV 1606, 2020 WL 7129582 (S.D. Ohio Dec. 4, 2020) ........ 17

*Denniston v. Skelly Oil Co.*,
    362 N.E.2d 712 (Ill. App. Ct. 1977) ..................................................... 10

*Dent v. Nat'l Football League*,
    968 F.3d 1126 (9th Cir. 2020) ............................................................... 16

*Durbin v. Durbin*,
    2023 IL App (4th) 210437-U, 2023 WL 2965631 (Apr. 14, 2023) ....... 15

*Earls v. Menard, Inc.*,
    No. 20-CV-107-JDP, 2020 WL 7318010 (W.D. Wis. Dec. 11, 2020) ..... 13

*Edalatdju v. Guaranteed Rate, Inc.*,
    748 F. Supp. 2d 860 (N.D. Ill. 2010) ................................................... 21

*Fed. Deposit Ins. Corp. v. Patel*,
    No. 19-CV-6917, 2020 WL 6681348 (N.D. Ill. Nov. 12, 2020)............ 21

*Ferrick Excavating & Grading Co. v. Senger Trucking Co.*,
    484 A.2d 744 (Pa. 1984).......................................................................... 15

*Ferron v. Dish Network, L.L.C.*,
    961 N.E.2d 705 (Ohio Ct. App. 2011).................................................. 24

*Francis v. General Motors, LLC*,
    504 F. Supp. 3d 659 (E.D. Mich. 2020) ............................................... 29

*Gen. Ins. Co. of Am. v. Clark Mali Corp.*,
    No. 08 C 2787, 2010 WL 807433 (N.D. Ill. Mar. 10, 2010).................. 4

*Gorman v. Saf-T-Mate, Inc.*,
    513 F. Supp. 1028 (N.D. Ind. 1981) ..................................................... 31

*Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*,
    785 S.W.2d 13 (Ark. 1990) ................................................................... 26

*Greystone Nev., L.L.C. v. Anthem Highlands Cmty. Ass'n*,
    No. 2:11–cv–01424–RCJ–CWH, 2012 WL 2782603 (D. Nev. July 9, 2012) ........................ 24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Griffin v. Medtronic, Inc.*,
No. 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017)............................................ 18, 19

*Harris v. Kashi Sales, LLC*,
609 F. Supp. 3d 633 (N.D. Ill. 2022)....................................................................... 4

*Heisner ex rel. Heisner v. Genzyme Corp.*,
No. 08-C-593, 2008 WL 2940811 (N.D. Ill. Oct. 5, 2017) .................................... 27

*Hutchison v. Fitzgerald Equipment Co.*,
910 F.3d 1016 (7th Cir. 2018) .............................................................................. 12

*Ibarolla v. Nutrex Research, Inc.*,
No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012)................................. 22

*In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*,
537 F. Supp. 3d 679 (D.N.J. 2021)................................................................. 14, 29

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019).................................................................. 24

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)........................................................................ 23

*In re McDonald's French Fries Litig.*,
503 F.Supp.2d 953 (N.D. Ill. 2007)........................................................................ 26

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*,
159 F. Supp. 3d 898 (N.D. Ill. 2016)...................................................................... 3

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*,
No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014)................................. 25

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*,
No. 11 C 5468, 2012 WL 3582708 (N.D. Ill. Aug. 16, 2012)................................. 3

*Johnson v. Edward Orton, Jr. Ceramic Found.*,
71 F.4th 601 (7th Cir. 2023) .......................................................................9, 11, 14

*Kaiser v. Johnson & Johnson*,
947 F.3d 996 (7th Cir. 2020) ................................................................................ 13

*Kennery v. State*,
38 A.3d 35 (Vt. 2011)............................................................................................ 14

*Kozak v. Armstrong World Indus., Inc.*,
572 N.E.2d 279 (Ill. App. Ct. 1991)....................................................................... 16

*Kreidler v. Pixler*,
No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006)....................... 24

*Lambert v. Dollar General Corp.*,
No. 16 C 11319, 2017 WL 2619142 (N.D. Ill. June 16, 2017) .............................. 26

*Lamkin v. Towner*,
563 N.E.2d 449 (Ill. 1990) .................................................................................... 17

*Landau v. Viridian Energy PA L.L.C.*,
223 F. Supp. 3d 401 (E.D. Pa. 2016)..................................................................... 24

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lederman v. Pacific Industries, Inc.*,
 939 F. Supp. 619 (N.D. Ill. 1996) ................................................................. 19, 20

*Lee v. Mylan Inc.*,
 806 F. Supp. 2d 1320 (M.D. Ga. 2011) ............................................................. 29

*Lewis v. Mercedes-Benz USA, LLC*,
 530 F. Supp. 3d 1183 (S.D. Fla. 2021) ............................................................. 24

*Lopez v. Illinois*,
 65 Ill. Ct. Cl. 138 (2013) .................................................................................. 12

*Mahler v. Vitamin Shoppe Indus., Inc.*,
 No. 19-CV-03848, 2020 WL 419414 (N.D. Ill. Jan. 27, 2020) ......................... 17

*Mallory v. Norfolk Southern Rwy. Co.*,
 143 S. Ct. 2028 (2023) ..................................................................................... 35

*Marshall v. Burger King Corp.*,
 856 N.E.2d 1048 (Ill. 2006) ............................................................................... 9

*McDowell v. Bos. Sci. Corp.*,
 No. 18-3007, 2018 WL 6182625 (C.D. Ill. Nov. 27, 2018) ................................ 9

*McKie v. Sears Prot. Co.*,
 No. CV 10–1531–PK, 2011 WL 1587112 (D. Or. Feb. 22, 2011) ..................... 24

*Medallion Prods., Inc. v. H.C.T.V., Inc.*,
 No. 06 C 2597, 2007 WL 1022010 (N.D. Ill. Mar. 29, 2007) ........................... 27

*Mercado v. Bayer Healthcare Pharm. Inc.*,
 No. 14 C 6699, 2015 WL 3545238 (N.D. Ill. June 5, 2015) ............................. 18

*Midwest Grinding Co., Inc. v. Spitz*,
 976 F.2d 1016 (7th Cir. 1992) .......................................................................... 22

*N. Tr. Co. v. Upjohn Co.*,
 572 N.E.2d 1030 (Ill. App. Ct. 1991) ............................................................... 19

*Nashif v. AADCO Med., Inc.*,
 947 F. Supp. 2d 413 (D. Vt. 2013) .................................................................... 24

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
 143 F. Supp. 2d 535 (E.D. Va. 2001), *rev'd on other grounds*, 543 U.S. 50 (2004) ................ 24

*Pac. Shores Props., LLC v. City of Newport Beach*,
 730 F.3d 1142 (9th Cir. 2013)............................................................................ 13

*Palmer v. Lakeside Wellness Ctr.*,
 798 N.W.2d 845 (Neb. 2011) ............................................................................ 14

*Pelman v. McDonald's Corp.*,
 396 F.3d 508 (2d Cir. 2005) .............................................................................. 24

*Pleasant v. McDaniel*,
 550 S.W.3d 8 (Ark. Ct. App. 2018)................................................................... 24

*Polly v. Adtalem Glob. Educ., Inc.*,
 No. 16 CV 9754, 2019 WL 587409 (N.D. Ill. Feb. 13, 2019)............................ 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ried v. Unilever U.S., Inc.*,
 964 F. Supp. 2d 893 (N.D. Ill. 2013) ........................................................................ 27

*Ritacca v. Storz Med., A.G.*,
 291 F.R.D. 176 (N.D. Ill. 2013) ............................................................................... 21

*Rosenstern v. Allergan, Inc.*,
 987 F. Supp. 2d 795 (N.D. Ill. Oct. 25, 2013) .............................................. 27, 28, 29

*S. Griffin Constr., Inc. v. Lewiston*,
 16 P.3d 278 (Idaho 2000) ......................................................................................... 14

*Sellers v. Boehringer Ingelheim Pharms., Inc.*,
 881 F. Supp. 2d 992 (S.D. Ill. 2012) ......................................................................... 15

*Setliff v. E. I. Du Pont de Nemours & Co.*,
 32 Cal. App. 4th 1525 (1995) ................................................................................... 16

*Sherwin Alumina, L.P. v. AluChem, Inc.*,
 Nos. C-06-183, C-06-210, 2007 WL 950393 (S.D. Tex. Mar. 26, 2007) ................. 24

*Soaper v. Hope Indus., Inc.*,
 424 S.E.2d 493 (S.C. 1992) ...................................................................................... 26

*Solanki v. Wal-Mart Store # 2806*,
 763 S.E.2d 615 (S.C. Ct. App. 2014) ....................................................................... 14

*Stuve v. Kraft Heinz Co.*,
 No. 21-CV-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023) .................................. 21

*Taylor v. JVC Ams. Corp.*,
 No. 07-4059, 2008 WL 2242451 (D.N.J. May 30, 2008) ......................................... 27

*Thongchoom v. Graco Children's Prods., Inc.*,
 71 P.3d 214 (Wash. Ct. App. 2003) .......................................................................... 29

*Tillman v. Taro Pharm. Indus. Ltd.*,
 No. 10-cv-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011) .............................. 18

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
 863 N.E.2d 1156 (Ill. App. Ct. 2007) ....................................................................... 23

*U.S. Funding, Inc. v. Bank of Boston*,
 551 N.E.2d 922 (Mass. App. Ct. 1990) ..................................................................... 24

*United States ex rel. Derrick v. Roche Diagnostics Corp.*,
 318 F. Supp. 3d 1106 (N.D. Ill. 2018) ...................................................................... 22

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
 836 F.3d 770 (7th Cir. 2016) .................................................................................... 23

*United States v. Diaz*,
 533 F.3d 574 (7th Cir. 2008) ...................................................................................... 4

*Van Wyk v. Norden Labs., Inc.*,
 345 N.W.2d 8 (Iowa 1984) ....................................................................................... 26

*Vanzant v. Hill's Pet Nutrition, Inc.*,
 934 F.3d 730 (7th Cir. 2019) .................................................................................... 32

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Voelker v. Porsche Cars North America, Inc.*,
   353 F.3d 516 (7th Cir. 2003) ........................................................ 30, 31

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
   607 F. Supp. 2d 885 (N.D. Ill. 2009) ................................................. 22

*Winkle v. Zettler Funeral Homes, Inc.*,
   912 N.E.2d 151 (Ohio Ct. App. 2009) ............................................... 14

