**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br><br>Master Docket Case No. 1:23-cv-00818<br><br>Honorable Mary M. Rowland |

# CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**NATURE OF THE ACTION** ........ **1**
**JURISDICTION AND VENUE** ........ **4**
**I. THE PARTIES** ........ **5**
**A. Plaintiffs** ........ **5**
**B. Defendants** ........ **28**
**II. FACTS COMMON TO ALL COUNTS** ........ **31**
A. Market for Hair Relaxer Products ........ 31
1. History of Afro-Textured Hair and Hair Relaxers—The Framework for Defendants' Wrongful Marketing Practices ........ 32
2. The Invention of the Chemical Relaxer ........ 34
3. Chemical Relaxer Use: From Adolescence into Adulthood ........ 36
B. Defendants' Efforts to Market Their Hair Relaxer Products ........ 38
C. Defendants' Toxic Hair Relaxer Products Cause Human Uterine and Ovarian Cancers 58
1. Uterine Cancer ........ 59
2. Ovarian Cancer ........ 60
3. Biological Plausibility ........ 61
D. Regulatory Framework ........ 63
**III. ADDITIONAL FACTS COMMON TO THE MEDICAL MONITORING CLASSES** ........ **66**
**IV. CLASS ALLEGATIONS** ........ **69**
**V. TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, AND CONTINUING VIOLATIONS** ........ **76**
**VI. CAUSES OF ACTION BROUGHT ON BEHALF OF THE MULTI-STATE CLASSES** ........ **77**
**COUNT 1 – NEGLIGENCE** ........ **77**
**COUNT 2 – NEGLIGENT MISREPRESENTATION/OMISSION** ........ **81**
**COUNT 3 – NEGLIGENCE PER SE** ........ **85**
**COUNT 4 – MEDICAL MONITORING** ........ **86**
**COUNT 5 – STRICT LIABILITY: DESIGN DEFECT** ........ **91**
**COUNT 6 – STRICT LIABILITY: FAILURE TO WARN** ........ **93**
**COUNT 7 – VIOLATION OF STATE CONSUMER PROTECTION STATUTES** ........ **96**
**COUNT 8 – UNJUST ENRICHMENT** ........ **101**

**COUNT 9 – BREACH OF EXPRESS WARRANTY ........ 103**

**COUNT 10 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 107**

**COUNT 11 – FRAUDULENT OMISSION ........ 114**

**VII. CAUSES OF ACTION BROUGHT ON BEHALF OF THE STATEWIDE CLASSES ........ 116**

**A. Alabama ........ 116**

**COUNT 12 – VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT 116**

**COUNT 13 – UNJUST ENRICHMENT ........ 118**

**COUNT 14 – BREACH OF EXPRESS WARRANTY ........ 120**

**COUNT 15 – FRAUDULENT OMISSION ........ 122**

**B. Arizona ........ 124**

**COUNT 16 – NEGLIGENCE ........ 124**

**COUNT 17 – NEGLIGENT MISREPRESENTATION/OMISSION ........ 129**

**COUNT 18 – NEGLIGENCE PER SE ........ 132**

**COUNT 19 – STRICT LIABILITY: DESIGN DEFECT ........ 133**

**COUNT 20 – STRICT LIABILITY: FAILURE TO WARN ........ 136**

**COUNT 21 – VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT ........ 138**

**COUNT 22 – UNJUST ENRICHMENT ........ 141**

**COUNT 23 – BREACH OF EXPRESS WARRANTY ........ 143**

**COUNT 24 – FRAUDULENT OMISSION ........ 145**

**C. California ........ 147**

**COUNT 25 – NEGLIGENCE ........ 147**

**COUNT 26 – NEGLIGENT MISREPRESENTATION/OMISSION ........ 152**

**COUNT 27 – NEGLIGENCE PER SE ........ 155**

**COUNT 28 – STRICT LIABILITY: DESIGN DEFECT ........ 157**

**COUNT 29 – STRICT LIABILITY: FAILURE TO WARN ........ 159**

**COUNT 30 – VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT 162**

**COUNT 31 – VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW 165**

**COUNT 32 – UNJUST ENRICHMENT ........ 168**

**COUNT 33 – VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTY ........ 170**

**COUNT 34 – VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS**

FOR PARTICULAR USE ........ 172
COUNT 35 – FRAUDULENT OMISSION ........ 175
D. Colorado ........ 178
COUNT 36 – VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT 178
COUNT 37 – UNJUST ENRICHMENT ........ 180
COUNT 38 – BREACH OF EXPRESS WARRANTY ........ 182
COUNT 39 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 183
COUNT 40 – FRAUDULENT OMISSION ........ 186
E. District of Columbia ........ 189
COUNT 41 – NEGLIGENCE ........ 189
COUNT 42 – NEGLIGENT MISREPRESENTATION/OMISSION ........ 193
COUNT 43 – NEGLIGENCE PER SE ........ 197
COUNT 44 – STRICT LIABILITY: DESIGN DEFECT ........ 198
COUNT 45 – STRICT LIABILITY: FAILURE TO WARN ........ 201
COUNT 46 – VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT ........ 203
COUNT 47 – UNJUST ENRICHMENT ........ 206
COUNT 48 – BREACH OF EXPRESS WARRANTY ........ 208
COUNT 49 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 210
COUNT 50 – FRAUDULENT OMISSION ........ 214
F. Florida ........ 216
COUNT 51 – MEDICAL MONITORING ........ 216
COUNT 52 – VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ........ 220
COUNT 53 – UNJUST ENRICHMENT ........ 223
COUNT 54 – BREACH OF EXPRESS WARRANTY ........ 225
COUNT 55 – FRAUDULENT OMISSION ........ 226
G. Illinois ........ 228
COUNT 56 – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ........ 228
COUNT 57 – UNJUST ENRICHMENT ........ 231
COUNT 58 – BREACH OF EXPRESS WARRANTY ........ 233
COUNT 59 – FRAUDULENT OMISSION ........ 234

**H. Indiana** ........ **236**

**COUNT 60 – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT 236**

**COUNT 61 – UNJUST ENRICHMENT** ........ **239**

**COUNT 62 – BREACH OF EXPRESS WARRANTY** ........ **241**

**COUNT 63 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE** ........ **242**

**COUNT 64 – FRAUDULENT OMISSION** ........ **245**

**I. Iowa** ........ **247**

**COUNT 65 – VIOLATIONS OF THE IOWA CONSUMER FRAUD ACT** ........ **247**

**COUNT 66 – UNJUST ENRICHMENT** ........ **250**

**COUNT 67 – BREACH OF EXPRESS WARRANTY** ........ **252**

**COUNT 68 – FRAUDULENT OMISSION** ........ **253**

**J. Louisiana** ........ **255**

**COUNT 69 – VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER. PROTECTION LAW** ........ **255**

**COUNT 70 – UNJUST ENRICHMENT** ........ **258**

**COUNT 71 – BREACH OF EXPRESS WARRANTY – LOUISIANA PRODUCTS LIABILITY ACT** ........ **260**

**COUNT 72 – BREACH OF IMPLIED WARRANTY OF FITNESS FOR ORDINARY USE 261**

**COUNT 73 – FRAUDULENT OMISSION** ........ **264**

**COUNT 74 – REDHIBITION** ........ **266**

**K. Maryland** ........ **268**

**COUNT 75 – NEGLIGENCE** ........ **268**

**COUNT 76 – NEGLIGENT MISREPRESENTATION/OMISSION** ........ **273**

**COUNT 77 – NEGLIGENCE PER SE** ........ **277**

**COUNT 78 – STRICT LIABILITY: DESIGN DEFECT** ........ **278**

**COUNT 79 – STRICT LIABILITY: FAILURE TO WARN** ........ **281**

**COUNT 80 – VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT 283**

**COUNT 81 – UNJUST ENRICHMENT** ........ **286**

**COUNT 82 – BREACH OF EXPRESS WARRANTY** ........ **288**

**COUNT 83 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE** ........ **290**

**COUNT 84 – FRAUDULENT OMISSION** ........ **293**

L. Michigan ........ 296
COUNT 85 – VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT 296
COUNT 86 – UNJUST ENRICHMENT ........ 298
COUNT 87 – BREACH OF EXPRESS WARRANTY ........ 300
COUNT 88 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 301
COUNT 89 – FRAUDULENT OMISSION ........ 305
M. Mississippi ........ 307
COUNT 90 – VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT 307
COUNT 91 – UNJUST ENRICHMENT ........ 309
COUNT 92 – BREACH OF EXPRESS WARRANTY ........ 311
COUNT 93 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 313
COUNT 94 – FRAUDULENT OMISSION ........ 316
N. Missouri ........ 319
COUNT 95 – NEGLIGENCE ........ 319
COUNT 96 – NEGLIGENT MISREPRESENTATION/OMISSION ........ 323
COUNT 97 – NEGLIGENCE PER SE ........ 327
COUNT 98 – STRICT LIABILITY: DESIGN DEFECT ........ 328
COUNT 99 – STRICT LIABILITY: FAILURE TO WARN ........ 331
COUNT 100 – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT 333
COUNT 101 – UNJUST ENRICHMENT ........ 336
COUNT 102 – BREACH OF EXPRESS WARRANTY ........ 338
COUNT 103 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 339
COUNT 104 – FRAUDULENT OMISSION ........ 343
O. Nevada ........ 345
COUNT 105 – NEGLIGENCE ........ 345
COUNT 106 – NEGLIGENT MISREPRESENTATION/OMISSION ........ 350
COUNT 107 – NEGLIGENCE PER SE ........ 353
COUNT 108 – STRICT LIABILITY: DESIGN DEFECT ........ 355
COUNT 109 – STRICT LIABILITY: FAILURE TO WARN ........ 357
COUNT 110 – VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT 359

**COUNT 111 – UNJUST ENRICHMENT ..... 362**

**COUNT 112 – BREACH OF EXPRESS WARRANTY ..... 364**

**COUNT 113 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ..... 366**

**COUNT 114 – FRAUDULENT OMISSION ..... 370**

**P. New Jersey ..... 372**

**COUNT 115 – VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT ..... 372**

**COUNT 116 – UNJUST ENRICHMENT ..... 374**

**COUNT 117 – BREACH OF EXPRESS WARRANTY ..... 376**

**COUNT 118 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ..... 377**

**COUNT 119 – FRAUDULENT OMISSION ..... 381**

**Q. Pennsylvania ..... 383**

**COUNT 120 – MEDICAL MONITORING ..... 383**

**COUNT 121 – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ..... 387**

**COUNT 122 – UNJUST ENRICHMENT ..... 390**

**COUNT 123 – BREACH OF EXPRESS WARRANTY ..... 392**

**COUNT 124 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ..... 393**

**COUNT 125 – FRAUDULENT OMISSION ..... 396**

**R. Tennessee ..... 398**

**COUNT 126 – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT 398**

**COUNT 127 – UNJUST ENRICHMENT ..... 401**

**COUNT 128 – BREACH OF EXPRESS WARRANTY ..... 403**

**COUNT 129 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ..... 404**

**COUNT 130 – FRAUDULENT OMISSION ..... 407**

**S. Texas ..... 409**

**COUNT 131 – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT ..... 409**

**COUNT 132 – UNJUST ENRICHMENT ..... 412**

**COUNT 133 – BREACH OF EXPRESS WARRANTY ..... 414**

**COUNT 134 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ..... 415**

**COUNT 135 – FRAUDULENT OMISSION ........ 418**

**T. Virginia ........ 420**

**COUNT 136 – VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT 420**

**COUNT 137 – UNJUST ENRICHMENT ........ 423**

**COUNT 138 – BREACH OF EXPRESS WARRANTY ........ 425**

**COUNT 139 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 426**

**COUNT 140 – FRAUDULENT OMISSION ........ 429**

**U. West Virginia ........ 431**

**COUNT 141 – VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT ........ 431**

**COUNT 142 – UNJUST ENRICHMENT ........ 434**

**COUNT 143 – BREACH OF EXPRESS WARRANTY ........ 436**

**COUNT 144 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE ........ 437**

**COUNT 145 – FRAUDULENT OMISSION ........ 440**

**PRAYER FOR RELIEF ........ 442**

**DEMAND FOR JURY TRIAL ........ 443**

Plaintiffs Theresa L. Baldwin, Nicole Boyd, Antonia Buchanan, Angela Burton, Temitrius Burton, Natasha M. Casby, Marcia Dalton, Dollie Dillon, Tori Duncan, MMRenee Edwards, Alicia Glenn, Ramika Guillory, Cynthia W. Harris, DaShawn Harris-Robinson, Markeia Hines, Shaquota Jackson, Tiana Lane, Laura Lawes, Sondra Loggins, Cyleisia Longley, Gaudy Martinez, Hattie McDonald, Tameka M. Meadows, Carolyn A. Provo, Bridgette Quinn, Melanie C. Reid, Ariel Richardson, Carliss Smith, Cordelia Smith-Pullen, Tabatha Taggart, Trisha A. Vaughn, Jennifer Wall, Tanica Washington, and Evelyn Williams ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint ("CAC") against Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. (collectively, "L'Oréal"), SoftSheen-Carson LLC ("SoftSheen"), Revlon, Inc., Revlon Consumer Products Corporation, Revlon Group Holdings LLC (collectively, "Revlon"), Godrej SON Holdings, Inc., Strength of Nature, LLC (collectively, "Strength of Nature"), Dabur International Ltd., Dabur International USA Ltd. (collectively, "Dabur"), Namaste Laboratories, L.L.C. ("Namaste"), AFAM Concept, Inc. d/b/a JF Labs, Inc. ("JF Labs"), McBride Research Laboratories, Inc. ("McBride"), Avlon Industries ("Avlon"), Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc., House of Cheatham, LLC (collectively, "House of Cheatham"), and Luster Products, Inc. ("Luster") (collectively, "Defendants"), and in support state the following.

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased Hair Straighteners and/or Relaxers manufactured, sold, and distributed by Defendants. Defendants distribute, market, and sell several over-the-counter hair straightener and/or relaxer products under their brand names, including but not limited to Dark & Lovely (L'Oréal and SoftSheen), Optimum (L'Oréal and SoftSheen), Mizani (L'Oréal), Crème of Nature (Revlon),

Revlon Realistic (Revlon), Motions (Strength of Nature), Just for Me (Strength of Nature), Soft & Beautiful (Strength of Nature), TCB (Strength of Nature), TCB Naturals (Strength of Nature), Profectiv Mega Growth (Strength of Nature), African Pride (Strength of Nature), Dream Kids (Strength of Nature), Dr. Miracle's (Strength of Nature), ORS Olive Oil (Dabur and Namaste), Hawaiian Silky (JF Labs), Design Essentials (McBride), Affirm (Avlon), Africa's Best (House of Cheatham), Pink Conditioning No-Lye Relaxer (Luster), and Smooth Touch No-Lye Relaxer (Luster) (collectively, the "Toxic Hair Relaxer Products").

2. Defendants' Toxic Hair Relaxer Products increase a woman's risk of uterine and ovarian cancer, and more than double the risks of these cancers with frequent use. The Toxic Hair Relaxer Products contain constituent chemicals and active ingredients which include chemicals that disrupt the endocrine system, alter hormonal balance, cause inflammation, alter immune response, and cause other toxic responses that both initiate and promote cancer. The Toxic Hair Relaxer Products, as they are intended to be used, are unsafe, toxic, and carcinogenic. The products are defective, adulterated, misbranded and dangerous to human health, unfit and unsuitable to be advertised, marketed, and sold in the United States and lack a proper warning associated with use. Defendants misrepresented this information and did not disclose it to Plaintiffs, in violation of state and federal law.

3. Plaintiffs' use of these Toxic Hair Relaxer Products was a direct result of Defendants' wrongful marketing practices. Defendants systematically omitted, misrepresented, and continue to omit and misrepresent the significant health impacts of Toxic Hair Relaxer Product use, all while targeting women of color and taking advantage of centuries of racial discrimination and cultural coercion which emphasized—both socially and professionally—the desirability of maintaining straight hair.

4. Rather than disclosing the risks and warnings to consumers, Defendants exploited for profit this deep-rooted connection between hair and identity in how they chose to market their Toxic Hair Relaxer Products. Defendants' advertising and marketing of their Toxic Hair Relaxer Products and failure to take reasonable and necessary steps to protect Plaintiffs and the other Class members from harm, (1) exposed Plaintiffs to brutally toxic products without warning; and (2) amplified institutionalized systems of discrimination that have minimized the cultural identity and heritage of women of African descent. Defendants advertised their Toxic Hair Relaxer Products as, *inter alia*, "organic," "safe," "botanicals," "natural," and "ultra nourishing" in newspapers, magazines, and media predominantly consumed by Black and Brown women. The advertisements, commercials, and packaging for Defendants' Toxic Hair Relaxer Products feature almost exclusively women of color with smooth hair texture.

5. Indeed, Defendants purposely targeted children to increase sales and ensure generations of dedicated consumers—all while having knowledge that the Toxic Hair Relaxer Products they designed, manufactured, advertised, and sold were carcinogenic.

6. Plaintiffs and the other proposed Class members suffered economic damages due to Defendants' misconduct (as set forth below), in that they paid more for the Toxic Hair Relaxer Products than they would have paid had they known about the toxic, unsafe, adulterated nature of the products and the attendant risks that the products presented to their personal health or in that they would not have purchased the Toxic Hair Relaxer Products at all had they been informed of the toxic nature of the products and the risks to their personal health.

7. Medical Monitoring Plaintiffs and the Medical Monitoring Class members (defined below) were further damaged in that they are at a significantly increased risk of developing uterine and ovarian cancer due to their frequent exposure to the Toxic Hair Relaxer Products. As a result,

they have a present need to incur the cost of medical monitoring to facilitate the early detection and treatment of those serious and potentially fatal cancers.

8. Plaintiffs, on their own behalf and on behalf of the other proposed Class members, seek: (1) actual damages for their economic losses from their purchases of Toxic Hair Relaxer Products; (2) the establishment and funding of a medical monitoring program to pay their current and future medical monitoring expenses or, in the alternative, the costs of that medical monitoring; (3) statutory damages; (4) exemplary and/or punitive damages; (5) injunctive and declaratory relief; (6) pre-and post-judgment interest; (7) attorneys' fees and costs; and (8) such other relief that this Court may deem appropriate.

9. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) and/or (C). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and at least one Plaintiff is a citizen of a state different from any Defendant's state of residence, and/or at least one Plaintiff is a citizen of a U.S. state and at least one Defendant is a citizen of a foreign state.

11. This Court has jurisdiction over each Defendant because Defendants are authorized to conduct and do business in Illinois. Defendants have marketed, promoted, distributed, and sold toxic hair relaxer products, including the Toxic Hair Relaxer Products identified below, in Illinois and Defendants have sufficient minimum contacts with this State and/or have sufficiently availed

themselves of the markets in this State through promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## I. THE PARTIES

### A. Plaintiffs

13. Plaintiffs are individuals who purchased and used Defendants' Toxic Hair Relaxer Products, as described below and *infra*.

14. Plaintiff Theresa L. Baldwin (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Illinois and the United States. From approximately 1994 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely and Just For Me manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Strength of Nature. She used these products at least four times per year for at least 29 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

15. Plaintiff Nicole Boyd (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1998 to 2011, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely manufactured, marketed, distributed, and/or sold by L'Oréal and SoftSheen. She used these products at least four times per year for at least 13 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

16. Plaintiff Antonia Buchanan (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1989 to 2017, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Optimum, Crème of Nature, TCB, ORS Olive Oil, African Pride, Motions, and Hawaiian Silky manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Revlon, Dabur, Namaste, Strength of Nature, and JF Labs. She used these products at least four times per year for at least 28 years. Plaintiff was unaware that

Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

17. Plaintiff Angela Burton (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Michigan and the United States. From approximately 1985 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely and Pink manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Luster. She used these products at least four times per year for at least 38 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

18. Plaintiff Temitrius Burton (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately

1990 to 2019, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Just For Me, ORS Olive Oil, African Pride, Crème of Nature, Optimum, Motions, Soft & Beautiful, TCB, Design Essentials, and Mizani manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, and Revlon. She used these products at least four times per year for at least 29 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct, and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

19. Plaintiff Natasha M. Casby (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Louisiana and has also been at relevant times a citizen of the States of Illinois and Texas. From approximately 1982 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, TCB, and Motions manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Strength of Nature. She used these products at least four times per year for at least 38 years. Plaintiff was

unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

20. Plaintiff Marcia Dalton (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Illinois and the United States. From approximately 1979 to 2011, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Just For Me, Dark & Lovely, Olive Oil, Africa's Best, Motions, Optimum, Mizani, and Crème of Nature manufactured, marketed, distributed, and/or sold by Strength of Nature, Revlon, L'Oréal, SoftSheen, Dabur, and Namaste. She used these products at least four times per year for at least 32 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

21. Plaintiff Dollie Dillon (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Mississippi and the United States. From approximately 1990 to 2018, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Crème of Nature, Revlon Professional Realistic, African Pride, Dark & Lovely, Design Essentials, and ORS Olive Oil manufactured, marketed, distributed, and/or sold by Revlon, Dabur, and Namaste. She used these products at least four times per year for at least 28 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

22. Plaintiff Tori Duncan (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Colorado and the United States. From approximately 2000 to 2018, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Motions and Just For Me manufactured, marketed, distributed, and/or sold by Strength of Nature. She used these products for at least 18 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants'

Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

23. Plaintiff MMRenee Edwards (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Tennessee and has also been at relevant times a citizen of the States of Illinois and Mississippi. From approximately 1973 to 2021, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Crème of Nature, African Pride and Revlon Realistic manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, and Revlon. She used these products at least four times per year for at least 48 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

24. Plaintiff Alicia Glenn (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Indiana and the United States. From approximately 1990 to 2010, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Just For Me, and Optimum

manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Strength of Nature. She used these products for at least 20 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

25. Plaintiff Ramika Guillory (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the Commonwealth of Pennsylvania and the United States. From approximately 1985 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Mizani, Affirm, Hawaiian Silky, Design Essentials, Influence, Essations, Revlon, Motions, Optimum, TCB, Dark & Lovely, and Just For Me manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Avlon, JF Labs, McBride, Revlon, and Strength of Nature. She used these products for at least 38 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of

Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

26. Plaintiff Cynthia W. Harris (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Alabama and the United States. From approximately 1977 to 2021, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Hawaiian Silky, Dark & Lovely, Affirm, and ORS Olive Oil manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Avlon, JF Labs, Dabur, and Namaste. She used these products for at least 44 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring Plaintiff would not have purchased or used them. However, Plaintiff would be interested in

purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

27. Plaintiff DaShawn Harris-Robinson (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1990 to 2016, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely and Pink Hair Relaxer manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Luster. She used these products at least four times per year for at least 26 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

28. Plaintiff Markeia Hines (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the Commonwealth of Pennsylvania and the United States. From approximately 1991 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Optimum, Motions, TCB, Dark

& Lovely, Soft & Beautiful, Just For Me, ORS Olive Oil, Hawaiian Silky, Crème of Nature, and African Pride manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, Revlon, and JF Labs. She used these products at least four times per year for at least 32 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

29. Plaintiff Shaquota Jackson (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1999 to 2017, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Just For Me, Dr. Miracle's, ORS Olive Oil, and Dark & Lovely manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Dabur, and Namaste. She used these products at least four times per year for at least 18 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the

products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

30. Plaintiff Tiana Lane (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the Commonwealth of Pennsylvania and has also been at relevant times a citizen of the States of Illinois, Maryland, and Virginia. From approximately 1989 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Crème of Nature, Motions, Optimum, Dark & Lovely, TCB, Just For Me, Hawaiian Silky, Soft & Beautiful, Dr. Miracles, and Luster's Pink manufactured, marketed, distributed, and/or sold by Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster. She used these products at least four times per year for at least 34 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had

Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

31. Plaintiff Laura Lawes (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the Commonwealth of Pennsylvania and the United States. From approximately 1997 to 2021, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Optimum, Dark & Lovely, Soft & Beautiful, Just For Me, Olive Oil, and Crème of Nature manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, and Revlon. She used these products at least four times per year for at least 24 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

32. Plaintiff Sondra Loggins (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of New Jersey and the United States. From approximately 1988 to 2011, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer

Products to straighten and/or relax her hair, including Dark & Lovely, Crème of Nature, African Pride, Revlon Realistic, Herba Rich, and Optimum manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Revlon. She used these products at least four times per year for at least 23 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

33. Plaintiff Cyleisia Longley (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1989 to 2021, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Africa's Best, Dark & Lovely, and Just For Me manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, and House of Cheatham. She used these products at least four times per year for at least 32 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff

would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

34. Plaintiff Gaudy Martinez (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the Commonwealth of Pennsylvania and the United States. From approximately 1980 to 2011, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Affirm, Crème of Nature, African Pride, and Revlon Professional manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Avlon, Revlon, and Strength of Nature. She used these products at least four times per year for at least 31 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

