UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION _____/ | MDL No. 3060 Master Docket Case No. 1:23-cv-00818 Honorable Mary M. Rowland |

### DEFENDANT MCBRIDE RESEARCH LABORATORIES' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant McBride Research Laboratories ("McBride") files this Motion to Dismiss.

### INTRODUCTION

Plaintiffs' Complaint [DE 106] premises its fifteen causes of action on the allegation that Plaintiffs were injured by defective hair relaxers, but nowhere in the Complaint do Plaintiffs identify what product they used, how the product was defective, how the product injured Plaintiffs, or even whether Plaintiffs obtained the product from McBride. Thus, Plaintiffs claims fail to state a claim upon which relief may be granted. *See Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) (Plaintiffs "must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product."). Rather than comply with the most basic pleading requirements to fairly apprise McBride of Plaintiffs' specific allegations against it, Plaintiffs resort to conclusory allegations that McBride—a Black-owned family

business[1]—is "taking advantage of centuries of racial discrimination and cultural coercion." [DE 106 ¶ 6].

As pled, the Complaint does not provide McBride with sufficiently fair notice of Plaintiffs' claims against it. *Burkhart v. Allson Realty Tr.*, 363 F. Supp. 1286, 1289 (N.D. Ill. 1973) ("The function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial"). For the reasons detailed below, McBride respectfully requests that this Court dismiss the Complaint.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

A motion under Rule 12(b)(6) tests "whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Brianna Robinson, *Black Culture and Discussions,* That Sister (February 10, 2022)(available at: https://www.thatsister.com/is-design-essentials-black-owned) (McBride's founder, Cornell McBride Sr. launched the Sta-Sof-Fro product. "At the time, the Afro wasn't just a hairstyle, it was a strong political statement …McBride and McKenzie were making a declaration of support or natural hairstyles and Black pride…Considering the company's roots, it's easy to say that Design Essentials is not only Black-owned, but a Black hair care family empire…").

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

## II. PLAINTIFFS FAIL TO IDENTIFY A DEFECTIVE PRODUCT AS REQUIRED TO MAINTAIN THEIR CLAIMS IN CAUSES OF ACTION ONE THROUGH FIVE.

Plaintiffs attempt to raise products-liability causes of action without meeting the requisite threshold of product identification. They accordingly fail to state a cause of action under a theory of negligence or strict liability. There is no theory of product liability under which a defendant can be held liable for an injury caused by a product that it did not sell, manufacture, or otherwise supply to a plaintiff. The Complaint does not contain any allegation that McBride was engaged in manufacturing any particular defective hair relaxer, or any identification of a specific hair relaxer that caused a particular injury, i.e., ovarian or uterine cancer. "In a products liability action the plaintiff must identify the manufacturer of the product and establish a causal relationship between the injury and the product." *Zimmer v. Celotex Corp.*, 549 N.E.2d 881, 883 (1989).

Product identification is the "threshold requirement of any products liability action"— Plaintiffs must identify "the injury-causing product and its manufacturer." *In re Dow Corning Corp.*, Civil Action No. 00-X-00001-DT, 04-CV-30002, 2008 U.S. Dist. LEXIS 25311, at *6 (E.D. Mich. Mar. 31, 2008); *see also Esposito v. Lilly (In re Darvocet)*, 856 F. Supp. 2d 904, 908 (E.D. Ky. 2012) ("[I]t is well-settled law that a "threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's injury."). Accordingly,

3

Plaintiffs must state sufficient allegations to establish that the product that caused the injury was made, sold, or distributed by the defendant in question—Plaintiffs must identify the specific hair relaxer that caused their injuries and that was made, sold, or distributed by McBride.

Absent product identification, the element of causation cannot be maintained. Am. L. Prod. Liab. 3d § 5:1 (2020) ("[A] threshold requirement for a products liability action is that the plaintiff identify the manufacturer or supplier responsible for placing the injury-causing product into the stream of commerce; this is the traditional requirement that plaintiff establish causation."). Plaintiffs have not properly identified McBride as the entity that marketed, sold, or manufactured the hair relaxer that caused their injuries, nor have Plaintiffs identified any particular hair relaxer product that caused Plaintiffs' alleged injuries. Because product identification is required for any products liability claim to succeed, and Plaintiffs have not pled product identification, Plaintiffs' claims against McBride cannot survive a motion to dismiss.

