**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Master Docket No. 1:23-cv-00818<br><br>MDL No. 3060<br><br>Hon. Mary M. Rowland |

**DEFENDANTS' REPLY**
**IN SUPPORT OF MOTION TO DISMISS**
**MASTER LONG FORM PERSONAL INJURY COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PLAINTIFFS' NON-PRODUCTS LIABILITY CLAIMS ARE PREEMPTED. ...............4

III.    PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM. ...........6

      A.      Plaintiffs' Negligence Claims Are Insufficiently Pled. ...........................................6

      B.      Plaintiffs' Design Defect Claim Is Insufficiently Pled. ..........................................8

      C.      Plaintiffs' Failure To Warn Claim Is Insufficiently Pled........................................10

IV.     PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED............12

V.      PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY
      PLED..........................................................................................................15

VI.     THE CAUSES OF ACTION FOR UNJUST ENRICHMENT AND PUNITIVE
      DAMAGES FAIL TO STATE A CLAIM. ...................................................17

VII.    THE WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF
      CONSORTIUM CLAIMS SHOULD BE DISMISSED.....................................18

VIII.   DABUR INTERNATIONAL AND DERMOVIVA MUST BE DISMISSED
      FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION.........................18

IX.     CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Apperson v. E.I. du Pont de Nemours & Co.*,
41 F.3d 1103 (7th Cir. 1994) ...............................................11

*Aurzadniczek v. Humana Health Plan, Inc.*,
No. 15-CV-00146-RM-KMT, 2016 WL 9735775 (D. Colo. Feb. 23, 2016) .........................12

*ASEA/AFSCME Local Health 52 Health Benefits Tr. v. Abbott Labs.*,
No. 17-cv-6704, 2018 WL 3022670 (N.D. Ill. June 18, 2018).........................................18, 19

*Ashcroft v. Iqbal*,
550 U.S. 544 (2009) ............................................... 10

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) .......................................14

*Barnes v. Unilever United States Inc.*,
No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) ..............................5, 6

*Batson v. Live Nation Entm't, Inc.*,
746 F.3d 827 (7th Cir. 2014) ...............................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................1

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) .......................................12, 13

*Breeden v. Richmond Cmty. Coll.*,
171 F.R.D. 189 (M.D.N.C. 1997) .......................................12

*Chandler v. Zinus, Inc.*,
No. 3:20-CV-265-DWD, 2022 WL 2104516 (S.D. Ill. June 10, 2022).....................9

*Cole v. Chevron USA, Inc.*,
554 F. Supp. 2d 655 (S.D. Miss. 2007)......................................17, 18

*Corwin v. Conn. Valley Arms, Inc.*,
74 F. Supp. 3d 883 (N.D. Ill. 2014) .......................................8, 16

*Critcher v. L'Oréal USA, Inc.*,
959 F.3d 31 (2d Cir. 2020)................................................4, 5

# TABLE OF AUTHORITIES

**Page**

*Darne v. Ford Motor Co.*,
No. 13 CV 03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017)..........................................3, 13

*Fisher v. Ethicon, Inc.*,
No. 1:20-cv-1365, 2021 WL 5889522 (C.D. Ill. Dec. 13, 2021)............................................17

*Giles v. Wyeth, Inc.*,
500 F. Supp. 2d 1063 (S.D. Ill. 2007).....................................................................................11

*Golemine, Inc. v. Town of Merrillville, Ind.*,
652 F. Supp. 2d 977 (N.D. Ind. 2009) .......................................................................................6

*Griffin v. Medtronic, Inc.*,
No. 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017) ...............................................8, 11

*Hare v. Cnty. of Kane*,
No. 14 C 1851, 2014 WL 7213198 (N.D. Ill. Dec. 15, 2014) ...........................................12, 17

*Heisner ex rel. Heisner v. Genzyme Corp.*,
No. 08-C-593, 2008 WL 2940811 (N.D. Ill. July 25, 2008) ..................................................16

*Hernandez v. Johnson & Johnson*,
No. 4:20-cv-05136-SMJ, 2021 WL 320612 (E.D. Wash. Jan. 8, 2021)..................................14

*Hutchison v. Fitzgerald Equip. Co., Inc.*,
910 F.3d 1016 (7th Cir. 2018) ...................................................................................................6

*Ibarolla v. Nutrex Rsch., Inc.*,
No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) .............................................7, 14

*In re Acetaminophen - ASD-ADHD Prod. Liab. Litig.*,
No. 22CV9011 (DLC), 2023 WL 3045802 (S.D.N.Y. Apr. 21, 2023) .................................2, 5

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*,
664 F. Supp. 2d 752 (E.D. Mich. 2009).................................................................................17

*In re Plumbing Fixtures*,
298 F. Supp. 484 (J.P.M.L. 1968)............................................................................................19

*In re McDonald's French Fries Litig.*,
503 F. Supp. 2d 953 (N.D. Ill. 2007) ......................................................................................16

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 82 (D. Conn. 2014)..........................................................................................14

# TABLE OF AUTHORITIES

**Page**

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ....................................................................................15

*Indus. Hard Chrome. Ltd. v. Hetran, Inc.*,
    64 F. Supp. 2d 741 (N.D. Ill. 1999) ......................................................................................16

*Johnson v. Edward Orton, Jr. Ceramic Found.*,
    71 F.4th 601 (7th Cir. 2023) ...................................................................................................7

*Karlinski v. Costco Wholesale Corp.*,
    616 F. Supp. 3d 753 (N.D. Ill. 2022) ....................................................................................17

*Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
    912 F.3d 1049 (7th Cir. 2019) ...............................................................................................20

*Mallory v. Norfolk Southern Railway Co.*,
    143 S. Ct. 2028 (2023) ...........................................................................................................19

*Mercado v. Bayer Healthcare Pharm. Inc.*,
    No. 14 C 6699, 2015 WL 3545238 (N.D. Ill. Jun. 5, 2015) ...........................................2, 3, 8

*Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*,
    No. 05 C 1698, 2005 WL 3159680 (N.D. Ill. Nov. 22, 2005) ...............................................18

*O'Connor v. Ford Motor Co.*,
    477 F. Supp. 3d 705 (N.D. Ill. 2020) ...........................................................................6, 13, 15

*Pershouse v. L.L. Bean, Inc.*,
    368 F. Supp. 3d 185 (D. Mass. 2019) ...................................................................................17

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ...............................................................................12, 16

