**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE: HAIR RELAXING MARKETING SALES PRACTICES AND PRODUCTS LIABILTIY LITIGATION, JENNY MITCHELL, | MDL No. 3060 Master Docket No. 1:23-cv-00818 Hon. Mary M. Rowland |

## DEFENDANTS' JOINT SUBMISSION REGARDING DISCOVERY ISSUES TO BE DISCUSSED AT OCTOBER 2, 2023 CONFERENCE

Defendants Avlon Industries, Inc., Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc., Dabur International Limited, Dermoviva Skin Essentials Inc., Godrej SON Holdings, Inc., House of Cheatham LLC, L'Oréal USA, Inc., L'Oréal USA Products, Inc. (collectively with SoftSheen-Carson LLC "L'Oréal USA"), Luster Products, Inc., Namasté Laboratories, LLC, Revlon, Inc., Revlon Consumer Products Corporation, Revlon Group Holdings LLC ("Revlon"), SoftSheen-Carson LLC, Strength of Nature, LLC, and Sally Beauty Supply, LLC (collectively, "Defendants") submit this joint memorandum regarding outstanding discovery disputes.[1]

---

[1] This brief addresses issues common to all Defendants and individual issues particular to individual defendants and groups of defendants. Each defendant is differently situated and the parties continue to meet and confer regarding a number of issues. Attached hereto as Exhibits 1 through 5, respectively, are Plaintiffs' Rule 30(b)(6) Notices to L'Oréal USA, Inc. and corresponding objections. Attached hereto as Exhibits 6 and 7, respectively, are Plaintiffs' First Set of Interrogatories to L'Oréal USA, Inc. and relevant portions of the corresponding objections. This discovery is consistent with discovery served on most of the defendants. Attached hereto as Exhibits 8 and 9, respectively, are excerpts of the testimony of L'Oréal USA witnesses Noah Yung-Hing (Product Identification) and Anne Garrison (Corporate Structure).

## I.    **PRELIMINARY STATEMENT**

Contrary to their representations to the Court, Plaintiffs' initial round of discovery sought far more than "[v]ery basic information."  (ECF No. 151, Jul. 6, 2023, Case Management Conf., Tr. at 52:11-19.)  Plaintiffs represented to the Court that:

> We served three deposition notices for 30(b)(6) depositions.  They deal with corporate structure, which we need to know about.  They deal with ESI, where their documents are stored, which we need to know about. And there's also a 30(b)(6) deposition that deals with brand and product names at the various corporations that came out of some of the arguments that were made last time. Very basic information that we need, and we're looking at it as the foundation for the later discovery we will serve.

(ECF No. 151, Jul. 6, 2023, Case Management Conf., Tr. at 52:11-19.)

Six weeks later, Plaintiffs requested that the Court fast track these depositions and require them to be completed no later than October 31, again representing that the depositions would be high level and limited to "pretty basic product identification, corporate structure, and some ESI depositions."  (ECF No. 215, August 23, 2023, Case Management Conference, Tr. at 15:6-25.)

Taking Plaintiffs at their word, L'Oréal USA agreed to produce the first witnesses in this case:  Rule 30(b)(6) witnesses regarding Product Identification and Corporate Structure. Plaintiffs' questioning went far afield of "basic."  Indeed, the vast majority of the questions asked were beyond the scope of the noticed topics.  For example, the witness designated to identify the hair relaxer products sold by L'Oréal USA and the dates during which they were sold was asked questions regarding intellectual property and product development issues that were not "basic" and were far beyond the narrow scope of the single noticed topic:

> Q.  Okay.  And who – do you know who owns the formulation of the hair relaxer product that you just recognized from Sub-Saharan Africa?
>
> . . .
>
> A.  L'Oreal S.A.

2

(Noah Yung-Hing (Rough) Tr. at 208:18-209:23.)

> Q.  Are you aware of any L'Oreal USA brands of hair relaxer that were in the development stages but were not finalized?
>
> . . .
>
> A.  I don't have access to this information.

