PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(202) 223-7348

WRITER'S DIRECT FACSIMILE
(202) 204-7381

WRITER'S DIRECT E-MAIL ADDRESS
dcole@paulweiss.com

September 28, 2023

Via ECF

Honorable Mary M. Rowland
United States District Court for the Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Re: *In re Hair Relaxer Marketing Sales Practices & Products Liability Litigation*, MDL No. 360 (N.D. Ill.)

Dear Judge Rowland,

We write on behalf of Defendants Revlon, Inc., Revlon Consumer Products Corporation, Revlon Group Holdings LLC (collectively, "Revlon") regarding plaintiffs' September 27, 2023 discovery letter ("Plaintiffs' Letter") to the Court. Revlon writes separately since, as set forth in defendants' omnibus letter, Revlon was under the impression that Revlon and plaintiffs had not reached an impasse on any discovery issues, and had never discussed many of the concerns set forth in plaintiffs' letter. This appears to be another instance of what Revlon hopes is miscommunication between the specific plaintiffs' counsel meeting-and-conferring with Revlon from the Cochrane Firm and plaintiffs' leadership. As the Court may recall, Revlon previously had reached an agreement with plaintiffs regarding deposition dates that plaintiffs' leadership decided to renegotiate before Your Honor at the last status conference.

**Affiliated Entities.** Revlon has not discussed this issue with the Cochrane Firm and, in any event, given Revlon's reorganization, Revlon has not drawn the lines here that plaintiff's leadership suggests.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

**Products and Information Outside the United States.** The only rationale that has been articulated to Revlon for discovery of foreign products and foreign sales was that perhaps one or more of the plaintiffs purchased these products while on a trip overseas. Revlon had asked plaintiffs to reconsider that position given that it was conjecture and Revlon was unaware of any plaintiff mentioning foreign purchases or export-only products in any of the thousands of short-form complaints. Until Plaintiff's Letter, Revlon has not heard back from plaintiffs' counsel on this issue, but there does not seem to be any justification for discovery into foreign sales here.

**Hair Relaxer Products.** Revlon has limited the definition of hair relaxers to be consistent with those set forth in the master complaint and the NIH studies on which plaintiffs have pegged their alleged causation theories. Even plaintiffs, in moving U.S. Judicial Panel on Multidistrict Litigation to *establish* this MDL and as may be relevant to the commonality of issues, did *not* categorize "hair relaxers" as broadly as they do now in discovery. Rather, they told the Panel that "hair relaxers" are "creams or lotions" that "straighten" hair through "lanthionization,"[1] which specifically refers to the use of a hydroxide to break disulfide bonds and alter the curl. Revlon does not understand plaintiffs' asserted claims here to encompass products other than hair relaxers, e.g., shampoos and conditioners, because if they did, any such claims would have been fully discharged in the bankruptcy proceedings. The last Revlon was aware, plaintiffs were considering these issues in the ordinary course of our ongoing meet-and-confers.

**Temporal Scope.** During the most recent meet and confer, Revlon asked plaintiffs' counsel why they needed a time period that stretches back five years before the sales of any Revlon hair relaxer products, which already covers several decades. Plaintiffs' counsel indicated that the five-year period was necessary in order to understand Revlon's "game plan" prior to the first sale. Revlon said that it would consider the five-year time period, but that plaintiffs' justification does not appear to apply to all the discovery requests.[2] It is unclear whether plaintiffs intend to pursue this issue with respect to Revlon's responses.

**Litigation Hold Letters.** In Revlon's discussions with plaintiffs' counsel, the focus has been on document retention policies and notifications that were unrelated to litigation. Plaintiffs' counsel had backed off their request for litigation hold notices since they are privileged (and there is no justification for them anyway), and the parties have discussed Revlon searching for non-privileged notifications.

---

[1] *See* Pls.' Mot. to Transfer at 2, MDL No. 360 (J.P.M.L. Nov. 15, 2022) (Dkt. 1). In their opening MDL brief, plaintiffs used the caption "In re: *Hair Relaxer* Products Liability Litigation." *Id.* at 1 (emphasis added).

[2] By way of example, Revlon asked why plaintiffs would need corporate organizational documents for the time period from 2000 to 2013 when Revlon was not selling hair relaxer products. Plaintiffs' counsel did not have a response other than to say they would consider it.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

**Rule 33(d) Responses.** Revlon has not discussed this issue at all with plaintiffs' counsel and does not understand whether Revlon's specific responses here present this issue. To the extent plaintiffs' counsel believes that any specific Rule 33(d) responses are inappropriate, Revlon is willing to discuss them.

