## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE: HAIR RELAXER
MARKETING SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

MDL No. 3060

Master Docket No. 23-cv-00818

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

In this multidistrict litigation, Plaintiffs claim that Defendants advertised, manufactured and sold toxic hair relaxer products that caused Plaintiffs to develop cancers and other injuries. Before the Court is Defendants' joint motion to dismiss Plaintiffs' master long form complaint. For the reasons stated herein, Defendants' Joint Motion to Dismiss [142] is granted in part and denied in part and Defendant McBride's motion to dismiss [192] is granted in part and denied in part.

### I. Background

#### A. Procedural Background

In February 2023, the United States Judicial Panel on Multidistrict Litigation (the "Panel") consolidated individual and putative class actions, then pending in nineteen districts, for pretrial proceedings in this District under 28 U.S.C. § 1407. *See* Transfer Order [1][1]. "Congress enacted 28 U.S.C. § 1407 in 1968 to manage more effectively complex sets of related lawsuits pending in multiple districts." *Bell v.*

---

[1] Bracketed numbers refer to docket entries and referenced page numbers are from the CM/ECF header at the top of filings.

*Publix Super Markets, Inc.*, 982 F.3d 468, 488–89 (7th Cir. 2020). Section 1407(a) gave the Panel "the power to transfer related cases to one district court for 'coordinated or consolidated pretrial proceedings.'" *Id.*

In its February 2023 Transfer Order, the Panel noted that "[o]n October 17, 2022, a study led by the National Institutes of Health (NIH) reported findings that women who frequently used chemical hair straightening or hair relaxer products were more than twice as likely to develop uterine cancer as women who did not use such products." *Id.* Shortly after the study was published, lawsuits were filed in different district courts. The Panel found the cases shared "common questions of fact arising from allegations that defendants' hair relaxer products contain phthalates, including di-2-ethylhexylphthalate, or other endocrine-disrupting chemicals (EDCs), and that the use of such products caused or increased the risk of developing uterine, ovarian, or breast cancer, endometriosis, uterine fibroids, or other injuries to the reproductive system." *Id.* The cases in this MDL now number more than 8,200.

Plaintiffs allege that their "use of toxic chemical straightening products designed or manufactured by the Defendants was a direct result of Defendants' wrongful marketing practices." [106 ¶ 6]. They claim that Defendants "[i]ntentionally target[ed] Black and Brown women, including Black and Brown teenaged girls and children, as customers to purchase and use their unsafe hair relaxer products." *Id.* ¶ 280. Defendants jointly moved to dismiss the complaint in its entirety. [142]. They moved for dismissal under Rule 12(b)(6) and Rule 9, and also argue that Defendants

2

Dabur International and Dermoviva should be dismissed for lack of personal jurisdiction.

### B. Factual Background

The factual allegations from the master long form complaint ([106], "MLC")) and short form complaint ([175-1], "SFC")) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).[2]

Plaintiffs allege they were injured by defective hair relaxers designed, manufactured, sold, distributed, and marketed by the Defendants in this case. [106 ¶ 5]. The MLC was filed on behalf of all Plaintiffs whose claims are subsumed within MDL 3060, and who have suffered personal injuries and death as a result of their use of Defendants' various hair relaxer products. *Id*. ¶ 10. In their complaint Plaintiffs explain that endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system. *Id*. ¶ 74. They allege that natural and synthetic EDCs are present in some of Defendants' hair relaxer products as "fragrance" and "perfumes", and enter the body when the products are applied to the hair and scalp. *Id*. ¶ 76. One of the EDCs, phthalates, are harmful because they interferes with individuals' natural hormone production and degradation. *Id*. ¶ 77. Widely used hair relaxers, Plaintiffs claim, are a source of exposure to carcinogens and these endocrine disrupters. *Id*. ¶ 95.

---

[2] The Court adopted the short form complaint on August 3, 2023. Pursuant to the Court's Case Management Order ("CMO") No. 8, "[f]or each action in the MDL, subject to this Order, the Master Complaint, together with the Short Form Complaint shall be deemed the operative complaint." [175]. This opinion sometimes refers to the MLC and SFC together as the "complaint."

