**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No.: 23 C 818<br><br>MDL No. 3060<br><br>Judge Mary M. Rowland |

**MDL PLAINTIFFS' BRIEF RE DISCOVERY RELATING TO HAIR RELAXER PRODUCTS SOLD OUTSIDE OF THE UNITED STATES AND MATERIALS HELD BY THE FOREIGN PARENT OF L'ORÉAL USA**

I.  **INTRODUCTION**

As described herein and in letter briefs previously submitted to the Court, Plaintiffs are entitled to discovery concerning products sold outside the United States as well as materials regarding domestic products held by L'Oréal S.A., the foreign parent of L'Oréal USA. *See* Pls.' Letter dated November 15, 2023 (ECF 299-1), Pls.' Letter dated September 27, 2023. Plaintiffs respectfully request that the Court order Defendants Avlon, L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC, Namaste, and Revlon to produce the documents each disputes below,[1] and further set deadlines for all Defendants to finalize their productions on the first set of written discovery and interrogatories and complete verified interrogatory responses by December 20, 2023.[2]

II.  **ARGUMENT**

  A.  **Plaintiffs Are Entitled to Discovery on Non-US Products.**

Plaintiffs seek discovery on hair relaxer products sold by Defendants outside the United States in the following categories: (1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; (4) articles in scientific journals; (5) organizational charts; and

---

[1] Defendants House of Cheatham and Strength of Nature have agreed to produce all requested documents concerning non-U.S. products to the extent they exist. Defendant Strength of Nature claims it has no outside US documents within its possession, custody, or control but will search for documents within the US that relate to foreign regulation of products it also sells in the US. Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC have agreed to produce documents other than those maintained by L'Oréal S.A., which they object to producing as set forth more fully in Section II.B below. Defendant Sally Beauty has agreed to produce the requested documents, and discovery responses from Defendant Luster is on a different schedule.

[2] Defendants continue to produce documents with no end date in sight, despite the Court's now-expired November 13, 2023 deadline for production and the need for a more expeditious completion in order for the parties to meet the Court's overall case management schedule. For example, Defendant Avlon has recently advised Plaintiffs it will not be able to complete its production of documents responsive to Plaintiffs' First Set of Document Requests until "late spring 2024 at the earliest." *See* Ex. A, Avlon Letter dated Dec. 5, 2023 (attached hereto within Appendix of Exhibits). That would mean that it would take Avlon nearly one year just to search for, and produce, documents responsive to only 16 document requests and 11 interrogatories.

1

(6) certain Board of Directors materials. This targeted discovery is highly relevant to demonstrating Defendants' knowledge of the health and safety risks of domestic products and are probative on the issues of causation are likely to inform expert opinion. Plaintiffs seek this information to support all of their claims, including negligence, products liability, unfair business practices, and punitive damages.

### 1. Foreign Regulatory Communications Are Discoverable

Defendants Namaste and Revlon object to producing materials shared with foreign regulators about non-U.S. hair relaxer products; however, these are relevant to showing notice, knowledge, and even causation related to the U.S. hair relaxer products used by the Plaintiffs in this litigation. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-MD-2846, 2019 WL 341909, at *2 (S.D. Ohio Jan. 28, 2019) (recognizing notice, knowledge, and causation are "central issues" in products liability actions). Here, foreign regulatory materials are thus discoverable to show "what Defendants knew about the potential risks of the products at issue…when Defendants knew about those potential risks, what follow-up investigations Defendants did to learn more about those potential risks, and other facts that are potentially relevant." *Id.*; *see also In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 2313201, at *3 (N.D. Ill. May 29, 2017) (finding evidence of communications between defendant and a foreign regulatory agency relevant to show defendant's knowledge of appropriate uses for its drug despite contentions otherwise); *In re Depakote*, No. 15-CV-702-NJR-SCW, 2017 WL 2126837, at *7 (S.D. Ill. May 16, 2017) (foreign regulatory materials were "relevant on the issue of [defendant's] knowledge. . . about the drug it introduced into the United States market"); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 307 (E.D. Pa. 2016) (denying motion to exclude evidence of foreign regulations relevant to notice and knowledge); *In re Yasmin & Yaz*

