IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No. 23 C 818<br><br>MDL No. 3060<br><br>Judge Mary M. Rowland |

**THE PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER NO. 10 ESTABLISHING COMMON BENEFIT FEE AND EXPENSE PROTOCOLS**

Plaintiffs' appointed co-lead counsel, Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee (collectively the "PLC") move this Court for entry of proposed Case Management Order No. 10[1], attached as Exhibit 1, establishing protocols and procedures to govern common benefit fees and expenses in this MDL. Proposed CMO No. 10 is unanimously supported by the entire PLC appointed by the Court. Notably, this comprises a large number of lawyers and law firms that sought, early on, even before this MDL was established, to create a cohesive working group of lawyers that is vast and diverse. As previously noted, lawyers from all over the country were welcomed and accepted the early invitation to pursue the common goal of successfully resolving this litigation. [ECF 14]. CMO No. 10 is substantially identical to that which was previously submitted to the Court by notice on October 25, 2034. Because the PLC subsequently learned that one law firm with cases in this MDL wishes to raise objections to certain aspects of the proposed CMO, the PLC agreed to submit a formal motion for entry of this order, in order to provide full opportunity for briefing and consideration of any such objections.[2]

---

[1] Previously plaintiffs submitted the proposed order as CMO No. 9 but, since its prior submission, the Court issued an order addressing Plaintiff Fact Sheets, which is now CMO No. 9. [ECF 343]

[2] The Co-Leads met and conferred with the objecting firm on multiple occasions in an attempt to resolve differences and agreed to incorporate a number of its concerns in the draft CMO. Nevertheless, the parties were unable to reach a final agreement. If the objecting firm does file an objection to this motion, Movants

It is important to emphasize at the outset both what CMO No. 10 is, and what it is not. The Manual for Complex Litigation instructs that, "[e]arly in the litigation," after the Court has appointed lead and liaison counsel,

> the court should define designated counsel's functions, determine the method of compensation, specify the records to be kept, and establish the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions.

Manual for Complex Litigation § 14 (4th ed.). That is precisely what CMO No. 10 does, in conjunction with this Court's earlier order appointing Plaintiffs' leadership. Order Granting Petition for Appointment of a Plaintiffs' Leadership Committee (March 2, 2023) [ECF 28] (hereinafter "Appointment Order"). The proposed CMO supplements that order by establishing protocols and procedures applicable to any potential future award of common benefit fees and reimbursement of common expenses in this MDL and related hair relaxer litigation. These protocols establish procedures for determining: who is covered by the order, the nature of common benefit work, the persons entitled to do common benefit work and apply for compensation for that labor, methods for maintaining and submitting time and expense records for common benefit work, limitations on potentially compensable common benefit expenses, the creation of common benefit fee and expense funds to be funded through holdbacks from future settlements and judgments in hair relaxer litigation, and the procedures for applying for distributions of common benefit fees and expenses should the litigation ultimately be successful, and for determining awards to be paid to firms performing such common benefit work, to be paid only pursuant to future orders of this Court.

---

will provide additional detail and documentation concerning these efforts to reach an amicable resolution in their reply memorandum.

CMO No. 10 only establishes procedures for each of these steps. It does not, by its terms, apply to any attorney or law firm that only has hair relaxer claimants outside of the MDL, unless they voluntarily choose to participate in return for access to common benefit work. The proposed order *does not* at this time award any common benefit fees or expenses whatsoever, nor does it require any present commitment of any monies to the proposed common benefit fee and expense funds. Finally, CMO No. 10 *does not* make any determination about the amount of funds that ultimately should be awarded to compensate firms performing work for the common benefit of all hair relaxer claimants; rather, it simply establishes procedures for holding back funds out of future judgments and settlements that can be used for the ultimate payment of such compensation in order to ensure that, if the litigation is successful, there will be funds available to compensate counsel performing common benefit work.

As the Court is well aware, and as discussed briefly below, such common benefit fee and expense protocols are a standard feature of MDL case management. The PLC therefore moves the Court to enter the proposed Case Management Order No. 10 in the form attached hereto.

### I. Governing Principles and the Common Benefit Fee Doctrine

MDL courts have long recognized that a process for appointing and compensating leadership teams for plaintiffs is essential to the successful litigation and resolution of complex multiparty disputes like the present litigation. As the Fifth Circuit Court of Appeals declared in the seminal case *In re Air Crash Disaster at Fla. Everglades,* 549 F.2d 1006, 1016 (5th Cir. 1977): "[I]f lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation."

