IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 <br><br> Master Docket No. 23-cv-00818 <br><br> Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' joint motion to compel production of foreign materials related to hair relaxer products sold outside the United States and materials held by the foreign parent of L'Oreal USA. For the reasons stated herein, Plaintiffs' motion is granted in part. [315].

### I. Background

Plaintiffs sued Defendants for the manufacture, advertisement, distribution, and sale of hair relaxer products containing chemicals that allegedly caused severe injuries to the thousands of plaintiffs joined in this case. Plaintiffs' claims span close to two decades during which each Plaintiff bought and used Defendants' products inside the United States.

The parties completed initial disclosures and are now engaged in discovery. At a status hearing on November 17, 2023, the Court heard argument on Plaintiffs' request for production of foreign affiliates' materials and requested briefing on the subject. [301]. Parties' cross-briefs are now before the Court. [314]; [327]; [338].

### II. Standard

1

District courts have broad discretion in supervising discovery and ruling on discovery motions. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 (7th Cir. 2012). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (internal citation omitted). The court "may grant or deny the motion [to compel] in whole or in part, and . . . may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)). Relevance is a "precondition" to discovery. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 721 (N.D. Ill. 2014) (internal citations omitted). Courts also consider the proportionality of the proposed discovery and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### III. Analysis

Plaintiffs request six distinct categories of materials related to hair relaxer products sold exclusively outside of the United States: "(1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; (4) articles in scientific journals; (5) organizational charts; and (6) certain Board of Director materials." Plaintiffs argue that these materials are relevant to Defendants' knowledge and notice of the harmful effects of chemicals contained in products sold abroad and in the U.S., the adequacy of warnings on domestic versus foreign packaging, and causation.

2

Each Defendant responds that it is not aware of any products its respective company sells "exclusively" outside the United States. Four Defendants —Strength of Nature LLC; House of Cheatham LLC, Beauty Bell Enterprises, LLC; Sally Beauty; and Revlon—still agree without objection to search for and provide responsive materials related to their products manufactured in the U.S. and sold internationally.[1] The remaining Defendants—L'Oreal U.S.A and Soft-Sheen-Carson, LLC., Avlon Industries, Inc., and Namaste Laboratories, LLC—either object to searching their foreign affiliates altogether or to producing certain categories of documents. The Court will consider the objections in turn.

### A. Defendants' Specific Objections

#### i. L'Oreal U.S.A.

Plaintiffs seek to compel the production of responsive materials from Defendant L'Oréal's U.S.A. parent company, L'Oréal S.A., which is headquartered in France. L'Oréal U.S.A. argues that it does not "control" documents belonging to its parent company under the meaning of FRCP 34(a). For the following reasons, the Court finds that the documents sought from L'Oréal S.A. are within the control of L'Oréal U.S.A. The Court will limit the scope of documents to be produced, however, for proportionality reasons.

#### 1. Custody and "Control" Under Rule 34

---

[1] Plaintiffs reported in pertinent part: "Defendants House of Cheatham and Strength of Nature have agreed to produce all requested documents concerning non-U.S. products to the extent they exist . . . Defendant Sally Beauty has agreed to produce the requested documents, and . . . Defendant Revlon confirmed it would produce the requested documents." [335-1] at 3.

3

Parties may seek production of only those documents that are in the "possession, custody, or control" of the responding party. Fed. R. Civ. P. 34(a). "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004)). When a party seeks production from a non-party corporate affiliate, courts decide whether the opposing party "controls" those documents belonging to the affiliate by examining the closeness of their corporate relationship. *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, No. 07 CV 6509, 2009 WL 780890, at *2 (N.D. Ill. March 23, 2009).

The test for corporate closeness involves various factors, including: "(1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies." *In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010) (collecting cases).

Courts weigh all the factors together to determine the closeness of the relationship. *Id.* No factor is dispositive on its own. If the entities are sufficiently close, the responding party must produce documents sought from the possession of its affiliate. *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060,

at *2 (N.D. Ill. May 7, 2020); *Meridian Laboratories, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019). The question of control is fact-specific, and the party seeking production bears the burden of establishing that the opposing party controls the requested documents. *Id.*

***Common Ownership:*** L'Oréal U.S.A. is a wholly owned subsidiary of L'Oréal S.A. [317] at 86 (Garrison Dep. At 250:8-23). A parent-subsidiary relationship weighs in favor of closeness "because of the [common] ownership situation, there often exists some intermingling of directors, officers, or employees, or business relations." *In re Zantac (Ranitidine) Products Liab. Litig.*, 20-MD-2924, 2021 WL 1522449, at *7 (S.D. Fla. Apr. 16, 2021); *see Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, SACV04454JVSMLGX, 2006 WL 6534230, at *5 (C.D. Cal. Mar. 8, 2006) (counting parent-subsidiary relationship towards closeness).

