**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br><br>Master Docket Case No. 1:23-cv-00818<br><br>Honorable Mary M. Rowland |

**DEFENDANT, AVLON INDUSTRIES, LLC'S**
**ANSWER TO MASTER LONG FORM COMPLAINT**

Avlon Industries, Inc. ("Avlon") states the following as its answer to the Plaintiffs' Master Long Form Complaint.

**NATURE OF THIS MASTER COMPLAINT**

1.      This Master Complaint sets forth allegations of fact and law common to those claims within this multidistrict proceeding relating to hair relaxer products. It includes allegations that Defendants manufactured, sold, distributed, advertised, and promoted toxic hair relaxer products that caused Plaintiffs to develop cancers and other injuries, although not all products and defendants are applicable to every plaintiff with claims in these proceedings. Plaintiffs seek compensatory and punitive damages, monetary restitution, medical monitoring and equitable relief, and all other available remedies as a result of injuries incurred by Defendants' defective products and other wrongful practices.

**ANSWER:**     Paragraph 1 contains conclusions of law and fact to which no answer can be given. To the extent that Paragraph 1 contains no conclusions of law and/or fact, Avlon denies the remaining allegations in Paragraph 1 directed to Avlon.  Avlon otherwise lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 1 and, therefore, denies those allegations.

2.      This Master Complaint will address the claims arising as the direct and proximate result of the conduct of Defendants, their directors, agents, heirs and assigns, and/or their corporate predecessors, and their hair relaxer products, which include but are not limited to Dark & Lovely

1

(L'Oréal and SoftSheen), Optimum (L'Oréal and SoftSheen), Mizani (L'Oréal), Crème of Nature (Revlon), Revlon Realistic (Revlon), Motions (Strength of Nature), Just for Me (Strength of Nature), Soft & Beautiful (Strength of Nature), TCB (Strength of Nature), TCB Naturals (Strength of Nature), Profectiv Mega Growth (Strength of Nature), African Pride (Strength of Nature), Dream Kids (Strength of Nature), Dr. Miracle's (Strength of Nature), African Pride (Strength of Nature and Godrej SON Holdings), ORS Olive Oil (Dabur and Namaste), Hawaiian Silky (JF Labs), Cantu (PDC Brands), Design Essentials (McBride), Affirm (Avlon), Africa's Best (House of Cheatham) Pink Conditioning No-Lye Relaxer (Luster), Smooth Touch No-Lye Relaxer (Luster), and Silk Elements (Sally Beauty).

**ANSWER:** Avlon admits that Paragraph 2 identifies its hair relaxer brand, Affirm, but states that the remainder of Paragraph 2 contains conclusions of law and fact to which no answer can be given. To the extent that the remainder of Paragraph 2 contains no conclusions of law and/or fact, Avlon denies all remaining allegations in Paragraph 2 that relate to Avlon. Avlon otherwise lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 2 directed to other Defendants, and, therefore, denies those allegations.

3.     This Master Complaint does not necessarily include all claims asserted in all of the transferred actions to this Court, nor is it intended to consolidate for any purpose the separate claims of the Plaintiffs herein. It is anticipated that individual plaintiffs may adopt this Master Complaint and the causes of action herein through use of a separate Master Short Form Complaint for Individual Claims, which will specify the particular products and defendants against whom claims are asserted by each individual plaintiff.

**ANSWER:** Paragraph 3 contains conclusions of law and fact to which no answer can be given. To the extent that Paragraph 3 contains no conclusions of law and fact, Avlon denies all remaining allegations in Paragraph 3 that relate to Avlon. Avlon otherwise lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 3 directed to other Defendants and, therefore, denies those allegations.

4.     This Master Complaint does not constitute a waiver or dismissal of any actions or claims asserted in any individual actions, nor does any Plaintiff relinquish the right to move to amend their individual claims to seek any additional claims as discovery proceeds. As set forth herein, each Plaintiff maintains that hair relaxers are defective, dangerous to human health, unfit and unsuitable to be advertised, marketed, and sold in the United States, and have lacked proper

warnings of the dangers associated with their use. Any separate facts and additional claims of individual plaintiffs are set forth in those actions filed by the respective plaintiffs.

**ANSWER:** Paragraph 4 contains conclusions of law and fact to which no answer can be given. To the extent that Paragraph 4 contains no conclusions of law and fact, Avlon denies all remaining allegations in Paragraph 4 that relate to Avlon. Avlon otherwise lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 4 directed to other Defendants and, therefore, denies those allegations.

## NATURE OF THIS ACTION

5. Plaintiffs in this action seek compensation, and justice, for injuries resulting from use of defective hair relaxers designed, manufactured, sold, distributed, and marketed by the Defendants.

**ANSWER:** Avlon admits that Plaintiffs in this action seek compensation for injuries but denies that any hair relaxer Avlon designed, manufactured, sold, distributed, and marketed is defective and/or caused injury to any plaintiff. Avlon lacks sufficient knowledge or information as to any other hair relaxer designed, manufactured, sold, distributed, and marketed by other defendants to either admit or deny the allegations in Paragraph 5, and therefore, denies the same.

6. Plaintiffs' use of toxic chemical straightening products designed or manufactured by the Defendants was a direct result of Defendants' wrongful marketing practices. Defendants systematically misrepresented and continue to misrepresent the significant health impacts of hair relaxer use, all while targeting women of color and taking advantage of centuries of racial discrimination and cultural coercion which emphasized—both socially and professionally—the necessity of maintaining straight hair.

**ANSWER:** Avlon denies the allegations in Paragraph 6 directed to it. Avlon otherwise lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 6 directed to other Defendants and, therefore, denies those allegations.

7. Rather than disclosing the risks and warning women and children, Defendants exploited for profit this deep-rooted connection between hair and identity in how they chose to market their hair relaxer products. Defendants' advertising and marketing of their hair relaxer

3

products, and Defendants' failures to take reasonable and necessary steps to protect Plaintiffs from harm, (1) exposed Plaintiffs to brutally toxic products without warning; and (2) amplified institutionalized systems of discrimination that have minimized the cultural identity and heritage of women of African descent. Defendants advertised their hair relaxer products as, *inter alia*, "organic," "safe," "botanicals," "natural," and "ultra nourishing" in newspapers, magazines, and media predominantly consumed by Black and Brown women. The advertisements, commercials, and packaging for Defendants' hair relaxer products feature almost exclusively women of color with smooth hair texture.

**ANSWER:** Avlon admits that it advertised its hair relaxers products as "organic," "botanicals," "natural," and "ultra-nourishing" and advertised to Black and Brown women. Avlon denies the remaining allegations in Paragraph 7 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny any allegation in Paragraph 7 directed to any other defendant, and therefore, denies the same.

8.      Indeed, the Defendants purposely targeted children to increase sales and ensure generations of dedicated consumers—all while having knowledge that the hair relaxer products they designed, manufactured, advertised, and sold contained toxic carcinogens.

**ANSWER:** Avlon denies the allegations in Paragraph 8 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny any allegation in Paragraph 8 directed to any other Defendant, and therefore, denies those allegations.

9.      Consumers of hair relaxer products relied on Defendant's misrepresentations and were misled as to the products' safety, and as a result have suffered brutal injuries including uterine and ovarian cancer. Many Plaintiffs have also suffered the loss of being able to have children – a tremendous blow to their legacies.

**ANSWER:** Avlon denies the allegations in Paragraph 9 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny any allegation in Paragraph 9 directed to any other defendant, and therefore, denies the same.

**I.      PARTIES**

10.      This Master Complaint is filed on behalf of all Plaintiffs whose claims are subsumed within MDL 3060.  Plaintiffs in these individual actions have suffered personal injuries and death as a result of their use of Defendants various hair relaxer products.

4

**ANSWER:** Avlon admits this Master Complaint is filed on behalf of all alleged plaintiffs whose claims are subsumed within MDL 3060. Avlon denies that Plaintiffs have suffered personal injuries and death as a result of their use of Avlon's hair relaxer products. Avlon denies the remaining allegations in Paragraph 10 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny any allegation in Paragraph 10 directed to any other defendant, and therefore, denies the same.

11. Plaintiffs have suffered personal injuries as a direct and proximate result of Defendants' conduct and misconduct as described herein in connection with the design, development, manufacture, testing, packaging, promotion, advertising, marketing, distribution, labeling, warning, and sale of their respective hair relaxer products.

**ANSWER:** Avlon denies the allegations contained in paragraph directed to it. Avlon lacks sufficient knowledge and information to either admit or deny any allegation in Paragraph 11 directed to any other defendant, and therefore, denies the same.

12. Defendant L'Oréal USA, Inc. is a Delaware corporation with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 12 directed to it or any other defendant, and therefore, denies those allegations.

13. Defendant L'Oréal USA Products, Inc. is a Delaware corporation with its principal place of business and headquarters located at 10 Hudson Yards 347, 10th Avenue New York, New York 10001.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 13 directed to it or any other defendant, and therefore, denies those allegations.

14. Defendant SoftSheen-Carson, LLC is a limited liability company organized in the State of New York with its principal place of business and headquarters located at 80 State Street,

Albany, New York 12207. Plaintiffs allege that SoftSheen-Carson, LLC's sole member and interested party is L'Oréal S.A., which is a French corporation having its headquarters and principal place of business in France.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 14 directed to it or any other defendant, and therefore, denies those allegations.

15. Defendant Revlon, Inc. is a Delaware corporation, with its principal place of business and headquarters located at One New York Plaza in New York, New York 10004.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 15 directed to it or any other defendant, and therefore, denies those allegations.

16. Defendant Revlon Consumer Products Corporation is a Delaware corporation with its principal place of business at One New York Plaza in New York, New York 10004.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 16 directed to it or any other defendant, and therefore, denies those allegations.

17. Defendant Revlon Group Holdings LLC is a limited liability company organized in Delaware with its principal place of business in Wilmington, Delaware. Defendant Revlon Group Holdings, LLC is a recently formed company as the result of Revlon's recent emergence from Chapter 11 Bankruptcy and shall assume the actions and omissions as described herein for its predecessor(s) who went through the Chapter 11 Bankruptcy proceedings, and is owned in part by Glendon Capital Management, King Street Capital Management, Angelo Gordon & Co., Antara Capital, Nut Tree Capital Management, Oak Hill Advisors and Cyrus Capital Partners.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 17 directed to it or any other defendant, and therefore, denies those allegations.

18. Revlon, as a "Debtor," defined in ECF Doc 1860, Case No. 22-10760-dsj (Bankr. S.D.N.Y.) are named Defendants, both in its current and prior iteration to Revlon's Chapter 11 Bankruptcy for conduct related to both before and after the bankruptcy proceedings not assumed

6

by the new entity created as a result of the Chapter 11 Bankruptcy proceedings. These Revlon entities as well as the above mentioned Revlon entities are collectively referred to as "Revlon."[1]

  **ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 18 directed to it or any other defendant, and therefore, denies those allegations.

  19. Defendant Strength of Nature, LLC is a limited liability company organized in Georgia, with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

  **ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 19 directed to it or any other defendant, and therefore, denies those allegations.

  20. Defendant Dabur International Limited is a foreign entity incorporated in the Isle of Man with its principal place of business and headquarters located at 5 Independence Way, Princeton, New Jersey 08540.

  **ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 20 directed to it or any other defendant, and therefore, denies those allegations.

  21. Dabur International USA Ltd. is a wholly owned subsidiary of Dabur India, Ltd. and Dabur India Ltd.'s sole United States distributor, with its principal place of business and headquarters at 310 South Racine Avenue, Chicago, Illinois 60607.

  **ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 21 directed to it or any other defendant, and therefore, denies those allegations.

  22. Defendant Namaste Laboratories, LLC is a limited liability company organized in Illinois with its principal place of business located at 310 South Racine Avenue, Chicago, Illinois 60607. Plaintiffs allege that Namaste Laboratories, LLC's sole member and interested party is Dermoviva Skin Essentials, Inc.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 22 directed to it or any other defendant, and therefore, denies those allegations.

23. Dermoviva Skin Essentials, Inc., is a Delaware corporation having its headquarters and principal place of business at 310 South Racine Avenue, Chicago, Illinois 60607.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 23 directed to it or any other defendant, and therefore, denies those allegations.

24. Defendant AFAM Concept, Inc., d/b/a JF Labs Inc., is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, Illinois 60629-5837.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 24 directed to it or any other defendant, and therefore, denies those allegations.

25. Defendant Parfums de Coeur, Ltd. d/b/a PDC Brands is a Connecticut corporation with its principal place of business and headquarters located at 750 East Main Street, Suite 1000, Stamford, Connecticut 06901.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 25 directed to it or any other defendant, and therefore, denies those allegations.

26. Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Boulevard, Roswell, Georgia 30075. Plaintiffs allege that Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Georgia.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 26 directed to it or any other defendant, and therefore, denies those allegations.

27.     Defendant House of Cheatham, LLC, is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 27 directed to it or any other defendant, and therefore, denies those allegations.

28.     Defendant McBride Research Laboratories, Inc. is a Georgia corporation with its principal place of business and headquarters located at 2272 Park Central Boulevard in Decatur, Georgia 30035-3824.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 28 directed to it or any other defendant, and therefore, denies those allegations.

29.     Defendant Sally Beauty Holdings, Inc. d/b/a Silk Elements is a Delaware corporation with its principal place of business at 3001 Colorado Boulevard Denton, Texas 76210.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 29 directed to it or any other defendant, and therefore, denies those allegations.

30.     Defendant Luster Products, Inc. is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd St., Chicago, Illinois 60609.

**ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 30 directed to it or any other defendant, and therefore, denies those allegations.

## II.    JURISDICTION AND VENUE

31.    This Court has subject-matter jurisdiction over each of the constituent cases in this litigation for one or more of the following reasons:

    a.    Under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Plaintiffs and Defendants are residents of different states;

    b.    Under 28 U.S.C. § 1331 because they involve questions of federal law arising under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq*., and the amount in controversy exceeds $50,000. 15 U.S.C. § 2310. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state law claims because all claims alleged herein form part of the same case or controversy.

**ANSWER:**    Paragraph 31, including subparagraphs (a) and (b), is a legal conclusion to which no answer can be made.  To the extent that Paragraph 31, including subparagraphs (a) and (b), contains no legal conclusions, Avlon denies those allegations directed to it.  Avlon lacks sufficient knowledge and information as to the remaining allegations in Paragraph 31 against any other defendants, and therefore, denies the same.

