**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No. 23 C 818<br><br>MDL No. 3060<br><br>Judge Mary M. Rowland |

**KELLER POSTMAN'S OPPOSITION TO THE PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER NO. 10 ESTABLISHING COMMON BENEFIT FEE AND EXPENSE PROTOCOLS**

Keller Postman ("KP") submits this opposition to the Plaintiffs' Executive Committee's (the "PLC") Motion for Entry of Case Management Order No. 10 Establishing Common Benefit Fee and Expense Protocols ("CBO"). The PLC's proposed CBO asks the Court to exceed the outer bounds of its inherent authority and to prematurely impose one of the highest common-benefit assessments ever levied in an MDL composed of cancer victims. The motion should be denied.

### I. Introduction

The PLC asks the Court to impose a common benefit tax on cases that are not before it. The PLC's Motion asserts only three grounds of authority: (1) the "equitable common fund doctrine," (2) the Court's "inherent managerial power over the consolidated litigation," and (3) "private contractual arrangement." Mot. at 4. None of those supports the PLC's request.[1]

First, the common-fund doctrine narrowly allows the Court to award reasonable fees from the assets of a common fund it has jurisdiction to oversee. As the name implies, the common-fund doctrine first requires a common fund, typically created as part of a settlement. It therefore

---

[1] In a footnote, the PLC states its reply to this opposition will "…provide additional detail and documentation concerning [the] efforts to reach an amicable resolution…." n.2. While it is not clear why this is relevant, the PLC as movant had the burden to establish in its Motion the basis for the relief sought. While the PLC can respond to this opposition in its reply, any grounds for relief the PLC chooses to raise for the first time in its reply are waived. KP should not be sandbagged with new arguments that could have and should have been made in the PLC's Motion.

provides authority only to regulate parties who are part of that settlement. The PLC's proposed order wildly exceeds this rationale and would impose a tax on plaintiffs regardless of whether they are part of a settlement administered by this Court. The common-fund doctrine does not authorize such a result. *In re Roundup Products Liability Litig.*, 544 F.Supp.3d 950, 959-60 (N.D. Cal. 2021) ("The power of a court to address free riding concerns—just like the power of a court to address any concern—must actually come from somewhere. As it relates to the type of holdback order contemplated in this MDL, that power does not seem to come from the common fund doctrine.")

Second, while an MDL court has broad discretion to coordinate and administer its docket, the Court's "inherent managerial power over the consolidated litigation" does not expand its jurisdiction over cases not before it. *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014). It does not matter that *counsel* who represents an MDL client also represents a client in a state-court action, just as it would not matter if counsel in a patent case before this Court also represented a client in a state-court action. *Id.* ("Even if the state plaintiffs' attorneys participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs and [the defendant]."). Inherent powers provide authority to manage *this* Court's docket, not to manage *every* docket in every court in which a lawyer happens to appear.

Finally, while contract law could provide authority for an assessment, a bedrock requirement for any contract is voluntary agreement. KP and its clients do not agree to contribute an 11% holdback from state-court cases to the MDL common benefit fund. KP has not signed and will not voluntarily sign the PLC's proposed Participation Agreement. The provision of the proposed CBO that makes the application of the Participation Agreement *involuntary* for firms like KP is not a creature of contract but of judicial decree. And the only grounds for a judicial

decree that the PLC identifies—the common-fund doctrine and inherent authority—do not support the Motion.

Based on their Motion, the Court could be forgiven for believing the PLC has made a routine and uncontroversial request. It is anything but. Every federal court of appeals that has considered the issue has held that an MDL may assess state court cases *only* where there is a voluntary agreement. District court decisions in which this issue was litigated (rather than glossed over by stipulation) have consistently reached the same conclusion.

Finally, while this Court *does* have inherent power to assess cases *within* the MDL, including KP's MDL cases,[2] the assessment sought by the Motion is excessive and unsupported. The PLC—which bears the burden of production and persuasion—provides no basis for the 11% assessment it seeks, rendering, at best, this extremely high amount premature to impose.

II.      **Argument**

**A. The Common Fund Doctrine Does Not Authorize the Court to Order Contributions to a Common Benefit Fund from Cases not Filed in, Removed to, or Transferred to MDL 3060.**

The "American Rule" generally holds that each party is responsible for the fees charged by her retained counsel. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259, 264-65, (1975); *Roundup,* 544 F.Supp.3d at 958. One exception is the "common fund doctrine." *Id.* The doctrine has its roots in class actions but has increasingly become the trend in MDLs. *Roundup*, 544 F.Supp.3d at 958; *see also, In re Abbott Laboratories, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, Amended CMO No. 8 at *1-2 (Pallmeyer, J.) (attached as **Exhibit 1**).

