## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br><br>Master Docket Case No. 1:23-cv-00818<br><br>Honorable Mary M. Rowland |

## LUSTER PRODUCTS, INC.'S ANSWER AND
## AFFIRMATIVE DEFENSES TO MASTER LONG FORM COMPLAINT

NOW COMES the Defendant, Luster Products, Inc. (hereinafter "Luster" or "Defendant"), by and through its attorneys, Maron Marvel Bradley Anderson & Tardy LLC., and for its Answer and Affirmative Defenses to Master Long Form Complaint, states as follows:

## NATURE OF THIS MASTER COMPLAINT

1.      This Master Complaint sets forth allegations of fact and law common to those claims within this multidistrict proceeding relating to hair relaxer products. It includes allegations that Defendants manufactured, sold, distributed, advertised, and promoted toxic hair relaxer products that caused Plaintiffs to develop cancers and other injuries, although not all products and defendants are applicable to every plaintiff with claims in these proceedings. Plaintiffs seek compensatory and punitive damages, monetary restitution, medical monitoring and equitable relief, and all other available remedies as a result of injuries incurred by Defendants' defective products and other wrongful practices.

**ANSWER:     The Master Complaint speaks for itself. To the extent anything in this Paragraph 1 is construed as a material allegation, those allegations are denied.**

2.      This Master Complaint will address the claims arising as the direct and proximate result of the conduct of Defendants, their directors, agents, heirs and assigns, and/or their corporate predecessors, and their hair relaxer products, which include but are not limited to Dark & Lovely

(L'Oréal and SoftSheen), Optimum (L'Oréal and SoftSheen), Mizani (L'Oréal), Crème of Nature (Revlon), Revlon Realistic (Revlon), Motions (Strength of Nature), Just for Me (Strength of Nature), Soft & Beautiful (Strength of Nature), TCB (Strength of Nature), TCB Naturals (Strength of Nature), Profectiv Mega Growth (Strength of Nature), African Pride (Strength of Nature), Dream Kids (Strength of Nature), Dr. Miracle's (Strength of Nature), African Pride (Strength of Nature and Godrej SON Holdings), ORS Olive Oil (Dabur and Namaste), Hawaiian Silky (JF Labs), Cantu (PDC Brands), Design Essentials (McBride), Affirm (Avlon), Africa's Best (House of Cheatham) Pink Conditioning No-Lye Relaxer (Luster), Smooth Touch No-Lye Relaxer (Luster), and Silk Elements (Sally Beauty).

**ANSWER:    The Master Complaint speaks for itself. To the extent anything in this Paragraph 2 is construed as a material allegation, those allegations are denied.**

3.    This Master Complaint does not necessarily include all claims asserted in all of the transferred actions to this Court, nor is it intended to consolidate for any purpose the separate claims of the Plaintiffs herein. It is anticipated that individual plaintiffs may adopt this Master Complaint and the causes of action herein through use of a separate Master Short Form Complaint for Individual Claims, which will specify the particular products and defendants against whom claims are asserted by each individual plaintiff.

**ANSWER:    The allegations in Paragraph 3 of the Master Complaint contain conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 3 of the Master Complaint.**

4.    This Master Complaint does not constitute a waiver or dismissal of any actions or claims asserted in any individual actions, nor does any Plaintiff relinquish the right to move to amend their individual claims to seek any additional claims as discovery proceeds. As set forth

herein, each Plaintiff maintains that hair relaxers are defective, dangerous to human health, unfit and unsuitable to be advertised, marketed, and sold in the United States, and have lacked proper warnings of the dangers associated with their use. Any separate facts and additional claims of individual plaintiffs are set forth in those actions filed by the respective plaintiffs.

**ANSWER: The allegations in Paragraph 3 of the Master Complaint contain conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 3 of the Master Complaint.**

## NATURE OF THIS ACTION

5. Plaintiffs in this action seek compensation, and justice, for injuries resulting from use of defective hair relaxers designed, manufactured, sold, distributed, and marketed by the Defendants.

**ANSWER: The allegations asserted in the Master Complaint speak for itself. To the extent anything in this Paragraph 5 is construed as a material allegation against the Defendant, those allegations are denied.**

6. Plaintiffs' use of toxic chemical straightening products designed or manufactured by the Defendants was a direct result of Defendants' wrongful marketing practices. Defendants systematically misrepresented and continue to misrepresent the significant health impacts of hair relaxer use, all while targeting women of color and taking advantage of centuries of racial discrimination and cultural coercion which emphasized—both socially and professionally—the necessity of maintaining straight hair.

**ANSWER: Paragraph 6 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the**

**truth of the allegations in Paragraph 6 of the Master Complaint and therefore denies the same.**

7.      Rather than disclosing the risks and warning women and children, Defendants exploited for profit this deep-rooted connection between hair and identity in how they chose to market their hair relaxer products. Defendants' advertising and marketing of their hair relaxer products, and Defendants' failures to take reasonable and necessary steps to protect Plaintiffs from harm, (1) exposed Plaintiffs to brutally toxic products without warning; and (2) amplified institutionalized systems of discrimination that have minimized the cultural identity and heritage of women of African descent. Defendants advertised their hair relaxer products as, *inter alia*, "organic," "safe," "botanicals," "natural," and "ultra nourishing" in newspapers, magazines, and media predominantly consumed by Black and Brown women. The advertisements, commercials, and packaging for Defendants' hair relaxer products feature almost exclusively women of color with smooth hair texture.

**ANSWER:    Paragraph 7 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of the Master Complaint and therefore denies the same.**

8.      Indeed, the Defendants purposely targeted children to increase sales and ensure generations of dedicated consumers—all while having knowledge that the hair relaxer products they designed, manufactured, advertised, and sold contained toxic carcinogens.

**ANSWER:** **Paragraph 8 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, the allegations in Paragraph 8 of the Master Complaint are denied.**

9. Consumers of hair relaxer products relied on Defendant's misrepresentations and were misled as to the products' safety, and as a result have suffered brutal injuries including uterine and ovarian cancer. Many Plaintiffs have also suffered the loss of being able to have children – a tremendous blow to their legacies.

**ANSWER:** **Paragraph 9 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 of the Master Complaint and therefore denies the same.**

I. **PARTIES**

10. This Master Complaint is filed on behalf of all Plaintiffs whose claims are subsumed within MDL 3060. Plaintiffs in these individual actions have suffered personal injuries and death as a result of their use of Defendants various hair relaxer products.

**ANSWER:** **Paragraph 10 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of the Master Complaint and therefore denies the same.**

11. Plaintiffs have suffered personal injuries as a direct and proximate result of Defendants' conduct and misconduct as described herein in connection with the design,

development, manufacture, testing, packaging, promotion, advertising, marketing, distribution, labeling, warning, and sale of their respective hair relaxer products.

**ANSWER:** **Paragraph 11 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 of the Master Complaint and therefore denies the same.**

12. Defendant L'Oréal USA, Inc. is a Delaware corporation with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 of the Master Complaint and therefore denies the same.**

13. Defendant L'Oréal USA Products, Inc. is a Delaware corporation with its principal place of business and headquarters located at 10 Hudson Yards 347, 10th Avenue New York, New York 10001.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of the Master Complaint and therefore denies the same.**

14. Defendant SoftSheen-Carson, LLC is a limited liability company organized in the State of New York with its principal place of business and headquarters located at 80 State Street, Albany, New York 12207. Plaintiffs allege that SoftSheen-Carson, LLC's sole member and interested party is L'Oréal S.A., which is a French corporation having its headquarters and principal place of business in France.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 of the Master Complaint and therefore denies the same.**

15.     Defendant Revlon, Inc. is a Delaware corporation, with its principal place of business and headquarters located at One New York Plaza in New York, New York 10004.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15 of the Master Complaint and therefore denies the same.**

16.     Defendant Revlon Consumer Products Corporation is a Delaware corporation with its principal place of business at One New York Plaza in New York, New York 10004.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16 of the Master Complaint and therefore denies the same.**

17.     Defendant Revlon Group Holdings LLC is a limited liability company organized in Delaware with its principal place of business in Wilmington, Delaware. Defendant Revlon Group Holdings, LLC is a recently formed company as the result of Revlon's recent emergence from Chapter 11 Bankruptcy and shall assume the actions and omissions as described herein for its predecessor(s) who went through the Chapter 11 Bankruptcy proceedings, and is owned in part by Glendon Capital Management, King Street Capital Management, Angelo Gordon & Co., Antara Capital, Nut Tree Capital Management, Oak Hill Advisors and Cyrus Capital Partners.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17 of the Master Complaint and therefore denies the same.**

18. Revlon, as a "Debtor," defined in ECF Doc 1860, Case No. 22-10760-dsj (Bankr. S.D.N.Y.) are named Defendants, both in its current and prior iteration to Revlon's Chapter 11 Bankruptcy for conduct related to both before and after the bankruptcy proceedings not assumed by the new entity created as a result of the Chapter 11 Bankruptcy proceedings. These Revlon entities as well as the above-mentioned Revlon entities are collectively referred to as "Revlon."1

**ANSWER: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 18 of the Master Complaint and therefore denies the same.**

19. Defendant Strength of Nature, LLC is a limited liability company organized in Georgia, with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405. Plaintiffs allege that Strength of Nature, LLC's sole member and interested party is Godrej SON Holdings, Inc., a Georgia corporation, with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

**ANSWER: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 19 of the Master Complaint and therefore denies the same.**

20. Defendant Dabur International Limited is a foreign entity incorporated in the Isle of Man with its principal place of business and headquarters located at 5 Independence Way, Princeton, New Jersey 08540.

**ANSWER: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 of the Master Complaint and therefore denies the same.**

21.     Dabur International USA Ltd. is a wholly owned subsidiary of Dabur India, Ltd. and Dabur India Ltd.'s sole United States distributor, with its principal place of business and headquarters at 310 South Racine Avenue, Chicago, Illinois 60607.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 21 of the Master Complaint and therefore denies the same.**

22.     Defendant Namaste Laboratories, LLC is a limited liability company organized in Illinois with its principal place of business located at 310 South Racine Avenue, Chicago, Illinois 60607. Plaintiffs allege that Namaste Laboratories, LLC's sole member and interested party is Dermoviva Skin Essentials, Inc.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 22 of the Master Complaint and therefore denies the same.**

23.     Dermoviva Skin Essentials, Inc., is a Delaware corporation having its headquarters and principal place of business at 310 South Racine Avenue, Chicago, Illinois 60607.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 23 of the Master Complaint and therefore denies the same.**

24.     Defendant AFAM Concept, Inc., d/b/a JF Labs Inc., is an Illinois corporation with its principal place of business and headquarters located at 7401 South Pulaski Road, Chicago, Illinois 60629-5837.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 24 of the Master Complaint and therefore denies the same.**

25. Defendant Parfums de Coeur, Ltd. d/b/a PDC Brands is a Connecticut corporation with its principal place of business and headquarters located at 750 East Main Street, Suite 1000, Stamford, Connecticut 06901.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 25 of the Master Complaint and therefore denies the same.**

26. Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Boulevard, Roswell, Georgia 30075. Plaintiffs allege that Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Georgia.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 26 of the Master Complaint and therefore denies the same.**

27. Defendant House of Cheatham, LLC, is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiffs allege that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 27 of the Master Complaint and therefore denies the same.**

28.     Defendant McBride Research Laboratories, Inc. is a Georgia corporation with its principal place of business and headquarters located at 2272 Park Central Boulevard in Decatur, Georgia 30035-3824.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 of the Master Complaint and therefore denies the same.**

29.     Defendant Sally Beauty Holdings, Inc. d/b/a Silk Elements is a Delaware corporation with its principal place of business at 3001 Colorado Boulevard Denton, Texas 76210.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the Master Complaint and therefore denies the same.**

30.     Defendant Luster Products, Inc. is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd St., Chicago, Illinois 60609.

**ANSWER:** **Defendant admits the allegations.**

## II.     JURISDICTION AND VENUE

31.     This Court has subject-matter jurisdiction over each of the constituent cases in this litigation for one or more of the following reasons:

   a.     Under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Plaintiffs and Defendants are residents of different states;

   **b.**     Under 28 U.S.C. § 1331 because they involve questions of federal law arising under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.*, and the amount in controversy exceeds $50,000. 15 U.S.C. § 2310. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

Plaintiffs' state law claims because all claims alleged herein form part of the same case or controversy.

**ANSWER:    Defendant admits the court has subject matter jurisdiction.**

32.     This Court has personal jurisdiction over the Defendants in accordance with the allegations asserted here and in each Plaintiff's Short Form Complaint.

