**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Master Docket No. 1:23-cv-00818 MDL No. 3060 Hon. Mary M. Rowland |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION TO DISMISS**
**CONSOLIDATED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ................................................................................1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY ...................................6

    A.   Claims and Allegations of the Class Action Complaint ...........................6

    B.   Notable Omissions from the Class Action Complaint.............................8

III. LEGAL STANDARD.........................................................................................10

IV.  PLAINTIFFS LACK STANDING TO BRING THE ASSERTED CLAIMS. .................11

    A.   Plaintiffs Lack Article III Standing.........................................................11

    B.   Plaintiffs Lack Standing to Pursue Claims Brought Under the Laws of States in Which They Do Not Reside. ...................................................14

V.   PLAINTIFFS' CLAIMS ARE PREEMPTED....................................................16

VI.  PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM..........18

    A.   Plaintiffs' Products Liability Claims Are Barred by the Economic Loss Doctrine....................................................................................................19

    B.   Plaintiffs' Negligence Claims Are Insufficiently Pled. ..........................21

    C.   Plaintiffs' Design Defect Claim Is Insufficiently Pled. ..........................23

    D.   Plaintiffs' Failure To Warn Claim Is Insufficiently Pled.......................24

    E.   Plaintiffs' Medical Monitoring Claim Is Insufficiently Pled................25

VII. PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED............26

    A.   The Fraudulent Concealment and Negligent Misrepresentation/Omission Claims Are Insufficiently Pled...............................................................28

    B.   The Consumer Protection Claims Are Insufficiently Pled. ...................30

VIII. PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY PLED...............................................................................................................32

IX.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT. ................35

X.   CONCLUSION..................................................................................................36

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*,
    No. 1:19-cv-01504, 2020 WL 13200492 (E.D. Va. May 22, 2020) .........................................30

*A-1 Advanced Moving & Storage, Inc. v. NorVergence, Inc. (In re NorVergence, Inc.)*,
    424 B.R. 663 (Bankr. D.N.J. 2010) ...................................................................15

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008)..........................................................................16

*Altman v. HO Sports Co.*,
    821 F. Supp. 2d 1178 (E.D. Cal. 2011)..............................................................24

*Aronson v. Celebrity Cruises, Inc.*,
    30 F. Supp. 3d 1379 (S.D. Fla. 2014) ..............................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................4, 10

*Atkinson v. P & G-Clairol, Inc.*,
    813 F. Supp. 2d 1021 (N.D. Ind. 2011) ............................................................33

*Baldwin v. Star Sci., Inc.*,
    78 F. Supp. 3d 724 (N.D. Ill. 2015) ................................................................31

*Barbee v. Atl. Richfield Co.*,
    No. 2:17-CV-193-JVB-JPK, 2022 WL 4463341 (N.D. Ind. Sept. 23, 2022).........................26

*Bastien v. AT&T Wireless Servs., Inc.*,
    205 F.3d 983 (7th Cir. 2000) .......................................................................18

*Batson v. Live Nation Ent., Inc.*,
    746 F.3d 827 (7th Cir. 2014) .......................................................................31

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................4, 10

*Belton v. Combe Inc.*,
    No. 4:16 CV 220 CDP, 2016 WL 6679843 (E.D. Mo. Nov. 14, 2016)..................................26

*Birchler v. Gehl Co.*,
    88 F.3d 518 (7th Cir. 1996) .......................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ........................................................................13, 35

*Boomer v. AT&T Corp.*,
    309 F.3d 404 (7th Cir. 2002) ...............................................................................18

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) ...............................................................................27

*Bowen v. Energizer Holdings, Inc.*,
    No. CV 21-4356-MWF, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ..............13

*Bray v. Marriott Int'l*,
    158 F. Supp. 3d 441 (D. Md. 2016) .....................................................................21

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ...............................................................................20

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020 ..................................................................35

*Brown v. Auto-Owners Ins. Co.*,
    No. 1:21-cv-02597, 2022 WL 2442548 (N.D. Ill. June 1, 2022) .......................2, 14

*Burkhart v. Allson Realty Tr.*,
    363 F. Supp. 1286 (N.D. Ill. 1973) .......................................................................4

*Buschauer v. Columbia Coll. Chi.*,
    579 F. Supp. 3d 1045 (N.D. Ill. 2022) ...................................................................1

*Cameron v. Battery Handling Sys., Inc.*,
    524 F. Supp. 3d 860 (C.D. Ill. 2021) ...................................................................34

*Camey v. Force Factor, LLC*,
    Civil Action No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016) ................16

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*,
    No. 02 C 8800, 2005 WL 782698 (N.D. Ill. Apr. 6, 2005) ....................................32

*Cavender v. Medtronic, Inc.*,
    No. 3:16-CV-232, 2017 WL 1365354 (N.D. Ind. Apr. 14, 2017) ...........................21

*Chavez v. Ford Motor Co.*,
    No. EP-18-CV-109-KC, 2018 WL 6190601 (W.D. Tex. Sept. 26, 2018) .................32

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)...................................................................................15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................................11

*Clark v. Gen. Motors*,
No. 3:14cv505-DPJ-FKB, 2016 WL 3574408 (S.D. Miss. June 23, 2016).............................30

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998) ................................................................................................10

*Container Store, Inc. v. Fortna Inc.*,
No. 3:20-CV-2893-B, 2021 WL 1250334 (N.D. Tex. Apr. 5, 2021) ......................................30

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ................................................................................................28

*Corwin v. Conn. Valley Arms, Inc.*,
74 F. Supp. 3d 883 (N.D. Ill. 2014) ......................................................................................33

*Critcher v. L'Oréal USA, Inc.*,
959 F.3d 31 (2d Cir. 2020)...................................................................................16, 17, 18

*Cubbage v. Novartis Pharms. Corp.*,
No. 5:16-cv-129-Oc-30PRL, 2016 WL 3595747 (M.D. Fla. July 5, 2016) ...........................32

*DeCoteau v. FCA US LLC*,
No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015).....................23

*Dero Roofing, LLC v. Triton, Inc.*,
No. 2:21-cv-688-SPC-MRM, 2022 WL 2104287 (M.D. Fla. June 10, 2022).......................25

*Edalatdju v. Guaranteed Rate, Inc.*,
748 F. Supp. 2d 860 (N.D. Ill. 2010) ....................................................................................28

*Elk Grove Unified Sch. Dist. v. Newdow*,
542 U.S. 1 (2004)...................................................................................................................11

*First Magnus Fin. Corp. v. Dobrowski*,
387 F. Supp. 2d 786 (N.D. Ill. 2005) ....................................................................................30

*Flynn v. FCA US LLC*,
No. 15-CV-855-SMY, 2020 WL 1492687 (S.D. Ill. Mar. 27, 2020) ...........................2, 12, 13

# TABLE OF AUTHORITIES

**Page**

*Francis v. Gen. Motors, LLC*,
    504 F. Supp. 3d 659 (E.D. Mich. 2020)................................................................32

*Franulovic v. Coca Cola Co.*,
    Civil Action Nos. 07-539 (RMB), 07-828(RMB), 2007 WL 3166953
    (D.N.J. Oct. 25, 2007)..........................................................................................34

*Frere v. Medtronic, Inc.*,
    No. EDCV 1-502338BRO, 2016 WL 1533524 (C.D. Cal. Apr. 6, 2016)..............25

*Garland v. Las Vegas Metro. Police Dep't*,
    No. 2:12-cv-00147-GMN-VCF, 2013 WL 1195647 (D. Nev. Mar. 21, 2013)......21

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021)......................................................................21

*Grinage v. Mylan Pharms., Inc.*,
    840 F. Supp. 2d 862 (D. Md. 2011).......................................................................23

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006)................................................................................27

*Highsmith v. Chrysler Credit Corp.*,
    18 F.3d 434 (7th Cir. 1994)..................................................................................15

*Hsieh v. FCA US LLC*,
    440 F. Supp. 3d 1157 (S.D. Cal. 2020)............................................................20, 30

*Huertas v. Bayer U.S., LLC*,
    Civil Action No. 21-20021 (SDW)(CLW), 2022 WL 3572818
    (D.N.J. Aug. 19, 2022).........................................................................................14

*Ibarolla v. Nutrex Rsch., Inc.*,
    No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012)...............................28

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
    687 F. Supp. 2d 897 (W.D. Mo. 2009)...............................................5, 33, 34, 35

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002)...............................................................................35

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013).............................14

# TABLE OF AUTHORITIES

**Page**

*In re Effexor Antitrust Litig.*,
357 F. Supp. 3d 363 (D.N.J. 2018) ...................................................................5, 32

*In re Escalera Res. Co.*,
563 B.R. 336 (Bankr. D. Colo. 2017) ......................................................................22

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
483 F. Supp. 3d 838 (C.D. Cal. 2020) .................................................................4, 19

*In re: Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017).....................................................................36

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-cv-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ...........................14

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
801 F. Supp. 2d 993 (S.D. Cal. 2011).....................................................................32

*In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018).................................................................2, 12, 13, 14

*In re Magnesium Oxide Antitrust Litig.*,
No. CIV. 10-5943 DRD, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ......................15

*In re McDonald's French Fries Litig.*,
503 F. Supp. 2d 953 (N.D. Ill. 2007) ......................................................................34

*In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
241 F.R.D. 185 (S.D.N.Y. 2007) .............................................................................26

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..................................................................15

*In re Riddell Concussion Reduction Litig.*,
77 F. Supp. 3d 422 (D.N.J. 2015) ...........................................................................27

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
546 F. Supp. 3d 1152 (S.D. Fla. 2021......................................................................26

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
548 F. Supp. 3d 1225 (S.D. Fla. 2021) ...................................................................23

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ..................................................................................11

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Johannessohn v. Polaris Indus., Inc.*,
  450 F. Supp. 3d 931 (D. Minn. 2020)....................................................................15

*Johnson v. UMG Recordings, Inc.*,
  663 F. App'x 478 (7th Cir. 2016) ...........................................................................6

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...............................................................................27

*Koronthaly v. L'Oréal USA, Inc.*,
  No. 07-CV-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29, 2008)................................2, 14

*Lambert v. Dollar Gen. Corp.*,
  No. 16 C 11319, 2017 WL 2619142 (N.D. Ill. June 16, 2017) ................................34

*Lemberg v. JPMorgan Chase Bank, N.A.*,
  No. 17-cv-05241-JSC, 2018 WL 1046886 (N.D. Cal. Feb. 26, 2018) ....................22

*Lenawee Cnty. Drain Comm'r v. Env't One Corp.*,
  No. 07-CV-14290, 2008 WL 11356774 (E.D. Mich. Apr. 29, 2008).......................30

*Lewis v. Mercedes-Benz USA, LLC*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ..................................................................15

*Liberty Mut. Ins. Co. v. Equip. Corp. of Am.*,
  646 F. Supp. 2d 51 (D.D.C. 2009).........................................................................20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................11, 13

*Marks v. CDW Comput. Ctrs., Inc.*,
  901 F. Supp. 1302 (N.D. Ill. 1995) .........................................................................9

*Mayotte v. US Bank Nat'l Ass'n*,
  424 F. Supp. 3d 1077 (D. Colo. 2019)...................................................................32

*Metz v. Wyeth LLC*,
  872 F. Supp. 2d 1335 (M.D. Fla. 2012) .................................................................21

*Middaugh v. InterBank*,
  528 F. Supp. 3d 509 (N.D. Tex. 2021) ...................................................................35

