IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br>Case No. 23-cv-0818<br><br>Judge Mary M. Rowland |

### ORDER

Before the Court are the parties' cross-briefs on whether Defendant L'Oréal U.S.A. has responded to requests for production in compliance with Federal Rules of Procedure 34(b)(2)(E). [423] [426]. For the following reasons, the Court finds that L'Oréal has complied with its Rule 34 obligations and declines to order L'Oréal to further organize and label its ESI production.

Plaintiffs served their first set of requests for production on L'Oréal on June 27, 2023. [423] Ex. B. L'Oréal represents that it responded to those requests in compliance with the parties' agreed upon ESI protocol [109] and the standing protective order issued by this Court. [78]. To date, L'Oréal USA has produced 1,005 documents (13,682 pages) in four rounds of production in response to Plaintiffs' initial discovery requests. [423] at 2.

Plaintiffs now argue that L'Oréal has not produced ESI as it is "kept in the usual course of business," requiring L'Oréal under Rule 34(b)(2)(E)(i) to "organize and label" productions as they correspond to requests. Plaintiffs provide the Court with examples of productions that indicate L'Oréal employees extracted files from various

1

electronic locations, compiled them into folders designated for each employee, then provided them to L'Oréal's vendor who prepared the materials for production. [426] Ex. A-C. This process, according to Plaintiffs, effectively wrote over metadata from the files that identified their original author and/or custodian, date of creation, and file path. Plaintiffs claim the end product leaves them without critical context. *See* [426] at 6. ("There is no way to know, for example, whether a product label produced came from a folder title "final label file" or one titled "draft labels--do not use.""). L'Oréal, for its part, has not provided the Court with evidence of its production process, arguing instead that ESI production is not subject to the strictures of Rule 34(b)(2)(E)(i).

Rule 34(b)(2)(E) provides in relevant part:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

Courts in the Seventh Circuit and across the country are split on whether the organization requirements in Rule 34(b)(2)(E)(i) apply to ESI and hard copy documents alike. Compare *Alexander v. Abbot Lab's, Inc. (In Re; Depakote)*, No. 12-CV-52 NJR-SCW, 2014 WL 12547165 at *2 (S.D. Ill. August 8, 2014) (applying the

2

rule to ESI production) with *Raab v. Wendel*, 16-CV-1396, 2018 WL 11408277, at *3-*5 (E.D. Wis. Feb. 15, 2018) (applying the rule to hard copy documents only).

This Court is persuaded by the well-reasoned analysis of courts that apply Rule 34(b)(2)(E)(i) to documents and (b)(2)(E)(ii) to ESI, with no overlap. The plain text of the Rule distinguishes between hard copy documents and ESI. So do the notes accompanying the 2006 Amendments to the Rule: "it has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a document." Fed. R. Civ. P. 34 advisory committee notes.

Still, while not all ESI fits the traditional definition of "document," some ESI categories such as emails (or say, copies of old product labels) do look like our everyday conception of what a "document" is. In *Anderson Living Tr. v. WPX Energy Prod.*, LLC, 298 F.R.D. 514, 523-36 (D.N.M. 2014), the court painstakingly explains the legislative history of Rule 34 to further explain why the Rule treats documents and ESI differently: searchability. Parties can locate relevant portions of ESI through search terms without formal labeling or categorization. Accordingly, Rule 34(b)(2)(E)(ii) allows requesting parties to specify the form of production for ESI. Plaintiffs did that here, and further agreed with Defendants to search terms used to identify and produce ESI. [109]. Plaintiffs have not indicated that L'Oréal's production is not in a "reasonably usable," i.e., searchable form as Rule 34(b)(2)(E)(ii) requires. Thus, the Court finds L'Oréal's present ESI production is proper under Rule

34(b)(2)(E)(ii). L'Oréal need not double back and "organize and label" ESI to correspond to categories of Plaintiffs' requests for production.

The Court does not minimize Plaintiffs' need for relevant information. To the extent Plaintiffs lack vital information about a particular category of ESI (author, date, etc.), they can follow-up via deposition. All ESI must comply with the agreed upon protocol in CMO 4. And of course, any documents produced are subject to the Rule 34(b)(2)(E)(i) "usual course of business" requirement.

E N T E R:

Dated: March 1, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge