**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br><br>Master Docket Case No. 1:23-cv-00818<br><br>Hon. Mary M. Rowland |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT REVLON'S MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 23(d)(1)(D) AND DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**Dated:** March 11, 2024

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 5

ARGUMENT .............................................................................................................................. 7

A.    Exceptions to the Revlon Bankruptcy Deadlines and Fact-Intensive Questions Mean the Motion Must be Denied ................................................................................................... 7

B.    Revlon's Motion to Strike is Factually Unsound............................................................. 10

C.    Class Members' Claims in the CCAC are Sufficient........................................................ 12

D.    Plaintiffs' Claims in the CCAC are Not Duplicative of Individual MDL Plaintiffs' Claims ........................................................................................................................................ 13

E.    Dismissing All CCAC Claims Against Revlon Would be Highly Prejudicial ................. 14

CONCLUSION......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiello* v. *Providian Fin. Corp.*,
257 B.R. 245 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001).......................................12

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)...............................................................................................................13

*Brody* v. *Homestar, Inc.*,
2003 WL 22127108 (C.D. Cal. Aug. 8, 2003)........................................................................12

*Connectors Realty Grp. Corp.*,
2021 WL 1143513 (N.D. Ill. Mar. 25, 2021)...................................................................11, 15

*Greenhill v. Vartanian*,
917 F.3d 984 (7th Cir. 2019) ...................................................................................................9

*In re Hair Relaxer Mktg. Sales Practices and Prods. Liab. Litig.*,
MDL No. 3060, 2023 WL 7531230 (N.D. Ill. Nov. 13, 2023)................................................13

*Harris v. Rust-Oleum Corp.*,
2022 WL 952743 (N.D. Ill. Mar. 30, 2022)............................................................................12

*Heller Fin., Inc. v. Midwhey Powder Co.*,
883 F.2d 1286 (7th Cir. 1989) ......................................................................................... 11-12

*Lemelle v. Universal Mfg. Corp.*,
18 F.3d 1268 (5th Cir. 1994) ....................................................................................................9

*Miller* v. *Motorola, Inc.*,
76 F.R.D. 516 (N.D. Ill. 1977).................................................................................................12

*Northern* v. *Stroger*,
676 F. App'x 607 (7th Cir. 2017) ............................................................................................14

*Serlin* v. *Arthur Andersen & Co.*,
3 F.3d 221 (7th Cir. 1993) .......................................................................................................14

*Shropshear v. Corp. Couns. of City of Chicago*,
275 F.3d 593 (7th Cir. 2001) ....................................................................................................9

*Vann* v. *Dolly, Inc.*,
2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ............................................................................12

*Wolfkiel* v. *Intersections Ins. Servs.*,
303 F.R.D. 287 (N.D. Ill. 2014)................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................13

Fed. R. Civ. P. 15(a)(1)(B) ...............................................................................................5, 10, 15

Fed. R. Civ. P. 15(a)(2)..........................................................................................................10, 15

Fed. R. Civ. P. 23(d)(1)(D) ...................................................................................................1, 10-11

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................................11, 12

iii

## INTRODUCTION

Throughout this MDL, Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC (collectively, "Revlon") have repeatedly invoked the Revlon Bankruptcy as an alleged basis for dismissing claims against Revlon in the MDL. Revlon's Motion to Strike Class Allegations Under Rule 23(d)(1)(D) and Dismiss the Consolidated Class Action Complaint, MDL Dkt. Nos. 434-35 (the "Motion"),[1] is but one example of Revlon's campaign. For example, Revlon has recently sent dozens of letters to counsel for MDL Plaintiffs and to *pro se* Plaintiffs, demanding that they voluntarily dismiss Revlon from certain actions due to alleged non-compliance with deadlines in the Revlon Bankruptcy.[2]

Revlon's Motion asks this Court to strike class allegations from the Consolidated Class Action Complaint (MDL Dkt. No. 185) (the "CCAC"), dismiss the claims of allegedly "non-complying" named Class members, and dismiss CCAC claims against Revlon in their entirety. But the Motion is based on a false premise, overbroad statements, and little or no evidence.[3] The fact is, certain hair relaxer claimants may have proper claims against Revlon in this MDL, either now or in the future, ***despite*** the bankruptcy, according to the express terms of the bankruptcy documents cited by Revlon. Revlon's Motion is legally and factually flawed and must be denied for the following reasons.

***First*, certain claims against Revlon are facially not barred.** As discussed elsewhere

---

[1] Revlon's Memorandum of Law in Support of its Motion, MDL Dkt. No. 435, is cited in shorthand herein as "Mot." Plaintiffs refer to the "Orig. BK Dkt.," "BR Dkt.," and "MDL Dkt." in this brief, adopting the citation format in Revlon's Motion, fn. 2, and prior MDL filings (*see, e.g.*, MDL Dkt. No. 126, Joint Status Report Addendum, fn. 5).

