## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

## JOINT STATUS REPORT FOR THE
## MAY 31, 2024 STATUS CONFERENCE

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this joint status report in advance of the status conference scheduled for May 31, 2024.

I.   _Status of Pending Briefs/Motions_:

    a.   **Plaintiff Leadership Committee's Proposed Cases Management Order Re: Common Benefit Fund**_:_ As requested by the Court's Minute Order dated December 11, 2023 (_see_ ECF No. 326), the PLC filed their position statement on December 22, 2024. Keller Postman filed their objections on January 12, 2024 (_see_ ECF No. 377). The PLC filed their response on January 24, 2024 (_see_ ECF No. 411). On January 25, 2024, Keller Postman then filed a Motion to Strike the PLC's response due to the response being in excess of the page limitations (_see_ ECF No. 412). On January 26, 2024, the PLC responded to this motion (_see_ ECF No. 418) and the court denied Keller Postman's Motion to Strike (_see_ ECF No. 419).

    b.   **Consolidated Class Action Complaint:** As requested by the Court during the November 17, 2023 CMC and memorialized in the Minute Order issued by the Court immediately following the conference (_see_ ECF No. 301), Defendants filed a proposed briefing schedule (_see_ ECF No. 307), which was adopted by the Court in the Minute Order dated December 1, 2023 (_see_ ECF No. 308). Defendants filed their Joint Motion to Dismiss the Consolidated Class Action Complaint and Joint Motion to Strike Class Allegations and Request for Punitive Damages on February 5, 2024 (_See_ ECF No. 432). Revlon joined the joint motions to dismiss and strike and filed a separate Motion to Strike Class Allegations Under Rule 23(d)(1)(D) and Dismiss the Consolidated Class Action Complaint on February 5, 2024 (_See_ ECF No. 434). Plaintiffs filed their Oppositions to the Motions to Dismiss and Oppositions to the Motions to Strike on March 11, 2024 (_See_ ECF No. 509, 510, and 515). Defendants filed their Replies in Support of the Motions to Dismiss (_See_ ECF No. 594) and Replies in Support of the Motions to Strike (_See_ ECF No. 593 on April 8, 2024. Revlon also filed its Reply in Support of its motion on April 8, 2024 (_See_ ECF No. 592).

     c.  **Plaintiffs' Motion for Dismissal Without Prejudice**: On May 14, 2024, Plaintiffs filed a Motion to Dismiss Non-ovarian, Uterine or Endometrial Cancer Cases without Prejudice (*see* ECF No. 650). In accordance with the Court's minute entry dated May 15, 2024, Defendants' joint response to Plaintiffs' Motion is due on June 5, 2024, with Plaintiffs' reply due on June 20, 2024 (*see* ECF No. 652).

**II.**    ***"Second-Wave" Defendants:*** The Court held a status conference on April 18, 2024 to discuss the status of newly named or "second-wave" defendants. Appearing for these defendants were counsel for Advanced Beauty, RNA Corp., Wella, Murrays International, John Paul Mitchell, Walgreens, and Dudley Beauty. In accordance with the minute entry issued immediately following the hearing, Plaintiffs are to file their individualized second-wave longform complaints by May 28, 2024 against each new Defendant (*see* ECF No. 616). Named Defendants must answer or file an otherwise responsive pleading by July 12, 2024. Pending motions to dismiss were denied as moot.

Plaintiffs' Leadership continues to evaluate any remaining and newly identified defendants discussed at the previous CMCs, as well as any additional newly identified defendants that may have had suits filed against them since our last report to the Court. As requested in the minute entry issued immediately following the April 11, 2024 case management conference, Plaintiffs will file a status report (a) identifying the various other defendants named in individual cases and (b) indicating whether/when each can be dismissed with prejudice by May 28, 2024. Plaintiffs will also be prepared to discuss at the May 31, 2024 status conference, if necessary.

**III.**    ***Status of Plaintiff Fact Sheets***:

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this joint update on the CMO 9 Plaintiff Fact Sheet ("PFS") intake and case dismissal protocol, and the process for streamlined service of Short Form Complaints.

     a.  **Dismissals Per CMO 9 Protocol**

CMO 9 sets out a negotiated and detailed process for Defendants to seek dismissals with prejudice of Plaintiffs where:

     (1) Plaintiffs failed to timely submit substantially complete PFSs (including required PFS-related materials);
     (2) Defendants served Warning Letters or Deficiency Letters stating that Plaintiffs' PFSs are delinquent or deficient and providing 30 days to cure;
     (3) Defendants and Plaintiffs are unable to resolve the delinquencies or deficiencies through individual meet and confers with Plaintiffs' counsel or a meet and confer with Plaintiffs' counsel and Plaintiffs' appointed PFS Liaison Counsel; and
     (4) Defendants present to the Court at the next Case Management Conference or specially set hearing the "Court Call List" of Plaintiffs who failed to cure delinquencies or relevant deficiencies.

In accordance with this process, Defendants provided the PLC and PFS Liaison Counsel with the "PFS Compliance Meet and Confer List" on May 10, 2024. On May 17, 2024, the Parties, including the Plaintiffs' appointed PFS Liaison Counsel, relevant Designated Defendants, and individual Plaintiff's counsel, met to conduct the PFS Compliance Meet and Confer. The PFS Compliance Meet and Confer List included 793 Plaintiffs whom Defendants allege failed to submit a substantially complete PFS after receiving a Warning Letter or Deficiency Letter from a Designated Defendant and who failed to cure their noticed delinquencies and deficiencies or failed to participate in the meet and confer process. As a result of the PFS Compliance Meet and Confer on May 17, 2024, Defendants agreed to remove 370 plaintiffs from the Court Call List to account for recently dismissed plaintiffs, to allow further follow up for other plaintiffs, and to account for what Plaintiffs refer to as "nonqualifying injuries."

In addition, 171 Plaintiffs on Defendants' original PFS Court Call List of cases to be dismissed with prejudice, are either already included in Plaintiffs' Leadership's Omnibus Motion for Leave to Dismiss Non-Ovarian, Uterine, or Endometrial Cancer Cases Without Prejudice [ECF No. 650] or Plaintiffs indicate have similar facts which will be included in related motions, for which the Court set a briefing schedule, including Defendants' joint response which is due on June 5, 2024 [ECF No. 658]. The joint Defendants plan to oppose Plaintiffs' motion by the deadline. Defendants assert these Plaintiffs are ripe for dismissal through the CMO 9 process now and that the pending Omnibus Motion to Dismiss does not relieve Plaintiffs of their obligations under CMO 9 which they are attempting to circumvent and obtain a dismissal without prejudice. Plaintiffs assert that CMO 9 Court Call for Warning or Deficiency Resolution allows for "appropriate court relief including issuing an order to show cause, compelling production and/or up to dismissal with or without prejudice." Plaintiffs assert that as briefing is pending for a dismissal without prejudice that any decision as to these Plaintiffs under CMO 9 should be stayed pending the Court's ruling on the Omnibus Motion to Dismiss. The parties reached a negotiated agreement to remove these Plaintiffs from the May Court Call List pending the outcome of the pending motion, but Defendants reserve the right to seek a dismissal *with* prejudice of these cases under CMO 9 following the Court's decision on the motion.

