IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | MDL No. 3060<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>Magistrate Judge Sheila M. Finnegan<br><br>**This document relates to:**<br>All Cases |

## PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF CUSTODIAL FILES OF L'ORÉAL EMPLOYEES WHO WORK AT L'ORÉAL S.A.

Through this motion, Plaintiffs seek an order compelling Defendant L'Oréal USA, L'Oréal USA Products, Inc., and SoftSheen-Carson LLC (hereinafter collectively referred to as "L'Oréal USA") to produce documents from certain custodians who purportedly work for its parent company, L'Oréal S.A.[1] Plaintiffs submit that Defendants' refusal to produce these materials and take this dispute to this forum is a manifestly improper attempt to get a different result on an issue already thoroughly vetted by the District Court.

Indeed, Judge Rowland has already *twice* decided this exact issue—with this same Defendant—in Plaintiffs' favor. The first time was on Plaintiffs' motion to compel, where she ordered Defendant L'Oréal USA to produce documents in the possession of L'Oréal S.A. related to the creation, manufacturing, marketing, safety, and sales of its hair relaxing products. *See* Dkt 353 (Judge Rowland's Opinion on Motion to Compel) ("MTC Order"). The second was when she denied Defendant L'Oréal USA's request to reconsider that ruling. *See* Dkt. 499 (Judge Rowland's Opinion on Motion to Reconsider) ("Reconsideration Order"). Judge Rowland reviewed litigation conduct by L'Oréal USA and publicly-available materials about the corporate entities to determine

---

[1] L'Oréal S.A. is synonymous with L'Oréal Group and L'Oréal Groupe.

1

on the merits that Defendant L'Oréal USA sufficiently "controls" access to discovery materials in the possession of L'Oréal S.A.

In those opinions, Judge Rowland thoughtfully walked through the applicable test—the "closeness test"—for determining when a defendant must collect documents from its corporate parent. Dkt. 353 at 3-7. She meticulously weighed the closeness test factors in arriving at her opinion requiring L'Oréal USA to search for and produce certain categories of documents in the possession of L'Oréal S.A. *Id*. Moreover, in her denial of L'Oréal USA's motion to reconsider, Judge Rowland explicitly stated that her ruling was "not limited to any particular product or set of documents"—but should govern the "closeness" question for L'Oréal USA and L'Oréal S.A., in general. Dkt. 499 at 3 ("The Court was not focused only on whether the subsidiary and parent had a close relationship as to a particular product or set of documents. The predicate question — whether the two entities are sufficiently close — required the Court to look at the relationship altogether.").

Now, despite having twice lost this argument in front of Judge Rowland, L'Oréal USA stands upon its (rejected) argument and simply refuses to perform searches of custodial ESI files for the very types of documents Judge Rowland repeatedly found relevant and discoverable. This motion to compel should not be necessary.[2] Judge Rowland's prior rulings on this issue must be followed. Plaintiffs respectfully request that the Court order L'Oréal USA to search for and produce relevant documents from L'Oréal S.A.'s custodians.

---

[2] Plaintiffs' counsel has attempted to meet and confer with counsel for L'Oréal USA on multiple occasions on this issue, including most recently, on June 4, 2024, defense counsel clearly stated that L'Oréal USA would be drawing a hard line in the sand—refusing to produce any custodial documents for employees of L'Oréal S.A. and any employees in France. After their good faith consultations, the parties are unable to reach an accord.

**ARGUMENT**

I. **THE DISTRICT COURT JUDGE PREVIOUSLY COMPELLED SIMILAR INFORMATION BASED UPON A "CLOSENESS" FINDING**.

As stated above, the issue of whether L'Oréal USA must produce information in the possession of L'Oréal S.A. has already been (twice) ruled upon by Judge Rowland. As such, Plaintiffs adopt and incorporate by reference their arguments made in connection with their motion to compel (Dkt. 315 and 338) and their opposition to L'Oréal USA's motion to reconsider (Dkt. 472). Plaintiffs summarize those arguments and discuss Judge Rowland's prior rulings below.

