IN THE UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M Rowland<br><br>**This document relates to:**<br>All Cases |

### **PLAINTIFFS' MOTION TO ENFORCE ORDERS AGAINST L'OREAL USA**

Plaintiffs move for an order enforcing this Court's December 27, 2023 Order, ECF 353, and March 4, 2024 Order, ECF 499. In support of their Motion, Plaintiffs state as follows:

### **INTRODUCTION**

This Court has Ordered that Defendants L'Oréal USA Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC (hereinafter collectively referred to as "L'Oréal USA") have sufficient "control" over their parent, L'Oréal S.A., for discovery purposes. *See* ECF 353 and ECF 499. In those Orders, the Court expressly cautioned L'Oréal USA that the "predicate question" of control is *not* "whether the subsidiary and parent had a close relationship *as to a particular product or set of documents*" but "whether the two entities are sufficiently close," *see* ECF 499 at 3 (emphasis added). Because L'Oréal USA has "control" over L'Oréal S.A. for purposes of discovery, it is required to produce the documents and information that are responsive and relevant to Plaintiffs' discovery requests. Fed. R. Civ. P. 34(a); *see also Meridian Labs., Inc. v. Oncogenerix United States, Inc.*, 333 F.R.D. 131, 141 (N.D. Ill. 2019) (once "control" had been established, plaintiff was entitled to "obtain the universe of documents relevant to prove its claims" despite defendant's desire to produce only a subset of documents).

Despite the Court's clear instruction, L'Oréal USA now disputes the scope of the Court's orders and has indicated to Plaintiffs that it refuses to produce discovery from L'Oréal S.A. unless Plaintiffs establish that L'Oréal USA has control over each separate specific category of relevant documents or information maintained at L'Oréal S.A. In other words, L'Oréal USA contends that the Court's "control" ruling *only* required production of the four categories related to *non-domestic* hair relaxer products that were addressed in its December 27, 2023 Order from L'Oreal SA. L'Oreal USA stated its position as follows: "[T]here was no all-purpose finding of control for all discovery purposes [in the Court's prior Orders]. To the extent Plaintiffs intend to seek additional categories of documents in the possession of L'Oréal S.A. or depositions of L'Oréal S.A. personnel, the control analysis will be specific to those new requests." Ex. A, July 24, 2024 Letter from L'Oréal USA. L'Oréal USA's position violates this Court's orders and contradicts a foundational principle of discovery that litigants are required to produce all relevant and responsive materials within their control.

Further, as discussed more fully below, this Motion to Enforce does not encroach on the issues before Special Master Grossman. Contrary to L'Oréal USA's recent arguments at the July 11, 2024 Status Conference, this dispute is properly before this Court and not subsumed in a separate motion pending before Special Master Grossman (wherein L'Oréal USA is contesting the identities of custodians from which it must otherwise collect relevant and responsive documents).[1] Plaintiffs do not seek to expand the Court's prior rulings and do not take new positions on discovery related to domestic products, which Plaintiffs have clearly sought since discovery began. Indeed, Plaintiffs agree that L'Oréal USA may continue to raise objections about the

---

[1] The only similarity between this Motion and the one involving custodians that is before the Special Master is that L'Oréal USA asserts in both proceedings that its control over L'Oréal S.A. for discovery purposes was never decided by this Court.

2

proportionality of any particular category or source of document sought, and that issues relating to custodian files and search teams are within the purview of Magistrate Judge Finnegan. But L'Oréal USA may not ignore that this Court has resolved threshold issues—like the legal issue of "control"—if this Court has spoken on them.

