## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br><br>Master Docket No. 23-cv-0818<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiffs' Co-Lead Counsel, Plaintiffs' Executive Committee, and the Plaintiffs' Steering Committee (collectively the "PLC") moved for entry of an order [351] to establish protocols and procedures to govern common benefit fees and expenses in MDL No. 3060. Counsel from Keller Postman LLC, who represents individual Plaintiffs in this MDL, opposed the PLC's motion [377]. No other counsel objected to the proposed order. For the reasons stated herein, the PLC's motion is granted in part and denied in part.

### I.   Background

On February 6, 2023, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred to this Court individual and putative class actions pursuant to 28 U.S.C. § 1407 for consolidated pretrial proceedings. *See* [1]. In centralizing this litigation, the Panel aimed to "obviate the risk of duplicative discovery and inconsistent rulings on pretrial issues," "minimize duplication of [] expert discovery as well as pretrial motion practice related to expert issues," and "prevent inconsistent

rulings with respect to class certification." *Id.* at 2. The Panel concluded consolidation "will allow this litigation to be managed most efficiently and will best serve the convenience of the parties, witnesses, and courts." *Id.*

Plaintiffs allege Defendants manufactured, sold, distributed, advertised, and promoted hair relaxer products that caused Plaintiffs to develop cancers and other injuries. [106 ¶ 1]. The complexity and scope of this MDL are significant. Currently more than 8,400 individual cases are pending in this MDL. Any individual Plaintiff may have used multiple different hair relaxer products over the course of her lifetime and accordingly may have asserted claims against multiple Defendants. Plaintiffs have filed cases against multiple Defendants that are on two separate discovery tracks. Many of these parties are represented by separate counsel.

On March 2, 2023, this Court appointed the PLC to promote judicial efficiency and advance these consolidated pretrial proceedings. *See* Appointment Order [28]. The Appointment Order designated counsel to serve as Co-Lead Counsel and constituted the Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee. *Id.* The Order also set forth non-exhaustive duties of the PLC. *Id.* at 6–9. Among the PLC's broad responsibilities are obligations to communicate with non-PLC Plaintiffs' counsel, Defendants' counsel, and the court; to conduct pretrial fact and expert discovery including document review and production, drafting expert reports, and taking or defending depositions; and to submit and argue pretrial motions. *Id.* Relevant here, the Appointment Order directs "[a]ll attorneys carrying out such common benefit work who may look to any common fund or agreement for

2

reimbursement or compensation [to] maintain and timely submit time and expense records in accordance with guidelines to be set by the Court in a subsequent Case Management Order." *Id.* at 6.

In late October 2023, the PLC submitted a proposed CMO (the "Common Benefit Order") seeking to establish a common benefit fee and expense protocol.[1] [278]. The proposed Common Benefit Order defined qualified common benefit work and expenses eligible for reimbursement, created protocols to submit time and expenses for reimbursement, and established procedures to create the common benefit fee and expense fund—including the amount to be assessed or held back from settlements or judgments for deposit into the fund and the parameters of to whom the proposed order would apply. *Id.* The PLC submitted a subsequent proposed Common Benefit Order regarding the common benefit fund that is substantially identical to the October 2023 version. [351 at 1; 351-1].

On November 1, 2023, Keller Postman indicated an objection to the PLC's proposed Common Benefit Fund by filing a motion to extend time to file a response to the PLC's proposed Common Benefit Order. [280]. Keller Postman is the only objecting counsel.[2] The PLC unanimously supports the proposed CMO. [351 at 1]. After efforts to meet and confer, the PLC and Keller Postman reached an impasse.

---

[1] The PLC initially proposed the at-issue order concerning the common benefit fund as Case Management Order ("CMO") No. 9. Since that submission, the Court issued CMO No. 9 regarding Plaintiff Fact Sheets and Record Authorization [343], CMO No. 10 regarding Dismissals Without Prejudice [527], CMO No. 11 supplementing CMO Nos. 8 and 9 [648], and CMO No. 12 appointing a Special Master [718].

[2] The Court acknowledges the history of negotiations between Keller Postman and the PLC. This history is immaterial to the analysis *infra*.

[322]. Before the Court now is the PLC's motion to establish the common benefit fund and related procedures. [351].

