IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | **MDL No. 3060**<br>Master Docket No. 23-cv-00818<br>Judge Mary M. Rowland<br><br>**This Document Relates To:** All Cases |

### REVLON'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLETION OF DISCOVERY

Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC (together, "Revlon") hereby submit their Opposition to Plaintiffs' Motion to Compel Completion of Discovery (ECF No. 814 (the "Motion")).

### INTRODUCTION

Plaintiffs' Motion to Compel Completion of Discovery is both unnecessary and premature given the extensive efforts Revlon has made to address discovery requests, and the progress already made. Revlon has dedicated significant time to meeting and conferring with Plaintiffs on discovery issues. Throughout this process, Revlon has kept Plaintiffs informed about the volume of documents under review and have attempted to work with Plaintiffs to negotiate and cut down overbroad and unduly burdensome search terms in order to get to the documents at the heart of this litigation. Despite these efforts and some mitigating circumstances, Plaintiffs have continuously threatened motion practice and accused Revlon of delaying discovery.

Significantly, contrary to what Plaintiffs would have the Court believe, Revlon is not refusing to comply with discovery, deliberately withholding documents or disputing Plaintiffs' right to discovery. This Motion should not be viewed as a reflection of Revlon's alleged delay or

failure to move along discovery, but rather as a symbol of Plaintiffs' unwillingness to work together and an attempt to force an issue that is actively being addressed. Not only is the instant Motion further delaying discovery, as we must now turn our attention to this instead of reviewing and producing documents, but it is an unnecessary use of the Court's time and resources, as Revlon has been trying to avoid motion practice by attempting to work with Plaintiffs on these issues.

## ARGUMENT

I. **Despite Plaintiffs' Inflexibility in Revising Its Overbroad and Unduly Burdensome Search Terms, Revlon Has Produced Tens of Thousands of Documents to Date and Steadily Increased Its Production**

Plaintiffs argue that Revlon "disregarded" the Court's order to review close to a million pages of documents and complete its production by August 9, 2024, but a closer reading of the transcript reveals that, at the July 11 hearing, the Court itself expressed doubts as to whether it could be accomplished. (Exhibit 1 at pages 60-64). Moreover, the difficulty in getting this task accomplished is a direct result of Plaintiffs' inflexibility in crafting and agreeing to targeted search terms that would lead to potentially responsive documents.

On June 13, 2024, counsel for Plaintiffs and Revlon met and conferred with regard to the ESI search terms. From the 131 search terms, there were approximately 405,000 documents implicated, which, according to Revlon's document service provider, would have resulted in approximately more than four million pages. Just a few of these search terms included:

- "Crème of Nature" OR "Cream of Nature" OR "Creme of Nature"[1]
- "Eden"
- "Black hair" or "black-hair"
- "Food and Drug Administration"
- "Safety Data Sheet"
- "PCPC or 'Personal Care Products Council'"
- "HBCU"
- "Cosmetovigilance"

---

[1] A company with numerous products, many of which have nothing to do with the products at issue in this litigation.

2

- "Hazard"
- "Potassium"
- "Olive oil"
- "Paraffin"
- "Methyl*"[2]
- "reg* w/15 (Affair OR Agenc* OR Complian* OR Submiss* OR complain* OR warn* OR review OR carcinog* OR relax* OR straight*)"
- "Scien* w/75 (hair OR board OR care OR advid* OR review* OR research* OR relax* OR straight*)"
- "Europea* w/25 (Chemic* OR Agenc* OR Cosmet* OR projec* OR Medicines OR reg* OR ban* OR allow* OR stop* OR discon* OR research* OR cancer* OR Ingredient OR fragranc* OR associa* OR mark* OR strate* OR carcinog* OR relax* OR straight*)"
- "International w/15 (agenc* OR research* OR cancer* OR cosmetic* OR Ingredient OR nomenclature* OR fragranc* OR associa* OR mark* OR strate* OR carcinog* OR tox* OR risk* OR health OR reg* OR Chemic* OR relax* OR straight*)"

Revlon explained to Plaintiffs that without modifiers relating to the products at issue in this litigation, reviewing the documents would be overbroad and unduly burdensome, and noted that ultimately the search terms would need to be modified to get responsive documents to Plaintiffs in a timely manner.

