## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 |
| | Master Docket No. 23-cv-0818 |
| | Judge Mary M. Rowland |

## <u>MEMORANDUM OPINION AfND ORDER</u>

Before the Court is Defendants' Joint Motion to Dismiss the Consolidated Class Action Complaint.[1] [432]. For the reasons stated herein, Defendants' Joint Motion to Dismiss [432] is granted in part and denied in part.

### I.      Background[2]

The factual allegations from the Consolidated Class Action Complaint ([185], "Class Action Complaint") are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiffs allege they suffered economic injuries when they paid more for defective hair relaxer products manufactured, sold, and distributed by Defendants

---

[1] Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC's (collectively "Revlon") join this motion *and* filed a separate motion to dismiss the Consolidated Class Action Complaint to address the impact of its bankruptcy and reorganization proceedings. [434, 435]. The Court will address Revlon's motion independently.

[2] The Court incorporates the Background section of its Memorandum Opinion and Order [291] granting in part and denying in part Defendants' Joint Motion to Dismiss and Defendant McBride's Motion to Dismiss Plaintiffs' Master Long Form Personal Injury Complaint [106].

1

than they would have paid if they had known about the alleged unsafe nature of the products and risks to their health, or that they would not have purchased the products at all if they had known of the toxic nature and risks to their health. [185 ¶¶ 1, 6]. A subset of Plaintiffs also aver that they are further injured because they are at a significantly increased risk of developing uterine and ovarian cancer due to frequent exposure to defective hair relaxer products. *Id.* ¶ 7. Thus, these Plaintiffs have a need to incur costs of medical monitoring to aid the early detection and treatment of cancer. *Id.*

The named Plaintiffs who filed the Consolidated Class Action Complaint are 34 individuals who purchased Defendants' products for personal use and bring claims on behalf of themselves and two putative multi-state classes: a medical monitoring class and a national consumer class. *See id.* ¶¶ 13–47, 160, 162. In the alternative, Plaintiffs assert claims on behalf of single-state classes. *Id.* ¶¶ 161, 163. Plaintiffs seek relief in the form of (1) actual damages for their economic losses from their purchases of Defendants' hair relaxer products; (2) the establishment and funding of a medical monitoring program to pay their current and future medical monitoring expenses or, in the alternative, the costs of that medical monitoring; (3) statutory damages; (4) exemplary and/or punitive damages; (5) injunctive and declaratory relief; (6) pre-and post-judgment interest; (7) attorneys' fees and costs; and (8) such other relief deemed appropriate. *Id.* ¶ 8.

The Class Action Complaint contains 145 counts in total. Eleven counts are brought on behalf of the multi-state classes. Counts brought on behalf of the medical

monitoring class are: negligence (Count 1); negligent misrepresentation/omission (Count 2); negligence *per se* (Count 3); medical monitoring (Count 4); strict liability: design defect (Count 5); and strict liability: failure to warn (Count 6). Counts brought on behalf of the nationwide consumer class are: unjust enrichment (Count 8) and fraudulent omission (Count 11). Counts brought on behalf of the medical monitoring and nationwide consumer classes are: violation of state consumer protection statutes (Count 7); breach of express warranty (Count 9); and breach of implied warranty of merchantability/fitness for particular use (Count 10). The remaining counts are brought on behalf of statewide classes.

Defendants jointly moved to dismiss the Class Action Complaint in its entirety. [432]. They moved for dismissal pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 9. Defendants argue (1) Plaintiffs' have not alleged facts sufficient to establish Article III standing; (2) Plaintiffs' claims are preempted by the Food, Drug, and Cosmetic Act; and (3) even if Plaintiffs had standing and their claims were not preempted, Plaintiffs have not stated a claim upon which relief can be granted.

## II. Standard

The Court assumes the parties' familiarity with its explanation of the standards for Rule 12(b)(6) motions set forth in its first motion to dismiss opinion. *See* [291 at 5].

## III. Analysis

The Court begins with Defendants' standing argument.

3

### a. Standing

#### i. Article III Standing

Defendants contend Plaintiffs have not alleged facts demonstrating that they have Article III standing. To establish Article III standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Fox v. Dakkota Integrated Sys.*, LLC, 980 F.3d 1146,1151 (7th Cir. 2020).

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). There are two types of standing challenges: "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is in fact no standing." *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citation omitted). Here, Defendants raise no external facts to question the Court's jurisdiction, *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), but instead contend Plaintiffs have not sufficiently pleaded facts to establish Article III standing. *See* [594 at 5]. Thus, the Court treats Defendants' motion as a facial challenge, not a factual challenge.

"[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: 'Courts must accept as true all material allegations of the

4

complaint, and must construe the complaint in favor of the complaining party.'" *Silha*, 807 F.3d at 173 (alterations accepted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

Defendants argue Plaintiffs have not suffered an injury in fact, and thus, cannot establish Article III standing. "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013). "At the pleading stage, general factual allegations of [Article III] injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 2 F.4th 1002, 1008 (7th Cir. 2021).

According to Defendants, no injury in fact exists because Plaintiffs allege only economic injury arising from "the purchase of products that they 'entirely consumed' and that 'functioned for [them] as expected.'" [432 at 12] (quoting *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig,*, 903 F.3d 278, 280 (3d Cir. 2018). Defendants' argument hinges on their claim that Plaintiffs "concede, by admitting they used the products for several years without incident, that the products 'successfully did what the parties had bargained for and expected it to do'— relax hair." [432 at 13] (quoting *Johnson & Johnson*, 903 F.3d at 283). Defendants

5

miss the mark.

Defendants rely on *Johnson & Johnson*, where the plaintiff alleged that she purchased unsafe baby powder when she was promised safe baby powder but failed to contend that the unsafe powder provided her with an economic benefit worth even just one penny less than what she paid or that she would have paid less for the unsafe powder. 903 F.3d at 287–288. Moreover, the *Johnson & Johnson* plaintiff did not allege she developed or was at risk of developing ovarian cancer. *Id.* at 289. In contrast, Plaintiffs here allege that had they been aware of the unsafe nature of the Defendants' hair relaxer products, they either would have paid less for the products or would not have purchased them at all.[3] [185 ¶¶ 6, 291]. Moreover, Plaintiffs also allege Defendants' hair relaxer products are defective, toxic, and pose carcinogenic risks to Plaintiffs' health. *Id.* ¶¶ 6–7.[4]

In the Seventh Circuit, allegations that consumers would not have purchased a product or would have paid less for it if they knew of a defect are sufficient to establish injury in fact. *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir.

---

[3] *Johnson & Johnson,* 903 F.3d at 283, observed in dicta that "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value."

[4] Defendants' other cases are distinguishable. *Flynn v. FCA US LLC*, No. 15-CV-855-SMY, 2020 WL 1492687, at *4–5 (S.D. Ill. Mar. 27, 2020), *aff'd as modified*, 39 F.4th 946 (7th Cir. 2022) (finding no injury in fact where there was one hack of the 1.2 million vehicles with purported defects and the one hack was carried out by trained experts in a controlled setting); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (holding plaintiffs "must allege that *their* product *actually exhibited* the alleged defect" where, unlike here as described *infra*, plaintiffs did not allege that every product in the product line is defective) (citation omitted); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (holding loss in value does not constitute actual or imminent injury where, unlike here, the alleged injury rested on the hypothetical risk that consumers would "use their iPods in a risky manner.").

6

2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.").[5] *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

Defendants also assert that Plaintiffs' alleged injuries, including being at an increased risk of developing cancer, are speculative and do not plausibly establish standing because Plaintiffs do not identify the products at issue or challenged ingredients. *See* [432 at 13–14]. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. at 339. For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Id.* For an injury to be concrete, it must actually exist. *Id.* at 340.

Plaintiffs allege Defendants' hair relaxer products "contain constituent chemicals and active ingredients which include chemicals that disrupt the endocrine system, alter hormonal balance, cause inflammation, alter immune response, and

---

[5] Other circuits are in accord. *See In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022) ("This court has repeatedly recognized overpayment as a cognizable form of Article III injury."); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018) (finding standing where plaintiff alleged she paid more for product based on purported misrepresentation); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered"); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("[t]o the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an injury in fact") (internal quotation marks omitted).

cause other toxic responses that both initiate and promote cancer" [185 ¶ 2]. Specifically, Plaintiffs allege the ingredients contained in the products that are toxic compounds or lead to the formation and release of toxic compounds, include: phthalates, parabens, cyclosiloxanes, metals, lye and formaldehyde. *Id.* ¶¶ 116–17. In short, Plaintiffs allege that every hair relaxer product of the type at issue have contained and currently contain toxic chemicals. *See id.* ¶¶ 1–2, 116–26, 233–36.[6]

Where every product is alleged to be defective, the plaintiffs need not allege specific products are defective. *See Cole*, 484 F.3d at 723 (explaining a uniform defect can cause financial injury because "each plaintiff suffered economic injury at the moment she purchased a [product] because each [product] was defective); *Fishon v. Mars Petcare U.S., Inc.*, 501 F. Supp. 3d 555, 565 (M.D. Tenn. 2020) (holding that the plaintiffs alleged an injury in fact where they alleged that test results confirmed the presence of unwanted ingredients in the defendant's products, and "there [wa]s nothing in the [c]omplaint to suggest that only some of" the products contained the unwanted ingredients, so a "fair reading" of the complaint was that all the products contained the unwanted ingredients, including the plaintiffs' purchased products); *Agee v. Kroger Co.*, No. 22 C 4744, 2023 WL 3004628, at *5 (N.D. Ill. Apr. 19, 2023) ("[B]ased on the FDA report and peer-reviewed study referenced in Agee's complaint, it is plausible to infer, at least for purposes of a motion to dismiss under Rule 12(b)(6),

---

[6] Defendants' argument that Plaintiffs admit the products may not have had any defect because of an allegation that the products "have contained ingredients," [185 ¶ 116], is not convincing, especially in a Rule 12(b)(6) motion where the Court "construe[s] the complaint in the light most favorable to the plaintiff . . . and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181.

that Kroger's lidocaine patches routinely fail to adhere to the body for the promised length of time.").

The plaintiffs in the cases Defendants cite did not allege uniform defects or are otherwise distinguishable. *See, e.g.*, *Bowen v. Energizer Holdings, Inc.*, No. CV214356MWFAGRX, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) (plaintiff failed to adequately allege particularized injury in fact where she purchased "numerous" of defendant's brand sunscreen products but only alleged that *certain* of the products contained benzene and did not identify whether the products she purchased contained benzene).

Defendants' argument that mere exposure to a harmful ingredient does not establish an injury in fact is misplaced. As Plaintiffs responded and the Court has found, Plaintiffs alleged a cognizable economic injury—not "mere exposure." *Cf. Huertas v. Bayer U.S., LLC*, Civil Action No. 21-20021 (SDW)(CLW), 2022 WL 3572818, at *5 (D.N.J. Aug. 19, 2022) (explaining the plaintiff asserted general worthlessness of the product but did not allege any lost money from product that was wasted or thrown away after a recall, nor did the plaintiff plead the products did not work as advertised); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022) (noting plaintiffs did not allege baby food products failed to perform as intended, thus the only basis for their alleged harm was future harm).

Accordingly, the Court finds Plaintiffs have plausibly pleaded a cognizable economic injury on behalf of themselves and the putative class to confer Article III

standing.

### ii. Standing to Pursue Claims Brought Under the Laws of States in Which Plaintiffs Do Not Reside

Defendants also challenge Plaintiffs' standing to assert claims on behalf of all putative class members. [432 at 14–16]. Here, the named Plaintiffs are residents of seventeen states and seek to represent class members from all U.S. states and territories. [185 ¶¶ 14–47, 160, 162]. Defendants argue Plaintiffs lack standing to bring state law claims on behalf of class members in other states and territories, and therefore the Court must dismiss Plaintiffs' common law claims to the extent they are based on the laws of states in which no named Plaintiff resides. [432 at 15–16].

Plaintiffs respond they should be allowed to proceed with their claims on behalf of a multi-state consumer class under the statutory consumer protection laws of various states. [510 at 8–9] (making no mention of other *common law* claims asserted on behalf of the multi-state classes and apparently conceding Plaintiffs lack standing to bring those claims on behalf of others).

For the reasons stated in *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300 (N.D. Ill. Mar. 2, 2023), the Court agrees with Plaintiffs. *Id.* Like here, the plaintiffs in *Acosta-Aguayo* asserted statutory consumer protection claims on behalf of a multi-state class, including states where the named plaintiffs were not personally injured or residents. *Id.* at *8. Nevertheless, this Court invoked the prevailing view that this issue is best framed through the class certification lens, rather than standing, and permitted plaintiffs to proceed with the claims beyond the pleading stage. *Id.* So too here.

The named Plaintiffs have standing to assert statutory consumer law claims in jurisdictions in which no named Plaintiffs reside or purchased hair relaxer products and dismisses Plaintiffs' common law claims to the extent they are based on the laws of states in which no named Plaintiff resides.[7]

### b. Preemption

Defendants assert that all of Plaintiffs' claims are expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"). [432 at 16–18]. Preemption is an affirmative defense and Defendants bear the burden of proof. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Affirmative defenses "typically turn on facts not before the court at [the dismissal] stage." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Dismissal is only appropriate when the "plaintiff pleads [her]self out of court by alleging facts sufficient to establish" the defense. *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up).

"Express preemption occurs when a federal statute explicitly states that it overrides state or local law." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 696 (7th Cir. 2005). Relevant here, the FDCA preempts any state laws that impose any "requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C.

---

[7] Plaintiffs are residents of seventeen states: Alabama; Arizona; California; Colorado; Florida; Illinois; Indiana; Louisiana; Maryland; Michigan; Mississippi; Missouri; Nevada; New Jersey; Pennsylvania; Tennessee; West Virginia.

§ 379s(a).

In support of their preemption argument, Defendants claim "Plaintiffs allege that Defendants are defrauding consumers by failing to identify the constituent ingredients that compose the fragrance in their products." [432 at 18] (citing [185 ¶ 122] (alleging that "natural and synthetic EDCs are present in some of Defendants' [relaxer products] under the guise of 'fragrance' and 'perfumes'").) According to Defendants, this claim seeks to impose a requirement that is different from those set forth in the FDCA and thus is preempted. Specifically, Defendants contend Plaintiffs' claim is preempted by regulations promulgated by the Food and Drug Administration pursuant to the FDCA, under which manufacturers are not required to identify constituent fragrance ingredients on product labelling. 21 C.F.R. § 701.3(a).

Plaintiffs respond that Defendants have misconstrued their claims and explain that they assert a "failure by Defendants to disclose that the Toxic Hair Relaxer Products are unsafe and unhealthy." [510 at 10] (citing [185 ¶ 3] ("Defendants systematically omitted, misrepresented, and continue to omit and misrepresent the significant health impacts of Toxic Hair Relaxer Product use.")). Plaintiffs argue that disclosure of health risks is not only not different from what federal law provides but is required by federal regulation. [510 at 9] (discussing 21 C.F.R. § 740.1(a), which requires cosmetic products "bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product").

At this stage of the proceedings, the Court agrees with Plaintiffs – the FDCA does not preempt their claims. Plaintiffs' claims are more aptly construed as failure

to warn rather than seeking to have fragrance ingredients identified on product labels. Thus, 21 C.F.R. § 740.1(a), not 21 C.F.R. § 701.3(a) applies here. Defendants have not explained how Plaintiffs' claim requires anything different from or in addition to 21 C.F.R. § 740.1(a). Therefore, Plaintiffs' claims are not expressly preempted. *See Bojko v. Pierre Fabre USA Inc.*, No. 22 C 6728, 2023 WL 4204663, at *5 (N.D. Ill. June 27, 2023) (finding that the plaintiffs' claim based on a lack of warning about the presence of benzene in shampoo was not preempted); *Henning v. Luxury Brand Partners, LLC*, No. 22-cv-07011-TLT, 2023 WL 3555998, at *6 (N.D. Cal. May 10, 2023) (holding claims based on lack of warning and sale of adulterated products are not preempted).[8]

Defendants' argument that Plaintiffs have not articulated violations of the FDCA's misbranding and adulteration prohibitions or to show that any product "contains any poisonous or deleterious substance which may render it injurious" is unavailing. [432 at 11] (quoting 21 U.S.C. § 361(a)). Plaintiffs have alleged violations of the FDCA's misbranding and adulteration prohibitions, *see e.g.*, [185 ¶ 224], and facts showing Defendants' hair relaxer products contained toxic substances, *see e.g.*, *id.* ¶¶ 2, 116–17.

Defendants assert in a footnote that Plaintiffs claims are also impliedly

---

[8] Defendants sole case is *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020). As the Court has already explained, the *Critcher* plaintiffs alleged they were injured when certain product labels omitted information that the creams could not be fully dispensed from their containers. *Id.* at 36. Unlike here, plaintiffs did not claim that the product contained toxic chemicals or ingredients. As Plaintiffs point out, that distinction is dispositive given Plaintiffs' claim that Defendants failed to warn of toxic substances is consistent with the FDCA.

13

preempted because the FDCA occupies the field and Plaintiffs' demands conflict with the FDCA. [432 at 18 n.9]. The Court finds no field preemption or conflict preemption either.

In sum, the Court finds that Defendants have not met their burden to show that Plaintiffs' claims are preempted.[9]

### c. Economic Loss Doctrine

Defendants next argue Plaintiffs' claims for negligence (Counts 1, 3), strict liability (Counts 5, 6), and medical monitoring (Count 4) should be dismissed because economic damages are barred by the economic loss doctrine.[10] The economic loss doctrine precludes tort remedies for product defects when the only damage alleged is to a product caused by the product itself. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 791–92 (E.D. La. 2010) (citing *E. River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871–75 (1986)). In other words,

---

[9] The Court need not address Defendants' argument that the FDCA's exemption for product liability claims does not apply here. [432 at 17]. Moreover, Plaintiffs appear to concede the point by not addressing it in their response. [510 at 9–11].

[10] In the introductory remarks to this argument, Defendants assert that "[p]roduct identification is a threshold requirement, and for Plaintiffs' claims to survive they must 'identify which defendant manufactured the product or products responsible for his injuries.'" [432 at 19] (citing *Setliff v. E.I. Du Pont de Nemours & Co.,* 38 Cal. Rptr. 2d 763, 765 (Cal. Ct. App. (1995))). Defendants' reliance on *Setliff* is unpersuasive. In *Setliff,* the plaintiff, a longtime employee of Arne's Paint Store, alleged that 40 manufacturers of paint, solvents, strippers, and glue products were responsible for his injuries but also submitted a "judicial admission that he could not identify the specific substance responsible for his injury." 38 Cal. Rptr. 2d at 766. Defendants assert that Plaintiffs' claims fail because they have not identified the products they purportedly used, and that Plaintiffs cannot rely on the Short-Form Complaints to cure pleading deficiencies as with the Master Personal Injury Complaint. But the Class Action Complaint identifies the brand names under which Defendants produced hair relaxer products, [185 ¶ 1], and the brands that each Plaintiff used, *id.* ¶¶ 13–47. The Class Action Complaint also identifies the offending chemicals. *Id.* ¶¶ 116–17. That is enough at this stage of the proceedings.

14

"plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses" to avoid preclusion. *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 847–48 (C.D. Cal. 2020).

Defendants argue the economic loss doctrine, as adopted in each of the jurisdictions invoked, forecloses Plaintiffs' negligence, strict liability, and medical monitoring claims. [432 at 19–21]. They assert the doctrine bars recovery because Plaintiffs only seek economic damages in the Class Action Complaint and allegations that increased risk of developing cancer do not plausibly constitute personal injury. *Id.* at 20. Plaintiffs respond that they have a present need for medical monitoring and seek the costs of a diagnostic monitoring program that provides necessary care. [510 at 11–12]. Plaintiffs further argue that to the extent the doctrine applies to the relief sought, this case falls within two recognized exceptions to the doctrine: (1) plaintiff's injury resulted from a defect making the product hazardous or unreasonably dangerous; or (2) plaintiff's damages were proximately caused by defendant's intentional, false representations. *Id.* at 12 (citing *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 587–90 (1989); *see In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (1997); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d at 791–92).

As a preliminary matter, contrary to Defendants' assertions, not all relevant states have adopted the economic loss doctrine. *See, e.g.*, *Corp. Air v. Pratt & Whitney Canada Corp.*, No. CV 08-33-BLG-RFC, 2009 WL 10701737, at *6 (D. Mont. Aug. 21,

2009) ("the Montana Supreme Court has expressly rejected the economic loss doctrine"). Furthermore, as Plaintiffs argue, several jurisdictions apply exceptions to the rule based on fact-intensive inquiries. *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 209–11 (Ariz. 1984) (explaining each case must be examined to determine whether the facts preponderate in favor of the application of tort law or commercial law exclusively by weighing three factors: (1) the nature of the product defect; (2) the manner in which the loss occurred; and (3) the types of loss or damage that resulted; and holding tort theory was available to plaintiff); *Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854, 858 (1982) ("when a defective product creates a situation potentially dangerous to persons or other property, and loss occurs as a result of that danger, strict liability in tort is an appropriate theory of recovery, even though the danger is confined to the product itself") (citing another source).

Accordingly, the Court declines to bar Plaintiffs' claims under the economic loss rule at this stage. *See Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 1548872, at *8 (N.D. Cal. Apr. 7, 2015) (denying motion to dismiss on theory of economic loss rule absent sufficient factual development).

### d. Sufficiency of Pleadings (First and Third through Sixth Cause of Action)

#### i. Negligence

Defendants challenge Plaintiffs' negligence *per se* claim (Count 3) on the basis that none of the relevant jurisdictions—the states (and D.C.) in which class members reside—recognize such claims as independent causes of action. [432 at 21]. At issue

is the law in the seven states where Medical Monitoring named Plaintiffs reside: Arizona, California, Florida, Maryland, Missouri, Nevada, and Pennsylvania.

The Court agrees that the following states do not recognize a stand-alone cause of action for negligence *per se*: Arizona, *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. 2021) ("Negligence *per se* is not a cause of action separate from common law negligence. It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care.") (quoting another source); California, *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) ("The doctrine of negligence *per se* is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.") (cleaned up); Maryland, *Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 445 (D. Md. 2016) ("there is no cause of action for negligence *per se* under Maryland law, and to the extent [plaintiff] alleges one, it is dismissed"); Nevada, *Garland v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-00147-GMN-VCF, 2013 WL 1195647, at *5 (D. Nev. Mar. 21, 2013) ("Negligence *per se* is only a method of establishing the duty and breach elements of a negligence claim.") (quoting *Cervantes v. Health Plan of Nev., Inc.,* 263 P.3d 261, 264 n. 4 (Nev. 2011), *reh'g denied,* Jan. 23, 2012); and Pennsylvania, *Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics*, Civil Action No. 20-1926, 2020 WL 7353105, at *3 (E.D. Pa. Dec. 9, 2020) ("Under Pennsylvania law, negligence *per se* is not a separate cause of action, but is instead a theory of liability that supports a negligence claim.") (cleaned up).

But the Court disagrees with Defendants that the following states categorically do not recognize an independent cause of action for negligence *per se*: Florida, *Metz v. Wyeth LLC*, 872 F. Supp. 2d 1335, 1343 (M.D. Fla. 2012) (explaining that violation of law is negligence *per se* under Florida law depends on whether the legislature intended a private right of action under the statute); and Missouri, *Elkins v. Acad. I, LP*, 633 S.W.3d 529, 537 (Mo. Ct. App. 2021) (explaining Missouri courts recognize a cause of action of negligence *per se*).

Accordingly, the Court grants with prejudice, Defendants' motion to dismiss a stand-alone common law claim for negligence *per se* that arises under the laws of Arizona, California, Maryland, Nevada, and Pennsylvania only. However, the Court notes that this does not affect or prejudice Plaintiffs' ability to use evidence of the violation of a statute to support their negligence claims.

Defendants also assert that Plaintiffs have not plausibly pleaded general negligence. [432 at 22]. To state a claim of general negligence, a plaintiff must allege facts showing the defendant owed plaintiff a legal duty, that the defendant breached duty, and that defendant's breach proximately caused plaintiff's injury. *E.g.*, *Lemberg v. JPMorgan Chase Bank, N.A.*, No. 17-cv-05241-JSC, 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018) (citing *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (Cal. 2001)).

Plaintiffs allege Defendants had a duty to "exercise reasonable care in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing of their hair relaxer products" and to "ensure that the Toxic Hair Relaxer Products it sold in the United

States were safe for human consumption, contained only the ingredients stated on the label, and were not adulterated." [185 ¶¶ 183–84]. Plaintiffs further state Defendants' had a duty to "exercise reasonable care in the advertising and sale of their hair relaxer products include[ing] a duty to warn Plaintiffs and the other Class members of the risks and dangers associated with their Toxic Hair Relaxer Products that were known or should have been known to Defendants at the time of the sale of their Toxic Hair Relaxer Products to Plaintiffs" and "to remove, recall, or retrofit the unsafe and/or defective Toxic Hair Relaxer Products," *id.* ¶¶ 185–86. Plaintiffs allege Defendants breached these duties in several ways, including by manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, selling, or distributing their hair relaxer products negligently, recklessly, or with extreme carelessness, and by failing to adequately warn of the risks and dangers of products. *Id.* ¶ 190. Finally, Plaintiffs pleaded Defendants' acts and omissions were a proximate cause of their injuries and harm experienced by the other class members. *Id.* ¶ 192. Plaintiffs' allegations give rise to the inference that Defendants' conduct proximately caused Plaintiffs' injuries and Plaintiffs state a general negligence claim.[11]

Defendants acknowledge as manufacturers of hair relaxer products that they

---

[11] Defendants rely on cases that are not dispositive. *See Setliff v. E.I. Du Pont de Nemours & Co.*, 38 Cal. Rptr. 2d 763, 768 (Ct. App. 1995) (granting motion for judgment on the pleadings where plaintiff admitted in the amended complaint that he was "unable to identify which of the products separately or jointly injured him" and also admitted he could not identify the specific chemicals and toxics involved in his injury or which defendant manufactured the product or products responsible for his injury); *Mountain Club Owner's Ass'n v. Graybar Elec. Co.*, No. CIV. 2:13-1835 WBS K, 2014 WL 130767, at *2 (E.D. Cal. Jan. 14, 2014) (finding "Plaintiff's failure to identify the alleged defect in the electrical cable is fatal to its strict liability claim.").

have a general duty to Plaintiffs "to exercise reasonable care in manufacturing [their] products so that they are reasonably safe for intended uses" but argue that their obligation to warn of danger is limited to only those of which Defendants have actual or constructive knowledge. [432 at 22] (discussing *Oakes v. E.I. Du Pont de Nemours & Co.*, 77 Cal. Rptr. 709, 713 (Cal. Ct. App. 1969)). Defendants contend Plaintiffs have not sufficiently alleged Defendants had the requisite knowledge of risks allegedly associated with their hair relaxer products. *Id.* However, Plaintiffs specifically allege "Defendants knew or should have known through the exercise of reasonable care of the dangers associated with the normal and/or intended use of their hair relaxer products. In particular, Defendants knew or should have known that their Toxic Hair Relaxer Products significantly increase the risk of uterine and ovarian cancer." [185 ¶ 187]. Plaintiffs also contend they did not know about the hair relaxer's risks, and that Defendants knew or should have known that ordinary consumers would not be aware of the risks. *Id.* ¶¶ 14–47, 189.

Defendants assail Plaintiffs' reliance on articles discussing the results of scientific studies that found significantly higher rates of uterine cancer in women who used hair relaxers (the "Chang Article") and that frequent use of hair relaxers were strongly associated with ovarian cancer (the "White Article") but were not published until 2022 and 2021, respectively. [432 at 22]. Consistent with its opinion on the motion to dismiss the Master Personal Injury Complaint, the Court finds these are not issues capable of being resolved on a motion to dismiss. *See* [291 at 11].

In sum, the Court dismissed with prejudice Plaintiffs' negligence *per se* claims

that arises under the laws of Arizona, California, Maryland, Nevada, and Pennsylvania. The Court otherwise denies Defendants' motion to dismiss Plaintiffs' negligence claims.

### ii.        Design Defect

Defendants seek to dismiss Plaintiffs' claim that Defendants' hair relaxer products were "unsafe, defective and unreasonably dangerous" and "caused serious injuries and death, including but not limited to uterine cancer and ovarian cancer" because of their defective design (Count 5). [185 ¶ 254]. To state a design defect claim, a plaintiff must show that "(1) the defendant manufactured or distributed the product in question, (2) the product has a defect that renders it unreasonably dangerous, and (3) the unreasonably dangerous condition is the proximate cause of the plaintiff's injury." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999).

Defendants argue Plaintiffs have not stated a strict liability design defect claim. [432 at 23–24]. They contend Plaintiffs' allegations are conclusory and fail to identify specific products or challenged ingredients to show what, if any, design flaw caused Plaintiffs' alleged injuries. *Id.* Plaintiffs have alleged more than just that Defendants' hair relaxer products were unreasonably dangerous. As Plaintiffs point out, the Court found Plaintiffs' claim was sufficiently pleaded in the Master Personal Injury Complaint and the same relevant contentions are re-alleged in the Class Action Complaint. *See* [291 at 12–13]. *Compare* [185 ¶¶ 1–2, 116–126, 233–236, 456, 466] *with* [106 ¶¶ 55, 71, 76, 86, 118].

Plaintiffs allege with greater specificity than the cases upon which Defendants

rely. *Tsavaris v. Pfizer, Inc.*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *1 (S.D. Fla. Feb. 1, 2016) (explaining, unlike here, plaintiff did not plead any facts identifying the prescription drug's defect, such as how the drug caused her cancer); *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (dismissing design defect claim where, unlike here, plaintiff only alleged symptoms of a defect—the injuries—rather than the defect itself); *Witt v. Howmedica Osteonics Corp.*, No. 13-cv-20742-JLK, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) (finding plaintiff failed to identify defective components, such as part of an implant, which can be analogized to ingredients).

The Court denies Defendants' motion to dismiss Plaintiffs' strict liability design defect claim.

### iii. Failure to Warn

Defendants seek to dismiss Plaintiffs' failure to warn claim (Count 6) because Plaintiffs have not alleged facts to support the claim. "To establish strict liability for failure to warn, plaintiff must prove that defendant (a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution." *Witt v. Howmedica Osteonics Corp.*, No. 13-CV-20742-JLK, 2013 WL 6858395, at *3 (S.D. Fla. Dec. 30, 2013).

Defendants argue Plaintiffs do not provide the basic facts to maintain a failure to warn claim such that it is impossible to discern whether Defendants owed

22

Plaintiffs a duty to warn or how any warnings were inadequate and that Plaintiffs have not alleged Defendants caused their injuries. [432 at 24–25]. The Court disagrees. Plaintiffs allege that Defendants did not satisfy their duty to warn of the products' "unsafe, defective, and unreasonably dangerous condition" and that the products "could cause serious injuries and death when used in an intended or reasonably foreseeable manner, including but not limited to uterine and ovarian cancer." [291 ¶¶ 269–70]. Plaintiffs specifically identify the toxic chemicals alleged to be in the products and describe how those chemicals can alter the body's endocrine system resulting in significant adverse health effects, *id.* ¶¶ 118–25, and claim they would not have purchased or used Defendants' hair relaxer products had they known the true facts about the products, *e.g.*, *id.* ¶ 6. The Court found substantially similar allegations sufficient to state a failure to warn claim in the Master Personal Injury Complaint. *See* [291 at 13–15].

This differs from the pleadings in Defendants' cases. *Dero Roofing, LLC v. Triton, Inc.*, No. 2:21-cv-688-SPC-MRM, 2022 WL 2104287, at *4 (M.D. Fla. June 10, 2022) (dismissing failure to warn claim where plaintiff failed to even explain how the information provided was inadequate); *Tsavaris v. Pfizer, Inc.*, No. 1:15-CV-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) (dismissing failure to warn claim where the complaint did not adequately present the alleged defects in the warnings or explain how the warnings should have been rewritten to avoid any alleged inaccuracies).

Defendants also claim the Class Action Complaint is devoid of facts

showing Defendants knew or should have known that some ingredients in their products could cause injury and that Defendants' labeling was inadequate. [432 at 25]. But as discussed above, Plaintiffs sufficiently allege knowledge. *See, e.g.*, [185 ¶¶ 70, 187].

Thus, the Court denies Defendants' motion to dismiss Plaintiffs' strict liability failure to warn claim.

### iv.    Medical Monitoring

Defendants argue Plaintiffs' claim for medical monitoring (Count 4) should be dismissed because "the vast majority" of states in where Plaintiffs assert such a claim do not recognize an independent cause of action for medical monitoring. [432 at 25–26]. Defendants contend that Plaintiffs concede the unavailability of a cognizable claim for medical monitoring in most relevant jurisdictions because Plaintiffs only pleaded alternate statewide claims for medical monitoring in Florida and Pennsylvania. *Id.* at 25. At issue are five states where Medical Monitoring named Plaintiffs reside: Arizona, California, Maryland, Missouri, and Nevada. Defendants do not contest that there are independent causes of action for medical monitoring in Florida and Pennsylvania. *Id.*

The Court agrees that the following states do not recognize a stand-alone cause of action for medical monitoring: Arizona, *Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 33–34 (Ariz. Ct. App. 1987) (recognizes medical monitoring as a remedy, not independent tort); California, *Lockheed Martin Corp. v. Superior Court*, 63 P.3d 913, 918 (Cal. 2003) (no-injury medical monitoring may be sought "not as a separate tort

but simply an item of damages"); Maryland, *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 77 (Md. 2013) (citation omitted) (medical monitoring is a "compensable element of damage under traditional tort theories of recovery," not an independent claim), *modified in part on other grounds*, 71 A.3d 150 (Md. 2013), Missouri, *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 717 (Mo. 2007) (permitting medical monitoring damages when liability is established under a traditional tort law theory of recovery); and Nevada, *Badillo v. American Brands, Inc.*, 16 P.3d 435, 437 (Nev. 2001) ("We conclude that Nevada common law does not recognize a medical monitoring cause of action but the remedy of medical monitoring may be available.").

Accordingly, the Court grants with prejudice, Defendants' motion to dismiss a stand-alone claim for medical monitoring that arises under the laws of Arizona, California, Maryland, Missouri, and Nevada; and denies Defendants' motion to dismiss as to claims arising under the laws of Florida and Pennsylvania. However, the Court notes that this does not affect Plaintiffs' ability to recover medical monitoring damages to the extent provided for by law.

### e. Fraud-Based Claims (Second, Seventh, and Eleventh Causes of Action)

Defendants contend that Plaintiffs' fraud-based claims—negligent misrepresentation/omission (Count 2), fraudulent omission (Count 11), and violations of state consumer protection statutes (Count 7)—are procedurally and substantively defective as they are not pled with the requisite heightened specificity and fail to provide sufficient facts to support fraud claims. [432 at 26–32].

The Court discussed Rule 9(b)'s heightened pleading standards at length in its

25

first motion to dismiss opinion and incorporates that explanation here. *See* [291 at 15–17].

### i. Negligent Misrepresentation/Omission and Fraudulent Concealment

Defendants assert that the Court found "identical [fraud] claims based on identical allegations" deficient in the Master Personal Injury Complaint and argue that the result should be the same here. *Id.* at 27 (citing [291 at 15–17]). In its first motion to dismiss decision, the Court found fatal Plaintiffs' failure to identify specific omissions of material fact or otherwise support in detail their allegations that Defendants concealed material facts about the dangers of their products. [291 at 15–16].

Plaintiffs respond that the omission claim allegations in the Class Action Complaint overcome earlier deficiencies. [510 at 30] (citing [185 ¶¶ 3, 99(g), 101–26]). But as Defendants point out, nearly all of the allegations Plaintiffs cite to support their argument appeared in the Master Personal Injury Complaint. *Compare* [185 ¶¶ 3, 99(g), 101–26] *with* [106 ¶¶ 6, 58, 59(g), 60–62, 70–96]. *See* [510 at 1] (Plaintiffs admitting that the Class Action Complaint "rests on the same factual foundation as the master long form complaint," and that the underlying allegations are "essentially the same."). Thus, the previously identified deficiencies remain uncured.

The Court also previously found the allegations in the Master Personal Injury Complaint did not show there was a special or fiduciary relationship between the parties as required to assert a fraudulent omission claim. [291 at 16]. Plaintiffs claim the Class Action Complaint overcomes this deficiency because (1) some state laws at

26

issue give rise to a duty to disclose the products' health risks and (2) the known potential deadly dangers of Defendants' products were known only to Defendants. Both arguments fail. Even if some state laws did give rise such a duty, the Complaint does not identify those laws. As for the second argument, superior knowledge is not sufficient to create such a duty. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012) ("asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship"); *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1053, 1058 (N.D. Ill. 2022) (no duty to disclose despite alleged safety defects that defendant "was 'in a superior position to know'" about given the parties' lack of a special or fiduciary relationship). Thus, the allegations do not support that the alleged concealment was "'more than a mere passive omission of facts during a business transaction' that was 'done with the intention to deceive under circumstances creating an opportunity and duty to speak.'" [291 at 16–17] (quoting *Rodriguez*, 596 F. Supp. 3d at 1057–58.

For these reasons the Court finds Plaintiffs have not met the heightened pleading standard as to their negligent misrepresentation/omission and fraudulent omission claims.

### ii. Consumer Protection

Defendants contend Plaintiffs' state consumer protection claims (Count 11) share the same deficiencies as the other fraud-based claims. [432 at 30–32]. Plaintiffs do not rebut Defendants' argument. *See* [510 at 31–32]. For the same reasons set forth in the first motion to dismiss opinion, the Court finds that Plaintiffs' claims of

deceptive acts or practices under the consumer fraud statutes do not meet the heightened pleading standard of Rule 9(b) as the claims are based on substantially similar allegations. [291 at 17].

Defendants argue consumer protection claims predicated on an unfairness theory should not survive here, unlike in the Master Personal Injury Complaint, because several state statutes at issue expressly preclude asserting such claims through a class action or absent pre-suit notice to the defendant or state attorney general. [432 at 30–32]. Indeed, some of the states do bar the kind of class action Plaintiffs bring here: Ala. Code § 8-19-10(f); La. Stat. Ann. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Va. Code Ann. § 59.1-204. Plaintiffs respond that Rule 23 trumps the procedural provisions of state statutes and argue the class claims under the state statutes can proceed in federal court. [510 at 31–32].

A court in this district examined this issue in *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510 (N.D. Ill. 2019). The court explained the Seventh Circuit has indicated that Justice Scalia's plurality opinion in *In Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) controls the issue in the Circuit. *Id.* at 553 (citing *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir. 2011) (Shady Grove "holds that Rule 23 applies to all federal civil suits, even if that prevents achieving some other objective that a court thinks valuable"); *State Farm Life Ins. Co. v. Jonas*, 775 F.3d 867, 869 (7th Cir. 2014) ("[F]ederal procedures govern in federal litigation[.]" (citing *Shady Grove*, 559 U.S. 393, 130 S.Ct. 1431))). In *Shady Grove*, the Supreme Court addressed whether a New

28

York class action bar conflicted with Rule 23 and, if so, whether the federal rule or the state rule applied, and Justice Scalia's plurality decision took the position that properly enacted federal rules of procedure always apply in federal court. *Shady Grove*, 559 U.S. at 410.[12] Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' consumer unfairness claims under state law based on the class action bars or notice requirements in those states.

In sum, the Court grants Defendants' motion to dismiss Plaintiffs' state consumer protection claims but only as to fraud-based claims. Defendants' motion to dismiss Plaintiffs' "unfairness" consumer protection claims is denied.

### e. Breach of Warranty (Ninth and Tenth Causes of Action)

Defendants dispute that Plaintiffs have stated a claim for breach of express warranty (Count 9) or breach of implied warranty (Count 10) because (1) Plaintiffs failed to allege privity; or (2) failed to plead an express warranty.

*First*, Defendants argue Plaintiffs fail to allege privity as required to maintain warranty claims in various jurisdictions. [432 at 32]. Although Defendants did not specifically identify the states in which they challenge privity, judging by the authorities cited, they contest Plaintiffs' failure to plead the requisite privity in California, Florida, Illinois, and Indiana for both express and implied warranty

---

[12] Even if Justice Steven's concurring opinion from *Shady Grove* applied, which took the position that properly enacted federal rules generally apply in federal court, unless the federal rule "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right," Defendant has not identified any authority for concluding that the class action bars at issue are so intertwined with a state-created right or remedy as to justify finding that it trumps Rule 23 under Justice Stevens's analysis. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d at 553.

claims and the requisite privity in Alabama and Arizona for implied warranty claims.[13] Plaintiffs concede they do not plead privity for purposes of implied warranty claims under Alabama, Arizona, Florida, or Illinois law on the grounds that the Plaintiffs asserting claims under the laws of those states did not bring claims for breach of implied warranty. [510 at 33]. Plaintiffs contend they have sufficiently pleaded privity for their California and Indiana breach of express and implied warranty claims, as well as for their Florida and Illinois express warranty claims. *Id.*

As for California, the Court agrees with Plaintiffs to the extent they are pursuing claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et al, [185 ¶¶ 645–77], instead of California Commercial Code § 2313–14, *et seq.*, [*id.* ¶¶ 306–44], no privity is required. As for Indiana, the Court agrees with Plaintiffs to the extent they are pursuing claims under an implied warranty of merchantability theory rather than an implied warranty of fitness for a particular purpose theory. *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011) ("Vertical privity is not required for a claim of breach of the implied warranty of merchantability even if that claim sounds in contract. . . . Still, vertical privity is required for . . . breach of implied warranty of fitness for a particular purpose.").

As for express warranty claims in Florida, Illinois, and Indiana, Plaintiffs argue contractual privity is not required where express warranties take the form of statements that defendants made directly to plaintiffs. [510 at 34] (citing *Smith v.*

---

[13] As Plaintiff points out, Defendants appear to challenge privity for breach of warranty claims arising under Connecticut, Georgia, New York, North Carolina, and Washington law, but no Plaintiff has brought claims arising under the laws of those states. *See* [510 at 33 n.20].

*Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) (finding no privity requirement where "the express warranty the manufacturer allegedly breached is contained on the packaging of" the allegedly defective product); *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 766 (N.D. Ill. 2022) (holding that the defendant's "written affirmations in its marketing materials gave rise to an express warranty, and so plaintiffs weren't required to allege privity"); *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1191 (Ind. Ct. App. 2020) ("[A] remote purchaser was 'not precluded from suing [a manufacturer] because of lack of privity of contract, where [the manufacturer] allegedly made express warranties' directly to the remote purchaser.") (quoting *Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1302 (Ind. 1987))). The Court agrees as a matter of law.

*Second*, Defendants argue Plaintiffs' breach of warranty claims are insufficiently pleaded because Plaintiffs fail to identify any language or terms of an alleged express warranty or reliance thereon and fail to demonstrate Defendants' products were not "fit for an ordinary purpose."[14] [432 at 32–35]. An express warranty claim requires that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891–92 (N.D. Ill. 2014). *See also In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 905 (W.D. Mo. 2009)

---

[14] Plaintiff contends Defendants' arguments regarding whether Plaintiffs adequately allege breach of fitness for a particular purpose turns on state law variations. [510 at 35 n.22]. Accordingly, consistent with the approach in the first motion to dismiss opinion, the Court defers resolving this issue.

(noting "[e]very state has adopted the Uniform Commercial Code" setting forth these same elements for a breach of express warranty claim). To state a claim for breach of express warranty, a plaintiff "must show that [defendant] breached an affirmation of fact or promise that was made a part of the basis of the bargain." *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 756 (N.D. Ill. 2022) (cleaned up). An implied warranty claim requires a plaintiff to "allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Corwin*, 74 F. Supp. 3d at 891 (cleaned up).

Here Plaintiffs allege Defendants made affirmations of fact "through their written literature, packaging and labeling, and through their advertisements, expressly warranted that the Toxic Hair Relaxer Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks" [185 ¶ 309]. Plaintiffs identified specific misrepresentations from Defendants' marketing for hair relaxer products, such as statements that the products are "gentle," "natural," "without . . . harsh chemicals," and can be used "without hurting your scalp." *Id.* ¶ 99. As discussed, Plaintiffs also alleged the products did not function as expected and "ha[d] dangerous propensities when used as intended." *Id.* ¶ 327. These allegations were sufficient to support claims for breach of express and implied warranty in the first motion to dismiss and, these allegations are sufficient here too.

*Finally*, Defendants argue Plaintiffs have not plausibly alleged damage. [432

at 35]. Not so. As discussed at length above, Plaintiffs have adequately alleged financial injury. Defendants' authorities do not preclude financial injury damages in a warranty claim. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009); *Birdsong*, 590 F.3d at; *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002).

The Court denies Defendants' motion to dismiss Plaintiffs' breach of warranty claims.

### f. Unjust Enrichment (Eighth Cause of Action)

Lastly, Defendants argue Plaintiffs' unjust enrichment claim should be dismissed on the grounds that some jurisdictions do not recognize unjust enrichment as an independent cause of action or do not allow recovery for unjust enrichment when a plaintiff has an adequate remedy at law. [432 at 35–36].

As this Court recognized in its first motion to dismiss opinion, different jurisdictions treat unjust enrichment differently and some jurisdictions are inconsistent. [291 at 20]; *see e.g.*, *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.* (2015) 61 Cal. 4th 988, 1000) (explaining "the California Supreme Court has clarified California law[] allowing an independent claim for unjust enrichment"). However, Defendants have not identified each state where unjust enrichment is not a cognizable cause of action.

Thus, the Court finds it is not appropriate at this stage to dismiss Plaintiffs' unjust enrichment claims. The Court reiterates its finding that Plaintiffs lack standing to assert unjust enrichment claims in states where no named Plaintiff

resides or purchased Defendants' hair relaxer products.

## **CONCLUSION**

For the stated reasons, Defendants' Joint Motion to Dismiss [432] is granted in part and denied in part. Counts 2 and 11 are dismissed. Count 7 is dismissed as to the fraud-based claims only. Count 3 is dismissed as to claims that arise under the laws of Arizona, California, Maryland, Nevada, and Pennsylvania only. Count 4 is dismissed as to claims that arise under the laws of Arizona, California, Maryland, Missouri, and Nevada only. The motions to dismiss the remaining claims are denied.

E N T E R:

Dated: September 27, 2024

_____
MARY M. ROWLAND
United States District Judge