IN THE UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23-CV-00818<br>Hon. Mary M. Rowland<br>Hon. Sheila M. Finnegan<br><br>**This document relates to:**<br>All Cases |

### PLAINTIFFS' MOTION TO COMPEL DEFENDANT STRENGTH OF NATURE TO PRODUCE RELEVANT, NON-PRIVILEGED GO GET DOCUMENTS ALREADY GATHERED IN FOLDERS REFERENCING THE "UTERINE STUDY"

**I.  INTRODUCTION**

Plaintiffs respectfully request that the Court compel Defendant Strength of Nature ("SON") to produce non-privileged documents ("go get documents" or "go gets") it has gathered, reviewed, and stored for this litigation in easy-to-retrieve digital folders ("file paths") labeled as "uterine study" related. SON claims that these documents—which it admits are otherwise not privileged—are nevertheless protected by the work product doctrine because they were collected by the client and provided to counsel. SON then (incorrectly) suggests that there is no prejudice because Plaintiffs might be able to get these same documents later in the litigation presumably during the ESI collection; this is incorrect because at that stage Plaintiffs' access will be wholly dependent on Plaintiffs guessing the right custodians and search terms for them. SON's objection defies good faith and basic discovery principles.

Contrary to SON's position, the work product doctrine protects documents *created* for litigation—not documents merely *compiled* for review in litigation. While the former may be withheld as privileged, the latter (if not individually privileged) are the typical go get documents counsel are ethically bound to produce in discovery, including under Rule 26(a)(1), once such

1

documents have been retrieved. It is undisputed that the documents Plaintiffs seek are relevant, responsive, and non-burdensome to produce. They are typical business records that were not created for litigation and do not appear on a privilege log. SON's conduct in collecting the documents for its attorneys to review does not transform those documents into attorney work product.

Accordingly, Plaintiffs respectfully request that this Court order SON to produce responsive documents contained in the two "Uterine Study" file paths it is refusing to produce, and/or to provide a privilege log individually listing the basis for withholding any responsive document it has collected.

## II. FACTUAL BACKGROUND

In June 2023, Plaintiffs served their First Requests for Production of Documents on SON. Through meet-and-confer consultations, SON advised Plaintiffs that it would directly retrieve some "go-get" documents for production, while producing other documents through application of search terms to specific custodians or sources.

During the April 11, 2024 Case Management Conference, the idea of a "Go-Get" was discussed as a way to have documents that do not require a search methodology to be produced. Ms. Gilford, defense counsel for Sally Beauty explained:

> THE COURT: Go-gets, go-gets. Does everybody use that term? I've never heard it.
> MS. GILFORD: I doubt everybody uses that term. It's a term that we use at Sidley because it's in a central repository: Go get it.
> THE COURT: Go get it. I like it. "These are the documents we can give you." Would those be documents then that you would necessarily serve without search terms because they're so easy to get? Would that -- or do they not correlate like that?
> MS. GILFORD: That's the way I'm defining a go-get. It would be in a centralized place that doesn't require a search term to locate. For example, if there's a file that says "Formulas," we would produce what's in the file that says "Formulas," and just pulling that as an example.
> THE COURT: Sure.

Dkt. 607 at 88. After the conference, the Court ordered Plaintiffs to inform Defendants of "priority" discovery requests by April 16, 2024. Dkt. 598. The Court also ordered Defendants to "identify the responsive 'go-get' documents that are readily available and can be produced without the use of

2

search terms" by April 23, 2024, and to communicate if "additional documents may be located through the use of search terms." *Id.* Pursuant to the Court's Order, on April 16, 2024, Plaintiffs sent a letter to SON listing priority document requests, including "responsive documents from the following [three] file paths":

1) "Holmes, Maryann\Maryann.Holmes\New Desktop Folders\Audit\2019 Management Review Audit";

2) "Latasha|OneDrive_2023-10-18.zip\Uterine Study"; and

3) "Uterine Study\Discovery Phase\".

Ex. A (Pls.' Apr. 16, 2024 Ltr.) at 3. Plaintiffs learned of these file path collections through the metadata associated with certain documents SON produced earlier to Plaintiffs listing the source of those documents as these file paths.

On April 23, 2024, SON responded to Plaintiffs' April 16 letter and committed to produce responsive go-get documents (along with various other requested documents) within 90 days, *i.e.*, by July 23, 2024. Ex. B (SON's Apr. 23, 2024 Ltr.) at 4. When SON did not produce the requested file path documents by July 23, Plaintiffs raised this issue in a letter to SON on July 24, 2024. Ex. C (Pls.' July 24, 2024 Ltr.) at 6.

On August 21, 2024, SON sent Plaintiffs a letter agreeing to produce responsive documents contained in the first file path ("Holmes"), but refusing to produce the responsive go get documents in the two "Uterine Study" file paths on the basis of the work product doctrine. Ex. D (SON's Aug. 21, 2024 Ltr.) at 5. SON stated that SON's "employees created" the Uterine Study folders "in order to organize documents requested by [SON's] attorneys in connection with this litigation, and other documents related to this litigation." *Id.* SON admitted that it was "not suggesting that the underlying documents are necessarily protected, but rather" that "the compilation itself is protected." *Id.* SON stated that it would "not produce [the] contents" of the two Uterine Study file paths with its "go-get" productions, but instead would produce "responsive documents from these folders that are not

3

privileged or protected" in unspecified "future document productions." *Id.* More than a month later, SON has not produced those documents and the only anticipated document productions coming in the future are subject to ESI collections of custodial files and search terms.

Pursuant to CMO No. 5, SON was required to provide a privilege log on a rolling basis from 60 days after each production, or by September 23, 2024 (60 days after its July 23 production) at the latest. Dkt. 112 at 14. However, despite asserting blanket privilege over the Uterine Study file path documents, SON has not provided any privilege log (listing these or any other withheld documents).

Plaintiffs advised SON they disagreed that the work product doctrine attaches to otherwise non-privileged documents due to the act of compilation, but SON would not compromise and also refused to produce a privilege log, leading Plaintiffs to file this motion.

### III.    LEGAL STANDARDS

"District courts have broad discretion in supervising discovery and ruling on discovery motions. In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." Dkt. 595 at 1 (citations omitted).

Document production is governed by several foundational principles set forth in the Federal Rules of Civil Procedure. At inception, before responding to affirmative discovery from the other side, parties are obligated to identify witnesses and evidence, including producing "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. Proc. 26(a)(1)(A)(ii). In responding to the discovery requests of an opponent, the Rules instruct that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…[and that] Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. Proc. 26(b)(1). Rule 1 admonishes that all of the rules "should be construed, administered, and employed by the court and the parties to secure the *just, speedy, and*

4

*inexpensive* determination of every action and proceeding." Fed. R. Civ. Proc. 1 (emphasis added).

While documents that are otherwise relevant and responsive may be withheld on the basis of privilege, Federal Rule of Civil Procedure 26(b)(5) "requires parties withholding documents from discovery to claim the basis of the privilege and describe the nature of the privileged documents in a way that will allow other parties to assess the claim." *Rossman v. EN Engr., LLC*, 335 F.R.D. 171, 172 (N.D. Ill. 2020). "Compliance with Rule 26(b)(5)(A) is not optional." *Id.* "A party withholding discoverable documents must produce a privilege log that 'identif[ies] for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.'" *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *3 (N.D. Ill. Oct. 12, 2021) (internal quotation marks and citations omitted).

In assessing the propriety of documents withheld on the basis of a work product privilege, it is important to recognize that this privilege is conditional. "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citations omitted). "[I]n order to invoke the work product privilege, 'the primary motivating purpose behind the *creation* of a document or investigative report must be to aid in possible future litigation.'" *Lynk Labs, Inc. v. Juno Lighting LLC*, No. 15 C 4833, 2016 WL 6135711, at *2 (N.D. Ill. Oct. 21, 2016) (Rowland, J.) (emphasis added) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)). The doctrine "only prevents the disclosure of protected documents or communications . . . not the underlying facts." *Trydel Research Pty. Ltd. v. ITW Glob. Tire Repair, Inc.*, No. 21 C 4977, 2024 WL 2209674, at *3 (N.D. Ill. May 15, 2024) (citations omitted).

IV. **ARGUMENT**

    A. **The Work Product Doctrine Applies to Documents *Created* for Litigation, Not Merely *Compiled* for Litigation.**

Plaintiffs seek business records that are relevant, readily-available,[1] and not themselves subject to a claim of privilege. Ex. D (SON's Aug. 21, 2024 Ltr.) at 5 ("To be clear, we are not suggesting that the underlying documents are necessarily protected . . . ."). [2] Instead, SON has withheld these responsive records due to the fact that they were collected and stored at the direction of attorneys. The law does not support SON's position.

"As the Seventh Circuit has explained, in order to invoke the work product privilege, 'the primary motivating purpose behind the *creation* of a document . . . must be to aid in possible future litigation.'" *Lynk Labs*, 2016 WL 6135711, at *2 (Rowland, J.) (emphasis added) (quoting *Binks*, 709 F.2d at 1119). "To the extent a document is not created primarily to aid in possible future litigation, it is correctly excluded from the protection of the work product privilege." *Id.*; *see also id.* ("Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine."). As its name makes clear, the doctrine protects "[w]ork product *of the lawyer*." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (emphasis added).

Here, to Plaintiffs' knowledge (based on SON's representations), *none* of the documents contained in the Uterine Study digital folders were *created* for this litigation. Nor were any of the documents created or edited by SON's attorneys or at their direction. Because these business records were created by SON independent of this litigation, they are not protected by the work product doctrine. SON admits that "the underlying documents are [not] necessarily protected." Ex. D (SON's Aug. 21, 2024 Ltr.) at 5.

---

[1] Indeed, SON has already produced a subset of documents from these same digital files.
[2] To be clear, Plaintiffs do not seek, through this motion, to compel the production of any individual document that SON asserts is itself privileged and that it substantiates on a privilege log.

No authority supports SON's farfetched claim that collecting documents transforms them into attorney work-product. Indeed, this makes no sense, as compilation of documents at attorney direction is simply how discovery works. Client documents that an attorney may request for production are quintessential "go get" documents that are "readily available" and "can be produced without the use of search terms." Dkt. 598. None of the requested materials include communications between SON and its attorneys, or attorney instructions on how to compile the documents.

If the crux of the issue is that SON wants to avoid producing metadata showing that particular documents are contained in the "Uterine Study" file paths, the work product doctrine does not help it. First, SON has already produced some documents from each of the two Uterine Study file paths it now refuses to produce in whole, with the associated metadata for produced documents revealing the existence of these digital files and thereby waiving any possible claim of privilege in their existence. *Cf. Walker v. White*, No. 16-CV-7024, 2019 WL 1953124, at *1 (N.D. Ill. May 2, 2019) (Rowland, M.J.) (ruling that any work product privilege was waived by prior production of the document at issue). Second, SON asserts that these documents are "all copies of documents" that originally existed elsewhere in SON's files.[3] Thus, should SON seek to avoid producing metadata identifying these specific file paths, it only needs to produce the documents with metadata reflecting the original company sources *(i.e.*, original locations and custodians).

Importantly, SON cannot use its improper work product objection to frustrate production of responsive "go-get" documents it otherwise committed to produce by July 23, 2024. *See* Ex. B (SON's Apr. 23, 2024 Ltr.) at 4. SON's claim that it will produce these documents "in the ordinary course" through unspecified "future document productions" is insufficient. Ex. D (SON's Aug. 21, 2024 Ltr.) at 5. Future productions will rely on custodians and search terms, meaning these relevant documents that are already pulled and ready to be produced might never be shared with Plaintiffs if

---

[3] Significantly, SON has not claimed it has produced such "copies" elsewhere to Plaintiffs.

7

the sources and search terms do not align. Regardless, this Court directed that the Parties prioritize and rapidly produce documents that "are readily available and can be produced without the use of search terms." Dkt. 598. These documents indisputably fall in that category. Since they are not attorney work product, this Court should order SON to produce them right away. *See* Fed. R. Civ. Proc. 1.

### B. If SON Withholds Any Documents as Privileged, It Must Provide a Privilege Log.

If SON asserts that any documents are privileged, it must provide Plaintiffs with a privilege log compliant with Rule 26(b)(5). Privilege logs are "not optional." *Rossman*, 335 F.R.D. at 172. The privilege log must account for "each separate document" withheld. *St. Paul Guardian*, 2021 WL 4745385, at *3. "A blanket privilege claim is not allowed . . . privilege must be asserted on a document-by-document basis." *Holifield v. U.S.*, 909 F.2d 201, 204 (7th Cir. 1990) (cleaned up); *see also Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 WL 5564867, at *2 (N.D. Ill. Nov. 29, 2021) ("Blanket claims of privilege have always been unacceptable[.]").

SON's blanket assertion of work product privilege, without providing any privilege log, is a blatant violation of Rule 26 and Seventh Circuit law (even besides the fact that the work product doctrine does not apply as explained above). To the extent SON continues to withhold any documents on the basis of privilege, from the Uterine Study file paths or otherwise, it must provide a document-by-document privilege log compliant with Rule 26(b)(5). Because SON withheld these documents from its July 23, 2024 production, CMO No. 5 requires privilege logs within 60 days, which has already passed. *See* Dkt. 112 at 14. Either none of the documents are privileged or SON has violated the Court's Order.

### V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiff's

8

motion to compel and order that Strength of Nature, within one week,[4] (a) produce responsive documents contained in the two Uterine Study file paths and (b) produce a Rule 26(b)(5)-compliant privilege log for any documents it withholds from them.

Dated: September 27, 2024

Respectfully submitted,

/s/ Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com
*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse
**DICELLO LEVITT LLP**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com
*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com
*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301

---

[4] Because SON has known that Plaintiffs requested these specific documents at least since receiving Plaintiffs' April 16, 2024 letter, and has had the documents compiled for this litigation for even longer, it has already had ample time to review, prepare, and log them.

9

Tel.: 850-224-2020
Email: ben@bencrump.com
*Plaintiffs' Co-Lead Counsel*