IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 <br><br> Master Docket No. 23-cv-0818 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' Lead and Liaison Counsel, members of Plaintiffs' Leadership, and individual counsel of individual Plaintiffs seeking relief[1] (collectively "Plaintiffs") move this Court for leave to dismiss non-ovarian, uterine, or endometrial cancer cases without prejudice against all Defendants whom the individual Plaintiff brought suit. [650]. Defendants oppose Plaintiffs' motion. [705, 889]. For the following reasons, Plaintiffs' motion is granted, in part, as specified below.

I. **Background**

On February 6, 2023, the Judicial Panel on Multidistrict Litigation consolidated individual and putative class actions for pretrial proceedings in this Court. *See* [1]. The transferred cases were filed after a study published on October 17, 2022, and led by the National Institutes of Health reported that women who used chemical hair straightening or hair relaxer products had an increased likelihood of

---

[1] Exhibit A to Plaintiffs' motion [650-1] identifies 156 individual Plaintiffs who request dismissal without prejudice. After Plaintiffs filed this motion, additional Plaintiffs sought the same relief through separate motions. *See, e.g.*, [653, 654]. The parties represent the motion now applies to over 400 Plaintiffs. *See* [934].

1

developing uterine cancer as compared to women who did not use such products. *Id.* On May 15, 2023, Plaintiffs filed a Master Long Form Complaint on behalf of all Plaintiffs whose individual claims are subsumed within this MDL. [106] ¶ 10. With the Long Form Complaint, Plaintiffs also filed a separate Short Form Complaint. [106-1].

The Long Form Complaint alleges Plaintiffs suffered personal injuries and death due to their use of Defendants' various hair relaxer products. [106] ¶ 10. Plaintiffs contend the hair relaxer products contain endocrine-disrupting chemicals ("EDCs"), such as phthalates, that harmfully interfere with an individual's hormones and organs, causing injury. *Id.* ¶¶ 70–79. Throughout the Long Form Complaint, Plaintiffs describe their injuries because of exposure to EDCs and other chemicals as *including but not limited to* ovarian, uterine, or endometrial cancer.[2] These

---

[2] *See id.* ¶¶ 1 ("[This Master Complaint] includes allegations that Defendants manufactured, sold, distributed, advertised, and promoted toxic hair relaxer products that caused Plaintiffs to develop cancers *and other injuries*"); 73 ("A slight variation in hormone levels can lead to significant adverse-health effects, including reproductive impairment and infertility, cancer, cognitive deficits, immune disorders, and metabolic syndrome"); 118 ("Defendants knew or should have known that phthalates and other EDCs in their hair relaxer products significantly increase the risk of cancers *and other negative health conditions*"); 120(c) (alleging Defendants failed to "properly test their hair relaxer products to determine the increased risk of harm to the endocrine system, *including* uterine, ovarian, and/or endometrial cancers"); 135 (averring Defendants "negligently misrepresent[ed] their hair relaxer products' high risk of unreasonable, dangerous, health conditions, *including but not limited to* uterine, ovarian, and/or endometrial cancer"); 152 (contending Defendants' hair relaxer products were in an unreasonably dangerous condition when the products left their possession "because they caused serious injuries and death, *including but not limited to* uterine cancer and ovarian cancer"); 166 ("Defendants knew or should have known that their hair relaxer products could cause serious injuries and death when used in an intended or reasonably foreseeable manner, *including but not limited to* uterine cancer, ovarian cancer, and endometrial cancer") 199 ("Defendants' hair relaxer products were not safe, but rather exposed Plaintiffs and other consumers to unreasonable risks of adverse health effects *including cancer*"); 215 ("Defendants knew or should have known that their hair relaxer products significantly increase the risk of cancers *and other negative health conditions*"); 255

2

allegations are incorporated into the Short Form Complaint. [175-1] at 9. Moreover, the Short Form Complaint includes a section to identify the "serious injuries and damages" use of Defendants' hair products caused Plaintiffs. *Id.* at 8. Plaintiffs may add "[o]ther injuries" in addition to enumerated uterine, ovarian, and endometrial cancer. *Id.*

On June 15, 2022—before the NIH study was published and before these cases were consolidated into an MDL—Revlon, Inc. and affiliated debtors ("Revlon") filed voluntary petitions under chapter 11 of the bankruptcy code in the U.S. Bankruptcy Court for the Southern District of New York. *See In re Revlon, Inc., et al.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y.) ("Orig. BK"). In subsequent proceedings, the bankruptcy court ordered all potential hair relaxer claimants seeking to assert a claim against Revlon to file a Proof of Claim in the Revlon bankruptcy proceedings by April 11, 2023. [Orig. BK 1574] ¶ 3. Pursuant to Revlon's Plan of reorganization, effective May 2, 2023, any hair relaxer claimants were also required to file suit in the MDL by no later than September 14, 2023 or, for claimants who are diagnosed with uterine or ovarian cancer after April 11, 2023, six months from the date of the applicable diagnosis by a licensed medical doctor. [Orig. BK 1860] Ex. A, Art. IX.A.6, p. 92. Consequently, thousands of cases were filed directly in the MDL using the Short Form Complaint by September 14, 2023.

Before the Court is Plaintiffs' omnibus motion for leave to dismiss non-cancer cases without prejudice. [650]. Each of the subject Plaintiffs indicated on her Short

---

("Plaintiffs suffered and are suffering serious illnesses, *including but not limited to* uterine, ovarian, and/or endometrial cancer").

Form Complaint that she had been diagnosed with endometrial, uterine, or ovarian cancer and filed the Short Form Complaint in the MDL. *See* [650-1]. Some Plaintiffs only alleged cancer injuries, while a minority of movants also alleged non-cancer injuries. [705] at 2. Subsequently, Plaintiffs' counsel confirmed no diagnosis of endometrial, uterine, or ovarian cancer. *Id*. Plaintiffs' motion explains some Plaintiffs did not have a clear understanding of their medical history or otherwise misunderstood medical treatments or conditions while other Plaintiffs believed they had a gynecological cancer due to the surgical removal of their ovaries or uterus but medical records do not confirm a cancer diagnosis. [650] at 2. Plaintiffs state their filings were made in good faith at a time when there was uncertainty about what claims would be pursued and uncertainty of the Revlon bar deadline. *Id*. Plaintiffs now seek dismissal of their claims without prejudice. Defendants contend only dismissal with prejudice is proper.

## II.   Standard

The parties dispute the applicable legal standard. Defendants contend a good cause standard governs pursuant to Case Management Order 10. In contrast, Plaintiffs argue good cause for dismissal with or without prejudice under Federal Rule of Civil Procedure 41(a)(2) should be analyzed under Seventh Circuit case law. The good cause standard is not defined under CMO 10. Accordingly, the Court applies Seventh Circuit case law.

If a defendant has already served an answer or summary judgment motion and has not stipulated to a dismissal, which is the case here, a plaintiff must obtain a

4

court order before she can voluntarily dismiss her action. Fed. R. Civ. P. 41(a)(1)(A), (a)(2). In relevant part, Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See also Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994) (explaining a district court "has the discretionary power to deny a plaintiff's request to voluntarily dismiss a claim without prejudice"). In considering whether to grant a motion under Rule 41(a)(2), a court must examine whether the defendant will suffer unfair prejudice from the dismissal. *Marlow v. Winston & Strawn*, 19 F.3d 300, 304 (7th Cir. 1994). To determine whether the defendant will suffer plain legal prejudice, the Seventh Circuit has enumerated four factors to consider: "'the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant.'" *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) (quoting *Pace v. S. Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)). The *Pace* factors are "not equivalent to a mandate," but "rather simply [are] a guide for the [court] ..." *Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980).

A plaintiff seeking dismissal must demonstrate that dismissal without prejudice is warranted—i.e., that the defendant will not suffer legal prejudice—and without such a demonstration, the Court "shall not" dismiss the action. *See Tolle*, 23 F.3d at 177–78; *Nwatulegwu v. Boehringer Ingelheim Pharm., Inc.*, 668 F. App'x 173, 175 (7th Cir. 2016) ("Rule 41(a)(2) requires that the plaintiff persuade the district

court that a voluntary dismissal should be without prejudice, and, absent such a showing, voluntary dismissal is inappropriate.").

### III. Analysis

Plaintiffs argue application of the *Pace* test calls for dismissal of their non-ovarian, uterine, or endometrial cancer and fibroid claims without prejudice. The Court agrees, in part.

The first *Pace* factor examines Defendants' effort and expense to prepare for trial. Plaintiffs argue this factor weighs heavily in their favor because discovery into the individual Plaintiffs' claims, which has not progressed beyond the completion of Plaintiff Fact Sheets ("PFSs"), is in its infancy.[3] [650] at 9. No Plaintiff-specific discovery has been propounded and no depositions have been noticed. *Id.* In response, Defendants claim they have incurred significant expense hiring counsel to review PFSs, identify deficiencies, and confer with counsel regarding the same. [705] at 10. But analyzing PFSs for deficiencies is not the sort of substantial trial preparation that justifies dismissal with prejudice. And as Plaintiffs point out, this assertion is undermined by Defendants' admission that only a fraction of the Plaintiffs seeking dismissal have submitted PFSs. [724] at 6, [705] at 10 (discussing that only 24 of the Plaintiffs moving for dismissal without prejudice submitted PFSs). Moreover, although Defendants have not identified the amount of fees they have incurred defending these individual claims, the Court does not doubt that the amount

---

[3] Plaintiffs also argue permitting them to voluntarily dismiss their cases without prejudice "would likely greatly reduce Defendants' time and expenses" since Defendants would not need to litigate the cases. *Id.* at 9–10. This logic is axiomatic and unconvincing. Furthermore, the same would be true if Plaintiffs' cases were dismissed with prejudice.

6

Defendants collectively expended on the claims of the women subject to this motion are greatly surpassed by the overall expenses devoted to defending against the thousands of other Plaintiffs in the MDL. This factor, therefore, favors Plaintiffs' request for dismissal without prejudice.

The second *Pace* factor interrogates whether Plaintiffs excessively delayed and lacked diligence in prosecuting their actions. Plaintiffs state only eight months passed between when most of complaints were filed in September 2023 and when they filed this motion in May 2024 and that courts routinely decline to find similar delays are excessive. [650] at 10 (citing *FDIC v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992) (affirming dismissal without prejudice with a delay of no more than nine months)). Although Plaintiffs did not excessively delay filing this motion, the balance tips toward finding that they have failed to diligently prosecute their cases for the following reasons:

Plaintiffs assert that non-cancer cases were filed in good faith and not due to any lack of diligence. *See id.* They claim many individuals did not understand whether medical treatments and tests were required due to cancer or other conditions and that a "rush to file" by deadlines set in the Revlon bankruptcy "prevented counsel from being able to obtain the medical records to confirm *these details* for some Movants until after the suit was filed." *Id.* (emphasis added). This is a persuasive argument to a point. For instance, the Court is concerned that whether Plaintiffs have any injury (no less a serious, life-altering cancer) is not a mere "detail," but a basic element of Plaintiffs' claims. *See, e.g.*, *O'Connor v. Ford Motor Co.*, 477 F. Supp.

7

3d 705, 721 (N.D. Ill. 2020) (injury as an element of a negligence claim); *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019) (same for a design defect claim). And while the Court recognizes the difficulty the Revlon bankruptcy deadlines imposed, this is not an excuse.[4] Nearly five months passed between the deadline to file a Proof of Claim in the bankruptcy proceeding and the deadline to file an MDL complaint. [705] at 3–4. That period provided time for counsel to diligently investigate claimed injuries. *Cf., U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) (affirming sanctions against attorney who claimed ignorance and discrediting a high caseload as an excuse for attorney's negligence); *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) ("An empty head but a pure heart is no defense. [Rule 11] requires counsel to read and consider before litigating."). Plaintiffs who prematurely claimed cancer injuries did not do their homework before filing. *See* [512] at 45–46. Most significantly, this argument provides no reason for Plaintiffs who filed *after* September 14, 2023, to misrepresent a cancer diagnosis. Those Plaintiffs had time to properly investigate their claims prior to filing.

Furthermore, Plaintiffs' claimed confusion regarding what constituted a qualifying injury and assertion that "Plaintiffs' leadership has taken a clear line in the long form complaint that the claims being pursued at this time relate *only* to ovarian, uterine, and/or endometrial cancer" are not accurate. [650] at 2 [emphasis added]. Both the Long Form Complaint and the Short Form Complaint, which were

---

[4] Not all Plaintiffs subject to this motion filed complaints "in relation to the Revlon Bankruptcy Plan filing deadline." [650] at 2 n.4. Accordingly, the alleged time pressure to file does not apply to those Plaintiffs.

filed in May 2023—well in advance of the September 2023 Revlon filing deadline, expressly *include* non-cancer injuries.[5] If Plaintiffs' leadership has taken a clear line to the contrary, it is not apparent to the Court.

In addition, Plaintiffs do not dispute that most Plaintiffs moving to dismiss their claims have not fulfilled even the minimal discovery obligation to complete a PFS. [724] at 6, [705] at 10. Indeed, Plaintiffs contend the individuals "at the center of this motion are ones for which counsel are unable to submit completed [PFSs] as their injuries *are not included* in the Master Long Form Complaint or Short Form Complaint, nor are they addressed in the topics covered by the PFS." [650] at 6 (emphasis added). Again, this cannot be true. Plaintiffs alleging injuries other than cancer (e.g., endometriosis), can complete PFSs regarding their actual injuries. It is only the subset of Plaintiffs who (1) allege only uterine, ovarian, or endometrial cancer and (2) do not have that diagnosis that cannot identify in a PFS "date of diagnosis" and other information.

This factor, therefore, favors Defendants' request for dismissal with prejudice, with respect to the (1) claims filed by Plaintiffs after the September 14, 2023 deadline; and (2) claims for non-cancer injuries that were filed in conjunction with claims for cancer where the Plaintiff does not have a cancer diagnosis and the claims were filed in the rush before the September 14, 2023.

---

[5] The Court has recently reviewed the sufficiency of Plaintiff Fact Sheets for ongoing cases where the individual plaintiff is asserting only fibroids or endometriosis. The case is clearly not limited to the three identified cancers.

9

The third *Pace* factor to consider is whether Plaintiffs have offered a sufficient explanation for the need to take a dismissal. Here, Plaintiffs explain that they need to take the dismissal because they have no evidence to pursue a case involving a cancer claim. They seek to preserve the right to re-file their lawsuits if they develop ovarian, uterine, or endometrial cancer. [650] at 10–11. As the Court understands the argument, dismissal *with* prejudice is too harsh a penalty for failure to exercise proper diligence considering the circumstances of the filings. A plaintiff being forever barred from filing a claim based on an actual diagnosis of cancer is too severe given the failure to investigate, in light of the stage of the proceedings and degree of prejudice to the Defendants. The Court agrees with this assessment. This factor favors Plaintiffs' request to dismiss claims of uterine, ovarian, or endometrial cancer without prejudice under certain circumstances. However, to the extent any member Plaintiff claimed any other injury, including but not limited to fibroids or endometriosis, this factor favors dismissal with prejudice. Those claims are dismissed with prejudice.

The fourth *Pace* factor asks whether Defendants have filed a motion for summary judgment. This factor addresses instances when a plaintiff seeks to dismiss her case to avoid an unfavorable ruling on a defendant's pending motion for summary judgment. *See Pace*, 409 F.2d at 334 (affirming the district court's denial of a motion to dismiss without prejudice where the plaintiff was "attempting to deprive the defendant of a ruling on [its] summary judgment motion by its dismissal tactic"). This concern is absent here. Defendants have not moved for summary judgment and likely

10

are years from moving. *See* [892] at 47 (discussing summary judgment briefing in 2026). Accordingly, this factor supports Plaintiffs.

Given that three of the *Pace* factors weigh in Plaintiffs' favor, the Court will dismiss claims of cancer where the Plaintiff does not have a diagnosis of cancer that were *filed prior to September 14, 2023*, without prejudice. Under Rule 41(a)(2), a court can, in its discretion, impose conditions on dismissal that are necessary to offset possible prejudice to the defendant. *Marlow*, 19 F.3d at 303; *McCall–Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985).

The Court imposes the following conditions to dismissal. For Plaintiffs who filed claims of cancer and do not have a diagnosis of cancer: Any claims of uterine, ovarian, or endometrial cancer filed *on or before* September 14, 2023 are dismissed without prejudice. Any cancer claims filed *after* September 14, 2023 are dismissed are dismissed with prejudice. Plaintiff who seek this dismissal will have claims of any non-cancerous injuries are dismissed with prejudice.

For the Plaintiffs whose claims are dismissed without prejudice, if any Plaintiff is later diagnosed with uterine, ovarian, or endometrial cancer, she has six months from the date of diagnosis to refile her case, regardless of the Defendants named in her individual member case. Plaintiff may only refile her case in federal court within this MDL and, if Plaintiff does refile, she must serve a complete Plaintiff Fact Sheet and all authorizations pursuant to CMO 9 within 10 business days of refiling.

The Seventh Circuit has instructed that the plaintiff must be given a reasonable opportunity to withdraw the motion for voluntary dismissal if the court

11

indicates that it will grant the requested dismissal but only with conditions the plaintiff has not previously agreed to. *Marlow*, 19 F.3d at 304–05.

Accordingly, parties are to file a status report by December 9, 2024, identifying the cases that are to be dismissed with prejudice, the cases to be dismissed without prejudice, and cases with a mixed result (e.g., non-cancer claims will be dismissed with prejudice and cancer claims will be dismissed without prejudice). For any case where a Plaintiff withdraws their voluntary motion to dismiss in order to pursue a non-cancer injury, their cases will continue in discovery.

## CONCLUSION

For the stated reasons, Plaintiffs' motion for leave to dismiss non-ovarian, uterine, and endometrial cases without prejudice [650] is granted, in part. By December 9, 2024, parties are to file a status report.

E N T E R:

Dated: November 13, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge