**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXING MARKETING SALES PRACTICES AND PRODUCTS LIABILTIY LITIGATION** | MDL No. 3060 <br><br> Master Docket No. 1:23-cv-00818 <br><br> Hon. Mary M. Rowland |

**CASE MANAGEMENT ORDER NO. 14
Establishing Common Benefit Fee and Expense Protocols**

**I.     SCOPE OF ORDER**

This Order is entered to provide for the fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation. As set forth in more detail below, common benefit work product includes all work performed for the benefit of all hair relaxer claimants, including pre-trial matters, discovery, trial preparation, a potential settlement process, defense of plaintiffs' rights in respect of potential or actual insolvency proceedings of any Defendant, and all other work that advances this litigation to conclusion. The governing principles are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough,* 105 U.S. 527 (1881); refined in, *inter alia, Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980); and approved and implemented in the MDL context in, *inter alia, In re Air Crash Disaster at Florida Everglades on December 29, 1972,* 549 F.2d 1006 (5th Cir. 1977); *In re MGM Grand Hotel Fire Litigation,* 660 F.Supp. 522 (D. Nev. 1987); *In re Vioxx Prod. Liab. Litig*., MDL No. 1657 (E.D. La. Aug. 4, 2005, amended May 3, 2007; Feb. 1, 2008; Sep. 15, 2008; Apr. 10, 2008; and Oct.

31, 2008); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenjluramine) Prod. Liab. Litig.*, 582 F.3d 524 (3d. Cir. 2009); *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Prod Liab.* Litig, 09-md-2100 (S.D. Ill Mar. 25, 2010); In *re Am. Med. Sys., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 12-md-02325 (S.D.W. Va. Oct. 4, 2012); *In re C.R. Bard Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 10-md-02187 (S.D.W. Va. Oct. 4, 2012); *In re Boston Sci., Corp., Pelvic Repair Sys. Prod Liab. Litig.*, MDL No. 12-md-0236 (S.D.W. Va. Oct. 4, 2012); *In re Coloplast Corp., Pelvic Repair Sys. Prod Liab. Litig.*, MDL No. 12-md-02387 (S.D.W. Va. Oct. 4, 2012); *In re Ethicon, Inc. Pelvic Repair Sys. Prod Liab. Litig.*, MDL No. 12-md-02327 (S.D.W. Va. Oct. 4, 2012); *In re Avandia Marketing, Sales Practices and Prod Liab. Litig.*, MDL No. 07-md-01871 (E.D. Pa. Oct. 19, 2012); *In re Zimmer Nexgen Knee Implant Prod Liab. Litig.,* MDL No. 2272 (N.D. Ill. Feb. 19, 2013); *In re E.I DuPont De Nemours and Company C-8 Pers. Injury Litig.*, MDL No. 13-md-02433 (S.D. Ohio Aug. 5, 2013, amended Sep. 6, 2013); *In re Cook Med Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 13-md-02440 (S.D.W. Va. Oct. 28, 2013); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, (N.D. Ill. Nov. 25, 2014); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prod. Liab. Litig.*, MDL No. 14-mn-02502 (D.S.C. Jan. 22, 2015); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010 MDL No. 10-md-02179 (E.D. La. Oct. 2, 2015); *In re Neomedic, Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 14-md-02511 (S.D.W. Va. Dec. 22, 2015); *In re lnvokana (Canaglifozin) Prod Liab. Litig.*, MDL No. 16-md-02750 (D.N.J. Mar. 21, 2017); *In re Benicar (Olmesartan) Prod Liab. Litig.*, MDL No. 15-md-2606 (D.N.J. Aug. 15, 2017); *In re Proton-Pump Inhibitor Prod Liab. Litig.* (No. II), MDL No. 17-md-02789 (D.N.J May 8, 2018); *In re Aqueous Film-Forming Foams Prod Liab. Litig.*, MDL No. 2873 (D.S.C Apr. 26, 2019); *In re Elmiron (Pentosan Polysulfate Sodium) Prod. Liab. Litig.*, MDL No. 2973 (D.N.J. Aug. 26, 2021); *In re Paraquat Prod Liab. Litig.,* MDL No. 21-md-3004 (S.D. Ill Oct. 13, 2021); *In re Abbott Lab., et al., Preterm Infant Nutrition Prod Liab. Litig.,* MDL No. 3026 (N.D. Ill Aug. 25, 2022); and *In re Recalled Abbott Infant Formula Prod Liab. Litig.,* MDL No. 3037 (N.D. Ill Oct. 28, 2022).

It cannot be overstated the massive amount of work that goes into the prosecution, management, coordination, oversight, communication, and overall litigation in a complex MDL. The cases at bar include numerous Defendants (many with complicated corporate histories), well over 50 different products, and discovery efforts that will span years on various topic areas like: marketing, sales, distribution, design, research, testing, chemical composition, notice, regulatory issues, scientific and medical issues, and other areas too. The work will require the storage, categorization, review, coding, and analyzing of millions of pages of documents and data from the Defendants and third-parties, the taking of corporate defense witness depositions, the defending of bellwether plaintiff depositions, the conducting of non-party witness depositions, and the tendering of complicated expert reports in multiple disciplines as well as the expert discovery/depositions that follow. It will also likely include dispositive motion practice and extensive pre-trial preparation and possibly one or more bellwether trials. The above work requires significant costs, including but not limited to, document and data storage of documents and the analysis and coding of same, deposition and video services, and expert review and analysis, and only if the litigation is successful are these costs ever reimbursable. This Order helps ensure that should the plaintiffs be successful, there is a means to compensate the lawyers for their hard work that benefited the common good and reimburse their costs and expenses that were fronted and incurred for the common good – all of which is common benefit.

### A.     Application of this Order

This Order applies to all cases now pending in this MDL, as well as to any case later filed directly into or transferred to this MDL (if permitted) or removed to this Court and treated as part of the coordinated proceeding known as *In Re Hair Relaxer Marketing Sales Practices and Products Liability Litigation,* MDL 3060 (the "MDL").

This Order further applies to unfiled hair relaxer cases and/or cases outside of the MDL in the following circumstances:

(1) Every case in which any of the following, or their law firms, possess a fee interest: appointed co-lead counsel ("Co-Leads"), a member of the Plaintiffs' Executive Committee (the "PEC"), a member of the Plaintiffs' Steering Committee (the "PSC"), or a member of the Leadership Development Committee (the "LDC") (collectively referred to as the Plaintiffs' Leadership Committee or "PLC" and identified in this Court's Order Granting Petition for Appointment of a Plaintiffs' Leadership Committee, dated March 2, 2023) [Doc. 28], as well as attorneys subsequently appointed to such positions by Court order, regardless of whether the attorney has signed the "Participation Agreement attached hereto as Exhibit A;

(2) Each attorney and law firm who represents hair relaxer plaintiff(s) *and* who elects to sign the Participation Agreement attached hereto as Exhibit A ("Participating Plaintiffs' Counsel"). For all such attorneys, this Order shall apply to every case – filed or unfiled – in which they or their law firm have any fee interest.

(3) "Special Insolvency Professionals," meaning the attorneys and/or professionals retained by the Co-Lead counsel and PEC as Special Insolvency Professionals, and identified in Exhibit B hereto, who have agreed that compensation for their services and expenses shall be payable from any funds for the common benefit established pursuant to this or any further Court Order and who have agreed to submit time/billing records in a manner consistent with the obligations under this Order and the Participation Agreement (Exhibit A).

"Participating Counsel" shall mean all attorneys and law firms included in A(1)-(3) above.

### B. Participation Agreement (Exhibit A)

Exhibit A, attached hereto and incorporated herein, is a voluntary Participation Agreement between: (1) the PLC and (2) plaintiffs' attorneys with Hair Relaxer cases who elect to sign the Participation Agreement in order to perform and/or receive common benefit work. The Participation Agreement is a private and cooperative agreement between plaintiffs' attorneys only, and not defendants or defendants' counsel.

Participating Counsel shall be entitled to receive all the common benefit work product performed and generated in the MDL. Participating Counsel may not share common benefit work product with counsel who are not Participating Counsel. Participating Counsel who receive common benefit work product shall be bound by CMO 4, the Protective Order in this MDL. Counsel who are not Participating Counsel are not entitled to receive common benefit work product and may be subject to an increased assessment on all Hair Relaxer cases in which they have a fee interest, and/or such other appropriate relief or other remedy as the PLC may seek and obtain from the Court, if they are determined by the Court to have knowingly accepted common benefit work product.[1]

## II. TIMING OF SUBMISSIONS FOR COMMON BENEFIT TIME & EXPENSES

Time and expense submissions are to be made no later than the 15th day of each month, beginning with the first submission due on January 15, 2025. That first submission should contain all time and expenses incurred from the inception of this MDL through November 30, 2024. Each subsequent submission should contain all time and expenses incurred during the calendar month that precedes the month

---

[1] In the event that an MDL case brought by an attorney or law firm that has declined to sign the Participation Agreement is selected for trial in this MDL – either as a bellwether or otherwise – the PLC will make common benefit work product available to that counsel to the extent necessary, and at the time appropriate, for the limited purpose of preparing the case for trial.

prior to the submission date. (For example, the submission due on February 15, 2025 should include all time and expenses incurred from December 1, 2024 through December 31, 2024, and then the submission due on March 15, 2025 should include all time and expenses incurred from January 1, 2025 through January 31, 2025, etc.).

All time and expense submissions should be accompanied by contemporaneous records in the form provided (and attached hereto as Exhibit C) and verified by a partner or shareholder in the submitting firm or by a member of the PSC, Affiliated Counsel or Special Insolvency Professional if that person is not a partner or shareholder in the submitting firm. In addition, each firm that makes a common benefit time and/or cost submission for a given month shall also be required to submit a brief summary (no more than 2 or 3 sentences) summarizing the contribution that each timekeeper from that law firm made toward the common benefit and advancement of the litigation.

Failure to provide submissions in a timely manner may result in a waiver of attorney fees and expenses claimed for the time period that is the subject of the submission. Failure to submit time and expense records **in electronic (searchable) format** on the Excel forms approved by Plaintiffs' Co-Leads attached hereto as Exhibit C, may result in a deficiency, after which the submitting firm must cure the deficient submission. Absent prior approval from Plaintiffs' Co-Lead or special circumstances, failure to cure a deficiency within twenty-one (21) from notice by Plaintiffs' Co-Leads or their designee(s) may result in (a) that month's submission being rejected, and/or (b) the submitting firm waiving compensation for the time and expenses submitted that month. Upon a determination by Plaintiffs' Co-Lead that a Participating Law Firm repeatedly fails to comply with the requirement to timely submit time and expense records in the required format, that Participating Law Firm may be barred from performing future common benefit work.

Moreover, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of this Order and the Court's Order Granting Petition for Appointment of a Plaintiffs' Leadership Committee, dated March 2, 2023 shall be considered for common benefit reimbursement at the end of the litigation.

*All time and expenses submissions shall be made to the following email address:* MDL3060Time@amylcollinspc.com

### III. COMMON BENEFIT EXPENSES

#### A. Qualified Expenses Eligible for Reimbursement

In order to be eligible for reimbursement of common benefit expenses, an expense must meet the requirements of this section and the limitations set forth in the Participation Agreement. Specifically, an expense must be: (a) for the common benefit, including work conducted in preparation for and participation in any insolvency proceeding of a Defendant for the benefit of all plaintiffs; (b) appropriately authorized; (c) timely submitted within the defined limitations set forth in this Order; and (d) verified by a partner or shareholder in the submitting firm or by a member of the PSC, Affiliated Counsel or Special Insolvency Professional if that person is not a partner or shareholder in the submitting firm.

#### B. Shared and Held Common Benefit Expenses

##### 1. Shared Costs

Shared costs are costs incurred for the common benefit of all plaintiffs. Shared Costs are costs that will be paid out of a separate Hair Relaxer Operating Expense Fund established and administered by Plaintiffs' Co-Leads and/or its designee and funded by all members of the PSC and others as determined by Plaintiffs' Co-Leads. All Shared Costs must be approved by no less than a majority of Plaintiffs' Co-Leads or designee(s) prior to payment. Shared Costs include: (a)

7

certain filing and service costs; (b) deposition, court reporter, and video technician costs for non-case specific depositions; (c) costs necessary for creation of a document depository, the operation and administration of the depository, and any equipment required for the depository; (d) PSC administrative matters (e.g., expenses for equipment, technology, courier services, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.); (e) PSC and administrative matters such as PSC or PEC meetings; (f) accountant fees; (g) general non-case specific expert witness and consultant fees and expenses; (i) research by outside third party vendors/consultants/ attorneys; (j) translation costs; (k) bank or financial institution charges; (l) certain investigative services, (m) costs associated with bellwether trials, as defined and approved in writing by Plaintiffs' Co-Leads; (n) costs associated with securing external counsel, including but not limited to bankruptcy and ethics counsel; and (n) special master and/or mediator charges.

## 2. Held Costs

Held Costs are those that will be carried by each Participating Counsel in MDL 3060. Held Costs are those that do not fall into any of the above categories of shared costs but are incurred for the benefit of all plaintiffs. By way of example, travel costs incurred by a firm for travel to undertake common benefit work shall be held costs. Held costs can also include unreimbursed, but authorized, shared costs. No specific client-related costs shall be considered as Held Costs, unless the case is determined in writing by Plaintiffs' Co-Leads to be a "common benefit case," e.g., certain bellwether cases as determined by Plaintiffs' Co-Leads.

## C. Authorization and Submission

The Participation Agreement sets forth the guidelines for authorizing and submitting expenses for the common benefit which shall be followed.

D.  **Expenses Limitations**

  1.  **Travel Limitations**

Except in extraordinary circumstances approved in advance by Plaintiffs' Co-Leads, all travel reimbursements are subject to the following limitations:

  i.  <u>Air Travel</u>: Only the price of a coach seat for a reasonable itinerary will be reimbursed. Business/First Class Airfare will not be fully reimbursed, except for international flights or domestic flights where the actual in air travel time is 3 hours or more, both of which require prior approval by Plaintiffs Co-Leads in order to be considered for reimbursement. Use of a private aircraft will be reimbursed at the rate of first-class fare per passenger. If Business/First Class Airfare is used on domestic flights then the difference between the Business/First Class Airfare and the coach airfare must be shown on the travel reimbursement form, and only the coach fare will be reimbursed.

  ii. <u>Hotel</u>: Hotel room charges for the average available room rate of a business hotel, including the Hyatt, Westin, and Marriott hotels, in the city in which the stay occurred will be reimbursed.

  iii. <u>Meals</u>: Meal expenses must be reasonable.

  iv. <u>Cash Expenses</u>: Miscellaneous cash expenses for which receipts are generally not available (tips, luggage handling, pay telephone, etc) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

  v.  <u>Rental Automobiles</u>: Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available. If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed, unless such larger sized vehicle is needed to accommodate several counsel.

  vi. <u>Mileage</u>: Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm. The maximum allowable rate will be the maximum rate allowed by the IRS (currently 65.5 cents per mile).

  2.  **Non-Travel Limitations**

  i.  <u>Shipping, Courier and Delivery Charges</u>: All claimed expenses must be

     documented with bills showing the sender, origin of the package, recipient, and destination of the package.

  ii. <u>Postage Charges</u>: A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

  iii. <u>In-House Photocopy</u>: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is 10¢ per page.

  iv. Computerized Research – Lexis/Westlaw: Claims for Lexis or Westlaw, and other computerized legal research expenses should be in the exact amount charged to or allocated by the firm for these research services.

  **E. Verification**

The forms detailing expenses shall be certified by a partner or shareholder in the submitting firm or by a member of the PSC, Affiliated Counsel or Special Insolvency Professional if that person is not partner or shareholder in the submitting firm. Attorneys shall keep receipts for all expenses. Credit card receipts are an appropriate form of verification if accompanied by a declaration from counsel that the work was performed and paid for the common benefit.

**IV. COMMON BENEFIT WORK**

  a. **Qualified Common Benefit Work Eligible for Reimbursement**

Only Participating Counsel are eligible for reimbursement for time and efforts expended for the common benefit if said time and efforts are: (a) for the common benefit,; (b) appropriately authorized; (c) timely submitted; and (d) verified by a partner or shareholder in the submitting firm or by a member of the PSC, Affiliated Counsel or Special Insolvency Professional if said attorney is not a partner or shareholder in the submitting firm.

Common benefit work shall only be performed by employees of the law firm submitting time/expenses and time/expenses by contract attorneys will not be compensated/reimbursed,

10

unless allowed for in this Order (i.e. Special Insolvency Professionals), or approved by a Plaintiffs' Co-Lead Counsel in writing.

Not all common benefit hours billed/submitted are equal. There is no guarantee that all of the time submitted by any firm or lawyer will be compensated and the hourly rate for the work that is compensated is not guaranteed. Moreover, because all common benefit work is not the same, the hourly rate between tasks and work may vary significantly. Moreover, if counsel is a member of the PSC and fails to timely submit capital contributions as may be requested by Plaintiffs' Co-Leads throughout this litigation, such counsel and members of his/her firm shall not be allowed to submit common benefit time or expenses for reimbursement for the period of time and submission of this time or expense may be rejected or significantly reduced for failure to timely pay capital contributions.

### b. Compensable Common Benefit Work Defined

As the litigation progresses and common benefit work product continues to be generated, Plaintiffs' Co-Leads and the PEC may assign common benefit work. Examples of common benefit work include, but are not limited to, document review and document coding; expert retention and development authorized by Co-Leads; work conducted in preparation for and participation in any insolvency proceeding of a Defendant or potential Defendant, including but not limited to representation of Co-Lead Counsel, PEC and/or PSC in the chapter 11 cases of Revlon Consumer Products Corp. and its affiliates and subsidiaries; and preparing for and conducting authorized depositions of Defendants, third-party witnesses, and experts. Common benefit work may also include research on legal issues, work on case management matters, third-party discovery, and other matters. While the work-up of individual cases is not considered common benefit, in the event that a case is selected as part of an approved early trial or bellwether trial process in the

MDL, the time and expenses in working-up as part of the bellwether process and all pre-trial and trial work for the case (including work performed as part of the approved bellwether process), as defined by Plaintiffs' Co-Leads, may be authorized by Plaintiffs' Co-Leads and thus be considered for common benefit to the extent it complies with the other provisions of this Order or Participation Agreement.

      c.    **Authorization and Time Keeping**

All time must be authorized and accurately and contemporaneously maintained. Time shall be kept according to these guidelines as set forth in the Participation Agreement. Further, all time shall be submitted on a timely basis in accordance with Section II above and in the form approved and set forth in Exhibit C, hereto. The time and expense will be maintained by the firm of Postlethwaite & Netterville and reviewed by Amy Collins, Esq, both of whom agree to be bound and subject to CMO 4, the Protective Order in this MDL.

**V.    PLAINTIFFS' LITIGATION FEE AND EXPENSE FUNDS**

    **A.**    **Establishing the Fee and Expense Funds**

At an appropriate time, Plaintiffs' Co-Lead Counsel will be directed to establish two interest-bearing accounts to receive and disburse funds as provided in this Order (the "Funds"). The first interest-bearing accounts shall be designated the "Hair Relaxer Fee Fund" and the second interest-bearing accounts shall be designated the "Hair Relaxer Expense Fund." The Funds will be held subject to the direction of this Court.

By subsequent Order of this Court, the Court will appoint a qualified certified public accountant or other duly capable and experienced administrator to serve as Escrow Agent ("EA") and/or Fund Administrator ("FA") over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such

subsequent Order shall specify the hourly rates to be charged or fee structure for the EA and/or FA, including any of the EA and/or FA's assistants, who shall be utilized where appropriate to control costs. The EA and/or FA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel or its designee. Upon approval by the Court, the EA and/or FA's bills shall be paid from the Hair Relaxer Expense Fund or the PSC directly and shall be considered a shared cost. The Plaintiffs' Co-Lead Counsel or its designee shall provide a copy of this Order to the EA and/or FA.

### B. Payments into the Fee and Expense Funds

#### 1. General Standards

All plaintiffs and their attorneys who are subject to this Order and who agree to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to Hair Relaxer claims are subject to an assessment of the gross monetary recovery, as provided herein.

#### 2. Gross Monetary Recovery

Gross monetary recovery includes any and all amounts paid to plaintiffs' counsel by Defendants through a settlement or pursuant to a judgment, including any settlement that results from the insolvency proceeding of any Defendant, including but not limited to any insolvency proceeding under Title 11 of the United States Code. In measuring the "gross monetary recovery," the parties are to (a) exclude court costs that are to be paid by the defendant; (b) include any payments to be made by the defendant on an intervention asserted by third- parties, such as to physicians, hospitals, or other healthcare providers in subrogation related to treatment of a plaintiff, and any governmental liens or obligations (e.g., Medicare/Medicaid); and (c) include the present

13

value of any fixed and certain payments to be made in the future. The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court, unfiled, or tolled.

### 3. Assessment Amount and Holdback

Each case of a Participating Counsel where a judgment is entered or in which a resolution is reached with a signed settlement agreement shall be assessed for common benefit work and costs at 11% of the Gross Monetary Recovery in each such case. This amount shall be referred to as a Common Benefit Work Holdback percentage from the gross award, with 8% of the holdback being used to pay common benefit work and 3% of the holdback being used to reimburse common benefit expenses. These amounts and this request are without objection and on consent of the PSC.

The Cost Holdback portion shall be allocated to pay and/or reimburse the expenses that have been and/or will be incurred at the direction and approval by Co-Lead Counsel for the common benefit of Plaintiffs in MDL 3060. The Common Benefit Work Holdback shall be allocated to pay and/or reimburse fees for legal services that have been and/or will be provided by attorneys acting at the direction of Co-Lead Counsel for the common benefit of Plaintiffs in MDL 3060.

All expenses and legal services shall be at the direction of Co-Lead Counsel in order to be considered for reimbursement from these funds. Co-Lead Counsel may apply to the Court for an additional common benefit assessment against all Participating Cases that are pending at the time of such an application, including if additional funds are needed for reimbursement of the expenses that have been and/or will be incurred at the direction of Co-Lead Counsel for the common benefit of Plaintiffs in MDL 3060.

4. **Reporting Obligations**

Plaintiffs' Liaison Counsel shall provide to Defendants' Liaison Counsel the following two lists on a quarterly basis beginning on March 15, 2025: (a) a list of all lawyers who have filed a case that is pending in the MDL ("the MDL Counsel List") and (b) a list of all lawyers who have executed the Participation Agreement that is Exhibit A hereto who do not have a case pending in the MDL ("the Non-MDL Participating Counsel List"). These same lists shall be made available to all plaintiffs' counsel with cases in this MDL, as well as any other plaintiffs' counsel who signs the Participation Agreement, upon request. In the event there is a dispute as to whether a case should be on the lists, Plaintiffs' Co-Lead Counsel shall seek to resolve the matter with the particular plaintiff's counsel informally, and if that is unsuccessful, upon motion to the Court.

Within 14 days of receipt of these two lists from Plaintiffs' Liaison Counsel, Defendants' Liaison Counsel shall provide to Plaintiffs' Liaison Counsel a list of all lawyers who appear as counsel of record on a complaint in any hair relaxer case in any court in the United States (state or federal) who do not appear on either the MDL Counsel List or the Non-MDL Participating Counsel List. The parties' reporting obligations shall continue quarterly until the conclusion of this MDL.

5. **Defendants' Obligations to Pay Common Benefit Assessments**

For cases subject to an assessment (*i.e.,* all plaintiffs subject to this Order under Section I.B.1-5), Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment. No orders of dismissal of any plaintiff's claim shall be entered unless accompanied by a certificate of the Defendants' counsel that the assessment, if applicable, will be withheld and will be deposited into the Funds. This provision shall apply to any amounts paid to plaintiffs and their counsel resulting from any insolvency proceeding, including any insolvency proceeding under Title 11 of the United States Code, and may be made by any successor to the

15

Debtor established pursuant to the insolvency proceeding, including but not limited to any trust established to compensate plaintiffs established pursuant to a Chapter 11 Plan of Reorganization or Liquidation under Title 11 of the United States Code. If for any reason the assessment is not or has not been so withheld, the plaintiff and her counsel are jointly responsible for paying the assessment into the Fund promptly.

To preserve the confidentiality of settlement amounts, if any, Defendants may pay any such assessments on an aggregate basis for each quarter. Details of any individual settlement agreement, individual settlement amount, or amounts deposited into escrow by any particular Defendant shall be confidential; however they shall be disclosed to a Special Master, if one is appointed and/or Postlethwaite & Netterville and reviewed by Amy Collins, Esq, and to Co-Lead Counsel only to: (1) identify the plaintiff(s) in connection with which the 11% assessment is being sent; (2) state whether there are other settlement payments that will be made over time; and (3) supply details regarding the mechanism of deposit. Co-lead counsel shall not receive information regarding an individual confidential settlement that they are not counsel in. Quarterly statements from the EA and/or FA shall, however, be provided to Plaintiffs' Co-Lead or its designee (and, if the Court so orders, to the Court) showing only the aggregate of the quarterly deposits from all Defendants, disbursements, interest earned, financial institution charges, if any, and current balance.

## VI. DISTRIBUTIONS

### A. Court Approval

The amounts deposited into the Hair Relaxer Fee Fund and the Hair Relaxer Expense Fund shall be available for distribution to Participating Counsel who have performed professional services or incurred expenses for the common benefit. Such sums shall be distributed only upon Order of this Court. This Court retains jurisdiction over any common benefit award or distribution.

The Participating Counsel agree that any final decision by this Court regarding common benefits fees and common benefit expenses shall be final, binding, and non-appealable.

    **B. Application for Distribution**

Each Participating Counsel who does common benefit work and has complied with this Order has the right to present their claim(s) for compensation and/or reimbursement prior to any distribution approved by this Court. Any Counsel who does not sign the Participation Agreement shall not be eligible to receive common benefit payments for any work performed or expenses incurred.

At the appropriate time this Court shall also appoint a Common Benefit Fee Committee to make recommendations to this Court and/or a Special Master for distributions to Participating Counsel who have performed common benefit work and/or incurred common benefit expenses. In the event that there is not unanimous agreement among members of the Common Benefit Fee Committee, each member of the Common Benefit Fee Committee shall only have one vote and each vote shall bear the same weight. A decision about the recommendation to the Court of Common Benefit Fee Committee need only be made by a majority of votes. The Common Benefit Fee Committee shall determine on its own the most fair and efficient manner by which to evaluate all of the time and expense submissions in making its recommendation to this Court and/or a Special Master. This Court will give due consideration to the recommendation of the Common Benefit Fee Committee.

E N T E R:

Dated: December 3, 2024

*Mary M Rowland*
_____
MARY M. ROWLAND
United States District Judge