**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060** Case No. 23 C 818 Judge Mary M. Rowland **This document relates to:** All Cases |

**JOINT STATUS REPORT FOR THE DECEMBER 12, 2024**
**DISCOVERY STATUS CONFERENCE**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this Joint Status Report in

advance of the discovery status conference scheduled for December 12, 2024 before the Honorable

Magistrate Judge Beth W. Jantz.

I.    *General Discovery Issues*

**Plaintiffs' Position**:

In June of 2023 (18 months ago), Plaintiffs served interrogatories and document requests on the Defendants seeking the following information (among other things):

- Brand names for all Hair Relaxer Products (Rog Set 1, #2)
- The product name of each Hair Relaxer Product made available for sale and distribution in the US under that Brand Name (Rog. Set 1, #3)
- The years each Hair Relaxer Product was on the market (Rog Set 1, #4)
- Certain chemicals and ingredients in Hair Relaxer Products (Rog Set 1, #6)
- All final Labels for Hair Relaxer Products (RFP Set 1, #6)
- All Instructions for Use for all Hair Relaxer Products (RFP Set 1, #7)

Judge Rowland ordered that final and complete responses to those sets of discovery be provided no later than February 28, 2024 (10 months ago). *See* ECF 352 (Dec. 27, 2023 Minute Order) (setting February 29, 2024 as deadline for responses to Plaintiffs' first set of discovery, "no extensions"); *see also* ECF 417 (Jan. 25, 2024 Minute Order) ("Defendants must complete all production in response to the first round of written discovery by 2/29/24. The Court will not extend this deadline."). *See also* ECF 421 at 74:4-10 (Jan. 25, 2024 transcript) ("All this stuff on the first set [of discovery], it has to be done by February 29th. There's no more extensions on that.. . . I don't know what defendant is telling me they can't do it by then. Get more paralegals. It's got to be done."). However, that information is not complete for all Defendants.

In December of 2023 (12 months ago), Plaintiffs served additional interrogatories and seeking the following information (among other things):

- The identity of each component part of the Defendants' Hair Relaxer Products (Rog Set 2, # 6)
- The identity of all instructions or warnings as well as any draft instructions and/or warning that have accompanied each Hair Relaxer Product (Rog Set 6, # 3)
- The changes to instructions or warnings over time (Rog Set 6, #4)
- The identity of specific chemical composition of each Hair Relaxer Product and any changes over time (Rog Set 6, #2)

Since then, Plaintiffs have spent countless hours attempting to piece together the disparate information that has dribbled in from each Defendant to determine whether Defendants had even provided complete responses to these requests. Plaintiffs have also engaged in countless meet and confers over the months in an attempt to figure out what they had, what had been withheld, what did not exist, and what was still to come. To be clear, Plaintiffs do not represent that Defendants have not produced *any* information; rather, as previewed for this Court at the November 14, 2024 Case Management Conference, Plaintiffs *do* represent that they do not have *all* information concerning *all* products and/or brands manufactured or sold by each Defendant.

The result of that months long process by the Plaintiffs is set forth in Exhibit A. Exhibit A is a list of the categories of information that Plaintiffs believe are outstanding from each Defendant, as well as the particular brands or products that fall into each category. Put differently, Plaintiffs provide Exhibit A for the purpose of illustrating what they believe to be missing from the responses that they have received; it is not being provided to ask the Court to make a product-by-product determination of whether all information has been provided to date.

As this Court has noted, this information is indisputably relevant to the issues in this case. *See also* ECF 421 at 21:23-22:9 (Nov. 14, 2024 transcript) ("It strikes me as sort of pretty clearly responsive, relevant…"). Further, as Judge Rowland correctly stated, all Parties needed this information ten months ago so all could move on to the other important issues in the case. That has not happened to date and Plaintiffs ask that this Court enter an Order requiring all Defendants to finalize their responses to the discovery requests fully and completely no later than December 20, 2024.

While Defendants protest that this request is nothing but a back-door way to serve additional interrogatories, that is simply untrue. Instead, it is a way to get each Defendant to provide complete information concerning all of the Hair Relaxer Products that they have made or sold *in response to discovery that was served a year or more ago.* One example is the Plaintiffs' request for information concerning the identity of the chemicals that Defendants chose to put in their Hair Relaxer products. While Plaintiffs have long stated that the case concerned the totality of the Hair Relaxer Product as sold and as intended for use, as opposed to simply the individual

chemicals themselves, the Defendants have – since the inception of this MDL almost two years ago – repeatedly previewed their defense that Plaintiffs would need to point to a specific product and product ingredient at trial. See, e.g., ECF 303 at 31:10-12 (Nov. 17, 2023 hearing transcript) (Strength of Nature counsel: "But we need to know what about those products is at issue here. There are hundreds and hundreds of ingredients at play."); ECF 421 at 28: 5-13 (Jan. 25, 2024 hearing transcript) (Court: "But what I think you're been trying to say to me is. . .'So we don't know if it's salt that causes the cancer or whatever other product it is.' Is that your issue?" Namaste counsel: "Correct, Your Honor."). However, now, on the eve of the close of written discovery, Defendants have not yet provided the Plaintiffs with a complete list of all chemicals that they used in each product for each year that the product was on the market. Plaintiffs will need that information to prepare for Defendants' defense of this lawsuit – and certainly the Defendants cannot be permitted to raise this issue while simultaneously refusing or being unable to provide the Plaintiffs with the very information that apparently goes to the heart of their defense of this case.

Defendants have invoked Judge Rowland's guidance when it suited them. For example, Defendants have leaned heavily into one of Judge Rowland's oral orders, interpreting Fed. R. Civ. P. 33, but they have transformed Court guidance that was intended to streamline discovery into behavior that obscures and delays the case. Specifically, although Judge Rowland has permitted Defendants to answer interrogatories with documents **if** they can point to the specific document by Bates number that answer the interrogatory, *see* ECF 421 at 74-77 (Jan. 25, 2024 transcript) ("If you're giving documents in response to interrogatories, then you have to say 'Document page 1 through 10 answers this interrogatory"); *see also* ECF 416 (Minute Order Jan. 25, 2024) , certain Defendants have accepted this as carte blanche to not answer interrogatories at all. Instead, on very basic information like their product ingredients (chemical composition), Defendants have responded to interrogatories by directing Plaintiffs to documents across a range of Bates numbers, not matching information to products or time periods, and offering information which from the face of the identified documents lacks the information sought. This all leaves Plaintiffs no further ahead than they were a year ago when the Court ordered information to be produced, as Plaintiffs are spinning their wheels trying to discern the location of any answer, much less the details, about things like product ingredients and chemical compositions of products. Of course, even if documents could answer these questions (which Plaintiffs contest), this process of answering by document assumes Defendants have timely produced all of them, which is also untrue based on Defendants' own statements as well as impossible since product identification continues and will be ongoing per the Defendants.

Likewise, Defendants repeatedly assert the Court's document discovery deadline of February 28, 2025 as a shield to moving more quickly, offering that cut-off date as the date Defendants will complete the (overdue) priority discovery and related basic information. First, much of this information was due in February of 2024, and the new deadline did not alter Judge Rowland's strict order on that discovery. Furthermore, to the extent that the information is requested in later sets of interrogatories, Defendants

were under an obligation to provide those answers months ago. Judge Rowland's final cutoff date did not relieve any Defendants of the obligation to act with all diligence and haste in producing critical information earlier, nor does it limit the Court now in setting additional interim deadlines when such are clearly needed.

At this point, Plaintiffs seek the most basic cure: an order requiring every Defendant to answer the served interrogatories *as drafted*, listing, among other things, their product names, the years each product was on the market, the components that comprised the Hair Relaxer product, the chemicals and chemical composition used in each product (including each component), and the warnings and instructions for each product over time (and changes thereto). In addition, the Defendants must be required to produce labels (artwork) for all products as requested in the original set of discovery served 18 months ago. Further, if a Defendant does not have the information requested, they must be required to state so clearly *as to each separate product and brand and year* in the discovery response itself. This should be done no later than December 20, 2024.

**Defendants' Position:**

Plaintiffs' first draft of this Joint Status Report ("JSR"), exchanged in accordance with the parties' agreed schedule, was nine (9) pages long and did not include any general issues or even a placeholder for later inclusion of a general issue. Nonetheless, upon the next agreed exchange two (2) days before the JSR was due, Plaintiffs sent a revised draft with a new two (2) page "General Issue" requesting a court order that *all* Defendants answer unidentified interrogatories within two (2) weeks and attaching an 88-page exhibit listing alleged discovery deficiencies for multiple defendants. Defendants responded to the revised JSR on December 5, 2024. Thereafter, Plaintiffs completely rewrote the General Issue (including revising the relief requested from the Court with an even shorter deadline). The once-again substantially revised JSR was circulated to Defendants a mere 4.5 hours before the December 6, 2024 filing deadline; the revised Ex. A (which now approaches 100 pages) was circulated two hours later. Defendants understand that discovery is an evolving issue and that it benefits all parties and the Court to have a clear understanding of areas of dispute. In this instance, however, Defendants simply have not been afforded a reasonable opportunity to properly engage with Plaintiffs on the issues now presented to this Court. Given the belated, extensive and ever-evolving nature of Plaintiffs' General Issue, if the Court requests a substantive response from Defendants, they request additional time to prepare that response. Defendants maintain, however, that no substantive response is needed because, as explained below, the General Issue that Plaintiffs present is inappropriate for inclusion in a joint status report.

First, Plaintiffs initially failed to identify any specific interrogatories or requests for production to which Defendants' responses are allegedly deficient. Although Plaintiffs have now, within the last 24 hours, referenced specific discovery requests that they maintain require Defendants to provide the requested information, Defendants have not had an opportunity to review those requests and their individual responses thereto to determine if they agree with the deficiencies alleged. Plaintiffs

have shifted from requesting "production of the most basic information in this lawsuit" with an emphasis on the Court's February 29, 2024 deadline for Defendants to respond to Plaintiffs' "first set of discovery" to seeking, as they state it, answers to "the served interrogatories as drafted." Defendants' maintain, however, that not all of the supposedly "most basic information" that Plaintiffs seek in their General Issue was requested in the first set of discovery or even in the later-served discovery that they now reference in the JSR. To the extent information is subject to pending RFPs, the deadline for production of responsive documents is February 28, 2025. To the extent Plaintiffs believe that certain Defendants have not met their discovery obligations with regard to the first set of discovery and the Court's orders related thereto, Plaintiffs fail to explain why they waited until just 48 hours before this JSR was due, and nine (9) months after the February 2024 deadline, to raise Defendants' supposedly "unacceptably prejudicial" delays and purported violations of Court orders. For months, Defendants have operated on the understanding that Plaintiffs were satisfied with Defendants' discovery responses to Plaintiffs first set of discovery and have been working in good faith with Plaintiffs to respond to and, as appropriate, supplement responses to later-served discovery while also negotiating and implementing search terms for the review and production of electronically stored information. Discovery is on-going; Plaintiffs have an obligation under the rules to engage with the documents before seeking wholesale relief as they do, inappropriately, in this JSR.

Further to the above, Plaintiffs' request to the Court is essentially an attempt to write Federal Rule of Civil Procedure 33(d) out of existence. Plaintiffs ignore the fact that several Defendants have cited to their documents, with specific document references, in response to Plaintiffs' interrogatories that would otherwise require defendants to compile a summary from documents they produced. Where Defendants have properly relied on Rule 33(d), or supplement responses to rely upon that rule, Plaintiffs offer no basis for their position that this is improper. Rather, before accusing defendants of wrongdoing, Plaintiffs need to take the time to engage with defendants' responses and review the referenced documents, which in many (if not most) instances will contain the information Plaintiffs contend they do not have.

Finally, Plaintiffs have not raised a "general" issue applicable to all Defendants and no order could address the issue as to all Defendants. Each Defendant in this case is in a different position with regard to discovery issues.

- All Defendants have answered Plaintiffs' pending interrogatories and provided written responses to Plaintiffs' requests for production but only some are each engaged in discussions with Plaintiffs on requested amendments or supplements to those responses while others have not had any recent discussions with Plaintiffs because Plaintiffs have neither raised nor requested any amendments or supplements from those Defendants;
- some Defendants have completed or nearly completed document production and some still have a significant number of documents to review and, as appropriate, produce before the Court's February 28, 2025 deadline; and

- some Defendants are engaged with Plaintiffs on a subset of the issues raised in the JSR and some had no notice before seeing the draft JSR that Plaintiffs circulated on December 3, 2024 that Plaintiffs had any on-going concerns with their discovery responses.

These are defendant-specific issues and should be addressed as such. Indeed, even during the exchange of this JSR, defendants have appeared and fallen off of Ex. A as individual discovery conferences continue.

Plaintiffs' last minute addition to reference specific discovery requests in the JSR, many of which Defendants had no understanding were still at issue, does not negate the fact that there is no pending discovery that seeks all of the information that Plaintiffs set out in their General Issue and certainly no discovery that would require Defendants *within the next 14 days* to lay out that information in the manner Plaintiffs' request. Plaintiffs have discovery obligations of their own; they must engage with the documents produced (or to-be produced) in response to their discovery requests. They cannot, certainly through an informal request in a JSR, seek to move forward previously set discovery deadlines or compel Defendants to produce information in a form that does not exist.

II.   ***Defendant Specific Discovery Status:***

**Avlon Industries, Inc.:**

1. <u>Document Requests/Production Status:</u> As discussed at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), Avlon provided an updated letter regarding its objections to Plaintiffs' request for production on November 20, 2024 and will provide a formal amendment to its written responses by December 20, 2024.

2. <u>Issues Requiring Intervention:</u>

**Plaintiffs' Position:**

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, following the meet and confer that took place on December 2, 2024, Plaintiffs seek court intervention for Avlon as it has refused to produce documents and materials related to (1) "net worth"; (2) "overall accounting"; (3) "documents and materials that exists after January 12, 2023, when Avlon was first named in this litigation"; (4) "foreign sales and marketing"; and (5) "the location of any foreign manufacturing plants". At this time, the PSC requests court intervention on these five issues.:

Firstly, Avlon has consistently refused to provide documents related to their net worth, as requested in the Plaintiffs' Requests for Production, including the Second Set of Requests, Nos. 1-4; Fourth Set, Nos. 5, 12, 13, 16, 17, 18; Fifth Set, No. 19; and Seventh Set, Nos. 1-2. This refusal obstructs the Plaintiffs' ability to assess Avlon's financial standing, which is crucial for the case.

Additionally, Avlon has declined to produce overall accounting documents, including those requested in Fourth Set, Nos. 5, 12, 13, 16, 17, 18; Fifth Set, No. 19; Seventh Set, Nos. 1-2. These documents are essential for a comprehensive understanding of Avlon's financial operations and transactions, which are pertinent to the litigation.

Moreover, Avlon has refused to provide materials that existed after January 12, 2023, the date they were first named in this litigation. This includes documents requested in the Second Set, Nos. 3 and 5 and Fifth Set, Nos. 7-9, and other similar requests. In addition to these specific instances that Avlon has stated in writing, Avlon has indicated orally during the meet and conferrals that this limitation applies to every response to all requests for production. This blanket refusal significantly hampers the Plaintiffs' ability to obtain relevant information.

Furthermore, Avlon has refused to produce documents related to foreign sales and marketing, specifically in the Seventh Set of Requests, No. 2. This information is vital for understanding Avlon's international business practices and their impact on the case.

Lastly, Avlon has declined to identify the location of any foreign manufacturing plants, as requested in the Second Set of Requests, No. 6. Avlon asserts that it is not required to provide any foreign information besides "foreign regulatory" information. This refusal limits the Plaintiffs' ability to investigate Avlon's manufacturing processes and potential regulatory compliance issues.

These refusals by Avlon to produce responsive documents in these key areas are at the heart of the dispute between the Plaintiffs and the Defendant, and they significantly impede the Plaintiffs' ability to build a comprehensive case.

Avlon is scheduled to complete its rolling production of ESI documents responsive to the PSC's general discovery requests and custodial file requests by December 11, 2024. Assuming Avlon meets this deadline, the PSC will continue to review these produced documents and determine if there are any additional issues with Avlon's production. If so, the PSC will meet and confer with Avlon at that time, in order to determine if any additional court intervention will be necessary.

**Avlon's Position:**

Avlon and Plaintiffs met on December 2, 2024, to discuss Avlon's proposed new search terms and questions that Plaintiffs had about Avlon's November 20, 2024 letter regarding the updates it intends to make regarding Requests for Production Sets 2-8. Avlon and Plaintiffs are close to a resolution on the new search terms and expect that the issues will be resolved by their next meet and confer on December 5, 2024. The parties are in agreement about the parameters for what ESI will be searched with the new terms. Avlon is generally in agreement with Plaintiffs' proposed changes to its new list of search terms but is examining about 12 proposed search term changes from the Plaintiffs in more depth to determine if they require more refinement. Avlon anticipates producing a hit list along with minor term revisions, if any, by December 5, 2024. Avlon anticipates that an agreement on the terms will be reached before the discovery hearing.

Avlon intends to stand on its objections to the production of net worth and accounting methods and records as premature and not relevant to the issues of causation and liability

in this case. *See Lanigan v. Babush,* 2011 U.S. Dist. LEXIS 124416, 2011 WL 5118301, at *4 (N.D. Ill. Oct. 27, 2011); *also Makowski v. Smith Amundsen, LLC,* 2010 U.S. DIst. LEXIS 81388, 2010 WL 3172476, at *3 (N.D. Ill. Aug. 11, 2010). Avlon has produced and continues to produce sales numbers, sales invoices, and unit movement where it has located such information.

Magistrate Finnegan has already ordered that the Defendants are not required to produce documentation and information following its inclusion in this litigation unless Plaintiffs have specifically laid out why such information, other than we want it, is required. [See Docket Entry 644]. Plaintiffs have not engaged in such discussions with Avlon.

Like the time scope issue, Judge Rowland has already ruled on the issues related to the production of foreign sales, foreign marketing, and foreign manufacturing, and Defendants do not have to produce such information. [See Docket Entry 353 at pp. 10-11]. This case does not involve plaintiffs from outside of the United States or its territories. Avlon has responded in Interrogatory No. 3 of Interrogatory Set 3 that the products sold in the United States and its territories are manufactured in the United States and identified all facilities where they have been manufactured and developed since Avlon began selling hair relaxers. Avlon has likewise, in accordance with Docket Entry 353, provided information and materials regarding what countries it sells its U.S. manufactured products, the labels used for those products both foreign and domestic, the instructions for those products both foreign and domestic, and its efforts to comply with foreign and domestic regulatory requirements for those products manufactured in the United States. Avlon has produced and continues to produce such documentation.

Plaintiffs' complaints and assertions in Exhibit A regarding Avlon are a minute-by-minute evolution of Plaintiffs' dissatisfaction with what Avlon has produced to date and a premature assessment of what they have found. Avlon is continuing to roll out its ESI materials and anticipates that it will be substantially complete by December 11, 2024. Avlon likewise expects to roll out more information based on a secondary set of search terms and a quality control analysis of what it has produced and reviewed. This discovery is to be completed by February 28, 2025, but Plaintiffs by this evolving exhibit want discovery done now while Avlon continues to review and evaluate what it has found and how it is or is not responsive to Plaintiffs' discovery requests.

Plaintiffs originally submitted a version of Exhibit A to Defendants on December 3, 2024. This exhibit referred to an alleged undisclosed hair relaxer line from Avlon. Plaintiffs first raised questions about this line on December 2, 2024, and Counsel for Avlon reported that it would discuss it with Avlon and provide clarification. Plaintiffs did not give Avlon a chance to respond before including it the original Exhibit A, and only withdrew that section when Avlon in another draft of this insert explained that the particular line in question was a derivative of an existing line that never went to market.

With respect to the remainder of Exhibit A dedicated to Avlon about formulas, ingredients, raw materials, and hair relaxer system products, Plaintiffs originally demanded a certification about that nature and extent of that information. However, Avlon had already provided a certification about Avlon's current understanding of the extent of that

information and noted that it in its original response to the original Exhibit A. Plaintiffs in the current iteration of Exhibit A now demand a new certification and new updates by Avlon to its interrogatory responses without actually discussing this with Avlon save for a passing swipe on December 2, 2024, while in the midst of discussing other specifically designated topics. Avlon continues to roll out ESI materials and will continue to do so through January 2025 based on the newly agreed search terms and quality control review of the materials generated by the original set of search terms.

Avlon noted in its most recent set of supplemental interrogatory responses, demanded by Plaintiffs, in October 2024, and in meet and confers that Avlon's investigation is not complete and that Avlon intends and expects to update its interrogatory responses with more information, including responsive bates numbers as ESI production comes to an end. The same holds true now. Avlon has identified its hair relaxer lines (including name changes and alternate internal names) over time as well as its recommended system products over time in Interrogatory Nos. 3 and 4 of Interrogatory Set 1 most recently supplemented on October 4, 2024, and in Interrogatory No. 6 of Interrogatory Set 3 most recently supplemented on October 16, 2024. If there is an inconsistency in understanding, it is up to the Plaintiffs to request clarification. Since Avlon's most recent supplements to its interrogatories in October 2024, Plaintiffs have not specifically identified and/or sought clarification of inconsistencies prior to their release of both versions of Exhibit A, including claims about missing formularies.

**Beauty Bell Enterprises and House of Cheatham, LLC:**

**Plaintiffs' Position:**

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs do not currently seek anything further, and Bell Beauty and House of Cheatham, LLC seek nothing further. However, the parties wish to provide an update from the discussions at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), which required the parties to meet and confer "to determine whether Defendants have the responsive information regarding components/ingredient/formularies for the relevant products that Plaintiffs seek, or whether Defendants will certify that they do not have any further information" by the close of business on December 2, 2024. (Id.) House of Cheatham served supplemental interrogatory responses on November 22, 2024; many of the pertinent supplemental responses referred to a contemporaneous document production. Plaintiffs continue to meet and confer with Defendants as to whether Plaintiffs assert any remaining deficiencies on the issues addressed in the Court's November 19, 2024 Order and will address at the December 12, 2024 Conference, if necessary.

House of Cheatham produced its first rolling production of ESI on September 9, 2024. The parties reached agreement on search terms on October 14, 2024. Following that agreement, House of Cheatham produced its second rolling production on October 31, 2024. House of Cheatham represented that it anticipated completing its ESI productions in November 2024. On December 4, 2024, House of Cheatham represented it will make its final ESI production by Wednesday, December 11, 2024.

**House of Cheatham's Position:**

House Cheatham, LLC denies that it seeks nothing further from plaintiffs. House of Cheatham, LLC seeks compliance with plaintiff fact sheets pursuant to the agreed upon processes for plaintiff fact sheets. House of Cheatham, LLC timely submitted the supplemental and amended discovery answers that it was ordered to by November 22, 2024. (Dkt. No. 956 at p. 2.) The parties were to meet and confer "to determine whether Defendants have the responsive information regarding components/ingredient/formularies for the relevant products that Plaintiffs seek, or whether Defendants will certify that they do not have any further information" by the close of business on December 2, 2024. (*Id.*) Plaintiffs did not seek any such meet and confers by December 2, or up to the time of this report, so this issue is resolved as far as House of Cheatham, LLC is concerned. While House of Cheatham represented that it intended to complete its rolling ESI productions by the end of November, this was not possible, and House of Cheatham, LLC intends to complete its rolling ESI productions within the next two weeks. House of Cheatham, LLC defers to the defendants' joint statement with respect to "Exhibit A."

### L'Oréal USA:

**Plaintiffs' Position:**

1. Interrogatories: Regarding the Interrogatories served on December 2, 2023, the PSC raised concerns with several responses, including but not limited to Interrogatory set 3, numbers 3 and 5; Interrogatory set 5, numbers 4, 7, 8, 9; Interrogatory set 6, numbers 2, 3, and 4; and Interrogatory set 7, numbers 5, 6, and 9. The PSC met and conferred with L'Oréal USA concerning these issues. On November 21, 2024, L'Oréal USA served their second supplementary responses, however they still contain deficiencies.

2. Document Requests/Production Status: The PSC has identified gaps in what has been produced to date. As discussed at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), this issue was referred to Special Master Grossman for resolution of this and any related issues. Per Special Master Grossman's instructions, the parties submitted three-page letters on November 27, 2024 as to their respective positions on the matter. The parties met with Special Master Grossman on December 4, 2024 and are in the process of drafting and exchanging certification language.

3. ESI Status: Plaintiffs have raised concerns regarding L'Oréal USA's production of electronically stored information. The most urgent issue pertains to a database called ESKO. In accordance with CMO 4, Plaintiffs met with a technical expert at L'Oréal USA on November 21, 2024 regarding the ESKO database, which revealed information concerning reports and documents that the PSC requested but has not been produced in written discovery thus far. The PSC requested an update to responses to written discovery requests and production based on this new information. Plaintiffs have also requested a follow up call with the technical expert, Ms. Yang, however L'Oréal USA has refused this request.

Additionally, Plaintiffs have requested that L'Oréal USA disclose any foreseeable issues related to the collection from various relevant non-custodial sources. It remains unclear whether L'Oréal USA anticipates any upcoming issues in this regard. Plaintiffs continue to engage in discussions on this matter. To date, L'Oréal USA has not clarified which custodial or non-custodial sources are affected by this issue, nor have they explained the alternative methods they will employ to locate those documents.

4. <u>Issues Requiring Intervention</u>: Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs request a follow-up meeting with Ms. Yang, the technical expert for the ESKO database, as well as supplementation of L'Oréal USA's discovery responses.

The PSC also requests that L'Oréal USA provide information about any other database which triggers the CMO 4 meet and confer and respectfully requests that the Court issue an Order requiring L'Oréal USA to search their backup data for documents they have stated have been destroyed in accordance with their retention policy per CMO 4.

**L'Oréal USA's Position:**

**On Interrogatories:** L'Oréal USA served supplemental interrogatory responses on November 21, 2024, in response to Plaintiffs' deficiency letter. Plaintiffs purport to complain that L'Oréal USA's responses "still contain deficiencies," but have failed to identify a single specific deficiency in the responses.

**On the Requested Document Production Certification:** As L'Oréal USA has explained to this Court, there are no "gaps" in its production to its knowledge related to the legacy documents or any others (though L'Oréal USA's review and production of custodial documents is ongoing. On December 4, 2024, Plaintiffs and L'Oréal USA participated in a conference with Special Master Grossman to discuss the document certification issue. Using the certification language proposed by L'Oréal USA, Special Master Grossman suggested revised certification language which the parties agreed to. The parties are in the process of drafting and exchanging the certification.

**On ESI Status/ESKO:** With respect to ESKO, which is a software program used to store product artwork, L'Oréal USA has more than satisfied its obligations. CMO No. 4 states: "to the extent relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not), he Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format… During the meet and conferral, the Producing Party shall have available a subject matter or technical expert to address questions regarding the capabilities and potential production formats for information retrieved from any such proprietary software." (ECF No. 109 at ¶ IX(A), p. 22). The ESI that relates to ESKO—product artwork—was produced by L'Oréal USA *over a year ago*, in advance of the Rule 30(b)(6) deposition of L'Oréal USA. L'Oréal USA also identified the ESKO software in its interrogatory responses served on October 19, 2023. Nevertheless, several months after this production, Plaintiffs demanded to speak with someone at L'Oréal USA relating to ESKO. Thus, on November 21, 2024, L'Oréal USA scheduled a 30-minute call between Plaintiffs and L'Oréal USA's expert for Plaintiffs to ask relevant questions. Well in advance of this call, L'Oreal USA

provided Plaintiffs with an exemplar Action History Report that was exported from ESKO; this is the primary ESKO artwork tracking output used by L'Oréal USA that identifies changes made to product artwork. L'Oréal USA offered to produce all of the Action History Reports it had available for the artwork it had produced, but Plaintiffs refused, demanding to first speak to a L'Oréal USA employee.

Despite the 30 minutes allocated for this call—which was set via a calendar invite, without complaint, to Plaintiffs' counsel more than a week before the call—L'Oréal USA allowed the call to go for a full hour. During that hour, rather than focusing on production formats and capabilities, Plaintiffs attempted to conduct a quasi-deposition and complained that an hour was not enough time (though it was twice as long as what was scheduled). L'Oréal USA does not believe it is appropriate, under the circumstances, to make its technical expert available for further questioning, particularly since Plaintiffs have asserted in meet-and-confer discussions that there should be "no time limit" whatsoever for such questioning.

After the ESKO call, L'Oréal USA invited Plaintiffs to provide any necessary follow-up questions in writing. ***Plaintiffs have not identified a single unanswered question***. Given that the purpose of this call is not to surprise the technical expert with unexpected questions but, rather, to streamline the e-discovery process relating to as-yet-unproduced documents, Plaintiffs should have no problem putting their questions in writing in order to get the best and most complete answers.

Plaintiffs also claim that L'Oréal USA should provide "an update to responses to written discovery requests and production based on" supposed new information discussed on the ESKO call. Yet, despite L'Oréal USA's request to Plaintiffs (made on November 25, 2024) to identify any responses to interrogatories or requests for production that somehow require supplementation or amendment due to information discussed on the ESKO call, ***Plaintiffs have not identified a single such response***.

**With respect to non-custodial sources**, Plaintiffs write that "L'Oréal USA has not clarified which custodial or non-custodial sources are affected by this issue, nor have they explained the alternative methods they will employ to locate those documents." L'Oréal USA does not know what Plaintiffs are referring to by "this issue" or what "those documents" are. In this statement and during the meet and confer process, Plaintiffs have made vague allusions to some sort of discovery shortcoming by L'Oréal USA with respect to databases, but have failed—despite repeated requests—to identify the supposed problem with any specificity. L'Oréal USA believes its ongoing document review and production efforts are sufficient and proper and has not identified any "foreseeable issues" (to use Plaintiffs' words) that presently require a meet and confer.

**On Issues Plaintiffs Claim Require Court Intervention:** With respect to ESKO, Plaintiffs should not be granted additional time to question L'Oréal USA's technical expert where they have refused to identify a single unanswered question or subject of further inquiry. Similarly, Plaintiffs cannot simply ask for Court intervention regarding "supplementation" of L'Oréal USA's discovery responses when they have refused to identify a single response that they contend should be supplemented. A motion to compel should be required if Plaintiffs truly believe there are deficient responses, so that the parties may brief the issue(s).

Plaintiffs provide no information about the "backup data" issue that they now claim requires Court intervention. Rather, Plaintiffs just demand "that the Court issue an Order requiring L'Oréal USA to search their backup data for documents they have stated have been destroyed in accordance with their retention policy per CMO 4." This is a mischaracterization of CMO No. 4. Indeed, CMO No. 4 expressly states that backup data is generally deemed inaccessible and need not be searched. (*See* ECF No. 109 at ¶ VI(C), p. 8-9). An exception to this general rules exists where "a Party learns that potentially relevant and non-duplicative documents or information have been destroyed per a document retention policy, but that an archival/backup location contains an archival/backup copy of such documents." (*Id*. at ¶ VI(E), p. 10). In those instances, "the Party will disclose the existence of this archival/backup data, regardless of whether such a location has been declared or deemed inaccessible." (*Id*.) Here, L'Oréal USA is not aware of any archival/backup location to disclose pursuant to CMO No. 4, and Plaintiffs have not identified any. Yet, despite providing no basis for doing so, Plaintiffs ask the Court to order L'Oréal USA to search all of its backup data, which is in direct contravention of CMO No. 4. This request should be denied; no relief or Court intervention is required here.

## Luster Products, Inc.:

### Plaintiffs' Position:

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs do not currently seek anything further, and Luster Products, Inc. seeks nothing further. However, the parties wish to provide an update from the discussions at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956). The parties met and conferred on November 20, 2024 regarding ESI issues related to hard copy document productions. The parties provide the following update: Luster will supplement existing productions to provide appropriate metadata in conformance with the Court's prior ESI order and on a rolling basis to be complete by December 31, 2024.

### Luster's Position:

On November 20, 2024, and again on December 3, 2024, Luster had a meet and confer with Plaintiffs' counsel. On the evening of December 3, 2024, Luster received the draft JSR and Exhibit A to the JSR, containing issues that were not discussed during either meet and confer. Accordingly, these issues are not ripe for the Court, as the parties have not conferred on same. A further meet and confer is already set between the parties for January 7, 2025.

## McBride Research Laboratories, Inc.:

### Plaintiffs' Position:

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs do not currently seek anything further, and McBride Research Laboratories, Inc. seeks nothing further. However, the parties wish to provide an update from the discussions at the November 14, 2024 status hearing and memorialized in the Court's November 19,

2024 Order (*see* ECF No. 956). The parties met and conferred on November 25, 2024 regarding ESI search terms and discovery responses. McBride Research Laboratories, Inc. agreed to run the proposed search terms against its documents and will provide a hit count. McBride Research Laboratories, Inc. will also amend their Interrogatory responses by December16, 2024.

**McBride's Position:**

On November 25, 2024, McBride and Plaintiffs had a meet and confer on search terms, during which Plaintiffs' counsel mentioned alleged deficiencies in Interrogatory Sets 1 and 3, and advised they'd follow up with the specifics of same via email. McBride agreed to amend the Interrogatory Set 1, No. 4 and Interrogatories Set 3, No. 6 based on the meet and confer by December 16, 2024.

On December 2, 2024, product names that Plaintiff inquired about were provided to McBride's counsel, and the following day, December 3, 2024, McBride received Exhibit A to the JSR, containing issues that were not discussed on the meet and confer. Accordingly, on December 5, 2024, McBride requested another meet and confer to discuss issues raised in the General Issues and Exhibit A. Accordingly, these issues are not ripe for the Court, as the parties have not conferred on same.

**Namasté Laboratories, LLC:**

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs do not currently seek anything further. However, the parties wish to provide an update from the discussions at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956). Namaste amended its response to Plaintiffs' Third Set of Interrogatories, Question 6 on November 21, 2024. After review, the parties provide the following update:

**Plaintiffs' Position**:
Defendant Namaste's Second Amended Responses to Plaintiffs' Third Set of Interrogatories, Question 6, is still deficient. Of 18 products identified, Namaste only provided information on 8. On November 25, 2024 Plaintiff advised Namaste that the responses were deficient and asked for responses on the remaining 10 products not later than Friday, December 6, 2024.

**Namaste's Position:**
Namaste and Plaintiffs have conferred on Namaste's Second Amended Response to Plaintiffs' Third Set of Interrogatories, Question 6 and Namaste is investigating the claimed deficiencies. Namaste will further respond to Plaintiffs' regarding the claimed deficiencies by Friday, December 6, 2024. Plaintiffs' Position, above, is limited to this specific request because it is the only request on which Plaintiffs and Namaste have been conferring. Prior to Plaintiffs' circulation of a revised Discovery JSR on the evening of December 2, 2024, Namaste was not aware that Plaintiffs had any on-going concerns with the status of Namaste's discovery responses to date.

**Revlon:**

1. Document Requests/Production Status: Plaintiffs have met and conferred with Revlon regarding missing production due to a change in SAP systems and whether third-party discovery from the vendor is appropriate. As discussed at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), this issue has been referred to Special Master Grossman for resolution. The parties have submitted letter briefs to Special Master Grossman and anticipate arguments will be heard prior to the December 12, 2024 Status Conference.

2. ESI Status: Plaintiffs have submitted a list of ten additional custodians to Revlon along with the original list of 600 search terms with preliminary limiters to generate a hit report that the parties can use to continue negotiations on reductions and limiters for Revlon's collection, review, and production of ESI documents. This is a continuation of the process that the parties used to negotiate preliminary terms with limiters for Revlon's recent production which was completed in August 2024. As discussed at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), this matter was referred to Special Master Grossman for resolution. The parties have submitted letter briefs to Special Master Grossman and anticipate arguments will be heard prior to the December 12, 2024 Status Conference.

3. Issues Requiring Intervention:

**Plaintiffs' Position**:

Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants, Plaintiffs seek an order from the Court requiring Revlon to produce a comprehensive list of all products manufactured by Revlon that includes the components and timeframes of the hair relaxer products on the market. Revlon correctly asserts that they have provided various pieces of information as it relates to their hair relaxing products throughout their complicated corporate history. However, they fail to appreciate that without a comprehensive list for all years they have manufactured hair relaxer products, Plaintiffs are unable to match-up the referenced documents with the appropriate products, naming conventions, and date ranges. This behavior extends past just product identification to other interrogatory responses such as advertising, clinical testing, and financial information.

Examples of this can be seen in Revlon's responses to Interrogatories 3 & 10 in Set 6 (attached as Exhibit B) also do not meet the requirements of Rule 33(d) to justify shifting the burden to Plaintiffs to find the answer to these Interrogatories regarding Revlon's own advertising and clinical testing. Revlon's response to these Interrogatories provides a disorganized list of documents with no descriptors or specificity on how they respond to the question. These Interrogatory responses also demonstrate Revlon's failure to answer all subparts, as they once again the list various documents but fail to explain which subpart they correspond to – if they even answer the subpart at all. Plaintiffs are seeking the Court's assistance in obtaining clear and complete answers. As such, Plaintiffs request that the Court compel Revlon to provide updated, fulsome responses to these Interrogatories. Specifically, Plaintiffs request that the Court order Revlon to provide full and complete written responses that answer each subpart of the Interrogatory. To the extent Revlon

wants to supplement these full written responses with documents, the Court should require Revlon to do so with specificity to where Plaintiffs are able to identify which documents are responsive to the Interrogatory and their respective subpart and where the responsive information can be found within the document identified.

Plaintiffs' concerns as they were identified to Revlon in detailed letters transmitted in September and November after numerous meet and confers. Revlon has responded that no further meet and confers are necessary as they do not intend to take further action on these deficiencies. Plaintiffs requests that the Court order Revlon to complete a final supplementation with meet and confers, if necessary, prior to December 31, 2024 to resolve these issues.

**Revlon's Position:**

**General Discovery Issues**

Plaintiffs' reduction of what should be specific and individualized discovery issues to one set of "general discovery issues" applicable to all defendants is inappropriate and counterproductive because it fails to take into account the individual efforts of each individual defendant and simultaneously ignores individual challenges faced by each individual defendant in their own document and information searches. Regardless, as described below, Plaintiffs' claims against Revlon as to its production of product identification, component, and ingredient charts are particularly erroneous in light of Revlon's efforts and successes at compiling Plaintiffs' sought information and producing same to Plaintiffs.

**<u>Revlon Has Properly Referenced Documents Pursuant to Fed. R. Civ. P. 33(d)</u>**

In response to certain interrogatories, Revlon, pursuant to Fed. R. Civ. P. 33(d), referred to documents in lieu of a written response. "Where the information is contained in business records and answering the question would require the responding party to engage in burdensome or expensive research, the responding party may answer by specifying the records from which the answer may be obtained and making them available for inspection by the party seeking discovery." *United States, ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 680-81 (E.D. Cal. 2006). "Where an unequal burden does not exist between the parties, the court will allow the responding party to produce business records, even if the interrogating party must examine multiple documents to ascertain the answers to its interrogatories." *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 2008 U.S. Dist. LEXIS 60214, *148 (E.D.N.Y. 2008). "The rationale behind Rule 33(d) is to shift the burden of compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party." *Id.*

While not specifically stated, Plaintiffs' grievance ostensibly focuses almost entirely on Revlon's response to Interrogatory Set 3, No. 6, which requests the component and ingredient identification for each of Revlon's products. As noted above, Plaintiff claims that reference to documents, as identified by Revlon (and most defendants), is inappropriate. However, this is exactly the type of interrogatory where Revlon's best possible response is reference to its documents. To respond to Plaintiffs' request for the

identity of the components of Revlon's Hair Relaxer Products, various Revlon employees stepped away from their regular job responsibilities to instead spend considerable time sifting through old records and documents, to identify products and their component as completely as possible based on available information. [1] Revlon has gone **beyond** simply naming products and dates of manufacture / sale, (*See* Revlon Supplemental Answers To Interrogatories, Set 1, August 9, 2024) and instead, Revlon spent considerable time and money to create a comprehensive spreadsheet detailing each component ingredient of every hair relaxer product and kit product for which it was able to ascertain information. (*See* "Bill of Material Multilevel Report For Relaxers 08082024, produced August 9, 2024)and to create a comprehensive spreadsheet of every product change for which it is able to ascertain (See Bill of Material Change Report Relaxer 08082024, produced August 9, 2024) . Additionally, Revlon's attorneys created an exhibit that explains how to read and use the spreadsheets. (*See* Revlon's Responses to Plaintiff's Third Set of Interrogatories, No. 6, Exhibits B & C, dated August 9, 2024). "If compilations and summaries exist, these should be made available." *United States, ex rel. Englund*, 235 F.R.D. at 680-81. This is *exactly* what Revlon has provided.

Revlon additionally referred Plaintiffs to various bates labeled documents, and a document production made on August 9, 2024. (*See* Revlon's Responses to Plaintiff's Third Set of Interrogatories, No. 6). The August 9th production is not a mass document dump, but rather a specific production of 661 SAP documents, collectively produced in Revlon Production Volume 23, targeted at responding to Plaintiffs' interrogatory and corresponding to the Bill of Materials spreadsheet. The documents almost entirely fall into one of three categories: Packing Component Specifications; Packing Standards; and Product Process Standards, all of which help to identify components of Revlon's Hair Relaxer Products. Revlon also identified various bates labeled documents by specific bates label, which again, fall into a limited category of documents, all of which serve to help identify to the best of Revlon's ability, the components[2] of its Hair Relaxer Products. R. 33(d) requires that the referring party specify the documents to be reviewed. Revlon could not have done more than to identify the specific bates labels for each document to be reviewed. Plaintiff simply needs to review the documents.[3] *See Sadofsky*, 252 F.R.D. 143, 2008 U.S. Dist. LEXIS 60214, *148; *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 2005-2 Trade Cas. (CCH) ¶ 74939, 2005 U.S. Dist. LEXIS 18265, at *324 (N.D. Ill. 2005) ("[Attorneys] have no obligation to assist an opponent in establishing claims.")

Plaintiffs complain that they will be forced to examine these documents to ascertain the answers to their interrogatories, and instead seek to shift this burden onto Revlon. This is the type of equal burden contemplated by the Federal Rules and the direct purpose of R. 33(d). *Sadofsky*, 252 F.R.D. 143, 2008 U.S. Dist. LEXIS 60214, *148. That Plaintiffs seek to have Revlon engage in the identical type of review and analysis of documents that

---

[1] As Plaintiff is well aware, Revlon ceased the manufacture, sale, and distribution of any Hair Relaxer Products in 2023, with the cessation of the manufacture, sale, and distribution of most lines of those products occurring well before then. (*See, e.g.,* Revlon Response to Interrogatory Set 3, No. 3).

[2] Plaintiffs did not define "Component" in its Interrogatory Demands.

[3] That Revlon did not title the documents in its answer to the interrogatory is not prejudicial. A simple review of the identified documents makes it apparent to the reader what they are.

Plaintiffs themselves refuse to do is in and of itself an implicit admission that the burdens upon both parties would be equal.

Revlon has turned over its documents, has compiled a spreadsheet delineating its products and their component ingredients, and has further created an exhibit to guide Plaintiff in interpreting the spreadsheet. Revlon has further pointed (by specific bates label document) to relevant responsive documents. Any efforts to conduct a further review of the documents and derive further meaning is equally burdensome to Plaintiff as it would be to Revlon and as such, Revlon has satisfied its obligations under R. 33(d).

Plaintiffs' complaints regarding Interrogatories Set 6, Nos. 3 and 10 are equally without merit. No. 3 requests the identification of warnings and instructions found on Revlon's Hair Relaxer products. Revlon responded by reference to numerous documents showing packaging, labeling, and advertising, from which Plaintiff could ascertain any applicable instructions and warnings. Plaintiff refuses to review these documents and instead requests that Revlon review them and then list out each warning and instruction to be found within the documents. Had Revlon a readymade list of warnings and instructions which it could turn over it surely would have done so. However, it does not and as such, the only way to discern any warnings or instructions from the identified documents is to review them. The burden upon Revlon and Plaintiff is equal and as such Revlon has properly referred to documents pursuant to R. 33(d).

Similarly, No. 10 requests information regarding each and every test or analysis performed by Revlon on its products. Revlon has stated explicitly that it cannot identify each and every test performed on its products; however, Revlon again, pursuant to R. 33(d) has pointed to specific bates labeled documents which demonstrate testing on Revlon's products. Plaintiffs simply need to review the documents. There is nothing that Revlon has readily available which would avoid the need to review the documents produced and as such, again as with No. 3 above, the burden upon Plaintiff is equal as it would be upon Revlon.

**Revlon Has Provided A List of Its Hair Relaxer Products and Identified Their Components to the Best of Its Ability Based Upon Information Within Its Possession**
Again, as noted above, Plaintiffs complain that Revlon has not provided a "final verified list of all of its hair relaxer products." However, Plaintiffs have already received a comprehensive listing of known hair relaxer products. On July 30, 2024, Revlon provided to Plaintiffs' counsel a product identification letter, that they requested; and then on August 9, 2024, Revlon provided supplemental responses to Interrogatory Set 1, No. 3 in the format requested by Plaintiffs' counsel. Both documents included, as requested, two separate charts – first a chart as to Revlon products, and second a chart as to Colomer[4] products . The charts identified brands, sub-brands, and types/categories/ names of products as well as the years of manufacture, by both companies, to the extent information

---

[4] As Plaintiffs are well aware, between approximately 2000 and 2013, Revlon did not manufacture any Hair Relaxer products.

was known.[5]    Revlon additionally provided information regarding third-party manufacturing.

As stated, Revlon also provided to Plaintiffs a Bill of Materials report[6] and a Bill of Materials Change report[7] which provide each component ingredient for the aforementioned hair relaxer products, and any changes, that Revlon has in its possession and was able to identify.[8]

Any complaint that Revlon has not sufficiently reduced its products to a chart identifying Steps 1-4 of the products and their components, relies on a misunderstanding of Revlon's burden under Rule 33(d). The distillation of information into Plaintiff's preferred format is clearly not Revlon's burden. As discussed at length above, "[w]here an unequal burden does not exist between the parties, the court will allow the responding party to produce business records, even if the interrogating party must examine multiple documents to ascertain the answers to its interrogatories." *Sadofsky*, 252 F.R.D. 143, 2008 U.S. Dist. LEXIS 60214, *148 (E.D.N.Y. 2008). Again, as discussed above, the burden to Plaintiffs to organize the information produced by Revlon is equal to Plaintiff as it would be to Revlon. Revlon does not have a ready-made chart delineating the components of a 4-step hair relaxer product as contemplated by Plaintiff. If it did, it would have produced same in discovery. Setting aside the fact that only Plaintiffs can know what exactly they want to discern from this chart, its creation would require Revlon and its attorneys to conduct the same research and examination of the documents, that Plaintiff now refuses to do, and reduce same to Plaintiffs' contemplated chart. Plaintiffs are in no worse position to do this than Revlon is, and as such, this is the same type of equal burden as contemplated by R. 33(d).

**Revlon's Responses and Supplemental Responses to Interrogatories Are Sufficient**

Plaintiff also wrongly accuses Revlon of failing to respond to interrogatories. This presents a general example of a repeated pattern where Plaintiff vaguely accuses Revlon of failing to respond to interrogatories without providing specifics. As Plaintiffs, note, they did send letters to Revlon purporting to identify deficiencies with certain interrogatories. However, upon receipt of a response by Revlon that Plaintiffs' allegations were without merit, Plaintiff then backed off and identified new interrogatories which they for the first time claimed were deficient. As an example, when Plaintiffs initially submitted a draft of this JSR during the week of November 25th, they complained of deficiencies with Revlon's

---

[5] There is no known preexisting chart of relaxer product names; the marketing names and packaging varied though the years. Variations could be dependent on  terms  such as: "Lye" , "No Lye" , "Base" , "No Base", "Regular" , "Mild", "Super", "Conditioning", "Oil", "Professional", "CNI", "Certified Natural Ingredients", "Miracle", "Sensitive", "Sodium", "Oil" , "Brand Name" and" Sub-Brand Name". The variations as known by Revlon have been identified.

[6] The Bill of Materials excel report identifies  the following: Brand, Sub-Brands, Product/Code Numbers, Material Description, Component Code Numbers, Component Descriptions, Data Validity, Date Created, Item Number, Base Quantity, Base Unit Of Measure, Component Quantity, Component Unit, Follow-Up Codes, Change Numbers" with the requested information, as available to Revlon.

[7] The Bill of Materials Change  report identifies  the following : material codes, modification types, components, descriptions, change numbers, modification fields, old and new values,  and dates.

[8] As this Court is aware , the issue of  The Colomer Group computer system change over in 2011 to SAP is an issue before Professor Grossman .

responses to Set 4, Nos. 2-3; Set 6, Nos. 8-9; and Set 7, Nos. 7 and 14. Now in Plaintiff's latest draft they make no complaints as to these interrogatories and instead focus on Set 6, Nos. 3 and 10. This makes it difficult to ascertain Plaintiffs' true issues with Revlon's responses.

By way example, Plaintiff in its initial draft of the JSR, complaint that Revlon had not properly answered Interrogatory Set 4, No. 2. This interrogatory asks whether Revlon has had any communications with other hair relaxer manufacturers regarding the design, development, or use of hair relaxer products. Revlon responded that it has not, and any claim that Revlon has not fully responded to this interrogatory is meritless. Revlon is not obligated to respond beyond the question posed to it. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 2005-2 Trade Cas. (CCH) ¶ 74939, 2005 U.S. Dist. LEXIS 18265, at *324 (N.D. Ill. 2005) ("Defendants [are] only obligated to answer the questions that were asked, and [are] not required to guess that information beyond that which was specified was being sought.")

In other instances, for example, in response to Interrogatory Set 4, Number 3, and Interrogatory Set 7, Number 7, Revlon responded that it had no responsive information in its possession. Plaintiff's disappointment in this fact is immaterial, and courts have ruled that a statement of no responsive information constitutes a sufficient response. *See, e.g., Alfaro v. AMTRAK*, 2012 U.S. Dist. LEXIS 10255, *11 (E.D. La. 2012) ("The current responses stating that defendants have no responsive information or materials in their possession, custody or control are sufficient."); *Bumgarner v. Hart*, 2007 U.S. Dist. LEXIS 214, *18 (D.N.J. 2007) (noting that a Court cannot order a party to answer an interrogatory about which it has no information).

These examples which are representative of the types of interrogatories and responses with which Plaintiff takes issue show that a further meet and confer would be unproductive and Revlon believes such further meetings are unnecessary.

**Sally Beauty Supply LLC:**

Issues Requiring Intervention: None at this time.

**Strength of Nature LLC:**

As discussed at the November 14, 2024 status hearing and memorialized in the Court's November 19, 2024 Order (*see* ECF No. 956), Strength of Nature was ordered to respond to the PSC's October 7, 2024 letter on or before November 29, 2024. Strength of Nature provided their response on November 29, 2024. The parties met and conferred on the November 29, 2024 response from SON on December 3 and December 4.The parties provide the following update:

**PSC's Position:**  Beyond the deficiencies noted above and in the attached Chart (Ex. A) as to all Defendants[9] , Plaintiffs seek (a) Supplemental Interrogatory Responses specifically identifying each hair relaxer product, its component parts and the dates marketed/sold, (b) as discussed at length with SON, the production documents identified alleging to provide the component parts do not match the product names provided for SON products and supplemental responses clarifying these discrepancies are needed, (c) a specific response to the lists provided in Plaintiffs October 7 letter for product labels, Cosmetic Product Safety Reports and Product Disclosure Forms which indicate missing documents for SON products or components.  Specifically, Plaintiffs are requesting a deadline of December 27, 2024, by which SON will confirm that all product labels and production of "certain documents" as outlined in our July 2024 and October 7, 2024 letters relating to Cosmetic Product Safety Reports, Product Disclosure Forms, Standard Operating Procedures, Safety Data Sheets, Product Labels and Product Composition Reports (the various documents by which SON maintains its product, component and ingredient information) have been produced for all SON products and components identified.

**Strength of Nature's Position:**

**Strength of Nature's Position:** Strength of Nature has made significant efforts to address Plaintiffs' concerns. In response to Plaintiffs' October 7 letter, Strength of Nature responded on November 29 and produced documents on October 31, November 13, and November 29. After these productions, the parties held meet and confer sessions on December 3 and 4. At both meet and confer sessions, Strength of Nature stated its willingness to address any purported deficiencies or gaps identified by Plaintiffs and proposed a rolling process for addressing gaps as Plaintiffs reviewed the documents, provided that Plaintiffs could provide clear instruction about what they believed those gaps were. A rolling structure was necessary because Plaintiffs had not completed their review of documents, and therefore could not definitively state what was still outstanding. Despite initially expressing interest in that process (with the caveat that the details were to-be-negotiated), and scheduling a December 5 session to discuss requests for clarification from Plaintiffs' October 7 letter, Plaintiffs abruptly called off the session two minutes before it was set to begin and sent, for the first time, a draft of the above statement and "Exhibit A." Strength of Nature responds to each of the requests in Plaintiffs' statement below.

<u>**Plaintiffs' Request to All Defendants and the Attached Exhibit A**</u>
Strength of Nature incorporates Defendants' position on Plaintiffs' "omnibus interrogatory" in Section I, above, while highlighting the impropriety, burden, and

---

[9] Plaintiffs note that, for many of the products listed in Ex. A for Defendant SON, at least one label and/or other type of ingredient document has been produced by Defendants including several thousand documents on November 29, 2024 which Plaintiffs are continuing to review; however, Plaintiff has been unable to identify labels and/or other types of ingredient documents for each product spanning the entire time that product was on the market and SON's Interrogatory responses are insufficient. As an example, for SON's African Pride Olive Miracle Deep Conditioning Crème-on-Creme No-Lye Relaxer 8 Salon Pack Touch-Ups (Regular), Plaintiffs have identified a label from April 21, 2023, but, as represented by SON in its Second Supplemental Responses to Plaintiff's First Set of Interrogatories Nos. 1 and 4-11, this product has been on the market since 2009 and Plaintiffs are unable to ascertain whether this label has been in use since 2009 or if it was updated at any point given the discovery responses and documents produced to date. Plaintiff reserves the right to update this list additional information is confirmed within the November 29, 2024 production documents.

inefficiency of Plaintiffs' approach as to Strength of Nature. Plaintiffs have not fulfilled their obligation under the Federal Rules and rules of this Court to review Strength of Nature's productions and provide specific, actionable feedback. Exhibit A does not do that. It categorically lists scores of Strength of Nature products under vague categories of deficiencies. For example, it broadly claims ninety-seven products are "missing dates product was on the market" (*see* Ex. A at 82-85), but does not provide sufficient detail to allow Strength of Nature to address these claims effectively. As one example, Exhibit A lists "UltraSheen Ultra Moisturizing No-Lye Relaxer, Super with Keratin" as "missing dates product was on the market;" yet Strength of Nature's prior interrogatory response clearly states that this product was sold from 2016 to 2018.

| Brand | Product | Period of Sale |
|---|---|---|
| UltraSheen | UltraSheen Ultra Moisturizing No-Lye Relaxer, Regular with Keratin | 2016-2018 |

*Compare* Ex. A at 85 *with* Second Supplemental Response to Interrogatory Set One, No. 4. Plaintiffs' failure to reconcile this response with their claims highlights that Exhibit A is outdated and unclear. Strength of Nature cannot address alleged deficiencies without clear, updated direction from Plaintiffs based on their review of the documents and information produced.

### Subsection (a): Supplemental Interrogatory Responses
At the December 3 and 4 meet and confers, Plaintiffs acknowledged that they were still reviewing Strength of Nature's October 31, November 13, and November 29 productions and could not confirm which gaps, if any, remained. Strength of Nature proposed a straightforward process: Plaintiffs should complete their review, update their list of purported deficiencies, and meet with Strength of Nature to address remaining issues. This approach achieves the same end as Plaintiffs' request but ensures clarity and efficiency by avoiding guesswork.

Plaintiffs have not updated their October 7 list (of thirty-four potential products) to account for Strength of Nature's recent productions, making it unclear which labels or component parts Plaintiffs still believe are missing. Further, Strength of Nature has already provided the dates when each product was sold in its Second Supplemental Response to Interrogatory Set One, No. 4. Strength of Nature requests that the Court require Plaintiffs to complete their review and identify specific deficiencies before seeking further supplementation.

### Subsection (b): Document Discrepancies
During the December 3 and 4 meet and confers, Plaintiffs raised twenty-three specific questions in total from their October 7 letter. Here, Plaintiffs' questions were based on their review of documents and were focused on specific issues or specific products, such that Strength of Nature had sufficient information about the issue to investigate and form an answer. Strength of Nature investigated these issues and was prepared to provide detailed responses during the December 5 meet and confer, which Plaintiffs cancelled. Given that

Plaintiffs cancelled the meet and confer where this information would have been shared, Strength of Nature will now provide written responses to these questions.

**Subsection (c): Purported Missing Consumer Product Safety Reports and Disclosure Forms**

Strength of Nature's position on purported missing labels is addressed in subsection (a). Regarding Consumer Product Safety Reports and Product Disclosure Forms, Plaintiffs have not identified specific information they believe is missing. Their October 7 letter predates Strength of Nature's recent productions, and Plaintiffs admit they are still reviewing these documents. *See* n.10, *supra*. Strength of Nature will investigate and address any purported deficiency once Plaintiffs provide an updated list of outstanding issues. Plaintiffs provided the last such list in July 2024, before custodial discovery began and thousands of documents were produced.

**Confirmation of Document Productions**

Plaintiffs' request for confirmation that all labels and composition documents be produced by a date certain is premature. Fact discovery does not close for another two-and-a-half months, and Strength of Nature has prioritized the production of custodial regulatory documents, and Go-gets (where they exist), likely to contain the requested information. Plaintiffs are still reviewing these documents and have not provided specific feedback to clarify what, if anything, is still outstanding. Strength of Nature cannot unequivocally confirm the completeness of these broad categories of documents before the close of fact discovery.

III. ***Status of Pending Briefs/Motions/Orders:***

a. **Plaintiffs' Motion to Enforce Orders Against L'Oréal USA**: On August 1, 2024, the PSC moved for an order enforcing the Court's December 27, 2023, Order and March 4, 2024, Order regarding the production, by L'Oréal USA of documents responsive to Plaintiffs' discovery requests in the control of L'Oréal USA's French parent, L'Oréal S.A (s*ee* ECF No. 784). L'Oréal USA filed its response on September 9, 2024 (*see* ECF No. 834). On September 16, 2024, the PSC filed its reply (*see* ECF No. 839) and the matter has been referred to Special Master Grossman pursuant to the Court's Minute Order dated September 18, 2024 (*see* ECF No. 841).

A conference was held before Special Master Grossman on October 8, 2024 with counsel for Plaintiffs and, L'Oréal USA in attendance. Counsel for L'Oréal S.A. was not in attendance. During this conference, Special Master Grossman requested that by October 15, 2024 Plaintiffs provide L'Oréal USA with an amended list of requests for production for which they believe L'Oréal USA should be producing documents from L'Oréal S.A. L'Oréal USA provided its position and/or objection on each request on October 22, 2024. At the request of Special Master Grossman and following an additional meet and confer between Plaintiffs and L'Oréal USA

to attempt resolution on disagreements, the list was sent to Special Master Grossman on October 30, 2024.

On November 11, 2024, Special Master Grossman requested that L'Oréal USA supplement their response to advise whether it is prepared to respond to any of the approximately 90 RFPs requested by the PSC and for any RFPs where an objection remains, to state what is disproportionate or unduly burdensome about that particular RFP. L'Oréal USA provided their supplemental response on November 22, 2024.

IV.   ***Class Discovery Status***: On November 13, 2024, Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc, and Softsheen-Carson, LLC served its First Set of Interrogatories and Requests for Production of Documents on all plaintiffs named in the Master Class Complaint. Plaintiffs requested and were granted an additional 45 days to respond to respond to these discovery requests.

V.   ***Plaintiff Discovery Issues: Plaintiff-Redacted Medical Records***

At the November 14, 2024 status hearing and in the JSR in advance of the hearing, Defendants raised the issue of alleged inappropriate redactions by plaintiffs to documents produced as part of their initial discovery responses. The Court's November 19, 2024, Order (*see* ECF No. 956) required the Parties to continue to meet and confer on the issue to determine if they would be able to resolve the issue without Court intervention. The Parties continue to meet and confer and agree that additional time to meet and confer on this issue will be productive. The Parties will report on their progress in the January 2025 Joint Status Report and be prepared to address any outstanding issues at the January 2025 Discovery Hearing.


Dated:  December 6, 2024

**FOR PLAINTIFFS:**                                   **FOR DEFENDANTS:**
Respectfully Submitted,                             Respectfully Submitted,


*/s/Edward A. Wallace*                              */s/Colleen Baime*

*Edward A. Wallace*
Edward A. Wallace                                   Mark C. Goodman
**WALLACE MILLER**                                  **BAKER & MCKENZIE LLP**
150 N. Wacker Dr., Suite 1100                       Two Embarcadero Center, Suite 1100
Chicago, Illinois 60606                             San Francisco, California 94111
T: (312) 261-6193                                   T: (415) 576-3080
Email: eaw@wallacemiller.com                        mark.goodman@bakermckenzie.com

*Plaintiffs' Liaison Counsel*                       *Defense Liaison Counsel and Counsel for Defendant*
                                                    *Namasté Laboratories, LLC*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

Mark D. Taylor
**BAKER & MCKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
T: (214) 978-3000
mark.taylor@bakermckenzie.com

Maurice Bellan
Teisha C. Johnson
**BAKER & MCKENZIE LLP**
815 Connecticut Avenue, NW
Washington DC 20006
T: (202) 452-7057
maurice.bellan@bakermckenzie.com
teisha.johnson@bakermckenzie.com

Barry Thompson
**BAKER & MCKENZIE LLP**
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

Colleen Baime
Laura Kelly
**BAKER & MCKENZIE LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
colleen.baime@bakermckenzie.com
laura.kelly@bakermckenzie.com

*Counsel for Defendant Namasté Laboratories, LLC*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@ellisgeorge.com
kmurray@ellisgeorge.com
spolatoglu@ellisgeorge.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. and SoftSheen-Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182

26

F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a*
*House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive – Suite 2950 Chicago, Illinois 60606
T: (312) 579-2018 (ofc)

27

mfallah@maronmarvel.com rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
Erich J. Gleber
**HAWKINS PARNELL & YOUNG LLP**
275 Madison Avenue, 10th Floor
New York, NY 10016
eabbot@hpylaw.com
egleber@hpylaw.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St,
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Colleen M. Kenney
Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
T: (312) 853-2666
ckenney@sidley.com
kmccall@sidley.com

Amanda Crawford-Steger
Imani Maatuka
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Ste. 2000
Dallas, TX 75201
T: (214)981-3496
asteger@sidley.com
imaatuka@sidley.com

*Counsel for Defendant Sally Beauty Supply LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for Defendant AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Suite 2401
Miami, FL 33131
T: (786) 957-1136
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street
Suite 3400
Chicago, IL 60606
Matthew.Wasserman@dinsmore.com

*Counsel for Defendant McBride Research Laboratories, Inc.*

Daniel L. Stanner
Ashley Crettol Insalaco
Megan E. Ryan
**TABET DIVITO & ROTHSTEIN LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
Tel: (312) 762-9450
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendant RNA Corporation*

Ashley C. Webber
Hallie E. Richards
Elizabeth P. Pittman
**SWIFT CURRIE MCGHEE & HIERS LLP**
1420 W Peachtree St NE
Suite 800
Atlanta, GA 30309
ashley.webber@swiftcurrie.com
hallie.richards@swiftcurrie.com
elizabeth.pittman@swiftcurrie.com

*Counsel for Defendant, Dudley Beauty Corp, LLC.*