**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | **MDL No. 3060** |
| | **Master Docket Case No. 1:23-cv-00818** |
| **This Document Relates to:** | **Case Number 1:24-cv-2526** |
| *Clemons v. AFAM Concept, Inc. d/b/a JF Labs, Inc., et al.*, Case No. 1:24-cv-02526 | **Honorable Mary M. Rowland** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT L'ORÉAL S.A.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

PROCEDURAL HISTORY......................................................................................2

RELEVANT FACTUAL BACKGROUND................................................................4

ARGUMENT ...........................................................................................................5

I.     Plaintiff failed to properly serve L'Oréal S.A. ..............................................5

      A.    Plaintiff cannot establish that she properly served the full complaint on L'Oréal S.A. through the Hague Convention. ..........................................6

      B.    Plaintiff failed to serve the LSA Master Complaint and Second Amended SFC. ...................................................................................................7

II.    The Court lacks personal jurisdiction over L'Oréal S.A. ...................................9

      A.    Plaintiff cannot establish general jurisdiction because L'Oréal S.A. is not "at home" in Texas.....................................................................................10

      B.    Plaintiff cannot establish specific jurisdiction because her alleged injuries have not arisen from any forum-related activities by L'Oréal S.A......................11

           1.    L'Oréal S.A. has not engaged in any actions that create a substantial connection with Texas or any other state in the United States. ........................................................................................12

                a.    L'Oréal S.A. is separate and distinct from L'Oréal USA .............13

                b.    L'Oréal S.A. does not control L'Oréal USA. ...............................14

                c.    Any overlap of personnel between L'Oréal S.A. and L'Oréal USA is insufficient to confer personal jurisdiction over L'Oréal S.A..........................................................................18

                d.    Any sharing of information between L'Oréal S.A. and L'Oréal USA is insufficient to confer personal jurisdiction over L'Oréal S.A..........................................................................19

                e.    Plaintiff's other allegations similarly fail to support jurisdiction. ...........................................................................20

            2.    Plaintiff's alleged injuries did not arise out of any forum-related activities by L'Oréal S.A. .............................................................23

i

3.    Exercising jurisdiction would not comport with traditional notions of fair play and substantial justice. ...........................................................24

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Admar Int'l, Inc. v. Eastrock, LLC*,
    18 F.4th 783 (5th Cir. 2021) ................................................................17

*Afros S.P.A. v. Krauss-Maffei Corp.*,
    113 F.R.D. 127 (D. Del. 1986) ............................................................22

*Asahi Metal Indus. Co. v. Superior Ct.*,
    480 U.S. 102 (1987).............................................................................24

*Bartucci v. Wells Fargo Home Mortg.*,
    2014 WL 7332757 (N.D. Ill. Nov. 19, 2014), *report and recommendation
    adopted in relevant part, overruled in part*, 2014 WL 7359181 (N.D. Ill. Dec.
    22, 2014) ................................................................................................6

*Bluestone Innovations Tex., LLC v. Formosa Epitaxy Inc.*,
    822 F. Supp. 2d 657 (E.D. Tex. 2011) .................................................11

*BNSF Ry. Co. v. Tyrell*,
    581 U.S. 402 (2017).............................................................................10

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................12

*Catalina Mktg. Int'l, Inc. v. Coolsavings.Com, Inc.*,
    2003 WL 21542491 (N.D. Ill. July 3, 2003)...................................16, 19

*Collins v. Kibort*,
    143 F.3d 331 (7th Cir. 1998) ................................................................8

*Comitz v. Rife*,
    597 F. Supp. 3d 1235 (N.D. Ill. 2022) ..................................................9

*Cupp v. Alberto-Culver USA, Inc.*,
    308 F. Supp. 2d 873 (W.D. Tenn. 2004)..............................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................10, 11

*Demaria v. Nissan N. Am., Inc.*,
    2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ...........................................23

*Doe v. Fenix Internet, LLC*,
    2024 WL 2845961 (N.D. Ill. June 5, 2024) .........................................10

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
807 F. Supp. 2d 732 (N.D. Ill. 2011) ...................................................................13

*Edelson v. Ch'ien*,
352 F. Supp. 2d 861 (N.D. Ill. 2005) ...................................................................22

*Flava Works, Inc. v. Does 1-26*,
2013 WL 1751468 (N.D. Ill. Apr. 19, 2013) .........................................................7

*Fletcher v. Atex, Inc.*,
68 F.3d 1451 (2d Cir. 1995)..................................................................................18

*Ford v. Smith*,
2015 U.S. Dist. LEXIS 16053 (E.D. Tex. Feb. 10, 2015) .......................................6

*Gabriel v. United States*,
30 F.3d 75 (7th Cir. 1994) ......................................................................................8

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*,
565 F.3d 1018 (7th Cir. 2009) ................................................................................9

*Glycobiosciences, Inc. v. Vichy Lab'ys, S.A.*,
2023 WL 157322 (D.D.C. Jan. 11, 2023) ......................................................14, 21

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*,
64 F. Supp. 3d 1179 (N.D. Ill. 2014) ...................................................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...............................................................................................11

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ...........................................................13, 14, 16, 18

*Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*,
714 F. Supp. 296 (N.D. Ill. 1989) ........................................................................13

*Invincible Ent. Partners, LLC v. EMBA Media Assocs. Ltd.*,
2016 WL 10922995 (E.D. Pa. Oct. 11, 2016)....................................................5, 8

*Izaguirre v. Crown Energy Servs., Inc.*,
2019 WL 3302212 (N.D. Ill. July 24, 2019).........................................................5

*Jennings v. AC Hydraulic A/S*,
383 F.3d 546 (7th Cir. 2004) ................................................................................17

*Johnson v. Barrier*,
2017 WL 36442 (N.D. Ill. Jan. 4, 2017) ................................................................9

*Keeton v. Hustler Mag., Inc.*,
  465 U.S. 770 (1984)............................................................................................23

*Klopas v. Fieldsheer Team Sports, Inc.*,
  1999 WL 519299 (N.D. Ill. July 16, 1999).........................................................6

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
  2008 WL 2157108 (M.D. Fla. May 21, 2008)...............................................15, 17

*Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*,
  766 F. Supp. 2d 854 (N.D. Ill. 2011) .............................................................24, 25

*Lexington Ins. Co. v. Hotai Ins. Co.*,
  938 F.3d 874 (7th Cir. 2019) .........................................................................11, 12

*McClure v. Robinson*,
  2021 WL 6425096 (W.D. Tex. Dec. 7, 2021) ...................................................7, 8

*Metricolor LLC v. L'Oréal S.A.*,
  791 F. App'x 183 (Fed. Cir. 2019) .....................................................................14

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ...............................................................................24

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
  263 F. Supp. 3d 498 (D. Del. 2017).................................................................17, 18

*People Sols., Inc. v. People Sols., Inc.*,
  2000 WL 1030619 (N.D. Tex. July 25, 2000) ....................................................17

*Plotkin v. UChicago Argonne LLC/Argonne Nat'l Lab'y*,
  2024 WL 3470580 (N.D. Ill. July 19, 2024)........................................................7

*PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*,
  2008 WL 779906 (N.D. Tex. Mar. 25, 2008) ......................................................21

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...............................................................................13

*Richter v. LG Chem, Ltd.*,
  2020 WL 5878017 (N.D. Ill. Oct. 2, 2020).........................................................11

*Risinger Holdings, LLC v. Sentinel Ins. Co.*,
  565 F. Supp. 3d 844 (E.D. Tex. 2021).................................................................13

*Santora v. Starwood Hotel & Resorts Worldwide, Inc.*,
  580 F. Supp. 2d 694 (N.D. Ill. 2008) ..................................................................24

*Select Rsch., Ltd v. Amazon.com, Inc.*,
    2024 WL 3585106 (E.D. Tex. July 30, 2024) ........................................................................23

*Simplot India LLC v. Himalaya Food Int'l Ltd.*,
    2024 WL 1136791 (D.N.J. Mar. 15, 2024)...........................................................................18

*Sunshine Kids Found. v. Sunshine Kids Juv. Prod., Inc.*,
    2009 WL 5170215 (S.D. Tex. Dec. 18, 2009) ........................................................................20

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...........................................................................................9, 11

*Teasley v. Stein*,
    2022 WL 715923 (M.D.N.C. Mar. 10, 2022) .........................................................................6

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
    2016 WL 5890022 (N.D. Ill. Oct. 10, 2016)..........................................................................9

*Tillotson Corp. v. Top Glove Sdn. Bhd.*,
    2007 WL 10025485 (N.D. Ga. May 14, 2007) ........................................................................22

*In re Toyota Hybrid Brake Litig.*,
    2021 WL 2805455 (E.D. Tex. July 6, 2021) ......................................................................9, 15

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................................................18

*Vanegas v. Signet Builders, Inc.*,
    113 F.4th 718 (7th Cir. 2024) ...............................................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................................................23

*Wallace v. City of Washington*,
    2015 WL 758447 (C.D. Ill. Feb. 23, 2015)..........................................................................6, 7

*Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*,
    406 F. Supp. 3d 585 (E.D. Tex. 2019) ...........................................................................15, 16

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ..................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 5(a)(2) .................................................................................................. 7

Fed. R. Civ. P. 4 ............................................................................................... *passim*

Fed. R. Civ. P. 12(b) ......................................................................................... 1, 5, 9

Defendant L'Oréal S.A. respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Master Long Form Complaint Against L'Oréal S.A. ("LSA Master Complaint") (MDL Dkt. 899) and all claims against it by Plaintiff Lillian Clemons ("Plaintiff"), including her Second Amended Short-Form Complaint ("Second Amended SFC") (Clemons Dkt. 7), pursuant to Federal Rules of Civil Procedure 4, 12(b)(2), and 12(b)(5) ("Motion"). In filing this Motion, L'Oréal S.A. does not consent to personal jurisdiction or in any way waive any argument that this Court lacks personal jurisdiction over L'Oréal S.A.

## PRELIMINARY STATEMENT

L'Oréal S.A. does not belong in this case. The evidence shows that L'Oréal S.A. has never sold, marketed, manufactured, distributed, or produced hair relaxer products anywhere in the United States, either directly or indirectly. And Plaintiff acknowledges that L'Oréal S.A. has "its principal place of business and headquarters located at 41 Rue Martre, 92117 Clichy, Hauts-de-Seine, France." MDL Dkt. 899 ¶ 12. Nevertheless, over twenty months after the first case was filed and over sixteen months after the Judicial Panel on Multidistrict Litigation centralized the pending cases into this MDL, Plaintiff attempted to drag L'Oréal S.A. into this case, even though it has no connection to her alleged injuries or the products that allegedly caused those injuries.

Plaintiff's suit against L'Oréal S.A. should be dismissed for two reasons. First, Plaintiff failed to properly serve L'Oréal S.A. by not including the original Master Long Form Complaint in the materials she served on L'Oréal S.A. in France. That infirmity remains uncured. Further, to this day, Plaintiff has never served L'Oréal S.A. with her Second Amended SFC or the LSA Master Complaint as required under Federal Rule of Civil Procedure 4 and the Hague Convention. This requirement exists both because Plaintiff's initial service was improper and because her new LSA Master Complaint asserts new claims and allegations against L'Oréal S.A. Service rules exist for a reason, and Plaintiff's failure to follow them is fatal to her action against L'Oréal S.A.

1

Second, and separate from the service issues, the originating court (and this Court) lack personal jurisdiction over L'Oréal S.A. Significantly, Plaintiff has not established any connection between L'Oréal S.A. and the transferor state of Texas—or any other state in the United States—and has only made conclusory allegations that L'Oréal S.A. has connections to the hair relaxer products in dispute. The record evidence clearly shows that L'Oréal S.A. does not conduct any business in Texas—or anywhere in the United States—and did not sell, market, manufacture, distribute, or produce the hair relaxer products that allegedly caused Plaintiff harm. Moreover, as detailed below and in the accompanying declarations, any conduct by Defendant L'Oréal USA cannot be attributed to L'Oréal S.A. because L'Oréal USA is a separate and distinct entity that operates independently of its corporate parent and is responsible for its own conduct. Accordingly, the Court should dismiss the Second Amended SFC and the LSA Master Complaint with prejudice.

## PROCEDURAL HISTORY

Beginning in October 2022, plaintiffs brought cases against a long list of defendants in connection with hair relaxer products that the defendants, including L'Oréal USA, allegedly sold in the United States. *See* Transfer Order, MDL Dkt. 1; Master Long Form Compl. ¶¶ 10–30, MDL Dkt. 106.[1] The Judicial Panel on Multidistrict Litigation consolidated the cases into an MDL on February 9, 2023. MDL Dkt. 1. The MDL proceeded for months without L'Oréal S.A. as a named defendant. Although a few plaintiffs began to write in L'Oréal S.A. as a defendant in their short-form complaints in November 2023, no efforts were made to serve L'Oréal S.A.

That changed earlier this year when Plaintiff served L'Oréal S.A. with her Amended Short-Form Complaint ("Amended SFC") through the Hague Convention on July 2, 2024. The Amended

---

[1] The fact that L'Oréal S.A. was able to access the original Master Long Form Complaint on the MDL docket does not excuse Plaintiff's failure to properly serve the necessary materials in accordance with the Federal Rules of Civil Procedure and the Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention").

SFC designated the Eastern District of Texas as the original venue. *See* Amended SFC ¶ 2, *Clemons v. AFAM Concept, Inc.*, No. 1:24-cv-02526, (N.D. Ill. Mar. 29, 2024), Clemons Dkt. 5. It listed L'Oréal S.A. as a defendant in the caption, but otherwise did not mention L'Oréal S.A. *See id*. Moreover, while the Amended SFC referenced the original Master Long Form Complaint, Plaintiff never served it on L'Oréal S.A. *See* Amended SFC ¶ 1. Even if she had included the referenced Master Long Form Complaint, that document did not allege that L'Oréal S.A. engaged in any wrongdoing. *See* Master Long Form Compl.

L'Oréal S.A. moved to dismiss Plaintiff's claims based on her failure to properly serve her complaint, her failure to state a claim against L'Oréal S.A., and this Court's lack of personal jurisdiction over L'Oréal S.A. MDL Dkt. 838. During an October 10, 2024 conference, Plaintiff informed the Court that it intended to serve a "more robust" complaint with allegations against L'Oréal S.A., and the parties agreed to a schedule whereby Plaintiff would file that revised complaint on October 18, 2024, and L'Oréal S.A. would have until December 6, 2024 to move to dismiss that complaint. *See* Declaration of Theodore Tsekerides, dated Dec. 6, 2024, attached as Exhibit A ("Tsekerides Decl."), Ex. 1 at 20–21. L'Oréal S.A.'s counsel did not agree that filing the revised complaint on the docket would be sufficient to effectuate service on L'Oréal S.A. or to cure the previous deficiencies in Plaintiff's service. *Id.* at 14. On October 18, 2024, Plaintiff filed the LSA Master Complaint—the first and only one that makes any allegations against L'Oréal S.A.—along with a Second Amended SFC, which incorporated by reference the LSA Master Complaint. *See* LSA Master Compl., MDL Dkt. 889; Second Am. SFC ¶ 4, *Clemons v. AFAM Concept, Inc.*, No. 1:24-cv-2526 (N.D. Ill. Oct. 18, 2024), Clemons Dkt. 7. Despite never properly serving the original pleadings, and adding new claims and allegations against L'Oréal S.A.,

Plaintiff made no effort to serve the LSA Master Complaint or the Second Amended SFC on L'Oréal S.A. through the Hague Convention as required.

## RELEVANT FACTUAL BACKGROUND

L'Oréal S.A. is a French company with its headquarters and principal place of business in France. *See* Declaration of Damien Levy, dated Dec. 6, 2024, attached as <u>Exhibit B</u> ("Levy Decl.") at ¶ 2. L'Oréal S.A. is the corporate parent of L'Oréal USA, Inc. ("L'Oréal USA"), a business incorporated in Delaware and headquartered in New York. *Id.* L'Oréal USA in turn is the parent company of Defendant L'Oréal USA Products, Inc., which is also incorporated in Delaware. *Id.* ¶ 3. SoftSheen-Carson LLC was a New York limited liability company and a subsidiary of L'Oréal USA, Inc. *Id.* ¶ 3. The L'Oréal Groupe refers to all of the entities that make up the L'Oréal brand, not any one particular entity. *Id.* ¶ 9.

Although L'Oréal S.A. wholly owns L'Oréal USA, the two entities operate separately from one another. *Id.* ¶ 2. L'Oréal S.A. does not operate in the United States and does not manage L'Oréal USA's day-to-day operations or activities. *Id.* ¶¶ 5–6. Rather, L'Oréal USA has its own board of directors, observes its own separate corporate formalities, makes its own business and financial decisions, and maintains its own departments in areas such as finance, human resources, legal, corporate communications, customer relations, Research and Innovation, and marketing and advertising. *Id.* ¶ 10. L'Oréal S.A. and L'Oréal USA maintain separate workforces, file separate tax returns, prepare separate financial statements, and have separate bank accounts. *Id.* ¶ 7.

As the Chief Financial Officer of L'Oréal S.A.'s Consumer Products Division, Damien Levy, explains in the accompanying declaration:

- L'Oréal S.A. does not have a mailing address or offices anywhere in the United States (*id.* ¶ 6);

- L'Oréal S.A. is not registered to do business in any state in the United States and does not have a registered agent for receipt of process in any state in the United States (*id.*);

- L'Oréal S.A. does not develop, test, design, assemble, manufacture, package, label, or prepare any hair relaxer products, or component parts or ingredients used in any hair relaxer products, that are sold anywhere in the United States (*id.* ¶ 8); and

- L'Oréal S.A. does not distribute, supply, market, advertise, promote, or sell any hair relaxer products to consumers anywhere in the United States (*id.*).

## ARGUMENT

This Court lacks jurisdiction over L'Oréal S.A. for two independent reasons. First, Plaintiff has not adequately served L'Oréal S.A. under the Federal Rules of Civil Procedure and the Hague Convention. Plaintiff originally failed to serve L'Oréal S.A. with the Master Long Form Complaint, which ostensibly contained the gravamen of the relevant allegations in this case, and then failed to serve L'Oréal S.A. with the LSA Master Complaint and her Second Amended SFC. Second, Plaintiff has not met her burden of establishing that the transferor court where her case originated—in this case Texas—would have personal jurisdiction over L'Oréal S.A. Plaintiff cannot show that L'Oréal S.A. has sufficient minimum contacts with Texas because (i) L'Oréal S.A. is not at home in Texas and (ii) Plaintiff's alleged injuries have not arisen from any forum-related activities by L'Oréal S.A.

## I.   Plaintiff failed to properly serve L'Oréal S.A.

Under Federal Rule of Civil Procedure 12(b)(5), the "plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Izaguirre v. Crown Energy Servs., Inc.*, 2019 WL 3302212, at *2 (N.D. Ill. July 24, 2019) (quoting *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011)). Where a plaintiff in a U.S. proceeding effects service through the Hague Convention, service must comply with the Federal Rules of Civil Procedure. *Invincible Ent. Partners, LLC v. EMBA Media Assocs. Ltd.*, 2016 WL 10922995, at *1 (E.D. Pa. Oct. 11, 2016). "Federal Rule of Civil Procedure 4 defines this procedure, which entails giving each defendant a copy of the complaint, plus a summons from

the court, to notify them of the pending suit." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 728 (7th Cir. 2024). "Service is not proper merely because the defendant is aware that it has been named in a lawsuit or has received a copy of the summons and complaint." *Bartucci v. Wells Fargo Home Mortg.*, 2014 WL 7332757, at *1 (N.D. Ill. Nov. 19, 2014), *report and recommendation adopted in relevant part, overruled in part*, 2014 WL 7359181 (N.D. Ill. Dec. 22, 2014). "When the sufficiency of service of process is challenged, plaintiff bears the burden of showing that service was proper." *Klopas v. Fieldsheer Team Sports, Inc.*, 1999 WL 519299, at *1 (N.D. Ill. July 16, 1999). "Absent proper service of process in accordance with Rule 4, a court lacks jurisdiction over a party named as a defendant." *Ford v. Smith*, 2015 U.S. Dist. LEXIS 16053, at *2 (E.D. Tex. Feb. 10, 2015).

### A. Plaintiff cannot establish that she properly served the full complaint on L'Oréal S.A. through the Hague Convention.

"When a plaintiff fails to serve a complaint along with a summons, service is improper." *Wallace v. City of Washington*, 2015 WL 758447, at *3 (C.D. Ill. Feb. 23, 2015). This is true even when a plaintiff serves portions of the relevant pleading. *Id*. For example, in *Wallace*, service was insufficient under Rule 4 because plaintiffs served defendant with the complaint but omitted "key exhibits." *Id*.; *see also Teasley v. Stein*, 2022 WL 715923, at *3 (M.D.N.C. Mar. 10, 2022) (holding that "because the Amended Complaint, which is the operative complaint was not served with a valid summons, service of process was improper").

Plaintiff only served L'Oréal S.A. with a summons and the Amended SFC. Critically, the Amended SFC "incorporate[d]" the Master Long Form Complaint, *see* Am. SFC ¶ 1, but Plaintiff did not serve L'Oréal S.A. with the Master Long Form Complaint. Since the Master Long Form Complaint contained most of the relevant information about Plaintiff's claims at the time of service, it was a key portion of Plaintiff's Amended SFC. Thus, similar to *Wallace*, Plaintiff's

failure to serve L'Oréal S.A. with the full complaint rendered service insufficient under Rule 4 and the Hague Convention, warranting dismissal for lack of personal jurisdiction. *See* 2015 WL 758447, at *3.

**B.  Plaintiff failed to serve the LSA Master Complaint and Second Amended SFC.**

Plaintiff never cured her initial defective service. Instead, she attempted to blow past the service requirement altogether by merely filing the LSA Master Complaint and her Second Amended SFC on the docket and asserting that the filings put L'Oréal S.A. on notice of her claims. But permitting a plaintiff to "file [an] [a]mended [c]omplaint should not be construed as a waiver of Defendant's right to proper service of process." *Plotkin v. UChicago Argonne LLC/Argonne Nat'l Lab'y*, 2024 WL 3470580, at *5 (N.D. Ill. July 19, 2024). "Plaintiff must still serve Defendant with the operative complaint." *Id*. L'Oréal S.A. has not appeared in this action—except to contest the adequacy of service and this Court's personal jurisdiction—and has not waived its right to proper service under Rule 4 and the Hague Convention. Further, undersigned counsel is not authorized to accept service on L'Oréal S.A.'s behalf. Where, as here, a plaintiff has failed to "secure a waiver of service, Plaintiff must perfect service in accordance with Rule 4." *Id*.; *see also Flava Works, Inc. v. Does 1-26*, 2013 WL 1751468, at *8 (N.D. Ill. Apr. 19, 2013) (alternative service was not reasonable because plaintiff had only attempted to serve the defendant in Hong Kong once and gave no reason why service by "traditional means" could not be accomplished). Plaintiff has failed to do so.

Moreover, even if Plaintiff had properly served L'Oréal S.A. the first time (she did not), Plaintiff would still have to serve L'Oréal S.A. through the Hague Convention with her new and amended pleadings because those pleadings added new claims and allegations against L'Oréal S.A. *See* Fed. R. Civ. P. 5(a)(2) ("[A] pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."); *McClure v. Robinson*, 2021 WL 6425096, at

7

*2 (W.D. Tex. Dec. 7, 2021) ("[W]ith regard to the previously served Defendants, McClure asserted new claims for relief against each, mandating service of the Second Amended Complaint upon all Defendants in accordance with Rule 4.").

In her original pleadings, Plaintiff listed L'Oréal S.A. in the caption of her Amended SFC, but did not mention L'Oréal S.A. ever again. *See* Clemons Dkt.5. That was not enough to state a claim against L'Oréal S.A. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Similarly, the unserved Master Long Form Complaint asserted only that L'Oréal S.A. was the "sole Member and interested party" of SoftSheen-Carson, but did not allege that L'Oréal S.A. engaged in any wrongdoing in connection with the claims in this case. *See* Master Long Form Compl. ¶ 14. By contrast, the LSA Master Complaint contains 63 pages of claims and allegations directed solely at L'Oréal S.A. This new pleading asserts "new claims for relief" against L'Oréal S.A., and therefore, Plaintiff was required to serve her new pleadings on L'Oréal S.A. in accordance with Rule 4 and the Hague Convention. *See McClure*, 2021 WL 6425096, at *2.

In sum, the Court should dismiss Plaintiff's claims against L'Oréal S.A. because she did not serve the LSA Master Complaint or the Second Amended SFC. *Gabriel v. United States*, 30 F.3d 75, 77–78 (7th Cir. 1994) (affirming dismissal of claim for insufficient service under Rule 4). To the extent Plaintiff wishes to continue pursuing claims against L'Oréal S.A.—even though there is no basis for her to do so as demonstrated below—Plaintiff must go through the process of serving L'Oréal S.A. with the appropriate documents, including the operative complaints, in accordance with Rule 4 and the Hague Convention. *See Invincible Ent.*, 2016 WL 10922995, at *2 (plaintiff was required to re-serve complaint and summons on defendant in accordance with the Hague Convention after first service was improper).

## II.     The Court lacks personal jurisdiction over L'Oréal S.A.

Dismissal under Federal Rule of Civil Procedure 12(b)(2) is required where a court lacks

personal jurisdiction over a defendant. "Personal jurisdiction is an essential element of the

jurisdiction of a district court, without which courts are powerless to proceed to an adjudication."

*In re Toyota Hybrid Brake Litig*., 2021 WL 2805455, at *1 (E.D. Tex. July 6, 2021) (cleaned up).

In MDL proceedings, plaintiffs "bear the burden of showing that the transferor court[] where their

cases originated would have personal jurisdiction" over the defendant. *In re Testosterone*

*Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 2016 WL 5890022, at *1

(N.D. Ill. Oct. 10, 2016). Where the defendant disputes jurisdiction through a declaration, such as

the one submitted along with this Motion, the plaintiff bears the burden of submitting affirmative

evidence demonstrating the existence of personal jurisdiction. *Comitz v. Rife*, 597 F. Supp. 3d

1235, 1239 (N.D. Ill. 2022). If the plaintiff fails to refute facts contained in the defendant's

declaration, the Court must accept the defendant's uncontroverted factual averments as true.

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Moreover, a federal court's "jurisdiction over the defendant must be authorized by the

terms of the forum state's long arm statute and also must comport with the requirements of the

Fourteenth Amendment's Due Process Clause." *Johnson v. Barrier*, 2017 WL 36442, at *2 (N.D.

Ill. Jan. 4, 2017) (citation omitted). Here, Texas's long-arm statute "extends to the limit[] of federal

due process." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Accordingly, "the state statutory

and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir.

2010). "The key question is therefore whether the defendant[] ha[s] sufficient 'minimum contacts'

with [the forum state] such that the maintenance of the suit 'does not offend traditional notions of

fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700-01 (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).

9

The LSA Master Complaint and Second Amended SFC contain no specific allegations about L'Oréal S.A.'s contacts with Texas, the state where the transferor court is located. And the reality is that L'Oréal S.A. has no relevant contacts with Texas, or any other state in the United States. Further, "the Court need not accept [a plaintiff's] allegations when they are controverted by sworn affidavits from the defendant"—as they are in this case. *Doe v. Fenix Internet, LLC*, 2024 WL 2845961, at *5 (N.D. Ill. June 5, 2024). Plaintiff has not met—and can never meet—her burden of establishing that the transferor court (or any other court in the United States) would have personal jurisdiction over L'Oréal S.A.

### A. Plaintiff cannot establish general jurisdiction because L'Oréal S.A. is not "at home" in Texas.

This Court lacks general jurisdiction over L'Oréal S.A. As the Supreme Court has held, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). Thus, absent an "'exceptional' case, general jurisdiction over a corporation is limited to its place of incorporation or principal place of business." *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1190 (N.D. Ill. 2014); *accord Daimler*, 571 U.S. at 137–39 & n.19.

Plaintiff completely fails to demonstrate that L'Oréal S.A. has contacts with Texas "so substantial" to render it "at home" in Texas. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). It is undisputed that L'Oréal S.A.'s headquarters and principal place of business are in France. *See* LSA Master Compl. ¶ 12. And Plaintiff has not alleged any facts suggesting this is "an exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571

U.S. at 139 n.19. Indeed, L'Oréal S.A. has no operations in Texas—let alone operations that are so continuous and systematic as to render L'Oréal S.A. at home in Texas or elsewhere in the United States. Levy Decl. ¶ 6; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Bluestone Innovations Tex., LLC v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 665 (E.D. Tex. 2011) (concluding court lacked general jurisdiction over defendant with "no actual physical presence or license to do business in Texas"). Therefore, the transferor court and this Court lack general jurisdiction over L'Oréal S.A.

> **B.**   **Plaintiff cannot establish specific jurisdiction because her alleged injuries have not arisen from any forum-related activities by L'Oréal S.A.**

Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (citation omitted). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Richter v. LG Chem, Ltd.*, 2020 WL 5878017, at *4 (N.D. Ill. Oct. 2, 2020) (quoting *Tamburo*, 601 F.3d at 702). Plaintiff must prove three "essential requirements" to establish specific jurisdiction: (1) "the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state," (2) the "alleged injury must have arisen out of the defendant's forum-related activities," and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (citations omitted). In this case, Plaintiff cannot satisfy any of the requirements necessary to establish personal jurisdiction over L'Oréal S.A.

Here, as made evident from the attached declarations and as addressed below, Plaintiff's hodgepodge of conclusory, demonstrably incorrect, and otherwise irrelevant allegations are insufficient, as a matter of law, to establish specific jurisdiction over L'Oréal S.A.

> **1.** **L'Oréal S.A. has not engaged in any actions that create a substantial connection with Texas or any other state in the United States.**

L'Oréal S.A. has not "purposefully availed [itself] of the privilege of conducting business" in Texas—or any other state in the United States—and has not "purposefully directed [its] activities at the state." *See Lexington Ins.*, 938 F.3d at 878. This "constitutional touchstone" of personal jurisdiction "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (cleaned up). The exercise of personal jurisdiction is only proper where "actions by the defendant *himself* . . . create a substantial connection with the forum State." *Id.* (citation omitted).

Contrary to Plaintiff's contentions (LSA Master Compl. ¶¶ 23–25), L'Oréal S.A. has never engaged in any activities in Texas, or any other state in the United States, that caused Plaintiff's injuries. As Mr. Levy explains in his declaration, L'Oréal S.A. has never designed, developed, tested, assembled, manufactured, packaged, labeled, or prepared any hair relaxer products, or component parts or ingredients used in any hair relaxer products, for sale in Texas or anywhere else in the United States. Levy Decl. ¶ 8. Nor has L'Oréal S.A. distributed, supplied, marketed, advertised, or sold any such hair relaxer products to consumers in Texas or elsewhere in the United States. *Id.* Similarly, L'Oréal S.A. has never placed any hair relaxer products into the stream of interstate commerce in the United States. *Id.* Those operations are carried out exclusively by L'Oréal USA and are not directed, managed, or controlled by L'Oréal S.A. *See id.* ¶ 5. Moreover, L'Oréal S.A. strictly maintains operational, management, and financial independence from its subsidiaries—including L'Oréal USA. *Id.* ¶¶ 2, 4.

12

### a. L'Oréal S.A. is separate and distinct from L'Oréal USA

Recognizing that L'Oréal S.A. has no activities in Texas or anywhere in the United States, most of Plaintiff's allegations conflate L'Oréal S.A.'s activities with those of L'Oréal USA. *E.g.*, LSA Master Compl. ¶¶ 13–25, 50. But Plaintiff ignores the foundational principle of corporations law: "a parent and a subsidiary are considered as two separate entities for purposes of personal jurisdiction." *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736 (N.D. Ill. 2011). Thus, "the acts of one cannot be attributed to the other." *Id.* (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943–44 (7th Cir. 2000)). The law is clear that a "mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state." *Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 299 (N.D. Ill. 1989); *accord Risinger Holdings, LLC v. Sentinel Ins. Co.*, 565 F. Supp. 3d 844, 854 (E.D. Tex. 2021).

As the Seventh Circuit has explained, "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent," but the relevant inquiry for agency purposes is whether the parent "exerts an unusually high degree of control." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003) (citation omitted) (declining to exercise jurisdiction over a French parent corporation based on the forum state contacts of its subsidiary). Indeed, "100% stock ownership" is "not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The unrebutted evidence confirms that L'Oréal S.A. "neither directs nor controls L'Oréal USA's corporate strategy," and does not control its day-to-day operations. Levy Decl. ¶ 5. Mere ownership of a subsidiary does support the exercise of jurisdiction over L'Oréal S.A.

In fact, courts have long recognized that L'Oréal S.A. observes corporate formalities and is distinct from its U.S. subsidiaries for purposes of personal jurisdiction. Most recently, the

District Court for the District of Columbia held that it "lack[ed] the power to adjudicate" a dispute involving L'Oréal S.A. "because L'Oréal S.A. is a foreign company whose contacts in the United States are solely through L'Oréal USA, which operates as a separate legal entity." *Glycobiosciences, Inc. v. Vichy Lab'ys, S.A.*, 2023 WL 157322, at *3 (D.D.C. Jan. 11, 2023). Other courts have repeatedly recognized that the contacts of L'Oréal S.A.'s subsidiaries cannot be imputed to L'Oréal S.A. for purposes of jurisdiction. *See, e.g.*, *Metricolor LLC v. L'Oréal S.A.*, 791 F. App'x 183, 191 (Fed. Cir. 2019) (holding that plaintiff failed to refute sworn testimony that L'Oréal S.A. has "no physical presence in the United States" and does "not conduct business in the United States"); *Cupp v. Alberto-Culver USA, Inc.*, 308 F. Supp. 2d 873, 879 (W.D. Tenn. 2004) ("L'Oréal S.A. has American subsidiaries, but the evidence shows no control or connections other than ownership between the parent and the subsidiaries."). Likewise, in this case, Plaintiff's conclusory factual allegations are plainly insufficient to support the Court's exercise of personal jurisdiction over L'Oréal S.A.

b.    **L'Oréal S.A. does not control L'Oréal USA.**

Plaintiff makes a series of conclusory allegations that L'Oréal USA entities are instrumentalities of L'Oréal S.A. and that L'Oréal S.A. exercises control over L'Oréal USA entities, including their websites and finances. LSA Master Compl. ¶¶ 16, 19, 22. But Plaintiff alleges no actual facts to support these conclusory allegations, and courts generally "demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Hargrave*, 710 F.2d at 1160. "The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Id.* In other words, "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred

14

that the two become one.'" *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019).

Here, "all of L'Oréal S.A.'s direct and indirect subsidiaries—including L'Oréal USA—operate as separate and independent entities that are operationally decentralized." Levy Decl. ¶ 4. As Mr. Levy explains, "L'Oréal S.A.'s subsidiaries define the developments and strategies specific to their markets, make choices in terms of consumer targets and distribution channels, and market the brands they decide to sell in their markets." *Id*. Plaintiff has not established—and cannot establish—that L'Oréal USA is a mere instrumentality or alter ego of L'Oréal S.A. *See, e.g.*, *Toyota*, 2021 WL 2805455, at *4–5 (finding lack of jurisdiction over a parent company that was responsible for the design, development, and distribution of the vehicles sold by its subsidiaries; owned all of one subsidiary's stock; and shared common marketing images, trademarks, and logos with the subsidiaries as well as the common brand name); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 2008 WL 2157108, at *6 (M.D. Fla. May 21, 2008) (no personal jurisdiction over parent where plaintiff's evidence indicated that the parent and subsidiary "share websites, that [the parent] owns [the subsidiary's] stock, and that [the parent] might license products to [the subsidiary]"). Nor can Plaintiff identify any evidence to support its speculative allegation that "the corporate form has been used to improperly defeat justice and/or evade tort responsibility." LSA Master Compl. ¶ 22.

Plaintiff's allegation that L'Oréal S.A. is "responsible for managing the financial tracking of the products sold in the United States" is a gross overstatement, in addition to being irrelevant to the jurisdictional analysis. *See* LSA Master Compl. ¶ 16. As parent corporations invariably do, L'Oréal S.A. maintains certain records regarding its subsidiaries' finances and sales, but L'Oréal USA "maintains and is responsible for its own business records, sales records, . . . records of its

customers' information," and "financial records," "prepare[s] [its] own financial statements," and "file[s] separate tax returns." Levy Decl. ¶ 7, 10. Maintaining separate financial records and filing separate tax returns is indicative that "corporate formalities were *scrupulously observed*." *Hargrave*, 710 F.2d at 1160 (emphasis added); *see also Wapp Tech*, 406 F. Supp. 3d at 596 ("parent company setting financial goals or requiring financial reporting from its subsidiaries does not present a *prima facie* case that the subsidiary is the parent company's alter ego"); *Catalina Mktg. Int'l, Inc. v. Coolsavings.Com, Inc.*, 2003 WL 21542491, at *5 (N.D. Ill. July 3, 2003) (similar).

Similarly, Plaintiff's assertion that, "[i]f a U.S. consumer, within the United States, were to search L'Oréal USA, it would take you to a webpage controlled by [L'Oréal S.A.]" (LSA Master Compl. ¶ 19) is both factually inaccurate and legally irrelevant. Typing "L'Oréal USA" into Google returns a reference to "L'Oréal USA" as its top result. *See* Tsekerides Decl. ¶ 8. Clicking on that link takes one to a webpage that provides an overview of L'Oréal USA, which, among other things, identifies that entity's headquarters as 10 Hudson Yards in New York City, not Paris, France. *Id.* Moreover, while the webpage refers at the top to the L'Oréal Groupe, that is not synonymous with L'Oréal S.A. *See* Levy Decl. ¶ 9. And other than providing overviews of various L'Oréal-related entities and brands (including Dark & Lovely), none of those webpages sell or advertise any hair relaxer products. *See* Tsekerides Decl. ¶¶ 7, 8.

Plaintiff also asserts that L'Oréal S.A. "advertises L'Oréal hair relaxer products, such as Dark & Lovely, on the L'Oréal S.A. website," and "share[s] marketing" with L'Oréal USA. LSA Master Compl. ¶ 16. Again, this claim is not accurate. L'Oréal S.A. has never "distributed, supplied, marketed, advertised, or sold any hair relaxer products to consumers anywhere in the United States." Levy Decl. ¶ 8. And the L'Oréal Groupe website does not so much as mention— let alone sell—hair relaxer products. *Id.* ¶ 9.  It does not sell products at all.  Tsekerides Decl. ¶ 7.

Further still, the SoftSheen-Carson website Plaintiff contends is controlled by L'Oréal S.A. makes clear in its Terms of Use that it is "owned and operated by L'Oréal USA S/D, Inc."—not L'Oréal S.A. *Id*. ¶ 12. As the website explains, SoftSheen-Carson is a member of the "L'Oréal USA family of brands," and Dark & Lovely products sold in the United States are products of L'Oréal USA. *Id*. ¶ 13. Further, the "Contact Us" page specifically states that it is "[f]or US consumers only" and that "[n]on-US consumers should visit the country website serving their region." *Id*. ¶ 14. Finally, the Privacy Policy that Plaintiff touts as purported support for jurisdiction also makes clear that "Us," "Our," "We," or "L'Oréal" is referring to **L'Oréal USA**. *Id.* ¶ 13.

All that aside, even if Plaintiff's claims were accurate—and they are not—"[m]erely running a website that is accessible in all 50 states, but that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state." *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 785 (5th Cir. 2021); *accord Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004). Thus, courts assessing personal jurisdiction have regularly concluded that operating a centralized website is not enough to establish personal jurisdiction. *See, e.g.*, *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017) (finding insufficient evidence "for the agency theory" despite allegations that a French parent corporation "control[led] the [subsidiary's] websites"); *Knights Armament*, 2008 WL 2157108, at *6 (finding plaintiff failed to make a prima facie showing of an agency relationship despite evidence that a parent and subsidiary "share websites"); *People Sols., Inc. v. People Sols., Inc.*, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (finding the defendant's website "do[es] not support a finding of personal jurisdiction over [d]efendant [a]lthough [d]efendant appears to have the potential to interact with, sell products to, and contract with Texas

17

residents on its web site"). There is simply no throughline, directly or otherwise, to personal jurisdiction over L'Oréal S.A. based on any of the websites Plaintiff relies on, or otherwise.

**c.**    **Any overlap of personnel between L'Oréal S.A. and L'Oréal USA is insufficient to confer personal jurisdiction over L'Oréal S.A.**

Plaintiff notes that L'Oréal USA's CEO sits on the executive committee of L'Oréal S.A., and that the Chair of L'Oréal S.A.'s board of directors was previously the CEO of L'Oréal USA. LSA Master Compl. ¶ 15. But these facts do not reflect a collapsing of corporate separateness, nor can they support personal jurisdiction over L'Oréal S.A. As a matter of law, courts have widely recognized that "[p]arents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995); *see also United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (cleaned up) (citation omitted) (recognizing the "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). Indeed, some degree of "cross-pollination of executives and owners" is insufficient to show "complete domination" of a subsidiary without any evidence that those shared officers used their "positions to exploit and *de facto* merge the companies' relationship." *Simplot India LLC v. Himalaya Food Int'l Ltd.*, 2024 WL 1136791, at *8 (D.N.J. Mar. 15, 2024); *see also Hargrave*, 710 F.2d at 1160 (holding that "commonality of officers and directors" is "not alone sufficient to establish an alter ego relationship between two corporations"); *Nespresso USA, Inc.*, 263 F. Supp. 3d at 505 (explaining that the "minor overlap" of individuals concurrently serving in leadership roles with a parent and subsidiary is "not dispositive" for a finding of agency).

As a matter of fact, the documents Plaintiff relies on to support her claim actually *demonstrate* the separateness of L'Oréal S.A. from the rest of its subsidiaries. For example, the

18

2023 Universal Registration Document clearly states that L'Oréal S.A. has a board of 16 directors, none of whom are American and none of whom work for L'Oréal USA. *See* Tsekerides Decl. Ex. 10 at 13. That same document references the executive committee that Plaintiff relies upon and makes clear that, while L'Oréal USA's CEO is one of 19 individuals on that committee, its individual members are responsible for their own divisions and geographic zones. *Id.* at 15. Mr. Greenberg, L'Oréal USA's CEO, is responsible for North America, while others are responsible for other regions or divisions and have their own separate titles of either President or CEO of those other regions or divisions. *Id.* The fact that regions and divisions have their own CEOs demonstrates, as a factual matter, that they have their own distinct and separate leadership.[2]

> **d.** **Any sharing of information between L'Oréal S.A. and L'Oréal USA is insufficient to confer personal jurisdiction over L'Oréal S.A.**

Similarly unavailing are Plaintiff's assertions that because L'Oréal S.A. makes information and data available to L'Oréal USA and provides it with documents and guidance, it is subject to personal jurisdiction for the alleged injuries Plaintiff claims to have sustained as a result of the hair relaxer products at issue. LSA Master Compl. ¶¶ 17–19. Shared access to resources, guides, contacts, and business targets is not indicative of "dominion of a subsidiary." *Catalina Mktg.*, 2003 WL 21542491, at *5. Rather, it is "common business practice" to "offer advice, and have general oversight over a subsidiary." *Id.* Moreover, as noted, L'Oréal S.A.'s direct and indirect subsidiaries, including L'Oréal USA, operate as "separate and independent entities," with their own management and leadership teams who operate free of any day-to-day control from L'Oréal S.A. *See* Levy Decl. ¶ 4. Further, L'Oréal USA—the entity to which Plaintiff purports to directly

---

[2] Similarly, the fact that some employees of L'Oréal S.A. may have worked at one time for L'Oréal USA, and vice-versa, is not sufficient, as a matter of law, to confer personal jurisdiction over L'Oréal S.A. for the hair relaxers Plaintiff alleges caused her injuries.

trace her harm—"maintains and is responsible for its own business records, sales records, and records of its customers' information." *Id.* ¶ 7.

Moreover, while the L'Oréal Groupe Privacy Policy page indicates that data shared with L'Oréal S.A. may be shared with affiliates such as L'Oréal USA, there is absolutely nothing on that page, or that site, that relates to the hair relaxer products at issue or that supports any conclusion that L'Oréal S.A. is responsible for the hair relaxer products Plaintiff alleges caused her injuries. Tsekerides Decl. ¶ 9. This is in contrast to the SoftSheen-Carson website, which specifically sells hair relaxer products and whose Terms of Use make clear that it is owned and operated by L'Oréal USA S/D, Inc. *Id.* ¶ 12. Moreover, the Terms of Use page of the L'Oréal Groupe website provides specific links for divisions around the world, including the Americas and L'Oréal USA. *Id.* ¶ 10. A click on that link takes one to Term of Use for L'Oréal USA, and indicates that L'Oréal USA is the owner and operator of that site. *Id.*

> e. **Plaintiff's other allegations similarly fail to support jurisdiction.**

Plaintiff also makes several allegations regarding ownership of patents and licenses as a purported basis for exercising jurisdiction over L'Oréal S.A., but none of those allegations are sufficient to establish personal jurisdiction in this case. LSA Master Compl. ¶¶ 16, 21, 25. Plaintiff's allegations misapprehend the nature of the relevant law—which confirms that the licensing of intellectual property to a subsidiary is not sufficient to collapse the distinction between a parent corporation and its separately organized subsidiary. *See Sunshine Kids Found. v. Sunshine Kids Juv. Prod., Inc.*, 2009 WL 5170215, at \*7 (S.D. Tex. Dec. 18, 2009) (explaining that "a licensor's exercise of quality control over a licensee" is not "sufficient to support the exercise of personal jurisdiction over a licensor who otherwise lacks contact with a forum state"). Furthermore, courts have declined to exercise jurisdiction even where a defendant-licensor provides information, support, and oversight to the licensee. *See PrimeSource Bldg. Prods., Inc.*

*v. Phillips Screw Co.*, 2008 WL 779906, at *5 (N.D. Tex. Mar. 25, 2008) (court did not have personal jurisdiction where licensor "provid[ed] technical and engineering information, test[ed] and inspect[ed] product samples, and ma[de] regular visits to the manufacturing facilities of licensees"). Here, the deposition testimony shows that L'Oréal S.A. is not involved in the day-to-day decision-making of L'Oréal USA with respect to hair relaxer products or otherwise. Tsekerides Decl. Ex. 11 at 143:3–144:14.

In fact, in a recent patent infringement suit—where control over relevant intellectual property was front and center—the District Court for the District of Columbia explained that the "conclusory allegation" that "L'Oréal SA is the developer, formulator, and primary manufacturer of the accused products" was "insufficient to demonstrate that L'Oréal S.A. 'so dominated [L'Oréal USA] . . . as to negate its separate personality.'" *Glycobiosciences*, 2023 WL 157322, at *4 (brackets in original) (quoting *Hart v. Dep't of Agric.*, 112 F.3d 1228, 1231 (D.C. Cir. 1997)).

Likewise, Plaintiff's allegation that "L'Oréal S.A. worked with L'Oréal USA to apply for approvals from the U.S. Food and Drug Administration" ("FDA") is blatantly contradicted by Plaintiff's own allegations. *See* LSA Master Compl. ¶ 16. The Master Long Form Complaint clearly states that "[t]he law does not require cosmetic products or ingredients . . . to have FDA approval before they go to market." *Id.* ¶ 97. Indeed, the FDA's website likewise explains that "[t]he law does *not* require . . . hair relaxers to be approved by FDA before they are sold in stores." Tsekerides Decl. Ex. 13. Thus, it is unclear what "approvals" Plaintiff is referring to, and Plaintiff clearly has no factual basis for this legally irrelevant allegation.

Plaintiff also makes much of the fact that certain documents were provided to L'Oréal USA in connection with its responses to discovery and that the L'Oréal Groupe issued a press release relating to this litigation. LSA Master Compl. ¶ 20. Neither of those allegations, however, is

indicative of the day-to-day operational control necessary to confer personal jurisdiction over L'Oréal S.A. as "there is a difference between the degree of 'control' necessary to establish control [over documents] and the degree of 'control' necessary to establish an 'alter-ego' relationship and pierce the corporate veil." *Tillotson Corp. v. Top Glove Sdn. Bhd.*, 2007 WL 10025485, at *3 (N.D. Ga. May 14, 2007); *accord Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986) (dismissing foreign parent corporation for lack of personal jurisdiction, but later requiring parent corporation to produce documents). In other words, control of certain responsive documents is not synonymous with control of day-to-day business and strategic operations.

Moreover, Plaintiff's allegation that "L'Oréal S.A. issued press releases" about the MDL is not enough to establish jurisdiction. After these lawsuits were filed, the L'Oréal Groupe issued a short press release stating, among other things, that "we are confident in the safety of SoftSheen-Carson's products and believe the allegations made in these lawsuits have neither legal nor scientific merit." Tsekerides Decl. Ex. 12. In other words, the press release was issued by the L'Oréal Groupe—not L'Oréal S.A.—and specifically referred to *SoftSheen-Carson's products*, not L'Oréal S.A.'s products. As noted, SoftSheen-Carson has never been a direct subsidiary of L'Oréal S.A., but rather a subsidiary of L'Oréal USA. Levy Decl. ¶ 3. Even if the press release were attributable to L'Oréal S.A., making a public statement about pending litigation about products sold by a subsidiary of a subsidiary would not be enough to subject L'Oréal S.A. to personal jurisdiction in this Court for the hair relaxers at issue. *See, e.g.*, *Edelson v. Ch'ien*, 352 F. Supp. 2d 861, 869 (N.D. Ill. 2005) ("[T]he posting of the press release on Chinadotcom's website does not qualify as Ch'ien purposefully establish[ing] minimum contacts within the forum State." (citation omitted)).

2. **Plaintiff's alleged injuries did not arise out of any forum-related activities by L'Oréal S.A.**

Even if Plaintiff could show that L'Oréal S.A. purposefully availed itself of the benefits of conducting business in Texas—which as detailed above she cannot—Plaintiff would still be unable to establish that her injuries arose out of L'Oréal S.A.'s contacts with Texas. *Select Rsch., Ltd v. Amazon.com, Inc.,* 2024 WL 3585106, at *3 (E.D. Tex. July 30, 2024) (specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State" (citation omitted)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Plaintiff does not allege that L'Oréal S.A. has engaged in any activities in Texas that caused her injuries. Instead, Plaintiff vaguely asserts that "L'Oréal S.A.'s own acts and omissions" or "its agents, joint venturers, and alter ego subsidiaries, occurred within each of the States and Territories of the United States." LSA Master Compl. ¶ 27. These types of all-encompassing generalizations about L'Oréal S.A. and its subsidiaries are not enough to show that L'Oréal S.A. has sufficient minimum contacts with Texas because "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984). Plaintiff's allegations—which "lump together" L'Oréal S.A. and its subsidiaries—"make[] it impossible to discern which of the alleged activities and contacts relate to [which entities]." *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *7 (N.D. Ill. Feb. 1, 2016).

Moreover, as an indisputable factual matter, "L'Oréal S.A. has never manufactured," "distributed, supplied, marketed, advertised, or sold any hair relaxer products to consumers anywhere in the United States." Levy Decl. ¶ 8. Under such circumstances, courts "have expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the

alleged harm to a Texas resident." *See Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 314 (5th Cir. 2007). Therefore, Plaintiff is unable to meet her burden to show that her alleged injuries are attributable to any contact between L'Oréal S.A. and Texas, or any other State.

### 3. Exercising jurisdiction would not comport with traditional notions of fair play and substantial justice.

While it is apparent that there is no basis for exercising personal jurisdiction over L'Oréal S.A. and that its motion should be granted, exercising such jurisdiction would also offend traditional notions of fair play and substantial justice. "Among the factors to be considered in making this inquiry are the burden on the defendant, the interests of the forum state, the plaintiff[']s interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of [the] several states in furthering fundamental social policies." *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 701 (N.D. Ill. 2008). "Of all these factors, however, the burden on the defendant forced to litigate in a foreign forum is still the primary concern." *Id.* As the Supreme Court has emphasized, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115 (citation omitted).

In this case, L'Oréal S.A.'s headquarters are located more than 4,000 miles from Chicago (and Texas), and none of its records, files, or witnesses are located in Illinois or Texas. Thus, forcing L'Oréal S.A. to defend itself in Illinois would impose "a significant burden" on the company. *See, e.g.*, *Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*, 766 F. Supp. 2d 854, 864 (N.D. Ill. 2011) (exercising personal jurisdiction would offend traditional notions of fair play and

substantial justice where defendant's headquarters were thousands of miles from Chicago and "none of its records, files or witnesses" were located in Illinois).

Neither Texas nor Plaintiff has a particularly strong interest in adjudicating claims against L'Oréal S.A. in this forum. Plaintiff cannot show that L'Oréal S.A. sold any hair relaxer products or took any actions in Illinois or Texas. "[I]t is the activity of the defendant, and not the status of the Plaintiff, that determines whether jurisdiction is proper in a particular district." *Id.* And Plaintiff's interests are further weakened by the fact that she has already sued other defendants who manufacture and sell the products at issue. Accordingly, it would be contrary to traditional notions of fair play and substantial justice to induce a foreign entity to defend itself in this Court.

## CONCLUSION

Because Plaintiff has failed to meet her burden of establishing that the transferor court (or this Court) has personal jurisdiction over L'Oréal S.A., and for the reasons stated above, the Court should dismiss the Second Amended SFC and the LSA Master Complaint with prejudice.

Dated:  December 6, 2024

Respectfully submitted,

 */s/ Theodore E. Tsekerides*

**WEIL, GOTSHAL & MANGES LLP**
Theodore E. Tsekerides
Aaron J. Curtis
Elaina K. Aquila
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: theodore.tsekerides@weil.com
        aaron.curtis@weil.com
        elaina.aquila@weil.com

*Counsel for L'Oréal S.A.*