**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 <br><br> Master Docket No. 23-cv-0818 <br><br> Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Wella Operations US, LLC and Wella AG's ("Defendant" or "Wella") Motions to Dismiss Under Rule 12(b)(6). [757–762]. For the reasons stated herein, Wella's motions are denied.[1]

### I.  Background[2]

The factual allegations from the Master Long Form Complaint brought against Wella ([676], ("Master Complaint")) and Short Form Complaint ([175-1], ("SFC")) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).[3]

---

[1] Wella's reply in support of its motion to dismiss was due by September 30, 2024. [770]. Wella filed its reply on October 9, 2024 without leave for an extension. *See* [880]. Nevertheless, the Court considers Wella's arguments in full.

[2] The Court incorporates the Background section of its Memorandum Opinion and Order [291] granting in part and denying in part Defendants' Joint Motion to Dismiss and Defendant McBride's Motion to Dismiss Plaintiffs' Master Long Form Personal Injury Complaint [106].

[3] The Court adopted the short form complaint on August 3, 2023. Pursuant to the Court's Case Management Order ("CMO") No. 7, "[f]or each action in the MDL, subject to this Order, the Master Complaint, together with the Short Form Complaint shall be deemed the

1

On May 15, 2023, Plaintiffs filed a Master Long Form Complaint against numerous other Defendants ("Phase I Defendants"), not including Wella, in this multidistrict litigation. [106]. Plaintiffs alleged they suffered personal injuries and death as a result of their use of defective hair relaxers designed, manufactured, sold, distributed, and marketed by the Defendants named in the May 15, 2023 Master Long Form Complaint. *Id.* ¶¶ 5, 10. The Phase I Defendants argued the Master Long Form Complaint did not state any claim and moved to dismiss the complaint in its entirety. [142]. Although the Court dismissed claims of negligent misrepresentation, fraud/fraudulent misrepresentation, fraudulent concealment, and fraud-based claims of deceptive acts or practices under consumer law statutes, Plaintiffs' remaining 12 claims were permitted to proceed. [291].

On May 28, 2024, Plaintiffs filed the Master Complaint against Wella after multiple individual Plaintiffs identified on their SFCs that they use or used Wella's hair relaxer products. [676]. The Master Complaint states Wella's hair relaxer products include Texture & Tones, Gentle Treatment, and UltraSheen. *Id.* ¶ 2. Plaintiffs allege their frequent use of Wella's hair-relaxing products caused them to develop ovarian cancer, uterine cancer, or endometrial cancer. *Id.* ¶¶ 1, 6–7, 9. The Master Complaint brings the same surviving claims as the May 15, 2023 Complaint and avers substantially similar contentions. *Compare* [106] *with* [676]. Wella filed substantially identical motions to dismiss in three cases: (a) Civil Action No. 1:23-cv-11227 filed by Plaintiff Lanisha Davis; (b) Civil Action No. 1:23-cv-10476 filed by

---

operative complaint." [175] at 1. This opinion sometimes refers to the Master Complaint and SFC together as the "Complaint."

2

Plaintiff Mamie Irvin; and (c) Civil Action No. 1:23-cv-08237 filed by Plaintiffs Dawn and Rodney Hall, Sr.. On February 17, 2025, Wella Operations US, LLC moved to adopt and join any cases newly filed against Wella and any cases prospectively filed against Wella in its original motion to dismiss. [1090]. As of February 17, 2025, 13 cases are pending against Wella. *Id.* at 1. Wella's motion [1090] is granted. Before the Court now are Wella's motion to dismiss the complaint in its entirety. [757–762].[4]

## II.     Standard

The Court assumes the parties' familiarity with its explanation of the standards for Rule 12(b)(6) motions set forth in its first motion to dismiss opinion. *See* [291] at 5.

## III.    Analysis

Wella moves to dismiss all of Plaintiffs' claims. Defendants argue the Complaint is devoid of all factual allegations related to Wella and does not put Defendants on notice of the nature of the claims against them. [760] at 4; [762] at 4. Wella's arguments fail and its motion to dismiss is denied.

As an initial matter, Wella appears to misunderstand how to evaluate the Master Complaint and the SFC. Neither document stands alone but together form one operative complaint. Thus, arguments that the SFC lacks allegations about how Plaintiffs' use of Wella products caused injury or that the Master Complaint is devoid of allegations about which Wella products Plaintiffs used do not pass muster. *See,*

---

[4] On July 18, 2024 the Court entered an order dismissing Plaintiff Davis's case without prejudice, effective June 25, 2024. No. 1:23-cv-11227, [18]. Thus, Wella's motion regarding Plaintiff Davis is denied as moot. [757, 758].

3

*e.g.*, [760] at 4–5; [762] at 4–5. Wella must analyze the sufficiency of the allegations in the entire operative Complaint, which encompasses both the Master Complaint and the SFC. Wella's motion suffers from another glaring error: rather than grapple with the well-pleaded contentions set forth in the Complaint, Wella ignores all but 12 paragraphs of the 236 paragraph Master Complaint and 2 paragraphs in the SFC. [760] at 5; [762] at 5–6. All the allegations in the Master Complaint, even if they do not mention Wella by name, relate to Wella and its conduct. Focusing solely on the allegations that address Wella by name is improper. *See Fernandes v. Rosalind Franklin Univ. of Med. & Sci.*, No. 19 CV 50337, 2021 WL 269879, at *3 (N.D. Ill. Jan. 27, 2021) ("A motion to dismiss does not allow a defendant to simply ignore unfavorable allegations in the complaint.").

Wella asserts Plaintiffs only plead conclusory allegations and thus all 12 of Plaintiffs' claims fail to plausibly state a claim. [753] at 15. The Court finds Defendants' arguments undeveloped and unpersuasive. Wella does not address (much less differentiate between) the elements for each of the 12 causes of action. The Court will not develop the missing links in Defendants' argument. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir.1995) (noting that the "federal courts will not invent legal arguments for litigants"); *Nilssen v. Gen. Electric, Co.*, 06 C 04155, 2011 WL 633414, at *9 (N.D. Ill. Feb. 11, 2011) (observing that in our adversarial system, "judges are not to supplant lawyers and perform their job of crafting and developing arguments").

The facts alleged in the Complaint are substantially the same as those the

4

Court previously held were well-pleaded and provided fair notice of the same 12 claims Plaintiffs now bring against Wella. *See* [106, 291]. Plaintiffs allege Wella "manufactured, sold, distributed, advertised, and promoted toxic hair relaxer products that caused Plaintiffs to develop cancers and other injuries." [676] ¶ 1. The Master Complaint alleges Defendants "systematically misrepresented and continue to misrepresent the significant health impacts of hair relaxer use," and failed to "disclos[e] the risks" or "warn[] women and children" about its "brutally toxic products," "all while having knowledge that the hair relaxer products they designed, manufactured, advertised, and sold contained toxic carcinogens." *Id.* ¶¶ 6–8. According to Plaintiffs, Wella led "consumer[s] to believ[e] these hair relaxer products are safe when in fact they are not." *Id.* ¶ 53. Plaintiffs explain that endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system. *Id.* ¶¶ 69–70. They allege that natural and synthetic EDCs are present in some of Defendants' hair relaxer products as "fragrance" and "perfumes," and enter the body when the products are applied to the hair and scalp. *Id.* ¶ 71. One of the EDCs, phthalates, are harmful because it interferes with individuals' natural hormone production and degradation. *Id.* ¶ 72. Plaintiffs plead Wella "was aware or should have been aware of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the hair relaxer products . . . due to the harmful, toxic, and carcinogenic ingredients in their hair relaxer products." *Id.* ¶¶ 65–66. Defendants provide no reason why the Court should deviate from its prior ruling and erroneously claim that order is

5

"inapplicable" to the instant motion. [880] at 2.

None of Wella's cited authorities compel a different result. In *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), only equal protection claims against the City of Chicago for failure to have adequate policies to protect female victims of domestic violence were at issue. *Id.* at 615–19. The alleged facts and claims at issue here (which do not include an equal protection claim) are vastly different.

*Weddle v. Smith & Nephew, Inc.*, No. 14 C 09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016), also is unpersuasive. There, the plaintiff sued multiple defendants after a medical device that was implanted in her fractured ankle failed. *Id.* at *1. Each of the defendants manufactured different components of the medical device or products that were used to implant the device, but plaintiff did not know and could not plead which component failed. *Id.* at *1–2. This failure to identify which component failed was fatal. *Id.* at *3 ("Identifying the manufacturer(s) of [the component] might suffice to allow a claim to go forward against the manufacturer(s), but it is not enough to say that the claim can go forward against all of the defendants because at least one of them must be liable.") The court dismissed the case because there was only a possibility that a particular defendant's components failed (as opposed to any of the other defendants) and caused the plaintiff's injuries, thus not meeting the plausibility threshold. *Id.* at *2. In contrast, here, Plaintiffs identify each of the hair relaxer products manufactured by multiple Defendants that they used and contend that each Defendant, including Wella, contributed to the alleged injuries. Case No. 1:23-cv-10476, [1]; 1:23-cv-08237, [1]; [676] ¶¶ 65–91. That some facts are

6

common among to multiple Defendants does not give rise to circumstances similar to those in *Weddle*.

Likewise, *Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883 (N.D. Ill. 2014) is distinguishable. The *Corwin* plaintiff offered conclusory allegations that the product at issue was defective without elaborating as to *how* the product was defective. *Id.* at 888–91. Here, Plaintiffs contend Wella's hair relaxer products contain carcinogenic chemicals, such as phthalates, and that scientific research shows chronic exposure to these chemicals can adversely affect the normal activity of the endocrine system. [676] ¶¶ 65–74. Studies cited by Plaintiffs show higher rates of uterine and ovarian cancer among women who frequently used hair relaxers. *Id.* ¶¶ 77–91.[5]

Accordingly, the Court denies Wella's motions to dismiss the Complaint in its entirety.

## **CONCLUSION**

For the stated reasons, Wella's Motions to Dismiss Under Rules 12(b)(6) [752, 753] are denied.

E N T E R:

Dated: February 19, 2025

MARY M. ROWLAND
United States District Judge

---

[5] In response to Plaintiffs' arguments distinguishing *Corwin*, Wella incorrectly asserts Plaintiffs did not identify Wella products. [880] at 3. The products Plaintiffs used are named in the SFCs. Case No. 1:23-cv-10476, [1] at 8; 1:23-cv-08237, [1] at 8 (both identifying Clairol crème relaxer). Wella also inaccurately asserts Plaintiffs did not cite the scientific studies and secondary sources that substantiate their claims. [880] at 3. This too is wrong. *See, e.g.*, [676] ¶¶ 80 n.36, 84 n.38.