IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 <br><br> Master Docket No. 23-cv-0818 <br><br> Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant John Paul Mitchell Systems' ("Defendant" or "JPMS") Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6). [750]. For the reasons stated herein, JPMS's motion is denied.

**I.  Background**[1]

The factual allegations from the Master Long Form Complaint brought against JPMS ([678], ("Master Complaint")) and Short Form Complaint ([175-1], ("SFC")) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).[2]

On May 15, 2023, Plaintiffs filed a Master Long Form Complaint against

---

[1] The Court incorporates the Background section of its Memorandum Opinion and Order [291] granting in part and denying in part Defendants' Joint Motion to Dismiss and Defendant McBride's Motion to Dismiss Plaintiffs' Master Long Form Personal Injury Complaint [106].

[2] The Court adopted the short form complaint on August 3, 2023. Pursuant to the Court's Case Management Order ("CMO") No. 7, "[f]or each action in the MDL, subject to this Order, the Master Complaint, together with the Short Form Complaint shall be deemed the operative complaint." [175] at 1. This opinion sometimes refers to the Master Complaint and SFC together as the "Complaint."

1

numerous other Defendants ("Phase I Defendants"), not including JPMS, in this multidistrict litigation. [106]. Plaintiffs alleged they suffered personal injuries and death as a result of their use of defective hair relaxers designed, manufactured, sold, distributed, and marketed by the Defendants named in the May 15, 2023 Master Long Form Complaint. *Id.* ¶¶ 5, 10. The Phase I Defendants argued the Master Long Form Complaint did not state any claim and moved to dismiss the complaint in its entirety. [142]. Although the Court dismissed claims of negligent misrepresentation, fraud/fraudulent misrepresentation, fraudulent concealment, and fraud-based claims of deceptive acts or practices under consumer law statutes, Plaintiffs' remaining 12 claims were permitted to proceed. [291].

On May 28, 2024, Plaintiffs filed the Master Complaint against JPMS after multiple individual Plaintiffs identified on their SFCs that they use or used JPMS's hair relaxer products. [678]. The Master Complaint states JPMS's hair relaxer products include "The Relaxer - Regular Strength by John Paul Mitchell" and "The Relaxer - Super Strength by John Paul Mitchell." *Id.* ¶ 2. Plaintiffs allege their frequent use of JPMS's hair-relaxing products caused them to develop ovarian cancer, uterine cancer, or endometrial cancer. *Id.* ¶¶ 1, 6–7, 9. The Master Complaint brings the same surviving claims as the May 15, 2023 Complaint and avers substantially similar contentions. *Compare* [106] *with* [678]. As of July 17, 2024, approximately 37 individual Plaintiffs brought claims against JPMS. [750] at 20. Before the Court now

2

is JPMS's motion to dismiss the complaint in its entirety.[3] [750].

## II. Standard

The Court assumes the parties' familiarity with its explanation of the standards for Rule 12(b)(6) motions set forth in its first motion to dismiss opinion. *See* [291] at 5.

## III. Analysis

JPMS moves to dismiss all of Plaintiffs' claims. Defendant argues Plaintiffs failed to plead facts sufficient to establish Article III standing. JPMS also moves to dismiss the Complaint in its entirety because the alleged causation theory is inapplicable to its product. The Court denies JPMS's motion to dismiss on both grounds.

### a. Sufficiency of the Allegations

Defendant claims Plaintiffs have not established standing because they have not alleged any acts, omissions, or wrongdoing to support a finding that its "actual action has caused [] a substantial risk of harm." [750] at 11 (citing *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 n.5 (2013)). Contrary to Plaintiffs' assertions in response, JPMS does not contest either that Plaintiffs suffered a "concrete, particularized, and actual or imminent" injury or whether Plaintiffs' alleged injury is redressable by a favorable ruling. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Thus, JPMS's standing critique amounts to a 12(b)(6) challenge focused only on

---

[3] Defendant claims its hair relaxer products are designed for use by professional licensed cosmetologists only and have never been marketed to the public or for take-home use. [75] at 5–6, 11. JPMS will have the opportunity to present this evidence at a later stage of litigation.

3

Plaintiffs' failure to allege causation shoehorned into a jurisdictional contest.[4]

As an initial matter, JPMS appears to misunderstand how to evaluate the Master Complaint and the SFC. Neither document stands alone but together form one operative complaint. Thus, arguments that the SFC lacks allegations, for example identifying which chemicals caused Plaintiffs' injuries, do not pass muster. *See, e.g.*, [750] at 9. JPMS must analyze the sufficiency of the allegations in the entire operative Complaint, which encompasses both the Master Complaint and the SFC. JPMS's motion suffers from another glaring error: rather than grapple with the well-pleaded contentions set forth in the Complaint, JPMS ignores all but 6 paragraphs of the 231 paragraph Master Complaint. *Id.* at 7–9; [861] at 4–5. All the allegations in the Master Complaint, even if they do not mention JPMS by name, relate to JPMS and its conduct. Focusing solely on the allegations that address JPMS by name is improper. *See Fernandes v. Rosalind Franklin Univ. of Med. & Sci.*, No. 19 CV 50337, 2021 WL 269879, at *3 (N.D. Ill. Jan. 27, 2021) ("A motion to dismiss does not allow a defendant to simply ignore unfavorable allegations in the complaint.").

The Court finds Defendant's arguments undeveloped and unpersuasive. JPMS does not address (much less differentiate between) the elements for each cause of action or element of standing and provides no substantive legal authority for its conclusion. The Court will not develop the missing links in Defendant's argument. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (noting that the "federal courts will not invent legal arguments for litigants"); *Nilssen v. Gen.*

---

[4] JPMS's traceability argument is addressed below.

*Electric, Co.*, 06 C 04155, 2011 WL 633414, at *9 (N.D. Ill. Feb. 11, 2011) (observing that in our adversarial system, "judges are not to supplant lawyers and perform their job of crafting and developing arguments").

The facts alleged in the Complaint are substantially the same as those the Court previously held were well-pleaded and provided fair notice of the same 12 claims Plaintiffs now bring against JPMS. *See* [106, 291]. Defendant provides no reason why the Court should deviate from its prior ruling. Accordingly, the Court denies JPMS's motion to dismiss the Complaint in its entirety.

    **b. Traceability**

JPMS asserts that Plaintiffs do not allege sufficient facts demonstrating that they have Article III standing to bring a claim against JPMS. [750] at 14–15. Specifically, JPMS contests the traceability element of standing.

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). There are two types of standing challenges: "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is in fact no standing." *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citation omitted). Here, JPMS raises no external facts to question the Court's jurisdiction, *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), but instead contend Plaintiffs have not sufficiently pleaded facts to establish Article III standing. *See* [750] at 14–15. Thus, the Court treats Defendant's motion as a facial challenge, not a factual

challenge.

"[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: 'Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Silha*, 807 F.3d at 173 (alterations accepted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

JPMS contends Plaintiffs have failed to plead how their injuries are fairly traceable to the challenged conduct, and thus, cannot establish Article III standing. [750] at 14–15. Traceability examines the causal relationship between the allegedly unlawful conduct and the asserted injury. *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). The threshold for adequately alleging traceability is not high. *Bennett v. Spear*, 520 U.S. 154, 171 (1997) (a plaintiff's burden on this element is "relatively modest at [the pleading] stage of litigation"). Defendant's conduct need not be the immediate cause, or even a proximate cause, of a plaintiff's injuries to satisfy the traceability element. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). But where the causal chain is "attenuated," traceability cannot be established. *Allen*, 468 U.S. at 757. In short, a plaintiff must show only a

6

"meaningful [] connect[ion]" between the aggrieved injury and defendant's conduct. *Dep't of Ed. v. Brown*, 600 U.S. 551, 568 (2023).

Defendant contends the Complaint fails to establish the causal connection between Plaintiffs' alleged uterine and ovarian cancer injuries and Defendant's conduct. [750] at 14–15. JPMS argues neither the Master Complaint or the SFCs overcome the pleading shortfalls. *Id.* In particular, Defendant contends no Plaintiffs allege specific facts pertaining to their use of JPMS's hair relaxer products, such as how many times or when they used the products or which chemicals in the products allegedly caused them harm. *Id.* at 15.

Plaintiffs allege Defendant "systematically misrepresented and continues to misrepresent the significant health impacts of hair relaxer use," and failed to "disclos[e] the risks" or "warn[] women and children" about its "brutally toxic products," "all while having knowledge that the hair relaxer products they designed, manufactured, advertised, and sold contained toxic carcinogens." [678] ¶¶ 6–8. According to Plaintiffs, JPMS led "consumer[s] to believ[e] these hair relaxer products are safe when in fact they are not." *Id.* ¶ 40 *see also id.* ¶ 39 (explaining Defendant intentionally labeled its products as "giv[ing] a fresh, clean fragrance for beautiful, conditioned results" to falsely suggest these hair relaxer products are safer or less toxic than alternatives). Plaintiffs explain that endocrine-disrupting chemicals ("EDCs") are chemicals, or chemical mixtures, that interfere with the normal activity of the endocrine system. *Id.* ¶¶ 58–59. They allege that natural and synthetic EDCs are present in some of Defendant's hair relaxer products as "fragrance" and

7

"perfumes," and enter the body when the products are applied to the hair and scalp. *Id.* ¶ 60. Studies cited by Plaintiffs show higher rates of uterine and ovarian cancer among women who frequently used hair relaxers. *Id.* ¶¶ 66–81. Plaintiffs plead JPMS "was aware or should have been aware of both the potential for harm and the increased risk of developing uterine and ovarian cancer from the use of the hair relaxer products . . . due to the harmful, toxic, and carcinogenic ingredients in their hair relaxer products." *Id.* ¶¶ 54–55. These allegations read as a whole give rise to the inference that Defendant's conduct is meaningfully connected to Plaintiffs' claimed injuries. More is not needed at this stage of litigation.

JPMS's cases do not require a different outcome. *In re E. I. du Pont de Nemours & Company C-8 Personal Injury Litigation*, 87 F.4th 315 (6th Cir. 2023) is distinguishable. There, a firefighter plaintiff who used firefighting foams containing PFAS chemicals sued 10 defendants because 5 PFAS compounds were found in his blood, which may lead to future illness. *Id.* at 318. The Sixth Circuit held the plaintiff did not plausibly establish traceability because he did not tie his alleged injury to each defendant and his allegations were conclusory. *Id.* at 320–21. But unlike here, the *E. I. du Pont* plaintiff did not know and could not allege what company manufactured the foams he used during his career, whether the PFAS found in his blood were present in the foams he used, or even whether any of the defendants manufactured any of the 5 PFAS compounds. *Id.* at 319, 321. In contrast, Plaintiffs here identify on their SFCs which specific hair relaxer products they use or used and allege in the Master Complaint that EDCs are present in JPMS's hair relaxer

8

products and that EDCs.[5] [678] ¶ 60. Thus, Plaintiffs do not treat all Defendants as a collective and instead have sufficiently tied their injuries to JPMS and each other Defendant.

*Baysal v. Midvale Indem. Co.*, 78 F.4th 976 (7th Cir. 2023), *reh'g denied*, No. 22-1892, 2023 WL 6144390 (7th Cir. Sept. 20, 2023) is similarly unavailing. The plaintiffs there, who alleged their driver's license numbers were unlawfully disclosed, alleged bogus unemployment insurance claims were filed in their names and contended such bogus claims *could* affect one's credit rating or make it difficult to obtain unemployment compensation following a real job loss. *Id.* at 978. But the plaintiffs did not plead either that their credit rating was affected or that they had challenges obtaining unemployment compensation. *Id.* Nor did they explain how, if at all, unlawful disclosure of a driver's license number could have contributed to an unemployment insurance scam. *Id.* As described above, the alleged causal chain differs here from the speculative claims in *Baysal*. Furthermore, the Court previously held substantially similar contentions sufficiently alleged hair relaxer products like Defendant's proximately caused Plaintiff's injuries. [291] at 10–11; *Haymarket DuPage, LLC v. Village of Itasca*, No. 22-CV-160, 2024 WL 809110, at *12 (N.D. Ill. Feb. 27, 2024) ("traceability is a watered down version of causation").

Plaintiffs' allegations satisfy Article III's requirement of a "causal connection

---

[5] JPMS assails the Complaint for not alleging more specific facts about each Plaintiff's use of JPMS's hair relaxer products, such as how many times Plaintiffs used the products or when Plaintiffs used them, but Defendant cites no authority compelling such specificity in a complaint. JPMS will have the opportunity to test this information at a later stage of litigation.

9

between the injury and the conduct complained of." *Brown*, 600 U.S. at 561 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

### c. Plaintiffs' Theory of Causation

JPMS argues there is "no tenable causation theory" under which they could be found liable. [750] at 15–17. With its motion, Defendant submitted a declaration from a JPMS employee and attached a 2008 label from its hair relaxer that lists the product's ingredients, which include sodium hydroxide (lye) and fragrance among others.[6] [750-1]. They assert there are no allegations that lye can cause Plaintiffs' injuries and none of the studies cited by Plaintiffs in the Complaint identify lye as a carcinogen or a potential cause of their injuries. [750] at 15–17. Even if the Court did consider JPMS's submission, the evidence is insufficient to require dismissal.

Plaintiffs contend Defendants' hair relaxer products caused their alleged injuries because they are manufactured with toxic and carcinogenic ingredients that disrupt or harm a woman's endocrine system. [678] ¶ 54–55. According to the Complaint, these alleged harmful chemicals include lye, the active ingredient in Defendant's hair relaxer product. *Id.* ¶ 55. Despite this clear allegation describing lye as an endocrine disrupting chemical and other allegations linking endocrine disruption to uterine and ovarian cancer, JPMS argues Plaintiffs have not alleged causation because the scientific studies cited in the Complaint do not name lye. [750] at 15–17.

---

[6] JPMS contends the Court may consider any evidence to determine whether subject matter jurisdiction exists. [750] at 16 n.7 (quoting *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008).

10

But neither study supports Defendant's argument. As JPMS raises, the 2021 study funded by NIH and the National Institute on Minority Health Sciences (the "White Article") linking hair relaxer use to higher ovarian cancer incidence did not ask about specific hair relaxer formulations, brands, or product ingredients and thus did not hypothesize about the effects of specific ingredients. White Article at 1193–95. Likewise, the 2022 NIH study (the "Chang Article") that found higher rates of uterine cancer in women who used hair relaxers did not collect specific brands and did not make any conclusions about specific chemicals. Chang Article at 1641. But if neither scientific study examined specific chemicals, then neither can be used to debunk that any individual ingredient, including lye, is a cause of Plaintiffs' injuries. Additionally, the exclusion of lye from a non-exhaustive list of endocrine disrupting compounds in the White Article is not enough to exclude JPMS from Plaintiffs' theory of liability. *See* White Article at 1191.

Finally, Defendant's argument ignores Plaintiffs' allegations that EDCs are present in hair relaxer products under the guise of "fragrance" and "perfumes," but FDA regulations do not require listing individual fragrance ingredients on labels. [678] ¶¶ 60, 64–65. According to the labels JPMS provided, its hair relaxer products included "fragrance/parfum," but the label does not list individual fragrance ingredients. [750-1]. Accepting Plaintiffs' factual allegations as true, EDCs may be combined with fragrance thus exposing women to these harmful chemicals through use of JPMS's products.

JPMS can test the sufficiency of Plaintiffs' scientific evidence at a later stage.

11

*See* Dkt. [291] at 11, 13 (challenges to scientific articles "are not issues capable of being resolved on a motion to dismiss" and "premature"). Plaintiffs have pleaded sufficient facts to establish causation and avoid dismissal.

## CONCLUSION

For the stated reasons, JPMS's Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) [750] is denied.

E N T E R:

Dated: February 19, 2025

MARY M. ROWLAND
United States District Judge