IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No.: 23 C 818<br><br>MDL No. 3060<br><br>Judge Mary M. Rowland |

**MDL PLAINTIFFS' OPPOSITION TO DEFENDANT REVLON'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE NATIONAL INSTITUTES OF HEALTH**

I. **INTRODUCTION**

On February 14, 2024, Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC (collectively "Revlon") served a subpoena on the National Institutes of Health ("NIH") seeking data from studies the NIH published describing the link between usage of hair relaxer products and ovarian, uterine, or cancers. The subpoena also sought a huge variety of irrelevant, overbroad, and disproportionate documentary material, including private health data of women participating in the studies as well as communications with any MDL Plaintiffs' counsel at any time, including well after the studies were published. *See* Ex. A (Subpoena, attached) at 12-13. Predictably, the NIH, and MDL Plaintiffs' counsel, objected.

Through a meet and confer process and after coordinating with internal channels at NIH, NIH completed productions of requested data and conducted a search for communications with MDL Plaintiffs' counsel. Revlon also withdrew its requests for private health information of individual women. However, Revlon now seeks to enforce its overbroad subpoena with respect to internal notes and drafts, all of which NIH would still need to scour to avoid producing private health information, and Revlon misleadingly suggests that NIH produced relevant communications with one of the MDL Plaintiffs' counsel as a basis to suggest more communications could or should

1

be produced. To the contrary, the only communications NIH was then able to locate from MDL Plaintiffs' counsel were those from the 2024 meet and confer over Revlon's subpoena, and included routine scheduling inquiries, such as "Hi Paul - how is your schedule?" *See* Ex. B (email from MDL Plaintiffs' counsel to NIH counsel Paul Robertson). None of these meet and confer emails substantiate Revlon's speculation that other communications (much less relevant ones) ever existed between MDL Plaintiffs' counsel and NIH.

Further, while materially complying with the subpoena as to relevant data, NIH repeatedly advised the parties that the drafts and internal communications that Revlon seeks violates the deliberative privilege and is overbroad and burdensome. There is no need to disturb NIH further with requests that are at the very best tangential and at worst wholly irrelevant or unusable. It is also clear that seeking this information at this juncture of the agency's work with a new administration will necessarily be delayed and likely will throw the MDL schedule off track as the parties await whatever comes from this third party. This is not proportional or equitable to all involved. Accordingly, the motion should be denied.

## II.     BACKGROUND

On May 15, 2023, Plaintiffs filed their Master Complaint in the MDL asserting various claims arising from allegations that hair relaxer products manufactured, distributed, and/or marketed by Defendants are unsafe and cause gynecological cancers. *See* ECF 106. The Master Complaint includes references to two research studies published by the NIH: (1) *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, J. NAT'L CANCER INST. (Oct. 17, 2022), by Che-Jung Chang, et al. (the "Chang study"), and (2) *Use of hair products in relation to ovarian cancer risk*, CARCINOGENESIS (June 26, 2021), by White, AJ, et al. (the "White study). *See* ECF 106 at 35-37. Both of the studies cited have been published and are available to the public, including Revlon and the other Defendants. *See*

2

https://pubmed.ncbi.nlm.nih.gov/36245087 (Chang study);

https://pubmed.ncbi.nlm.nih.gov/34173819 (White study).

Despite having access to the studies that the independent NIH scientists have published, on February 14, 2024 and April 17, 2024, Revlon served its subpoena on the NIH. *See* Ex. A (Subpoena).[1] NIH is not a party in this action. The subpoena seeks the following documents:

1. All drafts, versions, revisions, and releases of the 2021 White et al. study.

2. All drafts, versions, revisions, and releases of the 2022 Chang et al. study.

3. Any and all data collected, compiled, or created for purposes of the 2021 White et al. study, including any data, surveys, interviews, or questionnaires collected from study participants or potential participants.

4. Any and all data collected, compiled, or created for purposes of the 2022 Chang et al. study, including any data, surveys, interviews, or questionnaires collected from study participants or potential participants.

5. Any and all Sister Study data collected for and/or utilized by the authors of the 2021 White et al. study

6. Any and all Sister study data collected for and/or utilized by the authors of the 2022 Change et al. study.

7. All documents, work papers, and communications or correspondence reflecting any analysis of the Sister Study data by the authors of the 2021 White et al. study.

8. All documents, work papers, and communications or correspondence reflecting any analysis of the Sister Study data by the authors of the 2022 Change et al. article.

9. All correspondence between the NIH and/or the authors of the 2021 White et al. study with any Plaintiff(s) in the Hair Relaxer MDL and/or counsel of record for any such Plaintiff(s).

---

[1] During an early meet and confer in April, 2024, which Plaintiffs' counsel attended, counsel for NIH informed Revlon that its initial service attempt had not been properly effectuated.

3

2954292.6

> 10. All correspondence between the NIH and/or the authors of the 2022 Chang et al. study with any Plaintiff(s) in the Hair Relaxer MDL and/or counsel of record for any such Plaintiff(s).
>
> 11. Any and all internal or external communications or correspondence regarding the 2021 White et al. study and/or the underlying subject matter.
>
> 12. Any and all internal or external communications or correspondence regarding the 2022 Chang et al. study and/or the underlying subject matter.

*Id.* at 12-13.

The subpoena defines "document" extremely broadly:

> "Document" has the same full meaning as in Fed. R. Civ. P. 34(a), and includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, drafts, revisions, copies, non-identical copies, and markups of drafts, and all files, documents, databases, e-mails, and other data maintained in computer-readable form. The term "document" specifically includes, but is not limited to: electronically stored information; communications, including intracompany communications; minutes, notes and records of meetings; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; work papers; brochures; pamphlets; circulars; press releases; agreements; contracts; telephone messages; slips and logs; diary entries; electronic mail and messages of every kind; social media posts (e.g. post on social media platforms Facebook, Twitter Instagram, and others); calendar; reports; evaluations; assessments; analyses; tests results; correspondence; memoranda; notes; video recordings of every kind; audio recordings of every kind; electronic recordings of every kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts; tapes; disks; and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; and any other data compilation from which information can be obtained and translated through detection

2954292.6

> devices into reasonably useable form. The term "document" also includes copies of all documents that are not identical duplicates of the originals and copies of documents if the originals are not in the possession, custody, or control of Plaintiffs or their agents or representatives.

Ex. A at 7-8.

The subpoena goes well beyond the studies cited by Plaintiffs in the Master Complaint and seeks drafts, non-public data, unused data (if any), all variety of correspondence, and the private personal and medical questionnaires collected by NIH from trusting members of the public, including potentially women who have filed claims in this case. Ex. A at 12-13 (requests 1-8, 11-12). The subpoena also specifically asks NIH to provide any communications it has had with any of the Plaintiffs or their families in its research work. Ex. A at 9 (definition 6), 9-10 (requests 13).[2]

After MDL Plaintiffs' counsel got involved, a series of meet and confers were scheduled between April and July 2024 among NIH counsel, counsel for Revlon, and MDL Plaintiffs' counsel. Through this process, NIH agreed to produce certain data from the requested NIH studies, as well as correspondence, if any, with MDL Plaintiffs' counsel, based on a list provided by Revlon. Revlon also agreed to narrow its request to not seek communications with individual Plaintiffs or individual health questionnaires of women (including, presumably, thousands of non-party women who participate in the critically important, longitudinal health studies at the heart of NIH's scientific conclusions), although it did not explain how NIH could avoid the burden of searching work papers to be sure such individual patient information was not produced.

NIH produced study data on August 28, 2024. Although NIH counsel told Revlon counsel during meet and confers that it was unaware of any communications with MDL Plaintiffs' counsel about the studies, NIH counsel confirmed he would conduct the requested search. The only

---

[2] The subpoena appears to assume that NIH knows the identities of each of the over 9000 Plaintiffs in the MDL.

2954292.6

communications NIH counsel then located were from the MDL Plaintiffs' counsel who participated in the 2024 meet and confer about the scope of the NIH subpoena – years after the NIH studies were completed and published.[3] The communications from Plaintiffs' counsel included her requests for NIH counsel's availability to schedule a group call, confirmation that MDL Plaintiffs' counsel objected to the subpoena, and responses to NIH inquiries seeking a copy of the subpoena and a summary of the MDL proceedings. *See* Ex. C (MDL Plaintiffs' counsel emails produced by NIH). It is Plaintiffs' understanding that this completes the production of counsel communications.

Notwithstanding the above timeline, and the impending MDL document discovery cutoff, Revlon waited over five months after receiving the NIH data in August 2024 to move to compel on the documents that NIH did not willingly produce due to its standing objections. Revlon's timing is also notable in that Revlon seemingly waited until NIH entered its current triage mode as it adjusts to new leaders and administration priorities. Curiously, Revlon even waited until the NIH counsel responsible for this subpoena retired at the end of 2024 (as he informed counsel many months ago that he would), leaving the issues raised during the lengthy 2024 meet and confer process to be sorted by a new NIH lawyer with a long learning curve on what has transpired to date. The predictable delays this may cause are all self-inflicted by Revlon.

### III. ARGUMENT

#### A. Plaintiffs Have Standing To Oppose The Motion

Revlon's subpoena requests "[a]ll correspondence between the NIH and/or the authors of the 2021 White et al. study/2022 Chang et al. study with any Plaintiff(s) in the Hair Relaxer MDL and/or counsel of record for any such Plaintiff(s)." *See* Ex. A at 12-13. While Revlon withdrew

---

[3] In order to understand the relevance and potentially reduce the burden on NIH, Plaintiffs' counsel sought clarity from Revlon on whether it really wanted NIH production of *post-study* Plaintiffs' counsel emails, including during the 2024 meet and confer on the subpoena. Revlon insisted on the production of this irrelevant information.

its requests for communications with individual Plaintiffs, some of whom likely participated in this research, these requests seek materials involving MDL Plaintiffs' counsel and investigation into their claims and convey standing to said Plaintiffs. *See, e.g.*, *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."); *In re Watts Coordinated Pretrial Proc.*, No. 19 C 1717, 2024 WL 3470596, at *2-3 (N.D. Ill. July 19, 2024) (reaffirming holding is current law); *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.,* No. 22 C 5757, 2023 WL 2974083, at *2 (N.D. Ill. Apr. 17, 2023) (same).

### B. Revlon Imposes An Undue Burden On A Non-Party To Produce Irrelevant Information, To Review And Redact For Private Patient Information, And Chills The Independent Scientific Process

Revlon seeks significantly more than the results of the Chang and White studies. It seeks non-public drafts and data collected but not even used. *See* Ex. A, at 12-13. The material sought invades the scientific process and potentially the rights of over 50,000 women who completed private medical questionnaires and spoke openly with NIH to advance scientific knowledge and whose information forms the basis of the working papers. *See What is the Sister Study?* The Sister Study, https://sisterstudy.niehs.nih.gov/English/about.htm (last visited Feb. 2, 2025) (describing participants in Sister Study). None of these women consented to their individual information being used in litigation here. In addition, the scientists working at NIH have engaged in the peer reviewed scientific process with no expectation of being drawn into litigation about their work. The additional materials Revlon now seeks are wholly disproportionate to the needs of this case and have significant ramifications for the integrity of scientific research and the willingness of individuals to participate.

Federal Rule of Civil Procedure 45 protects an entity from compliance with a subpoena if it "requires disclosure of privileged or other protected matter," or "subjects a person to undue

2954292.6

burden." Fed. R. Civ. P. 45(d)(3)(iii) & (iv). Because the studies and the underlying data are publicly available and NIH has already produced data on which the studies rely, relevant material needed to understand the basis for the conclusions has been produced and the additional material sought would subject NIH to patently unnecessary discovery burdens, including potentially line by line review and redactions of individual patient information from work papers. Fed. R. Civ. P. 26(b).[4]

Courts in this District and Circuit have recognized that requesting otherwise available information from nonparties can constitute an undue burden. *See Charvat v. Travel Servs.*, No. 12 CV 5746, 2015 WL 76901, at *2 (N.D. Ill. Jan. 5, 2015) (subpoena on nonparty quashed *sua sponte* where the information was "reviewed by the district court prior to its approval of [a] settlement and is publically available"); *see also Colborn v. Netflix Inc.*, 608 F. Supp. 3d 736, 741-42 (E.D. Wis. 2022) (acknowledging there would be "good cause" to quash a subpoena to a third-party if only publicly available copies of the third-party's book were sought, but denying motion as subpoena also sought drafts of the book and private communications); *Flynn v. FCA U.S. LLC*, No. 16-MC-00078 DGW, 2016 WL 6996181, at *3 (S.D. Ill. Nov. 30, 2016) (subpoena to non-party quashed partially because "Plaintiffs acknowledge that some, if not most, of the material sought from [the non-party] is publicly available."). Although Revlon may not agree with the studies, it has sufficient information to understand and verify the conclusions the studies reach.

In addition, while Revlon appears to have recognized that its original subpoena seeking private patient information was overbroad, it now attempts to shift the burden to NIH to ensure that work papers do not include private information. This scrubbing project is disproportionately

---

[4] By listing the URLs for the Chang and White studies described in the Master Complaint in the subpoena, Revlon acknowledges that the studies are publicly available. *See* Ex. A, at 7 (definitions 1-2).

8

2954292.6

burdensome for third party NIH, and the threat to patient privacy if not done thoroughly is substantial. *See Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12 CV 8309, 2014 WL 972154, *5-6 (N.D. Ill. Mar. 11, 2014) (in granting a motion to quash, the court stated that defendant "has not disputed that Illinois's physician-patient privilege attaches to [Plaintiff's] medical records . . . nor has it shown that she waived that privilege"); *see also Treadwell v. Salgado*, No. 19 CV 3179, 2021 WL 11725352, at *4 (N.D. Ill. Dec. 14, 2021) (stating that since inmates "would not reasonably expect . . . the details of their recorded phone calls would be handed over to civil litigants," the details may be protected by Rule 45); *cf. Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *3 (N.D. Ind. Oct. 6, 2011) (under a Rule 45 motion to quash analysis, "[i]nternet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address—as they have already conveyed such information to their ISPs").

Beyond these significant issues, Revlon's request for drafts and work papers clearly invade the peer review and scientific process and are chilling to the significant public service such research provides. Unfortunately, this is not the first time MDL tort defendants have deployed this playbook. As an extreme example of the mischief that can occur, just last year a group of independent scientists were sued by MDL tort defendants (Case No. MDL 2738 (D.N.J.) ("Talc MDL")) in the cases *LTL Management LLC v. Moline* and *LTL Management LLC v. Emory* after their findings were scrutinized in discovery. *See* Dietrich Knauth, *Johnson & Johnson sues researchers who linked talc to cancer*, REUTERS (July 13, 2023, 12:50 PM), https://www.reuters.com/legal/litigation/johnson-johnson-sues-researchers-who-linked-talc-cancer-2023-07-13/; Compl. at 1, *LTL Management LLC v. Moline*, No. 23-cv-02990 (D.N.J. May 31, 2023) ("This is an action to recover for the knowing and repeated disparagement of Johnson's

9

2954292.6

Baby Powder and Shower to Shower by Dr. Jacqueline Moline."); Compl. at 1, *LTL Management LLC v. Emory*, No. 23-cv-03649 (D.N.J. July 7, 2023) ("This is an action to recover for the knowing disparagement of Plaintiff's brand name products Johnson's Baby Powder and Shower to Shower by Drs. Theresa Emory, Richard Kradin, and John Maddox."). If this is permitted to become the new normal, the chilling effect on the development and publication of public health research cannot be overstated.[5] The Court must not permit this abuse of the litigation process to undermine independent science.

### C. There Is No Basis To Order NIH To Produce Plaintiffs' Counsel Communications It Has Already Produced Or Any Post-Study Emails.

As described above, NIH agreed to produce communications, if any, with MDL Plaintiffs' counsel. After a search, NIH produced the wholly irrelevant emails about the 2024 subpoena meet and confer that are attached as Exhibit C. Revlon's reference to those emails is misleading at best, in suggesting they are somehow probative of anything. *See* Dkt. 1034 at 9, n. 2 (Mot.). They are not. Moreover, just because NIH did not produce emails with MDL Plaintiffs' counsel containing anything relevant does not mean, as Revlon asserts, that such relevant emails must still exist. To the contrary, the absence of a production indicates the absence of a dispute. *See* Dkt. 607 at 86:2-17 (transcript of April 11, 2024 status conference) (Rowland, J.) (rejecting Plaintiffs' request to compel documents where Plaintiffs alleged Defendants' production volume was *per se* inadequate, with Court noting: "I will say this. I don't want motions to compel where you say…'We know they must have more documents.' I can't have a motion to compel like that. . . . I can't resolve motions

---

[5] Notably, while suing the independent scientists who exposed a link between talc products and cancer, the defendant Johnson & Johnson also attempted to resolve tens of thousands of cancer cases for $8.9 billion. *See* Dietrich Knauth & Mike Spector, *J&J unit files for second bankruptcy to pursue $8.9 billion talc settlement*, REUTERS (Apr. 5, 2023, 7:47 AM), https://www.reuters.com/legal/jj-unit-goes-bankrupt-second-time-pursue-89-bln-talc-settlement-2023-04-04/.

when it's a 'We think they should have more.' There's nothing I can say about that."). This extremely burdensome (and irrelevant) fishing expedition is not appropriate.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Revlon's motion to compel be denied.

Dated: April 22, 2025

Respectfully Submitted,

/s/ Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Tel.: 312-261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse
**DICELLO LEVITT LLC**
505 20th Street North - Suite 1500
Birmingham, Alabama 35203
Tel.: 312-214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
Tel.: 401-457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
Tel.:212-566-7500
Email: mlondon@douglasandlondon.com

11

> *Plaintiffs' Co-Lead Counsel*
>
> Benjamin L. Crump
> **BEN CRUMP LAW FIRM**
> 122 South Calhoun Street
> Tallahassee, Florida 32301
> Tel.: 850-224-2020
> Email: ben@bencrump.com
>
> *Plaintiffs' Co-Lead Counsel*