## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 <br><br> Master Docket No. 23-cv-0818 <br><br> Judge Mary M. Rowland |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant L'Oréal S.A.'s ("Defendant") Motion to Dismiss the Master Long Form Complaint Against L'Oréal S.A. ("LSA Complaint") and all claims asserted by Plaintiff Lillian Clemons ("Plaintiff"), including her Second Amended Short Form Complaint ("Second Amended SFC") (Clemons Dkt [7]), under Rule 12(b)(2). [1] [978]. For the reasons stated herein, L'Oréal S.A.'s motion is granted.

### I.    Background[2]

The factual allegations from the Master Long Form Complaint brought against L'Oréal S.A. ([899], ("Master Complaint")) and Short Form Complaint ([175-1], ("SFC")) are accepted as true for the purposes of the motion to dismiss. *See Lax v.*

---

[1] L'Oréal S.A. also moved to dismiss pursuant to Rules 4 and 12(b)(5). Defendant argued Plaintiff never properly served the Master Long Form Complaint, the LSA Complaint, or the Second Amended SFC, and therefore, she failed to perfect service. [978-1] at 14–16. Plaintiff countered that L'Oréal S.A. was properly served, or at least had notice of the claims against it. [1038] at 27–30. In any event, it is undisputed that any defects in service are now cured and Defendant's motion is moot as to service. [1103] at 6.

[2] The Court incorporates the Background section of its Memorandum Opinion and Order [291] granting in part and denying in part Defendants' Joint Motion to Dismiss and Defendant McBride's Motion to Dismiss Plaintiffs' Master Long Form Personal Injury Complaint [106].

1

*Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).[3]

### a. Procedural Background

On May 15, 2023, Plaintiffs filed a Master Long Form Complaint against numerous other defendants, including L'Oréal USA but not L'Oréal S.A., in this multidistrict litigation. [106]. Plaintiffs alleged they suffered personal injuries and death as a result of their use of defective hair relaxers designed, manufactured, sold, distributed, and marketed by the defendants named in the May 15, 2023 Master Long Form Complaint. *Id.* ¶¶ 5, 10.

On July 2, 2024, Plaintiff Clemons served L'Oréal S.A. with her Amended Short Form Complaint ("Amended SFC") through the Hague Convention.[4] [978-1] at 2. The Amended SFC designated the Eastern District of Texas as the original venue and identified L'Oréal S.A. as a defendant. *See* Amended SFC ¶ 2, *Clemons v. AFAM Concept, Inc.*, No. 1:24-cv-02526, (N.D. Ill. Mar. 29, 2024). On October 18, 2024, Plaintiff filed the LSA Complaint, which set forth specific allegations against L'Oréal S.A. while asserting the same surviving legal claims from the May 15, 2023 Master Long Form Complaint, and with a Second Amended SFC, which incorporated by reference the LSA Complaint. *See* [889]; Second Am. SFC ¶ 4, *Clemons v. AFAM Concept, Inc.*, No. 1:24-cv-2526 (N.D. Ill. Oct. 18, 2024).

---

[3] The Court adopted the short form complaint on August 3, 2023. Pursuant to the Court's Case Management Order ("CMO") No. 7, "[f]or each action in the MDL, subject to this Order, the Master [Long Form] Complaint, together with the Short Form Complaint shall be deemed the operative complaint." [175] at 1.

[4] L'Oréal S.A. has since been served by additional individual plaintiffs. *See* Supplemental Declaration of Theodore Tsekerides, dated Feb. 21, 2025 ("Suppl. Tsekerides Decl.") ¶ 5.

### b. Factual Background

L'Oréal S.A. is a French company with its headquarters and principal place of business in France. [978-16] Declaration of Damien Levy dated Dec. 6, 2024, ("Levy Decl.") at ¶ 2. L'Oréal S.A. is the corporate parent of L'Oréal USA, Inc. ("L'Oréal USA"), a business incorporated in Delaware and headquartered in New York. *Id.* L'Oréal USA in turn is the parent company of Defendant L'Oréal USA Products, Inc., which is also incorporated in Delaware. *Id.* ¶ 3. SoftSheen-Carson LLC was a New York limited liability company and a subsidiary of L'Oréal USA, Inc. *Id.* ¶ 3.

Before the Court now is L'Oréal S.A.'s motion to dismiss the complaint in its entirety for lack of personal jurisdiction. [978]. Plaintiff contends L'Oréal S.A. knew, expected, and took action to enable its U.S. subsidiaries to market and sell L'Oréal hair relaxer products in Illinois, Texas, and across the United States. In support of her position, Plaintiff principally relies on publicly available documents and information gleaned from ongoing discovery. *See generally* [1038]. L'Oréal S.A. denies these allegations and offers four declarations to show L'Oréal S.A. does not have contacts with Illinois, Texas, or any other state. *See* [978-2], [978-16], [1103-1], [1103-4].

## II.    Standard

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff need not allege facts concerning personal jurisdiction in her complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for

3

lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

When a court rules on a Rule 12(b)(2) motion based upon written submissions without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Curry, LLC*, 949 F.3d at 392–93; *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393. Further, where a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Rsch. Found.*, 338 F.3d at 783. If the plaintiff "fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020 WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). "Under the prima facie standard, the plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Purdue Rsch. Found.*, 338 F.3d at 783.

A federal court sitting in diversity has personal jurisdiction over a defendant if the state in which the court sits would have such jurisdiction. *Kipp v. Ski Enter.*

4

*Co. of Wis.*, 783 F.3d 365, 697 (7th Cir. 2015). "In an MDL proceeding, the MDL court also has jurisdiction over cases transferred to it under 28 U.S.C. § 1407 if the originating, transferor courts would have jurisdiction." *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (citing *In re FMC Corp. Patent Litig.,* 422 F. Supp. 1163, 1165 (Jud. Pan. Mult. Lit. 1976)). Both Illinois, the forum state, and Texas, the transferor state, have long-arm statutes that grant jurisdiction coextensive with the U.S. Constitution's Due Process Clause. *See Kipp*, 783 F.3d at 697 (Illinois); *Sangha v. Navig8 ShipMgmt. Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (Texas). Accordingly, the state and federal inquires merge and personal jurisdiction exists if it comports with federal due process. *Id.* On the federal Due Process inquiry, "the transferee court applies the law of the circuit in which it is located to issues of federal law." *In re Sears, Roebuck & Co.*, 2006 WL 1517779, at *2 n.1 (N.D. Ill. May 24, 2006), *aff'd sub nom.*, *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570 (7th Cir. 2006).

## III. Analysis

L'Oréal S.A. moves to dismiss the LSA Complaint and all of Plaintiff's claims. Defendant argues the Court lacks personal jurisdiction over L'Oréal S.A. in connection with the claims asserted in the LSA Complaint and Plaintiff's Second Amended SFC. Absent consent, courts recognize two types of personal jurisdiction: general or specific jurisdiction. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 722 (7th Cir. 2024). Plaintiff concedes the transferor court and this Court lack general jurisdiction over L'Oréal S.A.. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.

2010) ("Failure to respond to an argument . . . results in waiver."); *see also* [1103] at 4 (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.")). Thus, the only issue before this Court is whether specific jurisdiction exists.

Specific jurisdiction over an out-of-state defendant "depends on an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). A plaintiff must prove three "essential requirements" to establish specific jurisdiction: (1) "the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state," (2) the "alleged injury must have arisen out of the defendant's forum-related activities," and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (citations omitted).

### a. Purposeful Availment

A defendant must have "certain minimum contacts" with the forum state to establish that the defendant purposefully availed itself of conducting business in the forum state or purposefully directed its activities at the state. *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *see also J.*

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("[I]t is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice." (internal quotations omitted)). This requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," *Burger King v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (cleaned up), and protects defendants from the burden of litigating in a distant, inconvenient forum, and to prevent states from reaching beyond the limits of their sovereignty. *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (citing *Int'l Shoe*, 326 U.S. at 316).

Here Plaintiff asserts personal jurisdiction is established under the stream-of-commerce doctrine. [1038] at 9–16. Under the stream-of-commerce doctrine, jurisdiction may be appropriate over a foreign corporation if the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). Jurisdiction under this theory arises "from the efforts of the manufacturer or distributor to serve . . . the market." *Id.* at 297.

The Seventh Circuit applies the broader "knowledge" version of the stream-of-commerce theory, as opposed to the "targeting" version. *B.D.*, 91 F.4th at 861 (comparing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring) *with Nicastro*, 564 U.S. at 880 (2011)). Under the knowledge version of the theory, a defendant's "awareness that the stream of commerce may or will

sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State," but "[a]s long as a participant in [the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 112, 117 (Brennan, J., concurring). The inquiry turns on the defendant's knowledge and expectations. *B.D.*, 91 F.4th at 862.

Plaintiff contends L'Oréal S.A. had the requisite knowledge and expectation that its hair relaxer products would be purchased and used in Illinois (or Texas or other individual plaintiff's state) and thus cannot claim surprise by a lawsuit in the forum. [1038] at 10–11. According to Plaintiff, L'Oréal S.A knew that its hair relaxer products reached Illinois or Texas or any other individual plaintiff's state, it expected its hair relaxer products would reach those states, and it made efforts to control distribution of its hair relaxer products. *Id.* at 10 (citing *B.D.*, 91 F.4th at 863). In support, Plaintiff alleges all L'Oréal hair relaxer products belong to L'Oréal S.A. regardless of where they are sold ([899] ¶¶ 16–25); L'Oréal S.A. owns the products' formulations, has secured the products' U.S. patents and regulatory approvals[5], and controls whether its U.S. subsidiaries are authorized to sell the hair relaxer products. (*id.* ¶¶ 16, 21, 25; [1038-2] (30(b)(6) Dep. Tr. of N. Yung-Hing) at 219:7–16); and a L'Oréal S.A. website advertises at least one of the at-issue hair relaxer brands ([899]

---

[5] Although Plaintiff alleges "L'Oréal S.A. worked with L'Oréal USA to apply for approvals from the U.S. Food and Drug Administration," ([899] ¶ 16), she also contends "[t]he law does not require cosmetic products or ingredients . . . to have FDA approval before they go to market." *Id.* ¶ 97. The FDA's website likewise explains that "[t]he law does *not* require . . . hair relaxers to be approved by FDA before they are sold in stores." [978-15]. Thus, Plaintiff's allegation appears to be unrelated to the hair relaxer products at-issue here.

¶ 16).

L'Oréal S.A. disagrees. In response, L'Oréal S.A. asserts the foundation of any stream-of-commerce theory is that the defendant itself must manufacture the relevant products and argues Plaintiff cannot establish that key element here. [1103] at 5–11. If true, this principle would insulate any non-manufacturing parent company from specific jurisdiction under the stream-of-commerce theory. But L'Oréal S.A. is incorrect. The stream-of-commerce theory applies to a non-manufacturing parent company when it significantly contributes to the placement of the at-issue product in the stream of commerce. *See, e.g., In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018) (stating "it cannot be [ ] that nonmanufacturing [parent corporations] categorically lie beyond the stream of commerce no matter the nature of their contributions," and finding personal jurisdiction where parent "significantly contributed to the product's placement into the stream of commerce").

However, to the extent Plaintiff argues that L'Oréal S.A. *itself* placed the hair relaxer products into the stream of commerce, that theory fails. Here, Plaintiff only alleges in a conclusory manner unsupported by evidence that L'Oréal S.A. itself places products in the stream of commerce by participating in the manufacturing, marketing, and sales of hair relaxer products in the United States, individually and with its USA subsidiaries. *See* [899] ¶¶ 1, 24. L'Oréal S.A. submitted a declaration from Damien Levy, the Chief Financial Officer of the Consumer Products Division for L'Oréal S.A., stating "L'Oréal S.A. has never manufactured hair relaxer products, or

component parts or ingredients used in any hair relaxer products, for sale in the United States" nor has L'Oréal S.A. "developed, tested, designed, assembled, manufactured, packaged, labeled, promoted, advertised, or prepared any hair relaxer products in the United States." Levy Decl. ¶ 8; *see also* [1103-3] Supplemental Declaration of Damien Levy dated Feb. 20, 2025, ("Suppl. Levy Decl.") ¶¶ 4–5. Plaintiff does not present any new evidence to rebut Mr. Levy's declaration. Thus, the Court finds that Plaintiff has not shown that L'Oréal S.A. itself places infringing products into the stream of commerce. *See, e.g.*, *CAO Lighting, Inc. v. Signify N.V.*, 628 F. Supp. 3d 996, 1002 (C.D. Cal. 2022).

To the extent Plaintiff contends the French parent company injects hair relaxer products into the stream of commerce through control of the actions of its subsidiaries, this also fails.[6] Plaintiff asserts multiple grounds to show the hair relaxers sold by L'Oréal USA are L'Oréal S.A.'s products and are controlled by L'Oréal S.A.. None are availing. Plaintiff first relies on statements in the 2023 L'Oréal Groupe Annual Report and related "investor website" to show L'Oréal S.A. expects "its products" to be sold to American women in the United States. [1038] at 11–12. But acknowledgements in these documents that "L'Oréal" operates a "specialised production site[]" in the U.S. or that "L'Oréal" launched a study to "get a better understanding of the biological, clinical and environmental factors that contribute to skin and hair health over time" that will be "carried out on several thousand American women (aged 18 to 70) from a wide range of ethnic and social backgrounds,

---

[6] Plaintiff contends "because this Court can base jurisdiction on the stream-of-commerce theory . . . it need not consider alter-ego or agency." [1038] at 10 n.8.

and with different skin and hair types" or that "L'Oréal" works with five U.S. suppliers certified as LGBT-Owned Businesses are insufficient to support a finding that L'Oréal S.A. operates in the United States and put the hair relaxer products into the stream of commerce. *Id.* at 11 n.9, 11.

Plaintiff overstates the representations in the Annual Report and its associated website. The documents do not say L'Oréal S.A. itself, as opposed to one of its subsidiaries, engaged in the summarized conduct much less specify that the products discussed in general terms are the hair relaxer products at issue here. To the contrary, the 2023 L'Oréal Groupe Annual Report covers the work of L'Oréal Groupe, which refers to "all of the entities and brands around the world that make up the L'Oréal brand." Levy Decl. ¶ 9; *see also* [978-2] Declaration of Theodore Tsekerides, dated Dec. 6, 2024 ("Tsekerides Decl.") ¶ 16. It follows that the L'Oréal Groupe's annual report discusses the work of L'Oréal USA, which is the entity L'Oréal S.A. asserts is responsible for operations, manufacturing, and sales of hair relaxers within the United States. Levy Decl. ¶¶ 7, 9; [1103-3] Suppl. Levy Decl. ¶¶ 3–4. Statements from annual reports such as these typically are not accepted to establish specific jurisdiction. *See Garner v. Bumble Inc.*, No. 3:21-CV-50457, 2023 WL 6065481, at *6 (N.D. Ill. Sept. 18, 2023) (finding no factual conflict between affidavit that the parent company is not involved in operating or marketing the product and statements in an annual report that the parent company and subsidiary operate the at-issue product); *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 867 (N.D. Ill. 1998) (finding that references in a corporation's annual report to "our

11

international marketing efforts" and "our marketing position" did not overcome the parent and subsidiary's separate identities). So too here.

Next, Plaintiff relies on evidence that L'Oréal S.A. owns the hair relaxer products' formulations, secured patents for the products, and licenses its intellectual property regarding the hair relaxers to ensure the products could be sold in the U.S. to establish the hair relaxers sold by L'Oréal USA are L'Oréal S.A.'s products. [1038] at 10–11, 14–15. As an initial matter, that L'Oréal S.A. may have obtained patents in the United States alone does not subject the company to personal jurisdiction anywhere across the county. *Telcordia Techs., Inc. v. Alcatel S.A.*, No. CIV.A. 04-874 GMS, 2005 WL 1268061, at *7 (D. Del. May 27, 2005) ("[o]wnership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia."); *cf. SRAM Corp. v. Sunrace Roots Enter. Co.*, 390 F. Supp. 2d 781, 782 (N.D. Ill. 2005) (finding personal jurisdiction on the basis of obtaining a patent in the context of a patent infringement lawsuit).

Likewise, "[t]he mere existence of a licensor-licensee relationship, without more, is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction." *Eco Pro Painting, LLC v. Sherwin–Williams Co.,* 807 F.Supp.2d 732, 736–37 (N.D. Ill. 2011) (internal quotations omitted); *cf. Univ. of Mass. v. L'Oréal S.A.*, 36 F.4th 1374, 1385 (Fed. Cir. 2022) (permitting jurisdictional discovery based on evidence L'Oréal S.A. may have researched and developed products that it may license). As a result, the Court looks to the degree of

control the licensor exercises over the licensee, particularly the licensor's ability to regulate their licensee's operations or sales. *Id.*; *see e.g.*, *Meta/Balance, Inc. v. Health Ventures Partners,* No. 03 C 50497, 2004 WL 1345097, at *2 (N.D. Ill. June 14, 2004) (jurisdiction not conferred over licensor where it "retained little or no control over how [the mark] was used" and did not have the ability to regulate the licensee's operations or sales activities).

Here, the evidence demonstrates that L'Oréal S.A. does not exercise control over L'Oréal USA's sales activities or operations, including related to the hair relaxer products, which are left to L'Oréal USA's discretion. For purposes of assessing personal jurisdiction, corporate parents and subsidiaries are treated as separate entities. *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012). Only when the degree of control is so pervasive that corporate formalities are not observed may the Court also impute the jurisdictional contacts of the controlled entities to the foreign defendant to exercise jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000); *see also Purdue Rsch. Found.*, 338 F.3d at 788 n.17 ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent"—but that does not establish that the corporate parent exerts the "unusually high degree of control" necessary to establish jurisdiction over the parent based on the conduct of its subsidiaries).

Indeed, L'Oréal USA is wholly owned by L'Oréal S.A. and the entities share some leadership personnel. [899] ¶¶ 14–15. According to L'Oréal S.A.'s 2023

13

Universal Registration Document, none of the directors on L'Oréal S.A.'s 16-person board are American or currently work for L'Oréal USA. [978-12] at 13. And L'Oréal USA's CEO is one of 19 members serving on L'Oréal S.A.'s executive committee, which is comprised of individuals responsible for separate regions or divisions. *Id.* at 15. But, "[p]arents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations," *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995), and commingling of leadership generally is insufficient to establish control of a subsidiary without any evidence that those shared officers used their "positions to exploit and *de facto* merge the companies' relationship." *Simplot India LLC v. Himalaya Food Int'l Ltd.*, 2024 WL 1136791, at *8 (D.N.J. Mar. 15, 2024); *see e.g.*, *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017) (describing shared leadership as a "tenuous connection" and "minor overlap" that was not dispositive of agency of wholly owned subsidiary). Such evidence is absent here.

Plaintiff alleges L'Oréal S.A. manages the financial tracking of hair relaxer products sold in the United States. [899] ¶ 16. L'Oréal S.A. acknowledges that it maintains certain records regarding its subsidiaries' finances and sales, but asserts that L'Oréal USA "maintains and is responsible for its own business records, sales records, . . . records of its customers' information," and "financial records," "prepare[s] [its] own financial statements," and "file[s] separate tax returns." Levy Decl. ¶ 7, 10. Thus, Plaintiff's claim does not establish a close or controlling relationship between L'Oréal S.A. and its subsidiaries. *See Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*,

14

406 F. Supp. 3d 585, 596 (E.D. Tex. 2019) ("parent company setting financial goals or requiring financial reporting from its subsidiaries does not present a *prima facie* case that the subsidiary is the parent company's alter ego"); *Catalina Mktg. Int'l, Inc. v. Coolsavings.Com, Inc.*, 2003 WL 21542491, at *5 (N.D. Ill. July 3, 2003) (finding sharing information related to and providing oversight of a subsidiary's budgeting process are common practices that do not demonstrate unusual control over a subsidiary). The same result follows for Plaintiff's claim that L'Oréal S.A. exchanges information and guidance with its American entities via a shared intranet to enable the Research, Innovation, and Technology Department to implement a monitoring system to track cosmetic's health. [899] ¶¶ 17–19; [1038] at 5; *Catalina Mktg.*, 2003 WL 21542491, at *5.

Plaintiff also relies on various L'Oréal websites and their terms to support personal jurisdiction. [899] ¶¶ 16, 18–19; [1038] at 3–4. This reliance is misplaced, both because Plaintiff misunderstands the content, and it does not provide a basis for personal jurisdiction. Contrary to Plaintiff's allegations, www.loreal.com/en/usa is a page on the L'Oréal Group's website, not L'Oréal S.A.. The page provides a high-level summary of various L'Oréal-related entities and brands (including Dark & Lovely), but notably, the webpages do not sell any hair relaxer products. *See* Tsekerides Decl. ¶¶ 7, 8. Plaintiff's remaining website allegations are similarly unavailing. Tsekerides Decl. ¶ 12 (explaining the SoftSheen-Carson website, which specifically sells hair relaxer products, has Terms of Use that make clear that the site is owned and operated by L'Oréal USA S/D, Inc.). In any event, simply running a website that is

accessible in all 50 states is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004); *see, e.g.*, *Nespresso USA*, 263 F. Supp. 3d at 505 (finding insufficient evidence "for the agency theory" of personal jurisdiction despite allegations that a French parent corporation "control[led] the [subsidiary's] websites").

Finally, Plaintiff's allegations regarding L'Oréal S.A.'s involvement in this litigation are lacking. L'Oréal S.A. has supplied historical documents relevant to this litigation and responded to discovery, including, as Plaintiff alleges, answering interrogatories and preparing L'Oréal USA's corporate witness for a Rule 30(b)(6) deposition. [899] ¶ 20. This Court previously found "L'Oréal USA and L'Oréal S.A. have a close corporate relationship" for purposes of Rule 34, but now it must assess the relationship in the context of personal jurisdiction. [353] at 7. Although "the factors considered in both situations are substantially the same, the standard for establishing 'control' for purposes of Rule 34 is much lower than the standard for establishing an "alter-ego" relationship. *Tillotson Corp. v. Top Glove Sdn. Bhd.*, 2007 WL 10025485, at *3 (N.D. Ga. May 14, 2007). Plaintiff has not made her *prima facie* case that L'Oréal S.A. has day-to-day control over L'Oréal USA based on its limited involvement in discovery.

Furthermore, the issuance of a press release regarding this MDL case is insufficient to establish personal jurisdiction because the statement cannot be attributed to L'Oréal S.A.. [899] at ¶ 20; [978-14]. The L'Oréal Groupe, not L'Oréal

16

S.A., issued the press release. *Id.* The L'Oréal Groupe refers to all of the entities that make up the L'Oréal brand, not any one particular entity. Levy Decl. ¶ 9. L'Oréal S.A. is a distinct legal entity and is not the same as L'Oréal Groupe. *Id.*

Contrary to Plaintiff's allegations, the unrebutted evidence is that L'Oréal S.A.'s "direct and indirect subsidiaries—including L'Oréal USA—operate as separate and independent entities that are operationally decentralized." Levy Decl. ¶ 5. L'Oréal S.A. maintains operational, management, and financial independence from its subsidiaries—including L'Oréal USA. *Id.* ¶¶ 2, 4. According to Mr. Levy, L'Oréal S.A. "neither directs nor controls L'Oréal USA's corporate strategy," and does not control its day-to-day operations. *Id.* ¶ 5. L'Oréal USA, and all other L'Oréal S.A. subsidiaries, "define the developments and strategies specific to their markets, make choices in terms of consumer targets and distribution channels, and market the brands they decide to sell in their markets." *Id.* Based on this sworn testimony, it is implausible to conclude L'Oréal USA can only sell hair relaxer products "through the express authorization of L'Oréal S.A." as Plaintiff pleads upon information and belief. [899] ¶ 21. Other courts have refused to attribute the contacts of L'Oréal USA to L'Oréal S.A. where unrebutted sworn testimony supported that corporate formalities between the parent and subsidiary are "rigorously observed." *See*, *e.g.*, *Glycobiosciences, Inc. v. Vichy Lab'ys, S.A.*, Civ. A. No. 22-1264 (BAH), 2023 WL 157322, at *3, 5 (D.D.C. Jan. 11, 2023); *Metricolor LLC v. L'Oréal S.A.*, 791 F. App'x 183, 191 (Fed. Cir. 2019).

Plaintiff's case law is distinguishable. For example, in *McAdams*, a South

17

Korean foreign parent company itself placed the products into the stream of commerce and exercised significant control over the distribution of the tractors it manufactured. *See* [1038] at 12. There, the parent company knew its tractors were sold through a subsidiary through authorized dealers and it knew the top authorized dealer of its tractors across North America was in the forum. *McAdams v. Daedong Indus. Co.*, 409 F. Supp. 3d 660, 669–70 (S.D. Ill. 2019). The foreign defendant sent its own employees from South Korea to the forum to fix tractors and provide advice to customers and authorized dealers in the forum. *Id.* Furthermore, the parent reimbursed repairs performed by authorized dealerships in the forum and directly shipped spare tractor parts it manufactured to a distribution center in the forum. *Id.* There are no comparable allegations or evidence regarding L'Oréal S.A's control of L'Oréal USA.

So too with *Greenville*. There the court found the parent company exercised an "unusually high degree of control over" and dominated the subsidiary. *City of Greenville v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 563 (S.D. Ill. 2011). For example, the subsidiary's board rarely met but decided most actions by consent to recommendations provided by higher reporting levels and the subsidiary's human resources functioned like a "monolithic corporation" with global HR orchestrating movement of managers. *Id.* at 563–64. Global managers exercised a high degree of control over the subsidiary's production too, including determining the amount of production at the plant, selecting the countries in which the product would be sold, deciding how much of the product would be sold, and even negotiating sales contracts

on behalf of the subsidiary. *Id.* at 564. There is no evidence of such a high degree of control here.

Considering the record in its entirety and assessing all evidence on the whole, Plaintiff has failed to show L'Oréal S.A. has sufficient minimum contacts in the forum. Hauling L'Oréal S.A. into court in Illinois or Texas (or any other state) would therefore violate due process.

### b. Forum-Related Activities

Plaintiff's claims rely on either L'Oréal S.A. placing the accused products into the stream of commerce itself, or L'Oréal S.A. controlling L'Oréal USA's placement of products into the stream of commerce. As described above, Plaintiff does not establish that L'Oréal S.A. itself places any product in the stream of commerce, nor does Plaintiff show that L'Oréal S.A. has control over its subsidiaries. For these reasons, the Court finds that Plaintiff's claims do not arise out of or relate to Defendant's activities in Illinois or Texas or any other state because there is no product sold there under L'Oréal S.A.'s direction.

### c. Fair Play and Substantial Justice

Any exercise of personal jurisdiction over L'Oréal S.A. in this case would also offend the considerations of fair play and substantial justice. The Supreme Court has cautioned that "[g]reat care and reserve should be exercised" when extending a court's reach into the international realm in light of "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi*, 480 U.S. at 114–15 (citation omitted). Here, the interests of the forum state and the interstate judicial system are not served by exercising jurisdiction over entities with no discernable link

to the claims pending before this Court. *See Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 701 (N.D. Ill. 2008).

### d.  Request for Jurisdictional Discovery

Plaintiff requests she be allowed to conduct jurisdictional discovery if the Court finds that she has not made out a *prima facie* case of personal jurisdiction. But a plaintiff must be able to establish a "colorable" showing of personal jurisdiction before discovery should be permitted. *See Rebel Hosp. LLC v. Rebel Hosp. LLC*, No. 21 C 5132, 2022 WL 797035, at \*6 (N.D. Ill. Mar. 16, 2022); *Seo v. H Mart Inc.*, No. 19 C 3248, 2020 WL 5547913, at \*4 (N.D. Ill. Sept. 16, 2020).[7] This is because jurisdictional discovery is intended for circumstances where the factual record is ambiguous or unclear on the issue, but where "lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted." *Medline Indus., Inc. v. Diversey, Inc.*, 2020 WL 5763637, at \*4 (N.D. Ill. Sept. 28, 2020). Plaintiff's request for jurisdictional discovery is denied because she has not made out a colorable case of personal jurisdiction over L'Oréal S.A. and does not identify any ambiguity or lack of clarity regarding the extent of L'Oréal S.A.'s suit-related contacts with the United States.

### <u>CONCLUSION</u>

For the stated reasons, L'Oréal S.A.'s Motion to Dismiss Under Rule 12(b)(2)

---

[7] District courts in the Seventh Circuit evaluating requests for jurisdictional discovery frequently rely on *Central States, Southeast and Southwest Areas Pension Fund*, which cites *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997), but adds the term "prima facie" to this standard without explanation. 230 F.3d at 946. Since a "prima facie" showing based on the written submissions is sufficient to establish personal jurisdiction, it seems illogical to apply this standard to a request for discovery. The Court will apply a "colorable" standard to requests for jurisdictional discovery.

for lack of personal jurisdiction [978] is granted. All claims against L'Oréal S.A. are dismissed.

E N T E R:

Dated: May 7, 2025

_____
MARY M. ROWLAND
United States District Judge