```
 1                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    IN RE HAIR RELAXER MARKETING,   ) MDL No. 3060
      SALES PRACTICES, AND PRODUCTS   ) Master Case No. 23 C 818
 4    LIABILITY LITIGATION            )
                                      )
                                      ) Chicago, Illinois
 5    This Document Relates to        ) May 29, 2025
      All Cases                       ) 1:06 p.m.
 6

 7        TRANSCRIPT OF PROCEEDINGS - CASE MANAGEMENT CONFERENCE
               BEFORE THE HONORABLE MARY M. ROWLAND
 8

 9    SPECIAL MASTER:       MAURA GROSSMAN LAW
                            BY:  PROFESSOR MAURA R. GROSSMAN (remote)
10                          Suite 1400, #233
                            50 Fountain Plaza
11                          Buffalo, New York 14202

12    APPEARANCES:

13    For Plaintiffs:

14                    Plaintiffs' Co-Lead Counsel:

15                            DiCELLO LEVITT LLC
                              BY:  MS. DIANDRA "FU" DEBROSSE
16                            10 N. Dearborn Street, 6th Floor
                              Chicago, Illinois 60602
17
                              MOTLEY RICE LLC
18                            BY:  MS. FIDELMA L. FITZPATRICK
                              40 Westminster Street, 5th Floor
19                            Providence, Rhode Island 02903

20                                  * * *

21                    Plaintiffs' Executive Committee:

22                            AYLSTOCK WITKIN KREIS & OVERHOLTZ PLLC
                              BY:  MS. JENNIFER M. HOEKSTRA (remote)
23                            17 E. Main Street, Suite 200
                              Pensacola, Florida 32502
24
                                    * * *
25
```

```
 1    APPEARANCES (Cont'd):

 2
                        ASHCRAFT & GEREL LLP
 3                      BY:  MR. PATRICK K. LYONS (remote)
                        1825 K Street NW, Suite 700
 4                      Washington, DC 20006

 5                      BEN CRUMP LAW PLLC
                        BY:  MS. GABRIELLE HIGGINS (remote)
 6                      614 S. Federal Highway
                        Fort Lauderdale, Florida 33301
 7
                        DiCELLO LEVITT LLC
 8                      BY:  MR. MARK M. ABRAMOWITZ
                        7556 Mentor Avenue
 9                      Mentor, Ohio 44060

10                      DOUGLAS & LONDON PC
                        BY:  MS. KRISTIN D. PADDEN
11                      59 Maiden Lane, 6th Floor
                        New York, New York 10038
12
                        ENVIRONMENTAL LITIGATION GROUP PC
13                      BY:  MR. DANIEL SNYDER (remote)
                             MR. JORDAN A. CADE (remote)
14                      2160 Highland Avenue
                        Birmingham, Alabama 35205
15
                        KLINE & SPECTER PC
16                      BY:  MS. SHERRELL L. DANDY (remote)
                        1525 Locust Street
17                      Philadelphia, Pennsylvania 19102

18                      MOTLEY RICE LLC
                        BY:  MS. TEMITOPE O. LEYIMU
19                           MS. CHELSEA L. MONROE
                             MS. LUCY BANKS SMITH
20                      28 Bridgeside Boulevard
                        Mount Pleasant, South Carolina 29464
21
                        PULASKI KHERKHER PLLC
22                      BY:  MS. KATHERINE L. CORNELL
                        2925 Richmond Avenue, Suite 1725
23                      Houston, Texas 77098

24                      WAGSTAFF & CARTMELL LLP
                        BY:  MS. VANESSA HARRIS GROSS
25                      4740 Grand Avenue, Suite 300
                        Kansas City, Missouri 64112
```

1       APPEARANCES (Cont'd):

2
                                WALLACE MILLER
3                               BY:  MR. MARK R. MILLER
                                150 N. Wacker Drive, Suite 1100
4                               Chicago, Illinois 60606

5

6       For Defendants:

7                               ARNOLD & PORTER KAYE SCHOLER LLP
                                BY:  MS. RHONDA R. TROTTER
8                               777 S. Figueroa Street, 44th Floor
                                Los Angeles, California 90008
9
                                ARNOLD & PORTER KAYE SCHOLER LLP
10                              BY:  MS. LORI BLAKE LESKIN
                                250 W. 55th Street
11                              New York, New York 10019

12                              BAKER & McKENZIE LLP
                                BY:  MS. COLLEEN E. BAIME
13                              300 E. Randolph Street, Suite 5000
                                Chicago, Illinois 60601
14
                                DINSMORE & SHOHL LLP
15                              BY:  MS. AUDRIANA RODRIGUEZ (remote)
                                200 S. Biscayne Boulevard, Suite 2401
16                              Miami, Florida 33131

17                              DINSMORE & SHOHL LLP
                                BY:  MR. NICHOLAS J. WOLFE
18                              222 W. Adams Street, Suite 3400
                                Chicago, Illinois 60606
19
                                ECKERT SEAMANS CHERIN & MELLOTT LLC
20                              BY:  MR. EDWARD P. ABBOT
                                275 Madison Avenue, 10th Floor
21                              New York, New York 10016

22

23

24

25

```
 1    APPEARANCES (Cont'd):

 2
                          ELLIS GEORGE CIPOLLONE
 3                          O'BRIEN ANNAGUEY LLP
                          BY:  MR. DENNIS S. ELLIS
 4                             MS. KATHERINE F. MURRAY (remote)
                               MS. SERLI POLATOGLU
 5                             MR. NOAH S. HELPERN
                               MS. ALICE H. GILBERT (remote)
 6                          2121 Avenue of the Stars, 30th Floor
                          Los Angeles, California 90067
 7
                          GOLDBERG SEGALLA
 8                          BY:  MS. ALEXANDRA R. PECORA
                          222 W. Adams Street, Suite 2250
 9                          Chicago, Illinois 60606

10                          GREENBERG TRAURIG LLP
                          BY:  MS. AKIESHA GILCRIST SAINVIL (remote)
11                          333 SE 2nd Avenue, Suite 4400
                          Miami, Florida 33131
12
                          LITCHFIELD CAVO LLP
13                          BY:  MR. KEVIN A. TITUS
                          303 W. Madison Street, Suite 300
14                          Chicago, Illinois 60606

15                          MARON MARVEL BRADLEY ANDERSON & TARDY LLC
                          BY:  MS. MELISSA M. FALLAH
16                             MR. ROBERT W. PETTI
                               MS. LESLIE A. FEDERER
17                          191 N. Wacker Drive, Suite 2950
                          Chicago, Illinois 60606
18
                          MARSH ATKINSON & BRANTLEY
19                          BY:  MS. EMILY D. ROBINSON (remote)
                          271 17th Street NW, Suite 1600
20                          Atlanta, Georgia 30363

21                          McGUIREWOODS LLP
                          BY:  MR. PATRICK P. CLYDER
22                          77 W. Wacker Drive, Suite 4100
                          Chicago, Illinois 60601
23
                          McGUIREWOODS LLP
24                          BY:  MS. NORIYA SHAHADAT
                          800 E. Canal Street
25                          Richmond, Virginia 23219
```

```
 1    APPEARANCES (Cont'd):

 2
                              SEGAL McCAMBRIDGE SINGER & MAHONEY
 3                            BY:  MR. PETER J. STRELITZ (remote)
                              100 Congress Avenue, Suite 800
 4                            Austin, Texas 78701

 5                            SEGAL McCAMBRIDGE SINGER & MAHONEY LTD.
                              BY:  MR. MITCHELL P. MORINEC (remote)
 6                            233 S. Wacker Drive, Suite 5500
                              Chicago, Illinois 60606
 7
                              SIDLEY AUSTIN LLP
 8                            BY:  MS. HEIDI LEVINE
                              787 Seventh Avenue
 9                            New York, New York 10019

10                            SIDLEY AUSTIN LLP
                              BY:  MS. AMANDA L. CRAWFORD-STEGER
11                                 MS. IMANI N. MAATUKA (remote)
                              2021 McKinney Avenue, Suite 2000
12                            Dallas, Texas 75201

13                            SIDLEY AUSTIN LLP
                              BY:  MS. HALLE E. ALITZ (remote)
14                            1001 Brickell Bay Drive, Suite 900
                              Miami, Florida 33131
15
                              WIEDNER & McAULIFFE LTD.
16                            BY:  MS. KRISTEN A. SCHANK
                                   MS. ANNA M. RICORDATI
17                                 MR. ANTHONY J. SASSAN (remote)
                                   MS. TOTIANA J. SUDDUTH (remote)
18                                 MS. LIDIA G. PATITUCCI (remote)
                              One N. Franklin Street, Suite 1900
19                            Chicago, Illinois 60606

20    Also Present:          MS. KATHARINE E. BARTON (remote)

21    Court Reporter:        LAURA RENKE, CSR, RDR, CRR
                              Official Court Reporter
22                            219 S. Dearborn Street, Room 1224
                              Chicago, Illinois 60604
23                            312.435.6053
                              laura_renke@ilnd.uscourts.gov
24
                              * * * * *
25              PROCEEDINGS REPORTED BY STENOTYPE
          TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1          (Proceedings heard in open court, in part via
2      videoconference and telephone:)
3              LAW CLERK:  All rise.
4              Calling Case No. 23 CV 818, *In re* Hair Relaxer
5  Marketing, Sales Practices, and Products Liability Litigation.
6              This court resumes in session.
7      (Call to order.)
8              THE COURT:  Hi, everyone.
9              MULTIPLE COUNSEL:  Good afternoon, your Honor.
10             THE COURT:  Everyone can be seated.
11             Did you have time for lunch?
12             MULTIPLE COUNSEL:  No, your Honor.
13             MS. TROTTER:  Unfortunately not, your Honor.
14             THE COURT:  I offered to push it back to 1:30.
15             MS. TROTTER:  The parties were ambitious, your Honor.
16             THE COURT:  It's Judge Jantz who is ambitious.  Puts
17  me to shame how hard she works.
18             Okay.  So I am following your report.  I have a few
19  things to add in myself.  Let's get in the docket.
20             All right.  So, first, everyone who is attending
21  remotely, please reach out to your designated contact lawyer if
22  you want your name to appear as having attended, and we'll make
23  sure that you appear in the transcript as having attended.
24             All right.  So the first item is bellwether update.  A
25  new item for us.  Who speaks to that?

1         MS. FITZPATRICK:  Good afternoon, your Honor.  Fidelma

2    Fitzpatrick on behalf of the plaintiffs.

3         THE COURT:  Good afternoon.

4         MS. BAIME:  Good afternoon, your Honor.  Colleen Baime

5    with Baker McKenzie on behalf of Namasté Laboratories and here

6    today for the joint defense group.

7         THE COURT:  How are you doing.

8         Okay.  So I see that defendants served out discovery.

9    I'm wondering if I could ask two things.

10        One is if I could -- I could do this myself, but I was

11   wondering if someone could be kind enough to give me a chart

12   that just -- I know the plaintiffs who are involved, but I just

13   thought it might be helpful to me to have the defendants that

14   are involved in each case.

15        MS. BAIME:  Of course.

16        MS. FITZPATRICK:  Okay.  Yes, your Honor.

17        THE COURT:  Maybe all defendants are involved in all

18   cases --

19        MS. BAIME:  No, your Honor.

20        THE COURT:  -- but I'm guessing that's not true.

21        MS. BAIME:  No.

22        THE COURT:  And then is there going to be kind of a

23   point person from each side that's involved in each case, or

24   will it be you two on all of the cases?  Or --

25        MS. BAIME:  Speaking for the defense group, your

1    Honor, for each of the 32 bellwethers, there is a designated

2    defendant who will be lead counsel taking that case through

3    pretrial.

4         THE COURT:  Okay.  That would be helpful for me to

5    know, not that -- I don't know that I'll ever rely on that, but

6    it might be helpful for me to know.

7         MS. FITZPATRICK:  It would be helpful for us to know

8    as well, your Honor, so we would know who is the appropriate

9    person to contact on the defendants as to a particular

10   defendant.  We will handle it, Mr. London, who is -- had to

11   leave early because it's his oldest daughter's prom tonight.

12        THE COURT:  Oh, fun.

13        MS. FITZPATRICK:  So he and I, in conjunction with

14   Ms. Debrosse, will be running the collective point.  And then

15   it will go to individual case attorneys as to their individual

16   cases as necessary.  So there's going to be a little bit of a

17   split on our side.

18        THE COURT:  So do you think if we set a date, you

19   could submit something either on the docket or even just to my

20   proposed order box if you don't think it's appropriate for the

21   docket?

22        MS. BAIME:  Absolutely, your Honor.  Defendants are

23   happy to pull something together by Wednesday of next week and

24   share it with plaintiffs for their review and additional

25   information to file --

1    MS. FITZPATRICK:  That would be great, your Honor.  We

2    can provide you then certainly with the PSC point person, but

3    also, if it's helpful, the individual case attorney.

4    THE COURT:  That would be great.

5    MS. FITZPATRICK:  Okay.

6    MS. BAIME:  And then, of course, the only -- of

7    course, if there's a specific issue that plaintiffs have with a

8    particular defendant, you know, we'll work out communications

9    to make sure coverage is correct.

10    THE COURT:  Okay.  So why don't we say that that will

11    come to my proposed order box by June 13th.  So that will give

12    you guys next week to kind of haggle back and forth about that.

13    Now, there was some issue about -- I don't know --

14    maybe setting a proposed -- a hearing, or I don't know what

15    exactly you were proposing because you were vague.

16    MS. BAIME:  Yes.

17    THE COURT:  So what are you thinking?

18    MS. BAIME:  Yes, your Honor.  We did -- the defense --

19    the individual defendants named in the 32 bellwethers did serve

20    discovery.

21    THE COURT:  Right.

22    MS. BAIME:  So if there were four defendants in a

23    particular case, those four defendants served joint discovery

24    on plaintiffs.  If there were eight, then eight defendants

25    served on the other plaintiff.

1           And really what we were hoping is -- I agree it was

2    somewhat vague.  But we do want to continue to move these

3    matters forward.  We, you know, obviously just spent several

4    hours with Magistrate Judge Jantz where there's been lots of

5    talk about looming deadlines and getting through and making

6    sure we stick to the schedule.

7           And our concern was if we just have multiple

8    meet-and-confers to the extent global issues on discovery come

9    up that we're going to run the clock on some things.

10          We don't have any specific issues to raise with your

11   Honor.  The hope was that you would just be open to if there is

12   an issue that arises and we believe it would be timely to get

13   it in front of you on an interim basis that we could make that

14   request of the Court.

15          THE COURT:  So before I -- I don't know if you're

16   objecting to that or you don't have any thoughts about it or --

17   but what I -- I would like to -- I know that I've relied on

18   Judge Jantz to take the bulk of the -- sort of the overarching

19   discovery, and I've sort of kept the plaintiff fact sheet thing

20   moving.

21          I would like to stay involved in the bellwether

22   discovery.  I don't know how to carve out these days because I

23   don't know who's who in terms of how you're handling it.  But

24   I'm wondering if it would make sense for us to have the

25   Thursday mornings, although I know you're with Judge Jantz

1   then, with me for bellwethers because my Wednesdays are, you

2   know, the court call and sometimes the motions to withdraw.  So

3   my Wednesdays are kind of busy.

4          I hate to keep you here until Friday, although I could

5   do Fridays.  But -- and then we could say, okay.  Next -- you

6   know, in June on Thursday morning we need to do bellwethers, or

7   June we don't need to do that, but July, the Thursday of July,

8   we need to do a bellwether meeting.  And then we would just

9   have that time -- I would know to keep that time free.  You

10  guys would know that I'm here, and we would -- you wouldn't

11  necessarily have to file motions.

12         I do not want to have arguments about what's in a

13  status report and what's not in a status report and the purpose

14  of a status report.  I don't want to hear anything about that.

15         MS. BAIME:  Understood.

16         THE COURT:  But we could have that time just set

17  aside.  But I don't know if you need to be in Judge Jantz's

18  room and if it's overlap of the same people who would need to

19  be in Judge Jantz's room.  So maybe we don't know the answer to

20  that today.

21         MS. FITZPATRICK:  It will for your Honor -- for the

22  plaintiffs.  It will be some overlap.

23         I don't have it on the top of my head.  But there

24  isn't a court call every month going forward.  So maybe we

25  could take a look and figure out what may be workable.  It may

1    also be that on our Thursday afternoons, if they're relatively

2    short, you know, we can work that in too.

3              For what we have right now, we did not get served with

4    the discovery until May 21st.  Our responses aren't till

5    June --

6              THE COURT:  Right.

7              MS. FITZPATRICK:  -- 20th.  There's just not enough

8    time to do that for June.  But we wouldn't be opposed,

9    certainly, to whatever your Honor felt was the easiest to

10   schedule.

11             MS. BAIME:  Yeah, if we could stick with Thursdays.  I

12   agree that probably the morning is going to overlap with the

13   discovery conference before Judge Jantz.  That will be

14   difficult for the parties.

15             But Wednesdays also pose an issue for us because we

16   are typically -- again, recognizing there are travel schedules,

17   we are typically before the state court on Wednesday --

18             THE COURT:  Okay.

19             MS. BAIME:  -- before the federal court conferences.

20             THE COURT:  Okay.

21             MS. BAIME:  So that would be difficult for us.  But

22   Thursday, absolutely.

23             You know, one of the things, your Honor -- and, again,

24   hopefully this isn't the case.  But -- so we didn't serve it

25   till the 21st.  Understood that the responses are due when the

1    responses are due.

2          You know, we're trying to anticipate concerns with are

3    we going to get just objections.  You know, can we try to move

4    things forward so we're not getting a bunch of answers that are

5    just objections rather than giving us responsive information.

6          If there's a global -- you know, we are within for one

7    defendant what the number of interrogatories would be allowed.

8    It's our first set.  We anticipate there will be more.  If

9    there's going to be an argument that somehow it's too many,

10   we'd like to, you know, front-load that --

11         THE COURT:  Yeah.

12         MS. BAIME:  -- if they anticipate significant -- or

13   not even significant, but global issues with the requests that

14   we've made.

15         THE COURT:  Okay.  So let me say a couple of things.

16   Maybe one thing we should plan on is just meeting, you know,

17   virtually so you don't have -- I don't need to see you all.  I

18   know you, feel like I know you well.  But we could do it

19   virtually.

20         And maybe we do it, you know, on Fridays.  I know

21   people -- brain is kind of mushy, but maybe we do it on Fridays

22   and we have less people attending and we just get the people

23   who we really need to talk to because I'm pretty jammed on

24   Mondays and Tuesdays because, you know, I'm trying to keep

25   Thursdays and Wednesdays open for you in that week.

1      Or maybe we do it a separate week.  I don't know.  But

2   I like my hair week all in one week.

3      MS. BAIME:  Hair week.

4      THE COURT:  But I am going to say this.  I am going to

5   be so disappointed and bordering on furious if I see only

6   objections because we are too far into this case to object.

7   You can object.  You probably should object.  It's your

8   obligation to object.  You're zealous advocates.  But we have

9   to get to the substance.

10      So, please.  I don't think that I can order you not to

11   just object, although if I can, I am ordering that.  I'm not

12   sure if I can do that.  I don't know if any -- if that's been

13   litigated.  But I do not want objections across the board.  So

14   I don't understand lawyers who do that and then complain about

15   the cost of litigation.

16      But it's perfectly fine to say, "We object for all

17   these gazillion reasons.  Here's our response."  You all are so

18   sophisticated.  You know that.

19      But the idea that you would object to all the

20   questions and then we would put another 30 days on to get to

21   the substance, we're not -- this is not a new case.  We've

22   already been through fact sheets.  These plaintiffs know their

23   lawyers.  Maybe some of you are getting to know them.  I don't

24   know if they're all from your guys's cases or if some of them

25   come from other individual plaintiffs' lawyers.

1    But I'm going to be -- like, steam is going to be

2    coming out of my ears if I'm seeing a motion to compel and

3    there are objections across the board.  It's going to really

4    drive me crazy.  So do not do that.

5         MS. FITZPATRICK:  Your Honor --

6         MS. BAIME:  And we understand goose/gander very well,

7    your Honor.

8         MS. FITZPATRICK:  Your Honor, may I -- and I hear you.

9         THE COURT:  Yeah.

10        MS. FITZPATRICK:  We have just received these.  We've

11   got case counsel we're working with.

12        I would ask that you suspend judgment on that.  I

13   understand that these will not be all of what -- however many

14   interrogatories will all get an objection.  But there may be

15   some that do.  And we will take your Honor's guidance under --

16   into account.  But I would ask that you suspend judgment on

17   that till you see particular questions and particular whatever

18   it is.

19        But we do not anticipate that as to all of the

20   interrogatories and document requests that all we're going to

21   do is object.  But there may be things in there that are

22   objectionable and problematic.

23        THE COURT:  Well --

24        MS. FITZPATRICK:  I'm just not -- I'm not there --

25        THE COURT:  Okay.

1      MS. FITZPATRICK:  -- far enough along.  I don't have

2  them long enough to be able to do all of that yet --

3      THE COURT:  Okay.

4      MS. FITZPATRICK:  -- to be able to tell you or the

5  defendants what those may be.

6      THE COURT:  Well, let's not spend any more time on it.

7  And that's why I said I probably can't order you not to file

8  any objections across the board.  But an objection that

9  something is overly broad is fair, and then the answer to

10  something more narrow is also reasonable, meaning we would

11  answer the question if it was this.  Here's our answer.  Here's

12  my answer.  I'm not answering the rest of this because it's way

13  too overbroad --

14      MS. FITZPATRICK:  Yes.

15      THE COURT:  -- and it's dumb and I'm not doing it.

16      But if you want to know what I did for the last five

17  years, or whatever the objection is, here's my answer.  And now

18  we can talk.

19      Okay.  But you're all very -- you're smarter than me,

20  so you know that.

21      MS. FITZPATRICK:  And, your Honor, if it would be

22  helpful to your Honor as you're orienting it to see what has

23  been served so it's not in a vacuum, I'm sure we could provide

24  you with the requests, at least, so you have it oriented as we

25  go forward.

1    THE COURT:  Well, I'm hoping I don't have to see them

2    in a motion to compel.  So no thank you.

3    MS. BAIME:  And defendants spent a lot of time

4    crafting these and being careful and thoughtful --

5    THE COURT:  I'm sure.

6    MS. BAIME:  -- in what we were requesting.

7    THE COURT:  I'm sure.

8    Okay.  Science Day, my favorite topic.

9    MS. BAIME:  Thank you, your Honor.

10    THE COURT:  Okay.

11    MS. FITZPATRICK:  So, your Honor, I think there's only

12    one issue with Science Day that's outstanding.  And that's the

13    issue.  And this is really a preference for your Honor.  We

14    will do a plaintiffs' presentation either -- you know, in

15    whatever way we do.  There will be a defense presentation that

16    I assume will, you know, present the defense case and may also

17    incorporate some observations in a non-advocacy way about the

18    science that the plaintiffs have presented.

19    THE COURT:  Yes.

20    MS. FITZPATRICK:  We thought that it would be helpful

21    for your Honor in one way or another to have some time in case

22    there are science questions that are raised in the defense

23    presentation that you believe were not adequately addressed in

24    the plaintiffs' presentation, that there may be questions about

25    in the plaintiffs' presentation, things like that, to reserve

1    some time.  The defendants are opposed to that.

2           But given the fact that your Honor is going to be

3    participating in this, your Honor has the ability to ask

4    questions, your Honor may have questions.  There may be narrow

5    points that we didn't raise.

6           And I say that for this reason, your Honor.  You've

7    heard a lot from Ms. Leskin.  I could probably recite it by now

8    that they don't know what the plaintiffs' science case is

9    about.  Well, equally we don't know what their position on the

10   science is.  We're each going to be going into this blind.  And

11   so there may be something that is raised by the defendants in

12   Science Day that we could not, did not anticipate, never

13   thought about it, never saw it, never considered, whatever.

14          And so we just thought that that would be helpful tool

15   for your Honor should you have questions just to reserve a

16   little bit of time at the end.

17          THE COURT:  Uh-huh.  Okay.  So, Ms. Leskin, it's good

18   to see you.

19          MS. LESKIN:  You too, your Honor.

20          THE COURT:  I don't need to hear from you, though.

21          So this is what I'm going to do.  First of all, I'm

22   going to limit you to two hours each just because my brain for,

23   like, this kind of material, I think would be better if we just

24   went from 9:00 to 11:00, and then we'll take a break, and then

25   we'll go from, you know, 1:00 to 3:00.

1      And then what I would ask is, is this going to be one

2  person or two people?  Do we know?

3      MS. FITZPATRICK:  We have not figured out for the

4  plaintiffs exactly how we're going to do it, your Honor.  We're

5  just not close enough.

6      THE COURT:  And you don't know.

7      MS. LESKIN:  And we haven't either, your Honor.

8      And just, of course, to be clear, first I want to say

9  I think I am very impressed on how well we did in reaching

10  agreement on most of this, that we were able to narrow it to

11  that one sentence.

12      I think the other piece of it, of course, is, as you

13  recall, we had a long conversation last month as to the timing

14  of Science Day, and this January time frame is after both sides

15  have already provided their expert reports.

16      THE COURT:  Great.

17      MS. LESKIN:  So I think we won't, hopefully, be going

18  into it blind at that point, and it will be easy.

19      But we also have not decided how we would structure

20  our presentation.  We, of course, wanted to see what kind of

21  timing was set.

22      THE COURT:  So I -- so what I was thinking was -- and,

23  first of all, we kind of all decided that I would invite the

24  other judges, so there's that.  So they may have questions too.

25      But what I was thinking was if the plaintiffs' expert

1    or experts would remain, you know, be available to the end of

2    the day, that we may have more questions based on what the

3    defense experts talk about and present -- I'm guessing there

4    will be some kind of PowerPoint or something -- that -- but I

5    wouldn't necessarily need, particularly after four or five

6    hours, or six hours, which is what you're proposing, you know,

7    of being presented this material, I just don't know that

8    another half hour of somebody coming up and saying in kind of a

9    rebuttal fashion -- which I understand is sort of the

10   objection -- no, this is the right way to think about it.

11         I don't know that I will be -- and the other judges

12   might feel differently about it at that point.  But I think

13   having them around to say, oh, well, you know, Dr. So-and-so

14   said this.  Do you have a reaction to that?  Or can you

15   explain, you know, what do you think about that?

16         And if it's informal enough -- I've never been to one

17   of these -- we might even say that during the time -- right? --

18   like, the defense expert might be here saying something that

19   really makes sense, and we might then turn to the plaintiffs'

20   expert and say what -- you know, do you have a thought about

21   that?  That, of course, would throw us off in terms of time,

22   but we would then give the defense expert more time to address

23   that.

24         And I would like to invite the other judges.  I don't

25   know if that's feasible or if they would want to attend.  But

1     hopefully if I do it this far in advance, that might work out.

2          MS. LESKIN:  The initial conversations we've had, at

3     least they are interested, I think, and open to an invitation.

4          THE COURT:  Okay.

5          MS. FITZPATRICK:  And, your Honor, as far as -- I

6     don't care what we call it.  Obviously, we would not be coming

7     in and not proposing coming in with a 30-minute PowerPoint.  We

8     couldn't do that.  We don't know what they're going to say.

9          THE COURT:  Yeah.

10         MS. FITZPATRICK:  So we don't know what the responses

11    are.

12         But if there is some -- something in there, we just

13    think that it makes sense to build in some time, if necessary,

14    to address questions because the worst thing that we can do is

15    get to Science Day and leave with more questions than you

16    started with because you didn't have the opportunity to hear

17    the counterpoint or have it put in context or ask whatever

18    questions that you may have about a particular issue.

19         And, of course, there may not be any need for it.  We

20    won't know until it happens.

21         THE COURT:  Yeah.

22         MS. FITZPATRICK:  But we just wanted to make sure that

23    that was slotted in here in some way to make sure that it was a

24    fulsome and complete conversation.

25         THE COURT:  So I guess what I would say in terms of

1    the order, the proposed order that you've agreed on, is that I

2    would not adopt that the plaintiffs' steering committee could

3    present rebuttal -- yeah, rebuttal presentation for 30 minutes.

4         But I would say that I would -- the Court would

5    request that plaintiffs' experts, you know, remain until the

6    end of the day for follow-up questions, just to be clear that

7    they don't leave and get on a plane.  And I don't know if we're

8    doing this by video or in person, but that way, as you say,

9    Counsel, if there are questions that remain or things that come

10   up during the defendants' presentation, we can -- don't have to

11   convene for another day to get those people back and have them

12   available.

13        MS. LESKIN:  And our -- and, obviously, the defense

14   experts would remain as well --

15        THE COURT:  Yeah.

16        MS. LESKIN:  -- if there was additional -- a question-

17   and-answer period.

18        THE COURT:  Well, they will just be here.  Yes, yes.

19   They will just be finished, so I'm not so worried about that.

20        Okay.  So that's what I'm going to do about that.  And

21   we'll get this order entered.  I don't know -- I don't think we

22   have -- if you could send this to our proposed order box.

23        MS. LESKIN:  Okay.  We will send that.

24        THE COURT:  Yeah.

25        And then I should know this, but I don't think I have

1    the state court judges, all.

2          LAW CLERK:  No, I think we do.

3          THE COURT:  Like, the Georgia judge and --

4          MS. LESKIN:  We can put together a joint list, your

5    Honor, and submit it.

6          THE COURT:  Okay.  That would be great.

7          MS. FITZPATRICK:  There's New York.

8          MS. LESKIN:  I think Philadelphia just got reassigned.

9          MS. FITZPATRICK:  That's gone to Judge Roberts, I

10   think.  Yeah, Judge Roberts is in New York.  There's a

11   Pennsylvania.  There's --

12         MS. LESKIN:  That's Philadelphia, right.

13         MS. FITZPATRICK:  Yeah.

14         MS. LESKIN:  There's two in Georgia.

15         MS. FITZPATRICK:  Two in Georgia.  One, two, three,

16   four, five.

17         MS. LESKIN:  And then there's Judge Johnson down the

18   block.

19         THE COURT:  So do you want to submit that to my

20   proposed order box?  Maybe you could just include an e-mail

21   that includes the state court judges' names, and I'll reach out

22   to them.

23      (Counsel conferring.)

24         THE COURT:  And you can do that by the 13th of --

25         MS. FITZPATRICK:  13th?

1       THE COURT:  Yeah, because I'm away that week, so I'll

2  do it the following week, 13th.

3       And you were proposing January 15th.  I'm actually --

4  I have a criminal trial that I just set for that week.  So

5  could we -- I was going to propose 1/20, January 20.  Is that a

6  bad day?  That looks like a bad day.

7       MS. FITZPATRICK:  I start a trial on that day, your

8  Honor.  So let me -- let me --

9       MS. LESKIN:  At the -- at last month we had said early

10 January, so I think that's why we were looking at it.

11      THE COURT:  Okay.  Well, I can maybe look earlier in

12 January.  I just had a guy fired his lawyer, so I had to move

13 his trial.

14      I could do the first week of January: 5, 6, 7, 8, 9.

15      MS. FITZPATRICK:  I'm sorry, your Honor.  What was

16 the -- the 9th, did you say?

17      THE COURT:  So the first week is 5, 6, 7, 8, 9.

18      MS. FITZPATRICK:  Oh, okay.

19      THE COURT:  We can do any of those days.

20      MS. LESKIN:  Does the 8th work?  It's a Thursday.

21      THE COURT:  The 8th is a Thursday.

22      MS. LESKIN:  Thursday the 8th.

23    (Counsel conferring.)

24      MS. FITZPATRICK:  Yeah, we could do the 8th, your

25 Honor.

1          (Counsel conferring.)

2               MS. LESKIN:  We haven't talked to our experts yet, but

3     I think that works.  We reserve the right to talk about it

4     again if it looks like it won't work.

5               THE COURT:  Why don't you -- I'm going to pencil it

6     in.  And why don't you send me the proposed order, give me a

7     thumbs up on the 8th, and send me the state court judges, all

8     in an e-mail.  Okay?

9               MS. LESKIN:  Okay.

10              THE COURT:  All right.

11              MS. LESKIN:  We will, your Honor.  Thank you.

12              THE COURT:  Thank you.

13              Okay.  Lots of case management.

14              MS. FITZPATRICK:  I believe Ms. Hoekstra is on.

15              THE COURT:  Okay.  Ms. Hoekstra?  She was here

16    yesterday.

17              MS. HOEKSTRA:  Hi, your Honor.

18              THE COURT:  Hi.  How are you?  There you are.

19              MS. HOEKSTRA:  Good.

20              THE COURT:  Okay.  Several things.  Did the order get

21    entered today on several of these things?

22              LAW CLERK:  No.

23              THE COURT:  Okay.  So I've asked my courtroom deputy

24    already to enter an order on several of these things --

25    okay? -- so we don't need to spend too much time talking about

1    them.

2            Okay.  So refiling deadlines for cases that are

3    dismissed without prejudice.  Right.  Thank you.  So those need

4    to be pushed back because the June 25th deadline is coming up.

5    So I appreciate you sorting out those deadlines.  We'll enter

6    that order today.  We'll just put it in a minute order,

7    although I think you're proposing a case management order.

8            MS. CRAWFORD-STEGER:  Yes, your Honor.  That's

9    correct.

10           Amanda Crawford-Steger from Sidley Austin representing

11   Sally Beauty but speaking on behalf of the joint defendants

12   here today.

13           THE COURT:  Okay.  So -- and, Ms. Hoekstra, I have you

14   on the record.

15           MS. HOEKSTRA:  Thank you, your Honor.

16           THE COURT:  Okay.  So --

17           MS. HOEKSTRA:  Jennifer Hoekstra on behalf of

18   plaintiffs.

19           THE COURT:  Okay.  So my order just says I'm adopting

20   these deadlines, and I ask you to propose -- you know, to

21   submit a case management order.

22           MS. CRAWFORD-STEGER:  And, your Honor, we do -- we've

23   already exchanged a draft of that, so we expect to be able to

24   submit that very soon.

25           THE COURT:  Okay.  And then I have this Kline &

```
 1   Specter --

 2             MS. CRAWFORD-STEGER:  And, your Honor, just to be

 3   clear.  Part of that deal, it does address the refile deadline

 4   related to CMO 9, but we're also addressing the plaintiff fact

 5   sheet and short-form complaint amendment deadline for the rest

 6   of the docket.

 7             THE COURT:  Yes.

 8             MS. CRAWFORD-STEGER:  Okay.

 9             THE COURT:  Yes.

10             MS. HOEKSTRA:  Yes.

11             THE COURT:  And then I have -- I have several things

12   here.  I have -- I have a CMO 10 compliance.  I know we thought

13   we had gotten through all those, but some glitch or something,

14   which I don't need to be in the weeds on.

15             But I still have one person, Carmen Jones, Ms. Jones,

16   represented by Kline & Specter.  We still have to -- we still

17   have to nail that one down.  Should I ask Kline & Specter?  Are

18   they here today, or should I just enter an order that says get

19   to it?

20             MS. FITZPATRICK:  Your Honor, I --

21             MS. HOEKSTRA:  I believe --

22             MS. FITZPATRICK:  Oh, sorry, Jen.  Are they --

23             MS. HOEKSTRA:  I was just going to say you were there,

24   Fidelma, to handle it.

25             MS. FITZPATRICK:  I'm still here, your Honor.
```

1          This is what we understand with this one plaintiff.

2     This is a plaintiff who has been filed whose plaintiff fact

3     sheet is not yet due.  There's an issue with potentially being

4     able to get the Social Security number right now.  So we just

5     don't think that this is timely, nor do we think that there's

6     any particular prejudice or harm to anybody in waiting until

7     that PFS or closer to when that PFS is due to update it.

8          Nobody is defying a court order.  Nobody is attempting

9     to not do what your Honor asked.  I think that there's just

10    some logistical challenges here.

11         And as you'll recall, your Honor, this stems from this

12    problem that we have that you have to register in

13    MDL Centrality.  If you don't have the full Social Security

14    number and you don't enter all of the digits, you can't

15    actually register in MDL Centrality.  So we -- probably almost

16    every firm has had at times to put in these placeholders simply

17    so they can get a client registered for the purpose of doing

18    everything else that MDL Centrality requires.

19         So that's what the situation is with this one.  I

20    don't know if anyone's on from Kline & Specter.  But what we

21    would ask is just given this logistical challenge and given

22    that there's nothing imminent that is going to happen to the

23    defendants in these cases by allowing her up until the time

24    that she's got her PFS to get that cured, I think that would be

25    the appropriate thing to do here.

1          MS. CRAWFORD-STEGER:  Your Honor, if --

2      (Counsel conferring.)

3          MS. FITZPATRICK:  Counsel is on too, so I want to give

4  them an opportunity to speak, obviously, to this as well.

5          THE COURT:  Okay.

6          MS. CRAWFORD-STEGER:  Your Honor, if I may --

7          MS. DANDY:  And, yes, your Honor --

8          MS. CRAWFORD-STEGER:  -- just for some context --

9          MS. FITZPATRICK:  And I would -- obviously, you're

10  going to respond.  But I would love for you to hear from the

11  case counsel --

12          THE COURT:  Okay.

13          MS. FITZPATRICK:  -- first because --

14          THE COURT:  Well, can I just enter an order on this

15  docket that by a certain date, they need to comply with CMO 10?

16  And then I'm not stepping on any toes, but I'm making sure that

17  this gets dealt with by a certain date?

18          MS. CRAWFORD-STEGER:  Yes, your Honor.  That's exactly

19  what defendants are asking for.

20          THE COURT:  So what would that date be?  When is the

21  PFS stuff due?

22          MS. CRAWFORD-STEGER:  Your Honor, to be clear, this is

23  not related to the PFS.  This is related to CMO 10.  And

24  there's a deadline within that CMO.  So it's well past due.

25  There was partial information that was provided.

1    And, again, to just provide context, the BrownGreer

2 entry of data is that way for a reason. You have to put in the

3 full amount of information because --

4    THE COURT: I know. I know.

5    MS. CRAWFORD-STEGER: -- as your Honor has said in

6 prior hearings, in order to be in this MDL, you have to give a

7 Social Security number. It's just an obligation to be a

8 plaintiff in this case, to provide a Social Security number.

9    And that is all we're asking for is that the number be

10 provided in compliance with amended CMO 10. We think that a

11 week is well enough time to be able to provide that Social

12 Security number, but we're also happy to hear from counsel as

13 to what would be reasonable for them.

14    MS. FITZPATRICK: And, your Honor, I think one of the

15 issues --

16    THE COURT: Let me see if I have Kline and whatever it

17 is.

18    MS. FITZPATRICK: And, your Honor, if -- because this

19 is a more global issue. I think that the issue of the --

20 remember the certification that folks are doing? You can't do

21 a certification if you have an active case. So Kline & Specter

22 can't go in and do the certification that they have given

23 everything that they have because this is still an active case

24 that has not been dismissed. So it falls into this kind of

25 no-man's-land.

1      But I think you should talk to them specifically about

2  when they can get that in.

3      THE COURT:  So do I have Kline & Specter?

4      MS. DANDY:  Yes, your Honor.  Sherrell Dandy on behalf

5  of Ms. Jones.

6      And, your Honor, my apologies that this has not met

7  the standard for the CMO 10.  This is a case that has a little

8  bit of a different history in the sense that this was filed in

9  Philadelphia Court of Common Pleas.  It was removed and then

10  transferred to the MDL.

11      This is a client who we've had contact with pretty

12  consistently until recently.  Most recently, on March 7th was

13  the last time that we've had contact with her.

14      Pursuant to the case management order, given that the

15  case was transferred, we did do a short-form complaint.  And in

16  order for us to provide and serve the short-form complaint, we

17  needed to include a Social Security number, which we did not

18  have at the time and was not able to reach the client.

19      As I mentioned, Ms. Jones has been in contact with us,

20  and this is unlike her for us to have lost contact in the short

21  period of time.  So I would ask for 30 days for us to be able

22  to provide a Social Security number.

23      THE COURT:  Okay.  I'm going to give you 30 days.  And

24  I'm going to ask that you file a status report in 30 days on

25  your docket.  Okay?  On your docket.

1          MS. DANDY:  Okay.

2          THE COURT:  And tell me either we've complied with

3    CMO 10 or this is what efforts we've made to get in touch with

4    this client and, you know, this is what's happening.  Okay?

5          MS. DANDY:  Okay.  Understood.

6          THE COURT:  So that's June 30th.

7          MS. DANDY:  Okay.  Understood.

8          THE COURT:  All right.

9          MS. DANDY:  Thank you, your Honor.

10          THE COURT:  Uh-huh.  Okay.  Boy, I wasn't going to

11    spend any time on that.

12          Okay.  So I have a couple other things here in case

13    management.

14          MS. CRAWFORD-STEGER:  The next thing we had, your

15    Honor, was the reinstatement/refiling process outlined in

16    CMO 16.

17          THE COURT:  Yes.  So CMO 16.

18          So what's been happening is plaintiffs are filing in

19    their individual cases.  They want to reinstate their case.

20    And I see after reviewing CMO 16 that I'm supposed to wait for

21    you to see if they comply with, you know, getting the one

22    authorization and the PFS within ten days.

23          MS. CRAWFORD-STEGER:  Your Honor, it's one check to

24    make sure that the refile or reinstatement is within the

25    deadline that the Court set.  So, for example, with the CMO 9

1    process, the refile deadline has been June 25th.  The

2    defendants would check to see if that deadline was met with the

3    refile or the reinstatement.  In addition --

4         THE COURT:  Okay.  But it's all within June 25th.

5         MS. CRAWFORD-STEGER:  Well, for those.  But, again, we

6    also have the non-cancer ruling.  Those plaintiffs, in order to

7    be reinstated or refile, have to provide evidence of a cancer

8    diagnosis and that that diagnosis came within six months of the

9    refiling or reinstatement.

10        THE COURT:  Yeah.  And then there's this language here

11   about whether or not defendants would -- will seek the

12   dismissal with prejudice, right?  So they refile.  A plaintiff

13   refiles, and she doesn't do it up to what you think she should,

14   and so you want to seek dismissal with prejudice and which I

15   guess would be the natural result if she doesn't comply with

16   the conditions that we're all very familiar with.

17        So what I've been doing -- because those come in to me

18   on the individual case numbers, right?  They don't come in on

19   the MDL docket, which to me is a good thing because the MDL

20   docket is already quite -- you know, it's lengthy, and it's a

21   bit of a monster.  And so keeping these things on their

22   individual case dockets is a little bit more manageable,

23   although there are 9,000 of those.  But they are very short.

24   Each of them has, you know, ten entries on them.  So I've just

25   been dealing with them in the docket, in their individual

dockets.

But I understand that defendants -- I don't know how you're tracking the individual dockets. I assume you do that with Jake Woody, our friend Jake Woody.

MS. CRAWFORD-STEGER: That's right.

MS. HOEKSTRA: Yes.

THE COURT: Okay. Whoever's on the phone, please mute your microphone. My God. You're like teenagers.

So now you want to do something, which is to collect those. And there's really less than ten a month. There's eight. And you want to file a status report on the MDL docket that you want me to tend to. And then you want to file and tell me, "Judge, these five are in compliance, and these two are not in compliance," and you want me to deal with that status report.

And let's say the five that are in compliance, you want me to then -- I've got to deal with that status report. And then I've got to go into those individual dockets, you see, and I've got to reinstate those cases, which right now I'm just dealing with those. But now I've got to wait. So I've got to remember to wait. That's tricky. Then I've got to wait for your status report. Then when you say thumbs up on the status report or you two disagree -- inevitable -- then I've got to rule on that. Then I've got to -- for the five that comply, I've got to then have somebody, miracle person, come and then

1    go into those individual dockets and reinstate those cases.

2           So you see why that's a big headache for me?

3           MS. CRAWFORD-STEGER:  And, your Honor, the intention

4    was to create less of a headache for you.  The idea was --

5           THE COURT:  You do that a lot, but you're not doing

6    that right here.

7           MS. CRAWFORD-STEGER:  I apologize.

8           THE COURT:  That's okay.

9           MS. CRAWFORD-STEGER:  I miss sometimes.

10          The idea is that we would put together a report

11   between the plaintiffs --

12          THE COURT:  Oh, my God.

13          MS. CRAWFORD-STEGER:  -- Jake Woody, and defendants.

14          THE COURT:  But you put together so many reports.

15          MS. CRAWFORD-STEGER:  It's true, your Honor, but this

16   is what's outlined in CMO 16.  And so we have been doing it.

17   Plaintiffs have provided us a report of those case on the 15th.

18   We then review it for the 15 days, along with Mr. Woody, and

19   then submit that report to your Honor on the 30th.  We're

20   hoping to make this easier, so we're also --

21          THE COURT:  Well, have I gotten a report on the 30th?

22   Because it's just gone whoosh.  I haven't seen that.

23          MS. CRAWFORD-STEGER:  Last month you did receive one.

24          THE COURT:  Okay.

25          MS. CRAWFORD-STEGER:  And we do intend to submit

1    another one this Friday.

2         MS. HOEKSTRA:  And part of the reason for that, your

3    Honor, not to make this more complicated, is several of the

4    cases you've reinstated actually are in violation of CMO 16.

5    And the reinstatement are likely going to lead to dismissals

6    with prejudice --

7         THE COURT:  Oh.

8         MS. HOEKSTRA:  -- because they did not meet the

9    requirements of the reinstatement by the individual counsel.

10   So we were trying to avoid that situation by following this

11   procedure.

12        THE COURT:  So they moved to reinstate, I reinstate

13   them, Ms. Hoekstra, and then they don't file the plaintiff fact

14   sheet or the authorization or something like that.

15        MS. HOEKSTRA:  Or they were a non-cancer dismissal and

16   they don't actually have the correct proof that they are now a

17   cancer diagnosis that was within the correct requirements of

18   your prior order.

19        THE COURT:  Okay.  I just feel like there's a little

20   too much to track.

21        MS. CRAWFORD-STEGER:  The idea was that we would be

22   tracking it --

23        MS. HOEKSTRA:  Which is what we were hoping --

24        MS. CRAWFORD-STEGER:  -- and put it into a chart for

25   you so that you could look at one chart and see exactly the

1   parties' positions and the events that had occurred so that the

2   ruling would be all-encompassing.

3           THE COURT:  Well, maybe we should do it every three

4   months or something.

5           MS. HOEKSTRA:  We're also happy to do it on a less

6   frequent basis if monthly is problematic.  But we were --

7           THE COURT:  Well, I just -- there's not a volume -- it

8   doesn't seem to me that -- I mean, I'm happy to do it every day

9   because that's just part of my -- you know, I do things every

10  day.  But the idea that you're going to take five or six cases,

11  which is sort of what I'm seeing the volume in a month, maybe

12  ten.  The idea that you're going to give me a status report on

13  ten cases every month is -- that seems like a real pain in my

14  neck.

15          What do you think of that, Ms. Hoekstra, that you do

16  it, you know, quarterly?

17          MS. HOEKSTRA:  We're also fine with doing it

18  quarterly.  We don't anticipate the volume increasing, which is

19  part of the discussion that we had had when we discussed this

20  process for the reinstatement/refiling, just that we needed to

21  have a process in place, not that we thought there would be a

22  significant volume.

23          THE COURT:  Uh-huh.

24          Does that require an amendment to CMO 16?

25          MS. CRAWFORD-STEGER:  Yes, your Honor.

1        MS. HOEKSTRA:  It will, yes.

2        MS. CRAWFORD-STEGER:  Your Honor, we're happy to do

3   this quarterly.  We're also happy to caucus and come up with a

4   different proposal for your Honor if that would be helpful.

5        MS. HOEKSTRA:  We were just trying to avoid the

6   automatic granting of the reinstatement or refilings --

7        THE COURT:  No, I understand.

8        MS. HOEKSTRA:  -- so we wouldn't have to --

9        THE COURT:  I understand.

10        MS. HOEKSTRA:  -- the docket.

11        THE COURT:  I understand.

12        Okay.  So because, you know, I'm tracking -- what this

13   is going to make me do now is track the motions that I'm not

14   granting.  See, I'm going to cut and paste those into a new

15   document because I'm not going to let those just sit.  I'm

16   going to be scared that you're going to lose track of them.

17        MS. HOEKSTRA:  Understood.  We're fairly confident in

18   the process that Mr. Woody has put in place for tracking the

19   individual dockets.

20        THE COURT:  Right.

21        MS. HOEKSTRA:  We haven't missed yet.  But we

22   understand your concern as well, your Honor.

23        THE COURT:  Yeah.  All right.  Well, why don't -- I'd

24   rather not modify the CMO because then I've got to start

25   tracking CMOs.

1       So why don't we start with this monthly thing.  I'll

2  try to pay attention to those because obviously I missed April.

3  Apparently I'm about to miss May, but now I'll pay attention to

4  it.  So I'm going to get that tomorrow?

5       MS. CRAWFORD-STEGER:  Yes, your Honor.

6       THE COURT:  Well, okay.  I'll absorb that.

7       MS. HOEKSTRA:  Okay.

8       THE COURT:  And then I'll tell you if I'm finding them

9  overwhelming.

10       MS. CRAWFORD-STEGER:  Okay.

11       THE COURT:  Did you have something else, Ms. Hoekstra?

12       MS. HOEKSTRA:  Just briefly.  It actually went with

13  the dismissal without prejudice CMO that we're putting

14  together.  We seem to be missing the individual dismissals for

15  several of the schedules from February and March.  I'm happy to

16  reach out to the clerk directly if it would be easier.  They

17  were dismissed in the docket entry but not in the individual

18  dockets.

19       MS. CRAWFORD-STEGER:  And this is in relation to

20  February and March court call lists.

21       THE COURT:  Okay.  In the individual dockets.

22       MS. HOEKSTRA:  Correct.  So those cases are still

23  open, even though they were indicated that those cases would be

24  dismissed when we addressed the list.

25       THE COURT:  Okay.  I'll talk to the Clerk's Office, if

1    not today, then tomorrow.

2            Okay.  So I have an issue to raise that kind of goes

3    along with this, this issue.  I have received I would say

4    certainly less than ten, probably less than five motions to

5    substitute.  You probably know about these from Jake Woody.

6            And, you know, motions to substitute I find,

7    obviously, compelling because it means the plaintiff has -- is

8    deceased.  But these were motions that I struggled with.  I

9    would normally grant that kind of motion.  But they appeared to

10   me to be cases that were bellwether-eligible.  And we had this

11   rule of February 28th, any motions to amend by February 28th.

12   And these came in after February 28th.  So I've been just

13   holding them in abeyance.

14           So what I'm going to do is I'm going to enter an order

15   on the MDL docket.  And I will list these numbers for you.  And

16   if you guys could meet and confer.  Ms. Hoekstra, this is

17   probably in your bailiwick here.

18           And, I mean, this is a good reason to amend the

19   complaint, although those amendments -- maybe some of these are

20   not bellwether-eligible, but I am pretty sure that they are,

21   although I haven't completely dug in on them.  But it seemed an

22   appropriate reason to amend, but I did have this rule about

23   amending by February 28th.  So I just held them in abeyance.

24   So I need you to give me some feedback on that.

25           So I'll enter an order.  It will just list the case

1      numbers, and then maybe you can confer and give me some

2      thoughts on that.  Okay?

3              MS. CRAWFORD-STEGER:  Yes, your Honor.

4              MS. HOEKSTRA:  Yes, your Honor.

5              THE COURT:  Okay.  I think that's all I have.

6              The second-tier defendants.  I'm going to enter -- I'm

7      going to enter the order setting forth the status -- the

8      recommended schedule.  I know there are some sets of discovery

9      going out on June 21st, and there's a final set of discovery

10     going out on December 19th.  So they seem to go out every

11     month.

12             MS. DEBROSSE:  Yes, your Honor.

13             THE COURT:  And you've negotiated sort of the topics

14     to be covered.

15             MS. DEBROSSE:  Yes, your Honor.

16             And Diandra Debrosse for the PSC.

17             THE COURT:  And I'm sure I have a defense counsel

18     here.

19             MS. DEBROSSE:  They said I can speak for them, and

20     they're going to resolve the case.

21         (Laughter.)

22             THE COURT:  They may have said you can speak for them,

23     but I doubt they said that.

24             Do I have someone on the call from a second-tier

25     defendant?

1          Okay.  Well, in any event --

2          MR. MORINEC:  This is Mitch Morinec for Wella.

3          THE COURT:  Okay.  Hi, Mr. Morinec.

4          So I'm just going to enter an order.  It might be

5   being entered as we speak, but it'll adopt these discovery

6   deadlines that you've proposed.  Okay?

7          MR. MORINEC:  Thank you, Judge.

8          THE COURT:  Okay.  Thanks, Mr. Morinec.

9          Okay.  Let's talk about class action briefing.

10         Good afternoon.

11         MS. POLATOGLU:  Good afternoon, your Honor.  Serli

12  Polatoglu for L'Oréal USA and defendants generally on this

13  issue.

14         THE COURT:  Good afternoon.

15         Okay.  So I'm a little -- I just don't understand why

16  you don't want to just set briefing.  And do you want to set

17  briefing?

18         MS. DEBROSSE:  Oh, yes, your Honor.  I think what we

19  proposed were dates.  And, you know, I don't think we need to

20  attach your own orders for you to review, but we attach them to

21  say this is totally normal.  It's adversarial.  We draft

22  something; you answer.  Sometimes we surreply.  So it's rare

23  I've ever seen defense counsel say you just brief it,

24  everything, and we don't want to be part of the briefing

25  process.

1    So these dates were proposed to defense counsel.  My

2  understanding is they said no, which we found a bit unusual in

3  that there was a lot of agitas about the scheduling of class

4  certification and getting it going.  So I don't know why we

5  would just brief and defendants would not.

6    MS. POLATOGLU:  So that's not exactly the situation,

7  your Honor.  As you know, I was before you last month, and we

8  were pushing for a deadline to file class cert.  We are in

9  agreement on the deadline to do that.

10    I voiced this hesitation last month as well, which is

11  basically we just don't know what the scope of that motion is

12  going to look like.  And so there are 31 named plaintiffs right

13  now.  If they're all going to be class reps and they're all

14  going to submit decs in connection with this motion, we don't

15  know how many experts they're going to have and what we're

16  going to see there.

17    So it's just sort of a matter of this might be a

18  perfectly acceptable schedule that they've proposed.  Maybe we

19  can absolutely work up our op in two months.  But it sort of

20  depends on what sort of evidence we're getting in their motion.

21  And if it's a really high volume, we might need more time to

22  conduct depos.

23    So it's not that we don't want to participate in

24  briefing.  We absolutely want to have an opposition.  It's just

25  that the timing of it seems unclear right now.

1    You know, we propose that we set the schedule or we
2    set the deadline that we agreed on for them to file their
3    motion.  And then as soon as we see it, we think we can reach
4    agreement on this is how much time we'll need to conduct
5    whatever discovery we need to do, and we'll propose a briefing
6    schedule in that very next JSR.
7         We by no means intend to delay this.  I want to be
8    clear.  If we can do it in two months, we will.
9         MS. DEBROSSE:  Your Honor, may I?
10        THE COURT:  No.
11        MS. DEBROSSE:  Okay.
12        THE COURT:  I'm going to set this briefing schedule.
13   If you really need more time, you can file a motion for more
14   time.  For administrative reasons, just I can tell you
15   something filed in February and having it briefed by June is a
16   good schedule for me just because I have some personnel
17   shifting going on later that year.  So I like this schedule.
18   I'm -- 60 days to respond is a reasonable time to respond given
19   all these lawyers.  Oh, my gosh.  So many lawyers.
20        So I'd like to keep that schedule.  Obviously, if you
21   come in and say, okay.  There are -- this is a 400-page motion
22   and there's 35 experts and there's, you know, this many
23   declarations with it, I don't think I've ever been unreasonable
24   about a briefing schedule yet.  But let's do February 12th,
25   April 13th, June 12th.  This is -- oh, my gosh -- a year away

1    we're talking.  So I'm going to set that schedule.

2              MS. DEBROSSE:  Thank you, your Honor.

3              THE COURT:  Yep.  Okay.

4              One thing I want to raise is CMO 13, which we talked

5    about yesterday has to do with pro se people.  We need to amend

6    that.  Who is dealing -- oh, I don't probably have those people

7    here, do I?

8              MS. DEBROSSE:  I believe Jen.  Jen, are you on?

9              MS. FITZPATRICK:  She's on.

10             MS. DEBROSSE:  Okay.

11             MS. HOEKSTRA:  Yes.

12             THE COURT:  So we had that as a 21-day, as you know.

13             Who do I have on the phone?

14             MS. HOEKSTRA:  Sorry.  I'm on your Honor.

15             THE COURT:  Oh, okay.

16             So we had that they were to appear, and then if the

17   plaintiff didn't appear 21 days later, I was to dismiss the

18   case with prejudice.  That 21 days, it doesn't work for me.  So

19   we're going to extend that to 30 days, up to 30 days.  Okay?

20   So I need to make that amendment.

21             But what I'm also finding is lawyers are -- I think

22   that when this CMO was proposed, we were thinking about

23   plaintiffs who had -- who had fallen out of contact.  And so

24   the whole gist of that order is failure to prosecute.  And what

25   we saw yesterday is -- were you with us yesterday?

1      MS. HOEKSTRA:  I was speaking with Sara Aguiñiga about

2   this, but I don't believe she's available today, so I'm going

3   to communicate with her once we get off.

4      THE COURT:  So what we found yesterday is there were

5   motions to withdraw -- I don't know -- maybe 10 or 12 or

6   15 plaintiffs because of a conflict.  So those plaintiffs --

7      MS. HOEKSTRA:  Okay.

8      THE COURT:  -- were on the phone.  So they're not --

9   they're not failing to prosecute.  They're here.  And I can't

10  just enter an order that the case is dismissed with prejudice

11  because of failure to prosecute.  I can't do that.

12      And, in fact -- so I asked them to come back in two

13  months -- or in 30 days.  We're going to do it again at the end

14  of June.  And, you know, some of them didn't appear.  But the

15  basis for the withdrawal is not I'm out of contact.  The law

16  firm -- I can't remember which law firm it was -- has been in

17  contact with the plaintiff in May of 2025 or April of 2025.

18      MS. CRAWFORD-STEGER:  Your Honor, if I may.

19      THE COURT:  That's not a very long time.

20      MS. CRAWFORD-STEGER:  In CMO 13, when we're talking

21  about the dismissal for want of prosecution, it's for

22  plaintiffs who do not appear for the hearing.  So if a

23  plaintiff is appearing for that pro se or withdrawal hearing,

24  then there shouldn't be a second hearing set for that plaintiff

25  to appear.

1          THE COURT:  Okay.  Well, that's not how it reads.

2          MS. CRAWFORD-STEGER:  Okay.

3          THE COURT:  In addition, even if the person doesn't

4    appear, if the lawyer spoke to that person two weeks ago, I

5    would not dismiss that for want of prosecution.  I mean,

6    they're just in touch with them a week ago.  It's a conflict.

7          So I don't -- there's attorney-client privilege.  I

8    don't know anything more about it than that.  My sense is there

9    may be some Rule 11 obligations.  There may be some merits

10   issues.  Maybe there's some cancer versus non-cancer.  I don't

11   know.  But I need some -- we need to think that through a

12   little bit because I don't want to be dismissing cases

13   without -- for failure to prosecute when that's not an actual

14   finding.

15         So some women want to proceed pro se.  That's fine.

16   We've -- I did that in a couple cases.  Some women decided they

17   wanted to dismiss their case.  That's a difficult thing right

18   there.  They're on TV.  They're talking to a judge.  I don't

19   want to be pressuring people to dismiss their case.

20         So I need the plaintiffs' steering committee to kind

21   of huddle up about that and look at that order again and think

22   about what -- we certainly need to amend the dates because I'm

23   not having a special hearing in 21 days.  That's not going to

24   work.  But we need to kind of talk through when the -- when the

25   motion is not about falling out of touch, what are we really

1    doing.

2          The lawyer can't stay in the case. She doesn't -- she

3    has a conflict, ethical conflict. But what are we doing with

4    the client? Okay?

5          MS. CRAWFORD-STEGER: Yes, your Honor.

6          And just so I understand, if the intention of the

7    order is to only move forward with a dismissal of a plaintiff

8    who fails to appear for a hearing before your Honor after

9    receiving notice of that hearing, would that comply with the

10   concern that your Honor is having?

11         THE COURT: Well, I would always give a person a

12   second chance to come to a hearing, always. And the order

13   contemplates that. The order says then if you don't appear

14   21 days later -- which I'm modifying -- then the case will be

15   dismissed without prejudice.

16         But I think the tone of the whole order is the lawyer

17   comes in and says, "I've lost touch with this person. I've

18   tried to get in contact with them the last six months this many

19   times. I can't contact them. That's why I'm withdrawing."

20         And then yesterday, as you investigate, you will see

21   there were 10 or 12 or 15 plaintiffs that there was no problem

22   being in contact. It was a different matter. And I think that

23   our case management order does not capture that scenario.

24         And maybe we need a separate case management order, or

25   maybe we need a -- just a more fulsome case management order

1     that addresses those plaintiffs.  And maybe what they do is

2     they become pro se.  I talked to them yesterday and told them

3     they could try to find a different lawyer.  I asked them to

4     file a status report.  I mean, they can be pro se.

5           But, you know, that's a lot of potential pro se

6     people.  Not a lot, but a handful.  Okay.

7           MS. CRAWFORD-STEGER:  Understood, your Honor.

8           THE COURT:  Okay.  Thanks.

9           MS. HOEKSTRA:  Understood.

10          THE COURT:  All right.  I think that I'm through your

11    status report.  Can I move on to something else?  Or is there

12    something I missed?

13          MS. FITZPATRICK:  It was nothing in the status report,

14    your Honor.  It was something that you had said earlier that

15    raised a question for me.

16          THE COURT:  Okay.

17          MS. FITZPATRICK:  You had mentioned earlier about the

18    possibility of doing some of our hearings by Zoom.  Our hearing

19    in June with Judge Jantz is by Zoom because she's not here.  I

20    didn't actually think about this, so I think I'd have to talk

21    to the defendants.  But would you also be open to doing our

22    June status conference by Zoom if there's no objection to that

23    or there's no -- okay.  I wanted to check with you --

24          THE COURT:  Sure.

25          MS. FITZPATRICK:  -- and then we can have a

1    conversation.

2         THE COURT:  Does that sound good for defendants?

3         MS. TROTTER:  Yes, your Honor.  I've consulted with

4    counsel.  I think we're fine with that.

5         MS. FITZPATRICK:  Oh, great.

6         THE COURT:  Great.  So that will be 1:00 on June 26th.

7    That would be great.  I have -- in that morning, I'm doing the

8    repeat of the motions to withdraw.  So those are by Zoom as

9    well.

10        MS. FITZPATRICK:  Great.  Thank you, your Honor.

11   Appreciate that.

12        MS. DEBROSSE:  And, your Honor, just one last thing.

13   It was on the status.  I know it's not common to ask for a

14   surreply, but given some of the assertions in Revlon's response

15   where they moved to compel NIH on the subpoena and asserted

16   that we did not have standing, in light of what I think is a

17   significant issue, seeking some of this underlying data of

18   women involved in the study -- and I won't get on my soapbox

19   about an assault on our institutions and the integrity of the

20   people who participate in these scientific studies -- we do

21   have standing.  And if the Court thought well of it, we would

22   be prepared to submit a surreply to address Revlon's assertions

23   regarding the PSC's standing.

24        THE COURT:  What -- how much time do you need?

25        (Counsel conferring.)

1          MS. DEBROSSE:  Let me double-check.  I think she's on

2   the phone.  I think a week should be -- okay.  A week is -- oh,

3   sorry, your Honor.

4          Your Honor, a week would be sufficient.

5          THE COURT:  Okay.

6          Do you object to that?

7          MR. ABBOT:  No, your Honor.

8          Just Edward Abbot for Eckert Seamans for Revlon, Inc.

9          That matter has been briefed by the Paul Weiss firm,

10  and I will defer to them on that issue.

11         THE COURT:  Okay.

12         MR. ABBOT:  I know they're looking for a schedule, but

13  that will be fine.

14         THE COURT:  Okay.  Well, you mean we need more

15  briefing when you say they're looking for a schedule?

16         MR. ABBOT:  No.  I believe that we're waiting for

17  the -- a decision to come down.

18         THE COURT:  Yeah, I think that's right.  Okay.

19         So a week.

20         MS. DEBROSSE:  Yes, your Honor.

21         THE COURT:  And then can I limit you to seven pages

22  since we're just talking about standing?

23         MS. DEBROSSE:  Yes, your Honor.

24         THE COURT:  Okay.  Brief is better.  Briefer is

25  better.

1          Okay.  I would like to talk for a moment -- and I

2    don't mean to surprise anybody.  Judge Jantz issued an order

3    about the deposition protocol.  And it's been sitting with me

4    for a while because -- and defendants appealed it.  And it's

5    been sitting with me for a while.  I actually have a draft.

6    And I've read it so many times.  And I'm just a little puzzled

7    by even what's being appealed.

8          So is there somebody who could address that?  Or am I

9    just catching you unaware?

10         So Judge Jantz issued a deposition protocol.  I think

11   you guys agreed on a lot of it.  And this is about whether or

12   not a party has to object to the admissibility of documents.

13   Are you aware of this?

14              MR. CLYDER:  Yes, your Honor.

15              THE COURT:  Do you want to put your appearance on?

16              MR. CLYDER:  Yes.  Patrick Clyder for House of

17   Cheatham, LLC.

18              THE COURT:  How're you doing?

19              MR. CLYDER:  And the defense group.

20              THE COURT:  And Judge Jantz ruled that, you know, you

21   have to state the objection -- right? -- as part of the

22   deposition protocol to admissibility of documents.  Very narrow

23   issue, right?

24              MR. CLYDER:  Right.  That's correct.

25              THE COURT:  And -- but then -- and then she issued a

1    follow-up ruling -- maybe because there was more filings on it

2    or just maybe oral -- some oral argument -- that she said it

3    doesn't affect the trial court's ability to hear about or allow

4    admissibility objections, right?

5              MR. CLYDER:  I think in that -- to me that guts the

6    original issue.  And our concern is that if we're in these

7    depositions, normally those -- any objections to admissibility

8    are reserved until the trial.

9              THE COURT:  Right.

10             MR. CLYDER:  And we didn't want to be in these

11   depositions where we're seeing documents for the first time,

12   haven't had the opportunity to look at them, to not -- to have

13   to object, you know, preemptively on every single document --

14             THE COURT:  Right.

15             MR. CLYDER:  -- right on the fly because otherwise

16   these depositions are going to go on forever.

17             And I think the other side has a concern that if --

18   and I'm sure they'll explain it -- that if we don't make these

19   objections, then somehow they're not going to be able to

20   overcome them at trial.

21             But our reading of the rules is that we have the right

22   to make those objections at trial.

23             THE COURT:  Yeah.

24             So I'm -- of course, the law is that any ruling by the

25   magistrate judge has to be clearly erroneous or contrary to

1     law.  So there's the rule -- there's the law -- right? -- in

2     terms of me reversing anything.  And I'm very deferential to

3     magistrate judges, as you can imagine, in every case because

4     woe be the district court judge who is not deferential, right?

5                MR. CLYDER:  Understood.

6                THE COURT:  And I don't really understand her to be

7     saying that you're not going to be able to -- that a party

8     isn't going to be able to raise an admissibility objection come

9     trial if there's a good-faith basis to.

10               But the other party -- and this could happen to either

11    party, but I know defendants are raising this issue now -- that

12    it would allow let's say in this case the plaintiffs to say,

13    hey, they waived this because they didn't raise it during a

14    dep.  That's the problem, right?

15               MR. CLYDER:  Correct.

16               THE COURT:  So I haven't been in a dep in a while.

17    But the way deps usually work is in this case the plaintiff

18    would be working with defendants' documents in lots of

19    instances because they've been pulling teeth to get those

20    documents from you and vice versa.  So you're going to be

21    working with plaintiffs' experts' documents -- I don't know --

22    maybe some third-party documents, maybe some NIH documents,

23    depending on how that goes.

24               So I'm trying to understand -- I'm trying to

25    understand kind of what's the fight here because certainly

1     you're not trying to set up a situation where there's going to

2     be an ambush, and you're not going to object to admissibility.

3     I mean, that can't be the endgame because I'm not going to

4     allow that.  And I anticipate that that's not what you're

5     trying to do.

6              MR. CLYDER:  Not at all.

7              THE COURT:  Okay.  So given the ruling, which says you

8     must state the objection as to admissibility, and the district

9     court -- which might be me and might be some other judge given

10    that, you know, these cases might go back to their starting

11    point.  Some other judge will still have the ability to rule on

12    admissibility -- although the way I read this, that the

13    party -- the opposing party could raise waiver.  That's really

14    all it is, right?

15             MR. CLYDER:  I think it's waiver.  And I know we

16    haven't heard from the plaintiffs yet, but the way they've

17    argued this is from a position --

18         (Extraneous remote noise disrupts the proceedings.)

19             MR. CLYDER:  -- that I believe wants us to believe --

20             THE COURT:  Okay.  Please put your microphone on mute

21    when you're on the phone.

22             MR. CLYDER:  The way I understood this ruling and the

23    way it came about from the plaintiffs' arguments is they want

24    to be able to make that waiver argument if we don't raise the

25    objection.  And that's our concern.

1          THE COURT:  Okay.  Well, that's my understanding too.

2     So you could -- so the week before trial or two weeks before

3     trial when we're in pretrial mode, all of a sudden, the

4     defendants come in and say, okay.  Here, these 20 documents are

5     not admissible -- right? -- or whatever.

6          And the plaintiffs come in and they say these are

7     admissible.  These are admissible.  These are admissible.  And,

8     by the way, for these five, this admissibility argument's

9     waived because it wasn't raised during the dep, right?

10          So not only are we having a fight about admissibility,

11     but we're having a layered fight, a second-layer argument about

12     waiver about admissibility.

13          MR. CLYDER:  That's precisely the concern, yeah.

14     Normally we exchange exhibit lists, and we would go through

15     and -- yeah.

16          THE COURT:  Seen those exhibit lists.

17          Okay.  So what -- I'm just trying to understand what

18     is the objection is you don't want to have to raise the

19     admissibility objection.

20          MR. CLYDER:  For every single document.

21          THE COURT:  Well, for every single document.  But by

22     and large, they're going to be deposing your people about your

23     documents.  So what is the -- I don't even -- what are the

24     admissibility objections?  You're going to be objecting to

25     business record?

1          MR. CLYDER:  So I think --

2          THE COURT:  So I'm trying to understand.

3          MR. CLYDER:  Sure.  So I think that the issue is

4    it's -- this isn't, unfortunately, a finite set of documents.

5    We lost the argument in the protocol that we be able to

6    exchange documents five days before.

7          THE COURT:  Okay.

8          MR. CLYDER:  So when we're talking about documents

9    that we're seeing for the first time -- because I think even in

10   some jurisdictions, there's a local rule where there is that

11   exchange, and that would kind of alleviate your concern.

12         THE COURT:  Okay.

13         MR. CLYDER:  My concern is my client, for example,

14   House of Cheatham.  We've produced hundreds of thousands of

15   pages of documents.  I don't know --

16         THE COURT:  But those are your documents.

17         MR. CLYDER:  Understood.  But still, your Honor, you

18   know, to expect a lay fact witness to have seen hundreds of

19   thousands of documents, I don't think that's reasonable.  There

20   are going to be documents that they are seeing for the first

21   time, and they might not be --

22         THE COURT:  But the lawyer for House of Cheatham is

23   going to understand the admissibility or lack thereof of those

24   documents.  I don't expect the head of marketing for House of

25   Cheatham to understand the admissibility of that document.  I

1      mean, she's a marketer.  That's not her business.  She doesn't

2      understand admissibility.  That's why she didn't go to law

3      school; she went to marketing school.

4            But what is your problem with understanding those

5      documents?  You produced them.  So I'm trying to understand.

6            MR. CLYDER:  Sure.

7            THE COURT:  Why is this a problem?

8            MR. CLYDER:  Because not every single witness can be

9      used to admit every single document.  I mean, there are going

10     to be -- so if we have --

11           THE COURT:  But you're saying if they want to use the

12     deposition at trial of Ms. Smith, who is your witness,

13     Ms. House of Cheatham advertising person, that then they can't

14     get the exhibits in because she can't lay a foundation for the

15     exhibits?

16           MR. CLYDER:  That's my understanding of --

17           THE COURT:  Because that kind of "gotcha" is exactly

18     the kind of thing that would drive me crazy, right?  Because

19     then what are they doing?  Then we're going to come to trial

20     and they're going to have all these documents and you're going

21     to say, well, none of those -- they can't get any of those in

22     because all they did was depose the advertising people.

23           So how -- what are we going to -- how are we going to

24     do the trial?

25           MR. CLYDER:  With the witnesses who can lay a

1  foundation for those documents.

2          My concern is --

3          THE COURT:  Okay.  So then you need to lay all the

4  record -- you need to depose all the recordkeepers.

5          MS. FITZPATRICK:  Your Honor, can I --

6          THE COURT:  I mean, you've got to be able to work some

7  of this out.

8          MS. FITZPATRICK:  Your Honor, this comes from some

9  experience that we have all collectively had over the last five

10 years where there has been a large shift, we believe, in the

11 defense bar and how they deal with admissibility at trial, and

12 we were trying to deal with it early.

13         And what our concern is, and where Mr. Clyder I think

14 is misplaced here, if Mr. or Ms. House of Cheatham is on that

15 witness stand at trial live and I put a document in front of

16 them, this lawyer or the lawyer over there has to make an

17 objection on the spot as to the admissibility.  It may be that

18 I didn't lay the right foundation.  It may be their objection

19 is you didn't -- whatever it may be.  They are required at

20 trial on the fly to see the document and to make their

21 objections at trial.

22         What we do here is many of these depositions will be

23 used in lieu of live trial testimony.  But what we are saying

24 is you have to make the same objections in the deposition than

25 you would at trial.  Why are we saying that?  If at trial

1    there's an objection as to foundation and you sustain that

2    objection, I get to ask a whole bunch of other questions to lay

3    that foundation.  I get to be on notice that there's an

4    objection to what I'm doing, and I get an opportunity to cure

5    it.

6          If they go into a deposition and I believe that I've

7    laid an appropriate foundation for whatever it may be and they

8    don't object, I should be able to reasonably assume that there

9    is not going to be a trial objection to lack of foundation.

10         Why is that important?  I can't get to trial -- it's

11   going to be in, what, two years from now, a year and a half,

12   whatever.  I can't arrive on your doorstep ten days before

13   trial to discover, aha.  They've been sitting on an objection

14   that they should have raised in a deposition that had they

15   raised it, I could have done -- I could have cured it in the

16   deposition.  I could have taken a recordkeeper deposition.  I

17   could have --

18         And all of a sudden now I'm ten days before trial and

19   they say "gotcha."  We didn't object.  We laid in wait, and now

20   you can't use this document.

21         THE COURT:  No, I understand.

22         MS. FITZPATRICK:  It happens.  It's been happening.

23         THE COURT:  I understand the problem.  I don't really

24   understand why it's happening because it seems kind of like a

25   waste of time.  But --

1      MS. TROTTER:  Your Honor, if I just may.

2      THE COURT:  Yeah.

3      MS. TROTTER:  Rhonda Trotter on behalf of Strength of

4  Nature.

5      THE COURT:  Thank you, yeah.

6      MS. TROTTER:  I just want to make sure that we're

7  clear what we're talking about with respect to admissibility.

8      THE COURT:  Yeah.

9      MS. TROTTER:  I can tell you on behalf of my client

10  I'm concerned about waiver as to things that it would be very

11  time-consuming to have arguments in depositions like relevance,

12  like 403, like all of the things that your Honor as the trial

13  judge or if there's another trial judge would rule on at time

14  of trial.

15      THE COURT:  Sure.

16      MS. TROTTER:  So I'm trying to avoid -- when I hear

17  admissibility, it's admissibility, right?  It's a broad

18  category.  If we're just talking about foundation for the

19  exhibit and an "objection, foundation," is sufficient to

20  preserve that, I can say that on behalf of my client.  I'm fine

21  with that.

22      THE COURT:  Yeah.  So it's only admissibility of

23  documents.  And I believe that's foundation.  So if a defendant

24  wanted to object based on prejudice of documents, a 403, that's

25  not what I'm understanding the protocol to address.

1      MS. FITZPATRICK:  That's right.

2      THE COURT:  Because that you really can't cure.  I

3 mean, that's a judgment call.

4      This is about a curing of a we need the recordkeeper.

5 Okay?  Well, do we really, or can we reach a stipulation about

6 that?  But, you know, that's -- it's about things you can cure.

7      And as I -- I mean, I'm rereading the rules, Rule 32

8 and Rule 30, which you've all directed me to, which I

9 appreciate -- that that's what I understand the Rule 32(B) --

10 capital (B) small (i) to kind of go to is it relates to things

11 that might have been corrected, and that's what I understand

12 some of the cases that grapple with this business to try to get

13 at, which is we want to give lawyers the opportunity, parties

14 the opportunity to correct problems that can be corrected.  And

15 some can't.  Sometimes you can't get a document in, as much as

16 you want to.

17      So that's where I think Judge Jantz got this right, to

18 say -- to limit it to documents, to limit it to the

19 admissibility of documents and to say this could give rise to a

20 waiver argument, not that it's not going to be admitted, but

21 that you might have waived the ability to object to it and

22 therefore you lose your admissibility fight.

23      I mean, unfortunately in trial, we often have

24 inadmissible things come in, right?  I mean, I sit here

25 sometimes and I hear hearsay coming in, and I think why is that

1    lawyer not objecting?  You know, and I think should I write

2    "hearsay" on this yellow thing and wave it around?  But, you

3    know, the person's waiving that objection.

4         And so that happens.  We don't like it to happen, and

5    sometimes the judge calls a sidebar and says how far are we

6    going on this because you know inadmissible stuff is coming in.

7    So it happens.  We don't like it to happen.  But --

8         MS. TROTTER:  Your Honor, just to be clear, I mean, I

9    normally -- and, you know, the trial counsel I'm familiar with

10   normally as to business records stipulate --

11        THE COURT:  Right.

12        MS. TROTTER:  -- to the foundation before we ever get

13   to trial, but I preserve all of my other objections.

14        So I think, from our perspective, when I read

15   admissibility -- right? -- to me that's broad.  Right?  And

16   it's saying somehow that if I don't say on the record I think

17   that's irrelevant, this document is irrelevant --

18        THE COURT:  I see.

19        MS. TROTTER:  -- et cetera, that somehow --

20        THE COURT:  I see.

21        MS. TROTTER:  -- I've waived it.  And I'm -- you know,

22   I don't want to say I'm happy to do it because it's going to

23   prolong the deposition.  But literally it's going to mean that

24   I'm going to be alert to every possible objection that I have

25   on a document under the rules of evidence.  And that's what I'm

1    trying to avoid.

2          THE COURT:  But didn't you -- maybe I'm misreading

3    this, although I've read it many, many times.  But I thought it

4    was admissibility limited to foundation.

5          MS. FITZPATRICK:  It is, your Honor.  Obviously,

6    questions of relevance cannot be gleaned until you know what

7    the trial is about.  So, for example, you know, Strength of

8    Nature cannot object to every document on admissibility because

9    the document may be relevant to some women's cases but not

10   other women's cases.  There's no way to know that.

11         But what we are looking at is things like you're

12   objecting because it's not a business record.  You're objecting

13   under the rule of completeness that they think that the

14   document is not complete.  You're looking at authentication

15   issues.  You're looking at those types of issues.

16         And I am happy to hear Ms. Trotter say what she did.

17   That's always been the way that I practiced until about five

18   years ago, until, you know, ten days before a trial we got

19   objections to business records, to everything.  And we're just

20   trying to avoid that.

21         And so if the objection -- if there's genuinely an

22   objection to a record, that it doesn't fall within, you know,

23   one of the exceptions to hearsay or something like that, I

24   think that has to be raised.

25         But as to whether it ultimately comes in in a

1    bellwether trial, it's going to depend on the facts of that

2    bellwether trial and how that case unfolds.

3           So I'm not asking for -- put every relevance objection

4    you could ever conceive of on the record.  But if you believe

5    that that document -- irrespective of relevance,

6    irrespective -- is not an admissible document because of

7    foundation, because of any of these issues that I outlined,

8    you've got to state it on the record, and then we can -- for

9    example, foundation is a great example.  If they object, then I

10   can say, all right.  I'll do a 30(b)(6) on a recordkeeper to

11   get that foundation if I need to.  But the issue isn't --

12          THE COURT:  Right.  And that might get you a stip

13   right there.

14          And so, you know, the Rule 32 specifically preserves

15   objections to competence, relevance, and materiality.

16          MS. FITZPATRICK:  Right.

17          THE COURT:  I mean, there's no judge can do away with

18   that.  I mean, it's the rule.  I wouldn't rule otherwise.  I'm

19   sure Judge Jantz wouldn't rule otherwise.

20          So maybe -- that's why -- I think when I was reading

21   even your briefs I felt like there was some talking past each

22   other because there was -- maybe you were concerned, which I

23   appreciate.

24          So I'm going to affirm Judge Jantz's ruling.  And I'll

25   just put in the order today that it is limited to -- which I

1    think is what her -- what she meant.  But it is limited to

2    documents -- objections to documents, to be clear about that,

3    so not testimony -- and it is limited to foundation -- business

4    records, authenticity -- to the document -- whether the

5    document is admissible for what it is, not its relevance or its

6    materiality or any kind of 403 objection.  But it is limited to

7    its -- just to -- basically to things that can be cured.

8            MS. FITZPATRICK:  And our reading of the rule was the

9    same as your Honor's, that those other issues, obviously, would

10   be trial issues.  I can lay a perfect foundation for a document

11   that I think is great, but if you rule that it's irrelevant --

12           THE COURT:  It doesn't matter.

13           MS. FITZPATRICK:  -- then it's not coming in.

14           MR. ELLIS:  Your Honor --

15           THE COURT:  Mr. Ellis.

16           MR. ELLIS:  Good afternoon, your Honor.  Dennis Ellis

17   on behalf of L'Oréal USA, Inc. --

18           THE COURT:  Good afternoon.

19           MR. ELLIS:  -- L'Oréal U.S.A. Products, Inc.; and

20   SoftSheen-Carson, LLC.

21           I think what at least me sitting there as a trial

22   lawyer is getting a little concerned with is when we say

23   business record.  That is a hearsay exception to the hearsay

24   rule.  And so it requires a lot.  It not only requires the

25   document to be prepared on or about the dates of the events

1  that took place, to memorialize those events that are in the

2  ordinary course of the business, to be kept in the ordinary

3  course of the business, and have an inherent reliability to it

4  all.

5       And so if we say I'm going to waive or otherwise not

6  object on authentication or foundation, i.e., a 901 issue of

7  the Federal Rules of Evidence, I don't think anybody's

8  complaining about that.

9       What we are saying is, is that if you have a witness

10  that's never seen a document before and you show it to them and

11  say, "You've never seen this before.  This is between two of

12  your colleagues, I want you to look at it.  Do you remember

13  these people?"  "Yes, I do."  "And did they work with you?"

14  "Yeah, they did."  "And did they work in these fields?"  "Yes,

15  they did."  "And is this kept by you?"  "I don't know because

16  I've never seen this document before."

17       And then somebody says, because a person didn't object

18  to the exception to the business records rule, that that

19  document comes in.  And so then it's in the case as admissible,

20  and then you get another witness on the stand.

21       And what I always call this is, is use the witness as

22  a backboard.  "I'm going to show you this document you've never

23  seen before, but it's really bad for the defendant, and I want

24  to read it to you.  Will you look at this."  And it's

25  automatically in.

1          That's the issue we were talking about.  And the

2     order, at least from our perspective, was a little broader than

3     necessary to protect against that.

4          So if you say something like foundation and

5     authentication -- but even just now, your Honor, you said

6     business record.  That's, I think, going -- that could be

7     interpreted, at least from my perspective, as I am now going to

8     say you have to object to the notion that a document would not

9     qualify as a business record.  And that would be cumbersome.  I

10    don't know of any court, any rule where you're required to do

11    that in a deposition.

12         MS. FITZPATRICK:  Your Honor, it's because here the

13    depositions are being taken in lieu of live trial testimony.

14    Mr. Ellis just ran through -- and I think that he would be very

15    qualified, and he makes his objections at trial.

16         But the issue here is these depositions are going to

17    be used instead of many, if not all, of these corporate

18    witnesses coming live at trial.

19         You have to make the objection to the document on the

20    record at the deposition exactly as you would at trial.

21    There's no reason not to do it that way.  There's nothing

22    magical about a trial versus a deposition.

23         They can state it clearly on the record.  There may be

24    issues where -- certainly we may ask somebody who is not able

25    to in and of themselves lay a foundation for a document.  We

1   can still ask them questions about that document because it may

2   have come in at trial as evidence prior to that.  And you can

3   obviously use evidence with whatever witness you have to within

4   bounds.

5           So, you know, it's basically with documents, deal with

6   your objections as you would deal with them at trial.  I'm

7   assuming that -- I'm hoping that if it's trial and it's a live

8   witness, there will be an objection.  Your Honor will rule on

9   it.  You're just preserving that objection.  You're putting

10  your flag down that I am going to raise an objection with the

11  judge about this, and then it gets to you for ruling.

12          We can then make the decisions of, okay.  We'll use a

13  different witness.  We'll ask a different question.  We'll get

14  a record.  Whatever it is that we need to do.  But you've got

15  to do it because these depositions are being used in the same

16  way that trial testimony is going to be used.

17          And what you'll see in these depositions, your

18  Honor -- and I'm going to guess -- is at the end of these

19  depositions, after plaintiffs are done, you'll have a very

20  lovely rehearsed direct examination from the defendant of

21  whatever that witness is that will have their documents, and

22  they'll be very responsive, and they'll know the answers to all

23  of the questions, and they'll give that.

24          It's because they're preparing to use this witness's

25  deposition as though it's at trial.  And we just need to be

1    able to deal with that.

2        MR. ELLIS:  I mean, we have to follow the Federal

3    Rules of Evidence.  I don't know of any circumstance where I

4    get to use the deposition necessarily of a witness where

5    they're available to me within the state or otherwise.  So we

6    have to follow the rules.

7        And there is a specific rule about preserving hearsay

8    objections at a deposition.  You don't make hearsay objections

9    at a deposition.  You don't make relevance objections at a

10   deposition.  You don't make 403 objections at a deposition.

11       And I think -- I think we're in agreement, but we're

12   talking past each other by trying to add something to it.  Yes,

13   authentication, 901, you can deal with that at a deposition.

14   The Court cannot deal with the issue of admissibility with

15   regards to exceptions to the hearsay rule, whether it's an

16   admission of the party, those kind of issues.  Those should be

17   preserved at the time of trial.  And you cannot say that, well,

18   I might not have that witness back there.  You can do it in the

19   record.  You can do it all.

20       But it's not at that point in time I need to make the

21   objection.  I don't know of any court anywhere where that's

22   required, and I know that the rules specifically say it is not.

23       THE COURT:  So this seems like it's getting narrower

24   based on your example, which is obviously e-mail examples.  So

25   these kind of communications enter corporate whatever their

1    mode of communication is and whether or not they're business

2    records.

3         You think that -- and we all agree hearsay, 403,

4    relevance, those objections don't need to be made and they

5    shouldn't be made, particularly to the extent they're

6    disruptive to the deposition.  Nobody wants that.

7         Do you think those need to be made to the extent --

8    given that the business record exception, you know, is an

9    exception to the hearsay rule -- so that you can cure that?

10        Because, frankly, if a witness said, you know, "Yeah,

11   I know those people.  Yeah, they worked in this department.

12   I've never seen that document before," that would be a pretty

13   big flag --

14        REMOTE ATTENDEE:  Hello.

15        THE COURT:  -- I think, to say I'm going to object to

16   that document, right?  I mean, the witness is right there.

17   He's your person.  He's your COO of whatever or head of

18   whatever department, and he's saying, "I'm not on that

19   document.  I don't know that document.  I'm not a recipient on

20   that document.  I'm not cc'd on it."

21        So she may ask him a bunch of questions about it

22   because it's a juicy document for her, but it's certainly a

23   flag for you to say, "I'm objecting to that document.  He can't

24   lay a proper foundation."

25        So whether or not you can do that, whether you're

1       alert enough to do that, whether you want to do that at every

2       deposition because there's going to be 800 depositions in this

3       case, I mean, I hear all that.

4               But what do you think about that, that hearsay

5       objections are preserved, meaning the business record -- which

6       is going to be a big one -- which to the extent that they're

7       routine business records, I'm going to be pounding all of you

8       to agree and to stipulate to business records, of course.  And

9       I know you're going to do that as a routine matter.

10              But to the extent you've got a couple of explosive --

11      if there are any -- e-mails or other things like that, you're

12      going to be fighting to keep them out.

13              MS. FITZPATRICK:  I think, your Honor, that Mr. Ellis

14      is a great example of what we are concerned about and how we're

15      going down this road right now.

16              Where I do agree with him is that if a witness is

17      available to L'Oréal or any of the L'Oréal with the letters

18      behind them that he represents that L'Oréal cannot use that

19      deposition in lieu of live testimony.  They must call the

20      witness because that witness is available to them.

21              That's different for me.  If there's a witness at

22      L'Oréal with all the letters after it, I don't have control

23      over that witness to be able to compel that witness to show up

24      in your courtroom.

25              THE COURT:  That would be an easy solution for me.

1      MR. ELLIS:  That's just not the law, though.  I mean,

2  if the witness -- this actually is completely antithetical to

3  the law.  You cannot force a party who is a citizen of another

4  state, regardless if they're my client or not, and they're a

5  rank-and-file employee, you cannot exclude their testimony

6  unless I bring them from New York to Illinois to testify.

7  That's just wrong.  It's not even close to right.

8      And so the point of it is this, your Honor.

9      MS. FITZPATRICK:  Your Honor, I was --

10      MR. ELLIS:  But I would like to follow the rules.

11      MS. FITZPATRICK:  -- in the middle of something.

12      MR. ELLIS:  And I'd like to finish and answer the

13  question.

14      I mean, I don't complain when Ms. Fitzpatrick kind of

15  makes a shot at me about I'm an example of what we're worried

16  about and those kind of things like that.  I kind of find it

17  humorous.  But let's be real about the law.  Okay?  And it

18  answers all these questions.

19      If you make a statement -- there's two ways that that

20  document could come in.  It could be an admission of a party,

21  801(d)(2).  It could be a business record exception.  So now

22  we're trying to find the places where it's not an admission,

23  even though it's written by one of my employees who presumably

24  had a right to make the statement, and now I have to on the fly

25  in the six-hour-and-30-minute second -- or 30 -- six hours and

1   30 minutes of a deposition decide whether or not it's not an
2   admission, but it is an exception to the hearsay rule because
3   it's a business record.

4           There's no way that my 30 years of practice makes me
5   prepared through experience to do that because I've never had
6   to do that because it's not required by any court anywhere, any
7   rule.

8           And so the point of it is if the Court wants to
9   streamline the process by saying authentication, foundation,
10  and not objected to at the deposition are waived, I still think
11  that's a 901 issue in the Federal Rules of Evidence.  But if
12  the Court wants to do that, that's one thing.

13          But to then say I'm going to take it the next step and
14  start making you object to hearsay exceptions that you don't
15  believe that it qualifies, that's going somewhere way far
16  afield that's going to cause problems for the trial.  Let's get
17  the documents.  Let's do it the way we've all been doing it for
18  the time we've been practicing.  That's why we're good lawyers,
19  because we have that experience.

20          And so let's do it the way that the rules require it
21  and not let Ms. Fitzpatrick decide to throw out the Federal
22  Rules of Civil Procedure and the Federal Rules of Evidence and
23  say this is the way it should work now.

24          MS. FITZPATRICK:  Your Honor, I take exception to what
25  Mr. Ellis said.  I am asking you to follow the rules.  And

1  Judge Jantz agreed that exactly what we're asking for is

2  following Rule 30 and Rule 32.  Mr. Ellis may have chosen to do

3  it differently.  There may be people that oppose Mr. Ellis in

4  cases that agree to preserve objections until the time of trial

5  and the like.  That is not what the rule is here.  It is very

6  easy.

7         Mr. Ellis just rattled off the business records, what

8  we have to establish.  If that has not been established in the

9  deposition, Mr. Ellis has to say "objection."  He obviously

10 knows what it is.  It's in his head.  He has spewed it here in

11 court.

12        He cannot in the face of that decide I'm going to sit

13 here, even though I know that I'm going to have this objection,

14 and I'm not going to say it in the deposition.  And what I'm

15 going to do is I'm going to wait until ten days or two weeks or

16 three weeks before trial, and then I'm going to state what this

17 objection is.

18        The rules are clear that these objections have to be

19 stated in the record as to the documents, and it's not the

20 relevance.  It's not the 403.  It's not all of those things

21 that we're going to deal with in motions in limine and the

22 like.

23        But I am asking that the rules be enforced here.

24        And so when I say that Mr. Ellis is what gives me

25 concern, it's what Mr. Ellis is saying.  He is in front of your

1    Honor carving out all kinds of exceptions on how he can lay in

2    wait and not object to a document at a deposition and come back

3    and say "gotcha."

4         And the argument that we have heard over and over and

5    over from the defendants is it's not our job to tell you that

6    you didn't lay foundation right.  And my response is sure as

7    heck is.  That's what you do at every trial.  That's what an

8    objection is.  I object because you didn't do it the right way.

9    That's what an objection is.  It needs to be handled in a

10   deposition the same way that it is handled at trial, with the

11   caveat and the carve-out that is specifically in the rules for

12   the 403 and the relevance objections.

13        MR. ELLIS:  I feel like I'm teaching evidence law all

14   of a sudden, because the burden of the person seeking to

15   utilize the hearsay exception is on the party who is doing

16   that.

17        And so what Ms. Fitzpatrick has just suggested is that

18   she could show a witness the document, say, "Have you seen this

19   e-mail before?"  "Yes."  I don't object based on hearsay.  Then

20   the document comes in, even though she did not "Was this

21   created by you on or about the time that's dated?  Is it

22   created by you in the ordinary course of your business?  Is it

23   kept by you in the ordinary course of your business?"

24        Does she have to then -- and you can never do this

25   with a witness testifying.  Does it have an independent

1    reliability to it, which is part of the exception.  How do you

2    do that?

3              And so if she could not even make the attempt to lay a

4    foundation for the business records exception, but because I

5    didn't object, it comes in on that basis, that is completely

6    turning around the burden of who has the burden to lay the

7    foundation.

8              MS. FITZPATRICK:  Your Honor --

9              MR. ELLIS:  That's exactly what she's suggesting.

10             MS. FITZPATRICK:  Your Honor, that's not -- well,

11   actually, it is, and let me just say this.  If I did that at

12   trial, Mr. Ellis in his way would get up and object --

13             THE COURT:  I know.

14             MS. FITZPATRICK:  -- on foundation.  Do it in a

15   deposition.  Yes, you have to object in a deposition the exact

16   same way you do at trial.  It is your obligation as a litigant

17   representing your client on either side to interpose the

18   appropriate objections to whatever happens, whether it's at

19   trial or at a deposition.  That's not doing somebody else's

20   work.  That's doing your work.

21             And he may feel that he's teaching me evidence, but I

22   feel like I might be teaching him trial.

23             MR. ELLIS:  All right.  We'll see about that.

24             THE COURT:  Okay.  All right.  Okay.  Okay.

25             MS. FITZPATRICK:  Yeah, we will.

1          THE COURT:  I thank you.

2          MR. ELLIS:  Yeah, we'll see about that.

3          THE COURT:  This has been so helpful.

4          MS. FITZPATRICK:  We sure as heck will.

5          THE COURT:  Thank you.  So helpful.

6          Okay.  All right.  I'm looking forward to seeing

7    everyone in June by video.

8          MS. FITZPATRICK:  Thank you.

9          MR. ELLIS:  Your Honor, just the final point I would

10   make on that is if you -- if in your order you're clear that it

11   relates solely to authentication and foundation, I don't think

12   you're going to hear any objection over here from that.  But if

13   we start going and using other terms like "business records" or

14   things like that, I think that there would be a concern.

15         Thank you, your Honor.

16         THE COURT:  Have a good day.

17         MS. TROTTER:  Thank you, your Honor.

18         MS. FITZPATRICK:  Thank you, your Honor.

19         MR. CLYDER:  Thank you, Judge.

20      (Concluded at 2:39 p.m.)

21                          * * * * *

22      I certify that the foregoing is a correct transcript of the

23   record of proceedings in the above-entitled matter.

24   */s/ LAURA RENKE*                        *June 2, 2025*
     LAURA RENKE, CSR, RDR, CRR
25   Official Court Reporter