**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT STATUS REPORT FOR THE
JULY 24, 2025 BELLWETHER DISCOVERY CONFERENCE
BEFORE THE HONORABLE MARY M. ROWLAND**

The Plaintiffs' Steering Committee ("PSC") and counsel for Defendants provide this joint status report in advance of the bellwether discovery status conference scheduled for July 24, 2025. Since the June 26, 2025 Case Management Conference, the parties have met and conferred extensively in an attempt to resolve issues related to the scope of discovery propounded on the Bellwether plaintiffs by Defendants, as well as the discovery propounded by the Bellwether plaintiffs on Defendants. [1] As a result of those discussions, Defendants have withdrawn some requests,[2] and narrowed the scope of other requests. However, the following issues remain unresolved and may require judicial intervention.

**I.      General Issue: Temporal Scope**

**Plaintiffs' Position**:

Embedded in many interrogatories is the request that the information sought be provided for a plaintiff's entire lifetime or as far as plaintiff can recall, with no limitation on the time period requested. Plaintiffs submit that there must be a temporal limitation. Indeed, in the already controlling discovery, the parties agreed that such a

---

[1] For the Court's ease of reference throughout this Status Report, the parties attach as Exhibit A: Defendants' First Set of Bellwether Interrogatories, as Exhibit B: Defendants' First Set of Bellwether Requests for Production of Documents, and as Exhibit C: Bellwether Plaintiff Gwendolyn Alexander's First Set of Interrogatories. Identical sets of discovery requests were served by the parties on and by each Bellwether Plaintiff and each named Defendant.

[2] Defendants do not waive their right to discover the information sought through withdrawn discovery requests, including, for example, through deposition testimony.

1

temporal time period would be ten (10) years prior to a plaintiff's injury date. See e.g. Plaintiff Fact Sheet ("PFS") at CMO 9, at PFS Definition No. 6 "Relevant Time Period."

This objection and the temporal limitation are necessary with respect to the following interrogatories which lack any time limitation:  Interrogatory No. 1 (employment history), Nos. 2 and 3 (use of hair care, body care and other products), No. 4 (work in a salon), No. 5 (individuals who applied hair products), No. 7 (enrolled in or took cosmetology courses), No. 8 (bankruptcy), No. 9  (prior lawsuits), 11 (ever had a store loyalty card); 12 (social media accounts); 13 (birth control); 14 (hormone replacement therapy); 15 (sexually transmitted diseases); 16 (insurance policies); 17 (genetic testing); 21 (use of tobacco products); 22 (use of alcohol); 23 (use of recreational drugs). and No. 24 (exercise history).

This objection and the temporal limitation are equally necessary with respect to the following document requests which lack any time limitation: Document Request No. 3 (store loyalty cards); No. 6 (scholastic records/educational materials for cosmetology courses), No. 7 (licenses/certification for cosmetology); No. 8 (renewal/revocation/suspension of cosmetology licenses/certifications), No.10 (salon employment documents), No. 15 (photographs of relaxed hair), No. 18 (photographs of hair in braids, extension, weaves); No. 19 (photographs of highlighted or colored hair), No. 23 (genetic testing records); No. 25 (records of sexually transmitted diseases), No. 26 (data on Apple Watch, mobile devices, etc), No. 27 (diaries/journals on any medical condition), No. 28 (treatment records for smoking cessation, drug or alcohol addiction), No. 30 (social media posting), No. 33 (bankruptcy); No. 38 (occupational exposure to chemical or other products), No. 40 (other lawsuits).

Notwithstanding, Plaintiffs have informed Defendants that they intend to respond to these interrogatories as limited by the previously negotiated time period restriction found within the PFS, namely by providing the responsive information for a period of time that dates back from 10 years before plaintiffs' diagnosis of the injury at issue. The Bellwether Plaintiffs maintain that this is a reasonable time period.

**Defendants' Position**:

Plaintiffs object that Defendants' discovery requests propounded to Bellwether Plaintiffs are broader in temporal scope than the Plaintiff Fact Sheet (PFS).  Defendants never agreed that bellwether discovery would have the same temporal scope as the PFS. In fact, Defendants have always made clear in this litigation that 1) the PFS time scope was limited to the PFS; and 2) Bellwether cases would be subject to additional, broader discovery, including as to temporal scope.  The Court should overrule Plaintiffs' objection that Defendants' discovery requests are overly broad in temporal scope.

Plaintiffs object that Defendants' discovery requests are overly broad in temporal scope.  However, "the scope of discovery is broad." *Azania v. Squadrito*, No. 96-1146,

1997 U.S. App. LEXIS 10834, at *6 (7th Cir. May 7, 1997); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Plaintiffs have the burden to show the discovery sought is overly broad, unduly burdensome, or not relevant. *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). The Court must weigh the burden or expense of proposed discovery and its likely benefit by evaluating the needs of the case, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues. *Id.*

Here, the relevant time period for collection of documents and other information should logically flow from the time periods of alleged use of the products at issue as set forth in the pleadings. *Alford v. Pressley*, No. 2:24-cv-34, 2025 U.S. Dist. LEXIS 12410, at *6 (S.D. Ohio Jan. 23, 2025) ("To resolve the parties' dispute, the Court must look to the scope of plaintiff's claim in the litigation which, in turn, determines the scope of proper discovery."). Bellwether Plaintiffs have alleged they developed cancer through prolonged, and in some cases, decades of use. (*See, e.g.*, Compl. at ¶ 223, ECF No. 106 ("Plaintiffs relied, with reasonable justification, on the misrepresentations by Defendants, which induced them to purchase and use Defendants' hair relaxer products, sometimes on a regular basis for decades.").) In other words, Plaintiffs allege that their injuries are latent and the result of long-term exposure. Given the nature of the alleged injuries in this case, Defendants are entitled to information relating to any and all of Plaintiffs' product use, Plaintiffs' use of other products and exposure to various environmental conditions and their relevant health histories for their lifetimes. However, Plaintiffs do not even agree that Defendants are entitled to discover information for the time period they allegedly used Defendants' products.

## II.        Discovery Propounded by Defendants on Plaintiffs

**Plaintiffs' Position:**

By way of background, it is important to consider the nature and extent of Defendants' First Set of Interrogatories and Request for Production of Documents in relation to the discovery responses Plaintiffs already provided in response to the extensive Plaintiff Fact Sheet. Although Defendants served the Bellwether Plaintiffs with 25 Bellwether Interrogatories, the reality is that Defendants have asked at a minimum 215 additional questions. This includes 25 Interrogatories as the main question and *190 subparts.* While some of the subparts may constitute "discrete subparts" under Rule 33, many subparts involve separate and distinct topics from the main interrogatory and are

improper.[3] Additionally, some of the questions bundle multiple topics into a single question and others are duplicative or overlap with questions previously asked in the Plaintiff Fact Sheet. [4] It is patently clear the Bellwether Interrogatories fly in the face of the Federal Rules on this issue alone.

Additionally, Defendants already propounded more than 99 interrogatories in the context of the Plaintiff Fact Sheet ("PFS"). Notably, the Bellwether Plaintiffs responded to more than 99 questions because an affirmative answer to the main question often required a plaintiff to provide additional information. For example, PFS Section VII.L asks five (5) follow-up questions when a plaintiff answers affirmatively.

The First Set of Document Requests served on the Bellwether plaintiffs consists of 46 requests. These are in addition to the 20 document requests in the PFS. Notably, several of the Bellwether Document Requests overlap with the documents requested in the Plaintiff Fact Sheet.[5]

Despite the extensive nature of the additional discovery served by Defendants, Plaintiffs have engaged in good faith negotiations with Defense Counsel in an effort to streamline the discovery process for the Bellwether Plaintiffs and to provide meaningful responses, which Plaintiffs will do on July 21, 2025.

The Bellwether plaintiffs will be responding to 19 Interrogatories, subject to and without waiver of objections to the overly broad nature of the interrogatories, amongst many other grounds, and with certain sub-parts not being responded to by agreement

---

[3] Notably, the 215 questions asked in Defendants' First Set of Interrogatories does not include the 70+ hair care, personal care, household, and other *categories* of products—let alone the hundreds, if not thousands of individual products that fall within those categories—listed in Interrogatory No. 2. Plaintiffs object to answering Interrogatory No. 2 in its entirety for the reasons set forth below. The information sought in Interrogatory 2 is outside the scope of Rule 26(b) because it is duplicative and unreasonably cumulative. To that point, the Court has already stated: "And…I'm gathering at the price point of these products…that there would be jumping between products, that it's not buying an automobile, *so you wouldn't necessarily know all the time what product you're buying.*" Court Call Hearing Tr., Aug. 29, 2024, at 87:1-6 [emphasis added]. It is, therefore, reasonable to assume the Court will invoke Rule 26(b)(2)(C) and limit the extent of the Bellwether Interrogatories, provided as written, as violating Rule 26b (1).

[4] By way of example, Interrogatory No. 1 is duplicative of PFS Section II.C. and is only relevant if a Plaintiff is also claiming lost wages; Interrogatory No. 11 is duplicative of PFS Section VII.E.II, which also asks for loyalty/rewards cards; Interrogatory No. 12 is duplicative of PFS Section IV.A, which asks about social media accounts that have stored data; and Interrogatory No. 20 is duplicative of PFS Section V.H.I., which requests information regarding psychiatric/mental health.

[5] Document Request No. 2 is duplicative of PFS Document Request A; Document Request No. 13 is duplicative of PFS Document Requests H, I and K; Document Request No. 22 is duplicative of PFS Document Requests B, C, E and F; Document Request No. 23 is duplicative of PFS Document Request D; Document Request No. 27 is duplicative of PFS Document Request N; Document Request No. 35 is duplicative of PFS Document Requests S and T; and Document Request No. 37 is duplicative of PFS Document Request R.

with the Defendants' withdrawal of same (e.g. Defendants agreed to withdraw sub-part (d) of Interrogatory No. 1 and sub-parts (g) and (h) in Interrogatory No. 7). Further, Plaintiffs will provide substantive responses based on reasonable limitations as to time period and scope. Defendants indicated their willingness to review the Bellwether plaintiffs' responses once received and have reserved their rights to later seek to compel further responses should they be later deemed insufficient.

As such, the Bellwether plaintiffs submit that there are six (6) interrogatories that are in dispute that the Bellwether plaintiffs believe are wholly objectionable, improper, and incapable of being responded to, specifically Interrogatory Nos. 2, 3, 9, 10, 15 and 23.[6]

## Defendants' Position:

Defendants' bellwether interrogatories are appropriate in scope and comply with the Federal Rules of Civil Procedure. In compliance with FRCP Rule 33, Defendants collectively served 25 interrogatories on each bellwether plaintiff. Plaintiffs object, *inter alia*, on grounds of numerosity, contending that Defendants have asked 215 questions (25 interrogatories and 190 subparts). Plaintiffs' objections are without merit.

Defendants have not propounded 215 interrogatories. The Northern District follows the related question approach to assess Rule 33 numerosity issues. An interrogatory with subparts is counted as a single interrogatory when, as here, the subparts related to single sets of information or themes. *Coleman v. Illinois*, No. 19 CV 3789, 2021 WL 4242465 (N.D. Ill. Apr. 30, 2021). Here, the subparts to Defendants' bellwether interrogatories are not separable because they are all "logically or factually subsumed within and necessarily related to the primary question" *Bell v. Woodward Governor Co.*, No 03 CV 50190, 2005 WL 3829134, at * 1 (N.D. Ill June 30, 2025).

Moreover, Rule 33 of the Federal Rules of Civil Procedure unmistakably permits "each party" to serve 25 interrogatories upon each other party. *See* Fed. R. Civ. P. 33(a) and Advisory Committee's Note to 1993 Amendment ("Each party is allowed to serve 25 interrogatories upon any other party …"). Most bellwether cases have multiple defendants. Thus, Defendants collectively would have been entitled to propound several multiples of 25 interrogatories, but nevertheless limited themselves to 25, the amount provided by Rule 33.

Finally, Plaintiffs seemingly object to the bellwether interrogatories on grounds that Plaintiffs have already answered a Plaintiff Fact Sheet (PFS). That Plaintiffs completed a PFS does not preclude or otherwise limit the scope of permissible written discovery propounded by Defendants in the bellwether cases. During negotiation of the PFS it was always understood and agreed that the PFS did not replace written discovery that

---

[6] Plaintiffs only object in part to Interrogatory No. 9 and intend to respond as discussed in greater detail in section II.C below.

would take place in the bellwether cases.  The Court has already stated that defendants may issue written discovery in the bellwether case phase.

## A.  INTERROGATORY NO. 2

**Defendants' Interrogatory No. 2**: State whether YOU have used and/or been exposed to any of the products or substances in the categories listed below and, if so, please further IDENTIFY with respect to each such product category: (1) the brand(s) and product(s) names used, if applicable; (2) the date of your first exposure to or use of such product(s) or substance(s); (3) the date of your last exposure to or use of such product(s) or substance(s); (4) how frequently you were exposed to or used such product(s) or substance(s); and (5) what warnings you recall having been provided related to such product(s) or substance(s).  For the full text of this Interrogatory, including the chart, see Exhibit A at page 4.

**Plaintiffs' Position:**

Interrogatory No. 2 asks Plaintiffs to create a chronology of their use of a wide array of products throughout their lifetime by completing a lengthy 6 page chart containing hundreds of products spread over eight (8) categories, which included (a) hair care products; (b) skin care products; (c)body care products;  (d) face care products (e) feminine care products; (f) injectable products; (g) household and/or occupational productions; (h) ingestible products.  Furthermore, as to each product identified by Plaintiffs, they were asked to answer 7 questions, including period of use, frequency of use, brands, and information about warnings.

In a final set of correspondence during the meet and confer process, Defendants pivoted from the chart format, and instead provided a list over 70 categories of products and substances in paragraph form.  While some products were eliminated from that list, the changes to the format—and the minor revisions to the products about which discovery is sought—do nothing to cure the objectionable nature of the requests.  In fact, because Defendants now include language that the request includes but is "not limited to" the listed categories of products, it is arguably even more expansive in scope.

Interrogatory No. 2 is improper because Defendants have failed to, and continue to refuse to, satisfy their burden to demonstrate the relevance of the information sought to the claims at issue in this litigation, as required by Rule 26 and the case law of this Circuit.  Plaintiffs have repeatedly asked Defendants to provide—as their burden requires—evidence or support that Plaintiffs' use of these (potentially thousands) of different products bears any relevance to the claims and defenses in this case, i.e., *any* link between these products and the injuries at issue here.  Defendants have refused— likely because they cannot do so.

Even if Interrogatory No. 2 sought information within the scope of discovery under Rule 26, it is so vague and limitless that it is utterly unanswerable as drafted. It asks Plaintiffs to list every product that they have ever used or been exposed to—at any point in their life—that could fall into more than 70 *undefined* categories of haircare, skin care, body care, face care, feminine care, injectable, and household/occupational products. For example, it asks them to recall every sunscreen, "food container[] plate[], or tableware made of plastic," or air freshener they have ever used or been exposed to in their lives.

Moreover, the sprawling nature of the requests—whether in chart or paragraph form—means Defendants are functionally asking hundreds of interrogatories, well over the 25-question cap imposed by Rule 33.

Because Interrogatory No. 2 seeks wholly irrelevant information, is incapable of being answered due to its vagueness and unreasonable scope, violates civil-procedure rules, and is simply harassing and disproportionate (in light of the lack of relevance of the information), Plaintiffs should not be required to respond to Interrogatory No. 2.

### a. Defendants fail to satisfy their burden of establishing relevance.

Plaintiffs recognize that parties to litigation too often accuse the other side of going on a "fishing expedition." But the fact remains that where a party does not, or cannot, demonstrate that the discovery sought is relevant this Court and the Seventh Circuit do not hesitate to call out the party for abusive and irrelevant discovery—i.e., a "fishing expedition"—and deny the improper discovery sought. That is precisely the situation here.

"Rule 26(b)(1) only allows 'discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case.'" *Kyle v. Brennan*, No. 17 CV 3649, 2020 U.S. Dist. LEXIS 271862, at *4 (N.D. Ill. Aug. 18, 2020) (quoting Fed. R. Civ. P. 26(b)(1)) (emphasis added). Indeed, the 2000 amendments to Rule 26—changing the substantive scope from "subject matter" to "claim or defense"—intended to "add teeth" to the Rule's longstanding relevance requirement. *Ameri v. GEICO Gen. Ins. Co.*, No. CIV 14-0966 JB/SCY, 2015 U.S. Dist. LEXIS 95210, at *25 (D.N.M. July 13, 2015).[7]

Defendants, as the parties seeking discovery, have the burden to establish the relevance of the information sought before they are entitled to obtain it. *Kyle*, 2020 U.S. Dist. LEXIS 271862, at *2 ("The party requesting discovery bears the initial burden of establishing its relevancy"). If the requesting party does not meet their burden to show what they request is relevant, courts "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because

---

[7] While the 2000 amendments to Rule 26 certainly solidified the relevance requirement, this Court has recognized that "[n]either before nor after the amendments to Rule 26 are "fishing expeditions" permissible." *Franklin v. Howard Brown Health Ctr.*, No. 17 C 8376, 2018 U.S. Dist. LEXIS 163929, at *12 (N.D. Ill. Sep. 25, 2018).

the information being sought is ultimately not 'relevant.'" *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *7-8 (N.D. Ill. Nov. 15, 2019) (quoting *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 U.S. Dist. LEXIS 26386, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) (cleaned up). "[D]iscovery is not a means for a party to test every conceivable theory of a claim or defense without any limitation. Relevancy and proportionality are limits placed on discovery in order to ensure that when a party seeks information, there is some basis to believe it will bear fruit and lead to admissible evidence at a trial." *Eternity Mart, Inc.* 2019 U.S. Dist. LEXIS 198880, at *10.

This burden is to establish relevancy "with specificity." *Greenbank v. Great Am. Assurance Co.*, 2019 U.S. Dist. LEXIS 210805, 2019 WL 6522885, at *3 (S.D. Ind. 2019). Mere *speculation* that information "could very well" or may "perhaps" be relevant to a claim or defense is simply not sufficient. *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 U.S. Dist. LEXIS 109558, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015) (holding district court did not abuse discretion in denying discovery where request was based on speculation and party failed to present evidence that it would yield relevant information); *Helping Hand Caregivers, Ltd. V. Darden Rests., Inc.*, 900 F.3d 884, 890 (7th Cir 2018) (The mere hope, without more, of revealing a "smoking gun" is insufficient to support unbounded discovery). This is all to say, a party that speculates there might be relevant information out there is really *fishing*. *See Batchelor v. Merck & Co.*, No. 3:05-CV-791 JTM, 2007 U.S. Dist. LEXIS 86000, 2007 WL 4179015, at *3 (N.D. Ind. Nov. 20, 2007) (denying motion to compel where requesting party appeared to be "merely 'fishing' for discovery and hoping that discovery does exist to support their speculative and possible theory").

As the Seventh Circuit has noted, where a party has failed to meet its burden of establishing relevance, the Federal Rules "allow the fish to object." *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004). And discovery is not permissible where "[defendant] has not given the Court any reason to believe that the pond might be stocked with fish." *Eternity Mart, Inc.* 2019 U.S. Dist. LEXIS 198880, at *9; *see also Sirazi*, 2009 WL 4232693, at *3 (denying motion to compel where there was no basis in the record to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'").

Here, Defendants have not even attempted to demonstrate that the pond might be stocked with fish or that their burdensome interrogatory request will bear fruit. Indeed, there has been absolutely no showing of relevance with regard to Plaintiffs' usage of the more than 70 product categories—let alone the countless specific products that may fall within those categories—listed in Interrogatory No. 2. For example, Defendants have provided zero support for any claim that "cuticle cream," "hair spray," or "perfume" can cause the cancers at issue in this litigation. Throughout the meet and confer process, Plaintiffs' counsel repeatedly asked defense counsel to provide support demonstrating the relevance of these other products. Their refusal to do so all but

concedes the lack of any such evidence. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 08 C 402, 2008 U.S. Dist. LEXIS 21098, at *7 (N.D. Ill. Mar. 14, 2008) (denying discovery stating: "If Pfizer had reason to believe that the peer review analyses would actually counter the MDL plaintiffs' allegations about what it knew or should have known, based on the medical literature available, it surely would have said so. And it has not.").

Defendants have not, and cannot, demonstrate that Plaintiffs' usage of products falling within the categories listed in Interrogatory No. 2 bears any relevance to any claim or defense in this litigation; therefore, that information is not discoverable.

### b. Interrogatory Number 2 is improper as drafted and effectively unanswerable.

Even if Defendants were not prevented from seeking the overwhelming amount of information they seek on relevance grounds, as a practical matter, Plaintiffs cannot answer Interrogatory No. 2 as drafted because (1) the *categories* of products contained therein are vague and undefined; and (2) there is no reasonable temporal limit or minimum amount of use.

First, with a few exceptions, Defendants do not seek information about any *specific product* or substance, but instead, ask Plaintiffs to list all products that fall under any of Defendants' 70+ vague and undefined *categories* of products and substances. Without being provided a definition of these terms, Plaintiffs are left to guess what specific products Defendants want them to address. What falls under the category "any hair care product with a scent?" Indeed, the most egregious examples of the interrogatory's vagueness—and the impossibility of responding to it—is Defendants' inclusion of "catch-all" categories that absurdly request Plaintiffs to provide information about their usage or exposure (throughout their life) to "any scented personal care product", "any hair care product with a scent, fragrance, or perfume," and any "other chemicals in the workplace." Moreover, Defendants do not even limit their requests to just the categories of products identified. Instead, they state that the requests include "but [are] not limited to" the categories of products. As such, Interrogatory No. 2—as revised—now calls for every personal care and feminine care product a Plaintiff has used regardless of whether it fits within one of their undefined categories. Plaintiffs cannot be reasonably required to list every product, chemical, or substance they have ever used or come into contact with just because it—potentially—may fall within one of these overly broad and undefined categories of products.

Second, Defendants refuse to limit the temporal scope of their request. They insist that Plaintiffs must provide the requested product usage information for all of time—since birth. But even if Defendants had provided evidence that exposure to any of these products could be in any way linked to the cancers at issue in this litigation—they have not—they would still need to limit the scope of the request to a reasonable period. Plaintiffs cannot be forced to identify "any scented personal care product" they have been exposed to since they were children.

9

### c. Interrogatory Number 2 constitutes (at least) ~150 separate interrogatories.

As initially served, Interrogatory No. 2 included a chart containing more than 100 different categories of products and substances is an abuse of discovery and constitutes a violation of Rule 33. As revised, it lists over 70 different categories but still contains broad catch-all categories calling for "any" product (e.g. any with a scent) and now states that the requests are not even limited to the categories listed. It also still requests to know about products like mattresses and plastic plates.

Absent an agreement of the parties or court order, a party may serve no more than 25 written interrogatories, including all discrete subparts. Fed. R. 33(a)(1). Under the commonly cited rule "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually *subsumed within and necessarily related to* the primary question." *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 U.S. Dist. LEXIS 12969, at *5-6 (N.D. Ill. June 30, 2005). Here, each separate category of product or substance listed in Interrogatory No. 2 constitutes a discrete subpart, and therefore, is counted as a separate interrogatory under Rule 33. Indeed, an interrogatory requesting information relating to a Plaintiffs' exposure to Asbestos is not "subsumed within and necessarily related to" one requesting information relating to her use of "hair gel." Moreover, for each product category, Defendants seek (5) different pieces of information (subparts). *Even if* the separate subparts relating to the dates and frequency of usage for each product could be deemed non-discrete subparts (and therefore not counted separately), at the very least the last subpart of Defendants' interrogatory— asking about the *warnings* provided with each and every product—is not subsumed within an interrogatory relating to *usage*. Therefore, each category of product constitutes two separate interrogatories (*i.e.* one about usage and one about warnings). According to Plaintiffs' count, that means Interrogatory No. 2, alone, constitutes at least 150 separate interrogatories. As such, even if this information about other products was relevant and discoverable—it is not—Interrogatory No. 2 is improper as drafted because it violates Rule 33.

### d. Any discovery into "other" products would be a two-way street.

Defendants in this litigation make many of the cosmetic, hair care, and body care products listed (by category) in their Interrogatory No. 2. To the extent this Court determines that these products are relevant and discoverable in this litigation—*i.e.* that information about the usage and warnings of these products relates to a claim or defense—then Plaintiffs are equally entitled to discovery from Defendants about their manufacturing, marketing, testing, and sale of these products to consumers. Plaintiffs have already served interrogatories on Defendants seeking information relating to the products listed in Defendants' Interrogatory No. 2. In response, Defendants have objected on the grounds that Plaintiffs' interrogatories call for expert opinions. Regardless of whether or not there is a contention or expert opinion aspect to those interrogatories, should this Court determine that information relating to these other

10

products is discoverable, Plaintiffs would be intitled to the underlying facts and documents (formularies, testing, etc.) relating to any such products produced or sold by Defendants. Plaintiffs do not advocate for going down that road in an already complex litigation, but if Defendants are intitled to discovery about these other products (not at issue in this litigation) then that ruling creates a two-way street.

**Defendants' Position:**

Defendants have addressed Plaintiffs' objections with respect to the chart form of this interrogatory, so the request now seeks narrative responses to the best of a plaintiff's recollection. Defendants further removed reference to all ingestible products, most injectable products, and numerous other products in other categories. The narrowed version of Interrogatory No. 2 that Defendants proposed to Plaintiffs and that Defendants believe each bellwether plaintiff can and should answer in full, is attached as **Defendants' Appendix 1**.

Interrogatory No. 2 seeks information that is clearly relevant to the claims and defenses in this case, including alternate causation evidence. Plaintiffs have argued and will argue that their use of hair relaxer products caused their injuries, but broadly allege that cosmetics generally (and cosmetics marketed to Black people, more specifically) may have "potentially harmful ingredients," and that one in twelve cosmetic products (including non-hair relaxer products) are "highly hazardous." (Compl. at ¶¶ 33-34, ECF No. 106.) Plaintiffs further argue that FDA regulations do not require listing individual fragrances and EDCs or other ingredients combined with fragrances on cosmetics labels, such that "phthalates or other toxic chemicals" may be present in cosmetics. (*Id.* ¶ 81.) If plaintiffs are going to base their allegations on mysterious bad chemicals in "fragrance," they can't argue that using other products, which contains "fragrance," is irrelevant. Moreover, many of the products and substances included in Interrogatory No. 2 were analyzed, just like hair relaxer products, in the Sister Study, and have been found to be associated with an increased risk of ovarian and/or uterine cancers. Defendants are entitled to show that the same allegedly harmful chemicals in hair relaxer products are likewise present in other products that Plaintiffs use. The scope of Defendants' interrogatory is necessary given the vague nature of Plaintiffs' claims.

Defendants are entitled to know which, if any, of the categories of products identified in Interrogatory No. 2 and of the plaintiffs have used, when they used them, and what warnings (if any) they recall having seen relating to those products. Defendants have, at Plaintiffs' request, removed products and substances that are relevant to the claims and defenses in this case but arguably less critical than the products and substances that remain, and have acceded to Plaintiffs' format demands, significantly reducing the burden of responding.

While Plaintiffs may not have a complete recollection of every product within these categories that they may have used, that is, presumably, equally true for the hair relaxer products identified in their complaints. Defendants only ask that a plaintiff provide the

information that they have or can ascertain, with the assistance of their counsel, through a reasonable inquiry. That is what Rule 33 and the law require. Fed. R. Civ. P. 33; *Vitous v. Gallagher Asphalt Corp.*, No. 2:20-CV-382-TLS-JPK, 2023 WL 2583265, at *2 (N.D. Ind. Mar. 21, 2023) (citing *Gevas v. Dunlop*, No. 18 C 6556, 2020 WL 814875, at *2 (N.D. Ill. Feb. 19, 2020) and *Smith v. Howe Mil. Sch.*, No. 3:96-CV-790-RM, 1998 WL 175875, at *2 (N.D. Ind. Feb. 27, 1998).

Further, the information sought by Interrogatory No. 2 and the other interrogatories and requests for production discussed herein, is both relevant and proportional to the needs of this case. Fed. R. Civ. P. 26(b). These plaintiffs each seek to recover millions of dollars in this litigation, and Plaintiffs collectively seek to recover many times that amount. Information regarding other products and substances used by or to which a plaintiff was exposed during the pre-diagnosis time period is critical to causation, which is an essential element of every cause of action brought by each plaintiff in this MDL. Defendants have no way to access this information other than through the plaintiffs, who will be aided by not only their individual counsel but by Plaintiffs' leadership in undertaking the required factual investigation. See Fed. R. Civ. P. 26(g) (plaintiffs and their counsel must certify that answers are made to the best of plaintiff's knowledge, information, and belief after a reasonable inquiry). Defendants' requests for information that bears on the claims and defense in this litigation were not unduly burdensome or disproportional to the needs of these cases, and the benefit of obtaining critical causation evidence outweighs any burden of responding, and that is particularly true after the narrowing of the interrogatory resulting from the meet and confer process. Fed. R. Civ. P. 26(b)(1).

Finally, Plaintiffs argument that discovery on these products should be a two-way street is premature. Defendants don't yet know what other products Plaintiffs used, or whether they were manufactured by Defendants.

## B. INTERROGATORY NO. 3.

> **Interrogatory No. 3:** " For each **HAIR RELAXER PRODUCT** application you listed and identified in **YOUR** PFS, **IDENTIFY** all hair care products identified in Interrogatory No. 2 (a) you used in connection with the **HAIR RELAXER PRODUCTS**, including, but not limited to, gels, creams, serums, shampoos, and conditioners, and set forth whether they were applied immediately before, during, and/or after application of the **HAIR RELAXER PRODUCT**."

**Plaintiffs' Position:**

Interrogatory No. 3 asks Plaintiffs to also provide additional information about the same laundry list of products listed in Interrogatory No. 2, but in the context of whether Plaintiff used them during their applications of Defendants' Hair Relaxer Products.

Therefore, Plaintiffs' objections to answering Interrogatory No. 3 are based on the same grounds as set forth above with respect to Interrogatory No. 2.[8]

**Defendants' Position:**

For all the reasons set forth above with respect to Interrogatory No. 2, Plaintiffs should answer this interrogatory in full. This interrogatory seeks an identification of hair care products (a subset of the products listed in Interrogatory No. 2) that were used in conjunction with any hair relaxer products the plaintiff allegedly used and identified in their PFS. Again, each plaintiff must provide the information they have or can ascertain, with the assistance of their counsel, through a reasonable inquiry.

## C. INTERROGATORY NO. 4

**Interrogatory No. 4**: "Have **YOU** ever worked in a salon or otherwise applied to any person any of the hair care products identified in Interrogatory No. 2(a)."
For the full text of this Interrogatory see Exhibit A at page 11-12.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

---

[8] Defendants' use of a separate interrogatory for this question about the nature of Plaintiffs' usage of the products listed in Interrogatory No. 2 further supports Plaintiffs' argument that the *other* subparts of Interrogatory No. 2 should have been set forth as separate interrogatories.

**Defendants' Position**:

For several discovery requests, including this one and others in which Plaintiffs say they "will be responding . . . subject to and without waiver of objections,"[9] Plaintiffs take the position that their objections should be taken up at a different time on a per plaintiff basis through motions to compel. Defendants' view is that, to the extent all Bellwether plaintiffs have an objection to a discovery request, and that they will collectively limit their responses consistent with that objection, that should be briefed. Those are not plaintiff-specific issues and should be addressed here. They should be addressed in the JSR and ruled upon.

For example, this interrogatory seeks an identification of hair care products (a subset of the products listed in Interrogatory No. 2) that were used by Plaintiffs on others, including through their employment in a salon. Plaintiffs agree to provide this information with respect to hair relaxer products, but do not agree to provide this information with respect to other hair care products. For all the reasons set forth above with respect to Interrogatory No. 2, Plaintiffs should answer this interrogatory in full. Additionally, information provided in response to Interrogatory No. 4 is probative of potential fact witnesses. Information provided in response to Interrogatory No. 4 is likely to lead to the discovery of information regarding how Plaintiffs have used or misused hair care products, including on others. Again, Plaintiffs must provide the information that they have or can ascertain, with the assistance of their counsel, through a reasonable inquiry.

## D. INTERROGATORY NO. 5

**Interrogatory No. 5**: "State all **PERSONS**, including **YOU**, who have applied **HAIR RELAXER PRODUCTS** to **YOUR** hair".

For the full text of this Interrogatory see Exhibit A at page 12.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their

---

[9] *See also* Interrogatories Nos. 5, 8, 9, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 24 and RFP Nos. 2, 13, 35 and 37.

narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

This interrogatory seeks information regarding persons who applied hair relaxer products to Plaintiffs' hair and details about those applications. Defendants are entitled to specific and detailed information about plaintiffs' use of their products. This interrogatory is aimed at developing more information on product usage (including potential misuse), timing, other relevant witnesses, and product identification. The scope and nature of each plaintiff's allegations will, necessarily, drive the scope and nature of their response to this interrogatory. If a plaintiff has used multiple hair relaxer products over multiple years, that plaintiff will have a higher, but justified, burden in responding to this interrogatory. The interrogatory seeks information that is highly relevant and proportionate to the claims at issue. The Court should overrule Plaintiffs' objections and order Plaintiffs to answer this interrogatory in full.

## E.  INTERROGATORY NO. 8

**Interrogatory No. 8**:  "State whether **YOU or YOUR** spouse or domestic partner have filed for bankruptcy."
For the full text of this Interrogatory see Exhibit A at page 14-15.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also see also *Id.*, 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this

interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

This interrogatory seeks information pertaining to bankruptcies. Bankruptcy information as to the injured person should be provided regardless of when the bankruptcy occurred. Defendants understand that Plaintiffs do not dispute this and will provide answers according to this scope.

As to spouses of the injured person, Defendants are willing to limit the spousal bankruptcy information to the time period when the injured person and her spouse were married. This information should be provided irrespective of whether a loss of consortium claim has been asserted and should not be limited in scope as to the time when the bankruptcy was filed.

## F. INTERROGATORY NO. 9

**Interrogatory No. 9**: State all other lawsuits or claims that YOU filed or made, where YOU claim that exposure to chemicals and/or substances caused any bodily injury.
For the full text of this Interrogatory, including subparts (a) through (i), see Exhibit A at page 15.

**Request No. 40**: "All **DOCUMENTS** in **YOUR** possession regarding other lawsuits or claims that **YOU** filed or made, or any other claims, where **YOU** claim that exposure to chemicals and/or allegedly harmful substances caused any bodily injury."

**Plaintiffs' Position:**

Interrogatory No. 9 and Document Request No. 40 ask Plaintiffs to provide information related to "other lawsuits or claims" involving "exposure to chemicals and/or allegedly harmful substances." Plaintiffs agree to respond to only the portion of the requests that ask for information related to lawsuits involving chemical exposures alleging personal injury that were filed in Court and produce Complaints for said lawsuits, which are presently in Plaintiff's possession. However, Plaintiffs object to the remainder of these requests to the extent they seek information on "claims" or Complaints involving

16

"harmful substances." Defendants have not defined either "claims" or "harmful substances," both of which are vague and overbroad and therefore not capable of answering. Defendants have the burden to define these terms and to establish the connection of relevancy to the claims and/or defenses. Moreover, Plaintiffs object to producing "all documents" regarding either lawsuits involving chemical exposures or harmful substances because "all documents" is overbroad and irrelevant to the issues in this case. In summary, Plaintiffs will respond to Interrogatory No. 9 to the extent a lawsuit involves chemical exposure and alleges personal injury and produce Complaints filed in court alleging an injury to Plaintiff from chemical exposure in response to Document Request No. 40.

**Defendants' Position**:

Interrogatory No. 9 and Request No. 40 seek information and documents in a plaintiff's possession concerning other lawsuits filed or claims made by that plaintiff involving chemicals and/or allegedly harmful substances that caused bodily injury. Plaintiffs have not agreed to produce these documents, objecting in part that they do not understand what "substance" means. This is absurd.

It cannot be legitimately disputed that information relating to other lawsuits or claims involving chemical or other harmful substances would bear on the claims and defenses in this litigation, where Plaintiffs are claiming chemicals in hair relaxer products caused them bodily injury.

Such information is relevant to alternative causation, damages and a plaintiff's credibility and, thus Defendants cannot agree to limit request for Request No. 40. Plaintiffs should know whether they have filed a lawsuit and respond to this document request to the best of their ability.

## G. INTERROGATORY NO. 10 and REQUEST NO. 42.

**Interrogatory No. 10:** "State whether **YOU** have ever received any payment or compensation or donation or financial support for **YOUR** alleged injury or treatment in this lawsuit ~~or funding for this lawsuit~~,[10] including through a direct payment, insurance company payment, fundraiser, donation or funding page, or any other similar platform such as GoFundMe, Fundly, Classy, DonorsChoose, Patreon, FundRazr, Indiegogo, Givebutter, Kickstarter."
For the full text of this Interrogatory, including subparts (a) through (f)(i, ii, iii), see Exhibit A at page 17.

---

[10] Defendants have agreed to withdraw their interrogatory as it relates to "funding for this lawsuit."

**Request No. 42:** All **DOCUMENTS** regarding any payment or compensation or donation or financial support for **YOUR** alleged injury or treatment in this lawsuit, including through direct payment, insurance company payment, fundraiser, donation or funding page, or any other similar platform such as GoFundMe, Fundly, Classy, DonorsChoose, Patreon, FundRazr, Indiegogo, Givebutter, Kickstarter.

**Plaintiffs' Position:**

Interrogatory No. 10 and Document Request No. 42 ask Plaintiffs to provide detailed information and documents about payments or financial support related to her alleged injury and treatment through a multitude of sources. This information is irrelevant to the claims and defenses in the case and therefore, Interrogatory No. 10 and Document Request No. 42 should be stricken in its entirety.

### a.  Collateral Source Evidence is Irrelevant

As discussed above, Rule 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As such, the inquiry under Rule 26 is not whether information relates to the case, generally; it must be relevant to a party's *claim or defense* to be discoverable. Here, Defendants cannot make such a showing because the Court has long held that the receipt of a payment or reimbursement related to an injury does not reduce the damages that the defendant owes to the plaintiff, stating, "That a third party reimburses part of a loss does not disable the injured person from recovering under tort or contract law."  *See, e.g., Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2016 U.S. Dist. LEXIS 35759, at *56 (N.D. Ind. Mar. 18, 2016) (quoting *ADM Inv'r Servs. v. Collins*, 515 F.3d 753, 755 (7th Cir. 2008)).  Defendants have made no showing that information relating to any "payment or compensation or donation or financial support for YOUR alleged injury or treatment in this lawsuit"—relates to any claim or defense in this case.  It is irrelevant, and therefore, should not be discoverable. *Dye v. City of Bloomington*, No. 1:20-cv-00518-RLY-DML, 2021 U.S. Dist. LEXIS 258997, at *8 (S.D. Ind. July 9, 2021) (denying discovery and stating "the court agrees that the collateral source doctrine applies; it need not address in any detail Schooner Creek's cases about the discoverability of third-party litigation funding information. The City's only relevance argument—that the funding information affects the plaintiffs' damages and attorneys' fees recovery—directly implicates the collateral source doctrine.").

### b.  Financial support or funding information is not relevant or discoverable.

Defendants' Interrogatory No. 10 initially requested information relating to the "funding of this lawsuit.". Defendants have since stated that they withdraw their interrogatory as it relates to the "funding for this lawsuit." Defendants' withdrawal of that *language*, however, does not change the underlying objectionable and improper nature of the Interrogatory—they are still seeking information relating to direct

18

payments received in relation to the litigation. Indeed, in *Dye*, the court explicitly held that discovery into payments received from various fundraising activities relating to the litigation—*including a GoFundMe account*—was not discoverable. 2021 U.S. Dist. LEXIS 258997, at \*9-10.

Moreover, despite Defendants efforts to call a spade anything other than a spade, the fact remains the interrogatory seeks improper litigation-related payment and financial support information—i.e. litigation funding. In *Miller UK v. Caterpillar, Inc.,* 17 F.Supp.3d 724,[11] this Court held that the litigation funding information sought by defendant were not relevant to a single cogent argument. 17 F. Supp. 3d at 724 (finding the deal documents relevant only to arguments without "any cogency"). Subsequently, in *Fulton v. Foley*, this Court recognized that "[a]s a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case." No. 17-CV-8696, 2019 U.S. Dist. LEXIS 209585, \*5 (N.D. Ill. Dec. 5, 2019) (Harjani, J.) (collecting cases and holding "[t]he assistance of litigation funding, in order to pay the fees and expenses of a litigation, does not assist the fact-finder in determining the credibility of Plaintiff's testimony.").

Relying on the reasoning in *Fulton*, this Court further explained in *Art Akiane LLC v. Art & SoulWorks LLC*:

> In most instances, the real (not theoretical) significance and purpose of the inquiry is to learn *whether* litigation funding is involved in the case. That knowledge would allow the inquiring party to learn whether its opponent has financial difficulties requiring an outside infusion of capital, necessary to allow a party to sue in the first place or to defend itself in litigation.[12] But those facts are "irrelevant"—and potentially harmful to the party obtaining litigation funding—without legitimately advancing the purposes of litigation or of defense one whit. In short, broadly asking in discovery for "documents relating to third-party funding for this litigation" is insufficient without some detailed, meaningful explanation to satisfy the requirement of relevancy.

19 C 2952, 2020 U.S. Dist. LEXIS 171682, \*15 (N.D. Ill., Sept. 18, 2020) (emphasis original) (Cole, J.); *see also, Beam v. Watco Cos., L.L.C.*, No. 3:18-CV-02018, 2021 U.S. Dist. LEXIS 137915, \*5 (S.D. Ill., Jan. 20, 2021) ("litigation loans are as irrelevant to credibility as a party's personal financial wealth, credit history or general indebtedness; much like the latter, the former does not assist a fact-finder in assessing

---

[11] To the best of Plaintiffs' knowledge, *Miller* is the most cited case on this issue.

[12] Courts embrace the idea that litigation funding allows "plaintiffs who would otherwise be priced out of the justice system to assert their rights," *Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020), and permits "lawsuits to be decided on their merits, and not based on which party has deeper pockets or stronger appetite for protracted litigation," *Lawsuit Funding, LLC v. Lessoff,* 2013 NY Slip Op 33066[U], BL 343470 (Sup. Ct. Dec. 4, 2013).

a party's liability or veracity."). The same concerns exist whether Defendants label these attempts to discover the financial status (or difficulties) of the Plaintiffs as "litigation funding" or "financial support", and should be similarly rejected.

In *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d at 619, a mass tort litigation in the District of New Jersey, the court denied defendants' request for "carte blanche discovery of plaintiff's litigation funding" where defendants claimed the information was relevant to, among other things, plaintiffs' credibility and bias and the scope of proportional discovery. The *Valsartan* court required defendants to first make a showing that "something untoward occurred" before litigation funding information was relevant or discoverable. *Id.* at 615; *see also*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) ("[m]ere speculation by the party seeking this discovery will not suffice.").[13] In this MDL, Defendants previously argued—and the Court agreed—that Plaintiffs are not entitled to discovery regarding Defendant's litigation hold letters without first making a showing of spoliation, or otherwise establish their relevance and a need to obtain them. Defendants should likewise be denied discovery of information relating to payments, donations, and funding of the litigation without first making a showing that it is relevant to any issue in a particular Plaintiff's case.

**Defendants' Position**:

Interrogatory No. 10 and Document Request No. 42 seek information regarding financial support any plaintiff may have received in connection with their alleged injuries, including through direct payment or on fundraising platforms like Gofundme. Plaintiffs object that the information and documents sought by Defendants is irrelevant.

Despite Plaintiff's contention, the collateral source rule does not preclude discovery of funding information if it is relevant to claims or defenses and reasonably calculated to lead to admissible evidence. Further, Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for broad discovery of any nonprivileged matter relevant to the case, even if the information is not admissible at trial, provided it may lead to admissible evidence. *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 553 (N.D. Ill. Feb. 24, 2008); *BP Prods. N. Am., Inc. v. Bulk Petroleum Corp.*, 2008 U.S. Dist. LEXIS 69531, at *10 (E.D. Wis. Dec. 7, 2007); *Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532 (N.D. Ind. 2011). For example, if a plaintiff falsely conveys financial destitution or dire financial straits, evidence of collateral source payments, including donations or insurance payments, may become admissible to rebut such claims and impeach the

---

[13] *See Art Akiane LLC*, 2020 U.S. Dist. LEXIS 171682, at *15 ("[B]roadly asking in discovery for 'documents relating to third-party funding for this litigation' is insufficient without some detailed, meaningful explanation to satisfy the requirement of relevancy."); *Pipkin v. Acumen*, No. 1:18-cv-00113, 2019 U.S. Dist. LEXIS 206233, at *4 (D. Utah, Nov. 26, 2019) (rejecting defendant's argument that plaintiff's funding arrangement was relevant to the credibility and bias of a witness and deeming the argument "entirely speculative and insufficient to demonstrate the relevance of the sought-after fee agreements.")

plaintiff's credibility. Courts have recognized that the collateral source rule should not be used as a shield to prevent the introduction of evidence necessary to rebut misleading testimony. *Lawson v. Trowbridge,* 153 F.3d 368, 380 (7th Cir. 1998); *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 760 (7th Cir. 1994).

Moreover, such information is likely to lead to the discovery of, at least: (1) potential fact witnesses with knowledge of a plaintiff's alleged pain and suffering; and (2) information relating to a plaintiff's health history and course of treatment (many such sites include health updates from the patient and/or others familiar with their care); and (3) the reasonableness of a plaintiff's claimed medical expenses.

Further, Defendants do not seek information that is related to litigation funding. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to these requests in full.

## H. INTERROGATORY NO. 11

> **Interrogatory No. 11:** "Have you ever used a store loyalty card and/or a hair product loyalty card and/or participated in a store or hair product loyalty program?"
>
> For the full text of this Interrogatory, see Exhibit A at 16-17.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 11 seeks relevant information regarding Plaintiffs' participation in retailer loyalty programs and hair product loyalty programs.

Plaintiffs object that Interrogatory No. 11 should be limited in scope and is duplicative of the PFS. As stated above, the scope of Interrogatory No. 11 is appropriate given the nature of Plaintiffs' claims. Nor is Interrogatory No. 11 duplicative of the PFS. The PFS seeks store card information as it relates to retailers where Plaintiffs purchased hair relaxer products. It seeks only the store name, card number, and the name and telephone number associated with the account. Interrogatory No. 11 seeks store loyalty information irrespective of whether the plaintiff purchased hair relaxers there. Defendants' request is appropriate because Defendants are entitled to discover whether other products Plaintiffs purchased could have caused their injuries. Indeed, Plaintiffs allege that other personal care products have potentially harmful ingredients. Compl. ¶ 33-34. Interrogatory No. 11 additionally seeks information beyond the information requested in the PFS. Interrogatory No. 11 also asks Plaintiffs to identify when she used loyalty programs, how the programs were accessed, and the benefits received from participating in the programs. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 11 in full.

## I. INTERROGATORY NO. 12 – SOCIAL MEDIA ACCOUNTS

> **Interrogatory No. 12:** "Please **IDENTIFY** and describe all social media accounts, email accounts, and "handles" (usernames or screen names) associates with **YOU**."
> For the full text of this Interrogatory, see Exhibit A at 17-18.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 12 seeks information regarding Plaintiffs' social media and email accounts. Plaintiffs do not object to providing information regarding Plaintiffs' email accounts.

Plaintiffs object that Interrogatory No. 12 is duplicative of the PFS, which asks Plaintiffs to identify social media accounts to the extent the accounts have information regarding how Plaintiffs learned about this litigation and Plaintiffs' hairstyle, use of hair relaxer products, claimed injuries. Interrogatory No. 12 is not duplicative of the PFS because it is broader that the PFS, seeking information regarding Plaintiffs' social media accounts irrespective of whether the accounts have information regarding how Plaintiffs learned about this litigation or Plaintiffs' hairstyle, use of hair relaxer products, or claimed injuries.

Plaintiffs should provide all social media accounts not previously disclosed because this information is likely to lead to the discovery of potential fact witnesses and evidence probative of Plaintiffs' claims for pain and suffering and loss of consortium. For example, if a plaintiff claims that she is or has experienced pain and suffering, Defendants are entitled to rebut that claim by discovering evidence inconsistent with her claims. *See In re Cook Med., Inc.*, No. 1:14-ml-2570-RLY-TAB, 2017 U.S. Dist. LEXIS 149915, at *11-12 (S.D. Ind. Sep. 15, 2017) (social media posts bearing on the plaintiff's loss of enjoyment of life were discoverable). That evidence may be present on social media accounts not disclosed in the PFS, which requests information narrower in scope. Likewise, if a plaintiff claims loss of consortium, Defendants are entitled to rebut that claim by discovering evidence showing that the plaintiff and her spouse continue to have a fulfilling relationship after her alleged injuries. Again, that evidence may be present on social media accounts not disclosed in the PFS, which requests information narrower in scope.

Plaintiffs also object that Interrogatory No. 12 implicates privacy interests. However, the identification of social media accounts, which, by their nature, are public, does not implicate any privacy interest. *In re Cook Med., Inc.*, 2017 U.S. Dist. LEXIS 149915, at *9 ("Viewing a party's public social media profiles does not violate his or her privacy rights—the very nature of social media limits parties' privacy expectations."); *see also In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 106524 (N.D. Cal. June 2, 2025) (rejecting argument that an interrogatory asking bellwether plaintiffs to identify all social media accounts used asked for "private social

media information" because "[m]erely identifying accounts will generally only allow [the defendant] to review content that Plaintiffs have chosen to share publicly."). The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 12 in full.

## J. INTERROGATORY NO. 13

> **Interrogatory No. 13:** "State whether **YOU** have ever used birth control pills, birth control injections, diaphragm, IUD, or intrauterine device, and/or used any other form of birth control (hereinafter collectively 'form of birth control') and/or undergone a tubal ligation."
> For the full text of this Interrogatory, see Exhibit A at 18.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Interrogatory No. 13 seeks relevant information regarding Plaintiffs' usage and form of birth control and/or if Plaintiffs have undergone tubal ligations.

Plaintiffs object that Interrogatory No. 13 should be limited in scope and is duplicative of information found in medical records. As stated above, the scope of Interrogatory No. 13 is appropriate given the nature of Plaintiffs' claims. Furthermore, information regarding Plaintiffs' usage and form of birth control and relevant medical procedures

are not always found in medical records that are provided. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 13 in full.

## K. INTERROGATORY NO. 14

> **Interrogatory No. 14:** "State whether **YOU** have ever taken or used estrogen, progesterone, progestin, testosterone, or any hormones (hereinafter collectively 'hormones') for any reason at any time in YOUR Lifetime."
>
> For the full text of this Interrogatory, see Exhibit A at 19-20.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Interrogatory No. 14 seeks relevant information regarding Plaintiffs' usage of hormones, including estrogen, progesterone, progestin, and testosterone.

Plaintiffs object to the scope of this interrogatory. Plaintiffs' use of hormones is relevant to alternative causation for their alleged injuries. The scope of Interrogatory No. 14 is appropriate given the nature of Plaintiffs' claims. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 14 in full.

### L.  INTERROGATORY NO. 15 and REQUEST NO. 25

**Interrogatory No. 15:** "State whether YOU have ever had a sexually transmitted disease (STD) and/ or sexually transmitted infection (STI) including but not limited to Human Papillomavirus (HPV), chlamydia, HIV, or Herpes, or Hepatitis at any time in your lifetime and if so, to identify details about their experience." For the full text of this Interrogatory, including subparts (a) through (g), see Exhibit A at page 20.

**Request No. 25:** "All DOCUMENTS related to any sexually transmitted disease (STD) and/ or sexually transmitted infection (STI) and / or Hepatitis condition that you have been diagnosed with and / or treated for at any time."

**Plaintiffs' Position:**

Interrogatory No. 15 and Document Request No. 25 ask Plaintiffs to respond to a highly sensitive subject matter about whether they were exposed to sexually transmitted diseases at any time throughout their life. Before this sensitive information can be discoverable, it must first be shown to be relevant. *Eternity Mart, Inc.* 2019 U.S. Dist. LEXIS 198880, at *7-8. Despite Plaintiffs' counsel's requests, Defendants have failed to satisfy their burden to establish that any of the conditions listed in Interrogatory No. 15 has any bearing whatsoever on the claims or defenses in this case. *Kyle*, 2020 U.S. Dist. LEXIS 271862, at *2.  Instead, it appears to be asked for the purpose of embarrassing and/or harassing Plaintiffs.[14] This Interrogatory and Document Request have no place in this litigation and should be stricken based on the precedent cited above.

**Defendants' Position**:

Interrogatory No. 15 and Document Request No. 25 seek information and documents regarding a plaintiff's sexually transmitted diseases and infections.  Plaintiffs object that these requests are harassing because they inquire as to a sensitive subject matter and because they are irrelevant.  Not so.

Defendants acknowledge that these requests seek information and documents of a sensitive nature.  Nonetheless, this information is probative of several issues in these cases.  For instance, sexually transmitted diseases and infections are associated with ovarian cancer.  *See, e.g.*, Skarga et al., "Sexually transmitted infections and risk of epithelial ovarian cancer: results from the Finnish Maternity Cohort," 228 J. Infectious Diseases 1621, 1621 (2023) ("Sexually transmitted infections, specifically Chlamydia trachomatis (CT), may be associated with epithelial ovarian cancer (EOC) risk.").

---

[14] Federal Rules of Civil Procedure authorize district courts to protect targets of discovery from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26 (c).

Moreover, Plaintiffs have directly placed their health at issue in this litigation and are seeking substantial damages as the result of alleged injuries relating to their reproductive organs. Plaintiffs cannot use the nature of those alleged injuries as a sword and a shield. Defendants are entitled to a full picture of each plaintiff's health history and the potential causes of their alleged injuries. Finally, a plaintiff's history of sexually transmitted infections is relevant to her pain and suffering and lost wages claims, each of which will require evidence regarding the plaintiff's lifestyle and life expectancy. As an example if a plaintiff has a sexually transmitted infection that reduces her life expectancy, the jury would be entitled to take that into account when determining the extent of and alleged pain and suffering or lost wages. *Agosto v. Trusswal Sys. Corp.*, 142 F.R.D. 118 (E.D. Pa. 1992) ("If [defendant] is held liable, damages for [] claims [including future pain and suffering and permanent lost earning capacity] will be awarded in part based on evidence of Plaintiff's life expectancy. Therefore, HIV-related evidence of Plaintiff's health is necessary if [defendant] is to adequately prepare defenses to Plaintiff's claims."). The Court should overrule Plaintiffs' objections and order each plaintiff to respond in full to these requests.

## M. INTERROGATORY NO. 16

> **Interrogatory No. 16:** Interrogatory No. 16 asks a plaintiffs to identify "each of **YOUR** insurance policy(ies) and/or plan(s), including Medicare or Medicaid, from the first date of **YOUR** recollection to the present."
> For the full text of this Interrogatory, see Exhibit A at 20-21.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 16 seeks information regarding Plaintiffs' insurance policies. Plaintiffs object to the scope of this interrogatory. As stated above, the scope of Interrogatory No. 16 is appropriate given the nature of Plaintiffs' claims. That is particularly true given that information provided in response to Interrogatory No. 16 is likely to lead to the discovery of information regarding Plaintiffs' health histories. Defendants are entitled to discover information regarding Plaintiffs' health histories, which may include information regarding Plaintiffs' alternative risk factors for their alleged injuries. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 16 in full.

## N. INTERROGATORY NO. 17

**Interrogatory No. 17:** "To the extent nor otherwise disclosed in **YOUR** PFS, state whether **YOU** have ever undergone and/or were recommended to undergo any genetic testing, genetic counseling, or toxicological testing (including but not limited to medical testing for genetic mutations and testing through other sources such as QuestHealth, Ancestry.com, 23andme.com, or any commercial retail entity).
For the full text of this Interrogatory, see Exhibit A at 21-22.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Interrogatory No. 17 seeks relevant information regarding genetic testing, genetic counseling or toxicological testing.

Plaintiffs object that Interrogatory No. 17 should be limited in scope and is duplicative of information found in the PFSs. As stated above, the scope of Interrogatory No. 17 is appropriate given the nature of Plaintiffs' claims. Interrogatory No. 17 is not duplicative of the PFSs. The PFSs ask for information regarding genetic testing for BRCA1 and BRCA2 and if the Plaintiff was recommended to undergo genetic testing and/or counseling. Interrogatory No. 17 seeks information related to any retail genetic testing and recommendations as to any medical genetic testing and/or toxicological recommendations. Defendants' request is appropriate because Defendants are entitled to discover whether Plaintiffs underwent or were recommended to undergo any type of genetic testing and information related to the testing. Interrogatory No. 17 also requests the reason for the recommendation and for pertinent information, such as whether the results indicated any increase risk of developing any kind of cancer and mutations identified, that the PFSs do not seek. Again, Plaintiffs must provide the information that they have or can ascertain, with the assistance of their counsel, through a reasonable inquiry, irrespective of whether some subset of this information was previously disclosed in a PFS.

## O. INTERROGATORY NO. 18

**Interrogatory No. 18:** "State whether any of **YOUR** biological family members (including **YOUR** parents, siblings, children, grandchildren, grandparents, aunts, uncles, or cousins), living or deceased, have been diagnosed with any cancer, any endocrine disorder . . . , and gynecological disorder . . . , any genetic or hereditary disorder . . . and, if so, please **IDENTIFY** such biological family members." For the full text of this Interrogatory, see Exhibit A at 23-24.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory in the form of requesting Plaintiffs to complete a chart consisting of seven (7) additional questions, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts of the chart into their narrative

response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

This interrogatory seeks information regarding Plaintiffs' family histories. Plaintiffs object that this interrogatory is overly broad and unduly burdensome. Family history of cancer and disease is highly relevant alternative causation evidence. For example, "[m]ore than one-fifth of ovarian tumors have hereditary susceptibility." Toss et al., *Hereditary ovarian cancer: not only BRCA 1 and 2 genes*. Biomed Research Int'l (2015), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC4449870/. The burden of providing this information is proportional to its relevance and the needs of the case. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to this interrogatory in full.

## P. INTERROGATORY NO. 19

**Interrogatory No. 19:** Interrogatory No. 19 seeks information regarding Plaintiffs' healthcare providers. For the full text of this Interrogatory, see Exhibit A at 24-26.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 19 seeks information regarding Plaintiffs' healthcare providers. Plaintiffs object to the scope of this interrogatory and object that the interrogatory is duplicative of the PFS. As stated above, the scope of Interrogatory No. 19 is appropriate given the nature of Plaintiffs' claims. Plaintiffs' healthcare providers are likely to have discoverable information regarding Plaintiffs' health histories, including information regarding Plaintiffs' alternative risk factors for their alleged injuries. Nor is Interrogatory No. 19 duplicative of the PFS. The PFS sought information regarding healthcare providers involved in the diagnosis and treatment of Plaintiffs' alleged injuries. This interrogatory seeks information regarding all of Plaintiffs' healthcare providers. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 19 in full.

## Q. INTERROGATORY NO. 20

**Interrogatory No. 20**: "If you allege a psychiatric injury in this matter, state whether **YOU** have ever seen a psychiatrist, psychologist, therapist, counselor, social worker, or any other mental health professional at any time in your lifetime, for any reason."
For the full text of this Interrogatory, see Exhibit A at 26-27.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

31

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Interrogatory No. 20 seeks relevant information regarding psychiatric injuries.

Plaintiffs object that Interrogatory No. 20 is duplicative of information found in the PFSs. Interrogatory No. 20 is not duplicative of the PFSs. The PFSs requested information regarding psychiatric or psychological conditions as it relates to the use of hair relaxer products. Interrogatory No. 20 seeks relevant information regarding psychiatric injuries at any time. Further, the PFSs only requested provider information, the dates Plaintiffs sought treatment, and the condition for which treatment was sought. Interrogatory No. 20 seeks the type of treatment, the reasons for the treatment and information regarding medications, if any. Again, Plaintiffs must provide the information that they have or can ascertain, with the assistance of their counsel, through a reasonable inquiry, irrespective of whether some subset of this information was previously disclosed in a PFS.

## R. INTERROGATORY NO. 21

**Interrogatory No. 21:** "State whether **YOU** have ever used tobacco, nicotine, or marijuana products, including but not limited to, cigarettes, e-cigarettes, vape devices, cigars, pipes, chewing tobacco, snus, zyn, hookah, snuff, gummies, and/or dissolving tobacco." For the full text of this Interrogatory, see Exhibit A at 27-28.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other

sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 21 seeks information regarding Plaintiffs' tobacco, nicotine, and cannabis use. Defendants maintain evidence of tobacco, nicotine, and cannabis use is relevant to Plaintiffs' overall health and potential alternative causation. Additionally, a plaintiff's history of alcohol use is relevant to her pain and suffering and lost wages claims, each of which will require evidence regarding Plaintiffs' life expectancy. A jury is entitled to take a plaintiff's life expectancy into account when awarding damages for Plaintiffs' pain and suffering and lost wages claims. *See, e.g.*, *Garber v. United States*, 665 F. Supp. 3d 945, 956 (S.D. Iowa 2023) ("A shortened life expectancy may be used to reduce damages for loss of earning capacity, future pain and suffering, and future nursing and medical expenses." (cleaned up)). The Court should overrule Plaintiffs' objections and order Plaintiffs to answer Interrogatory No. 21 in full.

## S. INTERROGATORY NO. 22

**Interrogatory No. 22:** "State whether **YOU** have ever consumed alcohol, including, but not limited to, hard liquor, wine, beer, malt liquor, hard cider and/or hard seltzers or other alcohol label products." For the full text of this Interrogatory, see Exhibit A at 28.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this

interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution.   Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Interrogatory No. 22 seeks information regarding Plaintiffs' alcohol use.  Defendants maintain evidence of alcohol use is relevant to Plaintiffs' overall health and potential alternative causation.  Additionally, a plaintiff's history of alcohol use is relevant to her pain and suffering and lost wages claims, each of which will require evidence regarding Plaintiffs' life expectancy.  A jury is entitled to take a plaintiff's life expectancy into account when awarding damages for Plaintiffs' pain and suffering and lost wages claims.  *See, e.g.*, *Garber*, 665 F. Supp. 3d at 956 ("A shortened life expectancy may be used to reduce damages for loss of earning capacity, future pain and suffering, and future nursing and medical expenses." (cleaned up)).  Defendants do not agree to limit Interrogatory No 22.  The Court should overrule Plaintiffs' objections and order Plaintiffs to answer Interrogatory No. 22 in full.

## T.  INTERROGATORY NO. 23

**Interrogatory No. 23:** "State whether **YOU** have ever used recreational drugs and /or illegal drugs and/or  prescription drugs used for a nonmedical  purpose(s)  ("hereinafter  referred  to  as  "Drugs"),  including, but not limited to, THC, cocaine, PCP, heroin, fentanyl, and/or other opioids in any  form."  For the full text of this Interrogatory, including subparts (a) through (f), see Exhibit A at page 28.

**Plaintiffs' Position:**

Interrogatory No. 23 ask Plaintiffs about another topic that is completely unrelated to this litigation, namely whether they have ever used recreational drugs. And to the extent any Plaintiff answers in the affirmative, then Plaintiffs are asked to provide details about such usage. Like Interrogatory No. 15, a Plaintiffs' use of drugs (for non-medical purposes) has no bearing whatsoever on the claims or defenses, and instead, appears to be asked for the purpose of embarrassing or harassing Plaintiffs.  Despite Plaintiffs' counsel requesting Defendants to explain the basis for this question, Defendants did not do so during the meet and confer process. *Eternity Mart, Inc.* 2019 U.S. Dist. LEXIS 198880, at *7-8. Moreover, discovery of this nature should not be permitted in

34

light of the fact that numerous courts have found it too prejudicial to be admissible. *United States v. Cameron,* 814 F.2d 403, 405 (7th Cir.1987) ("However, we have recognized that there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony."); *Dailey v. Hecht,* 757 F. App'x 664, 670 (10th Cir. 2018) ("Evidence of Mr. Hecht's recreational drug use is also highly prejudicial and could lead to a decision on an improper, emotional basis.") This Interrogatory has no place in this litigation because it is unrelated to the claims and defenses in the case and therefore should be stricken.

**Defendants' Position:**

Interrogatory No. 23 seeks information regarding any plaintiff's recreational drug use. Plaintiffs object that the interrogatory is not relevant and is intended to harass and embarrass plaintiffs. Nothing could be further from the truth.

While Interrogatory No. 23 seeks information of a sensitive nature, that information is probative of several issues in this MDL. Plaintiffs have put their health at issue by seeking substantial sums for alleged bodily injuries caused by Defendants products and Defendants are entitled to any information concerning a plaintiff's health, particularly substances that could cause the types of injuries about which the plaintiffs complain and that could impact their life expectancy. Illicit drug use is known to reduce life expectancy. White, *Associations between illicit drug use in early adulthood and mortality: Findings from a National Birth Cohort*, 159 Preventative Med. (2022), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC9227730/ ("Illicit drug use is known to be associated with premature mortality."). A jury is entitled to take a plaintiff's life expectancy into account when awarding damages for pain and suffering or lost wages claims. *See, e.g.*, *Garber*, 665 F. Supp. 3d at 956 ("A shortened life expectancy may be used to reduce damages for loss of earning capacity, future pain and suffering, and future nursing and medical expenses." (cleaned up)). A plaintiff's illicit drug use is independently relevant to a plaintiff's claim for pain and suffering because several illicit drugs reduce symptoms of physical pain. Finally, a history of illicit drug use is relevant to the credibility of a plaintiff who is alleging that additional disclosures or warnings would caused her not to use hair relaxer products because she would not want to put certain chemicals in her body. Given the importance of the information sought by this document request to the claims and defenses in the litigation, the Court should overrule Plaintiffs' objections and order Plaintiffs to respond in full to Interrogatory No. 19.

## U. INTERROGATORY NO. 24

**Interrogatory No. 24:** Prior to **YOUR** diagnosis, please **state**:
(a) What type(s) of exercise **YOU** engaged in;
For the full text of this Interrogatory, including the remaining subparts, see Exhibit A at page 29.

**Plaintiffs' Position:**

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Interrogatory, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Additionally, despite there being numerous subparts to this Interrogatory, Plaintiffs have agreed to provide substantive answers, including that some plaintiffs on their narrative responses possibly merging the subparts into their narrative response or other sub-parts may be wholly inapplicable. Again, plaintiffs are responding to this interrogatory and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position:**

Interrogatory No. 24 seeks information regarding Plaintiffs' exercise history, including information regarding the types of exercise Plaintiffs engaged in, whether they used fitness trackers, whether they were members of a gym, whether they participated in organized sports, and whether they participated in any weight loss programs. Plaintiffs object that the scope of this request is overly broad.

As stated above, the scope of Interrogatory No. 24 is appropriate given the nature of Plaintiffs' claims. Interrogatory No. 24 seeks information that is probative of Plaintiffs' alternative risk factors for their injuries. For example, "[p]hysical activity may influence ovarian cancer risk and outcomes." Moorman et al., *Recreational physical activity and ovarian cancer risk and survival*, 21 Annals of Epidemiology 178, 178-87 (2011), available at http://pmc.ncbi.nlm.nih.gov/articles/PMC3035989/. Likewise, "physical activity in adulthood, even of moderate intensity, may be effective in lowering the risk of endometrial cancer, particularly among those at highest risk for this disease." John et al., *Lifetime physical activity and risk of endometrial cancer*. 19 Cancer Epidemiology, Biomarkers, & Prevention 1276, 1276-23 (2010), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC3225397/. The Court should overrule Plaintiffs' objections and order Plaintiffs to respond to Interrogatory No. 24 in full.

### III.  Defendants' Requests for Production to Bellwether Plaintiffs

#### A.  REQUEST NO. 2

> **Request No. 2:** "All **DOCUMENTS YOU** reviewed and/or used to prepare **YOUR** answers to the concurrently propounded Interrogatories, entitled "**DEFENDANTS' FIRST SET OF BELLWETHER INTERROGATORIES**" served herewith.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Document Request, subject to and without waiver of objections, which is consistent with the Court's direction in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.*, 16:6-20.

Plaintiffs are responding and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Defendants maintain evidence of documents reviewed or used to prepare answers to the PFS is relevant to Plaintiffs' allegations and to alternative causation. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Further, these requests are not duplicative of documents requested in the PFS. RFP No. 2's scope is broader than that requested in the PFS in that it asks for documents from the first date of alleged hair relaxer use that were reviewed or used to prepare answers to the PFS, while the PFS itself only requested documents within ten years prior to the alleged injury. Many of the Plaintiffs allege to have used hair relaxer products for decades. Plaintiffs have not alleged that producing these documents would be unduly burdensome or prejudicial, nor could they. Defendants do not agree to limit Request 2.

## B.  REQUEST NOS. 4 AND 5

> **Request No. 4:** "All receipts and/or credit card statements or other **DOCUMENTS** for any **HAIR RELAXER PRODUCTS** that **YOU** assert caused **YOUR** alleged injuries."

> **Request No. 5:** "All receipts and/or credit card statements and/or other **DOCUMENTS** related to Salon applications of any **HAIR RELAXER PRODUCTS** that **YOU** assert caused **YOUR** alleged injuries."

### Plaintiffs' Position:

Document Request Nos. 4 and 5 asks for a broad set of documents, some of which include those related to proof of purchase of hair relaxer products and others which do not. Plaintiffs have agreed to produce the documents related to proof of purchase of hair relaxer products, which by way of example include receipts for hair relaxer products. However, Plaintiffs object to produce credit card statements in their possession on the grounds that they are irrelevant to the claims and/or defenses in this case.

Credit card statements do not contain an itemization of the products purchased at retail stores and therefore bears no relevancy to evidencing proof of purchase. For instance, a credit card statement will show a Plaintiff made purchases at Walmart, but does not itemize each of the products purchased. And there should be no doubt that discovery of non-hair-relaxer products are not relevant to this litigation and just as Defendants were not required to produce documents pertaining to non-hair relaxer products, the same principle should apply to Plaintiffs. Therefore, Plaintiffs should not be burdened with producing any credit card statements in their possession because they are irrelevant to the claims and/or defenses in this case.

### Defendants' Position:

Defendants maintain evidence of purchases of hair relaxer products is relevant to a plaintiff's duration and frequency of use of such products, among other things. Information within this scope of discovery need not be admissible evidence to be discoverable. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Because this information is discoverable under the Federal Rules, Defendants do not agree to limit Requests Nos. 4 and 5.

## C.  REQUEST NO. 6

> **Request No. 6:** "All scholastic records and/or textbooks or other educational materials regarding cosmetology courses or training in which **YOU** participated."

**Plaintiffs' Position:**

Document Request No. 6 asks Plaintiffs to produce scholastic records and textbooks or other educational material regarding cosmetology courses that they may have maintained in the possession. While Plaintiffs agree to produce any "textbooks or other educational materials regarding cosmetology or training" in their possession, Plaintiffs oppose producing copies of their scholastic records.

The grades that a Plaintiff received in cosmetology courses bear no relevance whatsoever to any claims and/or defenses in this.

**Defendants' Position**:

Defendants maintain evidence of scholastic records relating to cosmetology courses, if any, are relevant to Defendants' theories of alternative causation and knowledge of hair products generally. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 CV 6500, 2015 WL 13901029, at *3 (N.D. Ill. Apr. 28, 2015) (compelling the plaintiff's academic records as relevant to the defendant's alternative cause for termination of residency as it may, among other things, "address other obligations [that the plaintiff] had that could have affected" his performance). Given the probative nature of the information sought by this request, Defendants do not agree to limit Request No. 6.

D. **REQUEST NO. 10**

> **Request No. 10:** "If **YOU** were employed at a salon produce all **DOCUMENTS** related to said employment."

**Plaintiffs' Position:**

Document Request No. 10, which seeks every single employment record of any Plaintiff who was employed at a salon at any time in their life, regardless of the position held, is overly broad, unduly burdensome and seeks documents irrelevant to the claims and/or defenses in this case. By way of example, this Request seeks Plaintiff's complete personnel file, such as employee performance, and personal information about potentially unrelated medical and/or privacy issues. These documents have no bearing on Plaintiff's use of hair relaxer products or resulting injuries and Defendants cannot show how these potential records, many of which infringe on Plaintiffs' privacy, are relevant. To the extent these documents may be relevant, Plaintiffs submit that the production be limited to the boundaries set forth for Defendants in Judge Jantz's Order (see Dkt. 1287), namely those documents that are directly related to hair relaxer products. Furthermore, in so far as this Document Request seeks documents that are in the possession of a third party, such as an employer or former employer, Plaintiffs object to the production of documents that are not in the Plaintiff's possession, custody or control.

**Defendants' Position**:

Defendants believe that evidence of employment and documents relating to employment at any salon where a plaintiff worked with hair care products and/or cosmetics products is relevant to alleged potential exposures to chemical ingredients put at issue by the allegations in this litigation, in which Plaintiffs will need to prove that appropriate use of each specific defendant's hair relaxer products actually caused the specific injuries alleged by each plaintiff.

E. **REQUEST NO. 13**

**Request. No. 13:** "All physical **HAIR RELAXER PRODUCTS** including packaging and/or inserts and/or instructions for use, and all **DOCUMENTS** including but not limited to photographs, drawing, slides, videos, recordings, DVDs, or any other media depicting **HAIR RELAXER PRODUCTS**."

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Document Request, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Plaintiffs are responding and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Defendants maintain evidence of physical products and packaging is relevant to Plaintiffs' allegations and to alternative causation. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Further, these requests are not duplicative of documents requested in the PFS. RFP No. 13's scope is broader than that requested in the PFS in that it asks for documents from the first date of alleged hair relaxer use that were

reviewed or used to prepare answers to the PFS, while the PFS itself only requested documents within ten years prior to the alleged injury. Many of the Plaintiffs allege to have used hair relaxer products for decades. Plaintiffs have not alleged that producing these documents would be unduly burdensome or prejudicial, nor could they. Defendants do not agree to limit Request 13.

## F.  REQUEST NOS. 22 AND 24

> **Request No. 22:** "All Medical records or other **DOCUMENTS** in your possession related to treatment for any disease(s), condition(s) or symptom(s) including, but not limited to, laboratory reports and results of blood tests performed on **YOU**, and **YOUR** use of any prescription drug or medication at any time since **YOUR** first usage and / or application of **HAIR RELAXER PRODUCTS**."

> **Request No. 24:** "All Pharmacy records including, but not limited to, receipts or other **DOCUMENTS** in your possession related to medications taken by **YOU** at any time since YOUR first usage and / or application of **HAIR RELAXER PRODUCTS**."

**Plaintiffs' Position:**

Document Request Nos. 22 and 24 seek an extensive collection of each Plaintiff's lifelong medical history, including treatment with every type of medical or professional provider, regardless of their specialty. These requests go far beyond the scope of relevancy to Plaintiffs' claims, which concern either endometrial cancer or ovarian cancer. By way of example, these requests would require Plaintiffs to produce treatment records with every dentist, chiropractor, podiatrist, etc. they have ever sought treatment from. Moreover, the requests are overly broad in time frame since the period encompasses decades of the plaintiff's life since her first usage of hair relaxer products and in many cases, this includes medical providers during a Plaintiff's childhood since many Plaintiffs began using hair relaxers prior to the age of 18 years. Defendants are not entitled to a blanket production of all of Plaintiffs' medical records for conditions unrelated to her alleged injury.

It is well-settled that a plaintiff does not waive his physician-patient privilege for any and all medical conditions simply by filing a lawsuit. *See Kunkel v. Walton*, 689 N.E.2d 1047, 1053 (IL 1997) (medical record production should be limited to "only that which was relevant to the particular injuries upon which the plaintiff's lawsuit is based" so as to not "discourage tort victims from pursuing valid claims by subjecting them to the threat of harassment and embarrassment through unreasonable and oppressive disclosure requirements.");[15] *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)(" The 'good cause' and

---

[15] There is no federally recognized physician-patient privilege. *See Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004). In diversity cases such as this one, however, the court may

'in controversy' requirements of Rule 35 make it apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are to be automatically ordered merely because the person has been involved in an accident"); *Vasconcellos v. Cybex Int'l, Inc.,* 962 F. Supp. 701 (D. Md. 1997)(limiting discovery to the information directly relevant to the lawsuit, rather than unfettered access to all medical records); *Weil v. Dillon Cos.,* 109 P.3d 127 (Colo., Jan 24, 2005)(stating that the Plaintiff "did not make a complete waiver of his physician-patient privilege by making generic, garden variety claims for pain and suffering and the loss to his qualify of life."); *Collins v. Bair,* 256 Ind. 230, 268 N.E.2d 95, 101 (1971))( holding that the privilege is only waived as to "those matters causally and historically related to the condition put in issue and which have counterclaim or defense made") *Booker v. City of Boston*, Nos. 97-CV-12534-MEL, 1999 WL 734644, at *1 (D. Mass. Sept. 10, 1999) (stating that the "privilege is not waived unless the plaintiff makes positive use of the privileged material in the prosecution of her case"); <u>Bandru v. Fawzen</u>, 46 Pa. D.&C. 5th 1 (Pa. Common Plea 2015)(stating that plaintiffs "medical records concerning treatment for asthma, pleurisy, microischemia, appendicitis, a virus, a colon infection, 'some dental work,' and injuries to his knees and left ankle have no conceivable relevance to the injuries at issue in this litigation)(emphasis added); <u>Hartmann v. Nordin</u>, 147 P.3d 43 (Colo. 2006) (finding that adverse parties do not have access to the entirety of one's medical history despite any inference of implied waiver); <u>Youngren v. Youngren</u>, 556 N.W.2d 228, 233 (Minn. 1996) (quoting Minnesota Rule of Civil Procedure 35.04, which provides only for disclosure of medical records related to the condition at issue); <u>Patterson v. Zdanski</u>, No. 03 BE, 2003 WL 22339492, at *3-4 (Ohio Ct. App. 7d. Sept. 30, 2003)(holding that the trial court abused its discretion in ordering plaintiff to produce OB/GYN medical records without an in-camera inspection of the records since such records were unrelated to her claim and therefore undiscoverable); <u>In re Nance</u>, 143 S.W.3d 506, 512-13 (Tex. App. 2004)(holding the patient-litigant exception to the physician-patient privilege to be inapplicable because the records sought by the defendants did not relate to a condition at issue in the litigation that was being relied upon as part of a party's claim or defense).

**Defendants' Position**:

In a case involving allegations of serious injuries caused by specific products, evidence of medical records and medications relating to any conditions, including those not limited to a plaintiff's diagnoses, are relevant to causation. Further, these requests are not duplicative of PFS requests B, C, E, or F, because those requests relate to medical records, cancer medical records, pathology reports, and chemotherapy agents relating to injuries the plaintiff attributes specifically to their hair relaxer use. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Zaccaro v. 50 E. 196th Assocs., L.P.*, No. 96CIV.5119(JSR)(HBP), 1997 WL 661905, at *1 (S.D.N.Y. Oct. 23, 1997) (granting motion to compel production of the plaintiff's social services file because it may contain relevant information regarding the defendant's defense of alternative

---

refer to state privilege rules where applicable. *See Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 506-07 (7th Cir. 1995).

causation). Given these circumstances, it would not be appropriate for Defendants to limit Requests 22 and 24.

G. **REQUEST NO. 26**

> **Request No. 26:** "All DOCUMENTS and data reflecting information, including data in its native form, stored on any Fitbit, Apple Watch, mobile device, or other fitness and activity tracker (including any health application on **YOUR** phone) in the past 15 years."

**Plaintiffs' Position:**

Document Request No. 26 seeks all documents and data from Fitbits, Apple Watches, etc. This Request violates Plaintiff's right of privacy by attempting to review information from Plaintiff's personal technical devices, Apple Watches, mobile devices, and any type of fitness tracker. Further, this infringement into Plaintiffs' personal devices lacks any reasonable basis to the issues in this case. Defendants have the burden to provide their basis for requesting these extensive records when Defendants have already asked Plaintiffs in Interrogatories to describe their activity level. Moreover, Defendants have the opportunity to question Plaintiffs more extensively during their depositions about their activity level.

**Defendants' Position**:

Document Request No. 26 seeks data stored on a plaintiff's Fitbit, Apple Watch, mobile device, or other fitness or activity tracker, including any health applications on a plaintiff's phone over the past 15 years. Plaintiffs claim they are not in possession of such documents and that they are under no duty to retrieve such data. This claim is unsupportable.

Similar to Interrogatory 24, Defendants are entitled to know the general health of Plaintiffs. *See, e.g.*, NIH National Cancer Institute (n.d.). Physical Activity and Cancer https://www.cancer.gov/about-cancer/causes-prevention/risk/obesity/ physical-activity-fact-sheet. Data from such devices would be evidence of a plaintiff's overall health and of potential alternative causation and is easily accessible. Such data may also be used to support or contest a plaintiff's self-reported activity levels. While the specific method varies by device brand and model, device data may be downloaded by using the companion application on a smartphone and/or by accessing the manufacturer's site online. The device data can be synced from the device to the application and then exported/downloaded. Given these circumstances, Defendants do not believe it is appropriate to limit Document Request No. 26.

## H.  REQUEST NO. 27

> **Request No. 27:**  "All of **YOUR** journals or diaries related to the use of **HAIR RELAXER PRODUCTS** and / or your alleged injuries in this matter and / or any medical condition including, but not limited to, gynecological or infertility."

**Plaintiffs' Position:**

Document Request No. 27 asks Plaintiffs to produce their personal diaries that discuss not only their alleged injury, but also personal diaries regarding any type of medical condition they have ever experienced throughout their lifetime, including gynecological and infertility issues.    While Plaintiffs do not object to producing diaries and/or journals pertaining to their diagnosis and treatment of their allegedly injury, and have already done so in response to PFS Section IX.N, Plaintiffs object to producing any other diaries regarding any other medical condition, including gynecological or infertility.   Delving into Plaintiff's personal diaries and journals on topics unrelated to their claims and injuries violates Plaintiff's right of privacy and constitutes potential embarrassment and harassment of Plaintiffs.    Similarly, Defendants have not provided any reason for seeking this personal and private information. And as noted above, a plaintiff does not waive her physician-patient privilege for injuries not at issue as set forth in the objections to Document Request Nos. 22 and 24. above.

**Defendants' Position**:

Evidence of journals or diaries relating to a plaintiff's alleged hair relaxer use, their alleged injuries, or any other chemical use or medical condition, is relevant to the claims and defenses in this litigation, including alternative causation.  Information within this scope of discovery need not be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1)  Further, these requests are not duplicative of documents requested in the PFS.  Request No. 27's scope is broader than what was requested by the PFS because it seeks documents from the first date of alleged hair relaxer use that were reviewed or used to prepare answers to the PFS, while the PFS merely requested documents within ten years prior to the alleged injury.  Many of the plaintiffs allege to have used hair relaxer products for decades, meaning their responsive documents would pre-date the documents responsive to the PFS.  Further, Request No. 27 asks for journals and diaries regarding any medical condition, which were not sought by the PFS.  Plaintiffs have not argued that producing responsive documents would be unduly burdensome or prejudicial, nor could they legitimately do so.  Thus, Plaintiffs should be required to produce all documents responsive to Request No. 27.

I. **REQUEST NO. 28**

**Request No. 28:** "All **DOCUMENTS** related to treatment for smoking cessation, drug addiction and/or alcoholism."

**Plaintiffs' Position:**

Document Request No. 28 seeks "[a]ll documents" regarding a Plaintiff's treatment *throughout their lifetime* for "smoking cessation, drug addiction or alcoholism." These subject matters are irrelevant to the claims and/or defenses in this case and Defendants have the burden to establish otherwise. During meet and confers, Defendants have not done so. Plaintiffs believe this document request is harassing in nature and should be withdrawn. Defendants have access to information about each Plaintiff's smoking history and alcohol use from their medical records as well responses to Interrogatory Nos. 21 and 22.

**Defendants' Position**:

Defendants maintain evidence of tobacco, drug, and alcohol use is relevant to a plaintiff's health and potential alternative causation. *Zaccaro*, 1997 WL 661905, at *1 (granting motion to compel production of the plaintiff's social services file because it may contain relevant information regarding the defendant's defense of alternative causation); *see E.E.O.C. v. Danka Indus., Inc*., 990 F. Supp. 1138, 1144 (E.D. Mo. 1997) (compelling further deposition of the plaintiff-intervenor who refused to answer questions regarding her purported drug use because it was relevant to the defense of claims for employment action). Accordingly, Defendants cannot agree to limit Request No. 28.

J. **REQUEST NO. 32**

**Request No. 32:** All written and/or electronic communications from **YOU** to any recipient (other than your attorneys) about **HAIR RELAXER PRODUCTS** and/or **YOUR** alleged injuries, or this litigation.

**Plaintiffs' Position:**

Document Request No. 32 seeks all communications from Plaintiff to anyone else regarding hair relaxer products. This request is overly broad as to scope and particularly to the extent it seeks electronic communications of such ephemeral nature such as texts, WhatsApp, Slack, Instant Messaging or other transitory nature that are not in Plaintiff's personal knowledge and/or possession, custody, and/or control. Additionally, Defendants' Document Request requires Plaintiffs to produce information not generated or stored in the form of written or printed records, and Plaintiffs further object on the grounds that such production would be unduly burdensome and oppressive and require Plaintiffs to search through computer records or other means of electronic or magnetic data storage or compilations. Defendants have not provided

any reason for seeking this personal and private information nor shown how such communications are relevant to their underlying injuries or claims in the litigation.

To further complicate compliance with Document Request No. 32, to date the Parties have not negotiated a specific ESI protocol for Bellwether Plaintiffs. For prior production requirements in this MDL, specifically, the PFS, such requirements were contained within the PFS order (CMO 9) itself. The ESI protocol for the MDL (CMO 4) allowed individual Defendants and future phases of litigation (Phase II/Bellwether) to negotiate future ESI protocols as necessary for production formats as needed – including for text messages, social media, emails, etc. for individual plaintiffs. This protocol is still being negotiated between the parties. As such, this Document Request is premature and should be struck from Defendants' Requests pending the entry of a Bellwether specific ESI protocol.

**Defendants' Position:**

Bellwether Plaintiffs' communications about hair relaxer use and/or the injuries they have alleged in this litigation are plainly relevant and are foundational discovery in a case where Plaintiffs are alleging injuries caused by products sold by Defendants. *See J.T. v. City & Cnty. of San Francisco*, 2024 WL 1973471, at *2 (N.D. Cal. May 2, 2024) ("As for Plaintiffs' obligations, the Court rejects Plaintiffs' apparent position that only Defendants' evidence is relevant to the case."). Social media, text messaging, and other messaging applications are some of the primary communication forms used by individuals today. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 1616725, at *10 (N.D. Ill. Apr. 4, 2018) ("The value of [electronic communications] can be particularly significant in litigation due to the fact that the ease of sending or replying to such messages can cause people to say things they might not otherwise say in traditional correspondence. Indeed, they are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other far more complicated bits of evidence."). Plaintiffs cannot hide this information from discovery. Claims that the information is personal or private ring hollow when Plaintiffs have put this information at issue by seeking substantial damages they assert are caused by hair relaxers. Moreover, a claim that information is personal or private does not provide a basis for withholding relevant information. *See, e.g.*, *Rosales v. Crawford & Co.*, 2021 WL 2021 WL 4429468, at *6 (E.D. Cal. Sept. 27, 2021) (regarding social media, "there is no relevant right to privacy or privilege to prevent production.").[16] In any event, the Protective Order (CMO 3) in this case sufficiently addresses any of the bellwether Plaintiffs' purported concerns.

---

[16] *See also, e.g.*, *Allen v. PPE Casino Resorts Md., LLC*, 543 F. Supp. 3d 91, 93 (D. Md. 2021) ("Generally, social media content, even where designated as 'non-public,' is neither privileged nor protected by any right of privacy[.]"); *In re Complaint of Pardise Family, LLC*, 2021 WL 2186459, at *2 (M.D. Fla. May 28, 2021) (same); *Boegh v. Harless*, 2021 WL 1923365, at *7 (W.D. Ky. May 13, 2021) (same); *Rodriguez-Ruiz v. Microsoft Operations P.R.*, 2020 WL 1675708, at *4 (D.P.R. Mar. 5, 2020); *Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013) (same); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010) (requiring production of social media because

Likewise, Plaintiffs' burden objection is conclusory and must be rejected on that basis alone. Defendants did not seek this discovery from all Plaintiffs, instead limiting this request to the 32 bellwether Plaintiffs. Despite Plaintiffs' unsupported statements to the contrary, the burden to collect and produce from that limited number of people is minimal. Much of this information is likely stored in centralized cloud repositories or located on a very limited number of devices and simple to collect, review, and produce in a reasonably usable form with associated metadata per CMO 4. And unlike what was required of Defendants, the data sources will be limited. Plaintiffs do not have to collect, search and produce responsive materials without assistance -- their (Plaintiffs') counsel are obligated to assist in the collection, search, and production of responsive documents and information. *See, e.g.*, *Grullon v. Lewis*, 2025 WL 1693425, at *1 (S.D.N.Y. June 17, 2025) ("To satisfy the requirements of Rule 26(g)(1) and comply with counsel's ethical obligations as an officer of the Court, counsel must be actively involved in searching and producing discovery").[17] Given the highly probative nature of such documents, Plaintiffs should be required to produce all of their electronic communications relating to the hair relaxer products or their injuries.

Plaintiffs' assertion that communications such as text messages are "ephemeral" is not only inaccurate but alarming. Plaintiffs' obligation to preserve relevant communications was triggered at the time they reasonably anticipated litigation, and Plaintiffs (with their counsel's guidance) should have long ago taken all necessary steps to preserve communications, such as messaging data and social media, including by disabling any automatic deletion functions.

Finally, contrary to Plaintiffs' assertion otherwise, the Parties are not in the process of negotiating a CMO 4 (the Stipulated ESI Protocol) carve-out for Plaintiffs' communications. CMO 4 was carefully negotiated to apply to all "Parties" and Plaintiffs have insisted that Defendants follow the provisions. There is no carve-out or special production requirements for Plaintiffs. Rather, Plaintiffs must produce their relevant and responsive documents in compliance with CMO 4. CMO 4 has negotiated, agreed to and Court Ordered provisions for social media, including format and metadata requirements. ECF 109 at § 10, Appendix B. CMO 4 also includes metadata requirements for non-email ESI, which would apply to Plaintiffs' social media, text messaging, and other messaging. ECF 109 at Appendix B. It is unnecessary and Defendants do not agree to undo the hard work already done that resulted in CMO 4 and negotiate a separate ESI protocol just for the bellwether Plaintiffs when they negotiated, agreed to, and enforced the requirements of the existing Order.

---

"a person's expectation and intent that her communications be maintained as private is not a legitimate basis for shielding those communications from discovery").

[17] *See also, e.g.*, *EPAC Techs., Inc. v. HarperCollins Christian Pub., Inc.*, 2018 WL 1542040, at *22 (M.D. Tenn. Mar. 29, 2018) (counsel "must take an active and primary" role in ensuring that their client complies with litigation preservation obligations); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010) ("The preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction. Moreover, this responsibility is 'heightened in this age of electronic discovery.'"); *Merck Eprova AG v. Gnosis S.P.A.*, 2010 WL 1631519, at *5 (S.D.N.Y. Apr. 20, 2010) (sanctions due to counsel's failure "to supervise [the party's] search in any meaningful way").

### K.  REQUEST NO. 34

**Request No. 34:** "All **DOCUMENTS** regarding **YOUR** health insurance policies, including Medicare or Medicaid since your first usage or application of **HAIR RELAXER PRODUCTS**."

**Plaintiff's Position:**

Document Request No. 34 seeks documents regarding Plaintiff's lifelong history of health insurance policies and applications for insurance, that are in Plaintiffs' possession, which necessarily includes irrelevant documents covering periods of insurance coverage years before Plaintiff was diagnosed with endometrial or ovarian cancer. Significantly, this Request is overly burdensome and unquestionably seeks documents that are irrelevant to the claims and/or defenses in the case. Defendants have not presented any justification for seeking this collection of potentially extensive documents. *Heselton v. Espinoza*, No. 21-cv-1592-DWD, 2023 U.S. Dist. LEXIS 6153, at *10 (S.D. Ill. Jan. 12, 2023) (Limiting production to the insurance policy that covers the injury and rejecting request for additional policies, stating "Plaintiffs fail to explain how uncovering additional policies that are unrelated to the policies in effect at the time of the 2021 accident, or that concern other drivers and vehicles, may be relevant to its claims"). For these reasons, Plaintiffs will produce responsive health documents that apply to *plaintiff's injury and related to treatment*, which will allow for the discovery and access to collateral source records.

**Defendants' Position**:

Defendants maintain evidence of health insurance is relevant to Plaintiffs' allegations, to alternative causation and to damages. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Plaintiffs have not alleged that producing these documents would be unduly burdensome or prejudicial, nor could they legitimately do so. Accordingly, Defendants do not believe it would be appropriate to limit Request No. 34.

### L.  REQUEST NO. 35

**Request No. 35:** All of **YOUR** medical bills or statements related to the injur(ies) claimed in this lawsuit.

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Document Request, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these

gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Plaintiffs are responding and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Defendants maintain evidence of medical bills related to the alleged injuries is relevant to Plaintiffs' allegations and to alternative causation. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Further, these requests are not duplicative of documents requested in the PFS. RFP No. 35's scope is broader than that requested in the PFS in that it asks for documents from the first date of alleged hair relaxer use that were reviewed or used to prepare answers to the PFS, while the PFS itself only requested documents within ten years prior to the alleged injury. Many of the Plaintiffs allege to have used hair relaxer products for decades. Plaintiffs have not alleged that producing these documents would be unduly burdensome or prejudicial, nor could they. Defendants do not agree to limit Request 35.

M. **REQUEST NO. 37**

> **Request No. 37**: "If you are asserting a lost wage claim in this matter, all **DOCUMENTS** regarding **YOUR** employment from 10 years prior to **YOUR** date of first diagnosis(es) of the alleged injuries in this matter."

**Plaintiffs' Position**:

Plaintiffs have repeatedly conveyed to Defendants that they will be responding to this Document Request, subject to and without waiver of objections, which is consistent with the Court's direction given in the May 29, 2025 CMC on this very point to allow responses over objections: "But it's perfectly fine to say, 'We object for all these gazillion reasons. Here's our response.'" See Dkt. 1250, May 29, 2025 CMC Tr., 14:16-17, see also *Id.,* 16:6-20.

Plaintiffs are responding and preserving objections to same; hence their agreement to respond is subject to and without waiver of objections.

Plaintiffs have also repeatedly informed Defendants that if they do not believe an answer to be satisfactory, Defendants will have every opportunity to meet and confer with Plaintiff's counsel and/or move to compel a response should the meet and confer process fail to result in a resolution. Therefore, Plaintiffs believe that it is unnecessary to seek Court intervention on this Interrogatory as it is premature to do so at this time and may not be necessary with respect to any Plaintiff's individual response.

**Defendants' Position**:

Defendants maintain evidence regarding Plaintiffs' past employment is relevant to Plaintiffs' allegations regarding lost wages and to alternative causation. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Further, these requests are not duplicative of documents requested in the PFS because the PFS did not ask for employment records, simply W-2s and tax returns. Plaintiffs have not alleged that producing these documents would be unduly burdensome or prejudicial, nor could they. Defendants do not agree to limit Request 37.

## N. **REQUEST NO. 38**

**Request No. 38:** "If you have had any occupational exposure to chemicals, asbestos or other products identified in Plaintiff's response to **DEFENDANTS' FIRST SET OF BELLWETHER INTERROGATORIES"** Question No. 2, served herewith, please provide all **DOCUMENTS** regarding said employment."

**Plaintiffs' Position:**

Document Request No. 38 seeks "All documents" pertaining to a Plaintiff's employment at any jobs held throughout her lifetime involving occupational exposure to chemicals, asbestos, and "other products" is not only overly broad as to subject matter and timeframe but is also vague as to the meaning of "other products." Further, this Request is overreaching in that like Document Request No. 10, in seeking records related to Plaintiffs' employment at a salon, it appears to seek Plaintiff's entire personnel file which if available, potentially includes information unrelated to the claims and defenses in the case. To the extent these documents may be relevant, Plaintiffs submit that the production of personnel and employment records be limited to the boundaries set forth for Defendants in Judge Jantz's Order (see Dkt. 1287), namely those documents that are directly related to hair relaxer products. Furthermore, in so far as this Document Request seeks documents that are in the possession of a third

party, such as an employer or former employer, Plaintiffs object to the production of documents that are not in the Plaintiff's possession, custody or control.

**Defendants' Position:**

Defendants seek evidence of a plaintiffs' occupational exposure. Plaintiffs' PFS responses were limited in that a plaintiff was only required to provide work history if making a lost wages claim. As Plaintiffs are aware, workplace chemicals, asbestos or other products are common sources of exposure to harmful substances and can arise in any number of professions including agriculture, cleaning, construction, cosmetology, demolition, environmental services, firefighting, forestry, healthcare, janitorial services, manufacturing, military, mining, transportation, waste management, among many others. Here, a plaintiff is only asked to provide occupational documents relevant to each's exposure to chemicals, asbestos or other products identified in Interrogatory No. 2. Documents showing a Plaintiff's employment history and details of her assigned roles and responsibilities in these occupations, may identify alternative causes for Plaintiff's resulting health issues. *See Joiner v. General Electric Co.*, 864 F. Supp. 1310 (N.D. Ga. 1994); *Schultz v. Keene Corp.*, 729 F. Supp. 609 (N.D. Ill. 1990). This request spans a plaintiff's entire work history because such workplace exposures can have a complicated and/or significant latency period and therefore may not manifest until years after exposure.[18] Documents evidencing a plaintiffs' occupational exposure to chemicals, asbestos or other products will provide highly relevant facts, including the duration and intensity of such exposures. These facts will be examined by the Parties' expert witnesses who may then offer opinions on the links between a plaintiff's workplace and the plaintiff's claimed injuries in this case.

**IV. Discovery Propounded by Bellwether Plaintiffs on Defendants**

**Plaintiffs' Position:**

The bellwether plaintiffs served case specific discovery demands on the named defendants in their given cases, which included fourteen (14) interrogatories and eight (8) requests for production. These were served on Defendants by individual bellwether counsel between June 4 and 9, 2025.

Defendants object to providing answers to the interrogatories claiming that they are only "contention interrogatories" that require expert discovery. That is incorrect. Plaintiffs did not serve contention interrogatories in violation of any Court order;

---

[18] For example, under *820 ILCS 255/2* and *255/9*, employers must maintain material safety data sheets (MSDS) and make them available to employees for at least 10 years after a substance is no longer in use. Similarly, *820 ILCS 219/60* requires public employers to keep accurate exposure records and provide access to them. These statutory provisions ensure that relevant exposure data remains accessible and support the argument that such documents should be discoverable in litigation involving occupational exposure and toxic tort claims.

instead, in specific response to the broad ranging and deeply intrusive discovery served by the Defendants on the bellwether Plaintiffs, each served discovery asking each of the Defendants to identify the <u>factual</u> basis for the following:

- Which of the items/substances/products that Defendants questioned Plaintiff about in their discovery requests discussed above can be a cause the type of cancer that the Bellwether plaintiff has;
- Which of the forms of birth control that that Defendants questioned Plaintiff about in their discovery requests discussed above can be a cause the type of cancer that the Bellwether plaintiff has;
- Which of the sexually transmitted diseases that Defendants questioned Plaintiff about in their discovery requests discussed above can be a cause the type of cancer that the Bellwether plaintiff has;
- Which of these cancers, endocrine disorders, gynecological disorders, and/or genetic or hereditary disorders Defendants questioned Plaintiff about in the discovery requests discussed above can be a cause or increase the risk of a family member developing endometrial cancer.

Through these Interrogatories, Plaintiffs are merely seeking to determine the factual bases for Defendants' Interrogatories to Bellwether Plaintiffs, something that can narrow the scope to discovery from the far-flung fishing expedition into every chemical, product, and consumer good that each Plaintiff has encountered in her entire lifetime to exposures to chemicals, products and consumer good that can be a cause of her particular kind of cancer.

The plaintiffs are not seeking to know what Defendants' experts or those retained by Defendants' lawyers contend about these products, but instead seek to understand the factual basis supporting the Defendants' unprecedented discovery requests.

First, Defendants, who are manufacturers of products are held to the standard of an expert, *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 613 (7th Cir. 2023), so the information sought should be within knowledge of Defendants, as reasonably prudent product manufacturers, not their experts. Indeed, several (if not all) of these Defendants make some of the personal care products inquired about in Defendants' Interrogatories; if they have knowledge that their other products can cause the cancers at issue, they should be required to disclose that knowledge. Conversely, if they do not have a basis to believe that these other products can cause cancer, they should withdraw their discovery requests concerning those products.

Second, Plaintiffs' discovery requests are warranted – and indeed necessary – in light of the Defendants abject failure to abide by the requirement that discovery be relevant to a claim or defense in the litigation and proportional to the case itself. In the meet and confer process, the Defendants continuously failed to identify any factual basis for why the myriad of chemicals, consumer products and personal care products inquired

about in Defendants' discovery requests are related to any claim that the Defendants' Hair Relaxer Products were a cause of Plaintiff's injuries. They failed to identify if the products could even cause the cancers at issue, the most basic requirement of relevance. This failure forces Plaintiffs to seek the information that Defendants are withholding through a formal discovery mechanism. Furthermore, if Defendants' discovery is designed to support some defense in this litigation, then Plaintiffs are entitled to full discovery on the factual basis for those defenses. Because Plaintiffs' discovery requests are directly responsive to only those products raised by Defendants as part of their defenses in this litigation, it is both relevant and proportional.

Defendants here are simultaneously attempting to extract massive amounts of irrelevant information from each Bellwether Plaintiff while shielding themselves from having to explain why they believe such information is relevant (either through discovery requests or a meaningful meet and confer). These inconsistent positions are not only disingenuous, but they actively work to deny Plaintiffs access to information that <u>the Defendants themselves put squarely at issue in this case.</u> The Defendants simply cannot have it both ways.

Plaintiffs submit that the proper order of discovery here is for Defendants to meaningfully reduce the list of chemicals, consumer products and personal care products in their discovery to only those that they have a factual basis for asserting can be an alternate cause of each Plaintiffs' specific cancers. That can be accomplished through a meaningful meet and confer to narrow the list of products (with the ability to submit those still in dispute specifically to the Court for resolution) or through Defendants answering the Plaintiffs' discovery.


**Defendants' Position:**

The parties met and conferred on Defendants' discovery responses. The only disputes raised were regarding Plaintiffs' special interrogatories numbers 1-4. Plaintiffs' special interrogatories numbers 1 through 4 seek Defendants' contentions with respect to whether various products, circumstances or conditions could cause the plaintiff's alleged injury. Defendants first raised their concerns with Plaintiffs' interrogatories in the JSR dated June 19, 2025. (ECF No. 1270.) The Court addressed Defendants' concerns at the April 27, 2025 status conference. First, such contention interrogatories were required by Court order to be propounded separately from the remaining interrogatories. (Hr'g Tr. at 26 (ECF No. 1201).) Second, and more problematically, the interrogatories clearly seek expert opinions and not facts. By inquiring as to whether a chemical, condition or environmental factor ***could*** cause cancer or other injuries, Plaintiffs are asking for a scientific opinion that is the subject of expert testimony. These are not requests seeking information about Defendants' products, so the notion that a manufacturer should be an expert about the products it makes is not germane to why Plaintiffs' requests are improper. Unlike Defendants' interrogatories propounded on Plaintiffs, which ask for the disclosure of facts that would be within the knowledge of the responding plaintiff, Plaintiffs' interrogatories ask for opinions. As

the Court has already indicated while discussing this issue at last month's Status Conference, such discovery is not appropriate for parties and is instead appropriate for expert discovery. (Hr'g Tr. at 50-51 (ECF No. 1293).) In keeping with the Court's guidance, Defendants advised Plaintiffs that interrogatories numbers 1-4 are not appropriate at this time, as they call for expert opinion. Defendants will respond at the appropriate time in expert discovery. If Plaintiffs, as they have indicated, wish to understand why Defendants are asking for certain information in their discovery requests as to the use of certain chemicals or the existence of environmental, hereditary or other circumstances or conditions, that may be an appropriate subject for meet and confer but it is not a proper basis for propounding discovery.

Dated: July 18, 2025

**FOR PLAINTIFFS:**

Respectfully Submitted,

/s/Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
T: (312) 261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

**FOR DEFENDANTS:**

Respectfully Submitted,

/s/Rhonda R. Trotter
Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
rhonda.trotter@arnoldporter.com

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

kmurray@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY**
**MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY**
**MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA,*
*Inc., L'Oréal USA Products, Inc. and*
*SoftSheen-Carson LLC*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of*
*Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677

F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell
Enterprises, LLC f/k/a House of
Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries,
Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products,
Inc.*

Edward P. Abbot
Erich Gleber
Nicea D'Annunzio
**ECKERT SEAMANS CHERIN &
MELLOT, LLC**
275 Madison Avenue 10th Floor
New York, NY  10016
T: (646) 513-2358
eabbot@eckertseamans.com
egleber@eckertseamens.com
ndannunzio@eckertseamans.com

*Counsel for Defendants Revlon, Inc.,
Revlon Consumer Products Corporation,
and Revlon Group Holdings LLC*

**Defendants' Appendix 1**

**INTERROGATORY NO. 2:**

State whether **YOU** have used and/or been exposed to any of the products or substances in the categories listed below and, if so, please further **IDENTIFY** with respect to each such product category: (1) the brand(s) and product(s) names used, if applicable; (2) the date of your first exposure to or use of such product(s) or substance(s); (3) the date of your last exposure to or use of such product(s) or substance(s); (4) how frequently you were exposed to or used such product(s) or substance(s); and (5) what warnings you recall having been provided related to such product(s) or substance(s).

A. **Hair Care Products**, including: braids, weaves, Brazilian Blowout; Coldwave perms / Jheri Curl products; hair permanents / body waves; deep conditioning creams; detangler; dry shampoo; edge tamer; hair bleach; hair dye; hair growth products; hair gel; hair highlighting products; hair masks/masques; hair oil (including hot oil); hair shine; hair spray; heat processing creams; heat protecting sprays; Japanese hair straightening; keratin; leave-in conditioner; root stimulator / hair food; smoothing balms; texturizers; wave or curl products; Wen® products; and any hair care product with a scent, fragrance, or perfume.

B. **Personal care products you have ever used more than 1 time per month related to cleaning and/or care of your (a) hair and scalp; (b) face; (c) body; (d) fingernails or toenails; or (e) underarm and/or genital region**, including <u>but not limited to</u>: any scented personal care product; deodorants or antiperspirants (both products intended for use on underarms and products intended for use on any other part of the body); sunscreens; talc; petroleum jelly; makeup remover; nail polish remover; cuticle cream; cleansing cream; perfumes or fragrances; talcum powder or baby powder.

C. **Feminine care products**; including <u>but not limited to</u>: estrogen skin patches; vaginal creams, gels, or sprays; vaginal douche; vaginal suppositories.

D. **Insulin or GLP-1 Receptor Agonists**

E. **Household and / or Occupational Products or Substances**, including: RoundUp; pesticides; insecticides; herbicides; asbestos; scented cleaning product(s); air fresheners; other products with fragrance or scent; benzene; flame retardant chemicals; talc; radon; formaldehyde; food containers, plates, or tableware made of plastic; radiation (other than for medical or dental care provided to you); other chemicals in the workplace.