IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br><br>Master Docket No. 23-cv-0818<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC (collectively, "Defendant" or "Revlon") move to compel the National Institutes of Health ("NIH") to comply with a subpoena for documents issued in connection with this MDL. For the reasons stated herein, Revlon's motion is denied.

### I. Background

NIH funded and its researchers authored two studies that correlated hair relaxer use with higher rates of ovarian and uterine cancers. *See* Alexandra J. White, *et al.*, *Use of hair products in relation to ovarian cancer risk*, Carcinogenesis, 42:1189-1195 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8561257/ ("White Study"); Che-Jung Chang, *et al.*, *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, Journal of the National Cancer Institute, Oct. 17 (2022), https://pubmed.ncbi.nlm.nih.gov/36245087 ("Chang Study") (collectively the "NIH studies"). Plaintiffs' Master Long Form Complaint relies on and cites to the NIH

1

studies. [106] ¶¶ 85–91.

On February 14, 2024, Revlon issued a subpoena to NIH. *See* [1034-1]. Following meet-and-confers, Revlon narrowed its requests and is seeking the production of: (1) all "data collected, compiled, or created" for the studies; (2) any correspondence between NIH or the study authors and plaintiffs' counsel; (3) all "drafts, versions, and releases" of the Chang and White Studies; and (4) any "documents, work papers, and communications . . . reflecting any analysis of the" study data by its authors. [1034-1] at 10–11. On July 24, 2024, this Court entered an agreed protective order to govern the production of documents from NIH. *See* [777].

NIH has agreed to produce the study data and communications between the NIH or the study authors and Plaintiffs' counsel. [1034] at 3; [1185] at 1–2. To date, NIH has produced the study data and at least some communications with Plaintiff's counsel.[1] [1034] at 3; [1185] at 1–2. NIH contends all internal documents and correspondence, including work papers, drafts, and analyses related to the studies, are protected by the deliberative process privilege. *See* [1185]. Revlon moved to compel on the grounds that NIH's assertion of the privilege is overbroad and even if the privilege did apply, the requested documents nevertheless should be produced. NIH disagrees.[2]

---

[1] NIH produced a privilege log of the withheld study drafts with its response to Revlon's motion to compel. [1185] at 18–27. NIH reports it has not completed its search for or review of communications and requests the court allow time for NIH to prepare a log asserting privilege on a more individualized basis if the Court is inclined to grant Revlon's motion. *Id.* at 12. Revlon disputes the log provides sufficient information to evaluate NIH's privilege assertions. [1224] at 8.

[2] The MDL Plaintiffs oppose Revlon's motion to compel on the grounds that the subpoena seeks private medical information, imposes an undue burden on a non-party, and will chill scientific research. *See* [1190]. Revlon requests the Court strike Plaintiffs' brief as untimely, for lack of standing, and as

2

II.   **Standard**

District courts have broad discretion in supervising discovery and ruling on discovery motions. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 (7th Cir. 2012). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citation omitted).

Under Federal Rule of Civil Procedure 45, the scope of discovery that a party may seek in a subpoena is as broad as the rules of discovery allow. *EEOC v. AutoZone, Inc.*, 2016 WL 7231576, at *2 (N.D. Ill. Dec. 14, 2016). A subpoena may request information about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..." Fed. R. Civ. P. 26(b)(1).

III.   **Analysis**

NIH argues the motion to compel must be denied for two reasons: (1) Revlon never properly served its subpoena on NIH and thus NIH has no legal obligation to produce documents; and (2) the deliberative process privilege protects the documents Revlon seeks. In support of its motion, Revlon argues (1) NIH has not properly asserted the deliberative process privilege; (2) if NIH properly invoked the privilege,

---

procedurally improper. [1224] at 8, 19–20. A party may move to quash a subpoena directed at a third party if the subpoena "infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). Courts recognize a "legitimate interest" where the materials sought implicate "a claim of privilege, privacy, or other personal right." *Davis v. Nanny*, 2018 WL 656597, at *2 (S.D. Ill. Feb. 1, 2018). Plaintiffs' assertion of interest in the privacy of the health information of MDL Plaintiffs who participated in the NIH studies suffices to establish standing. *HTG Cap. Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015) (finding standing where the claimed "privacy interest is minimal at best"). Accordingly, the Court declines to strike Plaintiffs' brief.

3

the assertion is overbroad; and (3) if the privilege does apply, Revlon has demonstrated a particularized need for the documents that NIH seeks to withhold. The Court addresses each of these arguments.

**a. Service**

We begin with a procedural deficiency. NIH contends Revlon's subpoena cannot be enforced because Revlon never properly served NIH. [1185] at 2–3. Pursuant to 45 C.F.R. § 4.2, subpoenas issued to the Department of Health and Human Services and the operating divisions within HHS, including NIH, must be either (a) mailed to HHS's General Counsel; or (b) delivered in person to the staff of the Office of Legal Resources. Here, Revlon did not mail or deliver in person the subpoena to the addresses set forth in the regulation, but instead it served NIH's Chief of Staff. [1185] at 15 (Declaration of Paul J. Robertson ¶ 5 ("Robertson Decl.")); [1224-1]. Absent proper service, NIH insists it has no legal obligation to produce records; and therefore, there are no valid grounds on which this Court can order compliance with the subpoena. [1185] at 2–3.

Revlon asserts NIH waived this objection. [1224] at 17–18. Under Rule 45(d)(2)(B), a non-party served with a subpoena for documents must object "before the earlier of the time specified for compliance or 14 days after the subpoena is served." *See Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (quoting Fed. R. Civ. P. 45(d)(2)(B)). The deadline for NIH's objection was February 29, 2024. [1224] at 18.

The Court agrees with Revlon. NIH's objection to service is too late. NIH did

4

not raise this objection until over a year after service—well after the February 29, 2024 deadline set forth under Rule 45. [1224] at 17–18. In the meantime, NIH undertook a series of actions indicating that it understood that service was proper and a response was required, including engaging in meet-and-confers, entering an agreed protective order, and producing some documents. *Id.* Accordingly, NIH has waived its objections to the service of the subpoena. *See, e.g.*, *Keen v. Merck Sharp & Dohme Corp.*, 2019 WL 1595883, at *4 (N.D. Ill. Apr. 15, 2019), *aff'd*, 819 F. App'x 423 (7th Cir. 2020) (holding non-party waived objections to deficient service of a subpoena by failing to timely object); *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D. Ill. 2002) (same). Even if NIH did not waive this objection, this is a defect that readily can be cured through prompt service as directed under 45 C.F.R. § 4.2. *See Atl. Inv. Mgmt., LLC*, 212 F.R.D. at 397. The Court will not delay proceedings and add to litigation costs to correct this error. *See, Ansur Am. Ins. Co. v. Borland*, 2022 WL1605338, at *3 (S.D. Ill. May 20, 2022) ("[Non-party] would have the Court elevate formality of the procedure for service over its actual receipt of the subpoena. The Court declines to do so.")

The cases cited by NIH do not dictate a different outcome. *Barnhill v. United States*, 11 F.3d 1360, 1370 (7th Cir. 1993) (reversing judgment entered as sanctions against party who directed non-party not to appear for trial testimony on the basis of defective service of the subpoena); *Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 11 (N.D. Ill. 1986) (concluding criminal contempt proceedings for failure to comply with a subpoena not justified because the subpoena was served more than 100 miles

5

outside the district but finding defendant waived insufficiency of process as a defense to civil contempt); *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *4 (N.D. Ill. Apr. 22, 2020) (declining to enforce subpoena on the "well established" grounds that "a subpoena left in a non-party's mailbox cannot be enforced because it has been improperly served"). "The fundamental purpose of properly serving a subpoena is to make certain that the recipient receives it." *Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *5 (N.D. Ill. Apr. 22, 2020). That purpose was fulfilled here.

### b. Deliberative Process Privilege

NIH asserts the documents Revlon seeks are protected from production pursuant to the deliberative process privilege. The deliberative process privilege protects "communications that are part of the decisionmaking process of a government agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52 (1975)). The privilege shields "communications made prior to and as a part of an agency determination" from disclosure. *Id.* These communications include "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). When assessing deliberative process privilege claims, courts first determine whether the government has shown the privilege applies to the documents it seeks to protect and then, if the government has satisfied its *prima facie* burden, the burden shifts to the party seeking the documents to show a particularized

6

need for the documents. *Ferrell v. U.S. Dep't. of Housing and Urban Dev.*, 177 F.R.D. 425, 428 (N.D.Ill.1998).

### i. Government's *Prima Facie* Showing

For NIH to satisfy its *prima facie* burden, it must meet the following conditions:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997) (citing *United States v. Board of Educ. of the City of Chicago*, 610 F. Supp. 695, 698 (N.D. Ill. 1985)); *accord United States v. Reynolds*, 345 U.S. 1, 8–9 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.").

NIH contends it has met its burden by submitting a declaration from NIH Senior Attorney Paul J. Robertson. [1185] at 4 (citing Robertson Decl. ¶¶ 6–8). Robertson is the NIH attorney responsible for handling the agency's response to Revlon's subpoena and he explained the reasons for NIH's assertion of the deliberative process privilege based on a limited review of some (but not all) of the documents at issue and conversations with NIH scientists who drafted the records. Robertson Decl. ¶¶ 3, 7–8. He claims the privilege applies because the drafts and the communications relating to the drafts "contain the types of questioning and debate that NIH's scientists must be allowed to engage in with candor in order to produce

7

trustworthy and reliable work product." *Id.* ¶ 8. Disclosure, Robertson insists, would stymie free exchange of ideas and chill future communications for fear that comments may be taken out of context and questioned. *Id.*

Revlon claims NIH has not properly asserted the privilege. Defendant argues the privilege was not properly invoked because NIH asserted the privilege (a) during a phone call; (b) through counsel; and (c) without individually reviewing or identifying each withheld document. [1034] at 10–11; [1224] at 8–11. The Court disagrees. NIH has substantially complied with the procedural requirements for asserting the deliberative process privilege. As an initial matter, NIH now has submitted an affidavit and privilege log claiming the privilege in writing. *See generally* Robertson Decl. This resolves one of Revlon's arguments. *See Guzman v. City of Chicago*, 2011 WL 55979, at *2 (N.D. Ill. Jan. 7, 2011) (finding affidavit filed with opposition to motion to compel is "not fatal to the claim of privilege"); *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, 1987 WL 20408, at *7 (N.D. Ill. Nov. 20, 1987) (same) (*citing Board of Educ.*, 610 F. Supp. At 698); *accord Edgar*, 964 F. Supp. at 1210 (agreeing deliberative process privilege applies despite lack of an affidavit attesting to the reasons for preserving confidentiality).

NIH's assertion of the privilege through counsel is a closer call, but this too satisfies NIH's *prima facie* burden. According to NIH, the privilege may be asserted through counsel. [1185] at 11. Revlon counters that the privilege must be asserted by the "department head" of an agency or by a "designated high-ranking subordinate"

8

and "government litigation attorneys" cannot fulfill this requirement. [1034] at 10; [1224] at 9–10. Understanding the purpose of a formal claim of privilege clarifies who may properly invoke the deliberative process privilege. Unlike a simple claim of privilege, the requirement of a formal claim is not just to substantiate the legal basis of the claim but "to assure that the privilege . . . is not lightly claimed." *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 605 (D.D.C. 1979). The decision "involves policy" and should be made by someone with "the larger public interest in mind." *Id.* The decision-maker should be in "a position of sufficient authority and responsibility to weigh prudently the competing considerations of making evidence available in litigation and protecting important government interests." *Id.* Permitting litigation counsel to assert the privilege would undermine the purpose of a formal claim by making it "difficult to develop a consistent policy of claiming the privilege" and allowing "the judgment of attorneys engaged in litigation . . . to be affected by their interest in the outcome of the case." *Pierson v. United States*, 428 F. Supp. 384, 395 (D. Del. 1977).

Here, NIH's invocation of the deliberative process privilege serves the underlying policy goals. The NIH attorney who asserted the privilege is not litigation counsel but rather is responsible for responding to third-party subpoenas directed at NIH. Robertson Decl. ¶ 2. It would be different if NIH's attorneys at the Department of Justice asserted the privilege. There is no suggestion Robertson asserted the privilege to protect NIH's interest in the outcome of the case (nor is it clear NIH has any interest in the litigation as a non-party). Instead, he invoked the privilege based

9

on his familiarity with the sought-after records and NIH's procedures. *Id.* ¶ 7. Although Robertson acknowledges he did not personally review every draft of the studies or related communications, considering the breadth of the requests, *e.g.*, "[a]ll documents, work papers, and communications or correspondence reflecting any analysis" by the Chang or White study authors, such a review would burden the agency's resources and there is no claim the sample Robertson reviewed is unrepresentative. *Id.*; *see also Holmes v. Hernandez*, 221 F.Supp.3d 1011, 1017 (N.D. Ill. 2016) (recognizing personal review of every single draft report "would require a substantial drain on the general counsel's time" and finding identification of reports as a category protected by the privilege sufficient).

The Court is satisfied the assertion of the deliberative process privilege through NIH Senior Attorney Robertson satisfied NIH's burden, though the Court has concerns regarding the breadth and specificity of the assertion, which are addressed below. *See Holmes*, 221 F. Supp.3d at 1017 (general counsel's assertion of privilege "based on her familiarity with the agency's investigative procedures" and relevant documents was enough to make *prima facie* case of deliberative process privilege); *cf. Evans v. City of Chicago*, 231 F.R.D. 302, 318 (N.D. Ill. 2005) (finding belatedly-filed "conclusory affidavit" from agency's legal counsel insufficient to establish *prima facie* case where there was no evidence the affiant, who only reviewed a privilege log and certified it was "true and correct," gave "personal consideration to the problem") (quoting *Ferrell*, 177 F.R.D. at 428); *Kaufman v. City of New York*, No. 98CIV.2648(MJL)(KNF), 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999) (explaining

10

privilege is not properly asserted where the government "failed to identify who the decisionmaker is who is asserting the privilege after having reviewed the withheld documents").

### ii. Particularized Need

The deliberative process privilege is a "qualified" privilege that can be overcome if the party seeking discovery shows a "particularized need." *Edgar*, 964 F. Supp. at 1208–09. Courts balance this need of the party seeking disclosure against the government's need for confidentiality by weighing five factors:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies.

*Id.* at 1209; *Illinois League of Advocates v. Quinn*, 2013 WL 4734007, at *5 (N.D. Ill. Sept. 3, 2013). Here, Revlon has not articulated a sufficient particularized need, let alone one that outweighs NIH's interest in protecting the sought after documents and communications.

There is no dispute that the second and fourth factors weigh in favor of finding that Revlon has a particularized need. The second factor asks whether Revlon could obtain the same information from sources other than the withheld documents. NIH admits the internal drafts, work papers, or communications about the White and Chang Studies are not available elsewhere. Though, the Court notes Revlon could seek communications between NIH researchers and MDL Plaintiffs' counsel from counsel, to the extent there are any more communications beyond what NIH has

11

already been produced. The fourth factor examines the seriousness of the litigation. There is no question this litigation is of the utmost importance for the thousands of plaintiffs, who have been diagnosed with serious uterine, ovarian, and endometrial cancers allegedly from their use of hair relaxer products manufactured by Revlon and the other MDL Defendants. This case also has important ramifications for MDL Defendants, who face "significant potential liability." [1034] at 18. And on a broader level, society has an interest in this litigation that touches on the safety of personal care products many people use. Thus, the Court turns to the remaining three factors, all of which weigh against finding a particularized need that overcomes the deliberative process privilege.

**Relevance**. Revlon claims the analyses, work papers, drafts, and correspondence they seek are "directly relevant" to the litigation. [1034] at 15–16; [1224] at 14–15. Revlon's assertion of relevance is rooted in the perceived central role of the White and Chang Studies in this litigation. Indeed, as this Court and the Judicial Panel on Multidistrict Litigation have recognized, this action was prompted by the publication of these studies. *See* [1] at 1–2; [291] at 2, 4. Revlon contends the sought-after internal information will show how NIH evaluated the study data, whether NIH considered other possible interpretations of the data, why NIH designed the studies the way they did, and how confident NIH was in the findings. [1224] at 14. According to Revlon, the raw data alone is not sufficient to comprehensively review the NIH studies. *Id.* This argument amounts to: the studies are key and therefore all of the documents and analyses related to the study are relevant too. NIH

12

agrees the White and Chang Studies and the underlying data from the studies are relevant to the litigation but disputes that internal materials have any relevance. [1185] at 5–6. The studies certainly are key to this litigation and therefore NIH's internal materials are relevant to the litigation in a general sense. But ultimately, the parties must establish scientific proof of general causation through their own experts and evidence. With access to NIH's underlying data, the parties' experts can test the White and Chang Studies while providing their independent opinions. Access to NIH's other internal materials, other than the data, is not relevant to causation.

**Role in the litigation.** Generally, if the government is a non-party in the litigation, this factor weighs against finding a particularized need for disclosure. *Evans*, 231 F.R.D. at 317 (explaining that the government's role as a non-party weighs against a finding of need). But where the government's materials are at the "center of the litigation," this factor may tip in favor of finding a need. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1028 (E.D. Cal. 2010) (finding the government played a significant role in state prisoner's writ of habeas corpus proceeding). NIH is not a party to this litigation nor is NIH's conduct or the conduct of its researchers at the center of this litigation. The White and Chang Studies only prompted Plaintiffs' claims, NIH did not manufacture, market, or sell the hair relaxer products, Revlon and the other MDL Defendants did. General causation is a key consideration in this case, but as addressed above, the parties will prove general causation with their own experts.

**Chilling deliberations.** Revlon and NIH are at odds regarding the chilling

13

effect of disclosure, which NIH views as the "most critical" factor ([1185] at 9). Revlon contends disclosure will have minimal effect on further deliberations within the NIH because there is an expectation of disclosure in "modern scientific research" and NIH is insulated by the protective order. [1034] at 16–17. The Court acknowledges and agrees that "[s]cientists expect to have their data reviewed by other experts in the field in order to ensure the integrity of the results," *Chicago Trib. Co. v. U.S. Dep't of Health & Hum. Servs.*, 1997 WL 1137641, at *21 (N.D. Ill. Mar. 28, 1997), but Revlon's request demands much more than NIH's data, which has already been produced. NIH's concern about the chilling effect is animated by law suits initiated by other MDL defendants against researchers who produced studies that were the catalysts for other MDLs. *See, e.g.*, *LTL Management LLC v. Moline*, No. 23-cv-02990 (D.N.J. May 31, 2023); *LTL Management LLC v. Emory*, No. 23-cv-03649 (D.N.J. July 7, 2023). The Court takes these concerns very seriously.

Finally, Revlon cites to *In re Prempro Products. Liability. Litigation*, 2006 WL 751299 (E.D. Ark. Mar. 20, 2006) throughout its brief to support its argument for a particularized need. In that case, the defendant sought to compel meeting minutes from any standing or *ad hoc* committees or groups at NIH relating to a Women's Health Initiative study and clinical trials. *Id.* at *1. There, NIH previously produced meeting minutes relating to the study in response to a FOIA request and then later claimed the same types of documents were protected by the deliberative process privilege. *Id.* The court noted the prior disclosure of similar documents led to the conclusion that the privilege did not provide a blanket protection. *Id.* at *2 ("the fact

14

that NIH has previously disclosed minutes lead [the court] to conclude that the deliberative process privilege does not provide a blanket protection to the minutes"). But here, NIH has consistently maintained the privilege and there has been no prior disclosure.

Accordingly, Revlon has not established a particularized need to overcome the deliberative process privilege.

### iii. Scope of the Deliberative Process Privilege

Having found that Revlon has not met its burden, we return to the question of what documents and communications fall within the scope of the deliberative process privilege. NIH bears this burden. *Edgar*, 964 F. Supp. at 1210.

Revlon argues the scope of NIH's assertion of the deliberative process privilege is overbroad. [1034] at 11–15; [1224] at 11–14. The Court is sympathetic to Revlon's position. NIH asserted the privilege over *all* internal documents and communications even though it never completed its search for all documents and produced a privilege log of draft reports only after Revlon moved to compel. A non-party withholding subpoenaed documents under a claim of privilege must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *See* Fed. R. Civ. P. 45(e)(2)(A)(ii); *see also* Fed. R. Civ. P. 26(b)(5). NIH's privilege log, which only includes file name, date, type, and size, and Mr. Robertson's affidavit provide little information for Revlon or the Court to assess why or how the privilege applies.

15

The deliberative process privilege generally does not protect "purely factual information" or "[d]iscussion[s] of objective facts" unless they are "inextricably intertwined with the privilege material or would [themselves] reveal the deliberative process." *U.S. S.E.C. v. Sentinel Mgmt. Grp., Inc.*, 2010 WL 4977220, at *3 (N.D. Ill. Dec. 2, 2010). That can be a difficult distinction to navigate, particularly in contexts with scientific and health research such as here. *See, e.g.*, *Chicago Trib. Co.*, 1997 WL 1137641, at *20–21 (requiring production of underlying study data despite revealing the study auditors "independent evaluation and judgment"); *Nw. Envt'l Advocates v. EPA*, 2009 WL 349732 (D. Or. Feb. 11, 2009) (holding documents that "express preliminary staff views or tentative opinions," "represent internal discussions concerning the method by which information is to be analyzed," "express doubt or confusion regarding the information before the agency or how it should be interpreted" are protected by the deliberative process privilege even though they are "of a scientific nature," because "substantial portions of these unpolished scientific drafts contain the personal views of agency staff or contain questions concerning the accuracy of the information or analysis contained within the draft").

Ultimately the Court need not parse this distinction. This Court has broad discretion in supervising discovery and deciding motions to compel. *See Cent. States, Se. & Sw. Areas Pension Fund*, 674 F.3d at 636. For the reasons described above, Revlon has not shown the relevance of the expansive categories of documents it seeks from a non-party. Thus, the Court will not order NIH to produce any additional documents.

16

## CONCLUSION

For the stated reasons, Defendant Revlon's motion to compel the National Institutes of Health [1034] to comply with a subpoena for documents issued in connection with this MDL is denied.

E N T E R:

Dated: July 22, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge