**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT STATUS REPORT FOR THE JULY 31, 2025**
**DISCOVERY STATUS CONFERENCE**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this Joint Status Report in advance of the discovery status conference scheduled for July 31, 2025 before the Honorable Magistrate Judge Beth W. Jantz.

I. *Global Issues*

    a. **Update on Discussions regarding Document Translations**

        **Joint Statement:**

        The parties have met and conferred regarding the translation and use of foreign language documents. Without any party waiving any argument or objection, the parties agree that there is no issue or dispute ripe for resolution at this time, though the parties may revisit these discussions at a later date.

    b. **Current Deposition Status**

        **Joint Statement:**

        The parties attach Exhibit A, which includes the depositions that have been conducted, scheduled, and/or requested.

    c. **Adjustments to Deposition Protocol**

        i. **State court cross-notices**

            **Plaintiffs' Position:**

            As this Court is well aware, in addition to the thousands of women bringing suit in this federal MDL, there are also consolidated hair relaxer related litigations pending in a handful of state courts. On June 16, 2025,

1

this Court entered CMO 19, which permits the attendance at MDL depositions of "counsel in a related state court proceeding(s) where the deposition has been cross-noticed with that related state court proceeding(s)" and requires the MDL parties to use their best efforts to reach agreement on how and when depositions will be coordinated with the state actions. ECF No. 1264 at 2, 9.

Thus far, the vast majority of cross-notices have been issued by certain MDL Defendants. As such, MDL Plaintiffs' counsel has reached out to Defendants about the process for handling those cross-noticed depositions. Specifically, Plaintiffs seek to confirm that the MDL depositions (including any questioning by Defense counsel) would proceed and conclude prior to the commencement of questions by state court counsel in the cross-noticed cases. Given the extent of the cross-notices and the potential of the cross-noticed depositions going multiple days to accommodate the state court-notice, the MDL Plaintiffs want to ensure that their deposition is concluded in a single day.

**Defendants' Position:**

To date, multiple depositions noticed in the MDL have been cross noticed in multiple state court matters, and the depositions have proceeded without issue. Defendants believe that no amendment to the deposition protocol is required at this time.

## II. _Defendant Specific Discovery Status_

### Avlon Industries, Inc.:

#### a. Plaintiff Subpoenas to FTI Consulting and MNJ Public Relations

**Plaintiffs' Position:**

#### MNJ Public Relations

Plaintiffs sent a number of subpoenas at the end of June 2025 to various third parties who supplied Avlon with chemicals, ingredients, or other materials. Avlon initially objected to many of these subpoenas as being overbroad, not focused specifically on Avlon's hair relaxer products, and improperly requesting information on Avlon hair relaxer product line Keracare. Plaintiffs amended the subpoenas to narrow the scope and have generally come to an agreement regarding the majority of the subpoenas. However Avlon has continued to object to any subpoenas seeking information on the Keracare hair relaxer product line claiming they were never sold in the United States and were only sold outside of the USA from 2017 to 2019. Avlon informed Plaintiffs if Plaintiffs do not pull down requests relating to Keracare, Avlon will file a motion to quash.

For expediency, Plaintiffs proposed amending the MNJ subpoena and splitting it into two new subpoenas. The first subpoena would not include any requests related to KeraCare. Avlon would not object to this subpoena such that MNJ can begin collecting the majority of the documents at issue.

The second subpoena issued to MNJ will include requests for documents related only to KeraCare products. That way, to the extent Avlon continues to object to KeraCare, it could do so without delaying the production of the documents that Avlon does not have issue with. Ultimately, Plaintiffs believe that KeraCare products are appropriately included in any subpoenas. As it relates to Avlon's position regarding its belief that marketing products related to KeraCare are not relevant, Plaintiffs state that such communications are relevant when considering that it was a product intended for sale within the United States, but ultimately was not sold in the United States based on feedback from its distributors, as Avlon has suggested was the situation with KeraCare. Moreover, as both Judge Rowland and Judge Jantz have repeatedly indicated, products sold exclusively outside of the United States remain relevant to the claims and defenses in this action. When ruling on products sold outside the United States as it pertains to L'Oreal, this Court ruled that products sold "*outside* the United States can shed light on [defendant's] knowledge and notice of safety risks." This was most recently confirmed by this Court when ordering that L'Oreal must produce Product Information Files (PIFs) for products sold outside of the United States, stating "[c]onsistent with the earlier decisions of both the District Judge and the Magistrate Judge, L'Oreal SA's relevance, proportionality, and burden objections are overruled." See ECF No. 1322 p. 2 citing ECF No. 1261 at 2-3.

### FTI Consulting, Inc.

Plaintiffs issued a third-party subpoena to FTI Consulting, Inc. The basis of Avlon's objection to this subpoena is that the Plaintiffs' request provides no limitation on the scope of materials that Plaintiffs seek from FTI Consulting, Inc. To address Avlon's concerns, Plaintiffs have proposed restricting the temporal scope of the subpoena and/or document production to conclude on the date Avlon was initially named as a Defendant in this litigation. This compromise is intended to address Avlon's concerns. The parties are engaged in ongoing discussions regarding this compromise and aim to resolve the matter prior to seeking the Court's intervention.

**Avlon's Position:**

On June 25, 2025, Plaintiffs issued more than 70 subpoenas to different entities and individuals. Among those subpoenaed were Salon Commodities, Inc., FTI Consulting, Inc., and MNJ Public Relations/Carte Blanche PR. Avlon issued objections to Plaintiffs regarding these three entities and has either never heard back from the Plaintiffs regarding their objections and/or has only partially resolved the objections. Avlon would like to resolve those issues and/or receive leave to file their motion to quash all or portions of these subpoenas.

A) Subpoena to FTI Consulting, Inc. – FTI Consulting, Inc., has been retained by Avlon to provide consulting services and platforms to assist Avlon in the collection, processing, review, and production of its responsive documents in this litigation.

3

Specifically, Plaintiffs' subpoena directs FTI to produce documents and communications between FTI and any of the Defendants concerning hair relaxers or hair relaxing products. The request places no limitation on the scope of materials that Plaintiffs seek from FTI which is improper given the type of services FTI offers.

On July 7, 2025, Avlon notified Plaintiffs of its current relationship to FTI and requested that Plaintiffs more tailor the subpoena to exclude current production consultancies and vendor relationships that stem from this litigation. The attorney work product doctrine protects documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives, including the other party's attorney, consultant, surety, indemnitor, insurer or agent. Fed. R. Civ. P. 26(b)(3)(A). Further, Fed. R. Civ. P. 26(b)(4)(D), prohibits parties from discovering the research of a non-testifying expert, is simply an application of the work product rule. Appleton Papers, Inc. v. EPA, 702 F.3d 1018, 1024 (7th Cir. 2012). Under this rule, the "consultant's work will, by definition, be work product because the party uses the consultant in anticipation of litigation." Id. Rule 26(b)(4)(D) not only concerns experts retained or specifically consulted in relation to trial preparations, such as FTI in this matter, but also applies to experts merely consulted in preparation for trial but not retained or specifically employed. Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001).

Avlon requested a meet and confer on this issue to discuss a more tailored request, but to date, Plaintiffs have not responded to the request. Given the time frame of the litigation, Avlon requests that the Court either require Plaintiffs to more properly tailor its requests to FTI to avoid impeding on an existing consulting/vendor relationship directly tied to this litigation or enter a briefing schedule on this issue.

B) Subpoena to MNJ Public Relations/Carte Blanche PR - MNJ Public Relations is a PR firm that Avlon consulted with in the 2010's. Avlon objected to the subpoena issued to MNJ Public Relations on two grounds. First, the subpoena generally sought documents about Avlon's Affirm and FiberGuard Brands as well as Salon Commodities' Syntonics Brands. Such a general request could pull in materials related to non-hair relaxer system products under those brands. Avlon requested, and Plaintiffs agreed to more tailor their requests as it related to those brands.

Second, the subpoena sought documents about Avlon's KeraCare Brand[1]. Avlon objected to this request because the one hair relaxer sold by the KeraCare brand was sold exclusively outside of the United States for a very brief time from on or about 2017 to 2019. In compliance with the Court's previous order in ECF353, Avlon has produced formulas, labels, LOI's, testing, and regulatory information that is has for the KeraCare hair relaxer products as exclusively foreign sold products. However, seeking information about KeraCare hair relaxer product

---

[1] Avlon's KeraCare Brand is a much larger brand that develops, manufacturers, and distributes many non-hair relaxer products that are not related to this litigation.

marketing information is outside of the scope of discovery permitted by this Court as it relates to products sold by defendants outside of the United States and not sold the plaintiffs in this litigation.  [ECF 353 at pp. 8-10]. MNJ Public Relations is a marketing and PR firm, and marketing and PR as it relates to KeraCare hair relaxers exclusively sold outside of the United States is not within the scope of discovery set by this Court.

Avlon asks this Court to either rule that Plaintiffs must strike any request for information from MNJ Public Relations or permit the parties to brief a motion to quash by Avlon.

### b.  Rolling Production of New Custodians and ESI Sources

**Plaintiffs' Position:**

The production of custodial files for Natalie Hicks, Ali Zaidi, and Narjis Askar previously was addressed with Professor Grossman.  Avlon was set to produce those files by July 18, 2025.  In addition, Avlon was to produce materials from Slack, Basecamp, Anna Brosko, and various other alternate sources by July 18, 2025.

On July 17, 2025, Avlon informed Plaintiffs that there are over 45,000 documents with hits (55,951 documents with hits + family) from these sources.  Avlon further indicated that although it was prepared to produce some of the materials on July 18, 2025, the review was taking longer than expected. On July 18, 2025, Avlon produced 6,382 documents. Then, during the exchange of drafts of this JSR, Plaintiffs learned that in fact there are over 65,000 documents to be produced, not including the personal emails of Keith Wells and Robert Brown.  Avlon believes it will need until at least August 15, 2025 to produce those 65,000 documents. Notably, based on the nature of these sources, these outstanding productions will affect all custodians and all potential deponents. Further, it is anticipated that the personal emails of Keith Wells and Robert Brown will involve correspondence with and/or relevant to the majority of key witnesses, given the closely held nature of the company and the communication practices displayed through document production to date.[2] Plaintiffs request that this Court order Avlon to complete its belated production no later than August 15, 2025. Given the current deadlines to notice and complete depositions, Plaintiffs have concerns that these belated productions may significantly impact Plaintiffs' ability to timely and fulsomely review the documents and conduct the depositions necessary. And thus, Plaintiffs respectfully request that this Court afford Plaintiffs the ability to seek relief in the future to the extent necessary.

**Avlon's Position:**

Not including the personal emails of Keith Wells and Robert Brown, Avlon has finally been able to begin reviewing more than 65,000 more documents collected

---

[2] Avlon has notified Plaintiff that it is in the process of reviewing 7,500 documents from Mr. Wells's personal email account based on the search term hit list.  This is in addition to the 65,000 documents from other sources, as referenced above.

from backup and cloud storage that was difficult to collect and process. Avlon has produced most, if not all, the custodial files of new custodians Ali Zaidi and Natalie Hicks, and most recently made a rolling production on July 18, 2025. Avlon plans to make another rolling production on August 1, 2025, but believes that it may be August 15, 2025, before review and production are complete. Avlon will be in a better position at the hearing on July 31, 2025, to provide the Court with more certainty on a completion deadline.

### c. Outstanding items before Professor Grossman

#### i. Personal Emails—Keith Wells, Robert Brown, and Timakai Evans

**Plaintiffs' Position:**

Plaintiffs met with Professor Grossman on July 8, 2025 regarding Avlon's sales team personal emails. Professor Grossman requested that Avlon collect data, run search terms, and provide hit reports on the personal email of two custodians, Keith Wells and Robert Brown, by July 18, 2025, with a meet and confer to follow by July 24, 2025. On July 18, 2025, Avlon provided a hit list for Keith Wells which demonstrated 4,269 documents with hits (7,601 documents with hits + families). Avlon has requested and been granted an extension until July 30, 2025 to obtain Mr. Brown's agreement for collection. However, since obtaining that extension, Avlon has notified Professor Grossman and members of the PSC that Mr. Brown has retained counsel regarding the collection of his personal emails.

Relating to a third custodian at issue, Timakai Evans, Professor Grossman asked Avlon to work with Mr. Evans and their ESI collection vendor to attempt to recover the hotmail.com email address. Plaintiffs' counsel also offered several recommendations on how to best recover this account. On July 17, 2025, Avlon indicated that Mr. Evans has not been able to access his account and as such, the parties will need to discuss this further. Plaintiffs have asked for details on the attempts at collection, and have also proposed additional methods to collect these materials. To date, Avlon has not responded.

**Avlon's Position:**

Following arguments, Professor Grossman ruled that Avlon was to collect and produce the responsive personal emails of sales team member Keith Wells and Robert Brown with the caveat that Plaintiffs would need to reduce the search terms to be more targeted towards claims made by sales team members rather than general invoicing and sales completion. Avlon was to produce search term hit lists by July 18, 2025, including all search terms from which Plaintiffs would cull the list to make it more targeted in accordance with Professor Grossman's ruling.

Avlon produced a hit list for Keith Wells on July 18, 2025, and the parties are scheduled to meet and confer about culling the search term list on July 24, 2025.

Avlon notified Professor Grossman and the Plaintiffs that Mr. Brown had strong objections to providing access to his personal email account and requested more time to garner his agreement and collect his emails. Professor Grossman agreed that Avlon could have until July 30, 2025, to collect and produce a hit list on his email. On July 22, 2025, Avlon received notice that Mr. Brown retained personal

counsel on this particular issue. Avlon is working to discuss Mr. Brown's personal email account with his retained counsel.

Professor Grossman ordered Avlon to work with Timakai Evans to verify that he no longer had access to the personal email account that he utilized while working for Avlon. Avlon provided notice to Professor Grossman and the Plaintiffs on July 17, 2025, that Mr. Evans had worked with Avlon's production vendor and was unable to access the email account he had not used in more than four years. Avlon is waiting for confirmation that this report is satisfactory.

**Beauty Bell Enterprises and House of Cheatham, LLC:**

**a. Personnel files as defined by June 26, 2025 Court Order (ECF No. 1287)**

**Plaintiffs' Position:**

To date, Plaintiffs have conducted depositions of three former senior executives at House of Cheatham and have reached out to schedule depositions of at least four former senior employees. House of Cheatham represented that it does not have any bonus, compensation, or performance review information related to its chemical hair relaxer products.

Not contrary to this Court's Order (see ECF No. 1287), Plaintiffs believe that they are entitled to these personnel files as described above because House of Cheatham's profits have always been tied to its sale of chemical hair relaxers. From 1998 to present, chemical hair relaxers have been at least 3 out of 4 of House of Cheatham's primary brands sold to consumers. Chemical hair relaxer sales also made up more than 50% of the company's gross sales from 2005 until 2014, years during which at least 5 of the scheduled witnesses were employed at House of Cheatham. Accordingly, these witnesses were paid bonuses by House of Cheatham and some of these witnesses participated in House of Cheatham's profit-sharing program which is based on the company's performance and profitability.

House of Cheatham states it "does not have the ability to pull a personnel file or bonus or compensation material with respect to a specific witness." Plaintiffs have requested more information from House of Cheatham as to what information responsive to this Court's Order (see ECF No. 1287) the company does have in its possession and how the information is stored to determine if documents exist for deponents that can be produced in compliance with the Confidentiality Order. Again, because chemical hair relaxers are core to House of Cheatham's sales and make up the majority of products House of Cheatham sold to consumers, Plaintiffs believe performance reviews, compensation, and bonuses tied to the success, and the profits are directly related to the products at issue in this litigation and should be produced pursuant to the Court's June 26, 2025 Order.

**HOC/Beauty Bells Position:**

House of Cheatham does not have the ability to pull a personnel file or bonus or compensation material with respect to a specific witness. To the extent that material

was in emails or paper documents, House of Cheatham did not withhold it on any privacy or other basis. And other than in the broadest sense that everyone's salary in a consumer products company is ultimately tied to the sale of all of that company's products, which cannot be the meaning of the order, House of Cheatham is unaware of any performance, bonuses, or compensation documents that were expressly tied to relaxers and some other product or products.

a. **Production of WhatsApp House of Cheatham Communications**

**Plaintiffs' Position:**

On July 9, 2025, Plaintiffs deposed Brian Mullenbach, former VP of Sales for House of Cheatham. Mr. Mullenbach testified that many international House of Cheatham customers use WhatsApp, "it's a common form of messaging." Mr. Mullenbach also testified that during his tenure at House of Cheatham, there were "a couple of individuals that used WhatsApp" including custodian Michael Barker and himself. On July 9, 2025, Plaintiffs asked House of Cheatham whether it reviewed and produced WhatsApp communications in responding to Plaintiffs' discovery requests and/or in its custodial file search. House of Cheatham's production of WhatsApp messages that were only produced because the custodian emailed them to himself - and those emails were ultimately tagged in an ESI custodian/keyword search - does not satisfy House of Cheatham's burden to search for responsive communications on the WhatsApp platform itself. House of Cheatham never informed Plaintiffs that custodians used WhatsApp to communicate, and its position concerns Plaintiffs that an appropriate search on the WhatsApp platform was not completed during the written discovery period. Plaintiffs request House of Cheatham either confirm it reviewed and produced responsive communications made through the WhatsApp application or produce responsive WhatsApp communications by August 4, 2025.

**HOC/Beauty Bells Position:**

House of Cheatham's counsel informed Plaintiffs' counsel that they are working to confirm with the other custodians whether they used WhatsApp for HOC business. If they have, an August 4 production date is not feasible. Further, Brian Mullenbach forwarded himself multiple WhatsApp messages, which were produced to Plaintiffs over 7 months ago in December 2024.

**L'Oréal USA:**

a. **Update on PIFs**

**Plaintiffs' Position:**

In accordance with this Court's order from July 11, 2025 [ECF No. 1322], Plaintiffs and L'Oreal SA had a meet and confer regarding the scope of production for the 25–30 PIFs for products sold exclusively outside the United States. Plaintiffs have requested L'Oreal SA to provide a list of exclusive EU hair relaxer products in order to assess and prioritize production of PIFs. The deadline for production set by this Court is September 12, 2025.

**L'Oreal USA's Position:**

The parties are continuing to meet and confer regarding PIFs and will provide an update to the Court at the July 31 conference, including as relates to status and timing of productions.

**b. Erica Culpepper deposition materials**

**Plaintiffs' Position:**

L'Oreal's response to Plaintiffs' letter regarding requested materials following Erica Culpepper's deposition resulted in L'Oreal acknowledging they did not collect Microsoft Team's chats properly nor did they search or produce their various social media accounts. Plaintiffs request that this Court order that L'Oreal produce these belated documents no later than July 31, 2025. Following production, to the extent there are any deficiencies, Plaintiffs will raise with this Court.

**L'Oreal USA's Position:**

The parties have narrowed the scope of any disputes that arose out of the deposition of Ms. Culpepper, and any remaining disputes are being discussed in the context of specific requests for production (addressed below).

**c. Requests for Production**

**Plaintiffs' Position:**

The parties continue to meet and confer regarding outstanding production items. Through the meet and confer process, the parties have narrowed the dispute to certain requests. Plaintiffs await L'Oreal's position in order to meaningfully assess the remaining scope of the dispute. To the extent that any issues remain, Plaintiffs will raise with the Court.

**L'Oreal USA's Position:**

On July 9, 2025, L'Oréal USA sent a letter to Plaintiffs describing in detail its position on the remaining requests for production regarding for which Plaintiffs contended there was still a dispute. L'Oréal USA has agreed to supplement its production regarding Microsoft Teams messages and materials from social media. L'Oréal USA is working as quickly as is reasonably possible to gather and produce these materials to Plaintiffs and does not believe it is necessary or productive, at this juncture, to set a firm deadline—the parties are working in good faith in connection with the production of various additional materials from L'Oréal USA.

As to the balance of Plaintiffs' requests, L'Oréal USA has made its position clear, though the parties continue to meet and confer.

**d. Jada Fountain deposition materials**

**Plaintiffs' Position:**

Similar to Erica Culpepper, during the deposition of Jada Fountain, a marketing employee for L'Oreal, Ms. Fountain identified numerous sources of documents and databases which documents were not produced from. Plaintiffs identified and requested

these materials in a recent letter and are awaiting L'Oreal's response. Plaintiffs request the Court order a deadline of August 6, 2025 to conclude the meet and confer process.

**L'Oreal USA's Position:**

L'Oréal USA disputes Plaintiffs' contention that "Ms. Fountain identified numerous sources of documents and databases which documents were not produced from." In reality, Ms. Fountain provided detailed testimony regarding a number of topics, was questioned by Plaintiffs using two dozen exhibits, and confirmed L'Oréal USA's reasonable and diligent search for documents. Plaintiffs have sent a letter regarding supposed document deficiencies tied to Ms. Fountain's deposition testimony that fails to tie the supposed deficiencies to any particular request for production and is incorrect in various material respects. L'Oréal USA is preparing a response, which will be sent in advance of the July 31 conference.

e. **Outstanding items before Grossman**

**Plaintiffs' Position:**

  i.   Production of custodial files
 ii.   TAR review of documents
iii.   Database collection issues with L'Oreal's culling methods and manner of production, in violation of CMO 4

**L'Oreal USA's Position:**

Plaintiffs and L'Oreal USA continue to work with Special Master Grossman regarding production of documents from additional custodians and production of documents from L'Oreal USA non-custodial databases.


**Luster Products, Inc.:**

a. **Outstanding issues related to overdue production of documents**

**Plaintiffs' Position:**

At the May 2025 status conference, Luster admitted there were substantial deficiencies with the collection and production of ESI. As a result, Luster agreed to make supplemental productions no later than July 3, 2025 and July 10, 2025.

On July 21, 2025, Luster informed Plaintiffs that the productions from July 3 and July 10 were not complete and that Luster was still collecting and reviewing "hundreds of thousands of documents."

This was the first time Plaintiffs were made aware that the July 3 and July 10 productions were incomplete. At the same time, Plaintiffs informed Luster that it still had not met the metadata ESI requirements. Luster also confirmed that Luster has not yet collected personal email accounts for key employees that used such accounts for business related purposes. Since July 21, 2025, Plaintiffs have discovered documents that show Luster employees were routinely using AOL and other personal e-mail addresses for Luster business. These AOL addresses were not used for ancillary

purposes, they appeared on Luster forms as the primary contact information for key employees yet were not collected, reviewed, or produced.

In accordance with the Court's order, Plaintiffs submitted a list of currently known deponents on July 21, 2025, reserving the right to supplement the deponent list as additional individuals are discovered from the ongoing discovery efforts.

This Court ordered that written discovery and document production be **completed** by February 28, 2025. See 10/11/2024 Minute Entry, ECF No. 884. This Court has reiterated that deadline countless times, yet, nearly five months later, Luster has failed to collect and review hundreds of thousands of documents and continue to have significant ESI discovery issues. Luster's failure to adhere to its discovery obligations and this Court's explicit order, severely prejudices Plaintiffs' ability to conduct depositions and meaningful engage in further discovery. As such, at no fault of Plaintiffs, Plaintiffs do not believe it is possible to meet the September 30 discovery deadline.

**Luster's Position:**

In June of 2025, Luster agreed to Plaintiffs' request for additional documents, including text messages and 10 additional search terms run across all collected documents. Luster also began a search of a personal AOL email account. The volume of documents to be reviewed for production continued to grow and Luster was unable to complete its production on July 3. Luster has continued to roll out productions, including productions on June 10, June 23, July 3, and July 18, and another set for July 28. Luster continues to work diligently to complete its review and production forthwith, however any additional requests will require additional time for review.

Luster is aware that Plaintiffs' ESI vendor has raised issues it is having with certain metadata fields. Luster has spoken to its own vendor about Plaintiffs' claimed issues and the parties' vendors are working to resolve these items. Plaintiffs raised the issues of additional personal email addresses they would like searched for the first time on July 17th and again on July 23rd. Luster is further reviewing the use of personal addresses that may have been used for company purposes. The issue is set for further discussion on July 28th, and collection efforts have begun.

Additionally, on July 21st, Luster received a list of 42 individuals, including former employees, administrative assistants, and others, Plaintiffs' counsel would like to depose. Luster is evaluating the status of everyone listed and is working to produce the relevant witnesses. Discussions regarding depositions are ongoing.

## McBride Research Laboratories, Inc.:

a. **Outstanding regulatory and third-party documents**

**Plaintiffs' Position:**

McBride represented to the Court that it would produce third-party documents by July 11, 2025. McBride did not produce the documents on July 11, 2025, and instead, stated it could not provide an estimate as to when the documents would be produced. During

a July 15, 2025 meet and confer, McBride stated that it would produce these documents by July 25, 2025. Should McBride not produce these documents by July 25, 2025, Plaintiffs ask that the Court to order McBride to produce these documents by August 4, 2025.

**McBride's Position:**

McBride conferred with Plaintiffs on July 15, 2025 and agreed to continue updating Plaintiffs on the progress of the production of these documents but indicated that McBride is hoping to produce these documents by the end of this month.

b. **Incomplete Interrogatory Responses**

**Plaintiffs' Position:**

McBride and Plaintiffs met and conferred on July 15, 2025 regarding deficient interrogatory responses. McBride agreed to amend certain identified responses by July 25, 2025. To the extent that McBride does not produce amended responses by July 25, 2025, Plaintiffs request that the Court order McBride to produce the responses by August 4, 2025.

**McBride's Position:**

McBride conferred with Plaintiffs on July 15, 2025 and agreed to provide complete interrogatory responses by July 25, 2025.

c. **Plaintiffs' Request for 13 Additional Custodial Files**

**Plaintiffs' Position:**

In November of 2024, the parties met and conferred regarding custodial files and Plaintiffs reserved the right to request additional custodial files, as McBride had produced only approximately 4,000 documents. After reviewing McBride's production and taking three depositions of McBride's employees during the week of June 16, 2025, Plaintiffs have identified additional potential deponents, and therefore, have requested their custodial files. Plaintiffs will meet and confer with McBride on this issue prior to the July 31 case management conference.

**McBride Research Laboratories, Inc.'s Position:**

On July 18, 2025, Plaintiffs requested McBride's production of 13 additional custodial files from individuals, many of who Plaintiffs have had knowledge of since last year. Plaintiffs initially conferred with counsel for McBride in November 2024 as to the custodial files Plaintiffs were requesting, which included 4 files. McBride has produced these in full. Since then, Plaintiffs have not requested any additional custodial files until the near end of the discovery period in this case. McBride will confer with Plaintiffs on this issue prior to the upcoming case management conference.

**Namasté Laboratories, LLC:**

a. **New custodial files requested following Namaste's 30(b)(6) sales and marketing depositions**

**Plaintiff's Position:**

On June 27, 2025, based on testimony given just days before, Plaintiffs requested additional custodial files for four individuals. On July 22, 2025, Namaste informed Plaintiffs that it did not have custodial files for two of the requested individuals and that responsive, non-privileged documents were already produced for the other two individuals requested by Plaintiffs. While the Plaintiffs investigate this new information, there is no ripe issue for the Court's attention at this time.

**Namaste's Position:**

Plaintiffs made a request for four (4) additional custodial files. Plaintiffs have had documentation identifying these individuals since early in the discovery process but Namaste nonetheless conducted an investigation to determine if (1) it had custodial files for the requested individuals and (2) whether those files, if they existed, were searched during the written discovery phase. Namaste has now confirmed, and has notified Plaintiffs, that it identified and searched – consistent with the agreed-upon search terms – the custodial files for two (2) of the four (4) individuals during written discovery. All responsive, non-privileged documents in those files were produced during written discovery. Namaste further confirmed that no custodial files existed for the remaining two (2) individuals. That does not mean that responsive, non-privileged documents relating to those individuals were not produced; it simply means that Namaste did not (and does not) have specific custodial files for those individuals. Namaste does not believe there is any issue ripe for the Court's attention at this time.

b. **Privilege log issues**

**Plaintiffs' Position:**

On May 28, 2025, Plaintiffs served a set of challenges to various Namaste privilege claims. Namaste failed to respond by the 14-day deadline under CMO 5. Plaintiffs followed up with Namaste multiple times, but no responses were received until July 2, 2025, 35 days after the challenges were served, Plaintiffs notified Namaste that the meet and confer process was terminated pursuant to CMO 5. Namaste submitted responses on July 2, 2025, which Plaintiffs reviewed in good faith. Through this review, Plaintiffs have narrowed the disputes to a limited set of privilege claims. Plaintiffs now seek *in camera* review and a ruling over this narrowed set of challenged privilege claims.

**Namaste's Position:**

Over the last few months, Plaintiffs and Namaste have worked through several issues regarding Namaste's privilege log and had several email exchanges concerning Plaintiffs' challenges. Namaste therefore disagrees that it "failed to respond" to Plaintiffs. Despite Plaintiffs' decision to terminate the meet and confer process, Namaste remains willing to meet and confer on any outstanding challenges following its July 2, 2025 response to Plaintiffs' challenges. To date, Plaintiffs have not identified the "narrowed set of challenged privilege claims" that remain at issue. To facilitate

resolution of those challenges (whether through the meet and confer process or with the intervention of the Court), Namaste has requested that Plaintiffs identify a full list of the documents for which plaintiffs continue to challenge Namaste's privilege and provide a reason for the continued challenge given Namaste's July 2, 2025 response in support of privilege.

**Revlon:**

a. **Outstanding items before Grossman**

    i. **Third-party vendor discovery**

**Joint Statement:**

On July 18, 2025, the parties appeared before Professor Grossman to address the third-party vendor issue and set a follow up status conference for July 25, 2025.

With regard to third-party vendor discovery:

- The parties agree that consistent with Professor Grossman's ruling, Revlon is to work with its ESI vendor to identify non-Revlon and non-Colomer email domains present in the Revlon documents produced and a "Domain / Email List" will be generated.
- Revlon will circulate this "Domain / Email List" to Plaintiffs after the list becomes available and Plaintiffs may then identify vendors from the list for further inquiry.
- Revlon will send an email to current employees who may reasonably possess knowledge of third-party vendors, with the "Domain / Email List" for them to identify, if known, the category of the third-party vendors as to marketing, manufacturing, testing and consulting, and also seeking the names of any additional known third-party vendors in the aforementioned categories. Thereafter, Revlon will provide an updated "Domain / Email List" to Plaintiffs from which Plaintiffs may then identify vendors from the list for further inquiry.
- Revlon will make a reasonable effort to contact the third-party vendors and/or consultants, via email and/or letter, the template of which is to be approved by Plaintiffs, seeking contracts and documents related to hair relaxer products to be broadly construed.
- Revlon will contact, and request documents from, the third-party vendors and consultants already identified by Plaintiffs in Plaintiffs July 3, 2025, email after the template is approved.
- The parties disagree on the scope of Professor Grossman's rulings with respect to the number of former employees to be contacted regarding the "Domain / Email List" and/or third-party vendor information, and will seek further clarification from Professor Grossman on July 25, 2025.
- The parties have agreed no new arguments will be heard on the third-party issue while seeking clarification.
- Revlon will update its interrogatory responses within a reasonable time following completion of depositions.

    ii. **Plaintiffs' Discovery on Discovery Request**

**Joint Statement:**

Defendants previously raised the issue regarding Plaintiffs' request for an updated Bill of Materials due to deposition testimony in the Interim JSR which will be addressed through a mediated meet and confer with Special Master Grossman to be scheduled on July 25, 2025.

With respect to the deposition of Mr. Jorge Vilanova, Plaintiffs plan to conduct a one-hour deposition of Mr. Vilanova via Zoom to assess the extent of his factual knowledge of the BI system generally and as it relates to relaxers and the report he ran for hair relaxers. If a Spanish interpreter is needed the parties will seek further clarification, on July 25, 2025, from the Special Master as to the time limit.

### iii. Final Rule 30(b)(6) Notice to Revlon in the Context of Plaintiffs' Notice for a Further Deposition of Bryan Shelley

**Joint Statement:**

The parties reached the following agreements/resolutions during their meet and confer with Professor Grossman on July 21, 2025, regarding the deposition of Bryan Shelley:

- By July 31, 2025, Plaintiffs will provide Revlon with a comprehensive list of Rule 30(b)(6) topics.
- By August 11, 2025, Revlon will provide dates for two consecutive days of deposition for Mr. Bryan Shelley. After Mr. Shelley's Rule 30(b)(6) designation(s), the parties will meet and confer in mid-August regarding timing issues and if the parties cannot agree, the issue will be brought to Professor Grossman.

## b. Privilege log issues

**Plaintiffs' Position:**

After Plaintiffs served challenges on Revlon, the parties engaged in extensive meet and confer discussions and exchanged multiple written responses over a period of months. These efforts successfully resolved nearly all privilege claims at issue in this round of Plaintiffs' challenges. Additionally, the parties met and conferred again on Tuesday, July 22, 2025, and further narrowed the privilege claims in dispute. However, the parties have reached an impasse on at least one privilege claim (and possibly another privilege claim) challenged by Plaintiffs in this round. Accordingly, pursuant to CMO 5, Plaintiffs request *in camera* review and a ruling over one (and possibly two) challenged privilege claims.

The Revlon privilege claim which the parties definitively have reached an impasse on is RevlonPriv00309. This is a fully withheld 8/18/2021 email chain between various Revlon employees and a third-party Public Relations ("PR") firm, Sloane & Company. Revlon has outlined the scope of Sloane & Company's overall work for Revlon, which focuses on PR work relative to a host of topics. In the context of the communication

at issue, the third-party PR firm is working with Revlon on a potential response to a news article regarding hair relaxers.

Plaintiffs assert that the communication at issue is more of a business matter, and not for the primary purpose of seeking/providing legal advice. *RBS Citizens N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013). Moreover, even if legal advice was the primary purpose of the communication, the presence of a third-party (Sloane & Company) negates any potential privilege. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. III. 2008). Additionally, courts in the Seventh Circuit have rejected the application of the attorney-client privilege in alleged "functional equivalent" instances which are very similar to the one herein. *See, e.g.*, *Breuder v. Board of Trustees of Community College District No. 502*, 2021 WL 4283464 (N.D. Ill. Sept. 21, 2021).

**Revlon's Position:**

Although the parties were able to resolve most of the challenged privilege claims through meet and confer efforts, Plaintiffs and Revlon have arrived at an impasse regarding the privileged status of one document—an email chain that includes correspondence to and from Revlon's Public Relations Consultant, Sloane & Company, in the presence of Revlon's Assistant General Counsel, regarding the contemplation of an organizational response to a news article concerning hair relaxers.

Plaintiffs first argue that the communication at issue is more of a business matter, and not for the primary purpose of seeking/providing legal advice. Revlon argues the communications reflect the inverse of that position and further adds that "client communications intended to keep the attorney apprised of business matters may be privileged if they embody 'an implied request for legal advice based thereon.'" *BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*, 326 F.R.D. 176, 182 (N.D. Ill. 2018) (quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987). Moreover, even though business advice is not within the zone of privilege, "legal advice relating to business matters clearly is." *BankDirect*, 326 F.R.D. at 182 (citing *Crane Security Technologies, Inc. v. Rolling Optics, AB*, 230 F.Supp. 3d 10 (D. Mass. 2017).

Plaintiffs also argue the presence of Sloane as a third-party in some emails not only vitiates privilege as to those emails, but also as to subsequent emails involving Revlon's Assistant General Counsel and Revlon employees, sans Sloane.

First, subsequent emails on this chain involve Revlon's Assistant General Counsel and Revlon employees, wherein counsel is requesting information from Revlon employees in order to evaluate legal issues related to the Company's potential statement. Such communications are undoubtedly privileged attorney-client communications.

Emails to and from Sloane are also protected attorney-client communications, as Sloane operated as Revlon's Public Relations Department during this period of time, such that it was the "functional equivalent" of an employee. Several courts in the Seventh Circuit, including this Court, have recognized this theory to extend privilege to third-party consultants; albeit, employing varying tests. *Compare LG Elecs. USA, Inc. v. Whirlpool Corp.*, 661 F. Supp.2d 958, 963 (N.D. Ill. 2009) (discussing the "functional equivalent" test); *with Stafford Trading, Inc. v. Lovely*, No. 05-C-4868,

2007 WL 611252, at *7 (N.D. Ill. Feb. 22, 2007) (adopting the "balanced approach" test); *and United States Securities and Exchange Commission v. Hollnagel*, No. 07 C 4538, 2010 WL 11586980, at *13 (N.D. Ill. Jan. 22, 2010) (explaining a "third approach" that "considers whether the particular communication advanced the underlying purpose of the attorney-client privilege in the corporate context—the encouragement of full and frank communication of relevant information on behalf of the corporate client to attorneys seeking to render legal advice to the client corporation").

Sloane's role and relationship to Revlon meets each test required to extend the privilege, regardless of the approach used. Sloane's relationship with Revlon as its Public Relations consultant was an intimate one, often involving direct communications with Revlon's principals and General Counsel, as evidenced here. In fact, Sloane's Scope of Work specifies "Sloane & Company would support and advise on all communications related to the debt exchange, creditor conflicts, any potential ensuing litigation, and Revlon's overall liquidity position and financial condition. All of these activities would be undertaken in close coordination with Revlon management and the company's legal and financial advisors." As evidenced by its mandate, Sloane acted as the functional equivalent to Revlon management. Further, during Sloane's involvement with Revlon, Revlon had no internal Public Relations Department.

In sum, Revlon contracted with Sloane to serve an integral—and exclusive—role for Revlon and further contemplated Sloane's involvement in privileged legal communications. As such, otherwise protected attorney-client privileged communications in the presence of Sloane & Company should stay privileged.

### Sally Beauty Supply LLC:

**a. Outstanding written discovery deficiencies**

**Plaintiffs' Position:**

Plaintiffs have identified multiple deficiencies in Sally Beauty's responses to Plaintiffs' First, Second, Third Fourth, Fifth, Sixth, Seventh, and Eighth Sets of Interrogatories and sent Sally Beauty a letter on June 23, 2025, outlining these deficiencies.

Although written discovery has closed, all parties remain obligated under Fed. R. Civ. P. 26(e) to supplement or correct interrogatory responses that are incomplete or inaccurate. That obligation continues throughout the course of litigation, particularly where the deficiencies bear directly on case development. While the parties are indeed in the midst of depositions, the need to address foundational gaps in Sally Beauty's written discovery justifies this effort. Contrary to Sally Beauty's assertion that Plaintiffs are attempting "reopen" discovery by Plaintiffs' June 23, 2025 letter, Plaintiffs are in fact attempting to compel Sally Beauty's compliance with existing obligations. These deficiencies are material and have already impeded Plaintiffs' ability to develop core issues in the case including but not limited to those employed at Sally Beauty who had information related to product safety and marketing. Illustrative examples include:

• Failure to Identify Authors of Interrogatory Responses (Sets 1–8): Sally Beauty has failed across all sets of interrogatories to identify the individuals who prepared or assisted in preparing its responses. This is a standard and recurring interrogatory in this litigation, and the omission undermines the transparency required to evaluate the basis and credibility of its submissions.

• Refusal to Identify Carcinogenic Ingredients (Set 1, Interrogatory No. 6): Contrary to Sally Beauty's claim that Plaintiffs previously waived this request, Sally Beauty's response remains wholly deficient. It cites an irrelevant "prohibited ingredient list" rather than directly identifying which ingredients were used in its relaxer products and whether they fall within EPA or OSHA carcinogenicity classifications. That is a factual inquiry, not a legal conclusion, and is squarely within the scope of permissible discovery.

• Improper Use of Document Dumps (e.g., Set 1, Interrogatory Nos. 7 & 8; Set 6, Interrogatory No. 2): Sally Beauty has repeatedly responded to interrogatories by referring Plaintiffs to hundreds of Bates-stamped documents without any narrative response or explanation of which documents correspond to which study, formulation, or product. Plaintiffs acknowledge that Rule 33 permits a responding party to identify responsive documents when answering an Interrogatory; however, the identification must be sufficiently specific to allow the requesting party to ascertain the information sought. See Fed. R. Civ. P. 33(d). Sally Beauty's responses are deficient in that they merely point to large volumes of documents without the required specificity, frustrating Plaintiffs' ability to understand or verify the information being conveyed.

Sally Beauty's reliance on prior Joint Status Reports or informal discussions to claim that Plaintiffs "waived" these deficiencies is misplaced. Plaintiffs are entitled to hold Sally Beauty to its ongoing obligations to supplement incomplete responses under Rule 26(e), particularly where those responses obstruct the fact development process.

Plaintiffs are in the process of coordinating availability for a meet and confer and remain committed to engaging in a good faith effort to resolve the outstanding discovery issues. Plaintiffs respectfully reserve the right to seek Court intervention should supplementation not be forthcoming.

**Sally Beauty's Position:**

Four months after the close of written discovery, and 1-2 years after Sally Beauty served interrogatory responses, Plaintiffs sent a 20-page letter listing supposed discovery deficiencies with those interrogatory responses. Plaintiffs' letter is both untimely and substantively baseless. Furthermore, despite repeated requests, Plaintiffs refuse to narrow their letter and refuse to provide authority for their positions. Nevertheless, Sally Beauty offered to meet and confer with Plaintiffs this Friday, July 25—even though the parties are in the midst of depositions, where the parties should be spending their time and attention. Sally Beauty awaits Plaintiffs' response to that offer.

Because the parties have not yet met and conferred, Sally Beauty will not respond to all of the alleged deficiencies in this JSR. But a few examples illustrate the baselessness of Plaintiffs' assertions and the need for the Court to put a stop to never-ending disputes

"so that written discovery does not drag on without end." ECF No. 1095 at 3 (Court Order).

•  **Untimeliness –** Plaintiffs' letter raised issues with responses that Sally Beauty served as far back as September 22, 2023—21 months earlier. Plaintiffs also raise issues with responses served between April-May 2024—over one year ago. Plaintiffs purport to blame their delay on Sally Beauty's rolling document production, but (1) Sally Beauty's ESI document production was substantially complete in December 2024 (six months before Plaintiffs' letter), (2) Sally Beauty's document production was complete (save for a small handful of documents Plaintiffs subsequently requested) on February 21, 2025 (four months before Plaintiffs' letter), and (3) Plaintiffs do not explain what rolling document production has to do with alleged deficiencies in interrogatory responses, particularly insofar as the alleged "deficiencies" include things like citing too many Bates numbers in response to an interrogatory (as described below).

Both Judge Rowland and this Court warned against waiting this long to raise supposed discovery deficiencies. For example, Judge Rowland ordered that "[m]options to compel related to . . . the first round of discovery . . . are due on 3/25/24," ECF No. 506, after which "we'll be done with that topic . . . . I don't want to talk about that anymore." 3/7/24 Hr'g Tr. 69:19-22. After that order, Plaintiffs filed motions to compel against other Defendants, but not Sally Beauty. This Court similarly warned that if Plaintiffs raise alleged deficiencies after the February 28, 2025, close of written discovery, the Court would take into account "the things that the plaintiffs are raising, when could they have known about them." 2/13/25 Hr'g Tr. 17:4-6. The Court reiterated in a subsequent order that "Plaintiffs must still raise discovery issues on a timely basis so that written discovery does not drag on without end." ECF No. 1095 at 3.

•  **Set 1, Interrogatory No. 6 –** This interrogatory was the subject of multiple hearings in late 2023 and early 2024 in front of Judge Rowland. As it relates to Sally Beauty, Plaintiffs represented on the record at the January 25, 2024 hearing that they had no issue with Sally Beauty on that interrogatory. See 1/25/24 Hr'g Tr. 110:10-17, 112:10-14 (Ms. Fitzpatrick: "Your Honor, I'm not even clear why Sally Beauty is taking this position when this has nothing to do with them and it is clear from our briefing it has nothing to do with them."); 113:10 (Ms. Fitzpatrick: "Doesn't apply to Sally Beauty."); 114:16-17 (Court: "Sally Beauty, you're off the hook on this one, and that's great."). Seventeen months later, Plaintiffs are demanding of Sally Beauty the same supplement they previously told the Court they were not requesting of Sally Beauty.

•  **Set 8, Interrogatory No. 2 (net worth) –** This interrogatory was the subject of multiple meet and confers, briefing, and argument to this Court. Throughout those discussions, Plaintiffs conceded that they had no issue with Sally Beauty's response. See, e.g., ECF No. 1062 at 2 n.1 (Plaintiffs' position in JSR, stating: "Plaintiffs note that Defendant Sally Beauty is not included in this discussion as their net worth is available as publicly traded company."); ECF 1062 at 11

(Plaintiffs' position in JSR, quoting Sally Beauty's interrogatory response, which identifies Sally Beauty as a subsidiary of a publicly traded company, and concluding: "Plaintiffs are satisfied with Sally Beauty's written supplemental discovery response and the temporal scope provided through the production of documents related to Sally Beauty's Net Worth and Accounting"); 2/13/25 Hr'g Tr. 7:2-9 (Court acknowledging "footnote that Sally Beauty" is "excluded from the analysis"); ECF No. 1095 at 2 (order addressing net worth discovery, noting that "[t]his ruling does not apply to Defendants Sally Beauty or Revlon, for the reasons discussed in the JSR"). Plaintiffs' letter, however, backtracks and now asserts that Sally Beauty's response is deficient.

• **Plaintiffs' demand for a "narrative response"** – For several interrogatories, Sally Beauty provided a list of Bates numbers from which the answer to the interrogatory could be "deriv[ed] or ascertain[ed]," in compliance with Federal Rule of Civil Procedure 33(d). Plaintiffs assert that identifying Bates numbers is not a "substitut[e] for a narrative answer." That assertion is contrary to black letter law applying Rule 33(d) and previous orders from this Court. For example, when Plaintiffs raised the issue of reliance on Rule 33(d) with respect to several Defendants (but not Sally Beauty) at the December 12, 2024 hearing before this Court, the Court ruled that citing Bates numbers is sufficient. 12/12/24 Hr'g Tr. 53:4-14 ("They gave you specific Bates numbers. They were relative – they were single pages at times. There were a lot of them, but I suspect that's because of the volume of information. . . . I think that's sufficient under 33(d)."); ECF No. 995 at 4 ("The bar for compliance with Rule 33(d) is relatively low . . . . Rule 33(d) does not require that the responding party provide an analysis of why it believes the documents are responsive, it only need specify the documents in a way that allows the interrogating party to locate and identify the documents."). Yet Plaintiffs are re-raising the argument that the Court already rejected.

• **Previously discussed and resolved interrogatories** – The parties previously discussed—and Plaintiffs confirmed they were satisfied with—several of the interrogatory responses now at issue in the letter. For example, the parties discussed Set 6, Interrogatory No. 2 in multiple letters, emails, and calls beginning in October 2024. In December 2024, Plaintiffs confirmed that Sally Beauty's "email response is sufficient." Later, however, Plaintiffs asked Sally Beauty to formally supplement its response, and Sally Beauty agreed to do so. Sally Beauty served that supplement (along with others) on January 31, 2025. Plaintiffs advised the Court in the February 2025 JSR that they were "reviewing [the January 31, 2025] responses and will advise Sally Beauty of any remaining disputes in advance of the February 13, 2025 Discovery Conference." ECF No. 1062 at 11. Plaintiffs did not advise Sally Beauty of any concerns before the February 2025 conference, which Sally Beauty confirmed on the record at that hearing. See 2/13/25 Hr'g Tr. 87:20-88:4 (Sally Beauty counsel reporting that they had not "heard anything" from Plaintiffs regarding "any additional or continuing disputes," so were "not aware of any current interrogatory or requests for production disputes," and Plaintiffs' counsel confirming "Yes, we're good on this one, your Honor"). Despite those

previous representations to Sally Beauty and the Court that Plaintiffs were satisfied with the response, Plaintiffs are raising the same interrogatory for a third time.

Sally Beauty asks that the Court instruct the Plaintiffs that they can raise written discovery disputes only if they can point to specific information that explains why Plaintiffs could not raise the dispute sooner.

**b. Privilege log issues**

**Plaintiffs' Position:**

On June 10, 2025, Plaintiffs served a set of challenges to various Sally Beauty privilege claims. Thereafter, the parties conducted multiple meet and confers and exchanged written responses. These efforts resolved most disputes; however, the parties remain at an impasse regarding 2 of the challenged privilege claims. Accordingly, pursuant to CMO 5 (ECF No. 112), Plaintiffs request *in camera* review and a ruling over these 2 challenged Sally Beauty privilege claims. Plaintiffs have followed each part of the privilege challenge process required by CMO 5, and "now bring the issue to the Court". *See* CMO 5 at p. 19. The *First Merit Bank* case cited to by Sally Beauty addresses the potential for *in camera* review in the context of a privilege claim challenged based on the crime-fraud exception to privilege. *First Merit Bank, N.A. v. Teets*, 2015 WL 8153878 (N.D. Ill. Dec. 8, 2015). Such is not the case herein. Further, *First Merit Bank* actually found that most of the *non* crime-fraud challenged privilege claims were invalid as the parties withholding the documents failed to meet their burden of establishing privilege. *Id.* Also, to judicially determine applicability of the privilege, the Seventh Circuit favors *in camera* review. *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 801 (N.D. Ill. 2015) (citing *Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 880 n.7 (7th Cir. 2005)). Moreover, Plaintiffs have multiple reasons for *in camera* review.

The challenged privilege claims are very few in number (2 claims). Moreover, each of these privilege claims involve regular reports shared among *non-attorneys* regarding what appear to be predominantly business matters, and the reports do not appear to be created or shared for the primary purpose of seeking/providing legal advice. *See* PRIV-000261 ("Annual Report-September 10th 2012 – September 30th 2013") and PRIV-000262 ("Monthly Report December 2012"). Indeed, the redacted information in each document appears to address safety studies or assessments. Accordingly, Plaintiffs assert that privilege should not apply because facts are not privileged, Sally Beauty has not carried its burden of proving privilege, and the materials at issue are not created or sent for the primary purpose of seeking/providing legal advice. *RBS Citizens N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013); *Pearlshire Capital Grp. LLC v. Zaid*, 490 F. Supp. 3d 1299, 1307 (N.D. Ill. 2020).

**Sally Beauty's Position:**

There is no need for the Court to conduct an in camera review of the two challenged redactions, and the redacted material is privileged.

First, "before engaging in an in camera inspection of a potentially privileged document, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person...that in camera review of the materials may reveal evidence to establish'" that the document is not privileged. *First Merit Bank, N.A. v. Teets*, 2015 WL 8153878 (N.D. Ill. Dec. 8, 2015) (Rowland, J.) (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)).[3] Plaintiffs here have made no such showing of a factual basis, and instead simply assert that they do not believe the privilege claim. If the Court conducts an in camera review in these circumstances, it will only be the beginning of a flood of additional demands for in camera review absent any factual basis for the challenge.

Second, the redacted material is privileged. As described in Sally Beauty's privilege log, the redacted material describes activities undertaken at the request of legal counsel to aid in the provision of legal advice. *See* Tex. R. Evid. 503(b)(1) (describing privilege under Texas law). "[O]btaining legal assistance [was] 'one of the significant purposes' of the communication[s]." *Univ. of Texas Sys. v. Franklin Ctr. for Gov. & Pub. Integrity*, 675 S.W.3d 273, 281 (Tex. 2023).[4] One of the activities described in the documents at issue involved assisting legal paralegals working under the supervision and at the direction of Sally Beauty's in-house legal counsel to conduct an investigation into legal insurance claims. The Legal Department conducted that investigation so that its legal in-house counsel could render legal advice regarding those insurance claims and consumer complaints. The first redaction in PRIV-000261 and the redaction in PRIV-000262 describe that legal project and its results, all of which was done under the supervision and at the direction of Sally Beauty's in-house legal counsel. The second redaction in PRIV-000261 describes work that a Sally Beauty employee performed, under the supervision and at the direction of Sally Beauty's in-house legal counsel, to assist Sally Beauty in responding to a California Proposition 65 ("Prop 65") notice of violation ("NOV"). At the request of Sally Beauty's legal counsel, the employee provided scientific input regarding potential legal defense strategies and options Sally Beauty could consider in responding to NOVs. The employee described all of these activities to his supervisor, because the supervisor needed to know what information her direct reports were providing to Sally Beauty's in-house counsel, since the supervisor was responsible for supervising that work. Sally Beauty redacted only

---

[3] Contrary to Plaintiffs' assertion, the Seventh Circuit does not "favor" *in camera* review. Rather, the cases that Plaintiffs cite merely stand for the proposition that if the "only" way to provide evidence to support the privilege claim is to "reveal[] the very information sought to be protected by the privilege," *then* "an *in camera* inspection of the evidence is appropriate." *Slaven*, 83 F. Supp. 3d at 801 (ordering *in camera* review only because privilege in that situation was "a close question"). If the party asserting the privilege can otherwise provide evidence of privilege, such as through a privilege or declaration, *in camera* review is unnecessary.

[4] Sally Beauty is headquartered in Texas, and the employees involved in the communications at issue were located in Texas, so Texas privilege law applies.

the small portions of these reports describing the direct report's activities taken at the direction of Sally Beauty's in-house counsel. Sally Beauty has fully and appropriately supported its claim of privilege over the redacted documents.

### Strength of Nature LLC:

**a. Rule 30(b)(6) on Sales Practices**

**Joint Statement:**

On June 26, 2025, Plaintiffs served Strength of Nature with a Notice of First Oral and Videotaped 30(b)(6) Deposition on Sales Practices ("Notice"). Strength of Nature served objections to the Notice on July 7, 2025, and the parties held a meet and confer on July 15, 2025. Strength of Nature has identified one witness who will give testimony of one of the noticed topics. Strength of Nature also identified and produced additional documents responsive to the remaining noticed topics and is determining what, if any, other documents may be produced in response to the remaining topics. The parties are continuing to meet and confer on the scope of the remaining topics in the Notice. The parties mutually reserve the right to brief any issues related to the Notice that cannot be resolved through their continued meet and confer.

**b. Privilege Log Challenges**

**Joint Statement:**

On June 24, 2025, Plaintiffs sent Strength of Nature a letter lodging challenges to entries in its privilege log. Strength of Nature responded to the Plaintiffs' letter on July 8, 2025, and the parties held a meet and confer on July 11, 2025. At the meet and confer, Strength of Nature agreed to supplement the descriptions of certain entries on its privilege log and, separately, to downgrade a group of documents initially marked for privilege, which it produced on July 23, 2025. The parties' meet and confer is ongoing. The parties mutually reserve the right to brief any issues related to the privilege challenges that cannot be resolved through their continued meet and confer.

### III. _Second-wave Defendant Specific Discovery Status_

### RNA

**a. Completion of pre-production requirements in adherence with CMO 4**

**Plaintiffs' Position:**

The parties are meeting and conferring on CMO 4—including search terms, custodians, and date ranges—prior to applying a search methodology. See CMO 4. On July 23, 2025, RNA identified a list of potential custodians and Plaintiffs are currently reviewing the list. RNA is also identifying non-custodial sources from which to collect ESI. The parties have scheduled a meet and confer for July 29,

2025 to discuss the custodian list and the anticipated timeline for ESI collection and review based on discussions with RNA's ESI vendor.

**RNA's Position:**

RNA does not believe there is anything on this topic that is ripe for presentation to Judge Jantz at this time. As Plaintiffs acknowledge, RNA is in compliance with its obligations under CMO 4 and the parties are engaging in the meet and confer process regarding planning for discovery.

**b. Collection of Batch Records**

**Plaintiffs' Position:**

The parties have been meeting and conferring on RNA batch records since May 2025. RNA's role as a contract manufacturer for multiple MDL Defendants makes its batch records directly relevant and proportional to Plaintiffs' claims. RNA was responsible for formulation, production, and quality control, and Plaintiffs have requested batch records, including testing data, that reflect product composition and manufacturing practices.

In a July 23, 2025 email, RNA's counsel added that, even in a best-case scenario, compiling and producing all batch records would take several months. The parties are continuing to meet and confer on ways to streamline production, including options such as onsite inspection or third-party collection. However, without a complete customer list, product list, and formulary records showing formula changes over time, Plaintiffs cannot meaningfully evaluate any sampling proposal.

**RNA's Position:**

RNA provided a detailed explanation of the process to collect hair relaxer related batch records to Plaintiffs on July 23, 2025. RNA will continue to work cooperatively with Plaintiffs to determine the proper scope and an efficient manner for collection and production of these documents. RNA does not believe there is any issue ripe for the Court's attention at this time.

**c. Confirmation of products sold OUS and production of related formulary and foreign regulatory materials**

**Plaintiffs' Position:**

The parties have met and conferred regarding RNA's response to Plaintiffs' Interrogatory Set 1, Rogg No. 5, seeking foreign regulatory materials. RNA asserted blanket objections, claiming the request was overly broad, burdensome, and that it lacked possession, custody, or control over the requested information.

24

At a July 23, 2025 meet and confer RNA counsel confirmed they would produce responsive material identified in discovery, however they have not received responses to their request for this information from other defendants in this litigation regarding which products were ultimately sold outside of the US. The parties are continuing to meet and confer on this issue.

**RNA's Position:**

At the July 23, 2025 meet and confer, RNA counsel confirmed that it would produce responsive information identified in discovery to the extent such responsive information is in RNA's possession, custody, or control. RNA has expressed to Plaintiffs on multiple occasions that it does not maintain easily accessible electronic records of where individual products may or may not be sold by RNA's customers. In particular, RNA manufactured dozens of hair relaxer products over the span of decades. Any information RNA has regarding where particular products may have been sold is located in discrete email communications or individual documents, and can only be gleaned from a thorough ESI review. RNA will happily supplement its interrogatory responses once that information has been determined.

**d. The Parties' Agreement Regarding RNA's Response Deadline for Plaintiffs' RPF Set 7 – Sales**

**Plaintiffs' Position:**

Plaintiff served Plaintiffs' Requests for Production Set 7 (Sales) on July 16, 2025. In the June 25 correspondence, RNA confirmed it would agree to produce responses to Plaintiffs' RFP Set Seven by September 21, 2025. Plaintiffs respectfully request the Court amend the Scheduling Order for Wave 2 Defendants Entered April 14, 2025 to add RNA to the deadline to product response to Plaintiffs' RFP Set Seven by September 21, 2025, which aligns with the deadline applicable to Advanced Beauty, Inc., John Paul Mitchell Systems, Murray's Worldwide, and Wella Operations US, LLC. See April 14, 2025 Judge Rowland Order [ECF No. 1174].

**RNA's Position:**

RNA has no objection to an order memorializing the Parties agreement that RNA will respond to Plaintiffs' Seventh Set of Requests for Production by September 21, 2025, notwithstanding the late service of those requests on RNA.

Dated: July 24, 2025

**FOR PLAINTIFFS:**                    **FOR DEFENDANTS:**

Respectfully Submitted,                     Respectfully Submitted,

/s/Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
T: (312) 261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C**.
59 Maiden Lane, Sixth Floor
New York, New York 10038
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

/s/Mark C. Goodman
Mark C. Goodman
**BAKER & MCKENZIE LLP**
101 California Street, Ste 4100
San Francisco, California 94111
T: (415) 576-3080
mark.goodman@bakermckenzie.com

*Defense Liaison Counsel and Counsel for Defendant Namasté Laboratories, LLC*

Mark D. Taylor
**BAKER & MCKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
T: (214) 978-3000
mark.taylor@bakermckenzie.com

Colleen Baime
Laura Kelly
**Baker & McKenzie LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
colleen.baime@bakermckenzie.com
laura.kelly@bakermckenzie.com

Maurice Bellan
Teisha C. Johnson
**BAKER & MCKENZIE LLP**
815 Connecticut Avenue, NW
Washington DC 20006
T: (202) 452-7057
maurice.bellan@bakermckenzie.com
teisha.johnson@bakermckenzie.com

Barry Thompson
**BAKER & MCKENZIE LLP**
10250 Constellation Boulevard, Suite 1850 Los Angeles, CA 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

*Counsel for Defendant Namasté Laboratories, LLC*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars

Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. and SoftSheen-Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
rhonda.trotter@arnoldporter.com

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

27

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti

28

Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
T: (312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
**ECKERT SEAMANS CHERIN & MELLOT, LLC**
275 Madison Avenue 10th Floor
New York, NY 10016
T: (646) 513-2358
eabbot@eckertseamans.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St,
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Colleen M. Kenney
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
T: (312) 853-2666
ckenney@sidley.com

Yvette Ostolaza
Amanda Crawford-Steger
Imani Maatuka
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Ste. 2000
Dallas, TX 75201
T: (214)981-3496
yostolaza@sidley.com
asteger@sidley.com
imaatuka@sidley.com

*Counsel for Defendant Sally Beauty
Supply LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
T: (786)957-1157

Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com
Matthew.Wasserman@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street
Suite 3400
Chicago, IL 60606
Matthew.Wasserman@dinsmore.com

Adam Fox
**DINSMORE & SHOHL LLP**
801 Pennsylvania Avenue N.W.
Suite 610
Washington, D.C. 20004
P: (202) 559-3615
F: (202) 372-9141
Adam.Fox@dinsmore.com

*Counsel for Defendant, McBride Research Laboratories, Inc.*

Ashley C. Webber
Emily D. Robinson
**MARSH ATKINSON & BRANTLEY, LLC**
271 17th Street NW
Suite 1600
Atlanta, GA 30363
ashley.webber@mablawfirm.com
emily.robinson@mablawfirm.com

*Counsel for Defendant, Dudley Beauty Corp, LLC*

Daniel L. Stanner
Ashley Crettol Insalaco
Megan E. Ryan
**TABET DIVITO & ROTHSTEIN LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
Tel: (312) 762-9450
dstanner@tdrlaw.com

31

ainsalaco@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendant RNA Corporation*

Nancy L. Patterson
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street
Suite 4000
Houston, TX 77002
Telephone: +1.713.890.5000
Facsimile: +1.713.890.5001
nancy.patterson@morganlewis.com

Mark A. Fiore
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: +1.609.919.6600
Facsimile:         +1.877.432.9652
mark.fiore@morganlewis.com

*Counsel for Defendant John Paul Mitchell Systems, Inc.*

Leslie A. Federer, ARDC #6325614
**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 767-1314
lfederer@maronmarvel.com

Robert E. Dille (*pro hac vice*)
**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**
201 St. Charles Ave., Suite 2411
New Orleans, Louisiana 70170
(504) 321-9331
rdille@maronmarvel.com

*Counsel for Defendant Murray's Worldwide, Inc.*