# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060<br>No. 23-cv-00818<br><br>Hon. Beth W. Jantz<br><br>This document relates to: All Cases |

## ORDER

The Court held a status hearing on July 31, 2025, to discuss the status of discovery and address the various issues raised in the parties' July 24, 2025 Joint Status Report (JSR) (Dkt. 1352). This Order memorializes the salient aspects of that hearing and the Court's corresponding rulings.

The next status hearing is scheduled for September 4, 2025, at 10:00 AM (Central), in Courtroom 1812. The parties shall submit a monthly JSR on the status of discovery by August 28, 2025.

## I. GLOBAL ISSUES

### A. Discussions Regarding Document Translations

Plaintiffs and Defendants informed the Court that they have met and conferred regarding the translation and use of foreign language documents, and they presently do not have any issues to present to the Court. *See* Dkt. 1352 at 1.

### B. Depositions Progress

Plaintiffs and Defendants provided an updated chart showing the depositions that have been requested, scheduled, and/or conducted. *See* Dkt. 1352 at 1; Dkt. 1352-1.

First, as the Court stated at the hearing, any extension of the oral discovery deadline must be presented to, and will be decided by, Judge Rowland. *See* Tr. of July 30, 2025 Hrg. at 11 (Dkt.

1363). In the meantime, the parties are advised to press forward and complete as many depositions as possible before the oral discovery deadline.

Second, if Plaintiffs wish to depose additional witnesses after reviewing certain Defendants' continuing document productions, despite such individuals being noticed for a deposition after the notice deadline of August 1, 2025, the parties should meet and confer before bringing any dispute to the Court. The parties may agree to waive the August 1, 2025 deposition notice deadline. If the parties cannot agree, the Court will consider permitting late-noticed depositions on a deponent-by-deponent basis, including based on a Defendant's belated document productions.

In the upcoming August 28, 2025 JSR, the parties shall provide a general update on the progress of scheduling and taking depositions on a Defendant-by-Defendant basis. To the extent that Plaintiffs argue that they could not get certain Defendants' depositions timely completed because of belated document productions, they must provide specificity on this point (*e.g.*, production volumes and when produced). The parties shall provide this update in the main JSR, in each Defendant's section (*i.e.*, not just the deposition chart, which should continue to be updated and submitted in the same helpful format).

### C. Adjustment to Deposition Protocol

Plaintiffs sought to modify CMO No. 19 (the Deposition Protocol) as it pertains to depositions that are cross-noticed in related state court proceedings. *See* Dkt. 1352 at 1–2. Plaintiffs seek to "confirm that the MDL depositions (including any questioning by Defense counsel) would proceed and conclude prior to the commencement of questions by state court counsel in the cross-noticed cases," so that the MDL depositions conclude in a single day. Dkt. 1352 at 2. Defendants believe no amendment to CMO 19 is necessary, and that the parties can resolve the issue if and when it arises. *See* Dkt. 1363 at 20–22.

As stated at the hearing, and particularly given the need to continue to proceed expeditiously with MDL depositions, the Court orders that all questioning by MDL counsel (including Defendants' counsel) shall proceed first, before any questioning by state court counsel. *See* Dkt. 1363 at 22–23.

### D. Plaintiffs' Documents Subpoenas to Third Parties

This subject will be addressed in a separate order from this Court.

### E. Clarifying the Scope of the Court's Order on Deponents' Personnel Files (Dkt. 1287)

At several points during the hearing, the parties discussed their understanding of the scope of the Court's order (Dkt. 1287) governing the production of "documents from a deponent's personnel file that contain compensation, bonus, or performance review information related to the products at issue in this litigation." Dkt. 1287 at 1. The Court clarified during the hearing the scope of that order (Dkt. 1287) as follows: Plaintiffs may request in a rider to a deposition notice, and if requested Defendants and/or the deponent shall produce, compensation, bonus, and performance information that specifically refers to a deponent's work on hair relaxer products. But if a deponent's compensation, bonus, or performance information is tied to the company's general performance, or the documents do not otherwise refer to the deponent's work on hair relaxer products, that information is not subject to production under the order. *See, e.g., In re 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-md-2885, 2019 WL 5787747, at *3 (N.D. Fla. Nov. 6, 2019) ("Plaintiffs are only entitled to performance evaluations, self-assessments, and bonus and incentive information that mention or reference the 3M Combat Arms Earplugs at issue in this case, not 3M products *generally* and not 3M *generally*.") (emphasis added). If it were any other way, the limitations the Court imposed on Plaintiffs' document requests would become meaningless and swallow the rule.

### F. Written Discovery Disputes Going Forward

In response to Plaintiffs' request that Sally Beauty respond to Plaintiffs' inquiries about discovery responses, much of which were served long before the close of written discovery earlier this year, Sally Beauty asked this Court to instruct Plaintiffs that, at this point, they may raise written discovery disputes with either Defendants or this Court only if Plaintiffs can point to specific information that explains why Plaintiffs could not have raised the dispute sooner. The Court agrees with this framework, particularly now that we are more than five months past the close of written discovery. As ordered at the hearing, the Court instructs Plaintiffs that they may raise written discovery disputes with Defendants or this Court only if they can point to specific information that explains why Plaintiffs could not have raised the dispute sooner. *See* Dkt. 1363 at 23–28. This ruling applies to all parties, not just Plaintiffs and Sally Beauty.

## II. AVLON INDUSTRIES, INC.

### A. Document Subpoenas to FTI Consulting and MNJ Public Relations

Two of Plaintiffs' document subpoenas were issued to FTI Consulting, Inc., a corporation retained by Defendant Avlon Industries, Inc., to provide consulting services and to assist Avlon in the collection, processing, review, and production of its responsive documents in this litigation; and MNJ Public Relations/Carte Blanche PR, a public relations firm with which Avlon consulted. *See* Dkt. 1352 at 2–5.

Plaintiffs reported at the hearing that they have withdrawn their subpoena to FTI Consulting. *See* Dkt. 1363 at 46.

Plaintiffs continue to seek marketing-related documents from Avlon and/or MNJ Public Relations relating to Avlon's line of KeraCare products. When Plaintiffs subpoenaed MNJ for the documents, Avlon objected to the subpoena because, "the one hair relaxer sold by the KeraCare brand was sold exclusively outside of the United States for a very brief time from on or about 2017

4

to 2019." Dkt. 1352 at 4. Avlon represents that, "[i]n compliance with" Judge Rowland's order at Dkt. 353, it "produced formulas, labels, LOI's, testing, and regulatory information that is has for the KeraCare hair relaxer products as exclusively foreign sold products." Dkt. 13252 at 4. However, Avlon believes that "seeking information about KeraCare hair relaxer product marketing information is outside of the scope of discovery permitted by this Court as it relates to products sold by defendants outside of the United States and not sold [sic] the plaintiffs in this litigation." Dkt. 1352 at 4–5 (citing Dkt. 353 at 8–10).

Avlon is correct that Judge Rowland's order (Dkt. 353) does not explicitly compel it to produce "hair relaxer marketing information" for products sold exclusively outside the United States. Dkt. 1352 at 4–5. Judge Rowland's order analyzed "six distinct categories of materials related to hair relaxer products sold exclusively outside of the United States: '(1) foreign regulatory materials; (2) product labels and usage instructions; (3) scientific studies; (4) articles in scientific journals; (5) organizational charts; and (6) certain Board of Director materials.'" Dkt. 353 at 2. "Marketing information," as Avlon characterizes the documents at issue, does not necessarily fall into any of these categories, so the order does not strictly control this dispute.

That said, Judge Rowland's order (and other orders on this topic) provide strong persuasive authority that the marketing information Plaintiffs seek in this particular instance is relevant. Although marketing information is not categorically relevant, Plaintiffs contend that these particular documents at issue may bear on the purported safety of Avlon's products. Plaintiffs argue that Avlon's communications with MNJ about its KeraCare line might demonstrate Avlon's knowledge (if any) that "KeraCare was safer because it didn't have particular chemicals in it, that it was softer." Dkt. 1363 at 39–40. It also might demonstrate that Avlon is "ab[le] to formulate and constitute an alternative design for these products." Dkt. 1363 at 40.

5

Both Judge Rowland and this Court have concluded that such safety-related documents are relevant. For example, Judge Rowland overruled L'Oreal's relevance objection to producing documents related to products sold exclusively outside the United States because that information "can shed light on L'Oréal U.S.A.'s knowledge and notice of safety risks." Dkt. 353 at 8. Likewise, this Court overruled Defendants' relevance objection to producing Product Information Files (PIFs) for products sold exclusively outside the United States because the "PIFs may demonstrate, for example, (a) the product's composition and ingredients, (b) whether or not certain ingredients in the hair relaxer products may be unsafe, and (c) whether a Defendant had notice or knowledge of that." Dkt. 1261 at 3. So too here. Avlon's relevance objection is overruled, as to any of the documents at issue that relate to safety and/or Avlon's knowledge thereof.

Plaintiffs and Avlon shall meet and confer by August 19, 2025, to discuss whether Avlon will stand on its lack-of-control objection. If Avlon is standing on this objection, it must share with Plaintiffs any contracts or other bases on which it is asserting its lack-of-control objection. If the parties cannot reach an agreement, they shall include in the next monthly JSR (due by August 28, 2025) their respective positions on whether or not Avlon has control over the documents identified herein.

### B.   Rolling Productions of New Custodians and ESI Sources

Plaintiffs and Avlon reported on Avlon's progress in making rolling productions of new custodians Ali Zaidi and Natalie Hicks. *See* Dkt. 1352 at 5–6. Avlon reported at the hearing that it completed its productions on July 30, 2025. *See* Dkt. 1363 at 46. Plaintiffs responded that they are still reviewing the production and may raise issues later. *See* Dkt. 1363 at 46–47. Any remaining issues are to be raised with Special Master Grossman in the first instance, in advance of the September status hearing.

6

###### C. Personal Emails of Keith Wells, Robert Brown, and Timakai Evans

Plaintiffs and Avlon updated the Court on Avlon's progress in producing the personal emails of Keith Wells, Robert Brown, and Timakai Evans. *See* Dkt. 1352 at 6–7. At the hearing, Avlon reported that it obtained and produced Wells' emails. *See* Dkt. 1363 at 47–48. Avlon also reported that its ediscovery vendor has been unable to access Evans' email account, despite trying several methods. Avlon expects its vendor to attempt one more method. *See* Dkt. 1363 at 51–52. The parties shall provide an update on Evans' email account in the next JSR.

Finally, Avlon reported that Mr. Brown has refused Avlon's requests to access his personal account and has retained personal counsel as it relates to this issue. *See* Dkt. 1352 at 6–7. As discussed at the hearing, Avlon shall provide Plaintiffs with Mr. Brown's and/or his counsel's contact information, and Plaintiffs shall issue a subpoena for the emails at issue by August 15, 2025. *See* Dkt. 1363 at 47–51.

### III. BEAUTY BELL ENTERPRISES AND HOUSE OF CHEATHAM, LLC

#### A. Personnel Files

The Court's ruling regarding personnel files in the "global issues" section of this Order will control what documents these Defendants need to produce in connection with depositions, if requested by Plaintiffs. House of Cheatham further argued that it "does not have the ability to pull a personnel file or bonus or compensation material with respect to a specific witness," that it previously produced its available materials during written discovery, and that it is otherwise "unaware of any performance, bonuses, or compensation documents that were expressly tied to hair relaxers and some other product or products." Dkt. 1352 at 8.

Nevertheless, at the hearing, House of Cheatham reported that it is working with its third-party HR contractor to determine whether it can obtain specific individuals' bonus or compensation material that would need to be produced consistent with this Court's orders. *See* Dkt. 1353 at 52–

58. As ordered at the hearing, House of Cheatham must endeavor to produce any required documents before scheduled depositions. If House of Cheatham cannot produce required documents before a deposition, it risks having the deposition remain open for continued questioning at a later date.

    B.    **Production of House of Cheatham's Employees' WhatsApp Communications**

Plaintiffs and House of Cheatham reported on House of Cheatham's production of its current and former employees' WhatsApp communications. *See* Dkt. 1352 at 8. As ordered at the hearing, House of Cheatham shall produce its current employees' responsive WhatsApp communications by August 13, 2025. *See* Dkt. 1363 at 72–73.

House of Cheatham shall contact its former employees by August 5, 2025, to request their WhatsApp communications. *See* Dkt. 1363 at 70–71. House of Cheatham shall inform Plaintiffs by August 8, 2025, which employees it has contacted and what their responses are. *See* Dkt. 1363 at 70–71. Plaintiffs may issue subpoenas to those individuals by August 15, 2025. *See* Dkt. 1363 at 70–71.

IV.    **L'OREAL**

    A.    **PIFs**

Plaintiffs and Defendant L'Oreal USA provided an update on L'Oreal SA's production of PIFs. *See* Dkt. 1352 at 8–9. L'Oreal SA reported that there are only 18 PIFs for products sold exclusively outside the United States, which was less than the 25–30 it originally estimated. *See* Dkt.1363 at 75–77. It expects to have those PIFs "substantially" produced by the September 12, 2025 production deadline. The Court reminds L'Oreal USA and L'Oreal SA that the deadline is not for "substantial" compliance, it is for complete compliance. The Court will hear a status update from both parties at the September 4, 2025 status hearing. The Court will look unfavorably upon any delays in production attributable to foreseen circumstances, such as, for example, employee

8

vacations, given the length of time that the Court gave L'Oreal SA to produce these documents. If any delays are attributable to circumstances outside L'Oreal's control (such as commissioner review), L'Oreal may present those circumstances to the Court.

### B. L'Oreal's Supplemental Document Productions, Including Production of Microsoft Teams Messages and Follow-Ups from the Depositions of Erica Culpepper and Jada Fountain

Plaintiffs and L'Oreal updated the Court on the status of L'Oreal's supplementation of its document productions, including Microsoft Teams messages. *See* Dkt. 1352 at 9–10. As ordered at the hearing, L'Oreal shall supplement its production of Microsoft Teams messages by August 14, 2025, including the responsive messages of Erica Culpepper. *See* Dkt. 1363 at 77–83. Plaintiffs and L'Oreal shall meet and confer by August 8, 2025, on whether they can reach an agreement on Plaintiffs' narrowed, supplemental requests for production. *See* Dkt. 1363 at 81–82. Plaintiffs and L'Oreal shall also address any outstanding items from the deposition of Jada Fountain at that meet-and-confer. *See* Dkt. 1363 at 82–83.

### C. Items Pending with Special Master Grossman

Plaintiffs and L'Oreal updated the Court on the status of a few issues possibly still pending with Special Master Grossman. *See* Dkt. 1352 at 10. If the parties have any remaining items to discuss on those issues, they shall meet and confer by August 8, 2025, and contact Special Master Grossman by August 14, 2025, regarding anything still outstanding or in dispute. *See* Dkt. 1363 at 83–85.

## V. LUSTER PRODUCTS, INC.

Plaintiffs and Defendant Luster Products, Inc., updated the Court on Luster's progress with its rolling productions. *See* Dkt. 1352 at 10–11. The parties reported that Luster is still collecting and reviewing "hundreds of thousands of documents," and Plaintiffs allege that its recent productions in July were incomplete. Dkt. 1352 at 10. Plaintiffs also recently learned that Luster

employees used personal email accounts to conduct some company business, and Luster has just begun collecting and reviewing that data. Dkt. 1352 at 10.

Luster is to provide its metadata overlay by August 8, 2025. Luster reports that the earliest it could complete its document production is August 15, 2025. *See* Dkt. 1363 at 85–86. Luster is to complete its productions by that date. For clarity, this deadline includes the production of all responsive personal (*i.e.*, non-Luster) emails of current employees that were used to conduct company business. Given the volume of these ongoing ESI productions, any further disputes may be referred to Special Master Grossman for efficient resolution.

Plaintiffs stated at the hearing that they are considering filing a motion for sanctions against Luster, in which Plaintiffs would seek attorneys' fees for the time Plaintiffs spent addressing Luster's process for collecting and producing responsive documents. *See* Dkt. 1363 at 87, 89–91. The Court advised that Plaintiffs are free to file whatever motion on this that they choose, but recommends that the parties dedicate their resources to completing oral discovery before the September 30, 2025 deadline. *See* Dkt. 1363 at 87–91.

## VI. MCBRIDE RESEARCH LABORATORIES, INC.

### A. Production of Regulatory and Third-Party Documents

Plaintiffs and McBride Research Laboratories, Inc., updated the Court on McBride's progress in producing outstanding regulatory and third-party documents. *See* Dkt. 1352 at 11–12. McBride shall conclude any outstanding productions by August 4, 2025. *See* Dkt. 1363 at 94.

### B. McBride's Interrogatory Responses

Plaintiffs and McBride updated the Court on McBride's progress in amending its interrogatory responses. *See* Dkt. 1352 at 12. At the hearing, McBride reported that it served its amended/supplemented responses on July 25, 2025, and it should re-forward these responses if Plaintiffs need. *See* Dkt. 1363 at 94–95.

### C. Plaintiffs' Request for Additional Deponents' Custodial Files

Plaintiffs and McBride reported a dispute as to Plaintiffs' request for the custodial files of thirteen deponents. *See* Dkt. 1352 at 12. By August 8, 2025, the parties shall meet and confer about how Plaintiffs would like to proceed with their request in light of the Court's orders included herein. If the parties cannot reach an agreement, the remainder of the dispute is referred to Special Master Grossman. The parties shall contact Special Master Grossman, if necessary, by August 14, 2025. *See* Dkt. 1363 at 95–99.

## VII. NAMASTÉ LABORATORIES, LLC

### A. Plaintiffs' Request for New Custodial Files

Plaintiffs and Defendant Namasté Laboratories, LLC, updated the Court on Namasté's responses to Plaintiffs' request for four additional custodians' files. *See* Dkt. 1352 at 12–13. Namasté represents that it produced two of the deponents' files in response to written discovery requests, and that it does not have personnel files for the other two individuals. *See* Dkt. 1363 at 101–02. The parties presented no further issue on this point for resolution.

### B. Challenges to Namasté's Privilege Assertions

Plaintiffs and Namasté reported that Plaintiffs challenge about 18 of Namasté's privilege assertions. *See* Dkt. 1352 at 13–14. Plaintiffs shall re-forward their list of privilege challenges to Namasté's counsel. The parties shall meet and confer by August 8, 2025, to determine whether any of those privilege disputes can be resolved. *See* Dkt. 1363 at 102–12. If the parties cannot reach a full agreement, given the volume, the Court may consider referring this dispute to Special Master Grossman. If the parties wish to seek her assistance on their own, the parties shall contact Special Master Grossman by August 14, 2025. *See* Dkt. 1368.

## VIII. REVLON

### A. Issues Pending with Special Master Grossman

Plaintiffs and Defendant Revlon updated the Court on various issues pending before Special Master Grossman. *See* Dkt. 1352 at 14–15. Those issues shall remain referred to Special Master Grossman for resolution on her timeline.

### B. Privilege Issues

Plaintiffs and Revlon reported that Plaintiffs challenge one of Revlon's privilege assertions. *See* Dkt. 1352 at 15–17. Revlon has now provided the document to the Court for *in camera* review. *See* Dkt. 1363 at 116–17. To get back to the parties as soon as possible, the Court will provide its short-form ruling on the issue by separate order. If the losing party seeks a longer order memorializing the Court's analysis in order to appeal to the District Judge, it may request it on the timeline included in the Court's short order. *See* Dkt. 1363 at 112–19.

## IX. SALLY BEAUTY SUPPLY, LLC

### A. Plaintiffs' Requests for Updated or Supplemental Discovery Responses

Subject to the timeliness standard that this Court has now imposed in the "global issues" section of this Order, Plaintiffs and Sally Beauty shall meet and confer on any of Plaintiffs' requests that are timely, by August 15, 2025. *See* Dkt. 1363 at 30.

### B. Privilege Issues

Plaintiffs and Sally Beauty reported in the JSR that Plaintiffs challenge two of Sally Beauty's privilege claims, and that Plaintiffs request *in camera* review of the documents at issue. *See* Dkt. 1352 at 21–23. However, Plaintiffs and Sally Beauty reported at the hearing that they have resolved this issue in principle. *See* Dkt. 1363 at 30–31.

X.  STRENGTH OF NATURE, LLC

    A.  **Rule 30(b)(6) Deposition on Strength of Nature's Sales Practices**

Plaintiffs and Defendant Strength of Nature, LLC, updated the Court on the progress of scheduling Plaintiffs' Rule 30(b)(6) deposition regarding Strength of Nature's sales practices. *See* Dkt. 1352 at 23. The parties shall exchange any required outstanding information and dates with each other by August 4, 2025. *See* Dkt. 1363 at 119–23.

    B.  **Privilege Issues**

Plaintiffs and Strength of Nature updated the Court on Plaintiffs' challenge to Strength of Nature's privilege log entries. *See* Dkt. 1352 at 23. The parties reported at the hearing that they resolved their dispute. *See* Dkt. 1363 at 119–20.

XI.  RNA CORPORATION

Plaintiffs and Defendant RNA Corporation updated the Court on various items, including RNA's deadline to respond to Plaintiffs' RFPs. *See* Dkt. 1352 at 23–25. As discussed at the hearing, RNA will respond to Plaintiffs' RFPs by September 21, 2025. *See* Dkt. 1363 at 124–25. As requested, Plaintiffs and RNA shall continue meeting and conferring on the remaining issues identified in the JSR and update the Court in the August 28, 2025 JSR or at the September 4, 2025 hearing. *See* Dkt. 1363 at 124–25.

SO ENTERED AND ORDERED.

DATED: August 11, 2025

                                                      HON. BETH W. JANTZ
                                                      United States Magistrate Judge