**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT STATUS REPORT FOR THE OCTOBER 9, 2025**
**DISCOVERY STATUS CONFERENCE**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this Joint Status Report in advance of the discovery status conference scheduled for October 9, 2025 before the Honorable Magistrate Judge Beth W. Jantz.

**I.** *Global Issues*

**a. Tabitha O'Dell**

**Plaintiffs' Position:**

This Court ordered on September 4, 2025, that Tabitha O'Dell (as well as her company, Consumer Relations Group, and attorney) meet and confer within 7 days to provide a timeline for production of documents and a date for her document production. Ms. O'Dell's counsel, Anthony Monaco, assured Plaintiffs that her document production would occur before September 30, 2025.

On September 12, 2025, the meet and confer took place but Anthony Monaco indicated that he would need at least another week to coordinate with counsel for Strength of Nature, House of Cheatham, and Namaste to confirm both the volume of documents and timeline for production. At the time, it was unclear what the volume of documents would be; although Mr. Monaco told Plaintiffs that he did not believe the number of documents was much over 10,000 documents.

Plaintiffs indicated their dissatisfaction with this position as the document subpoenas for Ms. O'Dell and CRG had been issued in mid-May. Further, on September 12, 2025, Plaintiffs informed Ms. O'Dell and CRG's counsel that an agreement could be reached to take Ms. O'Dell's deposition in Savannah on October 15, 2025, under the following conditions:

o Ms. O'Dell's counsel obtained agreement for all parties.
o Ms. O'Dell's counsel confirmed that <u>all</u> of Ms. O'Dell and her company's documents were produced on or before September 30 from:
  ▪ Strength of Nature;

1

- ▪ House of Cheatham;
- ▪ Namaste;
- ▪ Ms. O'Dell; and
- ▪ Consumer Relations Group

On Monday September 22, 2025, Plaintiffs participated in a meet and confer with counsel for SON, Namaste, House of Cheatham, and Ms. O'Dell/CRG to further discuss timelines for production and a date for deposition as production had only occurred from Ms. O'Dell for documents relating to work performed for Strength of Nature (of approximately ~4200 documents).

- o House of Cheatham indicated that Ms. O'Dell's counsel would be producing approximately 100 documents relating to her work performed for their company on September 24, 2025, Strength of Nature indicated there would be a second production of another approximate 1500 documents (1400 documents were received on September 26), and Namaste was unable to provide an estimated volume but anticipated hopeful production by September 30, 2025 or the end of that week and O'Dell/CRG estimated production perhaps by September 30 without any estimate regarding its volume.

On September 24, 2025, Plaintiffs reached out requesting an update from Ms. O'Dell's counsel for an updated timeline and volume of production. House of Cheatham produced their O'Dell documents on September 24, 2025. Strength of Nature produced their second set of O'Dell documents on September 26, 2025 and indicated they would be producing a privilege log by October 6, 2025, along with a production of any de-privileged materials. Counsel for Namaste informed Plaintiffs on September 29, 2025 that they would be producing approximately 5,000 O'Dell documents on or before September 30, 2025.

- o On September 30, 2025, Counsel for Ms. O'Dell produced over 18,000 pages of production from Namaste related to Ms. O'Dell and CRG's work for that company. Namaste also indicated that they would provide a privilege log by October 8, 2025, along with a production of any de-privileged materials.
- o Further, on September 30, 2025, counsel for House of Cheatham indicated that they had identified approximately 500 to 1,000 page volume unknown, related to Ms. O'Dell that were under review for production on or before October 3, 2025.

The parties were tentatively holding October 15, 2025 for Ms. O'Dell's deposition. However, given that as of September 30, 2025, there have been more than 34,000 pages produced, House of Cheatham has indicated that they are likely producing another 500 to 1,000 documents (page count unknown), both Namaste and Strength of Nature intend to provide privilege logs for a third party consultants documents and/or de-designate potentially privileged documents for further production and Ms. O'Dell's counsel has still not confirmed if she and/or CRG will be producing a separate production of her own (or the company's responsive documents), again with an

unknown document or page count; Plaintiffs are requesting alternative dates for deposition in Savannah on October 29 or October 30, 2025 for Ms. O'Dell.

**Strength of Nature's Position:**

Documents in Ms. Odell's possession concerning Strength of Nature have been produced and Strength of Nature will engage with counsel on an appropriate time to take Ms. Odell's deposition, when Plaintiffs are prepared to do so.

**House of Cheatham's Position:**

Documents in Ms. Odell's possession concerning House of Cheatham have been produced and House of Cheatham will engage with counsel on an appropriate time to take Ms. Odell's deposition, when Plaintiffs are prepared to do so.

**Namaste's Position:**

Documents in Ms. O'Dell's possession concerning Namaste have been produced and Namaste will engage with counsel on an appropriate time to take Ms. O'Dell's deposition, when Plaintiffs are prepared to do so.

### b. PCPC's Motion to Quash

On 10/1/2025, PCPC filed a Motion to Quash a Non-Party Subpoena in the District of Columbia. The PSC is reviewing the motion and will be prepared to address it with that Court.  A courtesy copy of the PCPC Motion is attached hereto as Exhibit 4.

## II. _Defendant Specific Discovery Status_

**Avlon Industries, Inc.:**

### a. Special Master Grossman Update

#### i. Secondary Checklist:

**Plaintiffs' Position:**

Special Master Grossman reviewed the parties' submissions and proposals regarding the secondary checklist issue, and after hearing from the parties on September 22, 2025, will review Plaintiffs' proposal to establish a methodology for identifying and sampling documents from the set of documents coded as non-responsive, but that also hit on search terms (the null set) to determine if any responsive documents were not produced.

**Avlon's Position:**

Avlon concurs with Plaintiffs' position and notes that the parties are meeting again with Professor Grossman on October 3, 2025, to discuss questions and objections about Plaintiffs' methodology and proposal.

### ii. Basecamp:

**Plaintiffs' Position:**

On 4/11/25, the Court issued an order stating that Plaintiffs identified sufficient material to suggest that Basecamp may house further responsive materials. The parties were ordered to meet and confer about the timeline regarding the production and seek assistance from Special Master Grossman for any unresolved issues. After hearing from the parties on September 22, 2025, Special Master Grossman is currently evaluating the parties' positions and technical options related to the Basecamp document collection and production process, including the feasibility of additional searches and collaboration between vendors. Plaintiffs are pending Special Master Grossman's guidance on how Avlon will follow the Court's prior order to produce Basecamp documents.

**Avlon's Position:**

After hearing from the parties on September 22, 2025, Special Master Grossman is currently evaluating the parties' positions and technical options related to the Basecamp document collection and production process, including the feasibility of additional searches and collaboration between vendors.

### b. Deposition Update:

**Plaintiffs' Position:**

The below chart depicts the depositions pending scheduling. As anticipated, with the production of additional, late produced, documents, as well as deposition testimony, additional, potential deponents are coming to light.

Since the last CMC before this Court, thirteen depositions have been completed and two are scheduled to take place in October.

Avlon Depositions Pending Scheduling: Judge Rowland has extended the deadline for completion of oral discovery as to Defendant Avlon to December 19, 2025.

| | |
|---|---|
| **Keith Wells** | Plaintiffs have proposed two potential October dates for this deposition. |
| **Stacy Womack** | Plaintiffs have proposed two potential October dates for this deposition. |
| **30b6 on Sales** | Plaintiffs have proposed 3 potential October dates that the deposition taker is available for this deposition. |
| **30b6 on Marketing** | Plaintiffs have proposed two potential October dates that the deposition taker is available for this. |
| **Robert Brown (Current employee)** | Plaintiffs have proposed two potential October dates that the deposition taker is available for this deposition, provided Mr. Brown complies with and produces documents consistent with the currently pending subpoena. |

4

| | |
|---|---|
| **30b6 on Naming Conventions** | The parties are conferring about whether Avlon will be able to create a document that the parties agree is sufficient and that Avlon will stipulate to the admissibility of in lieu of a 30(b)(6) deposition. |
| **Mukhtar Hussain** | Plaintiffs were required to issue a subpoena. After serving that subpoena, Avlon began working with this witness and then informed Plaintiffs that there are some concerns with his health. Plaintiffs have explained that there are some documents that require Mr. Hussain's testimony. Plaintiffs have proposed entering into a stipulation regarding the admissibility of certain documents involving this witness and, upon entering that stipulation, taking down this deposition.<br><br>At the 9/25/25 virtual hearing in front of Judge Rowland, counsel for Avlon indicated that Avlon will likely enter into such a stipulation, pending review of the documents at issue. |
| **Dr. Kazim Ali Raza Naqvi** | Avlon reports he has some physical limitations and cannot sit for deposition. Plaintiffs have proposed entering into a stipulation regarding the admissibility of certain documents involving this witness and, upon entering that stipulation, taking down this deposition.<br><br>At the 9/25/25 virtual hearing in front of Judge Rowland, counsel for Avlon indicated that Avlon likely will enter into such a stipulation, pending review of the documents at issue. |
| **Khadijeh Saad** | Currently on medical leave. Deposition date to be scheduled pending updates regarding the witness's health. |
| **30b6 on Distributors/Salons** | Date to be scheduled |
| **30b6 on Regulatory** | Date to be scheduled. Plaintiffs understand that Avlon may desire that this topic be broken into depositions across more than one witness. |
| **30b6 on Science** | Date to be scheduled. Plaintiffs understand that Avlon may desire that this topic be broken into depositions across more than one witness. |
| **Lina Zayed** | Date to be scheduled |
| **Michael Utech** | Plaintiffs were required to serve a subpoena on this witness. Deposition date to be scheduled. |
| **Narjis Askar** | Subpoena has been issued. Plaintiffs are still trying to locate this witness. |
| **Akbar Hussain** | Subpoena has been issued. Plaintiffs are still trying to locate this witness. |
| **Deborah Redbourn** | Resides in the UK. Plaintiffs are investigating the potential for proceeding with this deposition. |
| **<u>Potential Additional Deponents as a result of deposition testimony or further</u>** | The parties have not yet reached agreement on the following witnesses that were requested after the first week of Avlon depositions:<br>Joseph Mensah<br>Dante Albano |

| **document production** | Tom Bingham<br><br>Counsel for Avlon recently informed Plaintiffs that they plan to object to depositions for Joseph Mensah, Dante Albano, and Tom Bingham. Plaintiffs are requesting the Court's assistance regarding these additional deponents as a result. |
|---|---|

**Avlon's Position:**

Avlon and Plaintiffs have begun exchanging dates regarding the depositions of Keith Wells, Lina Zayed, Dr. Maliha Syed, and Stacy Womak as well as exchanging dates for Part II of the Product Identification 30(b)(6) on labels and the Marketing 30(b)(6) deposition. The Parties are still working through topic negotiations for the Science, Regulatory, Sales, and Distributor/Salon 30(b)(6) depositions. Avlon anticipates that a number of depositions will have dates by the October 9, 2025 hearing.

Avlon acknowledges that the parties are going to attempt to reach an agreement regarding the authenticity of documents related to Dr. Raza Naqvi, Mukhtar Hussain, and Khadijeah Saad. Ms. Saad, a current Avlon employee, is on indefinite medical leave with no anticipated date of return. The families of Dr. Naqvi and Mr. Hussain are working to obtain medical documentation regarding their inability to sit for depositions.

Avlon objects to the deposition of Tom Bingham, Joseph Mensah, and Dante Albano on several grounds. First, Plaintiffs are improperly seeking these depositions after the August 1, 2025 deadline to issue notices set by this Court has passed. Plaintiffs' leadership acknowledged to Judge Rowland that their deadline to seek depositions of defendant employees passed on August 1, 2025, at the most recent hearing on September 25, 2025.

Plaintiffs argument that they need to depose these witnesses because of recent depositions should not be well taken. As it relates to Joseph Mensah, he began working at Avlon in February 2023, after Avlon was first served in this litigation (January 12, 2023) and outside of the time scope of discovery. As such, his testimony and personal knowledge of Avlon's Quality Control department are not relevant to the litigation at this stage. Plaintiffs have claimed that because Jafar Hasan, Avlon's Vice President of Operations, identified him as the current individual handling Quality Control and the person who handles FDA and other product registration in the United States, he is highly relevant to this litigation. That is simply not the case given that information after January 12, 2023, is not relevant and his personal experiences and knowledge of Avlon all fall after that date. Moreover, Plaintiffs have already timely and properly sought the depositions of other Quality Control Managers – Stacy Womack and Lina Zayed – who are within the correct scope of this litigation. Those depositions are in the process of being scheduled. The personal knowledge of these individuals will be more relevant and timely to the scope of this litigation.

The request for Dante Albano's deposition is simply untimely. Mr. Albano is another quality control manager who worked very briefly for Avlon in the early 2020's. Plaintiffs have been receiving documents referring to and coming from Albano since February 29, 2024. Plaintiffs have taken no steps until well past August 1, 2025, to

seek more information about Mr. Albano. While Mr. Albano was discussed at Jafar Hasan's deposition, Plaintiffs were well aware of Mr. Albano prior to August 18, 2025, but chose not to act.

Lastly, as it relates to Tom Bingham, Plaintiffs originally sought his custodial file from Avlon, in February 2025. Mr. Bingham left Avlon in 2019. Avlon did not have much left from Mr. Bingham because Avlon discontinued paying for the license on Mr. Bingham's Outlook and Microsoft account in and around 2020/2021. Plaintiffs were well aware of Mr. Bingham prior to any deposition taking place in this litigation and could have requested his deposition even without his custodial file on August 1, 2025. Plaintiffs requested the depositions of several Avlon employees from whom they never requested custodial files on August 1, 2025, and could have done the same for Mr. Bingham then.

Plaintiffs had knowledge, notice, and opportunity to request the depositions of these potential witnesses far before the August 1, 2025 deadline and failed to do so. They should not be rewarded for failing to act in a timely manner.

For the above reasons, Plaintiffs' requests to depose these three additional witnesses should be denied.


### c. Third Party Subpoena: Robert Brown


**Plaintiffs' Position:**

Mr. Brown is a current Avlon employee who refused to allow Avlon access to his personal email account, despite having used it for work-related purposes. With support from Judge Jantz, a subpoena was issued on Mr. Brown. Following service of the subpoena, Mr. Brown acknowledged receipt of the subpoena and requested an extension until 9/19/25 to comply with the subpoena. Plaintiffs granted his request for an extension. However, the requested compliance date of 9/19/25 has passed and Mr. Brown has not complied with the subpoena nor has he responded to additional inquiries from Plaintiffs regarding the status of his compliance with the subpoena.

Mr. Brown resides in Wood Dale, Illinois. Plaintiffs request that the Court issue an Order to Show Cause seeking to have Mr. Brown explain why he should not be held in contempt for failure to comply with the subpoena. Counsel for Avlon has indicated that Avlon will present him for his deposition.

**Avlon's Position:**

Avlon was recently contacted by Mr. Brown for assistance in collection and production of his personal email records, and counsel for Avlon is working out an agreement that is satisfactory to both Avlon and Mr. Brown in light of his previous report of separate counsel. Avlon anticipates being able to report regarding collection and production at the October 9, 2025 hearing.


### d. Outstanding Privilege Logs

**Plaintiffs' Position:**

Avlon has failed to produce updated privilege logs. To date, Avlon has produced 40 rolling productions of documents and materials. The last privilege log for Avlon's rolling production 31-34 was received on or about May 28, 2025. However, Avlon has not produced privilege logs from production sets 35 through 40. On August 19, 2025, and again on September 24, 2025, Plaintiffs' counsel requested updated privilege logs, but Avlon has not responded to either request. As discovery nears its end, Plaintiffs cannot fully assess these privilege logs for additional discoverable information and/or additional potential witnesses. Additionally, the previously produced privilege logs have been produced sporadically over time making it difficult for Plaintiffs to identify various past privilege logs. Therefore, Plaintiffs request the Court to order Avlon to produce an omnibus or compilation updated privilege log, to include the remaining missing privilege logs from production 35 through 40.

**Avlon's Position:**

Avlon anticipates completion of an updated privilege log by the October 9, 2025 hearing.

### Beauty Bell Enterprises and House of Cheatham, LLC:

**a.  Standard Operating Procedures**

**Parties' Joint Position:**

HOC has produced SOPs, but Sonya Washington's testimony highlights the possibility of more responsive SOPs, which HOC is searching for. Plaintiffs request an order requiring production of any such Standard Operating Procedures in House of Cheatham/Beauty Bell's possession that has not been produced by October 10, 2025.

**b.  Deposition Update:**

**Plaintiffs' Position:**

The parties have seven depositions scheduled for October as agreed upon by the parties, in addition to Tony Adair and Tabitha O'Dell's depositions.

**HOC/Beauty Bell's Position:**

HOC is working with Plaintiffs to set the depositions of Danielle Beckford and its 30(b)(6) witnesses.

### L'Oréal USA:

**a.  Update Regarding Requests for Production**

**Plaintiffs' Position:**

As reflected in the September 17, 2025 Order, at the last hearing, L'Oreal represented that it was currently working to provide more records from social media. Plaintiffs have been requesting information concerning marketing documents and communications on various social media platforms based on deposition testimony and observation of L'Oreal's public facing marketing communications. Similarly, Plaintiffs have requested documents and communications concerning L'Oreal's Salon Centric (a distributor of salon professional products), which sells L'Oreal and other defendant manufacturer's hair relaxer products. To date, none of this belated information or supplemental production has been produced to Plaintiffs.

**L'Oréal USA's Position:**

L'Oréal USA does not understand there to be any remaining disputes regarding requests for production. Following the last conference before this Court, the parties met and conferred as directed. During that discussion, Plaintiffs expressed concern with the methodology L'Oréal USA was using to collect social media data. As a result of that discussion, L'Oréal USA revised its approach and expects to complete the resulting production shortly. L'Oréal USA has also made further inquiries to SalonCentric personnel regarding potential education materials sought by Plaintiffs and has identified a handful of potentially responsive additional documents, and expects that search and production to be complete shortly.

**b. Outstanding Privilege Challenges:**

**Plaintiffs' Position:**

Separately, the parties are also working in good faith to narrow the scope of their disputes regarding Plaintiffs' other rolling privilege challenges. As of the time of the submission of the JSR, 11 additional privilege claims remain in dispute. Should the parties be unable to reach a full agreement on these 11 challenges/claims as of the JSR hearing, Plaintiffs request that L'Oreal submit the remaining documents to Special Grossman for in camera review and rulings.

**L'Oréal USA's Position:**

To date, the parties have been able to resolve all challenges to documents withheld or redacted by L'Oréal USA on the basis or privilege and/or work product without Court/Special Master intervention. The parties continue to meet and confer about what L'Oréal USA understands to be the final set of Plaintiffs' challenges.

**c. Deposition Update:**

**Plaintiffs' Position:**

Pursuant to the Court's instruction during the discovery hearing on September 4, 2025, Plaintiffs advised L'Oreal of modifications to topics in multiple 30(b)(6) notices. Plaintiffs have issued amended notices reflecting, in part, the withdrawal of several topics following the parties meet and confer. Plaintiffs ask     ed  and  now   await available dates for L'Oreal's 30(b)(6) designees. In addition to the 30(b)(6) depositions, Plaintiffs intend to depose two previously disclosed, former employees of L'Oréal.

**L'Oréal USA's Position:**

All depositions of L'Oréal USA and L'Oréal SA witnesses are complete, with the exception of 30(b)(6) witnesses. The parties are working to identify the appropriate witnesses and schedule these 30(b)(6) depositions after substantial meeting and conferring regarding 30(b)(6) topics and subject to L'Oréal USA's objections.

It is unclear which "previously disclosed, former employees" Plaintiffs claim they intend to depose, but, to the extent those witnesses have not been subpoenaed and included on the deposition chart, L'Oréal USA objects to these depositions. Plaintiffs were granted additional time in order to complete a specifically-identified subset of depositions, not to add new individuals to the list.

## Luster Products, Inc.:

**a. Stipulation Regarding Authenticity of Luster Documents**

**Joint Position:**

As a matter of efficiency and in light of the document production which continued through August 2025, the parties are working on a joint stipulation of authentication of documents. The parties anticipate being able to reach a joint resolution on the stipulation, thus preventing unnecessary oral discovery. The parties are meeting and conferring.

**b. Deposition Update:**

**Plaintiffs' Position:**

In the month of September all seven scheduled depositions went forward. Despite extraordinary efforts to complete the depositions, especially in light of the 155,000 documents produced between June and August 2025, Plaintiffs Leadership still has critical outstanding depositions that need to occur. These depositions include corporate representative depositions as well as employees that worked in R&D, quality control, sales, and individuals who communicated with the FDA.

Plaintiffs have requested the deposition of LD Rainey, an individual who works in the business services department and reports directly to the president, Jory Luster. Ms. Rainey was originally identified as an individual for whom Plaintiffs' counsel wanted to obtain her custodial file. Based on representations made from defense counsel, and as a matter of efficiency, Plaintiffs' counsel removed our request for her custodial file. During depositions taken in the month of September 2025, it was learned that Ms. Rainey has significant responsibility as it related to sales, including providing the data for daily sales reports directly to the president of Luster.

Based on the new information learned during depositions, Plaintiffs' counsel has requested an opportunity to depose Ms. Rainey. Plaintiffs are not requesting Ms. Rainey's custodial file given the nearing end of discovery.

Plaintiffs request the ability to depose Ms. Rainey based on the recently learned information.

Further, in light of the ongoing review, Plaintiffs' Leadership requests that Plaintiffs be allowed until November 1, 2025 to identify Luster employees and former employees that they intend to depose. The parties are meeting and conferring in the meantime.

**Luster's Position:**

Plaintiff's counsel requested the depositions of forty-two (42) witnesses, of a company that employees approximately one hundred (100) employees, by the court ordered deadline of August 1, 2025. Plaintiff's counsel conceded the witness list was overly inclusive due to the fact of that there were documents being produced. On August 7, 2025, Plaintiff's counsel provided a pared down request for sixteen (16) witnesses for depositions and counsel for Luster Products worked with plaintiff's counsel on the scheduling of those depositions. At the time of this filing, seven depositions of fact witnesses and one 30(b)(6) witnesses have gone forward.

On September 26, 2025, counsel for Luster Products requested a meet and confer and a requested plaintiffs provide a final narrowed down list from the forty-two (42) witnesses they intend to depose by September 30, 2025, so that counsel could work on scheduling and preparing these witnesses for deposition. Parties held a meet and confer conference on October 2, 2025. At this time, Luster renewed their request for a final, written, narrowed down list of the forty-two (42) witnesses of whom they wanted to depose and ask the others to be withdrawn.

Luster Products objects to the date of November 1, 2025, for any additional witness to be identified since Plaintiffs began by identifying a list of potential deponents that was knowingly broad and overly inclusive. Further, the extension of time was granted to complete the deposition of timely noticed Luster witnesses and Luster's 30(b)(6) designees by Judge Rowland. No extension was granted to add additional deponents as part of Judge Rowland's order, even though the issue was raised.

Further, Plaintiffs are now requesting, for the first time, the deposition of "LD" Rainey. Ms. Rainey is a Luster employee first identified in a Corporate Organizational Chart (Luster0005) provided to the Plaintiffs on November 29, 2023. Further, Ms. Rainey's position and role with the company was discussed during the Rule 30(b)(6) deposition on Luster's Corporate Structure on April 22, 2025. Ms. Rainey and her role with the company were clearly known to the Plaintiffs well in advance of the deadline to notice depositions. Raising another witness at this time is untimely and prejudicial to defendant Luster who has been trying to get these depositions completed within the court ordered deadlines.

**McBride Research Laboratories, Inc.:**

a. **Deposition Update:**

**Plaintiffs' Position:**

The depositions of Sholanda Armstrong and Andre McBride, Sr. as well as a Rule 30(b)(6) deposition are presently scheduled to occur on October 6 – 7, 2025. The parties are in the process of scheduling the deposition of Cornell McBride, Sr. and two remaining Rule 30(b)(6) depositions. Plaintiff is also in the process of scheduling the deposition of former McBride employee, Courtney Jenkins, who was issued a subpoena to testify in this matter.

**McBride's Position:**

The parties are in the process of scheduling the one remaining McBride fact witness deposition of Cornell McBride, Sr. The remaining fact witnesses depositions have been scheduled for October 6th and 7th. As for the 30(b)(6) depositions, Plaintiffs have taken five 30(b)(6) depositions, and the parties are in the process of re-scheduling two remaining corporate representative depositions.

### Namasté Laboratories, LLC:

### a. Request for Deposition of Former Employee Eric Seeleman

**Plaintiffs' Position:**

On 09/18/23 Judge Jantz overruled Namaste's claim of privilege over certain documents related to the company's communications with the FDA. Those documents include emails to and from former Namaste attorney Eric Seeleman. On 09/23/25 Plaintiffs *renewed* their July 21, 2025 request to take the deposition of Eric Seeleman.

**Namaste's Position:**

Although plaintiffs timely provided notice under the most recent court order that they intended to pursue the deposition of former in-house counsel Eric Seeleman, Namaste objects that the request itself is untimely given that Namaste notified plaintiffs back in July that they would not produce in-house counsel. Namaste continues to object to this deposition but is willing to meet and confer on a possible limited scope regarding the **fact** of the communications or to explore possible stipulations that plaintiffs may seek. Namaste disputes Plaintiffs' apparent position that authoring a document that is not subject to privilege somehow opens an attorney up to deposition discovery regarding that document. That the document itself is not privileged does not strip an attorney of privilege protections regarding the work that went into the creation of that document and Plaintiffs have offered no explanation for why such discovery should be allowed in this case. Assuming no agreement can be reached, Namaste will file a motion for protective order.

### b. Outstanding Privilege Challenges:

**Plaintiffs' Position:**

The parties continue to meet and confer to narrow the disputes stemming from Plaintiffs' privilege challenges served on July 31 and September 10, 2025. Any

privilege challenges remaining as of the JSR hearing will need to be submitted to Special Master Grossman for in camera review.

Namaste's request for a date certain to end the privilege challenge process should be denied. The need to litigate privilege issues with Namaste is entirely their own doing. First, the Court ordered that Namaste produce an amended privilege log by July 18, 2025. Plaintiffs' review of that log concluded that it was not compliant with CMO 5, and Namaste asked for additional time to produce an amended privilege log. On August 27, 2025, Namaste provided Plaintiffs with a privilege log containing 7,244 entries. Since that time, Plaintiffs have diligently and methodically reviewed the voluminous privilege log, served challenges on Namaste and conferred in conjunction with same.

Plaintiffs should not be barred from fully challenging the privilege claims asserted by Namaste, particularly in light of the downgrades negotiated thus far and the now extended deposition schedule.

**Namaste's Position:**

Namaste continues to respond to Plaintiffs' challenges and, to the extent Plaintiffs believe that additional challenges will be forthcoming, requests an order from the Court providing a deadline for any such further challenges.

### c.  Deposition Update:

**Plaintiffs' Position:**

Plaintiffs are currently working with Namaste to complete corporate depositions as quickly as possible. This process has been slow due to the fact that a significant number of the relevant witnesses are now former employees who require subpoenas.

To date:

- 7 depositions have been completed;

- 4 depositions are noticed through 10/23/25;

- 4 former employees have been served with a subpoena and have subsequently reached out to Namaste to schedule their depositions;

- 4 former employees have not been located;

- 1 former employee is an attorney; and

- Namaste has refused to schedule 1 witness who they say was a contractor, not an employee.

**Namaste's Position:**

Namaste continues to work with Plaintiffs to schedule depositions consistent with Judge Rowland's recent order setting the deadline for Namaste depositions as November 21, 2025. Namaste disputes Plaintiffs' characterization that it has refused to schedule the deposition of a "contractor": the individual at issue was neither a contractor nor an employee. She worked for a third-party vendor.

**Revlon:**

**a. Special Master Grossman Update:**

**Joint Position:**

    **i. Bill of Materials:**
The parties have submitted letter briefs regarding Plaintiffs' request for an updated Bill of Materials. Special Master Grossman ruled that Plaintiffs are entitled to the password for the Bill of Material spreadsheet and she will maintain the original should there be any disputes regarding data manipulation. The parties are still discussing UPC production and name variation issues based on Defendants' response to materials in their production.

    **ii. Third-Party Subpoenas**
Plaintiffs received production of the Domain/Email List with vendor category from Defendants on September 22, 2025. The parties agree that, because this matter is ongoing, subpoenas may be issued after that deadline once the necessary information is produced. Revlon is continuing to contact and request documents from the identified third-party vendors.

    **iii. Responses to Interrogatories**
Special Master Grossman previously ruled that Revlon may update third-party interrogatory responses after depositions are complete. Plaintiffs request that Revlon update its interrogatory responses with known information within the next 30 days and continue to update on a rolling basis as new information is discovered, noting that the prior ruling applied only to third-party discovery. Revlon maintains that interrogatory responses will be updated within a reasonable time following the completion of depositions.

**b. Deposition Update:**

**Plaintiffs' Position:**

By agreement of the parties, fact witness deponents are being scheduled throughout the month of October. As of date, there are five fact witness depositions scheduled for October.

By agreement of the parties, Michael Helman's 30(b)(6) depositions on the designated topics will take place in the beginning of November. Revlon has not designated a corporate representative for outstanding topics despite Plaintiff's deadline to them last Friday, September 26, 2025.

**Revlon's Position:**

Revlon has produced 13 fact witnesses and two Rule 30(b)(6) witnesses thus far, and the parties have five additional fact witness depositions scheduled for the month of October. The parties are exchanging dates for one remaining fact witness deposition

and are discussing the subpoenaed witness depositions that do not yet have an October date.

The parties have engaged in substantial meet and confer efforts regarding the scope of, and appropriate witness designations for, the Rule 30(b)(6) topics. Following such conversations, Revlon produced a witness to testify regarding a number of 30(b)(6) topics on September 25th. On September 26th, Revlon designated a further witness to testify regarding all remaining topics in Plaintiffs' Regulatory & Foreign Regulatory, Science, General Corporate Compliance, and Public Representations 30(b)(6) Notices, which deposition has been agreed upon for November 5th and 6th (if necessary). Revlon further provided a witness designation on September 29th for a 30(b)(6) witness on an additional set of topics and is actively working to identify an appropriate witness(es) for the remaining 30(b)(6) topics.

### Sally Beauty Supply LLC:

**a. Deposition Update**

**Plaintiffs' Position:**

To date, a total of 15 depositions have been taken of Sally Beauty current and former employees. All four 30(b)(6) depositions have been scheduled for the month of October. The parties expect the 30(b)(6) depositions to be completed by 10/9/2025.

**Sally Beauty's Position:**

Plaintiffs completed 16 individual fact witness depositions between June 2025 and the date of this JSR. The only Sally Beauty depositions left to take are 30(b)(6) depositions and a single fact witness deposition that had to be rescheduled when family issues required the deponent (a former employee) to travel out of the country unexpectedly for an extended period of time. All of the remaining depositions are scheduled in October.

**b. Third Party Subpoena: Brentwood Beauty Labs International**

**Plaintiffs' Position:**

Brentwood Beauty Labs International appears in discovery documents from Sally Beauty as a manufacturer which had a hand in creating and/or vending chemical ingredients for hair relaxing products. On or about March 2024, Plaintiffs requested that Brentwood Beauty Labs International be served a *subpoena duces tecum.* After many diligent searches, Plaintiffs were unable to discover a reputable and/or active address at which the third party could be served due to the company's inactive status. In further efforts of due diligence, Plaintiffs continued to search for an appropriate address at which to serve Brentwood Beauty Labs International and were finally able to locate one in the last two weeks. While Sally Beauty produced documents in their possession related to Brentwood, Plaintiffs anticipate Brentwood, an affiliate of Sally Beauty, will have additional documents that Sally Beauty would not have in their possession. Thus, Plaintiffs request leave of the Court to serve a subpoena on Brentwood Beauty Labs International relating to this litigation.

**Sally Beauty's Position:**

Brentwood was a Sally Beauty affiliate, not a manufacturer, and it no longer exists. Sally Beauty also told Plaintiffs on August 21, 2025, that Brentwood's documents had already been searched for and produced if responsive. Thus, a subpoena is unnecessary and violates this Court's instruction to avoid duplicating discovery from parties and subpoenas, particularly at this late stage. Additionally, Plaintiffs do not explain why it took them years to locate an address for Brentwood if they wanted to serve a subpoena and believe it still exists.

**Strength of Nature LLC:**

**a. Sufficiency of Marketing 30(b)(6) Designee**

**Plaintiffs' Position:**

On September 19, 2025, Plaintiffs took the 30(b)(6) deposition of Jawad Siddique. The subject matter of the deposition was limited to Topics 1 d, e & f, Topic 17, and Topic 18 of the original 30(b)(6) notice. These topics were mainly focused on marketing efforts and the financial budgeting information for SON and Godrej relating to hair relaxer marketing. It became apparent that Mr. Siddique only spent 4 hours preparing for the deposition and was unprepared to answer on behalf of the company for to entirety of the scope and timing of the 30(b)(6) notice, especially in light of the fact that he has only been with SON for approximately 6 months and had limited knowledge pre-2017 (the time of Godrej's acquisition). *See* Siddique Tr. 17:1-12 (witness was not able to identify any individuals outside the Organizational letter prepared by counsel); Tr. 25:5-9 (witness did not know which brands contained hair relaxers); Even more concerning, when provided a copy of Strength of Nature's catalogue of products (see Exhibit 5, SON0000000502) he had no knowledge of the brands or hair relaxer products sold by Strength of Nature.; Tr. 42:23-43:8, 46:3-12, 49:12-18 (witness could not identify individuals responsible for brand budgets or to extent budgets contained hair relaxers). Further, Mr. Siddique has no knowledge of SON's product history as it related to hair relaxers or the financial records for budgets relating to hair relaxer marketing, especially prior to the Godrej SON Holding acquisition in 2017. *See* Siddique Tr. 34:16-25, 37:21-38:4, 38:12-18, 39:8-40:20, 58:1-10.

Further, Mr. Siddique was presented with Exhibit 6 to his deposition, SON0000378789, an Olive Miracle Relaxer Poster but maintained no knowledge of the underlying marketing campaign or knowledge of the budget. He also maintained that SON still did not advertise hair relaxer products even faced with a document to the contrary. While he had the most knowledge relating to the African Pride brand, Mr. Siddique had no knowledge if African Pride included hair relaxers in the context of the 2019 marketing plan. *See* Deposition Exhibit 9; SON0000317459.

A company is obligated under the Federal Rules to ensure that their designee testify about information known or reasonably available to the organization. While the rules do not require the witness to have personal knowledge of the content of testimony, the entity being deposed "has a duty to make a conscientious, good-faith effort to designate

knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *GlobalTap, LLC v. Petersen Mfg. Co., Inc.*, 2021 WL 3292261, at *10 (N.D. Ill. July 29, 2021). In light of Mr. Siddique's deposition testimony on September 19, 2025, Plaintiffs have significant concerns regarding Mr. Siddique's ability to give complete, knowledgeable, and binding answers on Strength of Nature's behalf.

Specifically, Strength of Nature designated Mr. Siddique to testify as it relates to the following subjects:

1. To the extent such information is relevant or necessary to develop a full understanding of, or inquiry into, the other Topics in this Notice, the identities, and responsibilities of employees or third parties with responsibility for:

   d. Amounts and/or sums of money budgeted by SON for the purpose of advertising, promoting, and/or selling its hair relaxer products, both domestically and internationally;

   e. Costs incurred by SON for any sales and/or promotional analysis performed relating to its hair relaxer products; and

   f. Money, financial contribution, and/or financial assistance of any kind provided by SON to any entity relating to the promotion of its hair relaxer products.

17. Forecasts, projections, and any other forward-looking reports created by or for SON regarding the sale of hair relaxer products and costs related to the sale of hair relaxer products.

18. SON's ability to meet market demand for hair relaxers, including based on the gross price and net price of hair relaxers.

The parties have met and conferred on this topic and continue to discuss whether a more knowledgeable designee should be provided. It is Plaintiffs' opinion that one of the brand managers that Mr. Siddique repeatedly referenced in his testimony would be a more knowledgeable witness to respond on SON's behalf for these topics and thus are seeking the Court's intervention if unable to complete the deposition with a prepared witness.

**Strength of Nature's Position:**

Plaintiffs' 30(b)(6) deposition notice to Strength of Nature sought testimony on a very narrow topic, namely:

[T]he identifies and responsibilities of employees or third parties with responsibility for:

d. Amounts and/or sums of money budgeted by SON for the purpose of advertising, promoting, and/or selling *its hair relaxer products*, both domestically and internationally;

e. Costs incurred by SON for any sales and/or promotional analysis performed relating to *its hair relaxer products*; and

f. Monday, financial contribution, and/or financial assistance of any kind provided by SON to any entity relating to the promotion of *its hair relaxer products*.

*Amended Notice of Plaintiffs First Oral and Videotaped 30(B)(6) Deposition of Strength of* Nature *Regarding Sales Practice [Marketing]* at p.4 (Topic 1) (Emphasis added).[1]  Jawad Siddiqui, the designated witness on this topic, testified unequivocally and repeatedly that Strength of Nature did not market its hair relaxer products—and thus, did not have a budget for marketing of its hair relaxer products. As a result, no employee at Strength of Nature was responsible for hair relaxer marketing materials and marketing budgets during the relevant period because they simply did not exist. Mr. Siddiqui repeatedly testified to these facts based on his preparation for the deposition.  To prepare for his deposition, Mr. Siddiqui testified that, among other things, he spoke with the current brand managers for Strength of Nature's products from whom he learned not only about Strength of Nature's current marketing practices but also about the company's historical practices.

Mr. Siddiqui's deposition testimony on this is clear.  When asked about his preparation for the deposition, he testified that he went "through these details, these questions, but I'm very well aware of the fact that, you know, we don't do any kind of advertisement on relaxers." Dep. Tr. 14:4-10.  When asked whether an employee's responsibilities included budgets for "advertising and promotion," he again explained that although "the budgeting is done at the overall financial level and at maximum brand level," Strength of Nature "[doesn't] do advertisement for the relaxer products. We don't even budget for it." *Id.* at 24:9-18.  When Plaintiffs continued to push, *ad nauseam*, for this same information, he repeatedly provided the same explanation. *See* Dep. Tr. 39:12-21 (stating that Strength of Nature's advertising focus has been on its natural hair care portfolio, and not on relaxer products, "since Strength of Nature started the business.").

Plaintiffs do not identify a single question on any of the designated topics that Mr. Siddiqui was unprepared to answer, which – on its own – should end this dispute. Plaintiffs instead complain that Mr. Siddiqui was insufficiently prepared for his deposition because he was unable to identify brand managers prior to 2016.  But that was not the topic on which the deposition was noticed.  The topic did not ask for the identify *all* brand managers—indeed Plaintiffs already know the brand managers based on Strength of Nature's initial disclosures and fact witness depositions. Instead, it asked for brand managers *responsible for marketing and marketing budgets of hair relaxers*.

---

[1] The Notice also included three other categories, but no questions related to those three categories were asked at the deposition itself.

And the simple answer—which Mr. Siddiqui's testimony directly addressed—is that there were no brand managers with those responsibilities because there was no marketing of hair relaxers.

> **Q:** Do you have any sense of who would have been responsible for the budgeting, for advertising and promotion of Strength of Nature brands, to the extent that the brands include chemical hair relaxer, between the years of 2007 and 2013?
>
> **A:** No. I mean, I cannot answer because I know, as a matter of fact, we don't advertise hair relaxer, and it has always been at the brand level, African Pride, and directed towards natural hair care.

Dep. Tr. at 49:12-24 (Objections omitted.)

> **Q:** All right. Did you -- did you make an effort to talk to anybody about budgets in and data prior to 2017?
>
> **A.** Yes. Spoke to the brand teams yesterday and day before yesterday, and during the conversation, I was informed and -- that we have never done any advertisement for relaxer.
> *Id.* at 65:9-15.

None of these responses indicate that Mr. Siddiqui was somehow unprepared. Instead, they indicate quite the opposite: that he spoke to multiple individuals and confirmed the understanding he already had from his own experience that no individual had such responsibilities.

Plaintiffs also complain that Mr. Siddiqui did not review historical budget information. While a 30(b)(6) witness is required to be educated to provide answers to questions on the identified topics, there is no obligation that he review specific information in order to be educated. Mr. Siddiqui educated himself through conversations with colleagues, including current brand managers, who had the most direct knowledge of the issue.

> **Q:** So you did not review any budgets prior to 2017 ahead of this deposition; is that correct?
>
> **A:** So I inquired with the people who were in the organization before me and specifically aware of the facts. They told me there were never ad spend behind relaxer; there was no budgets.

Dep. Tr. at 69:15-70:12 (Objections omitted.); *see also Id.* at 71:7-20 (when asked whether he looked at budgets prior to 2017, responding "[w]hen I was told there was zero budgets, so there was no point reviewing the documents" and "I understand there was no spend behind the relaxer, there was no budgets on that portfolio, hence, there was no data").

19

As he testified, there was no need to conduct a search for budgets (to the extent they even exist) that would contain no responsive information since the company did not have a marketing budget for hair relaxer products. Plaintiffs' preference that Mr. Siddiqui chose a different method to educate himself does not diminish the fact that he was prepared to provide testimony on the noticed topics, which, again, should be the end of the inquiry.

Plaintiffs themselves have not identified any specific document that Mr. Siddiqui should have reviewed and did not provide him with any such documents at the deposition. Nor have Plaintiffs provided any valid basis here to revive fact depositions of brand managers that Plaintiffs have previously noticed for deposition in this litigation and – likely due to the lack of marketing of hair relaxer products – subsequently withdrew. To find otherwise would give Plaintiffs an outsized degree of control over the preparation of a defendant's witnesses, and only lead to more undue challenges of Rule 30(b)(6) witnesses in this litigation.

**b. Deposition Update**

**Parties' Position:**

All depositions will be completed by September 30th with the exception of Tabitha O'Dell and Tony Adair which will occur in mid-October by agreement of the parties.

### III. *Second-wave Defendant Specific Discovery Status*

### RNA:

**a. Production Update & proposed schedule for collection and rolling productions of RNA's ESI**

**Parties' Position:**

The Parties held a productive meet and confer and have agreed on the following deadlines with regard to production:

1. RNA will finalize ESI collection (other than for the data storage programs ROMA, Peachtree, QISS, and Sage 50) by October 18, 2025;
2. The Parties will negotiate a culling methodology protocol using TAR or AI by November 2, 2025;
3. RNA will begin rolling productions by January 1, 2026, based on the requirements and procedures set forth in the culling and ESI protocols.
4. The parties will negotiate a search methodology or otherwise reach agreement regarding collection and review of information from ROMA, Peachtree, QISS, and Sage 50 by December 2, 2026;
5. RNA will finalize ESI collection from ROMA, Peachtree, QISS, and Sage 50 by January 1, 2026; and

6. RNA will begin rolling productions from ROMA, Peachtree, QISS, and Sage 50 by February 2, 2026.

The Parties have come to this agreement based on the understanding that ROMA, Peachtree, QISS, and Sage 50 are databases that RNA will need additional time to process and understand what will be needed for production. The deadlines for these databases are set for purposes of establishing deadlines for the production; however, Plaintiffs are in agreement to hold additional meet and confers and work with RNA if additional time is needed for these productions.

## JPMS:

### a. Document Production

**Plaintiffs' Position:**

On Wednesday, September 24, 2025, Plaintiffs conducted a meet and confer with JPMS. JPMS agreed to provide proposed deadlines for document production by Friday, September 26, 2025, but has failed to do so. JPMS has since indicated that its IT Director is on medical leave with no clear return date. While Plaintiffs recognize this circumstance, discovery obligations cannot be delayed indefinitely or litigation commandeered because of internal staffing limitations. JPMS should ensure that discovery continues without interruption. Plaintiffs respectfully submit that JPMS dedicate the necessary resources to comply with its discovery obligations in this MDL.

Plaintiffs are awaiting responses and request that JPMS provide the following within the timeframes indicated:

1. Rolling Productions
   - Plaintiffs request completion of rolling productions by December 26, 2025.

2. Insurance Policies
   - Plaintiffs request confirmation that JPMS has produced all insurance policies in effect since its products were first placed on the market, and production of any outstanding policies by October 10, 2025.

3. Production Deadlines
   - Non-custodial data production completed by December 26, 2025
   - Custodial data production completed by November 25, 2025.

4. Updated Hit Reports
   - Plaintiffs request updated hit reports as to ESI by October 10, 2025.

**JMPS' Position:**

JPMS has diligently complied with its discovery obligations. JPMS has devoted significant resources to discovery in this matter at great time and expense – and to

suggest otherwise is absurd. JPMS continues to work diligently with plaintiffs to respond to each and every discovery request in a timely and efficient manner. JPMS has already produced to plaintiffs nearly all responsive non-custodial files and all of the insurance policies responsive to its requests, as well as no less than five separate sets of written discovery, all in a timely manner. During the September 24 meet and confer, JPMS informed plaintiffs that its IT Director recently went out on medical leave and the timing for his return to work is presently unknown. This unforeseen circumstance caused a slight delay in the collection of five remaining custodial files. JPMS informed plaintiffs that it is working to collect these files in the IT Director's absence, and it will inform plaintiffs of an estimated production timeframe as soon as the files are collected and processed. Nevertheless, JPMS informed plaintiffs that it is going to begin producing responsive documents from the first custodian by October 3, 2025. PMS anticipates one more small non-custodial production by mid-October, at which time its non-custodial productions will be complete.

**Bronner Bros., Inc.:**

**a. Upcoming Productions due September 17, 2025**

**Plaintiffs' Position:**

The parties held several meet and confers including on September 8, 15, and 17, 2025 regarding Bronner Bros.' schedule for producing overdue Request for Interrogatories and Requests for Production. Based on the discussions during the meet and confers, Parties have agreed to produce overdue discovery responses including initial disclosures and insurance information by October 18, 2025. Bronner Bros.' has decided to retain Disco as their ESI vendor for collection and production of electronic documents and will begin production by October 24, 2025.

**Bronner Bros., Inc.'s Position:**

Bronner Bros. is in the final stages of securing data hosting/e-discovery platform services, and anticipates data collection to begin within thirty days of this Joint Status Report. The parties continue to meet and confer amicably and expect to reach agreement on baseline search terms in the coming weeks, and dissemination and production of documents to begin shortly on a rolling basis. Initial Disclosures and Answers to Interrogatories are expected to be supplemented and answered within thirty days of this report as well. The parties will update the Court as needed but see no need for direct Court intervention at this juncture.

Imaging of physical documents is well underway and it is expected that the images will be produced contemporaneously with the other responsive materials on a rolling basis. The parties will update the Court as needed but see no need for direct Court intervention at this juncture.

**Murray's Worldwide:**

**a. Production Update**

**Parties' Position:**

The parties are continuing to discuss Murray's liability insurance coverage, supplementation of the initial disclosures and the production of documents through a vendor. Murray's has agreed to supplement its initial disclosures and all possible sources of insurance coverage during the times in which Murray's sold hair relaxer products by October 25, 2025. The parties will update the Court as needed.

## IV.    _Class Action Discovery_

### a.    L'Oréal USA's Second Set of Interrogatories to Plaintiffs:

**Defendants' Position:**

On August 1, 2025, counsel for L'Oréal USA reached out to counsel for the named Plaintiffs, explaining that they intended to serve additional interrogatories on the named Plaintiffs. Because the total number of interrogatories propounded on these Plaintiffs would then exceed the limit imposed by Federal Rule of Civil Procedure 33(a)(1), L'Oréal USA sought agreement from these Plaintiffs that they would not to refuse to respond to these interrogatories solely on the basis that they exceed the 25-interrogatory limit.

On August 2, 2025, counsel for L'Oréal USA sent a copy of its proposed second set of interrogatories to counsel for Plaintiffs. After a meet and confer, in an effort to compromise on the number of discovery requests, L'Oréal USA withdrew several of its proposed requests and sent a revised set to Plaintiffs' counsel—specifically, nine additional interrogatories on the medical monitoring Plaintiffs (making for a total of 31) and eight additional interrogatories to Plaintiff Nicole Boyd (making for a total of 33). On August 13, 2025, Plaintiffs' counsel agreed to the additional interrogatories so long as Defendants agreed not to propound further requests on these Plaintiffs. Counsel for L'Oréal USA responded that while they did not presently intend to serve further interrogatories on the named Plaintiffs, to the extent they felt further interrogatories were necessary, they would first engage in a good faith meet and confer with Plaintiffs' counsel. That same day, L'Oréal USA electronically served Plaintiffs' co-lead counsel with the agreed-upon second set of interrogatories—the same way it served its first set of discovery on Plaintiffs, which Plaintiffs received and timely responded to (after L'Oréal USA granted Plaintiffs' requested extension).

To date, no responses have been received. L'Oréal USA requested confirmation that the responses would be served on September 23, 2023. (See Email from A. Gilbert to Named Plaintiffs' Counsel dated September 23, 2025, attached hereto as Exhibit. 1.) Later that day, during a telephonic meet and confer, named Plaintiffs' counsel asked that L'Oréal USA re-send the email serving the requests, which L'Oréal USA did the same day. On September 25, 2025, counsel for the named Plaintiffs advised that they would provide responses "as soon as practicable given that they were not served via MDLC nor served on any class counsel." (See Email from J. Hoekstra to A. Gilbert dated September 25, 2025, attached hereto as Exhibit 2.) Contrary to Plaintiffs' assertion, there is no agreement in place to serve discovery requests via MDL Centrality; although Plaintiffs advised that they would upload their responses to

discovery served with respect to the putative class action via MDL Centrality, L'Oréal USA did not agree to serve requests through that platform.

On September 25, 2025, L'Oréal USA asked when it could expect responses to its second set of interrogatories, as they were now overdue and objections had been waived.  *See* Fed. R. Civ. P. 33(b)(4) (objections not timely asserted are waived); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc*., 236 F.R.D. 396, 398 n.2 (N.D. Ill. 2006) ("[C]ourts are uniform in their interpretation of the rules as permitting a finding of waiver where objections are not timely made and the objector cannot show good cause for the delay.").  Counsel for Plaintiffs reiterated that responses would be provided "as soon as practicable."  (See Email from J. Hoekstra to A. Gilbert dated September 29, 2025, attached hereto as Exhibit 3.)  Given the requests have been pending for more than six weeks, L'Oréal USA requests that Plaintiffs be ordered to serve verified responses by October 13—particularly given the parties' need to begin scheduling named Plaintiff depositions.

**Plaintiffs' Position:**

Plaintiffs have no significant disagreements with L'Oréal USA's account of the parties' meet-and-confer discussions regarding the second set of interrogatories.  It is the fact that these interrogatories were subject to considerable revision and meet-and-confer discussion, however, that created the confusion about whether the version of those interrogatories that were emailed to a subset of Plaintiffs' counsel on August 13, 2025 were intended to be the final version to which the named Plaintiffs should respond.  As L'Oréal USA acknowledges, it neither served the interrogatories via MDL Centrality nor did its August 13, 2025 email include any class counsel, despite Plaintiffs' requests.  It is not up to L'Oréal USA's counsel to decide what methods of service by email are or are not effective; service by "electronic means" must be carried out consistently with how it has been "consented to in writing." Fed. R. Civ. P. 5(b)(2)(E).

Setting aside these defects in service, the named Plaintiffs are currently preparing their responses to these interrogatories and will be able to advise the Court by the October 9, 2025 hearing if they will be able to provide them by October 13, 2025.  L'Oréal USA's suggestion that any objections have been waived both ignores that the interrogatories were not properly served and fails to show any prejudice to L'Oréal USA by allowing the named Plaintiffs a reasonable amount of time to respond.  *See, e.g.*, *Romary Assocs., Inc. v. Kibbi LLC*, 2011 WL 4005346, at *3 (N.D. Ind. Sept. 8, 2011) ("If the disclosing party ultimately responded to the discovery request within a reasonable time, courts have not found prejudice.").

**b.  Depositions of Named Plaintiffs:**

**Defendants' Position:**

Defendants intend to depose all 22 named Plaintiffs in the putative class action.  To that end, Defendants have now served deposition notices on all named Plaintiffs.  On September 23, 2025, counsel for the parties met and conferred regarding deposition scheduling, during which time Defendants made clear that they intended to depose all

named Plaintiffs, and requested that Plaintiffs' counsel begin advising as to their clients' availability, to ensure that depositions can be scheduled in advance of the status conference currently scheduled for December 18th. Counsel for Plaintiffs advised that they would confer with their clients and provide counsel for Defendants with available deposition dates on a rolling basis. As of this filing, no dates have been provided. Defendants request that Plaintiffs provide Defendants with their availability for deposition by October 13.

**Plaintiffs' Position:**

On September 19, 2025, Defendants purported to begin serving deposition notices on named Plaintiffs. Defendants did not attempt to meet and confer with Plaintiffs' counsel in advance regarding the named Plaintiffs' availability, nor did they comply with the provisions of Case Management Order No. 19 (Dkt. No. 1264) for the scheduling and noticing of depositions. Nevertheless, as Defendants were advised during the parties' September 23, 2025 meet-and-confer discussion, Plaintiffs' counsel are currently working with the named Plaintiffs to find out their availability for depositions. Plaintiffs' counsel will provide proposed dates for deposition on a rolling basis, which they anticipate will be before Defendants' self-imposed deadline of October 13 for most Plaintiffs. The parties have agreed on a class fact discovery deadline of January 12, 2026, not December 18, 2025, as Defendants suggest; thus, there should not be any reason why some of the depositions could not be completed between those two dates if needed to accommodate certain named Plaintiffs' schedules. The Plaintiffs request that the Defendants adhere to the Deposition protocol order, despite the prior lapses.

Dated: October 2, 2025

**FOR PLAINTIFFS:**

Respectfully Submitted,

/s/Edward A. Wallace
Edward A. Wallace
**WALLACE MILLER**
200 W. Madison Street, Suite 3400
Chicago, Illinois 60606
T: (312) 261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900
Email: fu@dicellolevitt.com

**FOR DEFENDANTS:**

Respectfully Submitted,

/s/Mark C. Goodman
Mark C. Goodman
**BAKER & MCKENZIE LLP**
101 California Street, Ste 4100
San Francisco, California 94111
T: (415) 576-3080
mark.goodman@bakermckenzie.com

*Defense Liaison Counsel and Counsel for Defendant Namasté Laboratories, LLC*

Mark D. Taylor
**BAKER & MCKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
T: (214) 978-3000

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, Sixth Floor
New York, New York 10038
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

mark.taylor@bakermckenzie.com

Colleen Baime
Laura Kelly
**Baker & McKenzie LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
T: (312) 861-2510
colleen.baime@bakermckenzie.com

Maurice Bellan
Teisha C. Johnson
**BAKER & MCKENZIE LLP**
815 Connecticut Avenue, NW
Washington DC 20006
T: (202) 452-7057
maurice.bellan@bakermckenzie.com
teisha.johnson@bakermckenzie.com

Barry Thompson
**BAKER & MCKENZIE LLP**
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
T: (310) 201-4703
barry.thompson@bakermckenzie.com

*Counsel for Defendant Namasté Laboratories, LLC*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5697
dellis@egcfirm.com
kmurray@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI LLP**

18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.,*
*L'Oréal USA Products, Inc. and SoftSheen-*
*Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE**
**SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE**
**SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
rhonda.trotter@arnoldporter.com

*Counsel for Defendants Strength of Nature*
*LLC; Strength of Nature Global LLC; and*
*Godrej SON Holdings*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive – Suite 2950 Chicago, Illinois 60606
T: (312) 579-2018 (ofc)
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000

28

ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
**ECKERT SEAMANS CHERIN &
MELLOT, LLC**
275 Madison Avenue 10th Floor
New York, NY 10016
T: (646) 513-2358
eabbot@eckertseamans.com

*Counsel for Defendants Revlon, Inc., Revlon
Consumer Products Corporation, and
Revlon Group Holdings LLC*

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St,
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Colleen M. Kenney
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
T: (312) 853-2666
ckenney@sidley.com

29

Yvette Ostolaza
Amanda Crawford-Steger
Imani Maatuka
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Ste. 2000
Dallas, TX 75201
T: (214)981-3496
yostolaza@sidley.com
asteger@sidley.com
imaatuka@sidley.com

*Counsel for Defendant Sally Beauty Supply
LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
T: (786)957-1157
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com
Matthew.Wasserman@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street
Suite 3400
Chicago, IL 60606
Matthew.Wasserman@dinsmore.com

Adam Fox
**DINSMORE & SHOHL LLP**
801 Pennsylvania Avenue N.W.
Suite 610
Washington, D.C. 20004
P: (202) 559-3615
F: (202) 372-9141

Adam.Fox@dinsmore.com

*Counsel for Defendant, McBride Research
Laboratories, Inc.*

Ashley C. Webber
Emily D. Robinson
**MARSH ATKINSON & BRANTLEY,
LLC**
271 17th Street NW
Suite 1600
Atlanta, GA 30363
ashley.webber@mablawfirm.com
emily.robinson@mablawfirm.com

*Counsel for Defendant, Dudley Beauty
Corp, LLC*

Daniel L. Stanner
Ashley Crettol Insalaco
Megan E. Ryan
**TABET DIVITO & ROTHSTEIN LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
Tel: (312) 762-9450
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendant RNA Corporation*

Nancy L. Patterson
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street
Suite 4000
Houston, TX  77002
Telephone: +1.713.890.5000
Facsimile: +1.713.890.5001
nancy.patterson@morganlewis.com

Mark A. Fiore
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile:  +1.877.432.9652
mark.fiore@morganlewis.com

*Counsel for Defendant John Paul Mitchell Systems, Inc.*

Leslie A. Federer, ARDC #6325614
**MARON MARVEL BRADLEY**
**ANDERSON & TARDY LLC**
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 767-1314
lfederer@maronmarvel.com

Robert E. Dille (*pro hac vice*)
**MARON MARVEL BRADLEY**
**ANDERSON & TARDY LLC**
201 St. Charles Ave., Suite 2411
New Orleans, Louisiana 70170
(504) 321-9331
rdille@maronmarvel.com

*Counsel for Defendant Murray's Worldwide, Inc.*