# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 No. 23-cv-00818 Hon. Beth W. Jantz This document relates to: All Cases |

## ORDER

The parties have submitted briefing regarding a privilege dispute regarding upcoming deponent Tabatha Odell. *See* Dkt. Nos. 1474–1478. Plaintiffs' Motion for Leave to File Under Seal [1475] is GRANTED. Defendants Strength of Nature LLC ("SON") and House of Cheatem LLC ("HOC") have submitted for *in camera* review exemplar eight (8) communications (email chains) involving Ms. Odell that they assert are privileged. Plaintiffs dispute whether any privilege attaches. The Court has reviewed the documents and relevant caselaw, and ORDERS as follows:

## I. Background

Ms. Odell is a non-attorney consultant who provided consumer relations services to various companies in the health and beauty

1

industry, through her businesses Cosmetic Answers, Inc. and Consumer Relations Group, LLC. Dkt. No. 1477 at 2. She handled consumer complaints and relations for multiple hair relaxer manufacturers, including (as relevant to this MDL) Defendants HOC, SON, and Namaste. *Id.* Defendants SON and HOC both assert that because Ms. Odell's work was related to litigation, her communications are protected by (depending upon the document) the attorney-client, the work product, and the insured-insurer privileges. Dkt. Nos. 1474, 1478.

In order to keep the litigation moving, and as Ms. Odell's deposition is imminent, the Court is not ruling on all asserted privileges for all documents; the Court only rules explicitly as follows, focusing mostly as it turns out on application of the work product privilege.

## II.   Discussion

The work product privilege protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, ***consultant***, surety, indemnitor, insurer, or agent)." *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 2637936, at \*9 (N.D. Ill. June 12, 2013); FED. R. CIV. P. 26(b)(3)(A)

(emphasis added).  For the privilege to apply, however, there must be "more than a remote possibility of litigation." *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 2341290, at *3 (N.D. Ill. June 29, 2022) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation") (internal citations and quotations omitted); *see also Club Gene and Georgetti, LP v. XL Insurance America, Inc.*, 2021 WL 1239197, at *1 (N.D. Ill. 2021) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' [insurance company] report as work-product. . . . ") (internal citation omitted); *id.* at *4 ("As for anticipation of litigation, courts have made clear that, because litigation can be anticipated at the time almost any incident occurs, a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. Although a precise definition of this level of 'threat' is elusive, it is perhaps best described

3

as requiring a showing of objective facts establishing an identifiable resolve to litigate.")

Notably for the communications at issue here, the work prepared for or in anticipation of litigation does not have to have been prepared by an attorney; the work or communications of a non-attorney, such as a consultant, that meet the foregoing criteria also qualifies for work product protection. *See Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1023-24 (7th Cir. 2012); *Sullivan*, 2013 WL 2637936 at *9; *see also Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416 (N.D. Ill. 2011) (protecting consultant's communications); *Trustees*, 2022 WL 2341290, at *3 (the challenging party "also makes much of the fact that . . . a non-attorney – participated in the creation of the questionnaire template and instructed Union staff on how to complete it. However, when it comes to work product, 'the issue is less whether an attorney is pulling the strings of the investigation, and more of the purpose for which the documents were created'") (internal citations omitted).

To determine if the privilege applies to work product from a consultant who provides both business- and litigation-related services, courts look for objective facts showing that the work product at issue

was made for litigation, and not for another (or dual) business purpose. *See OTR Transportation, Inc. v. Data Interfuse, LLC*, Case No. 21 CV3415, 2022 WL 296056, at *3 (N.D. Ill. Feb. 1, 2022) (consultant's report not protected by work product privilege because it was prepared for a business purpose, even though it later also served a dual legal purpose).

Here, most of the documents (email chains) at issue were about evaluating legal options in response to an already filed lawsuit, or a specific lawsuit that was anticipated to be filed soon:

HOC 7571194_00496307

HOC 7571194_00498732

HOC 7571194_00498794

HOC ODELL10716  (not fully withheld, just redacted)

SON ODELLSONPRIV00126

SON ODELLSONPRIV00315

Based upon the Court's *in camera* inspection of these six (6) documents, the Court agrees with Defendants that the email chains were created

because of ongoing -- or the anticipation of -- litigation, and therefore are protected from disclosure by the work product privilege. No parties are involved in these email chains that would bring waiver into play either,[1] at the very least by virtue of the common interest doctrine. [2]

The other two (2) email chains are closer calls for one reason or another. For ODELLSONPRIV00010, the emails that were sent before May 2019 are not protected, given that based on the full email chain, actual litigation was not anticipated until May 2019. As such, any emails identified in ODELLSONPRIV00010 that were sent before May 2019, must be produced. (No attorney-client privilege can attach to this

---

[1] Waiver occurs only when the protected communications are disclosed in a manner that "substantially increase[s] the opportunities for potential adversaries to obtain the information." *Appleton Papers,* 702 F.3d at 1025.

[2] The common interest doctrine may extend the work product privilege, such that the sharing of protected information with a third party involved in the litigation will not waive the privilege. *See, e.g., Costello v. Poisella*, 291 F.R.D. 224, 231 (N.D. Ill. 2013) (using the common interest doctrine to extend the work product protection). The doctrine applies when "(1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further said ongoing legal enterprise." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) (citing *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007)). The Court finds that the parties included on these email chains meet all of these criteria above.

unprotected portion either, given that no attorneys were involved in this email chain.) The remainder of the chain is protected by the work product privilege.

The work product privilege does not apply to HOC Document 7571194_00499710 ("Re: Warnings for Relaxers"), as it discusses possible business verbiage (product warnings) that might prevent some future litigation, but cannot be said to have been created in anticipation of certain litigation; no party had yet shown an "identifiable resolve to litigate." *See Club Gene*, 2021 WL 1239197 at *4. No attorney-client privilege can attach either since the advice is being sought from and given by Odell, a non-attorney. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, No. MDL No. 2817, 2020 WL 7866172, at *3 (N.D. Ill. Mar. 4, 2020) ("if the advice sought is [a third party's] rather than the lawyer's, no privilege exists" and that "[s]imply asserting the argument that the third-party advisors and consultants were integral to the in-house lawyers' rendering legal advice is not enough" to claim attorney-client privilege) (internal citations omitted). Here, if anyone provided legal advice (or advice was sought from), it was Ms. Odell, not the copied attorneys. Ms. Odell was not helping the attorneys provide advice; she

was the advice.  Including attorneys in a conversation does not make otherwise non-privileged advice privileged.

As the parties represented to the Court, the Court expects the parties to use the rulings and guidance above to resolve amongst themselves any further privilege disputes for this deponent.  The Court intends to refer any further privilege disputes to the Special Master, if necessary.

SO ORDERED.

DATED:  December 1, 2025

HON. BETH W. JANTZ

United States Magistrate Judge

8