**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT STATUS REPORT FOR THE DECEMBER 11, 2025
DISCOVERY STATUS CONFERENCE**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this Joint Status Report in advance of the discovery status conference scheduled for December 11, 2025 before the Honorable Magistrate Judge Beth W. Jantz.

> **I.** **Global Issues**
>
> **a. Third Party Record Subpoenas and Document Production**
>
> **Joint Position:**
>
> Pursuant to the directives provided by the Court at the November 6 Status Conference, Plaintiffs have provided weekly excel spreadsheets to Defendants. The Parties are discussing Defendants' request for the inclusion of additional information in the chart and are working collaboratively on these issues. Defendants are working to confirm whether they are in receipt of all third-party productions received by Plaintiffs, and Plaintiffs are diligently assisting to ensure that all such productions are in Defendant's possession. Plaintiffs served a Motion for Rule to Show Cause upon Givaudan Sense Colour and Venator Materials PLC. Venator Materials PLC responded on December 1, 2025. Plaintiffs are evaluating this response and will advise the Court at the December 11, 2025 Hearing as to whether further intervention is requested or whether the Motion can be withdrawn as to that entity.
>
> **II.** **Defendant Specific Discovery Status**
>
> **Avlon Industries, Inc.:**
>
> **a. Avlon's Objections to 465 Requests for Admission**
>
> **Plaintiffs' Position:**
>
> Throughout this litigation, Avlon has provided both deficient and inconsistent information regarding the full list of ingredients in the chemical hair relaxer system products. Plaintiffs served Avlon with RFAs divided into sections by the product at issue and with citations to relevant, supporting documentation.

1

Plaintiffs have offered Avlon the option of entering into a stipulation regarding the ingredients in its products in lieu of responding to RFAs, but Avlon has not responded to that proposal. Absent Avlon entering into the proposed stipulation, Plaintiffs vehemently oppose any extension for Avlon to answer RFAs. Avlon should have provided complete and accurate information regarding the ingredients in its products long before depositions began. RFA responses are due with only one week of depositions remaining. Avlon should not be given an extension which will foreclose Plaintiffs from utilizing that information during the last week of depositions.

Plaintiffs refer the Court to subsection (c), below, regarding Avlon's Failure to Clarify Ingredients in its products because Plaintiffs' position is more fully explained therein.

**Avlon's Position:**

On November 11, 2025, Plaintiffs served 465 Requests for Admission on Avlon seeking admissions related to Avlon's lists of ingredients and ingredient names. The requests refer to exhibits and production responses not attached to the requests for admissions. Avlon intends to present a motion for leave to file a protective order with an accompany motion for a protective order for presentment on December 11, 2025. Avlon seeks relief on the grounds that the requests are unduly burdensome and repetitive of other discovery responses made by Avlon in this litigation. *See, e.g. Russell v. Ill. Bell Tel. Co., 2009 WL 1209025, at *3 (N.D. Ill.* Apr. 30, 2009) ("Requiring the plaintiffs to respond to hundreds of [RFAs] . . . is unreasonable and will not advance the ball in this litigation."); *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 RFAs "excessive to the point of being abusive"). If leave to file the protective order or the protective order is not granted, Avlon will need an extension of time to respond to the requests for admission given the breadth and intricacy of the requests.

Plaintiffs' non-specific, repeated reference to "deficient and inconsistent information" is contradicted by their specific *bates numbered* citations to what Plaintiffs believe to be the correct information concerning Avlon's products at issue. The heart of this dispute is that Plaintiffs believe that Avlon's lists of ingredients are incomplete – per their standards – or inconsistent – again per their standards. Avlon's ingredient lists are what they are. The formulas are what they are. Plaintiffs just want Avlon to do their work for them and breakdown information they already have in an organized manner. Plaintiffs just do not want to do the work. As explained below and in the motion before Judge Rowland and the motion before this Court, Plaintiffs have had opportunities to question Avlon and spent time grandstanding at depositions. If inconsistencies exist, isn't that an issue for Avlon to deal with?

Plaintiffs argument that Avlon should be denied any "extension" to answer the 465 RFAs presupposes Plaintiffs' entitlement to such a request at this late date, wholly ignoring the inappropriate and voluminous nature of the **465** requests (in over 52 pages) themselves, all of which could have been addressed in any one of the 20 depositions, of Avlon's individual and corporate representative witnesses with knowledge of Avlon's products at issue. Plaintiffs' spurious allegations that Avlon has "concealed"

2

information is little more than a preview of the grandstanding this Court will undoubtedly be addressing at trial, where Plaintiffs are expected to present their *theories* of the case. The Court should fully consider Avlon's protective order and the unreasonable nature of Plaintiffs requests before ruling on the matter.

### b. 30(b)(6) Witness Preparedness—Instruction Not to Answer by Avlon's Counsel

**Plaintiffs' Position:**

Avlon's counsel has repeatedly, throughout depositions, advised her client not to answer questions, despite the fact that those questions do not seek privileged information. The most obvious example took place in the deposition of Avlon's 30(b)(6) marketing witness. Rizvi Dep. Tr. 339:05-18) (Defense Counsel stating "I'm going to direct my client not to answer that question" in response to Plaintiff's Counsel's question of the 30b6 marketing witness about "if there are any number of carcinogenic ingredients that would be included in a product or in a system . . .that would result in the marketing department taking a stand with upper management and refusing to continue to market a specific product or hair relaxer system as one that is safe") This is clearly improper. *See Medline Industries, Inc. v. Wypetech*, *LLC*, 20 CV, 4424, 2020 WL 6343089, at *2 (finding counsel's instructions to witnesses not to answer improper, highlighting that "courts have 'uniformly held that instructing a deponent not to answer a question on Rule 30(b)(6) grounds is improper'"). Given that numerous depositions remain, Plaintiffs request that the Court instruct Avlon's counsel to refrain from instructing witnesses not to answer unless asserting privilege.

**Avlon's Position:**

Plaintiffs' half-hearted, 11th hour attempt to clarify their "position" ignores that an instruction not to answer is not limited to only "privileged" information but also protects Avlon from Plaintiffs attempts to circumvent prior Court orders. Avlon may also instruct a deponent not to answer to enforce a limitation ordered by the court, or to present a motion under FRCP 30(d)(3). This Court already ruled that the production of personal emails by current Avlon employees is off limits where not used for Avlon business purposes. *see.* Dkt. 1305 at 3. Avlon has complied with the Court's order and collected and produced personal emails as such. However, in the deposition cited by plaintiffs' above, they fail to acknowledge that the instruction not to answer was a result of an authentication discussion on the record in this same deposition (Syed Dep. Tr. at 194:8 - 195:23). Here, Avlon attempted to compromise with plaintiffs' counsel and ultimately agreed to have the deponent provide her personal email address off the record. This instruction not to answer is not improper under the rules as during the deposition Avlon believed this testimony would be subject to a protective order. The personal email address was subsequently provided off record.

Plaintiffs further omit their multiple attempts to improperly inquire into employee salaries unrelated to hair relaxer sales Plaintiffs' counsel has improperly asked for Avlon witnesses' salaries in multiple depositions to date: Jafar Syed (Jafar Syed Dep. Tr. at 26: 22), Maliha Syed (Maliha Syed Dep. Tr. at 166: 8-9), and Ned Washington

(Ned Washington Dep. Tr. at 196: 4-5)[1]. Jafar Syed answered the question over the objection from Avlon's counsel, Ned Washington voluntarily answered the question, and Maliha Syed was instructed not to answer. This Court has ordered that "… if a deponent's compensation, bonus, or performance information is tied to the company's general performance, or the documents do not otherwise refer to the deponent's work on hair relaxer products, that information is not subject to production under the order." (See Dkt. 1371 at 3). As Maliha Syed's salary and/or compensation is in no way tied to her work on hair relaxers, Avlon's counsel properly instructed her to not answer.

Regarding Avlon's instruction to Ms. Rizvi and Ms. Brosko, Plaintiffs are attempting to mischaracterize their attempts to harass and abuse Avlon witnesses as bad faith instructions not to answer. Indeed, Ms. Brosko's transcript actually reflects Avlon's counsel instructing the witness to answer the question despite Plaintiffs asking the same question eight separate times. Brosko Dep. Tr. at pp. 146-149 (Ms. Brosko answering "I don't know that"; "I can only say what I know, and I – and I don't know"; "I'm sorry. You're stressing me out. I – I don't"; "I don't know how to answer this question. I'm sorry, I – I can't. I'm about to have a heart attack right now. I … I don't know.") Despite Avlon's attempt to have the witness continue answering, Plaintiffs abused their position as questioning attorneys and only then did Avlon's counsel step in to attempt to move the deposition forward. The questions were answered. While Avlon could have stopped the deposition and demanded Court review of the harassing and improper questioning, Avlon made its instructions and allowed Plaintiffs to continue – to promote efficiency and to conserve all party resources – and only now, months after the cited deposition testimony, raise the matter for a first time and without making any prior efforts to resolve such matters with Avlon.

Plaintiffs' position is flawed, and it is worth acknowledging that had Avlon stopped the deposition as they were entitled to do, Plaintiffs would have fought this even harder. *See* Fed. R. Civ. P. 30(d)(3)(A) ("a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").

While Avlon could have stopped the deposition and demanded Court review of the harassing and improper questioning, Avlon made its instructions and allowed Plaintiffs to continue – to promote efficiency and to conserve all party resources – and only now, months after the cited deposition testimony, raise the matter for a first time and without making any prior efforts to resolve such matters with Avlon. Plaintiffs' position is flawed. Avlon requests the Court to instruct plaintiffs' counsel to refrain from harassing deponents during depositions.

### c. Avlon's Failure to Clarify Ingredients in its Products

**Plaintiffs' Position:**

Throughout this litigation, Avlon has provided both deficient and inconsistent information regarding the full list of ingredients in the chemical hair relaxer system

---

[1] Avlon has attached a bundle of deposition transcript pages as Exhibit 1 to this JSR for reference for the Court.

products. For example, the list of ingredients Avlon provided in discovery responses is inconsistent with the formulas Avlon has produced. Likewise, the formulas contain shorthand or trade names for emulsions and Plaintiffs are entitled to know the ingredients in those emulsions. The PSC seeks Court intervention requiring Avlon to fully and finally provide clarification on this information, and to do so by Friday, December 12, 2025 so that the PSC has the benefit of this basic information in time for the depositions taking place during the week of December 15, 2025 – i.e. the last week of depositions.

On August 1, 2025, the PSC served a 30(b)(6), Ingredient Naming Convention Deposition Notice, to resolve many of the inconsistencies and inaccuracies regarding the ingredients in Avlon's products. Plaintiffs are holding December 9, 13, and 14 and are awaiting Avlon's confirmation on which date that 30(b)(6) deposition will proceed.

In conjunction with the 30(b)(6) Ingredient Naming Convention Deposition, the PSC served RFAs in an attempt to clarify many of Avlon's inconsistencies related to the full list of ingredients in the chemical hair relaxer system products. Avlon's response is due on December 11, 2025, however Avlon has filed a motion seeking to avoid answering those RFAs.

As an alternative to the combination of the 30(b)(6) Ingredient Naming Convention Deposition and RFAs, the PSC has proposed a set of stipulated exhibits (Exhibits 810-849 – one exhibit for each of the 39 Avlon products sold in the USA and at issue in this litigation) which will supplement Avlon's originally produced Lists of Ingredients ("LOIs") with more complete details about the ingredients actually in the products. As of the time of drafting this JSR, Avlon has not provided any response to the proposed stipulated exhibits.

Plaintiffs request that the Court instruct Avlon to tell Plaintiffs, by December 11, whether (1) it plans to respond substantively to the RFAs and proceed with the 30(b)(6) Ingredient Naming Convention deposition or (2) whether it intends to stipulate to the exhibits. If Avlon chooses to proceed with RFAs and the 30(b)(6) deposition, Plaintiffs request that Avlon timely responds to RFAs by December 11 and require Avlon's witness to sit for deposition immediately, to allow Plaintiffs time to use this critical information during the last week of depositions. If, in the alternative, Avlon will agree to the stipulation of exhibits, Plaintiffs request that the stipulation occur by December 12.

**Avlon's Position:**

Avlon has provided Plaintiffs with the universe of its labels, LOI's, and formulas for Hair Relaxer products it has been able to determine went to market. Further, Avlon, at the request of Plaintiffs, created a chart neatly organizing the above-mentioned information and as well as an additional chart listing ingredients, INCI names, vendor names, and internal cataloging on how those ingredients are labeled in its system. While Avlon understands Plaintiffs are unsatisfied with this information because they believe to have found inconsistencies in other discovery documents, there is simply nothing left for Avlon to provide. Throughout this litigation, Avlon has worked diligently to produce the most accurate information about the composition of its hair relaxer

products spanning 30 years of business and minor changes or mistakes are a foreseeable, if not expected obstacle that is not unique to Avlon in this litigation.

This is not an attempt by Avlon to obfuscate or confuse the Plaintiffs, it is merely a reality of litigation involving records that span over decades. To the extent Plaintiffs believe they have found inconsistencies in this chart based on other discovery documents, they are welcome to question Avlon witnesses on these perceived deficiencies. *See, e.g. Phillips Petroleum Co. v. N. Petrochemical Co.,* 1986 WL 9186 (N.D. Ill. Aug. 15, 1986) (holding that seeking duplicative information in RFAs is improper). *Avlon has consulted those most knowledgeable at Avlon and compiled the requested information for Plaintiffs in a manner it was not obligated to do.* Any further requests to have Avlon provide Plaintiffs with additional information are not only unnecessary and unduly burdensome but not proportionate to the needs of this litigation. *See, e.g. Russell v. Ill. Bell Tel. Co., 2009 WL 1209025, at *3 (N.D. Ill.* Apr. 30, 2009) ("Requiring the plaintiffs to respond to hundreds of [RFAs] . . . is unreasonable and will not advance the ball in this litigation."); *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 RFAs "excessive to the point of being abusive"). The universe of Avlon's information and knowledge has been exhausted and this is merely another attempt by Plaintiffs to extend an already cumbersome and arduous discovery process.

Here, Plaintiffs rehash their vague arguments attempting to justify their wholly inappropriate and untimely, 465 RFAs. Avlon disputes any of Plaintiffs claims to concealment or other untoward actions and further note that Plaintiffs cite the very answers they seek … and already have what is needed to question Avlon's witnesses at trial.

### d. Formstack Update

**Plaintiffs' Position:**

Avlon previously reported to Plaintiffs that Formstack materials would be produced by Wednesday, December 3, 2025. During the process of exchanging drafts for this JSR, Plaintiffs learned that Avlon now says that it will produce Formstack materials "by the date of the case management conference" — with only week of depositions remaining. Further, Avlon has informed Plaintiffs that when it does produce Formstack materials, that production will lack complete metadata because an employee with access to that information is out office Once Avlon's employee returns, Avlon will produce any remaining materials that it does not currently have access to, including missing metadata. Plaintiffs have asked Avlon if it will agree that it will not make objections related to the lack of metadata—such as authenticity objections—as depositions must be concluded by December 19, 2025.  Avlon responded that it did not expect to make any objections regarding lack of metadata, but that answers may be qualified until the complete metadata is available.  Plaintiffs request that the Court instruct Avlon to agree to authenticity of these materials, which should have been produced in February, and/or to produce the metadata by December 12, 2025 so as to avoid "qualified" answers at the last few depositions.

**Avlon's Position**:

Avlon continues to object to production of this information as unnecessary and unduly burdensome; nonetheless, Avlon, by the date of the case management conference, will have produced the materials in a limited format. The production lacks complete metadata because the individual who handles the Formstack forms at issue does not have administrative access and can only provide a PDF export of the forms with his credentials. The individual whom it is believed to have administrative access is out of the country. Avlon intends to supplement the metadata in the new year.

### e. QC/Secondary Checklists

**Plaintiffs' Position:**

On November 10, 2025, the parties met with Professor Grossman to continue discussions regarding Avlon's quality control secondary checklist. Professor Grossman agreed that Avlon had excluded from its production a high rate of relevant documents and, as a result, has instructed Avlon to perform TAR to evaluate and produce responsive materials. The parties have been in discussions about the proper seed set for that TAR review. Professor Grossman has suggested that Avlon agree to the 190 documents proposed by the PSC (down from the original 389). Avlon has not indicated if it has started to run TAR or when the significant amount of documents that are expected from this process will be produced. Plaintiffs request that the Court allow the Plaintiffs sufficient time to review this upcoming production and reopen and/or complete any depositions that have already occurred if these additional documents present issues that need to be addressed.

**Avlon's Position:**

Under the guidance of Professor Grossman, Avlon has started the QC TAR Review of the materials previously marked as non-responsive utilizing information and parameters agreed to and directed by Professor Grossman. Avlon does not believe the information contained in these documents are cause for additional delays within this litigation.

### f. Deposition Update

**Plaintiffs' Position:**

Plaintiffs took 8 depositions between October 28 and November 30. Currently, there are 8 depositions outstanding. Of note, 3 of those depositions likely can be taken down if Avlon will simply enter into stipulations on documents. The current schedule of outstanding depositions is as follows:

| | |
|---|---|
| December 8 | Robert Brown |
| December 9 or 13 or 14*<br><br>Plaintiffs are still awaiting the confirmation of which date this will proceed. | Ingredient Naming Conventions 30b6 Deposition |
| December 12 | Sales 30b6 |

| December 15 | Science 30b6 (Day 1) |
|---|---|
| December 15 | Records Custodian Deposition*<br><br>*To proceed if a stipulation is not reached |
| December 16 | Science 30b6 (Day 2) |
| December 17 | Tom Bingham |
| December 18 | Regulatory 30b6 |
| December 18 | Records Custodian Deposition*<br><br>*To proceed if a stipulation is not reached |

**Avlon's Position:**

Avlon produced witnesses in October and November and will present 3 or 4 30(b)(6) witnesses and one fact witness by December 19, 2025. It is Avlon's understanding that a former employee of Avlon has been served with a subpoena by the Plaintiffs and his deposition will proceed on December 17, 2025. Avlon also presented a former employee for his deposition on Sunday, November 30, 2025. Per this Court order, one deposition is held open, Khadijeah Saad, should she return from FMLA.

**Beauty Bell Enterprises and House of Cheatham, LLC:**

**a. Failure to prepare 30(b)(6) witness**

**Plaintiffs' Position:**

On November 19, 2025, Plaintiffs took the deposition of HOC's 30(b)(6) designee on various complaint handling topics (including the processes and procedures used by Tabitha O'Dell and her related businesses in handling House of Cheatham chemical hair relaxer injury reports and/or adverse events for 20 years).

Plaintiffs' Second Amended Notice of Oral and Videotaped Deposition of Defendant House of Cheatham LLC Pursuant to Federal Rule of Civil Procedure 30(b)(6) (Concerning Complaint Handling) set forth the relevant time period for the designated topics as "two years prior to when You began manufacturing, selling, and/or marketing Your Hair Relaxer Product(s) through December 9, 2022." Defendants began manufacturing, selling, and/or marketing its Hair Relaxer Products in 1997 or 1998, so the relevant time period of testimony was 1997/1998 to December 9, 2022. The topics included, notably, House of Cheatham's complete process for handling injury and/or adverse event complaints, including the actions of Tabitha O'Dell or anyone employed at Consumer Relations Group, LLC, as well as "any changes to the complete process, steps, and/or policies and procedures over time" and House of Cheatham's recall procedure.

8

At the deposition, HOC's designee did not have any knowledge of HOC's complaint handling processes and procedures prior to the start of her employment at House of Cheatham in 2020. Despite Plaintiffs' topics explicitly identifying the processes and procedures of HOC's complaint handling consultant, the designee did not speak to Tabitha O'Dell or anyone employed at Consumer Relations Group, LLC in preparation for the 30(b)(6) deposition. As a result of this failure to prepare, the designee did not have more than a cursory knowledge about the processes and procedures its complaint handling consultant, Consumer Relations Group, has taken on behalf of – and in the name of – House of Cheatham since she started working at House of Cheatham in 2020.

The designee testified that HOC is not privy to the complete complaint handling process Tabitha O'Dell uses for the Defendant [HOC Complaint Handling 30(b)(6), 23:22-24:3]; and House of Cheatham is limited in its knowledge about the complaint handling processes Tabitha O'Dell's company takes on behalf of HOC because it is a separate entity than HOC. [24:15-25:6].

HOC's designee did not know how many contracts HOC had entered into with Tabitha O'Dell and her companies, who drafted the agreements, or whether HOC entered into any other contracts since 2021 beside the two HOC produced to Plaintiffs. [60:25-61:12, 84:21-85:12, 86:7-18].

In response to Topic 3, "Defendant's policies and procedures for complying with 21 CFR § 7.40–7.59 (recalls) related to any of Your Hair Relaxer Products," HOC's designee could not describe the factors that go into an HOC decision to recall a product. [42:22-43:11] and did not know if HOC had a process for recalling products in 2004 or when its process for recalling products went into effect. [37:17-38:25]. The designee testified HOC created a recall SOP in 2018 but could not describe that SOP [54:20-55:25].

To address the deficiencies in preparation and knowledge, Plaintiffs served their First Request for Admissions to House of Cheatham LLC on November 25, 2025. Plaintiffs request the Court order House of Cheatham to respond to Plaintiffs' First Request for Admissions.

**House of Cheatham's Position:**

House of Cheatham's 30(b)(6) witness on customer complaints, Chloe Castleberry, was adequately prepared. As a 30(b)(6) witness, her obligation was to testify about information reasonably known or available to the organization. Her deposition transcript reflects that she met that obligation. Plaintiffs' criticism appears to rest on the expectation that a 30(b)(6) witness should have micro-level knowledge of every individual complaint, including outcomes and historical specifics. Plaintiffs 'notice, however, did not list specific complaints by date. Rule 30(b)(6)requires reasonable preparation on the noticed topics—not memorization of every past complaint. Chloe prepared appropriately as she spoke with former employee Dwan White for over an hour, conducted several hours of her own review, and confirmed that she reviewed all

14 exhibits presented during the deposition. Those efforts are reflected in her testimony. Plaintiffs' criticism that Ms. Castleberry was unprepared to testify regarding Tabitha Odell's role is also misplaced.  Ms. Castleberry testified regarding:

- Complaints arriving through Zendesk;

- Her role in forwarding the full complaint to Tabitha at the support email;

- Tabitha's review of the complaint, outreach to the consumer, and use of a tailored questionnaire;

- Documentation of every email, phone call, and communication in Tabitha's system;

- Tabitha's evaluation of the complaint and discussion with the consumer about possible resolutions;

- The range of potential resolutions (replacement product, stylist reimbursement, monetary compensation, or consumer education where appropriate);

- Escalation of monetary requests to senior leadership, followed by processing through finance; and

- Involvement of legal counsel when needed.

(Castleberry Dep., attached as Exhibit XX, at 59:1–25, 65:11–69:21, 75:21–87:24, 98:12–100:21, 103:5–16, and 104:15–108:10.) Ultimately, while Plaintiffs accuse Ms. Castleberry of being unprepared, the record establishes not only that she was adequately prepared, but also that perhaps it was Plaintiffs' counsel who was unprepared given that Plaintiffs' counsel unilaterally suspended the deposition without stating which topics Ms. Castleberry was unprepared to testify about despite a request that they do so on the record.

b. **Subpoenaed deposition after close of deposition deadline**

**Plaintiffs' Position:**

Plaintiffs issued a Notice of Taking Deposition for Delford Christmas on July 20, 2025, in accordance with CMO 19.  Plaintiffs then issued a subpoena to Delford Christmas on August 15, 2025, and are now in contact with Mr. Christmas. HOC's 30(b)(6) Science and Regulatory designee, whose depositions Plaintiffs agreed to take post-deposition deadline on November 4 and 5, 2025, deferred to Ms. Christmas regarding HOC's historical testing, ingredient labeling, regulatory actions, and complaints relating to its chemical hair relaxers. On November 25, 2025, Plaintiffs asked for dates for Mr. Christmas' deposition.  Plaintiff's request deposition dates to take this final deposition in the next two weeks.

**House of Cheatham's Position:**

Plaintiffs allegedly have made contact with former House of Cheatham employee, Del Christmas and wish to depose him in December.  House of Cheatham has no indication that Plaintiffs have actually contacted Mr. Christmas (e.g., proof of service), but House

of Cheatham informed Plaintiffs months ago that they were unable to reach him. To seek his deposition now is untimely.

### c. Deposition Update

**Plaintiffs' Position:**

The following depositions remain:

1. Tabitha O'Dell, December 10
2. Delford Christmas
3. Danielle Beckford

**House of Cheatham's Position:**

All HOC depositions are complete. As for Danielle Beckford, Plaintiffs recognize her short time of employment and have proposed forgoing her deposition if HOC stipulates to the authenticity of documents. However, the proposed stipulation is for every document HOC produced in this litigation. It is clear Plaintiffs have no interest in Ms. Beckford's deposition and are using her to gain an extremely broad stipulation that is in no way tailored to Ms. Beckford.


### L'Oréal USA:

### a. Privilege Issues

**Plaintiffs' Position:**

On November 29, 2025, Special Master Grossman issued rulings on two L'Oreal privilege claims (LOUSA-0460741 & LOUSA-0461078) previously submitted for *in camera* review. Special Master Grossman ruled that LOUSA-0460741 should be produced in full unredacted, and that LOUSA-0461078 is mostly privileged but should be produced in redacted form (with specifics as to what should be unredacted). Accordingly, Plaintiffs request that these documents be produced by the upcoming JSR hearing, consistent with Special Master Grossman's November 29, 2025, ruling.

**L'Oréal USA's Position:**

With the assistance of Special Master Grossman, the parties continue to work through the narrow set of remaining privilege disputes. L'Oreal USA does not believe there is any dispute that requires this Court's attention. All agreed-upon documents, or documents that Special Master Grossman has ruled on, will be produced in advance of the Status Conference.

### b. Unpreparedness of 30(b)(6) witnesses

**Plaintiffs' Position:**

Despite Plaintiff's flagged concerns, L'Oreal belatedly designated marketing witnesses to testify on multiple topics in the Regulatory Notice of Depositions (concerning

instructions for use, safety warnings regulation compliance). In preparation for the deposition, the "Mizani" marketing corporate witness for L'Oreal, who has worked with the Mizani brand for fewer 3 years, did not review even one L'Oreal business record, advertisement, or sales presentation from its files, nor did she speak to any individual on the Mizani team (past or present) or on the regulatory or safety teams to prepare for a deposition concerning Mizani products on the market for decades. The witness was unprepared and uneducated on topics concerning the reasoning behind box art warnings and instructions for use. Plaintiffs made a formal request on the record for L'Oreal to designate its upcoming safety and regulatory witness (who will testify as L'Oreal corporate representative on December 8-9, 2025) to cover these topics that the Mizani witness was unprepared to testify on. Defense counsel requested that Plaintiffs follow up in an email following the deposition, and Plaintiffs did so the next day, on November 20, 2025. Defendants however have yet to respond. Plaintiffs respectfully ask the Court to instruct L'Oreal to designate an individual prepared to testify on these subject matters, served four months ago on August 1, 2025.

**L'Oréal USA's Position:**

Each of L'Oreal USA's 30(b)(6) designees has been prepared on the appropriate subject matter(s). To the extent Plaintiffs complain that particular witnesses could not answer certain questions to Plaintiffs' satisfaction, that is only a result of how the topics were drafted (including ambiguity and breadth) and/or the nature of information that is available to L'Oreal USA and reasonably within the scope of possible 30(b)(6) preparation. Plaintiffs' specific complaint regarding regulatory topics 5-7 and the Mizani designee has been referred to Special Master Grossman for resolution.

**c. Outstanding deposition:**

**Plaintiffs' Position:**

Plaintiffs served their Rule 30(b)(6) deposition notices on August 1, 2025. One noticed topic sought clarification regarding gaps in dates and information relating to L'Oréal's chemical hair-relaxer products, as reflected in a chart produced in response to Interrogatories. Because L'Oréal expressed concern over identifying a witness to testify about its attorney-created chart, Plaintiffs also served Requests for Admission.

Below, L'Oréal conflates several unrelated disputed issues. What is uncontested is that: (1) Plaintiffs served a timely Rule 30(b)(6) notice on August 1, 2025, for a witness on L'Oréal's interrogatory responses regarding product formulas, instructions, and box art; (2) L'Oréal asked Plaintiffs to permit it to answer such questions through written, rather than oral, discovery even though a L'Oréal employee verified the interrogatory answers; (3) Plaintiffs then served their questions in the form of Requests for Admission (RFAs) propounded while depositions were still being scheduled; and (4) L'Oréal then objected both to answering the RFAs or providing a witness to testify on the originally-noticed Rule 30(b)(6) deposition regarding the interrogatory answers. Plaintiffs therefore seek dates for the originally-noticed Rule 30(b)(6) deposition to finally end this saga.

**L'Oréal USA's Position:**

12

On Nov. 6, 2025, the Court referred a dispute between Plaintiffs and L'Oreal USA regarding requests for admission to Special Master Grossman. That dispute is now fully briefed as per the Special Master's direction. The relief sought by Plaintiffs from Special Master Grossman is the following: "Plaintiffs respectfully request that L'Oréal be ordered to answer all RFAs or, in the alternative, that L'Oréal be ordered to answer RFAs 1-5, *and that for RFAs 6-223 L'Oréal be ordered to produce a witness to testify as to the answer to interrogatory 3*" (emphasis added). Special Master Grossman has not yet resolved this dispute. Instead, after conferring with Judge Rowland, Special Master Grossman has deferred any conference or ruling on this dispute until the Court resolves Defendants' Objection (ECF No. 1552) regarding the timeliness of requests for admission (including, but not limited, to those served on L'Oreal USA).

Plaintiffs now seek to circumvent both Judge Rowland and Special Master Grossman by seeking, directly from Your Honor, the exact same relief (i.e., an additional 30(b)(6) deposition) that Judge Rowland advised could not properly be assessed until Defendants' Objection is ruled on. For that reason alone, no relief should be granted by Your Honor in connection with Plaintiffs' request.

Moreover, as L'Oreal USA has told Plaintiffs since August, the putative 30(b)(6) topic regarding the attorney-prepared chart appended to L'Oreal USA's response to Special Interrogatory Set 3, Interrogatory 6 is improper. There is nobody at L'Oreal USA who can offer testimony as to how the chart was created or how it is to be used, because the chart was created by outside counsel (at Special Master Grossman's direction). Based on that meet and confer, L'Oréal USA understood that Plaintiffs no longer intended to pursue this particular 30(b)(6) deposition. The fact that Plaintiffs are concerned that they will not be allowed to pursue their improper requests for admission does not give Plaintiffs permission to now reverse course and seek relief on their also-improper 30(b)(6) deposition topic. To the extent Plaintiffs disagreed with L'Oreal USA's position regarding the impropriety of the 30(b)(6) topic at issue, the time to raise it with the Court was shortly after the August 2025 meet and confer, not in December, after the conclusion of oral discovery.

Plaintiffs also mislead the Court by characterizing certain issues as "uncontested" that L'Oreal USA has in fact contested, repeatedly and in writing. L'Oreal USA never agreed to subject itself to further written discovery—let alone hundreds of requests for admission—so that Plaintiffs would withdraw one of its 30(b)(6) deposition notices. Moreover, L'Oreal USA has made clear its position that the "questions" in the requests for admission are different from the subject matter of the 30(b)(6) deposition notice and that L'Oreal USA understood the improper 30(b)(6) notice to be withdrawn. This has been communicated to Plaintiffs on multiple occasions, including in L'Oreal USA's written submission to Special Master Grossman regarding this dispute. It is therefore highly misleading for Plaintiffs to attribute supposedly "uncontested" positions to L'Oreal USA that it knows are in fact disputed.

Accordingly, Plaintiffs' request is procedurally improper (as it attempts to circumvent Judge Rowland and Special Master Grossman), untimely (because it comes too late), and substantively deficient (because the putative 30(b)(6) topic itself is improper). Plaintiffs' request should be rejected.

**Luster Products, Inc.:**

**a. Luster's Failure to Comply with Certain Portions of the Court's 11/6 Order**

**Plaintiffs' Position:**

The Court ordered Luster to "[p]rovide an affidavit(s) clarifying (a) what documents have been produced to date, especially with regard to those documents that might be referred to by multiple names; (b) any supplemental productions that need to be made and a timeframe for doing so, and (c) if certain documents are not available, why not." Dkt. No. 1554 at 2. Two of the topics included (1) the Project File Folders for Luster's chemical hair relaxers; and (2) the lab notebooks from Luster's Research and Development Department. On November 20, 2025, Luster produced an Affidavit from Melissa Soto ("Soto Affidavit") which failed to reference the lab notebooks from Luster's Research and Development Department. The Soto Affidavit likewise failed to mention the Product File Folders, instead mentioning Product Binders. Plaintiffs request the Court order Luster to produce the lab notebooks and comply with the Court's prior order regarding affidavits by December 12, 2025.

**Luster's Position:**

On November 20, 2025, fourteen days following the November 6, 2025 status hearing, Luster timely submitted an affidavit confirming the completeness of its production of PIFs and the Product Binders, containing what it believes to be the same documents Plaintiffs refer to at times as product file folders, regarding hair relaxers and the component parts of hair relaxer kits. (A second affidavit was planned to cover the collection and production of Consumer Inquiries, by any name). This submission was based on the Luster's understanding of the Plaintiffs' request in the JSR prepared for the November 6, 2025 status hearing, (ECF 1498 at p. 13).

Following the timely submission of this affidavit, on November 24, 2025 the Court issued its order on the expected contents of the affidavit. It was not until after the Court's Order that Plaintiffs took issue with the contents of the affidavit by taking a more expansive view of what should be included. Immediately upon learning the Plaintiffs had issues with the contents of the affidavit, Luster requested a meet and confer to clarify any confusion. Although Plaintiffs had previously refused meet and confers on issues of naming of documents, and in the face of Plaintiffs' correspondence to the Court prematurely requesting a special hearing, a meet and confer was set to discuss the affidavit. At the meet and confer the affidavit was discussed, and Luster's counsel agreed to confer with Luster's employees to further clarify issues surrounding Plaintiffs' understanding of the product binders, product file folders, and lab notebooks, to the extent there was any additional information to be included. Further, Luster has agreed to provide any additional lab notebooks (of any kind) that it is able to uncover. At the time of the submission of this Report, the affidavit in question is being modified to reflect these clarifications, and any additional lab notebooks are being prepared for production. An update will be provided at the hearing.

**b. Luster's Outstanding Production of Key Documents**

**Plaintiffs' Position:**

14

As indicated by the statements above, Plaintiffs are aware of multiple categories of critical documents that have not been produced, including complete copies of all Product File Folders for Luster's chemical hair relaxers and component parts. Plaintiffs are likewise awaiting production of the R&D lab notebooks, which are likely thousands of pages of documents going back to at least the 1980s and advertisements for Luster's hair relaxer products, which came to light during the deposition of Jory Luster on December 2 but have yet to be produced. Plaintiffs therefore request that Luster be ordered to produce all outstanding, responsive documents in its possession no later than December 19, 2025 and reserve the right to seek appropriate sanctions for Luster's repeated failure to comply with the Court's orders.

**Luster's Position:**

See Subsection a, above for response related to production of documents.

**c. Status of Depositions**

**Plaintiffs' Position:**

Plaintiffs are continuing to take scheduled depositions and are securing dates for additional deponents.

**Geb Hidad**

Mr. Hidad was subpoenaed after Plaintiffs made multiple attempts to contact the deponent and he declined to cooperate. Accompanying the subpoena was an instruction for Mr. Hidad to contact Plaintiffs regarding the scheduling of his deposition. Plaintiffs were never contacted by Mr. Hidad and, without notice or confirmation of the date, Mr. Hidad appeared at the offices of Defendant Luster's Counsel on the return date of the subpoena. To the extent Luster was aware that Mr. Hidad would appear for his deposition, it did not notify Plaintiffs. Plaintiffs remain interested in proceeding with the deposition of Mr. Hidad. Plaintiffs are attempting to find a date that can accommodate all parties and the witness.

**Lydia Sadler**

Plaintiffs have made numerous attempts and are continuing to attempt to serve Ms. Sadler. The process servers made attempts as recently as this week to effect service. Plaintiffs will update the Court once this deposition is scheduled.

**Luster's Position:**

Luster has completed or will complete by December 19, 2025, fourteen fact witness depositions and five Rule 30(b)(6) depositions. Three of the Rule 30(b)(6) depositions are of individuals who also appeared as fact witnesses on separate dates. This count does not include the deposition of former employee Geb Hadid, who was subpoenaed by Plaintiffs and appeared for his deposition on November 13, 2025, but Plaintiffs did not appear. Mr. Hadid is now working as a nurse practitioner and took the day off from work to appear for his deposition as requested by the Plaintiffs. He was very upset that no one appeared to take his deposition.

Regarding former employee Lydia Sadler, counsel for Luster has made multiple attempts to contact Ms. Sadler and has yet to receive any response.

In addition, Freddie Luster III, will be appearing for two separate Rule 30(b)(6) deposition dates, both covering ESI production. Following the Court's Order, Mr. Luster III's second deposition was set agreement of the parties to take place November 20, 2025. Following a request to reschedule by the Plaintiffs' less than twenty-four hours in advance, the deposition was moved by agreement to November 25, 2025. Further, due to a medical emergency in Mr. Luster III's family, the deposition was again rescheduled by agreement to December 5, 2025. The deposition is set to be completed that day.

Finally, one additional current employee, Reginald Maynor, is being set for deposition in December at the request of Plaintiff, despite being offered for eight different dates beginning in September 2025.

### d. Extension of Time

**Plaintiffs' Position:**

In light of the ongoing discovery deficiencies, Plaintiffs are notifying the Court that an additional extension may be needed to complete fact witness depositions.

**Luster's Position:**

Luster objects to any additional extension of time past the December 19, 2025 three month extension already afforded the Plaintiffs. As detailed above, in past JSRs, and in the Deposition Update below, Plaintiffs have had ample time to complete fact witness depositions.

### McBride Research Laboratories, Inc.:

### a. Privilege Issue

**Plaintiffs' Position:**

The PSC and McBride continue to meet and confer as to McBride's assertions of its privilege log. Specifically, McBride asserts a proprietary interest privilege which the PSC contends is not a valid privilege assertion. The PSC will seek intervention if needed.

**McBride's Position:**

Over seven months after McBride provided its privilege log, Plaintiffs provided boilerplate challenges to the privilege log. While McBride believes Plaintiffs' privilege log challenges are untimely at this juncture, McBride agreed to amend its privilege log and served its amended privilege log on November 11, 2025. McBride continues to meet and confer with Plaintiffs regarding any additional challenges concerning its privilege log.

16

### b. Deposition Update

**Plaintiffs' Position:**

All fact discovery depositions have been completed.

**McBride's Position:**

All McBride fact witness and 30(b)(6) depositions have been completed.

**Namasté Laboratories, LLC:**

### a. Privilege Challenges

**Plaintiffs' Position:**

Per the Court's instructions, all depositions of Namaste current and former employees were completed by November 21, 2025. At the deposition of Erica Douglas, Namaste represented that it wished to clawback certain portions of two documents used in the deposition. Plaintiffs object to the clawback and/or assertion of privilege and held open Ms. Douglas' deposition on that basis. The PSC has yet to receive formal copies of the redacted versions of the documents in question from Namaste.

**Namasté Laboratories' Position:**

At the deposition of Erica Douglas, the witness was presented with two documents protected by privilege – memos prepared by in-house counsel for Namaste – that had been inadvertently produced during the course of discovery. Pursuant to Fed. R. Evid. 502(b) and Case Management Order No. 5 Agreed Confidentiality, Privilege and Clawback Order (ECF No. 112), the inadvertent disclosure does not operate as a waiver of privilege, and Plaintiffs must promptly return, sequester or destroy any copies of those documents. Namaste objects that Ms. Douglas' deposition was "held open" as Plaintiffs state under both this section (a) and section (b) below that all Namaste depositions have been completed.

The parties are otherwise engaged in ongoing discussions to resolve two remaining privilege disputes in an effort to resolve same without the need for court intervention. If a resolution cannot be reached, the parties have agreed to submit the disputed documents for in camera review to Special Master Grossman.

### b. Deposition Update

**Plaintiffs' Position:**

All depositions have been completed.

**Namasté Laboratories' Position:**

Namaste diligently worked with Plaintiffs to complete all Namaste depositions that Plaintiffs noticed and pursued on or before the November 21, 2025 court-ordered deadline. Tabitha O'Dell is a third-party witness represented by counsel and is not an

outstanding Namaste deposition. Her deposition was separately continued to proceed in December by Court order.

**Revlon:**

a. **Special Master Grossman Updates**

    i. **Edison Document Production and Lab Notebooks**

**Plaintiffs' Position:**

Pursuant to the hearing with Special Master Grossman on November 18, 2025, Revlon is required to produce the cover page and all relevant pages related to hair relaxer products and their components to plaintiffs. Additionally, Revlon is required to produce a certification of the completeness of their overall document production no later than December 15, 2025.

**Revlon's Position:**

The parties met with Special Master Grossman on November 18, 2025 to discuss Plaintiffs' request for the production of physical laboratory notebooks. Revlon agreed to produce relevant portions of six additional laboratory notebooks located in Barcelona, Spain, and such production was completed on November 20, 2025. Revlon further agreed, pursuant to Professor Grossman's recommendation, to provide a Rule 26(g) statement on or before December 15, 2025, certifying that Revlon has produced all relevant materials it could locate pursuant to a reasonable inquiry. The parties agreed to the inclusion of an exception to the certification in the event anything comes up during the remaining two depositions on December 4th and December 8th that is currently unknown.

b. **30(b)(6) Designee Issue: Helman**

**Plaintiffs' Position:**

Defendants' characterization of both the November 21 meet and confer and the adequacy of Mr. Helman's testimony is incorrect and omits fundamental Rule 30(b)(6) requirements. Rule 30(b)(6) obligates a corporation to produce a witness who can provide the organization's knowledge on noticed topics, not simply recount personal recollections, review cherry-picked materials, or rely on counsel's summaries. While the record reflects that Revlon failed to satisfy their 30(b)(6) obligations, Plaintiffs can submit excerpts of Mr. Helman's 30(b)(6) testimony for in camera review. Plaintiffs have previously provided exemplary excerpts to Defendants as part of our efforts to resolve this without judicial intervention.

First, Defendants concede that Mr. Helman relied heavily on documents selected by counsel and on prior deposition transcripts, yet they resist disclosing the full scope of materials he reviewed or the individuals counsel contacted to prepare him. Such information is routinely discoverable because it directly concerns whether a 30(b)(6) witness has been prepared with "information known or reasonably available to the

18

corporation," not counsel's mental impressions. Defendants cannot simultaneously use preparation efforts as a sword while withholding the underlying facts as a shield.

Second, Defendants' reliance on the number of hours Mr. Helman spent preparing does not remedy the core deficiency: he repeatedly lacked knowledge on basic corporate systems and processes, historical regulatory structures, ingredient changes, cosmetovigilance practices, and Revlon's internal decision-making surrounding the 2023 relaxer discontinuation. Hours spent reviewing materials – especially for a witness providing testimony on over 50 subtopics for which he was designated on – does not excuse the failure to conduct an adequate corporate inquiry, including speaking with the individuals he himself identified as having superior knowledge. Rule 30(b)(6) requires substantive preparedness, not time spent.

Third, Defendants mischaracterize the November 21st meet and confer. Plaintiffs did not agree that designating isolated excerpts of prior fact witness testimony would cure the deficiencies in Revlon's 30(b)(6) obligations. Plaintiffs agreed only that Defendants could propose such prior testimony by December 11 so the parties could assess whether any narrow topics might be resolved without Court intervention. Plaintiffs expressly reserved all rights to seek further designations and explained that prior testimony cannot replace a Rule 30(b)(6) witness where the corporation must synthesize, confirm, or supplement information across departments and across time periods as is required here. Defendants' assertion that producing prior fact witness testimony satisfies Rule 30(b)(6) fundamentally misunderstands the rule. Fact testimony cannot speak for the corporation. This issue is overall moot as Plaintiffs have not received proposals for fact witness testimony which could assist in narrowing the present issue before the Court. Plaintiffs are entitled to examine corporate designated witnesses on the topics noticed and not be restricted by Defendants' preferred testimony from prior fact witnesses.

Fourth, Defendants' argument that corporate memory loss due to restructuring, bankruptcy, or employee attrition justifies non-compliance is contrary to established law. Courts consistently hold that corporations remain obligated to prepare 30(b)(6) witnesses using all reasonably available sources including former employees, archived materials, and third-party information. Revlon's decision to rely on a single witness who admittedly did not contact key personnel, did not investigate numerous systems and time periods, could not identify the documents he had reviewed, and repeatedly deferred to others with greater knowledge is precisely the failure Rule 30(b)(6) seeks to prevent.

Finally, Defendants' suggestion that Plaintiffs did not use their allotted deposition time ignores that the deposition ended early because the witness repeatedly lacked foundational information, rendering further questioning inefficient and impractical. Plaintiffs' request for a new designee and reserving their time for a new properly prepared witness is not an attempt to "critique" a witness but rather is a direct consequence of Revlon's refusal to provide the corporation's actual knowledge on numerous core topics. If the corporation does not have actual knowledge on a topic, the

19

witness should have been prepared to say so and not direct us to other individuals as the custodians of the requested knowledge.

For all these reasons, Plaintiffs maintain that an additional 30(b)(6) witness is necessary. The deficiencies are substantial, cross-cutting, and prejudicial to Plaintiffs' ability to complete corporate discovery. Plaintiffs therefore respectfully request that the Court direct Revlon to promptly designate an adequately prepared corporate representative and make that witness available for deposition as soon as possible.

**Revlon's Position:**

Revlon objects to Plaintiffs' request for an additional Rule 30(b)(6) designee and rejects any allegation that Mr. Helman was not adequately prepared to provide testimony on his designated topics. Revlon satisfied its Rule 30(b)(6) obligations by designating the person most knowledgeable and available to be deposed on the topics for which testimony was sought and by making a good faith effort to prepare him with information reasonably available to Revlon. Any alleged complaint that Mr. Helman provided unsatisfactory answers can be attributed to the overbreadth and ambiguity embedded in the drafted topics and/or the amount or nature of reasonably available information. Simply put, the bases on which Plaintiffs seek to justify the need for a further 30(b)(6) witness calls into question whether Plaintiffs are more concerned about critiquing a designee's knowledge rather than searching for substantive information.

Mr. Helman was designated as Revlon's Rule 30(b)(6) witness on a subset of topics covering categories such as regulatory & foreign regulatory, corporate compliance, public representations, and science. Despite making himself available for two days of testimony on November 5 and 6, Plaintiffs' counsel only questioned Mr. Helman for approximately 7 ½ hours (split amongst those two days) without even addressing *several* topics on which Mr. Helman was designated. Following the deposition, Plaintiffs demanded a further designee to testify to a number of topics that they allege Mr. Helman provided insufficient testimony on. The parties then met and conferred on November 21 and agreed that Revlon would designate prior fact witness testimony for eight identified 30(b)(6) topics on or before December 11, with the understanding that such designations would either moot the issue or assist in narrowing any remaining disputes before seeking intervention from the Court or Special Master Grossman.

Plaintiffs' attempt to categorize Mr. Helman as an unprepared corporate witness is simply not supported by the record. Mr. Helman testified that he spent between 60-70 hours preparing for his 30(b)(6) deposition and fact witness deposition (held approximately one month prior), which included reviewing a voluminous number of documents and most, if not all, of the prior witnesses' testimony, in addition to participating in several meetings with counsel and separate meetings with at least 12 relevant current and former employees. *See, e.g.,* Dep. Tr., 13:11-21, 14:22-15:8, 16:12-17:1, 19:19-20:9, 21:16-18; *see also id.* at 20:1-11 (stating "[i]t's possible there's one or two more" individuals he spoke to in preparation for his deposition). In addition, Plaintiffs' efforts to justify their purported need for an additional witness because Mr. Helman did not speak with Matthew Ryan is undermined by Plaintiffs' own acknowledgement that Mr. Ryan's deposition—which was held just one week prior to Mr. Helman's—reflects that he did not possess the information sought. Moreover, the

few references Mr. Helman made to Mr. Ryan had no impact on his ability to testify within the scope of the deposition. For example, Plaintiffs allege that Mr. Helman provided insufficient testimony on Topic No. 3(b) of their Notice concerning general corporate compliance because Mr. Helman testified that Mr. Ryan would have more knowledge regarding a 2015 lawsuit Mr. Ryan forwarded in an e-mail. *See id.* at 134:22-135:16. However, Plaintiffs' counsel stated that her questions did not involve actual knowledge of the lawsuit; rather, Plaintiffs' counsel questioned Mr. Helman on whether he was informed about the lawsuit and personally recalled having any involvement with testing the ingredients or products at issue in the case, the identity of the department ordinarily responsible for handling such testing, which Mr. Helman fully answered. *See id.* at 135:17-138:9.

Revlon designated Mr. Helman as its corporate witness because he was, and still is, the most knowledgeable individual available to be deposed on the noticed 30(b)(6) topics. Mr. Helman began his career at Revlon in 1995 as the Director of Claims Substantiation and eventually became the VP of Global Regulatory in 2000, a role which he held until 2017. Apart from the length of his tenure at Revlon and direct involvement with the topics for which testimony was sought, Mr. Helman was designated as the best available corporate witness considering all the realities of Revlon's corporate history, including its recent emergence from bankruptcy, multiple restructurings and reorganizations, the 13-year time span that Revlon did not manufacture hair relaxers, significant turnover in personnel, and the substantial passage of time since hair relaxers were first introduced. These circumstances necessarily affect what institutional knowledge remains available, and Revlon designated the witness who was available and best able to address the noticed topics in light of that reality.

Revlon states that it is willing to identify the full list of those individuals with whom Mr. Helman spoke to in preparation for his deposition but maintains that the documents selected for his review—which, notably, Plaintiffs did not question with any specificity during the deposition and have already previously been produced to Plaintiffs—constitutes protected attorney work product.

Revlon further states that it is amenable to producing Mr. Helman's transcript for *in camera* review but respectfully requests that this dispute be referred to Special Master Grossman for management and resolution, particularly considering Revlon's forthcoming designation of prior fact witness testimony directly responsive to the topics Plaintiffs allege Mr. Helman provided insufficient testimony on as discussed during the parties' November 21st meet and confer.

**Sally Beauty Supply LLC:**

**a. Deposition Update**

**Plaintiffs' Position:**

The parties have successfully completed all depositions. To date, a total of 16 fact witness depositions have been taken of Sally Beauty current and former employees. The parties have completed a total of four 30(b)(6) depositions.

**Sally Beauty's Position:**

21

The last Sally Beauty deposition was completed on October 29, 2025.

**Strength of Nature LLC:**

**a. Document Stipulation**

**Plaintiffs' Position:**

Over the summer, the parties had informal discussions about the potential of a stipulation on documents as a preferred course of action rather than record custodian depositions. On November 12, 2025, the parties met and conferred about a potential document authentication stipulation or the need to pursue records custodian/record authentication 30(b)(6) deposition in the alternative. Strength of Nature indicated a willingness to review PSC's proposed document authentication stipulation, a draft of which was provided on the same day. The draft Plaintiffs provided to Strength of Nature mirrors the document stipulation agreed to between Plaintiffs and Revlon. On November 28, 2025, Strength of Nature indicated it was not willing to agree to the stipulation or provide edits to the proposed draft. If SON doesn't believe Plaintiff's proposed stipulation fits the circumstances for their Defendant or do not want to agree that the document produced in this litigation are business records, then the PSC had invited them to modify the proposal. They have declined to do so. Record custodian depositions of this type were discussed with the Court at the May 29, 2025 and July 31, 2025 Case Management Conferences. The Court instructed the parties to discuss stipulation as to business records at the May 29, 2025 Case Management Conference. Tr. at pp. 72:4-9. On July 31, 2025, the parties against discussed stipulations and depositions relating to authenticity and business records. Tr. pp 20-26. Plaintiffs specifically advised the Court at the hearing that it would need to take some record custodian deposition out of the discovery time frame if the parties could not agree on a stipulation, which is precisely what SON seeks to do here. Tr. pp. 24:3-6. Considering SON's refusal to finalize a stipulation, the PSC is requesting immediate deposition date(s) in December for the records custodian deposition(s).

**Strength of Nature's Position:**

Well after the close of written and oral discovery against Strength of Nature ("SON"), Plaintiffs now seek either (1) a broad stipulation as to the admissibility of every one of the more than 100,000 documents produced by SON throughout this litigation; or (2) "immediate" custodial records depositions. Plaintiffs' request is untimely, unnecessary and simply unworkable.

A. Plaintiffs' Request is Untimely.

Written discovery closed against SON on February 28, 2025 and SON completed its last party deposition on October 14, 2025. The Court closed oral discovery against SON on October 30, 2025 (*see* Dkt. 1426). Not once prior to the close of discovery as against Strength of Nature did Plaintiffs raise an issue regarding document authentication directly with anyone representing Strength of Nature. Nor

did Plaintiffs notice any 30(b)(6) deposition on the issue prior to the close of fact discovery. [2]

SON did not make any foundational objection to any SON-produced document used at any deposition. Thus, the discussions before Judge Rowland cited above by Plaintiffs (regarding the appropriateness of limited document stipulations or depositions as needed to meet such objections (*see, e.g.,* Dkt. 1364, July 31, 2025 Hr. Tr., at 25)) cannot be considered a discussion with SON or sufficient to put it on notice that any issue needed resolution. *See, e.g., id.* at 25:6-12 (Plaintiffs' counsel acknowledging that "this has not been an issue with the vast majority of the defendants here.") And Plaintiffs could not have believed so either as they did not raise any question with SON's counsel in the 6 months that followed.

Instead, Plaintiffs raised the issue of a stipulation or additional depositions for the first time at a meet and confer on November 12 (which was requested by Plaintiffs for the first time on November 7), and on the same day sent counsel for SON an overly broad, one-sided stipulation regarding authenticity of SON's documents. The proposed stipulation would have SON agree – now – to the foundational admissibility of every document (and its metadata) bearing a SON-bates number "or other[wise] produced" by SON in the litigation. Upon review, Strength of Nature communicated to Plaintiffs that it will not enter into the stipulation as presented and offered instead to discuss authenticating specific documents in advance of any trial (which was the context of the discussion with Judge Rowland at the May 29, 2025 Case Management Conference). There is no reason why this issue could not have been raised during the oral discovery period. Plaintiffs had months to raise this issue with Strength of Nature and, by waiting past the close of oral discovery, they have waived their right to do so.

B. Plaintiffs' Failure to Identify the Specific Documents they Seek Authentication of Renders Any Stipulation or Deposition Fatally Overbroad.

Plaintiffs seek authentication of *every* document produced by Strength of Nature – over 100,000 in total – and Plaintiffs make no effort to particularize the documents they believe need authenticated. Seeking such broad-based authentication without specifying the documents at issue is the definition of an overbroad, unduly burdensome request. For the same reason, it would also make any potential deposition unreasonable in scope.[3] For this very reason, issues related to document authenticity are normally reserved for negotiation closer to trial, when the actual documents at issue are known to both sides. Indeed, Strength of Nature has

---

[2] During the window for oral discovery, Plaintiffs served one Rule 30(b)(6) deposition notice on June 26, 2025, which did not raise the issue of custodial records or document authenticity. Following various meet and confer sessions, two Rule 30(b)(6) depositions took place on September 15 and September 19. The single issue raised with the Court at the October discovery conference (and resolved before Profession Grossman, as discussed in section b, below) was unrelated to any document authentication issues. (Dkt. 1439).

[3] Plaintiffs' proposed stipulation also demands that SON do something not even Plaintiffs will do – the proposed stipulation expressly states that authentication *is not reciprocal to Plaintiffs*. Plaintiffs seemingly recognize the hazards of having their own clients stipulate to the authenticity of all the documents they produce (a far more manageable number than SON's) yet demand that SON execute the same.

represented to Plaintiffs that it would be open closer to trial to negotiating a stipulation as to the authenticity of certain types of documents to be used at trial. Indeed, in the discussions with the Court cited by Plaintiffs, Judge Rowland suggested precisely such a narrowed approach, which Plaintiffs flatly rejected. Dkt. 1364 at 24:17-25:22.

The Court therefore should reserve this issue to be dealt with closer to trial in a more focused and manageable manner than what Plaintiffs have proposed. Plaintiffs' alternative request for an all-encompassing document custodian deposition is too late, unworkable, and not necessary at this stage in litigation.[4]

## b. Requests for Admission

**Plaintiffs' Position:**

Following meeting with Professor Grossman regarding the 30(b)(6) marketing deposition, the parties agreed Plaintiffs would serve RFAs on the issue. On November 12, 2025, the parties participated in a meet and confer where they discussed the RFAs as well as a potential additional RFAs. Defendants did not object to the RFAs during the meet and confer. However, on November 28, 2025, SON indicated that it believes RFAs to be out of time. Plaintiffs request the Court order SON to respond to Plaintiffs RFAs.

**Strength of Nature's Position:**

On October 9, 2025, this Court referred Plaintiffs' challenge to the sufficiency of SON's preparation of its Rule 30(b)(6) witness on sales and marketing, Jawad Siddiqui, to Professor Grossman. At an October 24, 2025, conference with Professor Grossman, Plaintiffs represented that their challenge could be resolved through a limited request to admit to SON, wherein it would confirm, consistent with Mr. Siddiqui's (and other witnesses') testimony, that SON did not market its hair relaxer products. SON agreed, subject to reviewing the specific language, to respond to that single, narrow request. Since that time, Plaintiffs have not proffered such a request to SON.

During the November 12, 2025, meet and confer, Plaintiffs indicated for the first time that they intended to serve RFAs in addition to the one RFA discussed with Professor Grossman. Having not seen the proposed RFAs, SON did not take a position on this during the meet and confer. However, SON later told Plaintiffs that it believed any RFAs beyond the one contemplated in the October 24 hearing with Professor Grossman would be untimely. SON refers the Court to its position on timeliness in the above section, generally, and notes that even at the November 12 meet and confer, the discovery window against Strength of Nature had been closed for 12 days and the last witness SON presented for deposition occurred nearly a month earlier, on October 14. Strength of Nature therefore reiterates the positions on timeliness and breadth stated

---

[4]his Court has already warned against overbroad, all-encompassing 30(b)(6) requests. *See* Feb. 13, 2025 Hr. Tr. at 119:3-14 ("If it's overbroad, I'm crossing it out . . .. . . Do it narrow, do it targeted, do it what you need. And I would, of course, be reasonable on that stuff. But if it's everything under the sun, I'm just crossing it out.")

above, which apply equally here[5], and note that the timing and scope of RFAs is the subject of a pending objection to Judge Rowland. For all of these reasons, Strength of Nature requests that Plaintiffs be permitted to serve only the RFA authorized by Professor Grossman before the October 30 close of oral discovery on Strength of Nature.

### III. Second-wave Defendant Specific Discovery Status

Per the Court's recent Order granting Defendants' unopposed Motion to stay discovery deadlines as to the Second Wave Defendants until March 5, 2026, this Court's intervention is not needed at this time.

### V. Class Action Discovery

#### a. Class Action Discovery Updates

**Defendants' Position:**

Depositions of the named Plaintiffs in the class action proceeding are in process. To date, eight depositions have been completed and 12 more are scheduled to be completed by December 18, 2025 (the date on which Your Honor will be holding a hearing to discuss outstanding discovery issues relating to the class action).[6] One additional deposition is scheduled to take place on December 20th, and Defendants are awaiting alternative dates for another deposition, which had to be rescheduled. The parties remain on track to complete class discovery in a manner consistent with the current briefing schedule and thus do not seek any extension of those dates. To the extent any issues arise from the remaining depositions, they will be included in the status report to be submitted ahead of the December 18th conference.

**Plaintiffs' Position:**

Depositions of the named Plaintiffs in the class action proceeding are in process. To date, six depositions have been completed and fourteen are scheduled to be completed by December 18, 2025 (the date on which Magistrate Judge Jantz will be holding a hearing to discuss outstanding discovery issues relating to the class action). One additional deposition is scheduled to take place on December 20th, and the parties are exchanging proposed dates for the remaining depositions, which had to be rescheduled. While at this time the parties are not seeking any extension of the Class briefing schedule and are on track to complete class discovery in a manner consistent

---

[5] Because Plaintiffs have not in fact served *any* RFAs on SON as of the date of this JSR, SON cannot reasonably address the scope or substance of what would hypothetically be requested in such a set of RFAs, and SON reserves all such objections.

[6] Certain of these depositions have been left open pending the production of additional documents, disputes relating to which will be addressed in the JSR specific to class action discovery to be filed on December 12, 2025.

with it, there have been several extensions given to individual Defendants for responses to Bellwether discovery (due initially by November 1, 2025). The Plaintiffs note that Defendants again complain about the "compressed schedule" in the litigation leading towards trial but seemingly forget that the Court offered them more time with the Class Action Discovery and this schedule to lessen their claimed burdens. *See* ECF No. 1522 11/10/2025 Hr'g Tr. at 31:19-35:13.

**Dated: December 4, 2025**

| FOR PLAINTIFFS: | FOR DEFENDANTS: |
|---|---|
| Respectfully Submitted, | Respectfully Submitted, |
| */s/Edward A. Wallace* | */s/ Heidi Levine* |
| Edward A. Wallace | Heidi Levine |
| **WALLACE MILLER** | **SIDLEY AUSTIN LLP** |
| 150 N. Wacker Dr., Suite 1100 | 787 Seventh Avenue |
| Chicago, Illinois 60606 | New York, New York 10019 |
| T: (312) 261-6193 | T: (212) 839-5300 |
| Email: eaw@wallacemiller.com | hlevine@sidley.com |
| *Plaintiffs' Liaison Counsel* | *Defense Liaison Counsel and Counsel for Defendant Namasté Laboratories, LLC* |
| Diandra "Fu" Debrosse Zimmermann | |
| **DICELLO LEVITT LLC** | Daniel A. Spira |
| 505 20th Street North, Suite 1500 | **SIDLEY AUSTIN LLP** |
| Birmingham, Alabama 35203 | One South Dearborn |
| T: (312) 214-7900 | Chicago, Illinois 60603 |
| Email: fu@dicellolevitt.com | T: (312) 853-7274 |
| | dspira@sidley.com |
| *Plaintiffs' Co-Lead Counsel* | |
| | Amanda M. Blau |
| Fidelma L. Fitzpatrick | **SIDLEY AUSTIN LLP** |
| **MOTLEY RICE LLC** | 787 Seventh Avenue |
| 40 Westminster Street, Fifth Floor | New York, New York 10019 |
| Providence, Rhode Island 02903 | T: (212) 839-5441 |
| T: (401) 457-7700 | ablau@sidley.com |
| Email: ffitzpatrick@motleyrice.com | |
| | Caitlin P. Strauss |
| *Plaintiffs' Co-Lead Counsel* | **SAUL EWING LLP** |
| | 1735 Market Street |
| Michael A. London | Suite 3400 |
| **DOUGLAS & LONDON, P.C.** | Philadelphia, PA 19103-7504 |
| 59 Maiden Lane, Sixth Floor | T: (215) 972-7153 |
| New York, New York 10038 | caitlin.strauss@saul.com |
| T: (212) 566-7500 | |
| Email: mlondon@douglasandlondon.com | Michael A. Jacobson |

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

**SAUL EWING LLP**
161 North Clark Street
Suite 4200
Chicago, IL 60601
T: (312) 876-7121
michael.jacobson@saul.com

*Counsel for Defendant Namasté Laboratories, LLC*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5967
dellis@egcfirm.com
kmurray@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. and SoftSheen-Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com

27

Dean.Porter@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
Rhonda.trotter@arnoldporter.com

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
Royce B. DuBiner
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.

28

Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 579-2018
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348

29

dcole@paulweiss.com

Edward P. Abbot
**ECKERT SEAMANS CHERIN &**
**MELLOT, LLC**
275 Madison Avenue, 10th Floor
New York, NY 10016
T: (646) 513-2358
eabbot@eckertseamans.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer*
*Products Corporation, and Revlon Group Holdings LLC*

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St.
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Colleen M. Kenney
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
T: (312) 853-2666
ckenney@sidley.com

Yvette Ostolaza
Amanda Crawford-Steger
Imani Maatuka
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Ste. 2000
Dallas, TX 75201
T: (214)981-3496
yostolaza@sidley.com
asteger@sidley.com
imaatuka@sidley.com

*Counsel for Defendant Sally Beauty Supply LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street

30

Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
T: (786) 957-1157
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com
Matthew.Wasserman@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street
Suite 3400
Chicago, IL 60606
T: (312) 837-4316
Matthew.Wasserman@dinsmore.com

Adam Fox
**DINSMORE & SHOHL LLP**
801 Pennsylvania Avenue N.W., Suite 610
Washington, D.C. 20004
T: (202) 559-3615
F: (202) 372-9141
Adam.Fox@dinsmore.com

*Counsel for Defendant, McBride Research Laboratories, Inc.*

Ashley C. Webber
Emily D. Robinson
**MARSH ATKINSON & BRANTLEY, LLC**
271 17th Street NW, Suite 1600
Atlanta, GA 30363
T: (404) 282-5050
ashley.webber@mablawfirm.com
emily.robinson@mablawfirm.com

*Counsel for Defendant, Dudley Beauty Corp, LLC*

Daniel L. Stanner

31

Ashley Crettol Insalaco
Megan E. Ryan
**TABET DIVITO & ROTHSTEIN LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
T: (312) 762-9450
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendant RNA Corporation*

Nancy L. Patterson
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street
Suite 4000
Houston, TX 77002
T: (713) 890-5000
F: (713) 890-5001
nancy.patterson@morganlewis.com

Mark A. Fiore
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
T: (609) 919-6600
F: (877) 432-9652
mark.fiore@morganlewis.com

*Counsel for Defendant John Paul Mitchell Systems, Inc.*

Leslie A. Federer, ARDC #6325614
**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 767-1314
lfederer@maronmarvel.com

Robert E. Dille (*pro hac vice*)
**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**
201 St. Charles Ave., Suite 2411
New Orleans, Louisiana 70170
T: (504) 321-9331
rdille@maronmarvel.com

*Counsel for Defendant Murray's Worldwide, Inc.*

32