**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' OBJECTION TO NOVEMBER 7, 2025 MINUTE ORDER (ECF NO. 1518) REGARDING REQUESTS FOR ADMISSION

Defendants take this appeal from an entirely fair and reasonable order—one they cannot possibly demonstrate is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In pertinent part, Magistrate Judge Jantz's November 7, 2025 Order states:

> During the 11/6/25 status hearing on discovery, the Court heard Plaintiffs and Defendant L'Oreal's dispute regarding 223 Requests for Admission (RFAs) served on 10/21/25. On 4/11/25, [1169], the Court ruled as follows, "the Court finds that the Requests for Admission served by Plaintiffs on Avlon **and any other Defendants** were timely, as fact discovery remains ongoing. Additionally, the Court believes Requests for Admission may be useful in honing the facts for trial. Again, nothing in this order will prevent a Defendant from arguing following a meet and confer process that specific Requests for Admission are improper or unduly burdensome, **but any Request for Admission served within the fact discovery period will be considered timely**." No Defendants appealed this order to Judge Rowland. Written discovery had already closed at that point on 2/28/25, so the ruling necessarily covered the oral discovery period of fact discovery as well. Therefore, the RFAs served on Defendant L'Oreal on 10/21/25 are timely, as their oral discovery close date had been extended to 10/30/25, and indeed their depositions are still ongoing by agreement of the parties. Nevertheless, the Court recognized Defendant L'Oreal's additional arguments (apart from timeliness) that these RFAs are improper or unduly burdensome, and may be related to matters on which Special Master Grossman has already ruled. Therefore, Plaintiffs and Defendant L'Oreal are to reach out to Special Master Grossman by 11/7/25 regarding this dispute (apart from timeliness, upon which this Court has ruled). Plaintiffs are reminded, however, that for any Defendants whose oral discovery period closed on 10/30/25, RFAs served at this point thus would **not** be timely.

[ECF 1518] (emphasis in original) ("November 7 Order").

Defendants assert that by permitting Requests for Admission ("RFAs") to be served during the time period allowed for fact discovery against each Defendant, the magistrate judge violated this Court's February 28, 2025, cut-off for written discovery. Nowhere in their Objection, however, do they argue that the magistrate judge's Order is either clearly erroneous or contrary to any law. In fact, Defendants *do not even reference* the standard of review under Rule 72(a), let alone make an argument based upon its requirements—probably because they realize that there is no good faith argument that the standard could be met, here.

Instead, Defendants raise "concern" that the "Order could be read to effectively permit Plaintiffs to serve written RFAs on any and all Defendants up through the date of the last deposition potentially relating to any particular Defendant." Defs.' Obj. at 1.[1] Defendants are correct: that is exactly how the Order should be read because that is what the magistrate judge ordered. [ECF 1518 ("any Request for Admission served within the fact discovery period will be considered timely")]. Her ruling is clear; and there is nothing improper about it. The magistrate judge is permitted discretion to allow or deny discovery as she sees fit. This Court has done so repeatedly in this litigation—often to the benefit of Defendants—and the Court, not Defendants, decides how "firm" its deadlines are and to what they apply.

Defendants' argument that Plaintiffs' RFAs are "untimely" is not only unsupported but it is also, itself, untimely. Defendants filed their Objection on November 21,2025 [ECF 1552]; fourteen (14) days after being served with the November 7, 2025 Order to which they

[1] Defendants improperly raised substantive objections to those Requests for Admission that have been referred to Special Master Grossman. Defs.' Obj. at 3. Those objections, however, are not before the Court. [*See* ECF 1518]. The only issue properly before the Court is the timeliness of Plaintiffs' RFAs.

purportedly object. [ECF 1518]. As such, that objection was filed four days *after* the ten (10) day period allowed by Rule 72(a). And if that four-day delay does not seem significant enough, Defendants' objection is doubly untimely because, as the November 7 Order itself states, the magistrate judge's ruling merely reasserted the Court's prior ruling—that RFAs served on Defendants within the time period allowed for fact discovery are timely—issued seven months ago, in April of this year. [ECF 1169].

Defendants' objection is simply an untimely request for this Court to make a *de novo* ruling on discovery motions because they are disappointed with the magistrate judge's orders on the issue. That, however, is not the function of a Rule 72(a) motion, which provides parties with a finite period of time in which to seek correction of legal error by a magistrate judge. Accordingly, in light of its procedural and substantive defects, Defendants' Objection should be denied.

## STANDARD OF LAW

A District Court must modify or set aside any part of a Magistrate Judge's order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard "means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co*., 126 F.3d 926, 943 (7th Cir. 1997); *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) ("We will not reverse a determination for clear error unless it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish."); *see also Rodriguez v. City of Chicago*, 429 F. Supp. 3d 537, 540 (N.D. Ill. 2019) (citing *McGuire v. Carrier Corp.,* 2010 WL 231099, at *1 (S. D. Ind. Jan. 13, 2010) ("This is an extremely deferential standard and the district court may not reverse the magistrate judge's decision

simply because the district court judge would have come to a different conclusion.”)). “An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.” *Baker v. McCorkle*, 2018 WL 3439078, at *3 (S.D. Ind. July 17, 2018) (citations omitted).

## ARGUMENT

### I. Defendants’ Objection should be summarily denied as untimely

Defendants purport to bring his motion under rule 72(a) of the Federal Rules of Civil Procedure. That rule provides:

> When a pretrial matter not dispositive of a party’s claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must conduct the required proceedings and, when appropriate, issue a written order stating the decision. A *party may serve and file objections to the order within 10 days after being served with a copy*. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider *timely objections* and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a) (emphases added). Defendants filed their Objection on November 21, 2025, fourteen (14) days after being served with the November 7 Order to which they purportedly object. As such, it was filed outside the permitted 10-day time period and is untimely. For that reason alone, the Court should deny Defendants’ Objection.

Moreover, while Defendants claim to be objecting to the Court’s November 7 Order, their objection really relates to an order issued more than seven months ago—on April 11, 2025. [ECF 1169]. As Magistrate Judge Jantz recognizes in her November 7 Order, the underlying ruling from which Defendants now appeal was issued over seven months ago, on April 11, 2025, and “[n]o Defendants appealed this order to Judge Rowland. Written discovery had already closed at that point on 2/28/25, so the ruling necessarily covered the oral discovery period of fact discovery as well.” [ECF 1518].

Defendants seek to avoid the consequences of their failure to timely appeal the April 11 Order [ECF 1169] order by asserting that it was (1) "narrowly confined to a limited set of RFAs served on Avlon" and (2) "no one expected Plaintiffs would issue any additional RFAs." Defs' Obj. at 4. The first argument is frustratingly false—because the April 11 Order explicitly stated that it applied to RFAs served on "**any other Defendant.**" [ECF 1169 (emphasis original)]. And Magistrate Judge Jantz quoted—and even bolded—that very language in her November 7 Order. [ECF 1518]. [2] The second argument only speaks to Defendants' own expectations. Plaintiffs always contemplated serving additional RFAs where appropriate; and the Court clearly anticipated that more RFAs might be served, as evidenced by the inclusion of the "any other Defendant" language (when ruling on RFAs issued to Avlon), and its forward-looking proclamation that "any Request for Admission served within the fact discovery period *will be* considered timely." [ECF 1169].

Defendants should not be permitted to sit on their hands and not object to the Court's ruling on this issue for more than seven months, only to raise it after Plaintiffs have served these long-permitted RFAs.

## II. Defendants have not shown the ruling is contrary to law

Defendants close their brief with the argument that "*Plaintiffs now contend* that their RFAs are timely because they were served within the ongoing fact discovery period." Defs.' Obj. at 4 (emphasis added). While that assertion may not come until the end of Defendants' brief, it exemplifies the folly of Defendants' entire objection. It is not just Plaintiffs' contention that these RFAs are timely, Magistrate Judge Jantz has unambiguously ordered

[2] With respect to the scope and clarity of the April 11 Order, Magistrate Judge Jantz stated: "If you want to appeal this to Judge Rowland and take up her time on this, have fun. I mean, this is -- we are -- guys, we are really frustrated to say the least. It's a clear ruling. You did not appeal it." 11/6/25 Hearing Trans. at 90:19-22.

that they are (twice). As such, this Court is not merely weighing Defendants' Objection against Plaintiffs' "contentions." Defendants had a burden to demonstrate that Magistrate Judge Jantz's well-reasoned ruling is clearly erroneous or contrary to law—and they have not even attempted to satisfy that burden.

### A. There is nothing erroneous or contrary to law about permitting RFAs after the February 28, 2025, written discovery deadline.

Defendants' assertion that the RFAs are untimely because the Court "drew a bright line" when it set "a firm written discovery deadline of February 28, 2025" (Defs.' Obj. at 2, 5) ignores the Court's clear statements to the contrary. Magistrate Judge Jantz has repeatedly told defense counsel that the February 28, 2025, date was not an absolute cut-off, and that additional written discovery would be permitted where appropriate.

> So as a general matter, I am not going to take the position that the plaintiffs are cut off on 2/28. I mean, they're going to get documents on 2/28. So if the idea that they would be foreclosed from addressing issues when they literally have no time to look at stuff is not fair, and we're not doing that.
>
> That being said, I think what it will come down to is an individualized basis about the things that the plaintiffs are raising, when could they have known about them. So we'll address these four custodians in that light.
>
> But I am not going to take the position that they are foreclosed from bringing up anything after 2/28. I mean, it's just not -- it's not logically tenable. They're not going to be able to even look at this stuff. And to the extent defendants have produced it a while back and the plaintiffs could have known, then I will take that on an ad hoc basis, and we will do that with respect to the four custodians. But just in terms of the general deadline of 2/28, and I said that all along, that I'm going to be reasonable about that, understanding that they are going to get a document dump.

Feb. 13, 2025 Hearing Trans. at 16:23-17:18; see also Nov. 14, 2024 Hearing Trans. at 79:21-80:4 ("And I will say this. We will take into account the needs of the plaintiffs going forward. And Judge Rowland and I, we'll do that in a way to make sure that the plaintiffs aren't prejudiced by a big dump at the end. I think it's sort of inevitable, but that's why Judge

Rowland set that tight deadline, is we've got to have some date sooner than later that it's all done and then you guys can tell us what you need going forward, and neither her nor I are going to be unreasonable at about that."); Nov. 6, 2025 Hearing Trans. at 138:24-139:2 (Stating a previous order had "set a general document collection end date but the parties could meet and confer and there could be requests that could go past that if they were sufficiently targeted").

There is nothing erroneous or contrary to law about those statements or any rulings consistent therewith. Courts are permitted to manage discovery as they see fit. *See e.g*., Fed. R. Civ. P. 16(b)(4) (explicitly allowing for scheduling orders to be amended "for good cause and with the judge's consent."). With regard to RFAs, specifically, it is commonplace for courts to allow RFAs after the close of written discovery. *Kelly v. McGraw-Hill Cos.*, 279 F.R.D. 470, 473 (N.D. Ill. 2012) (rejecting contention that requests for admission were untimely because the requests sought admissions of facts that could only be learned *during* discovery); *Cooper v. Rezutko*, 2022 U.S. Dist. LEXIS 23984, at *24–26 (N.D. Ind. Feb. 10, 2022) ("[T]he purpose of particular RFAs dictate whether they are governed by discovery management *or trial management principles*.") (emphasis added).

Moreover, Defendants' claim that the February 28, 2025, deadline was a "firm" deadline ignores their own failures to meet that cut-off date. It is the height of hypocrisy for Defendants to argue that the Court's written discovery deadline afforded no flexibility to the magistrate judge where the history of this litigation demonstrates that Defendants, themselves, paid little heed to the cut-off. Indeed, despite the Court's order that Defendants' document productions be *completed* by February 28, 2025 [*see* ECF 884], an overwhelmingly large number of documents were not produced by Defendants until after February 28, 2025.

In fact, Defendants have produced *hundreds of thousands* of documents after the February 28, 2025 written discovery deadline; most of which were produced after defense witness depositions had been taken. [*See* ECF 1588 at 18]. Essentially, Defendants' objection is based upon the notion that fact discovery closed for Plaintiffs on February 28, 2025, and not for Defendants.

Finally, Defendants seemingly argue in the alternative that Plaintiffs' RFAs are untimely because CMO 15 stated that "MDL-wide oral discovery shall be concluded by September 30, 2025." [ECF 1120]. In the very next sentence, however, Defendants concede that CMO 15's deadline was extended for certain Defendants. Defs.' Obj. at 4. And Magistrate Judge Jantz' November 7 Order limited its "timeliness" ruling to RFAs served *within* those extended fact discovery periods. [ECFs 1169, 1518]

**B. This Court recognizes the utility of RFAs to narrow issues for trial**

As Magistrate Judge Jantz stated in her April 11 Order (and then quoted in her November 7 Order): "the Court believes Requests for Admission may be useful in honing the facts for trial." [ECFs 1169, 1518]. Defendants apparently disagree with that sentiment and argue—without citation or support—that RFAs are not a "vehicle to police discovery or to recharacterize the record." Defs' Obj. at 3. But that is clearly not what the magistrate judge meant; and that is not what is happening here. Courts in this circuit and others recognize that RFAs are routinely used for the exact purposes for which Plaintiffs served them: to fill gaps in discovery, authenticate documents, streamline disputes, and confirm facts for the record at trial. *See* Fed. R. Civ. P. 36 advisory committee note to 1970 amendment ("Admissions are sought … to facilitate proof with respect to issues that cannot be eliminated from the case … ."); *LKQ Corp. v. Kia Motors Am., Inc.*, 2023 U.S. Dist. LEXIS

39613, at *8 n.1 (N.D. Ill. Mar. 9, 2023) (quoting Fed. R. Civ. P. 36 advisory committee note to 1970 amendment); *Moldenhauer v. Tazewell-Pekin Consol. Communs. Ctr*., 2006 U.S. Dist. LEXIS 57058, at *3 (C.D. Ill. Aug. 14, 2006) ("The purpose of a request to admit is two-fold: to narrow the issues for trial by identifying and eliminating the issues on which the parties agree; and to facilitate proof of issues that cannot be eliminated") (citing *Gardner v. Southern Ry. Systems*, 675 F.2d 949, 954 (7th Cir. 1982); *Blow v. Bijora, Inc*., 855 F.3d 793, 799 (7th Cir. 2017) ("[Rule] 36, which governs Requests for Admission, states that a "party may serve on any other party a written request to admit … relating to … the genuineness of any described documents." (quoting Rule 36)); *Gevas v. Dunlop*, 2020 U.S. Dist. LEXIS 27829, at *13 (N.D. Ill. Feb. 19, 2020) ("Requests to admit the genuineness of documents are specifically contemplated by Rule 36(a)(1)(B) and serve the purpose of eliminating the need to later establish the foundation to admit the records into evidence."); *Doe v. Barber*, 2025 U.S. Dist. LEXIS 185645, at *5 (N.D. Ind. Sep. 19, 2025) ("The purpose of Rule 36 is to expedite the trial by determining what issues are in genuine dispute and by resolving the issues which are not disputed."). Defendants similarly assert—again without support—that "[t]he interrogatories say what they say" and "[t]he productions contain what they contain." Defs.' Obj. at 3. But this Court has explicitly rejected that type of "the document speaks for itself" objection to RFAs. *Breuder v. Bd. of Trs.*, 2021 U.S. Dist. LEXIS 56943, at *11–12 (N.D. Ill. Mar. 25, 2021) ("[C]ourts have repeatedly and—to this Court's knowledge—unanimously held that defendants' 'document speaks for itself' objection is unjustified. … Consequently, 'if the request for admission quotes a document[] and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not.'")

As explained below, for the most part, Plaintiffs RFAs were served after Defendants failed to provide these facts through other forms of discovery and/or stipulate to their accuracy. Plaintiffs are entitled to answers to RFAs about facts at the core of this litigation and necessary for the bellwether trials.

**C. Defendants argue issues not ruled upon in the Magistrate Judge's Order.**

Other than pointing to the Court's February 28, 2025, written discovery cut-off, Defendants make no real argument as to why this Court should reverse Magistrate Jantz's timeliness ruling. Instead, Defendants make vague arguments relating to the substance of the RFAs. The November 7 Order, however, explicitly preserves objections to the substance of any RFA:

> Again, nothing in this Order will prevent a Defendant from arguing following a meet and confer process that specific Requests for Admission are improper or unduly burdensome, **but any Requests for Admission served within the fact discovery period will be considered timely**.

[ECF 1518] (emphasis in original). In fact, the Court specifically recognized L'Oreal's "additional argument"—beyond timeliness—and referred those arguments to Special Master Grossman for resolution. *Id.*

Despite the limited ruling, Defendants spend roughly 20% of their brief arguing whether the RFAs are substantively proper. While Plaintiffs need not address those arguments here, it is worth pointing out that these RFAs were served, at least in part, on account of Defendants' own obfuscation of the discovery process. For example, while Avlon complains about being served with 465 RFAs (Defs.' Obj. at 3), those RFAs are broken down by product—with only a relative handful of RFAs for each product—and focus on identifying the ingredients that are contained in the relevant products; something that Avlon did not sufficiently disclose in response to Plaintiffs' interrogatories. *See* Ex. A (Second Requests for

Admission to Defendant Avlon Industries, Inc.). This Court has recognized that this type of information is directly relevant to the claims at issue here and has heard multiple discovery disputes because Defendants—including Avlon—failed to provide the relevant, core information in an unambiguous or clear way. Had Avlon and other Defendants clearly complied with those discovery requests and provided the information in response to interrogatories and depositions, the RFAs certainly would be easy to answer. Avlon's statement that these ingredients "were identified in documents produced many months ago" is at best misleading. Defs.' Obj. at 3. And even if they were fully identified in the documents, that does not prevent Plaintiffs' serving RFAs on the issue—particularly when Avlon's written discovery responses were inconsistent with documents produced in discovery. *See Breuder*, 2021 U.S. Dist. LEXIS 56943, at *11–12.

Moreover, Plaintiffs have practically served up these RFAs to Defendants on a silver platter—by voluntarily identifying where Defendants can find the answers when they have no obligation to do so. To again use the Avlon RFAs as an example, Plaintiffs have gone through the painstaking process of evaluating every single formula, many of which are handwritten, and figured out all of the ingredients that appeared in the formulas for Avlon's own products (but were left out of Avlon's in-house List of Ingredients, and therefore, were not disclosed to Plaintiffs in written discovery responses) and provided citations in the RFAs to where the information on these ingredients can be found in the documents. In response to this courtesy, Defendants argue here that the "[t]he Requests seek admissions about deposition exhibits and bates stamp numbered documents, none of which are attached and/or incorporated into the Requests served on Avlon." Defs.' Obj. at 3. In other words, it wasn't enough for Plaintiffs to collect the information and provide Avlon with citations to

where it could be found—Avlon also expected Plaintiffs to attach the documents as exhibits to the RFAs. Furthermore, the fact that Plaintiffs had to scour the document productions in order to prepare RFAs seeking to identify these ingredients demonstrates the absurdity of Defendants argument that these types of RFAs "could have and should have been propounded during the written discovery period" (prior to receiving the bulk of the documents from which the information was pulled). *Id.*; *see Kelly*, 279 F.R.D. at 473.

Finally, Defendants' argument that "none of these Requests relate to any bellwether case" is simply not correct. Defs.' Obj. at 3. These RFAs relate to Defendants' products and their ingredients, and therefore, they impact general liability—which is an issue *in every single one* of the bellwether cases.

## CONCLUSION

Defendants' Objection to Magistrate Judge Jantz's November 7, 2025 Order should be overruled because it is untimely and fails to demonstrate that the ruling is clearly erroneous or contrary to law as required by Federal Rule of Civil Procedure 72(a).

Dated: December 5, 2025

Respectfully Submitted,

*/s/Edward A. Wallace*
Edward A. Wallace
Mark R. Miller
WALLACE MILLER
200 W. Madison Street, Suite 3400
Chicago, Illinois 60606
T: (312) 261-6193
Email: eaw@wallacemiller.com
mrm@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
DICELLO LEVITT LLC
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900

Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
MOTLEY RICE LLC
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
DOUGLAS & LONDON, P.C.
59 Maiden Lane, Sixth Floor
New York, New York 10038
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
BEN CRUMP LAW FIRM
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*