**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT DEFENDANTS' SUBMISSION
<u>REGARDING BELLWETHER TRIAL CASE SELECTION</u>**

Pursuant to Case Management Order 15 ¶VI.1, as amended by the Court's Minute Order of January 29, 2026 (ECF No. 1695), the Joint Defendants[1] provide this submission identifying the twelve (12) cases they believe are most appropriate for additional discovery and potential trial ("Bellwether Trial Cases"). Specific information regarding Defendants' proposed cases follow.

The bellwether process is intended to generate reliable information about recurring issues in the litigation—information that can meaningfully guide the Court and the parties in evaluating common questions of proof, causation, and ultimate valuation of the broader docket of cases. To serve that function, the cases selected should be reasonably representative of the broader inventory, rather than involve extreme or atypical claims or unusually case-specific facts to ensure, to the extent possible, that resulting rulings or verdicts serve as guidance for the remaining docket. *Manual for Complex Litig. (Fourth)*, ¶22.315 ("The more representative the test cases, the more reliable the information about similar cases will be"); *see also In re Chevron USA, Inc.*, 109 F.3d

---

[1] For judicial economy, the names of the Defendants are abbreviated herein and in the attached 2-page reports as follows: AFAM Concept, Inc. d/b/a JF Labs, Inc. ("AFAM"); Avlon Industries, Inc. ("Avlon"); Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc. ("Beauty Bell"); House of Cheatham, LLC ("House of Cheatham") L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC (collectively, "L'Oréal USA"); Luster Products, Inc. ("Luster"); McBride Research Laboratories, Inc. ("McBride"); Namaste Laboratories, LLC ("Namaste"); Revlon, Inc., Revlon Consumer Products Corporation, Revlon Group Holdings LLC (collectively "Revlon"); Strength of Nature, LLC, Godrej SON Holdings, Inc. (collectively "Strength of Nature")

1016, 1019 (5th Cir. 1997) ("A bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants has as a core element representativeness").

With that objective in mind, the twelve cases identified by Defendants reflect the range of material factors that recur throughout this litigation. They include plaintiffs of varying ages, hair relaxer product use histories, timing, circumstances of exposure, and differing medical histories and backgrounds. To identify appropriate cases as Bellwether Trial Cases, Defendants considered all thirty-two (32) of the Initial Bellwether Discovery Cases, including those selected by Plaintiffs. Indeed, one of the twelve cases on Defendants' list, *Chattman*, is a Plaintiff-selected case. Defendants believe that a case originally selected by Plaintiffs, which Defendants are willing to try, should be the first case selected for trial. Together, the twelve cases provide an appropriate cross-section of the types of proof and defenses seen across the cases as a whole. As a result, rulings on case-specific expert opinions, summary judgment motions, trial outcomes and resolution in these cases are more likely to provide meaningful guidance for the remaining docket than rulings in outlier cases.

Consistent with that objective, Defendants have not proposed cases that have unusual medical circumstances, unusually case-specific sympathy factors or other facts that would make the case less useful as a bellwether for ultimate resolution of the broader docket. For example, Defendants believe the following cases present such unique facts that they would be inappropriate for selection:

- *Batiste; Byrd; Hunter; Robinson:* These cases name only L'Oreal USA and/or Revlon as defendants. Cases involving only one or two defendants risk focusing on defendant-

specific factors that are not representative of Defendants as a whole and would not supply as meaningful information to the remaining defendants involved in the litigation.

- *Blaxton:* Plaintiff was diagnosed with Stage 4 colon cancer in December 2025 and is currently undergoing chemotherapy. There is a significant risk that a trial would focus on this subsequent cancer, that would have limited value in informing the broader docket.

- *Mazyck:* Plaintiff was diagnosed with and treated for fibroids resulting in a hysterectomy nineteen (19) years prior to any cancer diagnosis and is claiming injuries from that hysterectomy. Because fibroids have not been the subject of expert discovery in this stage of the litigation, there would be a need for expert discovery regarding causation of fibroids and their relationship with cancer, reducing its usefulness as a representative bellwether.

- *Boatwright; Edgar; Fullard:* Defendants have had significant difficulties in identifying and/or reaching key witnesses, such as physicians who treated plaintiffs for long periods of time, or stylists who applied the hair relaxer products, such that a complete evidentiary record may not be possible for trial.

- *Shirley Smith:* Plaintiff's treating oncologist is a retained, consulting expert for Plaintiffs in this litigation, creating unusual case-specific complications regarding the role and presentation of that testimony. In addition, similar to the issue in *Mazyck*, plaintiff was diagnosed with fibroids at the same time as her cancer, which would require further plaintiff-specific expert attention beyond the common bellwether framework.

- *Alexander*: Plaintiff is a domestic violence survivor with a mentally disabled child. Her personal challenges may overshadow the central facts in the case.

Accordingly, Defendants submit the following cases to the Court for selection, in alphabetical order. A more detailed summary of each case follows.

3

| | Joint Defendants' 12 Bellwether Case Selections (in alpha order) | | | |
|---|---|---|---|---|
| | *Plaintiff Name* | *MDL Centrality No.* | *Plaintiff Counsel* | *Remaining Defendants* |
| 1. | **Chattman, Carrie** | 1844 | Simmons Hanley Conroy | AFAM; Beauty Bell/House of Cheatham; L'Oréal USA; Luster; Namaste; Strength of Nature |
| 2. | *Felton, Eunice Marie* | 1931 | Douglas & London | L'Oréal USA; Namaste; Revlon; Strength of Nature |
| 3. | *Garrett, Vicki Janeen* | 1450 | Aylstock, Witkin, Kreis & Overholtz, PLLC | AFAM; Beauty Bell/House of Cheatham; L'Oréal USA; Luster; Revlon; Strength of Nature |
| 4. | *Harris, Tonja Renea* | 8830 | Johnson Law Group | AFAM; Beauty Bell/House of Cheatham; L'Oréal USA; Namaste; Strength of Nature |
| 5. | **Hobbs, Jennifer** | 6734 | Aylstock, Witkin, Kreis & Overholtz, PLLC | AFAM; Avlon; Beauty Bell/House of Cheatham; L'Oréal USA; Luster; McBride; Namaste; Strength of Nature |
| 6. | *Jackson, Areecia Denise* | 6418 | Andrews & Thorton | AFAM; L'Oréal USA; Luster; McBride; Revlon; Strength of Nature |
| 7. | **James, Emma Suzette** | 5857 | The Cochran Firm | Avlon; Beauty Bell/House of Cheatham; L'Oréal USA; Luster; Namaste; Strength of Nature |
| 8. | **Roland, Karen Elisa** | 7750 | Peiffer Wolf Carr Kane Conway & Wise | L'Oréal USA; Namaste; Revlon; Strength of Nature |
| 9. | *Smith, Barbara Jean* | 8039 | Beasley Allen | Beauty Bell/House of Cheatham; L'Oréal USA; Luster; Namaste; Revlon; Strength of Nature |
| 10. | *Smith, Karla* | 1767 | Simmons Hanley Conroy | Beauty Bell; House of Cheatham; L'Oréal USA; Luster; Namaste; Revlon; Strength of Nature |
| 11. | *Wade, Roxanne* | 7491 | Parker Waichman | AFAM; L'Oréal USA; Luster; Revlon; Strength of Nature |
| 12. | **Weeks, Tawanna** | 5096 | Childers, Schlueter & Smith | AFAM; Avlon; L'Oréal USA; McBride; Namaste; Revlon; Strength of Nature |

| |
|---|
| **Plaintiff Name:** Carrie Chattman <br><br> **MDL Case Number/MDL Centrality Number:** 1:23-cv-10579/MDLC # 1844 <br><br> **Plaintiffs' Counsel:** Simmons Hanly Conroy <br><br> **Named Defendants:** AFAM, Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Namaste, and Strength of Nature |



## I.      Plaintiff Background and History:

Carrie Chattman is a 78-year-old African American woman who lives in Orlando, Florida. Ms. Chattman has lived in Florida at all times relevant to her use of hair relaxers and alleged injuries. Ms. Chattman previously was married but has been divorced for 44 years since 1982. She has two adult children, born in 1978 and 1980, who were delivered via caesarian section. Ms. Chattman received training to become a medical assistant in the 1970s at Valencia Community College and the University of Central Florida. She underwent practical training at Orlando Regional Health, where she worked under the supervision of a technician learning the process of taking and testing urinalysis samples, taking blood samples, and delivering samples to the lab for analysis. Ms. Chattman worked since the early 1980s as a lab assistant and phlebotomist for the government, a private clinic, and a hospital. Ms. Chattman retired in 2008 at age 61. Eight years later she was diagnosed with endometrial cancer. At the time of her cancer diagnosis, she weighed 188 pounds. She also was post-menopausal and borderline diabetic at that time. Ms. Chattman has a family history that includes a sister with a diagnosis of diabetes, and another sister with a history of phlebitis.

## II.      Injury(ies) Alleged and Condition:

In early 2017, at 69-years old, Ms. Chattman was diagnosed with uterine serous carcinoma, which is classified as Type 2 endometrial cancer. She underwent a total hysterectomy without complication and proceeded to have chemotherapy. Toward the end of her chemotherapy cycles, Ms. Chattman complained of right sided chest pain and was diagnosed with acute right-sided pulmonary embolism and retroperitoneal hematoma which was causing pain in her hip. Her treatment included multiple blood transfusions. Following her discharge in May 2017, Ms. Chattman lived with her sister for support and underwent home healthcare treatment while she completed chemotherapy. Today, Ms. Chattman is considered cancer-free by her treating physicians, and has no lingering issues related to her cancer or surgery.  However, Ms. Chattman reports continued sciatic nerve pain, which she attributes to her chemotherapy and retroperitoneal hematoma. She alleges that this condition requires injections, limits her mobility and results in the need to rely upon family members to assist her in activities of daily living.

### III.    Product Use:

Ms. Chattman alleges hair relaxer use for over 60 years, starting as early as 1959 (at 12 years old) all the way through 2023. Ms. Chattman's use of hair relaxers included a combination of professional application at salons, self-application, and application by a friend. She testified that over 50 years ago, when she was in her early 20s, she first applied hair relaxers to her hair at home. She purchased it at a nearby drugstore based on what her friends were using and on product advertisements suggesting that it would make her hair look "beautiful." After the initial application, she only applied hair relaxer to new growth.

For 38 years, from approximately 1973 to 2011, Ms. Chattman went to a trained beautician, who is now deceased, for hair relaxer applications every six to seven weeks, totaling approximately six times per year. After 2011, she periodically would apply relaxers to her own hair once again, with occasional visits to another stylist for special occasions. Additionally, a friend, who was not trained as a beautician, would apply hair relaxers to her hair occasionally.

Ms. Chattman alleges use of 26 products manufactured by: AFAM; Beauty Bell/House of Cheatham; L'Oréal USA; Luster; Namaste; and Strength of Nature. She had specific recollection of the brands of products she used at home and after Ms. Chattman began going to a salon with a trained beautician, the beautician selected the products that were used.

### IV.    Other Relevant Considerations:

Defendants believe this should be the first case selected for trial. Plaintiffs selected this case for the initial bellwether process out of thousands and defendants are willing to try it. Therefore, it arguably would have buy-in from both sides.

This case is representative of plaintiffs with Type 2 endometrial cancer, which includes uterine serous carcinoma. Plaintiffs' contention that black women have shown an increase in uterine cancers and poorer outcomes relates specifically to Type 2 endometrial cancer, and specifically uterine serous carcinoma.

Ms. Chattman's use of hair relaxers through three different methods: (1) professional application by a trained beautician; (2) self-application at home; and (3) application by a non-professional friend, over the course of 60 years makes her case representative of plaintiffs with long term use of hair relaxers in all relevant settings. In addition, Ms. Chattman has recollection of specific brands that she used over time, so product identification is less likely to be in dispute.

| | |
|---|---|
| **Plaintiff Name:** Eunice Felton<br><br>**MDL Case Number/MDL Centrality Number:** 1:23-cv-08200/MDLC # 1931<br><br>**Plaintiff's Counsel:** Douglas & London<br><br>**Named Defendants:** L'Oréal USA, Namaste, Revlon, and Strength of Nature |  |

## I.       Plaintiff Background and History:

Eunice Felton is a single 60-year-old university graduate with a bachelor's degree in biology and a minor in chemistry. She has been employed consistently since college, and for the past 19 years, has been employed as a kidney care therapist, working with dialysis patients at a healthcare clinic.

Ms. Felton was raised in Merigold, Mississippi, but has been living in Memphis, Tennessee for over two decades.

Ms. Felton was never married, nor pregnant, and she never underwent fertility treatments. For most of her life, she lived with her mother until her mother's passing in 2020 from kidney and pancreatic cancer.

As with many plaintiffs in this litigation, Ms. Felton has many close relatives with cancer, including her mother, father, grandfather, cousin and sister (both cousin and sister with breast cancer). Considering this history, Ms. Felton underwent genetic testing which was negative for BRCA1 and BRCA2, gene mutations with known links to breast, ovarian and other cancers.

## II.       Injury(ies) Alleged and Condition:

Ms. Felton was pre-menopausal when she was  diagnosed with endometrial cancer at age 53, after experiencing irregular bleeding most of her adult life.

At the time of diagnosis, Ms. Felton weighed 290 pounds; however, prior to her diagnosis she weighed as much as 315 pounds. In addition to obesity, Ms. Felton's medical conditions at the time of diagnosis included high blood pressure, sleep apnea requiring CPAP, osteoarthritis, psoriasis and anemia.

In August 2018, Ms. Felton underwent a total abdominal hysterectomy and bilateral salpingo-oophorectomy (a surgical procedure to remove both ovaries and fallopian tubes) among other procedures. Her final post-operative diagnosis was uterine cancer, anemia, obesity, ventral hernia and pelvic adhesions. Ms. Felton's recovery was uncomplicated.  Ms. Felton returned to work in six to eight weeks and only had two surgical follow-up appointments.  During the last appointment,

Ms. Felton's surgeon gave her a "clean bill of health," and since 2018, she has not had any gynecological issues or required follow-up appointments.

## III.     Product Use:

Ms. Felton's mother was the first to relax her hair in 1980 when she was 15 years old. Thereafter, Ms. Felton consistently relaxed her hair for 42 years until 2022.

Ms. Felton relaxed her hair every six to eight weeks with normal strength relaxers, both lye and no-lye. At times, Ms. Felton relaxed her own hair; at other times, family members relaxed it, or at other times, it was done professionally at a hair salon. Overall, Ms. Felton identified up to 15 products, 11 brands and four manufacturers: L'Oréal USA, Namaste, Revlon and Strength of Nature. She specified time frames during which she used these products.  However, Ms. Felton was uncertain what brands were used at the salons she frequented between 2003 and 2005, and from 2015 to 2021.

Ms. Felton discontinued hair relaxer use approximately four years after her cancer diagnosis because she wanted to go natural and discontinue the use of chemicals.

## IV.     Other Relevant Considerations:

Ms. Felton's application of normal strength, lye and no lye, hair relaxers at home and professionally make this a well-balanced bellwether trial case.

It is also representative of a class of plaintiffs who were never pregnant and used multiple brands. As the Plaintiff Fact Sheets reveal, use of multiple brands throughout multiple decades is common among the MDL plaintiffs and the general population of users.

This case is also evenly balanced in that although Ms. Felton was obese, she was not diabetic, and she underwent testing that was negative for a potential genetic cause of her cancer.

**Plaintiff Name:** Vicki Garrett

**MDL Case Number/MDL Centrality Number:** 1:23-cv-06495/MDLC # 1450

**Plaintiffs' Counsel:** Aylstock, Witkin, Kreis & Overholtz, PLLC

**Named Defendants:** AFAM, Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Revlon, and Strength of Nature



## I.      Plaintiff Background and History:

Ms. Vicki Garrett is a 59-year-old African American woman who resides in Carbondale, Illinois and has lived in Southern Illinois her entire life. She is currently separated from her spouse and is the mother of four children from prior relationships, all of whom were delivered by cesarean section.  Ms. Garrett's highest level of education is seventh grade. She has received SSI since approximately 1994 because of a learning disability. Although she is largely retired, she continues to perform seasonal work as a team leader and cleaner at an apartment complex for a short period each August. Earlier in life, she worked in manufacturing jobs, packaging cake mix boxes and folding plastic bags, and she also has worked as a babysitter for neighbors and family.

Her medical history reflects a number of chronic health conditions, including obesity/overweight, Type II diabetes mellitus, irregular vaginal bleeding, high cholesterol, bursitis, GERD, hemorrhoids, colon polyps, meralgia paresthetica, lumbar radiculopathy, and non-alcoholic fatty liver disease. The records also reflect a family history of colon cancer in two immediate family members.

## II.      Injury(ies) Alleged and Condition:

Ms. Garrett was diagnosed with a form of endometrial cancer in January 2018 at age 50.  At the time of diagnosis, she was experiencing post-menopausal bleeding. Her treatment included a total abdominal hysterectomy with a bilateral salpingo-oophorectomy (surgical removal of both ovaries and fallopian tubes). According to her doctor, she experienced no complications during or after surgery. Regarding Ms. Garrett's cancer risk, her doctor testified that she was a typical endometrial cancer case due to her risk factors, including obesity.

## III.      Product Use:

Ms. Garrett used hair relaxer products beginning in approximately 1979, when she was about 12 years old, and continued use for 38 years, until 2017. She primarily used the products at home. In her early years, relaxers were applied by family members, and later by friends or acquaintances.

9

By her mid-twenties, she began applying the products herself and continued to do so for many years. She does not allege regular salon-based relaxer use.

Ms. Garrett identified more than 34 products by seven manufacturers, with varying dates of use. Her claimed exposure history therefore reflects both long-term duration and a broad range of products and manufacturers which include: AFAM, Beauty Bell, House of Cheatham, L'Oréal USA, Luster, Revlon, and Strength of Nature.

## IV.    Other Relevant Considerations:

Ms. Garrett's case presents long-term alleged use of hair relaxer products. She alleges nearly four decades of hair relaxer use beginning in adolescence, with application occurring in several non-salon settings and involving a broad range of products across multiple defendants.

At the same time, her medical background includes several recognized risk factors relevant to endometrial cancer, including obesity, Type II diabetes described as not well-controlled, and a family history of colon cancer in two immediate family members. Her four pregnancies arguably weigh in the opposite direction. Ms. Garrett's overall medical profile remains mixed.

| | |
|---|---|
| **Plaintiff Name:** Tonja Harris<br><br>**MDL Case Number/MDL Centrality Number:** Case # 1:23-cv-15818; MDLC #8830<br>**Plaintiffs' Counsel:** Johnson Law Group<br><br>**Named Defendants**: AFAM, Beauty Bell/ House of Cheatham, L'Oréal USA, Namaste, and Strength of Nature |  |

## I.      Plaintiff Background and History:

Ms. Tonja Harris is a 54-year-old African American woman who currently resides in Saint Hedwig, Texas, a suburb of San Antonio.  Ms. Harris has lived in and around San Antonio since 2011, when she relocated from the Mobile, Alabama area, where she grew up and spent most of her adult life.  Since the early 2010s, Ms. Harris has worked for a military contractor as a general clerk. Outside of her formal employment, Ms. Harris is an active YouTuber through her channel "Tonja's World," where she has posted more than 1,000 videos for her 2,400 subscribers, including "mukbang" videos, in which the host consumes large quantities of food while chatting with their audience.

Ms. Harris is currently divorced but has been married three times. Ms. Harris has never been pregnant and has no children. She testified that she had attempted to have children with two of her ex-husbands without success, but did not pursue fertility treatment or receive a diagnosis related to infertility. She entered menopause early, at approximately age 45.

Ms. Harris has a history of gynecologic and chronic health issues, including high blood pressure, obesity, and Type II diabetes mellitus. Ms. Harris's gynecologic issues include endometrial hyperplasia, irregular vaginal bleeding, and abnormal menstruation, including periods lasting for months. Ms. Harris also was diagnosed with other medical conditions that may be potentially relevant to her injuries.  Ms. Harris used oral contraceptives from high school until her mid-twenties to help regulate her menstrual cycle.

## II.      Injury(ies) Alleged and Condition:

Ms. Harris was diagnosed with a form of endometrial cancer in June 2023 at the age of 51. Ms. Harris was post-menopausal at the time of diagnosis. Ms. Harris testified that she did not experience any symptoms before her diagnosis but was referred to a physician based on an abnormal pap smear. Her medical records reflect that she later reported having experienced post-menopausal bleeding prior to her diagnosis.

Ms. Harris underwent surgical treatment for her cancer in August 2023, consisting of a hysterectomy with bilateral salpingo-oophorectomy (surgical removal of both ovaries and fallopian tubes). Ms. Harris did not experience complications during or after surgery and has had

limited post-treatment follow-up since her surgery. While Ms. Harris testified that her cancer had deprived her of the possibility of having a family, describing it as having taken the option "off the table," she was post-menopausal at diagnosis, with no documented medical history of infertility.

## III.    Product Use:

Ms. Harris began using hair relaxers in the late 1980s while in high school and living in Mobile, Alabama. Her mother first applied hair relaxer products to her hair at that time. After graduating high school in 1990, Ms. Harris began applying most hair products to herself at home, but also had relaxer applied "once or twice" at a salon in Mobile. Ms. Harris applied hair relaxers approximately once per month while living in Alabama, but only two to three times per year once she relocated to Texas. Ms. Harris stopped applying hair relaxer products in early 2023, after approximately 34 to 36 years of use.

Ms. Harris identified numerous specific hair relaxer products with varying dates of use: more than 30 products manufactured by seven different defendants, including AFAM, Beauty Bell, House of Cheatham, L'Oréal USA, Namaste, and Strength of Nature. Ms. Harris brought handwritten notes to her deposition that she testified represent the most accurate account of her product use. Those notes and her testimony reflect her use of 13 different brands of hair relaxer from the same defendants.

## IV.    Other Relevant Considerations:

This case is representative of issues common across the MDL, including product identification and the reliability of long-term consumer recall. Ms. Harris's limited and inconsistent identification of products presents a fact pattern through which the Court and a jury can evaluate how such evidentiary challenges impact liability and causation. Ms. Harris's case also presents a balanced causation profile. She has protective factors, including a history of oral contraceptive use, she also has recognized risk factors for endometrial cancer, including morbid obesity, Type II diabetes, and no pregnancy history. Ms. Harris has a family history of cancer, including a father with bone cancer and a maternal aunt with breast cancer.

These circumstances provide a useful framework for evaluating how juries are likely to weigh issues common in this MDL: competing risk and protective factors, the reliability of testimony on decades of product use, and medical and family history.

This case is the only defense bellwether trial selection in which the plaintiff is represented by a firm that is not in plaintiff leadership, which would add diversity to the counsel representing plaintiffs in the trial pool.

| | |
|---|---|
| **Plaintiff Name:** Jennifer Hobbs<br><br>**MDL Case Number/MDL Centrality Number:** 1:23-cv-10632; MDLC # 6734<br><br>**Plaintiff's Counsel:** Aylstock, Witkin, Kreis & Overholtz, PLLC<br><br>**Named Defendants:** AFAM, Avlon, Beauty Bell/House of Cheatham, L'Oréal USA, Luster, McBride, Namaste and Strength of Nature |  |

## I.      Plaintiff Background and History:

Plaintiff Jennifer Hobbs is a 45-year-old Caucasian woman. She is divorced and lives with her long-term partner in Newport, Tennessee. She previously lived in Florida, Massachusetts, and New Hampshire. She alleges to have purchased and used hair relaxer products in each of these states. Ms. Hobbs was raised by her maternal grandparents, who are now deceased. She was not close to her paternal grandparents and other family members. As a result, she does not know their medical histories.

Ms. Hobbs graduated from high school and obtained a license as a patient care technician in 2008. While she worked in the field during her training, she did not work in the field after graduation due to mental health issues. Ms. Hobbs has been unemployed since 2011 and receives SSI disability benefits. Ms. Hobbs has three living adult children and two deceased children. She did not maintain custody of her children.

Ms. Hobbs's general health history includes bipolar disorder, Lynch Syndrome, and obesity. According to her medical records, her mother had cervical and lung cancer, her maternal grandmother had breast cancer, her paternal grandfather had lung cancer, and her paternal grandmother had thyroid cancer. Ms. Hobbs herself was diagnosed with irregular vaginal bleeding, obesity, chronic COPD, depression, anxiety, asthma, deafness (right ear), deep vein thrombosis in both lower extremities, pulmonary embolism, seizures, and hypothyroid disorder. Her weight at the time of her diagnosis with uterine cancer was 280 pounds.

## II.      Injury(ies) Alleged and Condition:

Ms. Hobbs was diagnosed with endometrial cancer in November 2022 at the age of 42. She underwent a total hysterectomy with bilateral salpingo-oophorectomy (surgical removal of both ovaries and fallopian tubes) approximately one week after her diagnosis. She experienced no complications from the surgery and no subsequent chemotherapy or radiation. Her treating gynecological oncologist testified that she has a good prognosis. During Ms. Hobbs's treatment, her oncologist offered her the option of undergoing genetic testing, which she elected to do.

Genetic testing confirmed the presence of MSH6 deficiency and Lynch Syndrome, which are risk factors for endometrial cancer.

Ms. Hobbs does not assert claims for lost wages, psychiatric/psychological distress, out-of-pocket expenses, or loss of consortium.

## III.     Product Use:

Ms. Hobbs first began using hair relaxer products between the ages of 12 and 13 while living with her grandparents.  She only applied hair relaxer products to herself at home, initially with her grandmother supervising the process. Ms. Hobbs alleges that she purchased and used hair relaxer products from approximately February 1993 to March 2018, i.e., approximately 25 years. Her alleged product usage is relatively infrequent—approximately twice per year—but spans a wide range of approximately 18 products. Ms. Hobbs noted instances of buying products and forgetting to use them. Her recall of the brands of products used was inconsistent.

Ms. Hobbs also has used at-home hair dyes, wigs, and extensions in her hair.  In 2023, Ms. Hobbs noticed her hair thinning, which she attributes to her diagnosis of endometrial cancer.

## IV.     Other Relevant Considerations:

Defendants consider this case to be among their top five candidates for trial selection.

Ms. Hobbs adds demographic breadth to Defendants' proposed bellwether group as the only Caucasian plaintiff in Defendants' proposed group (there are no Caucasian plaintiffs in Plaintiffs' group of 16 Initial Bellwether Discovery Cases, despite the fact that a number of Plaintiffs in this MDL are Caucasian).

Her confirmed diagnosis of Lynch Syndrome presents a potential alternative risk factor that is important to the parties' scientific and medical analyses. Ms. Hobbs has a number of medical conditions, a family history of cancer, and a mental health and criminal conduct history.

These issues do not all bear equally on causation, but they reflect a developed set of underlying medical and hereditary factors likely to feature prominently in the parties' scientific and medical analyses.

14

| | |
|---|---|
| **Plaintiff Name:** Areecia Jackson<br><br>**MDL Case Number/MDL Centrality Number:** 1:23-cv-010379/MDLC # 6418<br><br>**Plaintiff's Counsel:** Andrews & Higgins (formerly Andrews & Thornton)<br><br>**Named Defendants:** AFAM, L'Oréal USA, Luster, McBride, Revlon, and Strength of Nature |  |

## I.    Plaintiff Background and History:

Plaintiff Areecia Jackson is a 50-year-old lifelong resident of the Chicago area who currently resides in Westchester, Illinois. Aside from a single semester out of state during college, her roots have remained firmly planted in Illinois. She has built a stable career in accounting and has spent the past two years at an Illinois-based company, handling accounts payable and payroll, following more than a decade of experience in similar financial roles. Outside of work, Ms. Jackson enjoys relaxing at home, spending time with loved ones, and going on nature walks. Ms. Jackson is single, has never been married and is not currently in a relationship. She has no children, although she had one pregnancy.

Ms. Jackson's health history is notable for several chronic conditions that she has been managing most of her life, including obesity, high blood pressure, and diabetes. Her medical history also reflects significant gynecologic issues. Since she began menarche, she experienced menstrual and gynecologic difficulties, including long, heavy periods. She also has a long-standing history of uterine fibroids that previously required surgical intervention, and she had at least one fibroid present at the time of her hysterectomy. Her medical records note that she once inquired with a healthcare provider about fertility concerns and difficulty becoming pregnant.

Ms. Jackson's maternal aunt survived ovarian cancer. Although Ms. Jackson's medical records reflect that her mother had cervical cancer and that she requested a pap smear based on that reported history, Ms. Jackson denies that her mother ever had cancer and does not recall making such statements to her medical providers.

## II.    Injuries Alleged and Condition:

In April 2023, at age 47, Ms. Jackson was diagnosed with endometrial cancer. She was pre-menopausal at the time of her diagnosis, which was discovered when she sought treatment for increasingly heavy and prolonged periods. She subsequently underwent a robotic-assisted total laparoscopic hysterectomy, bilateral salpingo-oophorectomy (surgical removal of both ovaries and fallopian tubes), and bilateral sentinel lymph node biopsy within weeks of diagnosis. Pathology confirmed that all sampled lymph nodes were negative for carcinoma or tumor cells, and her post-operative course was uncomplicated. Since the procedure, Ms. Jackson has maintained regular follow-up with her oncologist, who has consistently documented no evidence of disease.

Her oncologist testified that her current risk of recurrence is less than 1%, reflecting a favorable prognosis.

During her deposition, Ms. Jackson became emotional when discussing the loss of reproductive capacity resulting from the hysterectomy. She asserted that her primary care physician had informed her that her reproductive organs were "still viable" at the time of surgery. However, her primary care physician testified that she would have documented such information in the medical record if it had been conveyed, and no such notation exists. Ms. Jackson has not sought mental health treatment following her diagnosis or surgery. She reported experiencing emotional distress related to her belief that she will "never be a full woman again," but no provider has diagnosed any psychological condition arising from this belief.

## III.  Product Use:

Ms. Jackson started using hair relaxers in 1984 at age nine. Her mother or aunt applied it to her hair during her childhood. Ms. Jackson recalls seeing a commercial with a little girl having relaxer applied and her hair becoming pretty. She then asked her mom to apply relaxer to her hair. During her teenage years, she began applying the product herself. She continued to use hair relaxers for 25 years before she decided to stop relaxing her hair in 2009. Ms. Jackson would apply the product herself, go to a salon for professional application, or have her friends, family, or her cosmetologist cousin apply the product. Throughout these years, Ms. Jackson reported applying hair relaxers somewhere between every six weeks to every three or four months. She decided to go natural in 2009 to avoid damage and improve her hair health.

Ms. Jackson alleged use of ten (10) different hair relaxer products during this time and had good brand recall at her deposition but not as to specific product names. She was able to describe the packaging for several of the products she used and the products she believed were used at salons. Ms. Jackson's product usage spans across six different manufacturers: AFAM , L'Oréal USA, Luster, McBride, Revlon, and Strength of Nature.

## IV.  Other Relevant Considerations:

Ms. Jackson presents a medically and factually balanced case appropriate for bellwether consideration. Her medical history reflects both long-standing risk factors for endometrial cancer, including obesity, hypertension, diabetes, as well as protective factors such as prior pregnancy. Her history of fertility concerns and chronic gynecologic issues would resonate broadly in a bellwether setting.

Ms. Jackson is a lifelong resident of the Chicagoland area whose background reflects experiences common across the MDL plaintiff population. Her consistent use of hair relaxer products for more than two decades, spanning multiple manufacturers, provides a broad record of exposure relevant across defendant groups.

Ms. Jackson has demonstrated good recall during discovery, and her medical course reflects a clear diagnosis, treatment, and favorable prognosis. Her case presents clean, well-defined issues, making her a strong and practical candidate for inclusion in the bellwether pool.

**Plaintiff Name:** Emma Suzette James

**MDL Case Number/MDL Centrality Number:** 1:23-cv-10617/MDLC # 5857

**Plaintiff's Counsel:** The Cochran Firm

**Named Defendants**: Avlon, Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Namaste, and Strength of Nature



## I.        Plaintiff Background and History:

Ms. Emma Suzette James is a 65-year-old woman from Indiana. She has been married three times and is the mother of two children, a daughter and a son. She has two grandchildren and one great-grandchild with whom she enjoys spending time.

Ms. James was one of nine siblings and is the sixth child in her family. She graduated from high school in 1978 and later attended beauty school, although she did not complete the program. Ms. James has maintained a varied work history. She previously worked for a public school district and was later employed in a factory. She stopped working full-time in 2022, when she went out on disability.

Although she remains on state disability benefits, Ms. James currently works part-time as a home health aide.

## II.        Injury(ies) Alleged and Condition:

Ms. James was diagnosed with breast cancer of the right breast in July of 2007 and underwent a right breast mastectomy, followed by six cycles of adjuvant TAC chemotherapy. After completing chemotherapy, she was placed on hormone therapy, initially Femara, and later Tamoxifen, which she took from approximately 2012 to November 2014.

Ms. James alleges that her use of hair relaxer products caused her breast cancer, which she further claims ultimately led to the development of endometrial cancer. However, the medical records reflect that Ms. James was diagnosed with FIGO Stage IA1 endometrial carcinoma while she was taking Tamoxifen, a medication recognized in the medical literature as being associated with an increased risk of endometrial cancer. In 2014, she underwent treatment consisting of a hysterectomy with bilateral salpingo-oophorectomy (a surgical procedure to remove both ovaries and fallopian tubes) and pelvic lymph node dissection.

Her medical history also reflects several known risk factors relevant to gynecologic malignancies. Ms. James reported menarche at age 16 and was post-menopausal at the time of diagnosis. She had no history of diabetes and had a BMI of 29.1, placing her in the overweight category. Her

family history is notable for multiple cancers, including colon, liver, rectal, prostate, and breast cancers.

Ms. James is currently in remission from both her breast cancer and endometrial cancer, and the available records indicate that she has been cancer-free since 2017.

### III.    Product Use:

Ms. James alleges that she first began using hair relaxer products in 1978, initially applying the products at home. From approximately 1980 to 1983, she reported receiving relaxer applications at salons, after which she resumed primarily home applications. According to her testimony, relaxers were generally applied on a four-to-six-week schedule, with applications performed by herself, her sister, and at times a professional stylist.

Ms. James testified that she continued using relaxers until 2007, when she was diagnosed with breast cancer and underwent chemotherapy treatment that resulted in the loss of her hair. Following her chemotherapy treatment, Ms. James stated that she did not resume using relaxer products until 2020. This represents a gap of approximately thirteen years during which she reported no relaxer use. She alleges that she resumed relaxer use from 2020 through 2022. Based on her testimony, Ms. James claims relaxer use from 1978 through the summer of 2007, and again from 2020 to 2022, for a stated maximum of approximately 32 years of use.

During her deposition, Ms. James was able to independently recall five brands. After portions of her Plaintiff Fact Sheet (PFS) were read to her during her deposition, she identified additional products and brands. During this process, Ms. James also identified at least one relaxer product that does not appear to exist, raising further questions regarding the reliability of her product recollection.

### IV.    Other Relevant Considerations:

Defendants consider this case to be among their top five candidates for trial selection.

This case presents an opportunity to examine competing causation theories and the role of alternative risk factors in the development of gynecologic malignancies. The Court and a jury would be able to consider alternative explanations in relation to Ms. James' allegations regarding hair relaxer products.

This case also raises issues that are likely to be common across many cases in the MDL, including product identification and the reliability of a consumer's recall of products allegedly used over the span of decades. Ms. James was able to independently identify only a limited number of products and identified additional brands only after portions of her PFS were read to her, including at least one product that does not appear to exist. This case provides a practical and informative vehicle through which the parties and the Court may assess how juries are likely to evaluate the core issues presented in this MDL.

| | |
|---|---|
| **Plaintiff Name:** Karen Roland<br><br>**MDL Case Number/MDL Centrality Number:** 1:23-cv-10039/ MDLC # 7750<br><br>**Plaintiff's Counsel:** Peiffer Wolf Carr Kane Conway & Wise, LLP<br><br>**Named Defendants:** L'Oréal USA, Namaste, Revlon, and Strength of Nature |  |

## I.      Plaintiff Background and History:

Plaintiff Karen Roland is a 55-year-old single African American woman.  Ms. Roland is a resident of Tenaha, Texas who purchased and applied hair relaxer products in Texas.  Ms. Roland has lived in the same house, in the same small Texas town, her entire life.

Ms. Roland has never been married.  She has been pregnant twice and has one child, her 24-year-old son who is autistic and lives with her.  Ms. Roland received her high school degree in 1988 and attended one year of college.  She worked as a certified nurse's assistant for several different employers before she stopped working in 2009 due to disability for neck/back pain and sleep apnea.  She did not work from 2009 to 2025 while receiving disability benefits, but recently rejoined the workforce in October 2025 as a patient sitter in a nursing home.

## II.     Injury(ies) Alleged and Condition:

Ms. Roland was diagnosed with endometrial cancer on March 30, 2022 at the age of 51.  Ms. Roland was most likely pre-menopausal at the time she was diagnosed, although her medical records and testimony are not definitive.  Ms. Roland weighed 550 pounds at the time of her cancer diagnosis and, as a result, was not eligible to undergo a total hysterectomy, which her oncologist testified is the "gold standard" treatment for endometrial cancer.  Instead, immediately following her diagnosis, Ms. Roland received alternative forms of treatment, including: (i) curettage, a procedure to scrape tissue from the uterus in an attempt to remove cancerous cells; (ii) the application of a Megestrol (Megace) IUD, which is a type of hormone treatment meant to treat certain cancers; and (iii) routine biopsies, which showed no remaining precancerous or cancerous cells after the curettage and IUD insertion procedures.

Ms. Roland stayed on top of her treatment and sought to lose weight, as instructed by her treating physicians. After losing approximately 200 pounds following gastric banding surgery in November 2024, Plaintiff then was able to have a total hysterectomy in December 2025. Ms. Roland's oncologist, who is also a professor at Baylor College of Medicine, reviewed one of the studies associating hair relaxer use with certain forms of cancer, but testified that he does not ask his patients about their hair relaxer usage because it is not relevant to his practice or his treatment of his patients' cancer. Ms. Roland's oncologist released her from his care following her hysterectomy, noting that her risk of recurrence is low, and that there is a high chance that she is

cured.  Ms. Roland is not alleging any mental health-related injuries and does not claim that there are any activities she can no longer do following her cancer diagnosis.

### III.  Product Use:

Ms. Roland first began using hair relaxer products in 1981 when she was 11 years old at the direction of her mother.  She testified that hair relaxer products were then becoming trendy and her mother advised that she would no longer need to use a hot comb on her hair.  Ms. Roland further testified that she recalls seeing advertisements for hair relaxer products in magazines like Ebony, Jet, and Essence featuring "beautiful black women" and stating that hair relaxer products could make her hair soft and silky, and recalls some of the products she saw advertised.

Ms. Roland consistently used hair relaxer products every three months over a 41-year period from 1981 to 2022.  She mainly applied hair relaxer products on herself at home, but also had the products applied on her by family and friends and professionally in a salon.  Ms. Roland identified ten (10) different products that she used from four different manufacturers: 1) L'Oréal USA; 2) Namaste; 3) Revlon; and 4) Strength of Nature.  Ms. Roland used the products interchangeably over a 40-year time period.  She prepared a handwritten list of products that she remembered using and consulted that list during her deposition.  Ms. Roland recalled specific product packaging and characteristics of the products she used and why she started and stopped using them.  Ms. Roland stopped using hair relaxer products in 2022 after she was diagnosed with cancer and saw advertisements on the Internet alleging that hair relaxer product usage was linked to cancer.

Ms. Roland's hair stylist has known her since they attended high school together.  Ms. Roland's hair stylist testified that she has been a beautician for over 31 years in the same town where Ms. Roland resides.  She still uses hair relaxer products on herself and her customers and feels safe doing so.

### IV.  Other Relevant Considerations:

Defendants consider this case to be among their top five candidates for trial selection.

Ms. Roland has both protective factors weighing *against* her risk of endometrial cancer (two pregnancies) and risk factors *for* endometrial cancer, including morbid obesity, Type II diabetes, and polycystic ovarian syndrome, making this an evenly balanced case for trial.

Ms. Roland's lifetime residency in a small southern town brings geographic diversity to the trial pool and is reflective of the broader MDL plaintiff population.

Ms. Roland originally disclosed her friend as a fact witness in her Plaintiff Fact Sheet but then withdrew her as a witness after Ms. Roland was deposed.  The friend was subsequently deposed and testified that she had a disagreement with Ms. Roland about her conduct.  This type of non-party evidentiary issue may be reflective of other plaintiffs in the MDL population.

| | |
|---|---|
| **Plaintiff Name:** Barbara Smith<br><br>**MDL Case Number:** 1:23-cv-10280/ MDLC # 8039<br><br>**Plaintiffs' Counsel:** Beasley Allen<br><br>**Named Defendants**: Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Namaste, Revlon, and Strength of Nature |  |

## I.        Plaintiff Background and History:

Barbara Smith is 65 years old, has never been married, and has one adult son and one grandson. She spent most of her adult life living with her mother, sister, and son in Milwaukee, Wisconsin, and has lived with her mother and sister in Alabama since 2022. Ms. Smith has been disabled most of her adult life due to chronic medical conditions, but she has been employed as a cashier at Walmart for the past three years.

Ms. Smith has been obese throughout her life and currently weighs 200-220 pounds. She weighed as much as 400 pounds prior to any of her cancer diagnoses, but at the time of her diagnosis of endometrial cancer in 2014, she weighed 270 pounds. Ms. Smith was diagnosed with left breast cancer in 2009, for which she had a lumpectomy and received radiation, followed by right breast cancer in 2011, for which she had a double mastectomy and received radiation. Three years later she was diagnosed with endometrial cancer. Ms. Smith suffered from a host of other illnesses/conditions including diabetes, hypertension, trans ischemic attacks, irregular menses, and lifelong chronic pain syndrome which resulted in decades of narcotic and opioid use for pain management. Because of these conditions, she essentially was dependent on family members for most of her activities of daily living.

## II.        Injury(ies) Alleged and Condition:

Ms. Smith was diagnosed with endometrial adenocarcinoma in September 2014, three years after her second breast cancer diagnosis.  She had a total hysterectomy without complication in October 2014. She did not require any chemotherapy or radiation treatment. All follow up examinations were normal and she has had no recurrence. Her treating surgeon opined that after 12 years, any recurrence would be highly unlikely.

## III.        Product Use:

Ms. Smith only received hair relaxer treatments at salons or at home from a beautician in Alabama. She never personally applied hair relaxer products to her own hair. She used hair relaxer products approximately six times per year (every eight (8) weeks) for 43 years from 1978-2021.  Most of her salon visits (95%) were at one specific hair salon in Milwaukee. The salon owner's son

performed virtually all of Ms. Smith's hair relaxer treatments. He specifically recalled the products the salon used and did not use on Ms. Smith's hair during the relevant time frame.

The owner's son worked at his mother's salon continuously from 1979-2021. He identified five (5) products that either he or his mother applied to Ms. Smith between 1978-2021. Those products involve L'Oreal USA, Namaste, Revlon and Strength of Nature.

In addition to the one salon identified, Ms. Smith also went to another salon in Milwaukee in 2013. She also recalled a specific beautician who applied hair relaxer to Ms. Smith's hair in Alabama between 2000 and 2009, but only on a few occasions. Ms. Smith testified that the hair relaxer products used on her hair over a period of 43 years by the various salons/beauticians were manufactured by Beauty Bell/House of Cheatham, L'Oreal USA, Luster, Namaste, Revlon and Strength of Nature. In total, Ms. Smith identified 21 different products from these manufacturers that she used.

## IV.     Other Relevant Considerations:

Ms. Smith never applied product to herself, which makes this effectively a "salon only" case that allows the court to test "salon only" application plaintiff theories and removes the variables interjected by "self" application.

Ms. Smith has both protective factors weighing against her risk of endometrial cancer (a pregnancy and negative genetic testing) and risk factors for endometrial cancer, including obesity and diabetes, making this a balanced case for trial.

Ms. Smith testified that despite having cancer three times (breast cancer twice and endometrial cancer), the endometrial cancer diagnosis was "different."

Ms. Smith has been pronounced by her treating surgeon as cancer-free for 12 years, which is beyond the window for likely recurrence of breast and uterine cancer, and she is no longer being actively followed for potential recurrence.

This is a case with specific product identification testimony from Ms. Smith's beautician of 42 years.

Ms. Smith's case is representative because it combines a common alleged injury–endometrial cancer–with decades of claimed relaxer use across the non-self-application settings reflected in the overall docket, including repeated salon and beautician application. This case also has a useful fact pattern: her long-term salon history is corroborated by a third-party witness who specifically recalls the products used, which may allow the court and the parties to test recurring causation and warning issues on a more developed factual record.

22

**Plaintiff Name:** Karla Smith

**MDL Case Number/MDL Centrality Number:** 1:23-cv-10645/MDLC # 1767

**Plaintiff's Counsel:** Simmons Hanly Conroy

**Named Defendants:** Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Namaste, Revlon, and Strength of Nature



## I.       Plaintiff Background and History:

Plaintiff Karla Smith is a 62-year-old, separated but not divorced woman, who was born in and has lived in Kansas City, Missouri her entire life. She had one pregnancy and gave birth to her adult son in 1984.

Ms. Smith is a business school graduate with a legal secretary certificate.  She is presently and has been employed since 2018 in the billing department at a medical center. Prior to her present employment, she worked for 19 years as a medical billing claims analyst and data entry operator.

Her family history includes a father who died from esophageal cancer, a brother with colon and liver cancer, and a maternal aunt who died from colon cancer. Ms. Smith's genetic testing for a cancer-related gene was negative. Her medical history includes coronary ablation, bilateral knee replacement, gallbladder removal, blood clots, gout, and dense breast tissue.

## II.      Injury(ies) Alleged and Condition:

Ms. Smith, who was first diagnosed as obese in the 1980s, was post-menopausal when she was diagnosed with endometrial cancer at the age of 54. At that time, she was 320 pounds, and in addition to obesity, she suffered from high blood pressure, high cholesterol, Type II Diabetes, deep vein thrombosis, atrial fibrillation, and sleep apnea. Type II diabetes in conjunction with obesity, among other things, are risk factors for endometrial cancer according to Ms. Smith's surgeon.

In May 2018, Ms. Smith underwent a total laparoscopic hysterectomy with a bilateral salpingo-oophorectomy (a surgical procedure to remove both ovaries and fallopian tubes), which was complicated by her obesity.  However, the surgery was successfully completed, and no lymph nodes had to be removed. She did not have complications during recovery, and she returned to work two weeks after the surgery. Thereafter, until 2023, Ms. Smith followed up with her surgeon and has been in remission with no signs of cancer. Now, having passed the five-year mark, the risk of recurrence is low according to Ms. Smith's doctor.

### III.    Product Use:

Ms. Smith began using hair relaxers around the age of 16 in approximately 1981/1982, and she continues to use them to the present day. Aside from the two or three times she had braids for two to three months on each occasion, Ms. Smith has essentially been relaxing her hair for 45 years and continues to do so.

As to the manner of use, Ms. Smith testified that she personally relaxed her hair, and that she only used no lye hair relaxers. Relaxing was done every three to four months, utilizing different brands interchangeably dependent on price, until transitioning to one brand in 2024 that included hair dye with the relaxer product.

Despite the 20 products, 13 brands and six manufacturers identified in her Plaintiff Fact Sheet, Ms. Smith only independently recalled four defendant brands. However, when questioned specifically as to the other brands in her Plaintiff Fact Sheet, she generally recalled another nine brands of hair relaxers and two defendant manufacturers. Overall, the six manufacturer defendants identified are Beauty Bell/House of Cheatham, L'Oréal USA, Luster, Namaste, Revlon and Strength of Nature. Ms. Smith has not seen any advertisements for relaxer products, but she has seen advertisements for this lawsuit.


### IV.    Other Relevant Considerations:

Ms. Smith is representative of plaintiffs: (1) who continue to use hair relaxers, despite filing a complaint in this MDL; (2) who are long term users of hair relaxers; (3) who are personal home consumers only; and (4) who used hair relaxer products interchangeably through the years based on price.

Ms. Smith is also representative in that she has protective factors weighing against her risk of endometrial cancer, namely a pregnancy and negative genetic testing; and risk factors for endometrial cancer, including obesity with Type II diabetes, making this a balanced case for trial.

Further, Ms. Smith is representative of those plaintiffs who returned to employment within weeks of surgery.

| | |
|---|---|
| **Plaintiff Name:** Roxanna Wade<br><br>**MDL Case Number/MDL Centrality Number:** 1:23-cv-07360/MDLC# 7491<br><br>**Plaintiff's Counsel:** Parker Waichman, LLP<br><br>**Named Defendants**: AFAM, L'Oréal USA, Luster, Revlon, and Strength of Nature |  |

## I.      Plaintiff Background and History:

Roxanna Wade is a 56-year-old woman who resides in Columbus, Ohio. She has been married and divorced three times, and she is the mother of two adult daughters. Ms. Wade attended college, both online and in person, at three different educational institutions over a period of approximately five years, but did not obtain a degree or certificate.

Her employment history has been intermittent; most recently, from 2024-2025, she worked as a Direct Support Person at a behavioral health facility. Additionally, like many other plaintiffs, Ms. Wade's medical risk factors for cancer include chronic obesity, uncontrolled hypertension, and a family history of uterine/endometrial cancer.

## II.      Injury(ies) Alleged and Condition:

Ms. Wade was diagnosed with endometrial cancer ten years ago, in April 2016. She was 46 years old and pre-menopausal at the time of her diagnosis. She was treated with a robotic hysterectomy and bilateral salpingo-oophorectomy (a surgical procedure to remove both ovaries and fallopian tubes). At the time of her hysterectomy, the pathology report signaled she may have Lynch Syndrome due to genetic anomalies; however, her oncologist never ordered the additional tests needed to confirm such a diagnosis. At the time of her hysterectomy, her medical records reflected she had a low risk of recurrence, and therefore, her oncologist did not prescribe any adjuvant therapy.  Ms. Wade has never undergone chemotherapy, radiation therapy, or immunotherapy. Today, Ms. Wade's cancer remains in remission.

## III.      Product Use:

Ms. Wade began using hair relaxer products at the age of ten. In her Plaintiff Fact Sheet, Ms. Wade alleged home use of 37 different relaxer products across five defendants, and she claimed to use each of those 37 products once every two months from 1980 through 2014 (34 years). This information, however, is inconsistent with her deposition testimony in which Ms. Wade, like other Bellwether plaintiffs, did not have clear recall as to her product usage.

Additionally, Ms. Wade was able to recall only four brands of products across two named defendants. She was unable to recall specific product names within these four brands. Ms. Wade also could not specify years of use or frequency of use for any specific brand or product during the

deposition. These types of inconsistencies in testimony regarding product usage are common among plaintiffs in the Bellwether pool.

**IV.     Other Relevant Considerations:**

Ms. Wade is representative of the pool of Bellwether plaintiffs in many respects. For example, she has both protective factors for cancer, including the birth of two children, as well as common risk factors for her cancer that are shared by many in the pool. Ms. Wade is also representative because she is in the same age range, and alleges the same type of endometrial cancer, as many in the MDL population. The fact pattern in this case would allow the jury to assess key factors that are likely to recur across the pool of MDL cases.

**Plaintiff Name:** Tawanna Weeks

**MDL Case Number/MDL Centrality Number:** 1:23-cv-5488/MDLC # 5096

**Plaintiff's Counsel:** Childers, Schlueter & Smith LLC

**Named Defendants:** AFAM, Avlon, L'Oréal USA, McBride, Namaste, Revlon, and Strength of Nature



## I.      Plaintiff Background and History:

Plaintiff Tawanna Weeks is a 53-year-old single, African American woman who currently resides in Columbus, Ohio. She was born in Chicago, Illinois, and moved to Ohio when she was about eight or nine years old. She alleges that she purchased and applied hair relaxers in both Illinois and Ohio.

In several respects, Ms. Weeks reflects a profile that appears throughout the bellwether pool: she is an African American woman alleging long-term, intermittent hair relaxer use beginning at childhood. She has never been married, but has two adult children and is the primary caregiver and legal custodian of her granddaughter. Ms. Weeks is a high-school graduate, completed some coursework at community college, and attended cosmetology school. She has a long and varied employment history and after a period of receiving Social Security disability benefits related to asthma, she returned to the workforce in 2023 and is now employed both full time and part time.

These background features make Ms. Weeks more recognizable as part of the broader plaintiff population than some more atypical candidates.

## II.      Injury(ies) Alleged and Condition:

Ms. Weeks  was diagnosed with ovarian cancer on January 21, 2015, at age 42. Her medical records indicate that she was most likely post-menopausal at the time of diagnosis, although her testimony suggested that she believed she had not yet gone through menopause.  Before that diagnosis, she developed uterine fibroids and ovarian cysts around 2008-2009, and her right ovary was removed in 2009 because of benign ovarian cysts.  Although  it does not appear that she was diagnosed with polycystic ovarian syndrome ("PCOS"), Ms. Weeks' gynecologist noted that her cysts appeared consistent with PCOS. A November 2014 sonogram again reflected uterine fibroids.

Ms. Weeks underwent a left supracervical hysterectomy and left salpingo-oophorectomy (surgical removal of both ovaries and fallopian tubes) in January 2015. Her gynecologist testified that the surgery was curative. Ms. Weeks did not undergo chemotherapy or radiation, has remained free of recurrent disease and has completed five years of follow-up. Ms. Weeks is not alleging any mental health-related injuries and does not claim that there are any activities she can no longer do following her cancer diagnosis.

## III.    Product Use:

Ms. Weeks began using hair relaxer products between 1980-1982, when she was eight to ten years old. She alleges relatively infrequent use—approximately two to four applications per year over a 30 to 33-year period. She claims to mainly have applied hair relaxer products on herself at home, but also had the products applied on her by her mother, friends, and professionally in the cosmetology school salons. She identified 12 different products that she used from seven different manufacturers: AFAM, Avlon, McBride, Namaste, L'Oréal USA, Revlon and Strength of Nature. In that respect, her case presents a broad multi-product, multi-defendant exposure history despite relatively low-frequency use. She stopped using hair relaxer products in 2013 after her friend and cosmetologist advised her to stop because she did not need them and claimed they were not good for her hair.

## IV.    Other Relevant Considerations:

Defendants consider this case to be among their top five candidates for trial selection. This is the only ovarian cancer case included in the Defendants' selection.

Ms. Weeks presents with both protective factors and risk factors relevant to ovarian cancer. The protective factors include two pregnancies and a tubal ligation. The risk factors include obesity, Type II diabetes, and a family history of cancer. In that respect, the case presents a medically mixed profile rather than a single-variable causation story.

Ms. Weeks' Illinois and Ohio background also may make her more typical within the broader MDL plaintiff population, and relatable for an Illinois jury. Ms. Weeks is a claimant in the Johnson & Johnson talc litigation, where she alleges that talcum-powder use caused the same ovarian cancer alleged here.

Taken together, these facts make Ms. Weeks an informative and representative ovarian cancer case. As the only ovarian cancer case in Defendants' selection, Defendants believe this case is appropriate to be among the Court's top selections.

Dated: March 23, 2026

FOR DEFENDANTS:

Respectfully Submitted,

 /s/ Heidi Levine
Heidi Levine
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
T: (212) 839-5300
hlevine@sidley.com
*Defense Liaison Counsel and Counsel for Defendant Namaste Laboratories, LLC*

Amanda M. Blau
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
T: (212) 839-5441
ablau@sidley.com

Caitlin P. Strauss
**SAUL EWING LLP**
1735 Market Street
Suite 3400
Philadelphia, PA 19103-7504
T: (215) 972-7153
caitlin.strauss@saul.com

Michael A. Jacobson
**SAUL EWING LLP**
161 North Clark Street
Suite 4200
Chicago, IL 60601
T: (312) 876-7121
michael.jacobson@saul.com
*Counsel for Defendant Namaste Laboratories, LLC*

Dennis S. Ellis
Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor

29

Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5967
dellis@ellisgeorge.com
kmurray@ellisgeorge.com
spolatoglu@ellisgeorge.com

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com
*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. and SoftSheen-Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter
**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
Rhonda.trotter@arnoldporter.com
*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

Patrick P. Clyder
Royce B. DuBiner

30

**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com
rdubiner@mcguirewoods.com
*Counsel for Defendant House of Cheatham LLC*

Joseph P. Sullivan
Kevin A. Titus
Bryan E. Curry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com
curry@litchfieldcavo.com

Daniel P. Costello
Michael P. Turiello
Shipra S. Mehta
**COSTELLO GINEX & WIDEIKIS, P.C.**
150 N. Wacker Drive, Suite 1400
Chicago, IL 60606
T: 312-850-2651
F: 312-893-7395
dcostello@cgw-legal.com
mturiello@cgw-legal.com
smehta@cgw-legal.com
*Counsel for Defendant Beauty Bell*
*Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.
Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900 Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com
*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah

31

Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 579-2018
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com
*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
**ECKERT SEAMANS CHERIN &
MELLOT, LLC**
275 Madison Avenue, 10th Floor
New York, NY 10016
T: (646) 513-2358
eabbot@eckertseamans.com

32

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com
*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
T: (786) 957-1157
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street, Suite 3400
Chicago, IL 60606
T: (312) 837-4316
Matthew.Wasserman@dinsmore.com

Adam Fox
**DINSMORE & SHOHL LLP**
801 Pennsylvania Avenue N.W., Suite 610
Washington, D.C. 20004
T: (202) 559-3615
F: (202) 372-9141
Adam.Fox@dinsmore.com
*Counsel for Defendant, McBride Research Laboratories, Inc.*

33