**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060** <br><br> Master Docket Case No. 1:23-cv-00818 <br><br> Honorable Mary M. Rowland |

**STIPULATED PROTOCOL GOVERNING PRODUCTION OF**
**RESPONSIVE INFORMATION USING TAR INTEGRATION WITH**
**AI DISCOVERY ASSISTANT WITH DEFENDANT RNA CORPORATION**

The Plaintiffs and Defendant RNA Corporation (together the "Parties"), by and through their undersigned counsel, agree that the protocol set forth herein shall govern RNA Corporation's use of Epiq's AI Discovery Assistant ("EAIDA") in connection with the production of documents in *IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION*, Case No. 23 C 818; MDL No. 3060.

This protocol does not replace nor alter the duties and responsibilities outlined in Case Management Order No. 4 [Dkt. 109]. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules, Local Rules, or other applicable state and federal statutes, they shall be controlling. Furthermore, nothing in this protocol shall relieve the Producing Party from producing documents known to it to be responsive.

A.      **Documents Subject to EAIDA**

1.      The EAIDA Universe that the Producing Party will apply EAIDA to will consist of all electronic documents and data collected from custodial and non-custodial sources that have been identified as containing potentially relevant documents for production (except for unsearchable documents and subject to de-duplication and de-NISTing as per Section VII of Case Management Order 4), except as modified by paragraphs 2 through 7 below.

2.      If the Producing Party wishes to use EAIDA on sources and documents that traditionally may not be good candidates for EAIDA (*e.g.*, calendar items, handwritten notes, audio and video files, hard copy documents, etc.), the Producing Party will evaluate and identify in writing those sources and documents to opposing counsel. The Producing Party shall provide written notice identifying each non-traditional source (e.g., handwritten notes, audio, or structured data), approximate document count, vendor recommendation, and the basis for using EAIDA on that material. The Receiving Party shall have ten (10) business days to object in writing, reasonably describing its objections to the use of EAIDA for each source or documents proposed. If there is an objection to the use of EAIDA on those sources, the Parties agree to meet and confer within 14 days after written objection by the Receiving Party.

3.      The Producing Party will disclose the total number of documents subject to EAIDA and provide the Receiving Party a list of file types (as defined in Relativity) for the documents that EAIDA will be applied to, with a file count for each file type. Microsoft Teams messages will be threaded into 24-hour rollups (that is, any Teams messages within the same 24-hour day will be threaded together in a single document to provide context and sufficient content to be eligible for EAIDA). Responsive, non-privileged Teams messages will be produced as 24-hour rollups.

4.      The Producing Party will run a text analysis to identify files that are not good candidates for EAIDA, based on the analysis and recommendations of the EAIDA vendor, Epiq. Documents may be excluded from EAIDA on the basis of Epiq's recommendations and may include documents with too little or too much extracted text, documents with more than 50 recipients (these documents typically represent blast emails but can also cause technical issues), records that are highly likely to be not responsive based on the sender domain, documents collected from RNA's structured data storage programs, etc. The Producing Party does not rely exclusively

2

on a whitelist or blacklist to include or exclude, respectively, all documents from EAIDA. Instead, Epiq analyzes file type eligibility on a case-by-case basis, and the Producing Party includes or excludes documents from EAIDA based on Epiq's recommendations.

### B. Documents Subject to Linear Review

5. The Producing Party will preserve and manually review documents that are excluded from EAIDA to identify responsive documents for production.

6. If the Producing Party believes that the application of search terms or other methodology to limit the number of documents to be reviewed manually (*i.e.*, documents excluded from EAIDA) would be appropriate, the Producing Party will disclose the proposed search methodology to the Receiving Party in writing, and the Parties will meet and confer as required under CMO 4.

7. The Parties will meet and confer regarding any additional culling beyond what is contemplated here or already agreed upon by the Parties or prior to decisions that would result in substantial impact on the EAIDA Universe.

### C. EADIA Training and Workflow

8. Defendant intends to use Epiq's AI Discovery Assistant with a TAR 1.0 integrated workflow. In a TAR 1.0 workflow, Subject Matter Experts (as defined in paragraph 10) review sample documents to train a binary classification model. The model learns how to classify documents as responsive to the request(s) through a combination of both prompts (instructions) and active learning with labeled data. The prompt and active learning feedback loop continue until the model appears to be well-trained.

9.      Documents may be added once training begins (pursuant to the requirements of Paragraph 21 below), and the Software applies the current learning from the model to score the new documents.

10.      The Producing Party will select an attorney or attorneys with an understanding of the allegations in this litigation, familiar with the requests for production and the issues in this case, and able to make definitive determinations on relevance (hereafter, "Subject Matter Experts" or "SMEs"). The SMEs shall be attorneys at Tabet DiVito & Rothstein with an understanding and familiarity with this litigation.

11.      The EAIDA process will use an initial prevalence sample set to confirm the suitability of the EAIDA / TAR 1.0 workflow. A random sample of 500 documents will be reviewed by Subject Matter Experts to assess the prevalence of responsive documents in the EAIDA eligible population. Based on the results of the prevalence sample, the Producing Party will be able to confirm suitability of the EAIDA / TAR 1.0 workflow.

12.      All responsive and non-responsive documents from the prevalence sample will be included in an initial Seed Set to begin the training phase. The Seed Set can include unproduced and produced documents. The non-privileged and responsive documents from that Seed Set will be produced to the Receiving Party, as set forth in paragraph 17 below.

13.      After the Producing Party has provided the model with its reviewer coding manual to initiate training, Epiq will pull 1000-2000 documents to receive responsiveness coding by the LLM based on that reviewer coding manual (the "LLM-Coded Set").

14.      The Producing Party will produce to the Receiving Party all non-privileged, relevant documents in the LLM-Coded Set in compliance with the ESI Protocol in this case. This production must be made in a separate production volume.  The Producing Party will also provide

4

a privilege log for any privileged and responsive documents withheld from production. The Producing Party will also provide a categorical description of the documents from the LLM-Coded Set which were identified as not responsive.

15. The Receiving Party will identify any category of documents that the Producing Party has identified as not responsive which the Receiving Party believes may be responsive. The Receiving Party will provide a written description of why it believes a category of documents is responsive. The Parties shall meet and confer regarding the responsiveness of those categories of documents. The Parties' conferral to resolve any differences shall be completed within 7 days after the categories of documents are provided to the Receiving Party.

16. The Seed Set should consist of at least 1,750 documents randomly selected from the EAIDA Universe, including responsive and not responsive examples. The Seed Set will be selected using the random sampling tool built into Relativity.

17. After the Producing Party's SMEs have reviewed the Seed Set, the Producing Party will produce to the Receiving Party all non-privileged, relevant documents in the Seed Set in compliance with the ESI Protocol in this case. The Producing Party will also provide a privilege log for any privileged and responsive documents withheld from production. The Producing Party will also provide a categorical description of the documents from the Seed Set which were reviewed as not responsive.

18. The Receiving Party will identify any category of documents that the Producing Party has identified as not responsive which the Receiving Party believes may be responsive. The Receiving Party will provide a written description of why it believes a category of documents is responsive. The Parties shall meet and confer regarding the responsiveness of those categories of

documents. The Parties' conferral to resolve any differences shall be completed within 15 days after the categories of documents are provided to the Receiving Party.

19. The LLM-Coded Set and the Seed Set will be used to begin training the EAIDA model.

20. The Producing Party will work with Epiq to train the EAIDA model. As part of the training, the Producing Party's SMEs will review documents as recommended by the Epiq consultant(s). The training may include transformer prompts (detailed document review instructions that define responsiveness, criteria for key issue tags, confidentiality and privilege coding, etc.), stratified sampling, top scores, or other document selection algorithms.

21. If a new custodian or new category of documents is added to the universe of documents subject to EAIDA after the date this protocol is agreed to, the Producing Party shall notify the receiving party and review and code a random sample of 200 new documents per new custodian or new category of documents in order to integrate the documents into the larger set and to ensure the least amount of negative impact on the model.

22. Quality control ("QC") measures will be run throughout the process at regular intervals. The EAIDA model will be trained using a process similar to the validation process described below.

23. Once the model begins identifying high-scoring documents, these documents may be batched out for review and production as part of the Producing Party's rolling productions.

24. The Producing Party will alert the Receiving Party when it reaches a target recall within the 80% range which best balances recall with precision as well as depth for recall. Should low richness indicate a need to deviate from the target metrics, the Producing Party will notify and consult with the Receiving Party.

25.     Once the Producing Party reaches target recall and believes the model is sufficiently well-trained to begin validation, the Producing Party will produce to the Receiving Party any unproduced non-privileged, relevant documents which were used to train the model on responsiveness in compliance with the ESI Protocol in this case. The Producing Party will also provide a privilege log for any privileged and responsive documents withheld from production. The Producing Party will also provide a categorical description of previously not identified, not responsive documents used to train the model on responsiveness.

26.     The Receiving Party will identify any category of responsive documents that the Receiving Party believes will not be adequately captured by the model based on the training documents identified by the Producing Party within 7 days of either: (1) the disclosure of all training documents that are required to be disclosed, or (2) the Producing Party informs the Receiving Party that training is complete, whichever comes later. The Parties shall meet and confer in good faith within 7 days thereafter regarding the responsiveness of those categories of documents and possible methods to ensure responsive documents within those categories are included in Producing Party's ultimate production. Should the parties be unable to resolve any disputes, the Parties shall promptly submit those remaining disputes to Special Master Grossman for resolution.

C.      **Validation**

27.     The Producing Party will review and code a validation sample set of at least 2,500 documents. The validation set will be drawn from at least 1,500 randomly selected documents in the null set (*i.e.*, documents scoring below the cut-off and not contained in any families above the cut-off) and at least 1,000 randomly selected documents not in the null set. The sample documents will be selected using the random sampling tool built into Relativity.

28.     The Producing Party will utilize SMEs to review the validation set.

29.     For the avoidance of doubt, the documents from the validation set will be combined and mixed to create one validation review set. The reviewer(s) will be blind as to which category each of the documents in the validation set was drawn from.

30.     The Producing Party will analyze responsive documents identified in the subsets of validation documents to determine the quantity of missed responsive documents and whether, and to what extent, the documents contain significant relevant information or information sufficiently different from the information produced as to indicate that the EAIDA process was deficient for certain categories of documents. The Producing Party will provide the Receiving Party with a list of Bates numbers for responsive documents identified in the validation review that have already been produced and the number of responsive and non-responsive documents by category. The Producing Party will separately produce the responsive, non-privileged documents found in the validation set.

31.     The Producing Party will provide the recall metrics from the validation set, including margin of error, and sufficient information for the Receiving Party to understand the method by which the metrics were calculated.

32.     The review will be complete when 80% recall rate for responsiveness has been reached and confirmed by validation efforts. The Producing Party will provide the Receiving Party with statistics based on the final cut-off for recall (the percentage of total responsive documents retrieved by the model at a specific cut-off), precision (the percentage of documents retrieved confirmed as responsive), and margin of error.

33.     The review will not be complete if the validation efforts fail to demonstrate at least 80% recall or demonstrate a deficient process. If any of the above occur, the Producing Party will

8

make a good faith effort to resolve the deficiency through means that may include selective document searches or additional training or refining of the EAIDA model and repeating the validation process described in paragraphs 27 through 31 or will provide sufficient justification for not doing so. If the Parties do not reach agreement that adequate steps have been taken and the review should stop, the Parties may present this dispute to Special Master Grossman for resolution.

34.     In addition to the above, the Producing Party will do a 100% linear review of any documents that are within the null set and that hit on a narrow set of highly focused search terms. Those terms are attached as Exhibit A to this Protocol. To the extent that Producing Party supplements its responses to Interrog. No. 3 in Plaintiffs' First Set of Interrogatories to RNA, to identify additional formula numbers, customer names, and/or product names, those formula numbers, customer names, and/or product names will be added to Exhibit A according to the existing search term conventions and disclosed to the Receiving Party. The Producing Party will run the supplemental search terms through the documents within the null set as if originally set forth in Exhibit A, and any responsive, non-privileged documents will be produced, and any responsive, privileged documents will be logged, pursuant to the requirements of CMO 4.

35.     The Producing Party shall instruct Epiq to preserve all EAIDA final prompts and human-labeled example documents used to train each version of the model as well as the final validation scores assigned by each version of the model until final judgment or further court order.

36.     Epiq shall certify in writing that EAIDA was configured and used as disclosed in this protocol and that final prompts, human-labeled example documents, and model scores have been preserved. The Producing Party shall preserve these materials until final judgment or further Court order.

### D.      Ongoing Cooperation

37.      Any proposed deviations in the agreed upon EAIDA process set forth above will be promptly disclosed to the Receiving Party so that the Parties may confer about whether such deviation is acceptable.

38.      Responsive, non-privileged documents may be produced on a rolling basis during the EAIDA process.

39.      The Producing Party will make a good faith effort to respond to reasonable requests for information about anticipated next production dates, anticipated production volume, and documents remaining in the review population.

40.      The Parties will cooperate throughout the EAIDA process and confer in good faith to resolve any disputes concerning this protocol before making such dispute the subject of an application to the Court.

41.      The Parties further acknowledge that although precision, efficiency and effectiveness of the search methodologies are important, perfection is neither required nor possible.

42.      The Parties acknowledge that this protocol has been negotiated and agreed to based on the unique circumstances of this case and does not set a precedent for future cases or use of EAIDA by any party outside of the specific use described in this protocol.

Dated: April 21, 2026

So Ordered:


/s/ _____
Special Master Maura R. Grossman, J.D., Ph.D.


10

/s/ *Kendra Goldhirsch*

Kendra Y. Goldhirsch
Geoffrey Spaulding
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (347) 269-4472
Facsimile (888) 499-1123
kgoldhirsch@chaffinluhana.com
spaulding@chaffinluhana.com
*Counsel for Plaintiffs*


/s/ *Megan E. Ryan*

Daniel L. Stanner
Ashley Crettol Insalaco
Megan E. Ryan
**Tabet DiVito & Rothstein LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
Tel: (312) 762-9450
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com
*Counsel for Defendant RNA Corporation*

11

**EXHIBIT A**

- Relaxer* OR rlxr* or any other term(s) used within RNA to reference hair relaxers
- "Silk Elements" w/10 (relax* OR rlxr*)
- ("S/E" OR "SE") w/10 (relax* OR rlxr*)
- ("megasilk" w/10 (relax* OR rlxr*)
- ("root touch-up" OR "root touch up") w/10 (relax* OR rlxr*)
- ("Proclaim") w/10 (relax* OR rlxr*)
- ("Argan") w/10 (relax* OR rlxr*)
- ("Shea") w/10 (relax* OR rlxr*)
- ("SB" OR "Sally") w/10 (relax* OR rlxr*)
- ("MB" OR "McBride") w/10 (relax* OR rlxr*)
- ("MRL" OR "Design Essentials") w/10 (relax* OR rlxr*)
- ("Urban") w/10 (relax* OR rlxr*)
- ("Honey") w/10 (relax* OR rlxr*)
- "Dudley" w/10 (relax* OR rlxr*)
- "Influence" w/10 (relax* OR rlxr*)
- ("Request Products" OR "REQ") w/10 (relax* OR rlxr*)
- ("Organic Root Stimulator" OR "ORS") w/10 (relax* OR rlxr*)
- ("Namaste" w/10 (relax* OR rlxr*)
- ("Built in Protector" OR "BIP") w/10 (relax* OR rlxr*)
- ("Green Tub") w/10 (relax* OR rlxr*)
- ("Zone") w/10 (relax* OR rlxr*)
- ("J Strickland" OR "J. Strickland" OR "JS" or "JT") w/10 (relax* OR rlxr*)
- ("Johnson Products" OR "JP" OR "JPC") w/10 (relax* OR rlxr*)
- ("GT" OR "gentle treatment") w/10 (relax* OR rlxr*)
- ("USS" OR "Ultra Sheen" OR "UltraSheen") w/10 (relax* OR rlxr*)
- ("O/O" OR "OO" OR "olive oil") w/10 (relax* OR rlxr*)
- ("S/S" OR "SS") w/10 (relax* OR rlxr*)
- ("N/B" OR "NB") w/10 (relax* OR rlxr*)
- ("N/L" OR "NL") w/10 (relax* OR rlxr*)

- Each of the formula numbers identified in Producing Party's responses to Interrog. No. 3 in Plaintiffs' First Set of Interrogatories to RNA (*e.g.* "RNA 44-167"), including formula numbers identified in supplemental responses for hair relaxer formulas and kit component part formulas.

- ("uterine" OR "ovarian" OR "endometrial") w/3 "cancer"

- (burn* OR lacerat* OR "hair loss") w/10 (relax* OR rlxr*)

- Formaldehyde w/10 (relax* OR rlxr* OR straight* OR neutral*)

- Lye w/10 (relax* OR rlxr* OR straight* OR neutral*)

- (California w/5 cosmetic) w/10 (relax* OR rlxr* OR straight* OR neutral*)

- (PCPC OR "personal care products council") w/10 (relax* OR rlxr* OR straight* OR neutral*)

- (CTFA OR "Cosmetic, Toiletry, and Fragrance Association") w/10 (relax* OR rlxr*)

- "Global Beauty Alliance" w/10 (relax* OR rlxr*)

- (CFSAN OR "center for food safety and applied nutrition") w/10 (relax* OR rlxr* OR straight* OR neutral*)

13