**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**JOINT STATUS REPORT FOR THE**
**JUNE 18, 2026 STATUS CONFERENCE BEFORE**
**THE HONORABLE MARY M. ROWLAND**

Co-Lead Counsel for Plaintiffs and counsel for Defendants provide this joint status report

in advance of the status conference scheduled for June 18, 2026.

I. ***Update on Bellwether Cases***

    a.  Subject Matter Jurisdiction

On May 21, 2026, following the Case Management Conference, the Court ordered: "The parties are to confer regarding the subject matter jurisdiction issues raised at pages 26 to 28 of the JSR and provide an update to the Court in the June JSR due on 6/11/26. The parties are to consider the impact of *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260 (5th Cir. 2019) and *In re Celotex Corp.*, 124 F.3d 619 (4th Cir. 1997)." The Court ordered the parties to address whether the Court can maintain jurisdiction over cases in which the basis for original jurisdiction – here, 28 U.S.C. § 1334(b) ("related to" a bankruptcy case) – no longer exists. [Dkt. 1881]. In this MDL, that would include, for example, if Revlon were dismissed from a case in which the remaining parties do not have complete diversity. The PSC and Defendants jointly and collectively provide this response and position.

Under the plain language of 28 U.S.C. § 1367 (the supplemental jurisdiction statute) and applicable caselaw, the answer is ***YES***, the Court has discretion to maintain jurisdiction over the balance of the case, even if the remaining parties are not diverse from each other. Moreover, as set forth below, the cases cited by the Court -- *Double Eagle* and *Celotex* -- confirm that a federal district court has discretion to continue to exercise jurisdiction even when the original Section 1334 "related to" bankruptcy jurisdiction basis is no longer present. In an MDL proceeding, such as this one, there are particularly compelling reasons for the Court to exercise supplemental jurisdiction over cases directly filed in this Court, whether or not Revlon, a Chapter 11 proceeding debtor, remains a party to the action. Of

1

course, Plaintiffs can choose to avoid reliance on the Court's discretion over any jurisdictional issue by dismissing the diversity defeating defendant(s) and allow those cases to proceed under traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332, but that is not the sole remedy.

*Available Jurisdictional Bases in the MDL*

In this MDL, there are two independent bases for federal subject matter jurisdiction available in cases involving Revlon: (i) Complete diversity under 28 U.S.C. § 1332 and (ii) "Related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b) where a plaintiff names Revlon, a debtor in a Chapter 11 proceeding, and as to whom the bankruptcy court permitted actions to be filed in this MDL Court, and 28 U.S.C. § 1367(a) which provides supplemental jurisdiction over claims against the non-debtor defendants.

As to the *Carrie Chattman* case (1:23-cv-10579), one of the ten (10) bellwether cases, Plaintiff Chattman, a citizen of Florida, filed her case in the MDL on September 13, 2023 and named Revlon as one of the Defendants. On November 15, 2023, Plaintiff filed an amended complaint which added Beauty Bell and House of Cheatham as additional Defendants, both of which are LLCs with members who are citizens of Florida, defeating diversity jurisdiction. [Dkt. 1688]. However, federal subject matter jurisdiction remained under Sections 1334(b) (as to Revlon) and 1367(a) (as to the balance of the actions).

On July 26, 2024, Plaintiff dismissed Revlon as a Defendant. *Notwithstanding the dismissal of Revlon, this Court may exercise its discretion to retain jurisdiction over the Chattman action and other cases similarly situated.*

28 U.S.C. § 1367(a) supplies supplemental jurisdiction over claims against non-bankrupt defendants. Although Revlon has been dismissed from the *Chattman* case, depriving the Court of federal subject matter jurisdiction under Section 1334(b), the decision whether to retain jurisdiction over the remainder of the action, and others similarly situated, remains within the discretion of this MDL Court.

The plain language of § 1367(c)(3) states:

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: . . . (3) the district court has dismissed all claims over which it has original jurisdiction."

On its face, the statute's directive plainly allows courts the *discretion* to exercise supplemental jurisdiction without the anchor for original jurisdiction. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (U.S, 2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 80–81 (7th Cir. 1995) (recognizing discretion of district court to decide whether to retain jurisdiction following dismissal of claims related

to bankruptcy court proceeding)[1]; *see also Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction"). Other courts are in accord and confirm that subsequent developments do not automatically divest the Court of jurisdiction where bankruptcy-related jurisdiction existed at the outset, but are instead left to the discretion of the district court. Moreover, the Seventh Circuit in *Chapman* recognized that "the same standards [governing retention of supplemental jurisdiction] should apply to the question whether and in what circumstances to retain the supplemental (here, the adversary) claim when the main claim (here, the bankruptcy proceeding itself) is resolved." 65 F.3d at 81.

Although the two decisions cited by this Court in its Order do not address the exercise of supplemental jurisdiction under Section 1367 when the basis for Section 1334(b) "related to" bankruptcy jurisdiction no longer exists in a case, they recognize that the absence of a continuing presence of a federal basis for subject matter jurisdiction does not automatically divest the court of discretion to retain the case. *In Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019), the Court stated that: "[T]he time-of-filing rule . . . applies to bankruptcy jurisdiction no less than it applies to diversity or federal question jurisdiction." This is consistent with the principle outlined decades earlier in the other case cited by this Court, *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997), which held that subsequent bankruptcy settlement and plan confirmation "could not divest the district court [of] subject matter jurisdiction." *See In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995) ("[T]he dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement.").

Thus, the supplemental jurisdiction statute and caselaw confirm that once Section 1334(b) jurisdiction validly attached, even if it no longer exists, the dispositive inquiry is whether the Court should exercise its discretion to retain the remaining claims. The circumstances of this MDL strongly support doing so.

Here, the parties agree there is sound reason for this MDL Court to retain jurisdiction over the state law claims and balance of the defendants, a litigation in which the Court already invested years of its resources and been deeply involved in the MDL's common factual, scientific, regulatory, discovery, and bellwether issues since 2023. The remaining claims are not uniquely complex, state-specific statutory claims; they are standard common-law tort claims that overlap across the MDL and incorporate claims based on federal statutory and regulatory standards. [Dkt. 106 (Master Complaint)]. The values guiding a court's exercise of supplemental jurisdiction, namely judicial economy, convenience, fairness and

---

[1] Although the Seventh Circuit in *Chapman* affirmed the lower court's decision in that non-MDL case to relinquish supplemental jurisdiction over the remaining state law claims in that instance, the jurisdictional principle recognized in *Chapman* is clear: A district court has discretion to retain jurisdiction over the state law claims against the remaining non-debtor defendants.

comity, all favor retention here. Convenience, fairness, and comity present no obstacle, because the surviving claims raise ordinary common-law tort theories measured against federal statutory and regulatory standards, not novel or unsettled questions of state law warranting deference to a state forum. And judicial economy, which carries the greatest weight where a federal court has so long managed the litigation, decisively favors retention.

The Seventh Circuit decision in *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722 (7th Cir. 2001) is most apt. In *Miller*, the Seventh Circuit reversed the lower court's decision to relinquish jurisdiction, when the district court had spent years managing complex litigation and had developed substantial familiarity with the factual and legal record. *Id*.at 732 (concluding that "[t]his case presents a good example of when a district court *should* exercise supplemental jurisdiction over pendent state law claims for reasons of judicial efficiency.") (emphasis in original). The same considerations apply here. The Court's accumulated investment, the parties' reliance on the MDL bellwether process, and the risk of duplicative proceedings overcome any default presumption in favor of relinquishment. *See id.* (retention appropriate after five years of litigation, 22 motions, 9 hearings, 19 orders, and 71-page decision); *see also RWJ Management Co., Inc. v. BP Products North America*, 2011 WL 116884 (N.D.Ill. 2011) (distinguishing *Miller* in part, where the district court had issued only one brief substantive ruling, ten pages long).

The values guiding a court's exercise of supplemental jurisdiction, namely judicial economy, convenience, fairness and comity, all favor retention here. Convenience, fairness, and comity present no obstacle, because the surviving claims raise ordinary common-law tort theories measured against federal statutory and regulatory standards, not novel or unsettled questions of state law warranting deference to a state forum. And judicial economy, which carries the greatest weight where a federal court has so long managed the litigation, decisively favors retention.

Accordingly, this is not a case for discretionary relinquishment of jurisdiction. Jurisdiction validly attached under Section 1334(b). Revlon's later dismissal merely requires the Court to decide whether its substantial time investment in this MDL, the parties' reliance on the coordinated bellwether process, and the common federal, regulatory, factual, and scientific issues in which the Court has been entrenched, counsel in favor of retaining jurisdiction. The parties believe they do, such that retaining jurisdiction is the course that best serves Section 1367 and the efficient administration of this litigation under the Rules of Civil Procedure and the mandate of the MDL statute, 28 U.S.C. § 1407. *See Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (affirming the notion that district courts handling complex, multidistrict litigation "must be given wide latitude with regard to case management" in order to achieve efficiency."). The parties jointly submit that based on the above, the Court may (and should) exercise its discretion to retain supplemental jurisdiction and keep *Chattman* and other similarly situated cases within this coordinated MDL proceeding.

    b.   <u>Status of Discovery Served by Defendants in Individual Bellwether Cases</u>

**Defendants' Position:**

Defendants have diligently worked to complete fact discovery in the ten (10) Bellwether Plaintiff cases by the June 10, 2026 deadline. Those efforts have included attempts to obtain timely and complete supplemental discovery responses, medical records, social media with metadata, photographs with metadata and/or date references, specific and clear damages disclosures, and medical records authorizations with sufficient time for Defendants to review the productions, assess completeness, and pursue any necessary follow-up before the close of fact discovery.

During this second and final phase of bellwether fact discovery, Defendants served deficiency letters concerning the remaining ten (10) Bellwether Plaintiff cases, as outlined in Defendants' May 2026 Joint Status Report (Docket No. 1849). Defendants did so in an effort to narrow or resolve all or most of the outstanding issues without Court intervention. Defendants also participated in numerous virtual meet-and-confers and exchanged extensive correspondence with Plaintiffs' counsel regarding the remaining deficiencies.

Despite those efforts, many of the Bellwether Plaintiffs still have not provided the evidence Defendants are seeking, and did not provide formal responses to those deficiency letters until the end of the first week of June (late last week) or during the week fact discovery closed—within days, and in many instances within hours, of both the June 10 fact discovery deadline and the deadline for submission of this Joint Status Report the next day, on June 11. Several of those responses remain deficient. The delayed timing of Plaintiffs' responses and productions has prejudiced Defendants' ability to complete their review and any needed follow-up before the June 10, 2026 fact discovery deadline.

Most notably, on the evening of June 10, 2026—the fact discovery deadline and the night before this JSR was due—Plaintiffs advised Defendants through a draft JSR exchange that they had uploaded additional discovery in several Bellwether cases, including social media, metadata, photographs, and damages information. This information was not immediately visible or accessible to Defendants who attempted to access that data on the MDL Centrality portal that evening. Defendants still are reviewing the information as they become accessible, but Defendants cannot reasonably be expected to confirm in this JSR that those production are complete or that no further discovery is necessary. However, we will endeavor to be in a position to address any remaining deficiencies at the upcoming status conference.

Plaintiffs' handling of damages discovery is illustrative. Notwithstanding Plaintiffs' assurances to the Court at last month's case management conference, and

the Court's subsequent Order (Docket No. 1881), most Plaintiffs have not adequately responded to Defendants' Request for Production No. 20 regarding damages discovery. Plaintiffs should identify the specific hospital bills, invoices, medical charges, or other documents that support their claimed economic damages and the amount at issue. Plaintiffs' counsel in *Wallace*, for example, provided that level of detail, demonstrating that such a response is both feasible and reasonable. There is no basis for the remaining Plaintiffs to provide only vague supplemental responses generally referring Defendants to all medical records.

That approach is insufficient and prejudicial. Thousands of pages of medical records have been produced for each of the ten Bellwether Plaintiffs. The burden should not fall on Defendants to guess which records Plaintiffs contend are attributable to the damages allegedly caused by their hair relaxer use or for Defendants to attempt to do their own math. This is particularly important where certain Plaintiffs attribute numerous and varied medical conditions to their alleged hair relaxer use and cancer diagnosis. For example, Plaintiff *Chattman*, testified regarding several conditions she attributes to her hair relaxer use and cancer diagnosis, including issues involving her back bones, sciatica, a shattered tooth, hearing loss, and tingling in her fingers. Defendants are entitled to know which medical bills, invoices, or other damages documents Plaintiffs contend relate to each claimed injury, and should not need to guess which medical bills relate to these alleged injuries.

In addition, Defendants received hundreds of photographs from family members at a few of the depositions taken last week, despite prior representations that no additional photographs were available. Defendants appreciate that those photographs ultimately were produced, but the circumstances of those productions confirm that additional responsive photographs which Plaintiffs have been ordered to produce may exist in other Bellwether cases, particularly where family members have not been deposed. Defendants should not be required to locate such materials through deposition-by-deposition happenstance. As the Court has already held, Plaintiffs have an obligation to conduct a reasonable search for responsive photographs and produce them in discovery.

Plaintiffs also should provide basic contextual information for each photograph produced after a Plaintiff's deposition, including the approximate date (or decade) of the photograph and the Plaintiff's hair status in the photograph (e.g., natural, relaxed, or other). Again, Plaintiffs' counsel in *Wallace* provided this information, which Defendants have consistently requested from all Bellwether Plaintiffs. The other Plaintiffs are best positioned to provide this context. The production of numerous undated photographs without hair-status information after depositions are completed is prejudicial because Defendants no longer have the opportunity to question Plaintiffs about those photographs. Defendants should not be required to speculate regarding the timing of a photograph or the condition of a Plaintiff's hair depicted in it.

In addition, there remain 2 depositions for which Plaintiffs will not agree may proceed after the June 10th discovery deadline, despite Defendants' significant efforts to identify and locate the witnesses, and despite the fact that the witnesses are not available prior to the dates later in June that they provided. Defendants did not delay in pursuing these depositions. Rather, the scheduling issue resulted from witness availability and the practical realities of locating and arranging testimony from non-party witnesses. Defendants therefore seek the Court's authorization, over Plaintiffs' objection, to proceed with the depositions described below after the June 10 deadline in the following cases: Jones and Wallace.

Defendants provide a detailed description of the outstanding discovery issues and disputes that remain in each the ten (10) Bellwether cases below. Defendants are willing to continue to confer with Plaintiffs to resolve as many outstanding issues as possible prior to the upcoming Case Management Conference on June 18, 2026.

**Plaintiffs' Position:**

While Plaintiffs do not doubt that Defendants have been working hard to complete discovery by the June 10, 2026 deadline, Defendants' complaints about being unable to address the completeness of deficiency responses prior to the close of discovery is a problem entirely of their own making. Despite the Court's Order selecting the final ten Bellwether Trial Cases being issued on April 2, 2026, Defendants did not issue a single deficiency notice until over a month later on May 4, 2026 (with most of the letters issued May 8, 2026 or later), just prior to last month's submission of the Joint Status Report ("JSR"), and with just a month left until the close of discovery. Plaintiffs diligently worked to cure these alleged deficiencies and comply with the Court's Orders. ***Indeed, despite pages upon pages of complaints in this JSR, the overwhelming majority of the alleged deficiencies have been cured. Yet, even as this has occurred, Defendants' complaints in the JSR have actually grown to even more pages.***

Nevertheless, Plaintiffs further respond to the status of each alleged deficiency below and as noted, they have virtually all been cured- making the pages upon pages of complaints unnecessary and moot.

**Status of Fact Discovery in Individual Bellwether Cases:**

    i. **Bridget Boatwright, Case No. 23-cv-06876**

        **Defendants' Position:**

            a. Damages: On May 29, 2026, Plaintiff identified her damages in an email as: 1) economic damages comprised of "past and future medical bills regarding the diagnosis, treatment, and

7

follow up for the endometrial cancer"; 2) non-economic damages of $190 million (e.g. $10 million x 19 years average remaining life expectancy after diagnosis) and 3) "punitive damages to the maximum extent allowable by law."  On a June 2, 2026 meet and confer, Plaintiff's counsel indicated that the underlying medical bills on which she is relying will be identified or produced by June 8, 2026.  On June 9, 2026, Plaintiff backtracked from her promise to provide more details on the damages and identify the underlying medical bills and, instead, provided a form response that is nearly identical to the responses of the other bellwether plaintiffs reiterating her generic category of damages and failing to identify any of the underlying medical bills.  That same day, Defendants informed Plaintiff that this response is still deficient.  This remains an outstanding issue.

b. <u>Social Media</u>: Plaintiff produced social media on June 10, 2026.  Defendants are reviewing and assessing for completeness and sufficiency.

c. <u>Medical Records Authorizations</u>: On June 11, 2026, after months of requesting and plaintiff's refusal, Plaintiff finally agreed to provide the authorizations to obtain medical records from six (6) outstanding healthcare providers that provided both primary care and gynecological services to Plaintiff.  Defendants have not had the benefit of these records during the fact discovery period which is now closed. Upon receipt of these records, Defendants will need to assess what, if any, follow up is needed.

2. **Status of Fact Depositions:** There are two additional depositions scheduled in this matter: 1) Dr. Ami Shah (Plaintiff's gynecologist) commenced on June 9, 2026 but was postponed due to an emergency requiring Dr. Shah's attention and the parties agreed to reschedule at a mutually agreeable date and time; and 2) Lawanda Bellinger Foster (Plaintiff's friend) confirmed for June 11, 2026.  Plaintiff's counsel has agreed that these depositions may proceed after the June 10, 2026 discovery deadline.

Plaintiff had her hair relaxed almost exclusively at salons. Despite exhaustive efforts, Defendants have been unable to depose any of her alleged stylists as the contact information for two of the stylists (Violetta and Yiselle) cannot be identified and one stylist (Dika) refuses to appear for deposition. Additionally, Defendants have been unable to serve one of Plaintiff's daughters, Dwanna Boatwright. These depositions remain to be taken if this case proceeds to trial,

8

but there is no issue at this time for the Court to address related to depositions.

**Plaintiffs' Position:**

As noted below for Plaintiff Boatwright, all but one of the alleged discovery deficiencies have been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

Damages Information: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

Social Media: Plaintiff produced social media files, including metadata, via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

ii. **Carrie Chattman, Case No. 1:23-cv-10579**

**Defendants' Position:**

1. **Plaintiff's Production Status:**

   Over the past month, Defendants have endeavored to resolve outstanding discovery disputes with Plaintiff's counsel, including multiple meet and confers and email communications to Plaintiff's counsel. Plaintiff's counsel promised to provide a position on discovery in writing by May 22, but ultimately did not do so until Friday June 5, 2026 at nearly 5 pm ET. In the June 5, 2026 letter, Plaintiff's counsel failed to provide any supplemental responses to address the deficiencies identified in Defendant's May 4, 2026 letter and, instead, stated that Plaintiff will supplement her discovery responses should additional responsive documents be located at some unspecified time.

   On June 11 (the date this JSR was due), Plaintiff served amended discovery responses. Based on those amended responses, the only remaining dispute concerns Plaintiffs' alleged damages.

9

**Remaining Disputes:**

a. <u>Damages Information</u>: In their June 5, 2026 response, Plaintiff's counsel argues that Plaintiff's damages claim "and economic losses, if any, may require expert analysis and opinion" and that such reports are not due until late July. Fact discovery closes on June 10, 2026 and Defendants are entitled to any documents or information upon which Plaintiff's experts may rely to support her damages claim. Plaintiff's request to "amend and/or supplement as is appropriate" is an inadequate vague response and all documents and information underlying Plaintiff's damages claim should be promptly produced, consistent with the Court's instructions at the May 21, 2026 case management conference and following Order ("Plaintiffs are to produce medical records and documents in support of damages" (Dkt 1881). In her amended responses served on June 11, Plaintiff states, in substance, that all records produced by Plaintiff or obtained by Defendants through authorizations support her damages claim, without identifying any specific records or medical bills. This is the same position taken by the other bellwether plaintiffs, aside from *Wallace*, who is deceased. Defendants maintain that this response remains deficient because Plaintiff still has not identified the specific documents or information supporting her damages claim.

**3. Status of Fact Depositions:** Defendants scheduled the deposition of Dr. Mohammed Moosa (Plaintiff's primary care physician) for June 24, 2026 and the deposition of Plinnie Thompson (Plaintiff's hair stylist) for June 30, 2026. These witnesses were not available for deposition prior to the June 10, 2026 discovery deadline on a date available to all counsel and Plaintiff's counsel does <u>not</u> object to these depositions occurring after the deadline. There are no current disputes regarding additional depositions to be taken.

**Plaintiffs' Position:**

For Plaintiff Chattman, each of the alleged discovery deficiencies has been cured, including the request regarding damages. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

<u>Damages Information</u>: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot.

Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

### iii. Charlene Annette Fennell, Case No. 23-cv-06154

**Defendants' Position:**

Defendants have worked to resolve any remaining deficiencies with Plaintiff. Defendants did not receive supplemental discovery responses from Plaintiff until the evening of June 8, 2026. One issue remains outstanding regarding Plaintiff's damages claim. Plaintiff supplemented her response to state in part that "Plaintiff maintains all claims for past and future medical expenses as well as economic losses." The only number provided was for out-of-pocket expenses, and Plaintiff otherwise refers Defendants to unidentified medical records. As discussed above, this is an inadequate vague response and all documents and information underlying Plaintiff's damages claim should be promptly produced, consistent with the Court's instructions at the May 21, 2026 case management conference and following Order ("Plaintiffs are to produce medical records and documents in support of damages" (Dkt 1881).

Defendants also raise a topic for the Court's attention, which may require future resolution. Plaintiff previously produced a photograph of a Strength of Nature hair relaxer product packet that was in her possession in February 2024. At her deposition in November 2025, she testified that she still had that product packet in her possession. During a May 2026 meet and confer, Plaintiff's counsel stated that neither counsel nor Plaintiff have the hair relaxer product packet in their possession, as Plaintiff was unable to locate it. This raises concerns for Defendants, who reserve their right to request a briefing schedule and to seek future relief.

In addition, Plaintiff previously produced digital copies of hard copy photographs, some of which were of poor quality. Plaintiff has agreed to provide more clearly scanned copies or permit defendants to inspect the hard copy photographs she previously produced at a date to be determined in the future as they are currently in storage.

**Plaintiffs' Position:**

As noted below for Plaintiff Fennell, each of the alleged discovery deficiencies has been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

11

Damages Information: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

Hair Relaxer Packet: Ms. Fennell provided clear scanned images of the front and back of the Profectiv MegaGrowth Relaxer (Strength of Nature product) packet in April 2023, which were later produced with her Plaintiff Fact Sheet in February 2024. Ms. Fennell is not aware that the packet was destroyed or discarded. During her November 2025 deposition, she was questioned regarding the packet and product use, including application instructions shown in the previously produced packet images. Ms. Fennell moved in summer 2025, during which numerous belongings were placed into storage. The packet has not been located in her current residence, and Ms. Fennell continues to endeavor to locate it.

During the May 21, 2026 meet and confer, Defendants agreed that Plaintiff may provide scanned copies of physical photographs or, alternatively, permit inspection of the physical photographs if the case proceeds to trial. Plaintiff further proposed permitting inspection of the product packet, should she be able to locate it. Ms. Fennell is also willing to produce the metadata associated with the emailed scanned photograph of the packet.

### iv. Gloria Ford, Case No. 23-cv-10740

**Defendants' Position:**

#### 1. Plaintiff's Production Status:

Defendants have been diligent in their efforts to obtain complete, timely discovery with sufficient lead time to review and assess completeness before the June 10, 2026 close of fact discovery. Plaintiff, however, did not begin providing supplemental materials until late last week—and even then, her supplementation remains incomplete.

On June 9 – one day before the close of fact discovery – Plaintiff uploaded social media materials with metadata and responded to Defendants' request for computation of damages via letter correspondence. Defendants are reviewing the late afternoon June 9th production to assess completeness and sufficiency.

#### 2. Remaining Disputes

Contrary to the assertions below, Plaintiff's counsel has not contacted Defendants to withdraw any positions. Nor would such a request even be appropriate given that several issues remain unresolved due to incomplete disclosures.

First, Plaintiff's supplemental response regarding damages discovery is vague and insufficient. Defendants' Request for Production No. 20 asked for a calculation of Plaintiff's claimed damages and the documents supporting each category. In response, Plaintiff's counsel briefly summarizes Mrs. Ford's ovarian cancer diagnosis and treatment and refers generally to medical records that allegedly reflect injuries and treatments from Mrs. Ford's use of hair relaxers, including records that purportedly detail "additional" injuries and damages. This approach shifts to Defendants the burden of sifting through thousands of pages of medical records spanning decades (diagnosis in 2011) to determine what Mrs. Ford attributes to her alleged hair relaxer-related injuries and damages. Thus, a proper computation with category-by-category amounts and supporting documents is still needed.

Second, Defendants deposed Plaintiff's son, Kenneth Ford, Jr., on May 28. He testified that Mrs. Ford created approximately 10 to 15 photo albums from the 1970s to the 1990s that were kept in Plaintiff's basement and that he did not know whether a search of the basement (for those photo albums) had been conducted. Defense counsel requested on the record that Plaintiff search for these photo albums and produce responsive photographs and followed up in writing on May 29, June 4, June 8, and June 10. Defendants did not receive any response acknowledging this request or indicating that a search had been conducted or would be undertaken until June 11. Plaintiff's counsel then represented that certain photographs from the albums were produced via MDL Centrality. Defendants request that Plaintiff promptly identify the state of Mrs. Ford's hair in the photographs produced (i.e., natural, relaxed, or other).

Third, and finally, Plaintiff's June 5th production included 17 photos responsive to RFP No. 14 (pre-relaxed hair) but only two photos designated as responsive to RFP No. 15 (relaxed hair), both dated 1984. The minimal production of photographs depicting Mrs. Ford with relaxed hair is concerning given the claimed usage period. Indeed, Mrs. Ford testified that she used hair relaxers once or twice in the 1980s and then consistently from 1990 to 2022, yet Plaintiff produced no additional photos from that 30-plus-year period beyond reproducing (on June 4) three photographs already in Defendants' possession. Accordingly, on June 8 and June 10, Defendants requested that Mrs. Ford execute an affirmation stating that no

13

additional photos exist from the period she used hair relaxers and that she conducted a good faith search. Defendants also asked Plaintiff's counsel to confirm that the two 1984 photos depict Mrs. Ford with relaxed hair rather than press-and-curl, as Mrs. Ford testified that she only used relaxers once or twice in the 1980s before returning back to primarily using press and curl. Defendants have not received the requested affirmation or confirmation.

**Plaintiffs' Position:**

As noted below for Plaintiff Ford, each of the alleged discovery deficiencies has been cured.  Plaintiff requested that Defendants withdraw their position, but they have refused.  As such, Plaintiff responses succinctly as follows:

Social Media: Plaintiff produced social media filed, including metadata, via MDL Centrality. This alleged deficiency has been cured and therefore moot.

Damages Information: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

Photo Albums: Plaintiff produced photographs contained in the photo albums via MDL Centrality. This alleged deficiency has been cured and therefore moot.

Photographs: As confirmed by Defendants above, Plaintiff produced additional photographs via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

v. **Areecia Denise Jackson, Case No. 23-cv-10379**

**Defendants' Position:**

On May 14, 2026, Plaintiff represented that supplemental responses and responsive documents for RFPs 15, 16, and 30 would be served promptly. On May 20, Plaintiff further represented that the materials would be served by the end of the day.  They were not.

Defendants followed up on May 21 and again on May 26.  Plaintiff responded on May 26, attributing the delay to a failed email and that Plaintiff was out of the country, and stating that she was gathering Instagram metadata in native format in light of the Court's recent order.

14

On May 27, Defendants followed up, noting that Plaintiff could at least send the supplemental responses and verifications already promised, since those would not be affected by the metadata issue. Plaintiff replied the same day, stating again that she intended to send everything at once, without providing a production date. Defendants sent another email on May 28 Plaintiff declined to commit to any deadline.

Plaintiff served her Third Supplemental Responses to Defendants' First Set of Bellwether Requests for Production on June 9, 2026, along with an accompanying production. Defendants are reviewing the supplemental responses and production and will advise if any deficiencies remain.

**Plaintiffs' Position:**

As noted below for Plaintiff Jackson, each of the alleged discovery deficiencies has been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

Photographs: Plaintiff produced additional photographs via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

Social Media: Plaintiff produced social media files, including metadata, responsive to Defendants' requests via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

vi. **Joanne Jones, Case No. 23-cv-07074**

   **Defendants' Position:**

   1. **Plaintiffs' Production Status**:

      The only outstanding issues between the parties are Plaintiff's failure to provide a damages calculation and the scheduling of Plaintiff's primary care physician's deposition. Plaintiff cured the previously identified deficiency concerning the production of additional photographs by providing additional photographs on June 9, 2026. No further relief is sought as to that issue.

   2. **Remaining Disputes**

15

a. <u>Damages</u>: On June 9, 2026, Plaintiff served a second supplemental response and objection to Defendants' First Set of Bellwether Requests for Production of Documents, Request No. 20. However, her response remains deficient. Defendants specifically requested documents supporting each category of damages claimed, as well as a calculation, itemization, or methodology by which Plaintiff's damages are being computed. Rather than providing a breakdown of the damages sought, Plaintiff offered only generalized statements regarding the need for ongoing medical surveillance, future follow-up care, and treatment with healthcare providers. Additionally, Plaintiff's supplemental response broadly incorporates by reference more than 400 pages of deposition testimony and over 6,000 pages of medical records without identifying which records support particular categories of damages or explaining how any claimed damages are calculated. Such a document dump does not provide Defendants with meaningful notice of the specific damages being sought or the basis for those claims.

To date, Plaintiff has not identified the amounts claimed for past medical expenses, future medical expenses, loss of earning capacity, or any other economic damages, nor has Plaintiff provided any methodology for calculating such damages. Instead, Plaintiff's supplemental response indicates that she intends to rely upon a future expert report that is not due to be served until July 30, 2026. Plaintiff's obligation to disclose the factual basis and computation of damages currently known, however, is not relieved by the anticipated service of a future expert report. Accordingly, while Plaintiff has supplemented her response, she has not provided the itemized damages calculation or supporting analysis requested by Defendants, and Defendants remain without a clear understanding of the nature and extent of the damages Plaintiff intends to pursue at trial.

b. <u>Additional Fact Witness Deposition:</u> Defendants requested the deposition of Plaintiff's primary care physician, Dr. Susan Besser. Defendants acted diligently in attempting to secure her testimony. Dr. Besser was employed by Mercy Hospital and, like most of Plaintiff's treating providers in this matter, is represented by hospital counsel. Accordingly, Defendants were required to coordinate scheduling through counsel rather than directly with the witness. On June 1, 2026, hospital counsel advised Defendants for the first time that Dr. Besser had retired from Mercy Hospital and was no

16

longer practicing on the hospital premises. Hospital counsel nevertheless graciously agreed to continue representing Dr. Besser for purposes of her deposition and only recently provided her available dates (June 19th and June 21st). At that time, Defendants learned that Dr. Besser's availability is limited to evenings and weekends, a scheduling restriction that was not previously been disclosed. Defendants seek Dr. Besser's testimony because, as Plaintiff's primary care physician, she possesses information relevant to Plaintiff's medical history, treatment, and claimed injuries. Moreover, given Dr. Besser's retirement, obtaining her testimony through the assistance and cooperation of hospital counsel is significantly more efficient and reliable than attempting to locate and subpoena a retired physician without counsel's involvement. Hospital counsel's representation of Plaintiff's treating providers has greatly facilitated the deposition process by assisting with scheduling, coordinating appearances, and ensuring the production of relevant materials. Without such cooperation, Defendants would face substantially greater difficulty locating retired providers and securing compliance with duly issued subpoenas.

**Plaintiffs' Position:**

As noted below for Plaintiff Jones, all but one of alleged discovery deficiencies has been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

Damages Information: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

Deposition of Dr. Susan Besser: Plaintiff does not agree to extend the discovery period to complete this deposition. Defendants first subpoenaed Dr. Susan Besser on April 28, 2026 with a placeholder date of May 8, 2026. On June 2, 2026, only eight days before the close of discovery, Defendants advised Plaintiffs that Dr. Besser was only available the weeks of June 15 and June 22. This was the first time Plaintiff had ever been provided with a proposed date for Dr. Besser's deposition.[2] Furthermore, the Court has already established a procedure to address previously non-deposed fact

---

[2] Further, Dr. Besser's identity and role should have been known by Defendants long ago through medical records produced. Defendants had ample opportunity to notice and complete Dr. Besser's deposition within the deadlines established by the Court and elected not to do so. Plaintiffs therefore oppose extending fact discovery for this purpose.

witnesses who later become trial witnesses. Pursuant to CMO 23, if a party identifies a fact witness on a trial witness list who was not previously deposed during fact discovery, the opposing party may depose that witness before trial. Finally, defense counsel recognized and acknowledged at the May CMC that "if some refuse or we can't find them or we can't get them done, then we can't get them done." (*see* Dkt. 1888, May 29, 2026 CMC Tr. 71:5-7). Accordingly, should Dr. Besser ultimately be identified on a trial witness list, Defendants will have an opportunity to depose her pursuant to the procedures set forth in CMO 23.

### vii. <u>Sara Robinson, Case No. 23-cv-10698</u>

**Defendants' Position:**

1. **Plaintiffs' Production Status**:

   Defendants served a deficiency letter on May 8, 2026, addressing six Requests for Production seeking damages documents, photographs, social media, and written communications. (RFP Nos. 14, 15, 16, 20, 30, and 32.) Plaintiff's counsel acknowledged receipt the same day and requested an extension to May 15.

   During a May 18 meet and confer, Plaintiff's counsel was not prepared to share their position on any of the outstanding Requests for Production and committed only to providing a written response by May 22, 2026. Plaintiff did not respond by that date.

   Defendants followed up on May 27, noting that no substantive response, supplemental discovery responses, or responsive documents had been provided since the meet and confer, and requesting compliance by May 28.

   On June 4, 2026, Plaintiff's counsel responded by letter. Plaintiff served her Second Amended Responses to Defendants' First Set of Bellwether Requests for Production on June 10, 2026, along with an accompanying production. Defendants are reviewing the supplemental responses and production and will advise if any deficiencies remain.

2. **Status of Fact Depositions**

   Plaintiff has represented that Sara Robinson was recently added to the Bellwether pool. Defendants have continued efforts to complete the related deposition discovery. Karen Crider was subpoenaed on

May 20, 2026. Dr. Ravi S. John was subpoenaed on May 19, 2026. Defendants are working to coordinate and confirm deposition dates for both witnesses. Dr. Danita Cole, identified as a potential deponent in prior Joint Status Reports, was subpoenaed on May 27, 2026, with a deposition noticed for June 16, 2026, in St. Louis, Missouri. Plaintiff's counsel objected on June 5, 2026, on timeliness and format grounds. Defendants disagree and are prepared to meet and confer. Kennedy Robinson and Brianna Robinson were deposed on May 28 and June 4, 2026, respectively.

**Plaintiffs' Position:**

As the Court is aware, Ms. Robinson was a replacement case following Defendants' first attempt to reconstitute the pool. For Plaintiff Robinson, each of the alleged discovery deficiencies has been cured.

### viii. Karla Smith, Case No. 23-cv-10645

**Defendants' Position:**

#### 1. Plaintiff's Production Status

The only remaining dispute is Plaintiff's refusal to provide authorizations for Centers for Medicare and Medicaid Services, Humana Law Department and Social Security Administration Detailed Earnings. Since May, Defendants have been trying to obtain three validly signed authorizations prior to the June 10 deadline. Defendants have requested an update on these authorizations on June 1, June 4, June 5, and June 9, but have not received a response from Plaintiff's counsel. As of June 11, 2026, these authorizations have not been provided.

Defendants have been diligent in trying to obtain complete discovery with time to review prior to the June 10, 2026 deadline. Defendants sent a deficiency letter to Plaintiff's counsel on May 8, 2026. During the parties' May 15, 2026 meet and confer to discuss the letter, Plaintiff's counsel indicated that they would respond to Defendants within a week. Plaintiff did not respond until Friday, June 5, 2026 at 4:54 pm. The June 5 letter provided no substantive responses. It merely stated that Plaintiff will supplement if additional responses are located, without identifying when or whether supplementation will occur. . On June 11, 2026, the day after the discovery deadline, Plaintiff produced two declarations that

stated, after a reasonable investigation, Plaintiff did not have any more responsive photographs, social media or metadata.

### 2. Remaining Disputes

Contrary to the assertions below, Plaintiff's counsel has not contacted Defendants to withdraw any positions. Nor would such a request even be appropriate given that several issues remain unresolved due to incomplete disclosures.

a. <u>Damages</u>: In the June 5, 2026 letter, Plaintiff's counsel argues that Defendants are not entitled to "assume or demand confirmation that Plaintiff's damages are limited solely to past medical expenses." Defendants have never "assumed" or "demanded" confirmation that Plaintiff's damages were solely limited to past medical expenses. In fact, in Defendants' May 8th letter, we requested that the computation include damages that the Plaintiff plans to seek for future medical costs. Plaintiff's counsel further argues that the computation of damages is "inappropriate" because expert reports are not due until late July. Fact discovery closes on June 10, 2026 and Defendants are entitled to any documents or information upon which Plaintiff's experts may rely to support her damages claim. Plaintiff's vague intent to supplement at some unspecified time is adequate. Defendants request that Plaintiff serves a complete damages computation and produce all supporting documents. Although Plaintiff's counsel asserts that this issue is moot, we have not received a response to Defendants' June 8, 2026 letter that outlined the remaining deficiencies to this request.

b. <u>Hair Relaxer Receipts, Credit Card Statements and Packaging</u>: Plaintiff testified that she still presently uses hair relaxers and that, prior to her deposition, the last time she used hair relaxers was 3-4 months prior to the deposition date. We requested receipts, credit card statements and packaging related to hair relaxer in Defendants' May 8, 2026 letter. In the June 5 response, Plaintiff's counsel indicated that the Plaintiff does not have any responsive receipts, packaging, inserts or instructions of the hair relaxer products and that she will "continue to conduct a reasonable search" for the credit card statements. On June 11, 2026, three photographs of products and screenshots of Plaintiff's Cash App statements from November 2023 – December 2025 that showed Plaintiff's purchases at beauty supply stores were uploaded to MDLC, as well as three photographs of product

packaging. Assuming these purchases at the beauty supply stores were hair relaxer products, and given that these documents constitute prior responsive discovery that should have been preserved, Plaintiff's response is wholly inadequate. If Plaintiff did not preserve all documentation related to hair relaxer products at issue in this litigation since the date she filed, Defendants are entitled know the date, manner and circumstances of their disposition, and whether they have been lost, discarded, or destroyed. This information is necessary for Defendants to evaluate Plaintiff's compliance with her preservation obligations and to determine whether appropriate relief will be sought from the Court.

c. <u>Authorizations</u>: Defendants became aware of three authorizations that were requested, but have not been signed by Plaintiff. After multiple follow-ups by Defendants and MRC, the records collection vendor, these authorizations remain unsigned. Defendants request that Plaintiff promptly produces validly signed authorizations for the following providers: Centers for Medicare and Medicaid Services, Humana Law Department and Social Security Administration Detailed Earnings. Although Plaintiff's counsel asserts that the authorizations were uploaded to MDLC, they remain outstanding as of June 11, 2026.

**Plaintiffs' Position:**

As noted below for Plaintiff Smith, each of the alleged discovery deficiencies has been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

<u>Damages Information</u>: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

<u>Hair Relaxer Receipts, Credit Card Statements and Packaging:</u> Plaintiff produced responsive documents via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

Authorizations: Plaintiff has provided the requested authorizations via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

ix. **Roxanne Wade, Case No. 23-cv-07360**

**Defendants' Position:**

1. **Plaintiff's Production Status:**

   Plaintiff has indicated they need time to work with their experts in order to produce documents supporting her claim for punitive damages. Defendants have asked for those documents to be produced as soon as possible. In addition, Defendants recently discovered responsive images on Plaintiff's social media that were not previously produced, and have requested their production in a format that preserves metadata.

2. **Remaining Disputes:**

   Defendants still await Plaintiff's production of the additional responsive images on social media in a format that preserves metadata. At this time, Plaintiff's counsel has challenged the timeliness of Defendants' request and the relevance of the images. (They had previously responded to RFP 30 stating that they had no responsive social media documents.) Defendants are seeking the basis for their suggestion that we had a deadline to discover and notify them of an incorrect discovery response. Their response is also in violation of ECF 1881 in which the Court ordered: "(a) Defendants' request for production of photographs for time periods before plaintiffs began using hair relaxer products is denied. Plaintiffs must produce other requested photographs that are available to them upon a reasonable search, including requesting photographs from close family members. (b) Plaintiffs are to produce relevant social media in a format that preserves metadata. PDF productions are not acceptable." Defendants are asking for all additional images depicting Plaintiff's hairstyle, beginning with her use of hair relaxer products, to be produced in a timely manner in a format that preserves metadata.

   On Tuesday, June 9th, Plaintiff produced a supplemental set of RFP responses that referenced, for the first time, claims for medical expenses, other economic losses, and psychiatric damages. These statements were inconsistent with Plaintiff's prior statements in her PFS, interrogatories, RFPs, and deposition testimony, in which she

22

affirmatively and consistently denied that she was seeking such damages. Plaintiff's statements below that they had asserted these claims for damages from the beginning are easily proven false with a simple review of the documents. Plaintiff's counsel later contacted Defendants on June 9th to notify us that these revisions were made in error, and that they would revise the responses once again to remove the claims. On the morning of June 11, however, the day after the close of fact discovery, Plaintiff's counsel reversed their position again and now maintains that they are asserting such new claims for damages. Defendants believe they should only be allowed to add such claims, at this late date, with leave of court.

**Plaintiff's Position:**

As noted below for Plaintiff Wade, each of the alleged discovery deficiencies has been cured or the parties have agreed upon an extension to cure. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responds succinctly as follows:

Damages Information: Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs. Defendants' characterization of Plaintiff's damages claims is wholly inaccurate. Defendants have known from the beginning that Plaintiff received medical treatment related to her cancer diagnosis – it would be absurd to suggest otherwise. Plaintiff made claims related to said medical expenses from the start and has provided numerous authorizations and sizable record productions related to same. On June 8th, Plaintiff mistakenly included language in her supplemental discovery responses indicating claims for lost wages. Given the mistake, Plaintiff immediately agreed to remove same. All other claims related to Plaintiff's damages were made from the beginning and Defendants' argument to the contrary is entirely without merit.

Social Media and Photographs: Plaintiff disagrees with Defendants' characterization of this issue. Plaintiff previously produced representative and responsive photographs to defendants and Plaintiff was questioned about those photographs at her deposition. Plaintiff also disclosed social media account information with her discovery responses. Following correspondence from Defendants, first received on May 28th, the parties met and conferred and, while Plaintiff disagrees with Defendants' position regarding scope, the parties agreed to a reasonable extension of time during which Plaintiff will conduct a further reasonable search. Plaintiff agreed to produce any additional responsive and relevant images and accompanying metadata from Plaintiff's social media accounts, if any. Therefore, this issue is currently moot.

23

x.  **Janette Wallace, Case No. 23-cv-10632**

**Defendants' Position:**

1.  **Plaintiff's Production Status**:

    On May 7, 2026, Defendants served a deficiency letter identifying material deficiencies in Plaintiff's discovery responses, including Plaintiff's failure to provide a damages computation as required by Fed. R. Civ. P. 26(a)(1)(A)(iii) and the Court's order from the May status conference, insufficient photograph production in response to Requests for Production Nos. 14-16, and failure to address whether Plaintiff possesses receipts for the hair relaxer products at issue. Plaintiff responded on May 29, 2026, but failed to cure the identified deficiencies. Although Plaintiff produced medical billing records totaling approximately $1.8 million and a photograph summary table, she also disclosed that one photograph had been "inadvertently omitted" - raising concerns about the completeness of Plaintiff's document collection. Defendants sent a follow-up letter on June 5, 2026, detailing continuing deficiencies. On June 9, 2026, Plaintiff responded but again failed to cure the deficiencies. Plaintiff's responses remain deficient.

2.  **Remaining Disputes:**

    a.  Damages Calculations: Plaintiff failed to provide an itemized damages computation by category or methodology as required by Rule 26(a)(1)(A)(iii), instead producing only raw billing records and improperly shifting the burden to Defendants. Although Plaintiff asserts this deficiency is "cured," deferring damages computations to expert reports due July 30, 2026, does not satisfy Plaintiff's obligation to provide a computation of damages as part of her initial disclosures.

    b.  Photographs: While Plaintiff produced one additional photograph after admitting it was "inadvertently omitted," Plaintiff's deposition testimony indicated additional photographs may exist, and Plaintiff now acknowledges she cannot provide more precise photograph dates – raising ongoing concerns about completeness of Plaintiff's production.

    c.  Deposition of Dr. Dimitry Lerner: Defendants' timely subpoenaed Dr. Dimitry Lerner on May 6, 2026, scheduling

24

his deposition for June 4, 2026. Due to Dr. Lerner's unavailability – a scheduling conflict identified by the witness, not Defendants – Defendants promptly requested to reschedule to June 16, 2026, when Dr. Lerner is available. Plaintiff's counsel has unreasonably refused to agree to this brief extension despite that the need to reschedule arose solely from the witness's unavailability – not from a lack of diligence by Defendants. Plaintiff's reliance on CMO 23's trial witness procedure is misplaced; that procedure was designed to address witnesses who were not previously subpoenaed during discovery, not witnesses who were timely subpoenaed but became unavailable through no fault of the noticing party. Defendants should not be penalized for a witness's scheduling conflict that arose one day before a properly noticed deposition. Plaintiff's citation to the May CMC transcript is inapposite, as that colloquy addressed witnesses who could not be located or who refused to appear - not witnesses who were served, are willing to appear, and are available on a specific date less than one week after the deadline.

Separately, despite successfully serving Dr. Lauren Chan on May 28, 2026, and Dr. Isbel Lazo on May 19, 2026, and despite multiple attempts to serve Dr. Singh at three separate locations, Defendants have been unable to schedule depositions for these witnesses by the June 10, 2026, deadline, and have kept Plaintiff's counsel apprised of these efforts.

**Plaintiffs' Position:**

As noted below for Plaintiff Wallace, all but one of the alleged discovery deficiencies has been cured. Plaintiff requested that Defendants withdraw their position, but they have refused. As such, Plaintiff responses succinctly as follows:

Damages Information:
Plaintiff responded via MDL Centrality and email to Defendants. This alleged deficiency has been cured and therefore moot. Unfortunately, Defendants now take issue with the damages data and evidence submitted and asserted by Plaintiffs.

Photographs: Plaintiff produced an additional photograph via MDL Centrality. This alleged deficiency has been cured and is therefore moot.

Deposition of Dr. Dimitry Lerner: Plaintiff does not agree to extend the discovery period to complete this deposition.[3] Defendants first subpoenaed Dr. Dimitry Lerner on May 6, 2026 with a placeholder date of June 4, 2026. On June 3, 2026, the day before the scheduled deposition, Defendants advised Plaintiffs that Dr. Lerner had a scheduling conflict and requested that the deposition be conducted after the June 10, 2026 fact discovery deadline. Defendants have had ample opportunity to notice and complete Dr. Lerner's deposition within the deadlines established by the Court and elected not to do so. Plaintiffs therefore oppose extending fact discovery for this purpose. Furthermore, the Court has already established a procedure to address previously non-deposed fact witnesses who later become trial witnesses. Pursuant to CMO 23, if a party identifies a fact witness on a trial witness list who was not previously deposed during fact discovery, the opposing party may depose that witness before trial. Finally, defense counsel recognized and acknowledged at the May CMC that "if some refuse or we can't find them or we can't get them done, then we can't get them done." (*see* Dkt. 1888, May 29, 2026 CMC Tr. 71:5-7). Accordingly, should Dr. Lerner ultimately be identified on a trial witness list, Defendants will have an opportunity to depose her pursuant to the procedures set forth in CMO 23.

c. Discovery served by Bellwether Plaintiffs

Bellwether Plaintiffs served a second set of interrogatories on each Defendant related to Defendants' Affirmative Defenses. Following argument at the May 21, 2026 Case Management Conference and the Court's Minute Entry, "the deadline for Defendants to respond to Plaintiffs' second set of interrogatories [was] extended to June 30, 2026. Defendants must provide substantive answers, not just objections." (*see* Dkt. 1881).

II. ***RNA Discovery Schedule***

**Plaintiffs' Position:**

Plaintiffs propose the following discovery schedule:

- September 1, 2026: Substantial Completion of Document Production
- November 1, 2026: Close of General Discovery

Plaintiffs received RNA's JSR draft and maintain that it is appropriate and necessary to set a discovery schedule at this stage. Several defendants have asserted the

---

[3] Plaintiff has also been notified of Defendants' intent to depose Dr. Lauren Chan, Dr. Isabel Lazo and Dr. Singh, but have not been provided any proposed dates for these depositions. Plaintiff also objects to extending the discovery period to complete these depositions for the same reasons discussed below.

affirmative defense of Failure to Name a Necessary Party. The Court has required substantive responses to interrogatories on that defense by June 30, after the close of case-specific fact discovery. At that time, Plaintiffs anticipate that certain defendants may assert that RNA is a necessary party in specific bellwether cases. Plaintiffs will require discovery into RNA to evaluate that defense and frame the relevant legal and factual issues. A schedule is necessary to ensure that the parties can meet the deadlines governing the currently scheduled bellwether cases.

RNA's own representations support the feasibility of Plaintiffs' proposed schedule. RNA estimates that model training and validation will require up to 60 to 90 days following its June 26 seed set production, placing EAIDA validation no earlier than late September 2026, leaving approximately five weeks before Plaintiffs' proposed November 1 close of discovery. RNA has provided no hit volume estimate, no linear review projection, and no basis for concluding that five weeks is insufficient. At the June 10 meet and confer, RNA counsel further confirmed that the approximately one million documents falling outside the EAIDA Protocol, including non-text files, would be easy to review manually, and raised no issues suggesting that workstream would be infeasible within Plaintiffs' proposed schedule.

RNA's compliance with interim deadlines does not resolve the question before the Court. The issue is not past performance but whether, absent a firm schedule, discovery will be completed in time to serve the bellwether cases. RNA has not addressed that question.

RNA's proposal to defer scheduling until after validation is open-ended deferral, not a counterproposal. RNA has identified no concrete obstacle to Plaintiffs' proposed dates and has not demonstrated that the schedule is infeasible, only that some uncertainty remains. The existence of uncertainty is not a basis for indefinite deferral.

**RNA's Position:**

Deadlines for substantial completion of document production and close of general discovery are neither necessary nor feasible at this time. Since the discovery stay as to RNA was lifted on March 5, 2026, RNA has consistently met every interim deadline and will continue to do so. Imposing an arbitrary end date is unnecessary; the Court should continue setting agreed interim deadlines to ensure progress continues.

Plaintiffs frame the issue as "whether, absent a firm schedule, discovery will be completed in time to serve the bellwether cases." But ***RNA is not a defendant in any bellwether case.*** RNA is a second wave defendant. Plaintiffs could have named RNA in time to be a first wave defendant or dismissed RNA from individual cases in early 2024 and pursued it as a subpoena recipient, but Plaintiffs did neither.[4] Instead, Plaintiffs have pursued extraordinarily broad discovery against RNA—the kind that took first wave defendants ***three years*** to complete. The answer is simple: unless

---

[4] In fact, the PLC issued a subpoena for records to RNA on March 14, 2024, which they later withdrew when they chose to pursue RNA as a second wave defendant.

27

Plaintiffs substantially reduce their discovery demands, RNA cannot meet a schedule tied to the first wave bellwethers. The Court has recognized as much, which is why Judge Rowland made clear prior to bellwether selection that second wave defendants would not be included in the first wave bellwethers. Plaintiffs' speculation that "certain defendants *may* assert that RNA is a necessary party" does not alter ***RNA's*** posture as a second wave defendant or the enormous discovery burden it still faces.

Plaintiffs' proposed deadlines are unattainable given the volume of material that Plaintiffs demanded RNA collect (including millions of electronic files, over 250,000 paper batch records, and additional data still being collected) and the multi-step process required by the court-ordered EAIDA Protocol (Dkt. 1811). Any production deadline would be complete guesswork until RNA is further along in that process, as each step depends on the success of the prior one.[5] Below is an explanation of the steps required under the EAIDA Protocol and the numerous variables affecting RNA's production timeline of that document set alone. In addition to those documents, RNA is also reviewing batch records, paper documents, and approximately 1 million electronic documents unsuitable for the EAIDA model.[6]

RNA completed the first step of the EAIDA process by producing responsive documents from the LLM-Coded Set by May 22, 2026. RNA has agreed that it will complete the next step of the EAIDA process and produce responsive documents from the Seed Set by June 26, 2026. Once that has been completed, the example documents will be ingested into the EAIDA model and then RNA will need to evaluate the initial results and conduct further training through additional document review. Until RNA has those initial results, it has no way of knowing for sure how long the training process will take, but it estimates it could be up to 60-90 days after the Seed Set production before the model is fully trained and ready for validation. The parties will need to meet and confer regarding the scope of the training documents and, if the parties reach a resolution on that meet and confer, RNA will then need to conduct the validation process; if no resolution is reached, the parties will need to submit any remaining disputes to Special Master Grossman. Even after successful validation, the EAIDA Protocol requires RNA to run search terms through the unproduced documents and linearly review all hits to determine if there are additional responsive documents to be produced. The scope of this additional review remains entirely unknown until RNA reaches this step of the EAIDA Protocol. Plaintiffs criticize RNA for providing "no hit volume estimate, no linear review projection, and no basis for concluding that five weeks is insufficient," but that is precisely the point: RNA ***cannot*** provide such estimates until validation is complete and the universe of unproduced documents is determined. Five weeks may be sufficient or may be only a fraction of the time required

---

[5] Plaintiffs' position even acknowledges that EAIDA validation will likely occur "***no earlier than*** late September 2026," making Plaintiffs' proposed deadline for substantial completion of document production by September 1, 2026 impossible.

[6] RNA's counsel stated that review of this document population is straightforward and in progress, but Plaintiffs misconstrue that as implying that linear review of over one million documents can be completed in a matter of weeks while RNA simultaneously completes its other discovery obligations. This review will take several months, as RNA is concurrently working through the EAIDA process, paper documents, and supplementing its responses to Plaintiffs' second set of interrogatories with requested ESI information.

to complete all steps required by the EAIDA Protocol. RNA has no way of estimating either outcome at this time.

## III. *Case Management*

### A. Duplicately Filed Cases

Defendants request that the Court order the Plaintiffs identified in the table below to dismiss one of their duplicately filed cases with prejudice by July 2, 2026.

On May 19, 2026, Defendants identified to Plaintiffs' Leadership Counsel a total of nine plaintiffs with active cases and/or MDLC profiles who appeared to have duplicately filed cases and/or be "dual represented" by different counsel. Defendants requested that counsel for these Duplicate Plaintiffs work together to resolve the duplication by dismissing with prejudice—per the Court's guidance [ECF 649]—the duplicately filed action and/or deactivating profiles in MDLC, as needed (for example, where one is unfiled and one is filed). As of June 10, 2026, there remain three of these duplicately filed Plaintiffs with active cases pending in this MDL.

The existence of duplicately filed claims in an MDL presents a host of difficulties, including the potential for confusion among Plaintiffs and their counsel and wasted party and Court resources. In accordance with the Court's prior orders in similar instances (*see*, *e.g*., 1:24-cv-12347, ECF 5, ordering duplicately filed plaintiff to dismiss one of her pending cases with prejudice by a date certain following a Case Management Conference), Defendants request that the Court order the following three duplicately filed Plaintiffs to dismiss one of their pending cases with prejudice by July 2, 2026.

| Dup-licate Sets | Plaintiff First Name | Plaintiff Middle Name | Plaintiff Last Name | Law Firm Name | MDLC Pltf ID | Case No. | Case Filing Date |
|---|---|---|---|---|---|---|---|
| 1 | ALICIA | ANDREA | JOHNSON | ASK LLP | 1191 | 1:23-cv-04196 | 06/29/2023 |
| 1 | ALICIA | A | JOHNSON | Napoli Shkolnik | 18807 | 1:26-cv-03962 | 04/09/2026 |
| 2 | DEBORAH | N | COMMANDER | Forester Haynie PLLC | 14628 | 1:24-cv-12109 | 11/25/2024 |
| 2 | DEBORAH | ANN | COMMANDER | Simmons Hanly Conroy | 18970 | 1:26-cv-04569 | 04/22/2026 |
| 3 | SASHAH | RAI | CATANTII | Environmental Litigation Group PC | 1426 | 1:23-cv-12631 | 09/14/2023 |
| 3 | SASHAH | R | AL CATANTII | Anapol Weiss | 18661 | 1:26-cv-02926 | 03/16/2026 |

### B. Short Form Complaint Service Delinquencies

29

Several Plaintiffs have failed to effectuate timely service of their Short Form Complaints ("SFCs") despite notice and opportunity to do so.  In accordance with the Court's prior orders in similar instances (*see*, *e.g.*, ECF 1525, ordering Plaintiffs with SFC service delinquencies to cure the delinquency by a date certain following the November Case Management Conference), Defendants request that the Court order the plaintiffs identified in the table below to serve their Short Form Complaints by June 25, 2026, or their cases should be dismissed.

On February 26, 2026, Defendants sent by email to counsel of record for 23 Plaintiffs notice of failure to timely serve their SFCs. Each of these Plaintiffs filed their SFCs by no later than November 26, 2025, and service of their SFCs were due no later than February 24, 2026. Fed. R. Civ. Pro. 4 (service of a complaint is due within ninety (90) days of filing). On March 26, 2026, Defendants sent by a separate email to counsel of record for 13 Plaintiffs notice of failure to timely serve SFCs. Each of these Plaintiffs filed their SFCs by no later than December 19, 2025, and service of their SFCs were due no later than March 19, 2026. *Id.*

CMO 8 provides that "a Defendant may not move to dismiss a complaint for failure to effectuate service unless and until that Defendant provides sixty (60) days written notice to plaintiff and provides an opportunity to effectuate service." CMO 8 (Dkt. 249), Sec. IV.E. For Plaintiffs receiving Defendants' February 2026 written notice of failure to timely serve their SFC, the 60-day window closed no later than April 27, 2026. For Plaintiffs receiving Defendants' March 2026 written notice of failure to timely serve their SFC, the 60-day window closed no later than May 25, 2026. On June 6, 2026, Defendants reminded these Plaintiffs of their delinquent SFC service and indicated they would raise the delinquencies as an agenda item in this JSR as to those Plaintiffs who remained delinquent.

As of June 10, 2026, there remain 13 Plaintiffs who still have not served their SFCs. Defendants request that the Court order these Plaintiffs to serve their Short Form Complaint by June 25, 2026, or their cases should be dismissed with prejudice, in accordance with this Court's prior orders (*See., e.g.*, ECF 1814).

| MDLC Pltf ID | Current Cause # | Case Name | Plaintiff Firm Filing SFC | Case Filed Date |
|---|---|---|---|---|
| | 1:25-cv-13362 | Oliver, Adrienne | Motley Rice, LLC | 10/31/2025 |
| | 1:25-cv-13367 | Dailey, Jackie | Motley Rice, LLC | 10/31/2025 |
| 17657 | 1:25-cv-13896 | Wilson, Connie Marie | Jackson APC | 11/12/2025 |
| | 1:25-cv-14023 | Holland, Edris | Wallace Miller | 11/14/2025 |
| 17660 | 1:25-cv-14209 | Rhinehart, Wendy | Jackson APC | 11/20/2025 |
| 17674 | 1:25-cv-14434 | Carmickel, Evelyn Harris | Jackson APC | 11/25/2025 |
| 17662 | 1:25-cv-14436 | Enrico, Debbie | Jackson APC | 11/25/2025 |
| | 1:25-cv-14439 | Olds, Laurie | Jackson APC | 11/25/2025 |
| 17663 | 1:25-cv-14441 | Stephens, Jessica | Jackson APC | 11/25/2025 |
| 17675 | 1:25-cv-14442 | Medina, Julian | Jackson APC | 11/25/2025 |
| | 1:25-cv-14522 | Mack, Miranda | Motley Rice, LLC | 11/27/2025 |
| | 1:25-cv-15445 | Golding, Thelma | Peiffer Wolf Carr Kane Conway & Wise, LLP | 12/19/2025 |
| | 1:25-cv-15461 | Caesar, Sharon | Wallace Miller | 12/19/2025 |

30

**C.** Noncompliance with Amended CMO 10

Defendants have identified several Plaintiffs who are not in compliance with Amended CMO 10 in that they have provided SSNs that include "placeholder" numbers in lieu of correct SSNs (*e.g.*, using "111-11" as placeholders in lieu of the first five digits: 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). In accordance with the Court's prior orders for similarly situated plaintiffs (*see, e.g.,* 1:25-cv-02906, ECF 13, ordering plaintiff to comply with Amended CMO 10 by a date certain following the May 2025 Case Management Conference), Defendants request that the Court order the plaintiffs identified in the table below to submit correct and complete SSNs in compliance with Amended CMO 10 by July 9, 2026.

Compliance with Amended CMO 10 was first addressed with the Court after Defendants filed the Motion for an Order to Show Cause for Why Plaintiffs Should Not Be Sanctioned for Violation this Court's November 8, 2024 and January 10, 2025 Orders against plaintiffs who were missing information required by Amended CMO 10 (name, date of birth, social security number, and address), which included plaintiffs with partial SSNs. [ECF 1135.] The Court ordered each plaintiff on the list to show cause for their noncompliance with Amended CMO 10. [ECF 1138.] At the hearing held on March 26, 2025, the Court instructed plaintiffs' counsel: "I would say the first day that you meet with the plaintiff, you should get all this information from them, including a Social . . . so I don't anticipate [a status hearing on CMO 10 requirements] happening again, but when the case started, we didn't have this requirement. And so I understand a lot of lawyers signed up a lot of clients without Social Security numbers [before CMO 10 was entered]." March 26, 2025 Order to Show Cause Trans. 83:15-85:6.

Since the March 26, 2025, hearing, Defendants have alerted Plaintiffs' counsel several times about plaintiffs who are registered in MDLC with incomplete SSNs that use "placeholder" numbers in lieu of providing complete SSNs. Most recently, Defendants alerted Plaintiffs' Leadership on May 19, 2026, about certain plaintiffs missing CMO 10 information or using "placeholder" numbers in their SSNs in violation of Amended CMO 10. According to MDL Centrality report No. 1237, dated June 10, 2026, the following Plaintiffs remain non-compliant with Amended CMO 10.

| Plaintiff First Name | Plaintiff Middle Name | Plaintiff Last Name | Law Firm Name | MDLC Pltf ID | Pacer Case # |
|---|---|---|---|---|---|
| MARGARET | ROBERTS | JACK | The Murray Law Firm | 6051 | 1:23-cv-14522 |
| JEANNIE | L | QUINTON | Forester Haynie PLLC | 14588 | 1:24-cv-12161 |
| LUCINDA | LEE | BAILEY | Forester Haynie PLLC | 14592 | 1:24-cv-11988 |
| SARAH | LORETTA | BOWMAN | Forester Haynie PLLC | 14601 | 1:24-cv-11999 |
| ALISA | L | DAVISON | Forester Haynie PLLC | 14605 | 1:24-cv-12004 |
| CRYSTAL | MONIQUE | GOSS | Forester Haynie PLLC | 14611 | 1:24-cv-12082 |
| ANITA | NA | LEONARD | Forester Haynie PLLC | 14631 | 1:24-cv-12025 |
| ERNESTINE | NA | WHITLEY | Forester Haynie PLLC | 14636 | 1:24-cv-12075 |
| CHANDRA | C | ZEIGLER | DiCello Levitt LLP | 17900 | 1:25-cv-14248 |
| LANA | NMI | AKINOLA | DiCello Levitt LLP | 17907 | 1:25-cv-14287 |
| SHIRLEY | NMI | THOMAS | DiCello Levitt LLP | 17928 | 1:25-cv-15774 |
| MARY | HELEN | JACKSON | Chaffin Luhana LLP | 17933 | 1:25-cv-14285 |
| JESSICA | MARIA | MASON | DiCello Levitt LLP | 18746 | 1:26-cv-03570 |

| Plaintiff First Name | Plaintiff Middle Name | Plaintiff Last Name | Law Firm Name | MDLC Pltf ID | Pacer Case # |
|---|---|---|---|---|---|
| TERRI | NA | WASHINGTON | Nigh Goldenberg Raso & Vaughn | 18981 | 1:26-cv-04981 |
| ROSELITA | T | THOMAS | Nigh Goldenberg Raso & Vaughn | 18997 | 1:26-cv-05081 |
| RHONDA | LYNN | LUSTER | Nigh Goldenberg Raso & Vaughn | 18998 | 1:26-cv-05085 |
| KIMBERLY | DENISE | SHAW | The Shaw Legal Group, LLC | 18932 | 1:25-cv-12755 |
| JEANIE | FAYE | SHAW | The Shaw Legal Group, LLC | 18934 | 1:25-cv-12756 |

IV.     ***Class Action Update***

In accordance with the Court's March 5, 2026 Minute Entry, Plaintiffs filed their Motion for Class Certification on March 26, 2026 (Dkts. 1767-70).  On May 6, 2026, this Court modified the class certification briefing schedule (Dkt. 1834.). Under the revised schedule, Defendants filed their oppositions to Plaintiffs' motion for class certification (Dkts. 1894 and 1901) and supporting expert reports on June 2, 2026 (Dkt. 1899). Plaintiffs' replies in support of their motion and any rebuttal expert reports are due to be filed by August 3, 2026.

V.     ***Status of Pending Briefs/Motions/Orders***

a.  Rule 702 Motions – General Causation:

In accordance with the Court's April 1, 2026 Minute Entry (*see* Dkt. 1778), the PSC filed its Oppositions on June 2, 2026 (*see* Dkts. 1896-1897) and Defendants filed their Opposition on June 2, 2026 (*see* Dkt. 1898). Reply briefs in support of the Parties' respective motions are due on June 16, 2026.

Dated: **June 11, 2026**

**FOR PLAINTIFFS:**
Respectfully Submitted,

*/s/ Edward A. Wallace*
Edward A. Wallace
**WALLACE MILLER**
200 W. Madison Street, Suite 3400
Chicago, Illinois 60606

**FOR DEFENDANTS:**
Respectfully Submitted,

*/s/ Heidi Levine*
Heidi Levine
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
T: (212) 839-5300

32

T: (312) 261-6193
Email: eaw@wallacemiller.com

*Plaintiffs' Liaison Counsel*

Diandra "Fu" Debrosse Zimmermann
**DICELLO LEVITT LLC**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
T: (312) 214-7900
Email: fu@dicellolevitt.com

*Plaintiffs' Co-Lead Counsel*

Fidelma L. Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster Street, Fifth Floor
Providence, Rhode Island 02903
T: (401) 457-7700
Email: ffitzpatrick@motleyrice.com

*Plaintiffs' Co-Lead Counsel*

Michael A. London
**DOUGLAS & LONDON, P.C.**
One State Street, 35th Floor
New York, New York 10004
T: (212) 566-7500
Email: mlondon@douglasandlondon.com

*Plaintiffs' Co-Lead Counsel*

Benjamin L. Crump
**BEN CRUMP LAW FIRM**
122 South Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020
Email: ben@bencrump.com

*Plaintiffs' Co-Lead Counsel*

hlevine@sidley.com

*Defense Liaison Counsel and Counsel for Defendant Namasté Laboratories, LLC*

Daniel A. Spira
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
T: (312) 853-7274
dspira@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
350 South Grand Avenue
Los Angeles, CA 90071
T: (213) 896-6044
lgilford@sidley.com

Amanda M. Blau
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
T: (212) 839-5441
ablau@sidley.com

Caitlin P. Strauss
**SAUL EWING LLP**
1735 Market Street
Suite 3400
Philadelphia, PA 19103-7504
T: (215) 972-7153
caitlin.strauss@saul.com

Michael A. Jacobson
**SAUL EWING LLP**
161 North Clark Street
Suite 4200
Chicago, IL 60601
T: (312) 876-7121
michael.jacobson@saul.com

*Counsel for Defendant Namasté Laboratories, LLC*

Dennis S. Ellis

33

Katherine F. Murray
Serli Polatoglu
**ELLIS GEORGE LLP**
2121 Avenue of the Stars
Suite 3000, 30th Floor
Los Angeles, CA 90067
T: (310) 274-7100
F: (310) 275-5967
dellis@egcfirm.com
kmurray@egcfirm.com
spolatoglu@egcfirm.com

Jonathan Blakley
**GORDON REES SCULLY
MANSUKHANI LLP**
1 N. Franklin St., Suite 800
Chicago, IL 60606
T: (312) 565-1400
F: (312) 565-6511
jblakley@grsm.com

Peter Siachos
**GORDON REES SCULLY
MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2500
F: (973) 377-1911
psiachos@grsm.com

*Counsel for Defendants L'Oréal USA, Inc.,
L'Oréal USA Products, Inc. and SoftSheen-
Carson LLC*

Lori B. Leskin
E. Dean Harris Porter
**ARNOLD & PORTER KAYE SCHOLER,
LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8641
F: (212) 836-8689
Lori.leskin@arnoldporter.com
Dean.Porter@arnoldporter.com

Rhonda R. Trotter

34

**ARNOLD & PORTER KAYE SCHOLER, LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199
Rhonda.trotter@arnoldporter.com

*Counsel for Defendants Strength of Nature LLC; Strength of Nature Global LLC; and Godrej SON Holdings*

R. Trent Taylor
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1182
F: (804) 225-5409
rtaylor@mcguirewoods.com

Patrick P. Clyder
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
T: (312) 849-8100
F: (312) 849-3690
pclyder@mcguirewoods.com

*Counsel for Defendant House of Cheatham LLC*

Kevin A. Titus
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL 60606
T: 312-781-6677
F: 312-781-6630
sullivanj@litchfieldcavo.com
titus@litchfieldcavo.com

*Counsel for Defendant Beauty Bell Enterprises, LLC f/k/a House of Cheatham, Inc.*

Richard J. Leamy, Jr.

35

Kristen A. Schank
Anna Morrison Ricordati
**WIEDNER & MCAULIFFE, LTD.**
1 N. Franklin St., Suite 1900
Chicago, Illinois 60606
T: (312) 855-1105
rjleamy@wmlaw.com
kaschank@wmlaw.com
amricordati@wmlaw.com

*Counsel for Defendant Avlon Industries, Inc.*

Melissa Fallah
Robert W. Petti
Alyssa P. Fleischman
**MARON MARVEL**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 579-2018
mfallah@maronmarvel.com
rpetti@maronmarvel.com
afleischman@maronmarvel.com

*Counsel for Defendant Luster Products, Inc.*

Robert A. Atkins
Daniel H. Levi
Shimeng (Simona) Xu
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000
ratkins@paulweiss.com
dlevi@paulweiss.com
sxu@paulweiss.com

Randy S. Luskey
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
T: (628) 432-5112
rluskey@paulweiss.com

David E. Cole

36

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
T: (202) 223-7348
dcole@paulweiss.com

Edward P. Abbot
**ECKERT SEAMANS CHERIN & MELLOT, LLC**
275 Madison Avenue, 10th Floor
New York, NY 10016
T: (646) 513-2358
eabbot@eckertseamans.com

*Counsel for Defendants Revlon, Inc., Revlon Consumer Products Corporation, and Revlon Group Holdings LLC*

Yvette Ostolaza
Amanda Crawford-Steger
**SIDLEY AUSTIN LLP**
2323 Cedar Springs, Ste. 2600
Dallas, TX 75201
T: (214)981-3496
yostolaza@sidley.com
asteger@sidley.com

Heidi Levine
**SIDLEY AUSTIN LLP**
787 7th Ave
New York, NY 10019
T: (212) 839-5300
hlevine@sidley.com

Lisa M. Gilford
**SIDLEY AUSTIN LLP**
555 W 5th St.
Los Angeles, CA 90013
T: (213) 896-6000
lgilford@sidley.com

Lauren E. Gumerove
**SIDLEY AUSTIN LLP**
830 Brickell Plaza, Suite 4300
Miami, FL  33131

37

T: (305) 391-5219
lgumerove@sidley.com

*Counsel for Defendant Sally Beauty Supply LLC*

Joseph J. Welter
Ryan M. Frierott
**GOLDBERG SEGALLIA**
665 Main Street
Buffalo, NY 14203
T: (716) 566-5457
jwelter@goldbergsegalla.com
rfrierott@goldbergsegalla.com

*Counsel for AFAM Concept, Inc.*

Seth V. Alhadeff
Ravika Rameshwar
Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
T: (786) 957-1157
Seth.Alhadeff@dinsmore.com
Ravika.Rameshwar@dinsmore.com
Matthew.Wasserman@dinsmore.com

Matthew C. Wasserman
**DINSMORE & SHOHL LLP**
222 W. Adams Street
Suite 3400
Chicago, IL 60606
T: (312) 837-4316
Matthew.Wasserman@dinsmore.com

Adam Fox
**DINSMORE & SHOHL LLP**
801 Pennsylvania Avenue N.W., Suite 610
Washington, D.C. 20004
T: (202) 559-3615
F: (202) 372-9141
Adam.Fox@dinsmore.com

*Counsel for Defendant, McBride Research*

38

*Laboratories, Inc.*

Ashley C. Webber
Emily D. Robinson
**MARSH ATKINSON & BRANTLEY, LLC**
271 17th Street NW, Suite 1600
Atlanta, GA 30363
T: (404) 282-5050
ashley.webber@mablawfirm.com
emily.robinson@mablawfirm.com

*Counsel for Defendant, Dudley Beauty Corp, LLC*

Daniel L. Stanner
Ashley Crettol Insalaco
Megan E. Ryan
**TABET DIVITO & ROTHSTEIN LLC**
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
T: (312) 762-9450
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendant RNA Corporation*

Nancy L. Patterson
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street
Suite 4000
Houston, TX 77002
T: (713) 890-5000
F: (713) 890-5001
nancy.patterson@morganlewis.com

Mark A. Fiore
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
T: (609) 919-6600
F: (877) 432-9652
mark.fiore@morganlewis.com

*Counsel for Defendant John Paul Mitchell Systems, Inc.*

Leslie A. Federer, ARDC #6325614
**MARON MARVEL BRADLEY
ANDERSON & TARDY LLC**
191 N. Wacker Drive, Suite 2950
Chicago, Illinois 60606
T: (312) 767-1314
lfederer@maronmarvel.com

Robert E. Dille (*pro hac vice*)
**MARON MARVEL BRADLEY
ANDERSON & TARDY LLC**
201 St. Charles Ave., Suite 2411
New Orleans, Louisiana 70170
T: (504) 321-9331
rdille@maronmarvel.com

*Counsel for Defendant Murray's Worldwide,
Inc.*