**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: HAIR RELAXER MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 3060**<br>Case No. 23 C 818<br>Judge Mary M. Rowland<br><br>**This document relates to:**<br>All Cases |

**RNA'S SUBMISSION ADDRESSING PLAINTIFFS'**
**REQUEST FOR EXPEDITED DISCOVERY FROM RNA ON**
**BELLWETHER DEFENDANTS' AFFIRMATIVE DEFENSES**

Pursuant to Magistrate Judge Jantz's July 2, 2026 Order ("Order") (ECF No. 1966), counsel for Defendant RNA Corporation ("RNA") respectfully submits this statement concerning Plaintiffs' request for expedited discovery from RNA relating to certain bellwether Defendants' affirmative defenses of failure to join a necessary party under Federal Rule of Civil Procedure 19(a)(1).

**I.      TIMELINE AND FACTS SURROUNDING THE MARCH 14, 2024 THIRD-PARTY SUBPOENA TO RNA.**

RNA was first named in an MDL short form complaint on September 9, 2023, but was not "officially" brought into the MDL as a defendant until the Master Long Form Complaint was filed on May 28, 2024. (ECF No. 680.) In the intervening months, there was substantial confusion by the Plaintiffs' Steering Committee ("PSC") about RNA's status—specifically, whether RNA would be added as a "Second Wave Defendant" or would remain a third party subject to subpoena-based discovery.

On March 7, 2024, Judge Rowland held a status hearing addressing the 47 new defendants identified by Plaintiffs, including RNA. (ECF No. 512 at 7-9.) The PSC represented that they intended to include only eight of those defendants, including RNA, in the MDL as Second Wave Defendants. *Id.* Judge Rowland set a hearing for April 18, 2024 to allow counsel for those

1

Defendants to appear and discuss proceedings related to the second wave. On March 14, 2024, the PSC served a Rule 45 subpoena on RNA. *See* PSC Subpoena, attached hereto as **Exhibit A**. On March 29, 2024, shortly after receiving the subpoena, RNA's counsel contacted Plaintiffs' counsel by phone to clarify RNA's status. Plaintiffs' counsel confirmed by phone that Plaintiffs intended to pursue RNA as a defendant, and Plaintiffs' counsel stated that the PSC would "most likely withdraw" the subpoena since RNA would be joining the MDL as a defendant rather than participating as a third party. Plaintiffs' counsel asked RNA to follow up via email, however, so the PSC could confer. *See* email exchange, attached hereto as **Exhibit B**, at 3.

At an April 11, 2024 status hearing, the PSC again expressed their intent to bring RNA into the MDL as a Second Wave Defendant. RNA's counsel followed up again after the hearing to seek clarification about the subpoena, and Plaintiffs' counsel responded by extending RNA's deadline to respond, stating that Plaintiffs "hope to provide you our final response on the handling in the very near term." Ex. B at 2. At the April 18, 2024 hearing, Judge Rowland explicitly confirmed that Second Wave Defendants like RNA would not be in the initial bellwether cases: "[Y]ou won't be in the bellwether. . . . [Y]ou're going to be on this next tier." (ECF No. 635 at 32:16-22.) The Court ordered the PSC to file individual long form complaints against each Second Wave Defendant by May 28, 2024, and acknowledged that those Defendants may have to "wait and see" whether a long form complaint or status report would clarify their future in the MDL. (*Id.* at 41:7-24.) On May 7, 2024, Plaintiffs' counsel confirmed by email: "We are withdrawing the subpoena. No further action is required by RNA Corporation with respect to the subpoena." Ex. B at 1. Plaintiffs then filed the Master Long Form Complaint against RNA on May 28, 2024, and RNA has proceeded as a Second Wave Defendant ever since. (ECF No. 680).

2

In short, at all relevant times, RNA was seeking clarity about its role in the MDL and the appropriate discovery mechanism—not attempting to evade its obligations. Plaintiffs never asked RNA to respond to the subpoena; they extended deadlines while determining RNA's status and then withdrew it entirely. Plaintiffs never indicated that they needed RNA to respond to the subpoena in connection with bellwether cases where RNA was not a defendant. Plaintiffs never stated that they would withdraw the subpoena only if RNA agreed to provide expedited discovery for bellwether cases. The message was unequivocal: "**No further action** is required by RNA Corporation." RNA reasonably understood that all discovery—including any discovery previously sought by the withdrawn subpoena—would proceed on the second wave discovery schedule.

## II. SEVENTH CIRCUIT LAW REGARDING THE DISCOVERY SOUGHT BY PLAINTIFFS.

RNA Corporation is a Second Wave Defendant in the MDL generally, but it is not a party to any of the bellwether cases currently set for trial. As Judge Rowland explicitly stated at the April 18, 2024 status hearing, Second Wave Defendants like RNA are "going to be on this next tier" and would not be included in the initial bellwether cases. (ECF No. 635 at 32:16-22.) Accordingly, any discovery Plaintiffs seek from RNA related to the bellwether cases must be obtained through the procedures applicable to non-parties. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020) ("the cases within an MDL retain their separate identities" and "a party's rights in one case [cannot] be impinged to create efficiencies in the MDL generally.").

The Federal Rules of Civil Procedure establish different mechanisms for obtaining discovery from parties and non-parties. Rules 33, 34, and 36 govern discovery between parties to litigation. For non-parties, discovery is governed by Rule 45, which authorizes the issuance of subpoenas to command production of documents or attendance at depositions. *See* Fed. R. Civ. P.

3

45; *Nieves v. Carmel Clay Schools*, 2021 WL 5364152, at \*2 (S.D. Ind. May 14, 2021) ("Discovery to a non-party is governed by Rule 45."). There is no procedural basis under the Federal Rules for Plaintiffs to demand that RNA expedite certain of its responses to Plaintiffs' Rule 34 discovery requests when RNA is not a party to the bellwether actions.

The scope of discovery available via a Rule 45 subpoena is measured by the same standards applicable to party discovery under Rule 26, but courts are particularly "vigilant to protect a non-party from undue burden or expense." *Nieves*, 2021 WL 5364152, at \*3. Rule 45 gives courts "broad powers to quash or modify a subpoena, order the payment of attorneys' fees where the discovering party has not been reasonable in avoiding the imposition of undue burden or expense, or order the discovering party to subsidize the costs of compliance with the subpoena." *Id.*

These principles apply with particular force here, where Plaintiffs seek expedited discovery from a non-party to address affirmative defenses raised by party-defendants in the bellwether cases. The bellwether Defendants bear the burden of proving their Rule 19 affirmative defenses. *See In re Hair Relaxer Marketing Sales Practices & Prod. Liab. Litig.*, 2025 WL 3719658, at \*2 (N.D. Ill. Dec. 23, 2025). It is those Defendants, not RNA, who must establish that complete relief cannot be accorded among existing parties without RNA, that RNA has an interest that would be impaired by proceeding in its absence, or that existing parties face a substantial risk of inconsistent obligations. *See* Fed. R. Civ. P. 19(a). To the extent the bellwether Defendants have not produced sufficient discovery to prove their affirmative defenses, that issue is properly between those Defendants and Plaintiffs—it does not need to involve non-party RNA. *See Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 591 (N.D. Ill. 2020) ("This would seem to be an obvious case of question-begging. It is not [the non-party] shifting blame, but rather plaintiff shifting responsibility

4

for producing the documents—a responsibility that is, in the first instance, defendant's and which would seem easy to fulfill or require be fulfilled by a party to the case.").

## III. THERE IS NO BASIS TO REQUIRE RNA TO PRODUCE PLAINTIFFS' REQUESTED DISCOVERY ON AN EXPEDITED SCHEDULE.

Even assuming this Court extended third-party discovery for the bellwethers and allowed Plaintiffs to issue a Rule 45 subpoena to RNA, the scope of expedited discovery Plaintiffs are seeking is inappropriate because: (1) the discovery sought is duplicative of materials the bellwether Defendants have already produced; (2) any relevant information about RNA's role has already been disclosed to Plaintiffs by both RNA and the bellwether Defendants multiple times; and (3) the scope of Plaintiffs' requests is unduly burdensome based on the bellwether Defendants' alleged affirmative defenses and the discovery process already negotiated and approved by this Court.

### A. The Discovery Plaintiffs Seek Is Duplicative of What Has Been or Should Have Been Obtained from the Bellwether Defendants.

A non-party subpoena seeking information that is readily available from a party through ordinary discovery may be quashed as duplicative or cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). As the Northern District of Illinois has recognized, "[a] plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information." *Rossman*, 467 F. Supp. 3d at 590 (quoting *Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, at *3 (N.D. Ill. 2015)); *see also Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quashing plaintiff's subpoena to non-party where documents sought were duplicative of discovery requests directed to defendant). Courts are particularly skeptical of non-party subpoenas when there is no indication that the requested documents cannot be obtained from the party to the litigation. *See Ameritox, Ltd. v. Millennium Labs, Inc.*, 2012 WL 6568226, at *2-3 (N.D. Ill. 2012)

(granting motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation").

The discovery Plaintiffs seek from RNA falls squarely within this rule. Plaintiffs seek two categories of documents from RNA: (1) correspondence to and from all of the bellwether Defendants relating to chemical hair relaxers, and (2) any contracts with the bellwether Defendants. Both of these categories of documents should be equally in the possession, custody, or control of the bellwether Defendants and therefore were produced by those Defendants or should have been requested of those Defendants during their discovery process. If Plaintiffs believe the bellwether Defendants have not produced sufficient documents in response to properly served discovery, the appropriate remedy is to seek enforcement against those parties—not to compel expedited review and production from RNA. In fact, at the July 2, 2026 discovery hearing, Plaintiffs confirmed their intention to meet and confer with the bellwether Defendants regarding any purportedly missing facts or inconsistencies in the interrogatory responses. Under Rule 45, Plaintiffs must exhaust their avenues for seeking this discovery from the bellwether Defendants before targeting a non-party to the bellwether suits. *See Rossman*, 467 F. Supp. 3d at 591. Plaintiffs are simply trying to take advantage of the fact that RNA is a defendant in other MDL cases, even though it is undisputed that RNA *is not a party to these bellwethers* and fact discovery of the First Wave Defendants has long been closed**.** This District has made clear that, regardless of whether "it may be simpler for the subpoenaing party to insist on production from a non-party rather than taking reasonable steps to require the non-cooperative party to comply with its basic discovery obligations," it is not the obligation of a non-party to fill the gaps for discovery an existing party failed to produce. *Rossman*, 467 F. Supp. 3d at 591-92.

6

**B.** **Plaintiffs Have Already Received Any Relevant Information About RNA's Role as a Contract Manufacturer.**

Plaintiffs have known about RNA's role as a contract manufacturer for Namaste and McBride for more than two years from written discovery and depositions of those Defendants, and no additional discovery is needed on that point from any party—much less from RNA, which is not a bellwether Defendant. McBride's contention interrogatory response confirms that RNA Corporation is among the contract manufacturers for certain of its hair relaxer products and that this information "w[as] previously disclosed to Plaintiffs as early as July 16, 2024." *See* McBride's contention interrogatory responses, attached hereto as **Exhibit C**, at 12-14. Similarly, Namaste's contention interrogatory response confirms that RNA Corporation has been "previously disclosed to Plaintiffs formally and informally throughout discovery, including as early as April 22, 2024" and that "Namasté engaged RNA Corporation (from about 2003 to the present) to manufacture its hair relaxer products in the United States." *See* Namaste's contention interrogatory responses, attached hereto as **Exhibit D**, at 12. Additionally, Plaintiffs' own Master Long Form Complaint against RNA ties RNA and Namaste together in a manner that demonstrates Plaintiffs' knowledge of their manufacturing relationship. (ECF No. 680 at ¶¶ 15-16.) In RNA's first interrogatory responses in this MDL, served on March 21, 2025, RNA stated that it manufactured hair relaxer products for Namaste and McBride. RNA has also already produced its contracts with Namaste and McBride. (RNA_MDL_00012689-12728; RNA_MDL_00012739-12858.) Plaintiffs had many opportunities to ask these questions of the relevant Defendants in company depositions as well. Plaintiffs do not need expedited discovery from RNA to learn what they have known for years.

7

### C. The Scope of Plaintiffs' Requests Is Unduly Burdensome.

Ignoring the fact that Plaintiffs have already received the relevant information in discovery, Plaintiffs' proposed discovery requests impose an unreasonable burden on non-bellwether party RNA for several additional reasons.

First, RNA's existing discovery process is not one that can simply be accelerated by narrowing the scope of responsive customers. As RNA has explained to Plaintiffs throughout the discovery process, RNA does not organize most of its records by customer, which is why RNA spent months negotiating a thorough ESI protocol that was reviewed in detail, revised, and approved by Special Master Grossman just in April 2026. (ECF No. 1811.) That protocol uses an AI training process—not search terms—and therefore narrowing the responsive customers will not shorten that training process. How long it would take RNA to make expedited productions would, of course, depend on the scope of expedited discovery allowed by the Court, but it would also depend on whether RNA is required to negotiate a new search and review process with Plaintiffs under CMO 4 or whether RNA is treated as a third party for the purposes of this bellwether discovery and is allowed to determine its own reasonable and appropriate process for reviewing and producing such discovery.

Second, Plaintiffs have provided no explanation as to why "all correspondence" between RNA and the bellwether Defendants relating to hair relaxer products is relevant to these affirmative defenses. After the last discovery CMC, the Court acknowledged that Plaintiffs may "believe that certain discovery from RNA is necessary for the bellwether trials" and ordered Plaintiffs "to propose specific, targeted discovery and timelines from RNA." (ECF No. 1943 at 3.) Plaintiffs' request for RNA's contracts with bellwether Defendants for which it made hair relaxer products is a specific and targeted request—in fact, RNA has already produced its contracts with Namaste and McBride. (RNA_MDL_00012689-12728; RNA_MDL_00012739-12858.) *All correspondence*

relating to hair relaxer products, however, is neither specific nor targeted and is not reasonable to be sought on an expedited basis. When the Court allowed Plaintiffs to issue narrow discovery requests to the bellwether Defendants past the time for general discovery, the Court required those requests be "specifically tailored to questions of marketing, advertising, labeling, warnings, and instructions as relevant to particular Plaintiffs and as informed by past general and case specific discovery." (ECF No. 1695.) Both general and case specific discovery for the bellwether cases has closed, and there is no reason to reopen that discovery and allow Plaintiffs to go on a fishing expedition for documents that are not *specifically targeted* to these affirmative defenses.

Finally, only Namaste and McBride have alleged that RNA is a necessary party to the bellwether cases—or alleged any connection to RNA whatsoever. Yet, Plaintiffs seek correspondence and documents related to *all* bellwether Defendants, even though no other bellwether Defendant has identified a manufacturing relationship with RNA. Plaintiffs claim this scope is necessary to clarify the bellwether Defendants that provided only vague interrogatory responses, but, once again, it is completely inappropriate to shift that burden onto non-bellwether party RNA. To the extent any bellwether Defendant has maintained a necessary-party defense without specifically identifying the alleged necessary party, Plaintiffs' appropriate remedy is against that bellwether Defendant. *See Marina Bartashnik v. Bridgeview Bancorp, Inc.*, 2005 WL 3470315, at *4 (N.D. Ill. Dec. 15, 2005) (striking affirmative defense for failure to join necessary parties where defendant failed to identify the party to be joined, why joinder is necessary, and how joinder would not adversely affect jurisdiction and venue). A party asserting a Rule 19 affirmative defense must identify the necessary party and provide a factual basis for its assertion; it cannot rely on vague assertions of unnamed necessary parties and then shift the burden of discovery to a

9

non-party that has no stake in the litigation. There is no basis whatsoever for requiring RNA to produce expedited discovery to address affirmative defenses that do not implicate RNA.

## IV.    TIMEFRAME FOR PRODUCTION OF AN AFFIDAVIT.

As discussed above, it is not RNA's burden to clarify discovery responses from bellwether Defendants that Plaintiffs consider vague enough to "potentially" implicate RNA. RNA has provided, and continues to supplement, interrogatory responses identifying the customers for which it manufactured hair relaxer products. If required by the Court to do so, however, RNA will produce an affidavit stating whether or not, based on a reasonable investigation of the records and information available to it, it manufactured any hair relaxer products for the following bellwether Defendants identified by Plaintiffs:

- AFAM Concept, Inc.
- Beauty Bell Enterprises LLC
- L'Oreal USA, Inc. and L'Oreal USA Products, Inc.
- Softsheen-Carson
- Luster Products, Inc.
- Strength of Nature
- Godrej SON Holdings
- Revlon Consumer Products Corporation; Revlon Group Holdings, LLC; and Revlon, Inc.

Because of the holiday weekend, the earliest RNA can confirm that it can produce an affidavit is July 24, 2026. Counsel will work with knowledgeable individuals at RNA to determine whether an affidavit could be produced sooner.

10

Date:  July 7, 2026

Respectfully submitted,

**RNA CORPORATION**

By:    /s/ Megan E. Ryan
          One of Its Attorneys

Daniel L. Stanner (#6210770)
Ashley Crettol Insalaco (#6305680)
Megan E. Ryan (#6333275)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th floor
Chicago, IL 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
dstanner@tdrlaw.com
ainsalaco@tdrlaw.com
mryan@tdrlaw.com

11