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) ............................................................. 16

**Statutes**

21 U.S.C. § 331 ................................................................................. 7, 16

21 U.S.C. § 361 ..................................................................................... 16

21 U.S.C. § 361(a) .................................................................................. 7

21 U.S.C. § 362 ..................................................................................... 16

21 U.S.C. § 362(a) .................................................................................. 7

21 U.S.C. § 379r ..................................................................................... 8

21 U.S.C. § 379s(a) ....................................................................... 4, 5, 6, 8

21 U.S.C. § 379s(d) ............................................................................. 5, 6

21 U.S.C. 379s(a) .................................................................................... 5

735 ILCS 5/2-209(b)(4) ........................................................................ 34

**Rules**

Fed. R. Civ. P. 8 ........................................................................ 24, 32, 33

Fed. R. Civ. P. 9(b) ........................................................................ 20, 23

**Treatises**

*Black's Law Dictionary* (11th ed. 2019) .............................................. 6

Restatement (Second) of Torts § 12 cmt. a (Am. L. Inst. 1965) ................ 11

Restatement (Third) of Torts § 28 cmt. c(4) (Am. L. Inst. 2010) .............. 12

U.C.C. § 2-315 cmt. 1 ........................................................................... 27

**Other Authorities**

Che-Jung Chang, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, Journal of the National Cancer Institute, Oct. 17, 2022,
   https://pubmed.ncbi.nlm.nih.gov/36245087 ......................................... 1

Morton F. Daller & Nicholas G. Dallar, *Product Liability Desk Reference*
   287-304 (2020 ed.) .................................................................................. 6

*N.Y. Pattern Jury Instr.-Civil* 2:10 (2014) ............................................ 14

Nat'l Consumer Law Ctr., *Unfair and Deceptive Acts and Practices*
   § 11.6.5.2 (10th ed. 2021) ..................................................................... 24

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Nat'l Research Council, *Reference Manual on Scientific Evidence* 612 (3d ed. 2011)
https://doi.org/10.17226/13163 ............................................................................ 12

Olga Voinarevich, *An Overview of the Grossly Inconsistent Definitions of
"Gross Negligence" in American Jurisprudence*, 48 J. Marshall L. Rev. 471 (2015)............. 14

S. Rep. 105-43 (1997)....................................................................................................... 6

Sandler DP, Hodgson ME, Deming-Halverson SL, et al.; for the Sister Study Research
Team. The Sister Study Cohort: baseline methods and participant characteristics. *Environ
Health Perspect.* 2017;125(12):127003.doi: 10.1289/EHP1923 ................................ 1

U.S. Food & Drug Admin, *FDA Authority Over Cosmetics: How Cosmetics Are
Not FDA-Approved, but Are FDA-Regulated* (Mar. 3, 2005)................................... 10

**Regulations**

21 C.F.R. § 701.3(a) ......................................................................................................... 8

21 C.F.R. § 701.3(a), (l) ................................................................................................... 14

21 C.F.R. § 740.1 ........................................................................................................11, 16

21 C.F.R. § 740.1(a) ..................................................................................................... 7, 8

21 C.F.R. § 740.10 ................................................................................................7, 11, 16, 19

21 C.F.R. § 740.10(c) ....................................................................................................... 7

## INTRODUCTION

The personal injury plaintiffs in this Multi-District Litigation all bring traditional, well-recognized products liability causes of action against defendant manufacturers of chemical hair-relaxing products for unleashing a defective product dangerous to human health to be advertised, marketed and sold in the U.S. without a proper warning associated with use. These claims are supported by large-scale, prospective cohort studies overseen by the institutional review board of the National Institutes of Health consisting of tens of thousands of women,[1] demonstrating that frequent use of hair relaxers more than doubles the risks of both uterine and ovarian cancers. To put these risks in perspective, one of the study authors who examined uterine cancer risk predicted that "one additional uterine cancer case would be expected for . . . every 42 frequent users" of hair relaxer products.[2] Furthermore, the strong, consistent risks demonstrated in the medical and scientific studies are uncontroverted by other scientific evidence. Despite the Food and Drug Administration's requirement that each of the Defendants adequately substantiate the safety of their hair relaxer products prior to marketing, there are no peer-reviewed published studies suggesting that use of hair relaxers does not increase the risk of uterine or ovarian cancer, nor is there scientific evidence suggesting that the dramatic increases in uterine and ovarian cancer seen in the published literature are limited to one hair relaxer brand or product.

Plaintiffs, in their Master Long Form Complaint (Dkt. 106, "Master Complaint" or "Master Compl."), collectively allege that their frequent use of Defendants' hair-relaxing products caused them to develop ovarian cancer, uterine cancer, and/or endometrial cancer. *E.g.*, Master Compl.

---

[1] Sandler DP, Hodgson ME, Deming-Halverson SL, et al.; for the Sister Study Research Team. The Sister Study Cohort: baseline methods and participant characteristics. *Environ Health Perspect*. 2017;125(12):127003.doi: 10.1289/EHP1923.

[2] Che-Jung Chang, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.

¶¶ 1, 6-7, 9. And they assert the predictable causes of action one would expect to see, *e.g.*, strict liability, negligence, breach of warranty, deceptive marketing, and fraud. These claims are well established by law and should be non-controversial in this action.

Abandoning their earlier assurance to the Court that they would only bring a targeted motion to dismiss, Defendants instead filed an unfocused blitz attack on everything in the Master Complaint. This kitchen-sink approach overwhelmingly fails to justify dismissal of any part of the Plaintiffs' complaint.

Importantly, Defendants' motion appears, in several respects, to misunderstand the role of a Master Complaint in multi-district litigation. In standard MDL practice, the Master Complaint is not by itself an operative legal pleading. Its sole purpose is to set forth common factual allegations and standard causes of action that may apply to all or most of the plaintiffs in an MDL. Each Plaintiff will then file a supplemental Short Form Complaint adopting many—but not necessarily all—of those factual allegations and causes of action for her individual case. *See* Dkts. 173 (Short Form Complaint), 175 (order approving). The Short Form Complaint is also the place where each Plaintiff will identify the Defendants they are suing, the products that they used, and the particularized factual allegations concerning, *inter alia*, their personal use of hair relaxers, their injuries from using Defendants' products, and any other factual details necessary to plead their individual case. Only when taken together do the two pleadings (the "Combined Complaint") yield the complete set of allegations for any individual Plaintiff.

Defendants' failure to appreciate the interplay of long- and short-form pleadings within the Combined Complaint infects Defendants' motion in two fundamental ways. First, they repeatedly fault Plaintiffs for not including facts about their individual hair relaxer use in the Master Complaint, even though those facts are specifically intended to follow in the Short Form

Complaint. *See* Dkt. No. 175. It is simply not grounds for dismissing the Master Complaint itself.[3]
*See In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. 11 C 5468, 2012 WL 3582708, at
*4 (N.D. Ill. Aug. 16, 2012) ("[T]he Master Complaint cannot be expected to include specific
factual matter for claims that require plaintiff-specific proof;" therefore, MDL court will consider
Defendants' motion to dismiss master complaint only "to the limited extent that it challenges the
sufficiency of the factual allegations common to all Plaintiffs."). Second, Defendants object to
Plaintiffs pleading claims in the Master Complaint that may not be recognized in certain states,
though valid in others. *See, e.g.*, Dkt. 142, Defendants' Memorandum in Support (hereinafter
"Mot.") at 16, 30. Here, again, this criticism is misplaced, in that the Short Form Complaint will
make clear which claims any particular Plaintiff is adopting, including those that are jurisdiction-
specific. If a Plaintiff's Short Form Complaint adopts a cause of action that is not recognized in
their jurisdiction, Defendants will have an opportunity—at the appropriate time—to seek to strike
that claim when that individual case moves forward in the litigation.

Relatedly, although Defendants seek dismissal of the Master Complaint in its entirety,
Defendants rely almost exclusively on Illinois law, which does not apply to all claims. *See In re
Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*
(hereinafter "*TRT*"), 159 F. Supp. 3d 898, 924 (N.D. Ill. 2016) ("In an MDL proceeding, a
transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction
in which the action was filed."); *cf. Zimmer*, 2012 WL 3582708, at *5 (MDL dismissal motion
under Illinois law proper where brought as to *only* Illinois cases). Accordingly, with few

---

[3] At the June 5 status conference, Defense counsel Ellis seemed to acknowledge this, repeatedly stating that
Plaintiffs had to identify the hair relaxer products that they had used "someplace, either in the master long-
form complaint or the short-form complaint." Transcript at 8-9; *see also id.* at 9 ("If you're not going to do
it in the master long-form complaint . . . then you have to do it somewhere, perhaps in the short form."); *id.*
at 21 ("[Product identification] has to happen in the master long-form complaint or it has to happen in the
short-form complaint.").

exceptions, Defendants appear to have moved to dismiss only those claims subject to Illinois law. *See Cline v. FitzMark Chi., Inc.*, No. 21 CV 04253, 2023 WL 2711615, at *8 (N.D. Ill. Mar. 30, 2023) (defendants bear burden on motion to dismiss). Plaintiffs therefore address Defendants' arguments under Illinois law and, only where raised by Defendants, the law of other jurisdictions.[4]

Many of Defendants' arguments in the motion to dismiss fail on one or another of these grounds, as detailed below, and their remaining arguments lack merit. The motion to dismiss should therefore be denied.

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED.

Defendants first argue that "[a]ll of Plaintiffs' non-products liability claims are expressly preempted by the FDCA," citing 21 U.S.C. § 379s(a). Mot. 13.[5] Elsewhere in their memorandum, Defendants identify the claims to which this argument purportedly applies: "Negligent Misrepresentation (Second Cause of Action), Breach of Warranty (Sixth and Seventh Causes of Action), Fraud (Eighth and Ninth Causes of Action), U.S. State and Territory Statutory Consumer Protection and Unfair or Deceptive Trade Practices (Tenth Cause of Action), Unjust Enrichment (Eleventh Cause of Action) and Punitive Damages (Fifteenth Cause of Action)." *Id.* at 3 n.4. Defendants' argument is meritless.

---

[4] To the extent Defendants raise new arguments in their Reply regarding other jurisdictions, Plaintiffs respectfully request a Sur-Reply. *See United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) (arguments first raised in reply brief are waived); *Gen. Ins. Co. of Am. v. Clark Mali Corp.*, No. 08 C 2787, 2010 WL 807433, at *4 (N.D. Ill. Mar. 10, 2010) (court must invoke waiver or permit sur-reply to address new arguments made in a reply brief).

[5] Defendants also assert in a brief footnote that "Plaintiffs' claims are also impliedly preempted both because the FDCA occupies the field and because Plaintiffs' demands conflict with the FDCA," citing two cases that have nothing to do with the FDCA. *Id.* at 15 n.9. Plaintiffs do not here respond to this undeveloped argument, which is meritless, because arguments advanced only in footnotes and not developed by the movant are deemed waived. *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022). Plaintiffs will, of course, respond to this argument if the Court so requests.

21 U.S.C. § 379s(a) does provide, subject to certain exceptions, that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter [of the FDCA]." 21 U.S.C. § 379s(d), however, expressly exempts product liability claims under state law from this preemption provision: "Nothing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." Defendants' preemption arguments utterly fail to grapple with the interplay of these two statutory provisions.

None of Plaintiffs' claims are expressly preempted by 21 U.S.C. § 379s(a). First, Plaintiffs' state law claims are all claims "under the product liability law of any State," and thus not preempted under 21 U.S.C. § 379s(d). Second, even if this Court were to conclude that one or more of Plaintiffs' claims were not "product liability" claims under that provision, none of Plaintiffs' claims seeks to impose any "requirement for labeling or packaging of a cosmetic that is different from or in addition to, or otherwise not identical with," a requirement applicable to Defendants' products under the FDCA. Thus, Plaintiffs' claims are not preempted.

A.      **Plaintiffs' Claims Are All Claims Under State Product Liability Law.**

As Defendants acknowledge, claims brought "under the product liability law of any State", such as those brought here, are exempt from preemption under 21 U.S.C. § 379s(d). Mot. 14 n.8.

"Product liability" is an expansive term that cannot bear the narrow construction Defendants wish to give it. Black's Law Dictionary, for example, defines a "products-liability action" as: "A lawsuit brought against a manufacturer, seller, or lessor of a product—**regardless of the substantive legal theory or theories on which the lawsuit is brought**—for personal injury, death, or property damage caused by the manufacture, construction, design, formulation,

- 5 -

installation, preparation, or assembly of a product." *Black's Law Dictionary* (11th ed. 2019) (emphasis added). Similarly, Daller & Daller's *Product Liability Desk Reference* lists the following as product liability causes of action recognized under Illinois law: strict liability, negligence, breach of warranty, and fraudulent, negligent, and false misrepresentations. Morton F. Daller & Nicholas G. Dallar, *Product Liability Desk Reference* 287-304 (2020 ed.). (Other states are similar.) And the Senate Report on the FDA Modernization Act of 1997, which added section 379s to the FDCA, expressly states: "the legislation explicitly provides that it shall not be construed to modify or otherwise affect the traditional product liability law of any State. Tort liability rules and requirements would remain unchanged and unaffected." S. Rep. 105-43, at 66 (1997).

Plaintiffs' claims all fit within these definitions and are expressly exempt from preemption pursuant to 21 U.S.C. § 379s(d). Indeed, the issue is so clear-cut that, to Plaintiffs' knowledge, the scope of 21 U.S.C. § 379s(d) has never been litigated in a case involving personal injuries.

**B.** **Plaintiffs' Claims Parallel Defendants' Duties Under Federal Law and Thus Are Not Preempted.**

Even if this Court were to conclude that one or more of Plaintiffs' claims did not qualify as a product liability claim under state law, that claim would still not be expressly preempted under 21 U.S.C. § 379s(a). That statutory provision only preempts state laws that impose "any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics" under federal law. Here, by contrast, Plaintiffs seek only to impose liability on defendants for conduct that is prohibited by *both* federal and state law. Because those state tort law requirements are coextensive with federal requirements, they are not preempted by section 379s(a). *Bojko v. Pierre Fabre USA Inc.*, No. 22 C 6728, 2023 WL 4204663, at *5-6 (N.D. Ill. June 27, 2023) (Durkin, J.).

There are multiple, separate federal requirements concerning cosmetics that are implicated by this litigation and that parallel Plaintiffs' claims for relief. First, federal law prohibits the marketing of "adulterated" cosmetics. 21 U.S.C. § 331. A cosmetic is "adulterated" if, *inter alia*, it "bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual." 21 U.S.C. § 361(a). Plaintiffs allege that Defendants' hair relaxer products are toxic because, when used as designed and instructed, they can cause cancer in women. Further, Defendants' hair relaxer products, as formulated, contain a number of toxic substances—including but not limited to endocrine-disrupting chemicals—that can cause the users to develop cancer.

Second, federal law prohibits the marketing of "misbranded" cosmetics. 21 U.S.C. § 331. A cosmetic is "misbranded" if, *inter alia*, "its labeling is false or misleading in any particular." 21 U.S.C. § 362(a).

FDA regulations elaborate on these requirements. 21 C.F.R. § 740.1(a) requires that "[t]he label of a cosmetic product shall bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product." And 21 C.F.R. § 740.10 more particularly requires that "[e]ach ingredient used in a cosmetic product and each finished cosmetic product shall be adequately substantiated for safety prior to marketing." If the safety of the cosmetic or ingredients has not been adequately substantiated, it will be deemed misbranded unless the following warning appears conspicuously on its packaging: "*Warning* – The safety of this product has not been determined."[6] *Id.* Plaintiffs here contend that Defendants' hair relaxers lacked

---

[6] A cosmetic including this warning statement can still be considered adulterated. 21 C.F.R. § 740.10(c).

necessary warnings concerning their health risks, including the warning required by section 740.10 that "the safety of this product has not been determined."[7]

Because Plaintiffs' claims seek to enforce the requirements of federal law, they would not be preempted by 21 U.S.C. § 379s(a) even if they were not product liability claims (which they are). *See e.g. Bojko*, 2023 WL 4204663, at *4-6 (consumer class action claims that defendant's dry shampoo products were misbranded and adulterated because they did not warn of dangerous levels of benzene, a carcinogen, were not preempted because the claims paralleled the federal requirement in 21 C.F.R. § 740.1(a) that the product carry a warning "whenever necessary or appropriate to prevent a health hazard that may be associated with the product," and the federal law declaring a cosmetic to be adulterated if it "contains any poisonous or deleterious substance"); *see also Barnes v. Unilever U.S. Inc.*, No. 21 C 6191, 2023 WL 2456385, at *5–6 (N.D. Ill. Mar. 11, 2023) (similar analysis by Judge Kennelly under 21 U.S.C. § 379r, a parallel preemption provision applicable to over-the-counter pharmaceuticals).[8]

## II. PLAINTIFFS' NEGLIGENCE CLAIMS ARE WELL-PLED.

Defendants move to dismiss Plaintiffs' negligence claims as insufficiently pled. But Defendants' concerns about the lack of product identification and purported (unspecified) jurisdictional differences in state law reflect Defendants' failure to recognize the distinct and intersecting purposes of the Master Complaint and individual plaintiffs' Short Form Complaints. *See supra* 2-3. Defendants also argue that the Master Complaint fails to establish that Defendants

---

[7] Contrary to Defendants' contention, Mot. 14-15, Plaintiffs do not seek to hold Defendants liable for failing to list all fragrance ingredients on the label. Plaintiffs acknowledge, as they did in their Master Complaint, that FDA regulations do not require manufacturers to identify fragrance ingredients. 21 C.F.R. § 701.3(a).

[8] *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020), on which Defendants rely, is readily distinguishable. The labeling requirement sought by plaintiffs under state law there—a notice that not all of the cosmetic in the tube could be extracted—was found to be inconsistent with a specific federal regulation determining that listing the product's net weight was sufficient. *Id.* at 37-38. Defendants cannot point to any similar federal requirement that is inconsistent with Plaintiffs' claims.

breached a duty of care or, if so, that such breach resulted in Plaintiffs' injuries. Defendants are wrong.

Plaintiffs' Combined Complaint establishes all the elements of negligence (*i.e.*, duty, breach, causation, and damages). *See, e.g.*, *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006)) ("[U]nder Illinois law," negligence requires "a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.'"). Plaintiffs' Master Complaint alleges that each Defendant breached the duty of care each owes to its customers by failing to exercise reasonable care in (among other things) designing, testing, marketing, selling, and failing to warn about hair relaxers that can cause cancer and other injuries through ordinary use, and that there is scientific proof that hair relaxer products cause certain cancers and other bodily injuries. Each Short Form Complaint will provide individualized allegations of product identity and usage, and injury caused to each Plaintiff by such product usage. Plaintiffs have more than satisfied pleading requirements through these allegations.

**A.**     **Plaintiffs Plausibly Plead Breach of a Duty of Care.**

Plaintiffs allege that Defendants breached the above duties by designing, manufacturing, marketing, and selling defective and dangerous hair relaxers; failing to warn of the health risks associated with normal use of their products and/or failing to disclose that they had not properly researched or tested their products' safety; and failing to remove or recall their products from the market when they knew or should have known of these risks. *See* Master Compl. ¶¶ 110, 120. Defendants admit they owe customers a "duty of reasonable care in manufacturing and selling a product that was not defective or unreasonably dangerous." Mot. 16 (quoting *McDowell v. Bos. Sci. Corp.*, No. 18-3007, 2018 WL 6182625, at *6 (C.D. Ill. Nov. 27, 2018)). "This include[s] a duty to warn of the risks, dangers, and side effects of the" product. *McDowell*, 2018 WL 6182625,

at *6. Together, each Combined Complaint establishes that each Plaintiff was a customer of one or more Defendants, and therefore each Defendant owed that Plaintiff a duty relating to the safety of its products. *See* Master Compl. ¶¶ 116-118.

Defendants argue that a manufacturer's reasonable care can be shown "through 'evidence of its testing and inspection procedures' or 'evidence that it complied with industry custom and practice.'" Mot. 16 (quoting *Cornstubble v. Ford Motor Co.*, 532 N.E.2d 884, 886 (Ill. App. Ct. 1988)). But *Cornstubble* assessed evidence presented at trial, not the sufficiency of pleading allegations. *See id.* at 892. Questions of "whether or not the defendant created an unreasonable risk" (*i.e.*, breach) "are for the jury to determine." *Denniston v. Skelly Oil Co.*, 362 N.E.2d 712, 723 (Ill. App. Ct. 1977) (relied on by *Cornstubble*).[9]

Moreover, Defendants are subject to further duties imposed by the FDA. Because cosmetics need not be FDA-approved before sale, companies that "manufacture or market cosmetics have a legal responsibility"—a duty—"to ensure the safety of their products." U.S. Food & Drug Admin, *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated* (Mar. 3, 2005), https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated; *accord* Master Compl. ¶ 104. The FDA requires that cosmetic products and ingredients be "safe under labeled or customary conditions of use," and advises manufacturers "to use whatever testing is necessary to ensure the safety of their products and ingredients." *FDA Authority Over Cosmetics*, *supra*; *accord* Master Compl. ¶¶ 105-106. Manufacturers must include warning labels "whenever necessary or

---

[9] Although industry custom is one way to rebut evidence of negligence *at trial*, it is not Plaintiffs' burden to *allege* that Defendants deviated from custom. *Cf. Denniston*, 362 N.E.2d at 723 (plaintiff's "failure to show a custom upon which to predicate negligence is not sufficient to destroy a jury's finding of negligence" based on "other evidence and common knowledge"). Regardless, Defendants present no evidence they met industry custom or testing procedures. *See* Mot. 16-17.

appropriate to prevent a health hazard that may be associated with the product," and a specific conspicuous warning if the "the safety of this product has not been determined." Master Compl. ¶¶ 107-108 (quoting 21 C.F.R. §§ 740.1, 740.10). Together, the FDA's regulations impose a duty on Defendants to test their products to ensure their safety, warn of any health hazards that "may" exist, or to conspicuously warn that safety has not been determined. *Id.* ¶ 109.

Defendants argue, however, that their duty is limited to "failing to warn of a known risk," and suggest (erroneously) that Plaintiffs' allegations are limited to the October 2022 study linking hair relaxers with uterine cancer.[10] Mot. 17. But "[a] manufacturer has a duty to warn" when it "knows *or should know* that harm may occur absent a warning." *Johnson*, 71 F.4th at 610 (emphasis added) (reversing dismissal of Illinois negligence and strict liability claims). "'Should know' indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question." *Id.* at 613 (quoting Restatement (Second) of Torts § 12 cmt. a (Am. L. Inst. 1965)). "In Illinois, a manufacturer is held to the degree of knowledge and skill of experts, and therefore has a duty to keep abreast of scientific developments touching upon the manufacturer's product." *Id.* (citations to Illinois law omitted).

Between the FDA's requirements that cosmetics manufacturers test their products and warn of any safety hazards, and Illinois's requirement that manufacturers proactively maintain scientific expertise about their products, Defendants had a duty to test their products and ingredients for the potential to cause cancer, and to either warn of such a danger or warn that the products' safety was

---

[10] In fact, Plaintiffs cite a 2021 study finding that regular hair relaxer users were more than twice as likely to develop ovarian cancer (Master Compl. ¶¶ 89-90), several studies from 2019-2022 of the health impacts of phthalates (*id.* at ¶¶ 72-79 nn.31-36), and a 2016 study identifying the health risks of endocrine-disrupting chemicals including phthalates (*id.* at ¶ 91 n.45). Defendants do not claim to have taken any action to protect their customers since the publication of these studies or the initiation of these lawsuits.

undetermined.[11] They did not. *See* Master Compl. ¶¶ 70, 118-119 (alleging Defendants knew or should have known of products' risks). Breach of duty is adequately pled.[12]

**B. Plaintiffs Plausibly Plead Proximate Cause.**

The Master Complaint alleges that two independent non-litigation studies found greater-than-double rates of uterine and ovarian cancer among people who used hair relaxers frequently. Master Compl. ¶¶ 85-90; *see also id.* ¶¶ 72-79 nn.31-36, ¶ 91 n.45, ¶¶ 92-96 (citing several studies from 2019-2022 of the health impacts of phthalates and a 2016 study identifying the health risks of endocrine-disrupting chemicals including phthalates). Doubling of risk is often recognized by courts as establishing causation by a preponderance of the evidence. *See* Nat'l Research Council, *Reference Manual on Scientific Evidence* 612 (3d ed. 2011), https://doi.org/10.17226/13163; Restatement (Third) of Torts § 28 cmt. c(4) (Am. L. Inst. 2010). The Master Complaint alleges that Defendants' hair relaxers can cause these cancers and other injuries because the products' ingredients, individually or as combined in the products, are harmful to the body, including because of the potential to disrupt the endocrine system. *See* Master Compl. ¶¶ 70-81, 84, 92-96.

Together, the Combined Complaints "present a story that holds together," which is all that is needed to sufficiently allege causation. *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013). The "required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Earls v. Menard, Inc.*, No. 20-CV-107-JDP, 2020 WL 7318010, at *2 (W.D.

---

[11] Discovery may reveal information about Defendants' actual knowledge. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ("[P]leading burden should be commensurate with the amount of information available . . . ."). Any fact question about what Defendants knew or should have known is better suited for summary judgment or trial after fact discovery. *Cf. Lopez v. Illinois*, 65 Ill. Ct. Cl. 138, 142 (2013) (for negligence claim, "whether a duty exists is a question of law, and determination of whether Respondent had notice is a question of fact").

[12] In contrast, *Hutchison v. Fitzgerald Equipment Co.*, upon which Defendants mistakenly rely, recognized only that the "duty to warn [under Illinois law] does not encompass a duty to recommend optional safety features to an owner who already knows about them." 910 F.3d 1016, 1022-23 (7th Cir. 2018). This case does not involve any similar facts.

Wis. Dec. 11, 2020) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996), and denying motion to dismiss consumer fraud claims under Illinois, Michigan, North Dakota, and Wisconsin law).[13] Plaintiffs more than satisfy causation pleading standards here.

Defendants' erroneously claim that Plaintiffs "concede that they do not know whether the unidentified products they used contain phthalates." Mot. 17. This misunderstands Plaintiffs' allegations. First, each Short Form Complaint will identify the brand or products each Plaintiff used. Second, Plaintiffs do not allege merely that phthalates caused their injuries. Plaintiffs allege that Defendants' *toxic products, as they are manufactured, advertised, and sold,* injured them. Defendants' chemical hair relaxers are toxic and are comprised of "harmful, toxic, and carcinogenic ingredients," which individually and/or in concert caused Plaintiffs' injuries. Master Compl. ¶ 71. Those toxic ingredients may include phthalates, but also, *inter alia*, "parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, formaldehyde, and other toxic chemicals." *Id.*

These allegations are sufficient prior to discovery. *See Bausch*, 630 F.3d at 559. "[A] plaintiff is not required to prove his case in his complaint, and a Rule 12(b)(6) motion is quite obviously not a proper vehicle to assess the scientific literature or the evidentiary support for plaintiffs' theory of causation." *Adams v. BRG Sports, Inc.*, No. 17 C 8544, 2018 WL 4853130, at *4 (N.D. Ill. Oct. 5, 2018). In *Adams*, football players alleged tort injuries from defective helmets, and this Court held that the players did not need to "identify the particular helmet model that the particular plaintiff used." *Id.* at *2. "It is sufficient to allege that the plaintiff used a helmet

---

[13] "[C]ausation is normally a matter for the jury." *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015); *see also Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1016 (7th Cir. 2020); *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) ("Causation is an intensely factual question that should typically be resolved by a jury.") (citing treatises).

manufactured by the defendant; the rest is appropriately addressed during discovery."[14] *Id.*; *see also Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1116 (C.D. Cal. 2021) ("plaintiffs need 'not indicate how the alleged defect caused the reported symptoms,'" and are "not 'required to plead the mechanical details of an alleged defect in order to state a claim'").[15]

## C. **Plaintiffs Plausibly Plead Gross Negligence (Cause of Action 1).**

The definition of gross negligence varies by jurisdiction, but generally requires a greater showing of lack of care by the defendant than ordinary negligence. *See* Olga Voinarevich, *An Overview of the Grossly Inconsistent Definitions of "Gross Negligence" in American Jurisprudence*, 48 J. Marshall L. Rev. 471, 473 (2015). While ordinary negligence requires the defendant to fail to take reasonable or ordinary care, many jurisdictions recognize gross negligence as the failure to take "even slight care."[16] Some jurisdictions recognize gross negligence as an

---

[14] *Adams* ordered plaintiffs to amend their complaint because the causation allegations there referenced only "certain" plaintiffs, and the plaintiffs did "not allege that they would not have suffered their injuries had the helmets been designed differently or used different materials." *Id.* at *3. By contrast, *all* Plaintiffs here allege that their use of hair relaxers caused their injuries, and that they would not have used the hair relaxers if Defendants had warned of the products' health risks. *See* Master Compl. ¶¶ 110-12, 120, 124, 138, 152, 185, 204, 223, 254.

[15] The sufficiency of Plaintiffs' allegations is especially clear given Defendants acknowledgment that they do not list all ingredients on their product labels. *See* Mot. 15 (citing 21 C.F.R. § 701.3(a), (l)); *Bausch*, 630 F.3d at 561 ("[P]laintiff's pleading burden should be commensurate with the amount of information available to them."); *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 720 (D.N.J. 2021) (in MDL, "[w]hen the information that may or may not support Plaintiffs' claims is largely within the control of the Defendants, the court may assess the sufficiency of plaintiffs' claims with substantial leniency")).

[16] *See, e.g.*, *Com. Park Assocs., LLC v. Robbins*, 220 A.3d 86, 97, 105 (Conn. App. 2019); *Johnson v. Omondi*, 751 S.E.2d 288, 291 (Ga. 2013); *S. Griffin Constr., Inc. v. Lewiston*, 16 P.3d 278, 286 (Idaho 2000); *N.Y. Pattern Jury Instr.-Civil* 2:10 (2014); *Solanki v. Wal-Mart Store # 2806*, 763 S.E.2d 615, 619 (S.C. Ct. App. 2014); *Brown v. Lee*, 929 So. 2d 775, 779 (La. Ct. App. 2006); *Palmer v. Lakeside Wellness Ctr.*, 798 N.W.2d 845, 850 (Neb. 2011); *Winkle v. Zettler Funeral Homes, Inc.*, 912 N.E.2d 151, 161 (Ohio Ct. App. 2009); *Daniels v. Gamma W. Brachytherapy, LLC*, 221 P.3d 256, 269 (Utah 2009); *Kennery v. State*, 38 A.3d 35, 49 (Vt. 2011).

independent cause of action, while others as an aggravated form of negligence. The Master Complaint's common allegations are sufficient either way.[17]

Defendants did not merely fail to warn of the risk of potentially fatal illnesses associated with the normal use of their products, but also failed to adequately substantiate the safety of their products prior to marketing in violation of federal law. 21 C.F.R. § 740.10(a). Defendants also falsely suggested that their products were safe and contained healthy ingredients that did not create a risk of fatal illness. *See* Master Compl. ¶¶ 59-62, 280(b)-(c). Moreover, Defendants "[i]ntentionally target[ed] Black and Brown women, including Black and Brown teenaged girls and children . . . without warning of their [products'] dangers, including by relying on and invoking anti-Black stereotypes and anti-Black history against natural Black and Brown hair and features." *Id.* at ¶ 280(e); *see also* ¶¶ 38-47, 55, 65-69 (detailing history of stereotyping and Defendants' exploitation of same to sell hair relaxers). This misconduct evinces a total lack of care for Plaintiffs' health and dignity, and plausibly constitutes gross negligence.

### D. Plaintiffs Plausibly Plead Negligence Per Se (Cause of Action 3).

In Illinois, negligence per se has the same elements as ordinary negligence except that a statute "provides the definition for the standard of care"—*i.e.*, defines what conduct constitutes breach. *Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F. Supp. 2d 992, 1010 (S.D. Ill. 2012). Plaintiffs allege ordinary negligence for the reasons explained above, and further allege that Defendants violated statutes prohibiting the marketing of adulterated or misbranded cosmetics (21

---

[17] Defendants argue that Illinois does not recognize claims for gross negligence. Mot. 16. But more recent caselaw shows that gross negligence is recognized in Illinois law. *See, e.g.*, *Durbin v. Durbin*, 2023 IL App (4th) 210437-U, 2023 WL 2965631, at ¶ 127 (Apr. 14, 2023) ("Punitive damages may be awarded when a defendant acts willfully or with such gross negligence as to indicate wanton disregard of the rights of others."). Likewise for Pennsylvania: while "there are no degrees of negligence in Pennsylvania," there are "differing *standards of care*." *Ferrick Excavating & Grading Co. v. Senger Trucking Co.*, 484 A.2d 744, 749 (Pa. 1984); *see also Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671, 677 (Pa. Super. Ct. 1991) (reversing dismissal of claim because allegations could "constitute gross negligence").

U.S.C. §§ 331, 361, 362), and by not bearing required warnings (21 C.F.R. §§ 740.1, 740.10). *See* Master Compl. ¶¶ 98-101, 107-108, 145. This pleading is appropriate.[18]

### III. PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIMS ARE WELL-PLED.

On strict liability, Defendants again repeat their argument about the lack of plaintiff-specific product-usage information in the Master Complaint, citing two inapplicable cases dismissing claims for failure to identify the specific products each Plaintiff used. But neither case involved a Master Complaint and individual Short Form Complaints that collectively answered these questions, as here. *See Setliff v. E. I. Du Pont de Nemours & Co.*, 32 Cal. App. 4th 1525, 1534 (1995); *Kozak v. Armstrong World Indus., Inc.*, 572 N.E.2d 279, 282 (Ill. App. Ct. 1991). Defendants also cite *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003), for the proposition that Plaintiffs cannot wait until discovery to identify which products they used, but here the Short Form Complaints will provide that information without discovery.

### A. Plaintiffs Plausibly Plead Design Defect (Cause of Action 4).

Under Illinois law, a strict-liability design defect claim requires: (1) a condition of the product as a result of design, (2) that made the product unreasonably dangerous, (3) that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff (5) that was proximately caused by the condition. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019). Defendants challenge only whether Plaintiffs alleged a design defect (elements 1 and 2) with sufficient specificity. They have.

First, Defendants acknowledge Plaintiffs "can establish a design defect . . . by showing 'that the product failed to perform as safely as an ordinary consumer would expect when used in

---

[18] If a Plaintiff pleads negligence per se from a jurisdiction that does not recognize it as an independent claim but instead as a way to establish ordinary negligence, it is pleaded as an alternative means to establish negligence. *See, e.g.*, *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (negligence per se recognized to "establish a presumption of negligence").

an intended or reasonably foreseeable manner." Mot. 17-18 (quoting *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990)). Plaintiffs have done so, alleging that Defendants' hair relaxers failed to perform as Plaintiffs expected by causing cancers and other illnesses when used as instructed. *See* Master Compl. ¶¶ 120(d), 153, 157-58, 166-67.[19]

Second, Defendants argue that Plaintiffs do not allege any facts plausibly showing a defect. Mot. 18. In fact, Plaintiffs cite two independent studies finding that Defendants' products more-than-double the risks of certain cancers, and multiple other studies associating Defendants' products with health risks, particularly related to endocrine and hormone disruption. *See* Master Compl. ¶¶ 70-81, 84-90, 92-96. Plaintiffs allege that ovarian and uterine cancers have hormonal etiologies. *Id.* at ¶¶ 84, 92. This is more than sufficient at this stage to tell a plausible "story that holds together" and to "give effective notice" to Defendants about how their products are defective and caused Plaintiffs' injuries. *Alexander*, 721 F.3d at 422. Plaintiffs' allegations are similar to or stronger than claims approved by this Court and others. *See Adams*, 2018 WL 4853130, at *2 (allegation that plaintiff used defendant's helmet was sufficient for pleading; "the rest is appropriately addressed during discovery"); *Mahler v. Vitamin Shoppe Indus., Inc.*, No. 19-CV-03848, 2020 WL 419414, at *2 (N.D. Ill. Jan. 27, 2020) (allegations that vitamin supplement contained heavy metals and plaintiff suffered ailments after taking it "plausibly establish causation"); *Darwish v. Ethicon, Inc.*, No. 1:20 CV 1606, 2020 WL 7129582, at *5 (S.D. Ohio Dec. 4, 2020) (allegations that polypropylene mesh was "known to cause complications, such as degradation, fragmentation, shrinkage, and a high rate of failure in [plaintiffs]" were "enough to create a plausible inference that the foreseeable risks associated with the product's design

---

[19] Although not an element of design defect under Illinois law, Plaintiffs have also alleged that alternative designs would have prevented the injuries, satisfying the law in those states that impose such a requirement. *See id.* at ¶¶ 34, 111-14, 159.

outweighed its benefits"); and *Clark*, 528 F. Supp. 3d at 1116 (allegations "on information and belief" that a "miscommunication" between two vehicle components might be "involved" was sufficient).

By contrast, the plaintiffs in Defendants' three cited cases merely alleged a temporal basis for causation—first they were exposed to the defendant's product, and then they suffered an injury—without alleging any facts to support a plausible causal mechanism or other connection between the product and the injury. *See Griffin v. Medtronic, Inc.*, No. 17 CV 927, 2017 WL 4417821, at *3 (N.D. Ill. Oct. 5, 2017) (pro se plaintiff failed to respond to motion to dismiss); *Mercado v. Bayer Healthcare Pharm. Inc.*, No. 14 C 6699, 2015 WL 3545238, at *2 (N.D. Ill. June 5, 2015); *Tillman v. Taro Pharm. Indus. Ltd.*, No. 10-cv-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011). Unlike here, none of those cases cited studies of defendant's products or other evidence that the products caused the alleged injuries in anyone else besides the individual plaintiff. Plaintiffs plausibly plead strict-liability design defect claims.

### B. Plaintiffs Plausibly Plead Failure to Warn (Cause of Action 5).

Plaintiffs allege that Defendants should have known but never warned that their products might cause serious harm. "In Illinois, a duty to warn exists only when there is unequal knowledge and the defendant, possessed of such knowledge, knows or should know that harm might occur if no warning is given." *Africano v. Atrium Med. Corp.*, No. 17-CV-7238, 2021 WL 2375994, at *10 (N.D. Ill. June 10, 2021). "A manufacturer's duty to warn is a *continuous* one," and the "adequacy of the warning is usually a jury question." *Id.*

Defendants again compare this case to *Griffin v. Medtronic*, where the pro se plaintiff did not "specifically allege what warnings were given, what [plaintiff's] doctors knew of the device, or why the warnings were inadequate." 2017 WL 4417821, at *4 (granting motion to dismiss against pro se plaintiff who filed no opposition brief). But *Griffin* involved a medical device subject

to the learned intermediary doctrine, and the court dismissed the failure to warn claim because the "allegations of undisclosed warnings are too vague to establish that Medtronic failed to disclose anything to Griffin's doctors that they did not already know." *Id.*; *see also N. Tr. Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1040 (Ill. App. Ct. 1991) (expert trial testimony established that prescription drug insert "adequately warned physicians of the known risks"). Here, hair relaxers are sold over-the-counter and involve no intermediary, so Defendants owe their duties to warn directly to Plaintiffs, not their doctors. And unlike the doctors who were already aware of the risks in *Griffin* and *Upjohn*, Plaintiffs "were not able to discover the dangerous nature of Defendants' hair relaxer products." Master Compl. ¶ 122; *see also id.* at ¶¶ 119, 138, 185, 204 (alleging Plaintiffs' lack of knowledge of products' risks). These allegations also distinguish *Lederman v. Pacific Industries, Inc.*, where a defendant had no duty to warn of "'open and obvious' dangers associated with swimming pool dives." 939 F. Supp. 619, 628 (N.D. Ill. 1996).

Unlike here, *Griffin* also involved allegations that were too vague as to which warnings were missing. 2017 WL 4417821, at *4. Plaintiffs here clearly allege that Defendants had a duty to, but did not, warn of the products' "dangerous adverse side effects," "potential or known toxic chemicals," and/or warn that Defendants "had not properly tested the safety of their hair relaxer products." Master Compl. ¶ 110(a)-(d); *see also id.* at ¶¶ 58, 133 (additional allegations of Defendants' failures to warn). The FDA prescribes a specific warning when the "safety of this product has not been determined," which Defendants never placed on their product labels. *Id.* at ¶ 108 (citing 21 C.F.R. § 740.10). Plaintiffs also establish proximate cause for failure to warn by alleging that if Defendants had provided these warnings, "Plaintiffs would not have purchased or used Defendants' hair relaxer products." *Id.* at ¶ 138; *see also id.* at ¶¶ 167, 185, 204, 223, 254

(similar allegations). In *Lederman*, by contrast, evidence established that warnings would have had no effect on plaintiff's fall into a pool. 939 F. Supp. at 628. Plaintiffs' pleading is appropriate.

## IV. PLAINTIFFS' MISREPRESENTATION CLAIMS ARE WELL-PLED.

Plaintiffs plausibly allege claims for negligent misrepresentation (cause of action 2), fraud and fraudulent misrepresentation (cause of action 8), fraudulent concealment (cause of action 9), and violations of consumer protection statutes in Plaintiffs' various jurisdictions (cause of action 10). Defendants' challenge under Fed. R. Civ. P. 9(b) should be rejected.

### A. Defendants' Common Omissions Are Sufficient to Support Plaintiffs' Misrepresentation Claims at This Stage.

Plaintiffs allege that Defendants omitted warnings that their hair relaxers could cause "dangerous adverse side effects" including fatal cancers, and/or warnings that Defendants "had not properly tested the safety of their hair relaxer products." Master Compl. ¶ 110(a)-(d); *see also id.* at ¶¶ 58, 133, 217, 231. Plaintiffs allege that they relied on these omissions, because "Plaintiffs would not have purchased or used Defendants' hair relaxer products" if Defendants had provided these warnings. *Id.* at ¶ 138; *see also id.* at ¶¶ 167, 185, 204, 223, 254 (similar allegations).

These omitted warnings are the "material information concealed by Defendants that they had a duty to disclose," Mot. 26, reflecting the "what" of Defendants' fraud. The "who" is each Defendant and the "how" is through the marketing, packaging, and labeling of each hair relaxer listed by Plaintiffs on their upcoming Short Form Complaints. The "when" and "where" is every time Plaintiffs purchased one of Defendants' hair relaxers. *Cf. Bourbonnais v. Ameriprise Fin. Servs. Inc.*, No. 14-C-966, 2015 WL 12991000, at *4 (E.D. Wis. Aug. 20, 2015) ("Rule 9(b)'s particularity requirement applies differently when fraud is alleged to have taken the form of omissions rather than misrepresentations. In a fraudulent concealment claim there is no who, what, when, where or how the fraudulent statement was made, since the essence of the claim is

that facts material to the transaction that should have been disclosed were not disclosed by any person at any time, in any place or in any manner.").

Although Plaintiffs also allege numerous actionable misrepresentations, at this stage the Court can deny Defendants' motion to dismiss because Plaintiffs' allegations of misrepresentations by omission are sufficient to state these claims. For purposes of this motion, the MDL Court need not reach issues relating to affirmative misrepresentations, which can be left to be handled in individual cases.

Because the Court need only consider Plaintiffs' omission allegations to conclude that Plaintiffs adequately pled their misrepresentation claims, Defendants' arguments relating only to affirmative misrepresentations are not persuasive. *See Fed. Deposit Ins. Corp. v. Patel*, No. 19-CV-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020) (citing cases demonstrating that "Courts in this circuit have recognized that the 'standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim.'"). Defendants' cases are distinguishable for the same reason. *See Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 180 (N.D. Ill. 2013) (dismissal based on misrepresentations, not omissions); *Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860, 863-64 (N.D. Ill. 2010) (same), *Polly v. Adtalem Glob. Educ., Inc.*, No. 16 CV 9754, 2019 WL 587409, at *3 (N.D. Ill. Feb. 13, 2019) (same). In fact, Defendants' caselaw supports Plaintiffs' claims here. *See Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *9 (N.D. Ill. Jan. 12, 2023) (dismissing affirmative misrepresentation claims, but upholding omission claims and noting: "As a matter of common sense, it is plausible that a reasonable consumer would choose to avoid foods at risk of containing phthalates in light of the list of health problems allegedly caused by phthalate consumption—including endocrine disruption, cancer, and neurodevelopmental problems.").

**B.**     <u>Plaintiffs Allege All Defendants Omitted the Same Warnings in Every Sale.</u>

Plaintiffs' Master Complaint makes certain allegations against all Defendants without distinguishing between them for the simple reason that many allegations apply equally to all of them. Plaintiffs allege that *all* Defendants omitted the same necessary warnings on *every* package and label *every time* they sold the products that Plaintiffs will identify in their Short Form Complaints.[20] Master Compl. ¶¶ 58, 110. There is nothing vague about universal allegations. *See United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106, 1114 (N.D. Ill. 2018) ("plaintiff need not" always "individualize the role of multiple defendants," including "when the necessary information is 'uniquely within the defendant's knowledge'"). "The critical question is whether her allegations are sufficient to 'inform each defendant of the nature of his alleged participation in the fraud.'" *Id.*[21] Plaintiffs' allegations do so.[22]

**C.**     <u>Plaintiffs Plausibly Allege that Defendants Knew of Their Products' Risks.</u>

Plaintiffs allege that "Defendants marketed their hair relaxer products without ever disclosing known health risks of the toxic chemicals contained in these products or taking other reasonable steps to ensure their products would not harm consumers." Master Compl. ¶ 55; *see also id.* at ¶ 8 (alleging Defendants had "knowledge that the hair relaxer products they designed, manufactured, advertised, and sold contained toxic carcinogens."); ¶¶ 58, 61-62, 70-71, 117-18,

---

[20] Plaintiffs' allegations that all Defendants made the *same omissions* is distinguishable from cases where plaintiffs alleged *differing affirmative* representations by multiple individual defendants but could not identify "who said what." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 600 (7th Cir. 2019).

[21] *See also Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) ("In the Seventh Circuit . . . a 'general outline of the fraud scheme' [is] sufficient to 'reasonably notify the defendants of their purported role' in the fraud satisfies Rule 9(b)." (quoting *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992))).

[22] Because each Plaintiff will identify products used and their time frame in Short Form Complaints, Defendants' concerns about not knowing which product's they omitted warnings about are misplaced. *Cf. Ibarolla v. Nutrex Research, Inc.*, No. 12 C 4848, 2012 WL 5381236, at *2-3 (N.D. Ill. Oct. 31, 2012) (distinguishable because plaintiff alleged she purchased "one or more" of six products without specifying which, and without a time frame).

- 22 -

120(h), 121, 131-32. These allegations of Defendants' knowledge are plausible and based on undisputed facts.[23] Defendants are large, sophisticated manufacturers and marketers of chemical cosmetics. They each know the specific ingredients and measurements in each of their products (unlike Plaintiffs). And they are each obligated by FDA regulations and caselaw to research and ensure the safety of their own products and ingredients before sale (or conspicuously warn otherwise, which no Defendant ever did). It is plausible that Defendants followed the law, in which case they would have known of their products' risks. Plaintiffs' allegations of knowledge are sufficient, especially given the parties' unequal access to information. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016) ("[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail [her] claim.").[24]

### D. Plaintiffs Plausibly Plead Violations of States' Consumer Protection Statutes (Cause of Action 10).

Plaintiffs plead that Defendants violated consumer protection statutes in multiple alternative ways, by engaging in deceptive, unfair, and/or unconscionable conduct, as well as by engaging in specific prohibited practices. Master Compl. ¶¶ 240-250. Defendants do not challenge Plaintiffs' unconscionability claims or claims about specific prohibited practices. Defendants seek to dismiss Plaintiffs' statutory deception claims on the same failed basis as their arguments against Plaintiffs' other deception-based claims, just discussed.[25] Moreover, although Defendants assert

---

[23] Defendants' one citation regarding insufficient allegations of knowledge involved a claim under Illinois's Fiduciary Obligations Act, which has unique and inapplicable requirements to plead that a bank had actual knowledge of a third party's intent to defraud before transferring funds. *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1165 (Ill. App. Ct. 2007).

[24] Rule 9(b)'s particularity requirement does not apply to allegations about a defendant's state of mind. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489-90 (D. Md. 2020).

[25] *Baldwin v. Star Scientific, Inc.*, on which Defendants rely, like *Ritacca, Edalatdju, Polly*, and *Kraft*, does not support dismissal because *Baldwin* involved only alleged affirmative misrepresentations, not omissions. *See* 78 F. Supp. 3d 724, 729 (N.D. Ill. 2015).

that some jurisdictions consider consumer protection statute claims under Rule 9(b), Mot. 22 & n.11, many jurisdictions consider such claims under the Rule 8 pleading standards. *See generally* Nat'l Consumer Law Ctr., *Unfair and Deceptive Acts and Practices* § 11.6.5.2 (10th ed. 2021) (citing dozens of cases applying Rule 8 to consumer protection statute claims).[26] Under any standard, Defendants' motion should be denied.

Plaintiffs also allege that Defendants' conduct was unfair in violation of various jurisdictions' consumer protection statutes. *See* Master Compl. ¶¶ 241-43, 245; *see also id.* at ¶¶ 98-101, 107-108, 145 (conduct offended public policy); ¶¶ 6-7, 55-57 (immoral conduct); ¶¶ 232, 258 (Plaintiffs could not avoid substantial harm). Defendants primarily attack Plaintiffs' unfairness allegations because they lack Plaintiff-specific product-usage information, Mot. 24 n.12, but that will come in the Short Form Complaints. Defendants also cite *Batson v. Live Nation Entertainment, Inc.*, a wholly dissimilar case which denied a claim that a $9 parking fee bundled with a concert ticket was unfair. 746 F.3d 827, 830 (7th Cir. 2014). Plaintiffs' unfairness claims should not be dismissed.

---

[26] *See, e.g.*, *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under § 349 [of the New York General Business Law] is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); *Pleasant v. McDaniel*, 550 S.W.3d 8 (Ark. Ct. App. 2018) (Arkansas); *Bruce v. Home Depot, USA, Inc.*, 308 F. Supp. 2d 72, 78 (D. Conn. 2004) (Connecticut); *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 267 (D.D.C. 2015) (D.C.); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1231–1232 (S.D. Fla. 2021) (Florida); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1181 (N.D. Ga. 2019) (Georgia); *U.S. Funding, Inc. v. Bank of Boston*, 551 N.E.2d 922 (Mass. App. Ct. 1990) (Massachusetts); *Greystone Nev., L.L.C. v. Anthem Highlands Cmty. Ass'n*, No. 2:11–cv–01424–RCJ–CWH, 2012 WL 2782603, at *7 (D. Nev. July 9, 2012) (Nevada); *CBP Res. v. SGS Control Servs. Inc.*, 394 F. Supp. 2d 733 (M.D.N.C. 2005) (North Carolina); *Ferron v. Dish Network, L.L.C.*, 961 N.E.2d 705 (Ohio Ct. App. 2011) (Ohio); *McKie v. Sears Prot. Co.*, No. CV 10–1531–PK, 2011 WL 1587112, at *11 (D. Or. Feb. 22, 2011) (Oregon); *Landau v. Viridian Energy PA L.L.C.*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (Pennsylvania); *Sherwin Alumina, L.P. v. AluChem, Inc.*, Nos. C-06-183, C-06-210, 2007 WL 950393, at * 3 (S.D. Tex. Mar. 26, 2007) (Texas); *Nashif v. AADCO Med., Inc.*, 947 F. Supp. 2d 413, 424 (D. Vt. 2013) (Vermont); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 553 (E.D. Va. 2001), *rev'd on other grounds*, 543 U.S. 50 (2004) (Virginia); *Kreidler v. Pixler*, No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006) (Washington).

## V. PLAINTIFFS' BREACH OF IMPLIED WARRANTY AND EXPRESS WARRANTY/MAGNUSON-MOSS ACT CLAIMS ARE PROPERLY PLED.

Plaintiffs' breach of implied warranty claims (Sixth Cause of Action) and breach of express warranty/Magnuson-Moss Warranty Act ("MMWA") claims (Seventh Cause of Action) are properly pled. Minor differences in state law do not justify dismissal at this stage of this MDL.

### A. Plaintiffs' Breach of Implied Warranty Claims Are Sufficiently Pled.

Defendants acknowledge that implied warranty claims exist where a defendant's product is not fit "for the ordinary purpose for which the goods are used" or it is "unfit for [its] particular purpose." Mot. 28. Considering Defendants' hair relaxer products caused Plaintiffs to develop cancer and other serious injuries, there should be little debate over whether these products are fit for any use or purpose. Still, Defendants move to dismiss these claims in their entirety.

As another court in this district explained in the Testosterone Replacement Therapy (TRT) MDL, a master complaint sufficiently alleges a breach of implied warranty where it alleges that the plaintiffs plausibly believed defendants' misrepresentations that the product was safe and effective for its use:

> Without delving into the specifics of different states' laws, plaintiffs have sufficiently pled claims for breach of the implied warranty of merchantability. They plausibly allege that they believed, based on defendants' misrepresentations and inadequate warnings, that TRTs were safe and effective for the treatment of "Low T."

*TRT*, No. 14 C 1748, 2014 WL 7365872, at \*9 (N.D. Ill. Dec. 23, 2014). Similarly, Plaintiffs have sufficiently pled a claim for breach of implied warranty by alleging that they believed Defendants' implied (mis)representations about their hair relaxer products being safe, effective, and fit for their ordinary purpose or use—straightening hair. *See, e.g.,* Master Compl. ¶¶ 177-78.

Defendants' only argument against Plaintiffs' "fit for their ordinary purpose" breach of implied warranty claims is to (again) assert that "Plaintiffs do not identify the products at issue,"

Mot. 28, which Plaintiffs have previously addressed.[27] In short, however, the Master Complaint more than sufficiently puts Defendants on notice of what products and product lines are at issue in this litigation and further specificity will be provided by Plaintiffs in their Short Form Complaints. Since Defendants do not move to dismiss Plaintiffs' "ordinary use" claims on any other grounds, the Court should deny Defendants' motion to dismiss those claims.

Turning to the warranty for a particular purpose claim, Defendants argue that Plaintiffs' claim cannot survive under Illinois law because the stated particular purpose—straightening hair—does not differ from the products' ordinary purpose. Mot. 28-29 (citing *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 957 (N.D. Ill. 2007)). At best, however, Defendants arguments would only serve to bar the "unfit for a particular purpose" theory for plaintiffs whose claims are governed by Illinois law. Other states have specifically rejected Defendants' argument. *See, e.g.*, *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 85 (Iowa 1984) (where buyer's "particular purpose" is the same as the product's "ordinary purpose," "both types of implied warranty may arise"); *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 785 S.W.2d 13, 17 (Ark. 1990) (same); *Soaper v. Hope Indus., Inc.*, 424 S.E.2d 493, 495 (S.C. 1992) (under such circumstances these two implied warranties "merge and are cumulative, such that a plaintiff may proceed upon either theory," and collecting cases). Defendants do not contest that separate "ordinary use" and "particular purpose" allegations would be appropriate in cases applying the law of those states who

---

[27] Defendants' citation to *Lambert v. Dollar General Corp.*, No. 16 C 11319, 2017 WL 2619142, at *4-5 (N.D. Ill. June 16, 2017), is inapposite. *Lambert* did not deal with a failure to identify the products at issue—as Defendants assert here—but with Lambert's failure to allege how the product was defective and failed its intended purpose. *Id.* Here, Plaintiffs allege that the hair relaxer products are unfit for their intended purpose because they cause injury and death *when used as intended*.

permit both claims. Consequently, Plaintiffs' particular purpose warranty claims should not be dismissed from the Master Complaint based on narrow Illinois law arguments.[28]

### B.     Plaintiffs' Breach of Express Warranty Claims Are Sufficiently Pled.

"In order to prevail on a claim for breach of express warranty, a plaintiff must plead and prove that the seller made an affirmation of fact that was part of the basis of the bargain between the parties." *Rosenstern v. Allergan, Inc*., 987 F. Supp. 2d 795, 805 (N.D. Ill. Oct. 25, 2013). Here, Plaintiffs allege Defendants made affirmations of fact "that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged." Master Compl. ¶ 197. Plaintiffs further allege Defendants made numerous specific misrepresentations about their products, including that the products are "gentle," "natural," "healthy," do not contain toxic or "harsh chemicals," "protect the skin and scalp," do not "hurt[] your scalp," and can be used "safely" by women and children. *Id*. at ¶ 59(a)-(q). Plaintiffs further allege that they would not have purchased Defendants' products had they "known the truth about the misrepresentations." *Id*. at ¶ 204. As such, Defendants' assertions that Plaintiffs make "generic allegations" and "have not identified any language or terms of an alleged express warranty or reliance therefrom" are simply wrong. Mot. 27-28.[29]

---

[28] It would also be improper to engage in fact-finding at this stage of the litigation to resolve whether the implied warranty of fitness for a particular purpose arises in an individual plaintiff's case. U.C.C. § 2-315 cmt. 1 ("Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting."); *Taylor v. JVC Ams. Corp*., No. 07-4059, 2008 WL 2242451, at *6 (D.N.J. May 30, 2008) (noting issues of fact related to an implied warranty of fitness claim that are "not amenable to resolution on a motion to dismiss"); *Medallion Prods., Inc. v. H.C.T.V., Inc*., No. 06 C 2597, 2007 WL 1022010, at *3 (N.D. Ill. Mar. 29, 2007) ("[That] would require the resolution of factual issues, something not considered in ruling on a motion to dismiss.").

[29] Defendants rely on *Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811 (N.D. Ill. Oct. 5, 2017), for their argument that "generic allegations" relating to a product being "safe and effective" do not constitute an "affirmation of fact or promise." Mot. 27-28. But *Heisner* is distinguishable because, unlike here, the plaintiff "offered nothing more than a formulaic recitation of the elements . . . and [] alleged no facts at all that suggest an express warranty existed." 2008 WL 2940811, at *9. Likewise, Defendants' citation to *Ried v. Unilever U.S., Inc*., only undermines their argument. 964 F. Supp. 2d 893, 909 (N.D. Ill. 2013) (refusing to dismiss plaintiffs' express warranty claims—based on representations of

---

Moreover, even if Plaintiffs had not provided this level of specificity, dismissal would be inappropriate at this stage of the litigation. As another court in this district has explained:

> At this stage of the litigation, however, Plaintiff is not required to specifically identify what promotional materials [plaintiffs] relied on. It is enough for Plaintiff to describe [defendant's] promotional activities and allege that [plaintiff] relied on this information. These allegations make [defendant's] liability plausible.

*Rosenstern*, 987 F. Supp. 2d at 805.

Finally, Defendants' assertion that "there is no claim from Plaintiffs that any of Defendants' products did not perform as intended" is absurd. Mot. 28. Plaintiffs repeatedly allege that Defendants' products did not perform as they were intended because they "were not safe, but rather exposed Plaintiffs and other consumers to unreasonable risks of adverse health effects including cancer." *See, e.g.*, Master Compl. ¶ 199; *see also*, ¶ 211. The Master Complaint sufficiently alleges breach of express warranty.

### C.    Even If Certain States' Laws *May* Require Privity, Dismissal Of *All* Plaintiffs' Warranty Claims Is Not Appropriate at this Stage.

Defendants incorrectly argue that Plaintiffs' express and implied warranty claims should be dismissed because privity is required under the warranty law of a handful of states. Mot. 26-27.[30] As discussed above, this Court should reject Defendants' invitation to wade into state-specific issues on a motion to dismiss a master complaint at this stage of the litigation – just as the court refused to do in the TRT MDL. *TRT,* 2014 WL 7365872, at *9 ("The Court defers ruling on state

---

a hair product's "smoothing," "last[s] up to 30 days," and "no formaldehyde"—because "whether a statement is merely the expression of an opinion or a statement of fact is a question of fact that cannot be decided on a motion to dismiss").

[30] Defendants concede that these states recognize various exceptions to the purported privity requirements but provide no analysis of the law—even in the few states they identified as having a privity requirement.

specific issues, including the application of . . . states' privity requirements to plaintiffs' warranty claims . . . .").[31]

In any event, Defendants' privity arguments fail even in the states they name because, as they appear to acknowledge, Mot. 26, many of these states recognize exceptions to the privity requirement. Defendants do not even attempt to demonstrate that such exceptions would not apply here. In Illinois itself, for example, "privity is not required when the plaintiff alleges personal injury," as Plaintiffs most certainly do. *Rosenstern,* 987 F. Supp. 2d at 805. Others of the so-called privity states recognize an exception to that requirement when a defendant makes misrepresentations directly to consumers, most often through claims in advertising and packaging. *See, e.g.*, *In re Allergan*, 537 F. Supp. 3d at 743 (express and implied warranty claims available in Florida if plaintiff "relied on the safety claims" in advertisements targeted to consumers); *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1325-26 (M.D. Ga. 2011) (In Georgia, "[i]f the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist."); *cf. Thongchoom v. Graco Children's Prods., Inc.*, 71 P.3d 214, 219 (Wash. Ct. App. 2003) (privity is met when the buyer is an intended third party beneficiary of the manufacturer's warranties to a third party under Washington law). Plaintiffs here allege that Defendants' "(mis)representations were made directly . . . to end users," Master Compl. ¶ 198 (*see also* ¶ 196), and identify numerous misrepresentations made by Defendants directly to consumers in their marketing and packaging,

---

[31] Defendants' citation to *Francis v. General Motors, LLC*, 504 F. Supp. 3d 659, 677 (E.D. Mich. 2020), only undermines their argument. Mot. 27, n.13. In *Francis,* the court refused to dismiss plaintiffs' claims under various states' laws—including Illinois and New York—because those states recognized exceptions to their privity requirements, so any determination necessitated "a fact-intensive exercise not amenable to resolution at the pleading stage." 504 F. Supp. 3d at 677.

see, e.g., id. at ¶¶ 53-62. As such, Plaintiffs dispute Defendants' claim that privity bars their warranty claims even in the few states Defendants identify.[32]

As discussed above, a motion to dismiss a Master Complaint is not the appropriate vehicle for addressing the nuances of warranty law in all fifty states. Defendants will have an opportunity to challenge those claims in individual cases as appropriate. For present purposes, it is more than sufficient that Plaintiffs' have adequately alleged all of the essential elements of their claims for breach of warranty and Defendants' motion should be denied.

### D.     Plaintiffs' Magnuson-Moss Warranty Act Claims Should Not Be Dismissed.

Defendants' argument that personal injury claims are not cognizable under the MMWA not only ignores the recognized exceptions to that general rule but also ignores the fact that *even if* their personal injury-based claims are completely barred, Plaintiffs may pursue claims for economic damages under that statute. As such, this Court should decline to dismiss Plaintiffs' MMWA claims from the Master Complaint.

Defendants' citation to *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003), does not accurately capture the scope of the permissibility of personal injury claims under the MMWA. *See* Mot. 29. In *Voelker*, the Seventh Circuit relied on *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1066 (5th Cir. 1984), for the general principle that personal injury claims are not cognizable under the MMWA. The *Voelker* court, however, did not contradict or reject the *Boelens* court's holding recognizing several exceptions to that general rule; namely: that

---

[32] Defendants argue that Plaintiffs' lead counsel should "identify those jurisdictions in the Master Complaint" where privity is not required and a breach of express or implied warranty claim can be pursued. Mot. 27, n.13; *see also id.* at 29 (making a similar request regarding Plaintiffs' unjust enrichment claims). To do so is neither required nor practical. As demonstrated by the disputes above, doing so would only result in this Court having to unnecessarily decide which of the 50 states require privity, for which types of warranty claims, and then determine which exceptions are applicable in each state. This Court should not waste its time "delving into the specifics of different states' laws"—especially where it serves no practical purpose at this stage of the litigation. *TRT,* 2014 WL 7365872, at *9.

personal injury suits *are* viable under the MMWA where there have been violations of the substantive provisions of 15 U.S.C. §§ 2308, 2304(a)(2), or 2304(a)(3) of the MMWA. *Compare Boelens*, 748 F.2d at 1068, *with Voelker*, 353 F.3d at 525.[33] As such, if a plaintiff in this litigation can establish that her personal injury claims fit within one of those exceptions, they are cognizable under the MMWA. But those case-specific issues need not be decided by this Court on this motion to dismiss.

Moreover, even if Plaintiffs' MMWA personal injury claims were completely barred, that would not permit dismissal of Plaintiffs' MMWA claims for recovery of their economic losses. Plaintiffs allege that they would not have purchased Defendants' hair relaxer products if they had known the truth about the alleged misrepresentations (Master Compl. ¶ 204) and have requested an "award of economic damages in the form of . . . out of pocket expenses . . . in an amount to be determined at trial." Master Compl., Prayer for Relief ¶ 2. Indeed, some Plaintiffs in this litigation purchased Defendants' hair relaxer products on a monthly basis for many years. They are entitled to recover those economic losses under the MMWA. Consequently, those claims should not be dismissed from the Master Complaint.

## VI.   <u>UNJUST ENRICHMENT CLAIMS ARE PROPERLY INCLUDED IN THE MASTER COMPLAINT.</u>

Defendants seek a general dismissal of Plaintiffs' unjust enrichment claims on the grounds that "not *all* jurisdictions recognize unjust enrichment as an independent cause of action" and

---

[33] *See also Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028, 1035 (N.D. Ind. 1981) ("Section 2311(b)(2) states expressly what §§ 2304 and 2308 fairly imply: Congress was content to let the question of personal injury products liability remain a matter of state-law causes of action, except to the extent that certain substantive provisions in the Magnuson-Moss Act overrule contrary state laws relating to the warrantor's ability to disclaim personal injury liability."); *Abedrabbo v. Topps Meat Co.,* 756 F. Supp. 2d 18, 21–22 (D.D.C. 2010) ("Nevertheless, by its terms, the [MMWA] statute carves out three exceptions to the general prohibition against personal injury claims—i.e., claims asserted under Section 2308, claims asserted under Section 2304(a)(2), and claims asserted under Section 2304(a)(4).").

"*several* jurisdictions do not allow for recovery for unjust enrichment where the plaintiff has an adequate remedy at law." Mot. 29 (citing Illinois, California, New York, and Massachusetts law) (emphasis added). While those statements may be true in a handful of jurisdictions, that does not mean unjust enrichment should not be included as an optional cause of action for Plaintiffs whose cases will be decided under the law of other states.

Moreover, even in jurisdictions that do not recognize a separate cause of action for unjust enrichment, Plaintiffs can still request relief based upon unjust enrichment. In *Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730 (7th Cir. 2019)—the case Defendants cite for the proposition that Illinois does not recognize a separate cause of action—the Seventh Circuit allowed the plaintiff to pursue a request for restitution based on unjust enrichment. *Id.* at 740. And Fed. R. Civ. P. 8 expressly permits plaintiffs to include "relief in the alternative" in their complaint, which a claim for unjust enrichment is if Plaintiffs' other claims fail.

## VII.   PLAINTIFFS HAVE PROPERLY PLED PUNITIVE DAMAGES—REGARDLESS OF HOW THAT MASTER COMPLAINT SECTION IS TITLED.

Toward the end of their Master Complaint, Plaintiffs include a section titled "Fifteenth Cause of Action, Punitive Damages" containing paragraphs alleging Defendants' willful, wanton, malicious and reckless conduct. That portion of the Master Complaint includes allegations that Defendants failed to disclose—or concealed—material facts regarding the dangers of their hair relaxer products; made false and deceptive representations about the safety and characteristics of their products; intentionally targeted black and brown women (including teenage girls); and knowingly subjected them to unreasonable dangers, including the risk of serious illness and death. Master Compl. ¶¶ 278-280(a)-(f). Plaintiffs claim this conduct warrants punitive damages.

Defendants first seek to dismiss Plaintiffs' claim for punitive damages on the grounds that it is a "remedy, not a separate cause of action." Mot. 30. But whether this section of the Master

Complaint was titled as a "cause of action," "count," "claim," "remedy," or "request for relief," is irrelevant. The point of the section is to allege facts that, if proven and where the controlling law permits, would support an award of punitive damages in a particular plaintiff's case. The Master Complaint groups these allegations as a cause of action, and provides an associated check box in the Short Form Complaint, in order to provide Plaintiffs with an opportunity to indicate at the time of filing that they believe punitive damages are appropriate under the law of their home jurisdiction, and to put Defendants on notice that they seek such relief as a part of their cases—just as Fed. R. Civ. P. 8 directs.

Separately, Defendants assert that Plaintiffs have not alleged conduct that would give rise to punitive damages. They concede that "Plaintiffs allege a laundry list of 'Defendants' willful, wanton, malicious, and/or reckless acts;'" they simply dispute whether those facts would be sufficient to support a punitive damages award. Mot. 30-31. What Defendants are improperly asking this Court to do is determine a contested issue of fact on a motion to dismiss before discovery has even begun. This is clearly inappropriate.

## VIII.  PLAINTIFFS' WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF CONSORTIUM CLAIMS ARE PROPERLY PLED.

As Defendants note, Plaintiffs' remaining claims are derivative in nature and their viability depends on the validity of their underlying claims. Because, as Plaintiffs have demonstrated, none of those underlying claims should be dismissed, Defendants' motion to dismiss these derivative claims should likewise be denied.

## IX. <u>DABUR INTERNATIONAL'S PERSONAL JURISDICTION ARGUMENTS CANNOT BE DECIDED ON AN MDL-WIDE BASIS.</u>

Finally, Defendant Dabur International, Limited's motion for dismissal based on lack of personal jurisdiction, Mot. 32-35, should be denied without prejudice as premature.[34] Questions of personal jurisdiction simply cannot be decided on an MDL-wide basis. Individual defendants may be—indeed undoubtedly are—subject to jurisdiction in some states, but may not be in others. And, contrary to Defendants' implicit assumption, the relevant state for assessing jurisdiction is not the state in which the transferee court sits, but the state in which the underlying case was originally filed (or would properly be venued, if the case was direct-filed). To date, 53 plaintiffs have sued Dabur in 27 district courts in 21 separate states and territories. It makes no sense to burden this Court with determining Dabur's amenability to suit in each of those jurisdictions at this time (nor has Dabur provided the Court with sufficient information to make such an assessment).

In any event, to the extent that the Court disagrees and decides to analyze personal jurisdiction under Illinois law, Dabur would be subject to general jurisdiction here. As Dabur itself concedes, it was registered to do business in Illinois from 2012 through 2021. Mot. 35, n.14. And Illinois's long-arm statute expressly provides that "[a] court may exercise jurisdiction in any **action arising within or without this State** against any person who . . . is a . . . corporation doing business within the State." 735 ILCS 5/2-209(b)(4) (emphasis added). That is sufficient to establish personal jurisdiction over Dabur under the Supreme Court's recent decision in *Mallory v. Norfolk Southern Rwy. Co.,* 143 S. Ct. 2028 (2023) (upholding general jurisdiction over out-of-state corporation based on Pennsylvania registration statute).[35]

---

[34] The same is true of the identical motion filed by Dermoviva Skin Essentials Inc. Regardless, the three individual plaintiffs who have named this defendant are voluntarily dismissing those claims, mooting Dermoviva's motion.

[35] At least eight of the other states in which cases have been filed against Dabur have similar statutes.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

Dated: August 4, 2023                    Respectfully submitted,


*/s/ Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*


Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*


Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*


Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*