35. Plaintiff Hattie McDonald (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately the 1970s to 1998, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Ultra Sheen, Dark & Lovely, Crème of Nature, and Just For Me manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Revlon, and Strength of Nature. She used these products at least four times per year for at least 19 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were

adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

36. Plaintiff Tameka M. Meadows (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Nevada and has also been at relevant times a citizen of the State of California. From approximately 1986 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Just For Me, and Crème of Nature manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, and Revlon. She used these products at least four times per year for at least 34 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff

would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

37. Plaintiff Carolyn A. Provo (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Alabama and the United States. From approximately 1996 to 2018 or 2019, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Africa's Best manufactured, marketed, distributed, and/or sold by House of Cheatham. She used these products at least four times per year for at least 22 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

38. Plaintiff Bridgette Quinn (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Mississippi and the United States. From approximately 1985 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely and Just For Me manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Strength of Nature. She used these products at least four times per year for at least 35 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that

Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

39. Plaintiff Melanie C. Reid (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Florida and the United States. From approximately 1985 to 2014, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including TCB, Motions, Crème of Nature, African Pride, Design Essentials, and Just For Me manufactured, marketed, distributed, and/or sold by Strength of Nature, Revlon, and McBride. She used these products at least four times per year for at least 29 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

40. Plaintiff Ariel Richardson (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Arizona and has also been at relevant times a citizen of the Commonwealth of Pennsylvania. From

approximately 1999 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Just For Me, ORS Olive Oil, and Dark & Lovely manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Namaste, and Dabur. She used these products at least four times per year for at least 21 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

41. Plaintiff Carliss Smith (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Maryland and has also been at relevant times a citizen of the District of Columbia. From approximately 1983 to 2017, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Crème of Nature, TCB, and ORS Olive Oil manufactured, marketed, distributed, and/or sold by Revlon, Strength of Nature, Namaste, and Dabur. She used these products at least four times per year for at least 34 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe

for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

42. Plaintiff Cordelia Smith-Pullen (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of West Virginia and the United States. From approximately 2000 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely manufactured, marketed, distributed, and/or sold by L'Oréal and SoftSheen. She used these products for at least 20 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

43. Plaintiff Tabatha Taggart (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Illinois and the United States. From approximately 1983 to 2022, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Crème of Nature, African Pride, Fabulaxer, Revlon Professional, Revlon Realistic, Herba Rich, and TCB Hair Relaxer manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Revlon, and Strength of Nature. She used these products at least four times per year for at least 39 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

44. Plaintiff Trisha A. Vaughn (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of California and the United States. From approximately 1986 to 2020, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Motions, Dark & Lovely, Just For Me, Crème of Nature, and Design Essentials manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride. She used these products at least four times per year for at least 34 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic

Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

45. Plaintiff Jennifer Wall (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Missouri and the United States. From approximately 1999 to 2005, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, Revlon Professional, and Herba Rich manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Revlon. She used these products at least four times per year for at least 6 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

46. Plaintiff Tanica Washington (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the United States. Plaintiff is currently a citizen of the State of Arizona and has also been at relevant times a citizen of the State of Iowa. From approximately 1985 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Lusters and ORS Olive Oil among others manufactured, marketed, distributed, and/or sold by Dabur, Namaste, and Luster. She used these products at least four times per year for at least 38 years. Plaintiff was unaware that Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. As a direct and proximate result of Defendants' deception and tortious conduct and Plaintiff's exposure to Defendants' Toxic Hair Relaxer Products, Plaintiff is at an increased risk of developing uterine and ovarian cancer and needs medical monitoring. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins, an increased risk of cancer, and the need for medical monitoring, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

47. Plaintiff Evelyn Williams (for the purpose of this paragraph, "Plaintiff") is and at all relevant times was a citizen of the State of Illinois and the United States. From approximately 1980 to 2023, Plaintiff paid money for and used one or more of Defendants' Toxic Hair Relaxer Products to straighten and/or relax her hair, including Dark & Lovely, African Pride, and Optimum manufactured, marketed, distributed, and/or sold by L'Oréal, SoftSheen, and Strength of Nature. She used these products at least four times per year for at least 43 years. Plaintiff was unaware that

Defendants' Toxic Hair Relaxer Products were adulterated and unsafe for human use. She purchased and used Defendants' Toxic Hair Relaxer Products with the understanding that Defendants' product labeling was accurate and that the products were unadulterated, and would not increase her risk of cancer. Had Plaintiff known that Defendants' Toxic Hair Relaxer Products were adulterated, would cause exposure to dangerous toxins and an increased risk of cancer, Plaintiff would not have purchased or used them. However, Plaintiff would be interested in purchasing similar hair care products in the future provided that they are not adulterated, and do not increase the risk of cancer.

**B. Defendants**

48. Defendant L'Oréal USA, Inc. is a Delaware corporation with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

49. Defendant L'Oréal USA Products, Inc. is a Delaware corporation with its principal place of business and headquarters located at 10 Hudson Yards 347, 10th Avenue New York, New York 10001.

50. Defendant SoftSheen-Carson, LLC is a limited liability company organized in the State of New York with its principal place of business and headquarters located at 80 State Street, Albany, New York 12207. Plaintiffs allege that SoftSheen-Carson, LLC's sole member and interested party is L'Oréal S.A., which is a French corporation having its headquarters and principal place of business in France.

51. Defendant Revlon, Inc. is a Delaware corporation, with its principal place of business and headquarters located at One New York Plaza in New York, New York 10004.

52. Defendant Revlon Consumer Products Corporation is a Delaware corporation with its principal place of business at One New York Plaza in New York, New York 10004.

53. Defendants Revlon Consumer Products Corporation and Revlon, Inc. were each a debtor in chapter 11 cases currently captioned In re: RML, LLC, filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 22-10784 (DSJ). On April 3, 2023, the Bankruptcy Court entered an order confirming a Chapter 11 plan of reorganization (as amended, the "Plan") with respect to such entities and certain of their affiliated debtors (collectively, the "Debtors"). On May 2, 2023, the Effective Date (as defined in the Plan) occurred. Under the Plan, generally, plaintiffs are permitted to commence actions against the Debtors, with recovery limited to applicable insurance.

54. Revlon Group Holdings LLC is a limited liability company organized in Delaware with its principal place of business in Wilmington, Delaware. Defendant Revlon Group Holdings, LLC is a newly formed company pursuant to the Plan. For the avoidance of doubt, plaintiffs seek recovery against Revlon Group Holdings LLC solely to the extent of its own liability, not to seek recovery on account of claims against the Debtors.

55. As used herein, "Revlon" shall refer to each of Revlon Consumer Products Corporation, Revlon, Inc. and Revlon Group Holdings LLC, unless otherwise noted. Plaintiffs reserve the right to amend this complaint to name the other Debtors as Defendants, as necessary, solely for purposes of pursuing recovery against applicable insurance. Plaintiffs further reserve the right to amend this complaint to name as Defendants additional entities formed pursuant to the Plan.

56. Defendant Strength of Nature, LLC is a limited liability company organized in Georgia, with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405. Plaintiffs allege that Strength of Nature, LLC's sole member and interested party is Defendant Godrej SON Holdings, Inc.

57. Defendant Godrej SON Holdings, Inc. is a Georgia corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

58. Defendant Dabur International Limited is a foreign entity incorporated in the Isle of Man with its principal place of business and headquarters located at 5 Independence Way, Princeton, New Jersey 08540.

59. Defendant Dabur International USA Ltd. Is a wholly owned subsidiary of Dabur India, Ltd. And Dabur India Ltd.'s sole United States distributor, with its principal place of business and headquarters at 310 South Racine Avenue, Chicago, Illinois 60607.

60. Defendant Namaste Laboratories, LLC is a limited liability company organized in Illinois with its principal place of business located at 310 South Racine Avenue, Chicago, Illinois 60607. Plaintiffs allege that Namaste Laboratories, LLC's sole member and interested party is Dermoviva Skin Essentials, Inc., a Delaware corporation having its headquarters and principal place of business at 310 South Racine Avenue, Chicago, Illinois 60607.

61. Defendant AFAM Concept, Inc., d/b/a JF Labs Inc., is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, Illinois 60629-5837.

62. Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Boulevard, Roswell, Georgia 30075. Plaintiffs allege that Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Georgia.

63. Defendant House of Cheatham, LLC, is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain,

Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia 30083.

64. Defendant McBride Research Laboratories, Inc. is a Georgia corporation with its principal place of business and headquarters located at 2272 Park Central Boulevard in Decatur, Georgia 30035-3824.

65. Defendant Luster Products, Inc. is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd St., Chicago, Illinois 60609.

## II. FACTS COMMON TO ALL COUNTS

### A. Market for Hair Relaxer Products

66. Black people make up about 13 percent of the U.S. population, but by one estimate, Black spending accounts for as much as 22 percent of the $42 billion-a-year personal care products market, suggesting that Black people buy and use more of such products—including those with potentially harmful ingredients—than Americans as a whole.[1]

67. In an analysis of ingredients in 1,177 beauty and personal care products marketed to Black and Brown women, about one in twelve was ranked highly hazardous on the scoring system of EWG's Skin Deep® Cosmetics Database, an online resource for finding less-hazardous alternatives to personal care products. The worst-scoring products marketed to Black and Brown women were hair relaxers (along with hair colors and bleaching products). Each of these categories had an average product score indicating a high potential hazard.

---

[1] Thandisizwe Chimurenga, *How Toxic is Black Hair Care?*, New America Media, Feb. 2, 2012, americamedia.org/2012/02/skin-deep-in-more-ways-than-one.php; *Personal Care Products Manufacturing Industry Profile*, Dun & Bradstreet First Research, August 2016, www.firstresearch.com/Industry-Research/Personal-Care-Products-Manufacturing.html (This report uses "Black" to describe not only people who identify as African-American, but Black people in the U.S. who come from the Caribbean or other areas. "African-American" is used only when a cited source specifies that term).

68. In the U.S. alone, Black and Brown consumers spend over $1 trillion each year, with a significant amount of that spending toward hair care products.

69. In 2020, the global black hair care market was estimated at $2.5 billion, with the hair relaxer market alone estimated at $718 million in 2021, with the expectation of growth to $854 million annually by 2028.

70. The Defendants, aware of the unique history of their target consumers, developed and have long deployed a marketing framework based on misrepresentations that exploit their consumers' social and economic need to maintain straight hair.

**1. History of Afro-Textured Hair and Hair Relaxers—The Framework for Defendants' Wrongful Marketing Practices**

71. Dating back to 1619, Black and Brown women have been degraded based upon the texture of their hair and compelled to conform to the Eurocentric beauty standard that furthers the notion that "straight" hair is an indicator of social status, moral virtue, and professional competence. By contrast, hair texture of African heritage ("afro-textured hair") has been characterized as unattractive, unprofessional, and inferior.[2]

72. In its natural state, afro-textured hair is characterized by coily, springing, zigzag, and s-curve curl patterns, as well as its density, fullness, texture, and feel.[3]

73. Certain African hairstyles can be traced back thousands of years, when they often indicated tribe membership and stature,[4] slave masters commonly forced enslaved Black and Brown people to cut their hair. This was a way to "break their spirit and make slaves easier to control."[5] What was once a symbol of pride and symbolism became a tool for subordination and

[2] Shelby Smith, The Evolution of Black Hair in America, Imani Hair Care (Aug. 6, 2020), https://imanihaircare.com/blogs/news/the-evolution-of-black-hair-in-america.
[3] Patrick Obukowcho, *Hair Relaxers: Science, Design, and Application*, 26, 14 (2018).
[4] *History of Braids: More Than Just a Hairstyle*, Genesis Career College, https://www.genesiscareer.edu/history-of-braids-more-than-just-a-hairstyle/.
[5] Brenda A. Randle, *I Am Not My Hair*, Race, Gender and Class, Volume 22, Number 1-2, 114 – 121 (2015).

degradation. Hair cutting was also a common form of punishment during slavery and during Jim Crow.

74. The very nature of slavery involved working long hours in dire conditions. "Hair that was once a source of pride and expression of identity was often tucked away beneath cloth to cover rough, tangled tresses and shield them from hours spent toiling under the sun."[6] The hair that was once an important spiritual and cultural symbol became framed and viewed as tangled, matted, and unseemly.

75. Because afro-textured hair reflected African heritage rather than European ancestry, afro-textured hair was considered a symbol of low social status.[7]

76. In 1786, the Governor of Louisiana colony, Don Esteban Miro, passed the "Tignon Law" requiring women of African descent to wear a tignon (scarf) over their hair as a way of signifying they were members of the slave class, *even if they were free*. This law sent a direct signal to Black and Brown people that their hair held a symbol of inequality and was a sign of poverty regardless of their actual social status.

77. Texturism—the idea that "good hair" is equated with a straighter hair texture—was cemented into American culture during slavery. "Eurocentric beauty standards dictated that coily hair and dark skin were unattractive and inferior"; "lighter skinned and straighter haired slaves were favored and selected for more desirable positions in the house" as opposed to the fields.[8] Thus, "the texture of an enslaved person's hair could determine their value and working conditions, which in turn might impact their overall health, comfort and chances for freedom[.]"[9] Early American culture impressed on Black and Brown men and women that the straighter and less kinky

---

[7] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

their hair was, the better a life they could have. This stigma fueled the desire for tools and products that could straighten Black and Brown hair texture.

78. In slavery and post-slavery America, Black and Brown women found a need to morph their hairstyles "from the elaborate and symbolic designs of Africa into an imitation of White styles adapted to Black and Brown kinks and curls."[10]

79. In an effort to obtain a better life, many enslaved people, and later their progeny, would go to "dangerous lengths to straighten their hair."[11]

80. Afro-textured hair can be straightened with the use of hair tools and non-chemical hair products. Prior to the invention of the chemical relaxer in the 1900s, individuals would "press" afro-textured hair with metal hair tools such as the "hot comb." Pressing combs or hot combs are metal hair tools that are first heated in a stove or ceramic heater, then pressed into hair strands to temporarily straighten them.[12]

**2. <u>The Invention of the Chemical Relaxer</u>**

81. Black inventor Garrett Augustus Morgan discovered and created a system that would permanently straighten afro-textured hair, eliminating the issue of "shrinkage," where the curl pattern results in hair appearing to be shorter than it actually is.

82. In addition to being an inventor, Morgan was a tailor. In the early 1900s, Morgan was repairing his sewing machines and creating a way to polish the needles to stitch fabrics more smoothly.[13] He applied a chemical solution to the needles and wiped the solution off with a rag

---

[10] Brenda A. Randle, *I Am Not My Hair*, Race, Gender and Class, Volume 22, Number 1-2, 114 – 121 (2015).

[11] Nikki Fox, *6 Things Everyone Should Know About Black Hair History*, Odele, Feb. 22, 2021. https://odelebeauty.com/blogs/the-rinse/black-hair-history-facts.

[12] Jaclyn Peterson, *The Price of Beauty*, CTI Charlotte Teachers Institute Curriculum (2021).

[13] Patrick Obukowcho, Hair Relaxers: Science, Design, and Application 27 (2018).

and later noticed that the "curly" fibers in the rag were straightened after exposure to the chemical.[14]

83. Morgan turned his formula into a gel-hair product, creating the G.A. Morgan Hair Refining Cream that was marketed in 1913.







[14] Mary N. Oluonye, Garrett Augustus Morgan: Businessman, Inventor, Good Citizen 28 (2008).

84. Morgan's invention paved the way for the alkaline relaxer and later development of additional chemical-based permanent hair relaxing products in the Black and Brown hair care market, also known as hair relaxers.[15]

85. Over the next 40-plus years, these products dominated the market for relaxing afro-textured hair until the emergence of new technology involving lye-based formulas.

### 3. Chemical Relaxer Use: From Adolescence into Adulthood

86. Hair relaxers are applied to the base of the hair shaft and left in place for a cooking interval, during which the relaxer alters the hair's texture by purposefully damaging the hair's natural protein structure. The effect of this protein damage is to straighten and smooth the hair. After a period of weeks or months, depending on the hair's natural growth rate, the treated portion of the hair grows away from the scalp as new growth sprouts from the roots. Maintaining the relaxed hairstyle requires on-going application of hair relaxer to the new growth—a process colloquially referred to in the community as "re-touches" —resulting in users relaxing their new growth every four to eight weeks on average.

87. Hair relaxing is highly prevalent among Black and Brown women. In some studies, up to 90% of Black women have used hair relaxers and straighteners, which is more commonplace for these women than women of any other race.

88. The reasons for Black women's use and dependence upon hair straightening products are multi-faceted.[16] There are superficial reasons such as maintenance and personal choice. Yet, in addition to aesthetic aspirations, based upon the historical framework set forth above, maintaining straight hair was and is a means of integrating. Failing to maintain an

---

[15] Patrick Obukowcho, Hair Relaxers: Science, Design, and Application 27 (2018).

[16] Chanel Donaldson, *Hair Alteration Practices Amongst Black Women and the Assumption of Self-Hatred*, Applied Psychology Opus, https://wp.nyu.edu/steinhardt-appsych_opus/hair-alteration-practices-amongst-black-women-and-the-assumption-of-self-hatred/

appearance with straightened hair can impact the lives of Black women in educational, social, and professional spheres.

89. For example, Black and Brown girls and women are often victims of hair discrimination. According to the Dove CROWN[17] Research Study for Girls (2021)[18] conducted by JOY Collective, two-thirds (66%) of Black and Brown girls in White-majority schools reported in a survey that they have experienced hair discrimination. Nearly half (45%) of Black and Brown girls in all school environments reported hair discrimination, and 47% of the Black mothers surveyed reported experiencing hair discrimination.

90. Moreover, hair discrimination often starts at an early age for young Black girls:

a. 100% of Black elementary school girls in majority-White schools who report experiencing hair discrimination state they experience the discrimination by the age of 10.[19]

b. 86% of Black teens who experience discrimination state they have experienced discrimination based on their hair by the age of 12.[20]

91. In adulthood, hair discrimination impacts Black women's economic security. In the professional world, Black women with natural and unstraightened hair are "often deemed unkempt and unemployable."[21] Black women are one-and-a-half times more likely to be sent home from

[17] The CROWN Act of 2021 was intended to address discrimination against protective hairstyles worn predominantly by women of color. H.R. 2116, 117th Cong (enacted); S. 888, 117th Cong. The CROWN Act was created in 2019 by Dove and the CROWN Coalition, in partnership with then California State Senator Holly J. Mitchell, to ensure protection against discrimination based on race-based hairstyles. The CROWN Act extended statutory protection to hair texture and protective styles such as braids, locks, twists, and knots in the workplace and public schools. https://www.thecrownact.com/. While the bill did not pass the Senate in 2022, eighteen states have signed a version of the bill into state law.

[18] JOY Collective, *Dove CROWN Research Study for Girls* (2021), https://static1.squarespace.com/static/5edc69fd622c36173f56651f/t/623369f7477914438ee18c9b/1647536634602/2021_DOVE_CROWN_girls_study.pdf

[19] *Id.*

[20] *Id.*

[21] Chanel Donaldson, *Hair Alteration Practices Amongst Black Women and the Assumption of Self-Hatred*, Applied Psychology Opus, https://wp.nyu.edu/steinhardt-appsych_opus/hair-alteration-practices-amongst-black-women-and-the-assumption-of-self-hatred/

the workplace because of their hair.[22] Black women are 89% more likely than White women to agree with the statement, "I have to change my hair from its natural state to fit in at the office."[23] Many Black women succumb to these professional pressures and are compelled to use hair relaxers to both straighten and maintain their straight hair with routine re-touches.

92. The Defendants were acutely aware of, and marketed to, the stereotypes and history concerning natural Black and Brown hair.

**B. Defendants' Efforts to Market Their Hair Relaxer Products[24]**

93. In 1971, Dark and Lovely manufactured the first lye relaxer. The formula consisted of sodium hydroxide, water, petroleum jelly, mineral oils, and emulsifiers.[25]

94. In the 1970s, lye relaxer users and manufacturers noticed that the lye formula stripped proteins from the hair strand, resulting in the hair thinning and breaking.[26]As a result, Johnson and Johnson marketed the first "gentle" hair relaxer, Gentle Treatment, in 1981, which used chemicals such as potassium hydroxide and lithium hydroxide.[27]

[22] CROWN study, *supra* note 23.
[23] *Id.*
[24] The following discussion of various Defendant manufacturers and/or products is not an exhaustive list of all hair relaxer manufacturers and/or products that have been marketed to consumers, nor is it an exhaustive list of all manufacturers and/or products currently on the market. Rather, it is a representative sample of how Defendant manufacturers advertised their products throughout the years.
[25] Cicely A. Richard, *This History of Hair Relaxers*, September 29, 2017 https://classroom.synonym.com/the-history-of-hair-relaxers-12078983.html.
[26] *Id.*
[27] *Id.*




95. For decades and to present, Defendants designed, manufactured, and marketed their Toxic Hair Relaxer Products to Black and Brown customers across the United States and the world, relying on the same historical Eurocentric standards of beauty. Defendants' marketing scheme heavily leverages branding and slogans that reinforce straight hair as the standard of beauty and professionalism.[28] The Defendants marketed their Toxic Hair Relaxer Products without ever disclosing the health risks of these products or their components contained in these products or taking other reasonable steps to ensure their products would not harm consumers.

[28] *Id*.







96. For example, in the first ad above, L'Oréal touts "how beautiful Black hair *can be*" (emphasis added), implying that in its natural state Black hair is *not* as beautiful as it *could be* if straightened.

97. Defendants have advertised their Toxic Hair Relaxer Products to Black and Brown customers as a way to exploit these anti-Black standards of beauty as early as the 1970s. For example:

a. Johnson Products Company (later acquired by Defendant L'Oréal) advertised its Ultra Sheen Toxic Hair Relaxer Products as early as the 1960s:




b. Defendants L'Oréal and SoftSheen have produced advertisements for their Toxic Hair Relaxer Products as early as the 1970s:


Dark and Lovely
NEW
Fat Protein
RICHER, FULLER,
STRAIGHTER HAIR
I am dark and lovely.


Is your relaxer robbing your hair?
It's a nice feeling when people ask, "Who did your hair?" Even nicer when the answer is, "I did it myself." But too often, "I did it myself" means disappointment. That's because relaxers can rob your hair of body, strength, manageability, shine.
Look of Radiance by L'Oreal understands how this happens. So we developed a unique conditioning lotion to give relaxed hair the help it needs. The result—so much fullness, bounce and manageability, people will never believe you did it yourself.
Look of Radiance. A complete line of hair care products designed especially for the Black woman by L'Oreal. It's the best. And it shows.
LOOK OF RADIANCE BY L'ORÉAL
Hair so soft and radiant they'll never believe you did it yourself.
L'ORÉAL
Look of Radiance
PERMANENT CREME RELAXER

c. Defendant Revlon has advertised its Toxic Hair Relaxer Products for decades:






d. Defendant Strength of Nature has also advertised many of its hair relaxer brands as early as the 1970s:


CAPTURE HIS ATTENTION
with
TCB® NO-LYE HAIR RELAXER KIT
Capturing his attention is easy when TCB® does your hair at home for you. With the TCB NO-LYE HAIR RELAXER KIT, you get the look he loves, everytime—with less hassle, work and worry.
And no mess or waste.
Just choose the ready-to-use no-mix formula that's right for your hair. It's terrific on virgin hair or new growth, as a dynamite touch-up.
Captivate him—with the most radiant, smooth, soft, healthy-looking hair possible—by letting the TCB NO-LYE HAIR RELAXER KIT do it all. You can't miss!
TCB. ALL YOU NEED FOR BEAUTIFUL LOOKING HAIR.
WARNING: Follow directions carefully to avoid skin and scalp irritation, hair breakage and eye injury.
tcb
jazz in dakar '85
EXCLUSIVE SPONSOR
A TCB AND JACKIE ROBINSON FOUNDATION PRESENTATION
PROVIDING NATIONAL SCHOLARSHIPS FOR MINORITY YOUTH
©1985 Professional Division/Alberto-Culver Company


Hair That Moves
TCB®
No Lye Relaxer
The only no-mix relaxer kit with the Reconstructor step for beautiful body and shine.
So your hair is so soft and smooth, it moves. Use TCB No Lye Relaxer and other TCB products. TCB... we make you look good.


Only Your Stylist Can Relax Your Hair With...
Motions®
MOTIONS AT HOME MAINTENANCE PRODUCTS
MAY BE PURCHASED FROM SALONS OR BEAUTY SUPPLY STORES.
FOR THE NAME OF A HAIRSTYLIST IN YOUR AREA WHO USES MOTIONS PRODUCTS CALL 1(800) 99SHEEN 11 AM TO 3 PM CENTRAL STANDARD TIME







e. Defendant Luster has marketed and advertised its products since the 1950s:







f. Defendant Avlon has been marketing its Toxic Hair Relaxer Products since as early as the 1980s:




98. The Defendants all marketed their Toxic Hair Relaxer Products without ever disclosing known health risks of the toxic design and chemicals contained in these products.

99. In addition to Defendants' wrongful omissions above, Defendants also made several affirmative misrepresentations and additional significant material omissions in conjunction with the sale of their products:

a. *Marketing Toxic Products to Children*: Beginning in 1990, Strength of Nature developed and began marketing "Just For Me," the first hair relaxer product targeted towards young Black and Brown girls. Just for Me entered the market with a catchy commercial.[29]

[29] https://youtu.be/2A4dY4znFsg.

On the product packaging, Strength of Nature lauded the product as safer by claiming that it was a no-lye formula designed to be "gentle" for children's sensitive scalps, while Defendants knew that Just for Me contained more chemicals than, and was equally or more toxic than, some adult brands of hair relaxers.




b. Defendants misrepresented that "no lye" relaxers or "gentle treatment" relaxers were milder and/or safer than alternative relaxers. This was false. Hair relaxer products marketed as using "gentle treatment" or similar terminology are not any safer than the other hair relaxer products on the market.

c. Defendant Strength of Nature's products, such as Soft & Beautiful, are intentionally labeled as "Botanicals" and with "Natural" ingredients that are "Ultra Nourishing," including but not limited to using "Natural Plant Oils and Butters." For example:




These representations are intended to suggest to consumers that these "Natural" hair relaxer products are safer or less toxic than alternatives, but any such suggestion is false.

d. Defendant Strength of Nature's Beautiful Textures hair relaxer product is marketed as being able to "go from curly to straight and back again without using [h]arsh [c]hemicals." Defendant Strength of Nature affirmatively represented that there were no "harsh chemicals" in its Beautiful Textures hair relaxer product.



The claim of no "harsh chemicals" was false.

e. On the packaging of their Toxic Hair Relaxer Products, Defendant Strength of Nature claims the product is "specifically created with Silk Extracts, Coconut oil and Shea butter" and that it will make hair "more vibrant, healthy-looking and silky than before the relaxing process." The packaging also boasts of offering "85% less breakage and 80% more shine after just one use."




These statements falsely imply, and lead a user to believe, that Defendant Strength of Nature's product is both safe and "natural" when it is neither safe nor natural.

f. Defendants Namaste and Dabur's Toxic Hair Relaxer Products are marketed as "Olive Oil" products to imply that they use natural ingredients and lack toxic chemicals, which is false. These Defendants' products are also advertised as having "Built in Protection," implying they can be used safely. This is also false.

g. Defendants Namaste and Dabur's website states that their Toxic Hair Relaxer Products use "Rich Olive and Avocado Oils," which they claim "moisturize and

condition" hair. The websites also claim that the products include "Aloe Vera to help **protect the skin and scalp**."




While representing that aloe vera helps "protect the skin and scalp" of children, Defendants omitted that the other chemicals in the products significantly increase the risk of ovarian and uterine cancer.

h. Defendants Namaste and Dabur's Toxic Hair Relaxer Products claim that they "use[] the latest technology to **safely** elongate tight coils." That is false—these products do not safely relax hair.

i. Defendant L'Oréal's and SoftSheen's Dark & Lovely brand Toxic Hair Relaxer Products are intentionally labeled as providing a "healthy" gloss and containing "nourishing" shea butter with jojoba and avocado oils. The terms "healthy" and "nourishing" suggest that Toxic Hair Relaxer Products are safe and even beneficial for the body when they are neither safe nor beneficial.




j. Defendant L'Oréal's Dark & Lovely products are also intentionally labeled as being "Triple Nourished" and as products that "help[] preserve signs of healthy hair" with ingredients including but not limited to "Jojoba & Avocado Oil" and "Shea Butter."




The terms "healthy" and "nourishing" suggest that these Toxic Hair Relaxer Products are safe and even beneficial for the body when they are neither safe nor beneficial.

k. Defendant L'Oréal and SoftSheen's Beautiful Beginnings hair relaxer product line, which is targeted to young Black girls, states that it "moisturizes, nourishes, and prevents breakage…**without hurting your scalp**."









These representations suggest that their Toxic Hair Relaxer Products are safe and even beneficial for children's bodies, when they are neither safe nor beneficial.

l. Defendant Strength of Nature intentionally markets its Toxic Hair Relaxer Products for kids as containing a "natural hair milk," and including ingredients such as "coconut milk, shea butter, vitamin e, and sunflower oil." The Toxic Hair Relaxer Products also boast that they contain "No-Lye Relaxer" around an image of a green leaf.



Emphasizing these natural ingredients, and including the green leaf surrounded by ingredients the products do not contain, implies that these products primarily use natural ingredients, lack toxic chemicals, and are safe, when all of these representations are false.

m. Defendant Strength of Nature's Toxic Hair Relaxer Products sold under the Dr. Miracle's brand are advertised as "Strong + Healthy." This false representation suggests that the products are safe—and even beneficial—for the body when they are neither safe nor beneficial.

n. Defendant House of Cheatham markets its Africa's Best Toxic Hair Relaxer Products as containing "nourishing African botanicals and Herbal Extracts."




These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when all of these representations are false.

o. Defendant McBride markets its Design Essentials Toxic Hair Relaxer Products as leaving hair "healthy" and promotes its products as using natural ingredients such as milk, honey, nectar, olive oil, and shea butter. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when all of these representations are false.

p. Defendant Sally Beauty Holdings, Inc. d/b/a Silk Elements markets its Silk Elements Toxic Hair Relaxer Products as using natural ingredients such as olive oil and shea butter.

These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when all of these representations are false.

q. Defendant Luster markets its Pink Conditioning No-Lye Relaxer and Smooth Touch No-Lye Relaxer products as using "nourishing ingredients" including shea butter, argan oil, Vitamin E, and olive oil which they claim provide "added protection" for the user. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when all of these representations are false.

100. Defendants' marketing efforts all have a common theme. They are filled with representations and insinuations that their hair relaxing products are safe and beneficial to the user. The use of words such as organic, natural, nourishing, added protection, and/or healthy in Defendants' marketing can lead consumers to believe that these Toxic Hair Relaxer Products are safe when, in fact, they are not.

101. Defendants made these affirmative statements and/or omissions while they knew, or should have known, about the true danger that their Toxic Hair Relaxer Products posed when used by any consumer, including all Plaintiffs.

102. Although they had, or should have had, knowledge about the dangers posed by the Toxic Hair Relaxer Products, Defendants continued their marketing efforts without ever attempting to correct the misconceptions they were creating.

### C. Defendants' Toxic Hair Relaxer Products Cause Human Uterine and Ovarian Cancers

103. Defendants knew or should have known of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the Toxic Hair Relaxer Products, based on scientific studies, research, and various government standards and regulations.

104. While Defendants have not published any studies in the scientific literature demonstrating that their products can be used safely, several independent researchers have published large epidemiological studies demonstrating that these products cause increased risks of uterine and ovarian cancers.

**1. Uterine Cancer**

105. Though death rates from other cancers in women have declined in recent years, death rates for uterine cancer have increased by more than 100% in the last 20 years.[30]

106. Uterine cancer is the fourth most common cancer for women in the United States, and the most commonly diagnosed gynecological cancer.[31] An estimated 66,570 new cases of uterine cancer are diagnosed each year, and around 12,940 women will die every year from the condition.[32]

107. Uterine cancer has a hormonally driven etiology, and an imbalance of estrogen and progesterone can lead to the development of uterine cancers.[33]

108. In October 2022, the National Institutes of Health released a study of approximately 34,000 women, aged 35-74, that was conducted over approximately 11 years.[34]

109. The study revealed significantly higher rates of uterine cancer in women who had used hair relaxers.

[30] Linda Duska, et al., *Treatment of Older Women With Endometrial Cancer: Improving Outcomes With Personalized Care*, American Society Clinical Oncology Educational Book, 35:164-74, 2016, https://pubmed.ncbi.nlm.nih.gov/27249697/.

[31] National Foundation for Cancer Research. https://www.nfcr.org/cancer-types/uterine-cancer/?gad=1&gclid=Cj0KCQjwsIejBhDOARIsANYqkD31b2Q0YCsXxx2UoDUEG2PYN4qKdyO36skCGpuZYh4dFf_Y--c5KJMaAleuEALw_wcB.

[32] *Id.*

[33] https://www.cancer.org/cancer/types/endometrial-cancer/causes-risks-prevention/risk-factors.html.

[34] Che-Jung Chang, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.

110. Specifically, the study found that an estimated 1.64% of women who never used chemical hair relaxers developed uterine cancer by the age of 70. However, frequent users of hair relaxers were 2.78 times more likely to develop uterine cancer than women who never used hair relaxers.[35]

111. The study found that women who had ever used hair relaxers had an approximately doubled risk of developing uterine cancers as compared to women who did not use hair relaxers.

**2. <u>Ovarian Cancer</u>**

112. In a 2021 study funded by NIH and the National Institute on Minority Health Sciences, frequent use of hair relaxers was strongly associated with ovarian cancer.[36]

113. In fact, the study revealed that those who frequently (four or more times per year) used hair relaxers were more than twice as likely to develop ovarian cancer.[37]

114. It is estimated that 19,880 women in the United States will be diagnosed with ovarian cancer in 2022, with an estimated 12,810 of those diagnoses resulting in death.[38]

115. Like uterine cancer, ovarian cancer is also believed to have a hormonally driven etiology, meaning that the insertion of hormonal disrupting compounds and the subsequent disruption of a woman's hormonal balance could lead to ovarian cancer.[39]

---

[35] *Id.*
[36] White, AJ, Sandler DP, Gaston SA, Jackson CL, O'Brien KM, *Use of hair products in relation to ovarian cancer risk*. Carcinogenesis. 2021 Oct 5; 42(9):1189-1195. doi: 10.1093/carcin/bgab056. PMID: 34173819; PMCID: PMC8561257, https://pubmed.ncbi.nlm.nih.gov/34173819.
[37] *Id.*
[38] Pinar Erkekoglu & Belma Kocer-Gumusel, *Environmental Effects of Endocrine-Disrupting Chemicals: A Special Focus on Phthalates and Bisphenol A*, Environmental Health Risk, June 16, 2016, https://www.intechopen.com/chapters/50234.
[39] White, Alexandra J., et al., Use of Hair Products in Relation to Ovarian Cancer Risk, Carcinogenesis Vol. 42, No. 9, 1189-1195, 1189 (2021).

### 3. Biological Plausibility

116. The strong risks of cancers demonstrated by the Chang and White studies are biologically plausible, as Defendants' Toxic Hair Relaxer Products have contained ingredients that are themselves toxic compounds, or lead to the formation and release of toxic compounds.

117. Such toxic compounds include, but are not limited to, Phthalates, parabens, cyclosiloxanes, metals, lye and formaldehyde.[40] These chemicals can alter the body's delicate hormonal balance, causing spikes or drops in levels of estrogens and progesterones (as well as other hormones), and cause other pro-cancerous phenomena in the tumor microenvironment.

118. The endocrine system is indispensable for life and influences nearly every cell, organ, and process within the body.[41] The endocrine system regulates all biological processes in the body from conception through adulthood, including the development of the brain and nervous system, the growth and function of the reproductive system, metabolism, and blood sugar levels.[42]

119. The precise functioning of the endocrine system is vital to maintaining hormonal homeostasis, the body's natural hormonal production and degradation. A slight variation in hormone levels can lead to significant adverse health effects, including reproductive impairment, infertility, cancer, cognitive deficits, immune disorders, and metabolic syndrome.[43]

120. Endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system.

---

[40] *Id.*

[41] *Endocrine System: The Endocrine System Includes The Thyroid, Adrenals, and the Pituitary Gland*, Science Direct, https://www.sciencedirect.com/topics/psychology/endocrine-system

[42] *Endocrine Disruption*, United States Environmental Protection Agency, Mar., 7, 2022, https://www.epa.gov/endocrine-disruption/what-endocrine-system

[43] *Id.*; Michele La Merrill, et al., *Consensus on the Key Characteristics of Endocrine-Disrupting Chemicals as a Basis for Hazard Identification*, Nature Reviews Endocrinol, Nov., 12, 2019, https://www.nature.com/articles/s41574-019-0273-8

121. EDCs can block hormone stimulus by inducing epigenetic changes (modifications to DNA that regulate whether genes are turned on or off), or by altering the structure of target cells' receptors.[44]

122. Natural and synthetic EDCs are present in some of Defendants' Toxic Hair Relaxer Products under the guise of "fragrance" and "perfumes." They enter the body when these products are applied to the hair and scalp.

123. Phthalates are EDCs that are known to interfere with natural hormone production and degradation, and are harmful to human health.[45]

124. Phthalates were developed in the last century to make plastics more durable. These colorless, odorless, oily liquids are also referred to as "plasticizers," based on their most common uses.

125. Chronic exposure to phthalates adversely influences the endocrine system and functioning of multiple organs. Several countries have established restrictions and regulations on some types of phthalates. [46]

126. In addition to endocrine disruption, hair relaxer products increase risks of cancer through a number of additional mechanisms. Among other mechanisms, hair relaxers, and the combined effect of the various ingredients, induce epigenetic alterations, oxidative stress, chronic inflammation, and immunosuppression. They also alter cell proliferation, cell death, and nutrient supply, modulate receptor-mediated effects, cause insensitivity to antigrowth signals, alter cell

[44] Luis Daniel Martínez-Razo, et al., *The impact of Di-(2-ethylhexyl) Phthalate and Mono(2-ethylhexyl) Phthalate in placental development, function, and pathophysiology*, Environment International, January 2021, https://www.sciencedirect.com/science/article/pii/S0160412020321838?via%3Dihub

[45] Yufei Wang & Haifeng Qian, *Phthalates and Their Impacts on Human Health*, Healthcare (Basel) 9, 603, May 9, 2021, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8157593/

[46] *Id*.

proliferation, act as electrophiles, dysregulate metabolism, induce angiogenesis, induce proliferative signaling, and modify immune surveillance.

**D. Regulatory Framework**

127. The law does not require cosmetic products or ingredients, other than color additives, to have FDA approval before they go to market. But there are laws and regulations that apply to cosmetics placed into the market. The two most important laws pertaining to cosmetics marketed in the United States are the Federal Food Drug and Cosmetic Act[47] ("FD&C Act") and the Fair Packaging and Labeling Act[48] ("FPLA").

128. The FD&C Act expressly prohibits the marketing of "adulterated" or "misbranded" cosmetics in interstate commerce.[49]

129. Adulteration refers to a violation involving product composition whether it results from ingredients, contaminants, processing, packaging, shipping, or handling.[50]

130. Under the FD&C Act, a cosmetic is adulterated if, *inter alia*: (1) it bears or contains any poisonous or deleterious substance causing injury to the product user, or (2) if its container is composed in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health.[51]

131. Misbranding refers to violations involving improperly labeled or deceptively packaged products.[52]

132. Under the FD&C Act, a cosmetic is misbranded if, *inter alia*: (1) its labeling is false or misleading, or (2) the label does not include all required information.[53]

---

[47] 21 U.S.C. § 361 *et. seq.*
[48] 15 U.S.C. § 1451 *et. seq.*
[49] 21 U.S.C. § 361
[50] *Id.*
[51] *Id.*
[52] 21 U.S.C. § 362.
[53] *See id.*

133. Under federal law, cosmetic manufacturers are not required to submit their safety data to the FDA, and the FDA does not evaluate cosmetic safety prior to marketing. However, the manufacturer of a cosmetic product must "adequately substantiate[]" the safety of the finished product, and of each ingredient used in it, before placing the product on the market.[54]

134. The FDA has consistently advised cosmetics manufacturers to use whatever testing is necessary to ensure the safety of products and ingredients.[55]

135. Except for color additives and ingredients prohibited or restricted by regulation, a manufacturer may use any ingredient in the formulation of a cosmetic, provided that: (1) the ingredient and the finished cosmetic are safe under labeled or customary conditions of use, (2) the product is properly labeled, and (3) the use of the ingredient does not otherwise cause the cosmetic to be adulterated or misbranded under the laws the FDA enforces.[56]

136. With respect to whether the product is properly labeled, 21 CFR § 740.1 defines the establishment of warning statements related to cosmetic products. Section 740.1 states: "The label of a cosmetic product ***shall*** bear a warning statement whenever necessary or appropriate to prevent a health hazard that ***may*** be associated with the product." (emphasis added). This warning directive directly correlates with the broad authority and responsibility of manufacturers over their own cosmetic products to ensure that products are safe under labeled or customary conditions of use, properly labeled, and not adulterated or misbranded under FDA laws.

137. When a manufacturer is unable to adequately substantiate the safety of its product before marketing, the product is considered to be misbranded if the principal display panel does

---

[54] 21 C.F.R. § 740.10(a).

[55] *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated*, U.S. Food and Drug Administration, Mar., 3, 2005, https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated.

[56] *Id.*

not include the required "conspicuous statement" from 21 CFR § 740.10: "*Warning* – The safety of this product has not been determined."

138. In short, under the current regulatory framework Defendants were, and are, required to assess the safety of their Toxic Hair Relaxer Products and warn consumers of any and all health hazards.

139. Having this duty, Defendants failed to, *inter alia*:

a. Disclose the high risk of unreasonable, dangerous, adverse side effects of their Toxic Hair Relaxer Products when used as intended; and/or

b. Disclose that the Toxic Hair Relaxer Products are defective and dangerous to human health; and/or

c. Disclose that they had not adequately substantiated the safety of their Toxic Hair Relaxers prior to marketing. Failed to include a conspicuous warning statement on their packaging that read: "Warning – the safety of this product has not been determined."

140. The safety of the Toxic Hair Relaxer Products has not been proven.

141. Defendants had the capacity to design hair relaxer products that were safer than the Toxic Hair Relaxer Products that they sold to Plaintiffs, and that caused Plaintiffs' injuries alleged herein.

142. It was economically possible for Defendants to manufacture hair relaxer products that were safer than the Toxic Hair Relaxer Products that they sold to Plaintiffs, and that caused Plaintiffs' injuries alleged herein.

143. The alternative hair relaxer product designs that Defendants could have utilized would not have changed the intended purpose of the hair relaxer products—to straighten otherwise curly and/or kinky hair.

144. Such alternative safer designs include, but are not limited to:

a. Replacing toxic chemicals with readily available natural ingredients;

b. Oil treatments (such as olive, coconut, and/or avocado oils);

c. Hot combs and other methods of heat styling; and

d. Blow drying.

## III. ADDITIONAL FACTS COMMON TO THE MEDICAL MONITORING CLASSES

145. As discussed in more detail above, the Toxic Hair Relaxer Products significantly increase the risk of and cause serious and potentially fatal uterine and ovarian cancer in humans (the "Subject Cancers").

146. Medical Monitoring Plaintiffs and the members of the Medical Monitoring Classes (defined below) have used Defendants' Toxic Hair Relaxer Products at least four times—an amount sufficient to significantly increase the risk of the Subject Cancers.

147. As a direct and proximate result of Defendants' tortious conduct, Medical Monitoring Plaintiffs and members of the Medical Monitoring Classes have been significantly exposed to proven hazardous substances–Toxic Hair Relaxer Products—resulting in the past, present, and ongoing significantly increased risk of the Subject Cancers.

148. As a direct and proximate result of Defendants' tortious conduct, it is reasonably medically necessary for Medical Monitoring Plaintiffs and the members of the Medical Monitoring Classes to incur, both now and in the future, the cost of monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of the Subject Cancers.

149. As a direct and proximate result of Defendants' tortious and unlawful conduct, Medical Monitoring Plaintiffs and the members of the Medical Monitoring Classes have suffered, and will suffer, economic losses and expenses associated with ongoing medical monitoring.

150. Technology, analytical tools, test and/or monitoring procedures exist and are readily available to provide for the testing and early detection of the Subject Cancers in patients.

151. Such medical monitoring procedures must be prescribed by a qualified physician and may include but are not limited to certain blood and laboratory tests; physical examinations; imaging (as discussed below); biopsies of the reproductive organs (uterus, ovary) and accessory organs; and other medical consultations and procedures necessary for diagnosis.

152. Specific tests and procedures used to diagnose the Subject Cancers to be included in a medical monitoring program may include, but are not limited to, Pap smears; blood tests, including CA 125 antigen testing; genetic testing; abdominal ultrasounds; pelvic examinations; CT scans; and transvaginal ultrasounds.

153. The available monitoring regime is for individuals exposed to products known to significantly increase the risk of the Subject Cancers because of using Toxic Hair Relaxer Products and is different as between women who were not exposed to the Toxic Hair Relaxer Products, versus the Medical Monitoring Plaintiffs who are at significantly increased risk of the Subject Cancers by virtue of their exposure to Defendants' Toxic Hair Relaxer Products. Such differences include the type, timing, frequency, and/or scope of screening and diagnostic examinations that would be recommended for women at this significantly increased risk. This monitoring regime is conducted and analyzed by medical practitioners skilled in the respective medical areas.

154. Effective medical consultations, clinical examinations and diagnostic tests exist for reliable early detection, and early detection combined with effective treatment will significantly decrease the severity of the cancers. Catching cancer early allows for early and greater treatment options, improves patient prognoses, and generally avoids more invasive, risky, and expensive medical interventions later.

155. These monitoring procedures conform to the standard of medical care and are reasonably medically necessary to ensure that the Subject Cancers can be identified early and appropriately treated. Said monitoring procedures will facilitate treatment and interventions that will mitigate the development of, and health effects associated with, the Subject Cancers, which may in turn increase the Medical Monitoring Plaintiffs' chance of survival. The present value of the costs of such tests is calculable.

156. Monitoring and testing the Medical Monitoring Plaintiffs will substantially reduce the risk that the Medical Monitoring Plaintiffs, and the members of the Medical Monitoring Classes, will suffer long-term injuries, disease, and losses.

157. Accordingly, Defendants should be required to establish a medical monitoring program that includes, among other things: (a) establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of the members of the Medical Monitoring Classes for the purpose of diagnosis, as frequently and appropriately as necessary; and (b) notifying all members of the Medical Monitoring Classes in writing that they may require frequent medical monitoring for the purpose of diagnosis.

158. Medical Monitoring Plaintiffs and the Medical Monitoring Classes have an inadequate remedy at law in that monetary damages alone cannot compensate them for the risk of long-term physical and economic losses due to using the Toxic Hair Relaxer Products. Without a court-approved medical monitoring program as described herein, or established by the Court, Medical Monitoring Plaintiffs and the members of the Medical Monitoring Classes will continue to face an unreasonable risk of injury and disability due to remaining undiagnosed.

159. In the alternative to a court-funded program, Medical Monitoring Plaintiffs and the members of the Medical Monitoring Classes seek as damages the costs of such medical monitoring.

## IV. CLASS ALLEGATIONS

160. All Plaintiffs bring this action in their individual capacity and on behalf of the following Nationwide Consumer Class and pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4):

> **Nationwide Consumer Class:** All individuals in the United States and its territories who, for personal use, purchased any Toxic Hair Relaxer Product(s) in the United States of America and/or its territories.

161. In the alternative to the Nationwide Consumer Class, Plaintiffs bring this action in their individual capacities and on behalf of the following consumer classes.

> **Alabama Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Alabama.
>
> **Arizona Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Arizona.
>
> **California Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in California.
>
> **Colorado Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Colorado.
>
> **District of Columbia Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in the District of Columbia.
>
> **Florida Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Florida.
>
> **Illinois Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Illinois.
>
> **Indiana Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Indiana.

**Iowa Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Indiana.

**Louisiana Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Louisiana.

**Maryland Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Maryland.

**Michigan Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Michigan.

**Mississippi Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Mississippi.

**Missouri Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Missouri.

**Nevada Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Nevada.

**New Jersey Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in New Jersey.

**Pennsylvania Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in Pennsylvania.

**Tennessee Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in New Jersey.

**Texas Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in New Jersey.

**Virginia Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in New Jersey.

**West Virginia Consumer Class:** All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s) in New Jersey.

162. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Hines, Jackson, Lane, Lawes, Longley, Martinez, McDonald, Meadows, Reid, Richardson, Smith, Vaughn, Wall, and Washington ("Medical Monitoring Plaintiffs") also bring this action in their individual capacities and on behalf of the Medical Monitoring Class, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4):

**Medical Monitoring Class:** All females residing in Arizona, California, Colorado, District of Columbia, Florida, Indiana, Maryland, Missouri, Montana, Nevada, Pennsylvania, Utah, and West Virginia who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

163. In the alternative to the Medical Monitoring Class, Plaintiffs bring this action in their individual capacities and on behalf of the following medical monitoring classes and/or groupings of classes:

**Arizona Medical Monitoring Class:** All girls and women residing in Arizona who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**California Medical Monitoring Class:** All girls and women residing in California who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**District of Columbia Medical Monitoring Class:** All girls and women residing in the District of Columbia who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**Florida Medical Monitoring Class:** All girls and women residing in Florida who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**Maryland Medical Monitoring Class:** All girls and women residing in Maryland who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**Missouri Medical Monitoring Class:** All girls and women residing in Missouri who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**Nevada Medical Monitoring Class:** All girls and women residing in Nevada who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

**Pennsylvania Medical Monitoring Class:** All girls and women residing in Pennsylvania who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer.

164. The Nationwide Consumer Class, Medical Monitoring Class, and state-specific classes may be collectively referred to as “Classes.” The Nationwide Consumer Class and Medical

Monitoring Class may be collectively referred to as "Multi-State Classes." The Medical Monitoring Class and state-specific Medical Monitoring classes may be collectively referred to as "Medical Monitoring Classes." The state-specific Medical Monitoring and Consumer classes may be collectively referred to as "Statewide Classes."

165. ***Numerosity:*** The members of each respective Class are so numerous that joinder of all members of the respective Class is impracticable. Plaintiffs are informed and believe that each proposed Class contains thousands of purchasers of Defendants' Toxic Hair Relaxer Product(s) who have been damaged by Defendants' conduct as alleged herein.

166. ***Typicality:*** Each Plaintiff's claims are typical of the Nationwide Consumer Class members because they purchased one or more of the Toxic Hair Relaxer Product(s) and were subjected to and injured by Defendants' deceptive and misleading claims. Plaintiffs and the Nationwide Consumer Class members were injured through Defendants' common course of misconduct, and Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Nationwide Consumer Class.

167. Each Medical Monitoring Plaintiff's claims are typical of the Medical Monitoring Classes because they all suffered the same type of harm, including the present need to undergo and expend monies for diagnostic testing caused by Defendants' tortious exposure and the concomitant increased risk of ovarian and uterine cancer. Medical Monitoring Plaintiffs bring claims under the same legal and remedial theories as the Medical Monitoring Classes, and those claims arise out of the same set of facts and conduct.

168. ***Adequacy:*** Plaintiffs and their counsel will fairly and adequately protect and represent the interests of all Class members. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel have successfully litigated similar class-

action cases, and they have the resources and abilities to protect the interests of the classes. Plaintiffs intend to prosecute these claims vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

169. ***Commonality and Predominance:*** Plaintiffs' claims raise questions of law and fact common to all members of the Classes, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include but are not limited to the following:

(a) Whether Defendants' Toxic Hair Relaxer Products put Plaintiffs at an increased risk of cancer, including ovarian cancer and uterine cancer;

(b) Whether Defendants' Toxic Hair Relaxer Products were adulterated and/or misbranded;

(c) Whether Defendants' warnings were adequate;

(d) Whether Defendants adequately substantiated the safety of the Toxic Hair Relaxer Products and their ingredients;

(e) Whether Defendants' representations and omissions are misleading or objectively reasonably likely to deceive;

(f) Whether Defendants engaged in false or misleading advertising;

(g) Whether Defendants were unjustly enriched as a result of their labeling, marketing, advertising and/or selling of the Toxic Hair Relaxer Products;

(h) Whether Plaintiffs and the other Class members are entitled to damages and/or restitution and the proper measure of that loss;

170. In addition to the above, legal and factual questions common to the Medical Monitoring Classes and their respective Class members include but are not limited to:

(a) Whether Medical Monitoring Plaintiffs and the Medical Monitoring Class members are at an increased risk of developing uterine and ovarian cancer as a result of Defendants' unlawful conduct, necessitating diagnostic medical care;

(b) Whether Defendants knew or should have known that the Toxic Hair Relaxer Products significantly increase the risk of developing ovarian and uterine cancer; and

(c) The nature and extent of the medical monitoring and testing necessary to address the risks created by Medical Monitoring Plaintiffs' and the Medical Monitoring Class members' use of the Toxic Hair Relaxer Products.

171. As alleged throughout this Complaint, Defendants engaged in uniform and standardized conduct towards the Classes. The Defendants did not differentiate, in their degree of care or candor, in their actions or inactions, or in the content of their statements and omissions, among individual Class members. The objective facts on these subjects are the same for all respective Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many states share the same legal standards and elements of proof, facilitating the certification of multi-state classes for some or all of the claims.

172. ***Superiority:*** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriments suffered by Plaintiffs and individual Class members are relatively small compared with the burden and expense of individually litigating their claims against Defendants. It would be virtually impossible for

Plaintiffs and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

173. ***Injunctive and Declaratory Relief:*** The Classes also may be certified because Defendants have acted or refused to act on grounds applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of each respective Class, on grounds generally applicable to each respective Class, such that final injunctive relief is appropriate with respect to each Class. Such injunctive relief includes, but is not limited to, the implementation and funding of a medical monitoring program for the Medical Monitoring Plaintiffs and Medical Monitoring Class members that is sufficient to monitor their health and ensure the beneficial early detection of uterine and ovarian cancer, caused by exposure to Defendants' Toxic Hair Relaxer Products. Such injunctive relief also includes enjoining and preventing Defendants from engaging in the acts described above.

174. This action is also properly maintainable under Rule 23(c)(4) in that particular issues common to the respective Classes, as described above in part, are most appropriately and efficiently resolved via class action, and would advance the disposition of this matter and the parties' interests therein.

## V. TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, AND CONTINUING VIOLATIONS

175. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

176. Any applicable statutes of limitations have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal. Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiffs and the other Class members assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

177. Defendants continue to engage in the deceptive practice and, consequently, unwary consumers continue to be injured on a daily basis by Defendants' unlawful conduct. Therefore, Plaintiffs and the other Class members submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of any Class purchased Defendants' Toxic Hair Relaxer Products constitutes part of a continuing violation and operates to toll the statutes of limitations in this action.

178. Defendants should be estopped from relying on any statute of limitations defense, because of their unfair or deceptive conduct.

179. Defendants' conduct was, and is, self-concealing. Through a series of affirmative acts and omissions, Defendants suppressed the truth regarding their illegal conduct, and have foreclosed Plaintiffs and the other Class members from learning of Defendants' illegal, unfair, and/or deceptive acts.

180. By reason of the foregoing, the claims of Plaintiffs and the other Class members are timely under any applicable statute(s) of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## VI. CAUSES OF ACTION BROUGHT ON BEHALF OF THE MULTI-STATE CLASSES

### COUNT 1 – NEGLIGENCE

**(Individually and On Behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

181. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

182. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

183. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

184. Each Defendant owed a duty of care to Plaintiffs and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

185. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiffs and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiffs and

the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

186. Defendants also owed a continuing duty to Plaintiffs and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

187. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

188. Each Defendant owed a duty of care to Plaintiffs and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

189. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

190. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiffs and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiffs and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiffs and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

191. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiffs and the other Class members.

192. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs and the other Class members.

193. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiffs and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

194. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and the other Class members.

195. Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiffs and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

196. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiffs and the other Class members.

197. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiffs and the other Class members.

198. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiffs' and the other Class members' harms.

199. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

200. As a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

201. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 2 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

202. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

203. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

204. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

205. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

206. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

207. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

208. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer

Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

209. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair-Straightener and/or Relaxers. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully deceived Plaintiffs and the general public about the health risks and adverse consequences of the use of such products.

210. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

211. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

212. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

213. Plaintiffs and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiffs and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

214. In reliance on the misrepresentations by Defendants, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

215. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

216. Defendants' omission of material facts also induced Plaintiffs and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

217. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

218. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

219. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

220. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 3 – NEGLIGENCE PER SE**
**(Individually and on behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

221. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

222. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

223. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

224. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

225. Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

226. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

227. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

228. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 4 – MEDICAL MONITORING**
**(Individually and On Behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

229. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set

forth herein.

230. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

231. Through their misrepresentations and omissions, Defendants deceived Plaintiffs and the other Class members about the harmful nature of their Toxic Hair Relaxer Products. Through their deception, Defendants succeeded in persuading large segments of the relevant consumer market to purchase Defendants' Toxic Hair Relaxer Products despite the presence of significant dangers, as set forth herein.

232. Defendants had a pre-marketing, post-manufacturing, and continuing duty to warn, which arose when Defendants knew, or with reasonable care should have known, that Defendants' Toxic Hair Relaxer Products were injurious or fatal.

233. Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Defendants' Toxic Hair Relaxer Products, including the risks of death, disease, and other health problems associated with the use of Defendant's Toxic Hair Relaxer Products. Defendants failed to disclose that their Toxic Hair Relaxer Products contained toxic chemicals, and Defendants downplayed and/or understated the serious nature of the risks associated with the use of Defendants' Toxic Hair Relaxer Products. Instead, Defendants encouraged the use of their Toxic Hair Relaxer Products despite knowledge of the dangerous side effects that these products present to the consuming population.

234. Defendants falsely and deceptively misrepresented, or knowingly omitted, suppressed, and concealed material facts regarding the ingredients contained within Defendants' Toxic Hair Relaxer Products, as well as the risk posed by those ingredients to the public.

235. Had Plaintiffs and the other Class members known that Defendants' Toxic Hair Relaxer Products contained dangerous ingredients, and/or that those ingredients could cause serious life-threatening injuries, none of them would have purchased Defendants' Toxic Hair Relaxer Products.

236. Defendants knew or should have known, and would have known had appropriate testing been done, that the use of Defendants' Toxic Hair Relaxer Products caused the serious and potentially life-threatening adverse health consequences as described herein, including uterine and ovarian cancer.

237. Defendants' actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Defendants' Toxic Hair Relaxer Products.

238. Plaintiffs and the other Class members have used Defendants' Toxic Hair Relaxer Products at least four times—an amount sufficient to significantly increase the risk of the Subject Cancers.

239. As a proximate result of consuming Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

240. As a direct and proximate result of Defendants' tortious conduct, it is reasonably medically necessary for Plaintiffs and Class members to incur, both now and in the future, the cost

of monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of the Subject Cancers.

241. As a direct and proximate result of Defendants' tortious and unlawful conduct, Plaintiffs and the other Class members have suffered and will suffer economic losses and expenses associated with ongoing medical monitoring.

242. The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs and the other Class members resulting from their exposure to this hazardous substance can only be mitigated or redressed by medical monitoring for the Subject Cancers, which is necessary as a result of the use of Defendants' Toxic Hair Relaxer Products.

243. Early detection and diagnosis of cancer is clinically invaluable because it can prevent, reduce, and/or significantly delay the resulting discomfort, suffering, and/or death. Medical monitoring is crucial to early detection because these conditions are often asymptomatic and, therefore, can only be discovered through proper testing.

244. There are means to detect the Subject Cancers, caused by the use of Defendants' Toxic Hair Relaxer Products, at an early stage, such that subsequent treatment would have a higher chance of success at prolonging life and/or reducing suffering than would exist without early detection.

245. Such medical monitoring procedures must be prescribed by a qualified physician and may include but are not limited to certain blood and laboratory tests; physical examinations; imaging (as discussed below); biopsies of the reproductive organs (uterus, ovary) and accessory organs; and other medical consultations and procedures necessary for diagnosis.

246. Specific tests and procedures used to diagnose the Subject Cancers to be included in a medical monitoring program may include but are not limited to Pap smears; blood tests,

including CA 125 antigen testing; genetic testing; abdominal ultrasounds; pelvic examinations; CT scans; and transvaginal ultrasounds.

247. The available monitoring regime is specific for individuals exposed to products that are known to significantly increase the risk of the Subject Cancers because of using Toxic Hair Relaxer Products. That is because the monitoring regime is different as between women who were not exposed to the Toxic Hair Relaxer Products, versus Plaintiffs and the other Class members who are at significantly increased risk of the Subject Cancers by virtue of their exposure to Defendants' Toxic Hair Relaxer Products. Such differences include the types, timing, frequency, and/or scope of screening and diagnostic examinations that would be recommended for women at this significantly increased risk. The monitoring regime is conducted and analyzed by medical practitioners skilled in the respective medical areas.

248. These monitoring procedures conform to the standard of medical care and are reasonably medically necessary to ensure that the Subject Cancers can be identified early and appropriately treated. Said monitoring procedures will facilitate treatment and interventions that will mitigate the development of, and health effects associated with, the Subject Cancers, which may in turn increase Plaintiffs' and the other Class members' chance of survival. The present value of the costs of such tests is calculable.

249. Plaintiffs' and the other Class members' significantly increased risk of the Subject Cancers, caused by their exposure to Defendants' Toxic Hair Relaxer Products, can only be mitigated or addressed by appropriate medical testing.

250. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening,

testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 5 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

251. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

252. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

253. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiffs and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

254. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

255. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiffs and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

256. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed

because the danger inherent in their design outweighs the benefits of that design.

257. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

258. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

259. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

260. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

261. At all times material to Plaintiffs' and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

262. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

263. Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

264. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

265. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 6 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the Medical Monitoring Class Against Defendants Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature)**

266. Medical Monitoring Plaintiffs ("Plaintiffs," for purposes of the Medical Monitoring Class claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

267. Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature ("Defendant[s]" for purposes of the Medical Monitoring Class claims).

268. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiffs and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

269. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

270. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

271. If Defendants had warned Plaintiffs and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine or ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiffs and the other Class members would not have used their Toxic Hair Relaxer Products.

272. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

273. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

274. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

275. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

276. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

277. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 7 – VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(Individually and on Behalf of the Nationwide Consumer Class and the Medical Monitoring Class Against All Defendants)**

278. Plaintiffs incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

279. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Consumer Class against all Defendants.

280. Additionally, Medical Monitoring Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature.

281. Defendants engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the following statutes when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products:

a. Ala. Code § 8-19-1 *et seq.*;

b. Alaska Stat. § 45.50.471 *et seq.*;

c. Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*;

d. Ark. Code Ann. § 4-88-101 *et seq.*;

e. Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.*;

f. Colo. Rev. Stat. § 6-1-101 *et seq.*;

g. Conn. Gen. Stat. Ann. § 42-110a *et Seq.*;

h. Del. Code Ann. tit. 6 § 2511 *et seq.*;

i. D.C. Code Ann. § 28-3901 *et seq.*;

j. Fla. Stat. Ann. § 501.201 *et seq.*;

k. Ga. Code Ann. § 10-1-370 *et seq.*;

l. Haw. Rev. Stat. § 480-1 *et seq.* and 481A-1 *et seq.*;

m. Idaho Code § 48-601 *et seq.*;

n. 815 Ill. Comp. Stat. 505/1 *et seq.*;

o. Ind. Code Ann. § 24-5-0.5-1 *et seq.*;

p. Iowa Code § 714.16 *et seq.*;

q. Kan. Stat. Ann. § 50-623 *et seq.*;

r. Ky. Rev. Stat. Ann. § 367.170 *et seq.*;

s. La. Rev. Stat. Ann. § 51:1401 *et seq.*;

t. Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.*;

u. Md. Code Ann., Com. Law § 13-301 *et seq.*;

v. Mass. Gen. Laws ch. 93A, § 1 *et seq.*;

w. Mich. Comp. Laws Ann. § 445.901 *et seq.*;

x. Minn. Stat. §§ 325D.09 *et seq.*, 325D.43 *et seq.*, 325F.67, 325F.68 *et seq.*, and § 8.31;

y. Miss. Code Ann. § 75-24-5 *et seq.*;

z. Mo. Ann. Stat. § 407.010 *et seq.*;

aa. Mont. Code Aim. § 30-14-101 *et seq.*;

bb. Neb. Rev. Stat. § 87-301 *et seq.*;

cc. Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.* and 41.600;

dd. N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*;

ee. N.J. Stat. Ann. § 56:8-1 *et seq.*;

ff. N.M. Stat. Ann. § 57-12-1 *et seq.*;

gg. N.Y. Gen. Bus. Law §§ 349 *et seq.*, 350, 350-a and 350-e *et seq.*;

hh. N.C. Gen. Stat. § 75-1 *et seq.*;

ii. N.D. Cent. Code §§ 51-12-01 *et seq.* and 51-15-01 *et seq.*;

jj. Ohio Rev. Code Ann. § 1345.01 *et seq.*;

kk. Okla. Stat. Ann. tit. 15, § 751 *et seq.*;

ll. Or. Rev. Stat. § 646.605 *et seq.*;

mm. 73 Pa. Cons. Stat. § 201-1 *et seq.*;

nn. R.I. Gen. Laws § 6-13.1-1 *et seq.*;

oo. S.C. Code Ann. § 39-5-10 *et seq.*;

pp. S.D. Codified Laws § 37-24-1 *et seq.*;

qq. Tenn. Code Ann. § 47-18-101 *et seq.*;

rr. Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*;

ss. Utah Code Ann. § 13-11-1 *et Seq.*;

tt. Vt. Stat. Ann. tit. 9, § 2451 *et seq.*;

uu. Va. Code Ann. § 59.1-196 *et seq.*;

vv. Wash. Rev. Code Ann. § 19.86.010 *et seq.*;

ww. W.Va. Code § 46A-6-101 *et seq.*;

xx. Wis. Stat. Ann. §§ 100.18 and 421.101 *et seq.*;

yy. Wyo. Stat. Ann. § 40-12-101 *et seq.*;

zz. American Samoa Code Ann. § 27.0401 *et seq.*;

aaa. 4 CMC § 5101 *et seq.*;

bbb. 5 Guam Code Ann. § 32102 *et seq.*; and

ccc. 12A Virgin Is. Code § 301 *et seq.*

282. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss

and other compensable injuries.

283. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

284. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the consumer protection statutes listed above.

285. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

286. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

287. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed, and/or introduced into the stream of commerce by Defendants, Plaintiffs

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses into the future.

288. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

289. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

290. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the above-referenced statutes because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

291. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

292. Further, as a direct and proximate result of each Defendant's negligent conduct, Medical Monitoring Plaintiffs and the Medical Monitoring Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

293. Medical Monitoring Plaintiffs, on behalf of themselves and the other Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 8 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Nationwide Consumer Class Against All Defendants)**

294. Plaintiffs incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

295. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Consumer Class against all Defendants.

296. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

297. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

298. As an intended and expected result of Defendants' conscious wrongdoing, as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

299. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

300. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

301. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

302. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

303. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

304. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

305. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 9 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Nationwide Consumer Class and Medical Monitoring Class against All Defendants)**

306. Plaintiffs incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

307. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Consumer Class against all Defendants.

308. Additionally, Medical Monitoring Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride, Revlon, SoftSheen, and Strength of Nature.

309. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

310. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

311. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

312. Defendants breached their express warranties because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

313. Defendants' conduct described herein constitutes a breach of express warranties under the following statutes:

a. Ala. Code § 7-2-313, *et seq.*;

b. Alaska Stat. § 45.02.313, *et seq.*;

c. Ariz. Rev. Stat. § 47-2313, *et seq.*;

d. Ark. Code § 4-2-313, *et seq.*;

e. Cal. Com. Code § 2313, *et seq.*;

f. Cal. Civ. Code § 1790, *et seq.*;

g. Colo. Rev. Stat. § 4-2-313, *et seq.*;

h. Conn. Gen. Stat. § 42a-2-313, *et seq.*;

i. 6 Del. C. § 2-313, *et seq.*;

j. D.C. Code § 28:2-313, *et seq.*;

k. Fla. Code § 672.313, *et seq.*;

l. O.C.G.A. § 11-2-313, *et seq.*;

m. Haw. Rev. Stat. § 490:2-313, *et seq.*;

n. Idaho Code § 28-2-313, *et seq.*;

o. 810 Ill. Comp. Stat. 5/2-313, *et seq.*;

p. Ind. Code § 26-1-2-313, *et seq.*;

q. Iowa Code § 554.2313, *et seq.*;

r. Kan. Stat. § 84-2-313, *et seq.*;

s. Ky. Rev. Stat. § 355.2-313, *et seq.*;

t. La. Rev. Stat § 9:2800.53(6) , *et seq.*;

u. 11 M.R.S.A. § 2-313, *et seq.*;

v. Md. Code Ann., Com. Law § 2-313, *et seq.*;

w. Mass. Code 106, § 2-313, *et seq.*;

x. Mich. Comp. Laws 440.2313, *et seq.*;

y. Minn. Stat. § 336.2-313, *et seq.*;

z. Miss. Code § 75-2-313, *et seq.*;

aa. Mo. Rev. Stat. § 400.2-313, *et seq.*;

bb. Mont. Code § 30-2-313, *et seq.*;

cc. Neb. U.C.C. § 2-313, *et seq.*;

dd. Nev. Rev. Stat. § 104.2313, *et seq.*;

ee. N.H. Rev. Stat. § 382-A:2-313, *et seq.*;

ff. N.J. Stat. § 12A:2-313, *et seq.*;

gg. N.M. Stat. § 55-2-313, *et seq.*;

hh. N.Y. U.C.C. § 2-313, *et seq.*;

ii. N.C. Gen. Stat. § 25-2-313, *et seq.*;

jj. N.D. Cent. Code § 41-02-30, *et seq.*;

kk. Ohio Rev. Code § 1302.26, *et seq.*;

ll. Okla. Stat. Tit. 12A, § 2-313, *et seq.*;

mm. Or. Rev. Stat. § 72.3130, *et seq.*;

nn. 13 Pa. Cons. Stat. § 2313, *et seq.*;

oo. R.I. Gen. Laws § 6A-2-313, *et seq.*;

pp. S.C. Code § 36-2-313, *et seq.*;

qq. S.D. Codified Laws § 57A-2-313, *et seq.*;

rr. Tenn. Code § 47-2- 313, *et seq.*;

ss. V.T.C.A., Bus. & C. § 2.313, *et seq.*;

tt. Utah Code § 70A-2-313, *et seq.*;

uu. Vt. Stat. Tit. 9A, § 2-313, *et seq.*;

vv. Va. Code § 8.2-313, *et seq.*;

ww. Wash. Rev. Code § 62A.2-313, *et seq.*;

xx. W. Va. Code § 46-2-313, *et seq.*;

yy. Wis. Stat. § 402.313, *et seq.*;

zz. Wyo. Stat. § 34.1-2-314, *et seq.*;

aaa. American Samoa Code Ann. § 27.0701, *et seq.*;

bbb. 13 Guam Code Ann. § 2313, *et seq.*;

ccc. 5 C.M.C. § 2313, *et seq.*; and

ddd. 11A Virgin Is. Code § 2-213, *et seq.*

314. Defendants' conduct described herein also constitutes a breach of express warranties under the common law of Puerto Rico.

315. Defendants' breach of warranties was a substantial factor in bringing about Plaintiffs' and the Class members' injuries.

316. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

317. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the toxic nature of Defendants' products (i.e., the "Toxic Defect"), in an amount to be determined at trial.

318. Further, as a direct and proximate result of each Defendant's breach of its express warranty, Medical Monitoring Plaintiffs and the Medical Monitoring Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

319. Medical Monitoring Plaintiffs, on behalf of themselves and the Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 10 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on behalf of the Nationwide Consumer Class and the Medical Monitoring Class against All Defendants)**

320. Plaintiffs incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

321. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Consumer Class against all Defendants.

322. Additionally, Medical Monitoring Plaintiffs bring this cause of action individually and on behalf of the Medical Monitoring Class against Dabur, Namaste, L'Oréal, Luster, McBride Research Laboratories, Inc., Revlon, SoftSheen, and Strength of Nature.

323. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

324. Prior to the time that Plaintiffs and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiffs, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

325. Defendants' warranties included, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

326. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiffs and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

327. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer

Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiffs and the other Class members.

328. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

329. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

330. At the time that Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiffs and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

331. Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

332. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

333. Plaintiffs and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

334. Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

335. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under the following statutes:

a. Ala. Code § 7-2-314, *et seq.*;

b. Alaska Stat. § 45.02.314, *et seq.*;

c. Ariz. Rev. Stat. § 47-2314, *et seq.*;

d. Ark. Code § 4-2-314, *et seq.*;

e. Cal. Com. Code § 2314, *et seq.*;

f. Cal. Civ. Code § 1790, *et seq.*;

g. Colo. Rev. Stat. § 4-2-314, *et seq.*;

h. Conn. Gen. Stat. § 42a-2-314, *et seq.*;

i. 6 Del. C. § 2-314, *et seq.*;

j. D.C. Code § 28:2-314, *et seq.*;

k. Fla. Code § 672.314, *et seq.*;

l. O.C.G.A. § 11-2-314, *et seq.*;

m. Haw. Rev. Stat. § 490:2-314, *et seq.*;

n. Idaho Code § 28-2-314, *et seq.*;

o. 810 Ill. Comp. Stat. 5/2-314, *et seq.*;

p. Ind. Code § 26-1-2-314, *et seq.*;

q. Iowa Code § 554.2314, *et seq.*;

r. Kan. Stat. § 84-2-314, *et seq.*;

s. Ky. Rev. Stat. § 355.2-314, *et seq.*;

t. La. Rev. Stat § 9:2800.53(6) , *et seq.*;

u. 11 M.R.S.A. § 2-314, *et seq.*;

v. Md. Code Ann., Com. Law § 2-314, *et seq.*;

w. Mass. Code 106, § 2-314, *et seq.*;

x. Mich. Comp. Laws 440.2314, *et seq.*;

y. Minn. Stat. § 336.2-314, *et seq.*;

z. Miss. Code § 75-2-314, *et seq.*;

aa. Mo. Rev. Stat. § 400.2-314, *et seq.*;

bb. Mont. Code § 30-2-314, *et seq.*;

cc. Neb. U.C.C. § 2-314, *et seq.*;

dd. Nev. Rev. Stat. § 104.2314, *et seq.*;

ee. N.H. Rev. Stat. § 382-A:2-314, *et seq.*;

ff. N.J. Stat. § 12A:2-314, *et seq.*;

gg. N.M. Stat. § 55-2-314, *et seq.*;

hh. N.Y. U.C.C. § 2-314, *et seq.*;

ii. N.C. Gen. Stat. § 25-2-314, *et seq.*;

jj. N.D. Cent. Code § 41-02-30, *et seq.*;

kk. Ohio Rev. Code § 1302.26, *et seq.*;

ll. Okla. Stat. Tit. 12A, § 2-314, *et seq.*;

mm. Or. Rev. Stat. § 72.3130, *et seq.*;

nn. 13 Pa. Cons. Stat. § 2314, *et seq.*;

oo. R.I. Gen. Laws § 6A-2-314, *et seq.*;

pp. S.C. Code § 36-2-313, *et seq.*;

qq. S.D. Codified Laws § 57A-2-313, *et seq.*;

rr. Tenn. Code § 47-2- 314, *et seq.*;

ss. V.T.C.A., Bus. & C. § 2.314, *et seq.*;

tt. Utah Code § 70A-2-314, *et seq.*;

uu. Vt. Stat. Tit. 9A, § 2-314, *et seq.*;

vv. Va. Code § 8.2-314, *et seq.*;

ww. Wash. Rev. Code § 62A.2-314, *et seq.*;

xx. W. Va. Code § 46-2-314, *et seq.*;

yy. Wis. Stat. § 402.314, *et seq.*;

zz. Wyo. Stat. § 34.1-2-314, *et seq.*;

aaa. American Samoa Code Ann. § 27.0701, *et seq.*;

bbb. 13 Guam Code Ann. §§ 2314 and 2315, *et seq.*;

ccc. 5 C.M.C. §§ 2314 and 2315, *et seq.*; and

ddd. 11A Virgin Is. Code §§ 2-214 and 2-215, *et seq.*

336. Defendants' conduct described in this Complaint also constitutes a breach of implied warranties under the common law of Puerto Rico.

337. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiffs and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

338. Defendants' breach of warranties were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

339. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses into the future.

340. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

341. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the above-referenced statutes because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

342. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

343. Additionally, as a direct and proximate result of each Defendant's wrongful conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

344. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs;

(d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 11 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Nationwide Consumer Class Against All Defendants)**

345. Plaintiffs incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

346. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Consumer Class against all Defendants.

347. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

348. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products .

349. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

350. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

351. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

352. Such failures to disclose on the part of Defendants amount to fraudulent omission.

353. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

354. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

355. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

356. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

357. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

358. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

## VII. CAUSES OF ACTION BROUGHT ON BEHALF OF THE STATEWIDE CLASSES

### A. Alabama

**COUNT 12 – VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**

**(Individually and on Behalf of the Alabama Consumer Class Against Defendants L'Oréal, SoftSheen, Avlon, JF Labs, Dabur, Namaste, and House of Cheatham)**

359. Plaintiffs Harris and Provo ("Plaintiffs," for purposes of the Alabama Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

360. Plaintiffs bring this cause of action individually and on behalf of the Alabama Consumer Class.

361. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

362. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

363. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Alabama Deceptive Trade Practices Act.

364. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

365. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

366. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

367. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive,

willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

368. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

369. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Alabama Deceptive Trade Practices Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

370. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

**COUNT 13 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Alabama Consumer Class Against Defendants L'Oréal, SoftSheen, Avlon, JF Labs, Dabur, Namaste, and House of Cheatham)**

371. Plaintiffs Harris and Provo ("Plaintiffs," for purposes of the Alabama Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

372. Plaintiffs bring this cause of action individually and on behalf of the Alabama Consumer Class.

373. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

374. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

375. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

376. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

377. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

378. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

379. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without

justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

380. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

381. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

382. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 14 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Alabama Consumer Class Against Defendants L'Oréal, SoftSheen, Avlon, JF Labs, Dabur, Namaste, and House of Cheatham)**

383. Plaintiffs Harris and Provo ("Plaintiffs," for purposes of the Alabama Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

384. Plaintiffs bring this cause of action individually and on behalf of the Alabama Consumer Class.

385. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer

Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

386. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

387. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

388. Defendants breached its express warranties under Ala. Code § 7-2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

389. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

390. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 15 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Alabama Consumer Class Against Defendants L'Oréal, SoftSheen, Avlon, JF Labs, Dabur, Namaste, and House of Cheatham)**

391. Plaintiffs Harris and Provo ("Plaintiffs," for purposes of the Alabama Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

392. Plaintiffs bring this cause of action individually and on behalf of the Alabama Consumer Class.

393. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

394. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

395. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

396. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to

accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

397. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

398. Such failures to disclose on the part of Defendants amount to fraudulent omission.

399. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

400. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

401. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

402. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

403. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless,

and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

404. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### B. Arizona

### COUNT 16 – NEGLIGENCE
**(Individually and on Behalf of the Arizona Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

405. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

406. Plaintiffs bring this cause of action individually and on behalf of the Arizona Medical Monitoring Class.

407. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

408. Each Defendant owed a duty of care to Plaintiffs and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

409. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiffs and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been

known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

410. Defendants also owed a continuing duty to Plaintiffs and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

411. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

412. Each Defendant owed a duty of care to Plaintiffs and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

413. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

414. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiffs and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiffs and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiffs and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

415. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiffs and the other Class members.

416. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs and the other Class members.

417. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiffs and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

418. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and the other Class members.

419. . Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiffs and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

420. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiffs and the other Class members.

421. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiffs and the other Class members.

422. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiffs' and the other Class members' harms.

423. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

424. As a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

425. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 17 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the Arizona Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

426. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

427. Plaintiffs bring this cause of action individually and on behalf of the Arizona Medical Monitoring Class.

428. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

429. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

430. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

431. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

432. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present,

Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

433. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully deceived Plaintiffs and the general public about the health risks and adverse consequences of the use of such products.

434. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

435. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

436. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

437. Plaintiffs and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiffs and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

438. In reliance on the misrepresentations by Defendants, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

439. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

440. Defendants' omission of material facts also induced Plaintiffs and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

441. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

442. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

443. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

444. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 18 – NEGLIGENCE PER SE**
**(Individually and on behalf of the Arizona Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

445. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

446. Plaintiffs bring this cause of action individually and on behalf of the Arizona Medical Monitoring Class.

447. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

448. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR

§ 740.10.

449. Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

450. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

451. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

452. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 19 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the Arizona Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

453. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

454. Plaintiffs bring this cause of action individually and on behalf of the Arizona Medical Monitoring Class.

455. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiffs and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

456. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

457. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiffs and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

458. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

459. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

460. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

461. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

462. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

463. At all times material to Plaintiffs' and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

464. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

465. Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

466. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

467. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 20 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the Arizona Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

468. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

469. Plaintiffs bring this cause of action individually and on behalf of the Arizona Medical Monitoring Class.

470. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiffs and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

471. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

472. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their

Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

473. If Defendants had warned Plaintiffs and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiffs and the other Class members would not have used their Toxic Hair Relaxer Products.

474. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

475. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

476. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

477. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

478. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

479. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 21 – VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT**
**(Individually and on Behalf of the Arizona Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

480. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

481. Plaintiffs bring this cause of action individually and on behalf of the Arizona Consumer and Medical Monitoring Classes.

482. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair,

unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

483. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

484. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Arizona Consumer Fraud Act.

485. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

486. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

487. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

488. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

489. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

490. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Arizona Consumer Fraud Act because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

491. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

492. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

493. Plaintiffs, on behalf of themselves and the other Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 22 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Arizona Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

494. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

495. Plaintiffs bring this cause of action individually and on behalf of the Arizona Consumer Class.

496. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

497. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

498. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

499. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

500. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

501. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

502. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

503. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

504. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

505. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 23 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Arizona Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

506. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

507. Plaintiffs bring this cause of action individually and on behalf of the Arizona Consumer and Medical Monitoring Classes.

508. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

509. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe.

To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

510. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

511. Defendants breached its express warranties under Ariz. Rev. Stat. § 47-2313, *et seq*. because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

512. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

513. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

514. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

515. Plaintiffs, on behalf of themselves and the Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund

diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 24 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Arizona Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, and Luster)**

516. Plaintiffs Richardson and Washington ("Plaintiffs," for purposes of the Arizona Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

517. Plaintiffs bring this cause of action individually and on behalf of the Arizona Consumer Class.

518. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

519. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

520. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

521. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

522. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

523. Such failures to disclose on the part of Defendants amount to fraudulent omission.

524. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

525. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

526. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

527. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other

Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

528. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

529. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**C. California**

**COUNT 25 – NEGLIGENCE**
**(Individually and on Behalf of the California Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

530. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

531. Plaintiffs bring this cause of action individually and on behalf of the California Medical Monitoring Class.

532. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

533. Each Defendant owed a duty of care to Plaintiffs and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

534. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiffs and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

535. Defendants also owed a continuing duty to Plaintiffs and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

536. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

537. Each Defendant owed a duty of care to Plaintiffs and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

538. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

539. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiffs and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiffs and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiffs and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

540. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiffs and the other Class members.

541. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs and the other Class members.

542. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiffs and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

543. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and the other Class members.

544. Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiffs and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

545. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiffs and the other Class members.

546. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiffs and the other Class members.

547. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiffs' and the other Class members' harms.

548. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

549. As a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

550. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 26 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the California Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

551. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

552. Plaintiffs bring this cause of action individually and on behalf of the California Medical Monitoring Class.

553. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

554. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

555. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew

or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

556. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

557. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

558. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully deceived Plaintiffs and the general public about the health risks and adverse consequences of the use of such products.

559. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

560. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

561. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

562. Plaintiffs and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiffs and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

563. In reliance on the misrepresentations by Defendants, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

564. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

565. Defendants' omission of material facts also induced Plaintiffs and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

566. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

567. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive,

willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

568. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

569. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

## COUNT 27 – NEGLIGENCE PER SE
**(Individually and on behalf of the California Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

570. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

571. Plaintiffs bring this cause of action individually and on behalf of the California Medical Monitoring Class.

572. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design,

manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

573. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

574. Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

575. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

576. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

577. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening,

testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 28 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the California Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

578. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

579. Plaintiffs bring this cause of action individually and on behalf of the California Medical Monitoring Class.

580. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiffs and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

581. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

582. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiffs and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

583. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

584. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

585. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

586. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

587. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

588. At all times material to Plaintiffs' and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

589. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

590. Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

591. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

592. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 29 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the California Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

593. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

594. Plaintiffs bring this cause of action individually and on behalf of the California Medical Monitoring Class.

595. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer

Products, which were used by Plaintiffs and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

596. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

597. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

598. If Defendants had warned Plaintiffs and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiffs and the other Class members would not have used their Toxic Hair Relaxer Products.

599. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

600. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the

condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

601. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

602. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

603. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

604. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 30 – VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

**(Individually and on Behalf of the California Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

605. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

606. Plaintiffs bring this cause of action individually and on behalf of the California Consumer and Medical Monitoring Classes.

607. Defendants engaged in unfair competition, or unfair, unconscionable, deceptive or fraudulent acts or practices, in violation of the California Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members have suffered and will continue to suffer economic loss and other compensable injuries.

608. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

609. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and

misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the California Consumer Legal Remedies Act.

610. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

611. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

612. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

613. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

614. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

615. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the California Consumer Legal Remedies Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

616. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

617. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

618. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 31 – VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Individually and on Behalf of the California Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

619. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

620. Plaintiffs bring this cause of action individually and on behalf of the California Consumer and Medical Monitoring Classes.

621. Defendants engaged in unfair competition, or unfair, unconscionable, deceptive or fraudulent acts or practices, in violation of the California Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members have suffered and will continue to suffer economic loss and other compensable injuries.

622. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

623. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and

misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the California Consumer Legal Remedies Act.

624. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

625. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

626. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

627. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

628. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

629. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the California Unfair Competition Law pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

630. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

631. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

632. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 32 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the California Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

633. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

634. Plaintiffs bring this cause of action individually and on behalf of the California Consumer Class.

635. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

636. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

637. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

638. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

639. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

640. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

641. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

642. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

643. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

644. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## COUNT 33 – VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTY

**(Individually and on Behalf of the California Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, , Strength of Nature, Revlon, and McBride)**

645. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

646. Plaintiffs bring this cause of action individually and on behalf of the California Consumer and Medical Monitoring Classes.

647. Plaintiffs and the other Class members are "buyers" within the meaning of California Civil Code § 1791(b) and (h), the Toxic Hair Relaxer Products are "consumer goods" within the meaning of California Civil Code § 1791(a), and Defendants are "manufacturers" of the Toxic Hair Relaxer Products within the meaning of California Civil Code § 1791(j).

648. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

649. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

650. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

651. Defendants breached its express warranties because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

652. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

653. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

654. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

655. Plaintiffs, on behalf of themselves and the Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b)

attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 34 – VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**

**(Individually and on Behalf of the California Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

656. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

657. Plaintiffs bring this cause of action individually and on behalf of the California Consumer and Medical Monitoring Classes.

658. Plaintiffs and the other Class members are "buyers" within the meaning of California Civil Code § 1791(b) and (h), the Toxic Hair Relaxer Products are "consumer goods" within the meaning of California Civil Code § 1791(a), and Defendants are "manufacturers" of the Toxic Hair Relaxer Products within the meaning of California Civil Code § 1791(j).

659. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

660. Prior to the time that Plaintiffs and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiffs, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

661. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

662. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiffs and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

663. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiffs and the other Class members.

664. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

665. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

666. At the time that Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiffs and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

667. Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

668. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

669. Plaintiffs and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

670. Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

671. Defendants' breach of warranties were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

672. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

673. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

674. Plaintiffs and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects

alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

675. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

676. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

677. Plaintiffs, on behalf of themselves and the Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 35 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the California Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, and McBride)**

678. Plaintiffs Meadows and Vaughn ("Plaintiffs," for purposes of the California Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

679. Plaintiffs bring this cause of action individually and on behalf of the California Consumer Class.

680. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

681. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

682. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

683. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

684. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

685. Such failures to disclose on the part of Defendants amount to fraudulent omission.

686. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

687. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

688. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

689. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

690. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

691. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### D. Colorado

**COUNT 36 – VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(Individually and on Behalf of the Colorado Consumer Class Against Defendant Strength of Nature)**

692. Plaintiff Duncan ("Plaintiff," for purposes of the Colorado Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

693. Plaintiff brings this cause of action individually and on behalf of the Colorado Consumer Class.

694. Defendant engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*, when it misled consumers regarding the safety risks associated with use of its Toxic Hair Relaxer Products. As a direct result of Defendant's deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

695. Defendant's deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

696. Defendant's actions and failure to act—including its false and misleading representations and omissions of material facts regarding the safety and potential risks of its Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendant of

unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendant's merchandise, in violation of the Colorado Consumer Protection Act.

697. Defendant's unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

698. By reason of the unlawful acts engaged in by Defendant, Plaintiff and the other Class members have suffered ascertainable loss and damages.

699. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendant's Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendant, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

700. Defendant's conduct with respect to its design and sale of its Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendant's conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

701. Due to the above, Defendant is liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

702. Plaintiff did not need to send (additional) notice to Defendant of its violations of the Colorado Consumer Protection Act pled in this Complaint because Defendant was already on notice of the defects alleged herein and of Defendant's related violations. Defendant received such notice from similar lawsuits for the same conduct and through other means.

703. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendant's products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 37 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Colorado Consumer Class Against Defendant Strength of Nature)**

704. Plaintiff Duncan ("Plaintiff," for purposes of the Colorado Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

705. Plaintiff brings this cause of action individually and on behalf of the Colorado Consumer Class.

706. As a result of Defendant's wrongful and deceptive conduct, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

707. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the other Class members.

708. As an intended and expected result of Defendant's conscious wrongdoing as set forth in this Complaint, Defendant has profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

709. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

710. At the time their payments were made, Plaintiff and the other Class members expected that Defendant's Toxic Hair Relaxer Products were safe and effective in the ways Defendant had represented, and could safely be used for the purposes Defendant advertised its Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

711. Defendant has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class members paid for Defendant's Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendant to provide Plaintiff and the other Class members with the remuneration expected enriched Defendant unjustly.

712. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

713. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendant to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

714. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

715. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendant's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

**COUNT 38 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Colorado Consumer Class Against Defendant Strength of Nature)**

716. Plaintiff Duncan ("Plaintiff," for purposes of the Colorado Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

717. Plaintiff brings this cause of action individually and on behalf of the Colorado Consumer Class.

718. As detailed above, Defendant, through its written literature, packaging and labeling, and through its advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

719. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendant breached this express warranty because its Toxic Hair Relaxer Products are not safe.

To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

720. Plaintiff and the other Class members read and relied on these express warranties provided by Defendant in the packaging and written advertisements.

721. Defendant breached its express warranties under Colo. Rev. Stat. § 4-2-313, *et seq*. because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

722. Defendant knew or should have known that the Toxic Hair Relaxer Products did not conform to its express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

723. Plaintiff and the other Class members have suffered harm on account of Defendant's breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 39 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Colorado Consumer Class Against Defendant Strength of Nature)**

724. Plaintiff Duncan ("Plaintiff," for purposes of the Colorado Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

725. Plaintiff brings this cause of action individually and on behalf of the Colorado Consumer Class.

726. Defendant is in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

727. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendant's Toxic Hair Relaxer Products, Defendant knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendant's Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendant also impliedly warranted to Plaintiff and the other Class members that its Toxic Hair Relaxer Products were of a certain quality.

728. Defendant's warranties include, but are not limited to, the warranties that its Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

729. Defendant breached the implied warranties of its Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

730. Defendant's Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendant, because its Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

731. Similarly, Defendant's Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendant's Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendant's control.

732. Defendant's Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendant's control.

733. At the time that Plaintiff and the other Class members purchased or used Defendant's Toxic Hair Relaxer Products, Defendant knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendant's misrepresentations regarding safety.

734. Plaintiff and the other Class members purchased or used Defendant's Toxic Hair Relaxer Products reasonably relying upon Defendant's implied warranties.

735. Plaintiff and the other Class members used Defendant's Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendant.

736. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendant's implied warranties were false, or that Defendant's Toxic Hair Relaxer Products posed danger to them.

737. Plaintiff and the other Class members would not have purchased or used Defendant's Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendant's Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

738. Defendant's conduct described in this Complaint constitutes a breach of implied warranties under Colo. Rev. Stat. § 4-2-314, *et seq.*

739. Defendant's Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendant is a supplier and/or warrantor of the defective Toxic Hair Relaxer Products, and Defendant breached its implied warranties as described above.

740. Defendant's breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

741. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendant's Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendant, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

742. Defendant's conduct with respect to the design and sale of its Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

743. Plaintiff and the other Class members did not need to send (additional) notice to Defendant of its breaches of warranty because Defendant was already on notice of the defects alleged herein and of Defendant's related violations. Defendant received such notice from similar lawsuits for the same conduct and through other means.

744. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendant's breach of their implied warranties, in an amount to be determined at trial.

**COUNT 40 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Colorado Consumer Class Against Defendant Strength of Nature)**

745. Plaintiff Duncan ("Plaintiff," for purposes of the Colorado Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

746. Plaintiff brings this cause of action individually and on behalf of the Colorado Consumer Class.

747. Through its labeling and advertising, Defendant made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in its Toxic Hair Relaxer Products.

748. At all relevant times, Defendant had a duty to provide Plaintiff and the other Class members with true and accurate information about its Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by its Toxic Hair Relaxer Products.

749. Defendant knew or should have known, based on evolving scientific studies and research, of the safety risks associated with its Toxic Hair Relaxer Products. Defendant knew or should have known that it had a duty to both learn and disclose the dangers associated with its Toxic Hair Relaxer Products.

750. From the time Defendant's Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendant failed to disclose material facts regarding the safety of its Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendant failed to fulfill its duty to accurately disclose in its labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

751. Defendant failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using its hair relaxer products.

752. Such failures to disclose on the part of Defendant amount to fraudulent omission.

753. Plaintiff and the other Class members justifiably relied on Defendant's nondisclosures to their detriment.

754. In reliance on Defendant's omissions, Plaintiff and the other Class members were induced to purchase and use Defendant's Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendant, including facts revealing the toxic nature of Defendant's products, then Plaintiff and the other Class members would not have purchased or used Defendant's Toxic Hair Relaxer Products.

755. As a direct and proximate result of the foregoing fraudulent omissions by Defendant, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

756. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendant's Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

757. Defendant's conduct with respect to the design and sale of its Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

758. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendant's fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### E. District of Columbia

**COUNT 41 – NEGLIGENCE**
**(Individually and on Behalf of the District of Columbia Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

759. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

760. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Medical Monitoring Class.

761. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

762. Each Defendant owed a duty of care to Plaintiff and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

763. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiff and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

764. Defendants also owed a continuing duty to Plaintiff and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

765. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

766. Each Defendant owed a duty of care to Plaintiff and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

767. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiff and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

768. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiff and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiff and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiff and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

769. Each Defendant knew that the aforesaid wrongdoing would damage Plaintiff and the other Class members.

770. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiff and the other Class members.

771. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiffs and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

772. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiff and the other Class members.

773. Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiff and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

774. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiff and the other Class members.

775. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiff and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiff and the other Class members.

776. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiff's and the other Class members' harms.

777. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

778. As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

779. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 42 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the District of Columbia Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

780. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

781. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Medical Monitoring Class.

782. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

783. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

784. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

785. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

786. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

787. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully

deceived Plaintiff and the general public about the health risks and adverse consequences of the use of such products.

788. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

789. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

790. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

791. Plaintiff and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiff and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

792. In reliance on the misrepresentations by Defendants, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

793. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

794. Defendants' omission of material facts also induced Plaintiff and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class

members had known of the true facts and the facts concealed by Defendants, Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

795. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

796. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

797. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

798. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 43 – NEGLIGENCE PER SE**
**(Individually and on behalf of the District of Columbia Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

799. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

800. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Medical Monitoring Class.

801. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

802. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

803. Plaintiff is currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

804. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

805. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

806. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 44 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the District of Columbia Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

807. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

808. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Medical Monitoring Class.

809. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiff and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

810. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

811. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiff and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

812. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

813. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

814. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

815. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

816. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

817. At all times material to Plaintiff's and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

818. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

819. Plaintiff pleads this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

820. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

821. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening,

testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 45 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the District of Columbia Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

822. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

823. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Medical Monitoring Class.

824. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiff and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

825. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

826. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

827. If Defendants had warned Plaintiff and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiff and the other Class members would not have used their Toxic Hair Relaxer Products.

828. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

829. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

830. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

831. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

832. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a

significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

833. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 46 – VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT**

**(Individually and on Behalf of the District of Columbia Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

834. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

835. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Consumer and Medical Monitoring Classes.

836. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

837. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

838. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the District of Columbia Consumer Protection Procedures Act.

839. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

840. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

841. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

842. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

843. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

844. Plaintiff did not need to send (additional) notice to Defendants of their violations of the District of Columbia Consumer Protection Procedures Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

845. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

846. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal

Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

847. Plaintiff, on behalf of herself and the other Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 47 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the District of Columbia Consumer Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

848. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

849. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Consumer Class.

850. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

851. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

852. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

853. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

854. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

855. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

856. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

857. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class

members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

858. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

859. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 48 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the District of Columbia Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

860. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

861. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Consumer and Medical Monitoring Classes.

862. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

863. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk.

Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

864. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

865. Defendants breached its express warranties under D.C. Code § 28:2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

866. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

867. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

868. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

869. Plaintiff, on behalf of herself and the Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical

Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

## COUNT 49 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE

**(Individually and on Behalf of the District of Columbia Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

870. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

871. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Consumer and Medical Monitoring Classes.

872. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

873. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

874. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

875. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

876. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

877. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

878. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

879. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

880. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

881. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

882. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

883. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

884. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under D.C. Code § 28:2-314, *et seq.*

885. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

886. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

887. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

888. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or

grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

889. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

890. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

891. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

892. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

## COUNT 50 – FRAUDULENT OMISSION

**(Individually and on Behalf of the District of Columbia Consumer Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur)**

893. Plaintiff Smith ("Plaintiff," for purposes of the District of Columbia Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

894. Plaintiff brings this cause of action individually and on behalf of the District of Columbia Consumer Class.

895. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

896. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

897. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

898. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately

disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

899. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

900. Such failures to disclose on the part of Defendants amount to fraudulent omission.

901. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

902. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

903. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

904. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

905. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

906. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**F. Florida**

**COUNT 51 – MEDICAL MONITORING**
**(Individually and on Behalf of the Florida Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, Revlon, Luster, JF Labs, and House of Cheatham)**

907. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Jackson, Longley, McDonald, and Reid ("Plaintiffs," for purposes of the Florida Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

908. Plaintiffs bring this cause of action individually and on behalf of the Florida Medical Monitoring Class.

909. Through their misrepresentations and omissions, Defendants deceived Plaintiffs and the other Class members about the presence of toxic chemicals, which are harmful to women's health, in their Toxic Hair Relaxer Products. Through their deception, Defendants succeeded in persuading large segments of the relevant consumer market to purchase Defendants' Toxic Hair Relaxer Products despite the presence of significant dangers, as set forth herein.

910. Defendants had a pre-marketing, post-manufacturing, and continuing duty to warn, which arose when Defendants knew, or with reasonable care should have known, that Defendants' Toxic Hair Relaxer Products were injurious or fatal.

911. Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Defendants' Toxic Hair Relaxer Products, including the risks of death, disease, and other health problems associated with the use of Defendant's Toxic Hair

Relaxer Products. Defendants failed to disclose that their Toxic Hair Relaxer Products contained toxic chemicals, and Defendants downplayed and/or understated the serious nature of the risks associated with the use of Defendants' Toxic Hair Relaxer Products. Instead, Defendants encouraged the use of their Toxic Hair Relaxer Products despite knowledge of the dangerous side effects that these products present to the consuming population.

912. Defendants falsely and deceptively misrepresented, or knowingly omitted, suppressed, and concealed material facts regarding the ingredients contained within Defendants' Toxic Hair Relaxer Products, as well as the risk posed by those ingredients to the public.

913. Had Plaintiffs and the other Class members known that Defendants' Toxic Hair Relaxer Products contained dangerous ingredients and/or that those ingredients could cause serious life-threatening injuries, none of them would have purchased Defendants' Toxic Hair Relaxer Products.

914. Defendants knew or should have known, and would have known had appropriate testing been done, that the use of Defendants' Toxic Hair Relaxer Products caused the serious and potentially life-threatening adverse health consequences as described herein, including uterine and ovarian cancer.

915. Defendants' actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Defendants' Toxic Hair Relaxer Products.

916. Plaintiffs and the other Class members have used Defendants' Toxic Hair Relaxer Products at least four times—an amount sufficient to significantly increase the risk of and cause the Subject Cancers.

917. As a proximate result of consuming Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

918. As a direct and proximate result of Defendants' tortious conduct, it is reasonably medically necessary for Plaintiffs and the other Class members to incur, both now and in the future, the cost of monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of the Subject Cancers.

919. As a direct and proximate result of Defendants' tortious and unlawful conduct, Plaintiffs and the other Class members have suffered and will suffer economic losses and expenses associated with ongoing medical monitoring.

920. The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs and the other Class members resulting from their exposure to this hazardous substance can only be mitigated or redressed by medical monitoring for the Subject Cancers, which is necessary as a result of the use of Defendants' Toxic Hair Relaxer Products.

921. Early detection and diagnosis of cancer is clinically invaluable because it can prevent, reduce, and/or significantly delay the resulting discomfort, suffering, and/or death. Medical monitoring is crucial to early detection because these conditions are often asymptomatic and, therefore, can only be discovered through proper testing.

922. There are means to detect the Subject Cancers, caused by the use of Defendants' Toxic Hair Relaxer Products, at an early stage, such that subsequent treatment would have a higher

chance of success at prolonging life and/or reducing suffering than would exist without early detection.

923. Such medical monitoring procedures must be prescribed by a qualified physician and may include but are not limited to certain blood and laboratory tests; physical examinations; imaging (as discussed below); biopsies of the reproductive organs (uterus, ovary) and accessory organs; and other medical consultations and procedures necessary for diagnosis.

924. Specific tests and procedures used to diagnose the Subject Cancers to be included in a medical monitoring program may include but are not limited to Pap smears; blood tests, including CA 125 antigen testing; genetic testing; abdominal ultrasounds; pelvic examinations; CT scans; and transvaginal ultrasounds.

925. The available monitoring regime is specific for individuals exposed to products that are known to significantly increase the risk of the Subject Cancers because of using Toxic Hair Relaxer Products. That is because the monitoring regime is different as between women who were not exposed to the Toxic Hair Relaxer Products, versus Plaintiffs and the other Class members who are at significantly increased risk of the Subject Cancers by virtue of their exposure to Defendants' Toxic Hair Relaxer Products. Such differences include the types, timing, frequency, and/or scope of screening and diagnostic examinations that would be recommended for women at this significantly increased risk. The monitoring regime is conducted and analyzed by medical practitioners skilled in the respective medical areas.

926. These monitoring procedures conform to the standard of medical care and are reasonably medically necessary to ensure that the Subject Cancers can be identified early and appropriately treated. Said monitoring procedures will facilitate treatment and interventions that will mitigate the development of, and health effects associated with, the Subject Cancers, which

may in turn increase Plaintiffs' and the other Class members' chance of survival. The present value of the costs of such tests is calculable.

927. Plaintiffs' and the other Class members' significantly increased risk of the Subject Cancers, caused by their exposure to Defendants' Toxic Hair Relaxer Products, can only be mitigated or addressed by appropriate medical testing.

928. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Plaintiffs and the other Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 52 – VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Individually and on Behalf of the Florida Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, Revlon, Luster, JF Labs, and House of Cheatham)**

929. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Jackson, Longley, McDonald, and Reid ("Plaintiffs," for purposes of the Florida Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

930. Plaintiffs bring this cause of action individually and on behalf of the Florida Consumer Class.

931. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair,

unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

932. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

933. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Florida Deceptive and Unfair Trade Practices Act.

934. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

935. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

936. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed,

sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

937. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

938. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

939. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Florida Deceptive and Unfair Trade Practices Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

940. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

**COUNT 53 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Florida Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, Revlon, Luster, JF Labs, and House of Cheatham)**

941. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Jackson, Longley, McDonald, and Reid ("Plaintiffs," for purposes of the Florida Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

942. Plaintiffs bring this cause of action individually and on behalf of the Florida Consumer Class.

943. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

944. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

945. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

946. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

947. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

948. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

949. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

950. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

951. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

952. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 54 – BREACH OF EXPRESS WARRANTY**

**(Individually and on Behalf of the Florida Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, Revlon, Luster, JF Labs, and House of Cheatham)**

953. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Jackson, Longley, McDonald, and Reid ("Plaintiffs," for purposes of the Florida Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

954. Plaintiffs bring this cause of action individually and on behalf of the Florida Consumer Class.

955. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

956. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

957. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

958. Defendants breached its express warranties under Fla. Code § 672.313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

959. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks because they contain toxic chemicals.

960. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 55 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Florida Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Dabur, Namaste, McBride, Revlon, Luster, JF Labs, and House of Cheatham)**

961. Plaintiffs Boyd, Buchanan, Temitrius Burton, Harris-Robinson, Jackson, Longley, McDonald, and Reid ("Plaintiffs," for purposes of the Florida Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

962. Plaintiffs bring this cause of action individually and on behalf of the Florida Consumer Class.

963. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

964. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their hair relaxer.

965. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew

or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

966. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in its labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

967. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

968. Such failures to disclose on the part of Defendants amount to fraudulent omission.

969. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

970. In reliance on the omissions by Defendants, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

971. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

972. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed,

sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

973. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

974. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**G. Illinois**

**COUNT 56 – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(Individually and on Behalf of the Illinois Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, House of Cheatham, Dabur, Namaste, JF Labs, and Luster)**

975. Plaintiffs Baldwin, Casby, Dalton, Edwards, Lane, Taggart, and Williams ("Plaintiffs," for purposes of the Illinois Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

976. Plaintiffs bring this cause of action individually and on behalf of the Illinois Consumer Class.

977. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants'

deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

978. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

d. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

e. Representing that goods are of a particular standard, quality, or grade if they are of another; and

f. Advertising goods with the intent not to sell them as advertised.

979. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

980. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

981. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

982. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed,

sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

983. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

984. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

985. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Illinois Consumer Fraud and Deceptive Business Practices Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

986. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

**COUNT 57 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Illinois Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, House of Cheatham, Dabur, Namaste, JF Labs, and Luster)**

987. Plaintiffs Baldwin, Casby, Dalton, Edwards, Lane, Taggart, and Williams ("Plaintiffs," for purposes of the Illinois Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

988. Plaintiffs bring this cause of action individually and on behalf of the Illinois Consumer Class.

989. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

990. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

991. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

992. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

993. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

994. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

995. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

996. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

997. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

998. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 58 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Illinois Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, House of Cheatham, Dabur, Namaste, JF Labs, and Luster )**

999. Plaintiffs Baldwin, Casby, Dalton, Edwards, Lane, Taggart, and Williams ("Plaintiffs," for purposes of the Illinois Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1000. Plaintiffs bring this cause of action individually and on behalf of the Illinois Consumer Class.

1001. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1002. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1003. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1004. Defendants breached its express warranties under 810 Ill. Comp. Stat. 5/2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1005. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1006. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 59 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Illinois Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Revlon, House of Cheatham, Dabur, Namaste, JF Labs, and Luster )**

1007. Plaintiffs Baldwin, Casby, Dalton, Edwards, Lane, Taggart, and Williams ("Plaintiffs," for purposes of the Illinois Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1008. Plaintiffs bring this cause of action individually and on behalf of the Illinois Consumer Class.

1009. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1010. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1011. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1012. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1013. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

1014. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1015. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1016. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1017. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

1018. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1019. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1020. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### H. Indiana

### COUNT 60 – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

**(Individually and on Behalf of the Indiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature,)**

1021. Plaintiff Glenn ("Plaintiff," for purposes of the Indiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1022. Plaintiff brings this cause of action individually and on behalf of the Indiana Consumer Class.

1023. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1024. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

d. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

e. Representing that goods are of a particular standard, quality, or grade if they are of another; and

f. Advertising goods with the intent not to sell them as advertised.

1025. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Indiana Deceptive Consumer Sales Act.

1026. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1027. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1028. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1029. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1030. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1031. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Indiana Deceptive Consumer Sales Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1032. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 61 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Indiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1033. Plaintiff Glenn ("Plaintiff," for purposes of the Indiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1034. Plaintiff brings this cause of action individually and on behalf of the Indiana Consumer Class.

1035. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1036. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1037. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1038. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1039. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1040. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1041. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1042. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1043. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1044. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 62 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Indiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1045. Plaintiff Glenn ("Plaintiff," for purposes of the Indiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1046. Plaintiff brings this cause of action individually and on behalf of the Indiana Consumer Class.

1047. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1048. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1049. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1050. Defendants breached its express warranties under Ind. Code § 26-1-2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1051. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1052. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 63 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Indiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1053. Plaintiff Glenn ("Plaintiff," for purposes of the Indiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1054. Plaintiff brings this cause of action individually and on behalf of the Indiana Consumer Class.

1055. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1056. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1057. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1058. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1059. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1060. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1061. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1062. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1063. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1064. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1065. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1066. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1067. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Ind. Code § 26-1-2-314, *et seq*.

1068. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1069. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1070. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1071. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1072. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1073. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 64 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Indiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1074. Plaintiff Glenn ("Plaintiff," for purposes of the Indiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1075. Plaintiff brings this cause of action individually and on behalf of the Indiana Consumer Class.

1076. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1077. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1078. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1079. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1080. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1081. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1082. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1083. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1084. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1085. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1086. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1087. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### I. Iowa

**COUNT 65 – VIOLATIONS OF THE IOWA CONSUMER FRAUD ACT**
**(Individually and on Behalf of the Iowa Consumer Class Against Defendants Dabur, Namaste, and Luster)**

1088. Plaintiff Washington ("Plaintiff," for purposes of the Iowa Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1089. Plaintiff brings this cause of action individually and on behalf of the Iowa Consumer Class.

1090. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Iowa Consumer Fraud Act, Iowa Code § 714.16 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1091. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1092. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Iowa Consumer Fraud Act.

1093. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1094. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1095. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1096. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1097. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1098. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Iowa Consumer Fraud Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1099. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 66 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Iowa Consumer Class Against Defendants Dabur, Namaste, and Luster)**

1100. Plaintiff Washington ("Plaintiff," for purposes of the Iowa Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1101. Plaintiff brings this cause of action individually and on behalf of the Iowa Consumer Class.

1102. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1103. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1104. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1105. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1106. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1107. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1108. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1109. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1110. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1111. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 67 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Iowa Consumer Class Against Defendants Dabur, Namaste, and Luster)**

1112. Plaintiff Washington ("Plaintiff," for purposes of the Iowa Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1113. Plaintiff brings this cause of action individually and on behalf of the Iowa Consumer Class.

1114. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1115. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1116. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1117. Defendants breached its express warranties under Iowa Code § 554.2313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1118. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1119. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 68 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Iowa Consumer Class Against Defendants Dabur, Namaste, and Luster)**

1120. Plaintiff Washington ("Plaintiff," for purposes of the Iowa Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1121. Plaintiff brings this cause of action individually and on behalf of the Iowa Consumer Class.

1122. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1123. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1124. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1125. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1126. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1127. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1128. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1129. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1130. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1131. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1132. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1133. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**J. Louisiana**

**COUNT 69 – VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER. PROTECTION LAW**
**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1134. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1135. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1136. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Louisiana Unfair Trade Practices and Consumer. Protection Law, La. Rev. Stat. Ann. § 51:1401 *et seq.*, when they misled consumers regarding the

safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1137. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1138. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Louisiana Unfair Trade Practices and Consumer. Protection Law.

1139. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1140. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1141. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1142. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1143. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1144. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Louisiana Unfair Trade Practices and Consumer Protection Law pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1145. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 70 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1146. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1147. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1148. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1149. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1150. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1151. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1152. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1153. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1154. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1155. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1156. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1157. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 71 – BREACH OF EXPRESS WARRANTY – LOUISIANA PRODUCTS LIABILITY ACT**
**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1158. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1159. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1160. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1161. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe under the Louisiana Products Liability Act ("LPLA"), La. R.S. § 9:2800.58. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1162. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1163. Defendants breached its express warranties because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1164. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks because they contain toxic chemicals.

1165. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial. Plaintiff asserts the application of *res ipsa loquitur* under the LPLA.

**COUNT 72 – BREACH OF IMPLIED WARRANTY OF FITNESS FOR ORDINARY USE**

**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1166. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1167. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1168. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1169. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe

and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1170. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1171. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1172. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1173. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1174. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1175. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1176. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1177. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1178. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1179. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1180. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under La. Civ. Code Art. 2524.

1181. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1182. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1183. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1184. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1185. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1186. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 73 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1187. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1188. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1189. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1190. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1191. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1192. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1193. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1194. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1195. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1196. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the

toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1197. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1198. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1199. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1200. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**COUNT 74 – REDHIBITION**
**(Individually and on Behalf of the Louisiana Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

1201. Plaintiff Casby ("Plaintiff," for purposes of the Louisiana Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1202. Plaintiff brings this cause of action individually and on behalf of the Louisiana Consumer Class.

1203. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1204. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff and the other Class members against redhibitory defects or vices in the Class Vehicles. La. Civ. Code Art. 2520.

1205. The Toxic Hair Relaxer Products sold to Plaintiff and the other Class members contain redhibitory defects because the Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1206. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could at any point after leaving Defendants' control.

1207. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1208. Plaintiff and the other Class members could not have discovered the redhibitory defects or realized Defendants' Toxic Hair Relaxer Products' danger through the use of reasonable care.

1209. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the redhibitory defects described above.

1210. The redhibitory defects were a substantial factor in bringing about Plaintiff's and the other Class members' injuries.

1211. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses into the future.

1212. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1213. Plaintiff and the other Class members did not need to send (additional) notice to Defendants pursuant to La. Civ. Code Art. 2522 because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1214. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' use of products with redhibitory defects, in an amount to be determined at trial. La. Civ. Code Art. 2545.

**K. <u>Maryland</u>**

**<u>COUNT 75 – NEGLIGENCE</u>**
**(Individually and on Behalf of the Maryland Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1215. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1216. Plaintiffs bring this cause of action individually and on behalf of the Maryland Medical Monitoring Class.

1217. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

1218. Each Defendant owed a duty of care to Plaintiffs and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

1219. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiffs and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

1220. Defendants also owed a continuing duty to Plaintiffs and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

1221. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

1222. Each Defendant owed a duty of care to Plaintiffs and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to

humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

1223. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

1224. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiffs and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiffs and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiffs and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

1225. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiffs and the other Class members.

1226. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs and the other Class members.

1227. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiffs and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

1228. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and the other Class members.

1229. Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiffs and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

1230. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiffs and the other Class members.

1231. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiffs and the other Class members.

1232. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiffs and the other Class members' harms.

1233. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1234. As a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers,

and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1235. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 76 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the Maryland Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1236. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1237. Plaintiffs bring this cause of action individually and on behalf of the Maryland Medical Monitoring Class.

1238. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1239. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

1240. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

1241. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

1242. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1243. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully deceived Plaintiffs and the general public about the health risks and adverse consequences of the use of such products.

1244. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1245. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

1246. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

1247. Plaintiffs and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiffs and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

1248. In reliance on the misrepresentations by Defendants, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

1249. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

1250. Defendants' omission of material facts also induced Plaintiffs and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1251. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

1252. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1253. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1254. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 77 – NEGLIGENCE PER SE**
**(Individually and on behalf of the Maryland Medical Monitoring Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1255. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1256. Plaintiffs bring this cause of action individually and on behalf of the Maryland Medical Monitoring Class.

1257. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

1258. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

1259. Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

1260. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

1261. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1262. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 78 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the Maryland Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1263. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1264. Plaintiffs bring this cause of action individually and on behalf of the Maryland Medical Monitoring Class.

1265. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiffs and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

1266. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

1267. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiffs and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

1268. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

1269. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

1270. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1271. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1272. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

1273. At all times material to Plaintiffs' and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

1274. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1275. Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

1276. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1277. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening,

testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 79 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the Maryland Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1278. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1279. Plaintiffs bring this cause of action individually and on behalf of the Maryland Medical Monitoring Class.

1280. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiffs and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

1281. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

1282. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

1283. If Defendants had warned Plaintiffs and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiffs and the other Class members would not have used their Toxic Hair Relaxer Products.

1284. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiffs and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

1285. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiffs and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1286. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1287. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1288. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a

significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1289. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 80 – VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(Individually and on Behalf of the Maryland Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1290. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1291. Plaintiffs bring this cause of action individually and on behalf of the Maryland Consumer and Medical Monitoring Classes.

1292. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1293. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1294. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Maryland Consumer Protection Act.

1295. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1296. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

1297. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1298. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1299. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1300. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Maryland Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1301. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seeks to recover the actual damages they have suffered.

1302. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1303. Plaintiffs, on behalf of themselves and the other Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance

notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

## COUNT 81 – UNJUST ENRICHMENT
**(Individually and on Behalf of the Maryland Consumer Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1304. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1305. Plaintiffs bring this cause of action individually and on behalf of the Maryland Consumer Class.

1306. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

1307. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

1308. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

1309. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1310. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1311. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

1312. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

1313. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1314. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1315. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 82 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Maryland Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1316. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1317. Plaintiffs bring this cause of action individually and on behalf of the Maryland Consumer and Medical Monitoring Classes.

1318. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1319. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1320. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1321. Defendants breached its express warranties under Md. Code Ann., Com. Law § 2-313, *et seq*. because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1322. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1323. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

1324. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1325. Plaintiffs, on behalf of themselves and the Medical Monitoring Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b)

attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 83 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Maryland Consumer and Medical Monitoring Classes Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1326. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1327. Plaintiffs bring this cause of action individually and on behalf of the Maryland Consumer and Medical Monitoring Classes.

1328. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1329. Prior to the time that Plaintiffs and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiffs, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1330. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1331. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiffs and the other Class members because they were not fit for their ordinary purposes,

or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1332. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiffs and the other Class members.

1333. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1334. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1335. At the time that Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiffs and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1336. Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1337. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1338. Plaintiffs and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1339. Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1340. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Md. Code Ann., Com. Law § 2-314, *et seq*.

1341. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiffs and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1342. Defendants' breach of warranties were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

1343. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1344. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1345. Plaintiffs and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects

alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1346. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

1347. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1348. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 84 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Maryland Consumer Class Against Defendants Revlon, Strength of Nature, Namaste, Dabur, L'Oréal, SoftSheen, JF Labs, and Luster)**

1349. Plaintiffs Lane and Smith ("Plaintiffs," for purposes of the Maryland Classes' claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1350. Plaintiffs bring this cause of action individually and on behalf of the Maryland Consumer Class.

1351. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1352. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1353. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1354. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1355. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

1356. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1357. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1358. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1359. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

1360. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1361. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1362. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**L. Michigan**

**COUNT 85 – VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(Individually and on Behalf of the Michigan Consumer Class Against Defendants L'Oréal, SoftSheen, and Luster)**

1363. Plaintiff Angela Burton ("Plaintiff," for purposes of the Michigan Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1364. Plaintiff brings this cause of action individually and on behalf of the Michigan Consumer Class.

1365. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1366. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1367. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by

Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Michigan Consumer Protection Act.

1368. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1369. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1370. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1371. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1372. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1373. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Michigan Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1374. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 86 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Michigan Consumer Class Against Defendants L'Oréal, SoftSheen, Luster)**

1375. Plaintiff Angela Burton ("Plaintiff," for purposes of the Michigan Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1376. Plaintiff brings this cause of action individually and on behalf of the Michigan Consumer Class.

1377. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1378. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1379. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1380. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1381. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1382. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1383. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1384. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1385. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1386. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 87 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Michigan Consumer Class Against Defendants L'Oréal, SoftSheen, and Luster)**

1387. Plaintiff Angela Burton ("Plaintiff," for purposes of the Michigan Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1388. Plaintiff brings this cause of action individually and on behalf of the Michigan Consumer Class.

1389. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1390. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe.

To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1391. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1392. Defendants breached its express warranties under Mich. Comp. Laws 440.2313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1393. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1394. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 88 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Michigan Consumer Class Against Defendants L'Oréal, SoftSheen, and Luster)**

1395. Plaintiff Angela Burton ("Plaintiff," for purposes of the Michigan Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1396. Plaintiff brings this cause of action individually and on behalf of the Michigan Consumer Class.

1397. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1398. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1399. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1400. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1401. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1402. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1403. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1404. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1405. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1406. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1407. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1408. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1409. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Mich. Comp. Laws 440.2314, *et seq*.

1410. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the

defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1411. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1412. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1413. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1414. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1415. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 89 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Michigan Consumer Class Against Defendants L'Oréal, SoftSheen, and Luster)**

1416. Plaintiff Angela Burton ("Plaintiff," for purposes of the Michigan Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1417. Plaintiff brings this cause of action individually and on behalf of the Michigan Consumer Class.

1418. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1419. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1420. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1421. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately

disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1422. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1423. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1424. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1425. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1426. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1427. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1428. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1429. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**M. Mississippi**

**COUNT 90 – VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT**
**(Individually and on Behalf of the Mississippi Consumer Class Against Defendants Revlon, Dabur, Namaste, L'Oréal, SoftSheen, and Strength of Nature)**

1430. Plaintiffs Dillon, Edwards, and Quinn ("Plaintiffs," for purposes of the Mississippi Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1431. Plaintiffs bring this cause of action individually and on behalf of the Mississippi Consumer Class.

1432. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-5 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1433. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1434. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Mississippi Consumer Protection Act.

1435. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1436. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

1437. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1438. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1439. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1440. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Mississippi Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1441. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

**COUNT 91 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Mississippi Consumer Class Against Defendants Revlon, Dabur, Namaste, L'Oréal, SoftSheen, and Strength of Nature)**

1442. Plaintiffs Dillon, Edwards, and Quinn ("Plaintiffs," for purposes of the Mississippi Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1443. Plaintiffs bring this cause of action individually and on behalf of the Mississippi Consumer Class.

1444. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

1445. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

1446. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

1447. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1448. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1449. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

1450. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

1451. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1452. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1453. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 92 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Mississippi Consumer Class Against Defendants Revlon, Dabur, Namaste, L'Oréal, SoftSheen, and Strength of Nature)**

1454. Plaintiffs Dillon, Edwards, and Quinn ("Plaintiffs," for purposes of the Mississippi Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1455. Plaintiffs bring this cause of action individually and on behalf of the Mississippi Consumer Class.

1456. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1457. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1458. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1459. Defendants breached its express warranties under Miss. Code § 75-2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1460. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks because they contain toxic chemicals.

1461. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 93 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Mississippi Consumer Class Against Defendants Revlon, Dabur, Namaste, L'Oréal, SoftSheen, and Strength of Nature)**

1462. Plaintiffs Dillon, Edwards, and Quinn ("Plaintiffs," for purposes of the Mississippi Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1463. Plaintiffs bring this cause of action individually and on behalf of the Mississippi Consumer Class.

1464. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1465. Prior to the time that Plaintiffs and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiffs, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1466. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1467. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiffs and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1468. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiffs and the other Class members.

1469. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1470. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1471. At the time that Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiffs and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1472. Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1473. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1474. Plaintiffs and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1475. Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations

described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1476. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Miss. Code § 75-2-314, *et seq*.

1477. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiffs and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1478. Defendants' breach of warranties were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

1479. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1480. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1481. Plaintiffs and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1482. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

1483. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1484. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 94 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Mississippi Consumer Class Against Defendants Revlon, Dabur, Namaste, L'Oréal, SoftSheen, and Strength of Nature)**

1485. Plaintiffs Dillon, Edwards, and Quinn ("Plaintiffs," for purposes of the Mississippi Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1486. Plaintiffs bring this cause of action individually and on behalf of the Mississippi Consumer Class.

1487. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1488. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1489. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1490. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1491. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

1492. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1493. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1494. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1495. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

1496. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1497. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1498. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### N. Missouri

**COUNT 95 – NEGLIGENCE**
**(Individually and on Behalf of the Missouri Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, and Revlon)**

1499. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1500. Plaintiff brings this cause of action individually and on behalf of the Missouri Medical Monitoring Class.

1501. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

1502. Each Defendant owed a duty of care to Plaintiff and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

1503. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiff and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

1504. Defendants also owed a continuing duty to Plaintiff and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

1505. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair

relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

1506. Each Defendant owed a duty of care to Plaintiff and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

1507. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiff and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

1508. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiff and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiff and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiff and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

1509. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiff and the other Class members.

1510. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff and the other Class members.

1511. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiff and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

1512. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiff and the other Class members.

1513. E Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiff and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

1514. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiff and the other Class members.

1515. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiff and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiff and the other Class members.

1516. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiff and the other Class members' harms.

1517. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1518. As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1519. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 96 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the Missouri Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, and Revlon)**

1520. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1521. Plaintiff brings this cause of action individually and on behalf of the Missouri Medical Monitoring Class.

1522. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1523. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

1524. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

1525. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

1526. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1527. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully

deceived Plaintiff and the general public about the health risks and adverse consequences of the use of such products.

1528. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1529. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

1530. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

1531. Plaintiff and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiff and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

1532. In reliance on the misrepresentations by Defendants, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

1533. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1534. Defendants' omission of material facts also induced Plaintiff and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class

members had known of the true facts and the facts concealed by Defendants, Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1535. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

1536. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1537. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1538. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers, for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 97 – NEGLIGENCE PER SE**
**(Individually and on behalf of the Missouri Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, and Revlon)**

1539. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1540. Plaintiff brings this cause of action individually and on behalf of the Missouri Medical Monitoring Class.

1541. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

1542. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

1543. Plaintiff is currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

1544. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

1545. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1546. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 98 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the Missouri Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, and Revlon)**

1547. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1548. Plaintiff brings this cause of action individually and on behalf of the Missouri Medical Monitoring Class.

1549. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiff and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

1550. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their

design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

1551. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiff and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

1552. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

1553. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

1554. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1555. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1556. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

1557. At all times material to Plaintiff's and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

1558. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1559. Plaintiff pleads this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

1560. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1561. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 99 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the Missouri Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, and Revlon)**

1562. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1563. Plaintiff brings this cause of action individually and on behalf of the Missouri Medical Monitoring Class.

1564. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiff and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

1565. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

1566. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

1567. If Defendants had warned Plaintiff and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer,

and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiff and the other Class members would not have used their Toxic Hair Relaxer Products.

1568. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

1569. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1570. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1571. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1572. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1573. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 100 – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**(Individually and on Behalf of the Missouri Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, and Revlon)**

1574. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1575. Plaintiff brings this cause of action individually and on behalf of the Missouri Consumer and Medical Monitoring Classes.

1576. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1577. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1578. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Missouri Merchandising Practices Act.

1579. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1580. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1581. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1582. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1583. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1584. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Missouri Merchandising Practices Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1585. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

1586. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1587. Plaintiff, on behalf of herself and the other Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b)

attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 101 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Missouri Consumer Class Against Defendants L'Oréal, SoftSheen, and Revlon)**

1588. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1589. Plaintiff brings this cause of action individually and on behalf of the Missouri Consumer Class.

1590. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1591. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1592. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1593. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1594. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class

members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1595. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1596. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1597. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1598. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1599. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 102 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Missouri Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, and Revlon)**

1600. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1601. Plaintiff brings this cause of action individually and on behalf of the Missouri Consumer and Medical Monitoring Classes.

1602. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1603. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1604. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1605. Defendants breached its express warranties under Mo. Rev. Stat. § 400.2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1606. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1607. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

1608. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1609. Plaintiff, on behalf of herself and the Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers, for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 103 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Missouri Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, and Revlon)**

1610. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1611. Plaintiff brings this cause of action individually and on behalf of the Missouri Consumer and Medical Monitoring Classes.

1612. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1613. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1614. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1615. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1616. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1617. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1618. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1619. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1620. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1621. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1622. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1623. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1624. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Mo. Rev. Stat. § 400.2-314, *et seq*.

1625. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1626. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1627. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1628. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1629. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1630. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

1631. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1632. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 104 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Missouri Consumer Class Against Defendants L'Oréal, SoftSheen, and Revlon)**

1633. Plaintiff Wall ("Plaintiff," for purposes of the Missouri Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1634. Plaintiff brings this cause of action individually and on behalf of the Missouri Consumer Class.

1635. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1636. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1637. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1638. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1639. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1640. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1641. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1642. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1643. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1644. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1645. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1646. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### O. Nevada

**COUNT 105 – NEGLIGENCE**
**(Individually and on Behalf of the Nevada Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1647. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1648. Plaintiff brings this cause of action individually and on behalf of the Nevada Medical Monitoring Class.

1649. At all relevant times, each Defendant had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

1650. Each Defendant owed a duty of care to Plaintiff and the other Class members to ensure that the Toxic Hair Relaxer Products it sold in the United States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated.

1651. Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiff and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members, including that the products were contained ingredients not specified on the label that were likely to cause harm to consumers.

1652. Defendants also owed a continuing duty to Plaintiff and the other Class members to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products.

1653. At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer.

1654. Each Defendant owed a duty of care to Plaintiff and the other Class members because they were foreseeable, reasonable, and probable users of Toxic Hair Relaxer Products. Each Defendant knew or should have known that its Toxic Hair Relaxer Products were harmful to humans, contained ingredients other than those stated, and/or were adulterated, and each was in the best position to uncover and remedy these shortcomings.

1655. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiff and the other Class members would not realize the potential risks and dangers of their Toxic Hair Relaxer Products.

1656. Each Defendant failed to discharge its duty of care. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing their Toxic Hair Relaxer Products negligently, recklessly, and/or with extreme carelessness, and by failing to adequately warn of the risks and dangers of their Toxic Hair Relaxer Products—as described in the allegations above. Such breaches include but are not limited to:

a. Failing to warn Plaintiff and the other Class members of the risks and dangers associated with the use of their Toxic Hair Relaxer Products;

b. Failing to properly test their Toxic Hair Relaxer Products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their Toxic Hair Relaxer Products for consumer use;

c. Failing to properly test their Toxic Hair Relaxer Products to determine the increased risk of harm to the endocrine system, including uterine and ovarian cancers, during the normal and/or intended use of their Toxic Hair Relaxer Products;

d. Designing their Toxic Hair Relaxer Products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e. Failing to inform Plaintiff and the other Class members as to the safe and proper methods of handling and using their Toxic Hair Relaxer Products;

f. Failing to remove or recall their Toxic Hair Relaxer Products from the market when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

g. Failing to instruct Plaintiff and the other Class members as to the methods for reducing exposure to their Toxic Hair Relaxer Products, which caused increased risk of cancer, including uterine and ovarian cancer;

h. Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known that their Toxic Hair Relaxer Products were defective and/or dangerous;

i. Claiming in labeling and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j. Failing to act like a reasonably prudent company under similar circumstances.

1657. Each Defendant knew, or should have known through reasonable care, that the aforesaid wrongdoing would foreseeably cause injuries and other damage to Plaintiff and the other Class members.

1658. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff and the other Class members.

1659. Due to Defendants' failure to exercise ordinary care and to comply with the duties associated with selling cosmetic products, Plaintiff and the other Class members were unable to discover the dangerous nature of Defendants' Toxic Hair Relaxer Products.

1660. Defendants' acts and omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiff and the other Class members.

1661. Each Defendant negligently failed to promptly and immediately warn and disclose to Plaintiff and the other Class members that use of their hair relaxer products would result in harm, and that using their products in the intended manner results in toxicity, delaying notice of this harmful and toxic exposure and thus causing continued exposure and delaying necessary testing, examinations, surveillance, and treatment.

1662. Defendants' negligent conduct created and then exacerbated an unreasonable, dangerous condition for Plaintiff and the other Class members.

1663. Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiff and the other Class members, and Defendants' acts and omissions had a great probability of causing significant harm, and in fact it resulted in such harm to Plaintiff and the other Class members.

1664. Defendants' negligence and gross negligence were a substantial factor in causing and/or contributing to Plaintiff and the other Class members' harms.

1665. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members—including their marketing—was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1666. As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers,

and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1667. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 106 – NEGLIGENT MISREPRESENTATION/OMISSION**
**(Individually and on Behalf of the Nevada Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1668. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1669. Plaintiff brings this cause of action individually and on behalf of the Nevada Medical Monitoring Class.

1670. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1671. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings of any risks they knew of or should have known of related to using their Toxic Hair Relaxer Products. Defendants knew or should have known about this duty.

1672. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew

or should have known that their representations about the safety of their Toxic Hair Relaxer Products were false.

1673. Defendants breached their duty in representing that their Toxic Hair Relaxer Products have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein.

1674. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the public. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1675. Additionally, Defendants have a duty to not make false representations with respect to their Toxic Hair Relaxer Products. At all relevant times, Defendants conducted sales and marketing campaigns to promote the sale of their Toxic Hair Relaxer Products and willfully deceived Plaintiff and the general public about the health risks and adverse consequences of the use of such products.

1676. Defendants' misrepresentations included but are not limited to the statements in labels and marketing that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1677. Defendants made such representations and failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their Toxic Hair Relaxer Products.

1678. Defendants' misrepresentations and omissions concealed from Plaintiffs and the other Class members that Defendants' Toxic Hair Relaxer Products posed a high risk of unreasonable, dangerous, health conditions, including but not limited to uterine and ovarian cancer.

1679. Plaintiff and the other Class members justifiably relied on Defendants' misrepresentations and nondisclosures to their detriment. Specifically, Plaintiff and the other Class members relied on representations that their Toxic Hair Relaxer Products were safe to use as expected and instructed, when they were not.

1680. In reliance on the misrepresentations by Defendants, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products.

1681. As a direct and proximate result of the foregoing negligent misrepresentations by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1682. Defendants' omission of material facts also induced Plaintiff and the other Class members into purchasing Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the true facts and the facts concealed by Defendants, Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1683. Because of the severe nature of the harms caused by Defendants' Toxic Hair Relaxer Products, no reasonable person would have purchased these products if Defendants have fully apprised the public of the dangers associated with these products.

1684. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1685. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1686. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 107 – NEGLIGENCE PER SE**
**(Individually and on behalf of the Nevada Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1687. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1688. Plaintiff brings this cause of action individually and on behalf of the Nevada Medical Monitoring Class.

1689. The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' Toxic Hair Relaxer Products.

1690. Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

a. 21 U.S.C. § 331;

b. 21 U.S.C. § 361;

c. 21 U.S. Code § 362; and

d. 21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

1691. Plaintiff is currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

1692. Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

1693. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1694. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or

compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 108 – STRICT LIABILITY: DESIGN DEFECT**
**(Individually and on Behalf of the Nevada Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1695. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1696. Plaintiff brings this cause of action individually and on behalf of the Nevada Medical Monitoring Class.

1697. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products that were used by Plaintiff and the other Class members, and Defendants were in the business of selling their Toxic Hair Relaxer Products.

1698. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' Toxic Hair Relaxer Products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

1699. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because they do not perform as safely as ordinary consumers, including Plaintiff and the other Class members, would expect when used in an intended or reasonably foreseeable manner.

1700. Defendants' Toxic Hair Relaxer Products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

1701. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through

a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

1702. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1703. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1704. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

1705. At all times material to Plaintiff's and the other Class members' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs and the other Class members without substantially impairing the utility of Defendants' Toxic Hair Relaxer Products.

1706. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1707. Plaintiff pleads this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

1708. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of their Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1709. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers, for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 109 – STRICT LIABILITY: FAILURE TO WARN**
**(Individually and on Behalf of the Nevada Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1710. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1711. Plaintiff brings this cause of action individually and on behalf of the Nevada Medical Monitoring Class.

1712. Defendants designed, manufactured, marketed, and sold their Toxic Hair Relaxer Products, which were used by Plaintiff and the other Class members, and Defendants were in the business of selling Toxic Hair Relaxer Products.

1713. Defendants' Toxic Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

1714. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer. Defendants failed to give appropriate and adequate warning of such risks. Nor did Defendants warn that the safety of their Toxic Hair Relaxer Products has not been determined. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their products' use or the lack of safety determination.

1715. If Defendants had warned Plaintiff and the other Class members that use of their Toxic Hair Relaxer Products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine and ovarian cancer, and/or that the safety of the Toxic Hair Relaxer Products had not been determined, Plaintiff and the other Class members would not have used their Toxic Hair Relaxer Products.

1716. Defendants caused their Toxic Hair Relaxer Products to enter the stream of commerce and to be sold to consumers, including Plaintiff and the other Class members, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

1717. Defendants' Toxic Hair Relaxer Products were expected to, and did, reach consumers, including Plaintiff and the other Class members, without substantial change in the condition in which their Toxic Hair Relaxer Products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

1718. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

1719. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1720. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1721. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 110 – VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(Individually and on Behalf of the Nevada Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1722. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1723. Plaintiff brings this cause of action individually and on behalf of the Nevada Consumer and Medical Monitoring Classes.

1724. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1725. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1726. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Nevada Deceptive Trade Practices Act.

1727. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1728. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1729. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1730. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1731. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1732. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Nevada Deceptive Trade Practices Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1733. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic

nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

1734. Further, as a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1735. Plaintiff, on behalf of herself and the other Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 111 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Nevada Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1736. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1737. Plaintiff brings this cause of action individually and on behalf of the Nevada Consumer Class.

1738. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1739. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1740. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1741. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1742. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1743. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1744. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1745. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1746. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1747. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 112 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Nevada Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1748. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1749. Plaintiff brings this cause of action individually and on behalf of the Nevada Consumer and Medical Monitoring Classes.

1750. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1751. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease

the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1752. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1753. Defendants breached its express warranties under Nev. Rev. Stat. § 104.2313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1754. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1755. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

1756. As a direct and proximate result of each Defendant's breach of its express warranty, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1757. Plaintiff, on behalf of herself and the Medical Monitoring Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 113 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Nevada Consumer and Medical Monitoring Classes Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1758. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1759. Plaintiff brings this cause of action individually and on behalf of the Nevada Consumer and Medical Monitoring Classes.

1760. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1761. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1762. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1763. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1764. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1765. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1766. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1767. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1768. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1769. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1770. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1771. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1772. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Nev. Rev. Stat. § 104.2314, *et seq*.

1773. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1774. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1775. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1776. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or

grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1777. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1778. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

1779. As a direct and proximate result of each Defendant's wrongful conduct, Plaintiff and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1780. Plaintiff, on behalf of herself and the other Class members, seeks injunctive and monetary relief, including (a) the creation of a fund to finance notifying Medical Monitoring Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiff and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 114 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Nevada Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1781. Plaintiff Meadows ("Plaintiff," for purposes of the Nevada Classes' claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1782. Plaintiff brings this cause of action individually and on behalf of the Nevada Consumer Class.

1783. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1784. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1785. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1786. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1787. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1788. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1789. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1790. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1791. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1792. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1793. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1794. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of

Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**P. New Jersey**

**COUNT 115 – VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(Individually and on Behalf of the New Jersey Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1795. Plaintiff Loggins ("Plaintiff," for purposes of the New Jersey Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1796. Plaintiff brings this cause of action individually and on behalf of the New Jersey Consumer Class.

1797. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1798. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1799. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the New Jersey Consumer Fraud Act.

1800. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1801. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1802. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1803. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1804. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available

and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1805. Plaintiff did not need to send (additional) notice to Defendants of their violations of the New Jersey Consumer Fraud Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1806. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 116 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the New Jersey Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1807. Plaintiff Loggins ("Plaintiff," for purposes of the New Jersey Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1808. Plaintiff brings this cause of action individually and on behalf of the New Jersey Consumer Class.

1809. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1810. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1811. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1812. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1813. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1814. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1815. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1816. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class

members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1817. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1818. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 117 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the New Jersey Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1819. Plaintiff Loggins ("Plaintiff," for purposes of the New Jersey Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1820. Plaintiff brings this cause of action individually and on behalf of the New Jersey Consumer Class.

1821. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1822. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk.

Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1823. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1824. Defendants breached its express warranties under N.J. Stat. § 12A:2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1825. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1826. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 118 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the New Jersey Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1827. Plaintiff Loggins ("Plaintiff," for purposes of the New Jersey Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1828. Plaintiff brings this cause of action individually and on behalf of the New Jersey Consumer Class.

1829. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1830. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1831. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1832. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1833. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1834. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1835. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1836. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1837. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1838. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1839. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1840. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1841. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under N.J. Stat. § 12A:2-314, *et seq*.

1842. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the

defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1843. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

1844. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1845. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1846. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1847. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 119 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the New Jersey Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, and Revlon)**

1848. Plaintiff Loggins ("Plaintiff," for purposes of the New Jersey Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1849. Plaintiff brings this cause of action individually and on behalf of the New Jersey Consumer Class.

1850. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1851. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1852. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1853. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately

disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1854. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

1855. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1856. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1857. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1858. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

1859. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1860. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1861. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**Q. Pennsylvania**

**COUNT 120 – MEDICAL MONITORING**
**(Individually and on Behalf of the Pennsylvania Medical Monitoring Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, Revlon, JF Labs, Avlon, and Luster)**

1862. Plaintiffs Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Medical Monitoring Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1863. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Medical Monitoring Class.

1864. Through their misrepresentations and omissions, Defendants deceived Plaintiffs and the other Class members about the presence of toxic chemicals, which are harmful to women's health, in their Toxic Hair Relaxer Products. Through their deception, Defendants succeeded in persuading large segments of the relevant consumer market to purchase Defendants' Toxic Hair Relaxer Products despite the presence of significant dangers, as set forth herein.

1865. Defendants had a pre-marketing, post-manufacturing, and continuing duty to warn, which arose when Defendants knew, or with reasonable care should have known, that Defendants' Toxic Hair Relaxer Products were injurious or fatal.

1866. Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Defendants' Toxic Hair Relaxer Products, including the risks of death, disease, and other health problems associated with the use of Defendant's Toxic Hair

Relaxer Products. Defendants failed to disclose that their Toxic Hair Relaxer Products contained toxic chemicals, and Defendants downplayed and/or understated the serious nature of the risks associated with the use of Defendants' Toxic Hair Relaxer Products. Instead, Defendants encouraged the use of their Toxic Hair Relaxer Products despite knowledge of the dangerous side effects that these products present to the consuming population.

1867. Defendants falsely and deceptively misrepresented, or knowingly omitted, suppressed, and concealed material facts regarding the ingredients contained within Defendants' Toxic Hair Relaxer Products, as well as the risk posed by those ingredients to the public.

1868. Had Plaintiffs and the other Class members known that Defendants' Toxic Hair Relaxer Products contained dangerous ingredients and/or that those ingredients could cause serious life-threatening injuries, none of them would have purchased Defendants' Toxic Hair Relaxer Products.

1869. Defendants knew or should have known, and would have known had appropriate testing been done, that the use of Defendants' Toxic Hair Relaxer Products caused the serious and potentially life-threatening adverse health consequences as described herein, including uterine and ovarian cancer.

1870. Defendants' actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Defendants' Toxic Hair Relaxer Products.

1871. Plaintiffs and the other Class members have used Defendants' Toxic Hair Relaxer Products at least four times—an amount sufficient to significantly increase the risk of and cause the Subject Cancers.

1872. As a proximate result of consuming Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members have been significantly exposed to Toxic Hair Relaxer Products, have sustained a significantly increased risk of developing the serious and potentially fatal Subject Cancers, and have suffered and will continue to suffer economic losses and expenses associated with medically necessary medical monitoring.

1873. As a direct and proximate result of Defendants' tortious conduct, it is reasonably medically necessary for Plaintiffs and the other Class members to incur, both now and in the future, the cost of monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of the Subject Cancers.

1874. As a direct and proximate result of Defendants' tortious and unlawful conduct, Plaintiffs and the other Class members have suffered and will suffer economic losses and expenses associated with ongoing medical monitoring.

1875. The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs and the other Class members resulting from their exposure to this hazardous substance can only be mitigated or redressed by medical monitoring for the Subject Cancers, which is necessary as a result of the use of Defendants' Toxic Hair Relaxer Products.

1876. Early detection and diagnosis of cancer is clinically invaluable because it can prevent, reduce, and/or significantly delay the resulting discomfort, suffering, and/or death. Medical monitoring is crucial to early detection because these conditions are often asymptomatic and, therefore, can only be discovered through proper testing.

1877. There are means to detect the Subject Cancers, caused by the use of Defendants' Toxic Hair Relaxer Products, at an early stage, such that subsequent treatment would have a higher

chance of success at prolonging life and/or reducing suffering than would exist without early detection.

1878. Such medical monitoring procedures must be prescribed by a qualified physician and may include but are not limited to certain blood and laboratory tests; physical examinations; imaging (as discussed below); biopsies of the reproductive organs (uterus, ovary) and accessory organs; and other medical consultations and procedures necessary for diagnosis.

1879. Specific tests and procedures used to diagnose the Subject Cancers to be included in a medical monitoring program may include but are not limited to Pap smears; blood tests, including CA 125 antigen testing; genetic testing; abdominal ultrasounds; pelvic examinations; CT scans; and transvaginal ultrasounds.

1880. The available monitoring regime is specific for individuals exposed to products that are known to significantly increase the risk of the Subject Cancers because of using Toxic Hair Relaxer Products. That is because the monitoring regime is different as between women who were not exposed to the Toxic Hair Relaxer Products, versus Plaintiffs and the other Class members who are at significantly increased risk of the Subject Cancers by virtue of their exposure to Defendants' Toxic Hair Relaxer Products. Such differences include the types, timing, frequency, and/or scope of screening and diagnostic examinations that would be recommended for women at this significantly increased risk. The monitoring regime is conducted and analyzed by medical practitioners skilled in the respective medical areas.

1881. These monitoring procedures conform to the standard of medical care and are reasonably medically necessary to ensure that the Subject Cancers can be identified early and appropriately treated. Said monitoring procedures will facilitate treatment and interventions that will mitigate the development of, and health effects associated with, the Subject Cancers, which

may in turn increase Plaintiffs' and the other Class members' chances of survival. The present value of the costs of such tests is calculable.

1882. Plaintiffs' and the other Class members' significantly increased risk of the Subject Cancers, caused by their exposure to Defendants' Toxic Hair Relaxer Products, can only be mitigated or addressed by appropriate medical testing.

1883. Plaintiffs, on behalf of themselves and the other Class members, seek injunctive and monetary relief, including (a) the creation of a fund to finance notifying Plaintiffs and the other Class members of their exposure and its potential consequences, and to fund diagnostic screening, testing, and procedures for the Subject Cancers for Plaintiffs and the other Class members, and/or compensatory damages to fund this necessary medical monitoring; (b) attorneys' fees; (c) costs; (d) interest; and (e) such further relief as this Court deems equitable and just.

**COUNT 121 – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(Individually and on Behalf of the Pennsylvania Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, JF Labs, McBride, Avlon, Revlon, and Luster)**

1884. Plaintiffs Guillory, Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1885. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Consumer Class.

1886. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of

Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1887. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

1888. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

1889. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1890. By reason of the unlawful acts engaged in by Defendants, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

1891. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed,

sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1892. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1893. Due to the above, Defendants are liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1894. Plaintiffs did not need to send (additional) notice to Defendants of their violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1895. Plaintiffs and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

**COUNT 122 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Pennsylvania Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, JF Labs, McBride, Avlon, Revlon, and Luster)**

1896. Plaintiffs Guillory, Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1897. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Consumer Class.

1898. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and the other Class members when they purchased the Toxic Hair Relaxer Products.

1899. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the other Class members.

1900. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the other Class members made for their Toxic Hair Relaxer Products.

1901. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1902. At the time their payments were made, Plaintiffs and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiffs and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1903. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the other Class members with the remuneration expected enriched Defendants unjustly.

1904. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiffs and the other Class members.

1905. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiffs and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1906. Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1907. Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 123 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Pennsylvania Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, JF Labs, McBride, Avlon, Revlon, and Luster)**

1908. Plaintiffs Guillory, Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1909. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Consumer Class.

1910. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1911. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1912. Plaintiffs and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1913. Defendants breached its express warranties under 13 Pa. Cons. Stat. § 2313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1914. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1915. Plaintiffs and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 124 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Pennsylvania Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, JF Labs, McBride, Avlon, Revlon, and Luster)**

1916. Plaintiffs Guillory, Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1917. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Consumer Class.

1918. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1919. Prior to the time that Plaintiffs and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiffs, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe

and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1920. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1921. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiffs and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1922. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiffs and the other Class members.

1923. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1924. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1925. At the time that Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiffs and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1926. Plaintiffs and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1927. Plaintiffs and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1928. Plaintiffs and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1929. Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1930. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under 13 Pa. Cons. Stat. § 2314, *et seq.*

1931. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiffs and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1932. Defendants' breach of warranties were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

1933. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs

and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

1934. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1935. Plaintiffs and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1936. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 125 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Pennsylvania Consumer Class Against Defendants L'Oréal, SoftSheen, Strength of Nature, Namaste, Dabur, JF Labs, McBride, Avlon, Revlon, and Luster)**

1937. Plaintiffs Guillory, Hines, Lane, Lawes, Martinez, and Richardson ("Plaintiffs," for purposes of the Pennsylvania Consumer Class's claims) incorporate by reference and reallege paragraphs 1 to 180 above, as though fully set forth herein.

1938. Plaintiffs bring this cause of action individually and on behalf of the Pennsylvania Consumer Class.

1939. Through their labeling and advertising, Defendants made representations to Plaintiffs and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

1940. At all relevant times, Defendants had a duty to provide Plaintiffs and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

1941. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

1942. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiffs or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

1943. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiffs and the other Class members, into purchasing and using their hair relaxer products.

1944. Such failures to disclose on the part of Defendants amount to fraudulent omission.

1945. Plaintiffs and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

1946. In reliance on Defendants' omissions, Plaintiffs and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiffs and the other Class members had known of the facts concealed by Defendants, including facts revealing the

toxic nature of Defendants' products, then Plaintiffs and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

1947. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiffs and the other Class members suffered injuries and damages as alleged herein.

1948. As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiffs and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

1949. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiffs and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1950. Plaintiffs, on behalf of themselves and the other Class members, seek recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### R. Tennessee

**COUNT 126 – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(Individually and on Behalf of the Tennessee Consumer Class Against Defendants L'Oréal, SoftSheen, Revlon, and Strength of Nature)**

1951. Plaintiff Edwards ("Plaintiff," for purposes of the Tennessee Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1952. Plaintiff brings this cause of action individually and on behalf of the Tennessee Consumer Class.

1953. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

1954. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

g. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

h. Representing that goods are of a particular standard, quality, or grade if they are of another; and

i. Advertising goods with the intent not to sell them as advertised.

1955. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Tennessee Consumer Protection Act.

1956. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

1957. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

1958. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

1959. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

1960. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

1961. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Tennessee Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

1962. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic

nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 127 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Tennessee Consumer Class Against Defendants L'Oréal, SoftSheen, Revlon, and Strength of Nature)**

1963. Plaintiff Edwards ("Plaintiff," for purposes of the Tennessee Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1964. Plaintiff brings this cause of action individually and on behalf of the Tennessee Consumer Class.

1965. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

1966. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

1967. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

1968. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1969. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class

members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

1970. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

1971. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

1972. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

1973. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1974. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 128 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Tennessee Consumer Class Against Defendants L'Oréal, SoftSheen, Revlon, and Strength of Nature)**

1975. Plaintiff Edwards ("Plaintiff," for purposes of the Tennessee Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1976. Plaintiff brings this cause of action individually and on behalf of the Tennessee Consumer Class.

1977. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

1978. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

1979. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

1980. Defendants breached its express warranties under Tenn. Code § 47-2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

1981. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

1982. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 129 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Tennessee Consumer Class Against Defendants L'Oréal, SoftSheen, Revlon, and Strength of Nature)**

1983. Plaintiff Edwards ("Plaintiff," for purposes of the Tennessee Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

1984. Plaintiff brings this cause of action individually and on behalf of the Tennessee Consumer Class.

1985. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

1986. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

1987. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

1988. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

1989. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

1990. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

1991. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

1992. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

1993. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

1994. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

1995. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

1996. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

1997. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Tenn. Code § 47-2-314, *et seq.*

1998. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

1999. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

2000. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

2001. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2002. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2003. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 130 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Tennessee Consumer Class Against Defendants L'Oréal, SoftSheen, Revlon, and Strength of Nature)**

2004. Plaintiff Edwards ("Plaintiff," for purposes of the Tennessee Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2005. Plaintiff brings this cause of action individually and on behalf of the Tennessee Consumer Class.

2006. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

2007. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

2008. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

2009. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

2010. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

2011. Such failures to disclose on the part of Defendants amount to fraudulent omission.

2012. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

2013. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

2014. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

2015. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

2016. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2017. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### S. Texas

### COUNT 131 – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT

**(Individually and on Behalf of the Texas Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

2018. Plaintiff Casby ("Plaintiff," for purposes of the Texas Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2019. Plaintiff brings this cause of action individually and on behalf of the Texas Consumer Class.

2020. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Texas Deceptive Trade Practices-Consumer

Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

2021. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b. Representing that goods are of a particular standard, quality, or grade if they are of another; and

c. Advertising goods with the intent not to sell them as advertised.

2022. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Texas Deceptive Trade Practices-Consumer Protection Act.

2023. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

2024. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

2025. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

2026. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2027. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

2028. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Texas Deceptive Trade Practices-Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2029. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic

nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 132 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Texas Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

2030. Plaintiff Casby ("Plaintiff," for purposes of the Texas Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2031. Plaintiff brings this cause of action individually and on behalf of the Texas Consumer Class.

2032. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

2033. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

2034. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

2035. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

2036. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class

members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

2037. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

2038. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

2039. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

2040. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

2041. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 133 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Texas Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

2042. Plaintiff Casby ("Plaintiff," for purposes of the Texas Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2043. Plaintiff brings this cause of action individually and on behalf of the Texas Consumer Class.

2044. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

2045. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

2046. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

2047. Defendants breached its express warranties under Tex. Bus. & Com. Code Ann. § 2.314 *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

2048. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

2049. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 134 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Texas Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

2050. Plaintiff Casby ("Plaintiff," for purposes of the Texas Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2051. Plaintiff brings this cause of action individually and on behalf of the Texas Consumer Class.

2052. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

2053. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

2054. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

2055. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

2056. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

2057. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

2058. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

2059. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

2060. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

2061. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

2062. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

2063. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

2064. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Tex. Bus. & Com. Code Ann. § 2.314 *et seq.*

2065. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

2066. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

2067. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

2068. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2069. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2070. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 135 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Texas Consumer Class Against Defendants L'Oréal, SoftSheen, and Strength of Nature)**

2071. Plaintiff Casby ("Plaintiff," for purposes of the Texas Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2072. Plaintiff brings this cause of action individually and on behalf of the Texas Consumer Class.

2073. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

2074. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

2075. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

2076. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

2077. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

2078. Such failures to disclose on the part of Defendants amount to fraudulent omission.

2079. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

2080. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

2081. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

2082. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

2083. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2084. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

### T. Virginia

### COUNT 136 – VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (Individually and on Behalf of the Virginia Consumer Class Against Defendants Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster)

2085. Plaintiff Lane ("Plaintiff," for purposes of the Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2086. Plaintiff brings this cause of action individually and on behalf of the Virginia Consumer Class.

2087. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Virginia Consumer Protection Act, Va. Code Ann.

§ 59.1-196 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

2088. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

j. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

k. Representing that goods are of a particular standard, quality, or grade if they are of another; and

l. Advertising goods with the intent not to sell them as advertised.

2089. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the Virginia Consumer Protection Act.

2090. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

2091. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

2092. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

2093. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2094. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

2095. Plaintiff did not need to send (additional) notice to Defendants of their violations of the Virginia Consumer Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2096. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 137 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the Virginia Consumer Class Against Defendants Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster)**

2097. Plaintiff Lane ("Plaintiff," for purposes of the Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2098. Plaintiff brings this cause of action individually and on behalf of the Virginia Consumer Class.

2099. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

2100. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

2101. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

2102. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

2103. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

2104. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

2105. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

2106. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

2107. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

2108. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 138 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the Virginia Consumer Class Against Defendants Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster)**

2109. Plaintiff Lane ("Plaintiff," for purposes of the Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2110. Plaintiff brings this cause of action individually and on behalf of the Virginia Consumer Class.

2111. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

2112. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

2113. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

2114. Defendants breached its express warranties under Va. Code § 8.2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

2115. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

2116. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 139 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the Virginia Consumer Class Against Defendants Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster)**

2117. Plaintiff Lane ("Plaintiff," for purposes of the Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2118. Plaintiff brings this cause of action individually and on behalf of the Virginia Consumer Class.

2119. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

2120. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

2121. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

2122. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

2123. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

2124. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

2125. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

2126. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

2127. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

2128. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

2129. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

2130. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

2131. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under Va. Code § 8.2-314, *et seq.*

2132. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

2133. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

2134. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

2135. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2136. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2137. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 140 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the Virginia Consumer Class Against Defendants Revlon, Strength of Nature, L'Oréal, SoftSheen, JF Labs, and Luster)**

2138. Plaintiff Lane ("Plaintiff," for purposes of the Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2139. Plaintiff brings this cause of action individually and on behalf of the Virginia Consumer Class.

2140. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

2141. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

2142. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

2143. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

2144. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

2145. Such failures to disclose on the part of Defendants amount to fraudulent omission.

2146. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

2147. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

2148. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

2149. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

2150. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2151. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**U. West Virginia**

**COUNT 141 – VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**
**(Individually and on Behalf of the West Virginia Consumer Class Against Defendants L'Oréal and SoftSheen)**

2152. Plaintiff Smith-Pullen ("Plaintiff," for purposes of the West Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2153. Plaintiff brings this cause of action individually and on behalf of the West Virginia Consumer Class.

2154. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 *et seq.*, when they misled consumers regarding the safety risks associated with use of their Toxic Hair Relaxer Products. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

2155. Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

m. Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

n. Representing that goods are of a particular standard, quality, or grade if they are of another; and

o. Advertising goods with the intent not to sell them as advertised.

2156. Defendants' actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of their Toxic Hair Relaxer Products, as described above—constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendants' merchandise, in violation of the West Virginia Consumer Credit and Protection Act.

2157. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

2158. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the other Class members have suffered ascertainable loss and damages.

2159. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

2160. Defendants' conduct with respect to their design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Defendants' conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2161. Due to the above, Defendants are liable to Plaintiff and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

2162. Plaintiff did not need to send (additional) notice to Defendants of their violations of the West Virginia Consumer Credit and Protection Act pled in this Complaint because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2163. Plaintiff and the other Class members would not have purchased the Toxic Hair Relaxer Products, or alternatively they would have paid less for them, had the truth about the toxic

nature of Defendants' products been disclosed. Plaintiff, on behalf of herself and the other Class members, seeks to recover the actual damages they have suffered.

**COUNT 142 – UNJUST ENRICHMENT**
**(Individually and on Behalf of the West Virginia Consumer Class Against Defendants L'Oréal and SoftSheen)**

2164. Plaintiff Smith-Pullen ("Plaintiff," for purposes of the West Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2165. Plaintiff brings this cause of action individually and on behalf of the West Virginia Consumer Class.

2166. As a result of Defendants' wrongful and deceptive conduct, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class members when they purchased the Toxic Hair Relaxer Products.

2167. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the other Class members.

2168. As an intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiff and the other Class members made for their Toxic Hair Relaxer Products.

2169. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

2170. At the time their payments were made, Plaintiff and the other Class members expected that Defendants' Toxic Hair Relaxer Products were safe and effective in the ways Defendants had represented, and could safely be used for the purposes Defendants advertised their Toxic Hair Relaxer Products. In exchange for their payments, Plaintiff and the other Class

members believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

2171. Defendants have voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class members paid for Defendants' Toxic Hair Relaxer Products when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the other Class members with the remuneration expected enriched Defendants unjustly.

2172. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Toxic Hair Relaxer Products to Plaintiff and the other Class members.

2173. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their Toxic Hair Relaxer Products while Plaintiff and the other Class members suffered and are suffering serious illnesses, including but not limited to uterine and ovarian cancer.

2174. Plaintiff and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

2175. Plaintiff, on behalf of herself and the other Class members, seeks restitution and disgorgement of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT 143 – BREACH OF EXPRESS WARRANTY**
**(Individually and on Behalf of the West Virginia Consumer Class Against Defendants L'Oréal and SoftSheen)**

2176. Plaintiff Smith-Pullen ("Plaintiff," for purposes of the West Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2177. Plaintiff brings this cause of action individually and on behalf of the West Virginia Consumer Class.

2178. As detailed above, Defendants, through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

2179. Moreover, the Toxic Hair Relaxer Products' labeling represents that the regular use of broad spectrum hair straighteners and/or relaxers is "protective," and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise, or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Toxic Hair Relaxer Products are not safe. To the contrary, the Toxic Hair Relaxer Products pose a dangerous health risk because they increase the risk of uterine and ovarian cancer, as detailed above.

2180. Plaintiff and the other Class members read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

2181. Defendants breached its express warranties under W. Va. Code § 46-2-313, *et seq.* because the Toxic Hair Relaxer Products are defective and not reasonably safe for their intended use.

2182. Defendants knew or should have known that the Toxic Hair Relaxer Products did not conform to their express warranties and representations and that, in fact, the Toxic Hair Relaxer Products are not safe and pose serious health risks.

2183. Plaintiff and the other Class members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Toxic Hair Relaxer Products. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages as a direct and proximate result of the Toxic Defect, in an amount to be determined at trial.

**COUNT 144 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE**
**(Individually and on Behalf of the West Virginia Consumer Class Against Defendants L'Oréal and SoftSheen)**

2184. Plaintiff Smith-Pullen ("Plaintiff," for purposes of the West Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2185. Plaintiff brings this cause of action individually and on behalf of the West Virginia Consumer Class.

2186. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

2187. Prior to the time that Plaintiff and the other Class members purchased and/or used Defendants' Toxic Hair Relaxer Products, Defendants knew of the uses for which their Toxic Hair Relaxer Products were intended and impliedly warranted to Plaintiff, and to the other Class members, that Defendants' Toxic Hair Relaxer Products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiff and the other Class members that their Toxic Hair Relaxer Products were of a certain quality.

2188. Defendants' warranties include, but are not limited to, the warranties that their Toxic Hair Relaxer Products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

2189. Defendants breached the implied warranties of their Toxic Hair Relaxer Products sold to Plaintiff and the other Class members because they were not fit for their ordinary purposes, or for their intended and reasonably foreseeable uses. Nor were their Toxic Hair Relaxer Products minimally safe for their expected purpose.

2190. Defendants' Toxic Hair Relaxer Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their Toxic Hair Relaxer Products have dangerous propensities when used as intended and cause severe injuries to users, including Plaintiff and the other Class members.

2191. Similarly, Defendants' Toxic Hair Relaxer Products were unfit for their particular purpose—safely straightening hair. Defendants' Toxic Hair Relaxer Products could not, and do not, safely straighten hair, and never could do so at any point after leaving Defendants' control.

2192. Defendants' Toxic Hair Relaxer Products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

2193. At the time that Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products, Defendants knew or should have known that Plaintiff and the other Class members would detrimentally rely on Defendants' misrepresentations regarding safety.

2194. Plaintiff and the other Class members purchased or used Defendants' Toxic Hair Relaxer Products reasonably relying upon Defendants' implied warranties.

2195. Plaintiff and the other Class members used Defendants' Toxic Hair Relaxer Products for the purpose and in the manner intended by Defendants.

2196. Plaintiff and the other Class members could not have discovered, through the use of reasonable care, that Defendants' implied warranties were false, or that Defendants' Toxic Hair Relaxer Products posed danger to them.

2197. Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products if they had known the truth about the misrepresentations described above, or that Defendants' Toxic Hair Relaxer Products were unfit for ordinary use or their particular purpose.

2198. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under W. Va. Code § 46-2-314, *et seq.*

2199. Defendants' Toxic Hair Relaxer Products are consumer products, and Plaintiff and the other Class members are consumers. Defendants are suppliers and/or warrantors of the defective Toxic Hair Relaxer Products, and Defendants breached their implied warranties as described above.

2200. Defendants' breach of warranties were a substantial factor in causing Plaintiff's and the other Class members' injuries.

2201. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff and the other Class members suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses into the future.

2202. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and it indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2203. Plaintiff and the other Class members did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and of Defendants' related violations. Defendants received such notice from similar lawsuits for the same conduct and through other means.

2204. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' breach of their implied warranties, in an amount to be determined at trial.

**COUNT 145 – FRAUDULENT OMISSION**
**(Individually and on Behalf of the West Virginia Consumer Class Against Defendants L'Oréal and SoftSheen)**

2205. Plaintiff Smith-Pullen ("Plaintiff," for purposes of the West Virginia Consumer Class's claims) incorporates by reference and realleges paragraphs 1 to 180 above, as though fully set forth herein.

2206. Plaintiff brings this cause of action individually and on behalf of the West Virginia Consumer Class.

2207. Through their labeling and advertising, Defendants made representations to Plaintiff and the other Class members concerning the active and inactive ingredients in their Toxic Hair Relaxer Products.

2208. At all relevant times, Defendants had a duty to provide Plaintiff and the other Class members with true and accurate information about their Toxic Hair Relaxer Products, including

warnings about any risks they knew of, or should have known of, posed by their Toxic Hair Relaxer Products.

2209. Defendants knew or should have known, based on evolving scientific studies and research, of the safety risks associated with their Toxic Hair Relaxer Products. Defendants knew or should have known that they had a duty to both learn and disclose the dangers associated with their Toxic Hair Relaxer Products.

2210. From the time Defendants' Toxic Hair Relaxer Products were first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and/or distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of their Toxic Hair Relaxer Products to Plaintiff or the other Class members. Defendants failed to fulfill their duty to accurately disclose in their labeling and advertising that the Toxic Hair Relaxer Products contained toxic chemicals.

2211. Defendants failed to disclose such material facts with the intent to induce consumers, including Plaintiff and the other Class members, into purchasing and using their hair relaxer products.

2212. Such failures to disclose on the part of Defendants amount to fraudulent omission.

2213. Plaintiff and the other Class members justifiably relied on Defendants' nondisclosures to their detriment.

2214. In reliance on Defendants' omissions, Plaintiff and the other Class members were induced to purchase and use Defendants' Toxic Hair Relaxer Products. If Plaintiff and the other Class members had known of the facts concealed by Defendants, including facts revealing the toxic nature of Defendants' products, then Plaintiff and the other Class members would not have purchased or used Defendants' Toxic Hair Relaxer Products.

2215. As a direct and proximate result of the foregoing fraudulent omissions by Defendants, Plaintiff and the other Class members suffered injuries and damages as alleged herein.

2216. As a direct and proximate result of Plaintiff's and the other Class members' reasonably anticipated use of Defendants' Toxic Hair Relaxer Products, Plaintiff and the other Class members suffered serious injury, harm, damages, and economic and non-economic loss. They will continue to suffer such harm, damages, and losses into the future.

2217. Defendants' conduct with respect to the design and sale of their Toxic Hair Relaxer Products to Plaintiff and the other Class members was malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

2218. Plaintiff, on behalf of herself and the other Class members, seeks recovery of actual damages, as well as incidental and consequential damages, as a direct and proximate result of Defendants' fraudulent omissions regarding the Toxic Defect, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the following relief:

A. Certify the Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), appoint Plaintiffs as class representatives for the respective Classes, and appoint undersigned counsel as class counsel;

B. Enter judgment for liability in their favor and against Defendants;

C. Grant equitable relief in the form of a medical monitoring program as set forth above to be funded by Defendants;

D. Award compensatory, punitive, and other damages, as may be allowed by

law;

E. Require Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the above-cited authority, plus pre- and post-judgment interest thereon;

F. Require Defendants to disgorge any ill-gotten benefits received from Plaintiff and Class members as a result of any wrongful or unlawful act or practice;

G. Grant Plaintiffs attorneys' fees and costs; and

H. Award any such other and further relief as this Court may deem just, equitable, or proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: August 14, 2023

Respectfully submitted,

*/s/ Edward A. Wallace*

Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 205-855-5700
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email:ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

and

*On behalf of Plaintiffs' Executive Committee:*

Brian Barr
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen St.
Pensacola, FL 32502
Tel.: (850) 435-7044
Email: bbarr@levinlaw.com

Tim Becker
**JOHNSON BECKER**
444 Cedar St., Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1804
Email: tbecker@johnsonbecker.com

Jayne Conroy
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 257-8482
Email: jconroy@simmonsfirm.com

Kelly M. Dermody
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Suite 2900
San Francisco, CA 94111
Tel.: (415) 956-1000
Email: kdermody@lchb.com

Jennifer Hoekstra
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 E. Main St.
Pensacola, FL 32502
Tel.: (850) 202-1010
Email: jhoekstra@awkolaw.com

LaRuby May
**MAY JUNG, LLP**
3216 11th Place SE
Washington, DC 20032
Tel.: (202) 869-3735
Email: laruby@mayjung.com

Rene F. Rocha
**MORGAN & MORGAN**
400 Poydras St., Suite 1515
New Orleans, LA 70130
Tel.: (954) 318-0268
Email: rrocha@forthepeople.com

Larry Taylor
**THE COCHRAN FIRM**
1825 Market Center Blvd #500
Dallas, TX 75207
Tel.: (214) 466-7620
Email: ltaylor@cochrantexas.com

Navan Ward
**BEASLEY ALLEN**
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Tel.: (404) 751-1162
Email: navan.ward@beasleyallen.com

and

*On behalf of Plaintiffs' Steering Committee:*

Anne Andrews
**ANDREWS & THORNTON**
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Tel.: (949) 748-1000
Email: aa@andrewsthornton.com

Greg Cade
**ENVIRONMENTAL LAW GROUP**
2160 Highland Ave.
Birmingham, AL 35205
Tel.: (205) 328-9200
Email: GregC@elglaw.com

Thomas P. Cartmell
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel.: (816) 701-1100
Email: tcartmell@wcllp.com

C. Andrew Childers
**CHILDERS, SCHLEUTER & SMITH**
1932 North Druid Hills Road, Suite 100
Atlanta, GA 30319
Tel.: (404) 419-9500
Email: achilders@cssfirm.com

Erin Copeland
**FIBICH LEEBRON COPELAND BRIGGS**
1150 Bissonnet
Houston, TX 77005

Maria Fleming
**NAPOLI SHKOLNIK**
1500 West 3rd Street
Cleveland, OH 44113
Tel.: (844) 230-7676

Tel.: (713) 751-0025
Email: ecopeland@fibichlaw.com

Email: mfleming@napolilaw.com

Lee Floyd
**BREIT BINIAZAN**
2100 East Cary Street, Suite 310
Richmond, VA 23223
Tel.: (804) 351-9040
Email: lee@bbtrial.com

Kendra Y. Goldhirsch
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Tel.: (888) 480-1123
Email: goldhirsch@chaffinluhana.com

Kristine Kraft
**SCHLICHTER BOGARD & DENTON**
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Tel.: (314) 884-7706
Email: kkraft@uselaws.com

Buffy Martines
**LAMINACK, PIRTLE & MARTINES**
5020 Montrose Blvd., 9th Floor
Houston, TX 770606
Tel.: (713) 292-2750
Email: buffym@lpm-triallaw.com

Melanie Muhlstock
**PARKER WAICHMAN**
6 Harbor Park Dr.
Port Washington, NY 11050
Tel.: (516) 466-6500
Email: mmuhlstock@yourlawyer.com

David A. Neiman
**ROMANUCCI & BLANDIN, LLC**
321 N Clark St. #900
Chicago, Illinois 60654
Tel.: (312) 253-8810
Email: dneiman@rblaw.net

Michelle Parfitt
**ASHCRAFT & GEREL, LLP**
1825 K Street NW, Suite 700
Washington, DC 20006
Tel.: (703) 824-4772
Email: mparfitt@ashcraftlaw.com

Syreeta Poindexter
**BABIN LAW**
65 E. State St., Suite 1300
Columbus, OH 43215
Tel.: (614) 412-0877
Email: syreeta.poindexter@babinlaws.com

EricaRae Garcia
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Tel.: (212) 558-5825
Email: egarcia@weitzlux.com

Steve Rotman
**HAUSFELD**
One Marina Park Dr., Suite 1410
Boston, MA 02210
Tel.: (617) 207-0602
Email: srotman@hausfeld.com

Richard W. Schulte
**WRIGHT & SCHULTE LLC**
865 S. Dixie Dr.
Vandalia, OH 45377
Tel.: (937) 435-7500
Email: rschulte@yourlegalhelp.com

Ashlie Case Sletvold
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
6370 SOM Center Road, Suite 108
Cleveland, OH 44139
Tel.: (216) 260-0808
Email: asletvold@peifferwolf.com

L. Chris Stewart
**STEWART MILLE SIMMONS**
55 Ivan Allen Jr. Blvd NW, Suite 700
Atlanta, GA 30308
Tel.: (404) 589-3476
Email: cstewart@smstrial.com

Aimee Wagstaff
**WAGSTAFF LAW FIRM**
940 N. Lincoln St.
Denver, CO 80203
Tel.: (720) 208-9414
Email: awagstaff@wagstafflawfirm.com

Mikal Watts
**WATTS GUERRA**
4 Dominion Dr., Bld 3, Suite 100
San Antonio, TX 78257
Tel.: (210) 447-0500
Email: mcwatts@wattsguerra.com