A. **PLAINTIFFS' CLAIMS SOUNDING IN NEGLIGENCE FAIL FOR LACK OF COGNIZABLE DUTY, BREACH, AND CAUSATION ELEMENTS.**

Plaintiffs' negligence claims fail because, absent product-identification allegations, Plaintiffs cannot maintain a claim that McBride breached any duty or that a breach caused Plaintiffs' alleged injuries. "The sine qua non of a products liability claim, regardless of whether the plaintiff proceeds under a theory of strict liability or negligence, is a defect in the product." *Boswell v. Overhead Door Corp.*, 292 Ga. App. 234, 235 (2008); *see also In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig*, 756 F.3d 917, 944 (6th Cir. 2014) ("Under Illinois law, a plaintiff must 'identify the supplier of the product and establish a causal connection between the injury and the product.'").

4

Other than conclusory allegations that Plaintiffs used unspecified products of unspecified "Defendants," Plaintiffs do not identify which McBride product(s) were purchased and used. Thus, Plaintiffs cannot establish that any duty existed.

Plaintiffs also fail to allege facts showing that McBride breached any duty to them by failing to use reasonable care. The Complaint is premised on very recent studies associating hair relaxer use with ovarian and uterine cancer and alleges that the use of phthalates, in particular, increased the risk of cancer. (Compl. ¶118). Plaintiffs have not alleged any facts showing that use of phthalates in hair relaxers was not reasonable and customary in the industry before the 2022 Study. To the contrary, the Complaint alleges that hair relaxers generally contain "an array of [EDCs] including…phthalates." (Id. ¶93). Plaintiffs therefore fail to plead breach of duty in at least two different respects: (1) Plaintiffs' allegations do not establish that McBride's unidentified product contained a particular ingredient that caused their injury, and (2) Plaintiffs' allegations do not establish that McBride failed to use reasonable care by using an ingredient that was not customary in the industry because it was known that the particular ingredient was harmful. This Court should dismiss Plaintiffs' claims sounding in negligence for failure to state a claim on which relief may be granted.

B. **PLAINTIFFS' FAILURE-TO-WARN CLAIM FAILS.**

To prove a claim for failure to warn, a "plaintiff must demonstrate that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product to which the average consumer would not be aware." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 932 N.E.2d 101, 109, 342 Ill. Dec. 210 (Ill. App. Ct. 2010).

In the context of products liability, a duty to warn arises when a "manufacturer has greater knowledge of a product's dangerous propensities than a consumer has." *Hansen v. Baxter Healthcare Corp.*, 309 Ill. App. 3d 869, 723 N.E.2d 302, 311, 243 Ill. Dec. 270 (Ill. App. Ct. 1999).

5

Provided the manufacturer discloses adequately known risks of using the product to the consumer, no claim will lie. *See Griffin v. Medtronic, Inc.*, No. 17 CV 927, 2017 U.S. Dist. LEXIS 165180, at *9 (N.D. Ill. Oct. 5, 2017) (dismissing failure to warn claim where "the complaint does not specifically allege what warnings were given, what Griffin's doctors knew of the device, or why the warnings were inadequate"); *Garcia v. Sanofi Pasteur Inc.*, 617 F. Supp. 3d 1169, 1175 (E.D. Cal. 2022) ("As currently pleaded, the Complaint fails to allege facts that even circumstantially reveal which danger was not warned against, how that danger was substantial, that the danger was known or reasonably knowable, or how any warning that was given was inadequate.").

Plaintiffs do not provide the basic facts to maintain a failure-to-warn claim. The Complaint does not identify what specific products were used, when they were used, or what warnings were given. This ambiguity makes it impossible for Plaintiffs to allege when and how McBride owed a duty to warn, or how McBride's warnings were inadequate. In addition, the Complaint is devoid of any facts showing that McBride knew or should have known that some ingredient in their unidentified products could cause injury and that McBride's labeling was therefore inadequate. Plaintiffs fail to allege any direct link between an ingredient contained in McBride's unidentified product or products and the risk of developing uterine and/or ovarian cancer. Plaintiffs' conclusory and speculative allegations regarding unidentified products cannot satisfy their pleading burden.

C. **PLAINTIFFS' DESIGN-DEFECT CLAIM FAILS.**

Plaintiffs did not (and cannot) allege that McBride is responsible for designing or manufacturing the defective product—indeed, as discussed, no specific product has been identified, and accordingly, the entity responsible for the design of the unspecified product cannot be charged with design defect liability. Liability is imposed for a design defect where the manufacturer of a product breaches a duty to a product user. *Spurgeon v. Julius Blum, Inc.*, 816 F.

6

Supp. 1317, 1321 (C.D. Ill. 1993). To maintain a viable design defect claim, Plaintiffs must allege facts sufficient to demonstrate that the product was unreasonably dangerous, a "required element" of a design-defect claim. *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842 (7th Cir. 2013). The Complaint is entirely silent on the purported specific design defect. "Without any factual allegations at all relating to the particular condition, quality or attribute of the product that caused the injury the Court cannot infer 'more than the mere possibility of misconduct.'" *Mercado v. Bayer Healthcare Pharm. Inc.*, No. 14 C 6699, 2015 U.S. Dist. LEXIS 73383, at *5 (N.D. Ill. Jun. 5, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Tillman v. Taro Pharmaceutical Industries Ltd.*, No. 10-cv-04202, 2011 U.S. Dist. LEXIS 93499 (N.D. Ill. Aug. 17, 2011) ("Tillman has failed to plead a claim of strict liability based on either a theory of design defect or a failure to warn.").

Plaintiffs also fail to allege any facts that would tend to support the applicable factors for a risk-utility analysis: "availability and feasibility of alternate designs at the time of its manufacture, or that the design used did not conform with the design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or governmental regulation." *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840 (N.D. Ill. 2017). The Complaint fails to allege facts showing that there existed a feasible alternative design which would have prevented the alleged injury. Instead, the Complaint indicates that all the risks of the products complained of were only recently discovered, such that the only plausible inference is that McBride and all the other Defendants conformed with the design standards of the industry and no alternate designs were available or feasible at the time of manufacture.

Without an identified product that was allegedly defectively designed or evidence that an alternative design to the unidentified product was available or feasible, Plaintiffs clearly fail to state a design-defect claim upon which relief may be granted.

**III. COUNTS TWO (NEGLIGENT MISREPRESENTATION), SIX (BREACH OF IMPLIED WARRANTY), SEVEN (BREACH OF EXPRESS WARRANTY), EIGHT (FRAUD), NINE (FRAUDULENT CONCEALMENT), TEN (U.S. STATE AND TERRITORY STATUTORY CONSUMER PROTECTION AND UNFAIR OR DECEPTIVE TRADE PRACTICES CLAIMS), XI (UNJUST ENRICHMENT), AND FIFTEEN (PUNITIVE DAMAGES) ARE PREEMPTED BY FEDERAL LAW.**

Pursuant to the Supremacy Clause of the United States Constitution, federal law "shall be the supreme Law of the Land… any Thing in the Constitution or Law of any State to the Contrary notwithstanding." U.S. Const. Art. VI., cl. 2. "Where state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (internal quotation marks omitted). The FDA has promulgated rules regulating what must be included on labels. The regulations have stated, with specificity, what information is necessary. In light of the technical nature of such requirements—combined with Congress's broad, categorical statement of preemption in the FDCA—this Court should not find that states may impose *other* labeling requirements that have not been imposed by Congress or the FDA. Plaintiffs' non-products liability claims are expressly preempted by the FDCA, which provides that no state may "establish . . . any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement" of the FDCA. 21 U.S.C. § 379r(a).

Any attempt to vary the requirements of the FDCA is barred by the Supremacy Clause:

> If Plaintiffs were permitted to move forward with their claims, they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder. These would be requirements "different from" or "in addition to"—or otherwise "not identical with"—those requirements that federal law already imposes. This is exactly what the FDCA does not permit. Congress or the FDA could have chosen to mandate such additional labeling when they established the

8

> comprehensive regulatory regime governing cosmetics, but they did not. And because of the broad preemption provision that Congress *did* choose to include, Plaintiffs cannot now seek to impose those requirements through alternative means grounded in state law.

*Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 36-37 (2d Cir. 2020). Thus, a plaintiff cannot seek to impose labeling requirements that are additional to, or different from, those that federal law has established. *Id.* at 35.

Plaintiffs admit that the FDCA does not require labels to list the category of ingredients that are allegedly harmful, [DE 106, ¶81]. For Plaintiffs to prevail on these omission-based claims, state law would have to impose a requirement in addition to what federal law requires. The Supremacy Clause tells us that this is legally impossible. Accordingly, Plaintiffs' claims are preempted by the statutory scheme already in place and should be dismissed. *See* 21 C.F.R. §701.3(a), (l).

**IV. PLAINTIFFS' CLAIM OF UNJUST ENRICHMENT (COUNT ELEVEN) DOES NOT STATE CAUSES OF ACTION ON WHICH RELIEF MAY BE GRANTED.**

Count XI for Unjust Enrichment is insufficiently pled, because unjust enrichment is not an independent cause of action and Plaintiffs are not allowed to recover for unjust enrichment when the plaintiff has an adequate remedy at law. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) ("Under Illinois law, unjust enrichment is not a separate cause of action"); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (Unjust enrichment claim dismissed under Massachusetts law where plaintiff had an adequate remedy at law). At the very least, Plaintiffs should be required to identify in the Master Complaint those jurisdictions for which they are asserting this claim or else their claim should be dismissed for failure to state a claim upon which relief may be granted.

V. **PLAINTIFFS' PUNITIVE DAMAGES CLAIM (COUNT FIFTEEN) DOES NOT STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED BECAUSE PUNITIVE DAMAGES ARE NOT AN INDEPENDENT CAUSE OF ACTION AND THE COMPLAINT CONTAINS ONLY CONCLUSORY ALLEGATIONS TO SUPPORT THE CLAIM.**

Similarly, Plaintiffs' claim for Punitive Damages should be dismissed because punitive damages are a remedy, not an independent cause of action. *Fisher v. Ethicon, Inc.*, No. 1:20-cv-1365, 2021 U.S. Dist. LEXIS 237231, at *6 (C.D. Ill. Dec. 10, 2021) ("Plaintiffs' claims for punitive damage…are not causes of action. Rather, punitive damages are a remedy."); *Obi v. Chase Home Fin., LLC*, No. 11-cv-3993, 2012 U.S. Dist. LEXIS 68808, at *13 (N.D. Ill. May 15, 2012) ("punitive damages are also a remedy, not an independent cause of action"); *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs.*, 12 F.3d 1406, 1413 (7th Cir. 1993) (holding that a claim of punitive damages must be dismissed where the other claims were dismissed, as it is not an independent cause of action); *see, e.g.*, *Kleinwort Benson N. Am. Inc. v. Quantum Fin. Servs., Inc.*, 181 Ill. 2d 214, 224 (Ill. 1998) ("Punitive damages are a type of relief, not an independent cause of action.").

Moreover, Plaintiffs have not alleged facts sufficient to allow them to seek punitive damages. To recover punitive damages, a plaintiff must show that a defendant acted willfully, wantonly or recklessly. "Conduct is willful, wanton, or reckless when it is committed with a deliberate intention or in such a manner or under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights." *Bryant v. Muskin Co.*, 873 F.2d 714, 714 (4th Cir. 1989); *Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, No. 05 C 1698, 2005 WL 3159680, at *11 (N.D. Ill. Nov. 22, 2005) (plaintiff was required to "sufficiently allege willful and wanton conduct" to support recovery of punitive damages). No such conduct is alleged here. Instead, Plaintiffs allege a laundry list of "Defendants' willful, wanton, malicious, and/or reckless acts" (*id.* ¶ 280(a)-(e)), without setting forth any facts which

10

might support such a claim, such as actual knowledge that the products were harmful, a fact that is implausible given the dearth of scientific studies on the subject before 2022. Without facts that, if believed, would establish the evil intent necessary to plead punitive damages, this Court should dismiss the cause of action. *See Williams v. Tripp Lite*, 93 C 3913, 1993 U.S. Dist. LEXIS 14320, at *5 (N.D. Ill. Oct. 7, 1993) ("Williams has not pleaded any facts to establish a basis for the award of punitive damages…. For this reason, we will grant Tripp Lite's motion to dismiss the punitive damages claim.").

### VI. PLAINTIFFS' BREACH-OF-WARRANTY CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs have failed to plead an express-warranty claim. "To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891-92 (N.D. Ill. Nov. 17, 2014). The claim must be based on an affirmation of fact or a promise that is specifically not a statement representing the seller's opinion or recommendation of the goods such that the affirmation of fact becomes part of the basis for the bargain. *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905-906 (N.D. Ill. 2013); *see also Heisner*, 2008 WL 2940811, at *8 (allegation that defendant stated "orally and in publications, package inserts, and other written materials" that product was "safe, effective, fit and proper for its intended use" was insufficient to support breach of express warranty claim).

Plaintiffs' Complaint is replete with allegations that some Defendants used typical advertisement language reflecting the seller's opinion or recommendation of a product. The alleged representations that the Defendants' products were "safe" and "effective" are specifically

not actionable as breach of an express warranty. *Heisner*, 2008 WL 2940811, at *8. Plaintiffs' Complaint therefore fails to state a cause of action for breach of an express warranty.

Additionally, Plaintiffs also have not properly alleged a claim for breach of an implied warranty. An implied warranty guarantees that a product is "fit for the ordinary purpose for which the goods are used." *Indus. Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999). An implied warranty of fitness for a particular purpose is a guarantee by the seller that the goods "were for a purpose other than [its] ordinary use." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007). "Thus, allegations that a manufacturer knew that a product would be put to its ordinary use . . . will not suffice to state a claim for breach of the implied warranty of fitness for a particular purpose." *Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 868 (C.D. Ill. 2021). Plaintiffs fail to identify the products at-issue and, thus, cannot demonstrate that the products were not "fit for the ordinary purpose." Further, because the particular purpose that Plaintiffs allege the products were unfit for (straightening hair) is the same as the products' ordinary use (straightening hair), Plaintiffs fail to state a cognizable claim for breach of implied warranty of fitness for a particular purpose.

Finally, Plaintiffs' breach-of-warranty claims fail for lack of privity. A plaintiff must be in privity of contract with a defendant to bring an action for breach of warranty. *Collins Co. v. Carboline Co.*, 837 F. 2d 299, 301-02 (7th Cir. 1988). Plaintiffs have not identified a single purchase or the circumstances in which they obtained Defendants' products with any degree of detail. As such, this Court cannot conclude that the Plaintiffs purchased the unidentified products directly from any Defendant, let alone McBride specifically, or that Plaintiffs were otherwise in privity with them. Plaintiffs accordingly fail to plead the privity necessary to maintain their breach-of-warranty claims.

**VII.** **PLAINTIFFS FAIL TO PLEAD THEIR CLAIMS SOUNDING IN FRAUD WITH SUFFICIENT SPECIFICITY UNDER RULE 9(B), REQUIRING DISMISSAL OF CAUSES OF ACTION TWO, EIGHT, NINE, AND TEN.**

This Court should dismiss Plaintiffs' claims of negligent misrepresentation (count two), fraud/fraudulent misrepresentation (count eight), fraudulent concealment (count nine), and U.S. State and Territory Statutory Consumer Protection and Unfair or Deceptive Trade Practices Claims (count ten), because they do not meet Rule 9(b)'s heightened-pleading standard for claims sounding in fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint alleging fraud must provide the "the who, what, when, where, and how" for every claim that "sounds in fraud;" that is, any claim "that is premised upon a course of fraudulent conduct *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Practically speaking, "a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F. 2d 889, 893 (7th Cir. 1990). Rule 9(b)'s heightened-pleading standard applies to Plaintiffs' fraud claims, fraudulent-concealment claims, consumer-protection/deceptive-marketing claims, and negligent-misrepresentation claims because the complaint specifically alleges that the defendant had an "intent to deceive," as opposed to a simple lack of care. *See, e.g., Perelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F. 3d 436, 441 (7th Cir. 2011); *Borsellino*, 477 F.3d at 507; *Reynolds v. Skyline Real Estate Invs.*, 2022 U.S. Dist. LEXIS 206579, *21-*22, 2022 WL 16947939 (N.D. Ill. Nov. 15, 2022) (recognizing that rule 9(b)'s heightened-pleading standard applied to negligent-misrepresentation claims where the plaintiff alleges that the defendant had an intent to deceive).

Plaintiffs' inflammatory allegations that Defendants deliberately preyed upon racial minorities are precisely the sort of allegations that Rule 9(b)'s heightened-pleading standard were

13

designed to prevent. *Kennedy v. Venrock Assocs.*, 348 F. 3d 584, 594 (7th Cir. 2003) (ruling that Rule 9(b)'s particularity requirement protects Defendants from "privileged libel"). "Rule 9(b) requires the plaintiff to conduct a pre-complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F. 3d 467, 469 (7th Cir. 1999). "As one district court has noted, the particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli*, 631 F. 3d at 441-42.

Plaintiffs' complaint is the prototypical "sue first, ask questions later," pleading that Rule 9(b) is intended to prevent because it lodges disturbing allegations of racially motivated behavior against Defendants, and yet it lacks any particular allegations with respect to a specific product allegedly sold by McBride that was used by Plaintiffs, the specific damaging ingredients in any particular product sold by McBride that injured Plaintiffs, or the specific fraudulent or misleading statements made by McBride that were relied upon by Plaintiffs to their detriment. This is precisely the situation that Rule 9 and the heightened particularity for pleading fraud-based claims is designed to prevent.

All of Plaintiffs' fraud claims against McBride necessarily fail because Plaintiffs do not identify any McBride product that they actually inspected or purchased. This Court dismisses fraud claims in the dangerous-product context when the complaint "fail[s] to identify exactly which" product Plaintiffs "actually purchased," and "fail[s] to identify when [plaintiff] made her purchase." *Ibarolla v. Nutrex Research, Inc.*, 2013 U.S. Dist. LEXIS 27985, *6-*7, 2013 WL 672508 (N.D. Ill. Feb. 25, 2013) (discussing *Ibarolla v, Nutrex Research, Inc.*, No. 12 C 4848, 2012 U.S. Dist. LEXIS 155721, 2012 WL 5381236, at *2-5 (N.D. Ill. Oct. 31, 2012)). "Unless Plaintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation." *Ibarolla*, 2012

14

U.S. Dist. LEXIS 155721, *7, 2012 WL 155721. After reading Plaintiffs' Complaint, neither McBride nor this Court has any knowledge whatsoever of the particular product that allegedly caused Plaintiffs' injury.

Plaintiffs' fraud claims against McBride also fail because they do not state with any degree of particularity the timeframe for McBride's alleged misrepresentations or Plaintiffs' purchase of a particular product in reliance thereon. A generalized allegation that Defendants have been making fraudulent statements "for many years" is "insufficient to plead the 'when' with specificity as required under Fed. R. Civ. P. 9(b)." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. May 30, 2007). Plaintiffs' Complaint contains no allegations whatsoever that would identify even a broad time frame in which Plaintiffs purchased any particular McBride product. As such, this Court should dismiss Plaintiffs' causes of action sounding in fraud.

Plaintiffs' allegations of fraud also fail because they employ group-pleading tactics that have been "expressly rejected as applied to fraud claims." *Moore v. Biomet, Inc. (In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.)*, 2019 U.S. Dist. LEXIS 36623, *36, 2019 WL 1077291 (N.D. Ind. March 7, 2019). Plaintiffs broadly and jointly allege that all the Defendants together sought to prey upon Plaintiffs' desire to reflect Euro-centric beauty standards, and the Complaint does not distinguish McBride's supposed misrepresentations from that of its co-defendants. "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Likens*, 912 F. 2d at 893 (quoting *Design Inc. v. Syntehtic Diamond Technology, Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ill. 1987)). Plaintiffs do not sufficiently distinguish the "who" of its allegations against McBride by identifying who at McBride made the alleged misrepresentations or by specifying "what" McBride particularly represented, as opposed to a group-pled catch-all allegation that McBride misrepresented the safety

15

of the product. At most, Plaintiffs' allegations amount to the contention that McBride sold hair-relaxing products and shared in the misrepresentations of safety that its co-defendants allegedly perpetuated. This group pleading is specifically prohibited in the fraud context, and Plaintiffs' fraud-based claims should be dismissed.

Finally, a major problem with Plaintiffs' fraud claims is that they are based on a 2022 study identifying a potential link between hair-straightening products and uterine cancer that was previously undiscovered; according to the 2022 study, "to our knowledge, no previous study has investigated the relationship with uterine cancer." Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087. In virtually every jurisdiction in which Plaintiffs could bring their fraud-based claims, knowledge of falsity and intent to deceive are essential elements of common-law fraud. *See, e.g., Hart v. McLucas*, 535 F. 2d 516, 519 (9th Cir. 1976 (recognizing that the concept of fraud arises frequently in the law and is therefore well-defined as consisting of a false representation made with knowledge of its falsity with the intent to deceive, among other elements). The Complaint is replete with allegations that Defendants deliberately chose not to disclose risks and warnings, but it omits entirely any allegation concerning the point in time when Defendants gained actual knowledge of the purported relationship between hair-straightening products and uterine cancer. The only plausible reading of Plaintiffs' Complaint is that Defendants had no knowledge of the alleged harmfulness of their products because the first study on the subject was completed in 2022. Plaintiffs' claims cannot rest on the 2022 Study because it supports the harm prong of their causes of action, when, at the same time, it defeats the knowledge-of-falsity prong for those same causes of action. Even if the 2022 Study is correct that hair-straightening products can cause uterine cancer, Plaintiffs have not

pleaded an actionable case of fraud if, in fact, this causal relationship was not known to Defendants until after the release of the 2022 study. Because Plaintiffs have not alleged "when" the Defendants made actionable misrepresentations sounding in fraud, and because the only plausible inference from the 2022 study's statement that "no previous study has investigated the relationship with uterine cancer," is that Defendants were unaware of any risks before the 2022 article, Plaintiffs have failed to plead with sufficient particularity the knowledge and deceptive-intent elements of their fraud claims.

### VIII. PLAINTIFFS' DERIVATIVE CLAIMS SHOULD BE DISMISSED FOR FAILING TO STATE A CAUSE OF ACTION.

This Court should dismiss Plaintiffs' Wrongful Death (count twelve), Survival Action (count thirteen) and Loss of Consortium (count fourteen) causes of action because they are derivative claims. and their viability depends on the validity of the claims from which they derive. *See Kessinger v. Grefco, Inc.*, 623 N.E. 2d 946, 987-88 (Ill. App. 4th Dist. 1993) (recognizing that a wrongful-death action is "derivative of the injury to the decedent and is grounded on the same wrongful act of defendant whether it was prosecuted by the injured party during his lifetime or by a representative of the estate"); *Gorman v. Syngenta Corp. Prot., LLC, (In re Paraquat Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 77433, at *8 n.2 (S.D. Ill. May 3, 2023) (recognizing survival action as derivative of underlying negligence claim); *Allender v. Guardian Life Ins. Co.*, 592 F. Supp. 541, 544 (N.D. Ill. Aug. 7, 1984) (dismissing loss of consortium claim "[b]ecause loss of consortium claims are derivative in nature and require that the defendant be liable for the injuries to the person whose spouse brings the action"). As explained above, Plaintiffs have failed to allege sufficient facts to maintain any of the claims upon which their derivative claims are based. This Court should therefore dismiss their wrongful-death, survival, and loss-of-consortium causes of action.

**IX.     MCBRIDE INCORPORATES ARGUMENTS IN DEFENDANTS' OMNIBUS MOTION TO DISMISS**

McBride incorporates arguments raised in Defendants' Omnibus Motion to Dismiss, to the extent necessary and to the extent such arguments are not contrary to this Motion.

## CONCLUSION

For these reasons Defendant McBride Research Laboratories respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted,

**Lewis Brisbois Bisgaard & Smith LLP**
550 West Adams Street, Suite 300
Chicago, IL 60661
Telephone: 312.463.3465
Facsimile: 312.345.1778

BY: */s/ Thomas M. Wolf*
THOMAS M. WOLF
ARDC No. 6314294
Thomas.Wolf@lewisbrisbois.com

*COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I CERTIFY that on this 21st day of August, 2023, the foregoing was filed with the Court's CM/ECF Service. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic filing generated by CM/ECF.

*/s/ Thomas M. Wolf*