*Rodriguez v. Ford Motor Co.*,
    596 F. Supp. 3d 1050 (N.D. Ill. 2022) ..................................................................................13

*Ruhrgas Ag. v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ...............................................................................................................18

*Solvay USA v. Cutting Edge Fabrication, Inc.*,
    521 F. Supp. 3d 718 (N.D. Ill. 2021) ....................................................................................15

*Tillman v. Taro Pharm. Indus. Ltd.*,
    No. 10-cv-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011) .......................................8, 10

# TABLE OF AUTHORITIES

**Page**

*Todd v. Societe Bic, S.A.*,
    21 F.3d 1402 (7th Cir. 1994) .......................................................................................8

*Witt v. Howmedica Osteonics Corp.*,
    No. 13-cv-20742-JLK, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) ......................9

*Wojitas v. Capital Guardian Trust Co.*,
    477 F.3d 924 (7th Cir. 2007) .....................................................................................12

## STATE CASES

*Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*,
    2017 IL 121281 .............................................................................................................19

*Cornstubble v. Ford Motor Co.*,
    532 N.E.2d 884 (Ill. App. Ct. 1988) ...........................................................................7

*N. Tr. Co. v. Upjohn Co.*,
    572 N.E.2d 1030 (Ill. App. Ct. 1991) .......................................................................11

*Regions Bank v. Schmauch*,
    354 S.C. 648 (Ct. App. 2003) ....................................................................................13

*Setliff v. E.I. Du Pont de Nemours & Co.*,
    32 Cal. App. 4th 1525 (1995) ...................................................................................8, 9

*Smith v. Eli Lilly & Co.*,
    137 Ill. 2d 222 (1990) ..................................................................................................2

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
    371 Ill. App. 3d 759 (2007) .......................................................................................14

## FEDERAL STATUTES

21 U.S.C. § 361(a) ...............................................................................................................5

21 U.S.C. § 362(a) ...............................................................................................................6

21 U.S.C. § 379s(a) ..........................................................................................................4, 5

FDCA, 21 U.S.C. § 301, *et seq.* ...................................................................................2, 4, 5

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* .........................................3, 15

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

**<u>RULES</u>**

Federal Rule of Civil Procedure Rule 8 ........................................................................................17

Federal Rule of Civil Procedure Rule 9(b) ........................................................................3, 13, 14

**<u>REGULATIONS</u>**

21 C.F.R. § 701.3(a)...................................................................................................................4

**<u>OTHER AUTHORITIES</u>**

Restatement (Third) of Torts: Prod. Liab. § 1 cmt. a (Am. L. Inst. 1998)......................................5

## I.  PRELIMINARY STATEMENT

Plaintiffs' Opposition does nothing to cure the factual and legal deficiencies that render the Master Complaint fatally defective as currently pled.[1]  Nor does the adoption of the Short Form Complaint ("SFC") pursuant to Dkt. No. 173, although Plaintiffs finally identify some of the products that they claimed caused their various injuries.  In fact, Plaintiffs acknowledge the deficiencies in the Master Complaint and concede multiple factual and legal issues, including the fact that they have not identified, with any level of specificity, the affirmative misrepresentations purportedly made by Defendants.  Nevertheless, Plaintiffs attempt to argue around these glaring infirmities by simply restating the general pleading standards.  This does not suffice.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The Master Complaint, as currently pled, should be dismissed if the fundamental pleading issues addressed below are not corrected.

Plaintiffs' Opposition is based primarily on the notion that the Master Complaint cites "two independent studies finding that *Defendants' products* more-than-double the risks of certain cancers, and multiple other studies associating *Defendants' products* with health risks, particularly related to endocrine and hormone disruption."  (Dkt. No. 176 at 17 (emphases added).)  This is demonstrably false.  The Master Complaint is predicated on two articles:  (1) the October 2022 Chang Article, which its authors described as the first to identify a possible association between hair straightening products and uterine cancer; and (2) the June 2021 White Article, which was the first to identify a possible association between hair straightening products and ovarian cancer.[2]  (Chang Article, *supra* note 2, at 1642; White Article, *supra* note 2, at 1195.)  Indeed, neither article purported to analyze data relating to a single product manufactured by any Defendant.  To the

---

[1] Capitalized terms throughout have the same meaning they did in the Motion to Dismiss.  (Dkt. No. 142.)

[2] The Chang Article is available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9949582/.  The White Article is available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8561257/.  Both articles are referenced throughout the Master Complaint.  (*See* Dkt No. 106 ¶¶ 85-89.)

contrary, the Chang Article expressly states that "[b]rands or ingredients of hair products were ***not collected***." (Chang Article, *supra* note 2, at 1638, 1641 (emphasis added)). Moreover, both articles on their face disavow any ability to establish causation, and both were subject to significant limitations. Plaintiffs do not and cannot defend their reliance on these articles, and they cannot support any plausible allegations of causation.

Hence, although the SFC now identifies (some) brands and products alleged in this MDL, the Master Complaint does not contain any information on the defects in those products as required. *See Mercado v. Bayer Healthcare Pharms. Inc.*, No. 14 C 6699, 2015 WL 3545238, at *2 (N.D. Ill. June 5, 2015) (dismissing products liability claims for failure to allege which "particular condition, quality or attribute of the product that caused the injury"). Plaintiffs' contention that the Court can simply look past this deficiency is erroneous. Certainly, the Master Complaint's broad allegations related to Endocrine Disrupting Chemicals ("EDCs"), including phthalates, di-(2-ethylhexyl), parabens, metals, etc., do not meet the test necessary to state a claim for strict products liability. *See Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232, 266 (1990) (Because "manufacturers are not insurers of their industry," plaintiffs have the burden of proving that the defendant "caused the complained-of harm or injury.").

Setting aside this factual issue, and the lack of notice provided by the Master Complaint, Plaintiffs' claims are fatally flawed for legal reasons. First, Plaintiffs' non-products liability claims are preempted by the FDCA. Plaintiffs assert that, because the Master Complaint alleges personal injuries, then all of their claims are excepted from the FDCA's broad preemption clause. The law does not support this position. *See, e.g.*, *In re Acetaminophen - ASD-ADHD Prod. Liab. Litig.*, No. 22CV9011 (DLC), 2023 WL 3045802, at *5 (S.D.N.Y. Apr. 21, 2023) (dismissing consumer protection claim as preempted by the FDCA because the statute "did not arise from the

development of the common law of torts" or "aim primarily to provide relief to plaintiffs injured by defective products").

Plaintiffs' products liability claims (First, Third, Fourth and Fifth Causes of Action) also should be dismissed. As noted, Plaintiffs' contention that the list of products in the SFC cures all the deficiencies in the Master Complaint is untenable, because, *inter alia*, neither the Master Complaint nor the SFC identify product defects—*i.e.*, the alleged ingredients in Defendants' products that could conceivably cause injury. *See, e.g.*, *Mercado*, 2015 WL 3545238, at *2.

Plaintiffs' fraud-based claims (Second, Eighth, Ninth and Tenth Causes of Action) fare no better. Plaintiffs concede that they cannot maintain any such claim based on a theory of affirmative misrepresentation (Dkt. No. 176 at 21), and they likewise do not allege facts sufficient to sustain an omissions theory under Rule 9(b). *See Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose.").

Plaintiffs' remaining claims for breach of warranty, violation of the Magnuson-Moss Warranty Act ("MMWA"), unjust enrichment, punitive damages, wrongful death, survival and loss of consortium (Sixth, Seventh and Eleventh through Fifteenth Causes of Action) also should be dismissed as inadequately pled.

Simply put, each of Plaintiffs' claims is insufficiently pled, and should be dismissed under the applicable laws of the relevant jurisdictions.[3]

---

[3] Plaintiffs incorrectly state that Defendants "moved to dismiss only those claims subject to Illinois law." (Dkt. No. 176 at 4.) Giving due deference to the jurisdiction in which this Court sits, Defendants' Motion frequently cites Illinois law, but it also cites authority from other jurisdictions—as Plaintiffs themselves recognize. Plaintiffs' apparent request that Defendants cite authority from all fifty states for commonly accepted propositions is needless and appears to impose undue burdens on the Court. And Plaintiffs do not suggest that there are differences in the applicable law of any other jurisdiction that would make a material difference here or that would save their claims.

Finally, Plaintiffs have failed to make a *prima facie* showing that this Court (or **any** transferor court) has personal jurisdiction over Defendants Dabur International or Dermoviva. Indeed, Plaintiffs can point to no facts that would support general or specific jurisdiction over the foreign entity or holding company **anywhere in the United States** and, instead, erroneously contend that issues of personal jurisdiction are "premature" and cannot be decided on "an MDL-wide basis." (*Id.* at 44.) But Plaintiffs offer no authority to support this bald and extraordinary argument, which would all but eviscerate foundational issues of jurisdiction until trial.

For these reasons, and those set out more fully below, the Master Complaint should be dismissed.

## II.   PLAINTIFFS' NON-PRODUCTS LIABILITY CLAIMS ARE PREEMPTED.

Plaintiffs' non-products liability claims (Second, Sixth though Eleventh and Fifteenth Causes of Action) are expressly preempted by the FDCA. The FDCA's "broad preemption clause" prohibits "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is **different from** or **in addition to**, or that is **otherwise not identical with**, a requirement specifically applicable to a particular cosmetic . . . under this chapter." *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35 (2d Cir. 2020); 21 U.S.C. § 379s(a) (emphases added). But Plaintiffs seek to do exactly that.

In particular, Plaintiffs allege that Defendants are defrauding consumers by failing to identify the constituent ingredients that compose the fragrance in their products, even though federal regulations make clear that manufacturers are not required to identify constituent fragrance ingredients. 21 C.F.R. § 701.3(a). Thus, Plaintiffs are seeking to impose requirements on Defendants that are "not identical with" federal requirements, and their non-products liability claims are preempted. *Critcher*, 959 F.3d at 38. While Plaintiffs state in a footnote that they "do not seek to hold Defendants liable for failing to list all fragrance ingredients on the label," attorney

argument cannot rewrite the allegations of the Master Complaint, which belie this assertion. (*Compare* Dkt. No. 176 at 8 n.7 *with* Dkt. No. 106 ¶ 81.)

Plaintiffs' argument that the Master Complaint asserts only products liability claims exempted from the FDCA's "sweeping preemptive force" is also meritless. *Critcher*, 959 F.3d at 38. The FDCA provides that "[n]othing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." 21 U.S.C. § 379s(a). It is well-settled that "products liability is a discrete area of tort law" typically styled as claims for "negligence, strict liability, or the implied warranty of merchantability." Restatement (Third) of Torts: Prod. Liab. § 1 cmt. a (Am. L. Inst. 1998). Thus, not every claim asserted in a personal injury action, and certainly not every claim asserted in the Master Complaint, qualifies as a products liability claim simply because the harm alleged is physical in nature. *See, e.g.*, *In re Acetaminophen*, 2023 WL 3045802, at *5 (consumer protection claim was preempted by the FDCA because the statute "did not arise from the development of the common law of torts" or "aim primarily to provide relief to plaintiffs injured by defective products").

Plaintiffs' contention that their claims are not preempted because they are based on alleged violations of the FDCA's misbranding and adulteration prohibitions also falls flat, as Plaintiffs have not articulated any violation of these provisions. With respect to an alleged "adulteration," Plaintiffs have not alleged facts showing that any product "contains any poisonous or deleterious substance which may render it injurious." 21 U.S.C. § 361(a). Indeed, the Master Complaint does not identify any alleged product defect and is completely silent as to the substances contained within the products that would render them adulterated. The Master Complaint also does not allege that any (unidentified) product is "misbranded," as there are no facts showing that any product

label is "false or misleading." 21 U.S.C. § 362(a). (*See infra* Section IV.)[4]

## III.    PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM.

Plaintiffs' Negligence and Strict Liability claims also should be dismissed, as Plaintiffs

have not alleged the requisite facts to maintain these claims.

### A.    Plaintiffs' Negligence Claims Are Insufficiently Pled.

Plaintiffs' claims for Negligence and/or Gross Negligence and Negligence *Per Se* (First

and Third Causes of Action) must fail. As an initial matter, and as Plaintiffs concede, many states

do not recognize causes of action for gross negligence or negligence *per se*. (*See* Dkt. No. 142 at

16; Dkt. No. 176 at 14-15, 16 n.18.) This alone warrants dismissal of those claims. *See Golemine,*

*Inc. v. Town of Merrillville, Ind.*, 652 F. Supp. 2d 977, 986 (N.D. Ind. 2009) (Defendants "cannot

be expected to guess at the plaintiffs' claims."). The SFC exacerbates this problem, because

individual plaintiffs residing in jurisdictions that do not recognize "Gross Negligence" must

nonetheless indicate that they are pursuing this claim if they intend to assert a general negligence

claim. (*See* Dkt. No. 173 ¶ 11 ("Count I – Negligence and/or Gross Negligence").)

Plaintiffs also have failed to state a claim for general negligence, as they have not alleged

facts showing that Defendants owed them a duty, or that any such duty was breached. *See*

*O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 721 (N.D. Ill. 2020). While a manufacturer

has a general duty to exercise reasonable care in manufacturing products that are reasonably safe

for intended uses, its duty to warn extends to only those dangers of which it has "actual or

constructive knowledge." *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1022 (7th Cir.

2018). No such knowledge is alleged here. Rather, the Master Complaint alleges the opposite,

---

[4] At a minimum, this Court should dismiss as preempted any claim asserted on the basis of Defendants' purported nondisclosure of constituent fragrance ingredients. *See Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2023 WL 2456385, at *8 (N.D. Ill. Mar. 11, 2023) (dismissing "deceptive practices claims [] based on the alleged omission of benzene from [defendant]'s products' labels" as preempted).

acknowledging that the October 2022 Chang Article was the first to even suggest a possible association between hair straightening products and uterine cancer. (Chang Article, *supra* note 2, at 1638.) Plaintiffs also do not allege any facts showing that the use of any ingredient in Defendants' products was not reasonable and customary in the industry during the yet-identified time periods when Plaintiffs were using the products. To the contrary, the Master Complaint acknowledges that phthalates have been around for over a century and have "common uses." (Dkt. No. 106 ¶ 78.) *See Cornstubble v. Ford Motor Co.*, 532 N.E.2d 884, 886 (Ill. App. Ct. 1988) (adherence to industry custom and practice can defeat a negligence claim). As such, Plaintiffs fail to plausibly allege that Defendants breached their duty of care.

Plaintiffs' argument that manufacturers must also warn of unknown risks is untenable. Even Plaintiffs' cited authority acknowledges that a defendant's knowledge cannot surpass the "present state of human knowledge" at the relevant time. *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 615 (7th Cir. 2023). It is undisputed that the Chang Article, published in October 2022, was the first to raise a possible association between hair straightening products and uterine cancer. (Chang Article, *supra* note 2, at 1638.) It is also undisputed that the White Article, published in June 2021, was the first to raise a possible association between hair straightening products and ovarian cancer. (White Article, *supra* note 2, at 1195.) Thus, even if these articles had examined the products at issue ***in this case*** (they did not), Plaintiffs have failed to allege any facts indicating that Defendants "should have known" of risks associated with these products before these articles were published. *See Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *3-4 (N.D. Ill. Oct. 31, 2012) (allegations that defendants knew of risks associated with an ingredient did not suffice; plaintiffs only plausibly alleged knowledge on defendants' part after they received an FDA warning letter about the "little research[ed]" ingredient).

Plaintiffs' negligence claim also fails because that they have not, and cannot, allege facts showing that any purported breach by Defendants caused Plaintiffs' injuries. Plaintiffs admit they do not know whether the products they used contain phthalates, or any of the other allegedly "toxic" ingredient. (Dkt. No. 106 ¶¶ 71, 81.) In fact, Plaintiffs concede they have no idea what the alleged defect (*i.e.*, the offending ingredient) is in any of Defendants' products (Dkt. No. 176 at 13), and the SFC does nothing to cure this problem. Plaintiffs' vague references to so-called science do not suffice to allege causation. *See Setliff v. E.I. Du Pont de Nemours & Co.*, 32 Cal. App. 4th 1525, 1529, 1535 (1995) (dismissing negligence claim where plaintiff was unable to identify "the specific chemicals and toxics involved in his injury"); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1409 (7th Cir. 1994) (citing California law with approval, noting that California "pioneered" products liability law). Accordingly, the Court should dismiss the negligence claims as currently pled.

## B.    Plaintiffs' Design Defect Claim Is Insufficiently Pled.

Plaintiffs' Design Defect claim (Fourth Cause of Action) fails because Plaintiffs have not identified the defects in any products, let alone that such defects caused an injury. *See Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 890-91 (N.D. Ill. 2014) (to state a design defect claim, a plaintiff "must plead facts that show how the [product] was so defective in . . . its . . . design as to make it unreasonably dangerous"). Courts routinely dismiss design defect claims at the pleading stage where, as here, a plaintiff fails to allege "any factual allegations at all relating to a particular condition, quality or attribute of the product that caused the injury." *Mercado*, 2015 WL 3545238, at *2; *see, e.g.*, *Griffin v. Medtronic, Inc.*, No. 17 CV 927, 2017 WL 4417821, *3 (N.D. Ill. Oct. 5, 2017) (dismissing design defect claim where plaintiff's allegations only used the "conclusory terms 'dangerous,' 'defective,' and 'imperfect,'" without factual support); *Tillman v.*

*Taro Pharm. Indus. Ltd.*, No. 10-cv-04202, 2011 WL 3704762, at *4 (N.D. Ill. Aug. 17, 2011) (allegations that defendant's drug "was unreasonably dangerous and that an ordinary customer would not expect the danger," that its "foreseeable risks exceeded [its] benefits," and that it "was more dangerous than alternative drugs available" were insufficient to state a design defect claim).

While Plaintiffs agree that "merely alleg[ing] a temporal basis for causation" (*i.e.*, "first they were exposed to the defendant's product, and then they suffered an injury") does not suffice to state a design defect claim, that is all Plaintiffs have done here. (Dkt. No. 176 at 18.) Plaintiffs do not "alleg[e] any facts to support a plausible causal mechanism or other connection between the product and the injury." (*Id.*) Instead, as Plaintiffs confirm in their Opposition, they rely entirely on vague allegations that the products, generally, contain "toxic chemicals." (*Id.* at 13 (citing Dkt. No. 106 ¶ 71).) This is plainly insufficient. *See Setliff*, 32 Cal. App. 4th at 1529, 1535 (dismissing negligence claim where plaintiff was unable to identify "the specific chemicals and toxics involved in his injury"); *Chandler v. Zinus, Inc.*, No. 3:20-CV-265-DWD, 2022 WL 2104516, at *6 (S.D. Ill. June 10, 2022) (a design defect claim is stated where plaintiffs allege "specific details regarding the problems caused by specific components of the [product]"); *Witt v. Howmedica Osteonics Corp.*, No. 13-cv-20742-JLK, 2013 WL 6858395, at *2 (S.D. Fla. Dec. 30, 2013) (allegation that "the prosthesis was defective because it contained design defects such as loosening" was insufficient because "[t]he prosthesis is a complex device; without specific allegations as to the components which Plaintiff alleges are defective and how those components are defective, Defendant cannot answer"). These allegations would not pass the old notice-pleading standard and certainly do not satisfy the *Iqbal/Twombly* plausibility standard.[5]

---

[5] Plaintiffs' failure to allege causation has already manifested itself in discovery. For instance, Plaintiffs have demanded that Defendants identify products (beyond hair relaxers) that contain ingredients considered by OSHA and EPA to have suggestive carcinogenic potential. These requests have no

Relatedly, Plaintiffs' contention that they have adequately alleged a design defect because the Master Complaint cites "two independent studies finding that Defendants' products more-than-double the risks of certain cancers, and multiple other studies associating Defendants' products with health risks, particularly related to endocrine and hormone disruption" is simply false. (Dkt. No. 176 at 17.) Neither study identified ***any*** of the Defendants or their products or purported to analyze any specific hair straightener or relaxer brands, product lines, or products. (Chang Article, *supra* note 2, at 1638, 1641 (noting that "[b]rands or ingredients of hair products were not collected.") The data analyzed in the Chang Article and the White Article was not confined to hair relaxer products in particular. (*See* Chang Article, *supra* note 2, at 1638 (discussing "hair straightener" products); White Article, *supra* note 2, at 1195 (same).)[6]

Finally, Plaintiffs' contention that the SFC somehow cures the deficiencies in the design defect claim is unfounded. Rote allegations that Defendants' products are "unreasonably dangerous" do not suffice to state a design defect claim, and Plaintiffs' failure to identify the ingredients of any product, their concentration or the frequency of product use renders it impossible to know what design flaw, if any, "proximately" caused their alleged injuries. (Dkt. No. 106 ¶ 152.) *See Tillman*, 2011 WL 3704762, at *4. While the SFC requires Plaintiffs to identify the products they used (and some Plaintiffs have not even done that in their SFCs), mere product identification is not enough here. Accordingly, Plaintiffs' design defect claim must fail.

### C.     Plaintiffs' Failure To Warn Claim Is Insufficiently Pled.

Plaintiffs cannot proceed on their Failure to Warn claim (Fifth Cause of Action), as they have not alleged facts showing that (1) Defendants had a duty to warn, (2) Defendants knew or

---

connection to Plaintiffs' allegations. The *Iqbal/Twombly* standard was developed precisely to avoid such costly fishing expeditions. *See Ashcroft v. Iqbal*, 550 U.S. 544, 678-79 (2009).

[6] The Chang Article and White Article both define the relevant category as "straighteners, relaxers or pressing products." (*See* Chang Article, *supra* note 2, at 1637; White Article, *supra* note 2, at 1190.)

should have known of the risk that the product could cause the injury, (3) the failure to provide the information made the warning inadequate, or (4) the failure to warn caused Plaintiffs' injuries. *See Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1065 (S.D. Ill. 2007).

The Master Complaint does not identify when Plaintiffs used any specific product or what warnings were given, rendering it impossible for Plaintiffs to allege when and how any Defendant owed Plaintiffs a duty to warn, or how any Defendant's warnings were inadequate. *See Griffin*, 2017 WL 4417821, at *4 (dismissing failure to warn claim where plaintiff did not "specifically allege [] why the warnings were inadequate").[7] Moreover, while the parties agree that "a duty to warn arises only when there is unequal knowledge with respect to the risk of harm," Plaintiffs have not plausibly alleged such "unequal knowledge" of any risk on any Defendant's part. *Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1108 (7th Cir. 1994). (*See* Dkt. No. 176 at 18.) The Master Complaint is devoid of any facts showing that any Defendant knew or should have known that some (unidentified) ingredient in their products could cause injury and that the Defendant's labeling was thereby inadequate. (*See supra* Section III.A.)

Plaintiffs also have not alleged that their injuries were "proximately" caused by Defendants. *See N. Tr. Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1037 (Ill. App. Ct. 1991) ("plaintiff was required to show that the omission of such information made the warning inadequate . . . and that this defect was the proximate cause of plaintiff's injuries"). Plaintiffs do not identify any direct link between an ingredient in Defendants' products and the risk of developing uterine and/or ovarian cancer. Rather, Plaintiffs acknowledge that EDCs are not listed on the product labels, and

---

[7] Plaintiffs attempt to distinguish *Griffin* by arguing that, "[u]nlike here, *Griffin* also involved allegations that were too vague as to which warnings were missing." (Dkt. No. 176 at 19.) But that is precisely the problem here. Plaintiffs do not allege (because they cannot) that Defendants provided zero safety warnings; instead, they vaguely allege that the warnings given were inadequate, without providing any details regarding these alleged inadequacies. (*See, e.g.*, Dkt. No. 106 ¶ 165 (alleging the products were "not accompanied by adequate warnings").)

concede that they are unable to determine from the labels whether the products contained EDCs. (*See* Dkt. No. 106 ¶ 81.)  This deficient claim should be dismissed.

## IV.  PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED.

Each of Plaintiffs' fraud-based claims—*i.e.*, Negligent Misrepresentation, Fraud/Fraudulent Misrepresentation, Fraudulent Concealment and violations of Consumer Protection Statutes (Second and Eighth through Tenth Cause of Action)—should be dismissed.

As an initial matter, Plaintiffs confirm in their Opposition that they are not pursuing any fraud claims based on an alleged affirmative misrepresentation.  (*See* Dkt. No. 176 at 21 ("Plaintiffs' allegations of misrepresentations by omission are sufficient to state these claims.").)[8] On this basis alone, Plaintiffs' Second and Eighth Causes of Action for negligent and fraudulent misrepresentation should be dismissed in their entirety, as these claims are wholly based on purported "misrepresentations."  (Dkt. No. 106 ¶¶ 129-42, 213-27.)[9]  The Ninth and Tenth Causes of Action also should be dismissed to the extent they are based on unidentified representations.

Plaintiffs' fraud claims based on an omissions theory are also fatally flawed, as the Master Complaint does not allege facts to support the basic elements of these claims, let alone with the

---

[8] While Plaintiffs state, in passing, that the Master Complaint "allege[s] numerous actionable misrepresentations," they do not identify a single one in their Opposition, thereby conceding that none exists.  (*See* Dkt. No. 142 at 23-25.)  *See also Hare v. Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *4 (N.D. Ill. Dec. 15, 2014) ("Failure to meaningfully oppose an argument acts as a waiver.") (citing *Wojitas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

[9] Even if Plaintiffs could argue that these claims are based in part on alleged omissions (they cannot), dismissal still would be warranted, as Plaintiffs have not identified which jurisdictions, if any, recognize "negligent omissions" claims.  *See, e.g.*, *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202–03 (M.D.N.C. 1997) ("[T]he tort of negligent omission does not presently exist in North Carolina."); *Aurzadniczek v. Humana Health Plan, Inc.*, No. 15-CV-00146-RM-KMT, 2016 WL 9735775, at *4 (D. Colo. Feb. 23, 2016) ("The Colorado Supreme Court has never adopted a claim for negligent non-disclosure or negligent omission . . . .").  Moreover, a fraudulent omission claim would be surplusage, as Plaintiffs already assert a fraudulent concealment claim.  *See also Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) ("Generally, district courts are accorded 'a great deal of latitude and discretion' to dismiss duplicative claims.").

specificity required by Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (any claim that "sounds in fraud" triggers Rule 9(b)'s "heightened pleading requirements"). For instance, under both common law fraud and consumer protection claims like the ICFA, courts have held that an omission is not actionable unless made in the context of a "'direct statement[].'" *O'Connor*, 477 F. Supp. 3d at 720. *See also Darne*, 2017 WL 3836586, at *10 ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."). Plaintiffs concede that the Master Complaint does not allege any such statement by any Defendant. This alone warrants dismissal.[10]

Moreover, under an omissions theory, the duty to disclose arises only when: "(1) the plaintiff and defendant are in a fiduciary or confidential relationship," which undisputedly does not exist here, or "(2) [] the plaintiff places trust and confidence in the defendant, thereby placing the defendant in a position of influence and superiority over the plaintiff" in a manner "'extremely similar to that of a fiduciary relationship.'" *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022) (holding that defendant car manufacturer owed plaintiff no duty to disclose alleged defect and rejecting argument that a duty was created simply because defendant "had more knowledge than [plaintiff] as to the functionality of its vehicles and their parts"). Plaintiffs have not alleged the existence of a "special trust relationship" akin to a fiduciary relationship with any Defendant that would give rise to a duty to disclose. *See id.* ("Illinois state and federal courts 'have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one.'")[11]

---

[10] Because omissions claims still require the identification of affirmative statements, Plaintiffs' contention that they are free to indiscriminately allege "that *all* Defendants omitted the same necessary warnings on *every* package and label *every time* they sold the products" is unsound. (Dkt. No. 176 at 22.) The SFC does not cure this problem, because it simply asks Plaintiffs to check boxes next to their desired claims, without requiring them to identify any affirmative statement(s), who made them, or when they were made. Plaintiffs' failure to provide this information is fatal to this claim.

[11] *See also Regions Bank v. Schmauch*, 354 S.C. 648, 674 (Ct. App. 2003) (no duty to disclose where there is "no fiduciary relationship and no expressed repose of trust between the parties").

Finally, contrary to Plaintiffs' contentions, they have not adequately alleged scienter by any Defendant. As previously discussed, the Chang Article was the first to raise a possible association between the use of hair straightening products and uterine cancer, and thus the premise of this lawsuit belies the fact that Defendants have acted with fraudulent intent. *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771 (2007) (plaintiff must allege facts showing that defendant actually knew his statements to be false at the time he made them); *Ibarolla*, 2012 WL 5381236, at *3-4 (general allegations of scienter did not suffice; rather, plaintiffs only plausibly alleged knowledge on defendants' part after they received an FDA warning letter that the "little research[ed]" ingredient in their products rendered their products adulterated).

These same issues plague Plaintiffs' state consumer protection claims (Tenth Cause of Action), which are based on the same allegedly fraudulent conduct—that Defendants made "omissions of material facts regarding the safety and potential risks of their hair relaxer products." (Dkt. No. 106 ¶ 244.) While Plaintiffs suggest these claims need not be pled with particularity, Rule 9(b) is clear: any "circumstances constituting fraud," irrespective of how the claim is stylized, must be pled with specificity. Fed. R. Civ. P. 9(b); *see Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim for failing to satisfy Rule 9(b) pleading "strictures"). Indeed, even the jurisdictions identified by Plaintiffs apply Rule 9(b) to consumer protection claims sounding in fraud. *See, e.g.*, *Hernandez v. Johnson & Johnson*, No. 4:20-cv-05136-SMJ, 2021 WL 320612, at *5 (E.D. Wash. Jan. 8, 2021) (Washington Consumer Protection Act claim sounding in fraud was subject to Rule 9(b)); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 120 (D. Conn. 2014) (Connecticut Unfair Trade Practices Act claim sounding in fraud was subject to Rule 9(b)). Nor can Plaintiffs make an end-run around this requirement by invoking the "unfair" prong of the ICFA, as "[t]he addition of 'unfairness' language does not change an ICFA

-14-

claim that is 'entirely grounded in fraud' to an unfairness claim." *O'Connor*, 477 F. Supp. 3d at 720 (N.D. Ill. 2020).[12] Plaintiffs' consumer protection and fraud claims should, thus, be dismissed.

## V.    **PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY PLED.**

Plaintiffs' claims for Breach of the Implied Warranty of Merchantability/Fitness for Particular Use (Sixth Cause of Action) and Express Warranty/Magnuson-Moss Warranty Act (Seventh Cause of Action) also should be dismissed. As a threshold matter, Plaintiffs concede that state privity requirements bar their warranty claims in many jurisdictions. (*See* Dkt. No. 176 at 28. *See also* Dkt. No. 142 at 26-27.) Faced with this problem, Plaintiffs ask this Court to kick the can down the road, arguing that the parties can address state-specific privity requirements in individual cases. But there is no reason to keep deficient claims in these cases. Indeed, courts routinely dismiss warranty claims on this basis at the pleading stage, even in MDLs. *See, e.g.*, *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625 (C.D. Cal. 2022). Plaintiffs' contention that they have nonetheless pled around these privity requirements by alleging facts invoking exceptions misses the mark. No personal injury exception applies here, because Plaintiffs cannot bring a viable claim without alleging facts giving rise to a breach of implied warranty. *See Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 726 (N.D. Ill. 2021). (*See also infra* at 16.) Plaintiffs also cannot rely on exceptions involving direct misrepresentations to consumers, as they concede they have not identified any such misrepresentations. (*See* Dkt. No. 176 at 21.)

Plaintiffs' claim for breach of express warranty fails for the additional reason that Plaintiffs have not identified any language or terms of an alleged express warranty or reliance thereon.

---

[12] In any event, Plaintiffs have not alleged facts demonstrating unfair conduct by any Defendant. There are no facts suggesting that any Defendant violated public policy, precluded consumers from purchasing alternative hair products, or caused substantial injury to consumers. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830-34 (7th Cir. 2014).

*Corwin*, 74 F. Supp. 3d at 891-92. The Master Complaint lacks basic detail, including the statements Plaintiffs allegedly relied upon in making product purchases, or when and where such statements were made. The SFC is also silent on these facts. Plaintiffs' generic allegation that "Defendants expressly represented and warranted to Plaintiffs . . . that their hair relaxer products were safe and effective for their reasonably expected and intended use—straightening hair" (Dkt. No. 106 ¶ 196) is far from the specific "affirmation of fact or promise" required to state an express warranty claim. *See Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at *8 (N.D. Ill. July 25, 2008) (allegation that defendant stated that product was "safe, effective, fit and proper for its intended use" was insufficient to support breach of express warranty claim).

The implied warranty claims also fail. Plaintiffs concede that the two theories on which their implied warranty claims are based are coextensive of one another. (Dkt. No. 176 at 26-27.) An implied warranty of merchantability is a guarantee by the seller that its goods are "fit for the ordinary purpose for which the goods are used," while an implied warranty for particular use is a guarantee by the seller that the goods "were for a purpose other than [its] ordinary use." *Indus. Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007). Because Plaintiffs have not alleged any conceivable use of the products beyond their ordinary purpose—straightening hair—this claim should be dismissed to the extent it is based on something other than the products' ordinary use. *See Reid*, 964 F. Supp. 2d at 919 (duplicative claims are subject to dismissal). Moreover, Plaintiffs have not alleged facts demonstrating that the products were not fit for their ordinary use. Mere allegations that Plaintiffs were injured after using Defendants' products do not suffice, particularly as Plaintiffs do not allege that the products did not fulfill their purpose of straightening hair, nor do they allege that Defendants provided zero safety warnings to consumers.

Because Plaintiffs' express and implied warranty claims have not been adequately pled, their derivative MMWA claim must also fail. *See Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 765 (N.D. Ill. 2022). (*See also* Dkt. No. 142 at 29.)

## VI. THE CAUSES OF ACTION FOR UNJUST ENRICHMENT AND PUNITIVE DAMAGES FAIL TO STATE A CLAIM.

Plaintiffs' Unjust Enrichment claim (Eleventh Cause of Action) should be dismissed. As Plaintiffs concede, not all jurisdictions recognize unjust enrichment as an independent cause of action. (Dkt. No. 176 at 31-32; *see also* Dkt. No. 142 at 29.) Plaintiffs also fail to address (and thereby concede) Defendants' argument that several jurisdictions bar unjust enrichment claims where, as here, there is an adequate remedy at law. *See Hare*, 2014 WL 7213198, at *4; *see also Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185 (D. Mass. 2019) ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment."); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 664 F. Supp. 2d 752, 763 (E.D. Mich. 2009) (dismissing unjust enrichment claims in Master Complaint for plaintiffs in jurisdictions where "unjust enrichment is not available [if] there is an adequate remedy at law"). Plaintiffs have thus not met their burden to state a viable claim for relief in the Master Complaint, and this claim should thus be dismissed. Fed. R. Civ. P. 8. At a minimum, Plaintiffs should be required to amend the Master Complaint to identify the jurisdictions for which this claim applies, and the SFC should limit the availability for this cause of action to plaintiffs in those jurisdictions.

Plaintiffs' claim for Punitive Damages (Fifteenth Cause of Action) cannot stand for similar reasons. Punitive damages are a remedy, not an independent cause of action. *See Fisher v. Ethicon, Inc.*, No. 1:20-cv-1365, 2021 WL 5889522, at *3 (C.D. Ill. Dec. 13, 2021) (dismissing punitive damages claim; "punitive damages are a remedy"); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 674 (S.D. Miss. 2007) (same). Plaintiffs do not contend otherwise, and simply assert

that they are entitled to seek this remedy. While this admission is dispositive, dismissal of this claim is also warranted because Plaintiffs have not alleged facts to allow them to seek punitive damages. That is, the Master Complaint does not allege any facts showing that any Defendant acted willfully, wantonly or recklessly. *See Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, No. 05 C 1698, 2005 WL 3159680, at *11 (N.D. Ill. Nov. 22, 2005). As noted above, Plaintiffs have not identified what acts or omissions Defendants took concerning any products, or whether Defendants even knew or had reason to know that their products were allegedly unsafe.

## VII.  THE WRONGFUL DEATH, SURVIVAL ACTION AND LOSS OF CONSORTIUM CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Wrongful Death, Survival Action and Loss of Consortium claims (Twelfth through Fourteenth Causes of Action) should be dismissed. Plaintiffs acknowledge these claims are derivative in nature. (Dkt. No. 176 at 33.) Because Plaintiffs have failed to allege sufficient facts to maintain the underlying claims, these claims should likewise be dismissed.

## VIII.  DABUR INTERNATIONAL AND DERMOVIVA MUST BE DISMISSED FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION.

Once a defendant contends that the Court lacks personal jurisdiction over it, as Dabur International does here, "the plaintiff bears the burden of making a prima facie showing establishing jurisdiction over the defendant." *ASEA/AFSCME Local Health 52 Health Benefits Tr. v. Abbott Labs.*, No. 17-cv-6704, 2018 WL 3022670, at *2 (N.D. Ill. June 18, 2018). Plaintiffs do not even attempt to make the required showing; instead, they baldly contend that "[q]uestions of personal jurisdiction simply cannot be decided on an MDL-wide basis." (Dkt. No. 176 at 34.) But it is axiomatic that personal jurisdiction "'is an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas Ag. v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). Thus, Plaintiffs are incorrect that the Court can simply put off this threshold issue until some later time and Dabur International should be

dismissed from this case.

Plaintiffs next argue the appropriate forum for assessing jurisdiction is not in this Court, but in the transferor courts. Not so. As the transferee court, the Court has jurisdiction over these actions only if the cases were properly filed in the transferor courts. *See In re Plumbing Fixtures*, 298 F. Supp. 484, 495 (J.P.M.L. 1968). Dabur International contends that it is not subject to jurisdiction in *any* U.S. court for purposes of the claims in this litigation and, despite Dabur International's argument, Plaintiffs have not made a prima facie showing that Dabur International is subject to jurisdiction in any of the 21 states or territories in which these claims were originally brought. Thus, Plaintiffs have failed to carry their burden. *See ASEA*, 2018 WL 3022670, at *2.

Finally, Plaintiffs claim *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028 (2023) establishes Illinois' general jurisdiction over Dabur International, but this is also incorrect. *Norfolk* stands for the narrow proposition that, if a state conditions business registration on a company's submission to that state's general jurisdiction and that company registers to do business in that state, the company will be subject to that state's general jurisdiction. *Id.* at 2037. The Illinois Supreme Court, however, has explicitly ruled that 735 ILCS 5/2-209(b)(4) *cannot* subject a registered business to the state's general jurisdiction absent *other facts* establishing that the "defendant's contacts with Illinois have rendered it 'essentially at home' in this state." *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶¶ 21-27. Moreover, unlike the state law at issue in *Norfolk*, "[n]one of the . . . provisions [in the Illinois Business Corporation Act of 1983, 805 ILCS 5/1.01 *et seq.*] require foreign corporations to consent to general jurisdiction as a condition of doing business in Illinois, nor do they indicate that, by registering in Illinois or appointing a registered agent, a corporation waives any due process limitations on this state's exercise of general jurisdiction." *Id.* at ¶ 24. Accordingly, the fact that Dabur International at one

-19-

time was registered to do business in Illinois cannot alone confer general jurisdiction on this Court and, critically, Plaintiffs allege no other facts that would give rise to personal jurisdiction here.

Even setting aside Plaintiffs' misreading of the law, they concede that Dabur International is no longer registered to do business in Illinois, with the registration lapsing in 2021, so, even if Dabur International were at one time subject to the jurisdiction of Illinois courts under a hypothetically more expansive law, that is no longer the case. Because Plaintiffs have failed to put forward a prima facie showing of personal jurisdiction over Dabur International, Dabur International must be dismissed with prejudice.

It should further be noted that Plaintiffs entirely fail to address the fact that Dabur International USA Ltd. does not exist and never has existed. Plaintiffs have thus waived this issue and Dabur International USA Ltd. should be dismissed. *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019) ("even a complaint that passes muster under the liberal notice pleading requirements of [Rule] 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint"). Moreover, although Dermoviva has been dismissed from the Master Complaint and at least three underlying actions, it is unclear whether Dermoviva is still named in cases pending before the Court.[13] Thus, Dermoviva's motion is still ripe and Dermoviva respectfully requests dismissal from this litigation.

## IX.  CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court grant their motion to dismiss.

---

[13] Plaintiffs' voluntary dismissal (*see* Dkt. No. 177) does not reference, much less address, at least seven cases in this MDL where Dermoviva was additionally named. *See Roy v. L'Oréal USA, Inc.*, No. 1:23-cv-4106 (N.D. Ill.); *Mask v. L'Oréal USA., Inc.*, No. 1:23-cv-04103 (N.D. Ill.); *Fuggetta v. L'Oréal USA, Inc.*, No. 1:23-cv-04450 (N.D. Ill.); *Brown v. L'Oréal USA Inc.*, No. 1:23-cv-04569 (N.D. Ill.); *Hendrix v. L'Oréal USA, Inc.*, No. 1:23-cv-04695 (N.D. Ill.); *Patterson v. L'Oréal USA, Inc.*, No. 1:23-cv-04722 (N.D. Ill.); *Allen v. L'Oréal USA, Inc.*, No. 1:23-cv-04767 (N.D. Ill.).

Dated: August 25, 2023     Respectfully submitted,

*/s/ Dennis S. Ellis*
Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Ellis George Cipollone O'Brien LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
nbegakis@egcfirm.com

Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.;*
*L'Oréal USA Products, Inc.; SoftSheen-Carson*
*LLC and SoftSheen-Carson (W.I.), Inc.*

*/s/  Mark C. Goodman*
Mark C. Goodman
Baker & McKenzie LLP
Two Embarcadero Center, Suite 1100
San Francisco, CA 94111
T: (415) 576-3080
mark.goodman@bakermckenzie.com

Barry Thompson
Baker & McKenzie LLP
10250 Constellation Boulevard Suite 1850

-21-

Los Angeles, California 90067
T: (310) 201-4728
barry.thompson@bakermckenzie.com

Mark D. Taylor
Baker & McKenzie LLP
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
T: (214) 978-3089
mark.taylor@bakermckenzie.com

Maurice A. Bellan
Teisha Johnson
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, District of Columbia 20006
T: (202) 452-7057
maurice.bellan@bakermckenzie.com
teisha.johnson@bakermckenzie.com

Laura A. Kelly
Baker & McKenzie LLP
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
laura.kelly@bakermckenzie.com

Kelechi E. Okengwu
Baker & McKenzie LLP
452 Fifth Avenue
New York, New York 10018
T:  (212) 626-4100
Email: kelechi.okengwu@bakermckenzie.com

*Counsel for Defendants Namasté
Laboratories, LLC and Specially Appearing
Defendants Dabur International Limited and
Dermoviva Skin Essentials Inc.*

*/s/ Lori B. Leskin*
Lori B. Leskin
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689

-22-

Lori.leskin@arnoldporter.com

Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Counsel for Defendants Strength of Nature*
*LLC; Strength of Nature Global LLC; and*
*Godrej SON Holdings*

*/s/ R. Trent Taylor*
R. Trent Taylor
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

*/s/ Patrick P. Clyder*
Patrick P. Clyder
Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

*/s/ Joseph P. Sullivan*
Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

-23-

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

*/s/ Richard J. Leamy, Jr.*
Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

*/s/ Melissa Fallah*
Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

*/s/ Robert A. Atkins*
Robert A. Atkins
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ratkins@paulweiss.com

Randy Luskey
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
(628) 432-5112
rluskey@paulweiss.com

David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7348
dcole@paulweiss.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

/s/ Richard D. Grossman
Richard D. Grossman
Law Offices of Richard D. Grossman
211 West Wacker Drive, Suite 710
Chicago, IL 60606
(312) 750-9308
rgat135@gmail.com

*Counsel for Defendant AFAM Concept Inc. and JF Labs*