(*Id.* at 72: 20-24.)

> Q.  Okay. So you're not aware of any brands that were in the development stages but never came to fruition, correct?
>
> . . .
>
> A.  No, I don't.

(*Id.* at 74:12-17.)

Similarly, L'Oréal USA's witness on corporate structure was asked questions regarding intellectual property, IT issues (the witness was not designated on ESI topics), and product development:

> Q.  L'Oreal Group, I assume, would [have] a record of all of the patents that are owned by L'Oreal Group for the L'Oreal US entities, correct?
>
> . . .
>
> A.  I'm not sure, but possibly.

(A. Garrison Tr. at 107:5-14.)

> Q.  Okay.  And for L'Oreal Group [in France] and L'Oreal USA, do they use the same IT systems?
>
> . . .
>
> A.  I don't know.

(*Id.* at 162:14-19.)

> Q.  What's the earliest date that a hair relaxer was manufactured by L'Oreal?
>
> . . .

A. I don't know.

(*Id.* at 109:4-8.)

Q. Okay. When were the hair relaxer products deprioritized?

. . .

A. I don't know for sure, but at least – I mean, before – ten years.

(*Id.* at 132:14-18.)

Q. Okay. Were there any other reasons that hair relaxer was deprioritized by [the Research and Innovation Department] that you know of?

. . .

A. No.

(*Id.* at 134:6-24.)

"Litigation is not a contest to see how much trouble you can cause your opponents. Those who treat it as such do so at their peril." *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987). Defendants should not be required to provide any further responses or testimony and Plaintiffs should be required to limit their questioning in the upcoming "foundational" depositions to topics that are actually foundational.

Meanwhile, Plaintiffs have yet to provide basic information regarding their claims. While the parties are in the process of negotiating a Plaintiff Fact Sheet ("PFS") that will save the parties and the Court substantial resources by providing "very basic information" to which Defendants are entitled from any plaintiff filing a lawsuit against them, there has yet to be any agreement on such a PFS, which has delayed Defendants' access to information. Defendants request that the Court make sure that both sides -- not just Defendants -- are producing their information.

## II.     ISSUES COMMON TO MORE THAN ONE DEFENDANT

The issues addressed below have been raised during meet and confer discussions with multiple defendants.  They are presented herein as issues common to multiple defendants for efficiency purposes; however, each defendant is situated differently and certain defendants have not addressed these issues and reserve all rights to do so at a later date.

### A.     Defendants Should Not Be Required To Provide Live Testimony Regarding ESI Storage.

The parties continue to meet and confer regarding noticed depositions regarding ESI. Following meet and confer discussions, Plaintiffs agreed to serve (and did serve) interrogatories seeking information regarding ESI policies and protocols on several defendants and should agree to proceed in a similar fashion with regard to all other defendants.  This issue is not yet ripe for decision as the meet and confer process is ongoing; however, Defendants object to any deposition testimony regarding ESI at this time.

Under applicable law, there should be "no discovery on discovery" except under the "limited circumstances" "when one party's discovery compliance has reasonably been drawn into question [so] that there is 'an adequate factual basis' for an inquiry." *Gross v. Chapman*, 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (internal citations omitted) (denying plaintiff's motion to compel production, including deposing third-party vendor defendants hired to conduct tech-based ESI searches, where plaintiff merely speculated that defendant had withheld documents).  An adequate factual basis requires a showing of "specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation'), of a material failure by the responding party to meet its obligations." *Id*. (quoting Sedona Conference, The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1 (2018)).  Local practice requires an additional meet and confer before any such discovery proceeds, during which the

party seeking discovery must demonstrate the specific need for, and relevance of, that discovery, and the suitability of alternative means for obtaining the information. *See* Seventh Cir. Elec. Discovery Comm., Proposed Standing Order Relating to the Discovery of ESI 2.04(b) (2018 ed.).

Any discovery regarding ESI storage, therefore, should be limited to interrogatories at this time.

### B.  Defendants Should Not Be Required To Adopt Plaintiffs' Overbroad Definition Of "Hair Relaxers."

Throughout their discovery requests, the plaintiffs employed an overly broad definition of "hair relaxers," which includes wholly unrelated products like shampoos and conditioners. Although Defendants raised this concern early on and have objected to this definition, the plaintiffs never met and conferred with Defendants to discuss the issue, which has created disputes across all discovery methods. Since the plaintiffs' complaints are specifically about hair relaxers, Defendants are entitled to rely on their definition of "hair relaxers," which is limited to products actually referred to in the industry as "relaxers." Plaintiffs' attempt to expand this litigation to products other than hair relaxers is improper. The Court has indicated as much:

> THE COURT: Okay. Let me say this. It sounds like a revised interrogatory that is more narrow might be helpful here because you want to get rid of that objection [to the definition of "hair relaxer"].
> . . .
> This is just not a fight worth having.
> . . .
> I would get conditioner out of that interrogatory.

(ECF No. 151, Jul. 6, 2023, Case Management Conf., Tr. at 80:13-25.)

Plaintiffs declined to follow the Court's instruction and stood on their overbroad definition of "hair relaxers." Defendants objected and are answering discovery based on the following definition included in their objection (a representative objection served by L'Oréal

USA is set forth below – the objections of other defendants are consistent):

> L'Oréal USA objects to the collective definition of the terms "'Hair Relaxer Products' and/or 'Hair Relaxing Products' and/or 'Hair Relaxer Brands' and/or 'Hair Relaxing Brands,'" as overly broad, vague, and ambiguous. This collective definition purports to include all products that "chemically straighten and/or alter the texture of the hair," as well as products that "maintain[] a person's relaxed hair through an on-going application." The definition further indicates that it includes, but is not limited to "any Hair Relaxer Kit and/or Hair Relaxer System and/or Hair Relaxer Collection or Texturizer." This definition is so broad as to include many thousands of products most of which are not relevant to this litigation. For example, this definition could be read to include every hair conditioner manufactured and marketed by L'Oréal USA of which there are hundreds (if not thousands), including L'Oréal USA products that Plaintiffs did not use. This definition is therefore unduly burdensome and seeks discovery not proportional to the needs of this case. L'Oréal USA further objects to this definition as overboard, unduly burdensome, and not proportional to the needs of the cases as seeking irrelevant information to the extent it seeks information concerning L'Oréal USA products that Plaintiffs did not use. L'Oréal USA understands the term "Hair Relaxer" to mean products intended to cause a hydroxide relaxer process referred to as lanthionization. This includes both "lye" and "no lye" relaxers which may contain sodium hydroxide, potassium hydroxide, lithium hydroxide, guanidine hydroxide, guanidine carbonate, or calcium hydroxide. For the purposes of these responses L'Oréal USA defines "Hair Relaxers," "Hair Relaxing Products" and "Hair Relaxer Products" to include only products that (1) contain one or more of these chemicals; and (2) were manufactured by L'Oréal USA and sold in the United States.

(*See* Exs. 4, 5, 7.)

Defendants should not be required to answer discovery based on a definition of "hair relaxers" that includes shampoos and conditioners, which would drastically alter the scope of this MDL to include many thousands of products that are not implicated by the Chang article or any other epidemiological study relating to hair relaxers. To quote Plaintiffs' Co-Lead Counsel: "***If Mr. Ellis at this point does not understand that this case is about hair relaxer kits that have been sold to relax hair, I am currently telling him that.***" (ECF No. 151, Jul. 6, 2023, Case Management Conf. Tr., at 81:22-24 (emphasis added).) Clearly, a definition that would encompass a litany of personal care product that do not chemically straighten hair is not what this MDL is named for or about.

7

### C. **Defendants Should Not Be Required To Provide Information Regarding Products Sold Internationally.**

Defendants should not be required to collect (if even possible), review and produce information regarding products distributed by their international affiliates that no plaintiff has alleged to ever use. The scope of discovery is limited to matters "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In considering proportionality, relevant factors include "the parties' relative access to relevant information . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Defendants are situated differently, but to the extent these requests implicate products sold by affiliates, the plaintiffs cannot carry their burden to require production. "To determine whether a domestic corporation must produce documents in the possession of a foreign parent or affiliate, courts have focused on whether the U.S. corporation has the requisite degree of control over the documents sought." *Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, No. 07-CV-6509 2009 WL 780890, at *2 (N.D. Ill. Mar. 23, 2009) (citations omitted). It is the requesting party's burden to show "close coordination" between the domestic entity and the foreign entity. *Id.* at *3. Here, the plaintiffs have not served specific requests seeking information from any such entities, nor have they carried their burden of establishing close coordination.

Moreover, absent a specific showing of need, the burden of requiring a large company to collect information from its corporate affiliates precludes discovery. *Birnberg v. Milk St. Residential Assoc. Ltd.*, No. 02C978 2002 WL 1162848, (N.D. Ill. May 24, 2002). In *Birnberg*, the Court declined to order the defendant to collect travel information for hundreds of its corporate affiliates finding that doing so would impose a significant burden and was not likely to benefit the plaintiffs. *Id.* at *6. Plaintiffs have not established that information regarding

products not made available to them in the United States will benefit them in this litigation.

Defendants should not be required to produce information regarding products sold internationally at this time. Furthermore, in the case of some defendants there are extra-territorial laws that could be implicated precluding the discovery sought.

## III.   ISSUES CONCERNING SPECIFIC DEFENDANTS

### A.   Avlon

#### 1.   Rule 30(b)(6 Depositions

Avlon Industries, Inc., ("Avlon") has objected to and questioned why Plaintiffs require it to present a witness to testify about its product list when it has already done so in response to Plaintiff Interrogatories 2, 3, and 4. Plaintiffs' 30(b)(6) Notice identifies the following as the topic of the deposition:

> "The full line of brand names and product names of YOUR HAIR RELAXER
> PRODUCT(S) and the years each was on the market for sale and distribution in
> the United States and outside the United States."

(Ex. 2.)

Avlon provided its full list of 10 hair relaxers – half of which plaintiffs deliberately culled in the short form complaint to only 5 hair relaxers – and the dates those products entered and continued to be on the market in its answers and supplements to Interrogatories 2, 3, and 4. Avlon also provided versions of its labels, instructions, and education on those hair relaxers that it is currently able to access.

Plaintiffs have disagreed with the completeness of Avlon's list and demanded that other products that fall outside of the technical definition of hair relaxer be included. As detailed above, Defendants collectively object to the Plaintiffs' expanded definition of "hair relaxer." The specific Avlon products responsible for straightening hair are sold separately from other

recommended non-hair relaxing products in the named line. Including these products and products sold outside the United States, as argued above, greatly expands the breadth of this litigation.

Based on the narrow subject matter defined in the notice for the Product Identification deposition, all requested information has been provided about Avlon hair relaxers sold in the United States subject to objections about foreign products. Requesting information beyond what was requested in the Product Identification Notice, which Avlon expects given the experiences witnessed at the L'Oréal USA deposition, would be abusive and outright gamesmanship. *Kirsch,* 825 F.2d at 1139.

Likewise, Plaintiffs' Corporate Structure deposition is abusive and overreaching. Avlon was founded in 1984 and began selling hair relaxers in 1985. Plaintiffs' corporate deposition notice requires the selected witness to be able to testify about corporate structure, employees, and divisions to "five years before prior to when YOU began manufacturing, selling, and/or marketing YOUR HAIR RELAXER PRODUCT(S) to the present." The scope of Plaintiffs' request about corporate structure is nothing more than a memory test meant to be a gotcha at Avlon and other Defendants. *Clay,* No. 19-CV-2412, 2023 WL 4205531, at *4. Avlon has provided documents showing its structure, including employee names. Avlon has also identified six individuals from various departments in its Rule 26 Disclosures likely to have relevant information. Avlon has indicated that it continues to search its records for more historic information reaching back nearly forty years. Requiring Avlon to sit for a deposition to repeat this same information contained within its other discovery responses is duplicative and a waste of resources.

Avlon has objected to the ESI Deposition and requested that it be given the opportunity

to answer interrogatories. Avlon has likewise responded to a recent inquiry, September 20, 2023, from Plaintiffs about which ESI topics Avlon would be willing to answer in interrogatory form. This is distinctly different from what Plaintiffs have agreed and/or offered to other Defendants. Avlon maintains that it is willing to answer interrogatories about its IT systems, but notes that it has provided much of the information that will be shared in any ESI deposition or interrogatory in its Rule 26 Disclosures. Plaintiffs, though, despite requests to do so have not explained with any specificity why what was listed in Avlon's Rule 26 Disclosures is insufficient or what further information is needed.

Plaintiffs' 30(b)(6) on ESI is nothing more than discovery on discovery, which is frowned upon by the Court. *LKQ Corporation v. Kia Motors American, Inc.* [hereinafter *LKQ*], No. 21 C 3166, 2023 WL 4365899, at *7 (N.D. Ill Jul. 6, 2023) (slip copy). The subjects of testimony are not seeking information and evidence relevant to the issues in this case; rather, the subjects seek information about what Avlon may or may not be able to do while it is still in the process of gathering materials responsive to initial discovery requests. There is no evidence at this time that what Avlon has or will produce will be insufficient even in the current circumstances where Plaintiffs have issued broad requests without any effort to discuss more targeted searches. (*See* Avlon's arguments below generally on written discovery).

Although each Defendant is situated differently, each Defendant should be given the same considerations and opportunities to respond to discovery in a manner that is neither overly burdensome nor a waste of resources. As evidenced below, Plaintiffs have acted inconsistently and often without clear explanation as to why one form of answer is sufficient for a particular defendant and not for another. There is no reason why Avlon should have to produce witnesses for any of the three requested depositions when it cannot obtain clear answers as to why the

information provided to date is insufficient and/or cannot be provided through an interrogatory or other written communication as is being granted to other Defendants on many of the topics across the three deposition requests.

### 2. Written Discovery

Avlon has answered, supplemented, and is in the process of further supplementing its answers to Plaintiffs' First Set of Interrogatories and Production Requests. However, Avlon wants to draw the Court's attention to the fact that these requests are not as described by the Plaintiffs as objective or foundational. First, Plaintiffs lay the scope of these interrogatories and production requests to include all information "five years prior to when YOU began manufacturing, selling, and/or marketing YOUR HAIR RELAXER PRODUCT(S) to the present." *See p.* 7, ¶13 of Plaintiffs First Set of Interrogatories and p. 7, ¶34 of Plaintiffs of First Set of Production Requests. For a company like Avlon, that means searching through nearly 40 years of collective memory, data, and paper documents all without the aid of agreed upon custodians and/or search terms since Plaintiffs will not agree to discuss this or believe that it is necessary.

Second, Plaintiffs' requests contain vaguely defined terms such as "tests," "studies," and "safety" with no clear indication as to what they are specifically requesting.[2] Plaintiffs have broadly stated their questions don't "require interpretation," and simply include the collection of "easily identifiable documents." This is just not the case. For example, Request for Production No. 10 states:

> **REQUEST NO. 10.** Produce all published and unpublished studies or laboratory and animal testing YOU conducted concerning the safety of YOUR HAIR RELAXER PRODUCT(S) whether proposed, pending, and/or completed. This request includes, but is not limited to, DOCUMENTS and COMMUNICATIONS

---

[2] See Interrogatories Nos. 6-11 as well as Requests for Production Nos. 5, 9, and 10.

regarding the following:

1. Trial protocols and testing protocols, and any amendments thereto;
2. Laboratory notebooks;
3. Raw data;
4. Data summaries and/or analysis;
5. Test results, including any summaries and/or analyses;
6. Draft and final reports, whether or not submitted to the FDA or other regulatory agency;
7. Draft and published results, articles, posters, abstracts, white papers, position papers, and presentations of testing data;
8. Internal memoranda or COMMUNICATIONS concerning studies or results;
9. Summaries or compilations of medical literature relating or referring to YOUR HAIR RELAXER PRODUCT(S);
10. Comparisons or data summaries relating or referring to YOUR HAIR RELAXER PRODUCT(S); and
11. ALL internal or external COMMUNICATIONS relating or referring to any STUDY relating to a HAIR RELAXER PRODUCT(S) that involves or mentions hormone-sensitive cancers.

This request, like many others, is so broad and requires Avlon to go back almost forty years (more years for other Defendants) to retrieve raw data, lab books, protocols, and other documents. Plaintiffs' request is unworkable without more clearly defined terms and mutual understanding of Avlon's undertaking to collect materials and information responsive to such requests. Plaintiffs should be required to provide more targeted requests and/or be willing to sit and define search terms and categories as well as set a reasonable time frame to search for and collect such historic documents, if they exist.

### B.  House Of Cheatham, LLC And Beauty Bell Enterprises, LLC

Counsel for House of Cheatham LLC, Beauty Bell Enterprises, and plaintiffs have engaged in multiple cooperative, collaborative, and, most importantly, productive meet and confer sessions. Plaintiffs have since served an amended 30(b)(6) deposition notice for a House of Cheatham LLC corporate representative on the topic of corporate structure for the mutually agreed upon date of October 18, 2023. Beauty Bell Enterprises is currently working to arrange to present its corporate representative for deposition on that topic on the same date. Plaintiffs are

investigating whether they still require House of Cheatham LLC and/or Beauty Bell Enterprises corporate representative depositions on the topics of ESI and/or product identification. There are no discovery issues specific to either House of Cheatham LLC and/or Beauty Bell Enterprises that require the Court's attention currently. House of Cheatham, LLC and Beauty Bell Enterprises, LLC each reserve the right to seek relief from the Court should any subsequent disputes arise that require the Court's attention.

### C. L'Oréal USA

L'Oréal USA should not be required to provide further testimony regarding Product Identification and Corporate Structure. L'Oréal USA's witnesses on Product Identification and Corporate Structure fully and completely answered questions regarding the noticed topics. An individual designated to testify on behalf of a corporation "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "Rule 30(b)(6) depositions are not designed to be a memory contest, nor are they meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position." *See Clay v. Dart*, No. 19-CV-2412, 2023 WL 4205531, at *4 (N.D. Ill. June 27, 2023). Moreover, "Rule 30(b)(6) witnesses need not be perfect, so long as they are educated and *gain the requested knowledge to the extent that it is reasonably available to the entity*." *Id.* at *2 (citation and internal quotation marks omitted). Such preparation requires only that the corporate representative be able to "answer fully, completely, [and] unevasively, the questions posed by [the discovery party] as to the relevant subject matters." *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013) (emphasis added).

L'Oréal USA's witnesses spent more than 10 hours preparing for these "pretty basic" depositions. (N. Yung-Hing (Rough), Tr. at 39:13-24; A. Garrison, Tr. at 15:13-16.) They answered questions regarding the noticed topics completely.

Noah Yung-Hing (the witness on Product Identification) provided a list of products and the dates on which they were sold which was obtained from the finance department at L'Oréal USA's parent company, L'Oréal S.A. Ms. Yung-Hing testified that L'Oréal S.A.'s finance department was the only source of such information, and that L'Oréal USA was unable to locate any sales information prior to 2007:

> Q. If you wanted to find more information about this L'Oreal Look of Radiance permanent creme relaxer, where could you do that in L'Oréal's systems? Where could you do that?
>
> A. I mean, based on the information that you have given me, meaning that those products have been advertised before 2007, is that it would not be possible to find any records at L'Oréal.
>
> Q. And that would not be possible because you believe that the finance department who has sales going back to 2007 would not have information prior to that, am I correct that that's your –
>
> A. Correct.

(Noah Yung-Hing (Rough) Tr. at 108:3-18.)

Anne Garrison, the witness on Corporate Structure, provided complete responses regarding the structure of the SoftSheen-Carson and Mizani brands and L'Oréal USA generally. As stated in L'Oréal USA's Objections and Responses to Plaintiffs' Amended Notice of Deposition regarding Corporate Structure, no witness can reasonably be expected to provide the identity, description and responsibilities of all persons and third parties from the "past to the present," as Plaintiffs requested, who may have had some involvement with hair relaxer products, nor are they required to do so. *See Clay*, 2023 WL 4205531, at *4.

Following the depositions, the parties met and conferred regarding written discovery issues as well as Plaintiffs' request for further testimony. Yet, Plaintiffs were unable to identify any specific areas of inquiry they would pursue with these witnesses if an agreement was reached to bring the witnesses back. Instead, Plaintiffs' counsel stated that they were not

prepared to discuss those issues during the call. This underscores the spurious nature of any request for further testimony. These witnesses should not be required to sit for further deposition solely to be harassed with questions unrelated to the topics on which they were designated.[3]

### D. Namasté Laboratories, LLC

Since the last conference with the Court, Namasté and the plaintiffs have been working to resolve any disputes relating to Rule 30(b)(6) depositions. Namasté has offered alternative dates for depositions that the plaintiffs are considering. Namasté will be producing to the plaintiffs various documents and written responses to discovery in an effort to avoid these depositions entirely. While the parties expect to avoid further disputes relating to this initial discovery, Namasté reserves the right to seek relief from the Court should a subsequent dispute arise that requires the Court's attention.

### E. Revlon

Since the last conference with the Court, Revlon has been responding to discovery and conferring with plaintiffs' counsel on various discovery issues and logistics. Revlon does not believe that, at this stage, the parties are at an impasse with respect to any discovery issue specific to Revlon. Revlon reserves the right to seek relief from the Court should a subsequent dispute arise that requires the Court's attention.

### F. Sally Beauty Supply LLC

Sally Beauty Supply LLC ("Sally Beauty") has timely responded to Plaintiffs' written discovery, including by providing a fulsome list of Sally Beauty hair relaxer products that were sold or distributed in the United States, and produced hundreds of pages of responsive

---

[3] L'Oréal USA continues to meet and confer with Plaintiffs on this issue and, in the spirit of compromise, has offered to produce a witness to provide testimony not to exceed two hours regarding the relationship amongst L'Oréal USA, Inc. and its subsidiaries.

documents. Sally Beauty will continue to make additional productions on a rolling basis. The parties are scheduling a conference of counsel during the week of October 2nd, and there are no ripe discovery disputes at this time.

**G.      Strength of Nature**

**1.      Rule 30(b)(6) Depositions**

As is recounted in the Preliminary Statement, the last time Plaintiffs approached the Court to discuss the Rule 30(b)(6) Deposition Notices they served on Defendants, they made clear that the Notices served a limited purpose:  to gain an understanding of basic information about the corporate and IT structure of defendants, so Plaintiffs can draft appropriately tailored discovery requests.  *See* Section I, *supra*.  That is all Plaintiffs are entitled to at this time.

Plaintiffs issued three Rule 30(b)(6) Deposition Notices on Strength of Nature, covering (1) product identification (the "Product ID Notice"); (2) corporate organization and structure (the "CS Notice"); and (3) electronically stored information (the "ESI Notice").  Plaintiffs withdrew the Product ID Notice against Strength of Nature after receipt of interrogatory responses listing the products sold by Strength of Nature, LLC, but the CS and ESI Notices are – at the time of this writing – still active.  After meet and confers, Plaintiffs agreed that they would likewise withdraw the CS and ESI Notices in exchange for Strength of Nature providing information in writing.  Strength of Nature has already provided written information and documents to Plaintiffs, as agreed by the parties.  Plaintiffs have provided Strength of Nature limited follow up requests about the information provided, and have confirmed in writing that they will withdraw their remaining Notices upon receipt of that supplemental information.

In any event, on the CS Notice, the information Plaintiffs seek—identification, past and present, of the individuals who hold each position on Strength of Nature LLC's organizational

chart—is not suited for live testimony, as was demonstrated during the deposition of L'Oréal's corporate witness. Indeed, nearly all of the usable, on-scope portions of the deposition of L'Oréal's witness on corporate structure consisted of Plaintiffs' counsel simply reading L'Oréal's organizational chart, line-by-line. *See*, *e.g.*, A. Garrison (Rough), Tr. at 174:5-10 (**Q:** Do you see Mr. Robert Klemz? **A:** Yes. **Q:** Klemz. And he's vice president of patents for research and innovation, correct? **A:** Correct.). Plaintiffs' deposition of L'Oréal's witness, which took an entire day of testimony and numerous additional days of preparation, could have been avoided by simply reviewing the organizational chart that was already exchanged.

Strength of Nature has provided Plaintiffs a detailed organizational chart, and will follow up with additional information about each position in writing, per Plaintiffs' request. Strength of Nature's obligations should end there.

The same is true for the ESI Notice. First, any live testimony about ESI is improper for the reasons outlined above in Section II.A. Second, Strength of Nature has provided, in writing, a list and description of its IT systems, and direct answers to categories of information sought in the ESI Notice. Strength of Nature has also provided, at Plaintiffs' request, a network map detailing the physical components of its IT system. After receipt of that information, the only information Plaintiffs have identified as needed is historical information about Strength of Nature's IT systems (*in other words*, what systems previously existed, when did they exist, and where is their data now). No individual possesses this information offhand or could adequately prepare to recite it, and live testimony concerning this or any other ESI topic would produce the same out-of-scope and unfocused testimony that resulted from L'Oréal's depositions. In exchange for Plaintiffs' withdrawal of the ESI Notice, Strength of Nature has agreed to provide – in writing – information it has regarding its historical IT systems.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants should not be required to provide any further responses or testimony and the plaintiffs should be required to limit their questioning in the upcoming "foundational" depositions to topics that are actually foundational.

Dated: September 27, 2023                Respectfully submitted,

*/s/ Nicholas J. Begakis*
Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Ellis George Cipollone O'Brien LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
nbegakis@egcfirm.com

Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.;*
*L'Oréal USA Products, Inc.; SoftSheen-Carson*
*LLC and SoftSheen-Carson (W.I.), Inc.*

Mark Goodman
Baker & McKenzie LLP

Two Embarcadero Center, Suite 1100
San Francisco, California 94111
T: (415) 576-3080
mark.goodman@bakermckenzie.com

Maurice Bellan
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington DC 2000g
T: (202) 452-7057
maurice.bellan@bakermckenzie.com

Barry Thompson
Baker & McKenzie LLP
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

Laura Kelly
Baker & McKenzie LLP
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
laura.kelly@bakermckenzie.com

*Counsel for Defendants Namasté
Laboratories, LLC and Specially Appearing
Defendants Dabur International Limited and
Dermoviva Skin Essentials Inc.*

Lori B. Leskin
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

20

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

R. Trent Taylor
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900

Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ratkins@paulweiss.com

Randy Luskey
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
(628) 432-5112
rluskey@paulweiss.com

David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7348
dcole@paulweiss.com

*Counsel for Defendants Revlon, Inc., Revlon
Consumer Products Corporation, and Revlon
Group Holdings LLC*