**Patent Documents.** Revlon had suggested narrowing the request for patents and patent applications to just U.S. utility patents and applications that concern the products-at-issue here. As far as Revlon is aware, plaintiffs' counsel were considering this issue. Plaintiffs' leadership have not offered any justification for expanding Revlon's search here, but in any event, if they would like further information, U.S. patents and patent applications (and even foreign patents) are publicly available online through patent office websites or even through patents.google.com.

**Document Production Deadline.** Revlon has started its rolling production of documents, but has not discussed a completion date with plaintiffs' counsel. Although the parties are (or were) still conferring with regard to document requests, Revlon will endeavor to provide an estimated completion date by the time of the October 2 conference, although Revlon just became aware of the supposed need for this deadline late last night when Plaintiffs' Letter was filed.

**Insurance Policies.** Plaintiffs have not served a document request for Revlon's insurance policies, but plaintiffs' counsel already has the policies that were located and disclosed during the bankruptcy proceedings. On September 11, in response to plaintiffs' counsel inquiries about gaps in coverage, Revlon responded that it "has not located additional primary policies beyond those produced in the bankruptcy proceedings and as referenced in Revlon's initial disclosures in this case. Revlon is actively searching for additional policies that may fill in any gaps in coverage, including any primary policies issued by Zurich from 2004 to 2008. Revlon intends to regularly supplement its initial disclosures as additional policies are located." Revlon received no response or objection to this, but intends to proceed as outlined. Indeed, Revlon has more recently located about a half dozen additional insurance policies from the 1970s and 2000s and intends to supplement its disclosures accordingly and will provide plaintiffs with copies. Revlon's search for policies is ongoing.

**Specific Chemicals and Safety.** Last Revlon heard from plaintiffs' counsel on this issue was that they were going to consider Revlon's position that discovery should be tethered to the pleadings in this case and limited to the alleged chemicals of concern that are alleged to be present in hair relaxer products, as referenced in the NIH studies and the master complaint, as well as the safety issues and illnesses at issue in this case. Revlon is not aware of any justification for expanding discovery beyond the pleadings into chemicals that are not alleged to have anything to do with plaintiffs' claims or unrelated safety issues, including, as an example plaintiffs' counsel mentioned, why employees at Revlon's manufacturing facilities might wear safety equipment.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

**Third Parties Retained for Regulator Representation.** Revlon responded to plaintiffs' interrogatory on this issue on September 20 and objected to this request since it called for information stretching back many decades and concerning any and all communications with any foreign or domestic regulatory agency—not just FDA and its foreign counterparts—and concerning Revlon's hair relaxer products, which under plaintiffs' definition stretches well beyond the products-at-issue, and not tied in any way to the alleged adverse health effects alleged in the master complaint. Contrary to plaintiffs' protestations, Revlon is not limiting its response to "chemical of its choosing," but rather the chemicals alleged in the master complaint and the NIH studies. In any event, we are scheduled to confer with plaintiffs' counsel later today, and a we know, by way of Plaintiffs' Letter, that this specific interrogatory response will be on the agenda. We look forward to doing so and to consider any justification they are able to articulate for this broad request. They have not provided one yet and neither does Plaintiffs' Letter.

**Deposition Dates.** Revlon and plaintiffs have been discussing whether depositions would be necessary for any of the noticed topics or whether the information could be provided by answers to written questions. Plaintiffs' counsel indicated that plaintiffs were considering whether and to what extent a witness would be necessary. Meanwhile, in view of the Court's guidance at the last status conference, plaintiffs' counsel reached out to Revlon and informed it that, despite the parties' agreement to conduct any Revlon depositions in the first weeks of November, they would now like dates in October. In light of the ongoing negotiations, Revlon responded: "Subject to Revlon's objections to the Rule 30(b)(6) subpoenas and any agreements the parties might reach with respect to the noticed topics – e.g., allowing written answers to questions in lieu of testimony -- in the event that Revlon provides a corporate designee (or designees) to testify with regard to any of the noticed topics, Revlon will do so on a mutually agreeable date between October 23 and October 31, 2023." It is unclear whether, by Plaintiffs' Letter, plaintiffs are now withdrawing from those discussions. And perhaps there has been another miscommunication between the Cochrane Law Firm and plaintiffs' leadership, but the statement in Plaintiffs' Letter that "[t]wo Rule 30(b)(6) depositions of Revlon Defendants are scheduled to take place between October 24 and October 26, 2023 on corporate structure and ESI, respectively," is false and is the first Revlon has heard of this.

Revlon looks forward to discussing these issues further with the Court and with plaintiffs' counsel, who Revlon would expect, going forward, would attend such negotiations with authority to negotiate and reach agreements.

Sincerely,

*/s/ David E. Cole*

David E. Cole