In October 2022, the National Institutes of Health (NIH) released a study of approximately 34,000 women, aged 35-74, that was conducted over approximately 11 years. ("Chang Article"). *Id*. ¶ 85. The study revealed significantly higher rates of uterine cancer in women who had used hair relaxers. *Id*. ¶ 86. And a 2021 study funded by NIH and the National Institute on Minority Health Sciences found frequent use of hair relaxers was strongly associated with ovarian cancer ("White Article"). *Id*. ¶ 89. Plaintiffs in this MDL seek relief in the form of compensatory and punitive damages, monetary restitution, medical monitoring and equitable relief, and other remedies "as a result of injuries incurred by Defendants' defective products and other wrongful practices." *Id*. ¶ 1.

The master complaint contains fifteen counts: negligence and/or gross negligence (Count 1); negligent misrepresentation (Count 2); negligence *per se* (Count 3); strict liability: design defect (Count 4); strict liability: failure to warn (Count 5); breach of implied warranty of merchantability/fitness for particular use (Count 6); breach of express warranty under state law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (Count 7); fraud/fraudulent misrepresentation (Count 8); fraudulent concealment (Count 9); U.S. state and territory statutory consumer protection and unfair or deceptive trade practices claims (Count 10); unjust enrichment (Count 11); wrongful death (Count 12); survival action (Count 13); loss of consortium (Count 14); and punitive damages (Count 15). The wrongful death, survival, and loss of consortium are derivative claims.

## II.   Standard

4

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

5

### III.    Analysis

Defendants have moved to dismiss the complaint on a number of grounds. The Court begins with Defendants' preemption argument.

#### A. Preemption

Defendants argue that certain claims of Plaintiffs are expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA expressly preempts any state law "requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a). Express preemption means that Congress has defined "explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990).

Defendants concede that FDCA preemption does not apply to product liability claims. *See* 21 U.S.C. § 379s(d) ("Nothing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State."). They argue, however, that the non-product liability claims are expressly preempted, namely: negligent misrepresentation, breach of warranty, fraud, state consumer protection and unfair or deceptive trade practices, unjust enrichment and punitive damages (Counts 2, 6, 7, 8, 9, 10, 11 and 15). According to Defendants, these claims seek to impose labeling requirements not identical to those imposed by the FDCA and its regulations. Defendants argue they are not required to identify fragrance ingredients or identify "ingredients that are nowhere in their

6

products." [142 at 24]. Plaintiffs counter that their claims are state law product liability claims and therefore exempt under 21 U.S.C. § 379s(d). In addition, Plaintiffs maintain they do not seek to impose any labeling requirement that is different from or in addition to an FDCA requirement applicable to Defendants' products.

In this circuit, it is settled that preemption is an affirmative defense, meaning Defendants bear the burden of proof.[3] *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010). A plaintiff's pleading "need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (internal citation omitted). Dismissal is only appropriate when the "plaintiff pleads himself out of court by alleging facts sufficient to establish" the defense. *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up). Affirmative defenses "typically turn on facts not before the court at [the dismissal] stage." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

As Plaintiffs point out, a "products liability action" is defined in Black's Law Dictionary as a lawsuit "brought against a manufacturer, seller, or lessor of a product- *-regardless of the substantive legal theory or theories on which the lawsuit is brought- -*for personal injury, death, or property damage caused by the manufacture,

---

[3] An MDL transferee court "applies the laws of the circuit in which it sits to decide issues of federal procedure." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 164 F. Supp. 3d 1040, 1044 (N.D. Ill. 2016). *See also U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,* 498 F. Supp. 2d 25, 40 (D.D.C. 2007) (transferee court "follow[s] its own circuit on questions of federal law.").

construction, design, formulation, installation, preparation, or assembly of a product. (11th ed. 2019) (emphasis added). In their reply, Defendants broadly argue that not every claim in a personal injury action is a product liability claim. They rely on *In re Acetaminophen - ASD-ADHD Prod. Liab. Litig., No. 22CV9011 (DLC),* 2023 WL 3045802 (S.D.N.Y. Apr. 21, 2023), in which the court found Tennessee's consumer protection claim preempted by the FDCA. *In re Acetaminophen* analyzed only Tennessee's law, which "authorize[d] plaintiffs to bring claims based solely on economic loss." *Id.* at *5. In Count 10 of the master complaint, Plaintiffs claim they suffered "serious injury" and "economic loss, pecuniary loss, personal injury, loss of companionship and society, mental anguish and/or other compensable injuries." [106 ¶¶ 241, 247]. In addition, the court in *In re Acetaminophen* did not analyze any of the other claims that Defendants argue are preempted here such as negligent misrepresentation and breach of warranty.[4] Also guiding this Court are the U.S. Supreme Court's statements that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *In Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (cleaned up); *see also Wyeth v. Levine*, 555 U.S. 555, 579 (2009) ("the FDA long maintained that state law

---

[4] Two other cases cited by Defendants are *Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) and *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020). *Turek* did not involve product liability claims or address 21 U.S.C. § 379s(d). In *Critcher* plaintiffs alleged they were injured when certain L'Oréal product labels omitted information that the creams could not be fully dispensed from their containers. *Id.* at 36. Plaintiffs did not claim, as here, that the product contained toxic chemicals or ingredients, and the Court did not analyze whether plaintiffs' claims were exempt under Section 379s(d). The Court also finds Defendants' implicit exemption argument underdeveloped. [142] at 24. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

8

offers an additional, and important, layer of consumer protection that complements FDA regulation."); *Bausch*, 630 F.3d at 557.

Thus the Court finds that Defendants have not met their burden to show that Plaintiffs' Counts 2, 6, 7, 8, 9, 10, 11 and 15 are preempted.

### B. Negligence, Design Defect and Failure to Warn Claims

Next, Defendants argue that Plaintiff's negligence and strict liability (Counts 1, 3, 4 and 5) claims fail. Defendants' initial contention that Plaintiffs did not identify the products they used or relevant time period for the use is not convincing. As Plaintiffs argue, the SFC is the place where each individual plaintiff identifies the particular products they used and other factual details to support their complaint. In addition to the fact that Defendants concede that Plaintiffs identify products in their SFC [142 at 24], this Court's CMO No. 8 expressly states that for each action in this MDL, "the Master Complaint, together with the Short Form Complaint shall be deemed the operative complaint." [175]. Moreover, the cases Defendants rely on to argue that product identification is required at this stage did not rule on motions to dismiss, *Tragarz v. Keene Corp.*, 980 F.2d 411 (7th Cir. 1992), *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088 (Ill. App. Ct. 1989), or applied a state-law fact-pleading standard rather than the federal notice pleading standard applicable here. *See Kozak v. Armstrong World Indus., Inc.*, 572 N.E.2d 279, 282 (Ill. App. Ct. 1991).

#### 1. Negligence Claims

In Count 1, Plaintiffs allege that Defendants breached their duty of care to Plaintiffs by manufacturing, marketing, and selling their hair relaxer products

9

negligently or recklessly and by failing to adequately warn of these products' risks and dangers. Defendants argue that some jurisdictions do not recognize gross negligence or negligence *per se* as separate causes of action. The Court does not find variation in how states treat negligence claims to be a basis for dismissal at this pleading stage.

Defendants also contend that Plaintiffs have not sufficiently stated a general negligence claim. The elements of a negligence claim are: "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach.'" *O'Connor*, 477 F. Supp. 3d at 721 (cleaned up). Plaintiffs allege that Defendants had "a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products." [106 ¶ 116]. According to Plaintiffs, Defendants had a duty to exercise reasonable care in the advertising and sale of their hair relaxer products, including a duty to warn of risks associated with the products, and also owed a continuing duty to Plaintiffs to remove, recall, or retrofit the unsafe and/or defective hair relaxer products. *Id*. ¶¶ 117–18. Plaintiffs claim Defendants breached these duties in several ways including by distributing their hair relaxer products negligently and recklessly and by failing to adequately warn of the products' risks and dangers. *Id*. ¶ 120. Finally, they allege that Defendants' negligence "was a direct and proximate cause of the injuries, harm, and economic losses that Plaintiffs have suffered, and will continue to suffer." *Id*. ¶ 125. The allegations read as a whole give rise to the inference that Defendants'

conduct proximately caused Plaintiffs' injuries; more is not' needed at this stage. *See Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) ("breach of duty and proximate cause present questions of fact"). In short Plaintiffs state a negligence claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (reading complaint as a whole on a motion to dismiss).

Defendants also argue that Plaintiffs did not plead sufficient knowledge. *See e.g. Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1123 (Ill. 2002) (cleaned up). But Plaintiffs specifically alleged that "Defendants knew or should have known that phthalates and other EDCs in their hair relaxer products significantly increase the risk of cancers and other negative health conditions." [106 ¶ 118]. Plaintiffs claimed they did not know about the products' risks, and Defendants knew or should have known ordinary consumers like plaintiffs would not realize the dangers. *See id.* ¶¶ 119, 153, 185. Defendants criticize Plaintiffs' reliance on the 2022 Chang Article and argue they have not "establish[ed]" Defendants' breach. But these are not issues capable of being resolved on a motion to dismiss.[5] Accepting Plaintiffs' factual allegations as true and reading the complaint as a whole shows Plaintiffs have plead sufficient facts to avoid dismissal. Defendants' motion to dismiss Counts 1 and 3 is denied.

---

[5] Defendants rely on cases that are not dispositive at this point, *Cornstubble v. Ford Motor Co.*, 532 N.E.2d 884 (Ill. App. Ct. 1988) (decided following a bench trial), and *O'Connor*, 477 F. Supp. 3d at 721 (decision turned on the economic loss doctrine).

### 2. Design Defect

In Count 4, Plaintiffs allege that Defendants' hair relaxer products "were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer." [106 ¶ 152]. A strict-liability design defect claim requires: "(1) a condition of the product as a result of design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff (5) that was proximately caused by the condition." *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019) (cleaned up).

Defendants contend that Plaintiffs' allegations are conclusory and they have not identified specific products or defects in those products. The Court does not agree. Plaintiffs allege that Defendants' products contained toxic chemicals. [106 ¶ 55]. Specifically, they allege harmful and carcinogenic ingredients in Defendants' hair relaxer products "are known to disrupt and/or harm a woman's endocrine system." *Id*. ¶ 71. "Such harmful, toxic and carcinogenic ingredients have included over time, but are not limited to, phthalates, parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, formaldehyde, and other toxic chemicals." *Id*. The phthalates and other EDCs in Defendants' hair relaxer products, Plaintiffs claim, "significantly increase the risk of cancers and other negative health conditions." *Id*. ¶ 118.

Defendants rely on *Griffin v. Medtronic, Inc.*, No. 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017), where the complaint was "silent as to what was wrong with

12

the device", and plaintiff forfeited any responsive arguments by failing to respond to the motion to dismiss. Here, Plaintiffs have not failed to respond, and the MLC is not silent about the alleged defect. Plaintiffs claim that "[n]atural and synthetic EDCs are present in some of Defendants' hair relaxer products under the guise of 'fragrance' and 'perfumes', and thus enter the body when these products are applied to the hair and scalp." [106 ¶ 76]. They allege that the 2022 NIH study "revealed that there were significantly higher rates of uterine cancer in women who had used hair relaxers," and the 2021 study found "frequent use of hair relaxers [] strongly associated with ovarian cancer." *Id*. ¶ 86. In their MLC Plaintiffs rely on a number of scientific studies and secondary sources. At a later stage of the litigation, Defendants will be able to challenge the studies. For now, Defendants' critique is premature. Plaintiffs have sufficiently stated a design defect claim.

### 3. Failure to Warn

Plaintiffs claim that Defendants failed to give an appropriate and adequate warning of the risks of uterine cancer, ovarian cancer, and endometrial cancer. [106 ¶ 166]. A duty to warn under Illinois law exists "when there is unequal knowledge and the defendant, possessed of such knowledge, knows or should know that harm might occur if no warning is given." *Proctor v. Davis*, 682 N.E.2d 1203, 1211 (1st Dist. 1997) (cleaned up). Plaintiffs allege that Defendants did not satisfy their duty to warn of the products' "dangerous adverse side effects," "potential or known toxic chemicals and carcinogens," or that Defendants "had not properly tested the safety of their hair relaxer products." [106 ¶¶ 58, 110, 133]. Plaintiffs specifically describe EDCs and

13

identify the EDCs alleged to be in the products. *Id.* ¶¶ 71–81. They claim they would not have purchased or used Defendants' hair relaxer products had they known the true facts about the products. *Id.* at ¶ 138.

To argue Plaintiffs' allegations are not adequate, Defendants contend that Plaintiffs do not identify specific products or timeframes. The Court has already addressed that argument. And again, the case law Defendants cite does not require dismissal. In *N. Tr. Co. v. Upjohn Co.*, 572 N.E.2d 1030 (Ill. App. Ct. 1991), the court explained that plaintiff was required to *show at trial* "that the omission of such information made the warning inadequate and the drug 'defective' and that this defect was the proximate cause of plaintiff's injuries." *Id.* at 1037. Contrary to Defendants' characterization, the complaint does not allege or raise the inference that the first time Defendants were aware of the possible association between hair straightening products and cancer was in 2021 and 2022 when the Chang and White Articles were published. Instead, the complaint describes the long history of Black and Brown women being compelled to conform to Eurocentric beauty standards of straight hair, leading up to the manufacture of the first lye relaxer in 1971. [106 ¶¶ 38–47, 53–55]. Plaintiffs explain that particular defendants began marketing their first hair relaxer products in the 1970s and 1980s, and by the 1990s were making representations and omissions about chemicals in their products in advertisements and packaging. *Id.* ¶¶ 57–59. The complaint states that "[f]or decades and to present....[Defendants] marketed their hair relaxer products without ever disclosing known health risks of the toxic chemicals contained in these products." *Id.* ¶ 55.

14

Plaintiffs allege that Defendants "were aware or should have been aware of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the hair relaxer products based on the evolving scientific studies, on-going research, and various government standards and regulations." *Id*. ¶ 70.

Taking the factual allegations as true and drawing reasonable inferences in Plaintiffs' favor at this stage, the Court finds that Plaintiffs have stated a failure to warn claim.

### C. Fraud-Based Claims

Defendants challenge Plaintiffs' fraud-based claims (Counts 2, 8, 9, and 10) under Rule 9(b)'s heightened pleading standard. That rule requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Further, "[a] claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires a plaintiff to provide "precision and some measure of substantiation to each fraud allegation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). Plaintiffs do not dispute that Rule 9(b) applies (though they point out that some jurisdictions consider consumer protection claims under Rule 8).

Plaintiffs ask the Court to focus on Defendants' alleged omissions, and not reach the issue of affirmative misrepresentations, which Plaintiffs say can be handled in the individual cases. [176 at 31]. But Plaintiff's fraud-based claims are largely based on alleged misrepresentations. *See* [106 ¶¶ 131–32, 137, 218]. They do allege that

Defendants concealed material facts about the dangers of their products, but do not identify specific omissions of material fact or support these allegations with additional detail. *See Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (allegations must be made with particularity). "To constitute fraud, an omission must be of a material fact that a consumer would rely on in making her decision, or that would have caused her to act differently had she known of it." *Siegal v. GEICO* Cas. Co., 523 F. Supp. 3d 1032, 1042 (N.D. Ill. 2021). Plaintiffs are correct that courts consider omission-based claims under a more relaxed standard. *See Fed. Deposit Ins. Corp. v. Patel*, No. 19-cv-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020) But Rule 9(b) still applies. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). "[F]raudulent omission claims are subject to the heightened pleading standard under Rule 9(b), requiring them to be plead with particularity." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022).

In addition, as Defendants point out, a fraudulent omission claim requires that Defendants "intentionally omitted or concealed a material fact that [they were] under a duty to disclose" to plaintiffs. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). *See also Rodriguez*, 596 F. Supp. 3d at 1057–58. A fraud claim based on an alleged omission of material fact requires the parties to have a special or fiduciary relationship. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013); *Walker v. Bank of Am.*, No. 21-CV-03589, 2022 WL 910585, at *5 (N.D. Ill. Mar. 29, 2022). The allegations in the complaint do not show the concealment was

16

"more than a mere passive omission of facts during a business transaction" that was "done with the intention to deceive under circumstances creating an opportunity and duty to speak." *Rodriguez*, 596 F. Supp. 3d at 1057–58.

For these reasons the Court finds Plaintiffs have not met the heightened pleading standard as to Counts 2, 8, and 9. As to Count 10, Plaintiffs argue their unfairness claims should at least survive. The Court finds that Plaintiff's claims of deceptive acts or practices under the consumer fraud statutes do not meet the heightened pleading standard of Rule 9(b). *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). However, Plaintiffs' claims of unfair conduct survive. "The pleading standards for deceptive and unfair claims differ…[b]ecause fraud is not an element of an unfair conduct claim, Rule 9(b)'s heightened standard does not apply, but rather the notice pleading standard under Rule 8(a) does." *Siegal*, 523 F. Supp. 3d at 1041. Plaintiffs allege that Defendants misled consumers about the safety risks associated with use of their hair relaxer products by among other things misrepresenting that the goods were of a particular standard, quality, or grade. [160 ¶¶ 241, 243]. Reading the complaint as a whole and accepting Plaintiffs' factual allegations as true, the Court finds Plaintiffs' claims of unfair conduct survive under Rule 8.

In sum, the Court grants Defendants' motion to dismiss Counts 2, 8, and 9, and grants Defendants' motion as to Count 10 but only as to fraud-based claims; Plaintiffs' claims of unfair conduct survive.

### D. Warranty Claims

In Counts 6 and 7, Plaintiffs claim breach of implied warranty and breach of express warranty under state law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA"). An express warranty claim requires that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor*, 477 F. Supp. 3d at 714. To state a claim for breach of express warranty, a plaintiff "must show that [defendant] breached an affirmation of fact or promise that was made a part of the basis of the bargain." *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 756 (N.D. Ill. 2022) (cleaned up). Illinois law, for example, requires that express warranties be created through an "affirmation of fact or promise made by the seller to the buyer." *See* 810 ILCS 5/2-313(1)(a). To state a claim for breach of the implied warranty of merchantability, "a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (cleaned up).

Defendants first argue that Plaintiffs fail to allege the requisite privity for these claims. As Plaintiffs point out, some states have exceptions to the privity requirement. This Court agrees with the approach in other MDL cases in this district declining to rule on these state-specific issues at this stage:

> Resolution of those latter issues would require a detailed analysis of the allegations in each individual complaint and whether they are sufficient to state a claim under the law of each plaintiffs' home state. This

> category of challenges is not well-suited to resolution in an omnibus fashion, and the Court declines to resolve them at this stage of the case.

*In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, No. 22 C 4148, 2023 WL 3585639, at *3 (N.D. Ill. May 22, 2023); *see also In re Testosterone Replacement Therapy Prod. Liab. Litig.,* No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014). This Court therefore declines to rule at this point on specific states' privity requirements for plaintiffs' warranty claims.

Here the Complaint adequately pleads Plaintiffs' warranty claims under Rule 8. Plaintiffs allege that Defendants made affirmations of fact "that their hair relaxer products are safe, healthy, protective, and/or natural." [106] ¶ 197.[6] Plaintiffs allege Defendants made a number of misrepresentations, including that their products are "gentle," "natural," "healthy," do not contain toxic or "harsh chemicals," "protect the skin and scalp," do not "hurt[] your scalp," and can be used "safely" by women and children. *Id*. at ¶¶ 58–59. Plaintiffs further allege that they would not have purchased Defendants' products had they "known the truth about the misrepresentations." *Id*. at ¶ 204. And Plaintiffs also claim that Defendants' products did not perform as intended: harmful EDCs "enter the body when these products are applied to the hair and scalp," "[c]hronic exposure to phthalates will adversely influence the endocrine system and functioning of multiple organs," and use of these hair relaxer products resulted in serious injuries or death to plaintiffs from certain cancers. *See id*. at ¶¶ 74–79, 112, 120, 152, 153, 177–79.

---

[6] The Court disagrees with Defendants' characterization that Plaintiffs concede there were no affirmative misrepresentations by Defendants.

19

As for Defendants' argument that Plaintiffs cannot demonstrate that Defendants' products were not "fit for a particular purpose," Plaintiffs respond that this argument would only bar this theory for plaintiffs whose claims are governed by Illinois law, and other states' laws differ. This Court will again not parse state law variations at this stage of the case. *See In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 2023 WL 3585639.

Finally, Plaintiffs bring a claim under the MMWA, the federal warranty statute. *See* 15 U.S.C. § 2301. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)) ("[T]he MMWA allows consumers to enforce [limited] written and implied warranties in federal court [...] borrowing state law causes of action."). Because Plaintiffs' express and implied warranty claims survive, so does their MMWA claim. In short, Plaintiffs' warranty claims need only meet Rule 8's standards, and they do.

### E. Unjust Enrichment, Punitive Damages, and Derivative Claims

In their unjust enrichment claim, Plaintiffs allege that Defendants have profited and benefited from payments Plaintiffs and other consumers made for their hair relaxer products. [106 ¶ 252]. Under Illinois law an unjust enrichment claim requires allegations that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that the retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). The parties acknowledge that different jurisdictions treat unjust enrichment claims differently. However the Court does not find it appropriate at this

stage to rule on a case wide basis in an MDL that no plaintiff may pursue an unjust enrichment claim.

Plaintiffs also seek punitive damages, alleging: "[t]he acts and omissions of Defendants as alleged throughout this Complaint were willful, wanton, and malicious. Defendants committed these acts with a conscious disregard for the rights, health, and safety of Plaintiffs and other consumers/users of Defendants' hair relaxer products, for the primary purpose of increasing Defendants' profits from the sale and distribution of their hair relaxer products." [106] ¶ 279. Defendants contend that punitive damages are a remedy, not an independent cause of action, and Plaintiffs have not alleged facts sufficient to seek punitive damages. The Court, however, finds the factual allegations supporting the claim for punitive damages adequate. And the Court does not agree that dismissing Plaintiffs' punitive damages claim, whether viewed as a cause of action or remedy, is warranted now. *See Schramm v. Peregrine Transportation Co., LLC,* No. 3:22-CV-161-NJR, 2023 WL 2349346, at *4 (S.D. Ill. Mar. 3, 2023); *Eliason v. Superior Ref. Co. LLC,* No. 19-CV-829-WMC, 2021 WL 1227607, at *4 (W.D. Wis. Mar. 31, 2021).

Finally, Defendants' only argument for dismissing the derivate claims of wrongful death, survival action, and loss of consortium is that Plaintiffs' other claims are not viable. As discussed, however, most of Plaintiffs' claims have survived dismissal. For these reasons, Plaintiffs' Counts 11, 12, 13, 14, and 15 survive Defendants' motions.[7]

---

[7] McBride's motion to dismiss incorporates arguments raised in Defendants' Omnibus Motion to Dismiss. [192] McBride's motion largely overlaps with the omnibus motion and raises the same challenges. The Court's analysis herein applies equally to McBride's motion, which the Court also grants in part and denies in part.

### F. Personal Jurisdiction Challenge

Defendants argue that Dabur International and Dermoviva must be dismissed because Plaintiffs cannot establish that the Court has general or specific personal jurisdiction over those defendants. Plaintiffs respond that Defendants' motion should be denied without prejudice as premature. Plaintiffs further contend that in any event, Dabur would be subject to general jurisdiction here.

#### 1. Standard

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A plaintiff need not allege facts about personal jurisdiction in his or her complaint, but in the face of a Rule 12(b)(2) motion, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion only based on written submissions, a plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393. Further, where a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation*, 338 F.3d at 783. If the plaintiff "fails to refute a fact

contained in the defendant's affidavit, that fact is accepted as true." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020 WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020). A transferee court in an MDL can "exercise personal jurisdiction to the same extent that the transferor court could." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (U.S. Jud. Pan. Mult. Lit. 2020).

### 2. Analysis

First, the Court grants Dermoviva's motion and dismisses Dermoviva from this MDL. Plaintiffs assert that Dermoviva's motion is premature but state that the three individual plaintiffs who have named this defendant are voluntarily dismissing those claims so that motion is moot. Because Plaintiffs do not put forth any argument to establish this Court's personal jurisdiction over Dermoviva, Dermoviva is dismissed. *See M.G. Skinner & Assocs. Ins. Agency*, 845 F.3d at 321; *Curry*, 949 F.3d at 392.

As for Dabur, Defendants assert, and provide a sworn affidavit of Dabur's CEO, that Dabur is incorporated in the Isle of Man and principally located in Dubai, UAE. [142 at 41; 142-1 (Agrawal Affidavit)]. It has a sole United States office in New Jersey where it conducts limited business related to its own products, none of which are hair relaxers. *Id*. According to Dabur's CEO, the company has no involvement with any hair-relaxer products sold anywhere in the United States. *Id*. Plaintiffs respond that this motion is premature because personal jurisdiction questions cannot be decided on an MDL-wide basis.

Defendants' filing and affidavit show that this Court does not have personal jurisdiction over Dabur, and Plaintiffs have not rebutted those assertions. Dabur is

23

not "at home" in Illinois, for purposes of general jurisdiction, and for purposes of specific jurisdiction, Dabur did not manufacture, market, distribute, sell, or make representations about any hair relaxer products underlying Plaintiffs' claims anywhere in the United States, let alone in Illinois. Agrawal Affidavit ¶ 4. Plaintiffs' argument that Dabur's motion is premature and cannot be decided on an MDL-wide basis is not supported by authority. As to general jurisdiction, Plaintiffs argue that Dabur's registration in Illinois from 2012 to 2021 is sufficient to establish personal jurisdiction.

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), cited by Plaintiffs, addressed *Pennsylvania's* requirement that an out-of-state corporation *consent to* personal jurisdiction to do business there. The Illinois long-arm statute's "doing business" standard for example is "virtually identical to the federal requirement for general jurisdiction that a party maintain continuous and systematic business contacts with the forum." *Landwer v. Sodhi*, 2018 WL 6000868, at *3 (N.D. Ill. Nov. 15, 2018). Plaintiffs do not argue that any particular state requires a company to consent to suit in the forum; if that is Plaintiffs' suggestion, they have not developed the argument or offered an analysis of particular state statutes to permit the Court to find that personal jurisdiction is proper. Given Plaintiffs' burden in the face of Defendants' Rule 12(b)(2) motion and attached affidavit, the Court finds personal jurisdiction over Dabur lacking.

Therefore the Court grants Defendants' Rule 12(b)(2) motion as to Defendants Dermoviva and Darbur. Dermoviva Skin Essentials, Inc., Darbur International Limited and "Darbur International USA Ltd." are dismissed.

## IV.   Conclusion

For the stated reasons, Defendants' Joint Motion to Dismiss [142] and Defendant McBride's motion to dismiss [192] are granted in part and denied in part. Defendants Keratin Complex, Keratin Holdings, LLC's unopposed motion for joinder [263] is granted. Dubar International Limited and Dermovia Skin Essentials, Inc. are dismissed as defendants form this matter. Counts 2, 8 and 9 are dismissed. Count 10 is dismissed as to the fraud-based claims only. The motions to dismiss the remaining claims are denied.

E N T E R:

Dated: November 13, 2023

_____
MARY M. ROWLAND
United States District Judge