*(Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *2 (S.D. Ill. Dec. 22, 2011) (foreign regulatory decisions not binding on U.S. agencies, but information "including the foreign regulatory process that came to bear on the drugs at issue and which were well within the notice and knowledge of [the defendant] is [relevant] as part of the fabric of how these drugs came to the United States market and whether all the information which should have been utilized in doing so was utilized"); *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *13 (N.D. Ill. Mar. 29, 2013) (stating that FDA approval "does not necessarily absolve the manufacturer from liability" and foreign regulatory materials are relevant to "questions about the knowledge and willfulness of the manufacturer"); *cf. In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO, ECF No. 3170, at 6 (N.D. Cal. May 9, 2022) (denying motion to exclude foreign regulation of tobacco products in e-cigarettes case, ECF No. 2950).

The foreign documents sought here are highly relevant to show the Defendants' knowledge about the risks and safety of these products.[3] For example, regulators in the European Union ("EU"), where multiple defendants operate and sell products, have reviewed and limited the use of formaldehyde chemicals in relaxers, although Plaintiffs have alleged that Defendants continued using this ingredient in the United States. *Id.*[4] As in *In re Davol*, this case reflects the same factors demonstrating the need for foreign regulatory materials. *In re Davol*, 2019 WL 341909, at *3

---

[3] Although no Defendant has asserted this (much less supported such assertion with necessary facts), discovery of these highly relevant documents is also proportional to the needs of this case. Fed. R. Civ. P. 26.

[4] Indeed, the EU's 2019 regulation of formaldehyde "appears to have been the model for the U.S. Food and Drug Administration's substantially identical 2023 proposed rule to 'ban formaldehyde (FA) and other FA-releasing chemicals (e.g., methylene glycol) as an ingredient in hair smoothing or hair straightening products marketed in the United States.'" *Id.*

(identifying the central issues of notice and causation, the ability of Defendant' foreign subsidiaries to access the materials, and Defendants' resources to collect and produce the documents).

## 2. Foreign Product Labels And Usage Instructions Are Discoverable

Defendant Namaste has refused to produce the labels and usage instructions for hair relaxer products sold outside of the United States.[5] Defendant's objection lacks merit. Foreign product labels and instructions are unquestionably "highly relevant" to the claims and defenses at issue in these cases. *Rheinfrank v. Abbott Lab'ys Inc.*, 1:13-cv-144, 2015 WL 5258858, at *3 (S.D. Ohio Sept. 10, 2015); *see* Fed. R. Civ. P. 26(b)(1). The labels and instructions are probative of what Defendants knew or did not know about their products, and when they knew it, irrespective of whether the products were sold overseas or in this country. The foreign labels and instructions are also probative of the adequacy of warnings (if any) on Defendants' domestic labels and instructions and the feasibility of offering such warnings. Moreover, to the extent the labels and instructions disclose differences in the ingredients and/or processes between foreign and domestic products, those differences may be probative of causation, as well as of Defendants' differing implementation of safety standards in foreign relative to domestic products. Finally, to the extent Defendants' foreign labels and instructions omit certain representations made on their domestic labels (such as that their products are "nourishing" or "healthy"), those differences may be indicative of Defendants' recklessness with respect to the health and safety of domestic, as compared to foreign, consumers.

---

[5] While Revlon initially equivocated, it has since clarified to Plaintiffs that it will produce these materials. Avlon indicates that it has produced foreign labels but has indicated it "will stand on its objection about identifying where such products are sold save to say that Avlon sells the same hair relaxer formulas both inside and outside the United States and does not have any hair relaxer product that is sold solely outside of the United States." *See* Ex. A., Avlon Letter dated Dec. 5, 2023. Avlon suggests that this dispute is insignificant because its "foreign labels are the same as the United States labels." *See* Tr. of Proceedings 70:23–24 (ECF No. 303). Plaintiffs cannot simply accept Avlon's say-so on this critical issue. *See id.* at 72:4–8 (discussing difficulty of parsing Defendants' "mind-numbing" and labyrinthine objections).

4

Given the numerous questions of material fact to which foreign labeling and instructions and instructions are relevant (and especially differences relative to their domestic counterparts), it is no surprise that courts inside and outside the Seventh Circuit have recognized the relevance of such materials in analogous circumstances. For example, in litigation involving Depakote, an epilepsy drug alleged to cause birth defects, defendants there repeatedly raised and lost the argument that foreign labeling was irrelevant. *See Z.H. ex rel. Hutchens v. Abbott Lab'ys Inc.*, No. 1:14-cv-176, 2017 WL 57217, at *3 (N.D. Ill. Jan. 5, 2017) (denying motion to exclude) ("Evidence of foreign labeling ... is relevant to Abbott's knowledge of the risks of Depakote."); *In re Depakote*, 87 F. Supp. 3d 916, 927 (S.D. Ill. 2015) (denying motion to exclude) ("Abbott contends that foreign product labels ... are irrelevant to any issue in this case. The Court disagrees. This evidence is relevant on the issue of Abbott's *knowledge* during a relevant time period ... about the drug it introduced into the United States market."); *Rheinfrank*, 2015 WL 5258858, at *3 (denying motion to exclude) ("[T]he Court agrees ... that the content of foreign labeling is relevant and admissible ... [as] probative of the Defendants' knowledge during the relevant time period," which is in turn "probative of the adequacy of the warning and instruction for Depakote and the feasibility of alternative language.").

Courts in other products cases have reached the same conclusion for at least the last two decades. *See Knight v. Boehringer Ingelheim Pharms. Inc.*, 323 F. Supp. 3d 809, 826 (S.D. W. Va. 2018) (foreign labels demonstrate defendant's knowledge and beliefs regarding the bleed risks of Pradaxa, and included warnings and instructions domestic label did not); *In re Tylenol*, 181 F. Supp. 3d at 307 (foreign labels warning of risks "are evidence of the defendants' knowledge of potential risks related to their products"); *Newman*, 2013 WL 4460011, at *13 (foreign labeling relates to defendants' knowledge of risks and willfulness in not sharing certain of those risks on

5

its American label); *Estate of Kyle ex rel. Mahaney v. Novartis Pharm. Corp.*, 835 F. Supp. 2d 299, 318 (W.D. Ky. 2011) ("Because the company transcends international boundaries, the labeling in other countries could bear on what information the company's executives were privy to ... ."), *order vacated in nonrelevant part on reconsideration*, 2012 WL 12996015 (E.D. Ky. Jan. 4, 2012); *Estate of Tobin ex rel. Tobin v. Smithkline Beecham Pharms.*, No. 00-cv-25, 2001 WL 36102165, at *1 (D. Wyo. May 18, 2001) (foreign product labeling relevant to demonstrate defendant's knowledge of potential side effects and adequacy of warning provided in US). In short, a wealth of authority, as well as common sense, support the discoverability of Defendants' foreign labels and usage instructions.[6]

### 3. Foreign Safety Studies Are Discoverable

Defendant Namaste refuses to produce safety studies and testing documents concerning hair relaxer products sold or used only outside of the United States. In defiance of the Court's instructions to "fish or cut bait" on its discovery objections, Tr. of Proceedings 57:4 (ECF No. 303), Revlon has neither confirmed nor denied to Plaintiffs that it will produce such material, which Plaintiffs have advised Revlon they understand to mean it objects to doing so.

---

[6] This principle is also well accepted in antitrust litigation involving domestic products where discovery of foreign products and pricing is considered appropriate to understand behavior in domestic markets. *See, e.g.*, *In re Diisocyanates Antitrust Litig.*, No. 2:18-mc-1001, ECF No. 835, at 12 (W.D. Pa. Jan. 26, 2023) (ordering production of data relating to foreign "products, production costs, and pricing factors"), *and* ECF No. 431, at 6 (W.D. Pa. Dec. 18, 2020) (ordering production of data relating to products sold only overseas because such data could show impacts on domestic market); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-2420, ECF No. 624, at 2 (N.D. Cal. Dec. 23, 2014) (ordering production of "worldwide transaction-level sales and cost data" as relevant to existence of conspiracy and damages); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 4:07-md-1819, ECF No. 442, at 2 (N.D. Cal. May 20, 2008) (ordering production of data for product sales outside the United States as "relevant to both claims and damages"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827, ECF No. 618, at 2 (N.D. Cal. May 15, 2008) (same); *In re Vitamins Antitrust Litig.*, No. 99-197TFH, 2001 WL 1049433, at *11–14 (D.D.C. June 20, 2001) (ordering production of requested discovery without geographic limitation in global price-fixing case).

Such refusals are baseless. No matter the differences (if there are any) between the formulation of Defendants' domestic and foreign products, studies of the product safety are clearly relevant to the claims and defenses here. To the extent the products are similar or identical, the foreign studies concern the safety of Defendants' domestic products. And to the extent the products differ, any differing safety conclusions of studies performed on the foreign products are relevant to causation and also suggest knowledge as to safety concerns with different types or combinations of ingredients. Studies of foreign products will also show Defendants' actual or constructive knowledge of their products' risks to their users' health.

Defendants have advanced no colorable argument that scientific analysis or testing performed overseas is distinguishable from that performed in the United States. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 19-ml-2905, 2022 WL 19425956, at \*6 (C.D. Cal. July 25, 2022) (ordering production of "failure analysis reports" addressing safety incidents and testing performed overseas as relevant to notice and knowledge of defect); *Hodges v. Pfizer Inc.*, No. 14-cv-4855, 2015 WL 13804602, at \*5 (D. Minn. Dec. 17, 2015) (granting motion to compel as to "foreign pharmacovigilance assessments and studies; ... foreign annual safety reports; ... foreign PSUR[s] [or Periodic Safety Update Reports]; [and] foreign periodic benefit-risk evaluation reports"); *In re Yasmin*, 2011 WL 6740391, at \*23 (finding European Active Surveillance study was clearly relevant to matters in issue in this case).

### 4. Foreign Scientific Journal Articles Are Discoverable

Defendant Namaste refuses to produce scientific journal articles commissioned by Defendant concerning hair relaxer products sold outside of the United States. But such articles are "clearly relevant" and discoverable, *In re Yasmin*, 2011 WL 6740391, at \*23, as probative of causation and of what Defendants knew or should have known about the safety of their products. Defendants offer no serious argument otherwise.

7

### 5. Foreign Organizational Charts Are Discoverable.

Defendant Namaste refuses to produce foreign organizational charts, but Plaintiffs need organizational charts concerning non-US products or non-US operations to locate key witnesses, departments, and operations, including those responsible for foreign regulatory submissions, product labeling, and safety studies, and to assess overlapping personnel across domestic and foreign brands. "[I]nformation about organizational arrangements" is discoverable "if likely to yield or lead to the discovery of admissible information." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 1946 amendment; *see also Maag Audio, LLC v. Earbyte, Inc.*, No. CV 20-10444, 2020 WL 12707953, at *2 (E.D. Mich. Nov. 19, 2020) (finding the identification of foreign "owners and organizational arrangements would lead to the discovery of admissible evidence and is discoverable under Rule 26(b)(1)").

Organizational charts relate to "the structural and functional relationship" between L'Oréal USA "and any other entities that are in possession of relevant documents over which Defendant" asserts control. *See In re Glenz v. Sharp Elec. Corp.*, No. CIV.A. 08-3652 (FSH), 2010 WL 2758729, at *4 (D.N.J. July 12, 2010). Since notice, knowledge, and causation are threshold issues in product liability claims, access to this information is highly relevant to determining who can address a variety of relevant questions about Plaintiffs' claims. Therefore, organizational charts "yield a clearer picture of how these entities interrelate and whether Defendant can assert control over the documents in question." *Id.*

### 6. Materials from the Board of Directors Are Discoverable.

Defendant Namaste objects to producing meeting minutes and presentations from its Board of Directors concerning hair relaxer products used/sold only outside of the United States. "Meeting minutes, reports, and presentations" from a foreign company's board of directors are discoverable. *See Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, No. 02 CIV. 0795

(CBM), 2005 WL 1026461 (S.D.N.Y. May 2, 2005) (affirming sanction against defendant that failed to comply with order to produce materials from board of director). These documents will show what L'Oréal USA's Board of Directors knew about hair relaxer products, when they knew it, and the strategies the company deployed to develop, manufacture, market, and sell hair relaxer products. In particular, the extent to which the Board of Directors knew of and disregarded any dangers or injuries posed by hair relaxer products, and/or responded, are highly relevant to Plaintiffs' product liability claims, L'Oréal USA's defenses, and damages. *See In re Abbott Lab'ys*, No. 99 C 7246, 2004 WL 726130, at *2 (N.D. Ill. Mar. 31, 2004) (documents reflecting meetings of the Board of Directors are "relevant to plaintiff's damages" and can "shed light on the effects of the directors' alleged inaction").

### B. L'Oréal USA Should Be Compelled to Produce Documents Held by L'Oréal S.A. Because it Controls Such Documents for Discovery Purposes

Defendants L'Oréal USA, L'Oréal USA Products, Inc., and SoftSheen-Carson LLC (hereinafter collectively referred to as "L'Oréal USA") must produce documents within their control. Fed. R. Civ. P. 34(a)(1). When a parent-subsidiary relationship exists, "the requesting party does not have to show that the subsidiary controls the parent, only that the subsidiary can obtain the parent's documents." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020). Once a subsidiary demonstrates "its ability to obtain requested information and documents" from its foreign parent corporation, the court need not "postulate the closeness of the relationship." *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-CV-01020-RLY, 2013 WL 4777206, at *6 (S.D. Ind. Sept. 5, 2013), *objections overruled*, No. 112CV01020RLYMJD, 2013 WL 12291530 (S.D. Ind. Nov. 26, 2013); *see also Life Spine*, 2020 WL 2219060, at *3 (if a requesting party shows a subsidiary provided information and documents it had obtained from the parent company in the course of discovery, then the court can bypass the

9

"control" factors). For discovery, a party does not need actual possession of documents "to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotations and citations omitted)). Nor does "[t]he location of the documents, whether within the territorial jurisdiction of the court or not," matter for the inquiry. *Ledesma v. Marriott Int'l, Inc.*, No. 18 CV 3947, 2023 WL 2814762, at *2 (N.D. Ill. Apr. 6, 2023) (quoting *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988)).

Here, Defendant L'Oréal USA has produced some materials from its parent, L'Oréal S.A.,[7] when doing so has served its own interests. For example, L'Oréal USA's corporate designee testified that L'Oréal S.A. owns the formulations for L'Oréal USA's domestic hair relaxer products, and that L'Oréal USA acquired information about such domestic products from L'Oréal S.A. in order for the witness to prepare for her deposition in this case. As described below, L'Oréal USA demonstrates all of the elements of "control" because documents are "in the possession of a non-party corporation with which it has some sort of relationship (i.e., as an affiliate, sister corporation, parent, or subsidiary)" reflected in: (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies. *Meridian*, 333 F.R.D. at 135–36.

---

[7] L'Oréal S.A. is synonymous with L'Oréal Group and L'Oréal Groupe.

### 1. L'Oréal S.A. and USA have a Parent–Subsidiary Relationship

L'Oréal USA is a wholly owned subsidiary of L'Oréal S.A. *See* Ex. B, Garrison Dep. at 250:8-23. Commonality of ownership exists when a parent company wholly or partially owns a subsidiary. *In re Subpoena To Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010); *Life Spine, Inc.*, 2020 WL 2219060, at *3. Although not solely dispositive of the control analysis, L'Oréal S.A.'s ownership of L'Oréal USA weighs in favor of production. *Meridian*, 333 F.R.D. at 136.

### 2. There Is Commingling of L'Oréal S.A. and USA's Personnel

An overlap in management between corporate entities weighs in favor of a finding of control. *Meridian*, 333 F.R.D. at 136 (ruling that service on the board of directors of an affiliate non-party corporation by two senior executives of a party corporation weighs in favor of a finding of control). Here, L'Oréal USA's CEO, David Greenberg, serves on L'Oréal S.A.'s Executive Committee. As a member of L'Oréal S.A.'s Executive Committee, Mr. Greenberg "implement[s] strategic guidelines and direct[s] Group activities worldwide" and is "in charge of L'Oréal's Divisions, Functional Departments and geographical Zones" that affects the business of L'Oréal USA. *See* Ex. C, L'ORÉAL, 2022 ANNUAL REPORT – THE ESSENTIALS, at 7. Additionally, L'Oréal USA's former CEO, Jean-Paul Agon, has served as Chairman of L'Oréal S.A.'s Board of Directors since 2011, and was also the CEO of L'Oréal S.A. for more than a decade. *See Life Spine*, 2020 WL 2219060, at *3 (finding that employees that served as executives, for the party and non-party corporations, though not simultaneously, evidence a "measure of closeness" that reflects control). Mr. Greenberg's and Mr. Agon's leadership roles at both companies support a finding of control.

### 3. There Is Free-Flowing Information Between L'Oréal S.A. and USA.

"[C]ourts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party" when "the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation." *Meridian*, 333 F.R.D. at 136 (quoting *Gerling*, 839 F.2d at 141 (3d Cir. 1988)). L'Oréal USA should not have it both ways here either. L'Oréal S.A. applied for and patented "methods for treating chemically relaxed hair" that three current and former employees of L'Oréal USA invented. *See* Ex. D, Methods for Treating Chemically Relaxed Hair, U.S. Patent No. 9,974,725 B1 (filed May 24, 2017) (issued May 22, 2018). According to the inventors, they worked in the United States for L'Oréal USA. *Id.* These facts comport with L'Oréal USA's admission that L'Oréal S.A. owns the formulation for hair relaxer products sold and distributed by L'Oréal USA. *See* Ex. B, Garrison Dep. at 106:11-107:2. As previously stated, L'Oréal USA also obtained documents from L'Oréal S.A. to prepare its corporate designee for deposition. *See* Ex. E, Yung-Hing Dep. at 27:7-28:14. Indeed, L'Oréal USA represented that the only place it went to determine the products sold and distributed in the United States was the finance department of L'Oréal S.A. *Id.* at 29:9-30:12. Lastly, L'Oréal S.A. makes information "permanently available" to USA via S.A.'s intranet sites. *See* Ex. F, L'ORÉAL, 2022, UNIVERSAL REGISTRATION DOCUMENT, at 121. L'Oréal S.A.'s intranet sites provide "guides, charters, and expert contacts organised by function and by subject" to ensure "economic and financial targets are achieved in compliance with the laws and regulations in force and the Group's ethical Principles and standards"; allow for "Country Reporting"; and, utilize its Research, Innovation, and Technology Department to implement "cosmeto-vigilance and the quality of the formulas used within products." *See id*. at 51, 118, 121–22, 232.. This "free flow of information" and directives between L'Oréal USA and L'Oréal S.A strongly supports a finding of

control. *See Meridian*, 333 F.R.D. at 136 (citing *Sanofi-Aventis v. Sandoz*, 272 F.R.D. 391, 396 (D.N.J. 2011)).

### 4. L'Oréal S.A. and USA Collaborated in the Manufacture of Hair Relaxers

As referenced above, L'Oréal S.A. and L'Oréal USA "acted together in seeking [USPTO] approval" of a hair relaxer patent at the crux of Plaintiffs' product liability claims. *See Meridian*, 333 F.R.D. at 137 (finding control where sister corporations "acted together in seeking FDA approval" of a generic drug and the non-party performed work central to the litigation (quoting *Sanofi-Aventis*, 272 F.R.D. at 396)). As one court noted, "having acted as one with [L'Oréal S.A.] in the course of the transaction," L'Oréal USA cannot now "assert that it does not 'control' the documents relevant to the transaction" because there is litigation. *Meridian*, 333 F.R.D. at 137 (quoting *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Companies, Inc.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983)). Collaboration is demonstrated.

### 5. L'Oréal S.A. and USA Are Both Involved in the Litigation

L'Oréal S.A. has supplied highly relevant information regarding the products at issue in this litigation, including preparing L'Oréal USA's corporate witness for this case. *See* Ex. B, Garrison Dep. at 15:13-24:22; Ex. E, Yung-Hing Dep. at 27:17-29:22. This alone establishes L'Oréal S.A.'s involvement in the litigation. But L'Oréal S.A. has also injected itself into the merits of the case by issuing public statements on the hair relaxer lawsuits. *See* Press Release, L'Oreal Group, L'Oreal Statement in Response to Hair Straightening Product Lawsuits in the US, (17.11.2023), https://www.loreal.com/en/statement/group/response-to-hair-straightening-product-lawsuits-in-the-us/. Regardless, as discussed in Plaintiffs' discovery letter dated November 15, 2023, Plaintiffs have sued L'Oréal S.A. and are pursuing service through the Hague Convention, making S.A.'s involvement explicit. ECF No. 299-1 at 6.

13

### 6. L'Oréal S.A. and USA Share Marketing

L'Oréal S.A. owns L'Oréal USA's intellectual property. *See* Ex. B, Garrison Dep. at 106:11-107:14. L'Oréal S.A. advertises USA's hair relaxer brand Dark & Lovely on the S.A. website. *See* L'Oréal Groupe, Dark & Lovely, https://www.loreal.com/en/consumer-products-division/dark-and-lovely/ (last visited November 30, 2023). L'Oréal S.A. calls Dark & Lovely "an original pioneer in black [sic] beauty" that is "not only a powerhouse and staple in the community, but also a self-affirmation". *Id.* L'Oréal S.A. quotes L'Oréal USA in saying that Dark & Lovely exemplifies, "Representation matters. It is not only important to see people who look like us on the screen and in magazines, but just as important to be able to access products that are curated specifically for us—not just the idea of us. That's true in any industry, but imperative in beauty." *Id.* L'Oréal S.A. directs consumers of Dark & Lovely to L'Oréal USA. *See* SoftSheen-Carson, Dark & Lovely, https://www.softsheen-carson.com/Dark-and-Lovely (last visited November 30, 2023). The joint marketing of L'Oréal S.A. and L'Oréal USA shows control.

### 7. L'Oréal S.A. and USA Share Financial Resources

L'Oréal S.A. and L'Oréal USA share certain financial resources, including the unique role L'Oréal S.A.'s finance department provides L'Oréal USA in tracking information about products sold here. *See* Ex. E, Yung-Hing Dep. at 29:9-30:12. Likewise, L'Oréal S.A. tracks and reports on L'Oréal USA's financial operations in its half year and annual financial reports, including consolidated financial statements, L'Oréal USA's product acquisitions, suspension of sales pursuant to sanction imposed by the United States, and actuarial gains and losses incurred in the United States. *See* Ex. F, L'ORÉAL, 2022, UNIVERSAL REGISTRATION DOCUMENT at 261-62, 271. The shared financial resources demonstrate control.

### III. CONCLUSION

For the reasons set forth above and in Plaintiffs' prior discovery letters, Plaintiffs respectfully request that this Court overrule Defendants' discovery objections, order all Defendants to produce the requested materials related to hair relaxer products sold outside the United States, and instruct Defendants to finalize their productions responsive to the first set of written discovery and interrogatories and complete their verified interrogatory responses by December 20, 2023.

Dated: December 6, 2023              Respectfully Submitted,

/s/ Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor

15

        New York, New York 10038
        Tel.:212-566-7500
        Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*