Courts have identified at least three separate sources of judicial authority for common benefit fees. First, courts have found that authority for such fees derives from the United States Supreme Court's equitable common benefit doctrine, as established in *Trustees v. Greenough,* 105 U.S. 527 (1881), and refined in cases such as *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885), and *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161 (1939). Second, courts have found a basis for common benefit fees in complex litigation based upon the Court's "inherent managerial power over the consolidated litigation." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.,* 365 F.Supp.3d 685, 695 (S.D.W.V. 2019) (internal quotation omitted); *see also* Manual for Complex Litigation, § 10.1 (4th ed. 2004) ("court's express and inherent powers [over consolidated or coordinated cases] enable the judge to exercise extensive supervision and control [over the] litigation"). Finally, a third source of authority for common benefit fees can derive from private contractual arrangements, usually in the form of a Participation Agreement in which counsel can agree to make contributions to a fund for common benefit fees in exchange for access to common benefit work product; such an agreement is enforceable by the court. *In re Bard IVC Filters Prod. Liab. Litig.,* 2023 WL 5441793, at *2 (9th Cir. Aug. 24, 2023). *See also* [Proposed] Case Management Order No. 10: Establishing Common Benefit Fee and Expense Protocol (hereinafter "Proposed CBO") at § I (collecting cases supporting the entry of a Common Benefit Order in multi-district litigation).

CMO No. 10 relies on all three of these sources of judicial authority.

## II. Applicability

It is important to stress that the proposed CMO, and the obligation to contribute to the Common Benefit Work Holdback[3], does not apply to hair relaxer claimants, but rather to their retained counsel. After all, it is retained counsel whose responsibilities to litigate claims on behalf of their clients are reduced through the efforts of plaintiffs' appointed leadership to manage and carry out litigation for the common benefit of all claimants. Said otherwise, it is these retained counsel who have received significant benefit from all of this common work. In return, all counsel are asked to contribute a modest percentage of their contingency fees to compensate common benefit counsel for their work and reimburse them for their expenses. This modest percentage is set now, only as a holdback, for later determination by the Court as to whether the entire holdback is necessary to compensate for the work performed. The plaintiffs' own ultimate compensation for their claims remains largely unaffected. CMO No. 10 at § V.B.3.[4]

The proposed CMO applies to four groups of "Participating Counsel": (1) all attorneys appointed to various leadership positions by the Court or by the appointed Co-Leads, including all members of the Plaintiffs' Executive Committee, the Plaintiffs' Steering Committee, and the Leadership Development Committee, and their respective law firms; (2) any "Affiliated Counsel" who agree to perform work in the MDL for the common benefit at the direction of the Co-Leads; (3) each attorney or law firm that represents a plaintiff with a case pending, now or in the future, in this MDL, and the order applies to every hair relaxer case in which they or their law firm have a fee interest; and (4) each attorney or law firm that represents hair relaxer claimants, but has no

---

[3] *See* CMO No. 10 at § V.B.3 ("An assessment of 8% of the Gross Monetary Recovery in each such case shall be referred to as the Common Benefit Work Holdback and shall be used to pay for common benefit work.")

[4] Plaintiffs themselves do have to contribute a modest percentage of their recoveries to defray and share in the cost of common benefit expenses, just as in standard retainer agreements. *Id.*

cases filed in the MDL, if the attorney or firm voluntarily elects to sign a Participation Agreement in order to gain the benefits of common benefit work product or that knowingly receives such work product. *See* Proposed CBO at § I(A).

These parameters are consistent with similar CMOs entered in other MDLs in this district. *See, e.g., In re Testosterone Replacement Therapy Prods. Liab. Litig,* Case Management Order No. 16 (Kennelly, J.) (Applying common benefit fund order to "each attorney who represents a plaintiff with a case now pending in or later filed in, transferred to, or removed to this Court, regardless of whether the plaintiff's attorney signs the Participation Agreement' attached hereto as Exhibit A, and regardless of whether the attorney also has cases outside the MDL (filed or unfiled)") (hereinafter "TRT CMO") (attached as Exhibit 2).

### III. Common Benefit Work and Expenses

CMO No. 10 lays out in significant detail the kinds and categories of work that may qualify for common benefit compensation, as well as the expenses that may qualify for common benefit reimbursement. All Participating Counsel are eligible to be considered for common benefit work assignments. Work done in the MDL, both on behalf of all plaintiffs and in support of designated bellwether cases, as well as work carried out in other fora (including state courts and federal bankruptcy proceedings), may qualify as common benefit work. However, only work undertaken at the direction and approval of the Co-Leads or their designees will be considered for compensation from the common benefit fee and expenses funds created herein. That is consistent with the Appointment Order.

Likewise, this provision is also standard in all Common Benefit Orders – and for good reason. One can only imagine the waste of both attorney and judicial resources if all counsel in an MDL were free to undertake whatever work they thought necessary to serve the common benefit

of all plaintiffs and then expect that these endeavors necessarily would be paid from the finite Common Benefit Fund. As the Manual on Complex Litigation observes:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

Manual for Complex Litigation § 10.22. It is for precisely this reason that the Manual recommends appointment of both Lead Counsel and leadership committees. *Id.* And this Court already heeded this guidance when it appointed Co-Lead Counsel and charged them with responsibility to manage and coordinate litigation on behalf of Plaintiffs in this MDL, including to, *inter alia*:

> Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders, including organizing sub-committees comprised of plaintiffs' attorneys not on the PSC and assigning them tasks consistent with the duties of the PSC;
>
> Monitor the activities of the PEC and PSC and other co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;
>
> Initiate, coordinate, and conduct all pretrial discovery on behalf of all Plaintiffs who file civil actions in this Court or that are transferred to this Court pursuant to 28 U.S.C. § 1407 and are part of the MDL proceeding and, to the extent possible, coordinate with any product liability state court actions to avoid duplicative depositions or other inefficient discovery;
>
> Consult with and employ experts as necessary;
>
> Submit and argue or designate other counsel to argue any motions presented to the Court or Magistrate Judge on behalf of all Plaintiffs as well as oppose when necessary any motions submitted by the Defendants or third parties;
>
> Examine or designate other counsel to examine witnesses and introduce evidence at hearings on behalf of Plaintiffs; [and]
>
> Act or designate other counsel to act as spokesperson(s) for Plaintiffs at pretrial proceedings and in response to any inquiries by the Court.

Appointment Order [ECF 28].

CMO No. 10 further provides that all attorneys and law firms seeking to be compensated for their work for the common benefit must regularly maintain and submit time and expense records in accordance with the proposed CMO. The CMO also outlines a detailed procedure for applying for compensation and reimbursement from the common benefit funds. No distributions of common benefit fees will be made unless with approval of the Court.

### IV. Common Benefit Assessment

The Manual for Complex Litigation recommends that "[e]arly in the litigation, the court should . . . establish the arrangements for [common benefit counsel's] compensation, including setting up a fund to which designated parties should contribute in specified proportions." Manual for Complex Litigation § 14.215. CMO No. 10 does precisely this, by providing for a holdback of a percentage of any future gross monetary recovery from hair relaxer cases in which a Participating Counsel has a fee interest to fund the common benefit fee and expense funds. (The common benefit fee holdback is to be paid out of the Participating Counsel's contingency fee, without reduction in the compensation to the plaintiff/claimant.) Specifically, the order calls for an 8% assessment to the common benefit fee fund and a 3% assessment to the common benefit expense fund. Proposed CBO at § V.B.3 These proposed assessments were unanimously agreed to by all members of plaintiffs' leadership, including the Co-Leads, the PEC and the PSC. They are based on leadership's best estimation of the work involved in managing and litigating this MDL, taking into account a wide variety of factors including but not limited to: the complexity of the cases, the large number of defendants, the need to identify and develop expert testimony, and possible limitations on potential recoveries due to the size, financial resources, and bankruptcy status of certain defendants. The goal of the assessment is to ensure that adequate funds are held back from

8

individual judgments or settlements (or from global settlement) and thus available to provide reasonable compensation and reimbursement of common benefit expenses to counsel performing common benefit work. Plaintiffs' leadership unanimously believes that these proposed assessments are fair and reasonable under the circumstances.

The 8% holdback in CMO No. 10 for legal fees and 3% holdback for reimbursable expenses is well within the mainstream of holdback assessments in similar products liability MDLs. The TRT CMO entered by Judge Kennelly provided for a total 10% holdback, 8% for legal fees and 2% for expenses. This MDL involves more defendants and more products. The approved holdbacks in the *Xarelto (Rivaroxaban), Bair Hugger Forced Air Warming Products, IVC Filters, Actos (Pioglitazone), Risperdal and Invega, Zimmer NexGen Knee Implants, Nuvaring, Pinnacle Hip Implant,* and *Hernia Mesh* MDLs, for example, all ranged between 8 and 16 percent. Plaintiffs' appointed leadership unanimously supports the proposed holdback here, based on their experience and the complexity of this litigation.

It is important, nevertheless, to emphasize two aspects of the proposed holdbacks that further support entry of CMO No. 10. First, because the percentage assessment is designed to be paid as a holdback from future recoveries through settlements or judgments, no contributions to the common benefit fee and expense funds are due to be paid at this time. Instead, these holdbacks are withheld by the defendants directly at the time a settlement or judgment is paid. Second, the proposed assessments are based on plaintiffs' leadership's best current estimation of the likely time and expense necessary to litigate this MDL to its conclusion and, therefore, the funds needed to provide reasonable compensation to counsel performing common benefit work. After all, it is the PLC that was appointed to hire experts, court reporting firms, document management vendors, trial consultants and expend other resources (in both time and money) to ensure that this litigation

9

resolves successfully. Because they are in the best position to do so, the PLC carefully consulted precedent, considered the tasks facing them in this complex multi-defendant MDL, and used their best judgment to craft CMO No. 10. Though the PLC believes that this judgment should be entitled to significant deference, the PLC also notes that this Court or a special master it appoints will ultimately determine the reasonableness of the common benefit fees sought based upon the work performed. Moreover, the proposed CMO expressly provides for a refund of any excess funds that were held back in the event that the Court were to determine that not all of the funds available were needed to fairly compensate and reimburse counsel for their work. Any challenge to the holdback amount is therefore premature.

## Conclusion

For these reasons, the PLC respectfully request that this Court enter the attached proposed CMO No. 10, establishing protocols to govern common benefit fees and expenses in this MDL.

Dated: December 22, 2023.                    Respectfully submitted,

*/s/ Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500 Birmingham, Alabama 35203 Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*