***Exchange or Intermingling of Directors, Officers, or Employees***: Plaintiffs also show a marginal degree of commingling of personnel: L'Oréal U.S.A.'s current C.E.O. serves on the executive committee of L'Oréal S.A., while the current chair of the parent company's board of directors was the former C.E.O. of L'Oréal U.S.A. [315-3] at 5. While these facts do not establish a formal shared management structure, an overlap at the executive level "suggests some measure of closeness." *Life Spine, Inc.*, 2020 WL 2219060, at *3.

***Exchange of Documents, Connection to Transaction at Issue, and Shared Marketing:*** L'Oréal S.A. applied for and secured the patent for hair

5

relaxer products developed, sold, and distributed by L'Oréal USA, implying an exchange of documents in the ordinary course of business, as well as L'Oréal S.A.'s legal and financial stake in the products involved in this case. *See* [317] at 107; [315-4]. L'Oréal S.A. also advertises those products (including U.S.A. brand Dark & Lovely) on its website, [335-1] at 13, tipping the scales toward closeness. *See Life Spine, Inc.*, 2020 WL 2219060, at *3 ("[E]vidence of . . . shared business purpose . . . weighs in favor of closeness.").

L'Oréal USA counters that the U.S. affiliate has its own marketing, product development, customer complaints, and I.T. divisions distinct from L'Oréal S.A. But L'Oréal S.A. makes information permanently available to L'Oréal USA to (1) enable its Research, Innovation and Technology Department to implement "cosmeto-vigilence and the quality of the formulas used within products" and (2) to provide documents and guides to ensure targets and goals are achieved. This fact weighs this factor in favor of closeness.

***Involvement in Litigation*:** Plaintiffs rely heavily on the fact that L'Oréal U.S.A. has already produced documents from the possession of L'Oréal S.A. On September 14, 2023, L'Oréal U.S.A. responded to an interrogatory seeking a comprehensive list of the subsidiary company's hair relaxer products with data obtained from L'Oréal S.A. [313] at 8-9. Plaintiffs argue that this exchange of documents shows that L'Oréal U.S.A. is "able to obtain the documents in question" enough to "control" them." *Huawei*, 720 F. Supp. 2d at 976. L'Oréal U.S.A. responds that the production was a one-time occurrence in the face of a short deadline set by

6

this Court, [313] at 8-9, and that "there is nothing in the record suggesting L'Oréal S.A. would provide L'Oréal USA with information pertaining to non L'Oreal USA products." *Id*.

The fact that L'Oréal U.S.A. has produced documents from L'Oréal S.A. does not by itself establish a close relationship. But it is a strong indicator of closeness. In *Life Spine*, the court found that an exchange of documents between a subsidiary and its parent in the ordinary course of business weighed in favor of closeness, and that finding would be even clearer "if Plaintiff had shown that [the parent company] provided these documents in response to a discovery request." 2020 WL 2219060, at *2. That is exactly what L'Oréal S.A. did here. L'Oréal U.S.A. then used those productions to prepare its corporate designee witness for a Rule 30(b)(6) deposition. [338] at 14 (Yung-Hing Dep. at 27:7-28:14). These facts all demonstrate L'Oréal S.A.'s involvement in the litigation.

Weighing the above factors, the Court finds that L'Oréal U.S.A. and L'Oréal S.A. have a close corporate relationship such that L'Oréal U.S.A. is in "control" of the documents possessed by L'Oréal S.A. that Plaintiff requests.

### 2. Relevance and Proportionality

Relevance under Rule 26 is necessarily broader during discovery than at trial. "If relevance is in doubt, courts should err on the side of permissive discovery." *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004). However, the scope of relevant discovery should narrow when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(a).

Here, information related to products developed and sold by L'Oréal S.A. outside the United States can shed light on L'Oréal U.S.A.'s knowledge and notice of safety risks. Foreign regulatory communications are thus relevant "to the extent they contain information about what [L'Oréal U.S.A.] knew about the alleged risks associated with their [hair relaxer] products, when they knew about those alleged risks, and whether those alleged risks were communicated" to regulators, distributors, and consumers. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-MD-2846, 2019 WL 341909, at *2 (S.D. Ohio Jan. 28, 2019) (allowing discovery of foreign regulatory materials related to hernia mesh products); *see In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 2313201, at *3 (N.D. Ill. May 29, 2017) (admitting foreign regulatory communications at trial as relevant to whether defendant knew about of improper marketing).

In the same vein, foreign product labels and usage instructions, safety studies, and any commissioned scientific journal articles allow Plaintiffs to "discover admissible evidence regarding whether Defendants' warnings . . . [on domestic products] were adequate and reasonable under the circumstances." *Hardy v. Pharmacia Corp.*, 4:09-CV-119 CDL, 2011 WL 2118983, at *3 (M.D. Ga. May 27, 2011) (allowing discovery of foreign labels); *Hodges v. Pfizer Inc.*, No. 14-cv-4855, 2015 WL 13804602, at *5 (D. Minn. Dec. 17, 2015) (foreign safety reports). As discussed earlier, L'Oréal U.S.A. and L'Oréal S.A.'s close corporate relationship,

8

particularly as to the patent of L'Oréal U.S.A products, makes all the above categories of documents in L'Oréal S.A.'s possession relevant to Plaintiffs' claims.

Plaintiffs' requests for L'Oréal S.A.'s organizational charts and board of director materials are much broader in scope. Plaintiffs argue that organizational charts will clarify the "structural and functional relationship" between L'Oréal S.A. and other subsidiaries that sell hair relaxer products, while board of director materials (including meeting minutes, reports, and presentations) will shed more light on what L'Oréal executives knew about the risks of hair relaxer products. Taking a liberal view of relevance at the discovery stage, the Court finds that these materials are relevant.

However, the proposed discovery is not proportional. L'Oréal U.S.A. does not provide much detail on the burden of producing foreign board minutes and organizational charts. [313] at 12. But the Court does not need a specific showing of burden to find that asking L'Oréal S.A., a behemoth multi-national corporation, to search and produce its internal governance records over multiple decades would generate significant costs. These costs outweigh the materials' marginal relevance.

The Court thus grants Plaintiffs' motion to compel L'Oréal U.S.A. to produce documents from L'Oréal S.A. in the following categories: "(1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; and (4) articles in scientific journals. L'Oréal S.A.'s organizational charts and board of director materials are not proportional, and thus not discoverable.

### ii. Namaste Laboratories LLC

Namaste avers that it manufactures its products in the United States, and sell those products "in the United States, in Canada, and, to some extent, in Europe." Namaste does not itself sell any products exclusively outside the United States, although its foreign affiliates in Nigeria (Hair Rejuvenation and Revitalization Nigeria Limited) and South Africa (Urban Laboratories International, LLC) produce and sell hair relaxer products in sub-Saharan African markets. Namaste states that the ingredients of its affiliates' products are "formulated with ingredients sourced from different vendors in different sites" than its own products manufactured in the U.S.

For the same reasons stated with respect to L'Oréal, Namaste must produce the following documents related to its U.S.-made products sold in international markets: (1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; and (4) articles in scientific journals. However, Plaintiffs do not attempt to argue that Namaste has a close corporate relationship with its affiliates such that it has "control" over materials in their possession. Thus, the Court will not order Namaste to produce its foreign affiliates' documents.

### iii. Avlon LLC

Avlon agrees to producing all of Plaintiffs' proposed discovery, except for a list of dates and countries of sale for its U.S.-manufactured products. The Court agrees that producing dates of sale across a large time is not proportional to the issues of liability in this case, especially as foreign regulatory communications will

10

reveal pertinent timeframes. Avlon must still produce a list of countries in which it sells its products.

## IV. Conclusion

For the stated reasons, Plaintiffs' motion to compel discovery is granted in part and denied in part. [315]. All Defendants must produce (1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; and (4) articles in scientific journals related to hair relaxer products sold outside the United States. Defendant L'Oréal U.S.A. must produce responsive documents that are in the possession of L'Oréal S.A., but does not need to produce organizational charts or certain Board of Director materials from S.A. Defendant Namaste does not need to produce documents from its foreign affiliates selling products exclusively outside the United States. Avlon need not provide dates of sale for products sold outside the United States but must provide all countries in which its hair relaxer products were sold.

E N T E R:

Dated: December 27, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

11