32.    This Court has personal jurisdiction over the Defendants in accordance with the allegations asserted here and in each Plaintiff's Short Form Complaint.

**ANSWER:**    Paragraph 32 is a legal conclusion to which no answer can be made. To the extent that Paragraph 32 is not a legal conclusion, Avlon denies the allegations in Paragraph 32 directed to it. Avlon lacks sufficient knowledge and information as to the remaining allegations in Paragraph 32 against other defendants, and therefore, denies the same.

## III.    FACTS COMMON TO ALL COUNTS

### A. Market for Hair Relaxer Products

33.     Black people make up about 13 percent of the U.S. population, but by one estimate, Black spending accounts for as much as 22 percent of the $42 billion-a-year personal care products market, suggesting that Black people buy and use more of such products—including those with potentially harmful ingredients—than Americans as a whole.[2]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 33 and, therefore, denies those allegations.

34.     In an analysis of ingredients in 1,177 beauty and personal care products marketed to Black and Brown women, about one in twelve was ranked highly hazardous on the scoring system of EWG's Skin Deep® Cosmetics Database, an online resource for finding less-hazardous alternatives to personal care products. The worst-scoring products marketed to Black and Brown women were hair relaxers (along with hair colors and bleaching products). Each of these categories had an average product score indicating high potential hazard.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 34, and, therefore, denies those allegations.

35.     In the U.S. alone, Black and Brown consumers spend over $1 trillion each year, with a significant amount of that spending toward hair care products.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 35 and, therefore, denies those allegations.

36.     In 2020, the global black hair care market was estimated at $2.5 billion, with the hair relaxer market alone estimated at $718 million in 2021, with the expectation of growth to $854 million annually by 2028.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 36 and, therefore, denies those allegations.

37.     The Defendants, aware of the unique history of their target consumers, developed and have long deployed a marketing framework based on misrepresentations that exploit their consumers' social and economic need to maintain straight hair.

**ANSWER:** Avlon denies the allegations in Paragraph 37 directed to it. Avlon lacks sufficient knowledge and information as to the remaining allegations in Paragraph 37 against other defendants, and therefore, denies said allegations.

### 1) **History of Afro-Textured Hair and Hair Relaxers – The Framework for Defendants' Wrongful Marketing Practices**

38.     Dating back to 1619, Black and Brown women have been degraded based upon the texture of their hair and compelled to conform to the Eurocentric beauty standard that furthers the notion that "straight" hair is an indicator of social status, moral virtue, and professional competence. By contrast, hair texture of African heritage ("afro-textured hair") has been characterized as unattractive, unprofessional, and inferior.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 38 and, therefore, denies those allegations.

39.     In its natural state, afro-textured hair is characterized by coily, springing, zigzag, and s-curve curl patterns, as well as its density, fullness, texture, and feel.[4]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 39 and, therefore, denies those allegations.

40.     Certain African hairstyles can be traced back thousands of years, when they often indicated tribe membership and stature,[5] slave masters commonly forced enslaved Black and Brown people to cut their hair. This was a way to "break their spirit and make slaves easier to control."[6] What was once a symbol of pride and symbolism became a tool for subordination and degradation. Hair cutting was also a common form of punishment during slavery and during Jim Crow.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 40 and, therefore, denies those allegations.

41.     The very nature of slavery involved working long hours in dire conditions. "Hair that was once a source of pride and expression of identity was often tucked away beneath cloth to cover rough, tangled tresses and shield them from hours spent toiling under the sun."[7] The hair that was once an important spiritual and cultural symbol became framed and viewed as tangled, matted, and unseemly.

12

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 41 and, therefore, denies those allegations.

42. Because afro-textured hair reflected African heritage rather than European ancestry, afro-textured hair was considered a symbol of low social status.[8]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 42 and, therefore, denies those allegations.

43. In 1786, the Governor of Louisiana, Don Esteban Miro, passed the "Tignon Law" requiring women of African descent to wear a tignon (scarf) over their hair as a way of signifying they were members of the slave class, *even if they were free.* This law sent a direct signal to Black and Brown people that their hair held a symbol of inequality and was a sign of poverty regardless of their actual social status.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 43 and, therefore, denies those allegations.

44. Texturism—the idea that "good hair" is equated with a straighter hair texture—was cemented into American culture during slavery. "Eurocentric beauty standards dictated that coily hair and dark skin were unattractive and inferior"; "lighter skinned and straighter haired slaves were favored and selected for more desirable positions in the house" as opposed to the fields.[9] Thus, "the texture of an enslaved person's hair could determine their value and working conditions, which in turn might impact their overall health, comfort and chances for freedom[.]"[10] Early American culture impressed on Black and Brown men and women that the straighter and less kinky their hair was, the better a life they could have. This stigma fueled the desire for tools and products that could straighten Black and Brown hair texture.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 44 and, therefore, denies those allegations.

45. In slavery and post-slavery America, Black and Brown women found a need to morph their hairstyles "from the elaborate and symbolic designs of Africa into an imitation of White styles adapted to Black and Brown kinks and curls."

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 45 and, therefore, denies those allegations.

46.     In an effort to obtain a better life, many enslaved people, and later their progeny, would go to "dangerous lengths to straighten their hair."[12]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 46 and, therefore, denies those allegations.

47.     Afro-textured hair can be manipulated into a straightened state with the use of hair tools and non-chemical hair products. Prior to the invention of the chemical relaxer in 1900s individuals would "press" afro-textured hair with metal hair tools such as the "hot comb." Pressing combs or hot combs are metal hair tools that are first heated in a stove or ceramic heater, then pressed into hair strands to temporarily straighten them.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 47 and, therefore, denies those allegations.

2)     **The Invention of the Chemical Relaxer**

48.     Black inventor Garrett Augustus Morgan discovered and created a system that would permanently straighten afro-textured hair, eliminating the issue of "shrinkage," where the curl pattern results in hair appearing to be shorter than it actually is.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 48 and, therefore, denies those allegations.

49.     In addition to being an inventor, Morgan was a tailor. In the early 1900s, Morgan was repairing his sewing machines and creating a way to polish the needles to stitch fabrics more smoothly.[14] He applied a chemical solution to the needles and wiped the solution off with a rag and later noticed that the "curly" fibers in the rag were straightened after exposure to the chemical.[15]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 49 and, therefore, denies those allegations.

50.     Morgan turned his formula into a gel-hair product, creating the G.A. Morgan Hair Refining Cream that was marketed in 1913.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 50 and, therefore, denies those allegations.

14





51.     Morgan's invention paved the way for the alkaline relaxer and later development of additional chemical-based permanent hair relaxing products in the Black and Brown hair care market, also known as hair relaxers.[16]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 51 and, therefore, denies those allegations.

52.     Over the next 40-plus years, these products dominated the market for relaxing afro-textured hair until the emergence of new technology involving lye-based formulas.

15

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 52 and, therefore, denies those allegations.

### 3) **Defendants' Marketing Efforts**[17]

53. In 1971, Dark and Lovely manufactured the first lye relaxer. The formula consisted of sodium hydroxide, water, petroleum jelly, mineral oils, and emulsifiers.[18]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 53 and, therefore, denies those allegations.

54. In the 1970s, lye relaxer users and manufacturers noticed that the lye formula stripped proteins from the hair strand, resulting in the hair thinning and breaking.[19]As a result, Johnson and Johnson marketed the first "gentle" hair relaxer, Gentle Treatment, in 1981, which used chemicals such as potassium hydroxide and lithium hydroxide.[20]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 54 and, therefore, denies those allegations.



55. For decades and to present, Defendants designed, manufactured, and marketed their hair relaxer products to Black and Brown customers across the United States, and the world,

relying on the same historical Eurocentric standards of beauty. Defendants' marketing scheme heavily leverages branding and slogans that reinforce straight hair as the standard of beauty and professionalism.[21] The Defendants marketed their hair relaxer products without ever disclosing known health risks of the toxic chemicals contained in these products or taking other reasonable steps to ensure their products would not harm consumers.

**ANSWER:**    Avlon denies the allegations in Paragraph 55 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 55 as it relates to other Defendants and, therefore, denies those allegations.

 

56.    For example, in the first ad above, L'Oréal touts "how beautiful Black hair *can be*" (emphasis added), implying that in its natural state Black hair is *not* as beautiful as it *could be* if straightened.

**ANSWER**:    Paragraph 56 is a factual conclusion to which no response can be made.

To the extent that Paragraph 56 is not a factual conclusion, Avlon denies the allegations directed

towards in it Paragraph 56. Avlon lacks sufficient knowledge and information to either admit or

deny the remaining allegations in Paragraph 56 and, therefore, denies those allegations.

57.     Defendants have advertised their hair relaxer products to Black and Brown customers as a way to exploit these anti-Black standards of beauty as early as the 1970s. For example:

a.  Johnson Products Company (later acquired by Defendant L'Oréal) advertised its Ultra Sheen hair relaxer products as early as the 1960s:



b.  Defendants L'Oréal and SoftSheen have produced advertisements for their hair relaxer products as early as the 1970s:





c. Defendant Godrej has advertised its hair relaxer products since the 1990s:



d. Defendant Revlon has advertised its hair relaxer products for decades:





e. Defendant Strength of Nature has also advertised many of its hair relaxer brands as early as the 1970s:







f. Defendant Luster Products Co. has marketed and advertised its products since the 1950s:





24



g.   Defendant Avlon Affirm has been marketing its Hair Relaxer Products since as early
     as the 1980s.



**ANSWER:** Avlon admits the allegations in sub-paragraph (g) that it has been marketing its Hair Relaxing Products as early as the 1980's but denies the remaining allegations in Paragraph 57(g) and denies any remaining allegations in Paragraph 57, including sub-paragraphs (a) through (f) directed to it. As to the remaining allegations, Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 57, sub-paragraphs (a) – (f) directed to other Defendants, and therefore, denies the same.

58. The Defendants all marketed their hair relaxer products without ever disclosing known health risks of the toxic design and chemicals contained in these products.

**ANSWER:** Avlon denies the allegations in Paragraph 58 directed towards it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 58 as they relate to other Defendants, and therefore, denies the same.

59. In addition to Defendants' wrongful omissions above, the Defendants also made several affirmative misrepresentations and additional significant material omissions in conjunction with the sale of their products:

a. *Marketing Toxic Products to Children*: Beginning in 1990, Godrej developed and began marketing "Just For Me," the first Hair Relaxer Product targeted towards young Black and Brown girls. Just for Me entered the market with a catchy commercial.[22] On the product packaging, Godrej lauded the product as safer by claiming that it was a no-lye formula designed to be "gentle" for children's sensitive scalps while Defendants knew that the Just for Me product contained more chemicals than, and was equally or more toxic than, some adult brands of hair relaxers.



b. Defendants misrepresented that "no lye" relaxers or "gentle treatment" relaxers were milder and/or safer than alternative relaxers. This was false. Hair relaxer products marketed as using "gentle treatment" or similar terminology are not any safer than the other hair relaxer products on the market.

c. Defendant Strength of Nature's (Godrej) products, such as Soft & Beautiful are intentionally labeled as "Botanicals" and with "Natural" ingredients that are "Ultra Nourishing," including but not limited to using "Natural Plant Oils and Butters." These representations are intended to suggest to consumers that these "Natural" hair relaxer products are safer or less toxic than alternatives, but that is false. For example:



d. Defendant Strength of Nature's Beautiful Textures hair relaxer product is marketed as being able to "go from curly to straight and back again with using [h]arsh [c]hemicals." Defendant Strength of Nature affirmatively represented that there were no "harsh chemicals" in its Beautiful Textures hair relaxer product. That was false.



e. On the packaging of their Motions hair relaxer products, Defendants Strength of Nature and Godrej on claim the product is "specifically created with Silk Extracts, Coconut oil and Shea butter" and that it will make hair "more vibrant, healthy-looking and silky than before the relaxing process." The packaging also boasts of

28

offering "85% less breakage and 80% more shine after just one use." These statements falsely imply, and lead a user to believe, that Defendants Strength of Nature and Godrej's product is both safe and "natural" when it is not.



f.   Defendants Namaste and Dabur's hair relaxer products are marketed as "Olive Oil" products to imply that they use natural ingredients and lack toxic chemicals, which is false. These Defendants' products are also advertised as having "Built in Protection," implying they can be used safely. This is also false.

g.   Defendants Namaste and Dabur's website states that their hair relaxer products use "Rich Olive and Avocado Oils" that they claim "moisturize and condition" and that they include "Aloe Vera to help **protect the skin and scalp**." While representing that aloe vera helps "protect the skin and scalp" of children, the Defendants chose to omit that the other selected chemicals significantly increase the risk of ovarian and uterine cancer.



h. Defendants Namaste and Dabur's hair relaxer products claim that they "use[] the latest technology to **safely** elongate tight coils." That is false—these products do not safely relax hair.

i. Defendant L'Oréal's and SoftSheen's Dark & Lovely brand hair relaxer products are intentionally labeled as providing a "healthy" gloss and containing "nourishing" shea butter with jojoba and avocado oils. The terms "healthy" and "nourishing" suggest that hair relaxer products are safe and even beneficial for the body when they are not.



j. Defendant L'Oréal's Dark & Lovely products are also intentionally labeled as being "Triple Nourished" and as products that "help[] preserve signs of healthy hair" with ingredients including but not limited to "Jojoba & Avocado Oil" and

30

"Shea Butter." The terms "healthy" and "nourishing" suggest that these hair relaxer products are safe and even beneficial for the body when they are not.





k.  Defendant L'Oréal and Softsheen-Carson's Beautiful Beginnings hair relaxer product line, which is targeted to young Black girls, states that it "moisturizes, nourishes, and prevents breakage…**without hurting your scalp.**" These representations suggest that their hair relaxer products are safe and even beneficial for children's bodies when they are not.





l.   Defendant Strength of Nature (Godrej) intentionally markets its hair relaxer
     products for kids as containing a "natural hair milk," and including ingredients
     such as "coconut milk, shea butter, vitamin e, and sunflower oil." The hair relaxer
     products also boast that they contain "No-Lye Relaxer" around an image of a green
     leaf. Emphasizing these natural ingredients, and including the green leaf
     surrounded by ingredients the products do not contain, implies that these products
     primarily use natural ingredients, lack toxic chemicals, and are safe, which is all
     false.



m. Defendant Strength of Nature (Godrej)'s hair relaxer products sold under the Dr. Miracle's brand are advertised as "Strong + Healthy." This false representation suggests that the products are safe—and even beneficial—for the body when they are not.

n. Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. and House of Cheatham, LLC markets its Africa's Best hair relaxer product as containing "nourishing African botanicals and Herbal Extracts." These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.



o. Defendant McBride Research Laboratories, Inc. markets its Design Essentials hair relaxer products as leaving hair "healthy" and promotes its products as using natural ingredients such as milk, honey, nectar, olive oil, and shea butter. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

33

p.   Defendant Sally Beauty Holdings, Inc. d/b/a Silk Elements markets its Silk Elements hair relaxer products as using natural ingredients such as olive oil and shea butter. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

q.   Defendant Luster Products Co. markets its Pink Conditioning No-Lye Relaxer and Smooth Touch No-Lye Relaxer products as using "nourishing ingredients" including shea butter, argan oil, Vitamin E, and olive oil which they claim provide "added protection" for the user.  These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

**ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny

the allegations contained in sub-paragraphs (a) through (q) of Paragraph 59 and, therefore, denies

the same.

60.    Defendants' marketing efforts, all have a common theme, they are filled with representations and insinuations that their hair relaxing products are safe and beneficial to the user. The use of words such as organic, natural, nourishing, added protection or healthy in their marketing can lead a consumer to believing these hair relaxer products are safe when in fact they are not.

**ANSWER:**    Avlon denies the allegations in Paragraph 60 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 60 directed to other Defendants, and therefore, denies the same.

61.    Defendants made these affirmative statements and/or omissions all while knowing or should have known of the true danger of their hair relaxer products when used by a plaintiff.

**ANSWER:**    Avlon denies the allegations in Paragraph 61 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 61 directed to other Defendants, and therefore, denies the same.

62.    Despite having or should of having this knowledge, Defendants continued their marketing efforts without ever attempting to correct the misconceptions they were creating.

**ANSWER:** Avlon denies the allegations in Paragraph 62 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 62 directed to other Defendants, and therefore, denies the same.

### 4) Chemical Relaxer Use: From Adolescence into Adulthood

63. Hair relaxers are applied to the base of the hair shaft and left in place for a cooking interval, during which the relaxer alters the hair's texture by purposefully damaging the hair's natural protein structure. The effect of this protein damage is to straighten and smooth the hair. After a period of weeks or months, depending on the hair's natural growth rate, the treated portion of the hair grows away from the scalp as new growth sprouts from the roots. Maintaining the relaxed hairstyle requires on-going application of hair relaxer to the new growth, a process colloquially referred to in the community as "re-touches," resulting in users relaxing their new growth every four to eight weeks on average.

**ANSWER:** Avlon admits that Paragraph 63 generally describes the hair relaxing process but denies any remaining allegations in Paragraph 63 directed to it. Further answering, Avlon denies that it is liable to the Plaintiffs in any fashion. Avlon lacks sufficient knowledge and information to admit or deny the remaining allegations in Paragraph 63 directed to other Defendants, and therefore, denies the same.

64. Hair relaxing is highly prevalent among Black and Brown women. In some studies, up to 90% of Black women have used hair relaxers and straighteners, which is more commonplace for these women than women of any other race.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 64, and therefore, denies the same.

65. The reasons for Black women's use and dependence upon hair straightening products are multi-faceted.[23] There are superficial reasons such as maintenance and personal choice. Yet, in addition to aesthetic aspirations, based upon the historical framework set forth above, maintaining straight hair was and is a means of integrating. The failure to maintain an appearance with straightened hair has and does impact the lives of Black women in education, socially, and in the professional sphere.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny

35

the remaining allegations in Paragraph 65, and therefore, denies the same.

66.     For example, Black and Brown girls and women are often victims of hair discrimination. According to the Dove CROWN[24] Research Study for Girls (2021)[25] conducted by JOY Collective, two-thirds (66%) of Black and Brown girls in White-majority schools who were surveyed reported that they have experiencing hair discrimination. 45% of Black and Brown girls in all school environments reported hair discrimination. Nearly half (47%) of the Black mothers surveyed report experiencing hair discrimination.

**ANSWER:**     Paragraph 66 contains conclusions of law and fact to which no answer can

be given. To the extent that Paragraph 66 contains no conclusions of law and fact, Avlon denies

the allegations in Paragraph 66 against it. Avlon lacks sufficient knowledge and information to

either admit or deny the remaining allegations in Paragraph 66 directed to other Defendants, and

therefore, denies the same.

67.     Moreover, hair discrimination is not only pervasive, but it also often starts at an early age for young black girls:

   a.  100% of Black elementary school girls in majority-White schools who report
       experiencing hair discrimination state they experience the discrimination by the
       age of 10.[26]
   b.  86% of Black teens who experience discrimination state they have experienced
       discrimination based on their hair by the age of 12.[27]

**ANSWER:**     Paragraph 67 contains conclusions of law and fact to which no answer can

be given. To the extent that Paragraph 67 contains no conclusions of law and fact, Avlon denies

the allegations in Paragraph 67, including sub-paragraphs (a) and (b) directed against it. Avlon

lacks sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 67 directed to other Defendants, and therefore, denies the same.

68.     In adulthood, hair discrimination impacts Black women's economic security. In the professional world, Black women with natural and unstraightened hair are "often deemed unkempt and unemployable."[28] Black women are one and a half times more likely to be sent home from the workplace because of their hair.[29] Black women are 89% more likely than White women to agree with the statement, "I have to change my hair from its natural state to fit in at the office."[30] Many

Black women succumb to these professional pressures and are compelled to use hair relaxers to both straighten and maintain their straight hair with routine re-touches.

**ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny

the remaining allegations in Paragraph 68, and therefore, denies the same.

69.    The Defendants were acutely aware of, and marketed to, the stereotypes and history concerning natural Black and Brown hair.

**ANSWER:**    Avlon denies the allegations in paragraph 69 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 69 directed to other Defendants, and therefore, denies the same.

**5)    Defendants' Hair Relaxer Products Contain Harmful, Toxic, and Carcinogenic Ingredients**

70.    Defendants were aware or should have been aware of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the hair relaxer products based on the evolving scientific studies, on-going research, and various government standards and regulations.

**ANSWER:**    Avlon denies the allegations in paragraph 70 directed against it. Avlon

lacks sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 70 directed to other Defendants, and therefore, denies the same.

71.    This is due to the harmful, toxic, and carcinogenic ingredients in their hair relaxer products that are known to disrupt and/or harm a woman's endocrine system.  Such harmful, toxic and carcinogenic ingredients have included over time, but are not limited to, phthalates, parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, formaldehyde, and other toxic chemicals.

**ANSWER**:    Avlon denies the allegations in Paragraph 71 directed at it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 71 directed to other Defendants, and therefore, denies the same.

72.    The endocrine system is indispensable for life and influences nearly every cell, organ, and process within the body.[31] The endocrine system regulates all biological processes in the body from conception through adulthood, including the development of the brain and nervous

37

system, the growth and function of the reproductive system, as well as the metabolism and blood sugar levels.[32]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 72 and, therefore, denies the same.

73. The precise functioning of the endocrine system is vital to maintaining hormonal homeostasis, the body's natural hormonal production and degradation. A slight variation in hormone levels can lead to significant adverse-health effects, including reproductive impairment and infertility, cancer, cognitive deficits, immune disorders, and metabolic syndrome.[33]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 73 and, therefore, denies the same.

74. Endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 74 and, therefore, denies the same.

75. EDCs can block hormone stimulus by inducing epigenetic changes, (modifications to DNA that regulate whether genes are turned on or off) or altering the structure of target cells' receptors.[34]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 75 and, therefore, denies the same.

76. Natural and synthetic EDCs are present in some of Defendants' hair relaxer products under the guise of "fragrance" and "perfumes", and thus enter the body when these products are applied to the hair and scalp.

**ANSWER**: Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 76 and, therefore, denies the same.

77. One of the EDCs, Phthalates are known to interfere with natural hormone production and degradation and are harmful to human health.[35]

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 77 and, therefore, denies the same.

78.     They were developed in the last century and are used to make plastics more durable. These colorless, odorless, oily liquids are also referred to as "plasticizers" based on their most common uses.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 78 and, therefore, denies the same.

79.     Chronic exposure to phthalates will adversely influence the endocrine system and functioning of multiple organs. Several countries have established restrictions and regulations on some types of phthalates. [36]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 79 and, therefore, denies the same.

80.     Under the authority of the Fair Packaging and Labeling Act ("FPLA"), the FDA requires an ingredient declaration on cosmetic products sold at the retail level to consumers.

**ANSWER:**     Avlon generally admits under the Fair Packaging and Labeling Act

("FPLA"), the FDA requires an ingredient declaration on cosmetic products sold at the retail

level to consumers. Avlon denies that it violated the FPLA with its hair relaxers.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 80

directed to the other Defendants, and therefore, denies the same.

81.     However, the regulations do not require the listing of the individual fragrance or flavor, or their specific ingredients, meaning phthalates and other EDCs evade listing when combined with a fragrance. As a result, consumers are not able to determine from the ingredient declaration on the label if phthalates or other toxic chemicals are present in a fragrance used in the hair relaxer products used by the Plaintiffs and placed into the stream of commerce by Defendants.

**ANSWER:**     Avlon admits "that the regulations do not require the listing of the

individual fragrance or flavor, or their specific ingredients." Avlon lacks sufficient knowledge

and information as to the remaining allegations in Paragraph 81, and therefore, denies the same.

**B.     Scientific Studies Confirm – Hair Relaxer Products Cause Uterine and Ovarian Cancer**

1)     **Uterine Cancer**

39

82.     Though death rates from other cancers in women have declined in recent years, death rates for uterine cancer have increased by more than 100% in the last 20 years.[37]

**ANSWER:**     Avlon lacks sufficient knowledge and information as to the remaining allegations in Paragraph 82, and therefore, denies the same.

83.     Uterine cancer is the fourth most common cancer for women in the United States, and the most commonly diagnosed gynecological cancer.[38] An estimated 66,570 new cases of uterine cancer are diagnosed each year, and around 12,940 women will die every year from the condition.[39]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 83, and therefore, denies the same.

84.     Uterine cancer has a hormonally driven etiology, and an imbalance of estrogen and progesterone can lead to the development of uterine cancers.[40]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 84, and therefore denies the same.

85.     In October 2022, the National Institutes of Health released a study of approximately 34,000 women, aged 35-74, and which was conducted over approximately 11 years.[41]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 85, and therefore denies the same.

86.     The study revealed that there were significantly higher rates of uterine cancer in women who had used hair relaxers.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 86, and therefore, denies the same.

87.     Specifically, the study found that an estimated 1.64% of women who never used chemical hair relaxers would go on to develop uterine cancer by the age of 70. However, frequent users of hair relaxers were nearly three 3 more likely to develop uterine cancer than women who never used hair relaxers.[42]

**ANSWER**:     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 87, and therefore, denies the same.

88.     The study found that women who had ever used hair relaxers had an approximately doubled risk of developing uterine cancers as compared to women who did not use hair relaxers.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 88, and therefore, denies the same.

2)     **Ovarian Cancer**

89.     In a 2021 study funded by NIH and the National Institute on Minority Health Sciences, frequent use of hair relaxers was strongly associated with ovarian cancer.[43]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 89, and therefore, denies the same.

90.     In fact, the study revealed that those who frequently (four or more times per year) used hair relaxers were more than twice as likely to develop ovarian cancer.[44]

**ANSWER:**      Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 90, and therefore, denies the same.

91.     It is estimated that 19,880 women in the United States will be diagnosed with ovarian cancer in 2022, with an estimated 12,810 of those diagnoses resulting in death.[45]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 91, and therefore denies the same.

92.     Like uterine cancer, ovarian cancer is also believed to have a hormonally driven etiology, meaning that the insertion of hormonal disrupting compounds and the subsequent disruption of a woman's hormonal balance could lead to ovarian cancer.[46]

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 92, and therefore denies the same.

93.     Products that are used to relax hair texture have been found to contain an array of endocrine disrupting compounds including, but not limited to, phthalates, parabens, cyclosiloxanes, and metals, in addition to formaldehyde.[47] These chemicals can alter the body's

41

delicate hormonal balance, and cause spikes or drops in levels of estrogens and progesterones (as well as other hormones).

> **ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 93, and therefore, denies the same.

94.    Recent studies have found an association between personal hair care products, including products that contain endocrine disrupting compounds, and ovarian cancer.[48]

> **ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 94, and therefore, denies the same.

95.    Widely used chemical hair products, such as hair relaxers, are a source of exposure to carcinogens and these endocrine disrupters alike.[49]

> **ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 95, and therefore, denies the same.

96.    Other studies have found a positive correlation between the use of hair relaxers and incidents of ovarian cancer. Self-reported frequent use of hair relaxers has been associated with a higher risk of ovarian cancer.[50] Black and Brown women, the overwhelming majority of consumers of hair relaxer products, are more susceptible to the risk of ovarian cancer associated with the use and distribution of Defendants' products.

> **ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 96, and therefore, denies the same.

C.    **Regulatory Framework**

97.    The law does not require cosmetic products or ingredients, other than color additives, to have FDA approval before they go to market. But there are laws and regulations that apply to cosmetics placed into the market. The two most important laws pertaining to cosmetics marketed in the United States are the Federal Food Drug and Cosmetic Act[51] ("FD&C Act") and the Fair Packaging and Labeling Act[52] ("FPLA").

> **ANSWER:**    Avlon admits the law does not require cosmetic products or ingredients, other than color additives to have FDA approval before they go to market, but states that the remainder of Paragraph 97 contains conclusions of law and fact to which no answer can be given.

To the extent that Paragraph 97 contains no conclusions of law and/or fact, Avlon denies all remaining allegations in Paragraph 97.

98.     The FD&C Act expressly prohibits the marketing of "adulterated" or "misbranded" cosmetics in interstate commerce.[53]

**ANSWER**:     Avlon admits that Plaintiffs have accurately cited 21 U.S.C. § 331(b). allegations in Paragraph 98. Avlon denies that it has marketed "adulterated" or "misbranded" products. Avlon denies the remaining allegations in Paragraph 98 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 98 directed to the other Defendants, and therefore, denies the same.

99.     Adulteration refers to a violation involving product composition whether it results from ingredients, contaminants, processing, packaging shipping or handling.[54]

**ANSWER:**     Avlon admits that Plaintiffs have accurately cited the FD&C Act in Paragraph 99. Further answering, Avlon denies that it has violated any laws or is liable to the Plaintiffs and denies any remaining allegations in Paragraph 99 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 99 as they relate to other Defendants, and therefore, denies the same.

100.     Under the FD&C Act, a cosmetic is adulterated if, *inter alia*: (1) it bears or contains any poisonous or deleterious substance causing injury to the product user, or (2) if its container is composed in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health.[55]

**ANSWER:**     Avlon admits that Plaintiffs have accurately cited 21 U.S.C. § 361(a) in Paragraph 100. Avlon denies that its products are or were ever "adulterated" during all relevant times or that it violated 21 U.S.C. § 361(a).  Avlon denies any remaining allegations in Paragraph 100 directed to it.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 100 directed to other Defendants, and therefore, denies the same.

101.    Misbranding refers to violations involving improperly labeled or deceptively packaged products.[56]

**ANSWER:**    Avlon admits that Plaintiffs have accurately cited the FD&C Act in

Paragraph 101.  Avlon denies that it has violated any laws and denies any liability to the

Plaintiffs. Avlon denies any remaining allegations in Paragraph 101 directed to it.  Avlon lacks

sufficient knowledge or information to either admit or deny the allegations in Paragraph 101

directed to other Defendants, and therefore, denies the same.


102.    Under the FD&C Act, a cosmetic is misbranded if: (1) labeling is false or misleading, (2) the label does not include all required information, (3) required information is not prominent and conspicuous, or (4) the packaging and labeling is in violation of an applicable regulation issued pursuant to section 3 and 4 of the Poison Prevention Packaging Act of 1970.[57]

**ANSWER:**    Avlon admits that Plaintiffs have accurately cited 21 U.S.C. § 362.

allegations in paragraph 102. Avlon denies that its products are or were ever "misbranded" during

all relevant times, that it violated any laws or regulations, and denies any remaining allegations in

Paragraph 102 directed to it. Avlon lacks sufficient knowledge or information to either admit or

deny the allegations in Paragraph 102 directed to other Defendants, and therefore, denies the

same.

103.    Under federal law, cosmetic manufacturers are not required to submit their safety data to the FDA. However, it is against the law to put an ingredient in a cosmetic that makes the cosmetic harmful when used as intended.[58] An example of such an ingredient is methylene chloride because it causes cancer in animals and is likely harmful to humans.[59]

**ANSWER:**    Avlon lacks sufficient knowledge and information to admit or deny the

allegations in paragraph 103, and therefore, denies the same.

104.    Companies and individuals who manufacture and/or market cosmetics have a legal responsibility and duty to ensure the safety of their own products.

**ANSWER:**    Avlon admits to only those duties required by law and states that Paragraph

44

104 fails to properly describe any duty owed by Avlon and denies any remaining allegations in Paragraph 104 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 104 directed to other Defendants, and therefore, denies the same.

105.    The FDA has consistently advised cosmetics manufacturers to use whatever testing is necessary to ensure the safety of products and ingredients, which may be substantiated through:

> a.    reliance on already available toxicological test data on individual ingredients and on product formulations that are similar in composition to the particular cosmetic, and (b) performance of any additional toxicological and other tests that are appropriate in light of such existing data and information.[60]

**ANSWER:**    Paragraph 105 is a recitation of the advisements regarding the term, "adequately substantiated for safety" in 21 CFR § 740.10 to which no response could be given. To the extent that a response is required, Avlon denies that it violated 21 CFR § 740.10. Avlon denies all remaining allegations in Paragraph 105. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 105 directed to other Defendants, and therefore, denies the same.

106.    Except for color additives and ingredients prohibited or restricted by regulation, a manufacturer may use any ingredient in the formulation of a cosmetic, provided that:

> a.    (1) the ingredient and the finished cosmetic are safe under labeled or customary conditions of use, (2) the product is properly labeled, and (3) the use of the ingredient does not otherwise cause the cosmetic to be adulterated or misbranded under the laws the FDA enforces.[61]

**ANSWER:**    Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 106, and therefore, denies the same.

107.    With respect to whether the product is properly labeled, 21 CFR § 740.1 defines the establishment of warning statements related to cosmetic products. § 740.1 states, "The label of a cosmetic product ***shall*** bear a warning statement whenever necessary or appropriate to prevent a health hazard that ***may*** be associated with the product." (emphasis added). This warning directive

directly correlates with the broad authority and responsibility of manufacturers over their own cosmetic products to ensure that products are safe under labeled or customary conditions of use, properly labeled, and not adulterated or misbranded under FDA laws.

**ANSWER:**    Avlon admits the language of 21 CFR § 740.1 in Paragraph 107 is

correctly cited. Avlon lacks sufficient knowledge and information to either admit or deny the

remaining allegations in Paragraph 107, and therefore denies the same.

108.    When a manufacturer is unable to adequately substantiate the safety of their product before marketing, the product is considered to be misbranded if the principal display panel does not include the required, "conspicuous statement" from 21 CFR § 740.10: "*Warning* – The safety of this product has not been determined."

**ANSWER:**    Avlon admits the language of 21 CFR § 740.10 in Paragraph 108 is

correctly cited.  Avlon denies that it has violated 21 CFR § 740.10 and denies any remaining

allegations in Paragraph 108 directed to it.  Avlon lacks sufficient knowledge and information to either

admit or deny the remaining allegations in Paragraph 108 directed to other Defendants, and therefore,

denies the same.

109.    In short, under the current regulatory framework the Defendants were and are required to assess the safety of their hair relaxer products and warn consumers of any and all health hazards.

**ANSWER**:    Avlon admits to only those duties required by and denies that Paragraph

109 contains an accurate description of any duty required of Avlon. Avlon denies the remaining

allegations in Paragraph 109 directed to it.  Avlon lacks sufficient knowledge and information to either

admit or deny the remaining allegations in Paragraph 108 directed to other Defendants, and therefore,

denies the same.

110.    Having this duty, Defendants failed to:

a.    Disclose the high risk of unreasonable, dangerous adverse side effects of their hair relaxer products when used as intended; and/or
b.    Disclose that the hair relaxer products contained potential or known toxic chemicals and carcinogens; and/or

46

    c.  Disclose they had not properly tested the safety of their hair relaxer products; and/or

    d.  Disclose that they did not research the safety of their hair relaxer products.

   **<u>ANSWER:</u>**  Avlon denies the allegations in paragraph 110, including sub-paragraphs (a) through (d) directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 110 directed to other Defendants, and therefore, denies the same.

   111.  Defendants had the capacity to design hair relaxer products that were safer than the hair relaxer products they sold to Plaintiffs and that caused Plaintiffs' injuries alleged herein.

   **<u>ANSWER:</u>**  Avlon denies the allegations in paragraph 111 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 111 directed to other Defendants, and therefore, denies the same.

   112.  It was economically possible for Defendants to manufacture hair relaxer products that were safer than the hair relaxer products they sold to Plaintiffs, and that caused Plaintiffs' injuries alleged herein.

   **<u>ANSWER</u>**:  Avlon denies the allegations in paragraph 112 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 112 directed to other Defendants, and therefore, denies the same.

   113.  The alternative hair relaxer product designs that Defendants could have utilized would not have changed the intended purpose of the hair relaxer products—to straighten otherwise curly and/or kinky hair.

   **<u>ANSWER</u>**:  Avlon denies the allegations in paragraph 113 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 113 directed to other Defendants, and therefore, denies the same.

   114.  Such alternative safer designs include, but are not limited to:

    a.  Replacing toxic chemicals with readily available natural ingredients;
    b.  Oil treatments (such as olive, coconut, and/or avocado oils);
    c.  Hot combs and other methods of heat styling; and
    d.  Blow drying.

**ANSWER**:    Paragraph 114, including sub-paragraphs (a) through (d), contain

conclusions of law and fact to which no answer can be given. To the extent Paragraph 114

contains no conclusions of law and fact, Avlon denies all remaining allegations in Paragraph 114,

including sub-paragraphs (a) through (d) directed to it. Avlon lacks sufficient knowledge and

information to either admit or deny the remaining allegations in Paragraph 114 directed to other

Defendants, and therefore, denies the same.

## CAUSES OF ACTION

### First Cause of Action
### Negligence and/or Gross Negligence

115.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth
herein and further allege as follows.

**ANSWER:**    Avlon incorporates by reference its answers to paragraphs 1 through 114 as

if fully set forth herein.

116.    At all relevant times, Defendants had a duty to exercise reasonable care in the
manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing,
labeling, packaging, selling, and distributing of their hair relaxer products.

**ANSWER:**    Avlon admits to only those duties required by law and denies that such

duties are accurately described in Paragraph 116.  Avlon denies the remaining allegations in

Paragraph 116 directed to it. Avlon lacks sufficient knowledge and information to either admit or

deny the remaining allegations in Paragraph 116 directed to other Defendants, and therefore,

denies the same.


117.    Defendants' duty to exercise reasonable care in the advertising and sale of their hair
relaxer products included a duty to warn Plaintiffs and other consumers of the risks and dangers
associated with their hair relaxer products that were known or should have been known to
Defendants at the time of the sale of their hair relaxer products to the Plaintiffs.

**ANSWER:** Avlon admits to only those duties required by law and denies that such duties are accurately described in Paragraph 117. Avlon denies the remaining allegations in Paragraph 117 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 117 directed to other Defendants, and therefore, denies the same.

118. Defendants also owed a continuing duty to Plaintiffs to remove, recall, or retrofit the unsafe and/or defective hair relaxer products across the United States and Territories (including in each Plaintiff's state or territory). At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that phthalates and other EDCs in their hair relaxer products significantly increase the risk of cancers and other negative health conditions.

**ANSWER:** Avlon admits to only those duties required by law and denies that such duties are accurately described in Paragraph 118. Avlon denies the remaining allegations in Paragraph 118 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 118 directed to other Defendants, and therefore, denies the same.

119. At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs would not realize the potential risks and dangers of their hair relaxer products.

**ANSWER:** Avlon denies the allegations in paragraph 119 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 119 directed to other Defendants, and therefore, denies the same.

120. Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing of their hair relaxer products negligently, recklessly, and/or with extreme carelessness and by failing to adequately warn of the risks and dangers of their hair relaxer products as described in the allegations above. Such breaches include but are not limited to:

49

a.     Failing to warn Plaintiffs and other consumers of the risks and dangers associated with the use of their hair relaxer products;

b.     Failing to properly test their hair relaxer products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their hair relaxer products for consumer use;

c.     Failing to properly test their hair relaxer products to determine the increased risk of harm to the endocrine system including, uterine, ovarian, and/or endometrial cancers during the normal and/or intended use of their hair relaxer products;

d.     Designing their hair relaxer products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e.     Failing to inform Plaintiffs and other consumers as to the safe and proper methods of handling and using their hair relaxer products;

f.     Failing to remove or recall their hair relaxer products from the market when Defendants knew or should have known their hair relaxer products were defective and/or dangerous;

g.     Failing to instruct the Plaintiffs and other consumers as to the methods for reducing the type of exposure to their hair relaxer products which caused increased risk of cancer, including, but not limited to, uterine, ovarian, and/or endometrial cancer;

h.     Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known their hair relaxer products were defective and/or dangerous;

i.     Claiming in labeling and marketing that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j.     Failing to act like a reasonably prudent company under similar circumstances. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

**ANSWER:**     Avlon denies the allegations contained in Paragraph 120, including sub-

paragraphs (a) through (j) directed to it. Avlon lacks sufficient knowledge and information to

50

either admit or deny the remaining allegations in Paragraph 120 directed to other Defendants, and

therefore, denies the same.

121.     Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injuries as a result of Defendants' failure to exercise ordinary care as described above.

**ANSWER:**     Avlon denies the allegations in Paragraph 121 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 121 directed to other Defendants, and therefore, denies the same.

122.     Due to Defendants failure to exercise ordinary care or comply with their duties of selling cosmetic products, Plaintiffs were not able to discover the dangerous nature of Defendants' hair relaxer products.

**ANSWER:**     Avlon denies the allegations in Paragraph 122 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 122 directed to other Defendants, and therefore, denies the same.

123.     Defendants' acts and/or omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and other consumers.

**ANSWER:**     Avlon denies the allegations in Paragraph 123 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 123 directed to other Defendants, and therefore, denies the same.

124.     Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and other consumers, Defendants' acts and omissions had a great probability of causing significant harm and in fact resulted in such harm to Plaintiffs.

**ANSWER:**     Avlon denies the allegations in Paragraph 124 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 124 directed to other Defendants, and therefore, denies the same.

125.     Defendants' negligence and/or gross negligence was a direct and proximate cause of the injuries, harm, and economic losses that Plaintiffs have suffered, and will continue to suffer, as described herein.

**ANSWER:**     Avlon denies the allegations in Paragraph 125 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 125 directed to other Defendants, and therefore, denies the same.

126.     Defendants' negligence and/or gross negligence were a substantial factor in causing and/or contributing to Plaintiff's harms.

**ANSWER:**     Avlon denies the allegations in Paragraph 126 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 126 directed to other Defendants, and therefore, denies the same.

127.     As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:**     Avlon denies the allegations in Paragraph 127 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 127 directed to other Defendants, and therefore, denies the same.

128.     Defendants' conduct with respect to their design and sale of their hair relaxer products, including their negligent marketing, to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:**     Avlon denies the allegations contained in Paragraph 128 directed to it.

Avlon lacks sufficient knowledge and information to either admit or deny the remaining

allegations in Paragraph 128 directed to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

52

favor on Count I of the Master Complaint and against the Plaintiffs and grant such other and

further relief the Court deems equitable and just.

**Second Cause of Action**
**<u>Negligent Misrepresentation</u>**

Avlon makes no answer to the Second Cause of Action, including Paragraphs 129

through 142, because the Second Cause of Action was dismissed by the Court per Court order on

November 13, 2023, in document number #291.

**Third Cause of Action**
**<u>Negligence *Per Se*</u>**

143.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth
herein and further allege as follows.

**<u>ANSWER:</u>**    Avlon incorporates by reference its answers to paragraphs 1 through 114 if

fully set forth herein in Paragraph 143.


144.    The Food, Drug, and Cosmetic Act, 21 U.S.C. Ch. 9 § 301 *et seq.*, and its
accompanying regulations, are implemented to regulate and promote safety in the design,
manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including
Defendants' hair relaxer products.

**<u>ANSWER:</u>**    Paragraph 144 contains legal and factual conclusions to which no answer

can be made.  To the extent that Paragraph 144 contains no legal and/or factual conclusions,

Avlon denies the allegations in Paragraph 144 directed to it.  Avlon lacks sufficient knowledge

and information to either admit or deny the remaining allegations in Paragraph 144 directed to

other Defendants, and therefore, denies the same.


145.    Upon information and belief, Defendants' conduct violated one or more statutes or
related regulations, including but not limited to the following:

       a.    21 U.S.C. § 331;

53

b.      21 U.S.C. § 361;

c.      21 U.S. Code § 362; and

d.      21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

**ANSWER:**     Avlon denies the allegations in paragraph 145, including sub paragraphs (a) through (d) direct to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 145 directed to other Defendants, and therefore, denies the same.

146.    Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

**ANSWER:**     Paragraph 146 contains legal and factual conclusions to which no answer can be made.  To the extent that Paragraph 146 contains no legal and/or factual conclusions, Avlon denies the allegations in Paragraph 146 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 146 directed to other Defendants, and therefore, denies the same.

147.    Defendants' violation of such safety laws and regulations constitutes negligence *per se.*

**ANSWER:**     Avlon denies it violated safety laws and regulations and further denies the remaining allegations in paragraph 147 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 147 directed to other Defendants, and therefore, denies the same.

148.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm,

damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:**    Avlon denies the allegations in Paragraph 148 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 148 directed to other Defendants, and therefore, denies the same.

149.    Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:**    Avlon denies the allegations in paragraph 149 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 149 directed to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

favor in Count III of the Master Complaint and against the Plaintiffs and grant such other and

further relief the Court deems equitable and just.

**Fourth Cause of Action**
**Strict Liability: Design Defect**

150.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:**    Avlon incorporates by reference its answers to paragraphs 1 through 114 if

fully set forth herein as its answer to Paragraph 150.

151.    Defendants designed, manufactured, marketed, and sold their hair relaxer products that were used by Plaintiffs, and Defendants were in the business of selling their hair relaxer products.

**ANSWER:**    Avlon admits that it designed, manufactured, marketed, and sold hair

relaxers. Avlon admits that it is in the business of selling hair relaxers. Avlon denies the

remaining that it is liable to any Plaintiff and denies the remaining allegations in Paragraph 151 directed to it. Avlon lacks sufficient information or knowledge to admit or deny the remaining allegations of Paragraph 151, and therefore denies the same.

152. Defendants' hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' hair relaxer products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

**ANSWER:** Avlon denies the allegations in paragraph 152 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 152 directed to other Defendants, and therefore, denies the same.

153. Defendants' hair relaxer products are unreasonably dangerous as designed because they do not perform as safely as an ordinary consumer, including Plaintiffs, would expect when used in an intended or reasonably foreseeable manner.

**ANSWER:** Avlon denies the allegations in paragraph 153 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 153 directed to other Defendants, and therefore, denies the same.

154. Defendants' hair relaxer products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

**ANSWER:** Avlon denies the allegations in paragraph 154 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 154 directed to other Defendants, and therefore, denies the same.

155. Defendants caused their hair relaxer products to enter the stream of commerce and to be sold to consumers, including Plaintiffs, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

**ANSWER:** Avlon admits it caused its hair relaxer products to enter the stream of

commerce and to be sold to hair salons for use with their customers. Avlon denies the remaining allegations in paragraph 155 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 155 directed to other Defendants, and therefore, denies the same.

156.    Defendants' hair relaxer products were expected to, and did, reach consumers, including Plaintiffs, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

**ANSWER:**    Avlon denies the allegations in Paragraph 156 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 156 directed to other Defendants, and therefore, denies the same.

157.    Plaintiffs used the Defendants' hair relaxer products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

**ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 157, and therefore, denies the same.

158.    Defendants knew or should have known that their products were in a defective condition as a result of their design and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

**ANSWER:**    Avlon denies the allegations in Paragraph 158 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 158 directed to other Defendants, and therefore, denies the same.

159.    At all times material to Plaintiffs' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs without substantially impairing the utility of their hair relaxer products.

**ANSWER:**    Avlon denies that its products were defective in any way and denies the allegations in Paragraph 159 directed to it. Avlon lacks sufficient knowledge and information to

either admit or deny the remaining allegations in Paragraph 159 directed to other Defendants, and

therefore, denies the same.

160.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of their hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages, and losses in the future.

**ANSWER:**    Avlon denies the allegations in Paragraph 160 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 160 directed to other Defendants, and therefore, denies the same.

161.    Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:**    Avlon denies the allegations in Paragraph 161 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 161 directed to other Defendants, and therefore, denies the same.

162.    Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

**ANSWER:**    Paragraph 162 contains factual and legal conclusions to which no answer

can be made.  To the extent that Paragraph 162 contains no factual and/or legal conclusions,

Avlon denies the remaining allegations in Paragraph 162 directed to it.  Avlon lacks sufficient

knowledge and information to either admit or deny the remaining allegations in Paragraph 162

directed to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

58

favor in Count IV of the Master Complaint and against the Plaintiffs and grant such other and

further relief the Court deems equitable and just.

### Fifth Cause of Action
### Strict Liability: Failure to Warn

163.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:**    Avlon incorporates by reference its answers to Paragraphs 1 through 114 as

if fully set forth herein in Paragraph 163.

164.    Defendants designed, manufactured, marketed, and sold their hair relaxer products that were used by Plaintiffs, and Defendants were in the business of selling hair relaxer products.

**ANSWER:**    Avlon admits that it designed, manufactured, marketed, and sold hair

relaxers. Avlon admits that it is in the business of selling hair relaxers. Avlon denies the

remaining that it is liable to any Plaintiff and denies the remaining allegations in Paragraph 164

directed to it.  Avlon lacks sufficient information or knowledge to admit or deny the remaining

allegations of Paragraph 164, and therefore denies the same.

165.    Defendants' hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

**ANSWER:**    Avlon denies the allegations in Paragraph 165 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 165 directed to other Defendants, and therefore, denies the same.

166.    In particular, Defendants knew or should have known that their hair relaxer products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine cancer, ovarian cancer, and endometrial cancer. Defendants failed to give appropriate and adequate warning of such risks.  In fact, Defendants continue to this

day to market and sell their products to consumers without adequate warnings of the risks associated with their use.

**ANSWER:**     Avlon denies the allegations in Paragraph 166 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 166 directed to other Defendants, and therefore, denies the same.

167.     If Defendants had warned Plaintiffs that use of their hair relaxer products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine cancer, ovarian cancer, or endometrial cancer, Plaintiffs would not have used their hair relaxer products.

**ANSWER:**     Avlon denies the allegations in paragraph 167 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 167 directed to other Defendants, and therefore, denies the same.

168.     Defendants caused their hair relaxer products to enter the stream of commerce and to be sold to consumers, including Plaintiffs, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

**ANSWER:**     Avlon admits it caused its hair relaxer products to enter the stream of

commerce and to be sold to hair salons for use with their customers. Avlon denies the remaining

allegations in paragraph 168 directed to it. Avlon lacks sufficient knowledge and information to

either admit or deny the remaining allegations in Paragraph 168 directed to other Defendants,

and therefore, denies the same.

169.     Defendants' hair relaxer products were expected to, and did, reach consumers, including Plaintiffs, without substantial change in the condition in which their hair relaxer products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

**ANSWER:**     Avlon denies the allegations in Paragraph 169 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 169 directed to other Defendants, and therefore, denies the same.

170. Plaintiffs used the Defendants' hair relaxer products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in paragraph 170, and therefore, denies the same.

171. As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages, and losses in the future.

**ANSWER:** Avlon denies the allegations in Paragraph 171 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 171 directed to other Defendants, and therefore, denies the same.

172. Defendants' conduct with respect to their design and sale of their Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** Avlon denies the allegations in paragraph 172 directed to it. Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 172 directed to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

favor on Fifth Cause of Action of the Master Complaint and against the Plaintiffs and grant such

other and further relief the Court deems equitable and just.

### Sixth Cause of Action
### Breach of Implied Warranty of Merchantability/Fitness for Particular Use

173. Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** Avlon incorporates by reference its answers to paragraphs 1 through 114 as

if fully set forth herein in Paragraph 173.

174.    Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

**ANSWER:**    Avlon admits it is in the business of manufacturing, supplying, marketing,

advertising, warranting, and/or selling hair relaxer products but denies that it is liable to the

Plaintiffs in any way.  Avlon denies any remaining allegations in Paragraph 174 directed to it.

Avlon lacks sufficient knowledge and information to either admit or deny the remaining

allegations in Paragraph 174 directed to other Defendants, and therefore, denies the same.

175.    Prior to the time that the Plaintiffs purchased and/or used Defendants' hair relaxer products, Defendants knew of the uses for which their hair relaxer products were intended and impliedly warranted to Plaintiffs that their hair relaxer products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs that their hair relaxer products were of a certain quality.

**ANSWER:**    Avlon admits it knew of the uses for which their hair relaxer products were

intended. Avlon denies that its hair relaxer products were unsafe and denies any remaining

allegations in Paragraph 175 against it. Avlon lacks sufficient knowledge and information to

either admit or deny the remaining allegations in Paragraph 175 directed to other Defendants,

and therefore, denies the same.

176.    Defendants' warranties included but are not limited to the warranties that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

**ANSWER:**    Avlon denies the allegations in Paragraph 176 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 176 directed to other Defendants, and therefore, denies the same.

177.    Defendants breached their implied warranties of their hair relaxer products sold to Plaintiffs because they were not fit for their ordinary purposes and intended and reasonably foreseeable uses. Nor were their hair relaxer products minimally safe for their expected purpose.

**ANSWER:**     Avlon denies the allegations in paragraph 177 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 177 directed to other Defendants, and therefore, denies the same.

178.     Defendants' hair relaxer products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their hair relaxer products have dangerous propensities when used as intended and cause severe injuries to users including Plaintiffs.

**ANSWER:**     Avlon denies the allegations in paragraph 178 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 178 directed to other Defendants, and therefore, denies the same.

179.     Similarly, Defendants' hair relaxer products were unfit for their particular purpose—safely straightening hair. Defendants' hair relaxer products could not and do not safely straighten hair, and never could at any point after leaving the Defendants' control.

**ANSWER:**     Avlon denies the allegations in paragraph 179 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 179 directed to other Defendants, and therefore, denies the same.

180.     Defendants' hair relaxer products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

**ANSWER:**     Avlon denies the allegations in paragraph 180 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the remaining allegations in

Paragraph 180 directed to other Defendants, and therefore, denies the same.

181.     At the time Plaintiffs purchased or used Defendants' hair relaxer products, Defendants knew or should have known that Plaintiffs would detrimentally rely on Defendants' misrepresentations regarding safety.

**ANSWER:** Avlon denies the allegations in Paragraph 181 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 181 directed to the other Defendants, and therefore, denies the same.

182. Plaintiffs purchased or used Defendants' hair relaxer products reasonably relying upon Defendants' warranties.

**ANSWER:** Avlon denies the allegations in Paragraph 182 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 182 directed to the other Defendants, and therefore, denies the same.

183. Plaintiffs used Defendants' hair relaxer products for the purpose and in the manner intended by Defendants.

**ANSWER:** Avlon denies the allegations in Paragraph 183 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 183 directed to the other Defendants, and therefore, denies the same.

184. Plaintiffs could not have discovered the breached warranties or realized Defendants' hair relaxer products' danger through the use of reasonable care.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny the allegations in paragraph 184, and therefore, denies the same.

185. Plaintiffs would not have purchased or used Defendants' hair relaxer products if they had known the truth about the misrepresentations described above, or that Defendants' hair relaxer products were unfit for ordinary use or their particular purpose.

**ANSWER:** Avlon denies the allegations in Paragraph 185 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 185 directed to the other Defendants, and therefore, denies the same.

186. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under the following statutes:
   a. Ala. Code § 7-2-314, *et seq.*;
   b. Alaska Stat. § 45.02.314, *et seq.*

64

c. Ariz. Rev. Stat. § 47-2314, *et seq.*;

d. Ark. Code § 4-2-314, *et seq.*;

e. Cal. Com. Code § 2314, *et seq.*;

f. Cal. Civ. Code § 1790, *et seq.*;

g. Colo. Rev. Stat. § 4-2-314, *et seq.*;

h. Conn. Gen. Stat. § 42a-2-314, *et seq.*;

i. 6 Del. C. § 2-314, *et seq.*;

j. D.C. Code § 28:2-314, *et seq.*;

k. Fla. Code § 672.314, *et seq.*;

l. O.C.G.A. § 11-2-314, *et seq.*;

m. Haw. Rev. Stat. § 490:2-314, *et seq.*;

n. Idaho Code § 28-2-314, *et seq.*;

o. 810 Ill. Comp. Stat. 5/2-314, *et seq.*;

p. Ind. Code § 26-1-2-314, *et seq.*;

q. Iowa Code § 554.2314, *et seq.*;

r. Kan. Stat. § 84-2-314, *et seq.*;

s. Ky. Rev. Stat. § 355.2-314, *et seq.*;

t. La. Rev. Stat § 9:2800.53(6) , *et seq.*;

u. 11 M.R.S.A. § 2-314, *et seq.*;

v. Md. Code Ann., Com. Law § 2-314, *et seq.*;

w. Mass. Code 106, § 2-314, *et seq.*;

**ANSWER:** Avlon denies the allegations in Paragraph 186, including sub-paragraphs (a) through (w) directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 186 directed to the other Defendants, and therefore, denies the same.

187. Defendants' conduct described in this Complaint also constitutes a breach of implied warranties under the common law of Puerto Rico.

**ANSWER:** Avlon denies the allegations in Paragraph 187 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 187 directed to the other Defendants, and therefore, denies the same.

188. Defendants' conduct described in this Complaint also constitutes a breach of implied warranties under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*).

**ANSWER:** Avlon denies the allegations in paragraph 188 directed against it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 188 directed to the other Defendants, and therefore, denies the same.

189. Defendants' hair relaxer products are consumer products, Plaintiffs are consumers, Defendants are suppliers and/or warrantors of the defective hair relaxer products, and Defendants breached their implied warranties as described above.

**ANSWER:** Avlon denies the allegations in paragraph 189 directed against it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 189 directed to the other Defendants, and therefore, denies the same.

190. The breach of warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:** Paragraph 190 is a legal conclusion to which no answer can be made. To the extent that Paragraph 190 is not a legal conclusion, Avlon denies the allegations in Paragraph

66

190 directed against it. Avlon lacks sufficient knowledge or information to either admit or deny

the allegations in Paragraph 190 directed to the other Defendants, and therefore, denies the same.

191.     As a direct and proximate result of Plaintiffs' reasonably anticipated use of
Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or
introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm,
damages, economic and non-economic loss and will continue to suffer such harm, damages and
losses in the future.

**ANSWER:**     Avlon denies the allegations in paragraph 191 directed against it. Avlon

lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph

191 directed to the other Defendants, and therefore, denies the same.

192.     Defendants' conduct with respect to their design and sale of their hair relaxer
products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or
grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of
punitive or exemplary damages.

**ANSWER:**     Avlon denies the allegations in Paragraph 192 directed against it. Avlon

lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph

192 directed to the other Defendants, and therefore, denies the same.

193.     Plaintiffs did not need to send (additional) notice to Defendants of their breaches
of warranty because Defendants were already on notice of the defects alleged herein and
Defendants' related violations, including already facing similar lawsuits for the same conduct.

**ANSWER**:     Avlon denies the allegations in paragraph 193 directed against it. Avlon

lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph

191 directed to the other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

favor on the Six Cause of Action of the Master Complaint and against the Plaintiffs and grant

such other and further relief the Court deems equitable and just.

**Seventh Cause of Action**

## Breach of Express Warranty under state law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.*

194.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:**    Avlon incorporates by reference its answers to paragraphs 1 through 114 as if fully set forth herein in Paragraph 194.

195.    Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

**ANSWER:**    Avlon admits the allegations in Paragraph 195 directed to it but denies that it owes any liability to the Plaintiffs and denies that its hair relaxer products were defective or unsafe. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 195 directed to the other Defendants, and therefore, denies the same.

196.    Defendants expressly represented and warranted to Plaintiffs, through statements made by Defendants or their authorized agents in direct-to-consumer marketing, advertisements, and labels, that their hair relaxer products were safe and effective for their reasonably expected and intended use—straightening hair.

**ANSWER:**    Avlon denies the allegations in Paragraph 196 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 196 directed to the other Defendants, and therefore, denies the same.

197.    Defendants' warranties included but are not limited to the warranties that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

**ANSWER:**    Avlon denies the allegations in Paragraph 197 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 197 directed to the other Defendants, and therefore, denies the same.

198.    These and other (mis)representations were made directly by the manufacturer or seller to consumers and end users of Defendants' hair relaxer products, constitute express warranties, and became part of the basis of the bargain between the parties and created a collective

express warranty that their hair relaxer products would conform to Defendants' affirmations and promises.

**ANSWER:** Avlon denies the allegations in Paragraph 198 directed to it. Avlon lacks

sufficient knowledge or information to either admit or deny the allegations in Paragraph 198

directed to the other Defendants, and therefore, denies the same.

199. Defendants breached their express warranties about their hair relaxer products and their qualities because Defendants' statements about their hair relaxer products' safety were false and their hair relaxer products did not conform to those affirmations and promises. Defendants' hair relaxer products were not safe, but rather exposed Plaintiffs and other consumers to unreasonable risks of adverse health effects including cancer.

**ANSWER:** Avlon denies the allegations in Paragraph 199 directed to it. Avlon lacks

sufficient knowledge or information to either admit or deny the allegations in Paragraph 199

directed to the other Defendants, and therefore, denies the same.

200. At the time Plaintiffs purchased or used Defendants' hair relaxer products, Defendants knew or should have known that Plaintiffs would detrimentally rely on Defendants' misrepresentations regarding safety.

**ANSWER:** Avlon denies the allegations in Paragraph 200 directed to it. Avlon lacks

sufficient knowledge or information to either admit or deny the allegations in Paragraph 200

directed to the other Defendants, and therefore, denies the same.

201. Plaintiffs purchased or used Defendants' hair relaxer products reasonably relying upon Defendants' warranties.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 201, and therefore, denies the same.

202. Plaintiffs used Defendants' hair relaxer products for the purpose and in the manner intended by Defendants.

**ANSWER:** Avlon lacks sufficient knowledge and information to either admit or deny

the allegations in Paragraph 202, and therefore, denies the same.

203.     Plaintiffs could not have discovered the breached warranties or realized Defendants' hair relaxer products' danger through the use of reasonable care.

**ANSWER:**     Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 203, and therefore, denies the same.

204.     Plaintiffs would not have purchased or used Defendants' hair relaxer products if they had known the truth about the misrepresentations described above, or that Defendants' hair relaxer products were unfit for ordinary use or their particular purpose.

**ANSWER:**     Avlon denies its hair relaxer products were unfit for ordinary use or their particular purpose. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 204, and therefore, denies the same.

205.     The breach of the warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:**     Avlon denies the allegations in Paragraph 205 directed to it.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 205 directed to the other Defendants, and therefore, denies the same.

206.     Defendants' conduct described in this Complaint constitutes a breach of express warranties under the following statutes:

    a.        Ala. Code § 7-2-313, *et seq.*;

    b.        Alaska Stat. § 45.02.313, *et seq.*;

    c.        Ariz. Rev. Stat. § 47-2313, *et seq.*;

    d.        Ark. Code § 4-2-313, *et seq.*;

    e.        Cal. Com. Code § 2313, *et seq.*;

    f.        Cal. Civ. Code § 1790, *et seq.*;

    g.        Colo. Rev. Stat. § 4-2-313, *et seq.*;

h.        Conn. Gen. Stat. § 42a-2-313, *et seq.*;

i.        6 Del. C. § 2-313, *et seq.*;

j.        D.C. Code § 28:2-313, *et seq.*;

k.        Fla. Code § 672.313, *et seq.*;

l.        O.C.G.A. § 11-2-313, *et seq.*;

m.        Haw. Rev. Stat. § 490:2-313, *et seq.*;

n.        Idaho Code § 28-2-313, *et seq.*;

o.        810 Ill. Comp. Stat. 5/2-313, *et seq.*;

p.        Ind. Code § 26-1-2-313, *et seq.*;

q.        Iowa Code § 554.2313, *et seq.*;

r.        Kan. Stat. § 84-2-313, *et seq.*;

s.        Ky. Rev. Stat. § 355.2-313, *et seq.*;

t.        La. Rev. Stat § 9:2800.53(6) , *et seq.*;

u.        11 M.R.S.A. § 2-313, *et seq.*;

v.        Md. Code Ann., Com. Law § 2-313, *et seq.*;

w.        Mass. Code 106, § 2-313, *et seq.*;

x.        Mich. Comp. Laws 440.2313, et seq.;

y.        Minn. Stat. § 336.2-313, et seq.;

z.        Miss. Code § 75-2-313, et seq.;

aa.        Mo. Rev. Stat. § 400.2-313, et seq.;

bb.        Mont. Code § 30-2-313, et seq.;

cc.        Neb. U.C.C. § 2-313, et seq.;

dd.        Nev. Rev. Stat. § 104.2313, et seq.;

ee.        N.H. Rev. Stat. § 382-A:2-313, et seq.;

ff.     N.J. Stat. § 12A:2-313, et seq.;

gg.     N.M. Stat. § 55-2-313, et seq.;

hh.     N.Y. U.C.C. § 2-313, et seq.;

ii.     N.C. Gen. Stat. § 25-2-313, et seq.;

jj.     N.D. Cent. Code § 41-02-30, et seq.;

kk.     Ohio Rev. Code § 1302.26, et seq.;

ll.     Okla. Stat. Tit. 12A, § 2-313, et seq.;

mm.     Or. Rev. Stat. § 72.3130, et seq.;

nn.     13 Pa. Cons. Stat. § 2313, et seq.;

oo.     R.I. Gen. Laws § 6A-2-313, et seq.;

pp.     S.C. Code § 36-2-313, et seq.;

qq.     S.D. Codified Laws § 57A-2-313, et seq.;

rr.     Tenn. Code § 47-2- 313, et seq.;

ss.     V.T.C.A., Bus. & C. § 2.313, et seq.;

tt.     Utah Code § 70A-2-313, et seq.;

uu.     Vt. Stat. Tit. 9A, § 2-313, et seq.;

vv.     Va. Code § 8.2-313, et seq.;

ww.     Wash. Rev. Code § 62A.2-313, et seq.;

xx.     W. Va. Code § 46-2-313, et seq.;

yy.     Wis. Stat. § 402.313, et seq.;

zz.     Wyo. Stat. § 34.1-2-314, et seq.;

aaa.     American Samoa Code Ann. § 27.0701, et seq.;

bbb.     13 Guam Code Ann. § 2313, et seq.;

ccc.     5 C.M.C. § 2313, et seq.; and

ddd.     11A Virgin Is. Code § 2-213, et seq.

**ANSWER:**     Avlon denies the allegations in paragraph 206, including sub-paragraphs (a) through (ddd) directed against it.   Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 206 directed to the other Defendants, and therefore, denies the same.

207.    Defendants' conduct described in this Complaint also constitutes a breach of express warranties under the common law of Puerto Rico.

**ANSWER:**     Avlon denies the allegations in Paragraph 207 directed to it.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 207 directed to the other Defendants, and therefore, denies the same.

208.    Defendants' conduct described in this Complaint also constitutes a breach of express warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* The Hair Relaxer Products are "consumer products" because they are normally used for personal purposes and were, in fact, purchased primarily for personal use. *Id.* at § 2301(1). Plaintiffs are "consumers" as that term is defined in § 2301(3). Defendants are "suppliers" and "warrantors." *Id.* at § 2301(4)-(5). Defendants' hair relaxer products express warranties constitute a "written warranty" 15 U.S.C. § 2301(6).

**ANSWER:**     Avlon denies the allegations in Paragraphs 208 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 208 directed to other Defendants, and therefore denies the same.

209.    Defendants' failure to tender their hair relaxer products to Plaintiffs free of defects constitutes a breach of the written warranties covering their hair relaxer products, in violation of the Magnuson Moss Warranty Act. Defendants are on notice of their defective hair relaxer products, yet Defendants have failed to cure the damage resulting therefrom within a reasonable time.

**ANSWER:**     Avlon denies the allegations in Paragraph 209 as to itself but lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 209 as to other defendants, and therefore denies the same.

210.    Defendants' breach of warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:**    Avlon denies the allegations in Paragraph 210 directed against it.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 210 directed to the other Defendants, and therefore, denies the same.

211.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages,

**ANSWER:**    Avlon denies the allegations in Paragraph 211 directed against it.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 211 directed to the other Defendants, and therefore, denies the same.

212.    Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:**    Avlon denies the allegations in Paragraph 212.  Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 212 directed to the other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Seventh cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

**Eighth Cause of Action**
**Fraud/Fraudulent Misrepresentation**

Avlon makes no answer to the Eighth Cause of Action, including Paragraphs 213 through 227, because the Eighth Cause of Action was dismissed by the Court per Court order on November 13, 2023, in document number #291.

**Ninth Cause of Action**
**Fraudulent Concealment**

Avlon makes no answer to the Ninth Cause of Action, including Paragraphs 228 through

239, because the Ninth Cause of Action was dismissed by the Court per Court order on

November 13, 2023, in document number #291.

**Tenth Cause of Action**
**U.S. State and Territory Statutory Consumer Protection and Unfair**
**or Deceptive Trade Practices Claims**

240.     Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth
herein and further allege as follows.

**ANSWER:**     Avlon incorporates by reference its answers to Paragraphs 1 through 114 as

if fully set forth herein in Paragraph 240.

241.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or
fraudulent acts or practices in violation of the state and territory consumer protection statutes listed
below when they misled consumers regarding the safety risks associated with use of their hair
relaxer products. As a direct result of Defendants' deceptive, unfair, unconscionable, and
fraudulent conduct, Plaintiffs suffered and will continue to suffer economic loss, pecuniary loss,
personal injury, loss of companionship and society, mental anguish and/or other compensable
injuries.

**ANSWER:**     Avlon denies the allegations in Paragraph 241 directed to it. Avlon lacks

sufficient knowledge or information to either admit or deny the allegations in Paragraph 241

directed to the other Defendants, and therefore, denies the same.

242.     Defendants have engaged in unfair competition and/or unfair, deceptive, and/or
unconscionable acts or practices in violation of:

a.     Ala. Code § 8-19-1 *et seq.*;

b.     Alaska Stat. § 45.50.471 *et seq.*;

c.     Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*;

d.     Ark. Code Ann. § 4-88-101 *et seq.*;

e.     Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.*;

f.     Colo. Rev. Stat. § 6-1-101 *et seq.*;

g.     Conn. Gen. Stat. Ann. § 42-110a *et seq.*;

h.    Del. Code Ann. tit. 6 § 2511 *et seq.*;

i.    D.C. Code Ann. § 28-3901 *et seq.*;

j.    Fla. Stat. Ann. § 501.201 *et seq.*;

k.    Ga. Code Ann. § 10-1-370 *et seq.*;

l.    Haw. Rev. Stat. § 480-1 *et seq.* and 481A-1 *et seq.*;

m.    Idaho Code § 48-601 *et seq.*;

n.    815 Ill. Comp. Stat. 505/1 *et seq.*;

o.    Ind. Code Ann. § 24-5-0.5-1 *et seq.*;

p.    Iowa Code § 714.16 *et seq.*;

q.    Kan. Stat. Ann. § 50-623 *et seq.*;

r.    Ky. Rev. Stat. Ann. § 367.170 *et seq.*;

s.    La. Rev. Stat. Ann. § 51:1401 *et seq.*;

t.    Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.*;

u.    Md. Code Ann., Com. Law § 13-301 *et seq.*;

v.    Mass. Gen. Laws ch. 93A, § 1 *et seq.*;

w.    Mich. Comp. Laws Ann. § 445.901 *et seq.*;

x.    Minn. Stat. §§ 325D.09 *et seq.*, 325D.43 *et seq.*, 325F.67, 325F.68 *et seq.*, and § 8.31;

y.    Miss. Code Ann. § 75-24-5 *et seq.*;

z.    Mo. Ann. Stat. § 407.010 *et seq.*;

aa.    Mont. Code Aim. § 30-14-101 *et seq.*;

bb.    Neb. Rev. Stat. § 87-301 *et seq.*;

cc.    Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.* and 41.600;

dd.   N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*;

ee.   N.J. Stat. Ann. § 56:8-1 *et seq.*;

ff.   N.M. Stat. Ann. § 57-12-1 *et seq.*;

gg.   N.Y. Gen. Bus. Law §§ 349 *et seq.*, 350, 350-a and 350-e *et seq.*;

hh.   N.C. Gen. Stat. § 75-1 *et seq.*;

ii.   N.D. Cent. Code §§ 51-12-01 *et seq.* and 51-15-01 *et seq.*;

jj.   Ohio Rev. Code Ann. § 1345.01 *et seq.*;

kk.   Okla. Stat. Ann. tit. 15, § 751 *et seq.*;

ll.   Or. Rev. Stat. § 646.605 *et seq.*;

mm.   73 Pa. Cons. Stat. § 201-1 *et seq.*;

nn.   R.I. Gen. Laws § 6-13.1-1 *et seq.*;

oo.   S.C. Code Ann. § 39-5-10 *et seq.*;

pp.   S.D. Codified Laws § 37-24-1 *et seq.*;

qq.   Tenn. Code Ann. § 47-18-101 *et seq.*;

rr.   Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*;

ss.   Utah Code Ann. § 13-11-1 *et seq.*;

tt.   Vt. Stat. Ann. tit. 9, § 2451 *et seq.*;

uu.   Va. Code Ann. § 59.1-196 *et seq.*;

vv.   Wash. Rev. Code Ann. § 19.86.010 *et seq.*;

ww.   W.Va. Code § 46A-6-101 *et seq.*;

xx.   Wis. Stat. Ann. §§ 100.18 and 421.101 *et seq.*;

yy.   Wyo. Stat. Ann. § 40-12-101 *et seq.*;

zz.   American Samoa Code Ann. § 27.0401 *et seq.*;

      aaa.    4 CMC § 5101 *et seq.*;

      bbb.    5 Guam Code Ann. § 32102 *et seq.*; and

      ccc. 12A Virgin Is. Code § 301 *et seq.*

**ANSWER:**    Avlon denies the allegations in paragraph 242, including sub-paragraphs (a) through (ccc) directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 242 directed to the other Defendants, and therefore, denies the same.

243.    Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

    a.  Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;
    b.  Representing that goods are of a particular standard, quality, or grade if they are of another; and
    c.  Advertising goods with the intent not to sell them as advertised.

**ANSWER:**    Avlon denies the allegations in paragraph 243, including sub-paragraphs (a) through (c) directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 243 directed to the other Defendants, and therefore, denies the same.

244.    Defendants actions and failure to act, including the false and misleading representations and omissions of material facts regarding the safety and potential risks of their hair relaxer products and the above described course of fraudulent conduct and fraudulent concealment constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that Plaintiffs and others rely upon such concealment, suppression or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above.

**ANSWER:**    Avlon makes no answer to Paragraph 244 because Paragraph 244 was stricken and dismissed by the Court per Court order on November 13, 2023, in document number #291. To the extent that allegations in Paragraph 244 were not stricken or dismissed, Avlon

denies all such allegations in Paragraph 244 as to itself. Avlon lacks sufficient knowledge and information to either admit or deny all such allegations in Paragraph 244 as to the other Defendants, and therefore denies the same.

245. Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

**ANSWER:** Avlon makes no answer to Paragraph 245 because Paragraph 244 was stricken and dismissed by the Court per Court order on November 13, 2023, in document number #291. To the extent that allegations in Paragraph 245 were not stricken or dismissed. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in paragraph 245 and, therefore, denies the same.

246. By reason of the unlawful acts engaged in by Defendants, Plaintiffs have suffered ascertainable loss and damages.

**ANSWER:** Avlon denies the allegations in Paragraph 246 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 246 as to the other Defendants, and therefore, denies the same.

247. As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:** Avlon denies the allegations in Paragraph 247 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 247 as to the other Defendants, and therefore, denies the same.

248. Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:**     Avlon makes no answer to Paragraph 248 because Paragraph 248 was stricken and dismissed by the Court per Court order on November 13, 2023, in document number #291. To the extent that any allegation in Paragraph 248 was not stricken or dismissed, Avlon denies such allegations.  Avlon lacks sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 248 as to the other Defendants and, therefore, denies the same.

249.     Due to the above, Defendants are liable to Plaintiffs for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**     Avlon denies the allegations in paragraph 249 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 249 directed to the other Defendants, and therefore, denies the same.

250.     Plaintiffs did not need to send (additional) notice to Defendants of their violations of the consumer protection statutes pled in this Complaint because Defendants were already on notice of the defects alleged herein and Defendants' related violations, including already facing similar lawsuits for the same conduct.

**ANSWER:**     Avlon denies the allegations in paragraph 250 as to itself.  Avlon lacks sufficient knowledge and information as to the remaining allegations in Paragraph 250 as to the other Defendants, and therefore denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Tenth Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

### Eleventh Cause of Action
### Unjust Enrichment

251.     Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** Avlon incorporates by reference its answers to paragraphs 1 through 114 if fully set forth herein in Paragraph 251.

252. As an intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and other consumers made for their hair relaxer products.

**ANSWER:** Avlon denies the allegations in paragraph 252 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 252 directed to the other Defendants, and therefore, denies the same.

253. In exchange for the payments made for Defendants' hair relaxer products, at the time payments were made, Plaintiffs expected that Defendants' hair relaxer products were safe and effective in the ways Defendants represented and for the purposes Defendants advertised their hair relaxer products. In exchange for their payments, Plaintiffs believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

**ANSWER:** Avlon admits its hair relaxer products were safe and effective for use for the purposes in which they were advertised. Avlon denies all remaining allegations in Paragraph 253 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 253 directed to the other Defendants, and therefore, denies the same.

254. Defendants have voluntarily accepted and retained these payments with full knowledge and awareness that, as a result of their wrongdoing, Plaintiffs paid for Defendants' hair relaxer products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs with the remuneration expected enriched Defendants unjustly.

**ANSWER:** Avlon denies the allegations in Paragraph 254 directed to it. Avlon lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 254 directed to the other Defendants, and therefore, denies the same.

255. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their hair relaxer products while Plaintiffs suffered and are suffering serious illnesses, including but not limited to uterine, ovarian, and/or endometrial cancer.

**ANSWER:**   Avlon denies the allegations in Paragraph 255 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 255 as to other Defendants, and therefore, denies the same.

256.    Plaintiffs are entitled to equity to seek restitution of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**ANSWER:**   Avlon denies the allegations in Paragraph 256 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 256 as to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Eleventh Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

### Twelfth Cause of Action
### Wrongful Death

257.    Plaintiffs incorporate by reference paragraphs 1 through 256 as if fully set forth herein and further allege as follows.

**ANSWER:**   Avlon incorporates by reference its answers to Paragraphs 1 through 256 as if fully set forth herein in Paragraph 257.

258.    Decedent Plaintiffs died as a result of the defects in and undisclosed risks of Defendants' hair relaxer products and are survived by various family members, named and unnamed.

**ANSWER:**   Avlon denies the allegations in Paragraph 258 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 258 as to other Defendants, and therefore, denies the same.

259.    The representatives/administrators of Decedent Plaintiffs' estates and/or Decedent Plaintiffs' surviving heirs bring this claim on behalf of the Decedent Plaintiffs' lawful heirs.

**ANSWER**:     Avlon denies the allegations in Paragraph 259 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 259 as

to other Defendants, and therefore, denies the same.

260.     Defendants' wrongful conduct, as described in this Complaint, has foreseeably, directly, and proximately caused Decedent Plaintiffs' heirs to suffer the loss of Decedents' companionship, services, society, marital association, love, consortium, and/or all other damages allowed under state statutes and laws.

**ANSWER:**     Avlon denies the allegations in Paragraph 260 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 260 as

to other Defendants, and therefore, denies the same.

261.     Decedent Plaintiffs' estate representatives and/or Decedent Plaintiffs' surviving heirs bring this claim on behalf of Decedent Plaintiffs' lawful heirs for these damages and for all pecuniary losses sustained by the heirs.

**ANSWER**:     Avlon denies the allegations in Paragraph 261 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 261 as

to other Defendants, and therefore, denies the same.

262.     Decedent Plaintiffs' estate representatives and/or Decedent Plaintiffs' surviving heirs further plead all wrongful death damages allowed by statue in the state/territory or states/territories in which the causes of action accrued.

**ANSWER:**     Avlon denies the allegations in Paragraph 262 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 258 as

to other Defendants, and therefore, denies the same.

263.     Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER**:     Avlon denies the allegations in Paragraph 263 directed to it.  Avlon lacks

sufficient knowledge and information to either admit or deny the allegations in Paragraph 263 as

to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Twelfth Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

## Thirteenth Cause of Action
## <u>Survival Action</u>

264.     Plaintiffs incorporate by reference paragraphs 1 through 263 as if fully set forth herein and further allege as follows.

**<u>ANSWER:</u>**     Avlon incorporates by reference its answers to paragraphs 1 through 264 if fully set forth herein.

265.     Certain Plaintiffs ("Decedent Plaintiffs") have passed away after suffering injuries and losses as a result of Defendants' hair relaxer products and conduct described in this Complaint.

**<u>ANSWER:</u>**     Avlon denies the allegations in Paragraph 265 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 265 as to other Defendants, and therefore, denies the same.

266.     As a direct and proximate result of Decedent Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Decedent Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses prior to Decedent Plaintiffs' deaths.

**<u>ANSWER:</u>**     Avlon denies the allegations in Paragraph 266 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 266 as to other Defendants, and therefore, denies the same.

267.     The representative/administrators of Decedent Plaintiffs' estates bring this claim on behalf of Decedent Plaintiffs' estates and Decedent Plaintiffs' beneficiaries for damages.

**ANSWER:** Avlon denies the allegations in Paragraph 267 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 267 as to other Defendants, and therefore, denies the same.

268. The representative/administrators of Decedent Plaintiffs' estates further plead all survival damages allowed by statute and law in the state/territory or states/territories in which the causes of action accrued.

**ANSWER:** Avlon denies the allegations in Paragraph 268 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 268 as to other Defendants, and therefore, denies the same.

269. Defendants' conduct with respect to their design and sale of their products to Decedent Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** Avlon denies the allegations in paragraph 269 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 269 as to other Defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Thirteenth Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

### Fourteenth Cause of Action
### Loss of Consortium

270. Plaintiffs incorporate by reference paragraphs 1 through 269 as if fully set forth herein and further allege as follows.

**ANSWER:** Avlon incorporates by reference its answers to paragraphs 1 through 269 as if fully set forth herein in Paragraph 270.

271. Certain Plaintiffs were married to spouses (hereinafter referred to as "Spouse Plaintiffs") and/or have family members (hereinafter referred to as "Family Member Plaintiffs") who have suffered injuries and losses as a result of such Plaintiffs' injuries.

**ANSWER:**    Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 271, and therefore denies the same.

272.    As a foreseeable, direct, and proximate result of Defendants' unlawful conduct as described in this Complaint, Spouse Plaintiffs and/or Family Member Plaintiffs have paid and have become liable to pay for medical aid, treatment and for medications, and will incur further expenses of a similar nature in the future.

**ANSWER:**    Avlon denies the allegations in Paragraph 272 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 272 as directed to other defendants, and therefore, denies the same.

273.    As a foreseeable, direct, and proximate result of Defendants' unlawful conduct as described in this Complaint, Spouse Plaintiffs and/or Family Member Plaintiffs have suffered and will continue to suffer the loss of their loved one's care, comfort, support, companionship, services, society, love, and affection.

**ANSWER:**    Avlon denies the allegations in Paragraph 273 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 273 as directed to other defendants, and therefore denies the same.

274.    Spouse Plaintiffs allege their marital relationships have been impaired and depreciated, and the marital associations between spouses have been altered.

**ANSWER**: Avlon denies the allegations in Paragraph 274 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 274 as to other Defendants, and therefore, denies the same.

275.    Spouse Plaintiffs and/or Family Member Plaintiffs have suffered great emotional pain and mental anguish.

**ANSWER:**    Avlon denies the allegations in Paragraph 275 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 275 as to other Defendants, and therefore, denies the same.

276.     As a foreseeable, direct, and proximate result of Defendants' unlawful conduct, Spouse Plaintiffs and/or Family Member Plaintiffs have sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses, and other damages.

**ANSWER:**     Avlon denies the allegations in Paragraph 276 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 276 as directed to other defendants, and therefore, denies the same.

277.     Due to the above, Defendants are liable to Spouse Plaintiffs and/or Family Member Plaintiffs for compensatory, equitable, and punitive damages, to the extent permitted by applicable law, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**     Avlon denies the allegations in Paragraph 277 directed to it.  Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 277 as directed to other defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its favor on the Fourteenth Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

### Fifteenth Cause of Action
### Punitive Damages

278.     Plaintiffs incorporate by reference paragraphs 1 through 277 as if fully set forth herein and further allege as follows.

**ANSWER:**     Avlon incorporates by reference its answers to paragraphs 1 through 277 if fully set forth herein in Paragraph 278.

279.     The acts and omissions of Defendants as alleged throughout this Complaint were willful, wanton, and malicious. Defendants committed these acts with a conscious disregard for the rights, health, and safety of Plaintiffs and other consumers/users of Defendants' hair relaxer products, for the primary purpose of increasing Defendants' profits from the sale and distribution of their hair relaxer products.  Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**ANSWER:** Avlon denies the allegations in Paragraph 279 directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 279 as directed to other defendants, and therefore, denies the same.

280. Defendants' willful, wanton, malicious, and/or reckless acts include the following (as detailed throughout this Complaint):

    a. Failing to disclose or warn of, concealing, and/or suppressing material facts regarding the dangers and serious safety concerns of Defendants' hair relaxer products to Plaintiffs, other consumers, and the public;

    b. Making false and deceptive representations that Defendants' hair relaxer products could be used safely for their ordinary and intended purposes, for the purpose of deceiving and lulling Plaintiffs and other consumers into purchasing and using Defendants' hair relaxer products without knowledge of their risks;

    c. Falsely representing the qualities and characteristics of Defendants' hair relaxer products and their safety to Plaintiffs, other consumers, and the public;

    d. Knowingly subjecting Plaintiffs and all purchasers and users of Defendants' hair relaxer products to a substantial and unreasonable risk of harm, including the risk of serious illness and death, for the purpose of enhancing Defendants' profits; and

    e. Intentionally targeting Black and Brown women, including Black and Brown teenaged girls and children, as customers to purchase and use their unsafe hair relaxer products and doing so without warning of their dangers, including by relying on and invoking anti- Black stereotypes and anti-Black history against natural Black and Brown hair and features.

    f. To the extent that punitive damages are an available remedy but not considered an independent cause of action in any Plaintiffs state, the allegations in this section are pled in support of punitive damages being an appropriate remedy for that Plaintiffs' other causes of action.

**ANSWER:** Avlon denies the allegations in paragraph 280, including sub-paragraphs (a) through (f) directed to it. Avlon lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 280 as directed to other defendants, and therefore, denies the same.

WHEREFORE the above stated reasons, Avlon prays that the Court grant judgment in its

favor on Fifteenth Cause of Action of the Master Complaint and against the Plaintiffs and grant such other and further relief the Court deems equitable and just.

## **AFFIRMATIVE DEFENSES**

Avlon hereby asserts the following affirmative defenses to the allegations and claims in the Master Long Form Complaint. All affirmative defenses asserted herein are pled in the alternative, and none constitutes an admission that Avlon is in any way liable to the Plaintiffs, that the Plaintiffs have been or will be injured in any way, that the Plaintiffs are relieved of their burden to prove each element of its claims and the damages or relief sought, or that the Plaintiffs are entitled to any relief whatsoever. Subject to those limitations, and without assuming any burden of proof that it would not otherwise bear, Avlon hereby asserts the following affirmative defenses to the complaint and each and every allegation therein. Avlon may also assert other defenses that become available or appear during the course of additional investigation or discovery in this case. Avlon reserves the right to amend this answer, including to assert any such additional defenses.

## **FIRST AFFIRMATIVE DEFENSE**
### **Failure to State a Claim**

Plaintiffs' Complaint, and each claim for relief alleged therein, fail to state a claim upon which relief may be granted. The complaint fails to allege sufficient facts to state a claim against Avlon upon which relief can be granted. Plaintiff has not alleged facts supporting any finding that she was injured in any way by Avlon's conduct. The plaintiff fails to adequately allege any causal connection between any ascertainable loss and Avlon's alleged misconduct (or alleged misconduct properly attributable to Avlon). The plaintiff fails to plead any actionable misrepresentation, omission, or sale made by, or properly attributable to, Avlon. The plaintiff may not recover from Avlon because the methods, standards, or activities of designing,

manufacturing, labeling, and/or distributing of the hair relaxers that the plaintiff alleges Avlon sold (or sales for which Avlon is responsible) complied with, and were in conformity with, all applicable governmental regulations and the generally recognized state of the art at the time those products were designed, manufactured, labeled, and/or distributed.

## SECOND AFFIRMATIVE DEFENSE
### Comparative Negligence

Plaintiffs failed and/or neglected to exercise ordinary care for their own personal safety and welfare, which was the proximate cause of the injuries and damages alleged.

## THIRD AFFIRMATIVE DEFENSE
### Acts by Third Parties

The Plaintiffs' claims against Avlon are barred to the extent that any rely on or implicate the negligent, intentional, malicious, criminal, and/or otherwise unlawful acts or omissions of third parties that are not subject to Avlon's control or authority and for which Avlon is not responsible and cannot be held liable. The injury the Plaintiffs allege was the result of one or more superseding and/or intervening acts by third parties. Avlon's liability, if any, therefore, must be reduced or negated by proportionate fault to the extent that third parties have contributed to, or caused, the Plaintiffs' injuries. Moreover, any imposition of liability, damages, penalties, or other relief against Avlon for the negligent, intentional, malicious, criminal, and/or other acts or omissions of parties or third parties not subject to Avlon's control or authority and for which Avlon is not responsible would violate Avlon's procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution. The plaintiffs are not entitled to recover any damages or other relief from Avlon to the extent that the Plaintiffs' injuries were caused by the acts of third parties.

## FOURTH AFFIRMATIVE DEFENSE
### State of the Art

The Plaintiffs may not recover from Avlon because the methods, standards, or activities of designing, manufacturing, labeling, and distributing of the hair-relaxer products at issue complied with and were in conformity with the generally recognized state of the art at the time the products were designed, manufactured, labeled, and distributed.

### FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate

The plaintiffs have failed to take reasonable steps to mitigate any damages. Among other things, they continued to use hair relaxer products without further inquiry into any risks of side effects of such products, and the failed to take adequate steps to prevent such side effects and risks of use.

### SIXTH AFFIRMATIVE DEFENSE
### Waiver

The Plaintiffs' claims are barred or limited, in whole or in part, by the doctrine of waiver. The Plaintiffs' claims are, according to the complaint, based on conduct that occurred decades ago. The plaintiffs knew or reasonably should have known of the facts underlying its claims years ago and failed to file suit for years thereafter.

### SEVENTH AFFIRMATIVE DEFENSE
### Laches

The Plaintiffs' unreasonable delay in the filing and service of this action has operated to the detriment and prejudice of Avlon and, as a consequence, the plaintiffs are barred from seeking the relief sought, or any relief whatsoever, by laches. The plaintiffs' claims are, according to the complaint, based on conduct from as early as the 1980s. The plaintiffs knew or reasonably should have known of the facts underlying their claims years ago and failed to file suit for years thereafter. The plaintiffs' failure to exercise diligence in bringing this action has prejudiced Avlon by depriving it of the opportunity to alter its practices (or practices properly

attributable to Avlon), as necessary. As a matter of equity, therefore, the doctrine of laches should bar the plaintiffs from recovering on their claims.

## EIGHTH AFFIRMATIVE DEFENSE
### Assumption of the Risk

To the extent the plaintiffs have incurred the injuries or damages alleged in the complaint, their claims are barred and/or reduced because the plaintiffs and users of hair-relaxer products voluntarily and knowingly assumed the risk of incurring said injuries or damages.

## NINTH AFFIRMATIVE DEFENSE
### Inadequate Protections

The law governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages.

## TENTH AFFIRMATIVE DEFENSE
### Informed Consent

To the extent the plaintiffs have incurred the injuries or damages alleged in the complaint, their claims are barred and/or reduced because the plaintiffs and users of hair relaxer products were fully advised and informed of the risk of such use and hazards involved, as well as alternative treatments, after which they expressed knowledge, understanding, and/or consent to the use the products.

## ELEVENTH AFFIRMATIVE DEFENSE
### Product Misuse

The claims are barred, in whole or in part, by the alteration, modification, or misuse by the plaintiffs or by third parties of the hair-relaxer products at issue.

## TWELFTH AFFIRMATIVE DEFENSE
### Moot

The plaintiff's claims are barred, in whole or in part, because they are not ripe or have become moot.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**Legal Obligation**

Avlon's liability, if any, will not result from its conduct (or conduct properly attributable to Avlon) but is solely the result of an obligation imposed by law, and thus Avlon is entitled to complete indemnity, express or implied, by other parties.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**Intervening and Superseding Events**

If the plaintiffs have sustained any injuries or damages, such were the result of intervening or superseding events, factors, occurrences, causes, or conditions which were not reasonably foreseeable and in no way caused by, or properly attributable to, Avlon and for which Avlon is not liable.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**Misjoinder and Severance**

The plaintiffs' claims against Avlon and other Defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences as required for joinder of parties. The plaintiffs fail to connect any of Avlon's alleged sales, marketing, or distribution activities (or sales, marketing, or distribution activities for which Avlon is responsible), to those of other Defendants, nor could they. Accordingly, the Court should sever or dismiss the plaintiffs' claims against Avlon.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**Failure to Join Necessary Parties**

The plaintiffs have failed to join one or more necessary and indispensable parties, including without limitation professional stylists, direct product sellers, and other third parties

93

whom the plaintiff alleges engaged in the unauthorized or illicit dispensing, sale, or use of hair-relaxer products throughout the United States. These third parties have a legal interest in the subject matter of the litigation to the extent they facilitated and/or participated in the hair-relaxer misuse and related misconduct alleged in the complaint. The plaintiffs have failed to name any such third parties as defendants, however, nor have the plaintiffs alleged how, if at all, it would be infeasible to join one or more indispensable but absent parties. Thus, Plaintiffs' claims should be dismissed.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### Truthful and Non-Misleading Statements

The representations or statements alleged to have been made were true and accurate at the time made and/or otherwise were made in good faith, with a reasonable belief as to their validity and accuracy and with a reasonable belief that all conduct was lawful. Facts showing good faith and reasonable belief in the accuracy of such representations or statements (or representations or statements properly attributable to Avlon) include, but are not limited to, Avlon's good-faith reliance on and interpretation of clinical data, medical literature, and guidance for product communications published by FDA. Avlon's good faith and reasonable belief should be considered as a mitigating factor relevant to the relief, if any, granted in this action.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### Conformity with Applicable Law

The products at issue in the case, when placed into the stream of commerce, were reasonably safe products as defined under state and federal law. Avlon's alleged conduct conformed to all state and federal statutes, regulations, and industry standards based upon the state of knowledge existing at the relevant time(s) alleged in the complaint.

## NINETEENTH AFFIRMATIVE DEFENSE
### Commerce Clause

94

The plaintiff's claims are barred, in whole or in part, by the Commerce Clause of the United States Constitution.

**TWENTIETH AFFIRMATIVE DEFENSE**
**No Actionable Misrepresentation**

Plaintiff's fail to plead any actionable misrepresentations or omissions.

**TWENTY FIRST AFFIRMATIVE DEFENSE**
**No Duty**

Plaintiff's fail to plead any duty owed to the plaintiff.

**TWENTY SECOND AFFIRMATIVE DEFENSE**
**Contributory Negligence**

Any injuries or damages sustained by the Plaintiffs were due to the Plaintiffs' own negligent, careless, reckless, and grossly negligent acts or omissions, which combined and concurred with any alleged negligence on the part of Avlon (or alleged negligence properly attributable to Avlon) to produce such injuries or damages, if any, and without which such injuries or damages would not have occurred. The plaintiffs (including their agencies, entities, and officials) were negligent in, among other things, their application of hair-relaxer products, their investigation of the risks, and their research into the risks and hazards in use of hair-relaxer products. Therefore, the plaintiffs' damages, if any, should be proportionately reduced under the doctrine of contributory negligence.

**TWENTY THIRD AFFIRMATIVE DEFENSE**
**Utility Outweighs Risk of Harm**

Plaintiffs' Complaint, and each claim for relief alleged therein, are barred because the benefits of the alleged product's design outweigh any alleged inherent risks.

**TWENTY FOURTH AFFIRMATIVE DEFENSE**

**No Express Warranty**

Plaintiffs' Complaint, and each claim for relief alleged therein, are barred because they did not rely on any statements made by Avlon in connection with their purchase/use of any alleged products and therefore no such statements exist for the basis of any bargain between Plaintiffs and Avlon.

## TWENTY FIFTH AFFIRMATIVE DEFENSE
### Learned Intermediary

Plaintiffs' Complaint, and each claim for relief alleged therein, are barred because Avlon provided reasonable and adequate warnings to a learned intermediary.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Avlon hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during discovery proceedings in this action and hereby reserves the right to amend its answer and to assert any such defense by appropriate motion.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) Defendants hereby demand a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, Defendant, Avlon Industries, Inc. demands judgment against Plaintiffs on each of the above- referenced affirmative defenses and for such other and further relief the Court deems equitable and just.

Avlon Industries, Inc.

/s/ Kristen A. Schank
By one of its attorneys

Richard J. Leamy – (rjleamy@wmlaw.com )
Kristen A. Schank – (kaschank@wmlaw.com )

Anna Morrison Ricordati (amricordati@wmlaw.com )
Totiana J. Sudduth – (tjsudduth@wmlaw.com)
Wiedner & McAuliffe, Ltd.
1 N. Franklin, Suite 1900
Chicago, Illinois 60606
312-855-1105

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Master Docket No. 1:23-cv-00818<br>Hon. Mary M. Rowland |

## AMENDED CERTIFICATE OF SERVICE

I, Kristen A. Schank, an attorney, certify that on the 12th day of January, 2024, the following documents on behalf of Defendant, ***Avlon's Answer & Affirmative Defenses to MDL Master Complaint*** pursuant to the Federal Rule of Civil Procedure, was served via electronic mail on the following counsel of record:

- Mark Abramowitz – mabramowitz@dicellolevitt.com
- Jennifer Hoekstra – jhoekstra@awkolaw.com
- Ed Wallace – eaw@wallacemiller.com
- Fidelma Fitzpatrick – ffitzpatrick@motelyrice.com
- Ben Crump – ben@bencrump.com
- Diandra Debrosse Zimmermann – fu@dicellolevitt.com
- Michael London – mlondon@douglasandlondon.com
- MDL 3060 Joint Defense Group – MDL3060_DefenseLiaison@bakerserv.com
- Navan Ward – navan.ward@beasleyallen.com
- Ryan Beattie – ryan.beattie@beasleyallen.com
- Katie Tucker – katie.tucker@beasleyallen.com
- Tom Cartmell – tcartmell@wcllp.com
- Vanessa Gross – vgross@wcllp.com

/s/ Kristen A. Schank
*Attorney for Avlon Industries, Inc.*

Kristen A. Schank
WIEDNER & McAULIFFE, LTD.
One North Franklin Street, Suite 1900
Chicago, Illinois 60606
Telephone: 312-855-1105
kaschank@wmlaw.com