KP does not dispute that the common-fund doctrine can justify an award of attorneys' fees for common-benefit work *if* that work results in the creation of a common fund. Typically, such a

---

[2] Pursuant to the terms of the Revlon Bankruptcy Plan, KP filed 1,356 short-form complaints in September 2023, against Revlon only.

fund would be a settlement vehicle through which the defendants establish a fund to pay claims made by participating plaintiffs. *Roundup*, 544 F.Supp.3d at 959 (citing *Cf. Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). It is undisputed that such a fund does *not* currently exist. So the PLC is asking the Court "…to *create* a fund at the outset – before any judgment was entered and before liability was established—and require contributions from individual recoveries down the line…" (emphasis in original) *Id.* That speculation is bad enough for MDL plaintiffs. But it is especially inappropriate for state-court plaintiffs. If KP reaches a settlement (or judgment) for its clients *before* the MDL has reached any settlement, such a settlement could not plausibly be part of a "common fund" overseen by this Court. Likewise, if the PLC negotiates a settlement that does not include state-court plaintiffs, the state-court plaintiffs could not be part of a common fund in which they are ineligible to participate. Yet, the PLC's proposed CBO purports to assess state court cases in both scenarios. Assessing entirely *separate* recoveries under the guise of the *common* fund doctrine stretches that doctrine past any sensible breaking point. *Id.* at 963.

### B. The Court's Inherent Authority to Manage the MDL Does Not Empower the Court to Order Holdbacks in Disputes Outside the MDL.

A district court possesses inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (internal quotation marks omitted). It follows that an MDL Court has inherent authority to manage litigation before it, which includes ordering parties to the litigation to contribute fair compensation to lead counsel (over and above the contingency fees they receive from their own clients). *Roundup*, 544 F.Supp.3d at 962. However, the Court's inherent power to manage *its own* docket exists for "the efficient and expedient resolution of cases." *Dietz*, 579 U.S. at 47. Cases in other courts are cases the Court cannot resolve. The very authority cited by the PLC's Motion, Mot. at 4, frames inherent

4

authority this way: "*Once cases are consolidated* under the umbrella of an MDL court's pretrial jurisdiction, 'the court's express and inherent powers enable the judge to exercise extensive supervision and control *over the litigation*." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F.Supp.3d 685, 695 (S.D.W.Va. 2019) (emphasis added). There is, therefore, no inherent authority to regulate the parties or recoveries in cases not before the Court.

It does the PLC no good to shift focus from state-court plaintiffs to their counsel of choice. PLC Mot. at 5. As Judge Chhabria noted in *Roundup*, a problem arises when the PLC thinks "…too much in terms of the lawyers, and not enough in terms of the clients." 544 F.Supp.3d at 965. MDL lawyers may think of recoveries as "their" recoveries coming from their "inventory" of cases, but "…that inventory consists of people, and each person has their own case against the defendant." *Id.*[3] And *all* recoveries belong to the client. Under a contingency fee, the *client* pays her attorneys from *her* funds. *See, e.g., Kenseth v. C.I.R.*, 259 F.3d 881, 883-84 (7th Cir. 2001) (A contingent-fee lawyer is not an owner of his client's claim); *Pocius v. Halvorsen*, 195 N.E.2d 137, 139 (1963) (A contingency fee is generally paid out of the recovery for the client). That is precisely why settlement funds must be put in an IOLTA account, and why an attorney must keep them there if any dispute about fees arises. ILCS S. Ct. Rules of Prof. Conduct Rule 1.15 (2023). To illustrate the point, suppose a state-court plaintiff has chosen to hire counsel on an hourly fee contract. The proceeds from any settlement obtained in that client's case obviously belong *entirely* to the client. If the Court lacks authority to assess that client's recovery, it does not suddenly obtain judicial power simply because the client chose a different economic arrangement—a contingency fee—in her private contract with state-court counsel.

---

[3] The PLC admits the proposed CBO requires that hair relaxer claimants themselves contribute "a modest share of their recoveries to defray and share in the common benefit expenses…" Mot. at n.4. So even on PLC's own terms, they are asking the Court to tax the recoveries of state court plaintiffs not before this Court.

The PLC's position has been rejected by *every* federal Court of Appeals to consider the question. In *Genetically Modified Rice*, Lead Counsel argued that the Court had the power to order withholding from "related" state court cases based upon the Court's jurisdiction over attorneys who also had MDL cases. 764 F.3d at 874. The Eighth Circuit firmly rejected this reasoning:

> But state-court cases, related or not, are not before the district court. The state court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL Settlement Agreement. Even if the state plaintiffs' attorneys participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs and [the defendant].

*Id; see also Roundup*, 544 F.Supp.3d at 964. In reaching this conclusion, the Eighth Circuit correctly affirmed that "[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation…is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *Id.* at 873-74 (quoting *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992)).

As the Fourth Circuit likewise held, while 28 U.S.C. § 1407 provides a procedure for transferring cases to a single district for coordinated pretrial proceedings, the jurisdictional reach of the transferee court is in no way altered and remains limited to cases and controversies before it. *Showa Denko*, 953 F.2d at 165-66. The Ninth Circuit has reached the same conclusion. *See Hartland v. Alaska Airlines*, 544 F.2d 992, 1001-2 (9th Cir. 1976) (holding court did not have "even a semblance of jurisdiction—original, ancillary or pendent" to tax cases not filed before the court); *In re Bard IVC Filters Prod. Liab. Lit.,* 81 F.4th 897, 910-11 (9th Cir. 2023) (stating that state court plaintiffs, even if they have lawyers who appear in an MDL are "[s]trangers to the MDL," and cannot be taxed absent voluntary agreement). The PLC neither cites any appellate authority supporting its position, nor discloses the uniform appellate authority that rejects it.

The PLC does not merely ask this Court to invoke its "inherent authority" to manage cases in other courts. It asks the Court to exercise power over parties who have not filed a lawsuit in *any* court. Prop. CBO, at 4-5; Mot. at 5. As with cases filed in state courts, the Court lacks jurisdiction to require claimants who have not filed a lawsuit in any court to contribute a holdback to the MDL's common benefit fund. *Roundup*, 544 F.Supp.3d at 964. In *Hartland*, an MDL court required a holdback from a state-court plaintiff and a claimant who had not filed a lawsuit at all. *Hartland*, 544 F.2d at 1001. Upon review, the Ninth Circuit issued a writ of mandamus ordering the holdbacks be returned to both, holding that the MDL court "had not even a semblance of jurisdiction" to order non-litigants to contribute to a common benefit fund. *Id*. at 1002; *see also Roundup*, 544 F.Supp.3d at 964. Similarly, in *Vincent v, Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977), the MDL court required a person who had never filed suit to pay a holdback. 557 F.2d at 765-66. On appeal, the Ninth Circuit followed *Hartland*, holding that the MDL court lacked the power to order holdbacks from the recoveries of claimants not before it. *Id.*

Finally, it bears noting that any theory invoked by the PLC could just as easily be invoked in the other direction. KP is performing extensive work to advance cases in state court, including before some courts where members of the PLC have also filed cases. If KP believes *it* has contributed legal work and paid costs that will facilitate the eventual settlement of all hair relaxer cases, may it ask a state court to issue a common benefit order taxing all hair relaxer cases in federal court or all cases, filed or unfiled, in which counsel before it are involved? The PLC cannot cite any source of law unique to federal courts that allows them to assess state court cases and not vice versa. Rather, the appropriate rule—which has been recognized by every court of appeals to address the issue—is that, absent voluntary agreement of the parties, a court may impose a common benefit assessment only on cases that are before the court.

### C. Contract Law Cannot Serve as a Source of Judicial Authority to Require KP's Non-MDL Cases to Contribute a Holdback to an MDL Common Benefit Fund.

The PLC's proposed CBO specifies four groups to which it will apply. Prop. CBO at 5-6. The third group identified is "each attorney and/or law firm who represents a plaintiff with a case now pending in or later filed in this Court, transferred to or filed directly into this MDL, or removed to this Court…" *Id.* KP falls into this third group because it filed 1,356 Short Form Complaints against Revlon in September 2023. The proposed CBO says it applies to KP *regardless* of whether KP signs the "Participation Agreement." (emphasis added) *Id.* "It is **presumed** that for all such attorneys, this Order shall apply **to every case in which they or their law firm have any fee interest – whether filed in this MDL, filed in another jurisdiction, tolled and/or unfiled**…" (emphasis added) *Id.*

KP and similarly situated firms had no choice but to file Revlon cases in the MDL by September 14, 2023. But doing so hardly warrants a *presumption* that KP is agreeing to anything—let alone the CBO—that the PLC supports, which was submitted *after* the September 14 deadline. A *voluntary* agreement cannot be based on a Court order that *requires* a party to be bound by it. Such a result is clearly a form of judicial mandate, not voluntary agreement, and requires judicial authority independent of consent. The PLC has not identified any such authority.

*In re Bard* is consistent with KP's position. Mot. at 4. There, the firm opposing the applicability of common benefit assessments in its non-MDL cases *voluntarily* entered into a participation agreement in exchange for common benefit work product. 81 F.4th at 907. Indeed, the court specifically noted the voluntary agreement as a key fact justifying the result. *Id.* at 908 ("BCM *voluntarily* entered into a participation agreement with Plaintiffs' Lead Counsel"); *id.* at 901 (summarizing the grounds for allowing a holdback and listing the fact that "counsel for claimants *voluntarily* consent[ed]" by signing a participation agreement) (emphasis added). KP

8

has no quibble that firms may *willingly* sign the Participation Agreement in exchange for common benefits. That is a far cry from being *compelled* by presumption, express opposition notwithstanding. The PLC cannot ask the Court to force KP to become a party to a contract without its consent and then invoke cases relying on voluntary consent as the sole basis for enforcing the contract.

### D. Ordering a Holdback of 11% is Excessive and Premature.

KP agrees that the Court has inherent power to assess cases *within* the MDL, including KP's MDL cases. But the 11% holdback proposed by the PLC is extremely high, and the PLC has offered only conclusory generalities to justify it. The PLC's Motion puts great emphasis on their experience and the fact that "…appointed leadership unanimously supports the proposed holdback…" of 11%. Mot. at 9. In seeking an 11% holdback, the PLC simply states in vague terms, at an early stage of the litigation, that its request is "based on leadership's best estimation of the work involved in managing and litigating this MDL, taking into account a wide variety of factors including but not limited to: the complexity of the cases, the large number of defendants, the need to identify and develop expert testimony, and possible limitations on potential recoveries due to the size, financial resources, and bankruptcy status of certain defendants." Mot. at 10. This conclusory justification falls far short of giving the Court any sort of specifics that would allow it to identify a reasonable holdback.[4][5] When litigants propose fee arrangements that inure to their own benefit, even in good faith, courts rightly demand sufficient specifics to make an independent

---

[4] In *In re Roundup*, a cancer MDL the PLC did not cite in its motion, lead counsel sought a holdback of 8.25%. 544 F.Supp.3d at 952, 957. The only MDL litigation involving cancer cases cited by the PLC is *In re Actos (Pioglitazone)*, and the PLC did not specify the amount of the holdback in that case, which was 8.6%. Mot. at 9; *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F.Supp.3d 485, 533 (W.D.La. 2017).
[5] At a townhall meeting held on January 3, 2024 regarding procedures related to the submission of Plaintiffs' Fact Sheets ("PFS"), participants were informed that each plaintiff submitting a PFS would be charged a fee of $10.00, which translates to $13,560.00 for KP's MDL clients. In other words, claimants are paying some of their own costs out of pocket. That should inform what additional holdback is reasonable.

9

assessment of their request. *Cf. Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 578 (N.D.Ill. 2011) (because "'the structure of class actions under Rule 23 gives class action lawyers an incentive to negotiate settlements that enrich themselves,'" courts must "exercise the highest degree of vigilance" and independently assess the proposed terms (quoting *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293 (7th Cir. 2010)).

At this stage, KP respectfully suggests that it would be more appropriate to enter a CBO establishing timekeeping and expense protocols while leaving the amount of the holdback to be addressed by separate order after the case has developed further and the PLC has provided a more detailed explanation of the work that has been and will reasonably be expected relative to the total recovery expected from cases in the MDL. This is the process Judge Pallmeyer is using for MDL 3026 – *In re: Abbott Laboratories, et. al., Preterm Infant Nutrition Prod. Liab. Litig.* **Exhibit 1**.[6] In her September 2022 CBO, Judge Pallmeyer states, "At the appropriate time, and by separate order, the Court anticipates establishing a mechanism for creating a Common Benefit Fund ("CBF") and determining an appropriate holdback amount for contribution to that fund."[7] *Id.* at 2.

### III. Conclusion

The Plaintiffs' Executive Committee's Motion for the Entry of Case Management Order No. 10 Establishing Common Benefit Fee and Expense Protocols should be denied.

---

[6] Judge Pallmeyer's CBO applies to "all cases now pending, or later filed in, transferred to, or removed to, this Court…or to any attorney who signs the "Common Benefit Participation Agreement…" *Id*. Notably, the CBO does not apply to non-MDL cases in the absence of an attorney signing the participation agreement.

[7] The PLC cites Judge Kennelly's CBO from 2014 in *In re Testosterone Replacement Therapy Prods. Liab. Litig*. as an example of how its CBO is "…consistent with similar CMOs entered in other MDLs in this district." Mot. at 6. However, the PLC did not reference Judge Kennelly's 2022 CBO in MDL 3037 – *In re Recalled Abbott Infant Formula Prods. Liab. Litig*. which, like Judge Pallmeyer's CBO, does not apply to cases *not* in the MDL in the absence of a voluntary participation agreement and defers the creation of the fund and determination of the holdback amount. *See* **Exhibit 2** at 2-4.

Dated: January 12, 2024

                                              Respectfully submitted,

*/s/ Ashley Keller*
Ashley Keller (#6300171)
Keller Postman LLC
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220 Telephone
ack@kellerpostman.com