**ANSWER:    The allegations in Paragraph 32 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 32 of the Master Complaint.**

**III.    FACTS COMMON TO ALL COUNTS**

**A.    Market for Hair Relaxer Products**

33.     Black people make up about 13 percent of the U.S. population, but by one estimate, Black spending accounts for as much as 22 percent of the $42 billion-a-year personal care products market, suggesting that Black people buy and use more of such products—including those with potentially harmful ingredients—than Americans as a whole.[2]

**ANSWER:    To the extent Paragraph 33 references any report, study, or other document outside of the Master Complaint, the referenced document speaks for itself. To the extent any material allegations are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 of the Master Complaint, and those allegations are denied.**

34.     In an analysis of ingredients in 1,177 beauty and personal care products marketed to Black and Brown women, about one in twelve was ranked highly hazardous on the scoring system of EWG's Skin Deep® Cosmetics Database, an online resource for finding less-hazardous alternatives to personal care products. The worst-scoring products marketed to Black and Brown

women were hair relaxers (along with hair colors and bleaching products). Each of these categories had an average product score indicating high potential hazard.

**ANSWER:** **To the extent Paragraph 34 references any report, study, or other document outside of the Master Complaint, the referenced document speaks for itself. To the extent any material allegations are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 of the Master Complaint, and those allegations are denied.**

35. In the U.S. alone, Black and Brown consumers spend over $1 trillion each year, with a significant amount of that spending toward hair care products.

**ANSWER:** **To the extent Paragraph 35 references any report, study, or other document outside of the Master Complaint, the referenced document speaks for itself. To the extent any material allegations are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of the Master Complaint, and those allegations are denied.**

36. In 2020, the global black hair care market was estimated at $2.5 billion, with the hair relaxer market alone estimated at $718 million in 2021, with the expectation of growth to $854 million annually by 2028.

**ANSWER:** **To the extent Paragraph 36 references any report, study, or other document outside of the Master Complaint, the referenced document speaks for itself. To the extent any material allegations are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of the Master Complaint, and those allegations are denied.**

37.     The Defendants, aware of the unique history of their target consumers, developed and have long deployed a marketing framework based on misrepresentations that exploit their consumers' social and economic need to maintain straight hair.

**ANSWER:     Paragraph 37 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 of the Master Complaint and therefore denies the same.**

### 1.     History of Afro-Textured Hair and Hair Relaxers—The Framework for Defendants' Wrongful Marketing Practices

38.     Dating back to 1619, Black and Brown women have been degraded based upon the texture of their hair and compelled to conform to the Eurocentric beauty standard that furthers the notion that "straight" hair is an indicator of social status, moral virtue, and professional competence. By contrast, hair texture of African heritage ("afro-textured hair") has been characterized as unattractive, unprofessional, and inferior. 3

**ANSWER:     To the extent Paragraph 38 references any report, study, or other document outside of the Master Complaint, the referenced document speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 38 of the Master Complaint, and those allegations are denied.**

39.     In its natural state, afro-textured hair is characterized by coily, springing, zigzag, and s-curve curl patterns, as well as its density, fullness, texture, and feel.

**ANSWER:     Defendant does not know what the terms "coily, springing, zigzag, and s-curve curl patterns" mean and cannot properly respond. To the extent that a response is**

**required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 of the Master Complaint and therefore denies the same.**

40.     Certain African hairstyles can be traced back thousands of years, when they often indicated tribe membership and stature,5 slave masters commonly forced enslaved Black and Brown people to cut their hair. This was a way to "break their spirit and make slaves easier to control."6 What was once a symbol of pride and symbolism became a tool for subordination and degradation. Hair cutting was also a common form of punishment during slavery and during Jim Crow.

**ANSWER:     To the extent Paragraph 40 references any material outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40 of the Master Complaint, and those allegations are denied.**

41.     The very nature of slavery involved working long hours in dire conditions. "Hair that was once a source of pride and expression of identity was often tucked away beneath cloth to cover rough, tangled tresses and shield them from hours spent toiling under the sun."7 The hair that was once an important spiritual and cultural symbol became framed and viewed as tangled, matted, and unseemly.

**ANSWER:     To the extent Paragraph 41 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 of the Master Complaint, and those allegations are denied.**

42.     Because afro-textured hair reflected African heritage rather than European ancestry, afro-textured hair was considered a symbol of low social status.

**ANSWER:   To the extent any material allegations are alleged in Paragraph 42 of the Master Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42 of the Master Complaint, and those allegations are denied.**

43.     In 1786, the Governor of Louisiana, Don Esteban Miro, passed the "Tignon Law" requiring women of African descent to wear a tignon (scarf) over their hair as a way of signifying they were members of the slave class, *even if they were free.* This law sent a direct signal to Black and Brown people that their hair held a symbol of inequality and was a sign of poverty regardless of their actual social status.

**ANSWER:   To the extent Paragraph 43 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 43 of the Master Complaint, and those allegations are denied.**

44.     Texturism—the idea that "good hair" is equated with a straighter hair texture—was cemented into American culture during slavery. "Eurocentric beauty standards dictated that coily hair and dark skin were unattractive and inferior"; "lighter skinned and straighter haired slaves were favored and selected for more desirable positions in the house" as opposed to the fields.9 Thus, "the texture of an enslaved person's hair could determine their value and working conditions, which in turn might impact their overall health, comfort and chances for freedom[.]"10 Early American culture impressed on Black and Brown men and women that the straighter and less kinky

their hair was, the better a life they could have. This stigma fueled the desire for tools and products that could straighten Black and Brown hair texture.

**ANSWER:** **To the extent Paragraph 44 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 44 of the Master Complaint, and those allegations are denied.**

45.     In slavery and post-slavery America, Black and Brown women found a need to morph their hairstyles "from the elaborate and symbolic designs of Africa into an imitation of White styles adapted to Black and Brown kinks and curls.

**ANSWER:** **To the extent Paragraph 45 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 45 of the Master Complaint, and those allegations are denied.**

46.     In an effort to obtain a better life, many enslaved people, and later their progeny, would go to "dangerous lengths to straighten their hair.

**ANSWER:** **To the extent Paragraph 46 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 46 of the Master Complaint, and those allegations are denied.**

47. Afro-textured hair, can be manipulated into a straightened state with the use of hair tools and non-chemical hair products. Prior to the invention of the chemical relaxer in 1900s individuals would "press" afro-textured hair with metal hair tools such as the "hot comb." Pressing combs or hot combs are metal hair tools that are first heated in a stove or ceramic heater, then pressed into hair strands to temporarily straighten them.

**ANSWER:** **To the extent Paragraph 47 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 of the Master Complaint, and those allegations are denied.**

## 2. The Invention of the Chemical Relaxer

48. Black inventor Garrett Augustus Morgan discovered and created a system that would permanently straighten afro-textured hair, eliminating the issue of "shrinkage," where the curl pattern results in hair appearing to be shorter than it actually is.

**ANSWER:** **To the extent any material allegations are alleged in Paragraph 48 of the Master Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 48 of the Master Complaint, and those allegations are denied.**

49. In addition to being an inventor, Morgan was a tailor. In the early 1900s, Morgan was repairing his sewing machines and creating a way to polish the needles to stitch fabrics more smoothly.14 He applied a chemical solution to the needles and wiped the solution off with a rag and later noticed that the "curly" fibers in the rag were straightened after exposure to the chemical.

**ANSWER:** **To the extent Paragraph 49 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material**

**allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 49 of the Master Complaint, and those allegations are denied.**

50.     Morgan turned his formula into a gel-hair product, creating the G.A. Morgan Hair Refining Cream that was marketed in 1913.

**ANSWER:     To the extent any material allegations are alleged in Paragraph 50 of the Master Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 50 of the Master Complaint, and those allegations are denied.**

51.     Morgan's invention paved the way for the alkaline relaxer and later development of additional chemical-based permanent hair relaxing products in the Black and Brown hair care market, also known as hair relaxers.

**ANSWER:     To the extent any material allegations are alleged in Paragraph 51 of the Master Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 51 of the Master Complaint, and those allegations are denied.**

52.     Over the next 40-plus years, these products dominated the market for relaxing afro-textured hair until the emergence of new technology involving lye-based formulas.

**ANSWER:     To the extent any material allegations are alleged in Paragraph 52 of the Master Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 52 of the Master Complaint, and those allegations are denied.**

### 3. Defendant's Marketing Efforts

53. In 1971, Dark and Lovely manufactured the first lye relaxer. The formula consisted of sodium hydroxide, water, petroleum jelly, mineral oils, and emulsifiers.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 53 of the Master Complaint and therefore denies the same.**

54. In the 1970s, lye relaxer users and manufacturers noticed that the lye formula stripped proteins from the hair strand, resulting in the hair thinning and breaking. As a result, Johnson and Johnson marketed the first "gentle" hair relaxer, Gentle Treatment, in 1981, which used chemicals such as potassium hydroxide and lithium hydroxide.

**ANSWER:** **Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 54 of the Master Complaint and therefore denies the same.**

55. For decades and to present, Defendants designed, manufactured, and marketed their hair relaxer products to Black and Brown customers across the United States, and the world, relying on the same historical Eurocentric standards of beauty. Defendants' marketing scheme heavily leverages branding and slogans that reinforce straight hair as the standard of beauty and professionalism. The Defendants marketed their hair relaxer products without ever disclosing known health risks of the toxic chemicals contained in these products or taking other reasonable steps to ensure their products would not harm consumers.

**ANSWER:** **Paragraph 55 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the**

truth of the allegations in Paragraph 55 of the Master Complaint and therefore denies the same.

56.     For example, in the first ad above, L'Oréal touts "how beautiful Black hair *can be*" (emphasis added), implying that in its natural state Black hair is *not* as beautiful as it *could be* if straightened.

**ANSWER:    To the extent Paragraph 56 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 56 of the Master Complaint, and those allegations are denied.**

57.     Defendants have advertised their hair relaxer products to Black and Brown customers as a way to exploit these anti-Black standards of beauty as early as the 1970s. For example:

a       Johnson Products Company (later acquired by Defendant L'Oréal) advertised its Ultra Sheen hair relaxer products as early as the 1960s:

b.      Defendants L'Oréal and SoftSheen have produced advertisements for their hair relaxer products as early as the 1970s:

c.      Defendant Godrej has advertised its hair relaxer products since the 1990s:

d.      Defendant Revlon has advertised its hair relaxer products for decades:

e.      Defendant Strength of Nature has also advertised many of its hair relaxer brands as early as the 1970s:

f.      Defendant Luster Products Co. has marketed and advertised its products since the 1950s:

g.      Defendant Avlon Affirm has been marketing its Hair Relaxer Products since as early as the 1980s.

**ANSWER:** Paragraph 57 of the Master Complaint contains multiple sub-parts and allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 57 of the Master Complaint and therefore denies the same. As to sub-part 'f' which appears directed to this Defendant, Defendant admits only that it has advertised its products.

58.     The Defendants all marketed their hair relaxer products without ever disclosing known health risks of the toxic design and chemicals contained in these products.

**ANSWER:** Paragraph 58 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 58 of the Master Complaint and therefore denies the same.

59.     In addition to Defendants' wrongful omissions above, the Defendants also made several affirmative misrepresentations and additional significant material omissions in conjunction with the sale of their products:

a.      *Marketing Toxic Products to Children*: Beginning in 1990, Godrej developed and began marketing "Just For Me," the first Hair Relaxer Product targeted towards young Black and Brown girls. Just for Me entered the market with a catchy commercial. On the product packaging, Godrej lauded the product as safer by claiming that it was a no-lye formula designed to be "gentle" for children's sensitive scalps while Defendants knew that the Just for Me product contained more chemicals than, and was equally or more toxic than, some adult brands of hair relaxers.

b.      Defendants misrepresented that "no lye" relaxers or "gentle treatment" relaxers were milder and/or safer than alternative relaxers. This was false. Hair relaxer products marketed as using "gentle treatment" or similar terminology are not any safer than the other hair relaxer products on the market.

c. Defendant Strength of Nature's (Godrej) products, such as Soft & Beautiful are intentionally labeled as "Botanicals" and with "Natural" ingredients that are "Ultra Nourishing," including but not limited to using "Natural Plant Oils and Butters." These representations are intended to suggest to consumers that these "Natural" hair relaxer products are safer or less toxic than alternatives, but that is false. For example:

d. Defendant Strength of Nature's Beautiful Textures hair relaxer product is marketed as being able to "go from curly to straight and back again with using [h]arsh [c]hemicals." Defendant Strength of Nature affirmatively represented that there were no "harsh chemicals" in its Beautiful Textures hair relaxer product. That was false.

e. On the packaging of their Motions hair relaxer products, Defendants Strength of Nature and Godrej on claim the product is "specifically created with Silk Extracts, Coconut oil and Shea butter" and that it will make hair "more vibrant, healthy-looking and silky than before the relaxing process." The packaging also boasts of offering "85% less breakage and 80% more shine after just one use." These statements falsely imply, and lead a user to believe, that Defendants Strength of Nature and Godrej's product is both safe and "natural" when it is not.

f. Defendants Namaste and Dabur's hair relaxer products are marketed as "Olive Oil" products to imply that they use natural ingredients and lack toxic chemicals, which is false. These Defendants' products are also advertised as having "Built in Protection," implying they can be  used safely. This is also false.

g. Defendants Namaste and Dabur's website states that their hair relaxer products use "Rich Olive and Avocado Oils" that they claim "moisturize and condition" and that they include "Aloe Vera to help **protect the skin and scalp**." While representing that aloe vera helps "protect the skin and scalp" of children, the Defendants chose to omit that the other selected chemicals significantly increase the risk of ovarian and uterine cancer.

h. Defendants Namaste and Dabur's hair relaxer products claim that they "use[] the latest technology to **safely** elongate tight coils." That is false—these products do not safely relax hair.

i. Defendant L'Oréal's and SoftSheen's Dark & Lovely brand hair relaxer products are intentionally labeled as providing a "healthy" gloss and containing "nourishing" shea butter with jojoba and avocado oils. The terms "healthy" and "nourishing" suggest that hair relaxer products are safe and even beneficial for the body when they are not.

j. Defendant L'Oréal's Dark & Lovely products are also intentionally labeled as being "Triple Nourished" and as products that "help[] preserve signs of

healthy hair" with ingredients including but not limited to "Jojoba & Avocado Oil" and "Shea Butter." The terms "healthy" and "nourishing" suggest that these hair relaxer products are safe and even beneficial for the body when they are not.

k.  Defendant L'Oréal and Softsheen-Carson's Beautiful Beginnings hair relaxer product line, which is targeted to young Black girls, states that it "moisturizes, nourishes, and prevents breakage…**without hurting your scalp**." These representations suggest that their hair relaxer products are safe and even beneficial for children's bodies when they are not.

l.  Defendant Strength of Nature (Godrej) intentionally markets its hair relaxer products for kids as containing a "natural hair milk," and including ingredients such as "coconut milk, shea butter, vitamin e, and sunflower oil." The hair relaxer products also boast that they contain "No-Lye Relaxer" around an image of a green leaf. Emphasizing these natural ingredients, and including the green leaf surrounded by ingredients the products do not contain, implies that these products primarily use natural ingredients, lack toxic chemicals, and are safe, which is all false.

m.  Defendant Strength of Nature (Godrej)'s hair relaxer products sold under the Dr. Miracle's brand are advertised as "Strong + Healthy." This false representation suggests that the products are safe—and even beneficial—for the body when they are not.

n.  Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. and House of Cheatham, LLC markets its Africa's Best hair relaxer product as containing "nourishing African botanicals and Herbal Extracts." These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

o.  Defendant McBride Research Laboratories, Inc. markets its Design Essentials hair relaxer products as leaving hair "healthy" and promotes its products as using natural ingredients such as milk, honey, nectar, olive oil, and shea butter. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

p.  Defendant Sally Beauty Holdings, Inc. d/b/a Silk Elements markets its Silk Elements hair relaxer products as using natural ingredients such as olive oil and shea butter. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

q.  Defendant Luster Products Co. markets its Pink Conditioning No-Lye Relaxer and Smooth Touch No-Lye Relaxer products as using "nourishing

ingredients" including shea butter, argan oil, Vitamin E, and olive oil which they claim provide "added protection" for the user. These representations suggest that the products use primarily natural ingredients, lack toxic chemicals, and are safe and even beneficial for the body, when they are not.

**ANSWER:**  **Paragraph 59 of the Master Complaint contains multiple sub-parts and allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 59 of the Master Complaint and therefore denies the same. With regard to sub-part 'q' which appears directed at this Defendant, Defendant responds that its marketing materials speak for themselves, and any allegations or assertion outside those materials or misstating those materials are denied.**

60.    Defendants' marketing efforts, all have a common theme, they are filled with representations and insinuations that their hair relaxing products are safe and beneficial to the user. The use of words such as organic, natural, nourishing, added protection or healthy in their marketing and can lead a consumer to believing these hair relaxer products are safe when in fact they are not.

**ANSWER:**  **Paragraph 60 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 60 of the Master Complaint and therefore denies the same.**

61.    Defendants made these affirmative statements and/or omissions all while knowing or should have knowing of the true danger of their hair relaxer products when used by a plaintiff.

**ANSWER:**  **Paragraph 61 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response**

**is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61 of the Master Complaint and therefore denies the same.**

62. Despite having or should of having this knowledge, Defendants continued their marketing efforts without ever attempting to correct the misconceptions they were creating.

**ANSWER:     Paragraph 62 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 62 of the Master Complaint and therefore denies the same.**

### 4.     Chemical Relaxer Use: From Adolescence into Adulthood

63. Hair relaxers are applied to the base of the hair shaft and left in place for a cooking interval, during which the relaxer alters the hair's texture by purposefully damaging the hair's natural protein structure. The effect of this protein damage is to straighten and smooth the hair. After a period of weeks or months, depending on the hair's natural growth rate, the treated portion of the hair grows away from the scalp as new growth sprouts from the roots. Maintaining the relaxed hairstyle requires on-going application of hair relaxer to the new growth, a process colloquially referred to in the community as "re-touches," resulting in users relaxing their new growth every four to eight weeks on average.

**ANSWER:     Because not all hair relaxers are the same, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 63 of the Master Complaint and therefore denies the same.**

64.     Hair relaxing is highly prevalent among Black and Brown women. In some studies, up to 90% of Black women have used hair relaxers and straighteners, which is more commonplace for these women than women of any other race.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 64 in the Master Complaint and therefore denies the same.**

65.     The reasons for Black women's use and dependence upon hair straightening products are multi-faceted.23 There are superficial reasons such as maintenance and personal choice. Yet, in addition to aesthetic aspirations, based upon the historical framework set forth above, maintaining straight hair was and is a means of integrating. The failure to maintain an appearance with straightened hair has and does impact the lives of Black women in education, socially, and in the professional sphere.

**ANSWER:     To the extent Paragraph 65 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 65 of the Master Complaint, and those allegations are denied.**

66.     For example, Black and Brown girls and women are often victims of hair discrimination. According to the Dove CROWN24 Research Study for Girls (2021)25 conducted by JOY Collective, two-thirds (66%) of Black and Brown girls in White-majority schools who were surveyed reported that they have experiencing hair discrimination. 45% of Black and Brown girls in all school environments reported hair discrimination. Nearly half (47%) of the Black mothers surveyed report experiencing hair discrimination.

**ANSWER:** To the extent Paragraph 66 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 66 of the Master Complaint, and those allegations are denied.

67. Moreover, hair discrimination is not only pervasive, but it also often starts at an early age for young black girls:

a. 100% of Black elementary school girls in majority-White schools who report experiencing hair discrimination state they experience the discrimination by the age of 10.26

b. 86% of Black teens who experience discrimination state they have experienced discrimination based on their hair by the age of 12.

**ANSWER:** To the extent Paragraph 67, and its sub-parts, references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 67 of the Master Complaint, and those allegations are denied.

68. In adulthood, hair discrimination impacts Black women's economic security. In the professional world, Black women with natural and unstraightened hair are "often deemed unkempt and unemployable. "Black women are one and a half times more likely to be sent home from the workplace because of their hair. Black women are 89% more likely than White women to agree with the statement, "I have to change my hair from its natural state to fit in at the office." Many Black women succumb to these professional pressures and are compelled to use hair relaxers to both straighten and maintain their straight hair with routine re-touches.

**ANSWER:** To the extent Paragraph 68 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 68 of the Master Complaint, and those allegations are denied.

69. The Defendants were acutely aware of, and marketed to, the stereotypes and history concerning natural Black and Brown hair.

**ANSWER:** Paragraph 69 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 69 of the Master Complaint and therefore denies the same.

### 5. Defendants' Hair Relaxer Products Contain Harmful, Toxic and Carcinogenic Ingredients

70. Defendants were aware or should have been aware of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the hair relaxer products based on the evolving scientific studies, on-going research, and various government standards and regulations.

**ANSWER:** Paragraph 70 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 70 of the Master Complaint and therefore denies the same. To the extent the allegations are directed specifically at this Defendant, the allegations are likewise denied.

71. This is due to the harmful, toxic, and carcinogenic ingredients in their hair relaxer products that are known to disrupt and/or harm a woman's endocrine system. Such harmful, toxic and carcinogenic ingredients have included over time, but are not limited to, phthalates, parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, formaldehyde, and other toxic chemicals.

**ANSWER: Paragraph 71 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 71 of the Master Complaint and therefore denies the same.**

72. The endocrine system is indispensable for life and influences nearly every cell, organ, and process within the body.31 The endocrine system regulates all biological processes in the body from conception through adulthood, including the development of the brain and nervous system, the growth and function of the reproductive system, as well as the metabolism and blood sugar levels.

**ANSWER: To the extent Paragraph 72 references any materials outside of the Master Complaint, the referenced document(s) speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 72 of the Master Complaint, and those allegations are denied.**

73. The precise functioning of the endocrine system is vital to maintaining hormonal homeostasis, the body's natural hormonal production and degradation. A slight variation in

hormone levels can lead to significant adverse-health effects, including reproductive impairment and infertility, cancer, cognitive deficits, immune disorders, and metabolic syndrome.

**ANSWER:** **Defendant admits the endocrine system is a part of the body's natural hormonal production. Defendant is without knowledge to admit or deny the remainder of the allegations in Paragraph 73, and therefore denies the same.**

74. Endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system.

**ANSWER:** **Defendant is without knowledge to admit or deny the allegations in Paragraph 74, and therefore denies the same.**

75. EDCs can block hormone stimulus by inducing epigenetic changes, (modifications to DNA that regulate whether genes are turned on or off) or altering the structure of target cells' receptors. Natural and synthetic EDCs are present in some of Defendants' hair relaxer products under the guise of "fragrance" and "perfumes", and thus enter the body when these products are applied to the hair and scalp.

**ANSWER:** **Defendant is without knowledge to admit or deny the allegations in Paragraph 75, and therefore denies the same.**

76. Natural and synthetic EDC's are present in some of Defendants' hair relaxer products under the guise of "fragrance" and "perfumes", and thus enter the body when these products are applied to the hair and scalp.

**ANSWER:** **Paragraph 76 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the**

truth of the allegations in Paragraph 76 of the Master Complaint and therefore denies the same.

77.  One of the EDCs, Phthalates are known to interfere with natural hormone production and degradation and are harmful to human health.

**ANSWER:  Defendant is without knowledge to admit or deny the allegations in Paragraph 77, and therefore denies the same.**

78.  They were developed in the last century and are used to make plastics more durable. These colorless, odorless, oily liquids are also referred to as "plasticizers" based on their most common uses.

**ANSWER:  Defendant is without knowledge to admit or deny the allegations in Paragraph 78, and therefore denies the same.**

79.  Chronic exposure to phthalates will adversely influence the endocrine system and functioning of multiple organs. Several countries have established restrictions and regulations on some types of phthalates.

**ANSWER:  Defendant is without knowledge to admit or deny the allegations in Paragraph 79, and therefore denies the same.**

80.  Under the authority of the Fair Packaging and Labeling Act ("FPLA"), the FDA requires an ingredient declaration on cosmetic products sold at the retail level to consumers.

**ANSWER:  The allegations in Paragraph 80 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 80 of the Master Complaint.**

81.  However, the regulations do not require the listing of the individual fragrance or flavor, or their specific ingredients, meaning phthalates and other EDCs evade listing when

combined with a fragrance. As a result, consumers are not able to determine from the ingredient declaration on the label if phthalates or other toxic chemicals are present in a fragrance used in the hair relaxer products used by the Plaintiffs and placed into the stream of commerce by Defendants.

**ANSWER: The allegations in Paragraph 81 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 81 of the Master Complaint.**

B. **Scientific Studies Confirm – Hair Relaxer Products Cause Uterine and Ovarian Cancer**

1. **Uterine Cancer**

82.     Though death rates from other cancers in women have declined in recent years, death rates for uterine cancer have increased by more than 100% in the last 20 years.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 82 of the Master Complaint and therefore denies the same.**

83.     Uterine cancer is the fourth most common cancer for women in the United States, and the most commonly diagnosed gynecological cancer. An estimated 66,570 new cases of uterine cancer are diagnosed each year, and around 12,940 women will die every year from the condition.

**ANSWER:     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 83 of the Master Complaint and therefore denies the same.**

84.     Uterine cancer has a hormonally driven etiology, and an imbalance of estrogen and progesterone can lead to the development of uterine cancers.

**ANSWER: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 84 of the Master Complaint and therefore denies the same.**

85. In October 2022, the National Institutes of Health released a study of approximately 34,000 women, aged 35-74, and which was conducted over approximately 11 years.

**ANSWER: The study referenced in Paragraph 85 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 85 of the Master Complaint, and those allegations are denied.**

86. The study revealed that there were significantly higher rates of uterine cancer in women who had used hair relaxers.

**ANSWER: The study referenced in Paragraph 86 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 86 of the Master Complaint, and those allegations are denied.**

87. Specifically, the study found that an estimated 1.64% of women who never used chemical hair relaxers would go on to develop uterine cancer by the age of 70. However, frequent users of hair relaxers were nearly three 3 more likely to develop uterine cancer than women who never used hair relaxers.

**ANSWER: The study referenced in Paragraph 87 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 87 of the Master Complaint, and those allegations are denied.**

88.     The study found that women who had ever used hair relaxers had an approximately doubled risk of developing uterine cancers as compared to women who did not use hair relaxers.

**ANSWER:    The study referenced in Paragraph 88 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 88 of the Master Complaint, and those allegations are denied.**

### 2.      Ovarian Cancer

89.     In a 2021 study funded by NIH and the National Institute on Minority Health Sciences, frequent use of hair relaxers was strongly associated with ovarian cancer.

**ANSWER:    The study referenced in Paragraph 89 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 89 of the Master Complaint, and those allegations are denied.**

90.     In fact, the study revealed that those who frequently (four or more times per year) used hair relaxers were more than twice as likely to develop ovarian cancer.

**ANSWER:    The study referenced in Paragraph 90 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 90 of the Master Complaint, and those allegations are denied.**

91.     It is estimated that 19,880 women in the United States will be diagnosed with ovarian cancer in 2022, with an estimated 12,810 of those diagnoses resulting in death.

**ANSWER:    The study referenced in Paragraph 91 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient**

knowledge or information to form a belief as to the truth of the allegations in Paragraph 91 of the Master Complaint, and those allegations are denied.

92.     Like uterine cancer, ovarian cancer is also believed to have a hormonally driven etiology, meaning that the insertion of hormonal disrupting compounds and the subsequent disruption of a woman's hormonal balance could lead to ovarian cancer.

**ANSWER:    Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 92 of the Master Complaint and therefore denies the same.**

93.     Products that are used to relax hair texture have been found to contain an array of endocrine disrupting compounds including, but not limited to, phthalates, parabens, cyclosiloxanes, and metals, in addition to formaldehyde. These chemicals can alter the body's delicate hormonal balance, and cause spikes or drops in levels of estrogens and progesterones (as well as other hormones).

**ANSWER:    Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 93 of the Master Complaint and therefore denies the same.**

94.     Recent studies have found an association between personal hair care products, including products that contain endocrine disrupting compounds, and ovarian cancer.

**ANSWER:    Any study referenced in Paragraph 94 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 94 of the Master Complaint, and those allegations are denied.**

95.     Widely used chemical hair products, such as hair relaxers, are a source of exposure to carcinogens and these endocrine disrupters alike.

**ANSWER:     Defendant denies the allegations.**

96.     Other studies have found a positive correlation between the use of hair relaxers and incidents of ovarian cancer. Self-reported frequent use of hair relaxers has been associated with a higher risk of ovarian cancer. Black and Brown women, the overwhelming majority of consumers of hair relaxer products, are more susceptible to the risk of ovarian cancer associated with the use and distribution of Defendants' products.

**ANSWER:     The study referenced in Paragraph 96 speaks for itself. To the extent any material allegations are alleged, which Defendant denies, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 96 of the Master Complaint, and those allegations are denied.**

**C.     Regulatory Framework**

97.     The law does not require cosmetic products or ingredients, other than color additives, to have FDA approval before they go to market. But there are laws and regulations that apply to cosmetics placed into the market. The two most important laws pertaining to cosmetics marketed in the United States are the Federal Food Drug and Cosmetic Act ("FD&C Act") and the Fair Packaging and Labeling Act ("FPLA").

**ANSWER:     The allegations in Paragraph 97 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 97 of the Master Complaint.**

98.     The FD&C Act expressly prohibits the marketing of "adulterated" or "misbranded" cosmetics in interstate commerce.

**ANSWER: The allegations in Paragraph 98 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 98 of the Master Complaint.**

99.     Adulteration refers to a violation involving product composition whether it results from ingredients, contaminants, processing, packaging shipping or handling.

**ANSWER: The allegations in Paragraph 99 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 99 of the Master Complaint.**

100.     Under the FD&C Act, a cosmetic is adulterated if, *inter alia*: (1) it bears or contains any poisonous or deleterious substance causing injury to the product user, or (2) if its container is composed in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health.

**ANSWER: The allegations in Paragraph 100 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 100 of the Master Complaint.**

101.     Misbranding refers to violations involving improperly labeled or deceptively packaged products.

**ANSWER: The allegations in Paragraph 101 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 101 of the Master Complaint.**

102.     Under the FD&C Act, a cosmetic is misbranded if: (1) labeling is false or misleading, (2) the label does not include all required information, (3) required information is not

prominent and conspicuous, or (4) the packaging and labeling is in violation of an applicable regulation issued pursuant to section 3 and 4 of the Poison Prevention Packaging Act of 1970.

**ANSWER: The allegations in Paragraph 102 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 102 of the Master Complaint.**

103.    Under federal law, cosmetic manufacturers are not required to submit their safety data to the FDA. However, it is against the law to put an ingredient in a cosmetic that makes the cosmetic harmful when used as intended. An example of such an ingredient is methylene chloride because it causes cancer in animals and is likely harmful to humans.

**ANSWER: The allegations in Paragraph 103 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 103 of the Master Complaint.**

104.    Companies and individuals who manufacture and/or market cosmetics have a legal responsibility and duty to ensure the safety of their own products.

**ANSWER: Defendant admits only those duties imposed by law. Defendant denies any allegations or assertions contained in Paragraph 104 of the Master Complaint.**

105.    The FDA has consistently advised cosmetics manufacturers to use whatever testing is necessary to ensure the safety of products and ingredients, which may be substantiated through: (a) reliance on already available toxicological test data on individual ingredients and on product formulations that are similar in composition to the particular cosmetic, and (b) performance of any additional toxicological and other tests that are appropriate in light of such existing data and information.

**ANSWER: The allegations in Paragraph 105 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 105 of the Master Complaint.**

106. Except for color additives and ingredients prohibited or restricted by regulation, a manufacturer may use any ingredient in the formulation of a cosmetic, provided that: (1) the ingredient and the finished cosmetic are safe under labeled or customary conditions of use, (2) the product is properly labeled, and (3) the use of the ingredient does not otherwise cause the cosmetic to be adulterated or misbranded under the laws the FDA enforces.

**ANSWER: The allegations in Paragraph 106 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 106 of the Master Complaint.**

107. With respect to whether the product is properly labeled, 21 CFR § 740.1 defines the establishment of warning statements related to cosmetic products. § 740.1 states, "The label of a cosmetic product _**shall**_ bear a warning statement whenever necessary or appropriate to prevent a health hazard that _**may**_ be associated with the product." (emphasis added). This warning directive directly correlates with the broad authority and responsibility of manufacturers over their own cosmetic products to ensure that products are safe under labeled or customary conditions of use, properly labeled, and not adulterated or misbranded under FDA laws.

**ANSWER: The allegations in Paragraph 107 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 107 of the Master Complaint.**

108. When a manufacturer is unable to adequately substantiate the safety of their product before marketing, the product is considered to be misbranded if the principal display panel does

not include the required, "conspicuous statement" from 21 CFR § 740.10: "*Warning* – The safety of this product has not been determined."

**ANSWER: The allegations in Paragraph 108 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 108 of the Master Complaint.**

109.   In short, under the current regulatory framework the Defendants were and are required to assess the safety of their hair relaxer products and warn consumers of any and all health hazards.

**ANSWER: The allegations in Paragraph 109 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 109 of the Master Complaint.**

110.   Having this duty, Defendants failed to:

a.   Disclose the high risk of unreasonable, dangerous adverse side effects of their hair relaxer products when used as intended; and/or

b.   Disclose that the hair relaxer products contained potential or known toxic chemicals and carcinogens; and/or

c.   Disclose they had not properly tested the safety of their hair relaxer products; and/or

d.   Disclose that they did not research the safety of their hair relaxer products.

**ANSWER: Paragraph 110, and its sub-parts, of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 110, and its sub-parts, of the Master Complaint and therefore denies the same.**

111.    Defendants had the capacity to design hair relaxer products that were safer than the hair relaxer products they sold to Plaintiffs and that caused Plaintiffs' injuries alleged herein.

**ANSWER:    Paragraph 111 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 111 of the Master Complaint and therefore denies the same.**

112.    It was economically possible for Defendants to manufacture hair relaxer products that were safer than the hair relaxer products they sold to Plaintiffs, and that caused Plaintiffs' injuries alleged herein.

**ANSWER:    Paragraph 112 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 112 of the Master Complaint and therefore denies the same.**

113.    The alternative hair relaxer product designs that Defendants could have utilized would not have changed the intended purpose of the hair relaxer products—to straighten otherwise curly and/or kinky hair.

**ANSWER:    Paragraph 113 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 113 of the Master Complaint and therefore denies the same.**

114.    Such alternative safer designs include, but are not limited to:

     a.     Replacing toxic chemicals with readily available natural ingredients;

     b.     Oil treatments (such as olive, coconut, and/or avocado oils);

     c.     Hot combs and other methods of heat styling; and

     d.     Blow drying.

**ANSWER:    Defendant denies the allegations of Paragraph 114 of the Master Complaint.**

## CAUSE OF ACTION

### First Cause of Action
### Negligence and/or Gross Negligence

115.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:    In response to Paragraph 115 of the Master Complaint, Defendant incorporates by reference its responses in all preceding paragraphs.**

116.    At all relevant times, Defendants had a duty to exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products.

**ANSWER:    Paragraph 116 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 116 of the Master Complaint and therefore denies the same. Further, Defendant admits only those duties imposed by law.**

117.    Defendants' duty to exercise reasonable care in the advertising and sale of their hair relaxer products included a duty to warn Plaintiffs and other consumers of the risks and dangers

associated with their hair relaxer products that were known or should have been known to Defendants at the time of the sale of their hair relaxer products to the Plaintiffs.

**ANSWER:     Paragraph 117 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 117 of the Master Complaint and therefore denies the same. To the extent the allegations are against this Defendant alone, Defendant admits only those duties imposed by law, and denies the remaining allegations in Paragraph 117 of the Master Complaint.**

118.     Defendants also owed a continuing duty to Plaintiffs to remove, recall, or retrofit the unsafe and/or defective hair relaxer products across the United States and Territories (including in each Plaintiff's state or territory). At all relevant times, Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that phthalates and other EDCs in their hair relaxer products significantly increase the risk of cancers and other negative health conditions.

**ANSWER:     Paragraph 118 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 118 of the Master Complaint and therefore denies the same. To the extent the allegations are against this Defendant alone, Defendant admits only those duties imposed by law, and denies the remaining allegations in Paragraph 118 of the Master Complaint.**

119.     At all relevant times, Defendants knew, or should have known through the exercise of reasonable care, that ordinary consumers such as Plaintiffs would not realize the potential risks and dangers of their hair relaxer products.

**ANSWER:     Defendant denies the allegations in Paragraph 119 of the Master Complaint.**

120.     Defendants breached their duty of care by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, and/or distributing of their hair relaxer products negligently, recklessly, and/or with extreme carelessness and by failing to adequately warn of the risks and dangers of their hair relaxer products as described in the allegations above. Such breaches include but are not limited to:

a.     Failing to warn Plaintiffs and other consumers of the risks and dangers associated with the use of their hair relaxer products;

b.     Failing to properly test their hair relaxer products to determine the adequacy or effectiveness of safety measures, if any, prior to releasing their hair relaxer products for consumer use;

c.     Failing to properly test their hair relaxer products to determine the increased risk of harm to the endocrine system including, uterine, ovarian, and/or endometrial cancers during the normal and/or intended use of their hair relaxer products;

d.     Designing their hair relaxer products defectively such that they caused serious injuries or death when used in their intended and reasonably foreseeable manner;

e.     Failing to inform Plaintiffs and other consumers as to the safe and proper methods of handling and using their hair relaxer products;

f.     Failing to remove or recall their hair relaxer products from the market when Defendants knew or should have known their hair relaxer products were defective and/or dangerous;

g.     Failing to instruct the Plaintiffs and other consumers as to the methods for reducing the type of exposure to their hair relaxer products which caused increased risk of cancer, including, but not limited to, uterine, ovarian, and/or endometrial cancer;

h.     Marketing and labeling their hair relaxer products as safe when Defendants knew or should have known their hair relaxer products were defective and/or dangerous;

i.      Claiming in labeling and marketing that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above; and

j.      Failing to act like a reasonably prudent company under similar circumstances. Each of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

**ANSWER:    Defendant denies the allegations of Paragraph 120 of the Master Complaint, and each of its sub-parts.**

121.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injuries as a result of Defendants' failure to exercise ordinary care as described above.

**ANSWER:    Defendant denies the allegations in Paragraph 121 of the Master Complaint.**

122.    Due to Defendants failure to exercise ordinary care or comply with their duties of selling cosmetic products, Plaintiffs were not able to discover the dangerous nature of Defendants' hair relaxer products.

**ANSWER:    Defendant denies the allegations in Paragraph 122 of the Master Complaint.**

123.    Defendants' acts and/or omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful company would do in the same situation to prevent foreseeable harm to Plaintiffs and other consumers.

**ANSWER:    Defendant denies the allegations in Paragraph 123 of the Master Complaint.**

124.    Defendants acted and/or failed to act willfully, and with conscious and reckless disregard for the rights and interests of Plaintiffs and other consumers, Defendants' acts and

omissions had a great probability of causing significant harm and in fact resulted in such harm to Plaintiffs.

**ANSWER: Defendant denies the allegations in Paragraph 124 of the Master Complaint.**

125. Defendants' negligence and/or gross negligence was a direct and proximate cause of the injuries, harm, and economic losses that Plaintiffs have suffered, and will continue to suffer, as described herein.

**ANSWER: Defendant denies the allegations in Paragraph 125 of the Master Complaint.**

126. Defendants' negligence and/or gross negligence were a substantial factor in causing and/or contributing to Plaintiff's harms.

**ANSWER: Defendant denies the allegations in Paragraph 126 of the Master Complaint.**

127. As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER: Defendant denies the allegations in Paragraph 127 of the Master Complaint.**

128. Defendants' conduct with respect to their design and sale of their hair relaxer products, including their negligent marketing, to Plaintiffs and the public was fraudulent,

malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:    Defendant denies the allegations in Paragraph 128 of the Master Complaint.**

### Second Cause of Action
### Negligent Misrepresentation

Count Two of the Master Complaint was dismissed by the court (Doc. 291) and therefore no response is required. To the extent any allegation of Count Two would require a response, such allegations are denied by the Defendant.

### Third Cause of Action
### Negligence *Per Se*

143.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:    In response to Paragraph 143 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

144.    The Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9 § 301 *et seq.*, and its accompanying regulations, are implemented to regulate and promote safety in the design, manufacturing, marketing, branding, labeling, and sale of food, drugs, and cosmetics, including Defendants' hair relaxer products.

**ANSWER:    The allegations in Paragraph 144 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 144 of the Master Complaint.**

145.    Upon information and belief, Defendants' conduct violated one or more statutes or related regulations, including but not limited to the following:

      a.    21 U.S.C. § 331;

      b.     21 U.S.C. § 361;

      c.     21 U.S. Code § 362; and

      d.     21 CFR Part 740, including but not limited to 21 CFR § 740.1 and 21 CFR § 740.10.

**ANSWER:** **Paragraph 145 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 145 of the Master Complaint.**

146.    Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery.

**ANSWER:** **Defendant is without information to admit or deny the narrative in Paragraph 146 of the Master Complaint, and therefore denies any allegations in Paragraph 146 of the Master Complaint.**

147.    Defendants' violation of such safety laws and regulations constitutes negligence *per se*.

**ANSWER:** **The allegations in Paragraph 147 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 147 of the Master Complaint.**

148.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:** **Paragraph 148 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 148 of the Master Complaint.**

149. Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** **Paragraph 149 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 149 of the Master Complaint.**

**Fourth Cause of Action**
**Strict Liability: Design Defect**

150. Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 150 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

151. Defendants designed, manufactured, marketed, and sold their hair relaxer products that were used by Plaintiffs, and Defendants were in the business of selling their hair relaxer products.

**ANSWER:** **Paragraph 151 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant admits it designed, manufactured and sold hair relaxer products, Defendants denies the remainder of the allegations in Paragraph 151 of the Master Complaint.**

152.     Defendants' hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design. In particular, Defendants' hair relaxer products were defectively designed because they caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer.

**ANSWER:     Paragraph 152 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 152 of the Master Complaint.**

153.     Defendants' hair relaxer products are unreasonably dangerous as designed because they do not perform as safely as an ordinary consumer, including Plaintiffs, would expect when used in an intended or reasonably foreseeable manner.

**ANSWER:     Paragraph 153 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 153 of the Master Complaint.**

154.     Defendants' hair relaxer products are unreasonably dangerous as designed because the danger inherent in their design outweighs the benefits of that design.

**ANSWER:     Paragraph 154 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 154 of the Master Complaint.**

155.     Defendants caused their hair relaxer products to enter the stream of commerce and to be sold to consumers, including Plaintiffs, through a variety of channels, including through sales to hair salons for use with their customers as well as direct sale to consumers through retail stores.

**ANSWER:** Paragraph 155 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 155 of the Master Complaint.

156. Defendants' hair relaxer products were expected to, and did, reach consumers, including Plaintiffs, without substantial change in the condition in which those products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

**ANSWER:** Paragraph 156 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 156 of the Master Complaint.

157. Plaintiffs used the Defendants' hair relaxer products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

**ANSWER:** Paragraph 157 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without knowledge to admit or deny the allegations, and therefore denies the allegations in Paragraph 157 of the Master Complaint.

158. Defendants knew or should have known that their products were in a defective condition as a result of their design, and were unreasonably dangerous when used in an intended or reasonably foreseeable manner.

**ANSWER:** Paragraph 158 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 158 of the Master Complaint.

159.    At all times material to Plaintiffs' claims, there were technologically and economically feasible safer alternative designs that would have prevented or substantially reduced the risk to Plaintiffs without substantially impairing the utility of their hair relaxer products.

**ANSWER:    Defendant denies the allegations in Paragraph 159 of the Master Complaint.**

160.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of their hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages, and losses in the future.

**ANSWER:    Paragraph 160 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 160 of the Master Complaint.**

161.    Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:    Paragraph 161 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 161 of the Master Complaint.**

162.    Plaintiffs plead this claim for relief in the broadest sense and seek the full measure of damages allowed under the applicable governing law, including the common law and, where and to the extent applicable, all product liability acts, statutes, and laws.

**ANSWER:** **Defendant denies Plaintiffs are entitled to the relief requested in Paragraph 162 of the Master Complaint.**

### Fifth Cause of Action
### Strict Liability: Failure to Warn

163.     Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 163 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

164.     Defendants designed, manufactured, marketed, and sold their hair relaxer products that were used by Plaintiffs, and Defendants were in the business of selling hair relaxer products.

**ANSWER:** **Paragraph 164 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant admits it designed, manufactured and sold hair relaxer products, Defendants denies the remainder of the allegations in Paragraph 164 of the Master Complaint.**

165.     Defendants' hair relaxer products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because they were not accompanied by adequate warnings.

**ANSWER:** **Paragraph 165 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 165 of the Master Complaint.**

166.     In particular, Defendants knew or should have known that their hair relaxer products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine cancer, ovarian cancer, and endometrial cancer.

Defendants failed to give appropriate and adequate warning of such risks. In fact, Defendants continue to this day to market and sell their products to consumers without adequate warnings of the risks associated with their use.

**ANSWER:** **Paragraph 166 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 166 of the Master Complaint.**

167.    If Defendants had warned Plaintiffs that use of their hair relaxer products in an intended or reasonably foreseeable manner would increase their risk of being seriously injured, including but not limited to developing uterine cancer, ovarian cancer, or endometrial cancer, Plaintiffs would not have used their hair relaxer products.

**ANSWER:** **Paragraph 167 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 167 of the Master Complaint.**

168.    Defendants caused their hair relaxer products to enter the stream of commerce and to be sold to consumers, including Plaintiffs, through a variety of channels, including through sales to hair salons for use with their customers and directly to consumers through retail stores.

**ANSWER:** **Paragraph 168 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 168 of the Master Complaint.**

169.    Defendants' hair relaxer products were expected to, and did, reach consumers, including Plaintiffs, without substantial change in the condition in which their hair relaxer products were manufactured and sold or otherwise released into the stream of commerce by Defendants.

**ANSWER:** Paragraph 169 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 169 of the Master Complaint.

170. Plaintiffs used the Defendants' hair relaxer products for the purposes and in a manner normally intended, recommended, promoted, and marketed by Defendants.

**ANSWER:** Paragraph 170 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 170 of the Master Complaint.

171. As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages, and losses in the future.

**ANSWER:** Paragraph 171 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 171 of the Master Complaint.

172. Defendants' conduct with respect to their design and sale of their Hair Relaxer Products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** **Paragraph 172 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 172 of the Master Complaint.**

**Sixth Cause of Action**
**Breach of Implied Warranty of Merchantability/Fitness for Particular Use**

173.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 173 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

174.    Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

**ANSWER:** **Paragraph 174 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant admits it is the business manufacturing, supplying, marketing, advertising, and selling hair relaxer products, Defendant denies the remaining allegations in Paragraph 174 of the Master Complaint.**

175.    Prior to the time that the Plaintiffs purchased and/or used Defendants' hair relaxer products, Defendants knew of the uses for which their hair relaxer products were intended and impliedly warranted to Plaintiffs that their hair relaxer products were of merchantable quality and safe and fit for such intended and ordinary uses. Defendants also impliedly warranted to Plaintiffs that their hair relaxer products were of a certain quality.

**ANSWER:** **Paragraph 175 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 175 of the Master Complaint.**

176.     Defendants' warranties included but are not limited to the warranties that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

**ANSWER:     Paragraph 176 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 176 of the Master Complaint.**

177.     Defendants breached their implied warranties of their hair relaxer products sold to Plaintiffs because they were not fit for their ordinary purposes and intended and reasonably foreseeable uses. Nor were their hair relaxer products minimally safe for their expected purpose.

**ANSWER:     Paragraph 177 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 177 of the Master Complaint.**

178.     Defendants' hair relaxer products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, because their hair relaxer products have dangerous propensities when used as intended and cause severe injuries to users including Plaintiffs.

**ANSWER:     Paragraph 178 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 178 of the Master Complaint.**

179.     Similarly, Defendants' hair relaxer products were unfit for their particular purpose—safely straightening hair. Defendants' hair relaxer products could not and do not safely straighten hair, and never could at any point after leaving the Defendants' control.

**ANSWER:** Paragraph 179 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 179 of the Master Complaint.

180. Defendants' hair relaxer products were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Defendants, and/or were unfit for their particular purpose when they left Defendants' control.

**ANSWER:** Paragraph 180 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 180 of the Master Complaint.

181. At the time Plaintiffs purchased or used Defendants' hair relaxer products, Defendants knew or should have known that Plaintiffs would detrimentally rely on Defendants' misrepresentations regarding safety.

**ANSWER:** Paragraph 181 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 181 of the Master Complaint.

182. Plaintiffs purchased or used Defendants' hair relaxer products reasonably relying upon Defendants' warranties.

**ANSWER:** Paragraph 182 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 182 of the Master Complaint.

183. Plaintiffs used Defendants' hair relaxer products for the purpose and in the manner intended by Defendants.

**ANSWER:** Paragraph 183 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 183 of the Master Complaint.

184. Plaintiffs could not have discovered the breached warranties or realized Defendants' hair relaxer products' danger through the use of reasonable care.

**ANSWER:** Paragraph 184 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 184 of the Master Complaint.

185. Plaintiffs would not have purchased or used Defendants' hair relaxer products if they had known the truth about the misrepresentations described above, or that Defendants' hair relaxer products were unfit for ordinary use or their particular purpose.

**ANSWER:** Paragraph 185 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 185 of the Master Complaint.

186. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under the following statutes:

    a.    Ala. Code § 7-2-314, *et seq.*;
    b.    Alaska Stat. § 45.02.314, *et seq.*;
    c.    Ariz. Rev. Stat. § 47-2314, *et seq.*;
    d.    Ark. Code § 4-2-314, *et seq.*;
    e.    Cal. Com. Code § 2314, *et seq.*;
    f.    Cal. Civ. Code § 1790, *et seq.*;
    g.    Colo. Rev. Stat. § 4-2-314, *et seq.*;
    h.    Conn. Gen. Stat. § 42a-2-314, *et seq.*;
    i.    6 Del. C. § 2-314, *et seq.*;
    j.    D.C. Code § 28:2-314, *et seq.*;
    k.    Fla. Code § 672.314, *et seq.*;
    l.    O.C.G.A. § 11-2-314, *et seq.*;

m.   Haw. Rev. Stat. § 490:2-314, *et seq.*;
n.   Idaho Code § 28-2-314, *et seq.*;
o.   810 Ill. Comp. Stat. 5/2-314, *et seq.*;
p.   Ind. Code § 26-1-2-314, *et seq.*;
q.   Iowa Code § 554.2314, *et seq.*;
r.   Kan. Stat. § 84-2-314, *et seq.*;
s.   Ky. Rev. Stat. § 355.2-314, *et seq.*;
t.   t.    La. Rev. Stat § 9:2800.53(6) , *et seq.*;
u.   11 M.R.S.A. § 2-314, *et seq.*;
v.   Md. Code Ann., Com. Law § 2-314, *et seq.*;
w.   Mass. Code 106, § 2-314, *et seq.*;
x.   Mich. Comp. Laws 440.2314, *et seq.*;
y.   Minn. Stat. § 336.2-314, *et seq.*;
z.   Miss. Code § 75-2-314, *et seq.*;
aa.  Mo. Rev. Stat. § 400.2-314, *et seq.*;
bb.  Mont. Code § 30-2-314, *et seq.*;
cc.  Neb. U.C.C. § 2-314, *et seq.*;
dd.  Nev. Rev. Stat. § 104.2314, *et seq.*;
ee.  N.H. Rev. Stat. § 382-A:2-314, *et seq.*;
ff.  N.J. Stat. § 12A:2-314, *et seq.*;
gg.  N.M. Stat. § 55-2-314, *et seq.*;
hh.  N.Y. U.C.C. § 2-314, *et seq.*;
ii.  N.C. Gen. Stat. § 25-2-314, *et seq.*;
jj.  N.D. Cent. Code § 41-02-30, *et seq.*;
kk.  Ohio Rev. Code § 1302.26, *et seq.*;
ll.  Okla. Stat. Tit. 12A, § 2-314, *et seq.*;
mm.  Or. Rev. Stat. § 72.3130, *et seq.*;
nn.  13 Pa. Cons. Stat. § 2314, *et seq.*;
oo.  R.I. Gen. Laws § 6A-2-314, *et seq.*;
pp.  S.C. Code § 36-2-313, *et seq.*;
qq.  S.D. Codified Laws § 57A-2-313, *et seq.*;
rr.  Tenn. Code § 47-2- 314, *et seq.*;
ss.  V.T.C.A., Bus. & C. § 2.314, *et seq.*;
tt.  Utah Code § 70A-2-314, *et seq.*;
uu.  Vt. Stat. Tit. 9A, § 2-314, *et seq.*;
vv.  Va. Code § 8.2-314, *et seq.*;
ww.  Wash. Rev. Code § 62A.2-314, *et seq.*;
xx.  W. Va. Code § 46-2-314, *et seq.*;
yy.  Wis. Stat. § 402.314, *et seq.*;
zz.  Wyo. Stat. § 34.1-2-314, *et seq.*;
aaa. American Samoa Code Ann. § 27.0701, *et seq.*;
bbb. 13 Guam Code Ann. §§ 2314 and 2315, *et seq.*;
ccc. 5 C.M.C. §§ 2314 and 2315, *et seq.*; and
ddd. 11A Virgin Is. Code §§ 2-214 and 2-215, *et seq.*

**ANSWER: The allegations in Paragraph 186 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 186 of the Master Complaint.**

187. Defendants' conduct described in this Complaint also constitutes a breach of implied warranties under the common law of Puerto Rico.

**ANSWER: The allegations in Paragraph 187 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 187 of the Master Complaint.**

188. Defendants' conduct described in this Complaint also constitutes a breach of implied warranties under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*).

**ANSWER: The allegations in Paragraph 188 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 188 of the Master Complaint.**

189. Defendants' hair relaxer products are consumer products, Plaintiffs are consumers, Defendants are suppliers and/or warrantors of the defective hair relaxer products, and Defendants breached their implied warranties as described above.

**ANSWER: The allegations in Paragraph 189 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 189 of the Master Complaint.**

190. The breach of warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:** **Paragraph 190 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 190 of the Master Complaint.**

191.     As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:** **Paragraph 191 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 191 of the Master Complaint.**

192.     Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** **Paragraph 192 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 192 of the Master Complaint.**

193.     Plaintiffs did not need to send (additional) notice to Defendants of their breaches of warranty because Defendants were already on notice of the defects alleged herein and Defendants' related violations, including already facing similar lawsuits for the same conduct.

**ANSWER:** Paragraph 193 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 193 of the Master Complaint.

**Seventh Cause of Action**
**Breach of Express Warranty under state law and the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301 *et. seq.***

194. Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:** In response to Paragraph 194 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.

195. Defendants are in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling hair relaxer products.

**ANSWER:** Paragraph 195 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 195 of the Master Complaint.

196. Defendants expressly represented and warranted to Plaintiffs, through statements made by Defendants or their authorized agents in direct-to-consumer marketing, advertisements, and labels, that their hair relaxer products were safe and effective for their reasonably expected and intended use—straightening hair.

**ANSWER:** Paragraph 196 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 196 of the Master Complaint.

197. Defendants' warranties included but are not limited to the warranties that their hair relaxer products are safe, healthy, protective, and/or natural, including but not limited to the marketing assertions quoted and displayed in the facts alleged above.

**ANSWER:      Paragraph 197 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 197 of the Master Complaint.**

198.    These and other (mis)representations were made directly by the manufacturer or seller to consumers and end users of Defendants' hair relaxer products, constitute express warranties, and became part of the basis of the bargain between the parties and created a collective express warranty that their hair relaxer products would conform to Defendants' affirmations and promises.

**ANSWER:      Paragraph 198 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 198 of the Master Complaint.**

199.    Defendants breached their express warranties about their hair relaxer products and their qualities because Defendants' statements about their hair relaxer products' safety were false and their hair relaxer products did not conform to those affirmations and promises. Defendants' hair relaxer products were not safe, but rather exposed Plaintiffs and other consumers to unreasonable risks of adverse health effects including cancer.

**ANSWER:      Paragraph 199 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 199 of the Master Complaint.**

200.     At the time Plaintiffs purchased or used Defendants' hair relaxer products, Defendants knew or should have known that Plaintiffs would detrimentally rely on Defendants' misrepresentations regarding safety.

**ANSWER:     Paragraph 200 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 200 of the Master Complaint.**

201.     Plaintiffs purchased or used Defendants' hair relaxer products reasonably relying upon Defendants' warranties.

**ANSWER:     Paragraph 201 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 201 of the Master Complaint.**

202.     Plaintiffs used Defendants' hair relaxer products for the purpose and in the manner intended by Defendants.

**ANSWER:     Paragraph 202 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 202 of the Master Complaint.**

203.     Plaintiffs could not have discovered the breached warranties or realized Defendants' hair relaxer products' danger through the use of reasonable care.

**ANSWER:     Paragraph 203 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 203 of the Master Complaint.**

204.     Plaintiffs would not have purchased or used Defendants' hair relaxer products if they had known the truth about the misrepresentations described above, or that Defendants' hair relaxer products were unfit for ordinary use or their particular purpose.

**ANSWER:     Paragraph 204 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 204 of the Master Complaint.**

205.     The breach of the warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:     Paragraph 205 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 205 of the Master Complaint.**

206.     Defendants' conduct described in this Complaint constitutes a breach of express warranties under the following statutes:

a.     Ala. Code § 7-2-313, *et seq.*;
b.     Alaska Stat. § 45.02.313, *et seq.*;
c.     Ariz. Rev. Stat. § 47-2313, *et seq.*;
d.     Ark. Code § 4-2-313, *et seq.*;
e.     Cal. Com. Code § 2313, *et seq.*;
f.     Cal. Civ. Code § 1790, *et seq.*;
g.     Colo. Rev. Stat. § 4-2-313, *et seq.*;
h.     Conn. Gen. Stat. § 42a-2-313, *et seq.*;
i.     6 Del. C. § 2-313, *et seq.*;
j.     D.C. Code § 28:2-313, *et seq.*;
k.     Fla. Code § 672.313, *et seq.*;
l.     O.C.G.A. § 11-2-313, *et seq.*;
m.     Haw. Rev. Stat. § 490:2-313, *et seq.*;
n.     Idaho Code § 28-2-313, *et seq.*;
o.     810 Ill. Comp. Stat. 5/2-313, *et seq.*;
p.     Ind. Code § 26-1-2-313, *et seq.*;
q.     Iowa Code § 554.2313, *et seq.*;
r.     Kan. Stat. § 84-2-313, *et seq.*;
s.     Ky. Rev. Stat. § 355.2-313, *et seq.*;
t.     La. Rev. Stat § 9:2800.53(6) , *et seq.*;

u.      11 M.R.S.A. § 2-313, *et seq.*;

v.      Md. Code Ann., Com. Law § 2-313, *et seq.*;

w.      Mass. Code 106, § 2-313, *et seq.*;

x.      Mich. Comp. Laws 440.2313, *et seq.*;

y.      Minn. Stat. § 336.2-313, *et seq.*;

z.      Miss. Code § 75-2-313, *et seq.*;

aa.     Mo. Rev. Stat. § 400.2-313, *et seq.*;

bb.     Mont. Code § 30-2-313, *et seq.*;

cc.     Neb. U.C.C. § 2-313, *et seq.*;

dd.     Nev. Rev. Stat. § 104.2313, *et seq.*;

ee.     N.H. Rev. Stat. § 382-A:2-313, *et seq.*;

ff.     N.J. Stat. § 12A:2-313, *et seq.*;

gg.     N.M. Stat. § 55-2-313, *et seq.*;

hh.     N.Y. U.C.C. § 2-313, *et seq.*;

ii.     N.C. Gen. Stat. § 25-2-313, *et seq.*;

jj.     N.D. Cent. Code § 41-02-30, *et seq.*;

kk.     Ohio Rev. Code § 1302.26, *et seq.*;

ll.     Okla. Stat. Tit. 12A, § 2-313, *et seq.*;

mm.     Or. Rev. Stat. § 72.3130, *et seq.*;

nn.     13 Pa. Cons. Stat. § 2313, *et seq.*;

oo.     R.I. Gen. Laws § 6A-2-313, *et seq.*;

pp.     S.C. Code § 36-2-313, *et seq.*;

qq.     S.D. Codified Laws § 57A-2-313, *et seq.*;

rr.     Tenn. Code § 47-2- 313, *et seq.*;

ss.     V.T.C.A., Bus. & C. § 2.313, *et seq.*;

tt.     Utah Code § 70A-2-313, *et seq.*;

uu.     Vt. Stat. Tit. 9A, § 2-313, *et seq.*;

vv.     Va. Code § 8.2-313, *et seq.*;

ww.     Wash. Rev. Code § 62A.2-313, *et seq.*;

xx.     W. Va. Code § 46-2-313, *et seq.*;

yy.     Wis. Stat. § 402.313, *et seq.*;

zz.     Wyo. Stat. § 34.1-2-314, *et seq.*;

aaa.    American Samoa Code Ann. § 27.0701, *et seq.*;

bbb.    13 Guam Code Ann. § 2313, *et seq.*;

ccc.    5 C.M.C. § 2313, *et seq.*; and

ddd.    11A Virgin Is. Code § 2-213, *et seq.*

**ANSWER:   The allegations in Paragraph 206 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 206 of the Master Complaint.**

207.    Defendants' conduct described in this Complaint also constitutes a breach of express warranties under the common law of Puerto Rico.

**ANSWER: The allegations in Paragraph 207 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 207 of the Master Complaint.**

208. Defendants' conduct described in this Complaint also constitutes a breach of express warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* The Hair Relaxer Products are "consumer products" because they are normally used for personal purposes and were, in fact, purchased primarily for personal use. *Id.* at § 2301(1). Plaintiffs are "consumers" as that term is defined in § 2301(3). Defendants are "suppliers" and "warrantors." *Id.* at § 2301(4)-(5). Defendants' hair relaxer products express warranties constitute a "written warranty" 15 U.S.C. § 2301(6).

**ANSWER: The allegations in Paragraph 208 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 208 of the Master Complaint.**

209. Defendants' failure to tender their hair relaxer products to Plaintiffs free of defects constitutes a breach of the written warranties covering their hair relaxer products, in violation of the Magnuson Moss Warranty Act. Defendants are on notice of their defective hair relaxer products, yet Defendants have failed to cure the damage resulting therefrom within a reasonable time.

**ANSWER: Paragraph 209 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 209 of the Master Complaint.**

210. Defendants' breach of warranties was a substantial factor in bringing about Plaintiffs' injuries.

**ANSWER:** Paragraph 210 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 210 of the Master Complaint.

211. As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages, and losses in the future.

**ANSWER:** Paragraph 211 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 211 of the Master Complaint.

212. Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** Paragraph 212 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 212 of the Master Complaint.

**Eighth Cause of Action**
**Fraud/Fraudulent Misrepresentation**

Count Eight of the Master Complaint was dismissed by the court (Doc. 291) and therefore no response is required. To the extent any allegation of Count Eight would require a response, such allegations are denied by the Defendant.

**Ninth Cause of Action**
**Fraudulent Concealment**

Count Nine of the Master Complaint was dismissed by the court (Doc. 291) and therefore

no response is required. To the extent any allegation of Count Nine would require a response, such

allegations are denied by the Defendant.

**Tenth Cause of Action**
**U.S. State and Territory Statutory Consumer Protection and**
**Unfair or Deceptive Trade Practices Claims**

240.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth

herein and further allege as follows.

**ANSWER:    In response to Paragraph 240 of the Master Complaint, Defendants**

**incorporate by reference their responses in all preceding paragraphs.**

241.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

fraudulent acts or practices in violation of the state and territory consumer protection statutes listed

below when they misled consumers regarding the safety risks associated with use of their hair

relaxer products. As a direct result of Defendants' deceptive, unfair, unconscionable, and

fraudulent conduct, Plaintiffs suffered and will continue to suffer economic loss, pecuniary loss,

personal injury, loss of companionship and society, mental anguish and/or other compensable

injuries.

**ANSWER:    Paragraph 241 of the Master Complaint contains allegations regarding**

**parties other than Defendant to which no response is required. To the extent that a response**

**is required, Defendant denies the allegations in Paragraph 241 of the Master Complaint.**

242.    Defendants have engaged in unfair competition and/or unfair, deceptive, and/or

unconscionable acts or practices in violation of:

        a.    Ala. Code § 8-19-1 *et seq.*;
        b.    Alaska Stat. § 45.50.471 *et seq.*;

c. Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*;

d. Ark. Code Ann. § 4-88-101 *et seq.*;

e. Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.*;

f. Colo. Rev. Stat. § 6-1-101 *et seq.*;

g. Conn. Gen. Stat. Ann. § 42-110a *et seq.*;

h. Del. Code Ann. tit. 6 § 2511 *et seq.*;

i. D.C. Code Ann. § 28-3901 *et seq.*;

j. Fla. Stat. Ann. § 501.201 *et seq.*;

k. Ga. Code Ann. § 10-1-370 *et seq.*;

l. Haw. Rev. Stat. § 480-1 *et seq.* and 481A-1 *et seq.*;

m. Idaho Code § 48-601 *et seq.*;

n. 815 Ill. Comp. Stat. 505/1 *et seq.*;

o. Ind. Code Ann. § 24-5-0.5-1 *et seq.*;

p. Iowa Code § 714.16 *et seq.*;

q. Kan. Stat. Ann. § 50-623 *et seq.*;

r. Ky. Rev. Stat. Ann. § 367.170 *et seq.*;

s. La. Rev. Stat. Ann. § 51:1401 *et seq.*;

t. Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.*;

u. Md. Code Ann., Com. Law § 13-301 *et seq.*;

v. Mass. Gen. Laws ch. 93A, § 1 *et seq.*;

w. Mich. Comp. Laws Ann. § 445.901 *et seq.*;

x. Minn. Stat. §§ 325D.09 *et seq.*, 325D.43 *et seq.*, 325F.67, 325F.68 *et seq.*, and § 8.31;

y. Miss. Code Ann. § 75-24-5 *et seq.*;

z. Mo. Ann. Stat. § 407.010 *et seq.*;

aa. Mont. Code Aim. § 30-14-101 *et seq.*;

bb. Neb. Rev. Stat. § 87-301 *et seq.*;

cc. Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.* and 41.600;

dd. N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*;

ee. N.J. Stat. Ann. § 56:8-1 *et seq.*;

ff. N.M. Stat. Ann. § 57-12-1 *et seq.*;

gg. N.Y. Gen. Bus. Law §§ 349 *et seq.*, 350, 350-a and 350-e *et seq.*;

hh. N.C. Gen. Stat. § 75-1 *et seq.*;

ii. N.D. Cent. Code §§ 51-12-01 *et seq.* and 51-15-01 *et seq.*;

jj. Ohio Rev. Code Ann. § 1345.01 *et seq.*;

kk. Okla. Stat. Ann. tit. 15, § 751 *et seq.*;

ll. Or. Rev. Stat. § 646.605 *et seq.*;

mm. 73 Pa. Cons. Stat. § 201-1 *et seq.*;

nn. R.I. Gen. Laws § 6-13.1-1 *et seq.*;

oo. S.C. Code Ann. § 39-5-10 *et seq.*;

pp. S.D. Codified Laws § 37-24-1 *et seq.*;

qq. Tenn. Code Ann. § 47-18-101 *et seq.*;

rr. Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*;

ss. Utah Code Ann. § 13-11-1 *et seq.*;

tt. Vt. Stat. Ann. tit. 9, § 2451 *et seq.*;

uu. Va. Code Ann. § 59.1-196 *et seq.*;

vv.     Wash. Rev. Code Ann. § 19.86.010 *et seq.*;
ww.     W.Va. Code § 46A-6-101 *et seq.*;
xx.     Wis. Stat. Ann. §§ 100.18 and 421.101 *et seq.*;
yy.     Wyo. Stat. Ann. § 40-12-101 *et seq.*;
zz.     American Samoa Code Ann. § 27.0401 *et seq.*;
aaa.    4 CMC § 5101 *et seq.*;
bbb.    5 Guam Code Ann. § 32102 *et seq.*; and
*ccc.*   12A Virgin Is. Code § 301 *et seq.*

**ANSWER:    The allegations in Paragraph 242 of the Master Complaint are conclusions of law, and no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 242 of the Master Complaint.**

243.    Defendants' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a.      Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b.      Representing that goods are of a particular standard, quality, or grade if they are of another; and

c.      Advertising goods with the intent not to sell them as advertised.

**ANSWER:    Paragraph 243 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 243 of the Master Complaint.**

244.    Defendants actions and failure to act, including the false and misleading representations and omissions of material facts regarding the safety and potential risks of their hair relaxer products and the above described course of fraudulent conduct and fraudulent concealment constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that Plaintiffs and others rely upon such concealment,

suppression or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above.

**ANSWER:** **Paragraph 244 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 244 of the Master Complaint.**

245.    Defendants' unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

**ANSWER:** **Paragraph 245 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 245 of the Master Complaint.**

246.    By reason of the unlawful acts engaged in by Defendants, Plaintiffs have suffered ascertainable loss and damages.

**ANSWER:** **Paragraph 246 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 246 of the Master Complaint.**

247.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**ANSWER:** **Paragraph 247 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 247 of the Master Complaint.**

248.     Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:     Paragraph 248 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. Further, the fraud claims of Count X of the Master Complaint were dismissed by the court (Doc. 291). To the extent that a response is required, Defendant denies the allegations in Paragraph 121 of the Master Complaint.**

249.     Due to the above, Defendants are liable to Plaintiffs for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:     Paragraph 249 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 249 of the Master Complaint.**

250.     Plaintiffs did not need to send (additional) notice to Defendants of their violations of the consumer protection statutes pled in this Complaint because Defendants were already on notice of the defects alleged herein and Defendants' related violations, including already facing similar lawsuits for the same conduct.

**ANSWER:     Paragraph 250 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 250 of the Master Complaint.**

**Eleventh Cause of Action**
**Unjust Enrichment**

251.    Plaintiffs incorporate by reference paragraphs 1 through 114 as if fully set forth herein and further allege as follows.

**ANSWER:    In response to Paragraph 251 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

252.    As an intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and other consumers made for their hair relaxer products.

**ANSWER:    Paragraph 252 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant admits it made a profit from the sale of its products, and denies the remainder of the allegations in Paragraph 252 of the Master Complaint.**

253.    In exchange for the payments made for Defendants' hair relaxer products, at the time payments were made, Plaintiffs expected that Defendants' hair relaxer products were safe and effective in the ways Defendants represented and for the purposes Defendants advertised their hair relaxer products. In exchange for their payments, Plaintiffs believed they were receiving a safe method for straightening hair that did not involve the risk of serious adverse health effects.

**ANSWER:    Paragraph 253 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant is without information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 253 of the Master Complaint.**

254.    Defendants have voluntarily accepted and retained these payments with full knowledge and awareness that, as a result of their wrongdoing, Plaintiffs paid for Defendants' hair

relaxer products when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs with the remuneration expected enriched Defendants unjustly.

**ANSWER:** **Paragraph 254 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 254 of the Master Complaint.**

255. It is unjust to allow Defendants to earn and retain revenues, profits, and benefits from their hair relaxer products while Plaintiffs suffered and are suffering serious illnesses, including but not limited to uterine, ovarian, and/or endometrial cancer.

**ANSWER:** **Paragraph 255 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 255 of the Master Complaint.**

256. Plaintiffs are entitled to equity to seek restitution of Defendants' wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**ANSWER:** **Paragraph 256 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 256 of the Master Complaint.**

**Twelfth Cause of Action**
**Wrongful Death**

257. Plaintiffs incorporate by reference paragraphs 1 through 256 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 257 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

258.    Decedent Plaintiffs died as a result of the defects in and undisclosed risks of Defendants' hair relaxer products and are survived by various family members, named and unnamed.

**ANSWER:    Paragraph 258 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 258 of the Master Complaint.**

259.    The representatives/administrators of Decedent Plaintiffs' estates and/or Decedent Plaintiffs' surviving heirs bring this claim on behalf of the Decedent Plaintiffs' lawful heirs.

**ANSWER:    Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations of Paragraph 259 of the Master Complaint.**

260.    Defendants' wrongful conduct, as described in this Complaint, has foreseeably, directly, and proximately caused Decedent Plaintiffs' heirs to suffer the loss of Decedents' companionship, services, society, marital association, love, consortium, and/or all other damages allowed under state statutes and laws.

**ANSWER:    Paragraph 260 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 260 of the Master Complaint.**

261.    Decedent Plaintiffs' estate representatives and/or Decedent Plaintiffs' surviving heirs bring this claim on behalf of Decedent Plaintiffs' lawful heirs for these damages and for all pecuniary losses sustained by the heirs.

**ANSWER:    Defendant is without knowledge or information to admit or deny the allegations, and therefore Denies the allegations in Paragraph 261 of the Master Complaints.**

262.    Decedent Plaintiffs' estate representatives and/or Decedent Plaintiffs' surviving heirs further plead all wrongful death damages allowed by statue in the state/territory or states/territories in which the causes of action accrued.

**ANSWER:    Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations of Paragraph 262 of the Master Complaint.**

263.    Defendants' conduct with respect to their design and sale of their hair relaxer products to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:    Paragraph 263 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 263 of the Master Complaint.**

**Thirteenth Cause of Action**
**Survival Action**

264.    Plaintiffs incorporate by reference paragraphs 1 through 263 as if fully set forth herein and further allege as follows.

**ANSWER:    In response to Paragraph 264 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

265.    Certain Plaintiffs ("Decedent Plaintiffs") have passed away after suffering injuries and losses as a result of Defendants' hair relaxer products and conduct described in this Complaint.

**ANSWER:    Paragraph 265 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 265 of the Master Complaint.**

266.     As a direct and proximate result of Decedent Plaintiffs' reasonably anticipated use of Defendants' hair relaxer products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Decedent Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses prior to Decedent Plaintiffs' deaths.

**ANSWER:     Paragraph 266 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 266 of the Master Complaint.**

267.     The representative/administrators of Decedent Plaintiffs' estates bring this claim on behalf of Decedent Plaintiffs' estates and Decedent Plaintiffs' beneficiaries for damages.

**ANSWER:     Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 267 of the Master Complaint.**

268.     The representative/administrators of Decedent Plaintiffs' estates further plead all survival damages allowed by statute and law in the state/territory or states/territories in which the causes of action accrued.

**ANSWER:     Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 268 of the Master Complaint.**

269.     Defendants' conduct with respect to their design and sale of their products to Decedent Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

**ANSWER:** **Paragraph 269 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 269 of the Master Complaint.**

### Fourteenth Cause of Action
### Loss of Consortium

270. Plaintiffs incorporate by reference paragraphs 1 through 269 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 270 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

271. Certain Plaintiffs were married to spouses (hereinafter referred to as "Spouse Plaintiffs") and/or have family members (hereinafter referred to as "Family Member Plaintiffs") who have suffered injuries and losses as a result of such Plaintiffs' injuries.

**ANSWER:** **Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 271 of the Master Complaint.**

272. As a foreseeable, direct, and proximate result of Defendants' unlawful conduct as described in this Complaint, Spouse Plaintiffs and/or Family Member Plaintiffs have paid and have become liable to pay for medical aid, treatment and for medications, and will incur further expenses of a similar nature in the future.

**ANSWER:** **Paragraph 272 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 272 of the Master Complaint.**

273. As a foreseeable, direct, and proximate result of Defendants' unlawful conduct as described in this Complaint, Spouse Plaintiffs and/or Family Member Plaintiffs have suffered and

will continue to suffer the loss of their loved one's care, comfort, support, companionship, services, society, love, and affection.

**ANSWER:** **Paragraph 273 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 273 of the Master Complaint.**

274.    Spouse Plaintiffs allege their marital relationships have been impaired and depreciated, and the marital associations between spouses have been altered.

**ANSWER:** **Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 274 of the Master Complaint.**

275.    Spouse Plaintiffs and/or Family Member Plaintiffs have suffered great emotional pain and mental anguish.

**ANSWER:** **Defendant is without knowledge or information to admit or deny the allegations, and therefore Defendant denies the allegations in Paragraph 275 of the Master Complaint.**

276.    As a foreseeable, direct, and proximate result of Defendants' unlawful conduct, Spouse Plaintiffs and/or Family Member Plaintiffs have sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses, and other damages.

**ANSWER:** **Paragraph 276 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 276 of the Master Complaint.**

277.    Due to the above, Defendants are liable to Spouse Plaintiffs and/or Family Member Plaintiffs for compensatory, equitable, and punitive damages, to the extent permitted by applicable

law, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:** **Paragraph 277 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 277 of the Master Complaint.**

**Fifteenth Cause of Action**
**Punitive Damages**

278.    Plaintiffs incorporate by reference paragraphs 1 through 277 as if fully set forth herein and further allege as follows.

**ANSWER:** **In response to Paragraph 278 of the Master Complaint, Defendants incorporate by reference their responses in all preceding paragraphs.**

279.    The acts and omissions of Defendants as alleged throughout this Complaint were willful, wanton, and malicious. Defendants committed these acts with a conscious disregard for the rights, health, and safety of Plaintiffs and other consumers/users of Defendants' hair relaxer products, for the primary purpose of increasing Defendants' profits from the sale and distribution of their hair relaxer products. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**ANSWER:** **Paragraph 279 of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 279 of the Master Complaint.**

280.    Defendants' willful, wanton, malicious, and/or reckless acts include the following (as detailed throughout this Complaint):

a. Failing to disclose or warn of, concealing, and/or suppressing material facts regarding the dangers and serious safety concerns of Defendants' hair relaxer products to Plaintiffs, other consumers, and the public;

b. Making false and deceptive representations that Defendants' hair relaxer products could be used safely for their ordinary and intended purposes, for the purpose of deceiving and lulling Plaintiffs and other consumers into purchasing and using Defendants' hair relaxer products without knowledge of their risks;

c. Falsely representing the qualities and characteristics of Defendants' hair relaxer products and their safety to Plaintiffs, other consumers, and the public;

d. Knowingly subjecting Plaintiffs and all purchasers and users of Defendants' hair relaxer products to a substantial and unreasonable risk of harm, including the risk of serious illness and death, for the purpose of enhancing Defendants' profits; and

e. Intentionally targeting Black and Brown women, including Black and Brown teenaged girls and children, as customers to purchase and use their unsafe hair relaxer products and doing so without warning of their dangers, including by relying on and invoking anti- Black stereotypes and anti-Black history against natural Black and Brown hair and features.

f. To the extent that punitive damages are an available remedy but not considered an independent cause of action in any Plaintiffs state, the allegations in this section are pled in support of punitive damages being an appropriate remedy for that Plaintiffs' other causes of action.

**ANSWER: Paragraph 280, and its sub-parts, of the Master Complaint contains allegations regarding parties other than Defendant to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 280, and its sub-parts 'a' – 'f', of the Master Complaint.**

## AFFIRMATIVE DEFENSES

Luster hereby asserts the following affirmative defenses to the allegations and claims in the Master Long Form Complaint. All affirmative defenses asserted herein are pled in the alternative, and none constitutes an admission that Luster is in any way liable to the Plaintiffs, that the Plaintiffs have been or will be injured in any way, that the Plaintiffs are relieved of their burden to prove each element of its claims and the damages or relief sought, or that the Plaintiffs are entitled to any relief whatsoever. Subject to those limitations, and without assuming any burden of proof that it would not otherwise bear, Luster hereby asserts the following affirmative defenses to the Master Long Form Complaint and each and every allegation therein. Luster also reserves the right to plead any of these, or additional, affirmative defenses in response to any Short Form Complaint that may require such a response. Luster may also assert other defenses that become available or appear during the course of additional investigation or during discovery in this case. Luster reserves the right to amend this answer and its affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim

Plaintiffs' Complaint, and each claim for relief alleged therein, fail to state a claim upon which relief may be granted. The complaint fails to allege sufficient facts to state a claim against Luster upon which relief can be granted. Plaintiff has not alleged facts supporting any finding that she was injured in any way by Luster's conduct. The plaintiff fails to adequately allege any causal connection between any ascertainable loss and Luster's alleged misconduct (or alleged misconduct properly attributable to Luster). The plaintiff fails to plead any actionable misrepresentation, omission, or sale made by, or properly attributable to, Luster. The plaintiff m anufacturing, labeling, and/or distributing of the hair relaxers that the plaintiff alleges Luster sold (or sales for which Luster is responsible) complied with, and were in conformity with, all applicable

governmental regulations and the generally recognized state of the art at the time those products were designed, manufactured, labeled, and/or distributed.

### SECOND AFFIRMATIVE DEFENSE
### Comparative Negligence

Plaintiffs failed and/or neglected to exercise ordinary care for their own personal safety and welfare, which was the proximate cause of the injuries and damages alleged.

### THIRD AFFIRMATIVE DEFENSE
### Acts by Third Parties

The Plaintiffs' claims against Luster are barred to the extent that any rely on or implicate the negligent, intentional, malicious, criminal, and/or otherwise unlawful acts or omissions of third parties that are not subject to Luster's control or authority and for which Luster is not responsible and cannot be held liable. The injury the Plaintiffs allege was the result of one or more superseding and/or intervening acts by third parties. Luster's liability, if any, therefore, must be reduced or negated by proportionate fault to the extent that third parties have contributed to, or caused, the Plaintiffs' injuries. Moreover, any imposition of liability, damages, penalties, or other relief against Luster for the negligent, intentional, malicious, criminal, and/or other acts or omissions of parties or third parties not subject to Luster's control or authority and for which Luster is not responsible would violate Luster's procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution. The plaintiffs are not entitled to recover any damages or other relief from Luster to the extent that the Plaintiffs' injuries were caused by the acts of third parties.

### FOURTH AFFIRMATIVE DEFENSE
### State of the Art

The Plaintiffs may not recover from Luster because the methods, standards, or activities of designing, manufacturing, labeling, and distributing of the hair-relaxer products at issue complied

with and were in conformity with the generally recognized state of the art at the time the products were designed, manufactured, labeled, and distributed.

## FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate

The plaintiffs have failed to take reasonable steps to mitigate any damages. Among other things, they continued to use hair relaxer products without further inquiry into any risks of side effects of such products, and the Plaintiffs failed to take adequate steps to prevent such side effects and risks of use.

## SIXTH AFFIRMATIVE DEFENSE
### Waiver

The Plaintiffs' claims are barred or limited, in whole or in part, by the doctrine of waiver. The Plaintiffs' claims are, according to the complaint, based on conduct that occurred decades ago. The plaintiffs knew or reasonably should have known of the facts underlying its claims years ago and failed to file suit for years thereafter.

## SEVENTH AFFIRMATIVE DEFENSE
### Laches

The Plaintiffs' unreasonable delay in the filing and service of this action has operated to the detriment and prejudice of Luster and, as a consequence, the plaintiffs are barred from seeking the relief sought, or any relief whatsoever, by laches. The plaintiffs' claims are, according to the complaint, based on conduct from as early as the 1980s. The plaintiffs knew or reasonably should have known of the facts underlying their claims years ago and failed to file suit for years thereafter. The plaintiffs' failure to exercise diligence in bringing this action has prejudiced Luster by depriving it of the opportunity to alter its practices (or practices properly attributable to Luster), as necessary. As a matter of equity, therefore, the doctrine of laches should bar the plaintiffs from recovering on their claims.

### EIGHTH AFFIRMATIVE DEFENSE
### Assumption of the Risk

To the extent the plaintiffs have incurred the injuries or damages alleged in the  complaint, their claims are barred and/or reduced because the plaintiffs and users of hair-relaxer  products voluntarily and knowingly assumed the risk of incurring said injuries or damages.

### NINTH AFFIRMATIVE DEFENSE
### Inadequate Protections

The law governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages.

### TENTH AFFIRMATIVE DEFENSE
### Informed Consent

To the extent the plaintiffs have incurred the injuries or damages alleged in the   complaint, their claims are barred and/or reduced because the plaintiffs and users of hair relaxer  products were fully advised and informed of the risk of such use and hazards involved, as well as   alternative treatments, after which they expressed knowledge, understanding, and/or consent to   the use the products.

### ELEVENTH AFFIRMATIVE DEFENSE
### Product Misuse

The claims are barred, in whole or in part, by the alteration, modification, or misuse by  the plaintiffs or by third parties of the hair-relaxer products at issue.

### TWELFTH AFFIRMATIVE DEFENSE
### Moot

The plaintiff's claims are barred, in whole or in part, because they are not ripe or have become moot.

### THIRTEENTH AFFIRMATIVE DEFENSE
### Intervening and Superseding Events

If the plaintiffs have sustained any injuries or damages, such were the result of  intervening or superseding events, factors, occurrences, causes, or conditions which were not   reasonably foreseeable and in no way caused by, or properly attributable to, Luster and for which   Luster  is not liable.

### FOURTEENTH AFFIRMATIVE DEFENSE
### Misjoinder and Severance

The plaintiffs' claims against Luster and other Defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences as required for joinder of parties. The plaintiffs fail to connect any of Luster's alleged sales, marketing, or distribution activities (or sales, marketing, or distribution activities for which Luster is responsible), to those of other Defendants, nor could they. Accordingly, the Court should sever or dismiss the plaintiffs' claims against Luster.

### FIFTEENTH AFFIRMATIVE DEFENSE
### Standing

Plaintiff's claims may be barred because they lack standing to bring the claims.

### SIXTEENTH AFFIRMATIVE DEFENSE
### Failure to Join Necessary Parties

The plaintiffs have failed to join one or more necessary and indispensable parties,  including without limitation professional stylists, direct product sellers, and other third parties whom the plaintiff alleges engaged in the unauthorized or illicit dispensing, sale, or use of hair-  relaxer products throughout the United States. These third parties have a legal interest in the  subject matter of the litigation to the extent they facilitated and/or participated in the hair-relaxer   misuse and related misconduct alleged in the complaint. The plaintiffs have failed to name any  such third

parties as defendants, however, nor have the plaintiffs alleged how, if at all, it would be infeasible to join one or more indispensable but absent parties. Thus, Plaintiffs' claims should be dismissed.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### Truthful and Non-Misleading Statements

The representations or statements alleged to have been made were true and accurate at the time made and/or otherwise were made in good faith, with a reasonable belief as to their validity and accuracy and with a reasonable belief that all conduct was lawful. Facts showing good faith and reasonable belief in the accuracy of such representations or statements (or representations or statements properly attributable to Luster) include, but are not limited to, Luster's good-faith reliance on and interpretation of clinical data, medical literature, and guidance for product communications published by FDA. Luster's good faith and reasonable belief should be considered as a mitigating factor relevant to the relief, if any, granted in this action.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### Conformity with Applicable Law

The products at issue in the case, when placed into the stream of commerce, were reasonably safe products as defined under state and federal law. Luster's alleged conduct conformed to all state and federal statutes, regulations, and industry standards based upon the state of knowledge existing at the relevant time(s) alleged in the complaint.

## NINETEENTH AFFIRMATIVE DEFENSE
### Commerce Clause

The plaintiff's claims are barred, in whole or in part, by the Commerce Clause of the United States Constitution.

## TWENTIETH AFFIRMATIVE DEFENSE
### No Actionable Misrepresentation

Plaintiff's fail to plead any actionable misrepresentations or omissions.

## TWENTY FIRST AFFIRMATIVE DEFENSE
### No Duty

Plaintiff's fail to plead any duty owed to the plaintiff.

## TWENTY SECOND AFFIRMATIVE DEFENSE
### Contributory Negligence

Any injuries or damages sustained by the Plaintiffs were due to the Plaintiffs' own negligent, careless, reckless, and grossly negligent acts or omissions, which combined and concurred with any alleged negligence on the part of Luster (or alleged negligence properly attributable to Luster) to produce such injuries or damages, if any, and without which such injuries or damages would not have occurred. The plaintiffs (including their agencies, entities, and officials) were negligent in, among other things, their application of hair-relaxer products, their investigation of the risks, and their research into the risks and hazards in use of hair-relaxer products. Therefore, the plaintiffs' damages, if any, should be proportionately reduced under the doctrine of contributory negligence.

## TWENTY THIRD AFFIRMATIVE DEFENSE
### Utility Outweighs Risk of Harm

Plaintiffs' Complaint, and each claim for relief alleged therein, are barred because the benefits of the alleged product's design outweigh any alleged inherent risks.

## TWENTY FOURTH AFFIRMATIVE DEFENSE
### No Express Warranty

Plaintiffs' Complaint, and each claim for relief alleged therein, are barred because they did not rely on any statements made by Luster in connection with their purchase/use of any alleged products and therefore no such statements exist for the basis of any bargain between Plaintiffs and Luster.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

Luster hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during discovery proceedings in this action and hereby reserves the right to amend its answer and to assert any such defense by appropriate motion.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) Defendants hereby demand a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, Defendant, Luster Industries, Inc. demands judgment against Plaintiffs on each of the above- referenced affirmative defenses and for such other and further relief the Court deems equitable and just.

Respectfully Submitted,

**Maron Marvel Bradley Anderson & Tardy LLC**

*/s/ Robert W. Petti*
***Attorneys for Luster Products, Inc.***

Melissa Fallah, ARDC #6274894
Robert W. Petti, ARDC #6294744
Alyssa P. Fleischman, ARDC #6335870
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com