*Mills v. Cabell Cnty. Bd. of Educ.*,
  Civil Action No. 3:22-0592, 2023 WL 4980553 (S.D. W. Va. Aug. 3, 2023) .......21

## TABLE OF AUTHORITIES

**Page**

*Mountain Club Owner's Ass'n v. Graybar Elec. Co.*,
    Civ. No. 2:13-1835 WBS KJN, 2014 WL 130767 (E.D. Cal. Jan. 14, 2014) ....................4, 19

*Murphy v. Proctor & Gamble Co.*,
    695 F. Supp. 2d 600 (E.D. Mich. 2010)...................................................................32

*O'Connor v. Ford Motor Co.*,
    477 F. Supp. 3d 705 (N.D. Ill. 2020) ................................................................5, 31

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) .........................................................................20, 35

*Perez v. Metabolife Int'l, Inc.*,
    218 F.R.D. 262 (S.D. Fla. 2003) .........................................................................26

*Pershouse v. L.L. Bean, Inc.*,
    368 F. Supp. 3d 185 (D. Mass. 2019) ..................................................................36

*Pfitzer v. Smith & Wesson Corp.*,
    No. 4:13-CV-676-JAR, 2014 WL 636381 (E.D. Mo. Feb. 18, 2014) ....................................27

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) .........................................................................11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .......................................................................11, 27

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ...............................................................33, 36

*Retired Chi. Police Ass'n v. City of Chicago*,
    76 F.3d 856 (7th Cir. 1996) ...........................................................................10

*Ritacca v. Storz Med., A.G.*,
    291 F.R.D. 176 (N.D. Ill. 2013)........................................................................31

*Robin v. Arthur Young & Co.*,
    915 F.2d 1120 (7th Cir. 1990) ..........................................................................28

*U.S. ex rel. Robinson v. Northrop Corp.*,
    149 F.R.D. 142 (N.D. Ill. 1993).........................................................................28

*Rodriguez v. Ford Motor Co.*,
    596 F. Supp. 3d 1050 (N.D. Ill. 2022) ..................................................................29

**TABLE OF AUTHORITIES**

**Page**

*Rollins v. Wackenhut Servs.*,
   802 F. Supp. 2d 111 (D.D.C. 2011) ..........................................................................23

*Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics*,
   Civil Action No. 20-1926, 2020 WL 7353105 (E.D. Pa. Dec. 9, 2020) ..............................21

*Smith v. Citimortgage, Inc.*,
   Civil Action No. 15-7629 (JLL), 2015 WL 12734793 (D.N.J. Dec. 22, 2015) ....................30

*Smith v. Trump*,
   No. 21-cv-02265 (APM), 2023 WL 417952 (D.D.C. Jan. 26, 2023) ....................................21

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...........................................................................................................11

*Stuve v. Kraft Heinz Co.*,
   No. 21-CV-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023) ...............................................29

*Tanner v. Jupiter Realty Corp.*,
   433 F.3d 913 (7th Cir. 2006) .............................................................................................19

*Thomas v. FAG Bearings Corp.*,
   846 F. Supp. 1400 (W.D. Mo. 1994) .................................................................................21

*Todd v. Societe Bic, S.A.*,
   21 F.3d 1402 (7th Cir. 1994) .............................................................................................19

*Trader Joe's Co. v. Hallatt*,
   835 F.3d 960 (9th Cir. 2016) .............................................................................................15

*Tsavaris v. Pfizer, Inc.*,
   No. 1:15-cv-21826-KMM, 2016 WL 375008 (S.D. Fla. Feb. 1, 2016) ...........................23, 24

*Vanzant v. Hill's Pet Nutrition, Inc.*,
   934 F.3d 730 (7th Cir. 2019) ....................................................................................5, 27, 35

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .............................................................................5, 34

*Villegas v. Princeton Farms, Inc.*,
   893 F.2d 919 (7th Cir. 1990) .............................................................................................26

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ...........................................................................................13

## TABLE OF AUTHORITIES

**Page**

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) .............................................................30

*Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*,
  No. 4:16CV783JCH, 2017 WL 3621459 (E.D. Mo. Aug. 23, 2017) .....................................21

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
  607 F. Supp. 2d 885 (N.D. Ill. 2009) ....................................................28

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ..............................................................29

*Witherspoon v. Philip Morris Inc.*,
  964 F. Supp. 455 (D.D.C. 1997) ..........................................................21

*Witt v. Howmedica Osteonics Corp.*,
  No. 13-cv-20742-JLK, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) ..................................24

**STATE CASES**

*Badillo v. Am. Brands, Inc.*,
  16 P.3d 435 (Nev. 2001) ....................................................................26

*Barker v. Lull Eng'g Co.*,
  573 P.2d 443 (Cal. 1978) ...................................................................23

*Blanco v. Baxter Healthcare Corp.*,
  70 Cal. Rptr. 3d 566 (Cal. Ct. App. 2008) ...........................................32

*Gunkel v. Renovations, Inc.*,
  822 N.E.2d 150 (Ind. 2005) ................................................................20

*In re: Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  No. 19-md-02918-MMC, 2020 WL 6270948 (N.D. Cal. Oct. 23, 2020)...............................15

*Intermountain Farmers Ass'n v. Fitzgerald*,
  574 P.2d 1162 (Utah 1978) ................................................................21

*Liby v. City Park Family*,
  No. 2011-CV-436, 2012 Colo. Dist. LEXIS 781 (D. Colo. Feb. 27, 2012) ...........................21

*Merrill v. Navegar, Inc.*,
  28 P.3d 116 (Cal. 2001) ....................................................................22

**TABLE OF AUTHORITIES**

**Page**

*Milan Supply Chain Sols., Inc. v. Navistar, Inc.*,
    627 S.W.3d 125 (Tenn. 2021) ................................................................30

*Millard v. Biosources, Inc.*,
    68 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ...........................................21

*Oakes v. E.I. Du Pont de Nemours & Co.*,
    77 Cal. Rptr. 709 (Cal. Ct. App. 1969) ................................................22

*Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*,
    760 So.2d 1037 (Fla. Dist. Ct. App. 2000) ..........................................15

*Ott v. AlliedSignal, Inc.*,
    827 N.E.2d 1144 (Ind. Ct. App. 2005) ................................................21

*Phillips v. Cricket Lighters*,
    841 A.2d 1000 (Pa. 2003) ....................................................................22

*Pulte Home Corp. v. Parex, Inc.*,
    923 A.2d 971 (Md. Ct. Spec. App. 2007) ...........................................20

*Quiroz v. ALCOA Inc.*,
    416 P.3d 824 (Ariz. 2018) ...................................................................21

*Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def.*,
    696 A.2d 137 (Pa. 1997) ......................................................................26

*REM Coal Co. v. Clark Equip. Co.*,
    563 A.2d 128 (Pa. Super. Ct. 1989) .....................................................20

*Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*,
    694 P.2d 198 (Ariz. 1984) ...................................................................20

*San Diego Gas & Elec. Co. v. Super. Ct. (Covalt)*,
    920 P.2d 669 (Cal. 1996) .....................................................................26

*Setliff v. E.I. Du Pont de Nemours & Co.*,
    38 Cal. Rptr. 2d 763 ............................................................................19

*Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*,
    703 S.W.2d 901 (Mo. 1986) ................................................................20

*Star Furniture Co. v. Pulaski Furniture Co.*,
    297 S.E.2d 854 (W. Va. 1982) ............................................................20

# TABLE OF AUTHORITIES

**Page**

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*,
    206 P.3d 81 (Nev. 2009) ........................................................................20

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
    110 So. 3d 399 (Fla. 2013) ..................................................................20

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
    371 Ill. App. 3d 759 (2007) ................................................................30

*Town of Alma v. AZCO Constr., Inc.*,
    10 P.3d 1256 (Colo. 2000) ..................................................................20

*Trankel v. State, Dep't of Mil. Affs.*,
    938 P.2d 614 (Mont. 1997) ..................................................................21

## FEDERAL STATUTES

15 U.S.C. § 1454(a) ....................................................................................17

21 U.S.C. § 301, *et seq.* ...................................................1, 3, 16, 17, 18

21 U.S.C. § 371 ..........................................................................................17

21 U.S.C. § 379s ............................................................................3, 16, 17

## STATE STATUTES

Ala. Code § 8-19-10(f) ..........................................................................5, 31

Cal. Civ. Code § 1782(a) ..........................................................................32

Ind. Code Ann. § 24-5-0.5-5(a) ................................................................32

Iowa Code Ann. § 714H.7 ........................................................................32

La. Stat. Ann. § 51:1409(A) ......................................................................31

Miss. Code Ann. § 75-24-15(2) ................................................................32

Miss. Code Ann. § 75-24-15(4) ................................................................31

Mo. Ann. Stat. § 407.020(1) ....................................................................15

Tenn. Code Ann. § 47-18-109(g) ..............................................................31

## TABLE OF AUTHORITIES

**Page**

Tex. Bus. & Com. Code Ann. § 17.505(a) ..................................................................32

Va. Code Ann. § 59.1-204 ........................................................................................31

**RULES**

Rule 8 ......................................................................................................................4

Fed. R. Civ. P. 9(b) ................................................................................11, 27, 28, 31

Fed. R. Civ. P. 12(b) ......................................................................................1, 10, 11

**REGULATIONS**

21 C.F.R. § 701.3 ..............................................................................................3, 17, 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. VI, cl. 2 ..........................................................................................16

U.S. Const. art. III..............................................................................1, 10, 11, 12, 14

Defendants submit this joint memorandum in support of their motion to dismiss the Consolidated Class Action Complaint ("Complaint" or "Class Action Complaint") filed by Plaintiffs in MDL No. 3060 ("Plaintiffs") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules").[1]

## I.  **PRELIMINARY STATEMENT**

Plaintiffs' Class Action Complaint should be dismissed for several reasons. First, Plaintiffs' conclusory allegations of economic harm do not give rise to Article III standing. Second, Plaintiffs' claims cannot overcome the broad preemption provision of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.* Third, even if Plaintiffs had standing to assert their claims and those claims were not preempted, Plaintiffs have not alleged facts sufficient to state a claim upon which relief can be granted.

First, Plaintiffs have not suffered any "injury in fact" conferring Article III standing. Plaintiffs cannot cure this fatal flaw by way of amendment. *See Buschauer v. Columbia Coll. Chi.*, 579 F. Supp. 3d 1045, 1049 (N.D. Ill. 2022) (a plaintiff cannot plead amended allegations that "'flatly contradict the originals'" to avoid dismissal (citation omitted)). The named plaintiffs are thirty-four individuals who seek economic damages based on allegations that they purchased (unidentified) hair relaxer products that may cause uterine or ovarian cancer. (Dkt. No. 185 ¶¶ 6, 14-47.) No injury in fact exists where, as here, a plaintiff complains solely of economic injury

---

[1] Defendants are comprised of L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; SoftSheen-Carson LLC; Revlon, Inc.; Revlon Consumer Products Corporation; Revlon Group Holdings LLC; Strength of Nature, LLC; Godrej SON Holdings, Inc.; Namasté Laboratories, LLC ("Namasté"); AFAM Concept, Inc. d/b/a JF Labs, Inc.; McBride Research Laboratories, Inc.; Avlon Industries, Inc.; Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.; House of Cheatham LLC; and Luster Products, Inc. Plaintiffs also name "Dabur International USA Ltd." as a Defendant, but no such entity exists or ever has existed. Thus, Dabur International USA Ltd. is not a proper Defendant before this Court. (*See* Dkt. No. 291 at 25.) In addition, on November 13, 2023, the Court also dismissed Dabur International Ltd. (also named as a Defendant here) and Dermoviva Skin Essentials Inc. for lack of personal jurisdiction. (*See id.* at 22-25.)

stemming from the purchase of products that she "entirely consumed" and that "functioned for [her] as expected." *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280-81 (3d Cir. 2018). *See also Flynn v. FCA US LLC*, No. 15-CV-855-SMY, 2020 WL 1492687 (S.D. Ill. Mar. 27, 2020), *aff'd as modified*, 39 F.4th 946 (7th Cir. 2022) (no injury in fact where plaintiffs complaining of an economic injury purchased vehicles alleged to contain a defect that did not manifest). While a minority of Plaintiffs allege they are at an "increased risk" for uterine and ovarian cancer, these allegations are not plausible in light of Plaintiffs' admission that the unidentified products they purchased may not have contained any such defect. (Dkt. No. 185 ¶ 116 (alleging that the unidentified hair relaxer products at issue "have contained" toxic ingredients—not that they currently contain such ingredients or that they contained such ingredients when Plaintiffs used them).) And, in any event, "[m]ere exposure" to a harmful ingredient is insufficient to establish injury in fact. *Koronthaly v. L'Oréal USA, Inc.*, No. 07-CV-5588 (DMC), 2008 WL 2938045, at *1, 5 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010).

Plaintiffs also lack standing to assert claims on behalf of all individuals in the United States. Plaintiffs are residents of only seventeen different states, yet they assert fraud, consumer protection, breach of warranty and unjust enrichment claims on behalf of residents of the other thirty-three states, as well as U.S. territories. (*See, e.g.*, Dkt. No. 185 ¶ 160.) Similarly, Plaintiffs seeking medical monitoring costs are residents of just six states, but assert products liability claims on behalf of individuals residing in thirteen jurisdictions. (*See id.* ¶ 162.) "Courts in this District routinely dismiss or strike class claims where," as here, "named plaintiffs seek to represent proposed class members from other states." *Brown v. Auto-Owners Ins. Co.*, No. 1:21-cv-02597, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022).

Second, Plaintiffs' claims are expressly preempted. The FDCA provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a). While FDCA preemption does not apply to products liability claims, as Plaintiffs have previously argued, "products liability" claims only encompass claims "brought against a manufacturer, seller, or lessor of a product . . . for **personal injury, death, or property damages** caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of a product." (Dkt. No. 291 at 7-8 (emphasis added) (internal quotation marks omitted).) The Court held that the claims asserted in the Master Long-Form Personal Injury Complaint ("Master Personal Injury Complaint") were "products liability" claims because they were based on allegations of personal injury and sought personal injury damages (*id.*), but Plaintiffs do not seek personal injury damages here. Thus, the FDCA's preemption clause bars Plaintiffs' claims, which are based on Defendants' alleged failure to disclose the presence of as-yet identified ingredients in the fragrance component of their products, even though FDA regulations expressly do not require this disclosure. (*See* Dkt. No. 185 ¶ 122 (alleging that toxic ingredients "are present in some of Defendants' [relaxer products] under the guise of 'fragrance' and 'perfumes'").) *See also* 21 C.F.R. § 701.3(a), (*l*).

Third, even if their claims were not preempted, Plaintiffs fail to allege facts sufficient to state a claim under any theory.[2] For instance, because Plaintiffs can only seek economic damages,

---

[2] Plaintiffs assert five causes of action on behalf of the putative National Consumer Class (Seventh through eleventh Causes of Action) and six causes of action on behalf of the multi-state Medical Monitoring Class (First through Sixth Causes of Action). (Dkt. No. 185 ¶¶ 181-358.) In the alternative, they assert these same claims on behalf of consumers in single-state classes. (*Id.* ¶¶ 359-2218.) Each of the arguments Defendants make regarding the First through Eleventh Causes of Action herein apply with equal force to the corollary claims asserted on behalf of the putative single-state classes.

their products liability claims (First through Sixth Causes of Action) are barred by the economic loss doctrine. *See In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 847-48 (C.D. Cal. 2020) ("'[P]laintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses; if they cannot, then they would be precluded from any tort recovery in strict liability or negligence.'" (citation omitted)).

Plaintiffs cannot maintain their products liability claims for the additional reason that they have not identified the products they purportedly used or their alleged defects, as required by Rule 8, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Burkhart v. Allson Realty Tr.*, 363 F. Supp. 1286, 1289 (N.D. Ill. 1973) ("The function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial . . . ."). Critically, while Plaintiffs' counsel relied on Short-Form Complaints to avoid dismissal of the Master Personal Injury Complaint on this ground (*see* Dkt. No. 176 at 2), no such supplemental pleading can cure this deficiency in the Class Action Complaint. Plaintiffs' failure to identify the alleged defect in the (unidentified) products is also fatal to their claims. *See Mountain Club Owner's Ass'n v. Graybar Elec. Co.*, Civ. No. 2:13-1835 WBS KJN, 2014 WL 130767, at *2 (E.D. Cal. Jan. 14, 2014) (dismissing complaint that "does not identify the particular type of [product] or the alleged defect").

Plaintiffs' fraud-based claims for Negligent Misrepresentation/Omission, Violation of State Consumer Protection Statutes and Fraudulent Omission (Second, Seventh and Eleventh Causes of Action) are procedurally and substantively defective, as they are not pled with the requisite specificity, and fail to provide sufficient facts to support Plaintiffs' serious charges of fraud. Indeed, this Court dismissed identical claims based on identical allegations in the Master

Personal Injury Complaint.  (*See* Dkt. No. 291 at 15-17.)  In addition, while the Court permitted consumer protection claims based on an "unfairness" theory to proceed in the Master Personal Injury Complaint, it should not do so here, as "[t]he addition of 'unfairness' language does not change a[] [consumer protection] claim that is 'entirely grounded in fraud' to an unfairness claim." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020).  Moreover, several of the statutes at issue expressly provide that they cannot be asserted in class actions.  *See, e.g.*, Ala. Code § 8-19-10(f).  *See also In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 389-90 (D.N.J. 2018) (dismissing consumer protection claims subject to class action bars).

Plaintiffs' claims for Breach of Express Warranty and Breach of Implied Warranty of Merchantability/Fitness for Particular Use (Ninth and Tenth Causes of Action) should be dismissed, as Plaintiffs fail to identify any language or terms of an alleged express warranty or reliance thereon.  *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 904-05 (W.D. Mo. 2009) (dismissing breach of express warranty claims asserted in multi-state putative class action because plaintiffs did not "identify the basis for" or "content of, the alleged warranty," noting that allegations consisting of "general platitudes about . . . Defendant's commitment to safety and quality" did not suffice).  Plaintiffs' implied warranty claims also fail because they have not alleged, and cannot allege, that the unidentified products at issue "'did not possess even the most basic degree of fitness for ordinary use.'"  *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (citation omitted).

Finally, Plaintiffs' Unjust Enrichment claim (Eighth Cause of Action) does not state a claim for relief, as several jurisdictions do not recognize unjust enrichment as an independent cause of action or do not allow recovery for unjust enrichment when the plaintiff has an adequate remedy at law.  *See, e.g.*, *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019).

Given the above, Defendants request that the Court dismiss the Class Action Complaint.

## II.      RELEVANT FACTS AND PROCEDURAL HISTORY

### A.      Claims and Allegations of the Class Action Complaint

On August 15, 2023, Plaintiffs filed the Class Action Complaint, asserting claims for fraud, consumer protection, breach of warranty and unjust enrichment on behalf of a putative Nationwide Consumer Class consisting of "[a]ll individuals in the United States and its territories who, for personal use, purchased any Toxic Hair Relaxer Product(s) in the United States of America and/or its territories." (Dkt. No. 185 ¶ 160. *See also id.* ¶ 161 (same for alternative single-state classes).) Plaintiffs also assert products liability claims on behalf of a putative multi-state Medical Monitoring Class comprised of individuals who "have not been diagnosed with uterine or ovarian cancer" (*id.* ¶ 162). (*Id.* ¶ 163 (same for alternative single-state medical monitoring classes).)[3]

The named Plaintiffs are thirty-four individuals residing in seventeen states who are asserting various claims, including, in some circumstances, medical monitoring, based on allegations that the (unidentified) hair relaxer products they purchased may lead to uterine or ovarian cancer. (Dkt. No. 185 ¶¶ 6, 14-47.) However, the majority of Plaintiffs concede that they are not at an "increased risk" of cancer as a result of their use of the products, and many who allege otherwise are not seeking medical monitoring costs, further underscoring the implausibility of Plaintiffs' allegations as to any injury-in-fact or product defect. (*Compare* Dkt. No. 185 ¶¶ 15, 18,

---

[3] Although Plaintiffs acknowledged that they could (and would) only seek economic damages in their Class Action Complaint, these class definitions include persons who have suffered personal injuries. (*See e.g.,* Dkt. No. 185 ¶¶ 160-163. *See also* Dkt. No. 80 at 25:24-26:2 (Plaintiffs' counsel representing that they would "extricate the [personal] injury claims" from their Class Action Complaint).) As set forth more fully in Defendants' Motion to Strike Class Allegations and Punitive Damages Request ("Motion to Strike"), these overbroad definitions render a class action unmanageable and improper here. Each person who files a Short-Form Complaint would also be a putative class member, even though personal injury plaintiffs are entitled to but one recovery; *i.e.*, they cannot split their causes of action. *See Johnson v. UMG Recordings, Inc.*, 663 F. App'x 478, 479-80 (7th Cir. 2016) ("Litigants are not entitled to split their claims into multiple pieces.").

24-30, 36, 40, 41, 44, 46 (alleging 14 plaintiffs are at "an increased risk of developing uterine and ovarian cancer") *with id.* ¶¶ 14-17, 19-23, 31-35, 37-39, 42, 43, 45, 47 (making no such allegation for the remainder of the named plaintiffs). *See also* Dkt. No. 185 ¶ 162 (excluding Plaintiffs Glenn, Guillory and Harris from medical monitoring classes despite their allegations of "increased risk" of harm).)

Save for these sparse allegations, the Class Action Complaint, like the Master Personal Injury Complaint, contains little detail regarding Plaintiffs and the products they challenge. The factual allegations underpinning both pleadings are virtually identical. (*Compare* Dkt. No. 106 ¶¶ 33-114 *with* Dkt. No. 185 ¶¶ 66-144.) Plaintiffs again accuse Defendants of exploiting "anti-Black standards of beauty" (*id.* ¶ 97; *compare* Dkt. No. 106 ¶ 57), ignoring the fact that the entities they identify, including Johnson Products Company, SoftSheen, Namasté, and Luster, were founded and owned by Black families. Plaintiffs again provide images of various products allegedly sold by Defendants, without ever contending that a single Plaintiff purchased or used any of those products. Plaintiffs again do not identify any specific products they purchased; at most, they identify a non-exhaustive list of brands of such products they claim to have used. (Dkt. No. 185 ¶¶ 14-47.) The Class Action Complaint then asserts that Defendants' unidentified relaxer products "have contained ingredients that are themselves toxic compounds, or lead to the formation and release of toxic compounds" that can cause increased risk of uterine and ovarian cancers. (*Id.* ¶¶ 104, 116.) These ingredients allegedly include, but are not limited to, phthalates (which Plaintiffs admit have been around for over a century and have common uses), parabens, cyclosiloxanes, metals, lye and formaldehyde. (*Id.* ¶¶ 117, 124.) However, Plaintiffs do not allege that each unidentified hair relaxer product currently contains such ingredients, or that they contained such ingredients' throughout Plaintiffs' use of the same.

### B.    Notable Omissions from the Class Action Complaint

The Complaint reveals more by what it omits than by what it contains.  For instance, Plaintiffs allege that "Defendants marketed their hair relaxer products without ever disclosing the health risks of these products."  (Dkt. No. 185 ¶ 95.)  Yet, rather than identifying specific products or their purported "toxic ingredients," Plaintiffs identify only the brands carried by Defendants, such as Dark & Lovely, Motions, Design Essentials and Affirm.  (*See id.* ¶ 1.)  None of these brand names refer to an actual product, let alone a product used by any Plaintiff.  For instance, the two images below from the Complaint identify two different hair relaxer products sold under the Dark & Lovely brand.



The names of these products are: (1) Triple Nourished Silkening Relaxer – Regular and (2) Beautiful Beginnings No-Mistake Smooth Relaxer – For All Hair Types.  (*Id.* ¶ 99(j), (k).)  The Complaint does not allege that any Plaintiff used either of these products.  Instead, it unremarkably states that brands such as Dark & Lovely were distributed by Defendants in the past half-century.  (*See id.* ¶ 77.)  Many of the brands identified in the Complaint, including Dark & Lovely, carry more than one product that might be considered a "hair straightening product."  In addition, many brands also carry products that are unequivocally not "hair straightening products."  Critically,

unlike the Master Personal Injury Complaint, Plaintiffs cannot cure this deficiency with a supplemental pleading in the form of a Short-Form Complaint. Defendants should not be required to guess as to which of their products were used by Plaintiffs and are claimed to be defective.

The Complaint also does not identify any specific product that contains a "toxic ingredient." While Plaintiffs allege they used hair relaxer products from multiple brands over multi-year periods, they do not provide any details regarding the frequency or duration of use of any specific product. Moreover, Plaintiffs have not identified any actionable misrepresentations. As in the Master Personal Injury Complaint, Plaintiffs replicate images of product packaging (*see id.* ¶ 99), without alleging that any of these "representations" appeared on any of the undisclosed products they used during the undisclosed times they used them, or that they relied on such representations.

In addition, although Plaintiffs assert that scientific studies confirm that hair relaxer products cause uterine and ovarian cancer (*id.* ¶ 104), the Complaint does not identify any such study. Indeed, the Chang Article and the White Article, on which Plaintiffs wholly rely, do the opposite.[4] Neither study claims to establish causation, as no single epidemiological study can do so. The Chang Article evaluated the alleged impact of regular use of "hair straightening products," including not only hair relaxers but also straighteners and pressing products. (Chang Article, *supra* note 4, at 1637.) The authors of the Chang Article described their findings as "novel" and noted that "[b]rands or ingredients of hair products were not collected." (*Id.* at 1638, 1641.) The article also expressly concluded that "[m]ore research is warranted to replicate [the] findings in other

---

[4] *See Chang, et al.*, "Use of Straighteners and Other Hair Products and Incident Uterine Cancer," *Journal of the National Cancer Institute*, 114(12):1636-1645 (2022) ("Chang Article"), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9949582/; *White, et al.*, "Use of hair products in relation to ovarian cancer risk," *Carcinogenesis*, 42:1189-1195 (2021) ("White Article"), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8561257/. (Dkt. No. 185 ¶ 108 n.34, ¶ 112, n.36.) *See also Marks v. CDW Comput. Ctrs., Inc.*, 901 F. Supp. 1302, 1309 (N.D. Ill. 1995).

settings and to identify specific chemicals driving this observed association." (*Id*. at 1636.) The authors of the White Article analyzed the same data used in Chang and similarly described their study as "the first evidence of a possible relationship" between use of hair straightening products and ovarian cancer. The authors concluded that "more research is needed to confirm" the results to "better understand" any relationship that exists. (White Article, *supra* note 4, at 1195.) Moreover, both articles are subject to significant limitations, as they are based on analyses of data from the so-called "Sister Study," which consisted of sisters of women who had previously been diagnosed with breast cancer, who therefore may have a genetic predisposition. The Complaint does not identify any study that confirms Plaintiffs' causation theory.

## III.   LEGAL STANDARD

A challenge to a party's standing to sue under Article III of the U.S. Constitution is properly raised as a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *See Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). On a Rule 12(b)(1) motion, "the court is not bound to accept the truth of the allegations in the complaint. Rather, the plaintiff has the obligation to establish jurisdiction by competent proof, and the court may properly look to evidence beyond the pleadings in this inquiry." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face"—that is, facts that add up to "more than a sheer possibility that a defendant has acted unlawfully," "rais[ing] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570; *Ashcroft*, 556 U.S. at 678. "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (citation omitted). Moreover, "when a plaintiff's complaint . . .

sets out all of the elements of an affirmative defense," such as preemption, "dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). In resolving Rule 12(b)(6) motions, courts must consider documents critical to the complaint and referred to in it, and information subject to judicial notice. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires that "the circumstances constituting fraud or mistake" be "state[d] with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) was "designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "In adding flesh to the bones of the word particularity," courts require plaintiffs to "describe the 'who, what, when, where, and how' of the fraud." *Id.* at 441-42.

## IV. **PLAINTIFFS LACK STANDING TO BRING THE ASSERTED CLAIMS.**

### A. **Plaintiffs Lack Article III Standing.**

The Complaint should be dismissed because Plaintiffs have not alleged, and cannot allege, facts demonstrating that they have Article III standing to sue Defendants. "In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). To establish Article III standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury in fact, a plaintiff must allege an injury that is both "concrete and particularized" and "actual or imminent" at the time she filed the lawsuit—a conjectural or hypothetical injury does not suffice, nor does the risk of future injury that is not "certainly impending." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

-11-

No injury in fact exists where, as here, plaintiffs do not seek personal injury damages, and instead complain solely of economic injury stemming from the purchase of products that they "entirely consumed" and that "functioned for [them] as expected." *Johnson & Johnson*, 903 F.3d at 280. For instance, in *Johnson & Johnson*, the Third Circuit affirmed there was no injury in fact even where the plaintiff alleged she would not have purchased the defendant's baby powder had she known it could lead to an increased risk of developing ovarian cancer. *Id.* at 288-90. As the plaintiff did not allege that she developed or was at risk of developing ovarian cancer, the court held her "wish to be reimbursed for a functional product that she has already consumed without incident d[id] not itself constitute an economic injury within the meaning of Article III." *Id.* at 289, 293.

*Flynn v. FCA US LLC*, 2020 WL 1492687, is in accord. In *Flynn*, the defendant car manufacturers voluntarily recalled vehicles that utilized a particular infotainment system, after that system was hacked in one vehicle. *Id.* at *1. The plaintiffs, who had purchased vehicles subject to the recall, sued the defendants, alleging the vehicles were vulnerable to hacking and thus unsafe. *Id.* The plaintiffs alleged that the "Defendants wrongfully induced them to purchase their vehicles by concealing the alleged defect in the [infotainment system] and that their vehicles are worth substantially less than they would be without the alleged defect." *Id.* at *5. The court rejected this allegation as "conclusory and unsupported," and held that the plaintiffs' claimed injury was "too speculative" to confer standing:

> Ultimately, Plaintiffs have not suffered any injury in fact. They received what they bargained for—vehicles equipped with infotainment services—and do not plausibly allege that they were financially harmed by virtue of their vehicle purchases.

*Id.* at *4-5.  The Seventh Circuit affirmed without leave to amend.  39 F.4th at 954.[5]

As in *Johnson & Johnson* and *Flynn*, no injury in fact exists here.  Plaintiffs admit the unidentified products did not cause them any personal injury, as is the case with the majority of the putative class members.  Plaintiffs also concede, by admitting they used the products for several years without incident, that the products "successfully did what the parties had bargained for and expected it to do"—relax hair.  *Johnson & Johnson*, 903 F.3d at 283.  Plaintiffs have thus failed to allege a cognizable economic injury, on behalf of themselves or the putative class.  At best, Plaintiffs have alleged that some (unidentified) products may contain an (unidentified) ingredient that, in certain quantities, might cause health issues.  This does not show any injury in fact.  *See Bowen v. Energizer Holdings, Inc.*, No. CV 21-4356-MWF (AGRx), 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) ("Plaintiff has not adequately pled that her injury is sufficiently particularized . . . because there are no allegations that Plaintiff's sunscreen actually contained benzene—only an attenuated possibility that the sunscreen may have contained benzene."); *Lujan*, 504 U.S. at 560 (injuries in fact are not "'conjectural' or 'hypothetical'" (citation omitted)).

The minority of named Plaintiffs who allege that they are at an "increased risk" of developing cancer are not differently situated—they, too, have failed to allege any injury-in-fact.  These Plaintiffs' allegations as to an increased risk of harm are not plausible, as they have failed to identify the products at issue, let alone the challenged ingredient(s) therein.  In fact, Plaintiffs admit that the products they used may not have had any defect.  (*See* Dkt. No. 185 ¶ 116 (alleging

---

[5] Other jurisdictions are in accord.  *See, e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("[I]t is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" (citation omitted) (internal quotation marks omitted)); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ("[T]he alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner.").

the unidentified hair relaxer products at issue "have contained" harmful ingredients; not that they currently contain such ingredients or that they contained such ingredients' throughout Plaintiffs' use of the same).)  In any event, "[m]ere exposure" to a harmful ingredient does not establish injury in fact.  *Koronthaly*, 2008 WL 2938045, at *1, 5.  *See also Huertas v. Bayer U.S., LLC*, Civil Action No. 21-20021 (SDW)(CLW), 2022 WL 3572818, at *5 (D.N.J. Aug. 19, 2022) (no injury in fact where plaintiffs purchased antifungal sprays from lots that were recalled because they contained benzene, holding that plaintiffs' "mere conjecture . . . that they experienced some sort of loss due to the product's generally asserted 'worthless[ness],' and that some hypothetical, future physical harm may befall them" was insufficient (alteration in original) (quoting *Johnson & Johnson*, 903 F.3d at 285)); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022) (allegations that defendants' baby food products contained heavy metals was insufficient to confer Article III standing because "fear and apprehension about a possible future physical or medical consequence . . . is not enough to establish an injury *in fact*'" (citation omitted)).

**B.**    **Plaintiffs Lack Standing to Pursue Claims Brought Under the Laws of States in Which They Do Not Reside.**

Plaintiffs lack standing to assert claims on behalf of all putative class members.  Plaintiffs are residents of only seventeen different states, yet they assert claims on behalf of residents of the other thirty-three states, as well as U.S. territories.[6]  "Courts in this District routinely dismiss or strike class claims where," as here, "named plaintiffs seek to represent proposed class members from other states."  *Brown*, 2022 WL 2442548, at *2.  *See also In re Dairy Farmers of Am., Inc.*

---

[6] Plaintiffs are residents of seventeen states:  Alabama; Arizona; California; Colorado; Florida; Illinois; Indiana; Louisiana; Maryland; Michigan; Mississippi; Missouri; Nevada; New Jersey; Pennsylvania; Tennessee; West Virginia.  While certain Plaintiffs allege that they have, "at relevant times," also been citizens of the District of Columbia, Iowa, Texas and Virginia, the Complaint contains no factual allegations as to why that residency is relevant.  (*See* Dkt. No. 185 ¶¶ 19, 23, 30, 36, 40, 41, 46.)

-14-

*Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (no

standing to pursue claims "for states in which [plaintiffs] do not reside and/or did not purchase the

products at issue"). *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183 (S.D. Fla. 2021)

clarifies the issue:

> Although the First Amended Complaint lists one generic general unjust enrichment
> claim, that claim is, in reality, fifty unjust enrichment claims—one for each state.
> Such a claim would thus need to be brought on behalf of fifty state subclasses.
> Plaintiffs here, however, do not have standing to assert an unjust enrichment claim
> under any state's law but their own because they did not suffer any injuries in fact
> traceable to alleged violations of laws in other states. Thus, "the Court finds that
> Plaintiffs lack standing to bring such claims on a national basis."

*Id.* at 1205-06 (citation omitted).

Like the plaintiffs in *Lewis*, Plaintiffs lack standing to bring state law claims on behalf of

"all individuals in the United States" (Dkt. No. 185 ¶ 160), as there is no allegation that any

Plaintiff was harmed outside her state of residence.[7] (*See id.* ¶¶ 13-47.) *See also In re Magnesium*

*Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011)

("Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly

every state in the Union without having to allege concrete, particularized injuries relating to those

states, thereby dragging defendants into expensive nationwide class discovery, potentially without

a good faith basis."). The consumer protection statutes invoked do not apply extraterritorially,[8]

---

[7] In fact, Plaintiffs have not even alleged facts sufficient to show standing to assert claims on behalf of the
states they reside in, as they have failed to identify the products they purchased. *See, e.g.*, *In re: Hard Disk
Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC, 2020 WL 6270948, at *3 (N.D.
Cal. Oct. 23, 2020) (dismissing complaint for lack of standing because "plaintiffs [did] not allege the type(s)
of product(s) any named plaintiff purchased").

[8] *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1087 n.164 (C.D. Cal.
2015); *Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So.2d 1037, 1042 (Fla. Dist. Ct. App.
2000); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020); Mo. Ann. Stat.
§ 407.020(1); *A-1 Advanced Moving & Storage, Inc. v. NorVergence, Inc. (In re NorVergence, Inc.)*, 424
B.R. 663, 678 (Bankr. D.N.J. 2010); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 402 (S.D.N.Y. 2010);
*Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 977 (9th Cir. 2016); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d

and Plaintiffs' common law claims must also be dismissed to the extent they are based on the laws of states in which no named Plaintiff resides. For instance, while the eighteen Medical Monitoring Plaintiffs purport to bring products liability claims (First through Sixth Causes of Action) on behalf of individuals residing in thirteen different jurisdictions (Dkt. No. 185 ¶ 162), only eleven of these Plaintiffs allege (albeit not plausibly) that they are "at an increased risk of developing uterine and ovarian cancer and need[] medical monitoring." (*Id.* ¶¶ 15, 18, 27-30, 36, 40, 41, 44, 46.) These eleven Plaintiffs only reside in six jurisdictions: Arizona, California, Florida, Maryland, Nevada and Pennsylvania. (*Id.*) Thus, at a minimum, Plaintiffs lack standing to pursue products liability claims on behalf of individuals residing outside these six jurisdictions.

## V.  **PLAINTIFFS' CLAIMS ARE PREEMPTED.**

All of Plaintiffs' claims are expressly preempted by the FDCA—the statutory scheme governing the mislabeling allegations at the heart of the Complaint. (*See* Dkt. No. 185 ¶¶ 127-138.) *See also* 21 U.S.C. § 379s(a). "The Supremacy Clause, U.S. Const. art. VI, cl. 2, 'invalidates state laws that 'interfere with, or are contrary to,' federal law.'" *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (citation omitted). "Express preemption arises when 'a federal statute expressly directs that state law be ousted,'" whereas implied preemption arises when "'Congress intended the Federal Government to occupy [a field] exclusively,' or when state law 'actually conflicts with federal law.'" *Id.* (alteration in original) (citations omitted).

The FDCA's "broad preemption clause" prohibits any state from "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is *different from* or *in addition to*, or that is *otherwise not identical with*, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." *Critcher v. L'Oréal USA, Inc.*, 959

---

434, 440 n.4 (7th Cir. 1994); *Camey v. Force Factor, LLC*, Civil Action No. 14-14717-RWZ, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016).

F.3d 31, 35 (2d Cir. 2020) (emphases added) (quoting 21 U.S.C. § 379s(a)). Thus, a plaintiff cannot seek to "impose labeling requirements that are additional to, or different from, those that federal law has established." *Critcher*, 959 F.3d at 38. Congress conferred authority to the FDA to promulgate rules and regulations under the FDCA, 21 U.S.C. § 371(a), and the FPLA, 15 U.S.C. § 1454(a). Under those regulations, manufacturers are not required to identify constituent fragrance ingredients on product labelling. 21 C.F.R. § 701.3(a).

Products liability claims are the sole exception to the FDCA's preemption clause. 21 U.S.C. § 379s(d). That exception does not apply here. As Plaintiffs have previously argued, even under the broadest definition of the term, "products liability" claims only encompass claims "brought against a manufacturer, seller, or lessor of a product . . . for ***personal injury, death, or property damages*** caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of a product," none of which are sought here. (Dkt. No. 291 at 7-8 (emphasis added) (internal quotation marks omitted).) Because the Class Action Complaint, unlike the Master Personal Injury Complaint, can only seek economic damages, the instant claims are not excepted from the FDCA's preemption clause. 21 U.S.C. § 379s(d).

The "sweeping . . . force" of the FDCA's preemption clause led the Second Circuit to affirm the dismissal of analogous mislabeling claims in *Critcher*. *Critcher*, 959 F.3d at 38. There, the plaintiffs asserted consumer protection, unjust enrichment and breach of warranty claims against L'Oréal USA, alleging its cosmetic products' labels were misleading because they did not disclose that consumers "will not be able to access or use a large percentage . . . of the product." *Id.* at 36. While the FDCA requires labels to contain an "accurate statement of the quantity of the [products'] contents in terms of weight, measure or numerical count," the FDA promulgated more "specific labeling requirements" consistent with the statute, and no statute or regulation required

the plaintiffs' desired disclosure. *Id.* at 35. Because the FDCA preempts "*any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations," the claims were found to be preempted. *Id.* at 35-36.

Express preemption applies here, as Congress' intent is clear. Plaintiffs allege that Defendants are defrauding consumers by failing to identify the constituent ingredients that compose the fragrance in their products. (Dkt. No. 185 ¶ 122 (alleging that "natural and synthetic EDCs are present in some of Defendants' [relaxer products] under the guise of 'fragrance' and 'perfumes'").) But FDA regulations do not require manufacturers to identify fragrance ingredients on product labels. *See* 21 C.F.R. § 701.3(a), (*l*). Like in *Critcher*, Plaintiffs are precluded from "using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Critcher*, 959 F.3d at 36. As Defendants are not required to identify fragrance ingredients, and certainly cannot be required to identify ingredients that are nowhere in their products, Plaintiffs' claims are preempted by the statutory scheme already in place, and should be dismissed.[9]

## VI.    PLAINTIFFS' PRODUCTS LIABILITY CLAIMS FAIL TO STATE A CLAIM.

Plaintiffs' claims for Negligence (First Cause of Action), Strict Liability (Fifth and Sixth Causes of Action) and Medical Monitoring (Fourth Cause of Action) also should be dismissed. As Plaintiffs can only seek "economic damages," any products liability claims are barred by the economic loss doctrine. (Dkt. No. 185 ¶ 6.) Moreover, Plaintiffs have not alleged the requisite facts to maintain their products liability claims. Plaintiffs' failure to identify the products they used, much less the time period in which any particular product was used, is fatal to these claims,

---

[9] Plaintiffs' claims are also impliedly preempted both because the FDCA occupies the field and because Plaintiffs' demands conflict with the FDCA. *See Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986-87 (7th Cir. 2000); *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002).

as Defendants have no notice of the transaction or occurrence alleged to have caused Plaintiffs' injuries. Product identification is a threshold requirement, and for Plaintiffs' claims to survive they must "'identify which defendant manufactured the product or products responsible for his injuries.'" *Setliff v. E.I. Du Pont de Nemours & Co.*, 38 Cal. Rptr. 2d 763, 765 (Cal. Ct. App. (1995).[10] *See also Mountain Club Owner's Ass'n*, 2014 WL 130767, at *2 (dismissing complaint that "does not identify the particular type of [product] or the alleged defect"); American Law of Products Liability 3d § 5:1 ("[A] threshold requirement for a products liability action is that the plaintiff identify the manufacturer or supplier responsible for placing the injury-causing product into the stream of commerce . . . ."). Plaintiffs have conceded as much, as they relied on Short-Form Complaints to avoid dismissal of the Master Personal Injury Complaint on this ground (*see* Dkt. No. 176 at 2)—but no such supplemental pleading can cure this deficiency in the Class Action Complaint.

### A.    <u>Plaintiffs' Products Liability Claims Are Barred by the Economic Loss Doctrine.</u>

Plaintiffs' products liability claims are foreclosed by the economic loss doctrine, which provides that, in products liability actions, "'plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses; if they cannot, then they would be precluded from any tort recovery in strict liability or negligence.'" *In re Ford Motor Co.*, 483 F. Supp. 3d at 847-48 (citation omitted). Each of the jurisdictions invoked by Plaintiffs has adopted the economic loss

---

[10] The Medical Monitoring Plaintiffs purport to assert these claims on behalf of individuals residing in thirteen jurisdictions (Dkt. No. 185 ¶ 162), including California, which "pioneered" products liability law. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1409 (7th Cir. 1994). Because "'the law of the place of injury controls,'" the law of these states applies to these claims. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006).

rule.[11]

As Plaintiffs can only seek economic damages in the Class Action Complaint, the economic loss rule bars their products liability claims. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("'It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.'") (quoting *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999)).  To the extent certain Plaintiffs contend that their alleged "increased risk" of developing cancer constitutes personal injury, these allegations are not plausible, as Plaintiffs admit that the products they used may not have had any defect.  (*See* Dkt. No. 185 ¶ 116 (alleging the unidentified hair relaxer products at issue "have contained" harmful ingredients; not that they currently contain such

---

[11] *See Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1161 (S.D. Cal. 2020) ("[W]here a purchaser's expectations in a sale are frustrated, because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic loss'"); *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 209 (Ariz. 1984) ("Where economic loss, in the form of repair costs, diminished value, or lost profits, is the plaintiff's only loss, the policies of the law generally will be best served by leaving the parties to their commercial remedies."); *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) ("We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."); *Liberty Mut. Ins. Co. v. Equip. Corp. of Am.*, 646 F. Supp. 2d 51, 56 (D.D.C. 2009) ("The economic loss rule prevents a party from recovering on a strict products liability claim where the only damage is to the product itself."); *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013) (the economic loss rules applies to "cases involving products liability"); *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005) ("Under the 'economic loss' doctrine, contract is the sole remedy for the failure of a product or service to perform as expected."); *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1003 (Md. Ct. Spec. App. 2007) ("[T]he economic loss rule prevents recovery for damage to property that consists only of the product itself.")."), *aff'd*, 942 A.2d 722 (Md. 2008); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. 1986) (denying "recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold."); *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009) ("Mandalay suffered only economic loss without any attendant personal injury or property damage, and therefore, the economic loss doctrine bars Mandalay from proceeding with their negligence-based claims."); *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 134 (Pa. Super. Ct. 1989) (Economic loss rule bars negligence and strict liability claims stemming from "a product that malfunctions where the only resulting damage is to the product itself."); *Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854, 859-60 (W. Va. 1982) ("Damages which result merely because of a 'bad bargain' are outside the scope of strict liability," and should instead be pursued under "a warranty or contract theory cause of action.").

ingredients or that they contained such ingredients' throughout Plaintiffs' use.)  Moreover, even

if Plaintiffs' allegations were plausible (they are not), the products liability claims still should be

dismissed, as at least four jurisdictions—Arizona, the District of Columbia, Indiana and

Missouri—have expressly held that a risk of future harm alone is insufficient to warrant medical

monitoring relief.  *See, e.g.*, *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1400, 1410 (W.D. Mo.

1994) ("Entitlement to the costs of future medical monitoring requires plaintiff to prove ***actual***

***present injury*** and an increased risk of future harm." (emphasis added)).[12]

### B.     Plaintiffs' Negligence Claims Are Insufficiently Pled.

Plaintiffs' claims for Negligence (First Cause of Action) and Negligence *Per Se* (Third

Cause of Action) are deficient and should be dismissed.  As a preliminary matter, the Negligence

*Per Se* claims should be dismissed because none of the relevant jurisdictions recognize such claims

as a separate cause of action.[13]

Furthermore, Plaintiffs have not pled sufficient facts to state a general negligence claim.

---

[12] *See also Quiroz v. ALCOA Inc.*, 416 P.3d 824, 833 (Ariz. 2018) (where no nuisance claim has been asserted, no medical monitoring available for plaintiffs who have no present physical injury); *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 467 (D.D.C. 1997) ("Whether a cause of action or a part of damages requested, medical monitoring requires that the plaintiff have a present injury and a reasonable fear that the present injury could lead to the future occurrence of disease."); *Ott v. AlliedSignal, Inc.*, 827 N.E.2d 1144, 1156 (Ind. Ct. App. 2005) ("[S]ubclinical injuries . . . are insufficient to support a cause of action until symptoms emerge or until the disease can be diagnosed without resort to extraordinary procedures.").

[13] *See Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. 2021); *Millard v. Biosources, Inc.*, 68 Cal. Rptr. 3d 177, 188 (Cal. Ct. App. 2007); *Liby v. City Park Family*, No. 2011-CV-436, 2012 Colo. Dist. LEXIS 781, at *12 (D. Colo. Feb. 27, 2012); *Smith v. Trump*, No. 21-cv-02265 (APM), 2023 WL 417952, at *9 (D.D.C. Jan. 26, 2023), *aff'd*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023); *Metz v. Wyeth LLC*, 872 F. Supp. 2d 1335, 1343 (M.D. Fla. 2012) ("Florida law does not recognize a claim based upon a theory of negligence *per se* for an alleged violation of the FDCA."); *Cavender v. Medtronic, Inc.*, No. 3:16-CV-232, 2017 WL 1365354, at *5 (N.D. Ind. Apr. 14, 2017); *Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 445 (D. Md. 2016); *Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 4:16CV783JCH, 2017 WL 3621459, at *4 (E.D. Mo. Aug. 23, 2017); *Trankel v. State, Dep't of Mil. Affs.*, 938 P.2d 614, 625 (Mont. 1997); *Garland v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-00147-GMN-VCF, 2013 WL 1195647, at *5 (D. Nev. Mar. 21, 2013); *Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics*, Civil Action No. 20-1926, 2020 WL 7353105, at *3 (E.D. Pa. Dec. 9, 2020); *Intermountain Farmers Ass'n v. Fitzgerald*, 574 P.2d 1162, 1164 (Utah 1978); *Mills v. Cabell Cnty. Bd. of Educ.*, Civil Action No. 3:22-0592, 2023 WL 4980553, at *4 (S.D. W. Va. Aug. 3, 2023).

To assert a negligence claim, Plaintiffs must allege facts showing "that the defendant owed her a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of [her] injuries." *Lemberg v. JPMorgan Chase Bank, N.A.*, No. 17-cv-05241-JSC, 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018) (citing *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (Cal. 2001)).[14] While a manufacturer has a general duty to exercise reasonable care in manufacturing its products so that they are reasonably safe for intended uses, it only has a duty to give warning of dangers of which it has actual or constructive knowledge. *See Oakes v. E.I. Du Pont de Nemours & Co.*, 77 Cal. Rptr. 709, 713 (Cal. Ct. App. 1969) ("To exact an obligation to warn the user of unknown and unknowable allergies, sensitivities and idiosyncracies would be for the courts to recast the manufacturer in the role of an insurer beyond any reasonable application of the rationale expressed [in Section 402A of the Restatement (Second) of Torts]."); *In re Escalera Res. Co.*, 563 B.R. 336, 364 (Bankr. D. Colo. 2017) (noting that "the Restatement of Torts (Second) . . . has been adopted in most States in the United States").

No such knowledge is alleged here based on the facts. The Complaint relies heavily on the Chang Article, ***which was the first to associate hair straightening products with uterine cancer in October 2022***, and White Article, ***which was the first to associate hair straightening products with ovarian cancer in June 2021***. (Chang Article, *supra* note 4, at 1638; White Article, *supra* note 4, at 1195.) Furthermore, Plaintiffs cannot allege facts showing that any purported breach by Defendants caused Plaintiffs' alleged injuries, as they concede they do not know whether the unidentified products they used contained a defect. (*See* Dkt. No. 185 ¶ 116.) Accordingly, the Court should dismiss this cause of action.

---

[14] These elements are consistent across jurisdictions. *See, e.g.*, *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014); *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003).

### C.    <u>Plaintiffs' Design Defect Claim Is Insufficiently Pled.</u>

Plaintiffs' Design Defect claim (Fifth Cause of Action) fails because Plaintiffs have not identified the specific products they used, let alone the defects in those products.  To properly maintain a design defect claim, a plaintiff must plead facts that show how a product was so defective in its design that it was "unreasonably dangerous."  *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 548 F. Supp. 3d 1225, 1250 (S.D. Fla. 2021) (noting that this is consistent across jurisdictions).[15]  A plaintiff can establish a design defect either by showing that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or by showing that, on balance, the risk of danger inherent in the design outweighs its benefits. *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978).  *See also Rollins v. Wackenhut Servs.*, 802 F. Supp. 2d 111, 123 (D.D.C. 2011) (where design defect claim is based on latter theory, plaintiff must show "equally effective alternative design").

Plaintiffs have not alleged facts to support a design defect claim.  Instead, they simply allege that unidentified "Hair Relaxer Products were in an unsafe, defective, and unreasonably dangerous condition at the time they left Defendants' possession because of their design."  (Dkt. No. 106 ¶ 254.)  Courts routinely dismiss design defect claims based on such conclusory allegations.  *See, e.g.*, *Tsavaris v. Pfizer, Inc.*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *2 (S.D. Fla. Feb. 1, 2016) (dismissing design defect claim based on allegations that a product was "'unreasonably dangerous,' that its 'risks of breast cancer exceeded any benefits or utility associated with the design or formulation,' and that [it] is 'much more dangerous than other available and safe alternative[s]'"); *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE-EFB,

---

[15] Some jurisdictions impose an even higher burden on plaintiffs.  *See, e.g.*, *Grinage v. Mylan Pharms., Inc.*, 840 F. Supp. 2d 862, 869 (D. Md. 2011) (dismissing design defect claim because plaintiff could not allege that the product at issue was "unavoidably unsafe," as required under Maryland law).

2015 WL 6951296, at *1-2 (E.D. Cal. Nov. 10, 2015) (allegations that defendants' vehicles' transmissions caused vehicles to "stop[] moving" and "automatically move backward" when stopped were insufficient to state a design defect claim). Plaintiffs also do not tie these conclusions to a specific product manufactured by any Defendant, nor do they identify the ingredients of any product or the quantity of those products—rendering it impossible to know what design flaw, if any, "proximately" caused Plaintiffs' alleged injuries. Plaintiffs' unsupported conclusions do nothing to show that the product(s) as designed posed a substantial likelihood of harm. *See Witt v. Howmedica Osteonics Corp.*, No. 13-cv-20742-JLK, 2013 WL 6858395, at *2 (S.D. Fla. Dec. 30, 2013) (allegation that "the prosthesis was defective because it contained design defects such as loosening" was insufficient because "[t]he prosthesis is a complex device; without specific allegations as to the components which Plaintiff alleges are defective and how those components are defective, Defendant cannot answer").

### D. Plaintiffs' Failure To Warn Claim Is Insufficiently Pled.

Plaintiffs cannot proceed on their Failure to Warn claim (Sixth Cause of Action), as they have not alleged facts to support any element of this claim. To state a failure-to-warn claim, "the plaintiff must plead that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing scientific and medical knowledge available at the time of manufacture and distribution." *Tsavaris*, 2016 WL 375008, at *3. *See also Altman v. HO Sports Co.*, 821 F. Supp. 2d 1178, 1188 (E.D. Cal. 2011) ("[A] manufacturer is not required to warn "'against every conceivable'" risk associated with the use of its product . . . ." (citation omitted)).

Plaintiffs do not provide the basic facts to maintain a failure to warn claim. The Complaint does not identify what specific products were purchased, when they were purchased, or what

warnings were given.  These deficiencies render it impossible for Plaintiffs to allege when and how Defendants owed Plaintiffs a duty to warn, or how Defendants' warnings were inadequate. *See Dero Roofing, LLC v. Triton, Inc.*, No. 2:21-cv-688-SPC-MRM, 2022 WL 2104287, at *4 (M.D. Fla. June 10, 2022) (dismissing failure to warn claim at the pleading stage because "a plaintiff cannot simply make conclusory statements about the inadequacy of a warning without reciting the contents of the warning, detailing the information provided to the consumer, or explaining how the contents of the warning were inadequate").  In addition, the Complaint is devoid of any facts showing that Defendants knew or should have known that some ingredient in their (unspecified) products could cause injury and that Defendants' labeling was thereby inadequate.

Plaintiffs also have not alleged that their injuries were caused by Defendants.  *See Frere v. Medtronic, Inc.*, No. EDCV 1-502338BRO (DTBx), 2016 WL 1533524, at *6 (C.D. Cal. Apr. 6, 2016) (dismissing strict liability claims where plaintiff "merely alleges the conclusion of causation itself" without the requisite "non-conclusory 'factual content'" (citation omitted)).  Plaintiffs fail to allege any direct link between a specific ingredient contained in the unidentified products and the risk of developing uterine and/or ovarian cancer.  Plaintiffs' conclusory and speculative allegations regarding unidentified products cannot satisfy their pleading burden.  *See id.* at *7 (dismissing failure to warn claim because allegations of causation did not pass muster, as "the relevant documents cited to by Plaintiff either dealt with a different [product] model than that implanted in Plaintiff" or "occurred prior to Plaintiff's first surgery").  For these reasons, the claim should be dismissed.

E. **Plaintiffs' Medical Monitoring Claim Is Insufficiently Pled.**

Plaintiffs' Medical Monitoring claim (Fourth Cause of Action) should be dismissed.  While

Plaintiffs assert a generic claim for medical monitoring under the laws of thirteen different states (Dkt. No. 185 ¶ 162)—seven of which are irrelevant for our purposes (*see supra* Section IV.B))— the vast majority of these states do not recognize an independent claim for medical monitoring. *See, e.g.*, *Barbee v. Atl. Richfield Co.*, No. 2:17-CV-193-JVB-JPK, 2022 WL 4463341, at *7 (N.D. Ind. Sept. 23, 2022) ("[T]here is no independent cause of action for medical monitoring in Indiana.").[16]  Plaintiffs appear to concede as much in the Complaint, as their alternative state-specific claims for medical monitoring are brought only in two jurisdictions:  Florida and Pennsylvania.  (*Compare* Dkt. No. 185 ¶¶ 229-250 *with id.* at ¶¶ 907-928, 1862-1883.)  However, medical monitoring claims fail in these jurisdictions as well, as both states require Plaintiffs to allege facts showing Defendants' negligence to prevail, *see In re: Zantac*, 546 F. Supp. 3d at 1169; *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def.*, 696 A.2d 137, 145 (Pa. 1997), and Plaintiffs have not met this burden.  (*See supra* Section VI.B.)

## VII.  PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT SUFFICIENTLY PLED.

Plaintiffs' fraud-based claims for Negligent Misrepresentation/Omission, Violation of State Consumer Protection Statutes and Fraudulent Omission (Second, Seventh and Eleventh Causes of Action) are procedurally and substantively defective, as they are not pled with the

---

[16] *See also Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267 (S.D. Fla. 2003) (no basis for concluding that Colorado "allow[s] an independent cause of action for medical monitoring"); *Belton v. Combe Inc.*, No. 4:16 CV 220 CDP, 2016 WL 6679843, at *1 (E.D. Mo. Nov. 14, 2016) ("[M]edical monitoring is not an independent cause of action under Missouri law."); *In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 185, 201 (S.D.N.Y. 2007) ("I therefore predict that Maryland will find that 'medical monitoring' is best conceptualized as a question of damages, as opposed to a separate claim."); *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1152, 1167 (S.D. Fla. 2021) (dismissing medical monitoring claims brought under Montana law with prejudice, given Montana Supreme Court's failure to recognize such a claim); *Badillo v. Am. Brands, Inc.*, 16 P.3d 435, 441 (Nev. 2001) ("Nevada common law does not recognize a cause of action for medical monitoring."); *San Diego Gas & Elec. Co. v. Super. Ct. (Covalt)*, 920 P.2d 669, 680 n.18 (Cal. 1996) (medical monitoring is "not a separate tort").  While some states have not affirmatively stated whether they recognize independent medical monitoring claims, this Court should err on the "narrower interpretation [of the law] which restricts liability," as "'[f]ederal court is not the place to press innovative theories of state law.'"  *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996); *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990).

requisite heightened specificity, and they fail to provide sufficient facts to support Plaintiffs' serious charges of fraud. This Court dismissed identical claims based on identical allegations as procedurally and substantively defective in the Master Personal Injury Complaint. (*See* Dkt. No. 291 at 15-17 (dismissing negligent misrepresentation, fraud/fraudulent misrepresentation and fraudulent concealment claims, as well as consumer protection claims based on fraudulent conduct).)

Under Rule 9(b), when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading requirement applies to any claim sounding in fraud. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (any claim that "'sounds in fraud'" triggers Rule 9(b)'s "heightened pleading requirements" (citation omitted)). Hence, Rule 9(b) also applies to consumer protection claims alleging fraudulent and/or deceptive conduct. *See, e.g.*, *Vanzant*, 934 F.3d at 738 (Rule 9(b) applies to ICFA based on allegations of deceptive conduct).[17]

Plaintiffs are required to plead with particularity the factual bases for averments of fraud under Rule 9(b), including "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). This specificity requirement also applies to fraud claims pled under an omission theory. (*See* Dkt. No. 291 at 16 (citing *Pirelli*, 631 F.3d at 446-47).) Rule 9(b) is intended "to protect defendants from

---

[17] *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (CLRA and UCL claims are subject to Rule 9(b), "which requires that allegations of fraud be pleaded with particularity."); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 432 (D.N.J. 2015) ("Rule 9(b) applies to [p]laintiffs' claims under the state consumer protection laws because they are premised on fraud . . . ."); *Pfitzer v. Smith & Wesson Corp.*, No. 4:13-CV-676-JAR, 2014 WL 636381, at *3 (E.D. Mo. Feb. 18, 2014) ("'Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.'").

the harm that results from charges of serious wrongdoing," and to give defendants notice of the conduct complained of, "enabling defendants to prepare a defense." *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 144 (N.D. Ill. 1993). Conclusory allegations of fraud are insufficient to satisfy Rule 9(b). *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) ("Plaintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement that the circumstances of the fraud be pleaded with particularity.").

**A.** **The Fraudulent Concealment and Negligent Misrepresentation/Omission Claims Are Insufficiently Pled.**

Plaintiffs' allegations with respect to each of their fraud-based claims fall well short of the specificity requirement. As a preliminary matter, the Complaint makes general allegations against Defendants without identifying any specific acts by any specific Defendant. (*See, e.g.*, Dkt. No. 185 ¶¶ 202-220, 345-358.) *See also Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 893 (N.D. Ill. 2009) ("In a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud."); *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) ("[A] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes," does not satisfy Rule 9(b)). Plaintiffs also do not identify who at each Defendant company made the alleged misrepresentations. *See Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860, 863-64 (N.D. Ill. 2010) (dismissing fraud claim where allegations failed to specify who from defendant company made the statements, when they were made, and how they were made). Further, as noted above, Plaintiffs do not identify the products they purchased or used. "Unless [a] [p]laintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation." *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012).

Plaintiffs also do not allege a single misrepresentation made by any Defendant—let alone one they relied on to their detriment. While Plaintiffs call out random words from product packaging, such as "gentle" or "Botanicals" or ingredients such as "coconut milk, shea butter, vitamin e, and sunflower oil" (Dkt. No. 185 ¶ 99(a)-(q)), courts routinely reject arguments attempting to transform such advertising claims into misrepresentations about the safety of defendants' products. *See, e.g.*, *Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *10 (N.D. Ill. Jan. 12, 2023) (dismissing misrepresentation claims because statements that products contained "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes" did not, as a matter of law, constitute misrepresentations as to whether the product contained or risked containing phthalates). Brand names like "Gentle Treatment" and phrases like "Triple Nourished" and "natural hair milk," to name a few, do not convey any false message, let alone a message of safety, and thus cannot form the basis of Plaintiffs' fraud claims. More critically, Plaintiffs do not allege that any of these "representations" appeared on any of the unidentified products they used during the undisclosed times they used them.

Plaintiffs' omissions theory fares no better, because, just like in the Master Personal Injury Complaint, Plaintiffs have failed to allege that Defendants "'intentionally omitted or concealed a material fact that [they were] under a duty to disclose' to plaintiffs." (Dkt. No. 291 at 16 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012); *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022).) "A fraud claim based on an alleged omission of material fact requires the parties to have a special or fiduciary relationship," but the allegations in the Complaint "do not show the concealment was 'more than a mere passive omission of facts during a business transaction,'" let alone one "'done with the intention to deceive.'" (Dkt. No. 291 at 16-17 (citing cases).)

Furthermore, because Plaintiffs do not allege any misrepresentation or concealment, they cannot allege intent.  The Chang and White Articles state they were the first to associate hair straightening products with uterine and ovarian cancer, and thus the premise of this lawsuit belies the fact that Defendants have acted with fraudulent intent.  *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771 (2007) (plaintiffs must allege facts showing that defendants actually knew his statements to be false at the time he made them).

Finally, the fraud-based claims should be dismissed because Plaintiffs—particularly those who have conceded they are at no "increased risk" of future harm—have not alleged facts showing the existence of damages.  *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing fraud claim even though plaintiff alleged that "he paid more for his vehicle than he would have had he known of the defect," because "the alleged defect ha[d] not manifested itself in [his] product'" (citation omitted)).  These claims are also barred pursuant to the economic loss doctrine in several jurisdictions.[18]

### B.    The Consumer Protection Claims Are Insufficiently Pled.

These same issues plaguing the Fraudulent Concealment and Negligent Misrepresentation/Omission claims render Plaintiffs' State Consumer Protection claims (Eleventh

---

[18] *See, e.g.*, *Hsieh*, 440 F. Supp. 3d at 1162 (dismissing fraud, negligence and consumer protection claims); *First Magnus Fin. Corp. v. Dobrowski*, 387 F. Supp. 2d 786, 791-92 (N.D. Ill. 2005) (dismissing negligent misrepresentation claims); *Container Store, Inc. v. Fortna Inc.*, No. 3:20-CV-2893-B, 2021 WL 1250334, at *1 (N.D. Tex. Apr. 5, 2021) (dismissing fraud and negligent misrepresentation claims); *Lenawee Cnty. Drain Comm'r v. Env't One Corp.*, No. 07-CV-14290, 2008 WL 11356774, at *4 (E.D. Mich. Apr. 29, 2008) (dismissing fraud claim); *Clark v. Gen. Motors*, No. 3:14cv505-DPJ-FKB, 2016 WL 3574408, at *6 (S.D. Miss. June 23, 2016) ("It seems doubtful . . . that Mississippi would adopt an exception based on fraud that allows a product-liability plaintiff to pursue tort damages for purely economic loss to the product itself related to alleged warranty breaches."); *Smith v. Citimortgage, Inc.*, Civil Action No. 15-7629 (JLL), 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) (dismissing fraud and negligent misrepresentation claims); *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 154-55 (Tenn. 2021) (affirming dismissal of fraud claim); *4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 1:19-cv-01504 (AJT/IDD), 2020 WL 13200492, at *4 (E.D. Va. May 22, 2020) (dismissing negligent misrepresentation claim).

Cause of Action) deficient, as they are based on the same allegedly fraudulent conduct—namely, that Defendants made "false and misleading representations and omissions of material facts regarding the safety and potential risks of their [unidentified] Hair Relaxer Products." (Dkt. No. 185 ¶ 284.) *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 737-38 (N.D. Ill. 2015) (dismissing ICFA claim for failing to satisfy Rule 9(b) pleading "strictures" where complaint was "replete with allegations recounting vague, nonspecific statements made by 'Defendants' about Anatabloc's supposed benefits" but failed to identify "a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it"); *Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 179-80 (N.D. Ill. 2013) (dismissing consumer fraud allegations because complaint "leaves many serious and fundamental questions as to the 'who, what, when, where, and how' of the alleged fraud"). Plaintiffs attempt to make an end-run around Rule 9(b) by invoking the "unfair" prong of the statutes at issue, but "[t]he addition of 'unfairness' language does not change a[] [consumer protection] claim that is 'entirely grounded in fraud' to an unfairness claim." *O'Connor*, 477 F. Supp. 3d at 720 (citation omitted).[19]

Moreover, while the Court allowed consumer protection claims based on an "unfairness" theory to survive in the Master Personal Injury Complaint, it should not do so here, as several of the statutes at issue expressly preclude the assertion of such claims through a class action. *See* Ala. Code § 8-19-10(f); La. Stat. Ann. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Va. Code Ann. § 59.1-204. *See also* Tenn. Code Ann. § 47-18-109(g) (damages cannot be recovered in class actions brought under this statute). Others provide that class actions cannot be instituted absent pre-suit notice to the defendant or state attorney general, and Plaintiffs have conceded non-

---

[19] In any event, Plaintiffs have not alleged facts demonstrating unfair conduct by any Defendant. There are no facts suggesting that any Defendant violated public policy, precluded consumers from purchasing alternative hair products, or caused substantial injury to consumers. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830-34 (7th Cir. 2014).

compliance with these requirements (Dkt. No. 185 ¶ 290). *See* Cal. Civ. Code § 1782(a); Ind. Code Ann. § 24-5-0.5-5(a); Iowa Code Ann. § 714H.7; Miss. Code Ann. § 75-24-15(2); Tex. Bus. & Com. Code Ann. § 17.505(a).[20] As a majority of courts have held that class action bars and pre-suit notice provisions are substantive laws that control in federal litigation, the consumer protection claims in the jurisdictions identified above should be dismissed. *See, e.g.*, *In re Effexor*, 357 F. Supp. 3d at 390 (dismissing consumer protection claims subject to a class action bar or notice requirement that the plaintiffs did not comply with).[21]

## VIII. <u>PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE IMPROPERLY PLED.</u>

Plaintiffs' claims for Breach of Express Warranty (Ninth Cause of Action) and Breach of Implied Warranty of Merchantability/Fitness for Particular Use (Tenth Cause of Action) also fail. As an initial matter, Plaintiffs fail to allege the requisite privity to maintain these claims in several jurisdictions. *See, e.g.*, *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698 (N.D. Ill. Apr. 6, 2005), at *12 (privity required for express and implied warranty claims in Illinois); *Blanco v. Baxter Healthcare Corp.*, 70 Cal. Rptr. 3d 566, 582 (Cal. Ct. App. 2008) (same in California); *Cubbage v. Novartis Pharms. Corp.*, No. 5:16-cv-129-Oc-30PRL, 2016 WL 3595747, at *7 (M.D. Fla. July 5, 2016) (same in Florida).[22]

Even without the privity requirement, Plaintiffs have failed to plead an express warranty

---

[20] Texas' consumer protection claim must also be dismissed because it "cannot be brought against remote, or 'upstream,' manufacturers and suppliers that never directly transacted with the plaintiff-consumer,'" and Plaintiffs have not alleged privity with any Defendant. *Chavez v. Ford Motor Co.*, No. EP-18-CV-109-KC, 2018 WL 6190601, at *3 (W.D. Tex. Sept. 26, 2018).

[21] These claims are also barred by the economic loss rule. *See Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 606 n.3 (E.D. Mich. 2010) ("The underlying rationale of the economic loss doctrine is applicable to claims under the Consumer Protection Act."); *Mayotte v. US Bank Nat'l Ass'n*, 424 F. Supp. 3d 1077, 1091 (D. Colo. 2019) ("The economic loss doctrine can also apply to statutory claims such as the CCPA.").

[22] *See also Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 677-78 (E.D. Mich. 2020) (requiring privity for implied warranty claims in Washington, Arizona, Connecticut, and North Carolina); *In re Hydroxycut*

claim. "'To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise.'" *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891-92 (N.D. Ill. 2014). *See also In re Bisphenol-A (BPA) Litig.*, 687 F. Supp. 2d at 905 (noting "[e]very state has adopted the Uniform Commercial Code" setting forth these same elements for a breach of express warranty claim). Thus, "'[a] claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods,'" and must "bec[o]me part of the basis of the bargain." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905-06 (N.D. Ill. 2013).

Plaintiffs have not identified any language or terms of an alleged express warranty or reliance thereon. The Complaint lacks basic detail, including the product(s) Plaintiffs purchased and used, the statements they allegedly relied upon in making the purchases, and when and where such statements were made. Additionally, there is no claim from Plaintiffs that any of Defendants' products did not perform as intended. Plaintiffs' generic allegation that Defendants "expressly warranted that the [] Hair Relaxer Products were safe and fit for the purposes intended" (Dkt. No. 185 ¶ 309) is far from the specific "affirmation of fact or promise" required to state an express warranty claim.[23] *See In re Bisphenol-A (BPA) Litig.*, 687 F. Supp. 2d at 904-05 (dismissing

_____

*Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011) (requiring privity for implied and express warranty claims in Georgia and for implied warranty claims in Alabama, Florida, and New York); *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011) (In Indiana, "vertical privity is required for claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose.").

[23] Plaintiffs' reference to labels purportedly stating that use of the (unidentified) products can "'decrease the risk' of skin cancer and early skin aging" is particularly puzzling. Its inclusion can only be viewed as an error, as hair relaxers are not skin-care or anti-aging products, and are not advertised as such. (*See, e.g.*, Dkt. No. 185 ¶ 310.) This allegation only appears in the context of express warranty claims.

breach of express warranty claims asserted in multi-state putative class action because plaintiffs did not "identify the basis for" or "content of, the alleged warranty," noting that allegations consisting of "general platitudes about . . . Defendant's commitment to safety and quality" did not suffice).

Plaintiffs also have not properly alleged a claim for breach of an implied warranty. An implied warranty is a guarantee by the seller that its goods "are fit for the ordinary purposes for which goods are used." *Id.* at 909 (quoting U.C.C. § 2-314). "A plaintiff who claims a breach of the implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Viggiano*, 944 F. Supp. 2d at 896. An implied warranty for particular use, on the other hand, is a guarantee by the seller that the goods "were for a purpose other than [its] ordinary use." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007). *See also In re Bisphenol-A (BPA) Litig.*, 687 F. Supp. 2d at 909 (quoting U.C.C. § 2-315). "It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose; without that distinction, there can be no claim for breach of implied warranty of fitness for a particular purpose." *Franulovic v. Coca Cola Co.*, Civil Action Nos. 07-539 (RMB), 07-828(RMB), 2007 WL 3166953, at *6 (D.N.J. Oct. 25, 2007). "Thus, allegations that a manufacturer knew that a product would be put to its ordinary use . . . will not suffice to state a claim for breach of the implied warranty of fitness for a particular purpose." *Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 868 (C.D. Ill. 2021).

Because Plaintiffs do not identify the products at issue, they cannot demonstrate that any of Defendants' products were not "fit for their ordinary purpose," and their implied warranty claim should be dismissed accordingly. *See Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *4-5 (N.D. Ill. June 16, 2017) (dismissing claim of breach of implied warranty of

merchantability for failure to allege facts showing how product failed in its intended purpose). Plaintiffs also allege the unidentified products "were unfit for their particular purpose [of] safely straightening hair." (Dkt. No. 185 ¶ 328.) This particular purpose does not differ from the unidentified products' ordinary purpose and, as a result, the particular purpose claim fails. *See In re Bisphenol-A (BPA) Litig.*, 687 F. Supp. 2d at 909 (dismissing implied warranty of fitness for a particular purpose claims in multi-state putative class action because plaintiffs "rel[ied] on th[e] ordinary purpose" of the product to support the claim). Plaintiffs' implied warranty claim should be dismissed.

These claims also should be dismissed because Plaintiffs have not plausibly alleged damage resulting from any purported breaches of warranty. *See O'Neil*, 574 F.3d at 503 (affirming dismissal of warranty claims where alleged defect in product did not result in actual injury); *Birdsong*, 590 F.3d at 959 (affirming dismissal of implied warranty claim based on allegations that iPods may cause hearing loss because "plaintiffs d[id] not allege the iPods failed to do anything they were designed to do nor d[id] they allege that they, or any others, have suffered or are substantially certain to suffer inevitable hearing loss or other injury from iPod use"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (noting that "most states would not entertain" no-injury warranty claims).

## IX. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs' Unjust Enrichment claim (Eighth Cause of Action) should be dismissed as it is not properly pled. As a preliminary matter, not all jurisdictions recognize unjust enrichment as an independent cause of action. *See, e.g.*, *Vanzant*, 934 F.3d at 739 ("'Under Illinois law, unjust enrichment is not a separate cause of action.'"); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) ("California does not recognize a separate cause of action for unjust enrichment."); *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 552 (N.D. Tex. 2021) (same in

Texas).

In addition, several jurisdictions do not allow recovery for unjust enrichment where the plaintiff has an adequate remedy at law. This is an exception to the general rule that causes of action may be pled in the alternative. *See, e.g.*, *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment."); *In re: Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (same). As the unjust enrichment claim is based on the same factual premise as the claims for which Plaintiffs seek damages, it cannot be brought as a separate cause of action. *See also Reid*, 964 F. Supp. 2d at 919 (duplicative claims are subject to dismissal).

## X.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request the Court grant their motion to dismiss.

Dated: February 5, 2024          Respectfully submitted,

<u>/s/ Dennis S. Ellis</u>
Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Serli Polatoglu
Ellis George LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@ellisgeorge.com
kmurray@ellisgeorge.com
nbegakis@ellisgeorge.com
serlipolatoglu@ellisgeorge.com

Jonathan Blakley (6308603)
Gordon Rees Scully Mansukhani LLP
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400

-36-

F: (312) 565-6511
jblakley@grsm.com

Peter Siachos (68465)
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.;
L'Oréal USA Products, Inc. and SoftSheen-
Carson LLC*

Mark C. Goodman
Baker & McKenzie LLP
Two Embarcadero Center, Ste. 1100
San Francisco, California 94111
T: (415) 576-3080
mark.goodman@bakermckenzie.com

Mark D. Taylor
Baker & McKenzie LLP
1900 North Pearl Street, Ste. 1500
Dallas, Texas 75201
T: (214) 978-3089
mark.taylor@bakermckenzie.com

Maurice A. Bellan
Teisha C. Johnson
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, District of Columbia 20006
T: (202) 452-7057
maurice.bellan@bakermckenzie.com
teisha.johnson@bakermckenzie.com

Barry J. Thompson
Baker & McKenzie LLP
10250 Constellation Boulevard, Suite 1850
Los Angeles, California 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

Colleen Baime
Laura A. Kelly
Baker & McKenzie LLP
300 East Randolph Street, Ste. 5000
Chicago, Illinois 60601
T: (312) 861-2510
colleen.baime@bakermckenzie.com
laura.kelly@bakermckenzie.com

*Counsel for Defendant Namasté Laboratories, LLC*

Lori B. Leskin
E. Dean Harris Porter
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, New York 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.Leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter
Arnold & Porter Kaye Scholer, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
T: (213) 243-4000
F: (213) 243-4199
Rhonda.Trotter@arnoldporter.com

*Counsel for Defendants Strength of Nature
LLC and Godrej SON Holdings, Inc.*

R. Trent Taylor
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182/F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100/F: (312) 849-3690

-38-

pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan (6206202)
Kevin A. Titus (6217520)
Bryan E. Curry (6255803)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises,
LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Wiedner & McAuliffe, Ltd.
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
312.855.1105
rjleamy@wmlaw.com
kaschank@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
PAUL, WEISS, RIFKIND, WHARTON &

-39-

GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com

Randall S. Luskey
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
(628) 432-5112
rluskey@paulweiss.com

David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
Erich J. Gleber
Melissa He
HAWKINS PARNELL & YOUNG LLP
275 Madison Avenue, 10th Floor
New York, NY 10016
(212) 897-9655
eabbot@hpylaw.com
egleber@hpylaw.com
mhe@hpylaw.com

*Counsel for Defendants Revlon, Inc., Revlon
Consumer Products Corporation, and
Revlon Group Holdings LLC*

Ryan M. Frierott - #6289513
Goldberg Segalla LLP
222 West Adams Street, Suite 2250
Chicago, IL 60606
312-572-8409
rfrierott@goldbergsegalla.com

Joseph W. Welter (Admitted PHV)
Goldberg Segalla LLP
665 Main Street
Buffalo, NY 14203-1425
716-566-5457
jwelter@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Florida Bar No. 525235
Ravika Rameshwar
Florida Bar No. 123659
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com
DINSMORE & SHOHL LLP
Southeast Financial Center
200 S. Biscayne Blvd.
Suite 2401
Miami, FL 33131
Telephone: 786-957-1136
Facsimile: 786-957-1158

Matthew C. Wasserman (6287638)
Daniel L. Moeller (6338194)
Matthew.Wasserman@dinsmore.com
Daniel.Moeller@dinsmore.com
DINSMORE & SHOHL LLP
222 W. Adams Street
Suite 3400
Chicago, Illinois 60606
*Counsel for Defendant, McBride Research
Laboratories, Inc.*