[2] *See, e.g.,* Ex. A, February 7, 2024 letter from Paul Weiss, counsel for Revlon, to Diandra "Fu" Debrosse Zimmermann of DiCello Levitt, Plaintiffs' Co-Lead Counsel and counsel to individual Plaintiffs.

[3] *See, e.g.,* Mot. at 5 (stating that only five named Plaintiffs filed Proofs of Claim, without including documentation or explaining why each of the other named Plaintiffs' claims were untimely). Indeed, Revlon has not even filed objections with the bankruptcy court to the five named Plaintiffs' Proofs of Claim. *Id.* at 12 fn. 9.

herein, the Revlon Bankruptcy only resulted in a bar of certain claims that arose prior to the June 15, 2022 petition date (the "Petition Date") or, possibly, that arose prior to May 2, 2023 Effective Date of Revlon's confirmed Plan. Orig. BK Dkt. Nos. 1574, 1860 (*see infra* Factual Background). The CCAC alleges that Revlon has continued to market and sell hair relaxer products to consumers, i.e. after the Petition Date and the Effective Date (MDL Dkt. No. 185 ¶ 270), and the definitions of the CCAC's Classes have no time limitation.[4] ████████████████████████████ ████████████████████████,[5] and its hair relaxers are currently available for purchase online.[6]

Therefore, there is a category of hair straightening claims against Revlon among the CCAC's Classes—of uncertain number—which, by definition, ***are not barred*** under any interpretation of the Hair Straightening Bar Date Order or the subsequently-confirmed Plan. Revlon may contest liability as to these claims, but that is a fact-intensive defense inappropriate

---

[4] *See* MDL Dkt. No. 185 at ¶ 1 (CCAC is brought on behalf of people who "purchased" hair relaxers, with no date limitation); *id.* at ¶¶ 160-64 Classes are individuals who "purchased" hair relaxers).

[5] *See* Revlon's Omnibus Second Amended Responses and Objections to Interrogatory No. 4 of Plaintiffs' First Set of Interrogatories, dated Dec. 6, 2023, at 8-9 ████████████████████████████ ████████████ The interrogatory responses are attached as Ex. B.

[6] For example, more than a dozen Revlon hair relaxer products are available on Amazon. https://www.amazon.com/Hair-Relaxers-Revlon-Perms-Texturizers/s?rh=n%3A3781951%2Cp_4%3ARevlon (last accessed Mar. 11, 2024), and https://www.amazon.com/Creme-Nature-Argan-No-Lye-Relaxer/dp/B01IAENC20 (last accessed Mar. 7, 2023). At least two of these products, Revlon Realistic No Base Relaxer and Crème of Nature Relaxer Kit Argan Oil, are listed in the Short-Form Complaint. MDL Dkt. No. 175-1 at 6. A third product in the Short-Form Complaint, All Ways Natural – No Lye Conditioning Crème Relaxer Kit, is available through Walmart. https://www.walmart.com/ip/ALL-WAYS-NATURAL-No-Lye-Conditioning-Creme-Relaxer-SUPER/5186967506?wmlspartner=wlpa&selectedSellerId=101074890&adid=22222222275186967506 _101074890_14069003552_202077872&wl0=&wl1=g&wl2=c&wl3=42423897272&wl4=pla-295289030566&wl5=9011658&wl6=&wl7=&wl8=&wl9=pla&wl10=403326709&wl11=online&wl12=5 186967506_101074890&veh=sem&gad_source=1&gclid=CjwKCAjw17qvBhBrEiwA1rU9w9XaTVQR bBvR17klqk6EIS3zMjLLXUOgwzmAv88H6V2ytw5jpbue5hoCdxcQAvD_BwE (last accessed Mar. 11, 2024). ████████████████████████████ Revlon's Omnibus Amended Responses and Objections to Interrogatory No. 3 of Plaintiffs' First Set of Interrogatories, dated Sept. 12, 2023. Attached as Ex. C. Printouts of the webpages above are attached as Ex. D.

for resolution on a motion to strike or motion to dismiss. Revlon would have this court interpret certain Revlon Bankruptcy orders as providing a full and final bar to all CCAC claims, which is plainly unsupported by the Revlon Bankruptcy orders.[7] Granting Revlon's motion would result in dismissing countless non-barred hair straightening claims, so Revlon's Motion must be denied.

**Second, individual Class members may be exempted from Revlon Bankruptcy deadlines.** Beyond the non-barred category described above, other claimants might obtain relief from the Revlon Bankruptcy orders on other legal grounds. Claimants could seek relief based on individual circumstances which may exempt them, such as factual errors resulting in improper disallowance of their claims or due process concerns which could implicate complex and unsettled questions of bankruptcy and constitutional law which are beyond the scope of this Motion. Class members might also have tolling agreements or other agreements with Revlon which affect their filing deadlines. These possibilities are contemplated by the Revlon Plan,[8] and more than a thousand claimants are already seeking such relief under the Plan.[9] And yet, Revlon entirely ignores these categories of potentially non-barred claimants.

**Third, Revlon's arguments are premature because it is not moving for summary judgment or opposing class certification.** Revlon's Motion implicates fact-intensive issues of

---

[7] Indeed, Revlon's motion to strike Class members' claims *en masse* contradicts the statements of its own counsel at a Revlon Bankruptcy hearing in March 2023, regarding how future disputes would be addressed: "What [Your Honor] can't decide today and what we haven't asked you to decide today is that some particular future claimant, when their claim manifests, when their injury manifests itself in the future, was actually barred and discharged because notice was constitutionally sufficient. That issue we'll have to deal with when it arises at some point in the future." Ex. E, *In re Revlon, Inc., et al.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.), Mar. 7, 2023 Hr'g Tr. at 64:22-65:3 (statement of Revlon counsel during discussion of motion for supplemental bar date order).

[8] Orig. BK Dkt. No. 1860 (Plan), Ex. A, Art. I.173, p. 21 (providing for claimants to obtain a court order that Hair Straightening Proofs of Claim may be deemed timely filed on basis of excusable neglect, or by agreement with Revlon).

[9] BK Dkt. No. 424, Omnibus Motion of Cancer Patient Claimants to Deem Timely Filed Certain Proofs of Claim Filed After the Hair Straightening Claims Bar Date (the "Omnibus Motion" seeking relief on basis of excusable neglect relating to lack of due process).

Class members' standing, but the evidentiary record on that issue is grossly underdeveloped. Individual MDL Plaintiffs are in the process of filing Plaintiff Fact Sheets, but no discovery whatsoever has been taken as to how the CCAC claims will be proven on a class-wide basis. Without further discovery, likely combined with further legal rulings, the Court lacks sufficient information to determine whether members' claims are barred or not.

*Fourth*, **Plaintiffs' allegations in the CCAC are sufficient.** The CCAC contains adequate allegations about the 34 named Plaintiffs, the Classes, and Revlon's ongoing sales (MDL Dkt. No. 185 ¶¶ 1, 13-47, 160-74, 270). Revlon's narrow factual arguments that only five of those Plaintiffs filed Proofs of Claim (Mot. at 5) and that the 29 others failed to comply with the Revlon Bankruptcy court's orders (*id.* at 7), even if true, are not dispositive because of the exceptions stated herein.

*Fifth*, **Plaintiffs' claims in the CCAC are not duplicative of individual MDL Plaintiffs' claims.** Revlon seeks to collapse the distinction between the CCAC and MDL Plaintiffs' claims, but there are clear differences, so this argument by Revlon is obviously wrong. For one, the CCAC was filed on behalf of named and unnamed Class members, including those who may discover their injury in the future, while the Master Long Form Complaint (MDL Dkt. No. 106) and individual complaints are filed on behalf of specific individuals who have already filed. While those Plaintiff populations overlap, they are not the same.[10]

*Sixth*, **dismissing Revlon from the CCAC would be highly prejudicial to Class members.** Granting Revlon's Motion at this relatively early stage in the MDL, based on a paper-thin factual record, before any discovery of Class members and while legal and factual arguments

---

[10] *See also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion to Strike Consolidated Class Action Complaint, MDL Dkt. No. 509.

about the Revlon Bankruptcy deadlines are swirling in this MDL and in bankruptcy, would unfairly cut off the claims of potentially many thousands of Class members with timely, non-discharged, meritorious claims against Revlon. The remedy for any insufficient allegations in the CCAC would not be to dismiss Revlon, but for Plaintiffs to amend per Fed. R. Civ. P. 15(a)(1)(B), so Revlon's Motion is futile.

## FACTUAL BACKGROUND

The August 14, 2023 CCAC asserts claims on behalf of thirty-four named Plaintiffs (MDL Dkt. No. 185 ¶¶ 13-47) as well a Nationwide Consumer Class, state-specific Consumer Classes, a Medical Monitoring Class, and state-specific Medical Monitoring Classes. *Id.* ¶¶ 160-64.[11] The Consumer Classes consist of "All individuals who, for personal use, purchased any Toxic Hair Relaxer Product(s)" in the United States or dozens of individual states. *Id.* ¶¶ 160-61. The Medical Monitoring Classes consist of "All females residing in [the United States or specific states] who used Toxic Hair Relaxer Product(s) at least four times a year and have not been diagnosed with uterine or ovarian cancer." *Id.* ¶¶ 162-63. The CCAC alleges that Revlon and other Defendants "continue to this day to market and sell their products to consumers," i.e. past the Petition Date and Effective Date. *Id.* ¶ 270.

The Court has received substantial briefing from the parties since early 2023 regarding the Revlon Bankruptcy and its impact on this MDL.[12] Plaintiffs restate the following key information related to Revlon's Motion:

On June 15, 2022, Revlon filed petitions under chapter 11 of the bankruptcy code in the

---

[11] For simplicity and ease of reference, the "Classes" are sometimes collectively referred to herein as the "Class."

[12] *See, e.g.,* MDL Dkt. Nos. 42, 126 (Plaintiffs' updates on the Revlon Bankruptcy); *id.* Nos. 141, 157 (Revlon's updates on the Revlon Bankruptcy).

U.S. Bankruptcy Court for the Southern District of New York.  On March 7, 2023, the bankruptcy court entered an order which set an April 11, 2023 deadline for Hair Straightening Claimants to file Hair Straightening Proofs of Claim in the Revlon Bankruptcy.  Orig. BK Dkt. No. 1574 ("Hair Straightening Bar Date Order"), ¶¶ 3, 15.[13]  The Hair Straightening Bar Date Order defines "Hair Straightening Claimants" as those with "*prepetition claims*," claims which "arose, or [are] deemed to have arisen, prior to June 15, 2022 (the 'Petition Date')."  *Id.* ¶ 3 (emphasis added).[14]

By its own terms, the April 11, 2023 "Hair Straightening Bar Date" (*id.*) does not apply to claims which have accrued since June 15, 2022.[15]  ████████████████████████

████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████  *Supra* fn. 5-6.  Class members have alleged post-Petition Date and post-Effective Date purchase of and exposure to Revlon hair relaxer products.  *Supra* fn. 4.  Therefore, there is a potentially significant (and growing) group of claimants with post-petition claims against Revlon which are not barred by the Hair Straightening Bar Date Order.

On April 3, 2023, the bankruptcy court entered an order confirming Revlon's plan of reorganization.  Orig. BK Dkt. No. 1746 (confirmation order); No. 1860 (the "Plan").  The Plan set deadlines for "each Hair Straightening Claimant that has properly filed a Hair Straightening Proof of Claim," i.e. those who filed Hair Straightening Proofs of Claim by the April 11, 2023 deadline—or, critically, a Proof of Claim "that is otherwise deemed timely and properly filed

---

[13] The Hair Straightening Proof of Claim form was enclosed as Exhibit 1 to the Bar Date Order.  *Id.* Ex. 1. For a detailed procedural history of the April 11, 2023 and September 14, 2023 deadlines in the Revlon Bankruptcy, see MDL Dkt. No. 126, Joint Status Report Addendum, Report & Update on Revlon Bankruptcy Proceedings, at 3-10.

[14] Revlon cites the Hair Straightening Bar Date Order but misleadingly omits reference to the prepetition limitation.  Mot. at 3.

[15] Revlon's Motion only indirectly acknowledges that the April 11, 2023 deadline only applies to prepetition claims (Mot. at 1, 4).  Revlon does not acknowledge that the Court therefore cannot dismiss the CCAC in entirety with this Motion, which means the Motion must be denied.

pursuant to a Final Order finding excusable neglect or a stipulation" with Revlon[16]—to file suit in the MDL by certain deadlines. Lawsuits must be filed by September 14, 2023 or, "with respect to a Hair Straightening Claimant who is diagnosed after the Hair Straightening Bar Date, six (6) months from the date of the applicable diagnosis by a licensed medical doctor." Plan, Ex. A, Art. IX.A.6, p. 92. The Plan enjoins parties from filing suit against Revlon on claims that arose prior to the Effective Date, "[e]xcept as otherwise expressly provided in the Plan." *Id.* Art. I.167, I.173 pp. 20-21; X.B, p. 95; X.G, p. 100. More than a thousand claimants are currently seeking to have their Hair Straightening Proofs of Claim deemed timely filed, as provided by the Plan. BK Dkt. No. 424, Omnibus Motion.

**ARGUMENT**

**A.      Exceptions to the Revlon Bankruptcy Deadlines and Fact-Intensive Questions Mean the Motion Must be Denied**

Revlon repeatedly characterizes the Revlon Bankruptcy filings as meaning that any claims in the MDL, class or otherwise, are untimely if Plaintiffs did not 1) file a Proof of Claim in the Revlon Bankruptcy by April 11, 2023, and 2) then file a complaint in the MDL by September 14, 2023.[17] Revlon's Motion misstates the preclusive effect of these deadlines, however, wrongly implying that they are universal requirements. At the same time, the Motion also ignores or downplays the categories of Class members who are unaffected by or excepted from those deadlines.[18] For example, nowhere does Revlon acknowledge that claimants are actively seeking

---

[16] Orig. BK Dkt. No. 1860, Art. I.173, p. 21 ("Hair Straightening Proof of Claim").

[17] *See, e.g.,* Mot. at 1 ("the court imposed certain mandatory conditions for initiating and maintaining any such action against Revlon"); *id.* at 3 (Hair Straightening Bar Date Order "prohibits any claimants who fail to file a timely and valid Proof of Claim from participating in any distribution") (internal quotations omitted); *id.* at 4 ("all hair straightening claimants must satisfy two requirements"); *id.* at 7 (faulting CCAC because the Class includes "putative class members who have not filed a timely and valid Proof of Claim and commenced an action in the MDL").

[18] *See, e.g., id.* at 3 (omitting "prepetition" qualification to Hair Straightening Bar Date Order), 4 (conceding "limited exception" to September 14, 2023 filing deadline).

7

a court order concerning the timeliness of their Proof of Claim filing (BK Dkt. No. 424, Omnibus Motion), nor that Revlon's own Plan expressly provides for all claimants to do so (Orig. BK Dkt. No. 1860, Art. I.173, p. 21).

The exceptions described below are *prima facie* grounds for denying Revlon's Motion, which seeks to dismiss all claims in the CCAC as to Revlon. Mot. at 13. Indeed, Revlon misstates that, other than claimants who filed a Hair Straightening Proof of Claim and filed suit in the MDL, "[a]ll other hair straightening claims arising prior to the Plan's effective date were permanently enjoined and fully discharged." *Id.* at 1. Revlon is also incorrect in stating that permitting the CCAC to proceed "would amount to an improper challenge to the Plan" (*id.* at 2), that the CCAC is an "attempt at an end-run around the bankruptcy court's orders [and] Plan" (*id.* at 7), or that the CCAC's Class definition is "in violation of the bankruptcy court's orders and Plan" (*id.* at 11). On the contrary, the CCAC is **consistent with** the bankruptcy court's orders and Plan. The CCAC includes untold numbers of Class members whose claims against Revlon are not barred.

As noted above, the Hair Straightening Bar Date only applies to "prepetition claims," those which arose, or are deemed to have arisen, prior to the June 15, 2022 Petition Date. Orig. BK Dkt. No. 1574, ¶ 3. Likewise, the Plan's injunction pertains only to claims accruing prior to the May 2, 2023 Effective Date. *Id.* No. 1860, Art. I.167, p. 20; X.B, p. 95; X.G, p. 100. Revlon's hair relaxer products are currently for sale online (*supra* fn. 5-6), consumers are continuing to use those products and suffer harm, and claimants are continuing to discover injuries and receive diagnoses of uterine or ovarian cancer. These Class members' claims, as alleged, or at least portions thereof, simply **are not barred** by any interpretation of any orders of the bankruptcy court.

Even beyond these definitional, categorical exceptions, individual Class members may also have claim-specific factual or legal arguments—to be presented in this MDL or the bankruptcy

8

court—for why the Revlon Bankruptcy deadlines do not apply to them. Again, the Revlon Plan expressly provides an opportunity for such claimants to make such arguments. Orig. BK Dkt. No. 1860, Art. I.173, p. 21. For example, Class members might have tolling agreements with Revlon which affect the timeliness of their claims. Class members could seek relief from any orders disallowing individual claims, based on a mistake of fact, for example. Or they may have arguments that the discovery rule, the equitable tolling doctrine, and/or the fraudulent concealment doctrine, as alleged in the CCAC (Dkt. No. 185 ¶¶ 175-80), should make otherwise-untimely claims against Revlon timely.[19] Revlon ignores these allegations.

One specific example of a group of claimants with an outstanding challenge to the Hair Straightening Bar Date, yet to be resolved in the Revlon Bankruptcy: 1,334 cancer patient claimants filed the Omnibus Motion, arguing that their later-filed Proofs of Claim should be deemed timely because the claimants received inadequate notice of the Hair Straightening Bar Date. BK Dkt. No. 424. Similarly, claimants may continue to file proofs of claim against Revlon in the future and seek to have these claims deemed timely, based on lack of notice or other grounds. If the Omnibus Motion or similar future motions are granted, the bankruptcy court would further invalidate Revlon's claim to universal applicability of the Revlon Bankruptcy deadlines.[20] This Court should not rule in Revlon's favor now on contested factual and legal issues which are very much in flux, in this MDL and the Revlon Bankruptcy.

---

[19] *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275-78 (5th Cir. 1994) (discussing conflicting views regarding the effect of later discovery on timeliness of bankruptcy claim filing); *see also Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) (describing discovery rule in Illinois); *Shropshear v. Corp. Couns. of City of Chicago*, 275 F.3d 593, 595-97 (7th Cir. 2001) (describing doctrines of equitable tolling and fraudulent concealment).

[20] Prior to the Omnibus Motion, other claimants moved the bankruptcy court for a ruling that their claims were not bound by the Hair Straightening Bar Date, arguing that they received inadequate notice, but those motions were denied. BK Dkt. No. 484, Decision and Order Denying Motions by Certain Hair Relaxer Cancer Claimants to Permit Late Claim Filing Pursuant to Fed. R. Bankr. P. 9006(b)(1) (Dec. 20, 2023).

Moreover, the criteria whereby claimants had to file suit in the MDL by September 14, 2023 are even narrower than the April 11, 2023 criteria. The September 14, 2023 filing deadline only applies to Hair Straightening Claimants with a current diagnosis—those with a later diagnosis have six months from diagnosis in which to file suit in the MDL.[21] Others without a relevant diagnosis, including by definition *every* member of the Medical Monitoring Classes, are not bound by the September 14, 2023 filing deadline. Revlon seems to admit this in its Motion, referring to "later-diagnosed claimants." Mot. at 2, 4. These categories mean the Court *cannot* grant Revlon's Motion.

The Court presently has no evidence before it on which to rule that any individual named or unnamed Class members' claims are barred by the Revlon Bankruptcy deadlines. In its Motion, Revlon makes conclusory references to Proof of Claim and Short-Form Complaints by named Class members (Mot. at 5-6), but does not attach them to the Motion. Even if Revlon had done so, that information is not a complete and definitive record for each of those individuals given other possible claimant-specific arguments for each of them. Moreover, even if every named Class member's claims against Revlon were barred, Plaintiffs would simply identify other Class members and file an amended CCAC pursuant to Fed. R. Civ. P. 15(a)(1)(B).[22]

**B.      Revlon's Motion to Strike is Factually Unsound**

Revlon moves pursuant to Fed. R. Civ. P. 23(d)(1)(D), which provides that the Court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." However, the Court

---

[21] Orig. BK Dkt. No. 1860 (Plan), Ex. A, Art. IX.A.6, p. 92.

[22] Plaintiffs would amend as of right, and would not require a Court order or Revlon's consent per Fed. R. Civ. P. 15(a)(2), because Revlon has answered the Master Long Form Complaint (MDL Dkt. No. 387) but not the CCAC. Moreover, Revlon's Motion does not seek dismissal with prejudice.

10

lacks a factual record on which to grant Revlon's requested relief. Revlon has not requested, nor obtained, any discovery about any individual Class members, named or unnamed.[23] Revlon's Motion does not even attempt to address each Plaintiff's unique facts. The time to address these arguments is at class certification and/or summary judgment, which will occur much later in the case.

Revlon cites Rule 23(c)(1)(A), which instructs courts to address class allegations "[a]t an early practicable time," but Revlon omits the remainder of the rule: courts must determine ***whether to certify a class action***, with all the evidence and legal analysis that entails under Rule 23, at an early practicable time.[24] Revlon's authority for striking class allegations at the pleading stage, *Wolfkiel* v. *Intersections Ins. Servs.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014), is inapplicable. The court limited such circumstances to "when pleadings 'are facially defective and definitively establish that a class action cannot be maintained'" (*id.*), which is not the case here, given the exceptions to the bankruptcy court deadlines and claimant-specific factual nuances. "If . . . the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Connectors Realty Grp. Corp.*, 2021 WL 1143513 (N.D. Ill. Mar. 25, 2021), at \*2.

The Seventh Circuit's "general rule" is that "motions to strike are disfavored" because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at \*3 (N.D. Ill. Mar. 30, 2022) (same). Revlon cites various court decisions supporting striking of class allegations (Mot.

---

[23] The Plaintiff Fact Sheet (MDL Dkt. No. 343-1) calls for some information potentially relevant to Revlon's arguments, but they only apply to Plaintiffs with filed MDL cases, not Class members. *Id*. No. 343 (CMO 9, Plaintiff Fact Sheets and Record Authorizations), ¶ 1 (Scope); *id.* No. 343-1 at 1 ("This Fact Sheet must be completed by each plaintiff who has filed a lawsuit….").

[24] "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *Id.*

at 8-10), but they are inapplicable. The CCAC's allegations are not "facially and inherently defective," nor are they "legally infirm," nor are the claims "statutorily or procedurally barred," and yes, "discovery is needed to determine [in the future] whether a class should be certified." *Id.* at 8-9.[25]

Importantly, Revlon's Motion does not seek a ruling on all the elements of class certification. Although the CCAC includes detailed allegations for why the Classes satisfy the Rule 23 class-certification criteria (MDL Dkt. No. 185 ¶¶ 165-74), Revlon does not engage with or dispute those allegations, underscoring that its Motion is not a true class-certification motion. Rather, Revlon moves to strike at this "pleading stage" (Mot. at 8) and reserves the right to argue *later* that the CCAC does not contain a certifiable class (Mot. at 2 fn. 1). Moreover, it is not "practicable" (Rule 23(c)(1)(A)) for the Court to make a Rule 23 class-certification ruling at this stage of the MDL—which would go far beyond Revlon's Motion—because the factual and legal issues are underdeveloped.

### C.   Class Members' Claims in the CCAC are Sufficient

The CCAC explicitly alleges which of the 34 named Plaintiffs purchased Revlon hair relaxers (MDL Dkt. No. 185 ¶¶ 13-47); alleges that the Classes include everyone who "purchased"

---

[25] For example, unlike in *Aiello* v. *Providian Fin. Corp.*, 257 B.R. 245, 253 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001), the Court lacks a sufficient factual record to conclude that the named Class representatives in the CCAC have no "compensable claim," and therefore cannot find that they do not have standing. Mot. at 10. Unlike in *Harris*, the Court cannot conclude that "the class allegations are facially and inherently deficient and therefore class certification is inappropriate." 2022 WL 952743, at *3. Moreover, if anything, Revlon argues that the Class is overbroad, not that the CCAC allegations are "inherently deficient." Unlike in *Miller* v. *Motorola, Inc.*, 76 F.R.D. 516, 518 (N.D. Ill. 1977), the Court cannot conclude "by undisputed facts that [the Class] cannot maintain this action on a class basis." The facts are hotly disputed and the Court has not been asked to consider all Rule 23 elements of class certification. And unlike in *Brody* v. *Homestar, Inc.*, 2003 WL 22127108, at *2-3 (C.D. Cal. Aug. 8, 2003), the Court lacks sufficient evidence to conclude that any Class members "failed to meet the procedural requirements" by not filing a Hair Straightening Proof of Claim. This case is also unlike *Vann v. Dolly, Inc.*, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020), where the defined class "exceed[ed] the scope of the Plaintiffs' allegations," since the CCAC's Classes are consistent with the CCAC's allegations.

12

hair relaxers, without date limitation (*id.* ¶¶ 160-74); and alleges that Revlon's marketing and sale is ongoing (*id.* ¶ 270). Plaintiffs' allegations in the CCAC are sufficiently pled as alleged, "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] all well-pleaded facts as true, and draw[ing] all reasonable inferences in the plaintiff's favor." *In re Hair Relaxer Mktg. Sales Practices and Prods. Liab. Litig.*, MDL No. 3060, 2023 WL 7531230 (N.D. Ill. Nov. 13, 2023), at \*2 (quoting *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). The CCAC only needs to "state a claim to relief that is plausible on its face," *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 547 (2007), which it plainly does. Although Revlon styles its Motion as an Fed. R. Civ. P. 12(b)(6) motion to dismiss (Mot. at 12), Revlon ***essentially seeks summary judgment***, based only on its unsupported statements about which named Plaintiffs in the CCAC filed Short-Form Complaints. *Id.* at 6, 12.

## D. Plaintiffs' Claims in the CCAC are Not Duplicative of Individual MDL Plaintiffs' Claims

Even assuming the Court were to grant Revlon's motion to strike and narrow the Class, it would not follow that therefore the ***entire Class*** should be dismissed as to Revlon. The claims in the CCAC are obviously distinct from the allegations of individual Plaintiffs in the MDL. The complaints involve different Plaintiffs, for one: the CCAC is filed on behalf of dozens of Classes of claimants, including those who have not filed suit, which could include thousands of currently-unnamed Plaintiffs, while the Master Long Form Complaint and Short Form Complaint are limited to Plaintiffs who previously filed in the MDL.[26] Citing Revlon's own Seventh Circuit authorities, the parties here "significantly differ" and thus the lawsuits are not "duplicative." Mot. at 13 (citing

---

[26] *See* MDL Dkt. No. 106, ¶ 10 ("This Master Complaint is filed on behalf of all Plaintiffs whose claims are subsumed within MDL 3060," Plaintiffs "in individual actions.").

13

caselaw).[27] The complaints' contents are also very different, as indicated by the statistics: the CCAC is 455 pages long and contains 2,218 paragraphs of allegations (MDL Dkt. No. 185), whereas the Master Long Form Complaint is 82 pages long and contains 281 paragraphs (*id.* No. 106) and the Short-Form Complaint template is only 11 pages long (*id.* No. 175-1), serving as an adoption by reference to the Master Long Form Complaint.

Revlon argues that certain causes of action overlap between the CCAC and pending MDL complaints (Mot. at 6, 7), but that is unsurprising. Overlapping causes of action do not render the CCAC *identical* to the Master Long Form Complaint or the Short-Form Complaint. The specific allegations are different. Revlon implicitly concedes this point, repeatedly writing that the CCAC is "nearly" identical or "near-identical" to pending MDL lawsuits (MDL Dkt. No. 434 at 2, 6, 13, 14) and "substantively" duplicative (Mot. at 2). Revlon argues that judicial economy favors dismissing the CCAC as to Revlon (*id.* at 14), but such an unwarranted dismissal would be unfair to women who have allegedly been gravely injured by Revlon's products.[28]

**E.      Dismissing All CCAC Claims Against Revlon Would be Highly Prejudicial**

Revlon represented to the bankruptcy court in June 2023 that "over 30,000" Hair Straightening Proofs of Claim had been filed.[29] Less than 9,000 Plaintiffs have active lawsuits in the MDL, so there appear to be more than 20,000 claimants who filed a proof of claim but have not filed suit in the MDL. Many of those may be Class members with non-barred claims against

---

[27] In *Serlin* v. *Arthur Andersen & Co.*, 3 F.3d 221, 222-23 (7th Cir. 1993), and *Northern* v. *Stroger*, 676 F. App'x 607, 608 (7th Cir. 2017), unlike here, two complaints were found duplicative because they were both filed by the same person and appear to have been much more similar in content.

[28] There is also no risk of "double recovery" between the CCAC and individual MDL actions. Mot. at 14. If Revlon settles with claimants, Plaintiffs are confident that it will ensure it does not pay any individual Plaintiffs twice.

[29] BK Dkt. No. 240, Reorganized Debtors' Omnibus Objection to Motions to Permit Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), ¶ 22.

Revlon. Revlon wants the Court to throw the baby out with the bath water, seeking an order dismissing Revlon from the CCAC just because *some* Class members *might* not satisfy the bankruptcy court's filing deadlines.[30] Such relief would be a manifest injustice by dismissing all Class members' claims against Revlon, without an opportunity for each claimant to show why their claims are not barred. The Court should allow Class members to continue to develop their claims against Revlon, and should only consider dismissal of individual Class members' claims against Revlon once a full factual record has been developed.

Even assuming that the Court could somehow find that the claims of *every* named Class member against Revlon are *completely* barred, the response would be for Plaintiffs to amend the CCAC pursuant to Fed. R. Civ. P. 15(a)(1)(B) or 15(a)(2) to substitute other named Class members, not dismissal. Plaintiffs would likewise amend the CCAC if the Court found that a subset of the Class—not individual Class members, but a category—was barred.[31] *See, e.g., Connectors Realty Grp. Corp.*, 2021 WL 1143513, at *3 (plaintiffs may amend stricken class allegations because "we do not believe amendment is futile").

**CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Revlon's Motion in its entirety.

Dated: March 11, 2024

---

[30] Revlon cannot help conceding that its Motion is overbroad, writing, for example, that the proposed class "*includes* those who cannot pursue their claims against Revlon," which is far short of stating that *all* Class members cannot pursue their claims. Mot. at 11 (emphasis added).

[31] Moreover, to the extent the Court is inclined to entertain Revlon's arguments about certain Class members' claims being discharged, at most the Court might consider directing Plaintiffs to amend the CCAC to explicitly exclude untimely claims from the Classes. Such clarification is unnecessary to explicitly state, however, and does not warrant amendment. Importantly, amending the Classes' definitions that way would still delay, for a later date, any evidence-based determinations about whether any specific Class members' claims against Revlon are barred.

15

Respectfully submitted,

*/s/ Edward A. Wallace*
**WALLACE MILLER**
Edward A. Wallace
150 N. Wacker Dr., Suite 100
Chicago, Illinois 606060
Tel: (312) 261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLP**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

16