The resulting Court Call List, attached as Exhibit A, identifies the 423 remaining cases Defendants ask the Court to dismiss with prejudice per CMO 9. This list includes the following deficiencies:

1. Failure to timely cure a noticed delinquency (i.e., failure to serve a PFS or at least one authorization)
2. Failure to respond to a Deficiency Letter
3. Missing document productions (Sec. IX)
4. Missing or incomplete authorization(s) (Sec. XI)
5. Failure to adequately identify damages claimed (Sec. V)
6. Failure to adequately identify products alleged to have caused injury (Sec. VI)
7. Failure to adequately identify defendants against which plaintiff is asserting claims (Sec. VI)
8. Failure to identify capacity in which named defendants are being sued (Sec. VI)

CMO 9 dictates that no briefing may be submitted on this matter. Therefore, the Parties' positions relative to each plaintiff are included in a chart, attached as Exhibit A. In addition, in support of this request, Defendants will file via ECF, a separate Joint Motion to Seal the Warning Letters, Deficiency Letters, and related correspondence among counsel, if any, sent relating to these Plaintiffs, should the Court want to review any of the individual Plaintiff files. For submissions, the Parties are willing to provide these files to the Court via ShareFile for ease of the Court's review. .

Defendants expressly state this Court Call List is not a representation as to the substantial completeness of all plaintiffs whose PFS deadlines passed before May 10, 2024. Defendants' review of the PFSs served to date remains ongoing, and therefore Defendants expressly reserve their right to seek the dismissal of any cases for failure to comply with PFS obligations under CMO 9.

   b.   ***Service of Short Form Complaints through MDL Centrality Platform***

In an effort to streamline the service of Short Form Complaints ("SFC") to counsel of record, as well as provide more accurate and transparent reporting to both sides, the parties submitted CMO 11 to the Court and the Court entered that order on May 14, 2024. The Parties and Brown Greer—with assistance from the Court—are implementing the included protocol for service and maintenance of SFCs for all filed cases in MDL Centrality.

   c.   **Defendants' PFS Status Report**

      i.   **"Substantially Complete" PFSs as of May 15, 2024.** On January 26, 2024, the Court entered a Minute Order [ECF No. 415] requiring Defendants "to report in the … JSR … the percentage of those fact sheets that are substantially complete. … If the percentage of PFS that is substantially complete falls below 65% in any JSR, Defendants are required to identify the deficient PFSs in a spreadsheet for that batch." At the April 11, 2024, hearing, the Court suggested it no longer required Defendants to report percentages of PFSs that are substantially complete or a list of Plaintiffs who are not substantially complete. Instead, Defendants provide below a status report on the PFS submission and review process to date below. As of Wednesday, May 15, 2024:

         1.   PFSs have been submitted and the deficiency review process is ongoing for more than 6,100 plaintiffs.
         2.   35% of all PFSs due by May 15, 2024 (2,862 out of 8,300) failed to submit any PFS and/or Authorization at all.

      ii.   **Global PFS-Related Discovery Issues.** Plaintiff and Defense leadership met and conferred regarding several issues identified in a large number of PFSs through the PFS review process. These issues require guidance from the Court. Some are disputed and ripe for the Court's consideration, and for

others, attempts to negotiate remain ongoing, but the parties want to advise the Court of the potential discovery dispute. This list is non-exhaustive and other issues may be raised in the future.

The currently identified "global" issues are described below:

1. **Plaintiffs Attempt to Circumvent CMO 9 by Submitting Entirely Blank PFSs.** Certain Plaintiffs' firms are uploading entirely or nearly blank PFSs by their deadline to submit the PFS, which has the result of delaying receipt of a PFS Warning Letter and gaining additional time to comply with their PFS obligations. This is because it takes some reasonable amount of time for Defendants to review all PFSs, realize some are blank, and send Warning Letters providing 30 days to cure from the date of the Warning Letter, rather than it being a more automated process when no PFS at all is served by the deadline. Defendants identify Plaintiffs who are eligible for Warning Letters by using reports from MDL Centrality that identify Plaintiffs who have served a document styled as a PFS as of a certain date. By uploading blank or nearly blank PFSs, Plaintiffs avoid being sent automated timely Warning Letter despite serving what amounts to submitting no PFSs at all. Plaintiffs' leadership agree that submissions of blank PFSs, unless due to technical error outside of counsel's control, are inexcusable.

   As of May 16, 2024, the operative PFSs of 65 plaintiffs are entirely blank PFSs. This is unacceptable. Accordingly, Defendants ask the Court to find that any Plaintiff who submits a blank or nearly blank PFS is on notice from the date of submission of that PFS that they have 30 days from their PFS deadline to provide a substantially complete PFS, regardless of when Defendants deliver a Warning Letter. Defendants will seek sanctions against the firms who continue this practice.

2. **Plaintiffs Refusal to Provide Quantum of Damages.** The PFSs contain several questions that trigger Plaintiffs to provide additional information when applicable. For example, if a Plaintiff asserts a claim for lost wages in the PFS (Section V.H.III), she must also provide her employment history for the ten (10) years prior to her claimed injury (Section II.C.I).

   Defendants assert that Plaintiffs must provide fulsome responses to damages-related questions to achieve substantial completion of their PFSs. While Plaintiffs assert they may not be doing so because they have not conducted a full review of all records, the answers Plaintiffs are providing often indicate that no review at all has occurred—either before the lawsuit was filed or the seven or more months since they filed their cases. Plaintiffs agreed to answer the heavily negotiated questions contained in the PFS. These responses amount to a failure to respond and deprive Defendants of what is

likely their only opportunity to assess the damages alleged by an individual plaintiff for an overwhelming majority of plaintiffs.

For example, several Plaintiffs assert a medical injury in Section V. A, but also represent that they are not claiming medical expenses in Section V.H.II such that they avoid providing any actionable evidence. Similarly, several Plaintiffs represent that they are claiming out-of-pocket expenses in Section V.H.IV but fail to provide an itemization of claimed out-of-pocket expenses.

Defendants ask the Court to instruct all Plaintiffs to provide the requested information within 60 days. Defendants suggest that the Parties coordinate to identify the plaintiffs at issue and the preferred method for delivery of such answers.

3. **Insufficient Identification of Products at Issue.** Defendants informed Plaintiffs' leadership that a large population of Plaintiffs represent in their PFSs that they used dozens of products at the same frequency (often weekly) and within an overlapping time period, often over decades. For example, Plaintiff Joel Daphna-Abel claims that she used 69 products every 6 weeks for 54 years. This is not credible and is not an isolated example.

The purpose of the Product Identification section of the PFS (VI.A.) that was heavily negotiated and agreed upon, is to identify (a) the relevant products that allegedly caused Plaintiff's injuries, (b) the Defendants that manufactured or sold those products, and (c) the relevant time period at issue such that the relevant formulation of the product can be identified. Based on Plaintiffs' current responses, this cannot be done, and Defendants are left not knowing which, if any, of their products are at issue in any given case and for what period of time their products allegedly were used.

Defendants brought this issue to Plaintiffs' attention during meet and confer efforts and Plaintiffs' leadership agree that these responses are not appropriate. This is not a matter of substantial completion; rather, this matter pertains to the sufficiency of Plaintiffs' discovery responses.

Without sufficient responses, Defendants are left with no mechanism to understand the allegations presented against them. This issue will crystalize when the Parties begin the bellwether selection process because the Parties will be unable to identify representative cases. Either Defendants will be asked to blindly choose cases wherein the allegations and relevant parties, products, and periods of use are unknown or the plaintiffs who responded in this way would be excluded from the pool, which also prejudices Defendants and allows plaintiffs in violation of their discovery obligations to park their cases at the back of the line. Exclusion from

6

the pool would provide a mechanism by which Plaintiffs are able to dictate the bellwether selection pool and encourage ambiguity in discovery responses.

As such, Defendants ask the Court to instruct Plaintiffs to answer with specificity within 60 days. Defendants suggest that the Parties coordinate to identify the plaintiffs at issue and the preferred method for delivery of such answers.

4. **Plaintiffs Refusal to Sign Amended PFSs Per the Federal Rules**. In some instances, Plaintiffs submitted amended PFSs to cure deficiencies identified by Defendants and failed to submit a signed declaration with the amended PFS, as required by CMO 9. Paragraph 6 of CMO 9 states "[e]ach completed PFS or amendment thereto shall be verified (signed and dated by the plaintiff or the plaintiff's representative) as if it were interrogatory responses provided pursuant to Fed. R. Civ. P. 33." Defendants negotiated for this requirement, in addition to the attorney verification, because the Plaintiff's signature amounts to a declaration, under penalty of perjury, that all of the information provided in the amended PFS (i.e., the operative PFS) is true and correct.

Defendants acknowledge that, by uploading a PFS to MDL Centrality, plaintiff's counsel "certifies that they have conducted a reasonable inquiry pursuant to the Federal Rules." CMO 9, ¶ I.3.e. But an attorney cannot verify the facts contained in what amount to interrogatory responses. Defendants assert that the description Plaintiffs provided to the Court of the purpose of the attorney verification contained in CMO 9 is incorrect and contravenes the Federal Rules of Civil Procedure. FRCP 33(b) ("Each interrogatory must . . . be answered . . . in writing under oath . . . [and] [t]he person who makes the answers must sign them"). Defendants ask the Court to enforce CMO 9 and require Plaintiffs to sign a declaration attesting to the accuracy and completeness of each PFS, including each amended PFS.

5. **Multiple Deficiency Letters**. The Parties are working to streamline the deficiency process and are in ongoing discussions such that this issue is not ripe for Court intervention. However, this issue may be raised at the next Court Management Conference.

Defendants understand that Plaintiffs are frustrated because they are receiving new amended Deficiency Letters each time their PFS is amended. Defendants would agree not to send multiple deficiency letters but believe CMO 9 requires it, as the letter provides notice and thirty (30) days to cure the deficiency before Defendants can move for dismissal. *See* Section 7(a)(ii-iii) ("[i]f any plaintiff fails to serve a substantially complete PFS, serve the appropriate records,

or fails to provide applicable authorizations, the defendants shall designate a single defendant to serve a Deficiency Letter on that plaintiff and notify the plaintiff's attorney of record and/or their designated attorney (if applicable), as well as the PLC or their designee, of the failure to serve a substantially complete PFS and/or an authorization. Plaintiffs who are served with a Warning or Deficiency Letter, shall have thirty (30) calendar days from service of the Letter to serve a substantially complete PFS, and/or serve the appropriate records and/or record authorizations in accordance with this order and/or to serve any objections to the Letter").

Defendants acknowledge, however, that CMO 9 did not contemplate a situation where new deficiencies are identified in amended PFSs (*e.g.*, deleting factual information provided in the original PFS on the basis that they believe it is not relevant; filling out the original PFS as the user of the product only to learn that person is deceased and it should be completed by a personal representative). By doing so, Plaintiffs are elongating the deficiency process because Plaintiffs are given 30 days to cure after each Deficiency Letter is served. Plaintiffs argue that it is taking months before a PFS can be substantially complete because the clock resets with each letter. Defendants are obligated to review several complete PFSs (*i.e.*, a Defendant must review every response because the amended sections are not delineated or limited to the responses wherein a deficiency was initially identified).

Both sides agree it is not ideal, but Defendants are concerned about giving each plaintiff adequate notice prior to seeking a dismissal with prejudice. The Parties are working to utilize MDL Centrality to assist in streamlining this process but the process rests on Plaintiffs providing accurate responses.

6. **Defendants' Reply to Plaintiffs' Response to Defendants' PFS Status Report**. Defendants will respond to Plaintiffs' positions and/or objections below at the status conference, if the Court so requests, as Defendants did not receive Plaintiffs' PFS section, which added six new pages, until 4 p.m. CST the day it was due, and therefore did not have sufficient time to respond to each point.

Defendants are entitled to raise general discovery disputes with the Court, no differently than Plaintiffs have done in Section IV (i.e., Discovery Served on Defendants) and on many other occasions. The Court's guidance on these discovery disputes will apply to a large number of Plaintiffs (compared to case-specific deficiencies) and therefore, will be instructive for the parties to manage the Plaintiff Fact Sheet deficiency review process moving forward. Moreover, Defendants will be prepared to raise specific

examples relating to global discovery disputes outlined above, should the Court want such examples.

d. **Plaintiffs' Response, to Defendants' PFS Status Report**

    i. **"Substantially Complete" PFSs as of May 15, 2024.**

        a. Plaintiffs understand Defendants ongoing obligation to report to Court regarding substantially complete fact sheets. CMO 9 contemplated a process to address PFS deficiencies and dismissals. That process is working. For many cases, the Warning Letters or Deficiency Letters are cured within the 30-day cure or 30-day meet and confer periods described jointly above.

        b. When negotiating CMO 9, the parties also specifically contemplated that the Third-Party Vendor would be utilized for service of both PFS by Plaintiffs and PFS Warning/Deficiency Letters by Defendants. It was not until CMO 11 was negotiated and is now being applied that Defendants are beginning to utilize the platform. Until the initial deadlines for CMO 11 expire and sufficient data is available thru the Third-Party Vendor for Short Form Complaints, Service Dates, Plaintiff Fact Sheet responses, PFS Warning and PFS Deficiencies, the parties have no transparency into the data provided as to submissions, warnings, or deficiencies.

        c. Plaintiffs own tracking does not match Defendants' reported numbers. Future reliance on BrownGreer as the Third-Party for transparent data tracking will assist the parties in this process as well as reporting on the substantially complete threshold for PFS.

    ii. **Global PFS-Related Discovery Issues.** Plaintiff and Defense leadership met and conferred regarding several issues identified in a large number of PFSs through the PFS review process. Several of these issues require guidance from the Court as disputes remain. On others, the Parties have successfully reached resolution as outlined below.

The currently identified "global" issues are described below:

    1. **Global Issues the Parties Resolved**

        a. The Parties met and conferred and, as of May 1, were able to reach resolution, in part thru language incorporated into CMO11, on the topics below. At this time, Defendants have not withdrawn pending PFS Deficiencies for these global issues but indicated their intention to do so following the May 31 Case Management conference.

9

      i.   The Parties will coordinate on DocuSign Verification deficiencies.

      ii.   The Parties agreed to resolve ongoing deficiencies regarding Insurance Authorizations which will only need to be provided if a Plaintiff's response/record indicates relevant insurance company or if requested due to later-acquired record implicates insurance company. If there is no evidence of insurance use/relevance in PFS, Defendants will not identify a Plaintiff's failure to complete an Insurance Authorization as a Deficiency.

      iii.   The Parties agreed to resolve deficiencies related to identification of a Healthcare Facility instead of a specific Healthcare Provider on an Authorization. Counsel can provide information indicating treatment was at a specific facility and not with an individual provider to resolve the deficiency.

      iv.   The Parties agreed to resolve deficiencies related to specificity of dates by agreeing that Month/Year were sufficient on all requested dates other than: Injury diagnosis, date of birth and date of death (if applicable).

      v.   The Parties agreed that deficiencies relating to the phrase "N/A" or "Not Applicable" would involve those answers being treated as "no" or "none."

b.  Plaintiffs anticipate that the withdrawal of these general deficiencies will resolve a volume of outstanding PFS Deficiency disputes between the parties.

2.  **Plaintiffs Attempt to Circumvent CMO 9 by Submitting Entirely Blank PFSs.** Plaintiffs believe that Defendants should identify the firm or firms they indicate are gaining additional time to comply with CMO 9 by proceeding as described above. Plaintiffs' Leadership understands Defendants position and has ongoing outreach to all counsel to alleviate this concern. However, to the extent the blank PFS (or nearly blank PFS) is due to a technical issue, the Parties have jointly agreed to address resolving those issues with BrownGreer's involvement. It is unclear from the explanation provided by Defendants what volume of cases are being submitted as blank or nearly blank to gain additional time as opposed to technical issues or other easily resolved concern. Plaintiffs oppose the arbitrary obligation of a deadline not previously imposed to address entirely blank PFS as these fall within the PFS Warning letter process already underway thru CMO 9.

3. **Plaintiffs Refusal to Provide Quantum of Damages.** Plaintiffs have an ongoing obligation to provide information thru discovery and the responses provided thru the CMO 9 processes and the Plaintiff Fact Sheet are provided to the best of their recollection. Defendants are conflating multiple questions, combinations of answers and what they term "partial responses" into a refusal to provide Quantum of Damages. These are individual deficiency issues on separate questions that are not related in the Plaintiff Fact Sheet. Defendants want to use the information in a related fashion but answers that Defendants find to be inconsistent or are in conflict are not a refusal to provide information as requested in the fact sheet. Without a specific list of Plaintiffs to whom this category of "deficiency" applies, Plaintiffs find it improper to request imposition on a further deadline beyond those in CMO 9 where a Plaintiff has provided the information requested.

4. **Insufficient Identification of Products at Issue.** Defendants misstate the frequency of use and overlap in Identification of Products at issue in this case. Plaintiffs have identified Defendants and their associated products in the Short Form Complaint. Plaintiffs have identified Products, their associated Products and the timeframes of use in the Plaintiff Fact Sheet. Defendants misinterpret and display a mistaken understanding of the purchase, use and re-application of chemical hair relaxers in the position they are taking in relation to insufficient identification. Many Plaintiffs have used dozens of products in the decades-plus use of hair relaxers in their lifetime. Often the exact order in which those relaxers were used in a specific month/year format is difficult to convey going back in time. However, Plaintiffs are informing Defendants of their use to the best of their ability thru the limitations of the Plaintiff Fact Sheet.

The example Defendants provided can be used in context; the Plaintiff used 69 products, one at a time, every 6 weeks, over a 54-year period. This Plaintiff did not use them all at once, every six weeks. In this case it is the Deficiency itself or the question asked in the PFS which needs clarification – because the Plaintiff has provided an abundance of information.

Plaintiffs do not agree with Defendants interpretation of the stated purposed of the Product Identification section of the PFS (VI.A.). The PFS as a whole was intended to identify (a) the relevant products that allegedly caused Plaintiff's injuries, (b) the Defendants that manufactured or sold those products, and (c) the relevant time period at issue for each product.

Plaintiffs' leadership agree that responses to this section listing the exact same timeframe for use for multiple Products and Defendants is likely not appropriate. But this is an individual Plaintiff issue; not

11

a global issue. The fact sheet is not a memory test for each individual plaintiff and to the extend the Defendant, Product and timeframe of use are identified, Plaintiffs' discovery response is sufficient and substantially complete. Again, without a specific list of Plaintiffs to whom this category of "deficiency" applies, Plaintiffs find it improper to request imposition on a further deadline beyond those in CMO 9 in circumstances where a Plaintiff has provided the information requested.

5. **Plaintiffs Refusal to Sign Amended PFSs Per the Federal Rules**. CMO 9 does not require signature for Amended Plaintiff Fact Sheets. Plaintiffs were noticeably clear in negotiating CMO 9 that when providing a Plaintiff signed verification as well as the volume of authorizations Defendants were requiring, they were not going to continue going back to the Plaintiff for each and every minor answer change to address nit-picky deficiency cures (many for information identified elsewhere in the PFS or within the medical records also provided). Plaintiffs negotiated the Attorney Verification to address concerns about the need for multiple uploads of information or amendments to address deficiencies which do not impact the substantial completeness of a Plaintiff's Fact Sheet impeding participation in the MDL or possible dismissal under CMO 9 as Defendants seek to use technicalities and indiscriminate deficiencies to weed out a potential bellwether pool. Each Plaintiff has provided a Certification for their Plaintiff Fact Sheet – each Plaintiff believed their initial submission to be substantially complete (and still believes it to be so); Defendants ongoing march of needless deficiencies is no reason for the Plaintiffs' signed verification to be discarded as Counsel work to clarify and cure the PFS Deficiencies.

Plaintiff's counsel, thru upload of a PFS to MDL Centrality, "certifies that they have conducted a reasonable inquiry pursuant to the Federal Rules." CMO 9, ¶ I.3.e. Plaintiffs assert that the attorney certification contemplated under paragraph I.3.e of CMO 9 obviates the need for a plaintiff declaration attesting to the accuracy of plaintiff's responses in an amended PFS.

This issue was previewed for the Court during the November 17, 2023 hearing at Trans. 18:2-19:22 ("I mean, here's my feeling. I'm going to enter the order. So when a plaintiff comes and says that, I'm going to enforce the order, which is then going to say, well, you can be impeached by that, right? Because you uploaded it, the order says that means you verified it. So now you're saying, you know, a different answer. You can be impeached by a verified response. This is a verified response. So you've got to live with that." To which Plaintiffs agreed.). Plaintiffs understood and agreed to abide by the uploaded PFS responses. Plaintiffs have met the obligations of CMO 9 as negotiated and have provided a PFS declaration.

Plaintiffs did not agree to provide a new Plaintiff declaration every time Defendants issued a deficiency notice in order to cure minute issues within otherwise complete Plaintiff Fact Sheets.

If Defendants valid concern, as raised during meet and confers and negotiation of CMO 9, is addressing a complete Plaintiff Fact Sheet, with an attorney verification and signed Declaration relating to the operative fact sheet at the time of bellwether depositions; this has been addressed in CMO 9. Defendants are allowed an additional Deficiency Letter once "a case is selected for inclusion in a bellwether selection pool." As discussed, Bellwether Plaintiffs could be obligated to provide additional Fact Sheet Declarations under a Bellwether Protocol in response to that additional PFS Deficiency Notice.

6. **Multiple Deficiency Letters**. The Parties are working to streamline the deficiency process and are in ongoing discussions such that this issue is not ripe for Court intervention. However, this issue may be raised at the next Court Management Conference.

Plaintiffs are frustrated because, contrary to the plain language of CMO 9, they continue to receive new/amended Deficiency Letters in response to amended PFS.

CMO 9 is clear: **Once a plaintiff responds to a Deficiency Letter, the Designated Defendant <u>shall not</u> send additional Deficiency Letters identifying deficiencies related to issues not identified in the original Deficiency Letter, unless a case is selected for inclusion in a bellwether selection pool. In such a circumstance, the Designated Defendant may pursue additional deficiencies from the PFS not identified in the original Deficiency Letter, and/or may follow up further on those previously identified as part of a plaintiff's continuing obligation to supplement discovery under the Federal Rules.**

Defendants continually conflate the existence of any deficiency with whether or not a Plaintiff Fact Sheet is substantially complete. This issue is not ripe for resolution with the Court – and likely will not be until all PFS, PFS Warning and PFS Deficiency information is available thru the Third-Party Vendor portal. If the majority of Plaintiffs are answering 85% of the Plaintiff Fact Sheet fulsomely as initially submitted; there is no need for amended PFS Deficiencies over and over and over again. The clause relating to Bellwether Plaintiffs was specifically negotiated to avoid the situation Plaintiffs find themselves in – having an ongoing series of 30-day deadlines to nit-pick each answer in the Plaintiff Fact Sheet to the Defendants satisfaction. CMO 9 does not require multiple deficiency letters; it requires Defendants to be thorough and clear in

their initial deficiency communication as to the extent of all deficiencies.

Defendants should not be seeking any dismissal where a Plaintiff has submitted a Plaintiff Fact Sheet which substantially complies with CMO 9. The issue raised by Defendants is generated to ensure a majority of Plaintiffs are not counted as "substantially complete" for bellwether selection and to arbitrarily generate a list of Plaintiffs for whom Defendants can seek dismissal even though the intent and requirements of CMO 9 have been met. It is clear from the Global-PFS related concerns being raised that a larger dispute over what "substantial compliance" means is looming in the future for Plaintiffs submitting PFS under CMO 9 and continuing to address multiple PFS Deficiency notices (or those seeking to not respond further as only one PFS Deficiency notice per Plaintiff was negotiated under CMO 9).

**IV.**   _Discovery Served on Defendants_ –
   **A.** _Status of December 1, 2023 Discovery Demands:_

On December 1, 2023, Plaintiffs served six (6) additional sets of discovery requests on each of the Defendants[1]. As the Court may recall from discussions at previous Case Management Conferences, each set of the discovery requests were broken down into discrete topics, specifically: Agreements and Manufacturing; Communications and Hair Relaxer Related Litigation; Marketing; Product Design, Development, Studies and Testing; Regulatory and Post-Market Surveillance; and Sales.

The parties have engaged in multiple rounds of meet and confers regarding Defendants' response and subsequent production related to these discovery requests and Plaintiffs believe that there are issues that may be ripe for discussion with the Court. A brief summary of these issues and Plaintiffs' requested relief are as follows:

| Defendant | Unresolved Discovery Issues | Plaintiffs' Requested Relief |
|---|---|---|
| Avlon Industries, Inc. | No Discovery Issues Currently Ripe for Court Intervention | None |
| Bell Beauty Enterprises/ House of Cheatham, LLC | Defendants have indicated that they will not produce documents responsive to RFP #2, Question 7. The parties met and conferred regarding standing objections to RFP #3, Question 9; RFP # 4, Question 4; and RFP #5, Question 10. On May 3, 2024, Plaintiffs | Plaintiffs respectfully request the Court to order a final date for meet and confer efforts and permission to file a motion to compel, if necessary. |

---

[1] Defendant McBride Research Laboratories, Inc was not served these additional discovery requests as they were still new to the MDL at the time the other defendants were served. Plaintiffs served McBride with these discovery requests on April 30, 2024. The parties are meeting and conferring regarding a production schedule.

| Defendant | Unresolved Discovery Issues | Plaintiffs' Requested Relief |
|---|---|---|
| | advised that they would inform House of Cheatham, LLC's counsel, by May 6, 2024, if they could limit the broad requests in RFP #3, Question 9; RFP # 4, Question 4; and RFP #5, Question 10. To date, House of Cheatham LLC has not yet received a response from Plaintiffs on whether they will narrow these broad requests. | |
| L'Oréal USA | Defendants have indicated that they will not produce documents responsive to RFP #2, Question 7; and RFP #3, Question 9.<br><br>Also, please see section IV.A.1 below. | Plaintiffs respectfully request the Court to order a final date for meet and confer efforts and permission to file a motion to compel, if necessary. |
| Luster Products, Inc. | No Discovery Issues Currently Ripe for Court Intervention | None |
| McBride Research Laboratories, Inc. | No Discovery Issues Currently Ripe for Court Intervention | None |
| Namaste Laboratories, Inc. | No Discovery Issues Currently Ripe for Court Intervention | None |
| Revlon | The Parties continue to meet and confer over disputed issues and anticipate matters will be ripe for judicial intervention at the next CMC. Plaintiffs have concerns regarding the length of time the meet and confer process is taking. | Plaintiffs respectfully request the Court to order a final date for meet and confer efforts and permission to file a motion to compel, if necessary. |
| Sally Beauty Supply LLC | No Discovery Issues Currently Ripe for Court Intervention | None |
| Strength of Nature LLC | No Discovery Issues Currently Ripe for Court Intervention | None |

1. **L'Oréal USA** –
   *Plaintiffs' Position*:

   The PSC served their initial set of interrogatories on the L'Oréal Defendants on June 27, 2023. In compliance with the Court's minute entry dated July 14, 2023 (*see* ECF No. 161), L'Oréal USA served responses to Interrogatory Nos. 2 and 3 on July 18, 2023 along with their

verified response on July 21, 2023; those interrogatories requested the name of each brand and product of L'Oréal's hair relaxer products. At that time, L'Oréal only provided information related to their post-2007 hair relaxer products, a limitation that was not known to Plaintiffs at that time. L'Oréal identified a total of 5 brands and 27 products.

Subsequently, through the meet and confer process and the 30(b)(6) deposition of L'Oréal's corporate representative, Plaintiffs learned that L'Oréal had not produced any information about pre-2007 brands and products and refused to do so. Accordingly, plaintiffs filed a Motion to Compel with the Court on March 25, 2024 (*see* ECF No. 545), which was granted by the Court on April 9, 2024. The Court's order required L'Oréal to file a certified supplement by April 30, 2024 identifying further brands/ products, if any. L'Oréal complied with that order and newly identified eighty-eight (88) additional hair relaxer products and twenty-one (21) additional hair relaxer brands.

The new identification of these brands and products that have long been known by the L'Oréal Defendants but not disclosed to Plaintiffs until recently, affects the completeness of L'Oréal's responses to Plaintiffs' First Set of Request for Production and Plaintiffs' First Set of Interrogatories. Specifically, those requests, served almost a year ago in June 2023, requested categories of documents and information concerning the hair relaxer brands identified in Interrogatory Nos. 2 and 3. Not only had L'Oréal failed to identify the 88 hair relaxer products and 17 new hair relaxer brands to Plaintiffs until April 30, 2024, they had also failed to provide responses concerning those products to the rest of Plaintiffs' First Set of Interrogatories and First Set of Document Requests, notwithstanding this Court's order that "[a]ll production in response to the first round of written discovery shall be completed by defendants by 2/29/24." (*See* ECF No. 352; 12/27/23 Docket Entry). Those responses are still outstanding for the newly identified products and brands.

Plaintiffs have asked that by May 29, 2024, L'Oréal USA supplement all responses to Plaintiffs' discovery propounded in June of 2023 related to the sale and distribution of its hair relaxer products, specifically production of responsive documents including but not limited to artwork/labels, instructions for use, regulatory communications, ingredients and formula for each product/kit component, patents and patent applications of its hair relaxer products. To date the L'Oréal Defendants have not committed to a date of production; therefore, Plaintiffs respectfully request that this Court order them to supplement all responses to include full information about the newly identified products and brands no later than June 15, 2024.

Further, there remains an issue with L'Oréal USA not producing documents in accordance with CMO 4, the ESI protocol, as well as the manner of collection of documents from custodians outside of the United States, however those issues will be addressed with Magistrate Finnegan or Special Master Grossman.

### L'Oréal USA's Position:

Plaintiffs' Position above materially misstates facts related to all of the issues set forth above. None of these issues is presented to the Court for resolution herein. Plaintiffs' narrative is unnecessary, gratuitous, and misleading. To the extent Plaintiffs wish to present a dispute to the Court for resolution they must comply with the Court's Order requiring them to file a separate brief affording L'Oréal USA the opportunity to respond with a brief of its own. L'Oréal USA will not further extend the length of this JSR by correcting each of the many misstatements set forth above.

### B. *Status of Go-Get Document Production from each Defendant*:

**Plaintiffs' Position:** At the April 11, 2024 Case Management Conference, Defendants indicated that certain responsive documents may be able to be produced in a "go-get" manner rather than through search terms or other ESI protocols. In accordance with the minute entry issued immediately following the April 11, 2024 CMC, Plaintiffs provided each Defendant with the list of outstanding discovery requests that are priorities on April 15, 2024. Defendants were then directed to respond on April 23, 2024 identifying the responsive "go-get" documents that were readily available and can be produced without the use of search terms, as well as identify that other documents may be located through the use of search terms. A summary of the status of each defendant's response and subsequent production is provided below. A chart providing a more extensive status of each request and response is attached as Exhibit B.

| Defendant | Unresolved Discovery Issues | Plaintiffs' Requested Relief |
|---|---|---|
| Avlon Industries, Inc. | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Defendant has agreed to provide any outstanding Go-Gets by July 16, 2024.* | None |
| Bell Beauty Enterprises/ House of Cheatham, LLC | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Defendant has agreed to provide any outstanding Go-Gets by July 2, 2024.* | None |
| L'Oréal USA | On April 30, 2024, L'Oréal USA disclosed 88 hair relaxer products and 21 hair relaxer brands. Thus, even Go-Get productions that | Plaintiffs respectfully request the Court order L'Oréal to clearly state whether each category of |

| Defendant | Unresolved Discovery Issues | Plaintiffs' Requested Relief |
|---|---|---|
| | previously were represented to be complete are now deficient as it relates to the 88 products and 21 brands.<br><br>The parties have exchanged multiple correspondence on this issue wherein Plaintiffs identified multiple priority discovery requests such as formularies, safety testing, instructions for use and regulatory filings as well as sought confirmation regarding L'Oréal's positions. However, L'Oréal has stated "[t]o the extent these documents are "go-gets," L'Oréal USA will produce documents, if any, to extent they have not already been produced." Therefore, it still is unclear if L'Oréal deems certain categories of documents "go-gets" and accordingly, whether Plaintiffs will receive production. | documents include any "Go-Gets" and a final date for production of "Go-Gets," including those related to the 88 new hair relaxer products and 21 new relaxer brands. Plaintiffs also request the Court order a final date for meet and confer efforts. Finally, Plaintiffs request permission to file a motion to compel, if necessary. |
| Luster Products, Inc. | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Defendant has agreed to provide any outstanding Go-Gets by June 28, 2024.* | None |
| McBride Research Laboratories, Inc. | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Discovery has not yet advanced to this stage.* | None |
| Namaste Laboratories, Inc. | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Defendant has agreed to provide any outstanding Go-Gets by June 14, 2024.* | None |
| Revlon | Revlon has objected to various terms, such as "interaction testing" and "Standard Operating Procedures" and has requested to meet and confer to discuss these terms.<br><br>Revlon has requested to meet & confer regarding asset purchase agreements.<br><br>During the meet and confer process, Plaintiffs have requested that Revlon provide Bates numbers for any category where | Plaintiffs respectfully request the Court to order a final date for meet and confer efforts and permission to file a motion to compel, if necessary. |

| Defendant | Unresolved Discovery Issues | Plaintiffs' Requested Relief |
|---|---|---|
| | Revlon has indicated they have already produced documents. Plaintiffs have yet to receive a response from Revlon. | |
| Sally Beauty Supply LLC | No Go-Get issues currently ripe for Court intervention.<br><br>*Defendant has agreed to provide certain outstanding Go-Gets by May 31, 2024.*<br><br>Plaintiffs asked questions about Sally Beauty's responses related to the existence and/or identification of third parties involved in manufacturing, testing, etc. as to the potential other Go-Gets that Plaintiffs requested. The parties intend to meet and confer about this topic. | None |
| Strength of Nature LLC | No Go-Get issues Currently Ripe for Court Intervention.<br><br>*Defendant has agreed to provide any outstanding Go-Gets by a date certain specified in a letter to Plaintiffs.* | None |

**_Defendants' Position:_** Defendants disagree that Plaintiffs provided a "list of outstanding discovery requests" in "accordance with the minute entry." Rather, Plaintiffs sent letters describing nearly all of the outstanding discovery topics—not just "priorities" and not specific "discovery requests." Nevertheless, Defendants cooperated with Plaintiffs in identifying "go gets" and have been rolling out productions where possible. Defendants dispute that Exhibit B accurately reflects the status of each Defendant's response and subsequent production,[2] and dispute that the chart above is accurate. These matters are not ripe for discussion with the Court.

C. **_Status of the Production of Ingredient and/or Fragrance Lists from each Defendant_**

    a. <u>Avlon Industries, Inc.:</u> On April 26, 2024, Avlon provided the Fifth Supplemental Responses to Plaintiffs' First Set of Interrogatories with a more comprehensive list of the names of Avlon's Hair Relaxer products (Interrogatory No. 3) and the associated dates that those Relaxers have

---

[2] For example, Exhibit B includes requests that were not included in Plaintiffs' letter to some Defendants, then claims that the Defendant's response was "silent" as to that request. Exhibit B also fails to list a number of other requests that Plaintiffs made of Defendants that at least some Defendants agreed to accommodate, where possible.

been available (Interrogatory No. 4). However, there are still a few gaps associated with the names of the Relaxers and the dates these Relaxers have been available. Additionally, the answers provided to date, in conjunction with the answers to Interrogatory No. 6 (ingredients), as well as the documents produced, also have a few inconsistencies and/or gaps. Plaintiffs are in the process of comparing the written discovery responses with the documents produced in order to evaluate the extent to which discrepancies exist.

With respect to fragrances, Avlon has produced lab notebooks and other documents listing formulas with fragrances for its relaxers. However, Avlon has not produced all relevant lab notebooks. Additionally, the documents Avlon created listing historical formulas with fragrances are inconsistent with their production of documents, including lab notebooks, production batch reports and certificates of analysis. Therefore, Avlon's production of fragrances is incomplete.

**Avlon's Position**

Since February 29, 2024, Avlon has produced the relevant lab books, formula sheets, and ingredient lists regarding its hair relaxers and hair relaxer system recommended conditioners, shampoos, and gels that it has located, which includes information back to 1991. Avlon also reported that it has not located information related to formulas and ingredient lists between 1985 and 1991 but continues to search for that information. Avlon also provided clarifying information regarding external names and name changes for its hair relaxer products over time.

Avlon has also provided a number of documents related to fragrances used in its hair relaxer system products including a letter from IntraRome regarding contents of the fragrance most frequently used by Avlon in its hair relaxer products (produced on 11-13-23), a list of its fragrance suppliers with contact information (produced on 12-15-23), materials from Avlon's fragrance suppliers submitted in conjunction with Avlon's EU product registry submission (produced on 2-29-24 and 3-1-24); and materials received from Avlon's fragrance suppliers along with a timeline of when each fragrance was used (produced on May 3, 2024).

Plaintiffs have already made use of the supplier list provided by Avlon when they subpoenaed at least one of Avlon's fragrance suppliers in March 2024.

Avlon, further, joins other defendants in their objection to the ongoing recitation of discovery discussions in these joint status reports. Avlon likewise disputes Plaintiffs' characterization of discovery produced by Avlon outlined in their plaintiffs' specific addendum. Avlon believes

that discovery issues should be raised in the manner laid out by this court rather than through inane and inaccurate statements.

b. <u>Beauty Bell Enterprises and House of Cheatham, LLC</u>: Plaintiffs identified twelve (12) specific formula IDs for whom formulas appear to be missing on March 20, 2024. On May 3, 2024, House of Cheatham produced additional documents that it asserts contain all documents in its possession related to formulas, ingredients, and fragrances. Plaintiffs are currently reviewing House of Cheatham's most recent production.

For products where House of Cheatham has produced a master formula that shows changes to that product over time, House of Cheatham has not produced any documents discussing or analyzing the changes (memoranda, emails, reports, meeting notes, meeting agenda, etc.), despite Request 9 of the First set of RFPs asking for drafts and final versions of policies, procedures, SOPs and/or protocols related to product formulation.

*House of Cheatham LLC's Position*:

House of Cheatham LLC states that it has produced SOPs pursuant to the "go get" schedule that it has agreed to with plaintiffs and that the remainder of the documents referenced within this paragraph, if any exist, will be produce pursuant to an agreed upon ESI protocol.

c. <u>L'Oréal USA.</u>: As discussed in Section IV.A.1, above, on April 30, 2024, in response to the Court's April 9, 2024 Order concerning Plaintiff's Motion to Compel, L'Oréal USA supplemented responses to Interrogatory Nos. 2 and 3, identifying eighty-eight (88) new hair relaxer products and twenty-one (21) new hair relaxer brands. L'Oréal USA has not provided complete ingredient and fragrance lists for the products identified in their response to interrogatory 3.

*L'Oréal USA's Position*:

L'Oréal USA did not identify "new" hair relaxer products. Rather, pursuant to the Court's Order requiring it to do so, L'Oréal USA provided a list of products nearly all of which it is informed and believes were distributed by legacy entities more than 25 years ago. To the extent L'Oréal USA is in possession of ingredient and fragrance lists for those products it has agreed to produce them.

d. <u>Luster Products, Inc.</u>: The parties have met and conferred regarding the ingredient lists and Luster has produced all of the hard copy ingredient lists and fragrance lists within its possession, custody or control. Luster

agreed not to withhold any ingredient lists or fragrance lists for its hair relaxer products.

e. <u>McBride Research Laboratories, Inc.:</u> Plaintiffs have received partial information from McBride concerning ingredients and/or fragrances for all products with the exception of the texturizer product and kit. The parties continue to meet and confer.

f. <u>Namaste Laboratories, Inc.:</u> Plaintiffs have received partial information from Namaste concerning ingredients and/or fragrances. Plaintiffs included these topics in their list of "go-gets" and Namaste has stated that responsive documents will be produced on June 14, 2024.

g. <u>Revlon:</u> Defendant Revlon has stated they have produced all available documents with relevant ingredient/fragrance information in Revlon's possession after a reasonable search and request to their fragrance suppliers. Plaintiffs believe there is still outstanding information and are coordinating with defendants to complete a 30(b)(6) deposition to address the missing information or through other mutually agreeable discovery methods.

h. <u>Sally Beauty Supply LLC</u>: Sally Beauty has substantially completed production of their product ingredient list as of February 29, 2024 and as recently as May 1, 2024, Sally Beauty has committed to producing all of their fragrance lists in their possession. To date, Sally Beauty has made productions that include their fragrance list.

i. <u>Strength of Nature LLC</u>: Strength of Nature has produced documents containing their ingredient lists and this appears to be substantially complete from 2010 onward. However, no information has been produced prior to 2010 due to product line purchases and corporate re-organization. Meet and confer are ongoing about verification of complete materials as these were maintained in hard copy format. Arrangements for inspection of the hard copy materials are ongoing. Strength of Nature LLC and Plaintiffs are presently coordinating the in-person inspection of the hard copy materials, and endeavor to have a date for the inspection in place by early June.

**D. _ESI Status_**:

At the April 11, 2024 Case Management Conference, three (3) topics were discussed before Judge Finnegan: (1) legacy system discovery, (2) efforts to reach agreement on search methodology for each defendant, and (3) the appointment of a Special Master.

a. Legacy System Discovery: In accordance with the minute entry issued following the April 11, 2024 CMC, a video hearing was set for May 7,

2024 (*see* ECF No. 599). The parties filed a Joint Status Report on April 25, 2024 (*see* ECF No. 629). Defendants Avlon, Luster, McBride, Namaste, Sally Beauty, and Strength of Nature had resolved all remaining Legacy System issues. Defendants Revlon, Bell Beauty and House of Cheatham, and L'Oréal are to provide updated and final responses to Plaintiffs' second set of interrogatories by May 24, 2024. In accordance with the minute entry dated May 9, 2024, the parties are to meet and confer by May 31, 2024 and file a new JSR by June 3, 2024 if there are remaining unresolved issues (*see* ECF No. 643).

b.  Search Methodology: A video hearing was held on May 7, 2024. With regard to the issue of collection date range, the parties were in agreement that the range begins 5 years prior to a Defendant's sale of hair relaxer products. For all Defendants other than Revlon, the collection date range will end the date the defendant was first sued in this litigation. For Revlon, it will end on the last date Revlon sold hair relaxer products. For all other search methodology disputes, the parties are to continue their efforts to resolve these and provide a defendant-by-defendant JSR by June 6, 2024.

c.  Special Master: In accordance with the minute entry issued immediately following the May 7, 2024 hearing, Professor Maura Grossman has been selected as the Special Master overseeing ESI discovery (*see* ECF No. 645). The parties were to submit a proposed Special Master appointment order to the Court by May 21, 2024, but asked the Court for an extension to May 24, 2024 allow further negotiations on same.

E.  ***Status of Document Production to Date:***

| Defendant | # of Documents Produced as of February 29, 2024 | Total Documents Produced to Date | # of Documents Produced in Last 77 Days |
|---|---|---|---|
| Avlon Industries, Inc. | 5,604 | 12,488 | 6,884 |
| House of Cheatham, LLC | 18,446 | 24,166 | 5,720 |
| L'Oréal USA | 1,005 | 18,179 | 17,174 |
| Luster Products, Inc. | 3 | 5,979 | 5,976 |
| McBride Research Laboratories, Inc. | 30 | 30 | 0 |
| Namaste Laboratories, Inc. | 743 | 12,750 | 12,007 |
| Revlon | 755 | 1,083 | 328 |
| Sally Beauty Supply LLC | 1,871 | 7,513 | 5,642 |
| Strength of Nature LLC | 408 | 2,684 | 2,276 |
| TOTAL | 28,865 | 84,872 | 56,007 |

### F. *Defendant Specific Discovery Status*:

The parties do not believe that there are additional discovery related issues ripe for discussion at this Case Management Conference.

**Plaintiffs' Position:** In an effort to reduce the information provided in the body of the Joint Status Report, yet still keeping the Court apprised as to the current status of the parties' progress on discovery topics including: interrogatories, document requests and corresponding production, total document production to date, and depositions, the parties submit this update by way of addendum attached as Exhibit C. Despite the defendants' claim that this update is unnecessary, the PSC is mindful of the Court's direction to reduce reporting on details not yet ripe for discussion on the JSR and thus has attached this information as an addendum.

**Defendants' Position:** Defendants are mindful of the Court's instruction at the March 7, 2024 Case Management Conference to shorten the JSR and to include only information that requires action by the Court. See 3/7/24 Hr'g Tr. 54:4-16 ("I don't need so much detail . . . [T]here's just nothing I can do with that information"). For that reason, Defendants do not believe Exhibit C is necessary. Moreover, certain Defendants dispute the accuracy of many of the statements contained therein. Additionally, the extensive colloquy in this JSR regarding discovery "status" that includes disputed positions, many of which are not ripe for resolution, is unnecessary and improper. The Court instructed the parties to present discovery disputes in standalone briefing filed the Friday prior to the Conference. The inclusion of unnecessary discovery "status updates" in this JSR and the accompanying addendum complicates the submission of the JSR as the Parties spend inordinate time exchanging drafts correcting inaccuracies in sections of the report that are wholly unnecessary. Defendants respectfully request that the Court instruct Plaintiffs that unnecessary discovery "status updates" are not appropriate and should not be included in the JSR and further that any discovery disputes that are ripe for Court intervention be presented in separate standalone briefing.

Dated: May 23, 2024                          Respectfully submitted,

*/s/ Edward A. Wallace*                         Mark C. Goodman
Edward A. Wallace                        **BAKER & MCKENZIE LLP**
**WALLACE MILLER**               Two Embarcadero Center, Suite 1100 San
150 N. Wacker Dr., Suite 1100       Francisco, California 94111
Chicago, Illinois 60606                T: (415) 576-3080
Tel.: 312-261-6193                    mark.goodman@bakermckenzie.com
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*            *Defense Liaison Counsel and Counsel for*
                                      *Defendant Namasté Laboratories, LLC*

Diandra "Fu" Debrosse Zimmermann     Maurice Bellan
**DICELLO LEVITT LLC**               **BAKER & MCKENZIE LLP**
505 20th Street North - Suite 1500      815 Connecticut Avenue, NW
Birmingham, Alabama 35203          Washington DC 20006
Tel.: 312-214-7900                    T: (202) 452-7057

Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

maurice.bellan@bakermckenzie.com

Barry Thompson
**BAKER & MCKENZIE LLP**
10250 Constellation Boulevard, Suite 1850 Los
Angeles, CA 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

Colleen Baime
Laura Kelly
**Baker & McKenzie LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
colleen.baime@bakermckenzie.com
laura.kelly@bakermckenzie.com

*Counsel for Defendant Namasté Laboratories,
LLC*

Seth A. Litman
Irvin Hernandez
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
T: (404) 541-2900
Seth.Litman@ThompsonHine.com
Irvin.Hernandez@ThompsonHine.com

*Counsel for Keratin Defendants Keratin
Complex and Keratin Holdings, LLC*

Dennis S. Ellis
Katherine F. Murray
Nicholas J. Begakis
Serli Polatoglu
**ELLIS GEORGE CIPOLLONE O'BRIEN
LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com

kmurray@egcfirm.com
nbegakis@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI
LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI
LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.,
L'Oréal USA Products, Inc. and SoftSheen-
Carson LLC*

Lori B. Leskin
**ARNOLD & PORTER KAYE SCHOLER,
LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER,
LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Counsel for Defendants Strength of Nature
LLC; Strength of Nature Global LLC; and
Godrej SON Holdings*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham
LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises,
LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive – Suite 2950 Chicago,
Illinois 60606
T: (312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Abbot P. Edward
Melissa He
Erich J. Gleber

**HAWKINS PARNELL & YOUNG LLP**
275 Madison Avenue, 10th Floor
New York, NY 10016
eabbot@hpylaw.com
mhe@hpylaw.com
egleber@hpylaw.com

*Counsel for Defendants Revlon, Inc., Revlon*
*Consumer Products Corporation, and Revlon*
*Group Holdings LLC*

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St,
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
T: (312) 853-2666
kmccall@sidley.com

*Counsel for Sally Beauty Supply LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*