A. **For Discovery Purposes, L'Oréal USA Controls the Relevant Information in L'Oréal S.A. Possession.**

As Plaintiffs previously argued, when a parent-subsidiary relationship exists, "the requesting party does not have to show that the subsidiary controls the parent, only that the subsidiary can obtain the parent's documents." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020). Once a subsidiary demonstrates "its ability to obtain requested information and documents" from its foreign parent corporation, the court need not "postulate the closeness of the relationship." *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-CV-01020-RLY, 2013 WL 4777206, at *6 (S.D. Ind. Sept. 5, 2013), *objections overruled*, No. 112CV01020RLYMJD, 2013 WL 12291530 (S.D. Ind. Nov. 26, 2013). For discovery, a party does not need actual possession of a custodian's documents "to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotations and citations omitted)). Nor does "[t]he location of the documents, whether within the territorial jurisdiction of the court

or not," matter for the inquiry. *Ledesma v. Marriott Int'l, Inc.*, No. 18 CV 3947, 2023 WL 2814762, at *2 (N.D. Ill. Apr. 6, 2023).

As described below, L'Oréal USA demonstrates all of the elements of "control" because documents are "in the possession of a non-party corporation with which it has some sort of relationship (i.e., as an affiliate, sister corporation, parent, or subsidiary)" reflected in: (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies." *Meridian*, 333 F.R.D. at 135–36; *see also* Dkt. 353 at 4 (MTC Order). As Judge Rowland explained when ruling L'Oréal USA must produce documents in L'Oréal S.A.'s possession, "[c]ourts weigh all the factors together to determine the closeness of the relationship. No factor is dispositive on its own. If the entities are sufficiently close, the responding party must produce documents sought from the possession of its affiliate." Dkt. 353 at 4 (MTC Order).

### 1. The Court Found L'Oréal S.A. and USA to have a Parent–Subsidiary Relationship.

Based on L'Oréal USA's corporate representative's testimony, Judge Rowland found that L'Oréal USA is a wholly owned subsidiary of L'Oréal S.A, and that this "parent-subsidiary relationship weighs in favor of closeness 'because of the [common] ownership situation, there often exists some intermingling of directors, officers, or employees, or business relations.'" Dkt. 353 at 5 (MTC Order) (quoting *In re Zantac (Ranitidine) Products Liab. Litig.*, 20-MD-2924, 2021 WL 1522449, at *7 (S.D. Fla. Apr. 16, 2021), and citing Dkt. 317 at 86 (Garrison Dep. at 250:8-23)).

### 2. *The Court Found Sufficient Commingling of L'Oréal S.A. and USA's Personnel.*

An overlap in management between corporate entities weighs in favor of a finding of control. *Meridian*, 333 F.R.D. at 136 (ruling that service on the board of directors of an affiliate non-party corporation by two senior executives of a party corporation weighs in favor of a finding of control). Here, Judge Rowland found that "Plaintiffs also show a marginal degree of commingling of personnel: L'Oréal U.S.A.'s current C.E.O. serves on the executive committee of L'Oréal S.A., while the current chair of the parent company's board of directors was the former C.E.O. of L'Oréal U.S.A. [315-3] at 5. While these facts do not establish a formal shared management structure, an overlap at the executive level 'suggests some measure of closeness.'" Dkt. 353 at 5 (quoting *Life Spine, Inc. v. Aegis Spine, Inc.*, No 19 CV 7092, 2020 WL 2219060, at *3 (N.D.Ill. 2020).[3]

### 3. *Information is Free-Flowing Between L'Oréal S.A. and USA.*

"[C]ourts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party" when "the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation." *Meridian*, 333 F.R.D. at 136 (quoting *Gerling*, 839 F.2d at 141 (3d Cir. 1988)). Here, this "free flow of information" and directives between L'Oréal USA and L'Oréal S.A strongly supports a finding of control. *See Meridian*, 333 F.R.D. at 136 (citing *Sanofi-Aventis v. Sandoz*, 272 F.R.D. 391, 396 (D.N.J. 2011)).

When considering this factor, Judge Rowland found it also weighed in favor of closeness, stating:

> L'Oréal S.A. applied for and secured the patent for hair relaxer products developed, sold, and distributed by L'Oréal USA, implying an exchange of documents in the ordinary course of business, as well as L'Oréal S.A.'s legal and financial stake in

---

[3] Additionally, L'Oréal USA's former CEO, Jean-Paul Agon, has served as Chairman of L'Oréal S.A.'s Board of Directors since 2011, and was also the CEO of L'Oréal S.A. for more than a decade. *See* Dkt. 338 at 11.

> the products involved in this case. See [317] at 107; [315-4]. L'Oréal S.A. also advertises those products (including U.S.A. brand Dark & Lovely) on its website, [335-1] at 13, tipping the scales toward closeness.

Dkt. 353 at 5-6 (*citing Life Spine, Inc.*, 2020 WL 2219060, at *3 ("evidence of . . . shared business purpose . . . weighs in favor of closeness.")). Judge Rowland also found closeness supported by the fact that "L'Oréal S.A. makes information permanently available to L'Oréal USA to (1) enable its Research, Innovation and Technology Department to implement 'cosmetovigilence and the quality of the formulas used within products' and (2) to provide documents and guides to ensure targets and goals are achieved." *Id*. at 6.

### 4. The Court Acknowledged that L'Oréal S.A. and USA Collaborated in the Manufacture of Hair Relaxers.

As Judge Rowland acknowledged, L'Oréal S.A. and L'Oréal USA "acted together in seeking [USPTO] approval" of a hair relaxer patent at the crux of Plaintiffs' product liability claims. Dkt. 353 at 5-6. As such, "[h]aving acted as one with [L'Oréal S.A.] in the course of the [patent] transaction," L'Oréal USA cannot now "assert that it does not 'control' the documents relevant to the transaction [i.e. the hair relaxer products]" because there is litigation. *Meridian*, 333 F.R.D. at 137 (quoting *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Companies, Inc.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983)). Collaboration is therefore demonstrated.

### 5. The Court found L'Oréal S.A. and USA to Both be Involved in the Litigation.

This Court found this factor supports a finding of closeness based upon the fact that L'Oréal S.A. has supplied highly relevant information regarding the products at issue in this litigation, including preparing L'Oréal USA's corporate witness for this case. Dkt. 353 at 7 (citing Dkt. 338 at 14 (Yung-Hing Dep.) at 27:7-28:14). As Judge Rowland explained: "[t]he fact that L'Oréal U.S.A. has produced documents from L'Oréal S.A. does not by itself establish a close relationship. But it is a strong indicator of closeness." *Id*.

6. *L'Oréal S.A. and USA Share Marketing.*

The joint marketing of L'Oréal S.A. and L'Oréal USA shows control. For example, L'Oréal S.A. owns L'Oréal USA's intellectual property. *See* Dkt. 315-2 (Garrison Dep.) at 106:11-107:14. L'Oréal S.A. advertises USA's hair relaxer brand Dark & Lovely on the S.A. website. *See* https://www.loreal.com/en/consumer-products-division/dark-and-lovely/ (last visited November 30, 2023). L'Oréal S.A. calls Dark & Lovely "an original pioneer in black [sic] beauty" that is "not only a powerhouse and staple in the community, but also a self-affirmation." *Id.* L'Oréal S.A. quotes L'Oréal USA in saying that Dark & Lovely exemplifies, "Representation matters. It is not only important to see people who look like us on the screen and in magazines, but just as important to be able to access products that are curated specifically for us—not just the idea of us. That's true in any industry, but imperative in beauty." *Id.* L'Oréal S.A. directs consumers of Dark & Lovely to L'Oréal USA. *See* https://www.softsheen-carson.com/Dark-and-Lovely (last visited November 30, 2023). Indeed, Judge Rowland premised her previous ruling on the fact that L'Oréal S.A. makes marketing information "permanently available" to L'Oréal USA. Dkt. 353 at 6.

7. *L'Oréal S.A. and USA Share Financial Resources.*

L'Oréal S.A. and L'Oréal USA share certain financial resources, including the unique role L'Oréal S.A.'s finance department provides L'Oréal USA in tracking information about products sold here, a function that L'Oréal USA specifically relied on to provide corporate designee testimony in this case. *See* Dkt. 315-5 (Yung-Hing Dep.) at 29:9-30:12. Likewise, L'Oréal S.A. tracks and reports on L'Oréal USA's financial operations in its half year and annual financial reports, including consolidated financial statements, L'Oréal USA's product acquisitions, suspension of sales pursuant to sanction imposed by the United States, and actuarial gains and

losses incurred in the United States. *See id.* at 117:21-118:11. The sharing of financial resources demonstrates control.

\* \* \*

As Judge Rowland concluded: "Weighing the above factors, the Court finds that L'Oréal U.S.A. and L'Oréal S.A. have a close corporate relationship such that L'Oréal U.S.A. is in 'control' of the documents possessed by L'Oréal S.A. that Plaintiff requests." Dkt. 353 a 7. As such, L'Oréal USA must produce relevant information in the possession of L'Oréal S.A.— including (but certainly not limited to) documents in the custodial files of the four L'Oréal S.A. employees Plaintiffs have identified.

### B. Plaintiffs Are Entitled to Documents from L'Oréal S.A. Custodians with Relevant Information.

After concluding that the closeness test had been satisfied, and that L'Oréal S.A.'s documents must be searched and produced, Judge Rowland held the following specific categories of information to be relevant and discoverable.

- "Foreign regulatory communications…to the extent they contain information about what [L'Oréal U.S.A.] knew about the alleged risks associated with their [hair relaxer] products, when they knew about those alleged risks, and whether those alleged risks were communicated" to regulators, distributors, and consumers." Dkt. 353 at 7; and

- "[F]oreign product labels and usage instructions, safety studies, and any commissioned scientific journal articles." *Id*. at 8.

As such, any documents relating to these specific issues—at the very least—have been explicitly found to be relevant and discoverable. That ruling is law of the case and may not be disturbed in this proceeding.

Judge Rowland's MTC Order, however, *does not* limit discovery to *only* those categories of information. In fact, the Reconsideration Order specifically states: "[t]he Court was not focused only on whether the subsidiary and parent had a close relationship as to *a particular product or set*

8

*of documents*. The predicate question — whether the two entities are sufficiently close — required the Court to look at the relationship altogether." Dkt. 499 at 3 (emphasis added). In fact, the only categories of information the Court has held to be not discoverable—under a proportionality analysis—are L'Oréal S.A.'s board minutes and organizational charts. Dkt. 353 at 9. Simply put, the Court has already determined that L'Oréal S.A. is an appropriate entity to search for any relevant and discoverable information—it is up to L'Oreal USA to show why an exception should be made for any particular custodian or document type.[4]

Currently in dispute is Plaintiffs' request for the following L'Oréal S.A. employees to be included in the initial set of custodians to be searched: Eric Bone, Stephene Diridollou, Vony Gonga, and Ronak Rughani. These four requested custodians serve and have served in various relevant disciplines throughout the L'Oréal corporate structure and have considerable tenure with L'Oréal entities. Their work involves matters relevant to the claims and defenses in this litigation and responsive to Plaintiffs' discovery requests.

But this Motion is not just about these four individuals[5]—because L'Oréal's refusal to search custodial files is not limited to, or based upon, anything specific to these four employees. Instead, L'Oréal USA has made it clear that it is drawing a line in the sand and pretending Judge Rowland's prior orders never happened, now refusing to search for or produce documents for *ANY* individuals who are employed by L'Oréal S.A. or its sister companies. Dkt. 631 at 3 ("L'Oréal USA states that they cannot be required to collect custodial files from L'Oréal S.A., a foreign

---

[4] L'Oréal USA has not even attempted to make a burden or proportionality argument with regard to the currently requested custodians—it has simply stated no collections will be made for anyone outside of the US.
[5] Plaintiffs believe there to be individuals at L'Oréal S.A. who possess information relating to numerous issues in this Litigation, such as L'Oréal USA's: (1) product testing; (2) research and development; (3) safety; (4) marketing of the products at issue; and (5) developing product and brand partnerships. This is the exact type of information Judge Rowland found to be relevant and discoverable. Dkt. 353 at 8-9.

9

entity that has not been served or appeared in these actions."). But that position flouts Judge Rowland's holding that, for discovery purposes, any relevant and discoverable documents in L'Oréal S.A.'s possession are deemed to be in the control of L'Oréal USA—no matter where they are physically located—and must be produced.

## CONCLUSION

For all of the reasons above, Plaintiffs respectfully seek an Order (1) overruling L'Oréal USA's blanket objection to producing custodial discovery from L'Oréal S.A.; and (2) requiring L'Oréal USA to produce relevant documents from the custodial files of Eric Bone, Stephene Diridollou, Vony Gonga, and Ronak Rughani as among the initial group of custodial files to be searched in response to Plaintiffs discovery requests.

Dated: June 7, 2024

Respectfully, Submitted,

s/ *Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700

10

Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*