Accordingly, and to move forward in discovery against L'Oréal USA, Plaintiffs respectfully seek an Order confirming, again, that the "predicate question" of "control" of information held at L'Oréal S.A, has been resolved and that L'Oreal USA is required to produce all relevant and responsive documents in its control in response to all outstanding discovery, including from L'Oreal SA.[2]

## BACKGROUND

After Plaintiffs served their First Request for Production of Documents on June 27, 2023, the parties engaged in many meet and confers to narrow issues. After reaching impasse on both the production of any documents regarding relaxer products held by L'Oréal S.A. and the production of documents about products sold outside the U.S., Plaintiffs served on L'Oréal USA and lodged with the Court a letter brief addressing those issues on September 27, 2023. *See* Ex. B (letter brief, attached hereto).[3]

At the Status Conference held on October 2, 2023, the Court entertained discussion between the parties about L'Oréal's objections to documents held by foreign sources (such as L'Oréal S.A.). L'Oréal USA argued that: (1) it would not produce documents related to hair

---

[2] To the extent that L'Oreal USA has some other objection to producing certain documents, or categories of documents, from L'Oreal SA, it was required to assert such objections in response to the written discovery served by the Plaintiffs. ECF 416 ("indicate (1) there are no responsive documents; (2) there are responsive documents that are not being produced based on privilege or objections; or (3) documents are provided."). Having failed to do so, it has waived such objections.

[3] This brief was submitted to the Court but not filed, as the parties originally had some confusion about whether or not the Court preferred such letters on the docket; the Court subsequently confirmed that such letters should be filed on the docket going forward. *See* ECF 268 (Order dated October 16, 2023).

relaxer products sold outside the United States—because L'Oréal USA does not sell products outside the U.S.; and (2) it did not have control over L'Oreal S.A. for the purposes of discovery. But to the extent L'Oréal has control over any relevant documents related to U.S. Hair Relaxers, it committed to producing those documents:

> I think the disconnect here, your Honor, is L'oréal USA does not sell products in the EU and does not sell products in Sub-Saharan Africa. Those are other L'oréal entities. And as the Court pointed out, we haven't gotten there yet.
>
> Certainly some of those entities, we will want to brief those and have that fight as to whether a hair relaxer product that's sold in South Africa is relevant, responsive, and if those documents are within the control of a United States entity that doesn't sell those products in South Africa.
>
> *Now, as far as the products we do sell in the United States, wherever that testing was conducted, we will produce that.*

*See* ECF 260 at 22:16-24:7 (Hearing Transcript) (emphases added).

On November 15, 2023, Plaintiffs updated the Court via further letter brief entitled, "MDL Plaintiffs' Letter Brief Regarding Key Discovery Disputes." ECF 299-1. In that brief, Plaintiffs confirmed L'Oréal USA only objected on relevance grounds to producing documents if the document related to a product that was sold exclusively outside the United States (and not to production of documents regarding those products sold in the US). *See* ECF 299-1 at 2, FN 9. In that submission, however, Plaintiffs also raised their concerns that L'Oréal USA was withholding documents regarding domestic products if such documents were held by L'Oréal S.A., even though L'Oréal USA had sufficient control over such documents. *Id.* at 6.

At the November 17, 2023 Status Hearing, the Court ordered the parties to submit simultaneous briefs on December 6, 2023 regarding foreign documents and products. ECF 303 at 58:23-24 ("Okay. So 12/6, I'm going to get cross-motions on the *out-of-country documents*.") (emphasis added). The Court also expressly confirmed in that hearing that the parties' briefs would

4

address their disagreement over L'Oréal USA's obligation to produce documents regarding domestic relaxer products that are in the possession of L'Oréal S.A.:

> MS. FITZPATRICK: . . .We have a much bigger issue that the parent company, the French parent company, L'oréal S.A., who fully owns and controls the formulations and directs what's going on in the U.S. -- we have asked for discovery from that entity. We have not received that discovery, despite the fact that we believe that the documents that L'oréal S.A. has are under the control of L'Oréal USA. And let me tell you why. When we asked L'Oréal USA for documents and for information, they went to L'Oréal S.A. and they got some of the documents and some of the information from them directly, which tells you what you need to know from discovery, which is that they control and they have the ability to access documents from L'Oréal S.A. for the purposes of discovery here. *We want to make sure that they have accessed all of the documents from L'Oréal S.A. that they have control over, which is all of them, that are responsive to that first set of discovery.* That's one issue. There –
>
> THE COURT: Aren't you going to be briefing this, though?
>
> MR. ELLIS: Correct.

*Id*. at 60:22-61:18 (emphasis added).

On December 6, 2023, each side submitted a brief to the Court. *See, e.g.*, ECF 315 (captioned, "MDL Plaintiffs' Brief Re Discovery Relating To Hair Relaxer Products Sold Outside Of The United States *And Materials Held By The Foreign Parent Of L'Oréal USA*") (emphasis added)[4]. Plaintiffs' brief addressed two separate but related issues: (1) did L'Oréal USA have sufficient control over L'Oréal S.A. for discovery purposes such that documents in L'Oréal S.A.'s possession were discoverable through L'Oréal USA (the "control issue"); and (2) was information concerning Hair Relaxer products sold only outside of the United States relevant under the Federal Rules to the issues in this MDL (the "relevance / proportionality issue"). *See* ECF 335-1 at 3 ("As described herein and in letter briefs previously submitted to the Court, Plaintiffs are entitled to

---

[4] On December 12, 2023, Plaintiffs amended their brief to correct errata caused by late changes in the position of Defendant Revlon (immaterial to this Motion) during a meet and confer on the eve of filing. *See* ECF 335-1 (corrected brief with same caption as ECF 315 except marked as "corrected").

discovery concerning products sold outside the United States *as well as materials regarding domestic products held by L'Oréal S.A.*, the foreign parent of L'Oréal USA.") (emphasis added). Plaintiffs' brief amplified this issue within the argument section. *See id.* at 11-16. Plaintiffs clearly sought a ruling from the Court on L'Oréal USA "control" generally, and not only with regard to specific documents.

By Order dated December 27, 2023, the Court agreed with Plaintiffs on the issue of L'Oréal USA's control over L'Oréal S.A., thus settling the issues related to domestic products, which L'Oréal USA agreed previously to produce subject to the control objection. ECF 353 at 3-7 (Order); *see also* ECF 260 at 22:16-18; 23:1-5; 23:11-17; 23:23-24:7 (Hearing Transcript confirming L'Oréal's position on domestic products). On the issue of foreign-only products, however, L'Oréal USA raised issues of *proportionality* that the Court addressed individually by category, limiting some of Plaintiffs' requests. *Id.* at 9.

On February 20, 2024, L'Oréal USA filed a motion for reconsideration of the Court's December 27, 2023 Order. ECF 461. The Court promptly denied this Motion on March 4, 2024. ECF 499.

Subsequent to the Court's Order denying the motion for reconsideration, the parties engaged in meet and confers about the identity of a Commissioner in France to oversee the foreign document production. After the parties agreed to request the appointment of Mme. Noëlle Lenoir as Commissioner, L'Oréal USA sent Plaintiffs the "final" documents supporting the appointment. In reviewing those documents and asking clarifying questions, however, Plaintiffs discovered that L'Oréal USA had unilaterally limited the Court's Orders on the scope of the documents to be produced by L'Oreal SA and produced pursuant to the Commission. While it was not immediately obvious to Plaintiffs from the plain language of the drafts, what became clear is that L'Oreal USA

6

sought to draft the commission to permit production only of documents relating to the four categories of foreign hair relaxer products ordered in response to the parties' relevance / proportionality arguments:

> L'Oréal S.A. will provide to the Commissioner the documents that are the subject of the Court's December 27, 2023 Memorandum Opinion and Order (quoted in paragraph 12 below), for transmission by the Commissioner to L'Oréal USA for review and production in this action. These documents relate to "hair relaxer products sold exclusively outside of the United States" and specifically, "products developed and sold by L'Oréal S.A. outside the United States…" Dec. 27, 2023 Order at pp. 2, 8. 12. Documents or other property to be inspected L'Oréal U.S.A. must produce the following documents that are in the possession of L'Oréal S.A.: (1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; and (4) articles in scientific journals related to hair relaxer products sold outside the United States. **Defendant L'Oréal U.S.A. must produce responsive documents that are in the possession of L'Oréal S.A.** (collectively, the "Documents").

*See* Ex. C at ¶ 12 (Draft "Letter of Request for International Judicial Assistance in the Appointment of a Commissioner") (emphasis added).

Plaintiffs erroneously believed the bolded sentence above was intended by L'Oréal USA to encompass the discovery requests more broadly, including certainly domestic product documents in the possession of L'Oréal S.A. Instead, after asking about certain language in the draft of the "Motion for Issuance of Request for International Judicial Assistance" which limited document production concerning foreign regulatory communications to only "non U.S. hair relaxer products" Plaintiffs became aware that L'Oréal USA did not intend to produce any domestic product documents from L'Oréal S.A. unless Plaintiffs *again* established control. Belatedly and well after work hours on Tuesday, July 23 (two days before Plaintiffs' Motion was originally due), L'Oréal USA offered to produce a small set of domestic product documents held by L'Oréal S.A., but only in the four categories where proportionality had been established for a small category of documents related to *non-U.S. products*. Ex. D July 23, 2024 Letter from L'Oréal USA. On July

7

24, 2024, L'Oréal USA further clarified that it would maintain that Plaintiffs are required to establish control over L'Oréal S.A. for *any* other categories of information going forward. Ex. A, July 24, 2024, Letter from L'Oréal USA.

After the Court, on July 25, 2024, granted the parties additional time to resolve issues related to production by L'Oréal USA of information from L'Oréal S.A., Plaintiffs sent L'Oréal USA their redlined versions of the Commission documents that Plaintiffs believed would clarify and resolve the issues. *See* Ex. E (Plaintiffs' edited drafts of Commission documents). Plaintiffs also made clear that resolution of this dispute would mean that L'Oréal USA understood that the Court had decided the predicate issue of control, while not reaching the issues of relevance or proportionality as to any individual document or witness. On July 30, 2024, L'Oréal USA responded to Plaintiffs, stating again its position that the Court had not decided "control" for anything other than four categories of non-US product documents[5] and rejecting in whole Plaintiffs' revisions to the drafts appointing a Commission on that basis. Ex. F, July 30, 2024 Letter from L'Oréal USA.[6] In sum, this Motion is now necessary only because L'Oréal USA continues to flat-out ignore the Court's clear statement that its "control" ruling was ***not*** "*as to a particular product or set of documents*" but "whether the two entities are sufficiently close." ECF 499 at 3 (emphasis added).

---

[5] In its July 30, 2024 Letter, L'Oréal USA reiterated its position stating: "if Plaintiffs wanted the Court to rule on whether control by L'Oréal USA of L'Oréal S.A. was established for all purposes, it should have asked the Court to make that ruling…." Ex. F. In fact, the Plaintiffs made exactly this request and the Court has already made that ruling.

[6] While Plaintiffs understand that L'Oréal USA offered drafts that were consistent with its revision of the Court's prior Orders, Plaintiffs also expect that, if Plaintiffs had not flagged the limiting language in the drafts and the documents as drafted had been used to create an artificially-limited Commission, then L'Oréal USA would have used the fact of a limited Commission to argue later than nothing else from L'Oréal S.A. should be produced because such production would require the establishment of a new Commission for any document beyond those specifically listed. There is no reason to set up the Commission in this misleading and inefficient way.

8

**ARGUMENT**

**A. The Plain Reading of this Court's Prior Orders Requires the Production of Documents Concerning U.S. Hair Relaxer Products from L'Oréal S.A.**

Under Fed. R. Civ. Proc. 37(a), Plaintiffs ask the Court to enforce its Orders holding that L'Oréal USA has control over L'Oréal S.A. for discovery purposes and thus must produce relevant documents regarding domestic hair relaxer products in the possession of L'Oréal S.A. *See* ECF 353; ECF 499. "If a party 'fails to obey an order to provide or permit discovery, including an order under' Rule 37(a), the court may issue further just orders." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 955 (N.D. Ill. 2021); *see* Fed. R. Civ. P. 37(b)(2).

In the prior briefing before the Court, Plaintiffs sought to resolve the issue of L'Oréal USA's control over L'Oréal S.A. for discovery purposes, and the Court agreed with Plaintiffs. *See* ECF 353 at 3-7 (Order on Motion to Compel); ECF 499 at 1-4 (Order on Motion for Reconsideration). In particular, the record makes clear that the Parties and the Court understood that L'Oréal USA agreed to produce domestic product documents over which it had control. *See, e.g.*, ECF 260 at 22:16-18; 23:1-5; 23:11-17; 23:23-24:7 (Hearing Transcript) (on October 5, 2023, L'Oréal USA counsel stating, "Defendant L'Oréal USA agrees to produce information that may implicate products sold outside the United States, so long as the product is also sold in the United States. . . .").[7]

---

[7] *See also*, ECF 260 at 23:24-24:4 (on October 2, 2023, the Court stated Your Honor's understanding of the defense position: "So the proposal would be...that the defendants would say, 'Okay. Any product sold in the United States from any of these defendants, we would produce all the information no matter where it originated….'"; a position then affirmed right away by L'Oréal counsel); ECF 299-1-2, 6 (Plaintiffs' uncontested summary of L'Oréal USA's position that L'Oréal USA would produce domestic relaxer product documents no matter the source but not those maintained by L'Oréal S.A due to lack of control); ECF 303 at 60:22-61:18 (on November 17, 2023, Plaintiffs' counsel described the dispute to be resolved for the Court: "We want to make sure that they have accessed all of the documents from L'Oréal S.A. that they have control over, *which is all of them*, that are responsive to that first set of discovery…."; a position that defense counsel confirmed to the Court would be briefed: "Correct") (emphasis added).

9

At the November 17, 2023 status hearing, the Court recognized the breadth of the dispute and instructed the parties to brief the issue of the "out-of-country *documents*." ECF 303 at 58:23-24 ("Okay. So 12/6, I'm going to get cross-motions on the *out-of-country documents*.") (emphasis added). Plaintiffs' letter brief followed the Court's instruction. *See* ECF 315 (Plaintiffs' brief captioned, "MDL Plaintiffs' Brief Re Discovery Relating To Hair Relaxer Products Sold Outside Of The United States *And Materials Held By The Foreign Parent Of L'Oréal USA*") (emphasis added); *see also* 335-1 (corrected brief with same caption); *id.* at 3 (Plaintiffs' first sentence stating: "As described herein and in letter briefs previously submitted to the Court, Plaintiffs are entitled to discovery concerning products sold outside the United States *as well as materials regarding domestic products held by L'Oréal S.A.*, the foreign parent of L'Oréal USA."). Because none of the other Defendants were refusing to produce any category of domestic product documents, the Motion focused on the separate issues of: (1) products sold outside the US (by all Defendants); and (2) documents in the possession of L'Oréal S.A.—including domestic product documents—being withheld by L'Oréal USA on the basis of control.

The Court's December 27, 2023 Order resolved the issue of control in Plaintiffs' favor. ECF 353 at 3-7. Importantly, when L'Oréal USA sought reconsideration, the Court made clear its ruling on control was not based on any particular document, but followed the caselaw requiring that the "predicate question" be first resolved based on facts establishing a sufficiently close corporate relationship between the entities, and not arising due to the uniqueness of particular discovery documents. ECF 499 at 3 ("The Court was not focused only on whether the subsidiary and parent had a close relationship as to a particular product or set of documents. The predicate question — whether the two entities are sufficiently close — required the Court to look at the relationship altogether. L'Oréal does not meaningfully challenge that assessment."); *see also* ECF

10

353 at 3-7 (analyzing caselaw on control, and the standard required to show sufficient closeness of the corporate relationship, without basing its ruling on access or control over any particular document type).[8]

By taking the position now that Plaintiffs must again establish control on a document-by-document basis, L'Oréal USA violates the Court's explicit language in ECF 499 on this very issue. *See* ECF 499, at 3. Respectfully, this cycle needs to end.

### B. Arguments Previewed by Defendant L'Oréal USA Are Without Merit

At the July 11, 2024 Status Conference, counsel for L'Oréal USA asserted that Plaintiffs are somehow seeking to expand the Court's prior Orders, creating conflicts with the Judge Finnegan's jurisdiction (or that of Special Master Grossman), and doubling back on prior agreements in the meet and confer process. *See* ECF 764 at 49-50, 58 (Hearing Transcript). None of those assertions is accurate.

#### 1. Plaintiffs seek only to enforce this Court's Order, not expand it.

Counsel for L'Oréal USA, Dennis Ellis, accused Plaintiffs' counsel of asserting a "much broader reading than what the Court ordered." ECF 764, at 49-50; *see also id.* at 58 (defense counsel Katherine Murray stating, "So we have tried to enforce [sic] your Court's order, but plaintiffs now want to broaden it."). But contrary to defense counsel's statements, Plaintiffs merely seek to abide by the Court's instruction that it was resolving the "predicate question" of L'Oréal USA's control over L'Oréal S.A. based on corporate relationships, *see* ECF 353 and ECF

---

[8] L'Oréal USA continues to argue that the Court must revisit its "control" holding again and again based on the argument that "the question of control is fact-specific." *See* Ex. F at 2, July 30, 2024, Letter from L'Oréal USA. While the predicate question of control is "fact-specific," the facts at issue are not those related to any specific document type, but instead, the question turns on the relevant facts related to "the closeness of the entities' relationship" and whether the two entities are sufficiently close overall or had "close coordination." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 U.S. Dist. LEXIS 80507, at *4 (N.D. Ill. May 7, 2020). Those corporate-level facts do not change from one document—or one category of document—to another.

11

499—and seek to avoid L'Oréal USA's efforts to insert unnecessary, nonsensical, and costly serial disputes about control based on specific documents or document categories.[9]

### 2. Because the Plaintiffs are seeking enforcement on the scope of the order, *i.e. what* must be produced, their motion does not conflict with the related motion before Special Master Grossman concerning the ESI sources *where* Defendant must search for responsive documents.

Defense counsel also argued that Plaintiffs are generating overlapping arguments in different forums with different decisionmakers. ECF 764 at 50:15-23, 59:15-21. This is false. This Court has determined certain issues regarding control. They are law of the case.[10] Separately, Magistrate Judge Finnegan and Special Master Grossman have the delegated authority to determine disputes pertaining to the methods of collection of ESI, including search terms and custodians. As such, L'Oréal USA's characterization of this Court's prior Orders on "control" to be limited to only certain documents—as opposed to resolving the closeness and coordination of the corporate entities, generally—is properly before this Court. In other words, it is appropriate for this Court to decide **what** must be produced pursuant to the Federal Rules of Civil Procedure; Magistrate Judge Finnegan and Special Master Grossman are to decide **the manner** in which those documents are produced if they are electronically stored. There is no overlap.

### 3. Plaintiffs did not agree to the narrow scope of the commission that was proposed by L'Oréal USA.

Finally, L'Oréal USA erroneously claims that Plaintiffs agreed to limit the foreign

---

[9] Plaintiffs believe a clear ruling on this Motion will move along discovery in numerous respects—including discovery targeted at domestic products, no matter the source, which seemed to be resolved for all Defendants almost a year ago, but which L'Oréal USA now apparently seeks to disavow. *See* ECF 764 at 50 (Mr. Ellis stating at July 11, 2024 hearing, "Now what I'm hearing is with respect to the issue of whether or not your order is broad enough to cover not only products that are distributed outside the U.S., but also those that are within the U.S…."); *but see* ECF 260 at 22:16-18; 23:1-5; 23:11-17; 23:23-24:7 (L'Oréal USA statements affirming its intent regarding domestic product production); 299-1 at 6 (Plaintiffs' November 15, 2023 submission similarly summarizing meet and confer positions).

[10] As such, L'Oréal USA should be precluded from re-litigating, once again, the question of "control" in response to this Motion.

commission reviewing L'Oréal S.A. documents solely to documents in the four categories that the Court specifically ordered for *outside the U.S. products* (after the Court rejected L'Oréal USA's proportionality arguments about those categories). ECF 764 at 49-50 (Mr. Ellis stating, "And so for at least up until about a couple of weeks ago, the parties were in agreement with the formatting of the commission"); *see also id.* at 57-58. In fact, the parties met and conferred for an extended period of time on a number of terms pertaining to the establishment of a commission, with L'Oréal USA only providing its proposed "final" set of documents to Plaintiffs on June 28, 2024. But in the course of reviewing those "final" documents, Plaintiffs determined that the documents were inconsistent in material ways from what Plaintiffs believed to have been understandings between the Parties and the Court's Orders.

In particular, the documents establishing the commission that L'Oréal USA sent to Plaintiffs at the end of June continued to contain language appearing to limit the Commissioner's mandate to only the *non-US product* documents from the four categories referenced above. The documents also misstate the scope of discovery sought in the MDL as limited solely to non-U.S. products, and mischaracterize the Court's orders on the motions to dismiss the complaint, to compel documents, and for reconsideration. When Plaintiffs then asked L'Oréal USA about the language limiting the scope of the Commissioner's mandate, it became apparent for the first time that L'Oréal USA's perspective on its discovery obligations was vastly different from what Plaintiffs had understood.

Plaintiffs were surprised to hear at the July 11, 2024 Status Conference that L'Oréal USA ever thought Plaintiffs would agree to limit the document collection from L'Oréal S.A. solely to foreign products. In fact, Plaintiffs have always been clear that Plaintiffs seek information regarding the domestic products that are at issue in this MDL and for which L'Oréal S.A. is also

13

integrally involved, including by owning the patents and formulas for L'Oréal USA's US products. In fact, Plaintiffs' position is so clear that it was the exact topic of the briefing it submitted to the Court on December 6, 2024; having won that motion, Plaintiffs are at a loss to understand why L'Oreal USA would believe that Plaintiffs would cavalierly discard the victory.

Despite many subsequent attempts to resolve this issue short of Court intervention, including on the eve of the original filing date and continuing through this week, the parties have not been able to reach agreement. Enforcement of the Court's "control" ruling would dramatically aid in that process and streamline the discovery going forward.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their Motion be granted and the Court confirm that the issue of control has been decided. In addition, given L'Oréal USA's prior representations that it would produce documents related to domestic products over which it had control, Plaintiffs respectfully request, as a remedial measure, that L'Oréal be required to produce such documents on an expedited basis through the Commissioner jointly approved by the Parties.[11]

Dated: August 1, 2024

Respectfully submitted,

/s/ *Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193

---

[11] As long as the Rule 37 order or sanction is "just," there is no limit on the Court's "response or remedy to a violation of a discovery order." *DR Distributors, LLC*, 513 F. Supp. 3d. at 955; *see e.g.*, *Alford v. Aaron Rents, Inc.*, No. 3:08-CV-683 MJR-DGW, 2010 WL 2765260, at *17 (S.D. Ill. May 17, 2010), *report and recommendation adopted in part*, No. 08-CV-683MJR, 2010 WL 2720798 (S.D. Ill. July 8, 2010) (in response to L'Oréal's "incomplete" responses, the Court's remedies included ordering L'Oréal to "to furnish the requests within thirty days.").

14

Email: eaw@wallacemiller.com
*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com
*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com
*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: 850-224-2020
Email: ben@bencrump.com
*Plaintiffs' Co-Lead Counsel*