## II.    Analysis

### a.  Application of the Common Benefit Fee

The proposed CMO applies to four groups of "Participating Counsel": (1) all attorneys appointed to various leadership positions by the Court or by the appointed Co-Leads, including all members of the Plaintiffs' Executive Committee, the Plaintiffs' Steering Committee, and the Leadership Development Committee, and their respective law firms; (2) any "Affiliated Counsel" who agree to perform work in the MDL for the common benefit at the direction of the Co-Leads; (3) each attorney or law firm that represents a plaintiff with a case pending, now or in the future, in this MDL, and the order applies to every hair relaxer case in which they or their law firm have a fee interest; and (4) each attorney or law firm that represents hair relaxer claimants, but has no cases filed in the MDL, if the attorney or firm voluntarily elects to sign a Participation Agreement in order to gain the benefits of common benefit work product or that knowingly receives such work product. [351-1 at § 1.A.]. In other words, under the proposed CMO, assessments would be levied against any recoveries from any hair relaxer claimant if she is represented by counsel with other cases filed in, removed to, or transferred to MDL 3060 regardless of whether a Participation Agreement is executed.

The parties do not dispute that the Court may establish a common benefit fund and order contributions to such a fund from cases filed in, removed to, or transferred

4

to this MDL. Likewise, the parties do not contest that the Court may order contributions from cases in which counsel signs a Participation Agreement. The crux of the dispute is whether the Court has the authority to order holdbacks from recoveries not in the MDL. Specifically, Keller Postman argues the Court lacks authority over recoveries from hair relaxer actions in state court or that are settled before filing in any court. *See* [377 at 3–9]. The PLC asserts the Court is empowered to order holdbacks under at least three separate sources of judicial authority: (1) the equitable common benefit doctrine; (2) the Court's inherent managerial power over consolidated litigation; and (3) private contracts. [351 at 4]. The Court disagrees.

The Court's jurisdiction[3] does not extend to cases that are not actually before it even if the plaintiffs in those cases might benefit from work performed in the MDL. *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527, 2011 WL 611883, at *3 (N.D. Ind. Feb. 11, 2011) (declaring "[t]his court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court" when analyzing motion to enter a common benefit set-aside order); *see also First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, No. 3:13-CV-454, 2019 WL 13180924, at *3 (S.D. Ill. Apr. 5, 2019) (denying order imposing a settlement set-aside on "any" class action opt-out on the grounds that "[t]he Court can only exercise authority over parties that have subjected

---

[3] The question of the Court's authority is not a matter of subject matter jurisdiction but rather jurisdiction more generally. *See In re Roundup Prod. Liab. Litig.*, 544 F. Supp. 3d 950, 965 (N.D. Cal. 2021); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 187–89 (S.D.N.Y. 2020).

themselves to the Court's jurisdiction.") (citing *In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.*, 953 F. 2d 162, 165–66 (4th Cir. 1992)). None of the authorities cited by the PLC overcome the plain limits on the Court's jurisdiction.

### i. **The Equitable Common Benefit Doctrine**

Under the default American Rule, each litigant bears the responsibility to pay her attorneys' fees regardless of who ultimately prevails in the case. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). In some instances, application of the American Rule unjustly enriches individuals who benefit from successful litigation without carrying a fair share of the cost to litigate. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is a well-established exception to this general rule that allows for the creation of a common fund for the purpose of paying reasonable attorneys' fees. *See In re Diet Drugs*, 582 F.3d 524, 546–47 (3d Cir. 2009); *Showa*, 953 F.2d at 164; *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1016–18 (5th Cir. 1977). The doctrine is invoked when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quoting *Mills v. Electric Auto-Lite*, 396 U.S. 375, 393–94 (1970)). MDL courts commonly cite the doctrine as a basis to assess common benefit fees. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010).

The common benefit doctrine does not confer unbridled jurisdiction by chance of who plaintiff hired as counsel. Rather, an MDL court's authority over a common fund "comes from the equitable jurisdiction that the district court exercises over the fund, by way of the litigation." *Roundup*, 544 F. Supp. 3d at 959 (citing *Boeing*, 444 U.S. at 478; *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885)). All the transactions in common fund cases occur within the same case: the court awards money from a fund that is part of the case to a plaintiff who is part of the same case. *Id.* at 963. When a holdback assessment reaches the recoveries of parties in state court or parties without any case, "any plausible support from the common fund doctrine disappears entirely—the court is exercising authority over disputes that are not before it and over property that is not before it, without any clear limit on the court's reach." *Id.*

The PLC heavily relies on the policy consideration that the common benefit doctrine is routinely justified as necessary to prevent "free riding." [411 at 5–8]. Indeed, the PLC portends the day when MDL courts will be unable to attract any counsel without assurances of adequate compensation and protection against free riders. [411 at 7] (citing *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F.Supp.3d 822, 831 (D. Ariz. 2022)). As this MDL evidences, that day has not come. The Court recognizes the real possibility that plaintiffs (and their attorneys) outside the MDL may benefit from the work undertaken in the MDL. This benefit may derive directly (*e.g.*, by obtaining and using work product created in the MDL) or indirectly (*e.g.*, if a defendant decided to settle all MDL and non-MDL claims after assessing overall

potential liability). Regardless of the magnitude of the free rider problem, the Court's jurisdiction cannot be arbitrarily expanded to redress this aggrieved inequity. *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014) ("equity is insufficient to overcome limitations on federal jurisdiction"); *Roundup*, 544 F. Supp. 3d at 960 ("The presence of free riding, and the desire to address it, is not itself a source of judicial power. The power of a court to address free riding concerns—just like the power of a court to address any concern—must actually come from somewhere.").

### ii. **The Court's Inherent Managerial Power**

An MDL court's inherent managerial power over the consolidated litigation provides an independent source of authority to assess holdbacks from MDL recoveries. *Inre Genetically Modified Rice*, No. 4:06 MD 1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) (citing *Fla Everglades*, 549 F.2d at 1008) (quotations omitted). But, like the common benefit doctrine, this authority does not reach outside the MDL to the recoveries of non-MDL plaintiffs with counsel who happen to represent MDL plaintiffs.

District courts are empowered to manage "their" dockets with the purpose to reach "the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also United States v. Moussaoui*, 483 F.3d 220, 236–37 (4th Cir. 2007) (explaining that the cases involving the inherent managerial power of a district court "stand for the proposition that a court has the inherent authority to control various aspects of the cases *before that court* so that they can 'protect their proceedings and

judgments in the course of discharging their traditional responsibilities.'" (emphasis in original) (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996))). This principle applies in MDLs. When overseeing multidistrict litigation, district courts are afforded "broad discretion in coordinating and administering multi-district litigation." *Showa*, 953 F.2d at 165. Even so, the authority to conduct multidistrict litigation does not alter the inherent limits on a district court to manage only its docket at the exclusion of cases beyond the MDL. *Id.* ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation ... is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.") *see also In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F.Supp.3d 685, 695 (S.D.W.Va. 2019) ("*Once cases are consolidated* under the umbrella of an MDL court's pretrial jurisdiction, 'the court's express and inherent powers enable the judge to exercise extensive supervision and control *over the litigation*.") (emphasis added) (cleaned up). An MDL court cannot enter orders affecting plaintiffs outside of the MDL to better manage its litigation. *Genetically Modified Rice*, 764 F.3d at 874 ("notwithstanding 28 U.S.C. § 1407, the district court does not have the power to order parties in cases not before it to contribute to the Fund"); *Vincent v, Hughes Air West, Inc.*, 557 F.2d 759, 765–66 (9th Cir. 1977) (holding the MDL court lacked the power to order holdbacks from the recoveries of parties not before it); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) (explaining that the MDL court "had not even a semblance of jurisdiction—original, ancillary or pendent—to order

anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund").

The PLC's efforts to reframe the assessments as recovered from counsel rather than hair relaxer claimants, is to no effect. [351 at 5; 411 at 8–9]. MDL lawyers may think of recoveries as "their" recoveries coming from their "inventory" of cases, but "…that 'inventory' consists of people, and each person has their own case against the defendant." *Roundup*, 544 F. Supp. 3d at 965. All recoveries belong to the client. *See, e.g., Kenseth v. C.I.R.*, 259 F.3d 881, 883–84 (7th Cir. 2001) (A contingent-fee lawyer is not an owner of his client's claim); *Pocius v. Halvorsen*, 195 N.E.2d 137, 139 (1963) (A contingency fee is generally paid out of the recovery for the client). In any event, state court cases and unfiled cases, even if related, are not before this Court and thus not subject to the Court's managerial authority. Regardless of whether the non-MDL plaintiffs' attorneys participated in the MDL, the Court does not have authority over separate disputes outside this MDL. *See Genetically Modified Rice*, 764 F.3d at 873–74.

### iii.  Contract Law

MDL courts may enforce voluntary agreements to be subject to a common fund assessment. *In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897, 907–8 (9th Cir. 2023); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 617 Fed. Appx. 136, 143 (3d Cir. 2015); *Cook Med.*, 365 F. Supp. 3d at 695. However, "[t]he agreement itself is not the source of the District Court's authority." *Avandia Mktg.*, 617 Fed. Appx. at 143. The source of the court's authority is in its discretion to manage the

10

litigation in combination with the voluntarily entered into agreement. *Id.* ("The agreement was simply incorporated into an order the District Court was empowered to issue.").

But unlike *Avandia*, *Bard*, or *Cook*, where counsel voluntarily signed participation agreements, the PLC's proposed Order would "presumptively" apply to MDL counsel's non-MDL cases even without signing a Participation Agreement. [351-1 § I.A(3)]. Absent a valid Participation Agreement, contract law does not authorize the Court to enter an Order imposing assessment obligations based on a rebuttable presumption.

The Court has no jurisdiction over non-MDL hair relaxer cases, including to subject any potential recoveries to a common benefit assessment unless counsel executes a valid Participation Agreement.

### b. <u>Assessment</u>

The proposed Common Benefit Order requires holdbacks from any recovery achieved either through settlement or through judgment in a case with Participating Counsel. [351-1 at § V.B.3]. Under the proposed Order, 8% is to be assessed to pay for common benefit work, *i.e.*, attorneys' fees, and 3% is to be assessed to pay for common benefit expenses. *Id.*

Keller Postman objects to the 11% holdback proposed by the PLC as "extremely high" and premature. [377 at 9]. The firm argues the PLC's asserted justifications for the assessment value are conclusory and vague. *Id.* Instead, Keller Postman suggests the Court reserve setting the holdback amount until a later stage of litigation when

the case is further developed, and the PLC might offer more detail on the scope of work. *Id.* at 10. The PLC states the assessment is reasonable considering multiple factors and comparable to the assessment values set in similar products liability MDLs. The proposed holdback is not unreasonably high.

The Seventh Circuit has not established specific factors to test when considering a reasonable percentage to award attorneys' fees in a common fund case nor has the Circuit defined a 'benchmark' percentage. Accordingly, the Court looks to factors commonly applied in different circuits. *See, e.g.*, *Barber v. KimBrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (applying the *Johnson Georgia Highway Express, Inc.*, 488 F.2d 714 (1974) factors); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992–93 (D. Minn. 2005) (applying the *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

These factors weigh in favor of maintaining the 11% holdback. The PLC set the assessment after evaluating the complexity of the cases, the number of defendants, prospective work with experts, and possible limits on potential recoveries. [351 at 8].

The percentage is based on the best estimates of highly qualified counsel who are intimately familiar with the progress of pretrial litigation and expected future work. *Id.*; *see also* [14]. This work will include extensive discovery involving the production and inspection of voluminous documents, taking and defending many depositions, engaging several experts, analyzing discovered information for use in pretrial proceeding and in preparation for trial, defending against formidable opposing counsel, and much more. Finally, the percentage is well within the range of similar MDL. *See* [351 at 9] (citing multiple MDLs with common benefit holdbacks between 8% and 16%). Any excessive assessments will be subject to the refund provisions of the proposed Order. [351-1 § VI.C].

Keller Postman suggests the assessment is excessive, at least in part, because the MDL involves plaintiffs with cancer. This argument is unavailing. The firm does not explain why an action involving this alleged injury warrants a lower assessment nor does counsel cite any authority in support of the argument.

Keller Postman's objections to the common fund assessment value are hereby overruled.

## CONCLUSION

For the stated reasons, the PLC's motion is granted in part and denied in part. [351]. By 9/6/24, the PLC is directed to submit a revised proposed Common Benefit Order that incorporates this Order.

13

E N T E R:

Dated: August 22, 2024

_____
MARY M. ROWLAND
United States District Judge