On June 18, Plaintiffs and Revlon met and conferred for two hours in an effort to narrow down these searches, and ultimately agreed upon 109 search terms, which brought up more than 98,000 documents—just under one million pages of documents. On July 10, Revlon informed Plaintiffs that documents were uploaded to the document service and that a document review protocol memorandum was being finalized. In response to Plaintiffs' specific inquiry, Revlon stated that it hoped to begin a rolling production in two weeks. The July 12 Joint Status Report reflected this agreement:

> On June 18, 2024, Revlon counsel (Mark Hsu and Al Sargente) and plaintiffs' counsel (Mark Abramowitz, Danae Benton, Holly

---

[2] An asterisk at the end of a word denotes any word with that prefix. Therefore "methyl*" will bring up a huge number of methyl-related compounds, regardless of whether they are related to hair relaxer or straighteners.

3

> Nighbert and Larry Taylor) met and conferred for approximately two hours on the precise search terms that would be used for ESI documents. The parties agreed to 109 search terms, and the latest search term report has been circulated among counsel. Responsive documents to the agreed-upon search terms have been uploaded onto a document review system, and Revlon anticipates that a document review can commence by August 1, 2024, with a rolling production to follow and in accordance with any deadlines set by Judge Rowland at the July 11, 2024 Case Management Conference. There will be further meet and confer conferences with regard to the precise wording of other search terms. Counsel present at the meet and confers included: Mark Abramowitz, Danae N. Benton, and Holly Nighbert for the Plaintiffs and Mark Hsu and Alfred Sargente for Defendant Revlon.

Exhibit 2 at 1-2.

Unfortunately, Revlon was unable to achieve that goal due to the high number of irrelevant documents that needed to be reviewed and coded. On July 30, at a separate meet and confer, Revlon reiterated its concern that the ESI search terms were bringing up a larger number of completely irrelevant documents, and a meet and confer was scheduled for August 6. At the August 6 meet and confer, Revlon demonstrated how these overbroad search terms were implicating numerous documents that were not even remotely related to hair relaxer products.

Plaintiffs only suggested one term modifier to the "PCPC or 'Personal Care Products Council'" search term—adding an "unsubscribe" modifier that would have screened out marketing and newsletter emails from the PCPC. This edit would not have significantly reduced the total number of irrelevant documents. Instead, at the August 6 meet and confer, Plaintiffs continued to reiterate that Revlon represented that it would complete its review by August 9.

With the August 6 session being wholly unproductive, Revlon counsel decided to devote all of its resources to going forward and reviewing all of these overbroad search documents in an effort to simply complete this task as soon as possible.

Since then, despite some very overbroad search terms, Revlon has reviewed ESI documents and begun its rolling production as follows: 776 pages on August 7; 2,024 pages on August 9; 4,865 pages on August 16; 2,510 pages on August 23; and approximately 9,112 pages on August 28, for a total number of 19,287 pages to date.

Plaintiffs' counsel argue that Revlon did not ask for an extension on the production of documents, but this was due to Revlon's understanding—perhaps naïve—that Plaintiffs' counsel would exercise a modicum of courtesy in understanding that Revlon's counsel needed to catch up on all of the outstanding issues necessitated by extraordinary circumstances. Plaintiffs' counsel did not inform Revlon counsel of any intended motion to compel. Indeed, only at the eleventh hour before the deadline for a joint status report filing on August 22 did Plaintiffs' counsel send a revised draft of a revised joint status report indicating their intention to file a discovery motion. Plaintiffs' intent to file a motion was conveniently left out of the initial draft received by Revlon counsel earlier that week.

Furthermore, Plaintiffs' statement that "Revlon has failed to provide Plaintiffs with any time frame for completion of production" (Motion at 2) belies the fact that Plaintiffs have no interest in learning this information, as there has been no inquiry made to Revlon counsel as to the status of the document production since August 6. In fact, since late July, when the vast scope of the document review became apparent, Revlon incurred great expense in retaining a team of twenty-four (24) contract attorneys from its document production provider in reviewing the rest of the documents implicated by the overbroad search terms. Revlon's document production provider estimates that they will complete their first pass review of the documents by August 30, which will of course require a quality control review of these documents following the initial review. Therefore, Plaintiffs' hyperbolic statement that this document review will "take years to complete"

5

is false. *See* Motion at 6. However, Revlon also notes that if Plaintiffs' counsel continues to insist on overbroad search terms and does not engage in good faith efforts to narrow down the universe of documents to be reviewed, this document review will indeed take much longer than necessary.

II.  **Plaintiffs' Requested Relief Is Improper and Premature**

As part of the instant Motion, Plaintiffs seek to have this Court enter an Order which would require Revlon and/or its counsel to "certify that the production contains all of the responsive documents responsive to the requests and that if any responsive documents are located subsequent to the production, counsel for Revlon will produce them and provide Plaintiffs and the Court with a written justification for the untimely production." *Id.* at 7. Such relief would be entirely premature and unnecessarily burdensome to Revlon and would, more likely than not, further delay the production of discovery Plaintiffs are seeking.

Plaintiffs cite a number of cases in the Motion which they argue demonstrate that an imposition of a certification requirement on production is not "uncommon." Plaintiffs' assertion is a gross mischaracterization of the law. In fact, upon a closer reading of these cases, courts typically only impose certification requirements when there are narrow discovery conflicts and/or when a defendant has acted so egregiously in its failure to comply with discovery that an explanation of its failures is warranted. The facts and circumstances surrounding Revlon's discovery production easily distinguish it from the cases cited by Plaintiffs and make it clear that a certification requirement is entirely unnecessary at this stage of litigation.

In *FG Hemisphere Associates LLC v. Democratic Republic of Congo,* 603 F.Supp.2d 1 (D.D.C. 2009), the court had previously granted a motion to compel and required Defendant Democratic Republic of Congo ("DRC") to certify certain discovery production only after they had failed to produce discovery pertaining to a singular issue. Here, Revlon has been in continuous

communication with Plaintiffs' counsel regarding the monumental undertaking required to appropriately review, catalogue, and respond to pending discovery requests. Unlike the defendant in *FG Hemisphere*, Revlon has not represented that it does not have responsive information, or that it has already provided the entirety of its responsive information, or that it simply will not comply with the requirements of discovery. Rather, Revlon has expressed to Plaintiffs that it simply needs more time to properly respond to their discovery demands in an appropriate manner and has been producing documents on a rolling basis.

Additionally, in *Arkwright Mutual Insurance Company v. National Union Fire Insurance Company of Pittsburgh, PA*, the court imposed a certification requirement on a non-party law office which had withheld *three documents* on the grounds of attorney-client privilege after being subpoenaed by Plaintiff. *Arkwright Mutual Insurance Company v. National Union Fire Insurance Company of Pittsburgh, PA*, No. 990-cv-7811, 1994 WL 142081 at *1 (S.D.N.Y. Apr. 14, 1994). Importantly, in rendering its decision, the Court in *Arkwright* reasoned as follows:

> As long as [the non-party]'s original document search was adequate, the requirement of certifying the completeness of its production *creates no additional burden*. If, on the other hand, [the non-party] considers it necessary to review its file in order to provide a certification, the universe of documents now identified by Arkwright is narrow enough that a focused search could be conducted efficiently.

*Id*. at 7 (emphasis added). This decision is clearly distinguishable from the issues in the matter before the Court. First, the Court in *Arkwright* required the certification requirement on a non-party following a narrowly tailored subpoena. Furthermore, unlike in *Arkwright* where the non-party claimed that it had produced all non-privileged documents, Revlon has never made this representation to Plaintiffs. Revlon is reviewing nearly one million pages of documents and has begun its rolling production—a task that is in process and will be completed as has been repeatedly

stated to Plaintiffs. To impose a certification requirement would be unduly burdensome for Revlon, Plaintiffs and, most importantly, this Court. Clearly, Plaintiffs seek to make Revlon vulnerable to future sanctions or penalties for non-production of documents of which it may not even be aware of at this juncture. However, given Revlon's good faith efforts in its production of documents and revision of discovery responses, this measure is unnecessarily punitive and will only serve to drain the parties' and Court's resources in further motion practice. For these reasons, a certification requirement is unnecessary, overburdensome and highly prejudicial to Revlon.

Plaintiffs further cite *Fresenius Medical Care Holding Inc. v. Baxter International, Inc.*, 223 F.R.D. 644 (N.D. Cal 2004), as support for their argument that a certification requirement is appropriate. In *Fresenius*, the Court imposed certification requirements on the defendant Baxter International, Inc. following defendant's deficient answers to interrogatories and document requests based upon its claim that it had deemed much of the information at issue was irrelevant. Contrary to this case, Revlon is not withholding documents or other information from Plaintiffs because it deems them irrelevant. Rather, it is in the process of reviewing, cataloging and responding to Plaintiffs' discovery requests in line with the agreed upon search terms and relevancy definitions that were painstakingly negotiated with Plaintiffs. A certification requirement, such as that imposed by the Court in *Fresenius*, would not serve its intended purpose in the instant matter; especially at this stage of the litigation.

Finally, Plaintiffs cite *Logan v. Gary Community School Corp.*, 2008 WL 5062802 (N.D. In. 2008), in support of its request for a certification requirement. *Logan* is an example of a defendant willfully and contumaciously disregarding discovery requests, which is, of course, not the case here . As has been previously discussed at length in this Opposition, Revlon is in the process of responding to Plaintiffs' discovery requests, but that process has been delayed for

reasons including, but not limited to, the voluminous amount of documentation that must be reviewed prior to production. In *Logan*, defendant replied to a litany of discovery requests and interrogatories with a single two-page document and denied being in possession of any other relevant materials. *Id.* at 4. The facts of Logan are in no way analogous to the discovery issues presented in the instant case, as Revlon has neither held out that it has fully responded to Plaintiffs discovery requests nor has it advised that it does not have responsive materials in its possession. In fact, it is simply the sheer amount of potentially responsive materials that has caused the delay. The certification requirement in Logan was, more or less, a punishment imposed on a defendant acting in bad faith. In the instant matter, Revlon is not acting in bad faith, but rather is attempting to comply with Plaintiffs' unrealistic production timelines as quickly as it can reasonably be expected to.

### III. Revlon's Discovery Efforts Are In Good Faith

Plaintiffs acknowledge that they received Revlon's Supplemental Responses and Objections to Interrogatories on August 9, 2024, and even though they do not address any specifics in those responses, Plaintiffs nonetheless seek broad sanctions against Revlon in their Motion. Revlon respectfully brings to the Court's attention the significant effort that went into those discovery responses.

As Plaintiffs are aware, Revlon sold off its hair relaxer business to The Colomer Group ("Colomer") in 2000 and stopped selling most of its hair relaxers at issue soon after it acquired Colomer in 2013. As such, Revlon sold no hair relaxers for 13 years between 2000 and 2013. It is in this complex scenario that significant discovery has been ongoing. To further complicate the discovery issues, Revlon recently went through a bankruptcy and reorganization; has had a restructuring of its business and significant organizational changes in the last few years; and

organizational changes since Spring 2024 affecting a number of employees who were involved with hair relaxer products. (Exhibit 3 - *See* Declaration of Nicea J. D'Annunzio). This reorganization also coincided with a restructuring of the Hawkins Parnell & Young LLP ("HPY") Litigation Team transition in June 2024. Since then, undersigned counsel has performed the following:

- HPY has located and personally spoken to numerous Revlon employees in the United States, and internationally, for scores of hours since June 2024.

- HPY has reviewed thousands of documents, many of which have been produced since July 2024.

- Since the June Litigation Team transition, certain HPY attorneys have worked primarily on this matter and have spent hundreds of hours working on the Revlon discovery issues.

- The Revlon manufacturing code system was decoded on August 9, 2024, to assist plaintiffs in understanding the Revlon manufacturing coding system in the interrogatory responses.

- Revlon provided discovery responses with a summary of over 100 components in hair relaxer products, shampoos, conditioners and other products in relaxer kits, and to the extent documents existed, they have been produced.

- An excel chart report entitled "Bill of Material Multilevel Report for Relaxer 08082024 (Privileged Highly Confidential Attorney Eyes Only)" was produced to resolve some of the discovery issues that existed. The chart contains 36,558 rows of information as to finished goods, brands, brand descriptions, sub-brands, component information, dates, component quantities, and product change information. Further, the code and column explanations were provided to plaintiffs to understand the excel chart report, and manufacturing and packaging documents referenced in the excel chart report were produced to the extent they existed.

- Similarly, an excel chart report entitled "Bill of Material Change Report Relaxer 08082024 (Privileged Highly Confidential Attorney Eyes Only)" was produced in an effort to get past some of the discovery issues that existed, which chart has 5,056 rows of information as to the finished goods changes for which Revlon has information. Further, the code and column explanations were provided to plaintiffs to help them understand the excel chart report and there was a production of documents referenced in the excel chart report to the extent they existed.

- Revlon has also provided two "Bucket List" letters requested by plaintiff counsel as to the documents produced by Revlon's prior discovery counsel Paul Weiss and as to the anticipated documents to be produced in the ongoing ESI production.

- A letter was also prepared to plaintiff counsel listing, as they requested, charts as to the Revlon brands and sub-brands as well as the years of sales of Revlon hair relaxer products

- along with separate charts as to the Colomer brands and sub-brands as well as their years of sales of relaxer products; thereafter, said information was then incorporated into a supplemental discovery response as plaintiff counsel also requested.
- Since June 2024, Revlon and counsel have been working diligently in an effort to respond to plaintiff's 7 sets of Requests for Production and 8 sets of Interrogatories.
- Revlon counsel has participated in multiple Meet and Confer Conferences since June 2024, and it was believed that the parties were trying to work out the discovery issues.
- In fact, the last Meet and Confer with plaintiffs' counsel was on August 22, 2024, at 3 pm central time, on another issue in which the Revlon Discovery Document Manager participated, and it was believed that the parties were getting along well. During that approximate 30-minute call there was no discussion of the Joint Status Report ("JSR") being amended to state plaintiffs' counsel intent to file a motion to compel discovery the next day against Revlon. Instead, the impression was that the parties would continue working through any discovery issues, past August 9, 2024.. Also, the plaintiff's August 20, 2024, Draft Joint Status Report did not include anything regarding a potential discovery motion against Revlon. It was not until 7:11 p.m. on the night of August 22, 2024, about 4 hours after the last Meet and Confer and one day before the filing of the subject motion, that Revlon was provided with a revised Draft Joint Status Report which revealed for the first time that plaintiffs were in fact intending to file a discovery motion against Revlon the next day.

(Exhibit 3 - *See* Declaration of Nicea J. D'Annunzio).

Since the June Litigation Team transition, Revlon has been working on discovery and has engaged others to assist with and expedite discovery. Given the amount of work that still needs to be accomplished, Revlon counsel respectfully requests the denial of any certification at this time as to substantial completeness or any type of explanation in the future when and if discovery may be located. Discovery is ongoing and we are dealing with present and former employees on two continents of a reorganized company. To date, Revlon has produced 3,973 documents totaling 41,376 pages; and by Plaintiffs' own admission, Plaintiffs are also having discovery issues with other parties.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC respectfully request that Plaintiffs' Motion to Compel be denied in its entirety.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Edward P. Abbot*
Edward P. Abbot
Erich J. Gleber
David E. Freed
HAWKINS PARNELL & YOUNG LLP
275 Madison Avenue, 10th Floor
New York, New York 10016
(212) 897-9655
eabbot@hpylaw.com
egleber@hpylaw.com
dfreed@hpylaw.com

Attorneys for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC